**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

JASON ALFORD, *et al.*,

                Plaintiffs,

    v.

THE NFL PLAYER DISABILITY &
SURVIVOR BENEFIT PLAN, *et al.*,

                Defendants.

Case No. 1:23-cv-00358-JRR

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT RULE 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 4

    *The Disability Plan & The Retirement Plan* ................................................ 4

    *The Disability Board & Trustees* ............................................................. 5

    *Plan Benefits & Claims Process* .............................................................. 6

    *Plaintiffs' Varied Medical Histories and Benefit Applications* ..................... 9

LEGAL STANDARD ..................................................................................... 15

ARGUMENT .................................................................................................. 15

I.      PLAINTIFFS' § 502(a)(1)(B) CLAIMS (COUNT I) MUST BE
         DISMISSED BECAUSE THE CLAIMS WERE PROPERLY DENIED
         IN ACCORDANCE WITH PLAN TERMS ........................................ 15

      A.    The Board Properly Denied Plaintiffs' Benefit Claims Consistent
           with the Plain and Unambiguous Terms of the Plan ................................ 17

      B.    Plaintiffs Have Not Plausibly Alleged Any Conflict of Interest on
           Behalf of the Board to Support Their Claim for Benefits ......................... 20

II.    THE COURT SHOULD DISMISS COUNTS II–VIII AS A DISJOINTED
         COLLECTION OF "REPACKAGED" ERISA BENEFIT CLAIMS ................ 22

      A.    Plaintiffs' Section 502(a)(3) Claims (Count III and VIII) Should
           Be Dismissed As Duplicative of Count I .............................................. 22

      B.    Plaintiffs' "Full and Fair Review" Claims (Counts II and IV–VII)
           Should Be Dismissed As Derivative of Their § 502(a)(1)(B)
           Claims ........................................................................................ 27

III.   PLAINTIFFS' MISREPRESENTATION CLAIMS (COUNTS III AND
         VIII) ARE INDEPENDENTLY DEFICIENT AS A MATTER OF LAW ......... 28

IV.   COUNT IV INDEPENDENTLY FAILS BECAUSE A PLAN
         ADVISOR'S ROLE DOES NOT CONSTITUTE A CONFLICT OF
         INTEREST AS MATTER OF LAW .................................................... 33

V.    PLAINTIFFS' CLAIM THAT NEUTRAL PHYSICIANS ARE A
         "SHAM" (COUNT VI) IS ITSELF BASED ENTIRELY ON SHAM
         "STATISTICS" THAT ARE MEANINGLESS AND DO NOT SUPPORT
         THE CLAIM ................................................................................ 34

**TABLE OF CONTENTS**
**(continued)**

                                                                                    **Page**

VI.     COUNT IX SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO
        NOT ALLEGE FIDUCIARY MISCONDUCT OR ANY INJURY TO
        THE PLAN AS REQUIRED UNDER SECTION 409(a) OF ERISA ................ 37

VII.    TO THE EXTENT PLAINTIFFS PURPORT TO ASSERT THEIR
        CLAIMS IN COUNTS I–VIII AGAINST THE TRUSTEES, THEIR
        CLAIMS FAIL........................................................................................................ 39

VIII.   ALL OF PLAINTIFFS' CLAIMS AGAINST THE COMMISSIONER
        SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT
        HE IS NOT A FIDUCIARY .............................................................................. 42

CONCLUSION............................................................................................................ 44

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Adams v. Brink's Co.*,
  261 F. App'x 583 (4th Cir. 2008) .................................................................... 29, 43

*Adkins v. Holland*,
  216 F. Supp. 2d 576 (S.D.W. Va. 2002), *aff'd*, 87 F. App'x 886 (4th Cir.
  2004) ............................................................................................................... 30

*Aiken v. Policy Mgmt. Sys. Corp.*,
  13 F.3d 138 (4th Cir. 1993) ............................................................................ 30

*Archer v. SunTrust Bank*,
  2017 WL 6550390 (E.D. Va. Dec. 22, 2017) ................................................. 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 15, 37, 39

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 15

*Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  132 F. Supp. 3d 676 (D. Md. 2015) ................................................................ 16

*Bolone v. TRW Sterling Plant Pension Plan*,
  130 F. App'x 761 (6th Cir. 2005) .............................................................. 26, 33

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
  201 F.3d 335 (4th Cir. 2000) .......................................................................... 16

*Boyce v. Eaton Corp. Long Disability Plan*,
  2017 WL 3037392 (W.D.N.C. July 18, 2017) ................................................ 34

*Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  796 F. Supp. 2d 682 (D. Md. 2011) ................................................ 16, 19, 22, 34

*Brogan v. Holland*,
  105 F.3d 158 (4th Cir. 1997) .......................................................................... 28

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
  919 F.3d 763 (4th Cir. 2019) .......................................................................... 32

*Bryant v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2015 WL 13908103 (N.D. Ga. Mar. 23, 2015) ............................................... 19

*Bryson v. United Healthcare Ins. Co.*,
  2015 WL 4026009 (W.D.N.C. July 1, 2015) ................................................... 28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Burgess v. Balt. Police Dep't,*
  2016 WL 795975 (D. Md. Mar. 1, 2016) ............................................................. 31

*Campbell v. Rite Aid Corp.,*
  2014 WL 3868008 (D.S.C. Aug. 5, 2014) ............................................................ 24

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan,*
  612 F. Supp. 3d 516 (D. Md. 2020) ..................................................................... 23

*Clark v. BASF Corp.,*
  142 F. App'x 659 (4th Cir. 2005) .......................................................................... 5

*Clark v. Fed. Express Corp.,*
  2009 WL 10727182 (D. Md. Apr. 1, 2009) .......................................................... 28

*Classen Immunotherapies, Inc. v. Biogen IDEC,*
  381 F. Supp. 2d 452 (D. Md. 2005) ..................................................................... 41

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
  2022 WL 2237451 (N.D. Tex. June 21, 2022) ..................................................... 34

*Coleman v. Nationwide Life Ins. Co.,*
  969 F.2d 54 (4th Cir. 1992) ........................................................................... 42, 43

*Colucci v. Agfa Corp. Severance Pay Plan,*
  431 F.3d 170 (4th Cir. 2005), *abrogated on other grounds by Champion v.*
  *Black & Decker (U.S.) Inc.,* 550 F.3d 353 (4th Cir. 2008) ............................. 18, 34

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pens. Trust for S. Cal.,*
  508 U.S. 602 (1993) .............................................................................................. 4

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC,*
  2015 WL 4394408 (D. Md. July 15, 2015) ........................................................... 26

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.,*
  102 F.3d 712 (4th Cir. 1996) ................................................................... 25, 26, 28

*David v. Alphin,*
  704 F.3d 327 (4th Cir. 2013) ................................................................................ 38

*DeBlasis v. DeBlasis,*
  2023 WL 2758841 (D. Md. Apr. 3, 2023) ............................................................ 37

*Deerbrook Pavilion, LLC v. Shalala,*
  235 F.3d 1100 (8th Cir. 2000) ............................................................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Desper v. Clarke*,
1 F.4th 236 (4th Cir. 2021) ............................................................... 15, 37

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
487 F. Supp. 3d 807 (N.D. Cal. 2020), *aff'd and remanded on other grounds*,
855 F. App'x 332 (9th Cir. 2021) ...................................................... 21

*England v. Marriott Int'l, Inc.*,
764 F. Supp. 2d 761 (D. Md. 2011) .................................................. 25

*Est. of Spinner v. Anthem Health Plans of Va.*,
589 F. Supp. 2d 738 (W.D. Va. 2008), *aff'd*, 388 F. App'x 275 (4th Cir. 2010) ............ 39, 43

*Evans v. Eaton Corp. Long Term Disability Plan*,
514 F.3d 315 (4th Cir. 2008) ........................................................... 15, 16, 37

*Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*,
2017 WL 1155807 (M.D.N.C. Mar. 27, 2017) ................................... 24

*Firestone Tire & Rubber Co. v. Burch*,
489 U.S. 101 (1989) ......................................................................... 16

*Frommert v. Conkright*,
738 F.3d 522 (2d Cir. 2013) ............................................................. 32

*Gallagher v. Reliance Standard Life Ins. Co.*,
305 F.3d 264 (4th Cir. 2002) ........................................................... 16

*Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan*,
249 F. Supp. 3d 570 (D. Mass. 2017) ............................................... 9

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
2022 WL 4368188 (M.D.N.C. Sept. 21, 2022) .................................. 1

*Geddes v. United Staffing All. Emp. Med. Plan*,
469 F.3d 919 (10th Cir. 2006) ......................................................... 32

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
925 F. Supp. 2d 700 (D. Md. 2012) .................................................. 22, 34

*Gladstone v. Gladstone*,
2023 WL 2571510 (D. Md. Mar. 18, 2023) ....................................... 37

*Gluth v. Wal-Mart Stores, Inc.*,
117 F.3d 1413 (Table) (4th Cir. 1997) .............................................. 40, 41

v

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*,
   505 F. Supp. 3d 594 (E.D.N.C. 2020) ........................................................................ 24

*Gross v. St. Agnes Health Care, Inc.*,
   2013 WL 4925374 (D. Md. Sept. 12, 2013) .............................................................. 5

*Gruber v. Unum Life Ins. Co. of Am.*,
   195 F. Supp. 2d 711 (D. Md. 2002) ........................................................................... 39

*Guardian Life Ins. Co. of Am. v. Reinaman*,
   2011 WL 2133703 (D. Md. May 26, 2011) ............................................................... 44

*Halberg v. United Behav. Health*,
   408 F. Supp. 3d 118 (E.D.N.Y. 2019) ...................................................................... 30

*Hall v. Metro. Life Ins. Co.*,
   259 F. App'x 589 (4th Cir. 2007) .............................................................................. 28

*Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*,
   583 F. App'x 413 (5th Cir. 2014) ............................................................................. 19

*Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   613 F. App'x 418 (5th Cir. 2015) ............................................................................. 19

*Holloway v. Maryland*,
   32 F.4th 293 (4th Cir. 2022) .................................................................. 15, 31, 37

*Hudson v. NFL Mgmt. Council*,
   2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019) ......................................................... 32

*In re Mut. Funds Inv. Litig.*,
   529 F.3d 207 (4th Cir. 2008) .................................................................................... 38

*Int'l Refugee Assistance Project v. Trump*,
   961 F.3d 635 (4th Cir. 2020) .............................................................................. 15, 37

*Jenkins v. Int'l Ass'n of Bridge*,
   2015 WL 1291883 (E.D. Va. Mar. 20, 2015) ..................................................... 40, 41

*Johnson v. Am. United Life Ins. Co.*,
   716 F.3d 813 (4th Cir. 2013) .................................................................................... 16

*Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   468 F.3d 1082 (8th Cir. 2006) .................................................................................. 19

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Johnson v. NFL Player Disability, Neurocognitive & Death Benefit Plan*,
2023 WL 2059033 (E.D. Mich. Feb. 16, 2023) ........................................................ 44

*Juric v. USALCO, LLC*,
2023 WL 2332352 (D. Md. Mar. 2, 2023) ............................................. 5, 24, 29, 30

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
874 F. Supp. 2d 213 (S.D.N.Y. 2012) ..................................................................... 44

*Keegan v. Steamfitters Loc. Union No. 420 Pension Fund*,
174 F. Supp. 2d 332 (E.D. Pa. 2001) ...................................................................... 40

*Kendall v. Pharm. Prod. Dev., LLC*,
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ............................................ 29, 33, 39

*King v. Nalley*,
2017 WL 4221062 (D. Md. Sept. 21, 2017), *aff'd*, 737 F. App'x 163 (4th Cir.
2018) ........................................................................................................................ 31

*Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.*,
2022 WL 17607056 (M.D.N.C. Dec. 13, 2022) ...................................................... 27

*Korotynska v. Metro. Life Ins. Co.*,
474 F.3d 101 (4th Cir. 2006) ........................................................................... passim

*Lafleur v. La. Health Serv. & Indem. Co.*,
563 F.3d 148 (5th Cir. 2009) .................................................................................. 33

*Lokhova v. Halper*,
995 F.3d 134 (4th Cir. 2021) .................................................................................. 15

*Macronix Int'l Co. v. Spansion, Inc.*,
4 F. Supp. 3d 797 (E.D. Va. 2014) ......................................................................... 37

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
872 F.2d 80 (4th Cir. 1989) ................................................................................ 9, 19

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ................................................................................................ 38

*Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*,
70 F. Supp. 2d 580 (D. Md. 1998), *aff'd sub nom. Md. Minority Contractors
Ass'n, Inc. v. Md. Stadium Auth.*, 198 F.3d 237 (4th Cir. 1999) .............................. 9

*Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*,
2021 WL 4443142 (S.D.N.Y. Sept. 28, 2021) ........................................................ 36

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mid Atl. Med. Servs., LLC v. Sereboff*,
　407 F.3d 212 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006) ................................................. 2, 16

*Moore v. Verizon Commc'ns, Inc.*,
　2022 WL 16963245 (E.D. Va. Nov. 15, 2022)...................................................... 26

*Morris v. NFL Ret. Bd.*,
　833 F. Supp. 2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir.
　2012) ............................................................................................................................ 19

*Pender v. Bank of Am. Corp.*,
　788 F.3d 354 (4th Cir. 2015) ....................................................................................... 23

*Peters v. Aetna Inc.*,
　2 F.4th 199 (4th Cir. 2021) ......................................................................................... 38

*Philips v. Pitt Cnty. Mem'l Hosp.*,
　572 F.3d 176 (4th Cir. 2009) ........................................................................................ 1

*Reetz v. Lowe's Cos.*,
　2019 WL 4233616 (W.D.N.C. Sept. 6, 2019) ................................................... 29, 39

*Rhodes, Inc. v. Morrow*,
　937 F. Supp. 1202 (M.D.N.C. 1996) .......................................................................... 30

*Rogers v. Unitedhealth Grp., Inc.*,
　144 F. Supp. 3d 792 (D.S.C. 2015)............................................................................. 39

*Saini v. Cigna Life Ins. Co. of N.Y.*,
　2018 WL 1959551 (S.D.N.Y. Apr. 24, 2018).............................................................. 9

*Saval v. BL Ltd.*,
　710 F.2d 1027 (4th Cir. 1983) .................................................................................... 17

*Schlichter v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
　2017 WL 1001204 (S.D. Ind. Mar. 15, 2017)............................................................ 19

*Schwager v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
　2010 WL 481232 (D. Md. Feb. 4, 2010) .................................................................... 19

*Shah v. Blue Cross Blue Shield of Tex.*,
　2018 WL 1293164 (D.N.J. Mar. 13, 2018)................................................... 27, 28, 33

*Smith v. Shoe Show, Inc.*,
　2022 WL 583569 (M.D.N.C. Feb. 25, 2022)...................................................... 29, 39

viii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2011 WL 10005532 (D. Md. Jan. 13, 2011) ................................................ 22, 34

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ................................................................... 32

*United States ex rel. Taylor v. Boyko*,
  39 F.4th 177 (4th Cir. 2022) ......................................................... 15, 35, 36

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*,
  2017 WL 3610486 (D.N.J. Aug. 22, 2017) ............................................... 28

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ................................................................................ 16

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) .................................................................... 3, 23, 24

*Vaughan v. Celanese Americas Corp.*,
  339 F. App'x 320 (4th Cir. 2009) ........................................................... 28

*White v. A.D. Naylor & Co.*,
  2014 WL 12908076 (D. Md. Sept. 29, 2014) .......................................... 39

*Williams v. Centerra Grp., LLC*,
  2021 WL 4227384 (D.S.C. Sept. 16, 2021) ....................................... 29, 39

*Williams v. NFL Player Supplemental Disability Plan*,
  2020 WL 43113 (N.D. Cal. Jan. 3, 2020) ................................................. 9

*Wiseman v. First Citizens Bank & Tr. Co.*,
  215 F.R.D. 507 (W.D.N.C. 2003) .......................................................... 29

## **STATUTES**

29 U.S.C. § 1002(21) ................................................................................. 43

29 U.S.C. § 1002(21)(A) .............................................................................. 5

29 U.S.C. § 1002(37)(A) .............................................................................. 4

29 U.S.C. § 1102(a)(1) ............................................................................ 4, 5

29 U.S.C. § 1102(a)(2) ............................................................................. 43

29 U.S.C. § 1104(a)(1)(ii) .......................................................................... 34

## TABLE OF AUTHORITIES
### (continued)

**Page**

29 U.S.C. § 1109(a) ......................................................................................... 38

29 U.S.C. § 1132(a)(1)(B) ......................................................................... 16, 23

29 U.S.C. § 1132(a)(3) .................................................................................... 23

29 U.S.C. § 1132(d)(1) .................................................................................... 40

29 U.S.C. § 1132(d)(2) ................................................................................. 3, 40

29 U.S.C. § 2560.503-1(b)(7) .......................................................................... 35

29 U.S.C. § 2560.503-1(h)(2)(iv) ..................................................................... 23

29 U.S.C. §§ 1002(16)(A)–(B) ..................................................................... 4, 5

## OTHER AUTHORITIES

Order re Motion to Dismiss, *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:16-cv-01413-JD (N.D. Cal. June 14, 2016) ....................................... 26

Order, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex. Dec. 27, 2021) ............................................................................... 26

U.S. Dep't of Labor, Form 5500 Search, EFAST ............................................... 1

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................... 15

Fed. R. Civ. P. 20 ............................................................................................ 17

Fed. R. Civ. P. 20(a)(1) ................................................................................... 17

## REGULATIONS

29 C.F.R. § 2520.102-3(t)(1) ..................................................................... 26, 32

29 C.F.R. § 2560.503-1(b)(5) .......................................................................... 34

29 C.F.R. § 2560.503-1(h)(3)(ii) ...................................................................... 33

29 C.F.R. § 2560.503-1(j)(6) ........................................................................... 30

29 C.F.R. § 2560.503-1(o) ................................................................................. 8

# INTRODUCTION[1]

Plaintiffs are former National Football League ("NFL") players asserting claims based on their denial of benefits under the NFL Player Disability & Survivor Benefit Plan (the "Disability Plan" or the "Plan"), a disability plan negotiated between the National Football League Players Association ("NFLPA"), which is the collective bargaining representative of NFL players, and the NFL Management Council (the "Management Council"), the collective bargaining representative of the 32 NFL teams.  Plaintiffs sue the Plan (and its predecessors), the Plan Board, six current and former Plan trustees (three of whom are retired NFL players) (the "Trustees"), and NFL Commissioner Roger Goodell (collectively, "Defendants").  Plaintiffs assert that Defendants rejected their claims for disability benefits as part of a "systematic pattern" to deny claims.  *See, e.g.*, Pls.' Class Action Compl. ("Compl.") (ECF No. 1) ¶ 253. Plaintiffs make these assertions despite the fact that public records they rely on show that the Plan paid more than $1 billion in benefits to former NFL players and their beneficiaries over the past six years.  *See generally* Ex. A, 2016–2021 IRS Form 5500s.[2]  In 2021 alone, 2,713 former players received more than $235 million in benefits from the Plan.  *See id.* at 3, 50.

But even accepting Plaintiffs' factual allegations as true for purposes of this motion, their claims fail as a matter of law due to three bedrock principles under the Employee Retirement Income Security Act ("ERISA").  The first is that courts must enforce the terms of benefit plans

---

[1] Unless indicated, all emphasis is added and internal citations and quotations are omitted.

[2] *See* U.S. Dep't of Labor, Form 5500 Search, EFAST, https://www.efast.dol.gov/5500search/; *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 2022 WL 4368188, at *7 n.5 (M.D.N.C. Sept. 21, 2022) (taking judicial notice of Form 5500s on motion to dismiss as "unquestionably matters of public record" given their mandatory public filing (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  "Ex." Refers to the exhibits attached to the Declarations of Hessam ("Sam") Vincent and Gregory F. Jacob in Support of Defendants' Joint Rule 12(b)(6) Motion to Dismiss.

as written. *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006). Here, Plaintiffs' Complaint concedes their benefit claims did not satisfy the Plan's express eligibility requirements and were properly denied under the Plan terms. Some Plaintiffs failed to exhaust their administrative remedies, and other claims are untimely—those claims fail under the Plan's administrative provisions. Plaintiffs further admit that under the collectively-bargained terms of the Plan, to be eligible for the categories of benefits they seek, a "Neutral Physician"—as the Plan defines that term—must conclude that they meet the relevant disability criteria. *See, e.g.*, Compl. ¶¶ 56, 59, 63. Because no physician satisfying the Plan's definition made that conclusion here as to any of the Plaintiffs' individual benefit claims, *see id.* ¶¶ 104–17, 121–40, 150–61, 163, 167, 176–77, 184–87, 189–92, 199, 208, 245–48, Plaintiffs' primary claim—for wrongful denial of benefits under ERISA § 502(a)(1)(B) in Count I—fails as a matter of law.

The second principle is that ERISA beneficiaries may not bring claims under ERISA's "catchall" provision, ERISA § 502(a)(3), where they have "available to [them] the alternative remedy of bringing an action under § 1132(a)(1)(B)." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006). Thus, Counts III and IX, which allege that Defendants breached their fiduciary duty when they denied Plaintiffs' claims, must be dismissed because Plaintiffs can (and have) brought a § 502(a)(1)(B) claim based on the same allegations and seeking the same relief. And similarly, Plaintiffs' "full and fair review" and SPD claims set forth in Counts II and IV through VIII cannot be sustained as independent causes of action because they are based on regulatory provisions that do not provide their own right of action, but instead allow for relief under § 502(a)(1)(B).

Several of these claims fail for other reasons. *See* Sections III–VIII, *infra*. For example,

Plaintiffs have not stated a misrepresentation claim in Counts III or VIII because they fail to plausibly allege that any Defendant breached a fiduciary duty or made a material misrepresentation upon which Plaintiffs relied to their detriment. *See* Section III, *infra*. Additionally, the Plan advisor's role is not a conflict of interest as a matter of law, so Count IV must be dismissed. *See* Section IV, *infra*. Similarly, as to Count VI, while Plaintiffs cite a host of supposed statistics to encourage the Court to draw the inference that various physicians must somehow be financially incentivized to minimize findings of disability—and therefore that Defendants failed to ensure the independence of those involved in the decision-making process—Plaintiffs' factual allegations do not reasonably permit the Court to draw such an inference. *See* Section V, *infra*. And Plaintiffs fail to state a claim for relief under ERISA § 409(a) on behalf of the Plan in Count IX because Plaintiffs do not plausibly allege that any of the Trustees had a conflict of interest or otherwise breached their fiduciary duties, or that the Trustees' conduct harmed the Plan. *See* Section VI, *infra*. But at bottom, all of these claims must be dismissed because Plaintiffs simply "repackage[d] his . . . 'denial of benefits' claim" as claims under § 502(a)(3), § 502(a)(2), and ERISA's implementing regulations. *See Varity Corp. v. Howe*, 516 U.S. 489 (1996).

Finally, the third ERISA principle is that claims for benefits are "enforceable only against the Plan as an entity" and cannot be brought against individual defendants unless those individuals have *independent* control over benefits decisions. *See* 29 U.S.C. § 1132(d)(2). Plaintiffs' claims in Counts I, II, and IV through VII against the Trustees and the Commissioner individually must therefore be dismissed because the collective Board, not the individual Trustees, controls the benefit determinations and there are no allegations that any particular individual did not provide a full and fair review. And all of Plaintiffs' other claims against the

Trustees fail because the Complaint contains no allegations that any individual Trustee or the Commissioner engaged in any individual misconduct that would breach a fiduciary responsibility.  Indeed, the Complaint fails to make any allegations at all against the individual Trustees or the Commissioner beyond that they were members of the Board.  *See* Section VII, *infra*.  Furthermore, all of Plaintiffs' claims against the Commissioner must be dismissed for the independent reason that he is not a fiduciary.  *See* Section VIII, *infra.*

For these reasons, as set forth more fully below, Plaintiffs' Complaint must be dismissed in its entirety.

## **BACKGROUND**

### *The Disability Plan & The Retirement Plan*

Plaintiffs' claims concern the Disability Plan and the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan") (collectively, the "Plans").  These multi-employer benefit plans were established and are maintained through collective-bargaining agreements ("CBAs") between the Management Council and the NFLPA pursuant to the Taft-Hartley Act.[3] *See* Ex. B, April 1, 2021 Ret. Plan Doc. ("RPD"), at 1; Ex. C, April 1, 2021 Disability Plan Doc. ("DPD"), at 1.[4]

---

[3] Unlike conventional, single-employer plans, where the employer may administer its employees' benefit plans, Taft-Hartley plans are administered by a "group of representatives of the parties," i.e., representatives of the employees and employer, such as "a joint board of trustees."  *See* 29 U.S.C. §§ 1002(16)(A)–(B).  These representatives collectively bargain for the plans' provisions, including the benefits terms, and multiple employers fund the plans.  *See id.* § 1002(37)(A); *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pens. Trust for S. Cal.*, 508 U.S. 602, 637–38 (1993).  Here, the NFLPA and the Management Council are the representatives of the players and NFL teams, respectively, and they have collectively bargained for the benefits at issue here.

[4] ERISA mandates that every benefit plan be maintained pursuant to a written plan document.  29 U.S.C. § 1102(a)(1).  Because the Plans are integral to and expressly relied upon by the

The Retirement Plan's predecessor has been in existence since 1962, paying pension, disability, and survivor benefits under rules negotiated between the Management Council and the NFLPA. RPD at 1. The Disability Plan has been in existence since 1993, providing supplemental disability benefits in addition to those provided under the Retirement Plan. Pursuant to the 2011 collective bargaining agreement, a new disability benefit called the neurocognitive benefit was added to the Disability Plan. Subsequently, effective January 1, 2015, most disability and survivor benefits were removed from the Retirement Plan, and were thereafter paid from the Disability Plan. *Id.* Since January 1, 2015, most (but not all) disability benefits are adjudicated under, and paid from, the Disability Plan. *Id.*; DPD § 1.

***The Disability Board & Trustees***

The plan sponsor, the administrator, and named fiduciary of the Disability Plan is the Disability Board of the NFL Player Disability & Survivor Benefit Plan (the "Board" or "Disability Board"). *See* DPD §§ 1.2, 9.1, 9.2; Compl. ¶ 34; 29 U.S.C. §§ 1002(16)(A)–(B), 1102(a)(1). The Board is responsible for a wide range of duties, which include the exercise of "discretionary authority or discretionary control respecting management of [the] plan" and "management or disposition of its assets." 29 U.S.C. § 1002(21)(A).

The Board has six voting members (the Trustees), appointed in equal number by the Management Council and NFLPA. DPD § 9.1; Compl. ¶ 38. No individual Trustee has control

---

Complaint, *see, e.g.*, Compl. ¶¶ 29, 38–40, 47–61, the Court may consider them in resolving this motion. *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (unpublished) (affirming district court's consideration of ERISA plan documents in motion to dismiss ruling); *Juric v. USALCO, LLC*, 2023 WL 2332352, at *3 n.4 (D. Md. Mar. 2, 2023) (considering Summary Plan Description ("SPD") in motion to dismiss ruling); *Gross v. St. Agnes Health Care, Inc.*, 2013 WL 4925374, at *5 (D. Md. Sept. 12, 2013) ("Plaintiff's claims are predicated on her alleged entitlement to benefits under the Policy and her rights under ERISA, and therefore the Plan, the Policy, and the SPD are all integral to the Amended Complaint.").

over individual benefits determinations; rather, the collective Board, which generally requires "at least four affirmative votes" to act, is "responsible for implementing and administering the Plan, subject to the terms of the Plan," and it has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan." DPD §§ 9.2, 9.7; *see also* Compl. ¶ 37. The Commissioner is an *ex-officio*, non-voting member of the Board. DPD § 9.1; Compl. ¶ 38.

***Plan Benefits & Claims Process***

The Disability Plan offers three types of disability benefits to eligible players: total and permanent ("T&P"), line-of-duty ("LOD"), and neurocognitive ("NC"). DPD §§ 3–4 (T&P), 5 (LOD), 6 (NC); Compl. ¶¶ 46–64. Since 2017, the Disability Plan expressly states that, for a player to be found eligible for any of these disability benefits, at least one Neutral Physician must find the player disabled (the "Neutral Rule"). *See* DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3 (describing the role of Neutral Physicians). It further states that, unless a Neutral Physician finds that the player is disabled, "the Player will not be eligible for and will not receive Plan . . . benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity contained in the administrative record." *Id.* §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3. Neutral Physicians must "examine each Player referred by the Plan and . . . provide such report or reports on the Player's condition as necessary for the Disability Board or Disability Initial Claims Committee to make an adequate determination as to that Player's physical or mental condition." *Id.* § 12.3. If a Neutral Physician's report is not sufficient for the Board to "make an adequate determination as to the Player's physical or mental condition," the Board may require the Neutral Physician to provide additional information, or may refer the player to another Neutral Physician for evaluation. *Id.* § 12.3(b).

A Neutral Physician is defined in the Plan as a "physician, institution, or other health care

professional[]" who has been jointly designated by the NFLPA and Management Council. *Id.* A Neutral Physician may be "jointly remove[d] and replace[d]" by the NFLPA or Management Council at any time, or may be unilaterally removed by either the NFLPA or Management Council upon "thirty days . . . notice . . . to the other party." *Id.* Neutral Physicians are paid a flat fee for each examination, and must certify that their compensation does not depend on the outcome of their opinions. *See id.*; *see also* Ex. D, October 2022 Disability Plan Summary Plan Description ("SPD"), at 9, 23, 68.

The three-member Disability Initial Claims Committee (the "Committee") makes the first-level discretionary determination of a player's eligibility for benefits. *See* DPD §§ 9.4, 9.5. The Management Council appoints one member, and the NFLPA appoints another member. The Management Council and the NFLPA jointly appoint the third member—the Plan's Medical Director or other medical professional—who votes only when the other two members are deadlocked. *Id.* § 9.6. The Committee decides claims after considering the report(s) of the Neutral Physician(s) who examined the player, as well as all facts and circumstances in the administrative record, such as a player's medical records. *See id.* §§ 3.1(e), 3.3, 5.1(d), 5.4, 6.1(f), 6.2, 9.5. If the Committee finds the player ineligible for benefits for any reason, including because a Neutral Physician determined that the player was not disabled, the player is advised, *inter alia*, of "the specific reason(s) for the adverse determination," that the player "is entitled to receive, upon request and free of charge . . . copies of, all documents, records, and other information relevant to the claim," and that the player may appeal "the initial decision to the Disability Board." *Id.* § 13.14(a).[5]

---

[5] There are many administrative reasons a player might be ineligible, including not having played enough seasons to qualify, filing an application that is incomplete or too late, or not complying with Plan application procedures. *See generally id.*; *see also* SPD at 4.

On appeal, the player may submit to the Board any additional information he wishes, regardless of whether it was presented or available to the Committee.  "If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination." *Id*.  The Board may submit any medical issue to a Medical Advisory Physician for a final, binding decision on that issue.  *Id*. §§ 9.3(a), 12.2(b).  Medical Advisory Physicians are chosen and removable in the same way as Neutral Physicians, i.e., only by the NFLPA and Management Council, not the Board.  *Id*. §§ 12.2(a)–(b).  A player must be provided any reports of Neutral Physicians or Medical Advisory Physicians in advance of the date of any Board decision, "so that the claimant can have a reasonable opportunity to respond." *Id*.[6]

The Board reviews the initial determination, taking into account the report(s) of the Neutral Physician(s) and all information in the record, whether or not presented to the Committee.  *Id*.  For a player to obtain benefits, the Board must conclude, in its absolute discretion and with no deference to the Committee, that the player meets the relevant requirements of the Plan.  *See id.* §§ 3.1(e), 5.1(d), 6.1(f), 9.2(c), 13.14(a); Compl. ¶ 37.  If the Board denies the claim, it will provide a written explanation of the denial and notify the player that he has a right to sue under ERISA § 502.  DPD §§ 13.14(a)–(b); *see also* 29 C.F.R. § 2560.503-1(o).  The Plans require that players exhaust all administrative remedies prior to filing suit and must file suit challenging any benefit determination within a 42-month limitations

---

[6] Medical Advisory Physicians have "authority to decide only those medical issues submitted by the Disability Board" and "will review all material submitted to the Plan and may arrange for any additional consultation, referral, or other specialized medical services as the [Medical Advisory Physician] deems necessary." *Id.*  Medical Advisory Physicians "may require an applicant to submit to such physical or other examinations as the [Medical Advisory Physician] deems reasonable and necessary." *Id.*  Medical Advisory Physicians then "submit a written determination to the Disability Board on a form provided by the Disability Board." *Id.*

period.  RPD § 12.7; DPD § 13.4; *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989) ("an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates").

**Plaintiffs' Varied Medical Histories and Benefit Applications**

Plaintiffs are ten former NFL players.  They sustained different kinds of injuries; were examined by different Neutral Physicians; received different diagnoses and treatment; sought different benefits; and filed different claims at different times under different versions of the Plans.  Plaintiffs' claims were denied at different times for different reasons, and they allege different errors pertaining to the determination of their claims.  Some received disability benefits under the Plan, some did not.  Some appealed Committee decisions regarding their entitlement to benefits, others did not.  *See generally* Compl. ¶¶ 73–252.

**_Plaintiff Jason Alford_** applied for NC benefits twice, once in 2019 and again in 2022. *Id.* ¶¶ 245, 249.  Both the Committee and the Board denied Mr. Alford's 2019 application under the Neutral Rule after four Neutral Physicians reported that he had no acquired cognitive impairment as defined by the Disability Plan.  *Id.* ¶¶ 245–48; Ex. E, Alford Feb. 14, 2020 Board Decision Letter, at 1–2.[7]  The Committee denied Mr. Alford's 2022 application because: (1) he

---

[7] The Court may consider Plaintiffs' decision letters, which Plaintiffs relied upon in the Complaint and are integral to their claims that they are qualified for disability benefits.  *Williams v. NFL Player Supplemental Disability Plan*, 2020 WL 43113, at *1 n.2 (N.D. Cal. Jan. 3, 2020) (considering Board decision letter on reclassification request attached to motion to dismiss); *Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan*, 249 F. Supp. 3d 570, 577 (D. Mass. 2017) (same); *see also Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1101 (8th Cir. 2000) (noting that a court may consider an administrative record on a motion to dismiss even if not attached to complaint); *Saini v. Cigna Life Ins. Co. of N.Y.*, 2018 WL 1959551, at *1 n.1 (S.D.N.Y. Apr. 24, 2018) (considering administrative record on motion to dismiss because plaintiff's complaint "makes clear that she relied on the documentation included in the Administrative Record in drafting her claims"); *cf. Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*, 70 F. Supp. 2d 580, 593 n.5 (D. Md. 1998) ("Otherwise, a plaintiff with a legally

failed the validity testing administered in connection with his neuropsychological evaluation, and (2) no Neutral Physician reported that Mr. Alford met the Disability Plan's criteria for the NC benefit. Ex. F, Alford April 12, 2022 Comm. Decision Letter, at 1–2. The Board denied Mr. Alford's appeal following its quarterly meeting on February 23, 2023, because no Neutral Physician reported that he met the Disability Plan's criteria for the NC benefit. Ex. G, Alford March 10, 2023 Board Decision Letter, at 1–2.

***Plaintiff Daniel Loper*** applied for LOD benefits in 2018 and again in 2020. Compl. ¶¶ 163, 170. The Committee denied his 2018 application because: (1) he failed to attend a scheduled neurologic evaluation with a Plan Neutral Physician, and (2) he did not satisfy the Neutral Rule because no Neutral orthopedist concluded that he met the threshold for the benefit. Ex. H, Loper Feb. 19, 2019 Board Decision Letter, at 1–2; *cf.* Compl. ¶¶ 163, 167, 169. The Board rejected Mr. Loper's appeal under the Neutral Rule after a second Neutral Physician reached the same conclusion. Ex. H at 2–3. The Committee and Board also denied Mr. Loper's 2020 application under the Neutral Rule after two more Neutral Physicians reported that Mr. Loper's orthopedic impairments did not meet the Disability Plan's Point System standard.[8] Ex. I, Loper Nov. 15, 2021 Board Decision, at 1–2; *cf.* Compl. ¶¶ 172, 176–77.

***Plaintiff Willis McGahee*** applied for T&P benefits in 2016 and 2020. Compl. ¶¶ 103–

---

deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document."), *aff'd sub nom. Md. Minority Contractors Ass'n, Inc. v. Md. Stadium Auth.*, 198 F.3d 237 (4th Cir. 1999).

[8] The Point System for Orthopedic Impairments is "used to determine whether a Player has a 'substantial disablement' within the meaning of Plan Section 5.5(a)(4)(B). [It] assigns points to each orthopedic impairment recognized under the Plan. A Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment," but only if the impairment is from League football activities and is permanent. DPD at 66–79 (App'x A); SPD at 71–88 (App'x A).

09.  The Complaint criticizes the findings of two Neutral Physicians (a neurologist and a neuropsychologist) who evaluated Mr. McGahee in connection with his 2016 application.  *Id.* ¶¶ 104–07.  But Mr. McGahee did not appeal the Committee's August 8, 2016 denial of his 2016 application.  *Cf. id.* ¶ 108; Ex. J, McGahee Aug. 8, 2016 Comm. Decision Letter, at 1–2; DPD §§ 13.4, 13.14 (noting Committee determinations must be appealed to Board within 180 days).  When he reapplied in 2020, four Neutral Physicians examined him at the Committee level, and four more evaluated him on appeal.  Compl. ¶¶ 109–17; Ex. K, McGahee Nov. 22, 2022 Board Decision Letter, at 1.  None reported that he was totally and permanently disabled, and his application was therefore denied under the Neutral Rule.  Ex. K at 1–2.

> **_Plaintiff Michael McKenzie_** applied for, and was denied, T&P benefits in 2018 and 2021.  Compl. ¶¶ 121–40.  Across those two applications, sixteen different Neutral Physicians in four specialties—orthopedics, neurology, neuropsychology, and psychiatry—evaluated Mr. McKenzie, and none determined that he was totally and permanently disabled.  *Cf. id.*; Ex. L, McKenzie Nov. 22, 2019 Board Decision Letter, at 1–2; Ex. M, McKenzie June 6, 2022 Board Decision Letter, at 1–2.  The Board therefore denied both of Mr. McKenzie's applications under the Neutral Rule.  Ex. L at 2; Ex. M at 1–2.

> **_Plaintiff Jamize Olawale_** applied for T&P, LOD, and NC benefits simultaneously in March 2021.  Compl. ¶ 149.  Eight Neutral Physicians across four medical specialties evaluated him.  *Id.* ¶¶ 150–61; Ex. N, Olawale June 6, 2022 Board Decision Letter, at 1.  The Committee and the Board denied Mr. Olawale's T&P and LOD applications under the Neutral Rule because no Plan Neutral Physician reported that he qualified for the benefit.  Ex. N at 1–4.  The Committee denied Mr. Olawale's application for NC benefits because he failed the validity testing associated with his neuropsychological testing (an automatic disqualifier under the

Disability Plan), and as a result no Neutral Physician said he qualified for the benefit (another automatic disqualifier). *Id.* at 4–5. On appeal, the Board upheld the denial under the Neutral Rule after additional neurological and neuropsychological evaluations failed to indicate that he suffered from acquired neurocognitive impairment as defined by the Disability Plan. *Id.* at 5.

**_Plaintiff Alex Parsons_** applied for LOD benefits in 2017. Compl. ¶ 196. His application was based entirely on orthopedic impairments, and the Board denied it under the Neutral Rule on May 18, 2018, after two Neutral Physicians—one orthopedist at the initial level and one on appeal—evaluated Mr. Parsons and reported that he did not meet or exceed the Point System threshold for LOD benefits. *Id.* ¶¶ 199, 208; Ex. O, Parsons May 18, 2018 Board Decision Letter, at 1. Plaintiffs do not allege that Mr. Parsons has applied for any other benefit.

**_Plaintiff Eric Smith_** applied for LOD benefits twice (in 2013 and 2015), and T&P and NC benefits once in a combined application in 2018. Comp. ¶¶ 180–84. When Mr. Smith first applied for LOD benefits, he did so under the Retirement Plan. DPD § 5; RPD § 6. First the Committee and then, on February 14, 2014, the Retirement Board denied Mr. Smith's 2013 LOD application after two Neutral Physicians found that he fell short of the requisite LOD impairment ratings. Ex. P, Smith Feb. 24, 2014 Board Decision Letter, at 1; *see also* RPD § 12.7; *cf.* Compl. ¶ 180. When Mr. Smith reapplied for LOD benefits in 2015, the Committee granted his application based on the findings of a Neutral Physician. DPD § 4; Compl. ¶ 183; Ex. Q, Smith April 13, 2015 Comm. Decision Letter, at 1. Mr. Smith accordingly suffered no adverse decision relating to LOD benefits. *See* DPD §§ 13.4, 13.14.

Three years later, Mr. Smith applied for T&P and NC benefits, again under the Disability Plan. Compl. ¶ 184; Ex. R, Smith Nov. 22, 2019 Board Decision Letter, at 1. The Committee and the Board denied both applications under the Neutral Rule. *See generally* Ex. R; *cf.* Compl.

¶¶ 184–87, 189–92.  All eight Neutral Physicians who examined Mr. Smith reported that his claimed impairments did not cause him to be totally disabled, with the two neuropsychologists and the two neurologists adding that Mr. Smith did not qualify for benefits because he did not have an acquired neurocognitive impairment under the terms of the Disability Plan.  Ex. R.

*Plaintiff Charles Sims* was awarded T&P benefits by the Committee in June 2021 and currently receives $11,250 each month from the Disability Plan.  Compl. ¶ 142; Ex. S, Sims June 11, 2021 Comm. Decision Letter, at 1.  Mr. Sims appealed the Committee's classification of his benefits, seeking to obtain Active Football benefits, the Disability Plan's highest-paying category of T&P benefits.  Compl. ¶ 144.  To determine whether his disability arose while he was an Active Player—a requirement for Active Football eligibility—the Board unanimously referred Mr. Sims to a Medical Advisory Physician for a final and binding determination on that issue under DPD § 9.3.  Ex. T, Sims June 3, 2022 Board Decision Letter, at 1.  The Medical Advisory Physician determined that Mr. Sims did not have "significant psychiatric impairments or any psychiatric cause for disability that arose while an Active Player."  *Id.*; *cf.* Compl. ¶ 145.  Based on that opinion, the Board unanimously denied Mr. Sims's appeal.  Ex. T at 2.

*Plaintiff Joey Thomas* applied for LOD benefits in 2010 under the Retirement Plan. Compl. ¶ 214; DPD § 5; RPD § 6.  The Committee denied the application, and Mr. Thomas did not appeal.  *Cf.* Compl. ¶ 217.  In 2011, Mr. Thomas applied for T&P benefits under the Retirement Plan.  *Id.* ¶ 218; DPD § 5; RPD § 6.  The Committee denied that application, and he again did not appeal.  *Cf.* Compl. ¶ 221.  Mr. Thomas reapplied under the Retirement Plan for LOD benefits in 2012.  *Id.* ¶ 222.  The Committee denied that application, and he again did not appeal.  In 2014, he applied for LOD and NC benefits.  *Id.* ¶ 226.  The Committee denied the application in May 2014, and Mr. Thomas also failed to appeal that decision.  *Cf. id.* ¶ 232.

In 2019 Mr. Thomas applied for NC benefits under the Disability Plan. *Id.* ¶ 233; Ex. U, Thomas Feb. 13, 2020 Board Decision Letter, at 1. At the initial level, the Committee denied Mr. Thomas's 2019 NC application under the Neutral Rule because neither of the two Neutral Physicians who evaluated him concluded that he had an acquired neurocognitive impairment. Ex. U at 1. Mr. Thomas appealed this decision, and on appeal the Board denied his application on the same basis after two additional Neutral Physicians determined that he did not have a neurocognitive impairment. *Id.* at 1–2. In 2021, Mr. Thomas applied for NC benefits again. Compl. ¶ 241. The Committee denied his application under the Neutral Rule because no Neutral Physician reported that he qualified for the benefit. *Id.* ¶¶ 241–42. Mr. Thomas appealed the Committee's determination, and he concedes in the Complaint that his "appeal remains pending." *Id.* ¶ 242. At the quarterly Board meeting that occurred on February 23, 2023, the Board referred Mr. Thomas's appeal to a Medical Advisory Physician for a final, binding decision on the medical issues in his appeal, where it remains today. Ex. V, Thomas, March 9, 2023 Board Decision Letter, at 1–2.

**_Plaintiff Lance Zeno_** applied for NC benefits in September 2020. Compl. ¶ 75. Six Neutral Physicians evaluated Mr. Zeno and reached conflicting conclusions. *See, e.g.*, *id.* ¶¶ 76–83 (Dr. Delis and Dr. Desadier "jointly concluded that Plaintiff Zeno showed 'no' evidence of even mild acquired neurocognitive impairment"); *id.* ¶ 87 (Dr. Drag and Dr. Ellis "jointly concluded after evaluating Plaintiff Zeno that he did, in fact, show objective evidence of acquired mild neurocognitive impairment"). The Board therefore referred Mr. Zeno to a Medical Advisory Physician for a final and binding opinion as to whether he qualified for the benefit. *Id.* ¶ 88. The Medical Advisory Physician determined that Mr. Zeno was not impaired, and the Board followed that final and binding opinion as the terms of the Plan require. *Id.* ¶ 98; Ex. W,

14

Zeno Nov. 22, 2022 Board Decision Letter, at 2.

## LEGAL STANDARD

Under Rule 12(b)(6), a party may seek dismissal for failure to state a claim upon which relief can be granted. To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To qualify as plausible, a claim must be more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show that there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, in ruling on a motion to dismiss, the Court should not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022), and may "draw on its . . . common sense." *Desper v. Clarke*, 1 F.4th 236, 245 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

I.    **PLAINTIFFS' § 502(a)(1)(B) CLAIMS (COUNT I) MUST BE DISMISSED BECAUSE THE CLAIMS WERE PROPERLY DENIED IN ACCORDANCE WITH PLAN TERMS**

The core of Plaintiffs' Complaint is their allegation that they were denied disability benefits to which they were entitled. Defendants agree that § 502(a)(1)(B) generally permits participants in the Disability Plan to bring timely actions in federal court for review of such denials. The Board's decisions are subject to review only for abuse of discretion. *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321–22 (4th Cir. 2008); *Boyd v. Bert*

*Bell/Pete Rozelle NFL Player Ret. Plan*, 796 F. Supp. 2d 682, 689 (D. Md. 2011).

To establish entitlement to benefits under ERISA, a plaintiff must plausibly allege that he is entitled to benefits. *See* 29 U.S.C. § 1132(a)(1)(B). The cornerstone of this analysis "turn[s] on the interpretation of the terms in the plan." *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989); *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819–21 (4th Cir. 2013) (examining language of plan provision to determine eligibility); *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002) (explaining that eligibility turned on definition of "disability" under the terms of the plan); *see also Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000) (outlining the factors to consider when conducting an individualized review of a benefit claim, including "the language of the plan"). The Fourth Circuit has made clear that ERISA requires courts to enforce "the plain language of [the] ERISA plan . . . in accordance with its literal and natural meaning," *Sereboff*, 407 F.3d at 220, because ERISA's "statutory scheme . . . is built around reliance on . . . written plan documents." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–02 (2013) (explaining that ERISA provides relief under "the terms of the plan," because of its "principal function: to protect contractually defined benefits"); *see also Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 132 F. Supp. 3d 676, 679–80 (D. Md. 2015) (granting a motion to dismiss due to plan's lack of ambiguity and noting the plaintiff's interpretation would be inconsistent with the plan).

Here, as Plaintiffs themselves acknowledge, the Board denied their claims in accordance with the terms of the Plan. Plaintiffs thus cannot (and do not) allege that their benefit claims satisfied the Plan's eligibility requirements. Nor have they presented any other allegations sufficient to disturb the Board's determinations. Accordingly, their denial of benefits claims must be dismissed as a matter of law. *See Firestone*, 489 U.S. at 111; *Evans*, 514 F.3d at 322.

16

A.    **The Board Properly Denied Plaintiffs' Benefit Claims Consistent with the Plain and Unambiguous Terms of the Plan**

Although Plaintiffs' individual § 502(a)(1)(B) claims vary in multiple ways that would preclude any possibility of a collective determination of their claims,[9] each Plaintiff's claim individually fails because all claims were properly adjudicated and denied in accordance with the Plan's rules.  Plaintiffs acknowledge that their claims for benefits were subject to the Neutral Rule and the Medical Advisory Physician process set forth in the Plan.  In particular, the Plan expressly requires that, for a player to be found eligible for disability benefits, at least one Neutral Physician must find the player disabled (i.e., the Neutral Rule).  *See* DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3.  If no Neutral Physician finds that the player is disabled, then "the Player will not be eligible for and will not receive Plan . . . benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity contained in the administrative record."  *Id.* §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3.

The Plan also expressly provides for a Medical Advisory Physician review process,

---

[9] If the Court does not find that the Board properly denied Plaintiffs' claims under the terms of the Plan, the Court will have to individually review each Plaintiff's decision under § 502(a)(1)(B).  *Korotynska*, 474 F.3d at 106.  Because of the individualized nature of that inquiry, Plaintiffs' joinder is not appropriate under Rule 20 of the Federal Rules of Civil Procedure.  Joinder is appropriate only if the claims arise out of "the same transaction, recurrence, or series of transactions or occurrences" and present a common question of law or fact.  Fed. R. Civ. P. 20(a)(1).  The Fourth Circuit has held that Rule 20 should be construed in light of its purpose, which is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).  The transaction or occurrence test permits only "reasonably related claims for relief by or against different parties to be tried in a single proceeding."  *Id.*  Plaintiffs' claims are not reasonably related.  They have different medical histories, had different careers that allegedly caused different disabilities, and seek different benefits.  They applied for different benefits, saw different physicians, and had their claims denied for different reasons by different decisionmakers under different provisions of different versions of different plans.  Joining these claims would not lead to convenience or the expeditious final determination of Plaintiffs' claims because the Court will have to wade through the thicket of all these factual differences.

which authorizes the Board to submit any medical issue presented in a player's claim on appeal

to a Medical Advisory Physician whose decision on the medical issue will be final and binding.

*Id.* §§ 9.3(a), 12.2(b).  Plaintiffs do not allege the Board's interpretation of the relevant Plan

provisions is an abuse of discretion, or even that any of these provisions are ambiguous or not

binding on the disposition of their claims.  Indeed, Plaintiffs correctly recite the Neutral Rule's

threshold requirement and the final, binding nature of the Medical Advisory Physician's

determinations.  *See* Compl. ¶¶ 44–45, 56, 59, 63, 257.

Under ERISA, the Board is "not free to alter the terms of the plan or to construe

unambiguous terms other than as written," which would constitute an abuse of discretion.

*Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005), *abrogated on*

*other grounds by Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th Cir. 2008).

Critically here, Plaintiffs admit that no Neutral Physician found that Mr. Alford, Mr. Loper,

Mr. McGahee, Mr. McKenzie, Mr. Olawale, Mr. Parsons, or Mr. Thomas qualified for the

benefits they seek to obtain here.  *See supra*; Compl. ¶¶ 245–48 (Alford); 163, 167, 176–77

(Loper); 104–17 (McGahee); 121–40 (McKenzie), 150–61 (Olawale); 199, 208 (Parsons); 184–

87, 189–92 (Smith).  As to Mr. Sims, a Neutral Physician found him qualified for T&P benefits,

and he receives $11,250 each month, but the Medical Advisory Physician's finding that he did

not qualify for a higher level of benefits is binding under the Plan.  Compl. ¶ 145.  Similarly,

although no Neutral Physician found Mr. Smith totally and permanently disabled, a Neutral

Physician did find that Mr. Smith met the requirements for LOD benefits, which he was granted.

*Id.* ¶¶ 183–90.  Finally, the determination of two Medical Advisory Physicians that Mr. Zeno

was not impaired at the level he sought is similarly final and binding.  *Id.* ¶¶ 88–98. By their

own admission, Plaintiffs were thus not eligible for benefits under the Plan's unambiguous

terms, and their claims should be dismissed in accordance with the numerous other cases upholding the Board's denials of benefits. *See, e.g.*, *Boyd*, 796 F. Supp. 2d at 690–91; *Bryant v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2015 WL 13908103, at *5 (N.D. Ga. Mar. 23, 2015) (same); *see also Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 613 F. App'x 418 (5th Cir. 2015) (unpublished); *Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 583 F. App'x 413, 414 (5th Cir. 2014) (unpublished); *Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082, 1088 (8th Cir. 2006); *Schlichter v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 2017 WL 1001204, at *5 (S.D. Ind. Mar. 15, 2017); *Schwager v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2010 WL 481232, at *5 (D. Md. Feb. 4, 2010); *Morris v. NFL Ret. Bd.*, 833 F. Supp. 2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir. 2012) (unpublished).

In addition, and as demonstrated in the administrative record, some Plaintiffs' claims are separately barred because they failed to exhaust their administrative remedies by not appealing the Committee's determination to the Board within 180 days, as the Plan requires, *see* DPD § 13.14; *see also Makar*, 872 F.2d at 82, or because this suit was brought after the Plan's 42-month contractual limitations period expired. *See* DPD § 13.4. Specifically:

- **Mr. Loper** cannot challenge the Board's February 19, 2019 denial of his benefits, Ex. H at 1; *cf.* Compl. ¶ 169, because any challenge of that decision is time barred. *See* DPD § 13.4.

- **Mr. McGahee** may not challenge the Committee's August 8, 2016 initial determination because he never appealed the Committee's determination and therefore failed to exhaust his administrative remedies. Ex. J at 1; DPD § 13.14; *cf.* Compl. ¶ 108. But even if he had appealed and received a final decision, any challenge to that decision is time barred. *See* DPD § 13.4.

- **Mr. McKenzie** may not challenge the Board's November 22, 2019 denial of his benefits,

19

Ex. L at 1; *cf.* Compl. ¶ 133, because any challenge of that claim is time barred.  *See* DPD § 13.4.

- **Mr. Parsons** may not challenge the Board's May 18, 2018 denial of his benefits, Ex. O at 1; *cf.* Compl. ¶ 210; because any challenge to that decision is time barred.  *See also* DPD § 13.4.

- **Mr. Smith** cannot challenge the Board's February 24, 2014 denial of his 2013 application, *see* Ex. P at 1; *cf.* Compl. ¶ 180, because any challenge to that decision is time barred by the Retirement Plan's 42-month limitations provision, *see* RPD § 12.7, and he has no claim with respect to the 2015 LOD application because he was approved for LOD benefits in 2015. Compl. ¶ 183.

- **Mr. Thomas** cannot challenge the Committee's January 25, 2011 determination on his 2010 LOD benefit application, Compl. ¶ 217; its December 20, 2011 determination on his T&P benefit application, *id.* ¶ 221; its January 24, 2013 determination on his LOD benefit application, *id.* ¶ 223; or its May 23, 2014 determination on his LOD and NC application, *id.* ¶ 232, because he did not appeal any of those determinations and therefore failed to exhaust his administrative remedies.  *See* RPD § 12.6.  Even if he had appealed those decisions, any challenge would be time barred by the Retirement Plan's limitations provision.  *Id.* § 12.7.

In sum, because Plaintiffs' own allegations and records make clear that their claims for benefits fail to satisfy the unambiguous eligibility requirements under the terms of the Plan, they should be dismissed as a matter of law.

### B.   Plaintiffs Have Not Plausibly Alleged Any Conflict of Interest on Behalf of the Board to Support Their Claim for Benefits

Plaintiffs do not set forth any other plausible allegations that warrant disturbing the Board's decisions to deny their claims for disability benefits.  Plaintiffs do not offer any

allegations that the Board, half of which is appointed by the NFLPA and consists of retired NFL players, is improperly motivated to deny players' meritorious disability claims. Plaintiffs do not allege, for instance, that Board members personally benefit in any way from the denial of disability benefits. Indeed, the Plan is funded by NFL Clubs, not players, the Board, or Board members. *See, e.g.*, Ex. A at 3, 49 (showing 32 employers obligated to contribute and contributing $255,800,000 in 2021).

The Complaint similarly offers no explanation of the mechanism by which Neutral Physicians are supposedly financially incentivized to render medical determinations that are adverse to players. The Disability Plan shows that Neutral Physicians are paid a flat fee regardless of the outcome of their examinations. DPD § 12.3(a); *see also* Ex. E at 2; Ex. H at 3; Ex. I at 2; Ex. K at 3; Ex. L at 3; Ex. M at 3; Ex. N at 3. There is no allegation that the Disability Plan failed to adhere to this flat-fee requirement, and the Complaint affirmatively denies that referrals to Neutral Physicians for examinations are based on statistics concerning their past medical opinions. Compl. ¶ 41 (Board "does not maintain statistics of the rate of findings of disability by its designated physicians" or "maintain[] management checks on the statistics of rate of claims denied or granted by individual 'Neutral Physicians'"). And the Disability Plan's payment of ***more than a billion dollars*** of benefits over the last six years makes plain that Neutral Physicians frequently render medical decisions upholding disability claims, often in substantial amounts. *See* DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3.

Perhaps unsurprisingly then, courts have rejected Plaintiffs' conflict-of-interest theory. *See, e.g.*, *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020) ("[T]he Plan does not have a structural conflict that needed to be mitigated as the Board consists equally of player representatives and NFL representatives. Therefore, although

21

given the frequency and amount of compensation the Plan-retained physicians had a financial interest in continuing to be retained by the Plan, it is difficult to discern why the physicians might infer that an opinion in favor of no disability would be more likely to lead to future retention."), *aff'd and remanded on other grounds*, 855 F. App'x 332 (9th Cir. 2021) (unpublished).  And courts in this District have already determined that the Board does not have a conflict of interest.  *See Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 716–17 (D. Md. 2012); *Boyd*, 796 F. Supp. 2d at 690–91 & n.2; *Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2011 WL 10005532, at *2 (D. Md. Jan. 13, 2011).  Plaintiffs' § 502(a)(1)(B) claims (Count I) must therefore be dismissed.

## II.    THE COURT SHOULD DISMISS COUNTS II–VIII AS A DISJOINTED COLLECTION OF "REPACKAGED" ERISA BENEFIT CLAIMS

The Complaint expressly asserts that each Plaintiff suffered "the same injury—the wrongful denial of benefits."  Compl. ¶ 279.  But in addition to bringing a claim for benefits pursuant to § 502(a)(1)(B) in Count I, Plaintiffs assert eight other counts that repackage their claims for benefits into claims for equitable relief under § 502(a)(3) or § 502(a)(2), or into independent causes of action under § 503 or its implementing regulations.  As explained more fully below, ERISA does not permit plaintiffs to assert these separate causes of action and therefore Counts II through VIII must be dismissed.

### A.    Plaintiffs' Section 502(a)(3) Claims (Count III and VIII) Should Be Dismissed As Duplicative of Count I

In Count I, Plaintiffs allege that the Committee, Board, or both improperly and unreasonably denied their claims for benefits by failing to comprehensively review their benefit applications and relying on doctors who had an improper financial interest in the outcome of their decisions.  Compl. ¶¶ 283–89.  Counts III and VIII purport to repackage these same

allegations under § 502(a)(3).[10]  *Id.* ¶¶ 298–305, 322–24.  But § 502(a)(3) is a "catchall"

provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by

violations that [§ 1132] does not elsewhere adequately remedy."  *Varity*, 516 U.S. at 512.

"[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will

likely be no need for further equitable relief, in which case such relief normally would not be

'appropriate.'"  *Id.* at 515.  Because § 502(a)(1)(B) allows Plaintiffs to "obtain individualized

review of an allegedly wrongful denial of benefits," *Korotynska*, 474 F.3d at 106, and to

"recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C.

§ 1132(a)(1)(B), independent relief under § 502(a)(3) is not available to them as a matter of law.

   *Korotynska* is dispositive.  There, as here, the plaintiff brought a putative class action

under § 502(a)(3) for "reform of 'the systemic improper and illegal claims handling practices

that [MetLife] use[d] to deny her and other ERISA beneficiaries a full and fair review of their

claims."  *Korotynska*, 474 F.3d at 104.  The plaintiff alleged deficiencies in MetLife's

procedures that mirror those Plaintiffs allege here: (1) denying "claims that have self-reported

symptoms . . . without due regard for the actual impact of the claimants' conditions"; (2)

ignoring "subjective complaints"; (3) failing to consider "all comments, documents, records and

other information" under 29 U.S.C. § 2560.503-1(h)(2)(iv); and (4) improperly relying on

---

[10] Section 502(a)(3) provides that a "civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  "To establish a violation of Section 502(a)(3), a plaintiff must show a violation of an ERISA provision, and that the relief sought constitutes 'appropriate equitable relief.'"  *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 612 F. Supp. 3d 516, 540 (D. Md. 2020) (quoting *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 363–64 (4th Cir. 2015)).

"Medical Examinations from Interested Physicians." *Id.* at 103, 105.  The plaintiff sought "full and fair review of claims . . . that [were] denied or terminated, as well as other appropriate equitable relief," maintaining that she was not seeking review under § 502(a)(1)(B), but rather only equitable relief under § 502(a)(3) to correct MetLife's procedures. *Id.* at 104.  The Fourth Circuit affirmed that the plaintiff's § 502(a)(3) claim was foreclosed because she "had available to her the alternative remedy of bringing an action under (a)(1)(B)"—even though she did not actually do so. *Id.* at 104–06.

As in *Korotynska*, Plaintiffs' § 502(a)(3) claim is nothing more than a "repackaged" claim for benefits under § 502(a)(1)(B) that is unavailable as a matter of law and accordingly must be dismissed.  Both claims are based on the same theories and facts, i.e., various alleged procedural deficiencies in the adequacy of the review that led to the denial of benefits, and the alleged injuries for both claims "consist[] of a denial of benefits." *See id.* at 106–07.  Plaintiffs advance no independent facts, theories, or injuries for their § 502(a)(3) claim, but instead have "simply 'repackaged' a § 502(a)(1)(B) claim for the wrongful denial of benefits," which warrants dismissal of the § 502(a)(3) claim. *See Juric*, 2023 WL 2332352, at *5 (quoting *Campbell v. Rite Aid Corp.*, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014)); *Varity*, 516 U.S. at 512–15; *Korotynska*, 474 F.3d at 106–07.[11]

---

[11] Other courts in this Circuit have reached similar conclusions. *See, e.g.*, *Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020) ("[t]he injunctive relief and equitable accounting and disgorgement sought under § 1132(a)(3) seek to remedy the same injury that the § 1132(a)(1)(B) claim does: the wrongful denials of plaintiff and the putative class members' claims for coverage"); *Archer v. SunTrust Bank*, 2017 WL 6550390, at *2 (E.D. Va. Dec. 22, 2017) (the plaintiffs' "breach of fiduciary duty count essentially reformulates [the] denial of benefits claim" because they do "not state any independent factual basis for [the] fiduciary duty claim"); *Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*, 2017 WL 1155807, at *8 (M.D.N.C. Mar. 27, 2017) (explaining that *Varity* precludes "concurrent pleading" of § 502(a)(3) and § 502(a)(1)(B) claims based on same injury and facts

Here, each Plaintiff has a different story for why he believes the Board wrongfully denied his application. Some Plaintiffs allege inconsistencies in the Committee report, while others allege inconsistencies in the Board determination; some allege that the Committee failed to consider subjective evidence or weighed the submitted evidence incorrectly, while others allege that the Board did so; some allege that Neutral Physicians required unnecessary medical evidence, while others allege that Neutral Physicians failed to consider the collective effect of impairments; some allege that Medical Advisory Physicians used improper standards, while others allege that Neutral Physicians did so; some allege that the Board improperly used boilerplate denial language and relied on Neutral Physicians too heavily, while others do not. These allegations must be considered through an individualized review of each Plaintiff's § 502(a)(1)(B) benefit claim, not through an improper § 502(a)(3) claim for equitable relief. *See Korotynska*, 474 F.3d at 106 (explaining that § 502(a)(1)(B) "squarely addresse[d]" the plaintiff's complaint that "MetLife's allegedly improper claims procedures injured her by leading to the denial of benefits to which she was rightly entitled").

If equitable relief under § 502(a)(3) were available in this case or in cases like it, "*every wrongful denial of benefits could be characterized as a breach of fiduciary duty.*" *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996). This would transform § 502(a)(3) from a "safety net" to a "first line of attack, an outcome at odds with both the plain language of § 1132(a)(3) and the statutory structure of § 1132." *See Korotynska*, 474 F.3d at 108 & 108 n.3; *cf. England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779–80 (D. Md. 2011) (declining to dismiss § 502(a)(3) claim because plaintiffs had no right to

_____

and collecting cases of Fourth Circuit district courts dismissing § 502(a)(3) claims at the motion to dismiss stage (citing *Korotynska*, 474 F.3d at 106–07)).

recover under the terms of the plan). Because the ultimate purpose of the equitable relief

Plaintiffs seek is to secure or clarify their benefits, § 502(a)(1)(B) provides them adequate relief.

*See Korotynska*, 474 F.3d at 107–08; *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of*

*Bethesda, LLC*, 2015 WL 4394408, at *30 (D. Md. July 15, 2015). Here, because § 502(a)(1)(B)

review is fully available to Plaintiffs, § 502(a)(3) relief is not necessary or appropriate, and

Count III of their Complaint should be dismissed with prejudice. *See Moore v. Verizon*

*Commc'ns, Inc.*, 2022 WL 16963245, at *7 (E.D. Va. Nov. 15, 2022) ("In sum, '[w]hen a

beneficiary simply wants what was supposed to have been distributed under the plan, the

appropriate remedy is [a] § [1132](a)(1)(B) [claim].'" (quoting *Coyne*, 102 F.3d at 715)

(alterations in *Moore*)).[12]

Relatedly, Plaintiffs allege similar "injuries" in Count VIII relating to the SPD. *See*

Compl. ¶¶ 322–24. Plaintiffs rely on 29 C.F.R. § 2520.102-3(t)(1). That regulation requires that

"the style and format of the [SPD] shall not have the effect of misleading, misinforming or

failing to inform participants and beneficiaries of a plan." 29 C.F.R. § 2520.102-3(t)(1). But it

is not an independent cause of action. *See, e.g.*, *Bolone v. TRW Sterling Plant Pension Plan*, 130

F. App'x 761, 766 (6th Cir. 2005) (unpublished) (holding that violations of procedural sections

of ERISA do not give rise to claims for substantive damages); *Shah v. Blue Cross Blue Shield of*

---

[12] Plaintiffs selectively quote from a number of cases in the complaint, Compl. ¶ 18, including *Cloud* and *Dimry*, but omit the fact that the plaintiffs in many of those cases brought § 502(a)(1)(B) claims, demonstrating that such relief is available and adequate. And in every instance where the defendant challenged a § 502(a)(3) claim as foreclosed by the availability of a § 502(a)(1)(B) claim, the court agreed and dismissed the § 502(a)(3) claim. *See* Order, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex. Dec. 27, 2021), ECF No. 133 (dismissing § 502(a)(3) claim as unavailable in light of § 502(a)(1)(B) claim); Order re Motion to Dismiss, *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:16-cv-01413-JD (N.D. Cal. June 14, 2016), ECF No. 33 (dismissing § 502(a)(3) claim for failure to state a claim). This Court should do so as well.

*Tex.*, 2018 WL 1293164, at *6 (D.N.J. Mar. 13, 2018) (holding that neither § 102 nor 29 C.F.R.

§ 2520.102-2 provides a cognizable cause of action).

**B.**    <u>**Plaintiffs' "Full and Fair Review" Claims (Counts II and IV–VII) Should Be**</u>
     <u>**Dismissed As Derivative of Their § 502(a)(1)(B) Claims**</u>

Counts II and IV through VII similarly seek to redress the same supposedly wrongful

denial of benefits by alleging various asserted process errors.  In Count II, Plaintiffs claim

Defendants violated ERISA § 503(2) by denying them a "full and fair review of adverse benefits

determinations" by failing to consider "all records and documents," not "provid[ing] fair and

neutral physicians," and improperly relying on the same advisors to decide claims at both the

Committee and Board levels.  Compl. ¶¶ 290–97.  In Count IV, Plaintiffs allege that Defendants

"failed to review disability benefits applications appeals *de novo* by relying on . . . advisors . . .

who were involved in the initial Committee's determinations."  *Id.* ¶¶ 306–09.  Count V alleges

that Defendants failed to "consider 'all comments, documents, records, and other information

submitted by the claimant,'" and instead reviewed only summary sheets prepared by advisors.

*Id*. ¶¶ 311–13.  In Count VI, Plaintiffs claim that Defendants failed to ensure "the independence

and impartiality of the persons involved in making" benefits decisions by relying on "sham"

Neutral Physicians.  *Id.* ¶¶ 314–19.  Count VII alleges that Defendants failed to "establish

administrative processes and safeguards to ensure that Plan provisions have been applied

consistently to similarly situated applicants."  *Id.* ¶ 321.

As with Plaintiffs' § 502(a)(3) claim, these alleged procedural deficiencies can be

considered only in connection with an adequately pleaded claim under § 502(a)(1)(B).  Plaintiffs

are not entitled to pursue independent relief under § 503 or the regulations they invoke.  *See, e.g.*,

*Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.*, 2022 WL 17607056, at *5 (M.D.N.C.

Dec. 13, 2022) (holding that count brought under § 503 was improperly duplicative of claim for

benefits under § 502(a)(1)(B)); *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997) (reviewing the defendants' compliance with § 503 to decide the plaintiff's claim that he was denied a "full and fair review" under § 502(a)(1)(B) because the defendants failed to notify him of the reasons for his denial of benefits); *Vaughan v. Celanese Americas Corp.*, 339 F. App'x 320, 327 (4th Cir. 2009) (unpublished) (affirming district court's review under *Booth* to determine whether the defendants' procedures provided a "full and fair review"); *Hall v. Metro. Life Ins. Co.*, 259 F. App'x 589, 592–93 (4th Cir. 2007) (unpublished) (reviewing claim that the plan participant did not receive a full and fair review under § 502(a)(1)(B) by considering the "safeguards in 29 U.S.C. § 1133 and the implementing regulations"); *Clark v. Fed. Express Corp.*, 2009 WL 10727182, at *4 (D. Md. Apr. 1, 2009) (reviewing compliance with § 503 and implementing regulations under § 502(a)(1)(B)).

Moreover, courts consistently hold that neither § 503(2), nor the various regulations upon which Plaintiffs rely, authorize a private cause of action. *See, e.g.*, *Bryson v. United Healthcare Ins. Co.*, 2015 WL 4026009, at *3–4 (W.D.N.C. July 1, 2015) ("'Section 502(a) provides the exclusive statement of civil actions available under ERISA to the Secretary of Labor, participants, beneficiaries, and fiduciaries.' Accordingly, Plaintiffs' cause of action brought under 29 U.S.C. § 1133(a) is not valid." (quoting *Coyne*, 102 F.3d at 714)); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3610486, at *5 (D.N.J. Aug. 22, 2017); *Shah*, 2018 WL 1293164, at *6 (holding that neither § 102 nor 29 C.F.R. § 2520.102-2 provides a cognizable cause of action). Each of Counts II and IV through VII should also be dismissed for this reason.

## III.    PLAINTIFFS' MISREPRESENTATION CLAIMS (COUNTS III AND VIII) ARE INDEPENDENTLY DEFICIENT AS A MATTER OF LAW

Count III alleges that Defendants breached their fiduciary duty of loyalty by falsely

representing that "Neutral Physicians" are in fact neutral, and that the Committee and Board review all submitted information when determining claims.  Compl. ¶¶ 298–305.  Count VIII makes similar allegations with respect to the SPD.  *Id.* ¶¶ 322–24.

To plead an ERISA breach of fiduciary duty claim based on a misrepresentation, a plaintiff must plausibly allege: "[(1)] that a defendant was a fiduciary of the ERISA plan, [(2)] that a defendant breached its fiduciary responsibilities under the plan, and [(3)] that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan."  *Juric*, 2023 WL 2332352, at *6 (quoting *Adams v. Brink's Co.*, 261 F. App'x 583, 589–90 (4th Cir. 2008) (unpublished)).  In cases where a plaintiff asserts a breach of fiduciary duty based on material misrepresentations, "a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations, the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment."  *Id.*  Finally, to state a claim for breach of the duty of loyalty, a plaintiff must plausibly allege that the fiduciary "acted with the purpose of benefitting itself or a third party."  *See, e.g.*, *Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021) (citing *Reetz v. Lowe's Cos.*, 2019 WL 4233616, at *5 (W.D.N.C. Sept. 6, 2019)); *Smith v. Shoe Show, Inc.*, 2022 WL 583569, at *8 (M.D.N.C. Feb. 25, 2022); *Williams v. Centerra Grp., LLC*, 2021 WL 4227384, at *6 (D.S.C. Sept. 16, 2021).

Here, the Complaint contains no allegations that any supposedly misrepresented information "was material" or "relied upon to [Plaintiffs'] detriment."  *See Juric*, 2023 WL 2332352, at *6.  *Cf. Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003) (holding that to prove detrimental reliance, plaintiffs needed to establish that each member of the proposed class relied on the defendants' alleged misrepresentations); *Aiken v. Policy*

*Mgmt. Sys. Corp.*, 13 F.3d 138, 141 (4th Cir. 1993) ("[t]o secure relief, [the claimant] must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description"). There are also no allegations that Plaintiffs were told that "Neutral Physician" meant something other than how it is defined in the Disability Plan or SPD. *See, e.g.*, *Juric*, 2023 WL 2332352, at *7 (explaining that the plaintiff vaguely stated without elaboration that the defendants "wrongfully misrepresented" the plan but failed to allege any specific details or that he was told something other than what occurred). Indeed, "Neutral Physician" cannot be a misrepresentation because it is a defined term, only susceptible of one interpretation—the identical definition that appears in both the Plan (DPD § 12.3) and SPD (at 9, 23, 68). *See, e.g.*, *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1210 (M.D.N.C. 1996).

Plaintiffs also allege that misrepresentations were made in denial letters. Specifically, they allege that the Committee and Board represented that they reviewed the entire record, but must not have because they did not explicitly cite certain information. *See, e.g.*, Compl. ¶¶ 113, 118, 136, 140, 143, 155–56, 161, 174–75, 210, 236, 240, 248, 250. But even if the denial letter did not cite every single piece of information, it is of no consequence as a matter of law because ERISA does not require the Board to do so. The Board simply needs to give a reasoned explanation of its decision. *See Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 129, 161 (E.D.N.Y. 2019) (adopting magistrate judge's recommendation that the fact that defendant did not specifically cite to certain records in their denials "does not mean this evidence was ignored"). ERISA does not require that denial letters recite the minutiae of every player's medical history. *See generally* 29 C.F.R. § 2560.503-1(j)(6); *Adkins v. Holland*, 216 F. Supp. 2d 576, 579 (S.D.W. Va. 2002) (granting motion to dismiss claim alleging failure to provide adequate reasons for denial in violation of § 2560.503-1), *aff'd*, 87 F. App'x 886 (4th Cir. 2004)

(unpublished).

Plaintiffs' related allegations that there is "no evidence" that the Committee or Board reviewed certain information, *see* Compl. ¶¶ 118, 188, are also insufficient because, for an allegation to be plausible, it must be more than merely conceivable or speculative. *See Holloway*, 32 F.4th at 299. Plaintiffs purport to rely on a Board member's testimony in *Cloud* as the basis of their allegations that Board members do not review the administrative record (and that any statements to the contrary must therefore be misrepresentations). *See* Compl. ¶¶ 177, 292. But the actual testimony, which is incorporated into the Complaint by virtue of Plaintiffs citing it,[13] says no such thing. Dick Cass, a former Management Council-chosen Board member, testified that, in preparing for Board meetings, he would "look at the materials and . . . try to understand exactly what the issues were on appeal . . . [and] would look at the documents that [he] thought were pertinent." Ex. X at 4, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex.), Trial Tr. ("*Cloud* Tr."), vol. 3, 59:16–19. Robert Smith, a current NFLPA-chosen Board member, merely stated that he did not personally "review the entire file," noting that, with 114 cases to review for a Board meeting, there could be between 11,000 and 115,000 pages. Ex. Y at 4, *Cloud* Tr. vol. 5, 81:6–8. Notably, the particular type of claim at issue in *Cloud* was a "reclassification" case arising under old Plan procedures that required players to present new evidence of changed circumstances. Mr. Cass and Mr. Smith both testified that they reviewed the relevant new evidence.

Moreover, contrary to Plaintiffs' allegations, simply because individual Board members may rely on others to summarize the tens of thousands of pages of medical records for each

---

[13] *See King v. Nalley*, 2017 WL 4221062, at *2 (D. Md. Sept. 21, 2017), *aff'd*, 737 F. App'x 163 (4th Cir. 2018) (unpublished); *Burgess v. Balt. Police Dep't*, 2016 WL 795975, at *3 n.3 (D. Md. Mar. 1, 2016).

meeting, some of which date from the player's college career, *see* Ex. X at 7, *Cloud* Tr. vol. 3,

178:12–16, does not mean that the Board did not review the players' records.  In fact, the

Disability Plan expressly authorizes the Board to rely on others for this kind of intensive

document review by providing the Board discretion to delegate certain powers and duties.  *See*

DPD § 9.2(f) (explaining that the Board may "[d]elegate its power and duties to other persons

. . . or otherwise act to secure specialized advice or assistance, as it deems necessary or desirable

in connection with the administration of the Plan").  And fiduciaries may rely on advisors

without compromising their duties.  *See Brundle ex rel. Constellis Emp. Stock Ownership Plan v.*

*Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019) (seeking expert advice can show

prudence); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) (same); *Geddes*

*v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006) (holding that an

administrator may delegate discretionary authority to non-fiduciaries without compromising

fiduciary duties, particularly when the plan authorizes such delegation).

Moreover, Count VIII is based on a fundamental misunderstanding of § 102 and its

implementing regulation at 29 C.F.R. § 2520.102-3(t)(1).  Section 102 is used to remedy

situations where an SPD has a material deficiency, such as omitting actual, material terms of the

plan, not where, as here, a plaintiff believes that an ERISA plan's actual practices have departed

from a defined term.  *See, e.g.*, *Frommert v. Conkright*, 738 F.3d 522, 532 (2d Cir. 2013); *cf.*

*Hudson v. NFL Mgmt. Council*, 2019 WL 4784680, at *1–2 (S.D.N.Y. Sept. 30, 2019)

(dismissing § 102 claim because SPD was written to be "understood by the average plan

participant" and was "accurate and comprehensive" to "apprise such participants and

beneficiaries of their rights and obligations").  Plaintiffs' true complaint is their unsupported

belief that the physicians who examined them were not truly neutral—not that the SPD's

definition of "Neutral Physician" should be changed to describe them as conflicted. *See, e.g.*, *Bolone*, 130 F. App'x at 766 (holding that violations of procedural sections of ERISA do not give rise to claims for substantive damages); *Shah*, 2018 WL 1293164, at *6 (holding that neither § 102 nor 29 C.F.R. § 2520.102-2 provides a cognizable cause of action).

Because Plaintiffs have not alleged the misrepresentation of any material information upon which they relied to their detriment, Counts III and VIII should both be dismissed. To the extent that Plaintiffs' duty of loyalty claim in Count III is predicated on asserted misrepresentations, it should be dismissed because there are no allegations in the Complaint that any fiduciary "acted with the purpose of benefitting itself or a third party" when making the alleged misrepresentation. *See Kendall*, 2021 WL 1231415, at *11.

## IV.    COUNT IV INDEPENDENTLY FAILS BECAUSE A PLAN ADVISOR'S ROLE DOES NOT CONSTITUTE A CONFLICT OF INTEREST AS MATTER OF LAW

ERISA requires that an appeal of a denial of benefits be reviewed *de novo* by someone other than the person who denied the claim (or that person's subordinate). *See* 29 C.F.R. § 2560.503-1(h)(3)(ii). But ERISA does not mandate, as Plaintiffs suggest, that completely different sets of advisors be used at the two levels of review. *Compare* Compl. ¶ 307, *with Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) (holding that "the same doctor can participate in (rather than conduct) both administrative appeals"). There is no allegation here that any advisor conducted either level of review, much less that the same advisor conducted both.

Nor is there any basis for Plaintiffs' conclusory assertion that a law firm which provides advice at both levels of review has an "inherent conflict of interest arising from acting in such a

dual capacity." Compl. ¶ 308.[14]  The Committee and the Board do not have divergent interests—they are both required to make decisions in conformity with the Plan's terms and ERISA's requirements.[15]  Moreover, "[t]he Fourth Circuit [has] made clear that the pertinent inquiry is not the conflicts of the administrator's attorney but the conflicts of the administrator." *Boyce v. Eaton Corp. Long Disability Plan*, 2017 WL 3037392, at *5 (W.D.N.C. July 18, 2017) (citing *Colucci*, 431 F.3d at 176).  And courts in this District that have reviewed the Board's denials of claims for benefits have repeatedly ruled that the Board does not have a conflict of interest.  *See Giles*, 925 F. Supp. 2d at 716–17; *Boyd*, 796 F. Supp. 2d at 690–91 & n.2; *Stewart*, 2011 WL 10005532, at *2.

## V.    PLAINTIFFS' CLAIM THAT NEUTRAL PHYSICIANS ARE A "SHAM" (COUNT VI) IS ITSELF BASED ENTIRELY ON SHAM "STATISTICS" THAT ARE MEANINGLESS AND DO NOT SUPPORT THE CLAIM

Count VI alleges a violation of § 2560.503-1(b)(7) on the theory that Defendants "intentionally, consciously, or recklessly employ[] sham 'neutral physicians' whose lack of impartiality is demonstrated by their history of rendering opinions adverse to Players."  Compl. ¶ 316.  Apart from being an improper claim under ERISA as set forth in Section II.B, *supra*, this claim too fails as a matter of law.

Section 2560.503-1(b)(7) of the ERISA regulations requires plans to ensure that "claims

---

[14] This allegation appears to have been copied, without attribution, from the *Cloud* decision, which itself provided no citation or explanation for its unprecedented *dicta*.  *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2022 WL 2237451, at *44 (N.D. Tex. June 21, 2022).

[15] Plaintiffs do not allege that any other multi-employer plan in the nearly 50-year history of ERISA has retained a different set of law firms for each level of review.  Indeed, retaining duplicative counsel would be in significant tension with ERISA's requirements to only use plan assets to "defray[] reasonable expenses of administering the plan," *see* 29 U.S.C. § 1104(a)(1)(ii), and "to establish administrative processes and safeguards to ensure that Plan provisions have been applied consistently to similarly situated applicants."  *See* Compl. ¶ 321 (citing 29 C.F.R. § 2560.503-1(b)(5)).

and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision," which means that hiring and compensation decisions, among other things, "must not be made based upon the likelihood that the individual will support the denial of benefits."  Section 2560.503-1(b)(7); Compl. ¶ 315.  The Plan states that Neutral Physicians are jointly designated by the NFLPA and Management Council and must be paid a flat fee regardless of whether their opinions "support or refute any given Player's application for benefits."  DPD § 12.3(a).  Indeed, the Complaint accepts that referrals to Neutral Physicians for medical examinations are not based on "statistics of rate of claims denied or granted by individual 'Neutral Physicians.'"  Compl. ¶ 41.  The Plan therefore complies with § 2560.503-1(b)(7).

Against this background, Plaintiffs' allegations that Neutral Physicians are financially conflicted rely entirely on what Plaintiffs describe as "powerful statistical evidence."  *Id.* ¶ 317.  But while the Court must accept Plaintiffs' well-pleaded factual allegations as true, it need not accept "unwarranted inferences, unreasonable conclusions, or arguments."  *Boyko*, 39 F.4th at 189.  For this reason, even if Plaintiffs could bring an independent claim under the regulations (they cannot), their facially defective statistical allegations are insufficient to state such a claim.

Plaintiffs make numerous allegations about asserted "samples" of particular physicians' examinations, but they do not provide any of the criteria that were used to choose which of a physician's examinations to include in the "samples," and do not provide any of the additional factual support that would be necessary to allow the Court to draw any meaningful inferences from those "samples."  For example, they allege that "a sample of 10 Players whom [Dr. Murray] evaluated for T&P benefits purposes showed that Dr. Murray found none to qualify (i.e., a 100% denial rate)."  Compl. ¶ 105.  But the Court cannot plausibly draw any meaningful

inference from this "statistic," without knowing (among other things) the total number of evaluations Dr. Murray performed. Did Dr. Murray only evaluate ten players during the relevant time period? What is that time period and how was it chosen? Or did he evaluate 100, of which Plaintiffs have ten for their sample, in order to reach a so-called "denial rate" of 100%? Because the Complaint fails to supply any of this necessary information, any conclusions drawn from its supposed "statistics" are both "unwarranted" and "unreasonable" as a matter of law. *See Boyko*, 39 F.4th at 189. This example is not isolated. Plaintiffs' Complaint is larded with supposed "samples" that are completely devoid of the context required to make the numbers meaningful.[16] *See, e.g.*, *Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*, 2021 WL 4443142, at *5 n.8 (S.D.N.Y. Sept. 28, 2021) (in ERISA context explaining that, "[w]ith no way to compare membership base to cashflow, the statistics are completely unhelpful in determining whether Defendants' share of the health insurance market increased after it purportedly began discriminating against out-of-network providers").

Similarly, Plaintiffs provide scatterplots that they claim support an inference that the more Neutral Physicians are paid in connection with their evaluations, the more likely they are to deny claims for benefits. Compl. ¶ 262. But Plaintiffs' own charts show no such thing. *See id.* For instance, Plaintiffs' 2019 to 2020 plot shows 31 doctors who "denied" at least 85% of claims split almost evenly between those who earned more than $125,000 and those who earned less

---

[16] Plaintiffs' samples go on at length in the Complaint, all without any context for the total number of player examinations performed. *See* Compl. ¶¶ 104 (Dr. McCasland); 107 (Dr. Vanderploeg); 112 (Dr. Crum); 114 (Dr. Norman); 116 (Dr. Gwynn); 122, 150 (Dr. Saenz); 123 (Dr. Brahin); 124 (Dr. Mercado); 130 (Dr. Macciocchi); 132 (Dr. Medlock); 135 (Dr. Deutch); 138, 158–59 (Dr. Elkousy); 139 (Dr. Lacritz); 154 (Dr. O'Rourke); 166 (Dr. Perry); 171 (Dr. Apple); 185 (Dr. McNasby); 186 (Dr. Hoyle); 187 (Dr. Artigues); 189 (Dr. Detterline); 190 (Dr. Werner); 196, 198 (Dr. Meier); 204–05, 207 (Dr. Mack); 215 (Dr. Schleimer); 227 (Dr. O'Connor); 229 (Dr. Wen); 233 (Dr. Murphy); 235 (Dr. Breen); 238 (Dr. Perez); 245 (Dr. Bornstein); 249 (Dr. Azhar).

than that.  *See id.*  On the same plot, it appears that 21 doctors found 100% of the players they examined unqualified, but nine earned more than $125,000, while 13 earned less than that. *See id.*

As this Court recently explained in granting a motion to dismiss, the "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."  *Gladstone v. Gladstone*, 2023 WL 2571510, at *3 (D. Md. Mar. 18, 2023) (quoting *Macronix Int'l Co. v. Spansion, Inc.*, 4 F. Supp. 3d 797, 799 (E.D. Va. 2014)). Plaintiffs have not met this standard, and Rule 8 does not permit the Court to draw an entirely unsupported inference on the basis of a collection of drawings that supply no meaningful statistical analysis.  The Court should instead "draw on its . . . common sense," *see Desper*, 1 F.4th at 245 (quoting *Iqbal*, 556 U.S. at 679), to conclude that it is just as likely (it is actually more likely) that Neutral Physicians find that players are not disabled because the players are not actually disabled, and that the Plan's high burden for eligibility for some benefits reflects the balance between "the need to ensure that individual claimants get the benefits to which they are entitled with the need to protect employees and their beneficiaries as a group from a contraction in the total pool of benefits available."  *See Evans*, 514 F.3d at 326.  Because Plaintiffs have not shown that their claim is more than merely conceivable or speculative, *see Holloway*, 32 F.4th at 299, or that there is "more than a sheer possibility that the defendant has acted unlawfully," *Int'l Refugee Assistance Project*, 961 F.3d at 648, they have not stated a plausible claim.  *See DeBlasis v. DeBlasis*, 2023 WL 2758841, at *2 (D. Md. Apr. 3, 2023).

## VI.    COUNT IX SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE FIDUCIARY MISCONDUCT OR ANY INJURY TO THE PLAN AS REQUIRED UNDER SECTION 409(a) OF ERISA

In Count IX, Plaintiffs purport to bring a claim on behalf of the Plan pursuant to ERISA

§ 409(a) for the Board's alleged breaches of its fiduciary duties.  *See* Compl. ¶¶ 325–31.

Plaintiffs allege that the Board breached its duties of loyalty and care by systematically and

willfully refusing "to pay contractually authorized benefits" and becoming "subject to

demonstrated and statistically proven conflicts."  *Id.* ¶ 327.  Plaintiffs ask the Court to remove

the Board members.  *Id.* ¶ 331.

ERISA § 409 provides that "[a]ny person who is a fiduciary" who breaches any of their

fiduciary "responsibilities, obligations, or duties" is "personally liable to [the] plan [for] any

losses to the plan resulting from each such breach, and to restore to such plan any profits of such

fiduciary."  29 U.S.C. § 1109(a).  The fiduciary is also "subject to such other equitable or

remedial relief as the court may deem appropriate, including removal of such fiduciary."  *Id.*  A

plaintiff may bring a derivative claim seeking such relief on the plan's behalf under ERISA

§ 502(a)(2) "to obtain recovery for losses [under § 409] sustained by the plan because of

breaches of fiduciary duties."  *Peters v. Aetna Inc.*, 2 F.4th 199, 215–16 (4th Cir. 2021) (footnote

omitted) (quoting *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008)); *David v.

Alphin*, 704 F.3d 327, 332 (4th Cir. 2013) (explaining that a plaintiff "must seek recovery on

behalf of the plan").

But Plaintiffs do not allege any loss or injury to the Plan.  Nor do they allege that any of

the Trustees (or the Board as a whole) mismanaged Plan funds, made improper investments, or

otherwise harmed the Plan in any way.  Although Plaintiffs make the conclusory assertion that

the Trustees' "acts and omissions have caused injury to the Plan," Compl. ¶ 330, Plaintiffs allege

no facts to establish what injury the Plan has suffered.  The denial of Plaintiffs' benefit claims is

not an injury to the Plan, *see Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("the

entire text of § 409 persuades us that Congress did not intend that section to authorize any relief

except for the plan itself"), and in any event Plaintiffs offer no explanation how the denial of their benefit claims qualified as a breach of fiduciary duty, *see* Compl. ¶ 327, particularly in light of the fact that the Plan prohibits the Board from awarding any benefits to claimants who fail to satisfy the Neutral Rule.  DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC).[17]  Plaintiffs also do not allege that any of the Trustees acted for their own benefit or for the benefit of a third party to otherwise support the alleged breach of the duty of loyalty.  *See Kendall*, 2021 WL 1231415, at *11; *Reetz*, 2019 WL 4233616, at *5; *Smith*, 2022 WL 583569, at *8; *Williams*, 2021 WL 4227384, at *6.  Ultimately, Plaintiffs' threadbare and conclusory allegations are insufficient to state a claim for relief.  *See, e.g.*, *White v. A.D. Naylor & Co.*, 2014 WL 12908076, at *6 (D. Md. Sept. 29, 2014) (dismissing claims under ERISA §§ 409(a) and 502(a)(2) because plaintiff "presents no facts supporting the conclusory allegation that [the administrator's] communications with Fidelity caused harm to the Plan"); *see also, e.g.*, *Iqbal*, 556 U.S. 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim].").

## VII.    TO THE EXTENT PLAINTIFFS PURPORT TO ASSERT THEIR CLAIMS IN COUNTS I–VIII AGAINST THE TRUSTEES, THEIR CLAIMS FAIL

---

[17] *See Rogers v. Unitedhealth Grp., Inc.*, 144 F. Supp. 3d 792, 799 (D.S.C. 2015) (dismissing plaintiffs' claim alleging "an overarching tendency by [d]efendants to act in their own financial interest by denying legitimate medical claims—rather than acting in the best interests of plan participants and beneficiaries—and then attempting to conceal such activity by failing to produce documentation related to said denials" because "[t]heir claims are for benefits, not for a breach of fiduciary duties under Section 1109"); *Est. of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 745 (W.D. Va. 2008) (dismissing claim based on defendant's alleged "pattern of failing to provide vital information concerning coverage" because "the relief that Plaintiff ultimately seeks is the recovery of individually-based benefits that should have allegedly been provided to [Plaintiff]" which is "the quintessential example of relief that is not available under section 502(a)(2)"), *aff'd*, 388 F. App'x 275 (4th Cir. 2010) (unpublished); *Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 718 (D. Md. 2002) (dismissing Section 502(a)(2) because plaintiff also sought individual damages).

As explained in detail above, all of Plaintiffs' claims fail and the Complaint should be dismissed entirely. But even if Plaintiffs' claims were proper as to the Plan or the Board as a whole, Plaintiffs have not pleaded any allegations that the six current and former Board members who are named as individual defendants—Dennis Curran, Jacob Frank, and Belinda Lerner (the Management Council Trustees) and Sam McCullum, Robert Smith, and Jeff Van Note (the NFLPA Trustees)—or the Commissioner took any individual action that could give rise to a claim against them as individuals under these Counts. Accordingly, all of the claims against the Trustees fail as a matter of law.

As to Plaintiffs' claims for benefits, ERISA provides that a "money judgment" for benefits under § 502 "shall be enforceable only against the plan as an entity and *shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter*." 29 U.S.C. § 1132(d)(2) (emphasis added); *see also* 29 U.S.C. § 1132(d)(1). As such, under ERISA, individual defendants "cannot be held personally liable for money damages absent a showing of individual misconduct." *Jenkins v. Int'l Ass'n of Bridge*, 2015 WL 1291883, at *4 (E.D. Va. Mar. 20, 2015) (quoting *Keegan v. Steamfitters Loc. Union No. 420 Pension Fund*, 174 F. Supp. 2d 332, 340 (E.D. Pa. 2001) (citing 29 U.S.C. § 1132(d)(2))). As a result, courts in this Circuit have long held that claims for benefits cannot be brought against individual defendants who have no independent control over benefits decisions. *See Gluth v. Wal-Mart Stores, Inc.*, 117 F.3d 1413 (Table), at *6 (4th Cir. 1997) (holding that trust with "no control over [plan's] administration, is not a proper defendant in [ERISA benefits] action"); *Jenkins*, 2015 WL 1291883 (dismissing individual trustees for failure to plead facts demonstrating control over benefits decisions).

*Jenkins* is particularly illustrative. There, the plaintiff alleged that he was wrongfully

40

denied benefits and brought an action for recovery of benefits and equitable relief under ERISA against several defendants, including four individual trustees. *Jenkins*, 2015 WL 1291883, at *2. In determining whether the plaintiff's claims against the individual trustees were proper, the court explained that although "the Fourth Circuit has not definitively addressed ERISA claims brought against Trustees in their individual capacity," it "has provided some general guiding principles." *Id.* at *4. Specifically, the court noted that "defendants cannot be held personally liable for money damages absent a showing of individual misconduct" and "control over the actual administration of the plan." *Id.* at *4–5 (citing *Gluth*, 117 F.3d 1413). The court ultimately dismissed the benefits claim against the trustees, reasoning that the plaintiff did "not ma[k]e a showing that any of the individual trustees, as opposed to the collective 'Board of Trustees,' had adequate control over the Pension Plan." *Id.* at *5.

Here, too, Plaintiffs do not assert any facts at all purporting to show that Mr. Curran, Mr. Frank, Ms. Lerner, Mr. McCullum, Mr. Smith, Mr. Van Note, or the Commissioner took any individual action with respect to their claims. Nor could they—as the Plan itself makes clear, no Trustee has authority or control to make decisions on behalf of the Plan. *See* DPD § 9.2. Further, there is no allegation against any Trustee that they engaged in any individual misconduct that could give rise to liability. Nor have Plaintiffs pleaded any facts to show that any individual defendant failed to provide a full and fair review or otherwise violated any of the enumerated claims regulations. *See Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (dismissing claims where the complaint failed to "delineate the particular acts of infringement attributable to each Defendant" and thus did "not provide facts sufficient to inform" the defendant of the basis for the plaintiff's claims). Indeed, Plaintiffs do not even allege that any of the named Trustees were members of the Board at the time their

41

individual claims were decided.

Similarly, as to Counts III and VIII, Plaintiffs do not allege that any one of the Trustees materially misrepresented information about their review of the administrative record, materially misrepresented information about the "Neutral Physicians" in a decision letter or the SPD, or engaged in any other specific individual misconduct supporting a breach of fiduciary duty claim. *See* Compl. ¶¶ 298–305, 322–24.  As in *Jenkins*, all of Plaintiffs' allegations here relate to the actions of the collective "Disability Board" but not any particular Trustee.  *See, e.g.*, *id*. ¶ 285 ("The actions taken and interpretations made *by the Board* were wrongful, unreasonable, and in bad faith as described in paragraphs 1-270 above."); *id.* ¶ 297 ("*The Board's* wholesale adoption of its advisors' reasons for denial, without having contemplated all of those specific reasons, defies any possibility that the 'meaningful review' required by ERISA was conducted."); *id.* ¶¶ 314–19 (discussing the alleged "Board-paid" and "Board-hired" physicians).  Accordingly, Plaintiffs' claims in Counts I through VIII against the Trustees must be dismissed.

## VIII.  ALL OF PLAINTIFFS' CLAIMS AGAINST THE COMMISSIONER SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT HE IS NOT A FIDUCIARY

All of Plaintiffs' claims against the Commissioner fail as a matter of law because he is not the Plan, the Plan's administrator, or an ERISA fiduciary of the Plan.  As explained above, Counts I, II, and IV through VII—as claims properly falling under § 502(a)(1)(B)—may only be brought against a plan, plan administrator, or a fiduciary with individual control over plan benefit determinations.  The Commissioner is none of these.  Plaintiffs' remaining counts (Counts III, VIII, and IX) are all alleged as breaches of fiduciary duty.  To state a claim for breach of fiduciary duty under ERISA, the threshold question is whether the plaintiff has sufficiently alleged that the defendant was a "fiduciary."  *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992) ("Before one can conclude that a fiduciary duty has been violated, it

must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'").  Plaintiffs fail to allege any facts establishing that the Commissioner was acting as a fiduciary of the Plan.

An ERISA fiduciary is either a "named fiduciary" under the plan document or an individual who has discretionary authority or control over plan assets or plan administration. ERISA §§ 3(21), 402(a)(2); 29 U.S.C. §§ 1002(21), 1102(a)(2). When determining whether a party is a fiduciary, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Adams*, 261 F. App'x at 590 (quoting *Coleman*, 969 F.2d at 60–61). While "discretionary acts are fiduciary acts, ministerial administrative acts are not." *Id.* at 592.

Nowhere in the Complaint do Plaintiffs allege the Commissioner exercises discretion under the Plan with respect to benefits decisions.  Nor could they.  Under § 9.1 of the Plan, the Commissioner is a non-voting member of the Board whose duties and responsibilities are limited to those specified in the Plan.  DPD § 9.1(b).  The only duty and responsibility designated to the Commissioner is that he, or his designee, shall be an honorary chairman of the Board who presides, or who delegates his designees to preside, over the Board meetings.  *Id.*  As alleged in Plaintiffs' Complaint, the Commissioner has no voting authority with respect to any aspect of the plan, including deciding disability appeals.  Compl. ¶ 16.  Accordingly, the Commissioner is not a fiduciary, and Plaintiffs' claims against him must be dismissed.  *See Adams*, 261 F. App'x at 590–91 (dismissing claims against vice president who attended meeting but "possessed no discretionary authority to alter the terms of the Pittston Plan or to determine eligibility for benefits or the amount of benefits a participant was entitled to under the Pittston plan"); *Est. of Spinner*, 589 F. Supp. 2d at 747–48 (dismissing claims against individual who wrote a letter to participant but otherwise had no authority to make decisions concerning plan policy, practices,

and procedure); *Guardian Life Ins. Co. of Am. v. Reinaman*, 2011 WL 2133703, at *8 (D. Md. May 26, 2011) (dismissing claims against alleged representative of plan); *see also KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 224 (S.D.N.Y. 2012) (dismissing breach of fiduciary claims against non-voting officers); *Johnson v. NFL Player Disability, Neurocognitive & Death Benefit Plan*, 2023 WL 2059033, at *6–8 (E.D. Mich. Feb. 16, 2023) (concluding that the NFL Management Council was not a fiduciary because there were no facts in the complaint indicating that it exercised any discretionary authority or control with respect to plan management, assets, or administration).

## **CONCLUSION**

For the foregoing reasons, the Class Action Complaint should be dismissed in its entirety.

Date: April 21, 2023

Respectfully submitted,

*s/ Gregory F. Jacob*
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player
Disability & Survivor Benefit Plan, The
NFL Player Disability & Neurocognitive
Benefit Plan, The Bert Bell/Pete Rozelle
NFL Player Retirement Plan, and The
Disability Board of the NFL Player
Disability & Neurocognitive Benefit Plan*

*s/ Stacey R. Eisenstein*
Stacey R. Eisenstein (D. Md. Bar No. 30616)
Nathan J. Oleson (D. Md. Bar No. 16678)
Amanda S. McGinn (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD
LLP
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: seisenstein@akingump.com
Email: noleson@akingump.com
Email: amcginn@akingump.com

*s/ Eric Field*
Eric Field (*pro hac vice*)
LITTLER MENDELSON P.C.
815 Connecticut Avenue, N.W., Suite 400
Washington, DC 20006
Telephone: (202) 842-3400
Facsimile: (202) 842-0011
Email: efield@littler.com

*Attorneys for Defendants Dennis Curran,
Belinda Lerner, Jacob Frank, and Roger
Goodell*

*s/ Matthew M. Saxon*
Matthew M. Saxon (D. Md. Bar No. 19604)
William G. Miossi *(pro hac vice)*
John Harding *(pro hac vice)*
Spencer Churchill *(pro hac vice)*
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Email: msaxon@winston.com
Email: wmiossi@winston.com
Email: jwharding@winston.com
Email: schurchill@winston.com

*Attorneys for Defendants Sam McCullum,
Robert Smith, and Jeff Van Note*

## **CERTIFICATE OF SERVICE**

I, Gregory F. Jacob, hereby certify that on April 21, 2023, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*s/ Gregory F. Jacob*
Gregory F. Jacob