# EXHIBIT L

**NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

November 22, 2019

Mr. Michael McKenzie
900 South Peters P-3
New Orleans, LA 70130

Re:   **NFL Player Disability & Neurocognitive Benefit Plan - Final Decision on Review**

Dear Mr. McKenzie:

At its November 20, 2019 meeting, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for total and permanent disability ("T&P") benefits. We regret to inform you that the Disability Board denied your appeal. This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

On December 26, 2018, the Plan received your completed application for T&P benefits, which raised orthopedic, neurologic, neurocognitive, and psychiatric impairments as the basis for your disability.

As you know, on January 29, 2019, the Disability Initial Claims Committee ("Committee") reviewed your application along with the reports of four Plan neutral physicians: orthopedist, Dr. Paul Saenz; neurologist, Dr. Eric Brahin; neuropsychologist, Dr. Janyna Mercado; and psychiatrist, Dr. Raymond Faber. These neutral physicians are specialists in the medical fields encompassing your claimed impairments. After reviewing your records and evaluating you, each of them reported that you are not totally and permanently disabled. Based on those findings, the Committee denied your application under Plan Section 3.1(c) because no Plan neutral physician had found that you are unable to engage in any occupation for remuneration or profit.

On August 8, 2019, your attorney, Sam Katz, appealed the Committee's initial decision to the Disability Board and argued that the Committee failed to consider the cumulative effect of your impairments.

On appeal you were referred for additional evaluations with four new Plan neutral physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures. You were evaluated by: orthopedist, Dr. Virgil Medlock; neurologist, Dr. Barry McCasland; neuropsychologist, Dr. Stephen Macciocchi; and psychiatrist, Dr. Matthew Norman. Like the Plan neutral physicians who evaluated you at the initial level, these Plan neutral physicians are specialists in the medical fields encompassing your claimed impairments. By report dated September 14, 2019, Dr. Medlock concluded that your

Mr. Michael McKenzie
November 22, 2019
Page 2

orthopedic impairments are not totally and permanently disabling and that you can engage in sedentary occupation with certain restrictions. By report dated September 4, 2019, Dr. McCasland reported that he is unable to determine whether you are totally and permanently disabled due to variable effort and inability to reconcile a number of your complaints. By report dated September 3, 2019, Dr. Macciocchi concluded that your cognitive impairments do not render you totally and permanently disabled and that you can work in any occupation consistent with your education, experiential background, and interest. By report dated September 4, 2019, Dr. Norman opined that you are not totally and permanently disabled and can engage in any occupation without psychiatric restrictions or limitations.

By letter dated September 17, 2019, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the doctors' reports, and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received October 16, 2019, Mr. Katz argued that the Committee failed to consider the cumulative effect of your impairments and that you were not given a full and fair review because physicians hired by the Disability Board are paid and therefore not impartial.

At its November 20, 2019 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for T&P benefits. Section 3.1(c) of the Plan states that, for a Player to be eligible for T&P benefits, at least one Plan neutral physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for T&P benefits). If no Plan neutral physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because eight Plan neutral physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. The Disability Board rejected Mr. Katz's arguments on appeal in so far as they do not address or override the requirements of Plan Section 3.1(c).

The Disability Board disagreed with Mr. Katz's allegation that the Plan's neutral physicians are conflicted or biased against Players, for the following reasons. First, the neutral physicians are specialists in the medical field encompassing your claimed impairments, and have experience evaluating Players and other professional athletes. Second, the Plan's neutral physicians are instructed to (and do) evaluate Players fully, fairly, and without bias for or against the Player. For these reasons neutral evaluations are typically accepted and relied upon by the members of the Disability Board appointed by the NFL and those appointed by the NFL Players Association. Third, the Disability Board found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you are capable of employment despite your impairments. Furthermore, the neutral physicians reviewed all of the records you provided; they conducted thorough examinations of you; and they provided complete and detailed reports of your condition. Finally, they are jointly selected by the NFL Players Association and the NFL Management Council;

Mr. Michael McKenzie
November 22, 2019
Page 3

they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and have done so in your case.

How often the Plan utilizes a neutral physician, how much a physician may be compensated, and "statistics" on the outcome of a particular physician's evaluations, are not relevant to your claim. The Disability Board is aware that a judge in a recent court case stated that a Plan physician was conflicted by virtue of receiving compensation from the Plan for his service. The Disability Board, however, does not agree with that conclusion for several reasons. First, the Board is comprised of an equal number of Player and NFL employer representatives, as required by the Taft Hartley Act (*i.e.*, the Labor Management relations Act of 1947), ensuring fairness in governance. Second, the Disability Board does not fund the Plan, and its members have no personal stake in the outcome of any application for benefits. Third, the Disability Board is obligated by federal law to operate the Plan in the sole interest of its participants and beneficiaries, and in accord with the written terms of the Plan, with the result that Players who qualify under the terms of the Plan routinely are awarded disability benefits. In sum, a Plan neutral physician could not curry favor with the Board by shading his reports and conclusions against Players, as Mr. Katz seems to suggest. Just the opposite: If a neutral physician did so, that physician would be removed from the panel.

We wish to reassure you that the Plan's neutral physicians have no incentive to hurt or help Players, and the Board has no inherent bias for or against Players. Please keep in mind that Plan neutral physicians receive a flat fee for each examination, regardless of their findings. The Plan's neutrals include preeminent practicing physicians in their fields of specialty. The Plan compensates them for their time and expertise and for their willingness to evaluate Players on short notice and provide detailed reports in accordance with Plan standards.

The Disability Board hopes that the foregoing explanation addresses your concerns and the concerns of Mr. Katz about the fairness of the disability review process. Substantial effort and resources have been committed to ensure that every Player is fully and fairly evaluated, and that benefits are paid to all Players who satisfy the terms of the Plan.

Plan Section 3.2(a) allows a Player to qualify for T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(c). However, you have not presented evidence that you currently receive Social Security disability benefits, and therefore the Disability Board found you do not qualify for T&P benefits under Plan Section 3.2(a).

For these reasons, the Disability Board denied your appeal.

Mr. Michael McKenzie
November 22, 2019
Page 4

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 20, 2023.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan document.

You may call the NFL Player Benefits Office if you have any questions.

Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure

cc: Sam Katz, Esquire

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**Plan Section 3.1** sets forth the standards for determining whether a Player is totally and permanently disabled. It states, in relevant part:

- (c) At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

- (d) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

    - i. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

    - ii. A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

    - iii. A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

**Plan Section 3.2** sets forth the "Social Security Standard for Eligibility." It states, in relevant part:

(a) An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**Plan Section 3.3** discusses the Plan's "Application Rules and Procedures." It provides, in relevant part:

(a) <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office

that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**Plan Section 13.4** is entitled "Limitation on Actions." It states, in relevant part:

(a) <u>Adverse Determinations</u>. No suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review).