# EXHIBIT R



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

November 22, 2019

Mr. Eric Smith
1 Deerfield Road
Whippany, NJ 07981

Re:  **NFL Player Disability & Neurocognitive Benefit Plan—Final Decisions on Review**

Dear Mr. Smith:

At its November 20, 2019 meeting, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeals from the earlier denials of your applications for total and permanent ("T&P") and neurocognitive ("NC") disability benefits. We regret to inform you that the Disability Board denied your appeals. This letter describes the Disability Board's decisions; it identifies the Plan provisions on which the decisions were based; and it explains your legal rights.

**T&P Benefits**

On January 2, 2019, the Plan received your completed application for T&P benefits, which raised orthopedic, neurologic, neurocognitive, and psychiatric impairments as the basis for your disability.

As you know, in February 2019 the Committee denied your application after reviewing the record and concluding that you were ineligible for T&P benefits. The Committee based its decision on the reports of four Plan neutral physicians: orthopedist, Dr. Glenn Perry; neurologist, Dr. Chad Hoyle; neuropsychologist, Dr. Sutapa McNasby; and psychiatrist, Dr. Moira Artigues. These neutral physicians are specialists in the medical fields of your claimed impairments. After reviewing your records and evaluating you, each of them reported that you are not totally and permanently disabled. Based on those findings, the Committee denied your application under Plan Section 3.1(c) because no Plan neutral physician had found that you are unable to engage in any occupation for remuneration or profit.

By letter received August 8, 2019, your attorney, Sam Katz, appealed the Committee's initial decision to the Disability Board and submitted additional records in support of your appeal.

On appeal you were referred for additional evaluations with four new Plan neutral physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures. You were evaluated by: orthopedist, Dr. Alvin Detterline; neurologist, Dr. Mark Tullman; neuropsychologist, Dr. Nicole Werner; and psychiatrist, Dr. John Rabun. Like the Plan neutral physicians who evaluated you at the initial level, these Plan neutral physicians are specialists in the medical fields of your claimed impairments. By report dated September 3, 2019, Dr. Detterline opined that you are not totally and

Mr. Eric Smith
November 22, 2019
Page 2

permanently disabled by your orthopedic impairments and can engage in light duty employment with some restrictions. By report dated September 9, 2019, Dr. Tullman concluded that your neurologic impairments do not render you totally and permanently disabled and that you have no specific limitations from a neurologic standpoint regarding employment. By report dated September 8, 2019, Dr. Werner opined that you are not totally and permanently disabled by your cognitive impairments and that you can engage in employment consistent with your training and experience. By report dated September 9, 2019, Dr. Rabun determined that your psychiatric impairments do not render you totally and permanently disabled.

By letter dated September 17, 2019, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the doctors' reports, and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter dated October 16, 2019, Mr. Katz alleged inconsistencies in the report of Dr. Detterline and argued that the Committee failed to consider the cumulative effect of your impairments.

At its November 20, 2019 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for T&P benefits. Section 3.1(c) of the Plan states that, for a Player to be eligible for T&P benefits, at least one Plan neutral physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for T&P benefits). If no Plan neutral physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because eight Plan neutral physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. In addition, the Disability Board noted that the medical reports you submitted do not indicate that you are currently totally and permanently disabled. The Disability Board rejected Mr. Katz's argument on appeal in so far as it does not address or override the requirements of Plan Section 3.1(c).

The Disability Board noted the following about the conclusions of the Plan's neutral physicians. First, the physicians are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's physicians reviewed all of the records you provided; they conducted thorough physical examinations of you; and they provided complete and detailed reports of your condition. Third, the Disability Board found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you are capable of employment despite your impairments. The Disability Board disagreed with Mr. Katz's criticism of Dr. Detterline's report. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's

Mr. Eric Smith
November 22, 2019
Page 3

neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

Plan Section 3.2(a) allows a Player to qualify for T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(c). However, you have not presented evidence that you currently receive Social Security disability benefits, and therefore the Disability Board found you do not qualify for T&P benefits under Plan Section 3.2(a).

For these reasons, the Disability Board denied your appeal.

**NC Benefits**

The Plan provides benefits to eligible Players who have "mild" or "moderate" neurocognitive impairment, as defined by the terms of the Plan.

The Plan received your completed application for NC benefits on January 2, 2019. You were then evaluated by two Plan neutral physicians, neurologist Dr. Chad Hoyle and neuropsychologist Dr. Sutapa McNasby pursuant to Plan Section 6.2(d). By report dated January 28, 2019, Dr. Hoyle concluded that you do not show evidence of any significant acquired dysfunction. By report dated January 18, 2019, Dr. McNasby found no objective evidence of cognitive impairment. By joint report dated January 21 – January 28, 2019, Drs. Hoyle and McNasby confirmed that you do not show evidence of acquired neurocognitive impairment. The Committee denied your application because no Plan neutral physician determined that you have a mild or moderate acquired neurocognitive impairment (Plan Section 6.1(e)).

By letter received August 8, 2019, your attorney, Sam Katz, appealed the Committee's initial decision to the Disability Board and submitted additional records in support of your appeal.

On appeal you were examined by two additional Plan neutral physicians, neurologist Dr. Mark Tullman and neuropsychologist Dr. Nicole Werner, pursuant to Plan Section 6.2(d) and the Plan's claims procedures. By report dated September 9, 2019, Dr. Tullman concluded that you do not have a neurocognitive impairment. By report dated September 8, 2019, Dr. Werner reported intact cognition during your assessment and determined that you do not have an acquired neurocognitive impairment. By joint report dated September 8-September 15, 2019, Drs. Tullman and Werner confirmed that you show no evidence of an acquired neurocognitive impairment.

By letter dated September 17, 2019, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the doctors' reports, and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter dated October 16, 2019, Mr. Katz replied, but addressed T&P benefit only.

Mr. Eric Smith
November 22, 2019
Page 4

On November 20, 2019, the Disability Board reviewed the record and unanimously concluded that you are ineligible for NC benefits under Plan Section 6.1(e). That provision states that, for a Player to be eligible for NC benefits, "at least one Plan neutral physician must conclude that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because you have been examined by four Plan neutral physicians, and none found that you have an acquired neurocognitive impairment.

The Disability Board noted the following about the conclusions of the Plan's neutral physicians. First, the physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's physicians reviewed all of the records you provided; they conducted thorough physical examinations of you; and they provided complete and detailed reports of your condition. Finally, the Disability Board found that the conclusions of the Plan's neutral physicians were consistent, and they independently concluded that your impairments do not constitute an acquired neurocognitive impairment under the terms of the Plan. The Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

For these reasons, the Disability Board denied your appeal.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 20, 2023.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

Mr. Eric Smith
November 22, 2019
Page 5


You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan document.

You may call the NFL Player Benefits Office if you have any questions.


Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure

cc: Sam Katz, Esquire

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**Plan Section 3.1** sets forth the standards for determining whether a Player is totally and permanently disabled. It states, in relevant part:

(c) At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(d) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

  i. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

  ii. A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

  iii. A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

**Plan Section 3.2** sets forth the "Social Security Standard for Eligibility." It states, in relevant part:

 (a) An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**Plan Section 3.3** discusses the Plan's "Application Rules and Procedures." It provides, in relevant part:

 (a) <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

   Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

   Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office

that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**Plan Section 6.1** states:

Eligibility. A Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met:

(a) The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b) The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c) The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan.

(d) The Player must not receive T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e) At least one Plan neutral physician selected pursuant to Section 6.2(d) below must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 6.2(d) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion,

that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g) The Player must execute the release described in Section 6.3.

(h) The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i) The Player must satisfy the other requirements of this Article 6.

Under **Plan Section 6.2**, a Player's neurocognitive impairment is determined as follows:

(a) <u>Mild Impairment</u>. Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit. Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction but are not severe enough to cause marked interference in day-to-day activities.

(b) <u>Moderate Impairment</u>. Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit. Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction resulting in marked interference with everyday life activities, but not severe enough to prevent the Player from working.

....

(d) <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits under this Section 6.2, such Player will first be required to submit to an examination scheduled by the Plan with a neutral physician, or any other

        physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

  (e)    <u>Validity Testing.</u>  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests.  A Player who fails both validity tests will not be eligible for the NC Benefit.  A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

**Plan Section 13.4** is entitled "Limitation on Actions."  It states, in relevant part:

  (a)    <u>Adverse Determinations</u>.  No suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review).