# EXHIBIT W

**NFL** **NFLPA** | **NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone  800.638.3186
Fax  410.783.0041

Via Email and Federal Express

November 22, 2022

Mr. Lance Zeno
8941 Atlanta Avenue #211
Huntington Beach, CA 92646

**Re:   NFL Player Disability, Neurocognitive & Death Benefit Plan—Decision on Review**

Dear Mr. Zeno:

On November 22, 2022, the Disability Board of the NFL Player Disability, Neurocognitive & Death Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for neurocognitive disability ("NC") benefits.  We regret to inform you that the Disability Board denied your appeal.  This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

The Plan provides NC benefits to eligible Players who have "mild" or "moderate" neurocognitive impairment, as defined by the terms of the Plan.

The Plan received your completed application for NC benefits on September 18, 2020.  You were then evaluated by two Plan Neutral Physicians, neuropsychologist Dr. Dean Delis and neurologist Dr. Laura Desadier, pursuant to Plan Section 6.2(d).  By joint report dated November 1 – 3, 2021, Dr. Delis and Dr. Desadier concluded that you do not show evidence of acquired neurocognitive impairment.  The Committee denied your application because no Plan Neutral Physician determined that you have a mild or moderate acquired neurocognitive impairment (Plan Section 6.1(e)).

By letter received May 3, 2022, your representative, Sam Katz, appealed the Committee's initial decision to the Disability Board and stated that because you received a Level 1 Neurocognitive Impairment diagnosis through the NFL Concussion Settlement, you should be considered impaired under the Plan.  He argued that the Neutral Physician reports contain evidence of neurocognitive impairment and that the Neutral Physicians are not impartial because they are paid by the Plan.

On appeal you were examined by two additional Plan Neutral Physicians, neuropsychologist Dr. Lauren Drag and neurologist Dr. Selena Ellis, pursuant to Plan Section 6.2(d) and the Plan's claim procedures.  By joint report dated July 5 – 7, 2022, both doctors concluded that you show evidence of an acquired neurocognitive impairment, not secondary to a psychiatric problem or substance abuse.

Mr. Lance Zeno
November 22, 2022
Page 2


By letter dated July 12, 2022, the NFL Player Benefits Office provided you and Mr. Katz with copies of Dr. Drag and Dr. Ellis' reports and advised that you had the right to respond to them before the Disability Board issued a final decision on your appeal.  On July 25, 2022, Mr. Katz notified the Plan that you did not intend to respond.

At its August 2022 quarterly meeting, the Disability Board reviewed the record and, in light of the disparate findings concerning the nature of your neurocognitive impairment, unanimously referred your medical records to a Medical Advisory Physician ("MAP"), pursuant to Plan Section 9.3(a), for a final and binding determination on that issue.

Your medical records were then reviewed by MAP neurologist Dr. Silvana Riggio and MAP neuropsychologist Dr. William Garmoe, pursuant to Plan Section 9.3(a).  By joint report dated September 18, 2022, Dr. Riggio and Dr. Garmoe concluded that you do not show evidence of acquired neurocognitive impairment.  Dr. Riggio and Dr. Garmoe explained that they did not find a pattern of consistent impairment of your language abilities and determined that "overall, the variability in scores across language-dependent tasks might relate to other factors and does not appear indicative of neurocognitive impairment."

By letter dated September 29, 2022, the NFL Player Benefits Office provided you and Mr. Katz with copies of Dr. Riggio and Dr. Garmoe's reports and advised that you had the right to respond to them before the Disability Board issued a final decision on your appeal.  By letter received October 27, 2022, Mr. Katz criticized the conclusion of Dr. Garmoe and Dr. Riggio, alleged that they are not impartial because they are paid by the Plan, and submitted an NFL Concussion Settlement award notice that reflects a qualifying diagnosis of level 1.5 neurocognitive impairment.

At its November 9, 2022 meeting, the Disability Board reviewed the record and tentatively found that you are ineligible for NC benefits.  On November 22, 2022, the Disability Board unanimously decided that you are ineligible for NC benefits and authorized transmission of this letter explaining its decision.  Pursuant to Plan Section 9.3(a), "the ultimate decision of the [MAP] is final and binding" on medical issues, notwithstanding any potentially conflicting medical evidence.  The Disability Board therefore accepted MAP Riggio's and MAP Garmoe's conclusion and determined that you do not have an acquired neurocognitive impairment and, therefore, you are ineligible for NC benefits under Plan Section 6.1(f).  For this reason, the Disability Board denied your appeal.

The Disability Board disagreed with Mr. Katz's allegation that the Plan's Neutral Physicians are conflicted or biased against Players, for the following reasons.  First, the Neutral Physicians are specialists in the medical field encompassing your claimed impairments and have experience evaluating Players and other professional athletes.  Second, the Plan's Neutral Physicians are instructed to (and do) evaluate Players fully, fairly, and without bias for or against the Player.  For these reasons neutral evaluations are typically accepted and relied upon by the members of the Disability Board appointed by the NFL and those appointed by the NFL Players Association.  Finally,

Mr. Lance Zeno
November 22, 2022
Page 3


the Plan's Neutral Physicians are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations and have done so in your case.

We wish to reassure you that the Plan's Neutral Physicians have no incentive to hurt or help Players, and the Board has no inherent bias for or against Players. Please keep in mind that Plan Neutral Physicians receive a flat fee for each examination, regardless of their findings. The Plan's neutrals include preeminent practicing physicians in their fields of specialty. The Plan compensates them for their time and expertise and for their willingness to evaluate Players on short notice and provide detailed reports in accordance with Plan standards.

The Disability Board hopes that the foregoing explanation addresses your concerns and the concerns of Mr. Katz about the fairness of the disability review process. Substantial effort and resources have been committed to ensure that every Player is fully and fairly evaluated, and that benefits are paid to all Players who satisfy the terms of the Plan.

Please understand the Disability Board is required by federal law to follow the terms of the Plan. Where, as here, you do not satisfy the terms of the Plan, federal law requires the Disability Board to deny your appeal, regardless of how sympathetic individual members of the Disability Board may be to your circumstances.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 22, 2026.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

Mr. Lance Zeno
November 22, 2022
Page 4


You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

You may call the NFL Player Benefits Office if you have any questions.


Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc:  Samuel Katz, Esquire


---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**6.1    Eligibility.**  For applications received before April 1, 2020, a Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met.

Effective for applications received on and after April 1, 2020 and through March 31, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), and (m) below are met.

Effective for applications received on and after April 1, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m) below are met.

(a)    The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)    The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)    The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan or be a Pension Expansion Player within the meaning of the Bert Bell/Pete Rozelle Plan.

(d)    The Player must not be receiving T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)    At least one Plan Neutral Physician must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)    After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)    The Player must execute the release described in Section 6.3.

(h)      The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)      The Player must satisfy the other requirements of this Article 6.

(j)      The Player must not have previously received the NC Benefit and had those benefits terminate at age 55 before April 1, 2020 by virtue of earlier versions of this Plan.

(k)      If the Player is not a Vested Inactive Player, his application for the NC Benefit must be received by the Plan within eighty-four (84) months after the end of his last contract with a Club under which he is a Player, as defined under Section 1.35 of the Bert Bell/Pete Rozelle Plan, for at least one Game, as defined under Section 1.17 of the Bert Bell/Pete Rozelle Plan.

(l)      The Player must be under age 65.

(m)      For applications received on and after October 1, 2020, the Player must submit Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 6.2(d).  This paragraph (m) does not apply to applications received prior to October 1, 2020.

**6.2      Determination of Neurocognitive Impairment.**

(a)      Mild Impairment.  A Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(b)      Moderate Impairment.  A Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(c)      Substance Abuse and Psychiatric Exclusion.  A Player who otherwise satisfies the requirements for mild or moderate neurocognitive impairment will not be eligible for NC benefits if his neurocognitive impairment is caused by substance abuse or a psychiatric condition.  The prior sentence does not apply to a Player eligible for benefits under this Article 6 whose neurocognitive impairment is not caused by substance abuse or a psychiatric condition, but who abuses substances or has a psychiatric condition.  Substance abuse means the use of, addiction to, or dependence upon any controlled substance (as defined in 21 U.S.C. § 802(d)), alcohol, or illegal drugs (including all drugs and substances, other than controlled substances or alcohol, used or taken in violation of law or League policy).

(d)    <u>Medical Records and Evaluations</u>.  A Player applying for NC Benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to NC Benefits, and his appeal will be denied.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits, such Player will first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to NC Benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for NC Benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional medical records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(e)    <u>Validity Testing</u>.  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests.  A Player who fails both validity tests will not be eligible for the NC Benefit.  A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

**9.3    Medical Issues and Disputes of the Disability Board.**

(a)    <u>Medical Issues</u>.  If three or more voting members of the Disability Board conclude that a medical issue exists as to whether a Player qualifies for a benefit under this Plan (such as where physician reports are in conflict or ambiguous, or in the case of ascertaining mild or moderate cognitive impairment under Section 6.2 of this Plan) such members may submit such issue to a Medical Advisory Physician for a final and binding determination regarding such medical issues.  In the case of NC Benefits, such determination will be based on the written evidence in the Player's file, and will not involve a new examination by the Medical Advisory Physician.  The Medical Advisory Physician will have full and absolute discretion, authority, and power to decide such medical issues.  In all other respects, including the interpretation of this Plan and whether the claimant is entitled to benefits, the Disability Board will retain its full and absolute discretion, authority, and power under Sections 9.2 and 9.9.  If there is a question as to whether the Medical Advisory Physician properly applied the terms of the Plan, such as with respect to the standards for line-of-duty disability benefits, the Disability Board will have the right and duty to bring such questions to the attention of the Medical Advisory Physician.  After all such questions have been addressed, the ultimate decision of the Medical Advisory Physician will be final and binding.

**Plan Section 13.4** is entitled "Limitation on Actions."  It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."