# EXHIBIT Y

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL CLOUD,
    Plaintiff,
VS.
                CASE NO. 3:20-cv-1277-S

THE BERT BELL/PETE ROZELLE
NFL PLAYER RETIREMENT PLAN,
    Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF BENCH TRIAL
HEARD BEFORE THE HONORABLE KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE

MAY 25, 2022

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:
FOR THE PLAINTIFF:    Christian Dennie
                        BARLOW GARSEK & SIMON, LLP
                        920 Foch
                        Fort Worth, Texas 76107
                        cdennie@bgsfirm.com
                        Paul J. Vitanza
                        BARLOW GARSEK & SIMON, LLP
                        920 Foch
                        Fort Worth, Texas 76107
                        pvitanza@bgsfirm.com

Page 2

1                A P P E A R A N C E S
                   (Continued)
2
3  FOR THE DEFENDANT:     Mr. Edward J. Meehan
                        Groom Law GROUP CHARTERED
4                       1701 Pennsylvania Avenue NW
                       Washington, D.C. 20006
5                       emeehan@groom.com
6                       Michael Lee Junk
                       Groom Law GROUP CHARTERED
7                       1701 Pennsylvania Avenue NW
                       Washington, D.C. 20006
8                       mjunk@groom.com
9                       Nolan Knight
                       MUNSCH HARDT KOPF & HARR, PC
10                      3800 Lincoln Plaza
                       500 North Akard Street
11                      Dallas, Texas 75201
                       nknight@munsch.com
12
13  Official Court Reporter:    Thu Bui, CSR, RMR, CRR
                       1100 Commerce Street, #1654
14                      Dallas, Texas 75242
                       (214) 753-2354
15
...
24     Proceedings recorded by mechanical stenography,
25  transcript produced via computer.

Page 3

1                I N D E X
2
3                              PAGE
4     Appearances............................   1
5     Proceedings...........................   4
6     ROBERT SMITH
7        Direct    Cross
          6, 116     60
8
     Defendant rest........................  149
9
     Adjournment...........................  152
10
     Reporter's Certificate................  153

Page 4

1               P R O C E E D I N G S
2        (Call to order of the court.)
3     THE COURT:  We're on the record.
4        Counsel, welcome back.  On the continuation of
5  the trial of Michael Cloud versus The Bert Bell/Pete Rozelle
6  NFL Retirement Plan.  Civil Action No. 3:20-cv-1277-S.
7        Counsel, please make your appearance for the
8  record on behalf of the plaintiff.
9     MR. DENNIE:  Good morning, Your Honor.  Christian
10  Dennie, Paul Vitanza on behalf of the plaintiff with our
11  client, Michael Cloud.
12     THE COURT:  Thank you.  And on behalf of the defendant.
13     MR. JUNK:  Good morning, Your Honor.  Michael Junk with
14  Ed Meehan and Nolan Knight for the defendant.
15     THE COURT:  Thank you.  Counsel, we want to take up
16  just a housekeeping matter first with respect to exhibits.  Who
17  wants to take the lead on that?
18     MR. DENNIE:  Your Honor, I will.
19     THE COURT:  Go ahead.
20     MR. DENNIE:  On the first day of trial, there were
21  certain exhibits that were agreed admission that were read to
22  the Court and pre-admitted, which included Exhibits 2-10, 6,
23  and 7.  Madam Court Reporter referenced that we may not have
24  throughout the --
25     THE COURT:  Well, just offer them like we talked.

Page 77

1  how the board meetings work. You may not remember specifically
2  the '16 board meeting in November. But generally how they
3  work, you would agree that the board approves and/or denies
4  disability applications in a full slate or block, right?
5     A. In the full meeting, yes, but that's --
6     Q. Okay.
7     A. -- not necessarily how they --
8     Q. And I'm talking about the formal meeting.
9     A. In the formal meeting -- that's the big session, the joint
10 session -- that is how they are ultimately -- how the decision
11 is memorialized.
12    Q. And those are in blocks of 50 or 60 cases, correct?
13    A. It can be more. But, yes, they're in large blocks.
14    Q. So in the open board meeting there's not any discussion of
15 the reasons for granting or denying disability applications,
16 correct?
17    A. Well, there is a statement. That same process that we
18 talked about that happens in the premeeting and the caucuses
19 happens in the general meeting. The list will be reviewed.
20 Harold Henderson, who oversees the meeting, who runs the
21 meeting, will say, Okay, credited seasons cases. And Bethany
22 or Belinda or Chris or Adora, they'll go through again each of
23 the cases. Like, we'll talk about that. And then at that big
24 meeting when Harold is up there, he'll say, Do you approve or
25 deny all these cases based on the discussions that you've had?

Page 78

1  So each one of those sections may be dealt with
2  separately.
3     Q. Okay. So I -- let me kind of unpack what you said, and I
4  want to make some clarity for the record and for Judge Scholer.
5     When you say Harold Henderson, he's the designee --
6     A. Yes.
7     Q. -- of the NFL Commissioner, correct?
8     A. Correct.
9     Q. Harold Henderson was longtime VP of labor for the NFL,
10 correct?
11    A. Yes.
12    Q. So as I understand what you're saying, is if it's an
13 accredited seasoned case and there's ten of them, Harold
14 Henderson will say, Accredited seasons cases, approve or deny.
15 And there's a vote cast, approve or deny in total?
16    A. Yes. And there's -- it's Robert's Rules, so there'll be:
17 Is there a motion? Is there a second? Any discussion? And to
18 your point of: Is there any discussion? It just depends.
19 There can be discussion, but usually we've kind of worked out
20 how we're each going to vote early -- earlier on in the -- in
21 the premeeting.
22    And I don't remember the last time that this has happened,
23 that there has been an actual disagreement about that, but it
24 has happened in the time that I've been a trustee. So there
25 was a vote by us to approve, by the other side to deny, and so

Page 79

1  there was further discussion. But then what likely happened is
2  there was an agreement to take the discussion outside of that
3  board meeting.
4     Q. Okay. And I'm not -- just so we're clear, I'm not asking
5  you to assume one way or another. So if you don't know, that's
6  fine.
7     A. I just wanted to --
8     Q. I understand.
9     A. Yeah. I just wanted the Court to hear kind of how that
10 process worked and that it's not always the same.
11    Q. Okay. On that process specifically, you don't recall on
12 Mr. Cloud one way or the other?
13    A. No, sir.
14    Q. I think I missed this question, so I'm going to go back to
15 something I asked earlier.
16    The board didn't refer Mr. Cloud out for neurological
17 testing in that 2016 time frame, correct?
18    A. No. And I don't believe that there was a -- a reason to
19 at that point for purposes of reclassification.
20    Q. So I'm correct, though?
21    A. Yes, sir.
22    Q. To your knowledge, did the board ever ask Mr. Cloud to
23 inspect any records?
24    A. Did the board ask Mr. Cloud to inspect records?
25    Q. Yeah. Did the board ask Mr. Cloud for any additional

Page 80

1  information in deciding his case?
2     A. No. I don't believe -- I don't believe that it was
3  specifically asked, but it's my understanding that he is
4  permitted to submit any records that he feels are appropriate.
5  I don't know -- that's part of -- part of the general rule in
6  relation to the appeal, I would assume, is that he can, but I
7  don't know that it was specifically asked, like, did somebody
8  call him up and ask him.
9     Q. And I know you want to give some responses. Mr. Meehan
10 can follow up on stuff. So if you can stay tied to the
11 question I ask, it will go a little faster, okay?
12    A. Got it. Sorry about that.
13    Q. Yeah. No worries. No worries.
14    But as you understand it, you're not aware of any dialogue
15 that the board had with Mr. Cloud about his application in
16 2016; is that correct?
17    A. That is correct.
18    Q. So same question as to your advisors. You're not aware of
19 any dialogue that your advisors may have had with Mr. Cloud
20 back in 2016, correct?
21    A. That is correct.
22    Q. It's correct in saying you did not review Mr. Cloud's file
23 back in 2016, from your recollection; is that right?
24    A. That I did not review?
25    Q. Correct.

Page 81

1    A.  I -- I can't say whether I reviewed any material at that
2    time.  I don't remember specifically.
3    Q.  It is your general practice to rely on your advisors to
4    conduct that review, correct?
5    A.  Not solely.
6    Q.  You would agree you did not review the entire file,
7    though, correct?
8    A.  That is correct.
9    Q.  Your advisors, as you understand it, are Bethany Marshall
10   and Chris Smith, correct?
11   A.  Some of the advisors related to disability claims, yes.
12   Adora Williams is also a part of that process, but so are
13   members of the Plan Benefits Office and Groom Law.
14   Q.  I just want to make sure we're on the same page.  You
15   took -- we talked about your deposition.  You've had an
16   opportunity to review that deposition and did make some
17   changes.  Do you recall that?
18   A.  Yes, sir.
19   Q.  So the question at Page 191, 6 through 8:  [As read] You
20   have an advisor in the Players Association room in Bethany
21   Marshall?
22       And you said:  [As read]  And Chris.
23       Correct?
24   A.  Correct.
25   Q.  And "Chris" is Chris Smith?

Page 82

1    A.  Yes, sir.
2    Q.  You trust Ms. Chris Smith's judgment, correct?
3    A.  For the most part, yes.  I can't say that I trust her
4    judgment -- I don't know her judgment about everything.  I
5    certainly trust her judgment when it comes to deciding these
6    cases.
7    Q.  And her review of disability applications, you trust her
8    judgment, correct?
9    A.  I'm sorry.  I trust her...
10   Q.  I'll ask it again.
11       In Ms. Smith's review of disability applications, you
12   trust her judgment?
13   A.  Correct.
14   Q.  So you made a mention earlier that Bethany Marshall brings
15   decisions to the premeeting.
16   A.  Recommendations.
17   Q.  I think you said recommendations, and then you later said
18   decisions.
19   A.  I don't remember that difference.  I do know that it's
20   recommendations.
21   Q.  Do you know how many cases there were in the 2016,
22   November, board meeting?
23   A.  No, sir.
24   Q.  If I told you it was 114, do you have any reason to
25   disagree with that?

Page 83

1    A.  No.
2    Q.  I just want to get an understanding here, Mr. Smith, of
3    what you look at when you're taking a gander at the
4    recommendations or decisions and how that's presented to you.
5        Is that presented to you in a spreadsheet?
6    A.  It's not so much a spreadsheet as it is a -- I don't know.
7    I guess it could be characterized as a spreadsheet.  It's just
8    a listing of the cases.
9    Q.  Okay.  I'm going to show you an e-mail that's a part of
10   Plaintiff's Exhibit 3-7, which is CLOUD-XFILE-2341 through
11   2345.
12   A.  Uh-huh.
13   Q.  Do you see that?
14   A.  Yes.
15       MR. DENNIE:  Your Honor, this is in Tab 59 for your
16   review.
17       THE COURT:  Thank you.
18   Q.  And I'll start at the bottom because it goes in reverse
19   order.
20       It's an e-mail from Bethany Marshall to LaShay Rose dated
21   November 15, 2016.
22       Do you see that?
23   A.  Yes.
24   Q.  Do you know LaShay Rose?
25   A.  Yes.

Page 84

1    Q.  She's an employee of the Benefits Office?
2    A.  Yes.
3    Q.  And just paraphrasing, this is an e-mail where Bethany
4    Marshall is asking for 14 copies, stapled, if possible.
5    A.  Right.
6    Q.  And if we follow up the train -- or the trail here,
7    Ms. Rose is asking, it appears, some hotel employees to make
8    those copies.
9    A.  I assume that's hotel employees.  I...
10   Q.  Okay.  So I'm going to take you down here.  And there's a
11   lot of blacked out stuff, so we've got to roll down a little
12   bit.
13   A.  Uh-huh.
14   Q.  So we get to XFILE-2344.  Is this what's reviewed in your
15   premeeting?
16   A.  This is what's on the sheet, but it's not all that's
17   reviewed.  In reclassification cases, in particular, again,
18   depending on the complexity of a case, there are a number of
19   things that we may discuss.  This is just a shorthand, a
20   summary, as part of the recommendation that's being made.
21   Q.  Okay.  So my question is a tad bit different.
22       Is this the document that's presented to you by Bethany
23   Marshall?
24   A.  Correct.
25   Q.  There's not another document that provides more detail on

Page 85

1  anyone's analysis from the Players Association side, correct?
2  A. Not that she provides, no.
3  Q. Okay.
4  A. There's a general discussion that occurs about that.
5  Q. Okay. And you've taken no notes at any time at any of
6  these board meetings, correct?
7  A. Oh, I've taken notes at meetings. I don't keep the notes,
8  though.
9  Q. You don't have any notes from the November 2016 board
10 meeting, correct?
11 A. No, sir.
12 Q. So you have no way to refer back to what notes or thoughts
13 you had during 2016, correct?
14 A. No notes? No.
15 Q. You don't have any other information from Ms. Marshall
16 about what she was presenting at the November 2016 board
17 meeting, correct?
18 A. Correct.
19 Q. I take it you don't know what specifically Bethany
20 Marshall reviewed to prepare this spreadsheet in Plaintiff's
21 Exhibit 3-7, XFILE-2344; is that correct?
22 A. I don't know specifically. I just in general know what
23 her process would be in reviewing the case.
24 Q. Do you agree you have a duty to oversee your advisors?
25 Correct?

Page 86

1  A. Correct.
2  Q. Have you seen the e-mail that's under Tab 57, Plaintiff's
3  Exhibit 3-5, NFLPA 20 -- or 239 through 245? Have you ever
4  seen this document?
5  A. I'm sorry. Can you scroll down? I don't remember.
6  Q. Sure. Yeah, you tell me when to stop.
7  A. I don't remember seeing this e-mail.
8  Q. So I just, for the purpose of the record, this is an
9  e-mail from Brian Francis to Bethany Marshall dated November
10 10, 2016, correct?
11 A. Yes.
12 Q. Brian Francis is an NFLPA employee?
13 A. I don't remember Brian by name, quite frankly.
14 Q. You don't know him?
15 A. No, I don't. If I do, I've just forgotten the name. I'm
16 sorry.
17 Q. It says in his signature block "Associate of Benefits."
18 Do you see that?
19 A. Yes.
20 Q. Does that help you in any way?
21 A. It doesn't really remember -- it doesn't help me remember
22 him, but I have no reason to doubt that that was his role.
23 Q. So if we roll down here to NFLPA 241, it says "Michael
24 Cloud (reclass)," under the "Deny," an X, correct?
25 A. Yes, sir.

Page 87

1  Q. Was this document, to your knowledge, ever submitted to
2  you in November -- on November 10, 2016?
3  A. No. And, again, what you showed previously would have
4  been what Bethany brought to the meeting. There would have
5  been a recommendation and there would have been a brief
6  synopsis of what the reason was for the recommendation.
7  Q. And just rolling down just so we can finish this off. On
8  NFLPA 244, it says "no changed circumstances." Do you see
9  that?
10 A. I do.
11 Q. And because it's not redacted, I take it that relates to
12 Mr. Cloud. So have you ever seen this portion of this exhibit?
13 A. I don't recall seeing this, no.
14 Q. So am I correct that you're not made aware that there are
15 disability cases until you show up at the board meeting?
16 A. No. They're put on the -- they're put on the website and
17 we're made aware that there were disability cases, and we know
18 that there're going to be disability cases at every meeting.
19 And depending on the case, again, and the complexity and the
20 stage of the case, we may receive communication between the
21 quarterly meetings.
22 Q. As it pertains to Mr. Cloud's case, you don't remember one
23 way or the other, correct?
24 A. No, sir.
25 Q. Sir, I'm going to -- again, remember your deposition?

Page 88

1  A. Yes, sir.
2  Q. I asked you a question. That's up here on the screen.
3  You can read along. It's at 186, Lines 18 through 23.
4     [As read] So I'll just ask you specifically. When --
5  when do you become aware that a reclassification appeal
6  application has been filed?
7     Answer: We're not alerted to that, to the best of my
8  knowledge, specifically until we get to the meeting. Although
9  the information is available on a website.
10    Did I read that correctly?
11 A. Yes, sir.
12 Q. So the actual application itself, you're not alerted until
13 you get to that meeting, correct?
14 A. "Alerted" meaning somebody actually telling us, yes.
15 Again, it's -- it would be available on the website. And,
16 again, depending on the case, we could be alerted at a time
17 before that just depending on what the specifics of that case
18 might be. But I don't remember it specifically for Mr. Cloud.
19 Q. You'd agree the process is when a reclass appeal -- let me
20 back up one step.
21    When a reclass is filed, the first step is to go to the
22 Disability Initial Claims Committee, correct?
23 A. Yes, sir.
24 Q. And at that time that consisted of Chris Smith and Patrick
25 Reynolds?

Page 153

```
1          REPORTER'S CERTIFICATE
2          I, Thu Bui, CRR, RMR, Official Court Reporter,
    United States District Court, Northern District of Texas, do
3   hereby certify that the foregoing is a true and correct
    transcript, to the best of my ability and understanding, from
4   the record of the proceedings in the above-entitled and
    numbered matter.
5
6                  /s/ Thu Bui
               Official Court Reporter
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```