**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

JASON ALFORD *et al.*,

        Plaintiffs,

    v.

THE NFL PLAYER DISABILITY &
SURVIVOR BENEFIT PLAN *et al.*,

        Defendants.

Case No. 1:23-cv-00358-JRR

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 5

*The Disability Plan & The Retirement Plan* ...................................................... 5

*The Disability Board & Trustees* ...................................................................... 6

*Plan Benefits & Claims Process* ....................................................................... 7

*Plaintiffs' Varied Medical Histories and Benefit Applications* ....................... 10

LEGAL STANDARD............................................................................................ 13

ARGUMENT ....................................................................................................... 14

I.    PLAINTIFFS' § 502(A)(1)(B) CLAIMS (COUNT I) MUST BE
      DISMISSED BECAUSE PLAINTIFFS WERE PROPERLY DENIED
      BENEFITS IN ACCORDANCE WITH PLAN TERMS ..................................... 14

      A.    Plaintiffs Are Not Entitled to Benefits Under the Plan's Plain and
            Unambiguous Terms.................................................................... 14

      B.    Plaintiffs Have Not Plausibly Alleged That the Board Abused Its
            Discretion ................................................................................... 17

            1.    Plaintiffs' Asserted Statistics Lack Sufficient Context and
                  Do Not Plausibly Support Any of Their Claims .......................... 18

            2.    Plaintiffs' Claim-Specific Challenges to the Adequacy of
                  the Neutral Physician Examinations Do Not Plausibly
                  Establish That the Board Abused Its Discretion in Any of
                  Their Cases................................................................................... 23

II.   THE COURT SHOULD DISMISS COUNTS II, III, AND IV AS A
      DISJOINTED COLLECTION OF "REPACKAGED" ERISA BENEFIT
      CLAIMS .............................................................................................. 25

III.  PLAINTIFFS' ADEQUATE NOTICE AND FULL AND FAIR REVIEW
      CLAIMS IN COUNTS II AND III INDEPENDENTLY FAIL AS A
      MATTER OF LAW ................................................................................. 29

IV.   PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS (COUNT
      IV) ARE INDEPENDENTLY DEFICIENT AS A MATTER OF LAW............. 34

      A.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under
            § 404 Based on Material Misrepresentations in the SPDs or
            Decision Letters ......................................................................... 34

**TABLE OF CONTENTS**
**(continued)**

Page

B.    Plaintiffs' Claim That Misleading Statements in the SPDs Violated § 102 Similarly Fails ................................................................................. 37

C.    Plaintiffs Do Not Plead Sufficient Facts to Establish Defendants Breached Their Duties of Care or Loyalty with Respect to Their Review of Plaintiffs' Records ..................................................... 38

D.    Plaintiffs Fail to State a Breach of Fiduciary Duty Claim Based on Defendants' Alleged Failure to Ensure the Independence and Impartiality of Neutral Physicians ........................................... 40

V.    ALL OF PLAINTIFFS' CLAIMS AGAINST THE TRUSTEES FAIL AS A MATTER OF LAW ............................................................................. 43

A.    Plaintiffs Have Not Properly Pled Any Claims Against the Trustees in Counts I–IV ................................................................. 43

B.    Count V Must Be Dismissed Because Plaintiffs Do Not Adequately Allege Fiduciary Misconduct by Any of the Trustees ........... 45

VI.    ALL OF PLAINTIFFS' CLAIMS AGAINST THE COMMISSIONER SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT HE IS NOT A FIDUCIARY ................................................................. 48

CONCLUSION ................................................................................................. 50

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Abnathya v. Hoffmann-LaRoche, Inc.*,
 2 F.3d 40 (3d Cir. 1993) ................................................................... 24

*Adams v. Brink's Co.*,
 261 F. App'x 583 (4th Cir. 2008) ............................................... 34, 49

*Adkins v. Holland*,
 216 F. Supp. 2d 576 (S.D.W. Va. 2002), *aff'd*, 87 F. App'x 886 (4th Cir.
 2004) ............................................................................................ 29, 36

*Aiken v. Policy Mgmt. Sys. Corp.*,
 13 F.3d 138 (4th Cir. 1993) ............................................................. 36

*Archer v. SunTrust Bank*,
 2017 WL 6550390 (E.D. Va. Dec. 22, 2017) .................................. 28

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................. passim

*Barchock v. CVS Health Corp.*,
 886 F.3d 43 (1st Cir. 2018) ........................................................ 20, 22

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................................... 13

*Birdsell v. United Parcel Serv. of Am.*,
 94 F.3d 1130 (8th Cir. 1996) ........................................................... 24

*Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
 132 F. Supp. 3d 676 (D. Md. 2015) ................................................. 15

*Bolone v. TRW Sterling Plant Pension Plan*,
 130 F. App'x 761 (6th Cir. 2005) .................................................... 38

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
 201 F.3d 335 (4th Cir. 2000) ........................................................... 15

*Boyce v. Eaton Corp. Long Disability Plan*,
 2017 WL 3037392 (W.D.N.C. July 18, 2017) ................................. 33

*Boyd v. Bell*,
 796 F. Supp. 2d 682 (D. Md. 2011) ............................... 17, 32, 33, 42

*Boyd v. Sysco Corp.*,
 2015 WL 7737966 (D.S.C. Dec. 1, 2015) ........................................ 34

*Brogan v. Holland*,
 105 F.3d 158 (4th Cir. 1997) ........................................................... 30

## TABLE OF AUTHORITIES
### (continued)

Page

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
    919 F.3d 763 (4th Cir. 2019) ................................................. 39

*Bryant v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    2015 WL 13908103 (N.D. Ga. Mar. 23, 2015)........................... 17

*Bryson v. United Healthcare Ins. Co.*,
    2015 WL 4026009 (W.D.N.C. July 1, 2015)............................... 30

*Campbell v. Rite Aid Corp.*,
    2014 WL 3868008 (D.S.C. Aug. 5, 2014)................................... 27

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*,
    612 F. Supp. 3d 516 (D. Md. 2020)........................................... 26

*CIGNA Corp v. Amara*,
    563 U.S. 421 (2011)................................................................ 16

*Clark v. BASF Corp.*,
    142 F. App'x 659 (4th Cir. 2005) .............................................. 5

*Clark v. Fed. Express Corp.*,
    2009 WL 10727182 (D. Md. Apr. 1, 2009)................................. 27

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
    381 F. Supp. 2d 452 (D. Md. 2005).......................................... 44

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    2022 WL 2237451 (N.D. Tex. June 21, 2022) ........................... 33

*Coleman v. Nationwide Life Ins. Co.*,
    969 F.2d 54 (4th Cir. 1992) ............................................... 48, 49

*Colucci v. Agfa Corp. Severance Pay Plan*,
    431 F.3d 170 (4th Cir. 2005), *abrogated on other grounds by Champion v.*
    *Black & Decker (U.S.) Inc.*, 550 F.3d 353 (4th Cir. 2008)............... 16, 33

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
    508 U.S. 602 (1993)................................................................. 6

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
    2015 WL 4394408 (D. Md. July 15, 2015)................................. 28

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
    102 F.3d 712 (4th Cir. 1996) ......................................... 27, 28, 30

*Damiano v. Inst. for In Vitro Scis.*,
    294 F. Supp. 3d 439 (D. Md. 2018), *aff'd*, 799 F. App'x 186 (4th Cir. 2020) ............... 36, 37

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) .................................................. 45

*Davis v. Wilmington Fin., Inc.*,
    2010 WL 1375363 (D. Md. Mar. 26, 2010).......................... 22

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
    931 F.3d 269 (4th Cir. 2019) .................................................. 42

*DeBlasis v. DeBlasis*,
    2023 WL 2758841 (D. Md. Apr. 3, 2023)............................ 22

*Desper v. Clarke*,
    1 F.4th 236 (4th Cir. 2021) ......................................... 14, 21

*DiCamillo v. Liberty Life Assurance Co.*,
    287 F. Supp. 2d 616 (D. Md. 2003)...................................... 24

*DiFelice v. U.S. Airways, Inc.*,
    397 F. Supp. 2d 758 (E.D. Va. 2005) .................................. 36

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    487 F. Supp. 3d 807 (N.D. Cal. 2020), *aff'd and remanded on other grounds*,
    855 F. App'x 332 (9th Cir. 2021) ........................................ 20

*Donato v. Metro. Life Ins. Co.*,
    19 F.3d 375 (7th Cir. 1994) .................................................. 24

*Elliott v. Sara Lee Corp.*,
    190 F.3d 601 (4th Cir. 1999) ................................................ 24

*Est. of Spinner v. Anthem Health Plans of Va.*,
    589 F. Supp. 2d 738 (W.D. Va. 2008), *aff'd*, 388 F. App'x 275 (4th Cir. 2010) ............ 48, 49

*Ethridge v. Am. Airlines, Inc.*,
    2007 WL 9718535 (E.D.N.C. Sept. 26, 2007)...................... 27

*Evans v. Eaton Corp. Long Term Disability Plan*,
    514 F.3d 315 (4th Cir. 2008) ......................................... 18, 19

*Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*,
    2017 WL 1155807 (M.D.N.C. Mar. 27, 2017)...................... 28

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)............................................................... 14

*Frommert v. Conkright*,
    738 F.3d 522 (2d Cir. 2013)................................................. 38

**TABLE OF AUTHORITIES**
(continued)

Page

*Gallagher v. Reliance Standard Life Ins. Co.*,
  305 F.3d 264 (4th Cir. 2002) .......................................................... 15, 17

*Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan*,
  249 F. Supp. 3d 570 (D. Mass. 2017) ............................................... 11

*Gardner v. TIMCO Aviation Servs., Inc.*,
  2010 WL 3282662 (M.D.N.C. Aug. 19, 2010)................................... 27

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
  2022 WL 4368188 (M.D.N.C. Sept. 21, 2022)..................................... 1

*Geddes v. United Staffing All. Emp. Med. Plan*,
  469 F.3d 919 (10th Cir. 2006) .......................................................... 40

*Gelumbaukskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*,
  2010 WL 2025128 (D. Md. May 17, 2010)......................................... 30

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  925 F. Supp. 2d 700 (D. Md. 2012)..................................... 32, 33, 42

*Gladstone v. Gladstone*,
  2023 WL 2571510 (D. Md. Mar. 18, 2023)......................................... 21

*Gluth v. Wal-Mart Stores, Inc.*,
  117 F.3d 1413 (4th Cir. 1997) ...................................................... 43, 44

*Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*,
  505 F. Supp. 3d 594 (E.D.N.C. 2020)................................................. 28

*Gross v. St. Agnes Health Care, Inc.*,
  2013 WL 4925374 (D. Md. Sept. 12, 2013) .......................................... 5

*Gruber v. Unum Life Ins. Co. of Am.*,
  195 F. Supp. 2d 711 (D. Md. 2002)..................................................... 48

*Guardian Life Ins. Co. of Am. v. Reinaman*,
  2011 WL 2133703 (D. Md. May 26, 2011)......................................... 49

*Halberg v. United Behav. Health*,
  408 F. Supp. 3d 118 (E.D.N.Y. 2019) ........................................... 29, 36

*Hall v. Metro. Life Ins. Co.*,
  259 F. App'x 589 (4th Cir. 2007) ...................................................... 27

*Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*,
  583 F. App'x 413 (5th Cir. 2014) ...................................................... 17

## TABLE OF AUTHORITIES
### (continued)

Page

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99 (2013) ................................................................................................. 14

*Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    613 F. App'x 418 (5th Cir. 2015) ........................................................................ 17

*Holloway v. Maryland*,
    32 F.4th 293 (4th Cir. 2022) ................................................................................ 13

*Hudson v. Nat'l Football League Mgmt. Council*,
    2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019) ..................................................... 38

*In re Constellation Energy Grp., Inc.*,
    738 F. Supp. 2d 602 (D. Md. 2010) ...................................................................... 35

*In re Huntington Bancshares Inc. ERISA Litig.*,
    620 F. Supp. 2d 842 (S.D. Ohio 2009) ................................................................. 35

*In re Mut. Funds Inv. Litig.*,
    529 F.3d 207 (4th Cir. 2008) ................................................................................ 45

*Int'l Refugee Assistance Project v. Trump*,
    961 F.3d 635 (4th Cir. 2020) .......................................................................... 13, 22

*Jassie v. Mariner*,
    2016 WL 67257 (D. Md. Jan. 6, 2016) ................................................................. 40

*Jenkins v. Int'l Ass'n of Bridge*,
    2015 WL 1291883 (E.D. Va. Mar. 20, 2015) ................................................. 43, 44

*Johnson v. Am. United Life Ins. Co.*,
    716 F.3d 813 (4th Cir. 2013) ........................................................................... 15, 16

*Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    468 F.3d 1082 (8th Cir. 2006) .............................................................................. 17

*Johnson v. NFL Player Disability, Neurocognitive & Death Benefit Plan*,
    2023 WL 2059033 (E.D. Mich. Feb. 16, 2023) .................................................... 50

*Juric v. USALCO, LLC*,
    2023 WL 2332352 (D. Md. Mar. 2, 2023) ..................................................... passim

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
    874 F. Supp. 2d 213 (S.D.N.Y. 2012) .................................................................. 50

*Keegan v. Steamfitters Loc. Union No. 420 Pension Fund*,
    174 F. Supp. 2d 332 (E.D. Pa. 2001) ................................................................... 43

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kendall v. Pharm. Prod. Dev., LLC*,
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) .................................................... 39, 46

*King v. Nalley*,
2017 WL 4221062 (D. Md. Sept. 21, 2017), *aff'd*, 737 F. App'x 163 (4th Cir. 2018) ................................................................................................................... 31

*Koman v. Reliance Standard Life Ins. Co.*,
2022 WL 17607056 (M.D.N.C. Dec. 13, 2022) ...................................................... 28

*Korotynska v. Metro. Life Ins. Co.*,
474 F.3d 101 (4th Cir. 2006) ......................................................................... passim

*Kress v. Food Emps. Lab. Rels. Ass'n*,
391 F.3d 563 (4th Cir. 2004) ................................................................................ 16

*Lafleur v. La. Health Serv. & Indem. Co.*,
563 F.3d 148 (5th Cir. 2009) ................................................................................ 32

*Lokhova v. Halper*,
995 F.3d 134 (4th Cir. 2021) .......................................................................... 13, 18

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
872 F.2d 80 (4th Cir. 1989) .................................................................................. 10

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .............................................................................................. 47

*Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*,
70 F. Supp. 2d 580 (D. Md. 1998), *aff'd sub nom. Md. Minority Contractors Ass'n, Inc. v. Md. Stadium Auth.*, 198 F.3d 237, 1999 WL 827553 (4th Cir. 1999) (table) ........................................................................................................ 11

*Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*,
2021 WL 4443142 (S.D.N.Y. Sept. 28, 2021) ........................................................ 20

*Mid Atl. Med. Servs., LLC v. Sereboff*,
407 F.3d 212 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006) ........................... 2, 15, 16

*Moore v. Verizon Commc'ns, Inc.*,
2022 WL 16963245 (E.D. Va. Nov. 15, 2022) ....................................................... 28

*Morris v. Nat'l Football League Ret. Bd.*,
833 F. Supp. 2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir. 2012) ...................................................................................................................... 17

*Palmer v. Prudential Ins. Co. of Am.*,
215 F.3d 1320, 2000 WL 655944 (4th Cir. 2000) ................................................. 24

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ........................................................................ 41, 42

*Pender v. Bank of Am. Corp.*,
  788 F.3d 354 (4th Cir. 2015) ........................................................ 16, 26

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021) ................................................................. 45

*Philips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ................................................................. 1

*Price v. UNUM Life Ins. Co. of Am.*,
  2018 WL 1352965 (D. Md. Mar. 14), *aff'd*, 746 F. App'x 231 (4th Cir. 2018) ............. 24, 41

*Ranke v. Sanofi-Synthelabo, Inc.*,
  2004 WL 2473282 (E.D. Pa. Nov. 3, 2004), *aff'd*, 436 F.3d 197 (3d Cir. 2006) .................. 37

*Reetz v. Lowe's Cos.*,
  2019 WL 4233616 (W.D.N.C. Sept. 6, 2019) ........................................................ 39

*Rogers v. Unitedhealth Grp., Inc.*,
  144 F. Supp. 3d 792 (D.S.C. 2015) ...................................................................... 47

*Saini v. Cigna Life Ins. Co. of N.Y.*,
  2018 WL 1959551 (S.D.N.Y. Apr. 24, 2018) ........................................................ 11

*Saval v. BL Ltd.*,
  710 F.2d 1027 (4th Cir. 1983) ........................................................................... 25

*Schlichter v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
  2017 WL 1001204 (S.D. Ind. Mar. 15, 2017) ...................................................... 17

*Schwager v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2010 WL 481232 (D. Md. Feb. 4, 2010) .............................................................. 17

*Sedlack v. Braswell Servs. Grp., Inc.*,
  134 F.3d 219 (4th Cir. 1998) ......................................................................... 4, 30

*Shah v. Blue Cross Blue Shield of Tex.*,
  2018 WL 1293164 (D.N.J. Mar. 13, 2018) ....................................................... 30, 38

*Singer v. Black & Decker Corp.*,
  769 F. Supp. 911 (D. Md. 1991), *aff'd*, 964 F.2d 1449 (4th Cir. 1992) ................................. 35

*Smith v. Shoe Show, Inc.*,
  2022 WL 583569 (M.D.N.C. Feb. 25, 2022) ........................................................ 39

# TABLE OF AUTHORITIES
## (continued)

**Page**

*State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC,*
  2018 WL 6514797 (D. Md. Dec. 11, 2018) .................................................. 22

*Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,*
  2011 WL 10005532 (D. Md. Jan. 13, 2011) .................................................. 33

*Switzer v. Benefits Admin. Comm.,*
  2014 WL 4052855 (D. Md. Aug. 13, 2014) .................................................. 30

*Tatum v. RJR Pension Inv. Comm.,*
  761 F.3d 346 (4th Cir. 2014) .................................................. 40

*Thole v. U.S. Bank NA,*
  140 S. Ct. 1615 (2020) .................................................. 47

*United States ex rel. Taylor v. Boyko,*
  39 F.4th 177 (4th Cir. 2022) .................................................. 14, 20

*Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.,*
  2017 WL 3610486 (D.N.J. Aug. 22, 2017 .................................................. 30

*US Airways, Inc. v. McCutchen,*
  569 U.S. 88 (2013) .................................................. 14, 15, 16

*Varity Corp. v. Howe,*
  516 U.S. 489 (1996) .................................................. 3, 25, 28

*Williams v. Centerra Grp., LLC,*
  2021 WL 4227384 (D.S.C. Sept. 16, 2021) .................................................. 39

*Williams v. NFL Player Supplemental Disability Plan,*
  2020 WL 43113 (N.D. Cal. Jan. 3, 2020) .................................................. 11

*Wolf v. Life Ins. Co. of N. Am.,*
  541 F. Supp. 3d 1191 (W.D. Wash. 2021), *aff'd*, 46 F.4th 979 (9th Cir. 2022) .............. 20, 22

## **STATUTES**

29 U.S.C. § 1002(21) .................................................. 49

29 U.S.C. § 1002(21)(A) .................................................. 6

29 U.S.C. § 1002(37)(A) .................................................. 6

29 U.S.C. § 1022(b) .................................................. 38

29 U.S.C. § 1102(a)(1) .................................................. 5

29 U.S.C. § 1102(a)(2) .................................................. 49

**TABLE OF AUTHORITIES**
(continued)

Page

29 U.S.C. § 1104(a)(1)(D) ............................................................... 46

29 U.S.C. § 1109(a) ................................................................... 45, 46

29 U.S.C. § 1109(b) ...................................................................... 46

29 U.S.C. § 1132(a)(1)(B) ............................................................... 14

29 U.S.C. § 1132(a)(2) .................................................................. 45

29 U.S.C. § 1132(a)(3) .................................................................. 26

29 U.S.C. § 1132(d)(1) .................................................................. 43

29 U.S.C. § 1132(d)(2) ............................................................... 4, 43

29 U.S.C. § 1133(1) .................................................................. 3, 29

29 U.S.C. § 404(a)(1)(B) ................................................................. 40

29 U.S.C. §§ 1002(16)(A)–(B) ......................................................... 5, 6

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................. 13

Fed. R. Civ. P. 20 ...................................................................... 25

Fed. R. Civ. P. 20(a)(1) ................................................................. 25

Fed. R. Civ. P. 8 ....................................................................... 21

Fed. R. Civ. P. 9(b) .................................................................... 22

## REGULATIONS

29 C.F.R. § 2520.102-3 .................................................................. 37

29 C.F.R. § 2520.102-3(t)(1) ............................................................ 37

29 C.F.R. § 2560.503-1(b)(7) ..................................................... 31, 40, 41

29 C.F.R. § 2560.503-1(h)(2)(iii) ....................................................... 33

29 C.F.R. § 2560.503-1(h)(2)(iv) ........................................................ 31

29 C.F.R. § 2560.503-1(h)(3)(ii) ........................................................ 32

29 C.F.R. § 2560.503-1(j)(6) ........................................................ 29, 36

29 C.F.R. § 2560.503-1(l)(2)(i) ......................................................... 41

29 C.F.R. § 2560.503-1(o) ............................................................... 10

## INTRODUCTION

Plaintiffs are former National Football League ("NFL") players asserting claims for benefits under the NFL Player Disability & Survivor Benefit Plan (the "Disability Plan" or the "Plan"), a disability plan negotiated between the National Football League Players Association ("Players Association"), the collective-bargaining representative of NFL players, and the NFL Management Council (the "Management Council"), the collective-bargaining representative of the 32 NFL teams.  Plaintiffs sue the Plan, the Plan Board, the six Plan trustees (the "Trustees"), and NFL Commissioner Roger Goodell (collectively, "Defendants") for benefits under the Employee Retirement Income Security Act ("ERISA") and for various forms of equitable relief.

Plaintiffs contend that Defendants—including three retired NFL players who serve as Trustees—rejected their claims for disability benefits by using a "sham" review process in which they failed to fully review the claims and relied on physicians who are financially incentivized to issue reports finding that players are not disabled.  *See, e.g.*, Pls.' Am. Class Action Compl. ("AC" or the "Complaint") ¶¶ 107, 109, ECF No. 56.  They make these wholly speculative assertions despite the fact that public records they rely on show the Plan has paid more than $1 **billion** in benefits to former NFL players and their beneficiaries over the past six years.  *See generally* Ex. A, 2016–2021 IRS Form 5500s.[1]  In 2021 alone, 2,713 former players—more than 21% of all Plan participants—received more than $235 million in benefits from the Plan.  *See id.* at 3 (line 6d), 50 (12,642 total Plan participants on March 31, 2022); Ex. B, Apr. 1, 2021

---

[1] *See* U.S. Dep't of Labor, Form 5500 Search, EFAST, https://www.efast.dol.gov/5500search/; *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 2022 WL 4368188, at *7 n.5 (M.D.N.C. Sept. 21, 2022) (taking judicial notice of Form 5500s on motion to dismiss as "unquestionably matters of public record" given their mandatory public filing (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  "Ex." Refers to the exhibits attached to the Declarations of Hessam ("Sam") Vincent and Gregory F. Jacob in Support of Defendants' Joint Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Class Action Complaint.

Disability Plan Doc. ("DPD") § 2.1 ("All players participate in the Plan.").  Plaintiffs' allegations that Defendants nonetheless conspired to systemically deny claims are both implausible and fail to state a claim as a matter of law.

In Count I, each Plaintiff seeks an order under § 502(a)(1)(B) of ERISA that he is entitled to disability benefits under the Plan.  But none of the Plaintiffs is eligible for disability benefits because, as the Complaint admits, none of them has satisfied the Plan's Neutral Rule, an express requirement under the Plan which provides that no former player can be eligible for the disability benefits at issue unless at least one "Neutral Physician" first concludes that the player meets the relevant disability criteria.  *See, e.g.*, AC ¶¶ 45–58; DPD §§ 3.1(d), 5.1(c), 6.1(e).[2]  Because the terms of benefits plans must be enforced as written, Plaintiffs' demands for benefits must accordingly be dismissed.  *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006).[3]

Plaintiffs attempt to sidestep the Neutral Rule by relying on "statistics" that they contend show that Neutral Physicians are generally biased, and by alleging that their own Neutral Physician examinations were insufficient to allow the Board to make an adequate determination on their claims.  But this Court may only review the Board's benefit decisions for an abuse of discretion, and none of Plaintiffs' statistical or claim-specific allegations establishes any basis to disturb those decisions.  Even accepted as true, the supposed "statistical sample" that Plaintiffs cite does not remotely support their contention that the Board pays Neutral Physicians more to

---

[2] The Neutral Rule, which was collectively bargained by the Players Association and Management Council, recognizes that determining the existence and extent of disability requires medical expertise.  Neutral Physicians are highly trained medical specialists who are jointly designated by the Players Association and Management Council and are paid a flat fee by the Plan for each examination that does not vary based on the outcome.  *Id.*; AC ¶ 49.

[3] Unless indicated, all emphasis is added and internal citations and quotations are omitted.

find that former players are not disabled, or that Neutral Physicians are otherwise biased. The purported "statistics" are entirely devoid of any of the context or details required to supply them meaning, such as the total number of examinations the referenced Neutral Physicians performed, while the Plan's Form 5500s showing more than a billion dollars in benefits paid to thousands of former players make it clear that an overwhelming number of examinations have been omitted. *See* Ex. A, *supra*. And Plaintiffs' claim-specific challenges fare no better. Some are untimely or not fully exhausted. And the remainder are facially inadequate to call the claim determinations into question. Ultimately, all must be dismissed.

In Counts II, III, and IV of the Complaint, Plaintiffs bring claims under ERISA § 502(a)(3)—often referred to as ERISA's "catchall" provision—challenging the adequacy of Defendants' claim-denial letters and claim-review process on the same underlying bases that underpin their claims in Count I. These Counts must be dismissed because it is black-letter law that beneficiaries cannot bring claims under § 502(a)(3) where, as here, they have "available to [them] the alternative remedy of bringing an action under § [502](a)(1)(B)." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 104–06 (4th Cir. 2006); *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) (ERISA plaintiff cannot "repackage his . . . 'denial of benefits' claim" as claims under § 502(a)(3), § 502(a)(2), or ERISA's implementing regulations).

Counts II, III, and IV fail on the merits, too. Count II vaguely alleges that the Board's letters denying Plaintiffs' claims were inadequate under ERISA § 503(1). *See* AC ¶¶ 290–95; 29 U.S.C. § 1133(1). But ERISA only requires that participants be provided reasoned explanations for benefit decisions, which the Board's letters plainly do. Count III alleges that Plaintiffs did not receive a full and fair review of their claims because, *inter alia*, Defendants delegated review of medical records to advisors and failed to ensure the impartiality of the Neutral Physicians.

AC ¶¶ 296–304.  Each of these claims is either unsupported by sufficient factual allegations, or

fails as a matter of law.  And in any event, the claims in Counts II and III are based on regulatory

provisions governing claims administration that do not provide their own right of action, but

instead allow for relief under § 502(a)(1)(B).  *See Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d

219, 225 (4th Cir. 1998) ("[A] breach of section 1133 does not provide a claimant with any new

substantive rights.").

Count IV asserts claims for fiduciary breach under ERISA §§ 102, 404, and 405, and

seeks equitable relief under § 502(a)(3), for alleged (1) misrepresentations, AC ¶¶ 307–13, 326,

329; (2) incomplete review of claim records, *id.* ¶¶ 314–20; and (3) failure to create procedures

to ensure that Neutral Physicians conduct unbiased examinations.  *Id.* ¶¶ 318, 321–29.  Plaintiffs'

misrepresentation claims fail because they do not plausibly allege that any Defendant made a

material misrepresentation upon which Plaintiffs relied to their detriment.  Nor do Plaintiffs

plausibly allege that Defendants breached any duties through their review or delegation of

review of the administrative record.  Plaintiffs' claims challenging the Plan's process for hiring

and monitoring Neutral Physicians also must be dismissed because the only asserted factual

support for the claims is the Complaint's litany of meaningless statistics concerning Neutral

Physician examinations.

Finally, Plaintiffs' claims against the Trustees and the Commissioner individually must

be dismissed.  It is a bedrock principle of ERISA that claims for benefits are "enforceable only

against the Plan as an entity" and cannot be brought against individual defendants.  *See* 29

U.S.C. § 1132(d)(2).  And all of Plaintiffs' other claims against the Trustees fail, including the

claims in Count V seeking removal of the Trustees under ERISA § 409(a), because the

Complaint contains no allegations that any individual Trustee or the Commissioner engaged in

any individual misconduct that would breach a fiduciary responsibility.  Indeed, the Complaint

fails to make any allegations at all against the individual Trustees or the Commissioner beyond

that they were members of the Board.  *See* Section V, *infra*; *cf.* AC ¶ 20.  Furthermore, all of

Plaintiffs' claims against the Commissioner must be dismissed for the independent reason that he

is not a fiduciary.  *See* Section VI, *infra*.

For these reasons, as set forth more fully below, the Complaint must be dismissed in its

entirety.

## BACKGROUND

### *The Disability Plan & The Retirement Plan*

Plaintiffs' claims concern the Disability Plan and the Bert Bell/Pete Rozelle NFL Player

Retirement Plan (the "Retirement Plan") (collectively, the "Plans").[4]  These multi-employer

benefit plans were established and are maintained through collective-bargaining agreements

("CBAs") between the Management Council and the Players Association who jointly agreed to

the specific benefits and eligibility requirements for benefits under the plans.  *See* Ex. C, Apr. 1,

2021 Ret. Plan Doc. ("RPD"), at 1; DPD at 1.[5]

---

[4] ERISA mandates that every benefit plan be maintained pursuant to a written plan document.
29 U.S.C. § 1102(a)(1).  Because the Plans are integral to and expressly relied upon by the
Complaint, *see, e.g.*, AC ¶¶ 32, 44–47, 60–64, 68–71, the Court may consider them in resolving
this motion.  *See Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (unpublished)
(affirming district court's consideration of ERISA plan documents in motion to dismiss ruling);
*Juric v. USALCO, LLC*, 2023 WL 2332352, at *3 n.4 (D. Md. Mar. 2, 2023) (considering
summary plan description in motion to dismiss ruling); *Gross v. St. Agnes Health Care, Inc.*,
2013 WL 4925374, at *5 (D. Md. Sept. 12, 2013) ("Plaintiff's claims are predicated on her
alleged entitlement to benefits under the Policy and her rights under ERISA, and therefore the
Plan, the Policy, and the SPD are all integral to the Amended Complaint.").

[5] Unlike conventional, single-employer plans, where the employer may administer its
employees' benefit plans, Taft-Hartley plans, like the Disability Plan here, are administered by a
"group of representatives of the parties," i.e., representatives of the employees and employer,
such as "a joint board of trustees."  *See* 29 U.S.C. §§ 1002(16)(A)–(B).  These representatives

Since 1962, the Retirement Plan and its predecessors have provided pension and disability benefits under rules negotiated between the Management Council and the Players Association. RPD at 1. In 1993, the Disability Plan was created to provide supplemental disability benefits in addition to those provided by the Retirement Plan. Beginning January 1, 2015, most disability and survivor benefits were removed from the Retirement Plan and were thereafter paid from the Disability Plan. *Id.* Since January 1, 2015, most (but not all) disability benefits are adjudicated under, and paid from, the Disability Plan. *Id.*; DPD § 1.

***The Disability Board & Trustees***

The administrator and named fiduciary of the Disability Plan is the Disability Board of the NFL Player Disability & Survivor Benefit Plan (the "Board" or "Disability Board"). *See* DPD §§ 1.2, 9.1, 9.2; AC ¶ 39; *see also* 29 U.S.C. §§ 1002(16)(A)–(B). The Board is responsible for a wide range of duties, which include the exercise of "discretionary authority or discretionary control respecting management of [the] plan" and "management or disposition of its assets." *See* 29 U.S.C. § 1002(21)(A).

The Board has six voting members (the Trustees), appointed in equal number by the Management Council and Players Association. DPD § 9.1; AC ¶ 44. No individual Trustee has control over individual benefits determinations; rather, the collective Board, which generally requires "at least four affirmative votes" to act, is "responsible for implementing and administering the Plan, subject to the terms of the Plan," and it has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan." DPD §§ 9.2, 9.7; *see also* AC ¶ 43. The Commissioner is an *ex-officio*, non-voting member of the Board. DPD

---

collectively bargain for the plans' provisions, including the benefits terms, and multiple employers fund the plans. *See id.* § 1002(37)(A); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 637–38 (1993).

§ 9.1; AC ¶ 44.

***Plan Benefits & Claims Process***

The Disability Plan offers three types of disability benefits to eligible players: total and permanent ("T&P"), line-of-duty ("LOD"), and neurocognitive ("NC").  DPD §§ 3–4 (T&P), 5 (LOD), 6 (NC); AC ¶¶ 59–81.  Since April 2017, the Disability Plan has included a "Neutral Rule," which states that for a player to be found eligible for any of these disability benefits, at least one Neutral Physician must find the player satisfies the relevant Plan standard.  *See* DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3 (describing the role of Neutral Physicians).  It further states that, if no Neutral Physician makes the requisite finding, then "the Player will not be eligible for and will not receive Plan . . . benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record."  *Id.* §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3.

A Neutral Physician is defined in the Plan as a "physician, institution, or other health care professional[]" who has been jointly designated by the Players Association and Management Council.  *Id.* § 12.3(b).  Neutral Physicians must "examine each Player referred by the Plan and . . . provide such report or reports on the Player's condition as necessary for the Disability Board or Disability Initial Claims Committee to make an adequate determination as to that Player's physical or mental condition."  *Id.* § 12.3.  Claimants often receive multiple Neutral Physician examinations, depending on the nature of the disability claimed—the Complaint, for example, references more than 60 different Neutral Physician examinations just for the ten named Plaintiffs.  AC ¶¶ 147–266.  The Plan pays Neutral Physicians a flat fee for each examination, and, since April 2021, has required Neutral Physicians to affirmatively certify that they are not biased and their compensation does not depend on the outcome of their opinions.  *See id.*; *see*

*also* Ex. D, October 2022 Disability Plan Summary Plan Description ("SPD"), at 9, 23, 68.

If a Neutral Physician's report is insufficient for the Board to "make an adequate determination" regarding the Player's condition, the Board may require the Neutral Physician to provide additional information, or refer the player to another Neutral Physician for evaluation. DPD § 12.3(b). Neutral Physicians may be "removed or replaced" solely by the Players Association or Management Council, either jointly at any time or unilaterally by either the Players Association or Management Council upon "thirty days . . . notice . . . to the other party." *Id*.

The three-member Disability Initial Claims Committee (the "Committee") makes the first-level discretionary determination of a player's eligibility for benefits. *See id.* §§ 9.4, 9.5. The Management Council appoints one member, and the Players Association appoints another member. The Management Council and the Players Association jointly appoint the third member—the Plan's Medical Director or other medical professional—who votes only when the other two members disagree. *Id.* § 9.6. The Committee decides claims after considering the report(s) of the Neutral Physician(s) who examined the player, as well as the facts and circumstances in the administrative record, such as a player's medical records. *See id.* §§ 3.1(e), 3.3, 5.1(d), 5.4, 6.1(f), 6.2, 9.5. If the Committee finds the player ineligible for benefits for any reason, including because one or more Neutral Physicians determined that the player did not satisfy the Plan's standard(s), the player is advised, *inter alia*, of "the specific reason(s) for the adverse determination"; that the player "is entitled to receive, upon request and free of charge . . . copies of, all documents, records, and other information relevant to the claim"; and that the

player may appeal "the initial decision to the Disability Board." *Id.* § 13.14(a).[6]

On appeal, the player may submit to the Board any additional information he wishes, regardless of whether it was presented or available to the Committee. *Id.* "If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination." *Id.* The Board may submit any medical issue to a Medical Advisory Physician for a final, binding decision on that issue. *Id.* §§ 9.3(a), 12.2(b). Medical Advisory Physicians are chosen and removable in the same way as Neutral Physicians, i.e., only by the Players Association and Management Council, not the Board or any individual Board member. *Id.* §§ 12.2(a)–(b). A player must be provided any reports of Neutral Physicians or Medical Advisory Physicians in advance of the date of any Board decision "so that the claimant can have a reasonable opportunity to respond." *Id.*[7]

The Board reviews the initial Committee determination, taking into account all Neutral Physician reports and all information in the record, whether or not presented to the Committee. *Id.* § 13.14. For a player to obtain benefits, the Board must conclude, in its absolute discretion and with no deference to the Committee, that the player meets the relevant requirements of the Plan. *See id.* §§ 3.1(e), 5.1(d), 6.1(f), 9.2(c), 13.14(a); AC ¶ 43. If the Board denies the claim, it will provide a written explanation of the denial and notify the player that he has a right to sue

---

[6] There are many administrative reasons a player might be ineligible, including not having played enough seasons to qualify, filing an application that is incomplete or too late, or not complying with Plan application procedures. *See generally id.*; *see also* SPD at 4.

[7] Medical Advisory Physicians have "authority to decide only those medical issues submitted by the Disability Board" and "will review all material submitted to the Plan and may arrange for any additional consultation, referral, or other specialized medical services as the [Medical Advisory Physician] deems necessary." *Id.* Medical Advisory Physicians "may require an applicant to submit to such physical or other examinations as the [Medical Advisory Physician] deems reasonable and necessary." *Id.* Medical Advisory Physicians then "submit a written determination to the Disability Board on a form provided by the Disability Board." *Id.*

under § 502. DPD §§ 13.14(a)–(b); *see also* 29 C.F.R. § 2560.503-1(o). The Plans require that

players exhaust all administrative remedies prior to filing suit, including appealing any

Committee denial of benefits to the Board, and require that any suit challenging a benefit

determination must be filed within a 42-month limitations period. RPD § 12.7; DPD § 13.4; *see*

*also Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989) ("an

ERISA claimant generally is required to exhaust the remedies provided by the employee benefit

plan in which he participates"). By operation of this limitations period, no Board decision made

before August 9, 2019 may be challenged. *See* RPD § 12.7; DPD § 13.4; *cf.* ECF No. 1.

***Plaintiffs' Varied Medical Histories and Benefit Applications***

Plaintiffs are ten former NFL players whose individual circumstances vary widely. They

sustained different kinds of injuries, seek different kinds of benefits, were examined by different

Neutral Physicians, received different diagnoses and treatment, and filed different claims at

different times under different versions of the Plans. Plaintiffs' claims were also denied at

different times for different reasons, and they allege different errors pertaining to their claim

determinations. Some received disability benefits under the Plan, some did not. Some appealed

Committee decisions regarding their entitlement to benefits, others did not. *See generally* AC

¶¶ 147–266.

***Plaintiff Jason Alford*** applied for NC benefits in 2019 and 2022. *Id.* ¶¶ 258, 261. The

Committee and the Board denied both of Mr. Alford's applications under the Neutral Rule after

none of the eight Neutral Physicians who examined him reported that he was disabled under the

Plan's terms. *Id.* ¶¶ 258–60; Ex. E, Alford Feb. 14, 2020 Board Decision Letter, at 1–2.[8] Ex. F,

---

[8] The Court may consider Plaintiffs' decision letters, which Plaintiffs rely upon in the Complaint, *see generally* AC ¶¶ 100–295, and which are integral to their claims that they are qualified for

Alford Apr. 12, 2022 Comm. Decision Letter, at 1–2; Ex. G, Alford Mar. 10, 2023 Board

Decision Letter, at 1–2.

    **_Plaintiff Daniel Loper_** applied for LOD benefits in 2018 and 2020.  AC ¶¶ 203, 208.

The Committee and Board denied both applications under the Neutral Rule because none of the

five Neutral Physicians who evaluated Mr. Loper found him disabled; Mr. Loper would have

seen a sixth Neutral Physician for a neurologic evaluation on appeal, but he failed to attend his

appointment at the Committee level.  Ex. H, Loper Feb. 19, 2019 Board Decision Letter, at 1–3;

Ex. I, Loper Nov. 15, 2021 Board Decision Letter, at 1–2; _cf._ AC ¶¶ 203, 206, 210, 213–14.

    **_Plaintiff Willis McGahee_** applied for T&P benefits in 2016 and 2020.  AC ¶¶ 163–68.

Mr. McGahee did not appeal the Committee's denial of his 2016 application.  _Cf. id._ ¶ 167; Ex.

J, McGahee Aug. 8, 2016 Comm. Decision Letter, at 1–2; _see also_ DPD §§ 13.4, 13.14.  None of

the eight Neutral Physicians who examined him for his 2020 application found him totally and

permanently disabled, and the Committee and Board denied his application under the Neutral

Rule.  AC ¶¶ 168–72; Ex. K, McGahee Nov. 22, 2022 Board Decision Letter, at 2.

    **_Plaintiff Michael McKenzie_** applied for T&P benefits in 2018 and 2021.  AC ¶¶ 176,

185.  None of the 16 different Neutral Physicians who evaluated him determined that he was

totally and permanently disabled, and the Board denied both of Mr. McKenzie's applications

---

disability benefits.  _See Williams v. NFL Player Supplemental Disability Plan_, 2020 WL 43113,
at *1 n.2 (N.D. Cal. Jan. 3, 2020) (considering Board decision letter on reclassification request
attached to motion to dismiss); _Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan_,
249 F. Supp. 3d 570, 577 (D. Mass. 2017) (same); _see also Saini v. Cigna Life Ins. Co. of N.Y._,
2018 WL 1959551, at *1 n.1 (S.D.N.Y. Apr. 24, 2018) (considering administrative record on
motion to dismiss because plaintiff's complaint "makes clear that she relied on the
documentation included in the Administrative Record in drafting her claims"); _cf. Md. Minority
Contractor's Ass'n, Inc. v. Md. Stadium Auth._, 70 F. Supp. 2d 580, 593 n.5 (D. Md. 1998)
("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply
by failing to attach a dispositive document."), _aff'd sub nom. Md. Minority Contractors Ass'n,
Inc. v. Md. Stadium Auth._, 198 F.3d 237, 1999 WL 827553 (4th Cir. 1999) (table).

under the Neutral Rule.  *Cf. id.*; Ex. L, McKenzie Nov. 22, 2019 Board Decision Letter, at 1–2; Ex. M, McKenzie June 6, 2022 Board Decision Letter, at 1–2.

**_Plaintiff Jamize Olawale_** applied for T&P, LOD, and NC benefits simultaneously in March 2021.  AC ¶ 195.  None of the eight Neutral Physicians who evaluated him found him disabled, and the Committee and Board denied his claim for that reason.  AC ¶¶ 195–200; Ex. N, Olawale June 6, 2022 Board Decision Letter, at 1–5.

**_Plaintiff Alex Parsons_** applied for LOD benefits in 2017.  AC ¶ 229.  Neither of the two Neutral Physicians who evaluated him found him disabled, and the Board denied his claim under the Neutral Rule in May 2018, more than 42 months before this action was filed.  *Id.* ¶¶ 231, 235; Ex. O, Parsons May 18, 2018 Board Decision Letter, at 1.  Plaintiffs do not allege that Mr. Parsons applied for any other benefit.

**_Plaintiff Eric Smith_** applied for LOD benefits in 2013 and 2015, and T&P and NC benefits in 2018.  AC ¶¶ 217–19.  The Committee granted his 2015 LOD application based on the findings of a Neutral Physician.  *Id.* ¶ 218; DPD § 4.  None of the ten Neutral Physicians who evaluated him found him T&P or NC disabled, and the Committee and Board denied those applications on that basis. Ex. P, Smith Feb. 24, 2014 Board Decision Letter, at 1; Ex. Q, Smith Apr. 13, 2015 Comm. Decision Letter, at 1; Ex. R, Smith Nov. 22, 2019 Board Decision Letter, at 1; *see also* RPD § 12.7; *cf.* AC ¶ 217.  Plaintiffs allege that Mr. Smith re-applied for T&P benefits in April 2023.  AC ¶ 227.

**_Plaintiff Charles Sims_** was awarded T&P benefits by the Committee in June 2021 based on Neutral Physician findings, and he currently receives $11,250 each month from the Plan.  *Id.* ¶ 191; Ex. S, Sims June 11, 2021 Comm. Decision Letter, at 1.  Mr. Sims appealed the Committee's classification of his benefits, AC ¶ 192, but the Medical Advisory Physician

determined that Mr. Sims was not eligible for the higher level of benefits.  Ex. T, Sims June 3, 2022 Board Decision Letter, at 1; *cf.* AC ¶ 193.  Based on that determination, the Board unanimously denied Mr. Sims's appeal.  Ex. T at 2.

 **_Plaintiff Joey Thomas_** applied for LOD benefits in 2010, T&P benefits in 2011, and LOD and NC benefits in 2014, but he did not appeal the denial of any of those claims.  *See* AC ¶ 241, 243–44, 246–47, 250; DPD § 5; RPD § 6.  Mr. Thomas re-applied for NC benefits in 2019, but none of the four Neutral Physicians who examined him found him disabled, and the Board accordingly denied that application under the Neutral Rule.  AC ¶ 251; Ex. U, Thomas Feb. 13, 2020 Board Decision Letter, at 1.

 **_Plaintiff Lance Zeno_** applied for NC benefits in September 2020.  AC ¶ 149.  The Medical Advisory Physicians who reviewed his records found that Mr. Zeno was not impaired, and the Board followed that final and binding determination.  *Id.* ¶¶ 156–60; Ex. V, Zeno Nov. 22, 2022 Board Decision Letter, at 2.

## LEGAL STANDARD

 Under Rule 12(b)(6), a party may seek dismissal for failure to state a claim upon which relief can be granted.  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To qualify as plausible, a claim must be more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show that there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).  A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, in ruling on a motion to

dismiss, the Court should not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments," *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022), and may "draw on its . . . common sense." *Desper v. Clarke*, 1 F.4th 236, 245 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.    PLAINTIFFS' § 502(A)(1)(B) CLAIMS (COUNT I) MUST BE DISMISSED BECAUSE PLAINTIFFS WERE PROPERLY DENIED BENEFITS IN ACCORDANCE WITH PLAN TERMS

The Complaint raises a whirlwind of allegations, but Plaintiffs' core claim is that each of them was improperly denied disability benefits based on the specific circumstances of their individual claims.  Under § 502(a)(1)(B), a plan participant can bring a timely action in federal court seeking review of a benefit denial.  *See, e.g.*, *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013).  However, ERISA also unequivocally provides that plan participants may only recover benefits that are due to them "under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) ("Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent." (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).  Because Plaintiffs concede they cannot satisfy the Neutral Rule, and thus they have not plausibly alleged that any of them is eligible for benefits under the terms of the Plan, their claims for benefits must be dismissed.

### A.    Plaintiffs Are Not Entitled to Benefits Under the Plan's Plain and Unambiguous Terms

To establish a benefit claim under ERISA, a plaintiff must plausibly allege that he is entitled to benefits under the terms of the plan.  *See* 29 U.S.C. § 1132(a)(1)(B).  The cornerstone of this analysis "turn[s] on the interpretation of the terms in the plan." *Firestone*, 489 U.S. at

115; *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819–21 (4th Cir. 2013) (examining language of plan provision to determine eligibility); *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir. 2002) (explaining that eligibility turned on definition of "disability" under the terms of the plan); *see also Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000) (outlining the factors to consider when conducting an individualized review of a benefit claim, including "the language of the plan").

The Fourth Circuit has made clear that ERISA requires courts to enforce "the plain language of [the] ERISA plan . . . in accordance with its literal and natural meaning," *Sereboff*, 407 F.3d at 220, because ERISA's "statutory scheme . . . is built around reliance on . . . written plan documents." *McCutchen*, 569 U.S. at 100–02 (explaining that ERISA provides relief under "the terms of the plan," because of its "principal function: to protect contractually defined benefits"); *see also Bliss v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 132 F. Supp. 3d 676, 679–80 (D. Md. 2015) (granting a motion to dismiss due to plan's lack of ambiguity and noting the plaintiff's interpretation would be inconsistent with the plan).

Plaintiffs acknowledge that their claims for benefits were subject to Plan terms for which the Players Association collectively bargained. AC ¶¶ 56–57, 71, 76, 80. In particular, the Plan's Neutral Rule expressly requires that, for a player to be found eligible for benefits, at least one Neutral Physician must find the player satisfies the relevant Plan disability standards. If no Neutral Physician so finds, then the Plan's threshold requirement is not met, and "the Player will not be eligible for and will not receive Plan . . . benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity contained in the administrative record." DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3; AC ¶¶ 71, 76, 80. The Plan's Medical Advisory Physician review process is similar, authorizing the Board to submit any

disputed medical issue that is presented in a player's appeal to a Medical Advisory Physician for a final and binding determination. DPD §§ 9.3(a), 12.2(b); AC ¶¶ 56–58.

These collectively bargained requirements are binding—under ERISA, the Board is "not free to alter the terms of the plan or to construe unambiguous terms other than as written." *See Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005), *abrogated on other grounds by Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th Cir. 2008). To do so would constitute a breach of the Board's discretion. *See Kress v. Food Emps. Lab. Rels. Ass'n*, 391 F.3d 563, 569 (4th Cir. 2004); *Colucci*, 431 F.3d at 176 ("Yet, even as an ERISA plan confers discretion on its administrator to interpret the plan, the administrator is not free to alter the terms of the plan or to construe unambiguous terms other than as written."); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 362 (4th Cir. 2015). The Court must also enforce these collectively bargained terms as written, *see McCutchen*, 569 U.S. at 100–02; *Sereboff*, 407 F.3d at 220, even if Plaintiffs believe the Plan should operate differently. *See CIGNA Corp v. Amara*, 563 U.S. 421, 436 (2011).

Plaintiffs do not allege that the Neutral Rule or the Medical Advisory Physician final and binding review process are in any way ambiguous, or that the Board's interpretation of them was unreasonable or contrary to the terms' plain meaning. *See* AC ¶¶ 56–57, 71, 76, 80. Rather, as Plaintiffs acknowledge, their claims were foreclosed by either the Neutral Rule or by a Medical Advisory Physician finding. *See id.* ¶¶ 258–59, 261–62, 264–65 (Mr. Alford); 203, 206, 209–10, 213 (Mr. Loper); 164, 167–69, 171–72 (Mr. McGahee); 176–83, 185, 187–88 (Mr. McKenzie); 195–98, 200 (Mr. Olawale); 229, 231, 234–35 (Mr. Parsons); 191 (Mr. Sims); 219–21, 223–25 (Mr. Smith); 243–48, 250–45 (Mr. Thomas); 159–60 (Mr. Zeno). Therefore, by their own admission, Plaintiffs are not entitled to benefits under the Plan's terms. *See Johnson*, 716 F.3d at

819–21; *Gallagher*, 305 F.3d at 270.

The Court should therefore dismiss Plaintiffs' claims for benefits under § 502(a)(1)(B),

consistent with the numerous other cases that have upheld the Board's benefit denials.  *See, e.g.*,

*Boyd v. Bell*, 796 F. Supp. 2d 682, 690–91 (D. Md. 2011); *Bryant v. Bert Bell/Pete Rozelle NFL*

*Player Ret. Plan*, 2015 WL 13908103, at \*5 (N.D. Ga. Mar. 23, 2015); *see also Hill v. Bert*

*Bell/Pete Rozelle NFL Player Ret. Plan*, 613 F. App'x 418, 418 (5th Cir. 2015) (unpublished);

*Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 583 F. App'x 413, 414 (5th Cir. 2014)

(unpublished); *Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082, 1088

(8th Cir. 2006); *Schlichter v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 2017 WL 1001204,

at \*5 (S.D. Ind. Mar. 15, 2017); *Schwager v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2010

WL 481232, at \*5 (D. Md. Feb. 4, 2010); *Morris v. Nat'l Football League Ret. Bd.*, 833 F. Supp.

2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir. 2012) (unpublished).

### B.    Plaintiffs Have Not Plausibly Alleged That the Board Abused Its Discretion

Plaintiffs do not assert that they satisfy the Neutral Rule, nor do they challenge the

Board's interpretation of the Neutral Rule.  Instead, Plaintiffs challenge the entire Neutral

Physician examination process based on claims that physicians are "biased" and financially

conflicted, AC ¶¶ 107–46, and based on asserted claim-specific errors in the Neutral Physician

examinations.  *Id.*  ¶¶ 147–266.  Under the terms of the Plan, the Board cannot disregard a

Neutral Physician's findings to award benefits; it can, however, request additional information

from a Neutral Physician, or order an additional Neutral Physician examination, if it determines

that the existing Neutral Physician reports are inadequate to decide a claim.  *See, e.g.*, DPD

§§ 3.3(a), 5.4(b), 6.2(d), 12.3(b).  But as the Complaint acknowledges, the Plan vests the Board

with discretion to determine whether the examinations and information in the record are

sufficient to adequately decide claims.  *See* AC ¶ 43; *see also* DPD §§ 3.3(a), 5.4(b), 6.2(d), 9.2

(noting that the Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan"), 9.7, 12.3; *cf.* AC ¶¶ 46, 57, 71, 113, 286. Defendants' decisions are accordingly reviewed under ERISA's deferential abuse of discretion standard. *See Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008) ("the district court functions in this context as a deferential reviewing court with respect to the ERISA fiduciary's decision"). Neither Plaintiffs' statistics-based allegations of Neutral Physician bias, nor their conclusory claim-specific allegations of errors or omissions, are sufficient to plausibly establish that the Board abused its discretion. As the Fourth Circuit has explained, "[u]nder no formulation [of the abuse of discretion standard] . . . may a court, faced with discretionary language like that in the plan instrument in this case, forget its duty of deference and its secondary rather than primary role in determining a claimant's right to benefits." *Id.* at 323.[9] Because Plaintiffs' allegations, accepted as true, do not plausibly establish any entitlement to relief, the claims should be dismissed. *Lokhova*, 995 F.3d at 141 (citing *Iqbal*, 556 U.S. at 678).

### 1.    Plaintiffs' Asserted Statistics Lack Sufficient Context and Do Not Plausibly Support Any of Their Claims

Plaintiffs use an array of purported "statistics" to challenge the Neutral Physician examination process, alleging Defendants (including trustees appointed by their own collective bargaining representative) engaged in a "scheme to defraud players" by paying physicians more to find that players are not disabled. *See, e.g.*, AC ¶¶ 112, 114, 151, 158, 165, 224, 229, 249, 310, 325–26, 336, 341, 372. Plaintiffs' sole support for their allegations of "systematic" Neutral

---

[9] The abuse of discretion standard protects important principles under ERISA, including "the plan administrator's greater experience and familiarity with plan terms and provisions; the enhanced prospects of achieving consistent application of those terms and provisions that results; the desire of those who establish ERISA plans to preserve at least some role in their administration; and the importance of ensuring that funds which are not unlimited go to those who, according to the terms of the plan, are truly deserving." *Id.*

Physician bias is an asserted "statistical sample" they say they have compiled of 784 "T&P disability evaluations." [10] *Id.* ¶¶ 112, 116. Based on this "statistical sample," Plaintiffs ask the Court to infer that the Board has implemented "policies and practices regarding retention, promotion of biased physicians—and decreases in compensation to or termination of other physicians who demonstrate less or no bias towards players." *Id.* ¶ 328; *see also id.* ¶¶ 122, 131–35, 145, 337, 338, 359.

Critically, Plaintiffs do not plead what the Plan's challenged "policies and practices" for hiring, firing, or compensating Neutral Physicians actually are; the only policies that are actually spelled out in the Complaint are the current Plan's express requirements that Neutral Physicians (1) be paid a flat fee regardless of "whether his or her opinions tend to support or refute any given Player's application for benefits" and (2) certify that they are not biased for or against any player. *Id.* ¶ 49. These provisions contradict, rather than support, Plaintiffs' claims. Nevertheless, Plaintiffs ask the Court to infer from their reported "statistics" that the Plan must have other, unstated policies that improperly financially incentivize Neutral Physicians to make adverse medical findings that result in the denial of claims. *See, e.g., id.* ¶ 112 (asserting that the statistics demonstrate a "systematic practice of providing more compensation to, and more frequently retaining physicians with, extremely high benefits denial rates"). But while the Court must accept well-pleaded factual allegations as true for purposes of deciding a motion to dismiss, it must reject any "unwarranted inferences, unreasonable conclusions, or arguments" that

---

[10] Plaintiffs focus exclusively on T&P benefits, which naturally have the highest denial rates because a former player must show that he is "totally disabled to the extent that he is substantially unable to engage in any occupation" and that the condition is permanent. *See* DPD § 3.1(d). The Plan's high burden to establish eligibility for T&P benefits reflects the balance between "the need to ensure that individual claimants get the benefits to which they are entitled with the need to protect employees and their beneficiaries as a group from a contraction in the total pool of benefits available." *See Evans*, 514 F.3d at 326.

Plaintiffs seek to draw from those allegations.  *See Boyko*, 39 F.4th at 189.[11]

Here, Plaintiffs' "statistical" allegations are entirely devoid of the context needed to allow the Court to reasonably infer that the Neutral Physicians are biased and incentivized to deny claims.  For example, the Complaint fails to provide any explanation how its "statistical sample" of 784 examinations was compiled, what time period it covers, how many total examinations the group of Neutral Physicians it describes performed, or how many each individual Neutral Physician performed.  *See, e.g.*, AC ¶¶ 134, 171.  Without such context, Plaintiffs' claims based on the statistical allegations are not plausible.  *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 53 (1st Cir. 2018) (dismissing ERISA claim as implausible based on survey statistics that lacked proper context); *Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*, 2021 WL 4443142, at *5 n.8 (S.D.N.Y. Sept. 28, 2021) (in ERISA context explaining that, "[w]ith no way to compare membership base to cashflow, the statistics are completely unhelpful in determining whether Defendants' share of the health insurance market increased after it purportedly began discriminating against out-of-network providers"); *Wolf v. Life Ins. Co. of N. Am.*, 541 F. Supp. 3d 1191, 1197 (W.D. Wash. 2021) (declining to consider plaintiff's "own calculation[s]" in ERISA case), *aff'd*, 46 F.4th 979 (9th Cir. 2022).

The implausibility of Plaintiffs' claims is underscored by the real, public, verifiable, and audited data of the Plan's Form 5500s, which show that 2,713 former players received Plan

---

[11] Indeed, courts have rejected Plaintiffs' very assertions.  *See, e.g.*, *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020) ("[T]he Plan does not have a structural conflict that needed to be mitigated as the Board consists equally of player representatives and NFL representatives.  Therefore, although given the frequency and amount of compensation the Plan-retained physicians had a financial interest in continuing to be retained by the Plan, it is difficult to discern why the physicians might infer that an opinion in favor of no disability would be more likely to lead to future retention."), *aff'd and remanded on other grounds*, 855 F. App'x 332 (9th Cir. 2021) (unpublished).

benefits in 2021 and make clear that Plaintiffs' "sample" omits an overwhelming number of Neutral Physician examinations. *See* Ex. A at 3 (line 6b).[12] The Plan's Form 5500s further show that the Board has paid $1.035 billion in benefits since 2016, and an average of $172.5 million in benefits each year to an annual average of 2,227 retired players. *See generally id.* Indeed, since the advent of the Neutral Rule in 2017, nearly 1,000 more players receive benefits each year from the Plan than before the adoption of the Neutral Rule—an average of at least 19% of all participants. *Compare id.* at 3 (line 6b, showing 2,713 retired participants receiving benefits in 2021), *with id.* at 292 (line 6b, showing 1,850 retired participants receiving benefits in 2017).

It is obvious from this data that Neutral Physicians regularly find players T&P disabled, and the commonsense conclusion is that where they find otherwise, it is because their medical judgment leads them to conclude players actually are not disabled. *See Desper*, 1 F.4th at 245 (when evaluating whether plaintiffs have pled a plausible claim for relief, district court should "draw on its . . . common sense" (quoting *Iqbal*, 556 U.S. at 679)). As this Court recently explained in granting a motion to dismiss, the "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability." *Gladstone v. Gladstone*, 2023 WL 2571510, at *3 (D. Md. Mar. 18, 2023) (Rubin, J.). Plaintiffs have not met the plausibility standard, and Rule 8 does not permit the Court to draw unsupported inferences

---

[12] The Complaint demonstrates that the total number of Neutral Physician examinations conducted is necessarily far greater than 2,713 participants receiving benefits. The Complaint shows that every benefit application and every appeal typically entails multiple Neutral Physician examinations, with a new set of Neutral Physicians used for each application and each appeal. For example, the Complaint references more than 60 different Neutral Physician examinations just for the ten named Plaintiffs, AC ¶¶ 147–266, and Plaintiffs' decision letters show that the determination of Plaintiffs' claims in fact entailed more than 80 Neutral Physician examinations. Exs. F–V.

from a collection of drawings based on purported "statistics" for which Plaintiffs have failed to supply the context required to give them meaning.[13]  *See Barchock*, 886 F.3d at 53; *Wolf*, 541 F. Supp. 3d at 1197.  Plaintiffs' statistics-based claims are thus either speculative or outright implausible and must be dismissed.  *See Int'l Refugee*, 961 F.3d at 648; *DeBlasis v. DeBlasis*, 2023 WL 2758841, at *2 (D. Md. Apr. 3, 2023) (Rubin, J.).

For similar reasons, to the extent Plaintiffs' allegation that "Defendants implemented policies and practices regarding . . . 'Neutral Physicians' . . . are . . . part of a plan-wide scheme to defraud Players," AC ¶ 325, purports to assert a claim of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that Plaintiffs must "specify with sufficient particularity the circumstances under which the alleged fraudulent scheme operated."  *State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, 2018 WL 6514797, at *3 (D. Md. Dec. 11, 2018). Moreover, "[t]he Rule 9(b) problem is exacerbated in this case where multiple Defendants are involved and the pleading alleges some type of fraudulent scheme without clearly identifying which Defendant played which role."  *Davis v. Wilmington Fin., Inc.*, 2010 WL 1375363, at *3 (D. Md. Mar. 26, 2010).  Not only do Plaintiffs not allege what the purportedly improper "policies and practices" were, they do not allege who created them, when they were created, how or why they were maintained during a period in which benefit awards were increasing, or how

---

[13] Indeed, Plaintiffs' own statistics undermine the inferences they seek to draw.  As just one example, Plaintiffs' representations regarding Neutral Physician "RH" contradict any inference that Neutral Physicians are penalized for finding that claimants are disabled.  The 2015 to 2016 scatterplot shows that RH received roughly $25,000 in compensation that year, and that of all Neutral Physicians, RH had the second highest rate (at roughly 40%) of finding that claimants were T&P disabled.  *Id.* ¶ 139.  If Plaintiffs' claimed conspiracy were true, one would have expected RH to have been terminated.  Instead, RH not only continued to be retained by the Plan to conduct Neutral Physician examinations, but RH actually received more compensation in every single year that followed—usually much more—including roughly $150,000 in 2016 to 2017, $195,000 in 2018 to 2019, $175,000 in 2019 to 2020, and $160,000 in 2021 to 2022.  *Id.* ¶¶ 140–44.

they were communicated to Neutral Physicians.  Accordingly, any claim of fraud fails as a matter of law.

2.    **Plaintiffs' Claim-Specific Challenges to the Adequacy of the Neutral Physician Examinations Do Not Plausibly Establish That the Board Abused Its Discretion in Any of Their Cases**

Plaintiffs also raise a variety of claim-specific allegations about the adequacy of the reports of the Neutral Physicians who examined them.  But none of Plaintiffs' claims-specific allegations, accepted as true, establishes that the Board abused its discretion by failing to request additional information, or by failing to order additional Neutral Physician examinations, which were the only additional actions the Board had authority to take under the terms of the Plan after no Neutral Physicians found that any of the Plaintiffs were disabled.

As an initial matter, several of Plaintiffs' claims are independently barred based on a failure to exhaust and the applicable statute of limitations.  Under the terms of the Plan, an applicant must appeal an adverse Committee decision within 180 days.  DPD § 13.14; RPD § 12.6.  Mr. McGahee failed to do so with respect to his 2016 claim, AC ¶ 167, and Mr. Thomas failed to do so with respect to the 2011, 2013, and 2014 determinations of his benefits claims. *Id.* ¶¶ 243, 245–46, 250.  Mr. Smith's 2023 claim remains pending and is therefore not exhausted.  *Id.* ¶ 227.  Moreover, the Plan's 42-month limitations deadline precludes court review of any final Board decision that was issued before August 9, 2019.  *See* DPD § 13.4; RPD § 12.7; *cf.* ECF No. 1.  For Mr. Parsons, this necessitates dismissal of his entire claim, as he only challenges the May 18, 2018 denial of benefits.  AC ¶ 237.  For others, the statute of limitations extinguishes several of the benefit claims that they challenge.  *See, e.g.*, *id.* ¶¶ 167 (Mr. McGahee, August 8, 2016 denial); 207 (Mr. Loper, February 19, 2019 denial); 217 (Mr. Smith, February 25, 2014 denial); 245–46, 250 (Mr. Thomas, January 25, 2011 denial, December 20, 2011 denial, January 24, 2013 denial, and May 23, 2014 denial).

23

Plaintiffs' conclusory allegations with respect to specific Neutral Physician examinations are equally unavailing. *Iqbal*, 556 U.S. at 678. To begin, all of the claims were determined based on multiple Neutral Physician examinations, and Plaintiffs do not allege that the full record of Neutral Physicians examinations before the Board as to any of the claims was insufficient to support a claim determination. Moreover, Plaintiffs merely assert in the most general of terms that the findings of the Neutral Physicians conflicted with those of other physicians, *see, e.g.*, *id.* ¶¶ 176, 180–81, 210, 213, 265, 251–254, or failed to take into account evidence weighing in Plaintiffs' favor or the cumulative impact of Plaintiffs' conditions. *See, e.g.*, *id.* ¶¶ 168–69, 171–72, 176, 180–81, 183, 188, 264. But it is well settled that "it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented," *see Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999), or where the question of whether a claimant was "disabled amounted to nothing more than a difference of opinion between two physicians." *Palmer v. Prudential Ins. Co. of Am.*, 215 F.3d 1320, 2000 WL 655944, at *2 (4th Cir. 2000) (table); *Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F.3d 40, 47 (3d Cir. 1993) (holding that a plan administrator may rely upon a single medical opinion finding that an employee is not disabled (citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994)); *Birdsell v. United Parcel Serv. of Am.*, 94 F.3d 1130, 1133 (8th Cir. 1996)). And the mere existence of some conflicting evidence, or the crediting of an internal physician's report over a treating physician's report, similarly does not amount to an abuse of discretion. *See Price v. UNUM Life Ins. Co. of Am.*, 2018 WL 1352965, at *13 (D. Md. Mar. 14), *aff'd*, 746 F. App'x 231 (4th Cir. 2018) (unpublished); *DiCamillo v. Liberty Life Assurance Co.*, 287 F. Supp. 2d 616, 624 (D. Md. 2003). Plaintiffs have thus not plausibly alleged that the

Board abused its discretion.[14]

## II.    THE COURT SHOULD DISMISS COUNTS II, III, AND IV AS A DISJOINTED COLLECTION OF "REPACKAGED" ERISA BENEFIT CLAIMS

Count I alleges Defendants unreasonably denied Plaintiffs' claims for benefits in violation of § 502(a)(1)(B) by failing to comprehensively review their benefit applications, inadequately explaining their decisions, and relying on medical examinations conducted by biased physicians. AC ¶¶ 280–89. Counts II, III, and IV repackage these same factual allegations as support for equitable relief under § 502(a)(3). *Compare id.* ¶ 289, *with id.* ¶¶ 293, 295, 298–99, 316, 318, 321. But § 502(a)(3) is a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512. "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515.[15] Because it is

---

[14] In the event some subset of Plaintiffs' claims were to survive the motion to dismiss, the Court would thereafter need to individually review each Plaintiff's decision under § 502(a)(1)(B). *Korotynska*, 474 F.3d at 106. Because of the individualized nature of that inquiry, Plaintiffs' joinder is not appropriate under Rule 20 of the Federal Rules of Civil Procedure. Joinder is appropriate only if the claims arise out of "the same transaction, occurrence, or series of transactions or occurrences" and present a common question of law or fact. Fed. R. Civ. P. 20(a)(1). The Fourth Circuit has held that Rule 20 should be construed in light of its purpose, which is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983). The transaction or occurrence test permits only "reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id.* Plaintiffs' claims are not reasonably related. They have different medical histories, had different careers that allegedly caused different disabilities, and seek different benefits. They applied for different benefits, saw different physicians, and had their claims denied for different reasons by different decisionmakers under different provisions of different versions of different plans. Joining these claims would not lead to convenience or the expeditious final determination of Plaintiffs' claims because the Court will have to wade through the thicket of all these factual differences.

[15] Section 502(a)(3) provides that a "civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or

established law in this Circuit that § 502(a)(1)(B) provides Plaintiffs with an adequate remedy

for the wrongs that they allege in Counts II, III, and IV, Plaintiffs' parallel claims under

§ 502(a)(3) must be dismissed.

The Fourth Circuit's decision in *Korotynska* is dispositive.  There, as here, the plaintiff

brought a putative class action under § 502(a)(3) challenging a plan's entire process for

reviewing and deciding benefit claims, and seeking "reform of 'the systemic improper and illegal

claims handling practices that [MetLife] use[d] to deny her and other ERISA beneficiaries a full

and fair review of their claims.'"  *Korotynska*, 474 F.3d at 104.  The plaintiff alleged deficiencies

in MetLife's procedures that mirror those Plaintiffs allege here: (1) denying "claims that have

self-reported symptoms . . . without due regard for the actual impact of the claimants'

conditions"; (2) ignoring "subjective complaints," treating physicians' opinions, or cumulative

effect of injuries; (3) "[f]ailing to consider . . . all comments, documents, records and other

information"; and (4) "[d]esigning a system in which claimants cannot receive a full and fair

review of their claims, by virtue of its reliance upon Medical Examinations from Interested

Physicians."  *Id*. at 103–05.  The plaintiff sought "full and fair review of claims . . . that [were]

denied or terminated, as well as other appropriate equitable relief," maintaining that she was not

seeking review of her benefit claim determination under § 502(a)(1)(B), but rather only equitable

relief under § 502(a)(3) to correct MetLife's procedures.  *Id*. at 104.  The Fourth Circuit affirmed

that the plaintiff's § 502(a)(3) claim was foreclosed as a matter of law because she had "available

---

the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such
violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C.
§ 1132(a)(3).  "To establish a violation of Section 502(a)(3), a plaintiff must show a violation of
an ERISA provision, and that the relief sought constitutes 'appropriate equitable relief.'"  *Chavis
v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 612 F. Supp. 3d 516, 540 (D. Md. 2020)
(quoting *Pender*, 788 F.3d at 363–64).

to her the alternative remedy of bringing an action under § [502](a)(1)(B)." *Id.* at 104–06.

As in *Korotynska*, Plaintiffs' § 502(a)(3) claims in Counts II, III, and IV are nothing more than "repackaged" claims for benefits under § 502(a)(1)(B) that are unavailable as a matter of law and accordingly must be dismissed. The § 502(a)(3) claims are based on the same theories and facts, i.e., various alleged procedural deficiencies in the adequacy of the review that led to the denial of benefits, and the alleged injuries for both claims "consist[] of a denial of benefits." *See id.* at 106–07. As the Fourth Circuit has explained, such challenges must be brought as claims for benefits under § 502(a)(1)(B) because if equitable relief under § 502(a)(3) were available in this case or in cases like it, "*every* wrongful denial of benefits could be characterized as a breach of fiduciary duty." *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996); *see also Gardner v. TIMCO Aviation Servs., Inc.*, 2010 WL 3282662, at *2 (M.D.N.C. Aug. 19, 2010) (dismissing breach of fiduciary duty claim brought under § 502(a)(3) as duplicative of § 502(a)(1)(B) claim); *Ethridge v. Am. Airlines, Inc.*, 2007 WL 9718535, at *6 (E.D.N.C. Sept. 26, 2007) (same). [16] This would transform § 502(a)(3) from a "safety net" to a "first line of attack, an outcome at odds with both the plain language of § 1132(a)(1)(B) and the statutory structure of § 1132." *See Korotynska*, 474 F.3d at 108 & n.3.

Here, because the ultimate purpose of the equitable relief Plaintiffs seek is to secure or clarify their benefits, and § 502(a)(1)(B) review is fully available to Plaintiffs and provides adequate relief, § 502(a)(3) relief is not necessary or appropriate. *See Juric*, 2023 WL 2332352, at *5 (quoting *Campbell v. Rite Aid Corp.*, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014));

---

[16] *See, e.g.*, *Hall v. Metro. Life Ins. Co.*, 259 F. App'x 589, 592–93 (4th Cir. 2007) (unpublished) (reviewing claim that the plan participant did not receive a full and fair review under § 502(a)(1)(B)); *Clark v. Fed. Express Corp.*, 2009 WL 10727182, at *4 (D. Md. Apr. 1, 2009) (reviewing adequacy of defendant's denial letter under § 502(a)(1)(B)).

*Varity*, 516 U.S. at 512–15; *Korotynska*, 474 F.3d at 106–07 (explaining that § 502(a)(1)(B) "squarely address[ed]" the plaintiff's complaint that "MetLife's allegedly improper claims procedures injured her by leading to the denial of benefits to which she was rightly entitled").[17] Counts II, III, and IV should be dismissed with prejudice. *See Moore v. Verizon Commc'ns, Inc.*, 2022 WL 16963245, at *7 (E.D. Va. Nov. 15, 2022) (In sum, "[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [a] § [1132](a)(1)(B) [claim]." (quoting *Coyne*, 102 F.3d at 715) (alterations in *Moore*)); *see also Korotynska*, 474 F.3d at 107–08; *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *30 (D. Md. July 15, 2015).[18]

---

[17] Plaintiffs selectively quote from a number of cases in the Complaint, AC ¶ 21, including *Cloud* and *Dimry*, but omit that the plaintiffs in many of those cases brought § 502(a)(1)(B) claims, demonstrating that such relief is available and adequate. And in every instance where the defendant challenged a § 502(a)(3) claim as foreclosed by the availability of a § 502(a)(1)(B) claim, the court agreed and dismissed the § 502(a)(3) claim. *See* Ex. W, Order, *Cloud*, 3:20-cv-01277-S (N.D. Tex. Dec. 27, 2021), ECF No. 113 (dismissing § 502(a)(3) claim as unavailable in light of § 502(a)(1)(B) claim); Ex. X, Order re Motion to Dismiss, *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:16-cv-01413-JD (N.D. Cal. June 14, 2016), ECF No. 33 (dismissing § 502(a)(3) claim for failure to state a claim). This Court should do so as well.

[18] Courts in this Circuit routinely dismiss such claims. *See, e.g.*, *Koman v. Reliance Standard Life Ins. Co.*, 2022 WL 17607056, at *5 (M.D.N.C. Dec. 13, 2022) (dismissing § 502(a)(3) claim as improperly duplicative of claim for benefits under § 502(a)(1)(B) in alleging that defendants "had a duty . . . to establish and maintain reasonable claims procedures," yet "failed . . . to properly consider [Plaintiff's] claim," thereby not affording her a "full and fair" review); *Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020) ("The injunctive relief and equitable accounting and disgorgement sought under § 1132(a)(3) seek to remedy the same injury that the § 1132(a)(1)(B) claim does: the wrongful denials of plaintiff and the putative class members' claims for coverage."); *Archer v. SunTrust Bank*, 2017 WL 6550390, at *2 (E.D. Va. Dec. 22, 2017) (the plaintiffs' "breach of fiduciary duty count essentially reformulates [the] denial of benefits claim" because they do "not state any independent factual basis for [the] fiduciary duty claim"); *see also Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*, 2017 WL 1155807, at *8 (M.D.N.C. Mar. 27, 2017) (explaining that *Varity* precludes "concurrent pleading" of § 502(a)(3) and § 502(a)(1)(B) claims based on same injury and facts and collecting cases of Fourth Circuit district courts dismissing § 502(a)(3) claims at the motion to dismiss stage).

III.    **PLAINTIFFS' ADEQUATE NOTICE AND FULL AND FAIR REVIEW CLAIMS IN COUNTS II AND III INDEPENDENTLY FAIL AS A MATTER OF LAW**

In Counts II and III, Plaintiffs assert a number of claims based on alleged violations of procedural regulations.  Count II alleges that Defendants did not provide "adequate notice" to Plaintiffs in their claim denial letters because they failed to list "the specific reasons for adverse determinations" and the "specific reasons for disagreeing with medical views that favor an award of benefits."  AC ¶¶ 290–95.  Count III alleges that Defendants did not conduct a "full and fair review" because they (i) did not review all records, (ii) failed to ensure the independence of people "involved in making decisions" and limit bias, (iii) did not ensure like applicants were treated similarly, and (iv) did not produce "requested relevant information."  *Id.* ¶¶ 296–304.  As explained above, these claims are duplicative of Count I and must be dismissed on that basis. But even if they could form the basis for a separate cause of action, they fail as a matter of law.

As to Count II, Plaintiffs make vague allegations that Defendants violated ERISA Section 503(1)'s requirement to "provide adequate notice in writing to any participant . . . whose claim . . . has been denied, setting forth the specific reasons for such denial."  *See id.* ¶¶ 290–95; *see also* 29 U.S.C. § 1133(1).  But ERISA only requires that participants be provided reasoned explanations for an employee benefit plan's decisions.  *See Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 129, 140 (E.D.N.Y. 2019) (adopting magistrate judge's recommendation that the fact that defendant did not specifically cite to certain records in their denials "does not mean this evidence was ignored").  ERISA does not require that denial letters recite the minutiae of every player's medical history as part of such reasoned explanation.  *See generally* 29 C.F.R. § 2560.503-1(j)(6); *Adkins v. Holland*, 216 F. Supp. 2d 576, 579 (S.D.W. Va. 2002) (granting motion to dismiss claim alleging failure to provide adequate reasons for denial in violation of § 2560.503-1), *aff'd*, 87 F. App'x 886 (4th Cir. 2004) (unpublished).  Even if denial letters could

be more explicit, they will be held to comply with ERISA if, read in their entirety, they provide the claimant "with all the information necessary to perfect" the claim. *Switzer v. Benefits Admin. Comm.*, 2014 WL 4052855, at *12 (D. Md. Aug. 13, 2014) (citing *Gelumbaukskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*, 2010 WL 2025128, at *5 (D. Md. May 17, 2010)); *see also Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997) (noting that substantial compliance is all that is required to satisfy ERISA's procedural requirements).

Here, Count II contains no allegations that, accepted as true, would establish that the decision letters failed to provide reasoned explanations to the Plaintiffs for the denial of their benefits, or failed to provide them the information necessary to challenge the disposition of their claims. To the contrary, Plaintiffs' allegations show that Plaintiffs understood the Board's reasoning in the decision letters and simply disagree with it. *See, e.g.*, AC ¶¶ 294, 295. In any event, under Fourth Circuit precedent, even if the "notices were defective," no independent recovery is available under § 503(1) "because a breach of section 1133 does not provide a claimant with any new substantive rights." *Sedlack*, 134 F.3d at 225. Count II accordingly must be dismissed.

Count III similarly must be dismissed both because Plaintiffs' "full and fair review" claims are predicated on alleged procedural violations that are not independently actionable under § 503, s*ee, e.g.*, *Bryson v. United Healthcare Ins. Co.*, 2015 WL 4026009, at *3–4 (W.D.N.C. July 1, 2015) ("Plaintiffs' cause of action brought under 29 U.S.C. § 1133(a) is not valid." (quoting *Coyne*, 102 F.3d at 714)); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 3610486, at *5 (D.N.J. Aug. 22, 2017; *Shah v. Blue Cross Blue Shield of Tex.*, 2018 WL 1293164, at *6 (D.N.J. Mar. 13, 2018), and because the facts alleged are insufficient to establish violations of any of the cited regulations.

30

To begin, Plaintiffs have not alleged sufficient facts to support their claim that Defendants failed to review all records in their administrative file. *See* AC ¶ 298. Under ERISA, the claims procedure must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv). The Plan expressly provides for such a review. *See* DPD §§ 3.1(e), 5.1(d), 6.1(f). Plaintiffs' conclusory assertion that their records were not fully reviewed relies almost exclusively on purported testimony in a separate proceeding regarding the Board's review of different administrative records to *imply* that Defendants did not adequately review their own claims. *See, e.g.*, AC ¶ 298. But Plaintiffs cannot plausibly state a claim in *this* case based on unrelated testimony from another case. Moreover, the actual testimony in the *Cloud* case makes clear that Board members would review "materials and . . . try to understand exactly what the issues were on appeal . . . [and] would look at the documents that [they] thought were pertinent." Ex. Y at 10, Trial Tr. at 59:16–19, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex. May 23, 2022), ECF No. 242.[19] Such review does not violate the claims regulation.

Nor do Plaintiffs' conclusory allegations support their claim that Defendants failed to ensure the independence and impartiality of the Neutral Physicians in violation of 29 C.F.R. § 2560.503-1(b)(7). *See* AC ¶¶ 299–301. Plaintiffs admit in their Complaint that the Plan has implemented safeguards to ensure the impartiality and independence of the Neutral Physicians. For example, Plaintiffs admit that Neutral Physicians must certify that their opinions are provided without bias for or against any player and that they are paid under a "flat-fee"

---

[19] The *Cloud* trial testimony is incorporated into the Complaint by virtue of Plaintiffs citing it. *See King v. Nalley*, 2017 WL 4221062, at *2 (D. Md. Sept. 21, 2017), *aff'd*, 737 F. App'x 163 (4th Cir. 2018) (unpublished).

arrangement regardless of the opinion they provide. *Id.* ¶ 49; *see also Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 717 (D. Md. 2012) (holding that "structural protections provided by the Plan" including "the Board's reliance on independent physicians in making benefit determinations would drastically diminish the significance of [the conflict of interest] factor in [his] analysis" (citing *Boyd*, 796 F. Supp. 2d at 691 n.2)). Despite these safeguards, Plaintiffs claim that Defendants have designed a "sham process" whereby Neutral Physicians are paid more to deny claims. But the only factual support the Complaint supplies for Plaintiffs' assertion that the process is a "sham" are meaningless "statistics" concerning Neutral Physician examinations. As discussed in detail *supra* Section I.B.1, these purported "statistics" are insufficient as a matter of law to support any inference that the Plan's process for reviewing disability claims is a sham.

Additionally, Plaintiffs' claim that Defendants violated 29 C.F.R. § 2560.503-1(h)(3)(ii) by relying on the same advisors at the initial benefit determination and on appeal fails as a matter of law. *See* AC ¶ 302. ERISA requires that an appeal of a denial of benefits be reviewed *de novo* by someone other than the person who denied the claim (or that person's subordinate). *See* 29 C.F.R. § 2560.503-1(h)(3)(ii). But ERISA does not mandate, as Plaintiffs suggest, that completely different sets of advisors be used at the two levels of review. *Compare* AC ¶ 302, *with Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) (holding that "the same doctor can participate in (rather than conduct) both administrative appeals"). There is no allegation here that any advisor conducted either level of review, much less that the same advisor conducted both.

Nor is there any basis for Plaintiffs' conclusory assertion that a law firm which provides advice at both levels of review has an "inherent conflict of interest arising from acting in such a

capacity at two distinct, independent levels of benefits determination." AC ¶ 302.[20]  The

Committee and the Board do not have divergent interests—they are both required to make

decisions in conformity with the Plan's terms and ERISA's requirements.  Moreover, "[t]he

Fourth Circuit [has] made clear that the pertinent inquiry is not the conflicts of the

administrator's attorney but the conflicts of the administrator."  *Boyce v. Eaton Corp. Long*

*Disability Plan*, 2017 WL 3037392, at \*5 (W.D.N.C. July 18, 2017) (citing *Colucci*, 431 F.3d at

176).  Courts in this District that have reviewed the Board's denials of claims for benefits have

repeatedly ruled that the Board does not have a conflict of interest.  *See Giles*, 925 F. Supp. 2d at

716–17; *Boyd*, 796 F. Supp. 2d at 690–91 & n.2; *Stewart v. Bert Bell/Pete Rozelle NFL Player*

*Ret. Plan*, 2011 WL 10005532, at \*2 (D. Md. Jan. 13, 2011).  And although the Complaint

alleges (in entirely conclusory and inadequately supported terms) that the Neutral Physicians are

financially conflicted, the Complaint contains no such allegations with respect to the Board or

the Trustees.

Finally, Plaintiffs' claim that Defendants failed to provide information they requested

about "the reputation and predisposition of Plan-compensated physicians" fails as a matter of

law.  *See* AC ¶ 303.  ERISA places no obligation on Defendants to provide such information.

Defendants are only required, in the context of an appeal of an adverse benefit determination, to

provide claimant "upon request and free of charge, reasonable access to, and copies of, all

documents, records, and other information relevant to the claimant's claim for benefits."  *See* 29

C.F.R. § 2560.503-1(h)(2)(iii).  There are no allegations that Defendants refused to provide

Plaintiffs with any such information.  *See, e.g.*, *Boyd v. Sysco Corp.*, 2015 WL 7737966, at \*14

---

[20] This allegation appears to have been copied, without attribution, from the *Cloud* decision, which itself provided no citation or explanation for its unprecedented *dicta*.  *See Cloud*, 2022 WL 2237451, at \*44.

(D.S.C. Dec. 1, 2015) (finding procedural violation where Plan refused to produce administrative record upon request).  Accordingly, this claim, along with Plaintiffs' other "full and fair review" claims, must be dismissed.

## IV.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS (COUNT IV) ARE INDEPENDENTLY DEFICIENT AS A MATTER OF LAW

Plaintiffs allege in Count IV that Defendants breached their fiduciary duties by making misrepresentations in decision letters and SPDs, by ignoring the advice of their advisors to review all information in the record, and by failing to ensure the independence and impartiality of the Neutral Physicians.  AC ¶¶ 305–29.  Plaintiffs attempt to distinguish these claims as "separate from their wrongful denials of benefits" claims.  *Id.* ¶ 307–08.  In reality, as set forth in Section II, *supra*, the allegations in Count IV are the very same allegations that Plaintiffs rely on in their denial of benefits claim, and must be dismissed because § 502(a)(1)(B) provides an adequate and thus exclusive remedy.  But even if Plaintiffs' claims for breach of fiduciary duty could be brought as separate causes of action, they fail as a matter of law.

### A.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty Under § 404 Based on Material Misrepresentations in the SPDs or Decision Letters

To plead an ERISA breach of fiduciary duty claim based on a misrepresentation, a plaintiff must plausibly allege: "[(1)] that a defendant was a fiduciary of the ERISA plan, [(2)] that a defendant breached its fiduciary responsibilities under the plan, and [(3)] that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan."  *Juric*, 2023 WL 2332352, at *6 (quoting *Adams v. Brink's Co.*, 261 F. App'x 583, 589–90 (4th Cir. 2008) (unpublished)).  Further, "a plaintiff must show that the defendant [(4)] was acting in a fiduciary capacity when it made the representations, [(5)] the information misrepresented was material, and [(6)] the misrepresentation was relied upon to plaintiff's detriment."  *Id.*  Plaintiffs cannot satisfy this standard.

Plaintiffs fail to plausibly allege that Defendants made *any* misrepresentation with respect to the Neutral Physicians. *See, e.g.*, AC ¶¶ 310–11, 321. The Plan document and the SPD define "Neutral Physician" as a physician jointly designated by the Management Council and the Players Association and assigned by the Disability Plan to examine players and report on their condition. *See* DPD § 12.3; SPD, at 9, 23, 68. Plaintiffs do not allege that Defendants told Plaintiffs in the SPD or decision letters that "Neutral Physicians" were anything other than as defined in the Plan, or that a "neutral exam" meant something other than an exam by a Neutral Physician. In the absence of any such allegation, Plaintiffs' claim must be dismissed. *See Singer v. Black & Decker Corp.*, 769 F. Supp. 911, 918–19 (D. Md. 1991), *aff'd*, 964 F.2d 1449 (4th Cir. 1992); *see also Juric*, 2023 WL 2332352, at *6–7 (dismissing breach of fiduciary duty claim where "it is not clear what the alleged misrepresentations were"); *In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (dismissing breach of fiduciary duty claims based on misrepresentation where plaintiff failed "to allege what specific information the defendants should have disclosed further"); *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 856 (S.D. Ohio 2009) (plaintiffs "cannot satisfy their pleading burden by ignoring the content of the disclosures and conclusorily asserting that they were incomplete").

Plaintiffs also fail to plausibly allege that Defendants misrepresented their review of the administrative record. *See, e.g.*, AC ¶¶ 313, 319. Plaintiffs' primary factual allegation in support of this contention is that the Committee and Board failed to cite certain information in their decision letters, which somehow implies that neither the Committee nor the Board reviewed the entire record when they said they did. *See, e.g.*, *id.* ¶¶ 170, 173, 184, 199, 201, 214, 222, 237, 252, 255, 260. But the fact that the denial letters do not cite every single piece of information does not mean that the Board and Committee failed to review the information that

was not cited.  As explained *supra*, ERISA requires only that the Committee and Board provide a reasoned explanation of their decisions; not that they recite every detail of a player's medical history.  *See Halberg*, 408 F. Supp. 3d at 129, 140; 29 C.F.R. § 2560.503-1(j)(6); *Adkins*, 216 F. Supp. 2d at 579.[21]

Plaintiffs also fail to state how any of the alleged misrepresentations are "material" or that they detrimentally relied on any such statement in determining how to proceed with their benefit claims.  "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which [he] may be entitled."  *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 770 n.12 (E.D. Va. 2005).  Similarly, "[t]o prove detrimental reliance, the plaintiff must show that plaintiff acted or failed to act in reliance on the misrepresentation, and plaintiff's action or inaction proximately caused losses or other tangible injuries."  *Damiano v. Inst. for In Vitro Scis.*, 294 F. Supp. 3d 439, 445 (D. Md. 2018), *aff'd*, 799 F. App'x 186 (4th Cir. 2020); *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141 (4th Cir. 1993) ("[T]o secure relief, [the claimant] must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description." (alterations in original) (emphasis omitted)).

Here, Plaintiffs do not allege they would have filed claims but did not do so because they were misled regarding whether Neutral Physicians were truly neutral, or whether each Board member reviewed every page of their medical file.  Plaintiffs' allegation is the opposite: they acknowledge that they did apply for benefits, but state that they might not have without the alleged "misrepresentations," and assert that applying proved to be a waste of time because they

---

[21] As also explained above, Plaintiffs cannot plausibly state a claim in this case based on purported testimony in another matter regarding the Board's review of administrative records. *See, e.g.*, AC ¶ 320.

ultimately were not awarded benefits.  *See* AC ¶ 329.   Plaintiffs thus admittedly did not incur a

loss or tangible injury and their generalized allegations are insufficient as a matter of law to

establish the kind of detrimental reliance that is required to sustain a fiduciary misrepresentation

claim.  *See, e.g.*, *Ranke v. Sanofi-Synthelabo, Inc.*, 2004 WL 2473282, at *4 (E.D. Pa. Nov. 3,

2004) (dismissing misrepresentation claim because "[v]ague and unspecified allegations of

detrimental reliance are insufficient to withstand a motion to dismiss an ERISA claim of breach

of fiduciary duty"), *aff'd*, 436 F.3d 197 (3d Cir. 2006); *see also Damiano*, 294 F. Supp. 3d at 445

(dismissing claim where there was no evidence plaintiff "acted or refrained from acting in a

manner that caused her quantifiable harm" after the alleged misrepresentation).[22]

Because Plaintiffs fail to plead sufficient facts establishing the key elements of their

material misrepresentation claims under § 404, those claims must be dismissed.

### B.    Plaintiffs' Claim That Misleading Statements in the SPDs Violated § 102 Similarly Fails

Plaintiffs' claim in Count IV that Defendants violated § 102(a) by including misleading

statements in the SPD also fails.  *See* AC ¶¶ 308–11.  This claim is based on a fundamental

misunderstanding of § 102 and its implementing regulations.  *See* 29 C.F.R. § 2520.102-3.[23]

Those provisions require benefit plans to disclose basic information about the plan, such as its

name and address, sponsors, and its eligibility conditions for receiving benefits.  *Id.*; *see also* 29

---

[22] Plaintiffs claim that they relied on Neutral Physicians in determining whether to pursue proper
medical care for their conditions.  *See* AC ¶ 39.  Beyond the fact that Neutral Physicians do not
examine participants for the purpose of determining whether they should seek medical treatment
for their alleged conditions, there are also no specific allegations that any Plaintiff was harmed
by not pursuing medical care subsequent their examination by a Neutral Physician.

[23] DOL's SPD regulations require that the SPD "must accurately reflect the contents of the plans
as of the date not earlier than 120 days prior to the date [SPD] is disclosed," and include the
specific requirements listed in such regulation, 29 C.F.R. § 2520.102-3, including the ERISA
statement of rights required by 29 C.F.R. § 2520.102-3(t)(1).

U.S.C. § 1022(b).  Section 102 is used to remedy situations where an SPD has a material

deficiency, such as omitting actual, material terms of the plan; it does not apply where a plaintiff

believes that an ERISA plan's actual practices have departed from a defined term.  *See, e.g.*,

*Frommert v. Conkright*, 738 F.3d 522, 532 (2d Cir. 2013); *cf. Hudson v. Nat'l Football League*

*Mgmt. Council*, 2019 WL 4784680, at *1–2 (S.D.N.Y. Sept. 30, 2019) (dismissing § 102 claim

because SPD was written to be "understood by the average plan participant" and was "accurate

and comprehensive" to "apprise such participants and beneficiaries of their rights and

obligations").

Here, Plaintiffs' true complaint is not that the SPD misstates or omits the Plan's

requirements or procedures, but rather that Defendants allegedly failed to follow them.  Their

claims under § 102 therefore must also be dismissed.  *See, e.g.*, *Bolone v. TRW Sterling Plant*

*Pension Plan*, 130 F. App'x 761, 766 (6th Cir. 2005) (unpublished) (holding that violations of

procedural sections of ERISA do not give rise to claims for substantive damages); *Shah*, 2018

WL 1293164, at *6 (holding that neither § 102 nor 29 C.F.R. § 2520.102-2 provides a cognizable

cause of action).

> **C.**  **Plaintiffs Do Not Plead Sufficient Facts to Establish Defendants Breached**
> **Their Duties of Care or Loyalty with Respect to Their Review of Plaintiffs'**
> **Records**

Plaintiffs' claims that Defendants breached their duty of loyalty by delegating review of

the administrative record to advisors, and breached their duty of care by ignoring the advice of

their advisors to read the entire administrative record before making benefits determinations, fare

no better.  *See, e.g.*, AC ¶¶ 315–16.  These allegations concern the adequacy of the claim review

process, not whether Defendants breached any fiduciary duty, and should be considered in the

context of Plaintiffs' claims for benefits (Count I).  *See, e.g.*, *id.* ¶¶ 298, 315, 320 (citing § 503(2)

for purposes of their claim that the Committee and Board do not review the entire administrative

record); *see also supra* Section II.

More fundamentally, to state a claim for the breach of the duty of loyalty, a plaintiff must plausibly allege that the fiduciary "acted with the purpose of benefitting itself or a third party." *See, e.g.*, *Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021) (citing *Reetz v. Lowe's Cos.*, 2019 WL 4233616, at *5 (W.D.N.C. Sept. 6, 2019)); *Smith v. Shoe Show, Inc.*, 2022 WL 583569, at *8 (M.D.N.C. Feb. 25, 2022); *Williams v. Centerra Grp., LLC*, 2021 WL 4227384, at *8 (D.S.C. Sept. 16, 2021). In other words, "a plaintiff must allege facts that permit a plausible inference that the defendant engag[ed] in transactions involving self-dealing or otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." *Reetz*, 2019 WL 4233616, at *5.

Plaintiffs make no such allegations here. They do not allege, for example, that the use of advisors to review administrative records somehow benefits the Defendants or any third parties. Such an allegation could not possibly constitute the type of self-dealing and personal gain necessary to establish a breach of the duty of loyalty under ERISA, particularly where, as here, several Plaintiffs and hundreds of their putative class members have been awarded benefits under the Plan. Moreover, the Disability Plan expressly authorizes the Board to rely on others for this kind of intensive document review by providing the Board discretion to delegate certain powers and duties. *See* DPD § 9.2(f) (explaining that the Board may "[d]elegate its power and duties to other persons . . . or otherwise act to secure specialized advice or assistance, as it deems necessary or desirable in connection with the administration of the Plan"). And it is well established that fiduciaries may rely on advisors without compromising their duties. *See Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019) (seeking expert advice can show prudence); *Tatum v. RJR Pension Inv. Comm.*, 761

F.3d 346, 358 (4th Cir. 2014) (same); *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006) (holding that an administrator may delegate discretionary authority to non-fiduciaries without compromising fiduciary duties, particularly when the plan authorizes such delegation).

Nor have Plaintiffs set forth plausible allegations to support their claim that Defendants violated any duty of care.  Under ERISA, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  *See* 29 U.S.C. § 404(a)(1)(B).  Plaintiffs allege that Defendants have failed to do so by "ignoring the advice of their own advisors to read the entire administrative record before making a decision."  AC ¶ 316.  As previously explained, *supra* Sections III, IV.A, these speculative and conclusory allegations are based on cherry-picked testimony in another case and unsupported inferences from benefits-decision letters, and do not plausibly establish that Defendants inadequately reviewed Plaintiffs' claims.  *Jassie v. Mariner*, 2016 WL 67257, at *2 (D. Md. Jan. 6, 2016) ("Legal conclusions couched as factual allegations are insufficient, as are conclusory factual allegations devoid of any reference to actual events.").

Plaintiffs' claim that Defendants breached their fiduciary duties by using a claims review process that is permissible under both ERISA and the Plan's terms accordingly fails.

### D.  Plaintiffs Fail to State a Breach of Fiduciary Duty Claim Based on Defendants' Alleged Failure to Ensure the Independence and Impartiality of Neutral Physicians

Finally, Plaintiffs allege that Defendants violated ERISA §§ 404 and 503 by failing to ensure that all claims and appeals for benefits are adjudicated in a manner designed to ensure the independence and impartiality of Neutral Physicians.  In particular, citing 29 C.F.R. § 2560.503-1(b)(7), Plaintiffs complain that Defendants failed to ensure the independence and impartiality of

the Neutral Physicians by hiring, retaining, and compensating allegedly biased physicians.  *See* AC ¶¶ 327–28.  But neither the regulation Plaintiffs rely on nor their conclusory allegations provide a basis for their claims.

At the outset, it is well settled that the alleged failure to comply with claim processing regulations like 29 C.F.R. § 2560.503-1(b)(7) bears only on the standard of review to be applied and does not serve as a basis for a breach of fiduciary duty under § 502(a)(3).  *See* 29 C.F.R. § 2560.503-1(l)(2)(i); *Price*, 2018 WL 1352965, at *9 n.12 (explaining that procedural violations, such as of the pertinent regulation, "remove a Plan's discretionary authority" for purposes of benefits claim review); *see also* AC ¶¶ 321–22; *supra* Section II.

But even if this regulation could support a claim for a breach of fiduciary duty, Plaintiffs' claim fails.  The threshold question in any case alleging an ERISA breach of fiduciary is whether the defendants in question were "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Plaintiffs complain that Defendants breached their purported duties by failing to ensure the independence and impartiality of the Neutral Physicians by hiring, retaining, and compensating allegedly biased physicians.  *See* AC ¶¶ 327–28.  Defendants, however, had no discretionary authority over hiring or firing of Neutral Physicians, and Plaintiffs do not allege any "action" with respect to the compensation of Neutral Physicians that would constitute a fiduciary breach.

There is no allegation—nor could there be—that any Defendant could hire or fire any Neutral Physician.  Plaintiffs acknowledge that the Neutral Physicians are "jointly designate[d]" by the Players Association and Management Council and can only be removed by either the Players Association or the Management Council, not the Board.  *Id.* ¶¶ 35, 47.  In other words,

not only were the Defendants not fiduciaries when "taking the action subject to complaint," *see Pegram*, 530 U.S. at 226, they were not authorized by the terms of the Plan to take the actions that are subject to the Complaint, and thus the breach of fiduciary duty claim against them fails as a matter of law. *See Juric*, 2023 WL 2332352, at *6 ("[E]ven if a defendant is a named fiduciary, there can be 'no liability for breach of fiduciary duty if the challenged conduct . . . is not fiduciary in nature.'" (quoting *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 n.13 (4th Cir. 2019)).

Nor do Plaintiffs allege that any of the Defendants compensated Neutral Physicians in a manner that would constitute a fiduciary breach. The fact that Neutral Physicians were compensated for their services cannot plausibly establish a breach of fiduciary duty—no trained physician is going to perform medical examinations for free. Here, Plaintiffs admit that the Plan expressly requires Neutral Physicians to certify that their opinions are provided without bias for or against any player, AC ¶ 49, and further requires that they be paid under a "flat-fee" arrangement. *Id.*; *see also Giles*, 925 F. Supp. 2d at 717; *Boyd*, 796 F. Supp. 2d at 691 n.2. Nothing in this process suggests Defendants failed to fulfill their fiduciary duties, and the Complaint does not allege that Defendants ever compensated Neutral Physicians in any other way, or in any manner that would constitute a breach of fiduciary duty under ERISA. And as discussed *supra* in Section I.B.1, the Complaint's purported "statistics" are insufficient as a matter of law to support any of Plaintiffs' claims, much less a claim that Defendants breached their fiduciary duties.

For all of the foregoing reasons, Plaintiffs' breach of fiduciary duty claims in Count IV must be dismissed.

## V.    ALL OF PLAINTIFFS' CLAIMS AGAINST THE TRUSTEES FAIL AS A MATTER OF LAW

### A.    Plaintiffs Have Not Properly Pled Any Claims Against the Trustees in Counts I–IV

As explained in detail above, Plaintiffs' claims in Counts I through IV fail and should be dismissed in their entirety.  But even if Plaintiffs' claims were proper as to the Plan or the Board as a whole, Plaintiffs have not pleaded any allegations that the six current and former Board members who are named as individual defendants—Larry Ferazani, Jacob Frank, and Belinda Lerner (the Management Council Trustees) and Sam McCullum, Robert Smith, and Hoby Brenner (the Players Association Trustees)—or the Commissioner took any individual action that could give rise to a claim against them as individuals under these Counts.

As to Plaintiffs' claims for benefits, ERISA provides that a "money judgment" for benefits under § 502 "shall be enforceable only against the plan as an entity and *shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter*."  29 U.S.C. § 1132(d)(2); *see also* 29 U.S.C. § 1132(d)(1).  Individual defendants accordingly "cannot be held personally liable for money damages absent a showing of individual misconduct."  *Jenkins v. Int'l Ass'n of Bridge*, 2015 WL 1291883, at *4 (E.D. Va. Mar. 20, 2015) (quoting *Keegan v. Steamfitters Loc. Union No. 420 Pension Fund*, 174 F. Supp. 2d 332, 340 (E.D. Pa. 2001) (citing 29 U.S.C. § 1132(d)(2))).  As a result, courts in this Circuit have long held that claims for benefits cannot be brought against individual defendants, particularly defendants who are not alleged to have personally engaged in any wrongdoing.  *See Gluth v. Wal-Mart Stores, Inc.*, 117 F.3d 1413 (Table), at *6 (4th Cir. 1997) (holding that trust with "no control over [plan's] administration, is not a proper defendant in [ERISA benefits] action"); *Jenkins*, 2015 WL 1291883 (dismissing individual trustees for failure to plead facts demonstrating control over benefits decisions).

43

*Jenkins* is particularly illustrative.  There, the plaintiff alleged that he was wrongfully denied benefits and brought an action for recovery of benefits and equitable relief under ERISA against several defendants, including four individual trustees.  *Jenkins*, 2015 WL 1291883, at *2. In determining whether the plaintiff's claims against the individual trustees were proper, the court explained that although "the Fourth Circuit has not definitively addressed ERISA claims brought against Trustees in their individual capacity," it "has provided some general guiding principles."  *Id.* at *4.  Specifically, the court noted that "defendants cannot be held personally liable for money damages absent a showing of individual misconduct" and "control over the actual administration of the plan."  *Id.* at *4–5 (citing *Gluth*, 117 F.3d 1413).  The court ultimately dismissed the benefits claim against the trustees, reasoning that the plaintiff did "not ma[k]e a showing that any of the individual trustees, as opposed to the collective 'Board of Trustees,' had adequate control over the Pension Plan."  *Id.* at *5.

Here, too, Plaintiffs do not assert any facts at all purporting to show that Mr. Ferazani, Mr. Frank, Ms. Lerner, Mr. McCullum, Mr. Smith, Mr. Brenner, or the Commissioner took any individual action with respect to their claims.  Nor could they—as the Plan itself makes clear, no Trustee has authority or control to make decisions on behalf of the Plan.  *See* DPD § 9.2. Further, there is no allegation that any Trustee engaged in any individual misconduct that could give rise to liability.  *See Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (dismissing claims where the complaint failed to "delineate the particular acts of infringement attributable to each Defendant" and thus did "not provide facts sufficient to inform" the defendant of the basis for the plaintiff's claims).  Indeed, Plaintiffs do not even allege that any of the named Trustees were members of the Board at the time their individual claims were decided.

Similarly, as to Count IV, Plaintiffs do not allege that any one of the Trustees materially misrepresented information about their review of the administrative record, materially misrepresented information about the "Neutral Physicians" in a decision letter or the SPD, or engaged in any other specific individual misconduct supporting a breach of fiduciary duty claim. *See* AC ¶¶ 305–29. As in *Jenkins*, all of Plaintiffs' allegations here relate to the actions of the collective "Disability Board" but not any particular Trustee. *See, e.g.*, *id.* ¶¶ 313 ("The SPDs have materially misled Players into believing *that the Committee and Board* will consider all of a Player's impairments as a condition."), 317 ("*The Board* ignored the advice from its own advisors."). Accordingly, Plaintiffs' claims in Counts I through IV against the Trustees must be dismissed.

**B.    Count V Must Be Dismissed Because Plaintiffs Do Not Adequately Allege Fiduciary Misconduct by Any of the Trustees**

In Count V, Plaintiffs purport to bring a claim on behalf of the Plan pursuant to § 502(a)(2) against each Trustee individually for alleged breaches of fiduciary duties. Plaintiffs seek the relief for the alleged breaches that is provided for under § 409(a), namely the removal of each Trustee from the Board. *See* AC ¶¶ 330–49. To proceed under § 502(a)(2), a plan beneficiary must seek "appropriate relief under [§ 409]." 29 U.S.C. § 1132(a)(2). Under § 409, "any person" who breaches the fiduciary obligations imposed by ERISA may be subject to "equitable or remedial relief as the court may deem appropriate, including removal." *Id.* § 1109(a). A plan beneficiary may only seek relief under § 409 on behalf of the plan. *Peters v. Aetna Inc.*, 2 F.4th 199, 215–16 (4th Cir. 2021) (cleaned up) (quoting *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008)); *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013) (explaining that a plaintiff "must seek recovery on behalf of the plan"). Here, Plaintiffs fail to plead any facts establishing a fiduciary breach by any of the Trustees. But even if they had, they

45

lack standing to bring their claims because they have not alleged any concrete injury to the Plan.

The Complaint groups the alleged breaches into three categories: (1) "the Board's repeated refusal to pay contractually authorized benefits" and related breaches, AC ¶¶ 333–41; (2) "the Board's . . . erroneous interpretations" of the Plan and ERISA, *id.* ¶¶ 342–43; and (3) the Board's delegation of record review. *Id.* ¶¶ 344–49. As explained in Section IV, *supra*, none of the alleged misconduct asserted in the Complaint constitutes a cognizable breach of fiduciary duty. Plan fiduciaries have an obligation under § 404(a)(1)(D) to administer the plan in accordance with the terms in the plan documents. *See* 29 U.S.C. § 1104(a)(1)(D). Here, the Defendant fiduciaries followed the terms of the Plan document, exercising their authority to interpret such documents. Plaintiffs make no plausible allegations to the contrary. Since Plaintiffs' breach of fiduciary duty claims fail, their derivative claim in Count V fails as well. *See, e.g.*, *Kendall*, 2021 WL 1231415, at *11 (dismissing § 409 claim where plaintiffs failed to plausibly allege any fiduciary breaches).

Moreover, Plaintiffs have not alleged facts showing that any *individual* Trustee is a "person who . . . breache[d]" fiduciary duties imposed by ERISA. 29 U.S.C. § 1109(a). This point is underscored by the recent amendment to the Complaint, which substitutes Mr. Ferazani and Mr. Brenner for two of the original Defendants. This substitution was not based on any allegation about these two new Trustees' conduct, but rather was based solely on the fact that the new Trustees have succeeded the original Trustee Defendants on the Board. AC ¶ 20 n.3. In the absence of any allegations of specific fiduciary misconduct by an individual Trustee, Plaintiffs cannot establish a basis for their removal. *Cf.* 29 U.S.C. § 1109(b).

Even if Plaintiffs established a fiduciary breach by the Trustees (they have not), they have not alleged any concrete injury to the Plan sufficient to confer them standing to pursue a

claim under § 409(a).  A beneficiary only has standing to bring such a claim if the plan has

suffered a concrete injury-in-fact.  *Thole v. U.S. Bank NA*, 140 S. Ct. 1615, 1619 (2020)

(plaintiffs did not have standing to seek equitable relief against pension plan fiduciaries because

they failed to sufficiently plead that plan suffered any concrete injury despite the allegation that

the plan had $750 million in investment losses).  Here, Count V is replete with conclusory

allegations that alleged procedural problems have caused vague and undefined "harm,"

"negative[] influence," and "injury" to the Plan.  *See, e.g.*, AC ¶¶ 333 (harm to and negative

influence on "the plan-wide implementation and integrity of the claims administration process"),

334 ("harm to the Plan's integrity"), 335 ("plan-wide injury to the Plan itself").  None of these

vague allegations supports a claim that the Plan has suffered any concrete harm.  *See Thole*, 140

S. Ct. at 1619.  Although Plaintiffs contend that it was a waste of Plan assets to make "payments

to physicians with high T & P disability denial rates," they allege no facts to support this

assertion.  AC ¶ 341.  And, perhaps because they recognize that the Plan would have had to pay

the same flat rate for each examination no matter who conducted it, Plaintiffs do not attempt to

recover that sum as a loss to the plan.  *Id.* ¶ 387.

Ultimately, Plaintiffs tie every harm they allege to "the Board's repeated refusal to pay

contractually authorized benefits."  *Id.* ¶ 333.  But the denial of Plaintiffs' benefit claims is not

actionable under § 409 because it is not a concrete injury *to the Plan*.  *See Mass. Mut. Life Ins.

Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[T]he entire text of § 409 persuades us that Congress

did not intend that section to authorize any relief except for the plan itself.").  Plaintiffs' attempt

to repackage their benefits claim as a § 409 claim on behalf of the Plan should be rejected.  *See

Rogers v. Unitedhealth Grp., Inc.*, 144 F. Supp. 3d 792, 799 (D.S.C. 2015) (dismissing plaintiffs'

claim alleging "an overarching tendency by [d]efendants to act in their own financial interest by

denying legitimate medical claims—rather than acting in the best interests of plan participants

and beneficiaries—and then attempting to conceal such activity by failing to produce

documentation related to said denials" because "[t]heir claims are for benefits, not for a breach of

fiduciary duties under Section 1109").[24]

For the foregoing reasons, Count V must be dismissed in its entirety.

## VI.    ALL OF PLAINTIFFS' CLAIMS AGAINST THE COMMISSIONER SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT HE IS NOT A FIDUCIARY

All of Plaintiffs' claims against the Commissioner fail as a matter of law because he is

not the Plan, the Plan's administrator, or an ERISA fiduciary of the Plan. As explained above,

Counts I through III—as claims properly falling under § 502(a)(1)(B)—may only be brought

against a plan, plan administrator, or a fiduciary with individual control over plan benefit

determinations. The Commissioner is none of these. Plaintiffs' remaining counts (Counts IV

and V) are all alleged as breaches of fiduciary duty. To state a claim for breach of fiduciary duty

under ERISA, the threshold question is whether the plaintiff has sufficiently alleged that the

defendant was a "fiduciary." *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th

Cir. 1992) ("Before one can conclude that a fiduciary duty has been violated, it must be

established that the party charged with the breach meets the statutory definition of 'fiduciary.'").

Plaintiffs fail to allege any facts establishing that the Commissioner was acting as a fiduciary of

---

[24] *See also Est. of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 745 (W.D. Va. 2008) (dismissing claim based on defendant's alleged "pattern of failing to provide vital information concerning coverage" because "the relief that Plaintiff ultimately seeks is the recovery of individually-based benefits that should have allegedly been provided to [Plaintiff]" which is "the quintessential example of relief that is not available under section 502(a)(2)"), *aff'd*, 388 F. App'x 275 (4th Cir. 2010) (unpublished); *Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 718 (D. Md. 2002) (dismissing Section 502(a)(2) because plaintiff also sought individual damages).

the Plan to support these claims.

An ERISA fiduciary is either a "named fiduciary" under the plan document or an individual who has discretionary authority or control over plan assets or plan administration. ERISA §§ 3(21), 402(a)(2); 29 U.S.C. §§ 1002(21), 1102(a)(2). When determining whether a party is a fiduciary, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Adams*, 261 F. App'x at 590 (quoting *Coleman*, 969 F.2d at 60–61). While "discretionary acts are fiduciary acts, ministerial administrative acts are not." *Id.* at 592.

Nowhere in the Complaint do Plaintiffs allege the Commissioner exercises discretion under the Plan with respect to Plan assets or administration. Nor could they. Under the Plan, the Commissioner is a non-voting member of the Board whose duties and responsibilities are limited to those specified in the Plan. DPD § 9.1(b). The only duty and responsibility designated to the Commissioner is that he, or his designee, shall be an honorary chairman of the Board who presides, or who delegates his designees to preside, over the Board meetings. *Id.* As alleged in Plaintiffs' Complaint, the Commissioner has no voting authority with respect to any aspect of the Plan, including deciding disability appeals. AC ¶ 19. Accordingly, the Commissioner is not a fiduciary, and Plaintiffs' claims against him must be dismissed. *See Adams*, 261 F. App'x at 590–91 (dismissing claims against vice president who attended meeting but "possessed no discretionary authority to alter the terms of the Pittston Plan or to determine eligibility for benefits or the amount of benefits a participant was entitled to under the Pittston plan"); *Est. of Spinner*, 589 F. Supp. 2d at 747–48 (dismissing claims against individual who wrote a letter to participant but otherwise had no authority to make decisions concerning plan policy, practices, and procedure); *Guardian Life Ins. Co. of Am. v. Reinaman*, 2011 WL 2133703, at *8 (D. Md. May 26, 2011) (dismissing claims against alleged representative of plan); *see also KDW*

*Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 224 (S.D.N.Y.

2012) (dismissing breach of fiduciary claims against non-voting officers); *Johnson v. NFL*

*Player Disability, Neurocognitive & Death Benefit Plan*, 2023 WL 2059033, at *6–8 (E.D.

Mich. Feb. 16, 2023) (concluding that the Management Council was not a fiduciary because

there were no facts in the complaint indicating that it exercised any discretionary authority or

control with respect to plan management, assets, or administration).  Accordingly, all of

Plaintiffs' claims against the Commissioner should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Class Action Complaint should be dismissed in its entirety.

Date: June 27, 2023

Respectfully submitted,

/s/ Gregory F. Jacob
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*

/s/ Stacey R. Eisenstein
Stacey R. Eisenstein (D. Md. Bar No. 30616)
Nathan J. Oleson (D. Md. Bar No. 16678)
Amanda S. McGinn (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: seisenstein@akingump.com
Email: noleson@akingump.com
Email: amcginn@akingump.com

/s/ Eric Field
Eric Field (*pro hac vice*)
LITTLER MENDELSON P.C.
815 Connecticut Avenue, N.W., Suite 400
Washington, DC 20006
Telephone: (202) 842-3400
Facsimile: (202) 842-0011
Email: efield@littler.com

*Attorneys for Defendants Larry Ferazani, Belinda Lerner, Jacob Frank, and Roger Goodell*

/s/ Matthew M. Saxon
Matthew M. Saxon (D. Md. Bar No. 19604)
William G. Miossi *(pro hac vice)*
John Harding *(pro hac vice)*
Spencer Churchill *(pro hac vice)*
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Email: msaxon@winston.com
Email: wmiossi@winston.com
Email: jwharding@winston.com
Email: schurchill@winston.com

*Attorneys for Defendants Sam McCullum, Robert Smith, and Hoby Brenner*

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory F. Jacob, hereby certify that on June 27, 2023, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*/s/ Gregory F. Jacob*
Gregory F. Jacob