# EXHIBIT G

**NFL PLAYER BENEFITS**
DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email and Federal Express

March 10, 2023

Mr. Jason Alford
88 Monroe Place, Apt. 407
Bloomfield, NJ 07003

**Re: NFL Player Disability & Survivor Benefit Plan – Final Decision on Review**

Dear Mr. Alford:

On March 8, 2023, the Disability Board of the NFL Player Disability & Survivor Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for neurocognitive disability ("NC") benefits. We regret to inform you that the Disability Board denied your appeal. This letter describes the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

The Plan provides NC benefits to eligible Players who have "mild" or "moderate" neurocognitive impairment, as defined by the terms of the Plan.

The Plan received your completed application for NC benefits on January 27, 2022. You were then evaluated by two Plan Neutral Physicians, neurologist Dr. Salman Azhar and neuropsychologist Dr. Charlene Bang, pursuant to Plan Section 6.2(d). In a joint report dated March 6 – 7, 2022, Dr. Azhar and Dr. Bang indicated that they were unable to determine whether you show evidence of acquired neurocognitive impairment due to low scores on validity measures. The Disability Initial Claims Committee ("Committee") denied your application because you failed validity testing and because no Plan Neutral Physician found evidence of neurocognitive impairment. Your failed validity testing prevented the Committee from determining if you have a neurocognitive impairment.

By letter received October 3, 2022, your representative, Sam Katz, appealed the Committee's initial decision to the Disability Board and criticized Dr. Azhar's report.

On appeal you were examined by two additional Plan Neutral Physicians, neurologist Dr. Barry McCasland and neuropsychologist Dr. Ernest Fung, pursuant to Plan Section 6.2(d) and the Plan's claims procedures. By report dated November 8, 2022, Dr. McCasland determined that you had a normal neurological examination with no objective evidence of acquired neurocognitive dysfunction. By report dated November 8, 2022, Dr. Fung found that you do not evidence a neurocognitive impairment based on the test results that were valid. He found that some of your test results, namely information processing and working memory, were invalid. By joint report dated November 8, 2022,

Mr. Jason Alford
March 10, 2023
Page 2

Drs. McCasland and Fung confirmed that you do not show evidence of acquired neurocognitive impairment.

By letter dated November 15, 2022, the NFL Player Benefits Office provided you and Mr. Katz with copies of the Plan Neutral Physicians' reports and advised that you had the right to respond to them before the Disability Board issued a final decision on your appeal. On December 12, 2022, Mr. Katz argued that Dr. Fung found mild neurocognitive impairment in the executive functioning and learning and memory domains based on similar scores from other Players.

At its February 23, 2023 meeting, the Disability Board reviewed all of the evidence in your Plan file and tentatively found that you are ineligible for NC benefits. On March 8, 2023, the Disability Board unanimously decided that you are ineligible for NC benefits and authorized transmission of this letter explaining its decision. Section 6.1(e) of the Plan states that, for a Player to be eligible for NC benefits, "at least one Plan Neutral Physician must conclude that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." The Disability Board found that you did not meet this threshold requirement because you have been examined by four Plan Neutral Physicians, and none found that you have a mild or moderate acquired neurocognitive impairment within the meaning of the Plan.

The Disability Board rejected Mr. Katz's arguments on appeal and credited the Plan's Neutral Physicians for the following reasons. First, the Neutral Physicians are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's Neutral Physicians are instructed to (and do) evaluate Players fully, fairly, and without bias for or against the Player. For these reasons neutral evaluations are typically accepted and relied upon by the members of the Disability Board appointed by the NFL and those appointed by the NFL Players Association. Third, the Disability Board found that the conclusions of the Plan's Neutral Physicians were consistent, in that they concluded that you have not established an impairment that meets the Plan's standard for the NC benefit. Furthermore, the Neutral Physicians reviewed all of the records you provided, conducted thorough examinations of you, and rated your condition using a complete battery of neuropsychologic and neurologic testing. The Disability Board noted that the Plan's standards for NC benefits do not turn on the results of any single component of such testing, so long as such testing is valid. Finally, the Plan's Neutral Physicians are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations, and have done so in your case. For these reasons, the Disability Board denied your appeal.

Mr. Jason Alford
March 10, 2023
Page 3

Please understand the Disability Board is required by federal law to follow the terms of the Plan. Where, as here, you do not satisfy the terms of the Plan, federal law requires the Disability Board to deny your appeal, regardless of how sympathetic individual members of the Disability Board may be to your circumstances.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is September 8, 2026.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

You may call the NFL Player Benefits Office if you have any questions.

Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc: Samuel Katz, Esquire

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**6.1  Eligibility.**  For applications received before April 1, 2020, a Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met.

Effective for applications received on and after April 1, 2020 and through March 31, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), and (m) below are met.

Effective for applications received on and after April 1, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m) below are met.

(a)  The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)  The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)  The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan or be a Pension Expansion Player within the meaning of the Bert Bell/Pete Rozelle Plan.

(d)  The Player must not be receiving T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)  At least one Plan Neutral Physician must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)  After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)  The Player must execute the release described in Section 6.3.

(h) The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i) The Player must satisfy the other requirements of this Article 6.

(j) The Player must not have previously received the NC Benefit and had those benefits terminate at age 55 before April 1, 2020 by virtue of earlier versions of this Plan.

(k) If the Player is not a Vested Inactive Player, his application for the NC Benefit must be received by the Plan within eighty-four (84) months after the end of his last contract with a Club under which he is a Player, as defined under Section 1.35 of the Bert Bell/Pete Rozelle Plan, for at least one Game, as defined under Section 1.17 of the Bert Bell/Pete Rozelle Plan.

(l) The Player must be under age 65.

(m) For applications received on and after October 1, 2020, the Player must submit Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 6.2(d).  This paragraph (m) does not apply to applications received prior to October 1, 2020.

**6.2    Determination of Neurocognitive Impairment.**

(a) _Mild Impairment._  A Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(b) _Moderate Impairment._  A Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(c) _Substance Abuse and Psychiatric Exclusion_.  A Player who otherwise satisfies the requirements for mild or moderate neurocognitive impairment will not be eligible for NC benefits if his neurocognitive impairment is caused by substance abuse or a psychiatric condition.  The prior sentence does not apply to a Player eligible for benefits under this Article 6 whose neurocognitive impairment is not caused by substance abuse or a psychiatric condition, but who abuses substances or has a psychiatric condition.  Substance abuse means the use of, addiction to, or dependence upon any controlled substance (as defined in 21 U.S.C. § 802(d)), alcohol, or illegal drugs (including all drugs and substances, other than controlled substances or alcohol, used or taken in violation of law or League policy).

(d)     Medical Records and Evaluations.  A Player applying for NC Benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to NC Benefits, and his appeal will be denied.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits, such Player will first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to NC Benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for NC Benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional medical records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(e)     Validity Testing.  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests.  A Player who fails both validity tests will not be eligible for the NC Benefit.  A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

**Plan Section 13.4** is entitled "Limitation on Actions."  It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."