# EXHIBIT N



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express and Email

June 6, 2022

Mr. Jamize Olawale
1016 Delacroix Drive
Southlake, TX 76092

**Re:  NFL Player Disability & Survivor Benefit Plan—Final Decisions on Review**

Dear Mr. Olawale:

On June 1, 2022, the Disability Board of the NFL Player Disability & Survivor Benefit Plan ("Plan") considered your appeals from the earlier denials of your applications for total and permanent disability benefits under the Plan ("Plan T&P"); line-of-duty disability ("LOD") benefits, and neurocognitive disability ("NC") benefits.  We regret to inform you that the Disability Board denied your appeals.  This letter describes the Disability Board's decisions; it identifies the Plan provisions on which the decisions were based; and it explains your legal rights.

**T&P Benefits**

On March 29, 2021, the Plan received your completed application for Plan T&P benefits, which raised orthopedic, neurocognitive, and psychiatric impairments as the basis for your disability.

As you know, on August 4, 2021, the Disability Initial Claims Committee ("Committee") reviewed your application along with the reports of four Plan Neutral Physicians: orthopedist, Dr. Paul Saenz; neurologist, Dr. Eric Brahin; neuropsychologist, Dr. Justin O'Rourke; and psychiatrist, Dr. Matthew Norman.  These neutral physicians are specialists in the medical fields encompassing your claimed impairments.  After reviewing your records and evaluating you, each of them reported that you are not totally and permanently disabled.  Based on those findings, the Committee denied your application under Plan Section 3.1(d) because no Plan Neutral Physician had found that you are unable to engage in any occupation for remuneration or profit.

On February 7, 2022, your attorney, Ms. Sam Katz, appealed the Committee's initial decision to the Disability Board.  Mr. Katz argued that the Neutral Physicians failed to consider the cumulative effect of your impairments and failed to identify any specific job you could perform.

On appeal you were referred for additional evaluations with four new Plan Neutral Physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures.  You were evaluated by: orthopedist, Dr. Hussein Elkousy; neurologist, Dr. Annette Okai; neuropsychologist, Dr. David Salisbury; and psychiatrist, Dr. John Rabun.  Like the Plan Neutral Physicians who evaluated you at

Mr. Jamize Olawale
June 6, 2022
Page 2

the initial level, these Plan Neutral Physicians are specialists in the medical fields encompassing your claimed impairments. By report dated March 18, 2022, Dr. Elkousy determined that you are not totally and permanently disabled by your orthopedic impairments and can engage in "light to medium duty capacity occupations." By report dated March 11, 2022, Dr. Strassnig determined that your psychiatric impairments do not render you totally and permanently disabled and that you can engage in "any job from a psychiatric standpoint." By report dated March 11, 2022, Dr. Okai concluded that you are not totally and permanently disabled by your neurological impairments. By report dated March 2, 2022, Dr. Rabun concluded that you are not totally and permanently disabled by your cognitive impairments.

By letter dated March 31, 2022, the NFL Player Benefits Office provided you and Mr. Katz with the Neutral Physicians' reports and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received April 28, 2022, Mr. Katz questioned the findings pertaining to your NC application.

At its May 18, 2022 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for Plan T&P benefits. On June 1, 2022, the Disability Board unanimously decided that you are ineligible for T&P benefits and authorized transmission of this letter explaining its decision. Section 3.1(d) of the Plan states that, for a Player to be eligible for Plan T&P benefits, at least one Plan Neutral Physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for Plan T&P benefits). If no Plan Neutral Physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement. The Disability Board noted that Mr. Katz's comments concerning the cumulative effect of your impairments cannot override the express requirements of Plan Section 3.1(d). The Disability Board, moreover, did consider all of the impairments described by the Plan Neutral Physicians and review the medical records you submitted. The Disability Board further noted that Mr. Katz was critical of the Plan Neutral Physicians for failing to identify a specific job that you could perform. The Board rejected this argument because the Plan utilizes an "any occupation" standard, and Plan Neutral Physicians opine, specifically, on whether a Player satisfies this standard. A conclusion that a Player is capable of light or sedentary employment or capable of employment with no limitations inherently covers a wide range of occupations and shows that a Player does not meet the Plan's "any occupation" standard.

The Disability Board took into account the following factors. First, Neutral Physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's Neutral Physicians reviewed all of the records you provided, performed an evaluation, and unanimously concluded that you are not totally and permanently disabled despite your impairments. Third, the Disability Board found that the conclusions of the Plan's Neutral Physicians were consistent, in that they independently concluded

Mr. Jamize Olawale
June 6, 2022
Page 3

that you are capable of employment despite your impairments.  Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players.  The Disability Board has no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

Plan Section 3.2(a) allows a Player to qualify for Plan T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(d).  You have not presented evidence that you currently receive Social Security disability benefits.  For these reasons, the Disability Board denied your appeal.

**LOD Benefits**

The Plan provides LOD benefits to Players who, in addition to other requirements, have incurred a "substantial disablement" "arising out of League football activities."  The Plan defines these terms and requires that at least one Plan Neutral Physician must find that the Player meets this standard in order to be eligible for LOD benefits (see enclosed Plan Section 5.1(c)).

On March 29, 2021, the Plan received your completed application for LOD benefits, which was based on orthopedic impairments and was accompanied by more than 190 pages of medical records.

As you know, on August 4, 2021, the Disability Initial Claims Committee ("Committee") denied your application after reviewing your file and concluding that you are ineligible for LOD benefits.  In making its determination, the Committee relied on the findings of Plan neutral orthopedist Dr. Paul Saenz, who is a specialist in the medical field of your claimed impairments.  After reviewing your records and evaluating you, Dr. Saenz assigned you 6 points under the Plan's Point System for Orthopedic Impairments (less than the 9 points required for a "substantial disablement" within the meaning of Section 5.5(a)(4)(B) of the Plan).  Based on this conclusion, the Committee denied your application under Plan Section 5.1(c) because no Plan Neutral Physician had found that you have a "substantial disablement" arising out of League football activities.

On February 7, 2022, Sam Katz appealed the Committee's initial decision to the Disability Board.

On appeal, you were examined by another Plan Neutral orthopedist, Dr. Hussein Elkousy pursuant to Plan Section 5.4(b) and the Plan's claims procedures.  Like Dr. Perry, who examined you at the initial level, Dr. Elkousy is an orthopedic specialist who has experience evaluating impairments under the Plan's Point System.  After examining you and reviewing your medical records, Dr. Elkousy rated your orthopedic impairments at 0 points (again below the 9 points required for LOD benefits under the terms of the Plan).

Mr. Jamize Olawale
June 6, 2022
Page 4

By letter dated March 31, 2022, the NFL Player Benefits Office provided you and Mr. Katz with a copy of Dr. Elkousy's report and advised that you had the right to respond before the Disability Board issued a final decision on your appeal.

On May 18, 2022, the Disability Board reviewed the current record and tentatively found that you are ineligible for LOD benefits.  On June 1, 2022, the Disability Board unanimously decided that you are ineligible for LOD benefits and authorized transmission of this letter explaining its decision.  Plan Section 5.1(c) states that, for a Player to be eligible for LOD benefits, at least one Plan Neutral Physician must conclude that the Player incurred a "substantial disablement" arising out of League football activities (the Plan's standard for LOD benefits).  If no Plan Neutral Physician renders this conclusion, then "the Player will not be eligible for and will not receive [LOD] benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record."  In your case, the Disability Board found that you did not meet this threshold requirement because, based on your Point System ratings, neither one of the Plan neutral orthopedists reported that you have a "substantial disablement" arising out of League football activities.

The Disability Board took into account the following factors.  First, Neutral Physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes.  Second, the Plan's Neutral Physicians reviewed all of the records you provided; they conducted thorough physical examinations of you; and they provided complete and detailed reports of your condition.  Finally, the Disability Board found that the conclusions of the Plan's Neutral Physicians were consistent, in that they independently concluded that you do not have a "substantial disablement" despite your impairments.  The Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players.  The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.  For these reasons, the Disability Board denied your appeal.

**NC Benefits**

The Plan provides NC benefits to eligible Players who have "mild" or "moderate" neurocognitive impairment, as defined by the terms of the Plan.

The Plan received your completed application for NC benefits on March 29, 2021.  You were then evaluated by two Plan Neutral Physicians, Dr. Eric Brahin and Dr. Justin O'Rourke, pursuant to Plan Section 6.2(d).  In a joint report dated June 17, 2021, Drs. Brahin and O'Rourke confirmed that they could not determine that you have a neurocognitive impairment due to low scores on validity measures.  The Committee denied your application because you failed validity testing and because

Mr. Jamize Olawale
June 6, 2022
Page 5

no Plan Neutral Physician found a neurocognitive impairment. Your failed validity tests prevented the Committee from determining if you have neurocognitive impairment.

By letter received February 7, 2022, Mr. Katz appealed the Committee's initial decision to the Disability Board.

On appeal you were examined by two additional Plan Neutral Physicians, Dr. Okai and Dr. Salisbury pursuant to Plan Section 6.2(d) and the Plan's claims procedures. By report dated March 1, 2022, Dr. Okai found no cognitive impairment. By report dated March 2, 2022, Dr. Salisbury concluded that your evaluation revealed "generally preserved cognitive functioning at this time which would not meet criteria for a level of neurocognitive impairment." By joint report dated March 2 – 24, 2022, Drs. Okai and Salisbury confirmed that you do not show evidence of acquired neurocognitive impairment.

By letter dated March 31, 2022, the NFL Player Benefits Office provided you and Mr. Katz with copies of the Plan Neutral Physicians' reports and advised that you had the right to respond to them before the Disability Board issued a final decision on your appeal. By letter received April 28, 2022, Mr. Katz argued that the scores obtained during the neuropsychological evaluation demonstrate a cognitive impairment.

On May 18, 2022, the Disability Board reviewed all of the evidence in your Plan file and tentatively found that you are ineligible for NC benefits. On June 1, 2022, the Disability Board unanimously decided that you are ineligible for NC benefits and authorized transmission of this letter explaining its decision. Section 6.1(e) of the Plan states that, for a Player to be eligible for NC benefits, "at least one Plan Neutral Physician must conclude that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because you have been examined by four Plan Neutral Physicians, and none found that you have an acquired neurocognitive impairment.

The Disability Board rejected Mr. Katz's argument and credited the findings of the Plan's Neutral Physicians for the following reasons. First, the physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's physicians reviewed the medical records you submitted with your application, performed an evaluation of you and unanimously concluded that you do not have an acquired neurocognitive impairment. The Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for

Mr. Jamize Olawale
June 6, 2022
Page 6

or against Players. The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case. For these reasons, the Disability Board denied your appeal.

Please understand the Disability Board is required by federal law to follow the terms of the Plan. Where, as here, you do not satisfy the terms of the Plan, federal law requires the Disability Board to deny your appeal, regardless of how sympathetic individual members of the Disability Board may be to your circumstances.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is December 1, 2025.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

You may call the NFL Player Benefits Office if you have any questions.

Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc: Samuel Katz, Esquire

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): **如果需要中文的帮助**，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

# Disability Plan T&P Benefits Relevant Plan Provisions

**3.1  General Standard for Eligibility.**  An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a) through (f) below are met:

(a)    The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

(b)    The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

(c)    The Player submits Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 3.3.

(d)    At least one Plan Neutral Physician must find, under the standard of Section 3.1(e), that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(e)    After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent.  The following rules will apply:

(1)    The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

(2)    A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

    (3)  A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

  (f)  The Player satisfies all other applicable requirements of this Article 3.

**3.2**  **Social Security Standard for Eligibility.**

  (a)  For applications received prior to April 1, 2024, an Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits.

  If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

  (b)  For applications received prior to April 1, 2024, an Article 3 Eligible Player who elects to begin receiving pension benefits under the Bert Bell/Pete Rozelle Plan prior to his Normal Retirement Date, who is subsequently determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, who satisfies the other conditions of this paragraph, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits.  To be eligible for benefits under this paragraph, the Player must apply for such Social Security disability benefits prior to his Normal Retirement Date, and the award of disability benefits by the Social Security Administration must occur prior to the Player's Normal Retirement Date.  An award of disability benefits by the Social Security Administration after a Player's Normal Retirement Date that such Player was disabled as of a date prior to his Normal Retirement Date does not qualify such Player for Plan T&P benefits under this paragraph.

  If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(b), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**3.3** **Application Rules and Procedures.** In addition to the requirements of Article 7 and Section 13.14 (claims procedures), Players must comply with the rules and procedures of this Section 3.3 in connection with an application for Plan T&P benefits.

(a) Medical Records and Evaluations. A Player applying for Plan T&P benefits under the General Standard of Section 3.1 on and after October 1, 2020 must submit Medical Records with his application. A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application. The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records. The Player's application will be denied if he does not submit any Medical Records within the 45 day period. If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal. A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal. The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records. Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to Plan T&P benefits, and his appeal will be denied. This paragraph does not apply to applications received prior to October 1, 2020.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 or Section 3.2, such Player may first be required to submit to an examination scheduled by the Plan with a Neutral Physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional Medical Records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

## Disability Plan LOD Benefits Relevant Plan Provisions

**5.1     Eligibility.**  Effective January 1, 2015, a Player will receive monthly line-of-duty disability benefits from this Plan in the amount described in Section 5.2 if and only if all of the conditions in (a) through (f) below are met:

(a)     The Player is not an Active Player.

(b)     The Player submits Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 5.4(b).

(c)     At least one Plan Neutral Physician must find that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive line-of-duty disability benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(d)     After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).

(e)     The Player satisfies the other requirements of this Article 5 or Article 6 of the Bert Bell/Pete Rozelle Plan, as appropriate.

(f)     The Player is not receiving line-of-duty disability benefits from the Bert Bell/Pete Rozelle Plan pursuant to Article 6 of that plan.

**5.4     Procedures.**

(b)     <u>Medical Records and Evaluations</u>.  A Player applying for line-of-duty benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Records with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to line-of-duty benefits, and his appeal will be denied.  This paragraph does not apply to applications received prior to October 1, 2020.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for line-of-duty benefits, such Player may first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to any line-of-duty disability benefits under this Article.  If a Player fails to attend an examination scheduled by the Plan, his application for line-of-duty disability benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for line-of-duty disability benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional Medical Records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

With respect to applications received on and after April 1, 2020, a Player who submits operative reports or NFL Club records documenting surgical procedures deemed sufficient, by the Disability Initial Claims Committee or the Disability Board, to establish that he has a "substantial disablement" arising out of League football activities will not be subject to a medical evaluation under this Section 5.4(b).

**5.5     Definitions.**

(a)     With respect to applications received on and after April 1, 2020, a 'substantial disablement' is a 'permanent' disability other than a neurocognitive, brain-related neurological (excluding nerve damage), or psychiatric impairment that:

   (1)     Results in a 50% or greater loss of speech or sight; or

   (2)     Results in a 55% or greater loss of hearing; or

   (3)     Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system; or

   (4)     For orthopedic impairments,

(A) With respect to applications received before April 1, 2020, is rated at least 10 points, using the Point System set forth in Appendix A, Version 2 to this Plan. Surgeries, injuries, treatments, and medical procedures that occur after a Player's application deadline in Section 5.4(a) will not receive points and will be disregarded by the Committee and Board.

(B) With respect to applications received on and after April 1, 2020, is rated at least 9 points, using the Point System set forth in Appendix A, Version 2 to this Plan. Surgeries, injuries, treatments, and medical procedures that occur after a Player's application deadline in Section 5.4(a) will not receive points and will be disregarded by the Committee and Board.

(b) A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(c) "Arising out of League football activities" means a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities. "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities.

The introduction to **Appendix A, Version 2** provides this overview of the **Point System** referenced in Section 5.5(a)(4)(B):

This Point System for Orthopedic Impairments ("Point System") is used to determine whether a Player has a "substantial disablement" within the meaning of Plan Section 5.5(a)(4)(B). The Point System assigns points to each orthopedic impairment recognized under the Plan. A Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment, but only where the Player's orthopedic impairment arose out of League football activities, and the impairment has persisted or is expected to persist for at least 12 months from the date of its occurrence, excluding any reasonably possible recovery period.

A Player is awarded points only if his orthopedic impairment is documented according to the following rules:

1. A Player is awarded points for documented surgeries, injuries, and degenerative joint disease only if they are related to League football activities.

2. A Player is awarded points for a surgical procedure if the record includes an operative report for the qualifying procedure or if NFL Club records document the procedure. Surgical procedures reported through third party evaluations, such as independent medical examinations for workers' compensation, should not be used unless

corroborating evidence is available to confirm the procedure and its relationship to League football activities.

3. Points are awarded for symptomatic soft tissue injuries where the injury is documented and there are appropriate, consistent clinical findings that are symptomatic on the day of exam. For example, AC joint injuries must be documented in medical records and be symptomatic on examination, with appropriate physical findings, to award points.

4. If an injury or surgery is not listed in the Point System, no points should be awarded.

5. Medical records, medical history, and the physical examination must correlate before points can be awarded.

6. If a lateral clavicle resection is given points, additional points cannot be awarded if the AC joint is still symptomatic, such as with AC joint inflammation or shoulder instability.

7. Moderate or greater degenerative changes must be seen on x-ray to award points (i.e., MRI findings do not count).

8. Players must have moderate or greater loss of function that significantly impacts activities of daily living, or ADLs, to get points.

9. Cervical and lumbosacral spine injuries must have a documented relationship to League football activities, with appropriate x-ray findings, MRI findings, and/or EMG findings to be rated.

10. In cases where an injury is treated surgically, points are awarded for the surgical treatment/repair only, and not the injury preceding the surgical treatment/repair. For example, a Player may receive points for "S/P Pectoralis Major Tendon Repair," and if so he will not receive additional points for the "Pectoralis Major Tendon Tear" that led to the surgery.

11. As indicated in the Point System Impairment Tables, some injuries must be symptomatic on examination to merit an award of points under the Point System.

12. To award points for a subsequent procedure on the same joint/body part, the Player must recover from the first procedure and a new injury must occur to warrant the subsequent procedure. Otherwise, a revise/redo of a failed procedure would be the appropriate impairment rating.

13. Hardware removal is not considered a revise/redo of a failed surgery, and points are not awarded for hardware removal.

14. Multiple impairment ratings may be given related to a procedure on the same date, i.e., partial lateral meniscectomy and microfracture or chondral resurfacing.

15. When an ankle ORIF with soft tissue occurs, there should be no additional points for syndesmosis repair or deltoid ligament repair.

**Appendix A, Version 2 then includes comprehensive "Point System Impairment Tables,"** which assign Point System values to each orthopedic impairment recognized under the Plan. Your total "points" are the sum of those assigned for your recognized orthopedic impairments.

**The Point System for Orthopedic Impairments is online at nflplayerbenefits.com. The NFL Player Benefits Office will furnish a full copy of it upon your request.**

## Disability Plan NC Benefits Relevant Plan Provisions

**6.1** **Eligibility.** For applications received before April 1, 2020, a Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met.

Effective for applications received on and after April 1, 2020 and through March 31, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), and (m) below are met.

Effective for applications received on and after April 1, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m) below are met.

(a) The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b) The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c) The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan or be a Pension Expansion Player within the meaning of the Bert Bell/Pete Rozelle Plan.

(d) The Player must not be receiving T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e) At least one Plan Neutral Physician must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f) After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g) The Player must execute the release described in Section 6.3.

(h)     The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)     The Player must satisfy the other requirements of this Article 6.

(j)     The Player must not have previously received the NC Benefit and had those benefits terminate at age 55 before April 1, 2020 by virtue of earlier versions of this Plan.

(k)     If the Player is not a Vested Inactive Player, his application for the NC Benefit must be received by the Plan within eighty-four (84) months after the end of his last contract with a Club under which he is a Player, as defined under Section 1.35 of the Bert Bell/Pete Rozelle Plan, for at least one Game, as defined under Section 1.17 of the Bert Bell/Pete Rozelle Plan.

(l)     The Player must be under age 65.

(m)     For applications received on and after October 1, 2020, the Player must submit Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 6.2(d).  This paragraph (m) does not apply to applications received prior to October 1, 2020.

**6.2     Determination of Neurocognitive Impairment.**

(a)     <u>Mild Impairment.</u>  A Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(b)     <u>Moderate Impairment.</u>  A Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(d)     <u>Medical Records and Evaluations</u>.  A Player applying for NC Benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation

who does not submit any Medical Records within the 45 day period will not be entitled to NC Benefits, and his appeal will be denied.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits, such Player will first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to NC Benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for NC Benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional medical records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(e)   <u>Validity Testing.</u>  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests.  A Player who fails both validity tests will not be eligible for the NC Benefit.  A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

**Plan Section 13.4** is entitled "Limitation on Actions."  It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."