# EXHIBIT S



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email

June 11, 2021

Mr. Charles Sims
5011 Mountain Maple Trail
Rosenberg, TX 77471

**Re:　NFL Player Disability, Neurocognitive & Death Benefit Plan**
　　　　<u>**Initial Decisions by the Disability Initial Claims Committee**</u>

Dear Mr. Sims:

On May 17, 2021, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability, Neurocognitive & Death Benefit Plan ("Plan") considered your applications for total and permanent disability ("T&P"), neurocognitive disability ("NC"), and line-of-duty disability ("LOD") benefits. The Committee awarded you T&P benefits in the Inactive A category, with an effective date of March 1, 2020. By virtue of this T&P award, you are entitled to receive a monthly benefit of $11,250.00 from the Plan. Qualified Domestic Relations Orders and/or Early Payment Benefit payouts may impact the amount, if applicable in your case. The Committee denied your NC and LOD applications. This letter describes the Committee's decisions and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

**<u>T&P Benefits</u>**

You have Credited Seasons for 2014-2018. Your application for T&P benefits was received on May 5, 2020 and was based on orthopedic, psychiatric, neurologic, and cognitive impairments. With your application, you submitted a declaration and letter describing your impairments and 104 pages of medical records, including operative reports, diagnostic imaging studies, and Club records. You then attended examinations with four Plan Neutral Physicians: Dr. Hussein Elkousy (orthopedist), Dr. John Rabun (psychiatrist), Dr. Eric Brahin (neurologist), and Dr. Douglas Cooper (neuropsychologist). By report dated March 26, 2021, Dr. Elkousy concluded that you are not totally and permanently disabled and can engage in medium duty capacity occupations. By report dated April 26, 2021, Dr. Rabun found that your psychiatric impairments render you totally and permanently disabled. By report dated April 2, 2021, Dr. Brahin determined that you are not totally and permanently disabled based on any neurological symptoms. By report dated April 7, 2021, Dr. Cooper indicated that he was unable to determine whether you are totally and permanently disabled due to performance validity issues.

Mr. Charles Sims
June 11, 2021
Page 2

On May 17, 2021, the Committee reviewed your T&P application and the other materials in your file, including the reports of these Neutral Physicians.  After reviewing your file and the report of Dr. Rabun, the Committee found that you meet the Plan's requirements for T&P benefits.

Having determined that you are eligible for T&P benefits, the Committee then addressed the classification of your benefits.  The members of the Committee were deadlocked as to which category of T&P benefits you are entitled to receive.  One member of the Committee determined that the Active Football category is appropriate in your case because you satisfy the requirements for that category set out in Plan Section 3.4(a).

The other member of the Committee voted to award you the Inactive A category.  This member of the Committee noted that Section 3.5(b) precludes an award of Active Football benefits for a psychiatric disorder unless it (1) is caused by or relates to a head injury (or injuries) sustained during League football activities (e.g., repetitive concussions); (2) is caused by or relates to the use of a substance prescribed by a licensed physician for an injury (or injuries) or illness sustained by a Player arising out of League football activities; or (3) is caused by an injury (or injuries) or illness that qualified the Player for Plan T&P benefits under Section 3.4(a).  This Committee member determined that the evidence in your file does not support any of the three exceptions that would permit an award of Active Football benefits.

This Committee member next found that there was insufficient evidence to conclude that your psychiatric impairments first arose while you were an Active Player, as required for Active Nonfootball benefits under Section 3.4(b).  In reaching this conclusion, this Committee member found that the evidence did not show that your psychiatric condition(s) began during your NFL career.

Because both Committee members determined that you are totally and permanently disabled but disagreed on the category of benefits, you will receive T&P benefits in the Inactive A category.

The Committee determined that March 1, 2020 is the appropriate effective date because it is the first day of the month that is two months before the date your application was received by the NFL Player Benefits Office (Plan Section 3.10).

**Tax Notice and Direct Deposit**

Disability payments are taxable income.  Please complete the enclosed federal tax withholding form.  Upon receipt of your completed tax form, you will receive a lump sum payment that reflects your effective date (mentioned above) through and including the month in which your tax form was received (less taxes).

Mr. Charles Sims
June 11, 2021
Page 3

Your periodic payment will start the following month.  If you would like your payments to be deposited directly into your bank account, please also complete the enclosed Direct Deposit Request form and return it to this office along with your Form W-4.

If we do not receive your completed tax form within 6 months from the date of this letter, we will commence distribution of your benefits as soon as administratively applicable using the IRS default tax withholding rules.

You may change your elected (or default) tax withholding election at any time by submitting a tax withholding form.

**NC Benefits**

Your NC application was also received on May 5, 2020.  With your application, you referenced the same medical records submitted with your T&P application.

You then attended examinations with Plan Neutral Physicians Drs. Brahin and Cooper.  By report dated April 1, 2021, Dr. Brahin was unable to definitely determine if your neurological exam was a true representation of your cognitive state due to failed validity testing.  By report dated April 7, 2021, Dr. Cooper stated that he was unable to determine if you showed evidence of acquired neurocognitive impairment due to performance validity issues.  By joint report dated April 2, 2021, Drs. Brahin and Cooper confirmed that they were unable to determine whether you show evidence of acquired neurocognitive impairment due to low scores on validity measures.

On May 17, 2021, the Committee considered your NC application and the other materials in your file, including the reports of these Neutral Physicians.

Plan Section 6.2(e) states that a Player who fails two validity tests in his Plan neuropsychological exam will not be eligible for NC benefits.  Because you failed the two validity tests, you do not meet the threshold eligibility requirements of Plan Section 6.2(e).  In addition, because of the failed validity tests, the Plan Neutral Physicians could not determine that you have a neurocognitive impairment.  You therefore did not meet the requirements of Plan Section 6.1(e), which states that a Player will not be eligible for, and will not receive, NC benefits unless at least one Plan Neutral Physician finds evidence of neurocognitive impairment.  The Committee thus denied your application for NC benefits for these two reasons.

In making its decision, the Committee considered the medical records you submitted in support of your application, but it determined that these records do not support a finding of acquired neurocognitive impairment at this time.

Mr. Charles Sims
June 11, 2021
Page 4


Furthermore, the Neutral Physicians considered these records when they independently concluded that they were unable to determine whether you show evidence of acquired neurocognitive impairment.

**LOD Benefits**

Your LOD application was also received on May 5, 2020.  With your application, you referenced the same medical records submitted with your T&P and NC applications.  You then attended an examination with Plan neutral orthopedist Dr. Elkousy.

On May 17, 2021, the Committee considered your LOD application, the other materials in your file, and the report from Dr. Elkousy.

Plan Section 5.1(c) states, in part, that to qualify for LOD benefits, at least one Plan Neutral Physician must find that you have a "substantial disablement" "arising out of League football activities."  For orthopedic impairments, you have a substantial disablement if your impairments rate nine or more points using the Point System for Orthopedic Impairments (Plan Section 5.5(a)(4)(B); Appendix A).  Dr. Elkousy rated your impairments at four points under the Point System for Orthopedic Impairments.  Because no Plan physician reported that you have a substantial disablement, you do not meet the threshold eligibility requirement of Plan Section 5.1(c).  In addition, the Committee determined the medical records you submitted with your application do not alone demonstrate that you have a substantial disablement within the meaning of the Plan, and those records were taken into consideration by Dr. Elkousy when he calculated your points under the Point System.  The Committee thus denied your application for LOD benefits.

**Appeal Rights**

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decisions.  You may appeal the Committee's decisions to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter.  You should also submit written comments, documents, and any other information that you believe supports your appeal.  The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determinations.  Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment.

Mr. Charles Sims
June 11, 2021
Page 5


These are excerpts, however.  You should consult the Plan Document for a full recitation of the relevant Plan terms.  The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claims for benefits, including the governing Plan Document, which can also be found at www.nflplayerbenefits.com.  Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(a).

If you have any questions, please contact the NFL Player Benefits Office.


Sincerely,


Stephanie J. Torlina
Benefits Coordinator
On behalf of the Disability Initial Claims Committee


Enclosure


cc: Sam Katz

---

To receive assistance in these languages, please call:
SPANISH (Español):  Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码  855-938-0527 (ext. 2)
TAGALOG (Tagalog):  Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine):  Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**1.1** **"Active Player"** means a Player who is obligated to perform football playing services under a contract with an Employer; provided, however, that for purposes of Article 3 only, Active Player will also include a Player who is no longer obligated to perform football playing services under a contract with an Employer up until the July 31 next following or coincident with the expiration or termination of his last contract.

\*        \*        \*        \*

**3.1** **General Standard for Eligibility.** An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a) through (f) below are met:

(a)    The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

(b)    The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

(c)    The Player submits Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 3.3.

(d)    At least one Plan Neutral Physician must find, under the standard of Section 3.1(e), that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(e)    After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

(1)     The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

(2)     A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

(3)     A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(f)     The Player satisfies all other applicable requirements of this Article 3.

\*      \*      \*      \*

**3.3     Application Rules and Procedures.**  In addition to the requirements of Article 7 and Section 13.14 (claims procedures), Players must comply with the rules and procedures of this Section 3.3 in connection with an application for Plan T&P benefits.

(a)     <u>Medical Records and Evaluations.</u>

A Player applying for Plan T&P benefits under the General Standard of Section 3.1 on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to Plan T&P benefits, and his appeal will be denied.  This paragraph does not apply to applications received prior to October 1, 2020.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 or Section 3.2, such Player may first be required to submit to an examination scheduled by the Plan with a Neutral Physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional Medical Records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(b)     Requests for Information. Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player, or the eligibility of any Player to continue receiving Plan T&P benefits, such Player may be required to provide any additional documents or information that, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to decide the Player's application, appeal, or eligibility to continue receiving Plan T&P benefits. Any Player refusing or failing to provide the requested documents or information will not be entitled to Plan T&P benefits.

\*     \*     \*     \*

**3.4     Classification.** Each Player who is determined to be eligible for Plan T&P benefits in accordance with Section 3.1 or 3.2 will be awarded benefits in one of the four categories below.

(a)     Active Football. Subject to the special rules of Section 3.5, a Player will qualify for Plan T&P benefits in this category if (i) his disability(ies) arises out of League football activities while he is an Active Player, and causes him to be totally and permanently disabled, and (ii) his application that results in an award of Plan T&P benefits is received by the Plan within 18 months after he ceases to be an Active Player.

(b)    <u>Active Nonfootball.</u>  Subject to the special rules of Section 3.5, a Player will qualify for Plan T&P benefits in this category if (i) his disability(ies) does not arise out of League football activities but does arise while he is an Active Player, and causes him to be totally and permanently disabled, and (ii) his application that results in an award of Plan T&P benefits is received by the Plan within 18 months after he ceases to be an Active Player.

(c)    <u>Inactive A.</u>  Subject to the special rules of Section 3.5, a Player will qualify for Plan T&P benefits in this category if (i) the Player does not qualify for benefits in categories (a) or (b) above, and (ii) his application that results in an award of Plan T&P benefits is received by the Plan within fifteen (15) years after the end of his last Credited Season.  This category does not require that the disability arise out of League football activities.

(d)    <u>Inactive B.</u>  All Players who are determined to be eligible for Plan T&P benefits in accordance with Section 3.1 or 3.2 but who do not qualify for such benefits in categories (a), (b), or (c) above will be awarded Plan T&P benefits in this category.  This category does not require that the disability arise out of League football activities.

(e)    <u>"Arising out of League football activities"</u> means:

(1)    a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities.  "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities; or

(2)    notwithstanding anything to the contrary in Section 3.4(e)(1), "arising out of League Football Activities" includes an Active Player's positive diagnosis for coronavirus or his illness resulting from or related to coronavirus in the 2020 and 2021 Plan Years only, such that it satisfies Section 9 of the amendment to the 2020 CBA, dated August 3, 2020, entitled "COVID-19 Related Operational Adjustments."

*    *    *    *

**3.5    Special Rules.**

(a)    <u>Substance Abuse.</u>  Sections 3.4(a), 3.4(b), and 3.4(c) will not apply to a total and permanent disability caused by the use of, addiction to, or dependence upon (1) any controlled substance (as defined in 21 U.S.C. § 802(6)), unless the requirements of those sections are otherwise met and (i) such use of, addiction to, or dependence upon results from the substantially continuous use of a controlled substance that was prescribed for League football activities or for an injury (or injuries) or illness arising out of League football activities of the applicant while he was an Active Player, and (ii) an application for Plan T&P benefits is received based on such use of, addiction to, or dependence upon a controlled substance no later than eight years after the end of the Player's last Credited Season; (2) alcohol; or (3) illegal drugs. For purposes of this section, the term "illegal drugs" includes all drugs and substances (other than alcohol and controlled substances, as defined above) used or taken in violation of law or League policy.

(b)    <u>Psychological/Psychiatric Disorders.</u>  A payment for total and permanent disability as a result of a psychological/psychiatric disorder may only be made, and will only be awarded, for benefits under the provisions of Section 3.4(b), Section 3.4(c), or Section 3.4(d), except that a total and permanent disability as a result of a psychological/psychiatric disorder may be awarded under the provisions of Section 3.4(a) if the requirements for a total and permanent disability are otherwise met and the psychological/psychiatric disorder either (1) is caused by or relates to a head injury (or injuries) sustained by a Player arising out of League football activities (e.g., repetitive concussions); (2) is caused by or relates to the use of a substance prescribed by a licensed physician for an injury (or injuries) or illness sustained by a Player arising out of League football activities; or (3) is caused by an injury (or injuries) or illness that qualified the Player for Plan T&P benefits under Section 3.4(a).

*        *        *        *

**3.10    Effective Date of Plan T&P Benefits.**  Plan T&P benefits will be paid retroactive to the first day of the month that is two months prior to the date an application for Plan T&P benefits was received by the Plan.

*        *        *        *

**5.1    Eligibility.**  Effective January 1, 2015, a Player will receive monthly line-of-duty disability benefits from this Plan in the amount described in Section 5.2 if and only if all of the conditions in (a), (b), (c), (d), and (e) below are met:

(a) The Player is not an Active Player.

(b) At least one Plan neutral physician selected pursuant to Section 5.4(b) below must find that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).  If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive line-of-duty disability benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(c) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 5.4(b) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).

(d) The Player satisfies the other requirements of this Article 5 or Article 6 of the Bert Bell/Pete Rozelle Plan, as appropriate.

(e) The Player is not receiving line-of-duty disability benefits from the Bert Bell/Pete Rozelle Plan pursuant to Article 6 of that plan.

*     *     *     *

**5.4    Procedures.**

(b)    <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for line-of-duty benefits, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to any line-of-duty disability benefits under this Article.  If a Player fails to attend an examination scheduled by the Plan, his application for line-of-duty disability benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for line-of-duty disability benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination.

A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

\*       \*       \*       \*

**5.5    Definitions**.

(a)      A "substantial disablement" is a "permanent" disability that:

(1)      Results in a 50% or greater loss of speech or sight; or

(2)      Results in a 55% or greater loss of hearing; or

(3)      Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system; or

(4)      For orthopedic impairments,

(B)      With respect to applications received on or after January 1, 2015, [a "substantial disablement" is one that] is rated at least 10 points, using the Point System set forth in Appendix A, Version 2 to this Plan.  Surgeries, injuries, treatments, and medical procedures that occur after a Player's application deadline in Section 5.4(a) will not receive points and will be disregarded by the Committee and Board.

\*       \*       \*       \*

The introduction to **Appendix A, Version 2** provides this overview of the **Point System** referenced in Section 5.5(a)(4)(B):

This Point System for Orthopedic Impairments ("Point System") is used to determine whether a Player has a "substantial disablement" within the meaning of Plan Section 5.5(a)(4)(B). The Point System assigns points to each orthopedic impairment recognized under the Plan.  A Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment, but only where the Player's orthopedic impairment arose out of League football activities, and the impairment has persisted or is expected to persist for at least 12 months from the date of its occurrence, excluding any reasonably possible recovery period.

A Player is awarded points only if his orthopedic impairment is documented according to the following rules:

1.      A Player is awarded points for documented surgeries, injuries, and degenerative joint disease only if they are related to League football activities.

2.      A Player is awarded points for a surgical procedure if the record includes an operative report for the qualifying procedure or if NFL Club records document the procedure.  Surgical procedures reported through third party evaluations, such as independent medical examinations for workers' compensation, should not be used unless corroborating evidence is available to confirm the procedure and its relationship to League football activities.

3.      Points are awarded for symptomatic soft tissue injuries where the injury is documented and there are appropriate, consistent clinical findings that are symptomatic on the day of exam.  For example, AC joint injuries must be documented in medical records and be symptomatic on examination, with appropriate physical findings, to award points.

4.      If an injury or surgery is not listed in the Point System, no points should be awarded.

5.      Medical records, medical history, and the physical examination must correlate before points can be awarded.

6.      If a lateral clavicle resection is given points, additional points cannot be awarded if the AC joint is still symptomatic, such as with AC joint inflammation or shoulder instability.

7.      Moderate or greater degenerative changes must be seen on x-ray to award points (i.e., MRI findings do not count).

8.      Players must have moderate or greater loss of function that significantly impacts activities of daily living, or ADLs, to get points.

9.      Cervical and lumbosacral spine injuries must have a documented relationship to League football activities, with appropriate x-ray findings, MRI findings, and/or EMG findings to be rated.

10.      In cases where an injury is treated surgically, points are awarded for the surgical treatment/repair only, and not the injury preceding the surgical treatment/repair.  For example, a Player may receive points for "S/P Pectoralis Major Tendon Repair," and if so he will not receive additional points for the "Pectoralis Major Tendon Tear" that led to the surgery.

11.      As indicated in the Point System Impairment Tables, some injuries must be symptomatic on examination to merit an award of points under the Point System.

12.    To award points for a subsequent procedure on the same joint/body part, the Player must recover from the first procedure and a new injury must occur to warrant the subsequent procedure.  Otherwise, a revise/redo of a failed procedure would be the appropriate impairment rating.

13.    Hardware removal is not considered a revise/redo of a failed surgery, and points are not awarded for hardware removal.

14.    Multiple impairment ratings may be given related to a procedure on the same date, i.e., partial lateral meniscectomy and microfracture or chondral resurfacing.

15.    When an ankle ORIF with soft tissue occurs, there should be no additional points for syndesmosis repair or deltoid ligament repair.

Appendix A, Version 2 then includes comprehensive "**Point System Impairment Tables**," which assign Point System values to each orthopedic impairment recognized under the Plan.  Your total "points" are the sum of those assigned for your recognized orthopedic impairments.

The Point System for Orthopedic Impairments is online at nflplayerbenefits.com. The NFL Player Benefits Office will furnish a full copy of it upon your request.

\*    \*    \*    \*

**6.1    Eligibility.**  For applications received before April 1, 2020, a Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met.

Effective for applications received on and after April 1, 2020 and through March 31, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), and (m) below are met.

Effective for applications received on and after April 1, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m) below are met.

(a)    The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)     The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)     The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan or be a Pension Expansion Player within the meaning of the Bert Bell/Pete Rozelle Plan.

(d)     The Player must not be receiving T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)     At least one Plan Neutral Physician must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)     After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)     The Player must execute the release described in Section 6.3.

(h)     The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)     The Player must satisfy the other requirements of this Article 6.

(j)     The Player must not have previously received the NC Benefit and had those benefits terminate at age 55 before April 1, 2020 by virtue of earlier versions of this Plan.

(k)     If the Player is not a Vested Inactive Player, his application for the NC Benefit must be received by the Plan within eighty-four (84) months after the end of his last contract with a Club under which he is a Player, as defined under Section 1.35 of the Bert Bell/Pete Rozelle Plan, for at least one Game, as defined under Section 1.17 of the Bert Bell/Pete Rozelle Plan.

(l)     The Player must be under age 65.

(m)     For applications received on and after October 1, 2020, the Player must submit Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 6.2(d).  This paragraph (m) does not apply to applications received prior to October 1, 2020.

*      *      *      *

**6.2    Determination of Neurocognitive Impairment.**

(a)    <u>Mild Impairment</u>.  A Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(b)    <u>Moderate Impairment</u>.  A Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(d)    <u>Medical Records and Evaluations</u>.  A Player applying for NC Benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to NC Benefits, and his appeal will be denied.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits, such Player will first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to NC Benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.

The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for NC Benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional medical records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(e)      _Validity Testing._  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests. A Player who fails both validity tests will not be eligible for the NC Benefit. A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

*        *        *        *

**13.14   Claims Procedure.**

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. Section 2560.503-1.

(a)      **Claims Received After April 1, 2018.**  Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1)     the specific reason(s) for the adverse determination;

(2)     reference to the specific Plan provisions on which the adverse determination is based;

(3)     a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4)     a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review;

(5)     any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)     if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7)     a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1)    state the specific reason(s) for the adverse determination;

(2)    reference the specific Plan provision(s) on which the adverse determination is based;

(3)    state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4)    state that the claimant has the right to bring an action under ERISA Section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5)    disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)     if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7)     discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures.  Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable.  The Plan will provide an explanation within 10 days of the request.

DBM - 2/24/2022

Form **W-4**

Department of the Treasury
Internal Revenue Service

# Employee's Withholding Certificate

▶ Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay.
▶ Give Form W-4 to your employer.
▶ Your withholding is subject to review by the IRS.

OMB No. 1545-0074

**2021**

| Step 1: Enter Personal Information | **(a)** First name and middle initial | Last name | **(b)** Social security number |
|---|---|---|---|
| | Address | | ▶ **Does your name match the name on your social security card?** If not, to ensure you get credit for your earnings, contact SSA at 800-772-1213 or go to *www.ssa.gov*. |
| | City or town, state, and ZIP code | | |

**(c)** ☐ **Single** or **Married filing separately**
☐ **Married filing jointly** or **Qualifying widow(er)**
☐ **Head of household** (Check only if you're unmarried and pay more than half the costs of keeping up a home for yourself and a qualifying individual.)

---

**Complete Steps 2–4 ONLY if they apply to you; otherwise, skip to Step 5.** See page 2 for more information on each step, who can claim exemption from withholding, when to use the estimator at *www.irs.gov/W4App*, and privacy.

---

**Step 2:**

**Multiple Jobs or Spouse Works**

Complete this step if you (1) hold more than one job at a time, or (2) are married filing jointly and your spouse also works. The correct amount of withholding depends on income earned from all of these jobs.

Do **only one** of the following.

**(a)** Use the estimator at *www.irs.gov/W4App* for most accurate withholding for this step (and Steps 3–4); **or**

**(b)** Use the Multiple Jobs Worksheet on page 3 and enter the result in Step 4(c) below for roughly accurate withholding; **or**

**(c)** If there are only two jobs total, you may check this box. Do the same on Form W-4 for the other job. This option is accurate for jobs with similar pay; otherwise, more tax than necessary may be withheld . . . . . ▶ ☐

**TIP:** To be accurate, submit a 2021 Form W-4 for all other jobs. If you (or your spouse) have self-employment income, including as an independent contractor, use the estimator.

---

**Complete Steps 3–4(b) on Form W-4 for only ONE of these jobs.** Leave those steps blank for the other jobs. (Your withholding will be most accurate if you complete Steps 3–4(b) on the Form W-4 for the highest paying job.)

---

**Step 3:**

**Claim Dependents**

If your total income will be $200,000 or less ($400,000 or less if married filing jointly):

Multiply the number of qualifying children under age 17 by $2,000 ▶ $ _____

Multiply the number of other dependents by $500 . . . . ▶ $ _____

Add the amounts above and enter the total here . . . . . . . . . . . . . . . . . **3** | $

---

**Step 4 (optional):**

**Other Adjustments**

**(a)** **Other income (not from jobs).** If you want tax withheld for other income you expect this year that won't have withholding, enter the amount of other income here. This may include interest, dividends, and retirement income . . . . . . . . . . . **4(a)** | $

**(b)** **Deductions.** If you expect to claim deductions other than the standard deduction and want to reduce your withholding, use the Deductions Worksheet on page 3 and enter the result here . . . . . . . . . . . . . . . . . . . . . **4(b)** | $

**(c)** **Extra withholding.** Enter any additional tax you want withheld each **pay period** . **4(c)** | $

---

**Step 5: Sign Here**

Under penalties of perjury, I declare that this certificate, to the best of my knowledge and belief, is true, correct, and complete.

▶

**Employee's signature** (This form is not valid unless you sign it.) _____    ▶ Date _____

---

**Employers Only**

| Employer's name and address | First date of employment | Employer identification number (EIN) |
|---|---|---|
| | | |

---

**For Privacy Act and Paperwork Reduction Act Notice, see page 3.**    Cat. No. 10220Q    Form **W-4** (2021)

# General Instructions

## Future Developments

For the latest information about developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

## Purpose of Form

Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. If too little is withheld, you will generally owe tax when you file your tax return and may owe a penalty. If too much is withheld, you will generally be due a refund. Complete a new Form W-4 when changes to your personal or financial situation would change the entries on the form. For more information on withholding and when you must furnish a new Form W-4, see Pub. 505, Tax Withholding and Estimated Tax.

**Exemption from withholding.** You may claim exemption from withholding for 2021 if you meet both of the following conditions: you had no federal income tax liability in 2020 **and** you expect to have no federal income tax liability in 2021. You had no federal income tax liability in 2020 if (1) your total tax on line 24 on your 2020 Form 1040 or 1040-SR is zero (or less than the sum of lines 27, 28, 29, and 30), or (2) you were not required to file a return because your income was below the filing threshold for your correct filing status. If you claim exemption, you will have no income tax withheld from your paycheck and may owe taxes and penalties when you file your 2021 tax return. To claim exemption from withholding, certify that you meet both of the conditions above by writing "Exempt" on Form W-4 in the space below Step 4(c). Then, complete Steps 1(a), 1(b), and 5. Do not complete any other steps. You will need to submit a new Form W-4 by February 15, 2022.

**Your privacy.** If you prefer to limit information provided in Steps 2 through 4, use the online estimator, which will also increase accuracy.

As an alternative to the estimator: if you have concerns with Step 2(c), you may choose Step 2(b); if you have concerns with Step 4(a), you may enter an additional amount you want withheld per pay period in Step 4(c). If this is the only job in your household, you may instead check the box in Step 2(c), which will increase your withholding and significantly reduce your paycheck (often by thousands of dollars over the year).

**When to use the estimator.** Consider using the estimator at *www.irs.gov/W4App* if you:

1. Expect to work only part of the year;

2. Have dividend or capital gain income, or are subject to additional taxes, such as Additional Medicare Tax;

3. Have self-employment income (see below); or

4. Prefer the most accurate withholding for multiple job situations.

**Self-employment.** Generally, you will owe both income and self-employment taxes on any self-employment income you receive separate from the wages you receive as an employee. If you want to pay these taxes through withholding from your wages, use the estimator at *www.irs.gov/W4App* to figure the amount to have withheld.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

# Specific Instructions

**Step 1(c).** Check your anticipated filing status. This will determine the standard deduction and tax rates used to compute your withholding.

**Step 2.** Use this step if you (1) have more than one job at the same time, or (2) are married filing jointly and you and your spouse both work.

Option **(a)** most accurately calculates the additional tax you need to have withheld, while option **(b)** does so with a little less accuracy.

If you (and your spouse) have a total of only two jobs, you may instead check the box in option **(c)**. The box must also be checked on the Form W-4 for the other job. If the box is checked, the standard deduction and tax brackets will be cut in half for each job to calculate withholding. This option is roughly accurate for jobs with similar pay; otherwise, more tax than necessary may be withheld, and this extra amount will be larger the greater the difference in pay is between the two jobs.

 **Multiple jobs.** *Complete Steps 3 through 4(b) on only one Form W-4. Withholding will be most accurate if you do this on the Form W-4 for the highest paying job.*

**Step 3.** This step provides instructions for determining the amount of the child tax credit and the credit for other dependents that you may be able to claim when you file your tax return. To qualify for the child tax credit, the child must be under age 17 as of December 31, must be your dependent who generally lives with you for more than half the year, and must have the required social security number. You may be able to claim a credit for other dependents for whom a child tax credit can't be claimed, such as an older child or a qualifying relative. For additional eligibility requirements for these credits, see Pub. 972, Child Tax Credit and Credit for Other Dependents. You can also include **other tax credits** in this step, such as education tax credits and the foreign tax credit. To do so, add an estimate of the amount for the year to your credits for dependents and enter the total amount in Step 3. Including these credits will increase your paycheck and reduce the amount of any refund you may receive when you file your tax return.

**Step 4 (optional).**

*Step 4(a).* Enter in this step the total of your other estimated income for the year, if any. You shouldn't include income from any jobs or self-employment. If you complete Step 4(a), you likely won't have to make estimated tax payments for that income. If you prefer to pay estimated tax rather than having tax on other income withheld from your paycheck, see Form 1040-ES, Estimated Tax for Individuals.

*Step 4(b).* Enter in this step the amount from the Deductions Worksheet, line 5, if you expect to claim deductions other than the basic standard deduction on your 2021 tax return and want to reduce your withholding to account for these deductions. This includes both itemized deductions and other deductions such as for student loan interest and IRAs.

*Step 4(c).* Enter in this step any additional tax you want withheld from your pay **each pay period**, including any amounts from the Multiple Jobs Worksheet, line 4. Entering an amount here will reduce your paycheck and will either increase your refund or reduce any amount of tax that you owe.

DBM - 2/24/2022

Form W-4 (2021)                                                                                          Page **3**

## Step 2(b)—Multiple Jobs Worksheet  *(Keep for your records.)*



If you choose the option in Step 2(b) on Form W-4, complete this worksheet (which calculates the total extra tax for all jobs) on **only ONE** Form W-4. Withholding will be most accurate if you complete the worksheet and enter the result on the Form W-4 for the highest paying job.

**Note:** If more than one job has annual wages of more than $120,000 or there are more than three jobs, see Pub. 505 for additional tables; or, you can use the online withholding estimator at *www.irs.gov/W4App*.

**1**  **Two jobs.** If you have two jobs or you're married filing jointly and you and your spouse each have one job, find the amount from the appropriate table on page 4. Using the "Higher Paying Job" row and the "Lower Paying Job" column, find the value at the intersection of the two household salaries and enter that value on line 1. Then, **skip** to line 3 . . . . . . . . . . . . . . . . . **1** $ _____

**2**  **Three jobs.** If you and/or your spouse have three jobs at the same time, complete lines 2a, 2b, and 2c below. Otherwise, skip to line 3.

    **a**  Find the amount from the appropriate table on page 4 using the annual wages from the highest paying job in the "Higher Paying Job" row and the annual wages for your next highest paying job in the "Lower Paying Job" column. Find the value at the intersection of the two household salaries and enter that value on line 2a . . . . . . . . . . . . . . . . . . **2a** $ _____

    **b**  Add the annual wages of the two highest paying jobs from line 2a together and use the total as the wages in the "Higher Paying Job" row and use the annual wages for your third job in the "Lower Paying Job" column to find the amount from the appropriate table on page 4 and enter this amount on line 2b . . . . . . . . . . . . . . . . . . . . . . . . **2b** $ _____

    **c**  Add the amounts from lines 2a and 2b and enter the result on line 2c . . . . . **2c** $ _____

**3**  Enter the number of pay periods per year for the highest paying job. For example, if that job pays weekly, enter 52; if it pays every other week, enter 26; if it pays monthly, enter 12, etc. . . . . **3** _____

**4**  **Divide** the annual amount on line 1 or line 2c by the number of pay periods on line 3. Enter this amount here and in **Step 4(c)** of Form W-4 for the highest paying job (along with any other additional amount you want withheld) . . . . . . . . . . . . . . . . . . . . **4** $ _____

## Step 4(b)—Deductions Worksheet  *(Keep for your records.)*

**1**  Enter an estimate of your 2021 itemized deductions (from Schedule A (Form 1040)). Such deductions may include qualifying home mortgage interest, charitable contributions, state and local taxes (up to $10,000), and medical expenses in excess of 10% of your income . . . . . . . . . **1** $ _____

**2**  Enter:  { • $25,100 if you're married filing jointly or qualifying widow(er)
             • $18,800 if you're head of household
             • $12,550 if you're single or married filing separately  } . . . . . **2** $ _____

**3**  If line 1 is greater than line 2, subtract line 2 from line 1 and enter the result here. If line 2 is greater than line 1, enter "-0-" . . . . . . . . . . . . . . . . . . . . . . **3** $ _____

**4**  Enter an estimate of your student loan interest, deductible IRA contributions, and certain other adjustments (from Part II of Schedule 1 (Form 1040)). See Pub. 505 for more information . . . . **4** $ _____

**5**  **Add** lines 3 and 4. Enter the result here and in **Step 4(b)** of Form W-4 . . . . . . . . **5** $ _____

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Internal Revenue Code sections 3402(f)(2) and 6109 and their regulations require you to provide this information; your employer uses it to determine your federal income tax withholding. Failure to provide a properly completed form will result in your being treated as a single person with no other entries on the form; providing fraudulent information may subject you to penalties. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation; to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws; and to the Department of Health and Human Services for use in the National Directory of New Hires. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.

### Married Filing Jointly or Qualifying Widow(er)

| Higher Paying Job Annual Taxable Wage & Salary | Lower Paying Job Annual Taxable Wage & Salary | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | $0 - 9,999 | $10,000 - 19,999 | $20,000 - 29,999 | $30,000 - 39,999 | $40,000 - 49,999 | $50,000 - 59,999 | $60,000 - 69,999 | $70,000 - 79,999 | $80,000 - 89,999 | $90,000 - 99,999 | $100,000 - 109,999 | $110,000 - 120,000 |
| $0 - 9,999 | $0 | $190 | $850 | $890 | $1,020 | $1,020 | $1,020 | $1,020 | $1,020 | $1,100 | $1,870 | $1,870 |
| $10,000 - 19,999 | 190 | 1,190 | 1,890 | 2,090 | 2,220 | 2,220 | 2,220 | 2,220 | 2,300 | 3,300 | 4,070 | 4,070 |
| $20,000 - 29,999 | 850 | 1,890 | 2,750 | 2,950 | 3,080 | 3,080 | 3,080 | 3,160 | 4,160 | 5,160 | 5,930 | 5,930 |
| $30,000 - 39,999 | 890 | 2,090 | 2,950 | 3,150 | 3,280 | 3,280 | 3,360 | 4,360 | 5,360 | 6,360 | 7,130 | 7,130 |
| $40,000 - 49,999 | 1,020 | 2,220 | 3,080 | 3,280 | 3,410 | 3,490 | 4,490 | 5,490 | 6,490 | 7,490 | 8,260 | 8,260 |
| $50,000 - 59,999 | 1,020 | 2,220 | 3,080 | 3,280 | 3,490 | 4,490 | 5,490 | 6,490 | 7,490 | 8,490 | 9,260 | 9,260 |
| $60,000 - 69,999 | 1,020 | 2,220 | 3,080 | 3,360 | 4,490 | 5,490 | 6,490 | 7,490 | 8,490 | 9,490 | 10,260 | 10,260 |
| $70,000 - 79,999 | 1,020 | 2,220 | 3,160 | 4,360 | 5,490 | 6,490 | 7,490 | 8,490 | 9,490 | 10,490 | 11,260 | 11,260 |
| $80,000 - 99,999 | 1,020 | 3,150 | 5,010 | 6,210 | 7,340 | 8,340 | 9,340 | 10,340 | 11,340 | 12,340 | 13,260 | 13,460 |
| $100,000 - 149,999 | 1,870 | 4,070 | 5,930 | 7,130 | 8,260 | 9,320 | 10,520 | 11,720 | 12,920 | 14,120 | 15,090 | 15,290 |
| $150,000 - 239,999 | 2,040 | 4,440 | 6,500 | 7,900 | 9,230 | 10,430 | 11,630 | 12,830 | 14,030 | 15,230 | 16,190 | 16,400 |
| $240,000 - 259,999 | 2,040 | 4,440 | 6,500 | 7,900 | 9,230 | 10,430 | 11,630 | 12,830 | 14,030 | 15,270 | 17,040 | 18,040 |
| $260,000 - 279,999 | 2,040 | 4,440 | 6,500 | 7,900 | 9,230 | 10,430 | 11,630 | 12,870 | 14,870 | 16,870 | 18,640 | 19,640 |
| $280,000 - 299,999 | 2,040 | 4,440 | 6,500 | 7,900 | 9,230 | 10,470 | 12,470 | 14,470 | 16,470 | 18,470 | 20,240 | 21,240 |
| $300,000 - 319,999 | 2,040 | 4,440 | 6,500 | 7,940 | 10,070 | 12,070 | 14,070 | 16,070 | 18,070 | 20,070 | 21,840 | 22,840 |
| $320,000 - 364,999 | 2,720 | 5,920 | 8,780 | 10,980 | 13,110 | 15,110 | 17,110 | 19,110 | 21,190 | 23,490 | 25,560 | 26,860 |
| $365,000 - 524,999 | 2,970 | 6,470 | 9,630 | 12,130 | 14,560 | 16,860 | 19,160 | 21,460 | 23,760 | 26,060 | 28,130 | 29,430 |
| $525,000 and over | 3,140 | 6,840 | 10,200 | 12,900 | 15,530 | 18,030 | 20,530 | 23,030 | 25,530 | 28,030 | 30,300 | 31,800 |

### Single or Married Filing Separately

| Higher Paying Job Annual Taxable Wage & Salary | Lower Paying Job Annual Taxable Wage & Salary | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | $0 - 9,999 | $10,000 - 19,999 | $20,000 - 29,999 | $30,000 - 39,999 | $40,000 - 49,999 | $50,000 - 59,999 | $60,000 - 69,999 | $70,000 - 79,999 | $80,000 - 89,999 | $90,000 - 99,999 | $100,000 - 109,999 | $110,000 - 120,000 |
| $0 - 9,999 | $440 | $940 | $1,020 | $1,020 | $1,410 | $1,870 | $1,870 | $1,870 | $1,870 | $2,030 | $2,040 | $2,040 |
| $10,000 - 19,999 | 940 | 1,540 | 1,620 | 2,020 | 3,020 | 3,470 | 3,470 | 3,470 | 3,640 | 3,840 | 3,840 | 3,840 |
| $20,000 - 29,999 | 1,020 | 1,620 | 2,100 | 3,100 | 4,100 | 4,550 | 4,550 | 4,720 | 4,920 | 5,120 | 5,120 | 5,120 |
| $30,000 - 39,999 | 1,020 | 2,020 | 3,100 | 4,100 | 5,100 | 5,550 | 5,720 | 5,920 | 6,120 | 6,320 | 6,320 | 6,320 |
| $40,000 - 59,999 | 1,870 | 3,470 | 4,550 | 5,550 | 6,690 | 7,340 | 7,540 | 7,740 | 7,940 | 8,140 | 8,150 | 8,150 |
| $60,000 - 79,999 | 1,870 | 3,470 | 4,690 | 5,890 | 7,090 | 7,740 | 7,940 | 8,140 | 8,340 | 8,540 | 9,190 | 9,990 |
| $80,000 - 99,999 | 2,000 | 3,810 | 5,090 | 6,290 | 7,490 | 8,140 | 8,340 | 8,540 | 9,390 | 10,390 | 11,190 | 11,990 |
| $100,000 - 124,999 | 2,040 | 3,840 | 5,120 | 6,320 | 7,520 | 8,360 | 9,360 | 10,360 | 11,360 | 12,360 | 13,410 | 14,510 |
| $125,000 - 149,999 | 2,040 | 3,840 | 5,120 | 6,910 | 8,910 | 10,360 | 11,360 | 12,450 | 13,750 | 15,050 | 16,160 | 17,260 |
| $150,000 - 174,999 | 2,220 | 4,830 | 6,910 | 8,910 | 10,910 | 12,600 | 13,900 | 15,200 | 16,500 | 17,800 | 18,910 | 20,010 |
| $175,000 - 199,999 | 2,720 | 5,320 | 7,490 | 9,790 | 12,090 | 13,850 | 15,150 | 16,450 | 17,750 | 19,050 | 20,150 | 21,250 |
| $200,000 - 249,999 | 2,970 | 5,880 | 8,260 | 10,560 | 12,860 | 14,620 | 15,920 | 17,220 | 18,520 | 19,820 | 20,930 | 22,030 |
| $250,000 - 399,999 | 2,970 | 5,880 | 8,260 | 10,560 | 12,860 | 14,620 | 15,920 | 17,220 | 18,520 | 19,820 | 22,030 | 22,030 |
| $400,000 - 449,999 | 2,970 | 5,880 | 8,260 | 10,560 | 12,860 | 14,620 | 15,920 | 17,220 | 18,520 | 19,910 | 21,220 | 22,520 |
| $450,000 and over | 3,140 | 6,250 | 8,830 | 11,330 | 13,830 | 15,790 | 17,290 | 18,790 | 20,290 | 21,790 | 23,100 | 24,400 |

### Head of Household

| Higher Paying Job Annual Taxable Wage & Salary | Lower Paying Job Annual Taxable Wage & Salary | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | $0 - 9,999 | $10,000 - 19,999 | $20,000 - 29,999 | $30,000 - 39,999 | $40,000 - 49,999 | $50,000 - 59,999 | $60,000 - 69,999 | $70,000 - 79,999 | $80,000 - 89,999 | $90,000 - 99,999 | $100,000 - 109,999 | $110,000 - 120,000 |
| $0 - 9,999 | $0 | $820 | $930 | $1,020 | $1,020 | $1,020 | $1,420 | $1,870 | $1,870 | $1,910 | $2,040 | $2,040 |
| $10,000 - 19,999 | 820 | 1,900 | 2,130 | 2,220 | 2,220 | 2,620 | 3,620 | 4,070 | 4,110 | 4,310 | 4,440 | 4,440 |
| $20,000 - 29,999 | 930 | 2,130 | 2,360 | 2,450 | 2,850 | 3,850 | 4,850 | 5,340 | 5,540 | 5,740 | 5,870 | 5,870 |
| $30,000 - 39,999 | 1,020 | 2,220 | 2,450 | 2,940 | 3,940 | 4,940 | 5,980 | 6,630 | 6,830 | 7,030 | 7,160 | 7,160 |
| $40,000 - 59,999 | 1,020 | 2,470 | 3,700 | 4,790 | 5,800 | 7,000 | 8,200 | 8,850 | 9,050 | 9,250 | 9,380 | 9,380 |
| $60,000 - 79,999 | 1,870 | 4,070 | 5,310 | 6,600 | 7,800 | 9,000 | 10,200 | 10,850 | 11,050 | 11,250 | 11,520 | 12,320 |
| $80,000 - 99,999 | 1,880 | 4,280 | 5,710 | 7,000 | 8,200 | 9,400 | 10,600 | 11,250 | 11,590 | 12,590 | 13,520 | 14,320 |
| $100,000 - 124,999 | 2,040 | 4,440 | 5,870 | 7,160 | 8,360 | 9,560 | 11,240 | 12,690 | 13,690 | 14,690 | 15,670 | 16,770 |
| $125,000 - 149,999 | 2,040 | 4,440 | 5,870 | 7,240 | 9,240 | 11,240 | 13,240 | 14,690 | 15,890 | 17,190 | 18,420 | 19,520 |
| $150,000 - 174,999 | 2,040 | 4,920 | 7,150 | 9,240 | 11,240 | 13,290 | 15,590 | 17,340 | 18,640 | 19,940 | 21,170 | 22,270 |
| $175,000 - 199,999 | 2,720 | 5,920 | 8,150 | 10,440 | 12,740 | 15,040 | 17,340 | 19,090 | 20,390 | 21,690 | 22,920 | 24,020 |
| $200,000 - 249,999 | 2,970 | 6,470 | 9,000 | 11,390 | 13,690 | 15,990 | 18,290 | 20,040 | 21,340 | 22,640 | 23,880 | 24,980 |
| $250,000 - 349,999 | 2,970 | 6,470 | 9,000 | 11,390 | 13,690 | 15,990 | 18,290 | 20,040 | 21,340 | 22,640 | 23,880 | 24,980 |
| $350,000 - 449,999 | 2,970 | 6,470 | 9,000 | 11,390 | 13,690 | 15,990 | 18,290 | 20,040 | 21,340 | 22,640 | 23,900 | 25,200 |
| $450,000 and over | 3,140 | 6,840 | 9,570 | 12,160 | 14,660 | 17,160 | 19,660 | 21,610 | 23,110 | 24,610 | 26,050 | 27,350 |

DBM - 2/24/2022

# Direct Deposit Request

## What to submit

– Page 2, marked with the "Send This Page" label shown on the right



SEND THIS PAGE

## Ways to submit this application

| MAIL | FAX | EMAIL |
|---|---|---|
| NFL PLAYER BENEFITS OFFICE<br>200 SAINT PAUL ST STE 2420<br>BALTIMORE MD 21202-2008 | 410.783.0041 | benefits@nflpb.org |

DBM - 2/24/2022

Case 1:23-cv-00358-JRR    Document 69-24    Filed 06/27/23    Page 28 of 28

PRINT THIS PAGE

| **Payee's information** – All fields are required | |
|---|---|
| Name (first, middle, last) | Social Security Number |

| Bank Name | Account type: ☐ Checking  ☐ Savings |
|---|---|

| Bank Routing Number | Bank Account Number |
|---|---|

⚑ **This change will be applied to all of your active paying groups unless otherwise instructed.
If you want this change applied only to a specific benefit, please contact the NFL Player Benefits Office at 800.638.3186.**

## Acknowledgement and Agreement

I authorize and direct BNY Mellon to deposit future payments as they come due using electronic funds transfer to my account at the above noted financial institution.

I agree and acknowledge the following:

1. Any payments made after my death, or paid in error while alive, are trust funds to be held in trust, for the benefit of the Plan and must be returned to the Plan.

2. I must notify the NFL Player Benefits Office of any change in the above account information.

3. I may revoke or modify these instructions in writing at any time, to be effective upon receipt of the same by the NFL Player Benefits Office.

| Signature | Date completed |
|---|---|