**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-00358-JRR |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF
DEFENDANTS' JOINT RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. THE PLAN TERMS REQUIRED DENIAL OF PLAINTIFFS' BENEFITS CLAIMS ................................................................................................ 2

    A. Plaintiffs Concede the Plan Terms Preclude an Award of Benefits ...................... 2

    B. Plaintiffs' Procedural Challenges to the Plan's Review Process Fail to Plausibly Demonstrate an Abuse of Discretion ...................................................... 2

    C. The Complaint Does Not Plead Facts Sufficient to Establish Any Systemic Issue Affecting All Claims.............................................................................. 6

II. PLAINTIFFS' REPACKAGED BENEFIT CLAIMS MUST BE DISMISSED UNDER *KOROTYNSKA* ........................................................................................... 10

III. EVEN IF PERMITTED AS INDEPENDENT CLAIMS, PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO SUPPORT ANY SUPPOSED BREACH OF FIDUCIARY DUTY ............................................................................................ 13

    A. Plaintiffs' Failure to Satisfy Rule 9(b)'s Particularity Requirement Compels Dismissal of Counts III, IV, and V, with Prejudice.............................. 13

    B. Plaintiffs Do Not Plausibly Allege That Defendants Breached Their Duty of Loyalty by Making Misrepresentations in Violation of § 404 ........................ 13

        1. Defendants Made No Misrepresentations ................................................. 14

        2. Plaintiffs Do Not Plausibly Allege That Defendants' Statements Were Material or Detrimentally Relied On ................................................ 16

        3. Plaintiffs Fail to Explain How Defendants' Actions Benefited Themselves or a Third Party ....................................................................... 17

    C. Plaintiffs' Claim That the SPD Violates § 102 Fails as a Matter of Law ............. 18

    D. Plaintiffs Do Not Plausibly State Claims for Fiduciary Breaches Based on the Alleged Failure to Review Records ................................................................ 19

    E. Plaintiffs Fail to State a Claim of Discriminatory Treatment Under ERISA ....... 20

    F. Plaintiffs Cannot Sustain Their Claim That Defendants Breached a Duty of Care with Respect to the Retention or Compensation of Neutral Physicians .......................................................................................................... 21

IV. PLAINTIFFS FAIL TO STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ...................................................................................................... 22

    A. Plaintiffs Effectively Concede They Make No Specific Allegations as to Any Individual Defendant.................................................................................... 22

i

**TABLE OF CONTENTS**
**(continued)**

                                                                        **Page**

B.    Plaintiffs' Derivative § 409(a) Claims Fail Because They Allege Neither
      Breach nor Harm................................................................................. 23

C.    Plaintiffs' Allegations Do Not Support Their Claims Against the
      Commissioner ..................................................................................... 25

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Acosta v. Chimes D.C., Inc.*,
2019 WL 931710 (D. Md. Feb. 26, 2019) ............................................................ 19

*Acosta v. WH Admr's, Inc.*,
449 F. Supp. 3d 506 (D. Md. 2020) ...................................................................... 24

*Adams v. Brink's Co.*,
261 F. App'x 583 (4th Cir. 2008) ........................................................................ 25

*Archer v. SunTrust Bank*,
2017 WL 6550390 (E.D. Va. Dec. 22, 2017) ...................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 8, 20

*Batten v. Aetna Life Ins. Co.*,
2016 WL 4435681 (E.D. Va. Aug. 17, 2016) ....................................................... 12

*Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.*,
93 F.3d 149 (4th Cir. 1996) .................................................................................. 8

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
201 F.3d 335 (4th Cir. 2000) ......................................................................... 5, 11

*Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
796 F. Supp. 2d 682 (D. Md. 2011) .......................................................... 8, 17, 22

*Boyd v. Coventry Health Care, Inc.*,
828 F. Supp. 2d 809 (D. Md. 2011) ..................................................................... 17

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019) .......................................................................... 18, 20

*Caplan v. CNA Fin. Corp.*,
544 F. Supp. 2d 984 (N.D. Cal. 2008) ................................................................... 8

*Champion v. Black & Decker, Inc.*,
550 F.3d 353 (4th Cir. 2008) ................................................................................. 8

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) ............................................................................... 23

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*,
2018 WL 4052182 (D. Md. Aug. 23, 2018) .......................................................... 12

*CIGNA Corp v. Amara*,
563 U.S. 421 (2011) ................................................................................... 4, 11, 17

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   381 F. Supp. 2d 452 (D. Md. 2005) ............................................. 22

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
   2015 WL 4394408 (D. Md. July 15, 2015).................................. 12

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
   102 F.3d 712 (4th Cir. 1996) ...................................................... 11

*Damiano v. Inst. for In Vitro Scis.*,
   294 F. Supp. 3d 439 (D. Md. 2018), *aff'd*, 799 F. App'x 186 (4th Cir. 2020)........................ 16

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
   931 F.3d 269 (4th Cir. 2019)...................................................... 23

*Demer v. IBM Corp. LTD Plan*,
   835 F.3d 893 (9th Cir. 2016) ....................................................... 8

*DiFelice v. U.S. Airways, Inc.*,
   397 F. Supp. 2d 758 (E.D. Va. 2005) ........................................ 17

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   487 F. Supp. 3d 807 (N.D. Cal. 2020), *aff'd and remanded on other grounds*,
   855 F. App'x 332 (9th Cir. 2021) ................................................ 9

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund*,
   609 F.3d 133 (2d Cir. 2010)........................................................ 8

*Elliott v. Sara Lee Corp.*,
   190 F.3d 601 (4th Cir. 1999) ................................................... 3, 5

*England v. Marriott Int'l, Inc.*,
   764 F. Supp. 2d 761 (D. Md. 2011)........................................... 12

*Est. of Spinner v. Anthem Health Plans of Va., Inc.*,
   589 F. Supp. 2d 738 (W.D. Va. 2008), *aff'd*, 388 F. App'x 275 (4th Cir. 2010)................... 25

*Evans v. Eaton Corp. Long Term Disability Plan*,
   514 F.3d 315 (4th Cir. 2008) ................................................... 2, 3

*Fayetteville Invs. v. Com. Builders, Inc.*,
   936 F.2d 1462 (4th Cir. 1991) .................................................... 4

*Frankenstein v. Host Int'l, Inc.*,
   2021 WL 826378 (D. Md. Mar. 4, 2021)................................ 12, 20

*Frommert v. Conkright*,
   738 F.3d 522 (2d Cir. 2013)...................................................... 19

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Gardner v. TIMCO Aviation Servs., Inc.*,
2010 WL 3282662 (M.D.N.C. Aug. 19, 2010)...................................................... 13

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
925 F. Supp. 2d 700 (D. Md. 2012)............................................................. 8, 22

*Gimeno v. NCHMD, Inc.*,
2021 WL 616710 (S.D. Fla. Feb. 17, 2021) ........................................................ 4

*Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*,
505 F. Supp. 3d 594 (E.D.N.C. 2020).......................................................... 12

*Guardian Life Ins. Co. of Am. v. Reinaman*,
2011 WL 2133703 (D. Md. May 26, 2011).................................................... 12

*Haley v. Corcoran*,
659 F. Supp. 2d 714 (D. Md. 2009) ............................................................ 13

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ..................................................................... 6

*Hayes v. Prudential Ins. Co. of Am.*,
60 F.4th 848 (4th Cir. 2023) ..................................................................... 5

*Hertz v. Hartford Life & Acc. Ins. Co.*,
991 F. Supp. 2d 1121 (D. Nev. 2014).......................................................... 8, 16

*Hudson v. Nat'l Football League Mgmt. Council*,
2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019)................................................ 19

*In re Constellation Energy Grp., Inc.*,
738 F. Supp. 2d 602 (D. Md. 2010) ............................................................ 16

*Jenkins v. Int'l Ass'n of Bridge*,
2015 WL 1291883 (E.D. Va. Mar. 20, 2015).................................................. 22

*Juric v. USALCO, LLC*,
2023 WL 2332352 (D. Md. Mar. 2, 2023)............................................. 13, 16, 21

*Kasko v. Aetna Life Ins. Co.*,
33 F. Supp. 3d 782 (E.D. Ky. 2014) ............................................................ 8

*Keir v. UnumProvident Corp.*,
2003 WL 2004422 (S.D.N.Y. Apr. 29, 2003).................................................. 21

*Kendall v. Pharm. Prod. Dev., LLC*,
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021)................................................. 18

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Korotynska v. Metro. Life Ins. Co.*,
474 F.3d 101 (4th Cir. 2006) ............................................... 10

*L.L. v. Medcost Benefit Servs.*,
2023 WL 4375663 (W.D.N.C. July 5, 2023) ......................... 11

*Leach v. Aetna Life Ins. Co.*,
2014 WL 470064 (D. Md. Feb. 5, 2014) ............................... 12

*Malinowski v. Lichter Grp., LLC*,
2015 WL 857511 (D. Md. Feb. 26, 2015) ............................... 4

*Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*,
832 F. App'x 586 (11th Cir. 2020) ....................................... 15

*Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*,
2022 WL 4368152 (D. Md. Sept. 21, 2022) ......................... 21

*Palmer v. Prudential Ins. Co. of Am.*,
215 F.3d 1320, 2000 WL 655944 (4th Cir. 2000) ................... 5

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021)........................................... 23, 24

*Rose v. PSA Airlines, Inc.*,
-- F.4th --, 2023 WL 5839282 (4th Cir. Sept. 12, 2023)............ 2, 4, 11

*Shea v. Esensten*,
107 F.3d 625 (8th Cir. 1997) ............................................. 16

*Sloan v. Life Ins. Co. of N. Am.*,
2019 WL 6173410 (D. Md. Nov. 20, 2019) ......................... 12

*State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*,
2018 WL 6514797 (D. Md. Dec. 11, 2018)............................. 7

*Turner v. Ret. & Benefit Plans Comm. Robert Bosch Corp.*,
585 F. Supp. 2d 692 (D.S.C. 2007)....................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)........................................................... 7

*United States ex rel. Ahumada v. NISH*,
756 F.3d 268 (4th Cir. 2014) ............................................. 13

*United States ex rel. Taylor v. Boyko*,
39 F.4th 177 (4th Cir. 2022) ........................................... 8, 21

**TABLE OF AUTHORITIES**
**(continued)**

Page

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) .......................................................................................... 3

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ............................................................................... passim

*Watson UnumProvident Corp.*,
    185 F. Supp. 2d 579 (D. Md. 2002) .............................................................. 15

*Williams v. Metro. Life Ins. Co.*,
    609 F.3d 622 (4th Cir. 2010) .......................................................................... 9

*Wilson v. UnitedHealthcare Ins. Co.*,
    27 F.4th 228 (4th Cir. 2022) ........................................................................... 2

*Zachair, Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) ................................ 20

**STATUTES**

29 U.S.C. § 1022 .............................................................................................. 18

29 U.S.C. § 1132(a)(1)(B) ................................................................................. 2

29 U.S.C. § 1140 .............................................................................................. 20

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................. passim

**REGULATIONS**

29 C.F.R. § 2520.102-3(j) ................................................................................. 18

29 C.F.R. § 2520.102-3(s) ................................................................................ 19

29 C.F.R. § 2560.503-1(1)(2)(i) ....................................................................... 21

29 C.F.R. § 2560.503-1(j)(6) ........................................................................... 15

Plaintiffs' Opposition confirms that they are not entitled to benefits under the plain terms of the Plan. Plaintiffs make several key concessions, including that they have not satisfied the Plan's Neutral Rule as they must to receive benefits under the Plan. Plaintiffs restate their isolated challenges to certain Neutral Physician reports, but the relevant question is whether the Board abused its discretion in deciding that the full record before it on each claim was adequate to make a determination. Plaintiffs' scattershot and conclusory challenges to certain Neutral Physician reports do not raise a plausible inference that the Board abused its discretion in proceeding to determine any of the claims. Nor could any of the facts that Plaintiffs allege concerning the review process have changed the outcomes of any of their claims.

Plaintiffs also do not dispute that their remaining claims, including their systemic attacks on the claim-determination process as a whole, are all subject to Federal Rule of Civil Procedure 9(b)'s particularity requirement, which the Complaint plainly does not satisfy. Plaintiffs further concede that their statistics-based systemic challenge to the Neutral Physicians requires a "representative sample," but the Opposition does not refute Defendants' showing that Plaintiffs' so-called "sample" of 784 claims is unrepresentative and meaningless. These concessions doom Plaintiffs' denial-of-benefits claims.

Finally, Plaintiffs do nothing to advance their various fiduciary-breach claims, which are required to be brought as part of their benefit claims, fail to satisfy Rule 9(b), and are otherwise without merit. Plaintiffs similarly make no arguments that could save their improper claims against the individual Trustees or the Commissioner. The Complaint should accordingly be dismissed in its entirety.

## I.      THE PLAN TERMS REQUIRED DENIAL OF PLAINTIFFS' BENEFITS CLAIMS

### A.      Plaintiffs Concede the Plan Terms Preclude an Award of Benefits

ERISA permits plan participants to recover only benefits that are due to them "under the terms of [their] plan."  Mot. at 14 (quoting 29 U.S.C. § 1132(a)(1)(B)); *see also Rose v. PSA Airlines, Inc.*, -- F.4th --, 2023 WL 5839282, at *3 (4th Cir. Sept. 12, 2023) (affirming dismissal of claim for benefits under Rule 12(b)(6) because "§ 502(a)(1)(B) [] requires us to enforce the Plan's terms *as written*").  Here, the Plan's Neutral Rule requires at least one "Neutral Physician" to conclude that the player meets the relevant disability criteria "regardless of any other fact(s), statement(s), or determination(s), by any other person or entity contained in the administrative record."  DPD §§ 3.1(d) (T&P), 5.1(c) (LOD), 6.1(e) (NC), 12.3.  Plaintiffs acknowledge this threshold requirement, Opp'n at 2–3, and do not contend that any of them have met it.  *Id.* at 8–19.  As Plaintiffs recognize, "to ignore the plain language of the plan" would "constitute[] an abuse of discretion."  *Id.* at 20–21.  Plaintiffs accordingly have not plausibly alleged that any of them are entitled to an award of benefits.

### B.      Plaintiffs' Procedural Challenges to the Plan's Review Process Fail to Plausibly Demonstrate an Abuse of Discretion

Plaintiffs concede, as they must, that all of the Board's decisions must be reviewed for abuse of discretion, a "deferential" standard that does not permit the Court to "second guess" the Board's determination.  *See Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 240 (4th Cir. 2022); *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008); Opp'n at 20–21.  Plaintiffs contend that they have "plead[ed] an abuse of the Board's discretion on their applications and hence a cognizable 502(a)(1)(B) claim."  Opp'n at 21.  They have not. The only relevant discretionary decision the Board made on any of these applications was whether the record, as a whole, was adequate to proceed to determine the claim.  And Plaintiffs'

scattershot challenges to the Board's process for reviewing the claims, including largely

conclusory allegations that some of the Neutral Physicians conducted inadequate examinations,

do not create a plausible inference that the Board abused its discretion in proceeding to

determine any of the claims.  *See* Mot. at 17–23.  Because none of the facts alleged plausibly

demonstrate an abuse of discretion, or that the outcomes of any of the claims could have been

different under the plain language of the Plan, the claims must be dismissed.[1]

Plaintiffs' primary argument that some of the records were inadequate to determine the

claims hinges on a misrepresentation of Plan terms.  In particular, Plaintiffs contend that the Plan

requires Neutral Physicians to conduct a "complete" report on the player's "overall" condition.

*See, e.g.*, Opp'n at 3, 6, 9, 13, 16, 23; AC ¶ 113.  However, the Plan's actual requirement, which

must be enforced as written, is for Neutral Physicians to provide reports "as necessary for the . . .

Board or . . . Committee to make an adequate determination."  DPD § 12.3(b).  The Plan's focus

is thus on the adequacy of the record before the Board, not on whether any particular Neutral

Physician's examination is "complete."  Plaintiffs similarly claim that a Medical Advisory

Physician must provide a "complete" report.  Opp'n at 5.  But the Plan expressly limits their

review to "those medical issues submitted by the . . . Board."  DPD § 12.2(b).[2]

Plaintiffs' arguments ignore these Plan terms, and instead ask the Court to accept their

rewriting of the Plan.  The law is clear that Plaintiffs cannot add to or change the terms of the

---

[1] For this reason, any attempt by Plaintiffs to seek a "reopening" or "remand" of their claims, AC ¶ 377; Opp'n at 53, would be improper.  In theory, if a participant could show that the full record on a particular claim were insufficient for the Board to adequately determine it, the affected participant could be entitled to a remand for further development of the claim record.  *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999).  But Plaintiffs have not plausibly made any such showing here.

[2] Plaintiffs argue that the Board acted inconsistently with the Plan's purpose and goal, Opp'n at 24–25, but ERISA's "principal function" is to "protect contractually defined benefits," *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–02 (2013), and administrators and courts must "balance[] the need to ensure that individual claimants get the benefits to which they are entitled with the need to protect employees and their beneficiaries as a group from a contraction in the total pool of benefits available."  *Evans*, 514 F.3d at 326.

Plan. *See CIGNA Corp v. Amara*, 563 U.S. 421, 436 (2011) ("The statutory language speaks of '*enforc*[*ing*]' the 'terms of the plan,' not of *changing* them"); *Rose*, 2023 WL 5839282, at *3. And the Court must credit and apply the actual language of the Plan, rather than Plaintiffs' inconsistent allegations to the contrary. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *Malinowski v. Lichter Grp., LLC*, 2015 WL 857511, at *5 (D. Md. Feb. 26, 2015); *Gimeno v. NCHMD, Inc.*, 2021 WL 616710, at *5 (S.D. Fla. Feb. 17, 2021) (crediting ERISA plan text "[d]espite [the plaintiff's] allegations to the contrary").

The Court's exclusive focus must thus be on the adequacy of the full record before the Board, not on whether any particular Neutral Physician's examination was "complete." By these (correct) standards, Plaintiffs' allegations fail. Perhaps because Plaintiffs improperly try to squeeze ten separate plaintiffs—challenging at least 20 applications, 12 appeals, and 60 Neutral Physician evaluations—into a single complaint, Plaintiffs never allege that the aggregate evidence before the Board was inadequate with respect to any particular Plaintiff's claim.[3] Indeed, Plaintiffs do not challenge any of the multiple Neutral Physicians not identified in the Complaint who independently found that each player did not meet the relevant disability criteria. *See* Mot. at 10–13.

But even if the Board had relied exclusively on the specific set of Neutral Physician examinations that Plaintiffs criticize—it did not—the particular criticisms Plaintiffs raise are insufficient to support a plausible inference that the Board abused its discretion in proceeding to determine any of the claims. Most of the criticisms are vague or entirely conclusory and therefore cannot state a plausible claim. *See, e.g.*, Opp'n at 8 (citing AC ¶¶ 261 (alleging that Dr. Azhar's reports contained "inconsistencies with the objective evidence," but offering no

---

[3] As Defendants indicated in their opening brief, Mot. at 25 n.14, they have not moved for severance of Plaintiffs' various benefit claims at this time because each claim should be dismissed on the pleadings. Should any of the benefit claims survive the motion to dismiss, however, Defendants intend to challenge the inappropriate joinder. *Id.*

explanation or elaboration)), 9 (citing AC ¶ 203 (alleging Dr. Murray awarded Mr. Loper only six of the ten points needed to qualify for benefits, but not alleging why that was incorrect)), 43 n.35 (citing AC ¶ 259 (alleging that Dr. Hoyle "applied an incorrect standard for NC eligibility" but not explaining what standard he applied or why it was wrong)).  Plaintiffs criticize some other Neutral Physician examinations for failing to consider the "cumulative impact" of a player's alleged impairments, *id.* at 10–15 (Mr. McGahee, Mr. McKenzie, Mr. Olawale, Mr. Smith), but there is no requirement in the Plan or in the law that a Neutral Physician consider claimed additional impairments outside of the physician's area of expertise.  *See, e.g.*, *Turner v. Ret. & Benefit Plans Comm. Robert Bosch Corp.*, 585 F. Supp. 2d 692, 704 (D.S.C. 2007) ("The law . . . does not require the physicians themselves to consider all of an insured's conditions if they are not qualified to do so. . . .").  Indeed, physician specialization is one reason the Plan frequently offers claimants multiple Neutral Physician examinations, all of which are then furnished to the Board for its joint consideration. Mot. at 7.  And as a matter of law, "it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented," *see Elliott*, 190 F.3d at 606; *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 345 (4th Cir. 2000), or where there is merely a "difference of opinion between two physicians."  *Palmer v. Prudential Ins. Co. of Am.*, 215 F.3d 1320, 2000 WL 655944, at *2 (4th Cir. 2000) (table).

Because none of the Plaintiffs has plausibly alleged that the Board abused its discretion by proceeding to determine their claims—which the Neutral Rule then required the Board to deny—each of their claims for benefits must be dismissed in in its entirety.[4]

---

[4] Plaintiffs claim they are entitled to equitable tolling, Opp'n at 48–49, but the Fourth Circuit is "'unwilling to apply equitable tolling principles that would, in practice, rewrite the' plan," *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 853 (4th Cir. 2023), and Plaintiffs do not allege that they were diligent in pursuing their claims but were "prevented from filing suit [within the specified period] by extraordinary circumstances." *Id.*

**C.**     <u>The Complaint Does Not Plead Facts Sufficient to Establish Any Systemic Issue Affecting All Claims</u>

Recognizing that their benefit claims cannot survive under the plain terms of the Plan, Plaintiffs resort to broadly attacking Neutral Physician examinations as systemically biased and flawed, and Board reviews of claim records as incomplete. Plaintiffs concede that these systemic allegations sound in fraud and are therefore subject to Rule 9(b)'s particularity standard. Opp'n at 29, 40–43. But Plaintiffs do not identify what the practices were by which the scheme was allegedly implemented, when they were created, how or why they were maintained, or how they were communicated to Neutral Physicians. Mot. at 22–23. Their own cases confirm that a claim "utterly fails Rule 9(b)'s demand for particularity" absent such details. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999). And it is implausible that dozens of physicians jettisoned their professional, contractual, and ethical responsibilities based on pure speculation that it would help them get more business. Mot. at 22.

Plaintiffs ignore the numerous cases cited by Defendants where courts—including many in this Circuit—have found that the Board did not abuse its discretion in denying benefits. *See id.* at 17. The implausibility of their systemic claims must also be assessed against the backdrop of the hundreds of millions of dollars the Plan pays out annually to former players like them.[5]

Neither Plaintiffs' selective criticisms of a few specific Neutral Physicians, nor their purported "statistical sample," warrant a plausible inference of systemic bias. Plaintiffs concede that Neutral Physicians are paid a flat fee for evaluations regardless of whether the outcome is favorable or unfavorable to them, Opp'n at 6, 30, 55, and do not contend physicians are paid for

---

[5] Plaintiffs contend the benefit award figures "deceptively encompass many Players who receive T&P benefits by virtue of Social Security disability entitlement without the need for a 'Neutral Physician' evaluation." Opp'n at 32–33 n.29. Plaintiffs' concession that the Plan honors Social Security disability determinations further underscores the absurdity of their argument that Defendants engaged in "wholesale rigging of the claims process." *See id.* at 47. If, as Plaintiffs claim, it was Defendants' intent to systemically deny meritorious claims, they would not allow players to qualify for benefits based upon determinations by a government agency wholly outside their control.

providing reports that disfavor an award of benefits. Plaintiffs' bias allegations thus have collapsed from a "pay-to-play" scheme to a claim that Neutral Physicians who are paid above a certain amount must be inherently biased. *See id.* at 30, 32, 47–48. But (1) the Opposition makes no effort to rehabilitate obvious flaws in the "statistical sample" that purports to support this scheme; (2) the law does not support the proposition that physicians paid above a certain amount are inherently biased absent additional facts not pleaded here; and (3) the Complaint's allegations of compensation-driven bias do not even apply to most evaluating physicians.

*First*, Plaintiffs rely entirely on their "sample" as the factual basis for their assertion that physicians paid more than $86,000 per year are inherently biased, *id.* at 6–19, 24, but they make no effort to redeem their sample in the face of the numerous problems that render it meaningless. *See* Mot. at 18–23; *State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, 2018 WL 6514797, at *3 (D. Md. Dec. 11, 2018) (rejecting statistics-based fraud claims under Rule 9(b) because the statistics lacked "require[d] context"). Plaintiffs admit that a "representative" sample is necessary for plausibility, Opp'n at 31 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) ("[i]n many cases, a *representative* sample is the only practicable means to collect and present relevant data establishing a defendant's liability" (emphasis added))), yet they do not offer any basis from which the Court could plausibly conclude their sample of T&P evaluations is representative of all evaluations. They claim to provide "detailed and contextualized statistics," *id.* at 32, but they do not offer any information about how the sample was constructed, including the criteria they used to select some claim determinations and exclude thousands of others. Mot. at 20.[6] As a result, Plaintiffs' figures, even accepted as true, do not

___

[6] Plaintiffs highlight their allegations about Dr. Macciocchi, Opp'n at 32, which demonstrate the Complaint's failure to plead facts establishing statistical plausibility. Plaintiffs plead Dr. Macciocchi's compensation since 2012, but the sample of 784 total claims apparently only includes some of his evaluations since March 31, 2015. *Id.* at 31 (citing AC ¶¶ 127–34). And their allegation that Dr. Macciocchi has conducted 14 T&P evaluations, *id.* at 32 (citing AC

satisfy Rule 9(b) or permit the inferences their claims depend on. *See United States ex rel.*

*Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to relief.'").

      ***Second***, Plaintiffs offer no plausible basis for their contention that a physician's annual

aggregate compensation, without more, establishes bias or a financial conflict. *See* Opp'n at 42–

43 & nn.26–27. To the contrary, as this Court has already recognized, "the Board's reliance on

independent physicians in making benefit determinations . . . drastically diminishes" any

concerns regarding a conflict of interest. *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,

925 F. Supp. 2d 700, 717 (D. Md. 2012) (quoting *Boyd v. Bert Bell/Pete Rozelle NFL Player Ret.*

*Plan*, 796 F. Supp. 2d 682, 690–91 n.2 (D. Md. 2011)).

      For this reason, the cases Plaintiffs rely on, most of which involved a structural conflict

where the same entity that funded the plan evaluated the claims, are inapposite. *See, e.g.*,

*Bedrick ex rel. Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996); *Caplan v.*

*CNA Fin. Corp.*, 544 F. Supp. 2d 984, 991–92 (N.D. Cal. 2008); *Hertz v. Hartford Life & Acc.*

*Ins. Co.*, 991 F. Supp. 2d 1121, 1133–34 (D. Nev. 2014); *Kasko v. Aetna Life Ins. Co.*, 33 F.

Supp. 3d 782, 786–87 (E.D. Ky. 2014); *compare Durakovic v. Bldg. Serv. 32 BJ Pension Fund*,

609 F.3d 133, 139 (2d Cir. 2010), *and Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 901 (9th

Cir. 2016),[7] *with Champion v. Black & Decker, Inc.*, 550 F.3d 353, 359 (4th Cir. 2008), *and*

---

¶ 128), is at best two T&P evaluations every year—hardly sufficient to draw any plausible inference. The sample of 784 also apparently includes Dr. William Garmoe, but Plaintiffs only allege "a sample of three Players whom [Dr. Garmoe] evaluated for T&P or LOD benefits." AC ¶ 157.

[7] The 2 to 1 panel decision in *Demer* inferred a financial conflict of interest where two reviewing physicians had each conducted 200 to 300 reviews per year for MetLife. *Demer*, 835 F.3d at 901. Plaintiffs allege nowhere near that number of annual reviews, which could be viewed as indicative of financial dependence, for any of the Neutral Physicians. *See, e.g.*, Opp'n at 6–8, 32; AC ¶¶ 139–44, 146 (alleging 784 T&P evaluations by 118 different Neutral Physicians over seven years, which is about *one* every year), 122 (alleging the 14 highest-paid neuropsychologists

*Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630–31 (4th Cir. 2010).  Here, by contrast, a Taft-Hartley Board comprised half of former players decides claims using evaluations conducted by Neutral Physicians who are paid a flat fee that does not vary based on outcome.  Indeed, two years after the *Dimry* decision that Plaintiffs rely on to suggest that the Plan's Neutral Physicians are "financially conflicted," *see* Opp'n at 30 n.26, the same court found it "difficult to discern why the physicians might infer that an opinion in favor of no disability would be more likely to lead to future retention."  *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020), *aff'd and remanded on other grounds*, 855 F. App'x 332 (9th Cir. 2021); Mot. at 20 n.11.

**Third**, Plaintiffs do not allege that many of the Neutral Physicians who evaluated them (e.g., Dr. George Diaz, who evaluated Mr. McGahee in 2021; Dr. Laura Lacritz, who evaluated Mr. McKenzie in 2022; or Dr. Moira Artigues, who evaluated Mr. Smith in 2019) were paid more than the Plaintiffs' proposed $86,000 compensation cap.  *See* AC ¶¶ 168, 187, 221.

**Finally**, Plaintiffs' contention that the Board systematically failed to review full claim records is based on May 2022 testimony concerning materials that a former Retirement Board member reviewed six years earlier in an unrelated reclassification appeal under the Retirement Plan.  *See* Opp'n at 24; Ex. Y at 9.  An appeal that was decided by a different board, under a different plan, over an unrelated issue, and before the advent of the Neutral Rule, cannot plausibly establish a systemic failure in the review of any of Plaintiffs' claims, especially in light of the numerous court decisions upholding the Board's disability claim determinations.  In addition, Plaintiffs do not point to anything in the records that allegedly was not reviewed that could have changed the determination of their claims under the Neutral Rule.  *See* Section I.A.

---

conducted 107 evaluations, which is roughly *one* each year), 124–25 (alleging 35 neuropsychologists conducted 199 evaluations, which is an average of *one* each year).

## II.    PLAINTIFFS' REPACKAGED BENEFIT CLAIMS MUST BE DISMISSED UNDER *KOROTYNSKA*

Plaintiffs purport to bring equitable claims under Counts II, III, and IV under § 502(a)(3), *see* Mot. at 25–28, but these are merely "repackaged" § 502(a)(1)(B) benefits claims and must be dismissed under *Korotynska v. Metropolitan Life Insurance Co.*, 474 F.3d 101, 102–06 (4th Cir. 2006) ("Because adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie."), and *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (§ 502(a)(3) is a "catchall" and "safety net" that is available only where "§ 502 does not elsewhere [supply an] adequately remedy").

Plaintiffs attempt to distinguish *Korotynska* by arguing that the plaintiff there did not allege "*any* injury, theory, fact, or remedy distinct or severable from the wrongful denial of benefits under the plan's terms, such as lies, dishonesty, [or] misinformation."  Opp'n at 45–48. In fact, MetLife's allegedly deficient procedures in *Korotynska* are virtually identical to those Plaintiffs allege here: (1) denying "claims that have self-reported symptoms, lack of objective medical findings . . . without due regard for the actual impact of the claimants' conditions"; (2) ignoring "subjective complaints," treating physicians' opinions, or cumulative effect of injuries; (3) "[f]ailing to consider . . . all comments, documents, records and other information"; (4) "[d]esigning a system in which claimants cannot receive a full and fair review of their claims, by virtue of its reliance upon Medical Examinations from Interested Physicians"; (5) using biased entities to perform medical reviews; and (6) "pressur[ing] claims handling personnel into denying or terminating legitimate claims."  Mot. at 26 (quoting *Korotynska*, 474 F.3d at 103–04). And just as Plaintiffs do here, the plaintiff in *Korotynska* sought under § 502(a)(3) to reform "the systemic improper and illegal claims handling practices" used to deny a "full and fair review" of claims, as well as other equitable relief.  *See Korotynska*, 474 F.3d at 104.

As Plaintiffs recognize, Opp'n at 21, *Booth* expressly permits courts to consider each of these concerns in the course of deciding § 502(a)(1)(B) claims by examining factors like "the adequacy of the materials considered," "the fiduciary's interpretation [of the plan]," "whether the decisionmaking process was reasoned and principled," and "any conflict of interest." *Booth*, 201 F.3d at 342–43. Because the Court may consider Plaintiffs' claims that the Board did not conduct a full and fair review or follow Plan procedures under § 502(a)(1)(B), Plaintiffs cannot simply recast these asserted failures as "misrepresentation" claims and seek equitable relief.

Plaintiffs also incorrectly argue that the Supreme Court's decision in *Amara* abrogated *Korotynska*. *See* Opp'n at 46–50. In *Amara*, the Court held that the plaintiffs did not have a benefits claim because § 502(a)(1)(B) did not provide the district court authority to first reform the plan and then "award[] 'benefits under the terms of the plan' as reformed," because that section speaks of enforcing a plan's terms, not changing them. *Amara*, 563 U.S. at 434–38. As the Fourth Circuit recently reaffirmed in *Rose*, *Amara* did not abrogate the bedrock principle that § 502(a)(3) cannot be used to seek relief that is already available under § 502(a)(1)(B). *Rose*, 2023 WL 5839282, at *3 n.4. Plaintiffs' focus on the equitable remedies they are seeking thus puts the cart before the horse. Simply *requesting* equitable relief is insufficient; Plaintiffs must plausibly establish that § 502(a)(1)(B) is inadequate and that the relief they request under § 502(a)(3) is appropriate and available. If merely *requesting* equitable relief were sufficient, *Coyne*'s worry that "*every* wrongful denial of benefits could be characterized as a breach of fiduciary duty," *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996), and *Varity*'s admonition about "repackage[d]" § 502(a)(3) claims, *Varity*, 516 U.S. at 513, would be meaningless. *See, e.g.*, *L.L. v. Medcost Benefit Servs.*, 2023 WL 4375663, at *4 (W.D.N.C. July 5, 2023) (alleged harm "under § 1132(a)(3) flow[ing] from the claims-

handling process, which . . . violated the [plan]" insufficient to justify § 502(a)(3) claim).

Numerous cases in this Circuit since *Amara* have explained that it "in no way undercuts *Korotynska*." *Greenwell v. Grp. Health Plan for Emps. of Sensus USA, Inc.*, 505 F. Supp. 3d 594, 607 (E.D.N.C. 2020); *see also, e.g.*, *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 2018 WL 4052182, at *12 (D. Md. Aug. 23, 2018) ("[I]t does not appear that *Amara* has abrogated the precedent set . . . by . . . *Varity*, and followed by . . . *Korotynska*." (citing *Leach v. Aetna Life Ins. Co.*, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) ("courts have consistently held that *Amara* and it's [sic] progeny did not alter . . . *Varity*")); *Batten v. Aetna Life Ins. Co.*, 2016 WL 4435681, at *4 (E.D. Va. Aug. 17, 2016) ("Nothing in *Amara* or *McCravy* alters the rule set forth in *Varity* (and applied in *Korotynska*)."); *Conn. Gen. Life Ins. Co. v. Adv. Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *28–30 (D. Md. July 15, 2015).

Plaintiffs' reliance on *Varity* and *Frankenstein*, Opp'n at 46 n.38, likewise is misplaced because the plaintiffs in those cases had no avenue for relief under § 502(a)(1)(B). *Varity*, 516 U.S. at 515; *Frankenstein v. Host Int'l, Inc.*, 2021 WL 826378, at *3 (D. Md. Mar. 4, 2021). And *England*, *Guardian*, and *Sloan*, Opp'n at 49–50, merely establish that simultaneous pleading of § 502(a)(1)(B) and § 502(a)(3) claims is not always impermissible; it depends on how distinct the plaintiff's theories, facts, and injuries are. In *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 776–80 (D. Md. 2011), the § 502(a)(3) claim was permitted because the plaintiffs alleged illegal plan terms and could not recover benefits without reformation of the plan. And in *Guardian Life Ins. Co. of Am. v. Reinaman*, 2011 WL 2133703, at *9 (D. Md. May 26, 2011), and *Sloan v. Life Ins. Co. of N. Am.*, 2019 WL 6173410, at *3–4 (D. Md. Nov. 20, 2019), the plaintiffs pleaded alternate theories based on the supposition that they were not participants or

beneficiaries in the plans, which precluded them from bringing § 502(a)(1)(B) claims.[8]  Here, by contrast, *Booth* permits review of each of Plaintiffs' process critiques through § 502(a)(1)(B).[9]

## III.    EVEN IF PERMITTED AS INDEPENDENT CLAIMS, PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO SUPPORT ANY SUPPOSED BREACH OF FIDUCIARY DUTY

### A.    Plaintiffs' Failure to Satisfy Rule 9(b)'s Particularity Requirement Compels Dismissal of Counts III, IV, and V, with Prejudice

Plaintiffs concede that Rule 9(b)'s particularity requirement applies to their various fiduciary breach allegations, which are grounded in an alleged "Plan-Wide Scheme to Defraud Players." Opp'n at 40–43.  As explained below, Plaintiffs' vague and undifferentiated fiduciary breach allegations cannot satisfy this standard as to any Defendant.  Mot. at 22; *see also United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014) ("undifferentiated allegations" against a group of defendants did not satisfy Rule 9(b)); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) ("When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud.").

### B.    Plaintiffs Do Not Plausibly Allege That Defendants Breached Their Duty of Loyalty by Making Misrepresentations in Violation of § 404

Plaintiffs' claims for breach of the fiduciary duty of loyalty boil down to three implausible contentions: (1) the use of the phrase "absolutely neutral" is misleading, even though

---

[8] Plaintiffs' attempts to distinguish Defendants' authorities are not credible.  *See* Opp'n at 51 n.43.  According to Plaintiffs, the plaintiff in *Archer v. SunTrust Bank*, 2017 WL 6550390, at *2 (E.D. Va. Dec. 22, 2017), "set forth no independent factual basis for her fiduciary duty claim," Opp'n at 51 n.43, but that makes *Archer* on point.  Plaintiffs argue *Juric v. USALCO, LLC*, 2023 WL 2332352 (D. Md. Mar. 2, 2023), was a "disjointed claim," Opp'n at 51 n.43, but, just like here, "Juric attempt[ed] to base his breach fiduciary duty claim on alleged misrepresentations . . . , [so] both his breach of fiduciary duty claim and his claim for benefits [sought] to remedy the same injury: the allegedly wrongful denial of benefits."  Plaintiffs claim that the plaintiffs in *Gardner v. TIMCO Aviation Servs., Inc.*, 2010 WL 3282662, at *2 (M.D.N.C. Aug. 19, 2010), "pleaded 502(a)(3) only as an 'and/or' jurisdictional basis," Opp'n at 51 n.43, but the court found § 502(a)(1)(B) was adequate in part because they provided insufficient support for their § 502(a)(3) claim.

[9] Unlike *Amara*, Plaintiffs are requesting that Neutral Physician examinations be required to conform to the Plan's and the SPD's promise of neutrality, *not* that the Plan or the SPD be rewritten or reformed to describe what they allege is the present reality of Neutral Physician bias.

the decision letters and Plan expressly defined what the phrase means; (2) Defendants'
statements that they reviewed records were misleading based on cherry-picked testimony in a
single unrelated case; and (3) Defendants misrepresented they would consider "the cumulative
impact of an impairment" without ever making any such statements. *See* Opp'n at 33–36, 37–40.
None of these allegations offers a plausible basis to infer Defendants "participate[d] knowingly
and significantly in deceiving a plan's beneficiaries in order to save the employer money at the
beneficiaries' expense." *See Varity*, 516 U.S. at 506; *see also* Mot. at 34–40. Accordingly,
Plaintiffs' breach-of-loyalty claims must be dismissed.

### 1.    Defendants Made No Misrepresentations

Plaintiffs first claim that Defendants breached their duty of loyalty by describing Neutral
Physicians as "absolutely neutral" in decision letters. Opp'n at 34. But Plaintiffs' Opposition
does not dispute that decision letters correspond to the Plan terms, stating that "the Plan's
physicians are absolutely neutral in this process *because they are jointly selected by the NFL
Players Association and the NFL Management Council*." *See* Ex. K at 3 (emphasis added); DPD
§ 12.3. Nor do Plaintiffs allege that Defendants stated in either the SPD or decision letters that
"Neutral Physicians" are anything other than as defined in the Plan, or that a "neutral exam"
meant something other than an exam by a Neutral Physician. *See* Mot. at 34–35, 45; *cf.* SPD at
7, 38, 39 (describing "neutral exams"). To the contrary, "Neutral Physician" is defined at least
three times in these documents precisely as it is in the Plan. SPD at 9, 23, 68.[10]

Plaintiffs' contention that Defendants breached their duty of loyalty by "falsely stating to
Players in decision letters that Defendants reviewed the entire file on their claims," Opp'n at 35–
36, fares no better. Plaintiffs principally rely on testimony from a single nine-year-old appeal

---

[10] Plaintiffs' argument that they were "misled" by the 2019 SPD because the term "Neutral Physician" was not
capitalized, Opp'n at 39, is equally baseless and belied by their own allegations in which they acknowledge that
"Neutral Physician" is a defined term of the Plan. *See, e.g.*, AC ¶¶ 45, 47.

under the Retirement Plan.  *See id.* at 24, 36; Mot. at 31; *supra* Section I.C.  And their allegations

that some decision letters did not address every bit of minutiae from Plaintiffs' medical history

are insufficient to state a claim.  *See* Mot. at 29–30; 29 C.F.R. § 2560.503-1(j)(6).  Moreover, the

only two cases that Plaintiffs cite in support of their attempt to bootstrap Defendants' supposed

misrepresentation concerning complete record reviews into a loyalty claim did not even involve

allegations of fiduciary breach, and only further highlight that such allegations—when properly

pleaded—are appropriately considered in the context of benefits claims under § 502(a)(1)(B).

*See Watson UnumProvident Corp.*, 185 F. Supp. 2d 579, 585 (D. Md. 2002) (analyzing record

review issue in the context of benefits claim under § 502(a)(1)(B)); *Mickell v. Bell/Pete Rozelle*

*NFL Players Ret. Plan*, 832 F. App'x 586, 593 (11th Cir. 2020) (same).

Finally, Plaintiffs' argument that Defendants misrepresented in the SPD that their practice

is to consider "the cumulative impact of the impairment," *see* Opp'n at 39–40, is demonstrably

false and insufficient to state a claim.  *See supra* Section I.B.3.  The term "cumulative impact"

does not even appear in the SPD.  The portions of the SPD that Plaintiffs cite state only that the

Committee and Board will take into account all available information and make their own

determination about benefits.  *See* AC ¶ 312; SPD at 9 ("This decision will be made by

reviewing your application, any supporting documents that you provide, Neutral Physician

report(s), and any records in your file."), 13, 40, 59 ("In making its decision on review, the

Disability Board will take into account all available information, regardless of whether it was

available or presented to the Disability Initial Claims Committee, and will afford no deference to

the determination made by the Disability Initial Claims Committee."); *see also* DPD § 13.14(a).

Plaintiffs' reliance on *Varity* in support of their misrepresentation claims is misplaced.

*See* Opp'n at 34.  The fiduciary in *Varity* made knowingly false representations to plan

participants in order to conceal the benefits consequences of participants transferring their employment to a different division of the company.  *See Varity*, 516 U.S. at 506 (finding breach of duty of loyalty where, in an effort to save money at the employees' expense, the plan administrator assured employees that transferring their employment and benefits to a new company would not undermine their benefits, despite knowing that the new company was insolvent).  Plaintiffs allege no similar intentional misconduct here.[11]  Because Plaintiffs fail to plausibly allege *any* misrepresentations, their duty-of-loyalty claims must be dismissed.  *See Juric*, 2023 WL 2332352, at *6–7 (granting motion to dismiss breach of fiduciary-duty claim where "it is not clear what the alleged misrepresentations were"); *In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (granting motion to dismiss breach-of-fiduciary-duty claims based on misrepresentation where plaintiff failed "to allege what specific information the defendants should have disclosed further"); Mot. at 34–40.

### 2. Plaintiffs Do Not Plausibly Allege That Defendants' Statements Were Material or Detrimentally Relied On

Even assuming any of the above statements were inaccurate—they were not—Plaintiffs offer no plausible basis to find that the statements are material or that they relied on them to their detriment.  *See* Opp'n at 38–39; *Juric*, 2023 WL 2332352, at *6; *see also Damiano v. Inst. for In Vitro Scis.*, 294 F. Supp. 3d 439, 445 (D. Md. 2018), *aff'd*, 799 F. App'x 186 (4th Cir. 2020) (detrimental reliance requires "show[ing] that plaintiff acted or failed to act in reliance on the misrepresentation, and plaintiff's action or inaction proximately caused losses or other tangible injuries").  Plaintiffs assert only that it was "important" to know they were not truly getting a

---

[11] Plaintiffs also cite without explanation two out-of-circuit cases: *Hertz*, 991 F. Supp. 2d at 1136, and *Shea v. Esensten*, 107 F.3d 625, 629 (8th Cir. 1997).  But the issue in *Hertz* was whether the participant was entitled to *benefits*—not whether a fiduciary duty was breached—and *Shea* concluded only that a plan had a fiduciary duty to disclose known financial incentives for physicians to recommend against seeking specialist treatment.  *Shea*, 107 F.3d at 628–29.  Here, as Plaintiffs concede, the Plan expressly lays out the compensation structure for its Neutral Physicians.  AC ¶ 49; DPD § 12.3(a).

"neutral exam," and that the materiality of the information is demonstrated by their allegation that at some point, Plaintiffs' counsel requested information about the Neutral Physicians. *See* Opp'n at 38. They fail to explain, however, how any of the statements alleged would "mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which [he] may be entitled." *See DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 770 n.12 (E.D. Va. 2005).[12] Indeed, Plaintiffs nowhere allege that they failed to pursue any benefits to which they were entitled. To the contrary, as the Complaint shows, each of them made a claim for benefits that they allege was wrongfully denied.

Nor do Plaintiffs offer any plausible reason for how these statements caused loss or other tangible injuries to their detriment beyond recycling the allegations from the Complaint, which, as Defendants have explained, are insufficient to state a claim. *See* Mot. at 36–37. Instead, Plaintiffs contend that a showing of "[d]etrimental reliance is not required for all ERISA § 502(a)(3) equitable remedies based on a misrepresentation." Opp'n at 38. But here, Plaintiffs seek to enjoin Defendants from the alleged representations, AC ¶¶ 368–69, and "when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made." *Amara*, 563 U.S. at 443.[13]

### 3. Plaintiffs Fail to Explain How Defendants' Actions Benefited Themselves or a Third Party

Finally, Plaintiffs do not provide any meaningful response to Defendants' argument that

---

[12] Plaintiffs suggest that Defendants acknowledged that the term "absolutely neutral" was a material misrepresentation, but Defendants have not. Defendants used Plaintiffs' allegations to show that they have not demonstrated materiality or detrimental reliance. *See* Mot. at 36.

[13] For this reason, *Boyd v. Coventry Health Care, Inc.*, 828 F. Supp. 2d 809 (D. Md. 2011), is inapposite. In *Boyd*, the court acknowledged "that reliance is an element of an ERISA misrepresentation claim" but ultimately concluded, consistent with *Amara*, that detrimental reliance was not essential for all forms of equitable relief (such as surcharge and reformation). *See id.* at 821. Here, Plaintiffs have not demonstrated any harm that warrants a surcharge, or alleged how the SPD could be reformed (as it is accurate). *See id.* Plaintiffs cannot simply request equitable relief to which they are not entitled in order to bypass the requirement to show detrimental reliance.

they have not alleged that any Defendant "acted with the purpose of benefiting itself or a third party." *See* Mot. at 39.  Plaintiffs contend they only need to allege that the asserted misrepresentations were not "solely in the interest of the plan participants."  Opp'n at 37.  That is incorrect; the only case Plaintiffs cite in support of this argument involved an alleged breach of the duty of care, not the duty of loyalty. *See id.* (citing *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019)).

In any event, Plaintiffs' allegation that the NFL "conceal[ed] the impact of neurocognitive impairments from football activities" certainly does not "establish that Defendants acted for the purpose of benefitting themselves" as Plaintiffs contend. *See id.* (quoting AC ¶ 340).  Putting aside that the NFL is not even a party, Plaintiffs fail to explain how the alleged misrepresentations concerning Neutral Physicians and records review would conceal the impacts of neurocognitive impairments—an issue that has nothing to do with this case.  Because Plaintiffs fail to allege how the supposed misrepresentations benefited Defendants or a third party, their claims fail. *See Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021) (dismissing breach-of-loyalty claim where plaintiffs failed to allege that the committee acted in the interest of anybody other than the participants).

### C.    Plaintiffs' Claim That the SPD Violates § 102 Fails as a Matter of Law

Plaintiffs' Opposition also fails to provide support for their claim that the SPDs separately violate § 102.  As Defendants have explained, *see* Mot. at 37–38, § 102 establishes specific requirements for SPDs, including, as relevant here, a statement of the requirements for participating and receiving benefits. *See* 29 U.S.C. § 1022; 29 C.F.R. § 2520.102-3(j).  Plaintiffs concede the SPD clearly sets out the eligibility requirements, including that a Neutral Physician must find that a player meets the relevant disability standard. *See, e.g.*, AC ¶¶ 71, 76, 80; SPD at 9.  Nor do they dispute that the SPD sets out the claims procedures, including that the Board will

consider the available information and make its own determination about benefits.  *See* AC ¶ 312; SPD at 9, 13, 40, 59; *see also* 29 C.F.R. § 2520.102-3(s).  Instead, without any authority, Plaintiffs recycle their § 404 claims, arguing that the alleged misrepresentations they assert also violate § 102.  Even if those statements could be construed as misleading—which, as explained, they cannot—they provide no basis for a § 102 claim, which should be dismissed as a matter of law.  *See* Mot. at 37–38; *Frommert v. Conkright*, 738 F.3d 522, 532 (2d Cir. 2013); *cf. Hudson v. Nat'l Football League Mgmt. Council*, 2019 WL 4784680, at *1–2 (S.D.N.Y. Sept. 30, 2019).

D.    **Plaintiffs Do Not Plausibly State Claims for Fiduciary Breaches Based on the Alleged Failure to Review Records**

Plaintiffs' contention that Defendants breached their duties of care and loyalty because they improperly delegated review of portions of the administrative record, and thus allegedly did not review the entire record, *see* Opp'n at 36–37, fails for all the reasons Defendants have explained, including that it is well established that the Committee and Board can rely on advisors without breaching any fiduciary duty.  *See* Mot. at 38–40; *see also* DPD § 9.2(f) (explaining that the Board may "[d]elegate its power and duties to other persons . . . or otherwise act to secure specialized advice or assistance, as it deems necessary or desirable in connection with the administration of the Plan").  Indeed, Plaintiffs do not cite a single case in which a court upheld a breach-of-fiduciary-duty claim based on the delegation or purported failure to review records.

Plaintiffs cite *Acosta v. Chimes D.C., Inc.*, 2019 WL 931710 (D. Md. Feb. 26, 2019), for the proposition that Defendants, rather than their agents, must personally review every page of the administrative record before rendering a decision.  But *Acosta* confirms that plan fiduciaries may enlist the assistance of others to discharge their duties.  *See id.* at *19 (holding no breach of fiduciary duty where plan administrator sought outside assistance to evaluate the marketplace).  Nor does *Brundle* support Plaintiffs' claim.  There, the court did not fault the fiduciary for

19

retaining an expert to value stock, but rather for uncritically accepting the resulting valuation despite obvious evidence that it was inflated. *Brundle*, 919 F.3d at 774.  Plaintiffs cite *Brundle* for the conclusory proposition that "a reasonably prudent fiduciary would have probed the issue further," *id*. at 778, but they fail to identify any instance in which Defendants neglected to probe an obvious error in the records review assistance that their internal advisors provided.

Plaintiffs' claim that Defendants breached their fiduciary duties by conducting allegedly inadequate record reviews is thus wholly unsupported in law and by the facts alleged.  Nor do Plaintiffs cite any authority to refute Defendants' demonstration that it is legally unproblematic for the same advisors to provide records review assistance at both the Committee and Board level.  *Compare* Mot. at 32–33, *with* Opp'n at 52, 56.

E.     **Plaintiffs Fail to State a Claim of Discriminatory Treatment Under ERISA**

Plaintiffs argue for the first time that Defendants breached their fiduciary duties by "discriminating against African-American Players" because they "sanctioned their physicians' application of discriminatory racial norms to neurocognitive test results."  Opp'n at 37.  But Plaintiffs have not brought a claim under ERISA § 510, which, in relevant part, prohibits any person from "discriminat[ing] against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under the plan or ERISA.  29 U.S.C. § 1140.  *Frankenstein*, which Plaintiffs rely on, *see* Opp'n at 37, is thus inapposite.  *See Frankenstein*, 2021 WL 826378, at *3–4 (analyzing whether defendant violated § 510 by discriminating against tipped employees); *see also Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (a plaintiff cannot amend the complaint "through the use of motion briefs").  Even if they had, Plaintiffs' conclusory allegations that doctors used "discriminatory racial norms" are insufficient to support their claim that Defendants discriminated against them in violation of ERISA.  *See Iqbal*, 556

U.S. at 678; *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, 2022 WL 4368152, at *7 (D. Md. Sept. 21, 2022) (conclusory and vague allegations insufficient to support § 510 claim).

  **F.**  <u>**Plaintiffs Cannot Sustain Their Claim That Defendants Breached a Duty of**</u>
     <u>**Care with Respect to the Retention or Compensation of Neutral Physicians**</u>

    Finally, Plaintiffs provide no support for their contention that Defendants breached their duty of care by "compensating, retaining, incentivizing, rewarding, promoting, and imprudently relying on" the Neutral Physicians.  Opp'n at 44.  Plaintiffs entirely ignore the fact that Defendants cannot be held liable for this alleged breach because it is the Management Council and Players Association—not Defendants—who hire and fire Neutral Physicians.  *See* AC ¶¶ 35, 47; Mot. at 41–42; *see also Juric*, 2023 WL 2332352, at *6 (only conduct that is "fiduciary in nature" can form the basis of a claim for fiduciary breach).[14]

    Plaintiffs also contradict their own argument that Defendants improperly compensated, rewarded, or incentivized the Neutral Physicians by conceding the Plan requirement that Neutral Physicians are paid a flat fee.  AC ¶ 49.  *Keir v. UnumProvident Corp.*, 2003 WL 2004422, at *1 (S.D.N.Y. Apr. 29, 2003)—where the plaintiff alleged that the defendants paid physicians to deny or terminate claims and to fabricate justifications—is thus wholly inapposite.  And Plaintiffs' meaningless statistics provide no plausible support for their speculative, unwarranted inferences that Defendants retain Neutral Physicians more often if they make findings that players are not disabled.  *See* Mot. at 18–23; *supra* Section I.C; *Boyko*, 39 F.4th at 189.

    Plaintiffs also have not plausibly alleged that Defendants were imprudent in relying on the Neutral Physician reports in general.  The Plan's collectively bargained Neutral Rule indisputably necessitates the use of Neutral Physician evaluations.  *See* DPD §§ 3.1(d) (T&P),

---

[14] Moreover, the basis for this claim is the regulation implementing § 503, *see* AC ¶ 322, which bears only on the Court's standard of review under § 502(a)(1)(B), not as a basis for a fiduciary duty claim.  *See* Mot. at 41; 29 C.F.R. § 2560.503-1(1)(2)(i).  Plaintiffs do not provide any response to this point.

5.1(c) (LOD), 6.1(e) (NC), 12.3; AC ¶¶ 71, 76, 80.  Moreover, courts have expressly touted the

Plan's use of independent physicians in making benefits determinations.  *Giles*, 925 F. Supp. 2d

at 717; *Boyd*, 796 F. Supp. 2d at 691 n.2.  Plaintiffs do not allege that Defendants failed to

administer the Plan's flat-fee requirement or failed to obtain certifications of impartiality from

Neutral Physicians under the 2021 version of the Plan, AC ¶¶ 48–49, and concede that

Defendants do not even maintain the statistics that would be required to intentionally refer cases

to Neutral Physicians based on past results.  *Id.* ¶ 51.

## IV.    PLAINTIFFS FAIL TO STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### A.    Plaintiffs Effectively Concede They Make No Specific Allegations as to Any Individual Defendant

Plaintiffs acknowledge they must plead "(1) Board members' individual misconduct, and

(2) sufficient facts to establish their status as functional fiduciaries in breach of their duties."

Opp'n at 57.  The Complaint fails to plead either, and further fails to satisfy Rule 9(b).

To plead individual misconduct adequately, Plaintiffs must allow each Defendant to

understand the basis of the claims against which they must defend, which requires Plaintiffs to

"delineate the particular acts of infringement attributable to *each* Defendant."  *Classen*

*Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (emphasis

added); *see also* Mot. at 44.  And to plead facts sufficient to establish "functional fiduciary"

status, which is a new allegation that Plaintiffs impermissibly make for the first time in the

Opposition, Plaintiffs must show that control over a Plan is exercised by "*individual* Trustees, as

opposed to the collective 'Board of Trustees.'"  *Jenkins v. Int'l Ass'n of Bridge*, 2015 WL

1291883, at *5 (E.D. Va. Mar. 20, 2015) (emphasis added); *see* Mot. at 43–44.  Plaintiffs do not

make sufficient individualized allegations.

Indeed, Plaintiffs effectively concede their failure to allege any wrongful act by any

individual Board member because the portions of the Complaint they cite contain no such

allegations.  *See* Opp'n at 57 (citing AC ¶¶ 41, 316, 320).  Instead of showing how they pleaded

*individual* misconduct in the determination of their claims, Plaintiffs claim that the Complaint

"describe[s] how Board members, as functional fiduciaries, breached their duties based on

conduct considered in the *aggregate*."  *Id.* at 57–58 (emphasis added).[15]  None of these

allegations, however, "delineate[s] the particular acts" by which any specific Board member

allegedly violated their fiduciary duties.  *See id.* at 57–59.  Nor do Plaintiffs dispute that they

failed even to allege that "any of the named Trustees were members of the Board at the time their

individual claims were decided."  *See* Mot. at 43–44.  As Plaintiffs have not pleaded facts

showing that any *individual* Defendant is responsible for any allegedly wrongful act by the

Board, their claims against the individual Defendants must be dismissed.  *See id.* at 43–48.

### B.      **Plaintiffs' Derivative § 409(a) Claims Fail Because They Allege Neither Breach nor Harm**

Similarly, Plaintiffs have not adequately alleged that any individual Trustee (as opposed

to the Board as a whole) exercises control over the Plan to be a functional fiduciary.  "The

lodestar to determining fiduciary or party in interest liability are the terms of the Plan."  *Peters v.*

*Aetna Inc.*, 2 F.4th 199, 229 (4th Cir. 2021); *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,

931 F.3d 269, 275 (4th Cir. 2019).  And Plaintiffs do not dispute that, under the Plan's plain

terms, "no Trustee has authority or control to make decisions on behalf of the plan."  *See* Mot. at

44 (citing DPD § 9.2).  Nor have they "plausibly allege[d] Board members' discretionary

responsibility and authority" with respect to the alleged misconduct supporting their breach of

---

[15] Plaintiffs cite *Chao v. Malkani*, 452 F.3d 290, 294 (4th Cir. 2006), for the proposition that a series of wrongful acts may be "considered in the aggregate" to determine whether an *individual* "abdicated their fiduciary obligations."  Opp'n at 58–59.  However, *Chao* does not support Plaintiffs' contention that allegations about the *Board's* "aggregate" conduct are adequate to state claims against *individuals*.  Rightly so, because *Chao* involved specific allegations about an individual who repeatedly breached her fiduciary duties.  *See Chao*, 452 F.3d at 292.

fiduciary duty claims.  Opp'n at 57; Mot. at 45–48; *Peters*, 2 F.4th at 228 ("whether a party functions as a fiduciary is determined with respect to the particular activity").[16]

Instead, Plaintiffs attempt to lower their pleading burden with an unpersuasive analogy to *Acosta v. WH Administrators, Inc.*, 449 F. Supp. 3d 506 (D. Md. 2020).  But, as Plaintiffs acknowledge, the individual defendants in that case, unlike here, had "'direct involvement in individual claim determinations' and 'control' over an ERISA fiduciary," Opp'n at 57 (quoting *Acosta*, 449 F. Supp. 3d at 517), and "signatory authority over the [named fiduciary's] bank accounts," which had "'sole, full, and final discretionary authority' to administer" the plan. *Acosta*, 449 F. Supp. 3d at 517.  Here, individual Trustees had no such authority or discretion.

The Complaint also does not tie the Board's alleged misconduct or Plaintiffs' (or the Plan's) alleged injuries to any Trustee's discretionary act.  Indeed, Plaintiffs only reference the individual Trustees twice in the Complaint—in the introduction and by identifying them as parties.  *See* AC ¶¶ 19–20.  Nor do Plaintiffs plausibly allege that any of the Trustees had a conflict of interest or benefited themselves or others.  For example, although Plaintiffs contend that the Board wasted Plan assets by compensating Neutral Physicians, *id.* ¶¶ 3, 341, the Trustees have no individual role in Neutral Physicians' selection or payment, and thus cannot be functional fiduciaries with respect to that particular activity.  *See* DPD § 12.3(a).  Allegations that the Board wrongly denied Plaintiffs' benefits similarly fall short because the Plan does not give the Trustees discretionary authority to appoint Neutral Physicians, or to grant benefits absent a Neutral Physician's favorable finding.  *Id.*; *see also* AC ¶¶ 56, 59, 63.

---

[16] Plaintiffs have not alleged that the individual Defendants were functional fiduciaries with respect to any action at issue here.  *See* Opp'n at 57 n.50.  And even if counsel had previously described individual Trustees as fiduciaries for certain purposes, it would not follow that they are fiduciaries for purposes of the (inadequately specified) individual acts at issue here.  Paragraph 42 of the Complaint describes a statement about the collective responsibility of the Plan's "decision-making fiduciaries" without identifying any individual Defendant as a fiduciary.  AC ¶ 42.

C.    **Plaintiffs' Allegations Do Not Support Their Claims Against the Commissioner**

Plaintiffs' sole allegation against the Commissioner is that he, or his designee, "preside[s] at all meetings of the Disability Board" and thus "occupie[s] a place of authority." Opp'n at 59. Plaintiffs do not allege, however, the Commissioner made any decisions with respect to their benefits, had authority to amend the Plan, or took any specific action that would constitute a breach of a fiduciary duty. Nor do Plaintiffs cite any case where a non-voting member of a fiduciary board was held liable for a denial of benefits or breach. And their halfhearted attempt to distinguish Defendants' cases—which similarly involve executives with no relevant decision-making authority—is unpersuasive. *See, e.g.*, *Adams v. Brink's Co.*, 261 F. App'x 583, 590 (4th Cir. 2008) (dismissing claims against vice president who attended meeting but "possessed no discretionary authority to alter the terms . . . or to determine eligibility"); *Est. of Spinner v. Anthem Health Plans of Va., Inc.*, 589 F. Supp. 2d 738, 748 (W.D. Va. 2008), *aff'd*, 388 F. App'x 275 (4th Cir. 2010) (dismissing claims against president who wrote a letter to participant but had no authority to make decisions concerning policies or procedures). Plaintiffs' claims against the Commissioner must therefore be dismissed. *See* Mot. at 48–50.

## CONCLUSION

For the foregoing reasons, the Class Action Complaint should be dismissed in its entirety.

Date: September 14, 2023

Respectfully submitted,

/s/ Gregory F. Jacob
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*

/s/ Stacey R. Eisenstein
Stacey R. Eisenstein (D. Md. Bar No. 30616)
Nathan J. Oleson (D. Md. Bar No. 16678)
Amanda S. McGinn (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: seisenstein@akingump.com
Email: noleson@akingump.com
Email: amcginn@akingump.com

/s/ Eric Field
Eric Field (*pro hac vice*)
LITTLER MENDELSON P.C.
815 Connecticut Avenue, N.W., Suite 400
Washington, DC 20006
Telephone: (202) 842-3400
Facsimile: (202) 842-0011
Email: efield@littler.com

*Attorneys for Defendants Larry Ferazani, Belinda Lerner, Jacob Frank, and Roger Goodell*

/s/ Matthew M. Saxon
Matthew M. Saxon (D. Md. Bar No. 19604)
William G. Miossi *(pro hac vice)*
John Harding *(pro hac vice)*
Spencer Churchill *(pro hac vice)*
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
Email: msaxon@winston.com
Email: wmiossi@winston.com
Email: jwharding@winston.com
Email: schurchill@winston.com

*Attorneys for Defendants Sam McCullum, Robert Smith, and Hoby Brenner*

26

**<u>CERTIFICATE OF SERVICE</u>**

I, Gregory F. Jacob, hereby certify that on September 14, 2023, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*/s/ Gregory F. Jacob*

Gregory F. Jacob
