IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DETRON SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CV-928-RP |
| | § | |
| NFL PLAYER DISABILITY & | § | |
| NEUROCOGNITIVE BENEFIT PLAN, | § | |
| | § | |
| Defendant. | § | |

## **ORDER**

Before the Court is the report and recommendation of United States Magistrate Judge Dustin Howell concerning Plaintiff Detron Smith's ("Plaintiff") Motion for Summary Judgment, (Dkt. 17), and Defendant NFL Player Disability & Neurocognitive Benefit Plan ("Defendant") Motion for Summary Judgment, (Dkt. 18). (R. & R., Dkt. 26). Plaintiff timely filed objections to the report and recommendation. (Objs., Dkt. 27).

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). Because Plaintiff timely objected to the report and recommendation, the Court reviews the report and recommendation *de novo*. Having done so and for the reasons given in the report and recommendation, the Court overrules Plaintiff's objections and adopts the report and recommendation as its own order.

Accordingly, the Court **ORDERS** that the report and recommendation of United States Magistrate Judge Dustin Howell, (Dkt. 26), is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, (Dkt. 18), is **GRANTED** and Plaintiff's motion for summary judgment, (Dkt. 17), is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's claims are **DISMISSED**.

The Court will enter final judgment by separate order.

**SIGNED** on March 13, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DETRON SMITH,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1-22-CV-00928-RP** |
| | § | |
| **NFL PLAYER DISABILITY &** | § | |
| **NEUROCOGNITIVE BENEFIT** | § | |
| **PLAN,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE ROBERT PITMAN
    UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff Detron Smith's Motion for Summary Judgment, Dkt. 17; Defendant NFL Player Disability and Neurocognitive Benefit Plan's (the "Disability Plan") Motion for Summary Judgment, Dkt. 18; and all related briefing. After considering the parties' filings, the record, and the applicable law, the undersigned recommends granting the Disability Plan's motion and denying Smith's motion.

## I.    BACKGROUND

This is a disability benefits case concerning a benefits plan under the Employee Retirement Income Act of 1974 ("ERISA"). The parties agree as to the background facts as far as they frame the issue before the Court. Smith was a fullback in the National Football League ("NFL") for eight seasons. Dkt. 17, at 6. He spent six of those seasons with the Denver Broncos and two of them with the Indianapolis Colts.

1

Dkt. 1, at 2. Throughout his time in the NFL Smith injured his ankle, knee, shoulders, neck, elbows, feet, and hands, and underwent two surgeries on his right ankle, as well as surgery on his right knee. *Id.* at 2-3. Due to his injuries, Smith suffers chronic pain, reduced mobility and speed, chronic headaches, and mental and emotional impairments. *Id.* at 3.

The Disability Plan is a welfare benefit plan operated by the NFL which provides disability benefits to former professional football players. Dkt. 17-4, at 3. The Plan provides both Line of Duty ("LOD") benefits for partial disabilities sustained while playing, as well as Total and Permanent Disability ("T&P") benefits designated for former players suffering total and permanent disability. Dkt. 19-4, at 11, 28.

### A.    Smith's T&P Benefits Under the Retirement Plan

In 2009, Smith first applied for T&P and LOD benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan"), a predecessor to the Disability Plan at issue in this case. Dkt. 1, at 3-4.[1] Under the Retirement Plan, the Disability Initial Claims Committee ("Retirement Plan DICC") made the initial determination of benefits eligibility while the Retirement Board handled appeals of denials. Dkt. 17, at 9.

After a first round of medical exams by an orthopedic surgeon and neurologist, the Retirement Plan DICC determined that Smith qualified for LOD benefits but not

---

[1] At that time, a player's right to disability benefits was considered under the Retirement Plan. However, as a result of a subsequent collective bargaining agreement, NFL pension and welfare benefit plans were separated, and applications for disability benefits after January 1, 2015, are considered and paid under the Plan at issue in this case, the NFL player Disability and Neurocognitive Benefit Plan. Dkt. 19-4, at 6.

T&P benefits. Dkt. 1, at 5. Smith appealed the denial of T&P benefits arguing that the combination of his physical and mental impairments prevented him from engaging in full time work and qualified him for T&P benefits. *Id.* The Retirement Board sent Smith to Rancho Los Amigos National Rehabilitation Center for a more comprehensive three-day visit that included a neuropsychological evaluation and a functional capacity evaluation. Dkt. 17-2, at 2, 8-10. The physicians at Rancho Los Amigos determined Smith did "not demonstrate the ability to sustain work or tolerate work on a daily basis due to his physical symptoms and problems with concentration & frustration." *Id.* At 7. Based on this revised assessment the Retirement Board granted Smith's appeal and awarded him T&P disability benefits. Dkt. 1, at 6.

Smith received T&P benefits until 2016 when he was reevaluated by an orthopedic surgeon who found he could perform light duty work. *Id.* Smith again appealed to the Retirement Board urging that it was the combination of his impairments that caused him to be unable to work, not just his orthopedic impairments. *Id.* Smith was sent for further evaluation by an orthopedist, a neurologist, and a neuropsychologist who each concluded that Smith was not totally disabled. *Id.* at 7. Further evaluation by a psychiatrist found that, though depressed, Smith "could potentially perform office or other sedentary work" and was therefore not totally disabled. Dkt. 17, at 13. The termination of Smith's T&P disability benefits by the Retirement Plan DICC, effective December 2016, was ultimately upheld by the Retirement Board. *Id.*

**B.      Smith's Application for T&P Benefits Under the Disability Plan**

Smith applied again for T&P disability benefits in February 2019, this time under the Disability Plan at issue in this case. Dkt. 1, at 7-8. Under the Disability Plan, the Disability Initial Claims Committee ("Disability Plan DICC") makes the initial determinations concerning benefits eligibility, while the six-member Disability Board has discretion to decide appeals of Disability Plan DICC determinations. Dkt. 19-4, at 50. The Disability Board is composed of three members appointed by the NFL Players Association ("NFLPA") and three members appointed by NFL Management Council ("NFLMC"). *Id.* at 47. The Disability Board is the Plan administrator and fiduciary of the Disability Plan for ERISA purposes. *Id.*

1.      The Neutral Rule and Neutral Physicians Network

Article 3 of the Disability Plan provisions sets forth the Disability Plan's general standard for T&P benefits. Dkt. 17-1, at 6. It explains that a Player will be eligible for "T&P benefits … if and only if all of [a series of] conditions" are met. Dkt. 19-4, at 11. As relevant here, T&P benefits are conditioned upon the Disability Plan's "Neutral Rule." *Id*. The Neutral Rule states:

> At least one Plan [N]eutral [P]hysician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) …, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, … and (2) such condition is permanent. If no Plan [N]eutral [P]hysician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

*Id.*

4

Section 3.3(a) of the Disability Plan authorizes the use of Neutral Physicians. It provides:

> Whenever the [Disability Plan DICC] or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a [N]eutral [P]hysician or physicians, or institution or institutions, or other medical professional or professionals, selected by the [Disability Plan DICC] or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the [Disability Plan DICC] or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

*Id.* at 13.

The bargaining parties that created the plan, the NFLPA and the NFLMC, "jointly designate" the medical specialists who serve on the Plan's panel of Neutral Physicians. Dkt. 19-4, at 57. Under the terms of the Disability Plan, a "Neutral Physician" is defined as those physicians or other specialists jointly designated by the NFLPA and the NFLMC to evaluate Players "who apply for benefits under this [Disability] Plan." *Id.* at 8. At all times relevant here, the Neutral Physician panel consisted exclusively of physicians practicing in specific specialties such as orthopedics, neurology, neuropsychology, and psychiatry. Dkt. 19-9, at 4.

2.      Smith's Application and Appeal

When Smith applied for T&P benefits under the Disability Plan, he submitted various documents related to his Retirement Plan T&P disability benefits award, including the evaluation from his time at Rancho Los Amigos, and the T&P disability benefits award letter from 2010, among other materials. Dkt. 17, at 14. The Disability Plan DICC sent Smith for evaluation by four Neutral Physicians—an orthopedist, a

5

neurologist, a neuropsychologist, and a psychiatrist. Dkt. 15-5, at 207-09. Each reported that Smith was not totally disabled. *Id.* at 208. Based on these reports, the Disability Plan DICC found Smith was ineligible for T&P benefits. Dkt. 18, at 13. However, Smith was awarded Neurocognitive Disability benefits of $3,000/month. Dkt. 17, at 15.

Smith appealed the denial of T&P disability benefits to the Disability Board contending "that the puzzle pieces that were [his] various physical and mental impairments needed to be put together in order to properly determine whether or not he was disabled." Dkts. 17, at 15; 15-5, at 418-28. Smith requested "actual consideration of the COMBINATION of orthopedic, psychiatric, neuropsychological and neurological conditions." Dkt. 15-5, at 418. The Disability Board sent Smith to four additional Neutral Physicians, again, an orthopedist, neurologist, neuropsychologist, and psychiatrist, each of whom concluded Smith was not totally disabled. Dkt. 17, at 16. Smith responded, "that the Board lacks substantial evidence to justify denial of [Smith]'s appeal because he is T&P disabled from the cumulative effects of his … impairments." *Id.* However, the Disability Board, like the Disability Plan DICC before it, denied Smith's appeal pursuant to the Neutral Rule because no Neutral Physician reported that Smith was totally disabled. Dkt. 18, at 13. In denying his appeal, the Disability Board wrote:

> At its February 13, 2020 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for T&P benefits. Section 3.1(c) of the Plan states that, for a Player to be eligible for T&P benefits, at least one Plan neutral physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for T&P benefits). If no Plan

neutral physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because eight Plan neutral physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. The Disability Board further noted that [your attorney's] comments concerning the cumulative effect of your impairments cannot override the express requirements of Plan Section 3.1(c).

Dkt. 17-1, at 3.

### 3.  Case and motions at present

In its denial letter the Disability Plan notified Smith that he'd exhausted his administrative remedies under the Disability Plan and that the only means of challenging the Disability Board's decision was to file the instant case under § 502(a) of ERISA. *Id.* at 4. Smith's complaint alleges that the Disability Board abused its discretion by denying his 2019 application and appeal for T&P benefits, because, in relying on separate opinions of eight Neutral Physicians, Smith was not granted a "holistic evaluation" of "the combined effects of [his] physical impairments." Dkt. 11, at 10-11.

The Disability Plan moves for summary judgment on Smith's claims arguing: (1) the Disability Board correctly determined Smith was ineligible for T&P benefits under the Disability Plan's Neutral Rule, and (2) even if the decision was not legally correct, the decision was not an abuse of discretion because it fell within a reasonable interpretation of the Disability Plan's statutory provisions. Dkt. 18, at 7.

Smith also moves for summary judgment arguing that as plan fiduciary, the Disability Board was required to conduct a full and fair review of Smith's condition

and obtain a holistic evaluation of his ability to work given the impairments found by the eight Neutral Physicians and the previous total disability findings under the Retirement Plan. Dkt. 17, at 23. Smith argues it was an abuse of discretion to deny T&P benefits because there was not substantial evidence within the record to support the decision as long as "the separate pieces of the puzzle [were] left apart by the Disability Board." *Id.* at 26. Smith seeks an award of T&P disability benefits from December 2018 to the date of judgment in his favor. *Id.* at 27.

The issue before the Court is whether the Disability Board properly exercised its discretionary authority when it denied Smith's appeal for T&P benefits based on the Neutral Rule and failed to send Smith for a holistic evaluation of his impairments.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B.    Summary Judgment in ERISA cases

"[T]he summary judgment standard for ERISA claims is 'unique,' because the Court acts in an appellate capacity reviewing the decisions of the administrator of the plan. Where the decision to grant or deny benefits is reviewed pursuant to ERISA,

a motion for summary judgment is merely the conduit to bring the legal question before the district court." *Reed v. Huntington Ingalls Indus., Inc.*, No. 11-1816, 2012 WL 4460822, at *2 (E.D. La. Sept. 26, 2012) (citations and internal quotation marks omitted). In the ERISA context, the usual summary judgment rule, which requires the court to view the evidence and draw all reasonable inferences in favor of the nonmovant, does not apply where, as here, the plan administrator has discretionary authority. *See Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015) "In that case, [t]he fact that the evidence is disputable will not invalidate the decision; the evidence need only assure that the administrator's decision fall[s] somewhere on the continuum of reasonableness—even if on the low end." *Id.* (alterations in original) (internal quotation marks omitted).

## III.    DISCUSSION

Abuse of discretion in the ERISA context may occur in two ways. First, because of the plan administrator's interpretation of the plan terms and second, because of the plan administrator's factual determinations. *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 250-54 (5th Cir. 2018) (en banc).

Smith argues this case concerns the second path. He claims the Disability Board abused its discretion because it lacked "substantial evidence" when it denied T&P benefits. Dkt. 17, at 14. Conversely, the Disability Board contends that this case is "not really about the quantity or weight of the evidence supporting the Disability Board's decision" but is instead about the "explicit eligibility requirement referred to as the [Disability] Plan's 'Neutral Rule,' and the dispositive impact of Smith's

undisputed failure to satisfy that requirement." Dkt. 21, at 4. Accordingly, the undersigned will determine whether the Disability Board abused its discretion in interpreting the Disability Plan's provisions or in making the factual determinations that underlie the denial of T&P benefits.

### A.   Whether the Disability Board's Interpretation was an Abuse of Discretion

In cases involving a plan administrator's interpretation of a benefits plan, the Court must first consider whether the administrator's interpretation is legally correct. *Youboty v. NFL Player Disability*, 856 F. App'x 497, 500 (5th Cir. 2021). If it is not legally correct, the Court then considers whether the administrator abused its discretion. *Id.* In determining legal correctness, courts examine: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992) (citing *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir. 1990)). In determining whether the plan administrator abused its discretion, the Court considers three additional factors: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Id.* (citing *Batchelor v. Int'l Brotherhood of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 445-48 (5th Cir. 1989)).

    1.      Legal correctness

        a.      Uniform construction

There is no evidence, nor does Smith allege that the Disability Board treated him differently or otherwise failed to uniformly construe the Plan for others in the same way it did for Smith.

        b.      Consistency with a fair reading of the plan

The next issue, and the one that bears most heavily on the legal correctness analysis, is whether the Disability Board's decision to deny Smith's appeal was "consistent with a fair reading of the [P]lan." *Youboty*, 856 F. App'x at 500.

Here, the parties agree Smith's 2019 benefits application was governed by the Disability Plan. *See* Dkt. 1, at 8. ("This application was submitted to the Disability Plan."). The Disability Plan imposes the Neutral Rule, described *supra* Part 1.B., and conditions eligibility for T&P benefits on the findings of at least one Neutral Physician that the benefit applicant is "totally disabled." *See* Dkt. 19-4, at 11-13 (Plan §§ 3.1(a), 3.1(c) stating a Player will be eligible for Plan T&P benefits "if and only if" "[a]t least one Plan [N]eutral [P]hysician selected pursuant to Section 3.3(a)" of the Disability Plan finds, "under the standard of Section 3.1(d)" of the Disability Plan, that "the Player has become totally disabled."). Smith does not dispute the applicability of these provisions.[2]

---

[2] *See* Smith's Response, Dkt. 20, at 8 (stating, "Regarding plan interpretation, it's clear that Article 3.1 of the Disability Plan requires at least one Plan network specialist to find the claimant to be totally and permanently disabled, as that term is defined in the Plan, for a claimant to be eligible for T&P disability benefits (AR 10). Smith does not dispute what the Disability Plan says, nor does Smith dispute that … the eight physicians who evaluated

As the record shows, Smith was evaluated by eight Neutral Physicians throughout the course of his application review and appeal to address his eligibility for T&P benefits, none of whom found that Smith is totally disabled. *See* Dkt. 15-5, at 29-30, 45-46, 51-69, 71-72; 311-12; 297-98; 325-26; 352-53. Thus, there is no question that the Disability Board's denial of Smith's appeal based on his failure to meet the Neutral Rule is consistent with the terms of the Disability Plan. This result is the logical outcome of the Plan's provisions regarding requisite findings before designating an applicant eligible for T&P benefits. *See Youboty*, 856 F. App'x at 500 (finding Board's refusal to consider applicant's surgery that occurred after the application deadline was the "logical outcome" of the Plan-designated application deadline and requirement that the Board only consider impairments identified in the application).

### c. Unanticipated costs resulting from different interpretations

As to consideration of unanticipated costs resulting from different interpretations of the Disability Plan provisions, the Disability Plan argues that "by adopting the Neutral Rule, the bargaining parties [the NFLPA and NFLMC] clearly wanted to create an objective standard that would promote administrative efficiency and decision-making by giving primacy to the findings of the Disability Plan's Neutral Physicians." Dkt. 18, at 14. The Disability Plan's position is that the goal of administrative efficiency would be undermined if it did not apply the Neutral Rule or

---

Smith during the claims and appeals period" answered "no" to the question of whether he is permanently and totally disabled.).

allowed applicants to circumvent it, because that would presumably result in greater administrative costs. *Id.* Smith did not respond to the Disability Plan's arguments concerning the costs of interpreting the Disability Plan differently.

*   *   *

Considering all three *Wildbur* factors, the undersigned concludes that the Disability Board gave a legally correct interpretation of the Disability Plan's provisions. The uniform construction factor, interpretive consistency factor, and unanticipated costs factor support the Disability Board's decision. Accordingly, having found that the Disability Board's interpretation was legally correct, there is no need to analyze whether the Disability Board abused its discretion when interpreting the Disability Plan. *See Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 270 (5th Cir. 2004) ("If we determine that the fiduciary's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion.").

### B.   Whether the Disability Board's Factual Determinations Constitute an Abuse of Discretion

Notwithstanding the legal correctness of the Disability Board's decision and its comportment with plan provisions, Smith argues this is not a plan interpretation case. Dkt. 20, at 8. Smith claims that despite the Disability Board's fiduciary duty to him, it failed to fully evaluate him, resulting in a lack of substantial evidence in the record to support the denial of T&P disability benefits. Dkt. 20, at 4.

14

In cases involving the sufficiency of evidence supporting a plan administrator's decision, "[a] plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). The abuse-of-discretion standard "requires only that substantial evidence supports the plan fiduciary's decision." *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (internal quotation marks omitted). "This court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Id.* (cleaned up).

Smith's main contention is that given evidence of "a prior award of T&P disability benefits due to a combination of physical impairments and payment of T&P disability benefits for approximately seven years, the Disability Board was required to have someone conduct a holistic evaluation of Smith's mental and physical impairments and their combined effect on Smith's ability to work." Dkt. 17, at 21-22. He argues that the "eight different opinions obtained by the Disability Board in response to [his] application does not constitute substantial evidence" of his alleged

15

ability to work and disqualification for T&P benefits. *Id.* at 22. Rather, these eight opinions are "separate pieces of a puzzle" that the Board did not put together. *Id.* Smith proposes that the Disability Board should have tried to put the "scattered pieces of the puzzle together" by "hir[ing] someone within the network (or add[ing] someone to the network) who would evaluate the combination of [his] mental and physical impairments." *Id.* at 24, 26.

The Disability Plan responds that at the time of Smith's application, the network of Neutral Physicians to which it could refer Smith for evaluation consisted exclusively of physicians practicing in discrete specialties such as orthopedics, neurology, neuropsychology, and psychiatry. Dkts. 21, at 5-6; 19-9, at 4. Therefore, it would not have been possible, as Smith suggests, to "hire someone within the network … who would evaluate the combination of Smith's mental and physical impairment" in order to obtain a total disability finding and a favorable T&P benefits decision. Dkts. 17, at 27; 21, at 6.

As to Smith's contention that the Board could have "add[ed] someone to the network" who was capable of providing a holistic evaluation, the Disability Plan argues that the Disability Board had no discretion to do so. Dkts. 17, at 27; 21, at 6. The Disability Plan cites provisions of the Plan that support this position. As to the network of Neutral Physicians, Disability Plan's provisions state:

> The Disability Board will maintain a network of Neutral Physicians to examine Players who apply for benefits under this Plan. The Neutral Physicians network may include physicians, institutions, or other health care professionals. *The NFLPA and [NFLMC] will jointly designate such Neutral Physicians….*

Dkt. 19-4, at 57 (emphasis added).

Despite this express statement establishing that the NFLPA and NFLMC, not the Disability Board, appoint Neutral Physicians to the network, Smith insists the Board's role in maintaining the network under the Plan's provisions equates to an appointment power. Dkt. 20, at 7.

However, there is no support for this contention and the Court cannot rewrite the terms of the Disability Plan by either (1) allowing an exception to the Neutral Rule, such that Smith could have been referred to a physician outside of the Neutral Physician network, or (2) allowing the Retirement Board, as opposed to the NFLPA and NFLMC, to appoint physicians to the Neutral Physician network. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 83 F.4th 423, 425-26 (5th Cir. 2023) (where plan required a showing of "changed circumstances" for a benefits reclassification, and applicant could not show such changed circumstances, the Board did not abuse its discretion by failing to waive the requirement, even where applicant may have been denied a full and fair review of his claims).

The undersigned finds that the Board's decision was based on substantial evidence, that is, relevant evidence that was reasonable for the Disability Board to rely on under the Plan's terms. The Disability Board's claim determination was based on reports from eight physicians, each of whom determined Smith was not permanently and totally disabled. While these eight physicians were specialists in their respective fields, and therefore, each incapable of performing a holistic evaluation, the Disability Board was compelled to refer Smith exclusively to specialists due to the make-up of the Neutral Physician network. Further, under the

17

express provisions of the Disability Plan, the Disability Board was not empowered to appoint physicians capable of performing the type of evaluation that might have led to a favorable T&P benefits determination for Smith in this case.

*     *     *

Accordingly, because the undersigned finds that the Disability Board gave a legally correct interpretation to the Disability Plan and did not abuse its discretion because of its interpretation of the plan terms or because of its underlying factual determinations, the Disability Plan's Motion for Summary Judgment, Dkt. 18, should be granted.

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment, Dkt. 17, and **GRANT** Defendant's Cross Motion for Summary Judgment, Dkt. 18.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    SIGNED January 9, 2024.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE