# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **JASON ALFORD, *et al.*,** | |
| *Plaintiffs,* | |
| **v.** | **Civil No. 1:23-cv-00358-JRR** |
| **THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN, *et al.*,** | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants The NFL Player Disability & Survivor Benefit Plan and NFL Player Disability & Neurocognitive Benefit Plan (formerly, the Bert Bell/Pete Rozelle NFL Player Retirement Plan) (the "Plan"); the Disability Board of the Plan (the "Board"); Larry Ferazani, Belinda Lerner, Jacob Frank, Sam McCullum, Robert Smith, and Hoby Brenner (collectively, the "Trustees"); and the National Football League Commissioner Roger Goodell's (the "Commissioner") Joint Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Class Action Complaint and memorandum of law in support thereof. (ECF Nos. 69, 69-1; together, the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

# I.     __BACKGROUND__[1]

Plaintiffs Jason Alford, Willis McGahee, Daniel Loper, Michael McKenzie, Jamize Olawale, Alex Parsons, Eric Smith, Charles Sims, Joey Thomas, and Lance Zeno bring a class action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").  Plaintiffs are retired National Football League ("NFL") players who applied for one or more of the disability benefits available under the Plan.[2]   (ECF No. 56 ¶¶ 1, 147-266.) Defendant the Plan is an employee welfare benefit plan, as defined by ERISA § 3(1), 29 U.S.C. § 1002(1).  *Id.* ¶ 16.  Defendant the Board is the administrator and fiduciary of the Plan, within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).  *Id.* ¶ 19.  The Board is composed of seven individuals – six voting members and one non-voting member.  *Id.* ¶¶ 19, 43.  The Commissioner is a Board member and its non-voting chairperson.  *Id.* ¶ 19.  Defendants Ferazani, Lerner, Frank, McCullum, Smith, and Brenner are also members of the Board.  *Id.* ¶ 20.

## A.     __The Plan and Benefit Claims Process__

The Plan provides three general categories of disability benefits to eligible NFL Players:[3] (1) Total and Permanent ("T&P") Disability benefits; (2) Line of Duty ("LOD") Disability benefits; and Neurocognitive ("NC") Disability benefits.[4]   (ECF No. 56 ¶ 32.)  All NFL Players

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Class Action Complaint.  (ECF No. 56; "Amended Complaint.")  Further, where possible, throughout this memorandum, citation to document page numbers refer to the page number within the original source, not pagination assigned by the ECF system.

[2] Throughout the Amended Complaint and the parties' motions papers, reference is made to the "Plan," the "Disability Plan," the "Retirement Plan," and the "Plans" seemingly interchangeably.  (*See, e.g.,* Amended Complaint at 2; the Motion at Introduction.)  The court notes that the NFL Player Disability & Survivor Benefit Plan of April 1, 2021, is different from the Bert Bell/Pete Rozelle NFL Player Retirement Plan of April 1, 2021 (which Plaintiff avers at page two of the Amended Complaint is the former name of the NFL Player Disability & Neurocognitive Benefit Plan), and are attached as two separate exhibits to the Motion.  Where necessary to avoid confusion, or where making direct reference to a party's filing, the court will refer to the Disability Plan or the Retirement Plan, as appropriate.  Where reference is made to the Plan, the distinction for purposes of this memorandum opinion is immaterial; or the court is adopting the reference selected by the filing party for purposes of its evaluation.

[3] Under the Plan, a "Player" is "any person who is or was employed under a contract by [a member club of the NFL] to play football in the League."  (ECF No. 69-7 at 3-4.)

[4] *See* Section III, *infra,* regarding the court's consideration of exhibits to the parties' papers.

participate in the Plan.  (Def.'s Mot., Exhibit B, Disability Plan, ECF No. 69-7 at 5.)  Article 3 of

the Plan sets forth the General Standard for Eligibility for T&P Disability Benefits.  *Id.* at 6-7.

Article 5 of the Plan sets forth the General Standard for Eligibility for LOD Disability Benefits.

*Id.* at 25.  Article 6 of the Plan sets forth the General Standard for Eligibility for NC Disability

Benefits.  *Id.* at 32-33.

To qualify for benefits, whether T&P, LOD, or NC, a "Neutral Physician" must find a

Player meets the Plan's standards and must provide a complete report on the Player's disability as

necessary for the Committee or the Board "to make an adequate determination" on the Player's

benefits claim.  (ECF No. 56 ¶¶ 46, 71, 76, 80.)  The Plan provides the following on Neutral

Physician:

> (a) Selection and Termination. The [] Board will maintain a network
> of Neutral Physicians to examine Players who apply for benefits
> under this Plan. The Neutral Physician network may include
> physicians, institutions, or other health care professionals. The
> NFLPA and Management Council[5] will jointly designate such
> Neutral Physicians. A Neutral Physician must (1) certify that any
> opinions offered as a Neutral Physician will be provided without
> bias for or against any Player, and (2) accept and provide services
> pursuant to a "flat-fee" agreement, such that the amount of
> compensation provided by the Plan will not depend on whether his
> or her opinions tend to support or refute any given Player's
> application for benefits.

(Disability Plan at 57; Def.'s Mot., Exhibit C, Retirement Plan, ECF No. 69-8 at 60.)

When a Player seeks benefits under the Plan, the Plan's Disability Initial Claims

Committee ("the Committee")  makes an initial determination as to whether the Player is entitled

to benefits. (ECF No. 56 ¶ 35.)  The Plan provides that Committee members review all facts and

---

[5] "NFLPA means the National Football League Players Association, which is the sole and exclusive bargaining representative of League professional football players."  "Management Council means the National Football League Council, which is the sole and exclusive collective bargaining representative of the Employers."   Under the Plan, League means NFL; an Employer is a member club of the NFL.   (ECF No. 69-8 at 7-9.)

circumstances in the administrative record before rendering a decision. *Id.* ¶ 37. Players may appeal Committee decisions to the Board. According to the Amended Complaint, "the Board may not accord any deference to the Committee's determination." As the Plan's fiduciary under ERISA, Plaintiffs allege, "the Board's review of an adverse determination must take into account *all* available information, irrespective of whether that information was presented or available to the Committee." Per the Plan, "the Board must review *all* facts and circumstances in the administrative record before rendering a decision." *Id.* ¶¶ 38-41 (emphasis in original).

### B. <u>Plaintiffs' Benefits Applications</u>

Plaintiffs applied for benefits under the Plan. (ECF No. 56 ¶¶ 149, 163, 176, 191, 195, 203, 227, 229, 246, 258, 261.) Subsequently, the Committee and the Board denied Plaintiffs' applications. *Id.* ¶¶ 154, 160, 170, 173, 180, 184, 186, 189, 191, 193, 199-200, 205, 207, 214, 217, 222, 226, 232, 237-38, 246, 250, 252, 255, 260. In many instances, the Board represented to Plaintiffs that it reviewed all the evidence contained in Plaintiffs' files. *Id.* ¶¶ 184, 201, 214, 237-38, 252, 255, 260, 266. In some instances, the Board further represented that "'the Plan's physicians are absolutely neutral in this process' and that it 'ha[d] no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they ha[d] done so in [Plaintiff's] case.'" *Id.* ¶ 226.

Plaintiffs allege that the physicians are biased and have significant financial conflicts of interest. (ECF No. 56 ¶¶ 283-89.) Specifically, Plaintiffs allege that Defendants have "a systematic pattern that the more the Defendants compensate their hired physicians, the higher the likelihood that those physicians will render flawed, inadequate, result-oriented opinions adverse to benefits applicants." *Id.* ¶ 107. In addition to wrongfully denying Plaintiffs' benefits, Plaintiffs also allege that "Defendants breached their fiduciary duties to Plaintiffs through inaccurate,

misleading, and deceptive information about the Plan to Plaintiffs and absent Class members." *Id.* ¶ 108. Plaintiffs further allege that "there is a larger systematic practice of providing more compensation to, and more frequently retaining physicians with, extremely high benefits denial rates, whom the Board knew or should have known stood to benefit financially from the repeat business that might come from providing result-oriented reports that were to the Board's liking, yet inadequate to base a determination on." (ECF No. 56 ¶ 112.)

### C.    Procedural History

On February 9, 2023, Plaintiffs filed the instant action. (ECF No. 1.) On May 12, 2023, Plaintiffs filed an Amended Complaint. (ECF No. 56.) The Amended Complaint sets forth five counts: Wrongful Denial of Benefits under Section 502(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) on behalf of the Class and all Subclasses (Count I); Failure to Provide Adequate Notice under Section 503(1) of ERISA, 29 U.S.C. § 1133(1), on behalf of the Class and all Subclasses (Count II); Denial of Right to Full and Fair Review under Section 503(2) of ERISA, 29 U.S.C. § 1133(2), on behalf of the Class and [all] Subclasses (Count III); Breaches of Fiduciary Duties of Care and Loyalty under Sections 102(a), 404, and 405 of ERISA, 29 U.S.C. §§ 1022, 1104, and 1105, on behalf of the Class and [all] Subclasses (Count IV); and Breaches of Fiduciary Duties under Sections 404 and 405 of ERISA, 29 U.S.C. §§ 1104 and 1105 on Behalf of the Plan Only (Count V). (ECF No. 56 at pp. 92-113.) Plaintiffs seek certification of a plaintiff class (as to Counts I through IV), monetary compensation, injunctive and other equitable relief, declaratory judgment, attorneys' fees and expenses, and pre- and post-judgment interest. (ECF No. 56 ¶¶ 355-87.)

Defendants move to dismiss the Complaint on several grounds: (1) Count I fails because Plaintiffs allege that they did not satisfy the Plan's Neutral Rule (thus rendering them benefits

ineligible) and Plaintiffs fail to allege to state facts providing a basis to conclude that the Board abused its discretion; (2) Counts II through IV fail because they are "repackaged" ERISA wrongful denial of benefit claims; (3) Counts II and III also fail because Plaintiffs had adequate notice and full review of their claims; (4) Count IV fails because Plaintiffs fail to allege sufficient facts establishing key elements of material misrepresentation, breach of review duties, or bearing any plausible connection to hiring and oversight of Neutral Physicians; (5) Count V fails because Plaintiffs do not allege facts amounting to fiduciary misconduct; (6) Plaintiffs cannot recover against the Trustees or the Commissioner individually; and (7) the Commissioner is not a fiduciary. (ECF No. 69-1 at 2-5.)

## II.    LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the legal sufficiency of a complaint."  It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint."  *Id.* at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979)).

III.     **CONSIDERATION OF EXHIBITS**

Defendants attach 25 exhibits to the Motion: Exhibit A—2016-2021 IRS Form 5550s; Exhibit B—Apr. 1, 2021, Disability Plan; Exhibit C—Apr. 1, 2021, Retirement Plan; Exhibit D—2022 Disability Plan Summary Plan Description; Exhibits E through V—Plaintiffs' Board Decision Letters and Plaintiffs' Committee Decision Letters; Exhibit W—Order, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex. Dec. 27, 2021); Exhibit X—*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:16-cv-01413-JD (N.D. Cal. June 14, 2016); Exhibit Y—Trial Transcript, *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 3:20-cv-01277-S (N.D. Tex. May 23, 2022).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Exhibit A—the Plan's Form 5550—"are unquestionably matters of public record" as they are filed with the United States Department of Labor and publicly available online. *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 364 n.5 (M.D.N.C. 2022). Plaintiffs

do not challenge their authenticity. Exhibits B through V set forth the Disability and Retirement Plans, the Summary Plan Description, and Plaintiffs' Board and Committee Letters regarding benefits eligibility. Exhibits B through V are referenced in, and integral to, the Amended Complaint. Plaintiffs' claims arise from their alleged entitlement to benefits under the Plan and the Letters issued regarding the same. There is no authenticity dispute. *Hooker v. Tunnell Gov't Servs., Inc.*, 447 F. Supp. 3d 384, 391 (D. Md. 2020) (noting that "a court may properly consider ERISA plan documents on a motion to dismiss"); *Juric v. USALCO, LLC*, 659 F. Supp. 3d 619, 626 n.4 (D. Md. 2023) (considering ERISA plan documents on a motion to dismiss); *Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005) (finding that the district court properly considered plan document on a motion to dismiss). The court may also consider Exhibits W through Y, as they are public records of which the court may take judicial notice and Plaintiffs do not challenge their authenticity. The court will therefore consider the exhibits without converting the Motion to one for summary judgment.

## IV.     ANALYSIS

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Peters v. Aetna Inc.*, 2 F.4th 199, 215 (4th Cir. 2021) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). It "authorizes a broad range of remedies for cognizable violations, including recovery of 'plan benefits, attorney's fees and other statutory relief." *Id.* (quoting 10 Vincent E. Morgan, *Business and Commercial Litigation in Federal Courts* § 106:45 (4th ed. Dec. 2020 update)).

In the instant case, Plaintiffs assert claims pursuant to ERISA § 502, codified at 29 U.S.C. § 1132.[6] ERISA § 502 provides:

---

[6] The ERISA provision at 29 U.S.C. § 1132 is also referred to as ERISA § 502. Because the parties cite to § 502, the court will do the same throughout the memorandum opinion.

**(a) Persons empowered to bring a civil action**

A civil action may be brought--

> (1) by a participant or beneficiary--
>
> > (A) for the relief provided for in subsection (c) of this section, or
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

ERISA § 502(a)(1)-(3).

Count I is brought pursuant to ERISA § 502(a)(1)(B). Counts II through IV are brought pursuant to ERISA § 502(a)(3).[7] Count V is brought pursuant to ERISA § 502(a)(2). Plaintiffs are Plan "participants" as defined by ERISA § 3(7), codified at 29 U.S.C. § 1002. The Plan is an "employee welfare benefit plan" as defined by ERISA § 3(1). Defendant Board is the administrator and fiduciary of the Plan as defined by ERISA § 3(16).

### A.     <u>Wrongful Denial of Benefits, ERISA § 502(a)(1)(B) (Count I)</u>

Pursuant to ERISA § 502(a)(1)(B), a participant in an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights for future benefits under the terms of a plan." 29 U.S.C. § 1132 (a)(1)(B). "Relief may take the form of accrued benefits due, a declaratory judgment on

---

[7] In their Response to the Motion, Plaintiffs provide that they assert Counts II and II in conjunction with § 502(a)(3) for which they seek equitable relief.

entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).

### 1.    *Exhaustion*

Defendants argue that several of Plaintiffs' claims are barred because Plaintiffs failed to exhaust review remedies under the Plan. (ECF No. 69-1 at 23.) In response, Plaintiffs argue that their claims are not barred because they allege that the Board's decisions are inconsistent with the full and fair review requirement. (ECF No. 70 at 28.)

"Although ERISA does not explicitly contain an exhaustion requirement, 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits . . . .'" *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999) (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989)). Accordingly, a "plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." *Gayle v. United Parcel Service*, 401 F.3d 222, 226 (4th Cir. 2005) (quoting *Makar*, 872 F.2d at 82). The "exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Makar*, 872 F.2d at 82.

However, "ERISA's requirement that administrative remedies be exhausted is unnecessary if there is clear and positive evidence that the remedies are futile or useless." *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 471-72 (4th Cir. 2011) (citation omitted). In *Wilson v. United Healthcare Ins., Co.*, the Fourth Circuit explained:

> We have previously recognized that a failure to exhaust may be excused when pursuing internal remedies would be "futile." *Id.* More than "bare allegations of futility" must be demonstrated, however, as a claimant must come forward with a "clear and positive showing" to warrant "suspending the exhaustion requirement." *Id.* (internal quotation marks omitted); *see Hickey v. Digital Equip.*

> *Corp.*, 43 F.3d 941, 945 (4th Cir. 1995) (rejecting an assertion of futility when claimant did not file a written claim and alleged, with no further foundation, that doing so would have been "a mere formality if not a charade"). Further, an administrator's failure to "provide a reasonable claims procedure" under ERISA "entitle[s] [beneficiaries] to pursue any available remedies" and thus to "be deemed to have exhausted the administrative remedies available under the [P]lan." 29 C.F.R. § 2560-503-1(l)(1).

27 F.4th 228, 241 (4th Cir. 2022).

Here, against a robust backdrop of alleged malfeasance and nonfeasance, Plaintiffs allege that "Defendants failed to afford Plan participants a full and fair review process (Count III), attempting to receive a fair review would be futile, and the Plan lacks procedures in place that would be adequate to provide a full and fair review." (ECF No. 56 ¶ 351.) Plaintiffs' descriptive allegations on which their futility allegation rest are far from conclusory in nature. At this stage of the litigation, therefore, "the futility of attempting to follow any procedure cannot be resolved[.]" *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, No. CV DKC 21-1818, 2022 WL 4368152, at *4 (D. Md. Sept. 21, 2022). The Amended Complaint will not be dismissed on this basis; Defendants may raise it again on a Rule 56 motion.

### 2. *Statute of Limitations*

Defendants additionally argue that several of Plaintiffs' wrongful denial of benefits claims are barred based on the applicable statute of limitations. (ECF No. 69-1 at 23.)

"Except for breach of fiduciary duty claims, ERISA contains no specific statute of limitations, and we therefore look to state law to find the most analogous limitations period." *Bond v. Marriott Intern., Inc.*, 637 F. App'x 726, 731 (4th Cir. 2016). "Maryland's three-year statute of limitations for contract actions applies" to ERISA denial of benefit of claims. *Id.* While the court applies the "three-year state of limitations period, the question of when the statute begins to run is a matter of federal law." *Id.* "In most cases '[a]n ERISA cause of action does not accrue until a

claim of benefits has been made and formally denied.'" *Id.* (quoting *Rodriguez v. MEBA Pension Tr.*, 872 F.2d 69, 72 (4th Cir. 1989)). "Thus, outside of rare circumstances where application of the formal denial rule would be 'tricky,' courts must consider the date of a formal denial as the accrual date." *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2018 WL 4052182, at *10 (D. Md. Aug. 23, 2018) (quoting *Bond*, 637 F. App'x at 731 (finding that application of the formal denial rule was "tricky" because no formal denial was ever issued, so a lawsuit was filed before the claim had accrued; further, plaintiffs waited more than 30 years to file suit) and citing *Cotter v. E. Conference of Teamsters Ret. Plan*, 898 F.2d 424, 429 (4th Cir. 1990) (finding application of the formal denial rule to be "tricky" because no formal denial was issued, and applying the rule "would lead [ ] to the anomalous result that the statute of limitations on [the] claim did not begin to run until after [the] lawsuit was filed")).

In *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, this court explained:

> Like exhaustion of plan remedies, the statute of limitations is an affirmative defense:
>
> > The statute of limitations is an affirmative defense that must be proven by a defendant by a preponderance of the evidence. Fed. R. Civ. P. 8(c)(1); *Stack v. Abbott Labs., Inc.*, 979 F.Supp.2d 658, 664 (M.D.N.C. 2013). Therefore, this court can reach the merits of the issue at the Rule 12(b)(6) stage only "if all facts necessary to the [statute of limitations] defense 'clearly appear[ ] on the face of the complaint.'" *Stack*, 979 F. Supp. 2d at 664 (alteration in original) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Dismissal of a claim as time-barred at the motion to dismiss stage occurs in "relatively rare circumstances." *Goodman*, 494 F.3d at 464.

> *Humana, Inc. v. Ameritox, LLC*, 267 F. Supp. 3d 669, 675 (M.D.N.C. 2017).

No. CV DKC 21-1818, 2022 WL 4368152, at *3-4 (D. Md. Sept. 21, 2022).[8]

As to Plaintiffs' wrongful denial of benefits claims, the statute of limitations begins to run upon denial of the claim. *See Bond and Chavis, supra.* In the instant case, Plaintiff McKenzie's claim for benefits was denied on November 22, 2019. (ECF No. 57 ¶ 184.) Plaintiff Loper's application for benefits was denied on February 19, 2019. *Id.* ¶ 207. Plaintiff Smith's application was denied in 2014 and again on November 22, 2019. *Id.* ¶¶ 217, 226. Plaintiff Parson's application was denied on May 18, 2018. *Id.* ¶ 237. Plaintiff Thomas' application was denied on February 13, 2020. *Id.* ¶ 255. Accordingly, absent equitable tolling, these Plaintiffs' wrongful denial of benefits claims (in connection with these applications) are barred by limitations.

Plaintiffs argue that equitable tolling applies because of Defendants' "fraudulent scheme to cover up the conflicts and untrue statements that the Board has reviewed records." (ECF No. 70 at 49.) "The equitable tolling doctrine 'is read into every federal statute of limitations, and the decision whether the doctrine should be applied lies within the sole discretion of the court.'" *Delcid v. Isabella*, No. MJM-20-3167, 2022 WL 17342048, at *2 (D. Md. Nov. 30, 2022) (quoting *Baxter v. Burns & McDonnell Eng'g Co., Inc.*, No. JKB-19-3241, 2020 WL 4286828, at *3 (D. Md. July 27, 2020)). It is "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] does not lend itself to bright-line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

---

[8] Plaintiffs allege that "[g]iven the continuing nature of Defendants' breaches of their ERISA fiduciary duties, the limitations periods applicable to Plaintiffs' and absent Class members' claims have not begun to run." (ECF No. 56 ¶ 352.) Additionally, "because Defendants have for decades actively and fraudulently concealed their misconduct, including through repeated misrepresentations to Plaintiffs and absent Class members, all applicable statutes of limitations affecting Plaintiffs' and Class members' claims have been tolled." *Id.* To the extent Plaintiffs maintain that the discovery rule exception applies, it applies to Plaintiffs' claims regarding breach of fiduciary duties not Plaintiffs' wrongful denial of benefit claim. *Bond v. Marriott Intern., Inc.*, 637 F. App'x 726, 732 (4th Cir. 2016) (citing 29 U.S.C. § 1113(2) (stating limitations period runs from "the earliest date on which the plaintiff had actual knowledge of the breach or violation")).

"Courts in this [c]ircuit generally apply equitable tolling in a narrow set of situations, including: (1) 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass,' *Gayle*, 401 F.3d at 226 (internal quotation marks omitted); (2) 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the limitations period,' *id.* (internal quotation marks omitted); or (3) where 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Knepper v. Volvo Grp. N. Am.*, No. CV ELH-18-02879, 2021 WL 2685271, at *15 (D. Md. June 30, 2021) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see Harris*, 209 F.3d at 330 (considering the equitable tolling doctrine and noting "that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.").

Nothing alleged in this action suggests the existence of Defendants' trickery or efforts to induce Plaintiffs not to file action following a benefits denial, or any other extraordinary circumstance that might warrant tolling of the statutes of limitations. Accordingly, to the extent Plaintiffs' wrongful denial of benefits claim relies on Plaintiffs' applications involving the Board's final appeal letters issued prior to May 12, 2020, those allegations are barred by the applicable statute of limitations.

### 3.    *Failure to State a Claim*

Defendants argue that Plaintiffs' claim for wrongful denial of benefits pursuant to ERISA § 502(a)(1)(B) is subject to dismissal because Plaintiffs are not entitled to benefits under the Plan's terms, and Plaintiffs do not plausibly allege the Board abused its discretion. (ECF No. 69-1 at 14-24.)  In response, Plaintiffs concede they are not entitled to benefits under the Plan's express

terms;[9] however, Plaintiffs argue that pursuant to the factors set forth in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare*, they plausibly allege abuse of discretion. (ECF No. 70 at 20; citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000)).

"To establish a claim of wrongful denial of benefits, a plaintiff must show one of two things." *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2018 WL 4052182, at *6 (D. Md. Aug. 23, 2018) (citing *Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 340-41 (4th Cir. 2000)). First, "[i]f the plan [does] not give the employer or administrator discretionary or final authority to construe uncertain terms, a plaintiff must show that he is entitled to benefits based on the terms of the plan and other manifestations of the parties' intent." *Id.* (citation omitted). "Alternatively, [w]here discretion is conferred upon the trustee with respect to the exercise of a power, a plaintiff must prove that there was an abuse by the trustee of his discretion." *Id.* (citation omitted).

In the instant case, the parties agree that, pursuant to the Plan, the Board has discretion in managing the Plan and the Trust. The Plan provides that the Board "will be the 'named fiduciary' of the Plan within the meaning of section 402(a)(2) of ERISA, and will be responsible for implementing and administering the Plan, subject to the terms of the Plan and Trust . . . . [and] [t]he [] Board will have full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan and the Trust." (ECF No. 69-7 at 48; ECF No. 69-8 at 51.)

Therefore, "a trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Booth*, 201 F.3d 335, 341 (4th Cir. 2000). "In determining whether a fiduciary's exercise of discretion is reasonable, numerous

---

[9] To be eligible under the Plan terms, a Neutral Physician must find that the Player is disabled. (ECF No. 56 ¶¶ 71, 76, 80.) Plaintiffs concede no Neutral Physician found any of them was disabled.

factors have been identified as relevant, both in the cases applying ERISA and in principles of trust law." *Id.* at 342. In *Booth*, the Fourth Circuit set forth a non-exhaustive list of factors for courts to consider in making the reasonableness determination:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d at 342. At this stage, "the court need only determine whether there is 'enough factual matter (taken as true) to suggest that' defendants acted unreasonably." *O'Brien v. Verizon Commc'ns*, No. CV DKC 2007-0501, 2008 WL 11509720, at *6 (D. Md. Feb. 21, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In the instant case, Plaintiffs allege:

> Defendants acted inconsistently with the Plan's terms. For example, Defendants considered educational level and prior training when deciding Plaintiffs McKenzie's, McGahee's, Olawale's, and Smith's T & P disability benefits claims, despite that the Plan's explicit terms prohibit consideration of educational level and prior training. Also, in cases involving LOD benefits claims, Defendants failed to award Players points pursuant to the Plan's terms, which state that a Player will be awarded the indicated number of points for each occurrence of each listed impairment. For example, Mr. Loper suffered a "S/P Carpal Tunnel Release" resulting from League football activities, but the Board unjustifiably failed to award Mr. Loper the prescribed 2 points for such an impairment. Furthermore, Defendants unreasonably dismissed reliable evidence of undisputed self-reported symptoms for lack of objective medical evidence, even though the Plan does not limit proof to objective evidence. Also, as recounted in Paragraph 193 above, Defendants' parsimonious interpretation of the requirements for Active Football T & P disability is inconsistent with the Plan's terms.

Moreover, the Board acted inconsistently with the Plan's goal of compensating Players for having invested themselves in NFL football play. For example, Defendants unreasonably interpreted the Plan to ignore consideration of whether a Player is T & P disabled from the cumulative impact and effect of his impairments, and instead compartmentalized and considered each impairment or type of impairment only in silo. Also, Defendants failed to rely on adequate materials to make their benefit determinations. For example, Defendants failed to review all records and information in a Player's administrative file. Furthermore, Defendants based their determinations on incomplete, flawed, and undetailed reports from biased physicians who acted inconsistently with the Plan's terms.

Defendants acted inconsistently with earlier interpretations of the Plan. For example, although the Board's current MAP previously interpreted a three-point LOD occurrence of "Lumbar Stress Fracture with Spondylolysis" as an "L5-S1 pars defect" and Plaintiff Olawale demonstrated unrebutted radiographic evidence of L5 pars defect/stress fractures with spondylolysis, Defendants failed to award Plaintiff Olawale the three points.

Defendants' decision-making process was neither reasoned nor principled. For example, Defendants abdicated their decision-making by rubber-stamping reports from biased physicians who acted inconsistently with Plan terms, and often their own findings from examining Players and other medical evidence in Players' files, and whose reports amounted, all in all, to an inadequate basis for basing claims decisions. Moreover, Defendants routinely failed to review all of the evidence in the administrative record. Rather than properly exercise their discretion under the Plan, Defendants abandoned it.

Furthermore, Defendants have improperly relied upon, and even defaulted their decision-making, to many physicians with significant financial conflicts of interest that substantially impacted their professional and ethical obligations. As recounted in Section IV.I above, in the large statistical sample, physicians who have conducted examinations for T & P disability benefits purposes and who have an average annual compensation from Defendants of $200,000 or more, have never rendered a conclusion that any Player is T & P disabled in any year. What is more, 57.63% of the 118 physicians who have evaluated Players for T & P disability benefits purposes overall—that is, nearly three out of five physicians—have a denial rate of 100 percent.

Also, Defendants have acted inconsistently with external standards relevant to the exercise of discretion. For example, despite Plaintiff Lance Zeno having been found under the NFL Concussion settlement to have a Level 1.5 Neurocognitive Impairment (i.e., a moderate to severe cognitive impairment in at least two or more cognitive domains) based on the reports of genuinely neutral medical experts, the Board rendered an irreconcilable decision that Mr. Zeno did not qualify for even the mild NC benefit, which requires only a mild objective impairment in one cognitive domain.

In addition, Defendants' decisions were inconsistent with the procedural and substantive requirements of ERISA. For example, Defendants failed to review the entire administrative record, defaulted to biased physicians, and failed to explain why they disagreed with medical views in the record that favored the award of benefits.

(ECF No. 56 ¶¶ 283-89.)

Construed in the light most favorable to Plaintiffs (and taken as true), Plaintiffs plausibly allege that the Board acted inconsistently with the Plan's purpose and goal, did not consider the entire record, inappropriately relied on Neutral Physicians' conclusions, provided interpretations inconsistent with Plan provisions and ERISA requirements, failed to provide reasoned decisions, and that bad faith motives and bias influenced their decisions. Further, Defendants' arguments largely go to the merits of Plaintiffs' claim. These arguments are better resolved on a Rule 56 motion.[10]

**B.** **Breach of Fiduciary Duty – ERISA § 502(a)(3) (Count IV)**

Count IV is brought pursuant to ERISA § 502(a)(3), the enforcement scheme's "catchall" provision, for alleged breaches of the fiduciary duties of loyalty and care. *See England v. Marriott Intern., Inc.*, 764 F. Supp. 2d 761, 778 (D, Md. 2011) (D. Md. Aug. 23, 2018) (explaining that

---

[10] In a footnote at page 25 of the Motion, Defendants assert that "in the event" Count I survives the Motion, the court would thereafter be required "to individually review each Plaintiff's decision under § 502(a)(1)(B)," and, therefore, joinder of the Plaintiffs is not appropriate under Rule 20. (ECF No. 69-1 at 25.) The court need not reach this issue on a Rule 12(b)(6) motion and declines to do so. FED. R. CIV. P. 21 ("Misjoinder of parties is not a ground for dismissing an action.") Defendants are entitled to a file a proper motion as to joinder (or misjoinder) if they so wish.

Section 502(a)(3) "creates a 'catchall' which 'act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy'") (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).

"To establish a violation of § 502(a)(3), a plaintiff must show that there was a violation of an ERISA provision, and the relief sought constitutes 'appropriate equitable relief.'" *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2018 WL 4052182, at *8 (D. Md. Aug. 23, 2018) (citing *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 363-64 (4th Cir. 2015)). "[R]elief under § 502(a)(3) is available only if a plaintiff's relief under ERISA's other remedial provisions would otherwise be inadequate." *Id.* (citing *Korotynska*, 474 F.3d at 105, and *Varity*, 516 U.S. at 512); *see Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023) (noting that if § 502(a)(1)(B) "doesn't provide the beneficiary with the relief that she seeks, then she can resort to § 502(a)(3), the enforcement scheme's catchall provision, which allows a beneficiary to sue to enjoin any act or practice which violates [ERISA] or the terms of the plan, or to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce [ERISA] or the terms of the plan") (citation omitted)).

Generally, a plaintiff invokes § 502(a)(3) in "a situation in which the plaintiff is concededly not entitled to relief under the plain language of the plan (and thus § 502(a)(1)(B) would be of no use), but nevertheless deserves an equitable remedy because (for example) the defendant misled the plaintiff into thinking the plan was more generous than it in fact was." *Suchin v. Fresenius Med. Care Holdings, Inc.*, No. CV JKB-23-01243, 2024 WL 449322, at *6 (D. Md. Feb. 6, 2024). However, "[t]he law is clear that a plaintiff may not simply claim denial of benefits under § 502(a)(1)(B), then 'repackage' that claim as one for breach of fiduciary duty under § 502(a)(3)." *Chavis*, 2018 WL 4052182, at *11 (citing *Varity*, 516 U.S. at 513-15).

Relying on *Korotynska v. Metropolitan Life Insurance Co.*, Defendants argue that Count IV is subject to dismissal because it is a claim for wrongful denial of benefits repackaged as a claim for breach of fiduciary duty.[11] (ECF No. 69-1 at 25-28; citing 474 F.3d 101, 102-106 (4th Cir. 2006)). Specifically, Defendants contend that "the ultimate purpose of the equitable relief Plaintiffs seek is to secure or clarify their benefits, and § 502(a)(1)(B) review is fully available to Plaintiffs and provides adequate relief, § 502(a)(3) relief is not necessary or appropriate." *Id.* at 27. In response, Plaintiffs argue that *Korotynska* differs materially from the instant case and none of the aforementioned relief is available under § 502(a)(1)(B). (ECF No. 70 at 46.) In their Reply, Defendants argue that Plaintiffs' focus on equitable relief puts the cart before the horse; rather, Plaintiffs must allege that § 502(a)(1)(B) is inadequate and that the relief they request under § 502(a)(3) is appropriate and available. (ECF No. 73 at 11.)

As an initial matter "district courts in the Fourth Circuit dismiss the duplicative [§ 502(a)(3)] claim 'even at the motion to dismiss stage.'" *Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.*, No. 1:22CV595, 2022 WL 17607056, at *3 (M.D.N.C. Dec. 13, 2022) (quoting *Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*, No. 16-CV-125, 2017 WL 1155807, at *7 (M.D.N.C. Mar. 27, 2017) (citing *Korotynska*, 474 F.3d at 102, and collecting cases where district courts in the Fourth Circuit have dismissed § 1132(a)(3) claims at the motion to dismiss stage)). Importantly, however, "[w]here plaintiffs are not merely repackaging a benefits claims, it is entirely appropriate to bring simultaneous § 502(a)(3) and § 502(a)(1)(B) claims to address two separate and distinct injuries that are based in whole or in part on different facts." *England v. Marriott Intern., Inc.*, 764 F. Supp. 2d 761, 779 (D. Md. 2018) (citation omitted).

---

[11] As discussed in more detail below, Defendants also argue that Counts II and III are duplicative of Count I.

In *Korotynska*, the plaintiff brought a putative class action under ERISA. 474 F.3d 101, 103 (4th Cir. 2006). The plaintiff employee was a former participant in a disability plan for which the defendant acted as insurer and fiduciary. *Id.* The plaintiff filed a claim for, and received, short-term disability benefits. *Id.* After her short-term disability benefits expired, she filed a claim for long-term disability benefits. *Id.* She was eligible for such benefits initially, however, after the defendant conducted a review of her claim, the defendant terminated her benefits. *Id.*

The plaintiff filed suit for equitable relief under § 502(a)(3) for the defendant's alleged breaches of fiduciary duties. *Korotynska*, 474 F.3d at 103. The plaintiff made the following allegations to support her § 502(a)(3) claim:

> Specifically, Korotynska alleges that MetLife has breached its fiduciary duties by engaging in systematically flawed and abusive claims administration procedures, including, *inter alia*,
>
>> a. Targeting types of claims that have self-reported symptoms, lack of objective medical findings supporting the claims, or an undefined diagnosis, without due regard for the actual impact of the claimants' conditions on their ability to work;
>>
>> b. Targeting low-benefit claimants for denial and/or termination with the expectation that such claimants will not have the wherewithal or financial incentive to engage counsel to pursue their rights, or have the physical or emotional fortitude to fight over these benefits;
>>
>> c. Employing claim practices that ignore treating physician opinions, ignore subjective complaints of pain, and/or ignore the effects of medications upon claimants' abilities to work;
>>
>> d. Failing to consider in its handling of these claims, pursuant to 29 C.F.R. § 2560.503–1(h)(2)(iv), all comments, documents, records and other information submitted by the claimant relating to the claim;
>>
>> e. Requesting inappropriate, unnecessary and burdensome materials from claimants, all in furtherance of delaying claims determinations;

f. Designing a system in which claimants cannot receive a full and fair review of their claims, by virtue of its reliance upon Medical Examinations from Interested Physicians (called "Independent" Medical Examinations), Functional Capacity Evaluations ("FCE's") and/or peer reviews;

g. Utilizing the services of professional entities that perform medical and/or vocational reviews, including but not limited to National Medical Review, that are biased against claimants based upon financial incentives provided by Met Life;

h. Developing and utilizing claim management plans that are designed to terminate benefits not based upon the actual condition of claimants, but, rather, upon duration guidelines used to determine when to terminate claims;

i. Developing claim management plans to deny or terminate claims without due regard for the actual impact of the claimants' conditions on their ability to work; and

j. By employing numerous other practices that pressure claims handling personnel into denying or terminating legitimate claims.

474 F.3d 101, 103-104 (4th Cir. 2006). Pursuant to § 502(a)(3), the plaintiff sought "reform of the systemic improper and illegal claims handling practices that [defendant] uses to deny her and other ERISA beneficiaries a full and fair review of their claims for disability benefits and a full and fair review of claims (including Ms. Korotynska's) that have been denied or terminated, as well as other appropriate equitable relief." *Id.* at 104.

Thereafter, the defendant employer filed a motion for judgment on the pleadings, arguing, in part, that the plaintiff "was not entitled to bring a claim for equitable relief under § 502(a)(3), because adequate relief was available to her through § 502(a)(1)(B)." *Id.* The district court agreed and dismissed the plaintiff's § 502(a)(3) claim because she "'ha[d] available to her the alternative

remedy of bringing an action under [§ 502(a)(1)(B)].'" *Id.* (quoting *Korotynska v. Metro. Life Ins. Co.*, 2005 WL 991003 (D. Md. Apr. 28, 2005)).  The plaintiff appealed.  *Id.*

On appeal, the Fourth Circuit examined the Supreme Court's decision in *Varity Corp. v. Howe*:

> In *Varity*, the Supreme Court held that § 1132(a)(3) authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme. *Id.* at 512, 515, 116 S.Ct. 1065. The Court, taking both parts of § 1132(a)(3) as one whole, concluded that the provision creates a "catchall" which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id.* at 512, 116 S.Ct. 1065. But "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S.Ct. 1065.
>
> *Varity* itself provides an example of an injury that did not find adequate relief in other provisions of ERISA. The *Varity* plaintiffs suffered an injury when their employer consolidated many of its unprofitable divisions into a new subsidiary and then persuaded employees to transfer their benefit plans to the new subsidiary through deceptive depictions of its financial outlook. *Id.* at 493–94, 116 S.Ct. 1065. When the subsidiary failed and the employees lost their nonpension benefits, many sued for reinstatement of the benefits they would have been owed under their previous plan. *Id.* at 494, 116 S.Ct. 1065. The Supreme Court found:
>
>> The plaintiffs in this case could not proceed under [§ 1132(a)(1)] because they were no longer members of the [original] plan and, therefore, had no benefits due them under the terms of the plan. They could not proceed under [§ 1132(a)(2)] because that provision, tied to [§ 1109], does not provide a remedy for individual beneficiaries. They must rely on [§ 1132(a)(3)] or they have no remedy at all.
>
> *Id.* at 515, 116 S.Ct. 1065 (citations and internal quotation marks omitted). Because the *Varity* plaintiffs had "no remedy at all" for their injuries under the other provisions of ERISA, equitable relief under § 1132(a)(3) was "appropriate" and thus authorized by the statute. *Id.*

474 F.3d 101, 105 (4th Cir. 2006).

Relying on *Varity*, the *Korotynska* reviewing court examined whether the plaintiff's "injury is addressed by ERISA's other provisions and whether those provisions afford adequate relief." *Id.* If so, the court explained, "equitable relief under [§ 502(a)(3)] will normally not be 'appropriate.'" *Id.* The Fourth Circuit concluded equitable relief for plaintiff Korotynska under § 502(a)(3) was inappropriate:

> There is also no question that Korotynska's injury is redressable elsewhere in ERISA's scheme. Plaintiff complains that MetLife's allegedly improper claims procedures injured her by leading to the denial of benefits to which she was rightly entitled. Another provision of ERISA squarely addresses plaintiff's injury: Under § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).
>
> …
>
> Nevertheless, plaintiff claims that § 1132(a)(3) relief is "appropriate" under *Varity*, because review under § 1132(a)(1)(B) would not afford her "adequate" relief. But *Varity* itself undermines this contention. In *Varity*, the Supreme Court identified the danger that a beneficiary might "repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" 516 U.S. at 513, 116 S.Ct. 1065. The Court found this risk "unlikely to materialize," however, in part because "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Id.* at 514, 515, 116 S.Ct. 1065. In suggesting that Congress "provided adequate relief" for a "denial of benefits" claim without recourse to § 1132(a)(3), the Supreme Court intimated that equitable relief for breach of fiduciary duty would not be available for denial of benefits claims appealable under § 1132(a)(1)(B).
>
> …
>
> We join our sister circuits and hold that § 1132(a)(1)(B) affords the plaintiff adequate relief for her benefits claim, and a cause of action under § 1132(a)(3) is thus not appropriate. Plaintiff insists that § 1132(a)(1)(B) is inadequate because, "[u]nless MetLife is required

to answer for its actions under [§ 1132(a)(3)], its illegal practices will remain free from scrutiny." But this is not the case. This court has held that review of a benefits determination under § 1132(a)(1)(B) should consider, among other factors, "whether the decisionmaking process was reasoned and principled," "whether the decision was consistent with the procedural and substantive requirements of ERISA," and "the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000). These factors address exactly the kinds of procedural deficiencies alleged by the plaintiff, in the context of review of actual benefits claims under § 1132(a)(1)(B).

Nor is there a basis to conclude that review of claims procedures in such a context affords relief that is other than adequate. Other circuits have held the remedy set forth by Congress in § 1132(a)(1)(B) adequate to redress injuries arising from the denial of benefits. *See, e.g., Antolik*, 463 F.3d at 803; *Ogden*, 348 F.3d at 1287–88; *Wilkins*, 150 F.3d at 615–16; *Forsyth*, 114 F.3d at 1474–75. In considering the adequacy of the remedy expressly provided by Congress, it is important to recognize that ERISA is a "comprehensive and reticulated statute," whose "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal citations and quotation marks omitted). Courts should therefore be "especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Id.* (internal quotation marks omitted).

It would certainly be improvident to do so here. Not only is relief available to the plaintiff under § 1132(a)(1)(B), but the equitable relief she seeks under § 1132(a)(3)—the revision of claims procedures—is pursued with the ultimate aim of securing the remedies afforded by § 1132(a)(1)(B). The plaintiff admits that she reserves her § 1132(a)(1)(B) claim so that she might bring it at a later date under reformed claims procedures achieved through the current litigation. It may be that plaintiff perceives in § 1132(a)(3) a clearer path to § 1132(a)(1)(B) relief while possibly circumventing § 1132(a)(1)(B)'s standard of review of abuse of discretion. But *Varity* allows equitable relief when the available remedy is inadequate, not when the legal framework for obtaining that remedy is, to the plaintiff's mind, undesirable. "To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid

> the implications of section 502(a)(1)(B) by artful pleading." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir.1996).

*Id.* at 106-108.

Importantly, the Fourth Circuit emphasized that this does not undermine "the ability of plan participants to seek recoveries to the benefit plan under [§ 502(a)(2)] for breaches of fiduciary duty." *Id.* at 108 (citing 29 U.S.C. §§ 1109, 1132(a)(2); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570, 573 (4th Cir. 2006); *Coyne*, 102 F.3d at 714; 29 U.S.C. § 1132(a)(5) (enabling the Secretary to "enjoin any act or practice which violates any provision of this title," as well as to "obtain other appropriate equitable relief"); and *Chao v. Malkani*, 452 F.3d 290, 292 (4th Cir. 2006)).

The court agrees with Defendants that *Korotynska* is directly on point – Plaintiffs' "injury is redressable elsewhere in ERISA's scheme." 474 F.3d at 106. Like the *Korotynska* plaintiff, Plaintiffs allege that Defendants breached their fiduciary duties by "ignoring the advice of their own advisors to read the entire administrative record," failing to ensure that the neutral physicians were impartial, and retaining physicians motivated by financial incentives rendering them biased. (ECF No. 56 ¶¶ 310-11, 315-21, 324.) While Plaintiffs base their breach of fiduciary duty claim on the alleged misrepresentations and inaccurate disclosures Defendants are alleged to have made about the Plan, the breach of fiduciary duty claim and the wrongful denial of benefits claim seek to remedy the same alleged injury – wrongful denial of benefits. Stated differently, Plaintiffs' breach of fiduciary duty claim in Count IV is not based upon Defendants' alleged misrepresentations regarding Plan terms; rather, Plaintiffs contend that Defendants (mis)represented that they reviewed the whole record and that the physicians were neutral – both features required under the Plan terms.

Review of Plaintiffs' allegations set forth in Count I makes plain that Count I and IV are based upon the same allegations and seek redress for the same nucleus injury – wrongful denial of benefits. In Count I, Plaintiffs allege that "Defendants failed to review the entire administrative record, defaulted to biased physicians, and failed to explain why they disagreed with medical views in the record that favored the award of benefits." (ECF No. 56 ¶ 289.) Plaintiffs further allege that Defendants "improperly relied upon, and even defaulted their decision-making, to many physicians with significant financial conflicts of interest that substantially impacted their professional and ethical obligations." *Id.* ¶ 287. Plaintiffs allege that "Defendants' decision-making process was neither reasoned nor principled." *Id.* ¶ 286.

The court's consideration of Plaintiffs' wrongful denial of benefits claim in Count I will necessarily include, "the language of the plan; . . . the adequacy of the materials considered to make the decision and the degree to which they support it; [] whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; [] whether the decisionmaking process was reasoned and principled; [] whether the decision was consistent with the procedural and substantive requirements of ERISA; . . . and [] the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). The factors the court would consider as to Count I will therefore "address exactly the kinds of procedural deficiencies alleged by [Plaintiffs]" in Count IV. *Korotynska*, 474 F.3d at 107; *see also Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.*, No. 1:22CV595, 2022 WL 17607056, at *3 (M.D.N.C. Dec. 13, 2022) (noting that "[w]here a plaintiff makes only allegations that are 'routinely taken up in appeals of benefit denials,' such as issues relating to claims procedures and determinations," the case "is not 'exceptional' and there are no "special circumstances for which equitable relief [under § 502(a)(3)]

is uniquely appropriate'") (quoting *Korotynska*, 474 F.3d at 107-108 (noting that review under [§ 502(a)(1)(B)] includes consideration of "procedural deficiencies")).

Indeed, Plaintiffs "simply want[] what was supposed to have been distributed under the plan"; therefore, "the appropriate remedy is § 502(a)(1)(B)." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.*, 102 F.3d 712 (4th Cir. 1996) (citation omitted); *see Koman*, 2022 WL 17607056, at *4 (analyzing the plaintiff's claims under § 502(a)(3) and § 502(a)(1)(B) and concluding that the plaintiff's § 502(a)(3) "is nothing more than additional explanation of allegations already made" under § 502(a)(1)(B) where the plaintiff alleges that the breach of fiduciary duty included "several specific acts, such as failing to give sufficient weight to the opinions of [the plaintiff's'] physicians and mailing important correspondence to an incorrect address"); *Batten v. Aetna Life Ins. Co.*, No. 3:15CV513, 2016 WL 4435681, at *4 (E.D. Va. Aug. 17, 2016) (explaining that "Count I alleges that [the defendant] improperly terminated [the plaintiff's] disability benefits. Count II alleges that [the defendant] followed improper procedures when it terminated [the plaintiff's] disability benefits. [The plaintiff's] two claims seek the same thing—disability benefits under her Disability Policy."); *compare Suchin v. Fresenius Med. Care Holdings, Inc.*, No. CV JKB-23-01243, 2024 WL 449322, at *6 (D. Md. Feb. 6, 2024) (declining to dismiss the § 502(a)(3) claim because the plaintiff did "not seek benefits he claims he was wrongfully denied; instead, he claims that he was 'misled by [the defendant] as to the material terms and conditions of its disability plan' and seeks to estop Fresenius from enforcing the terms of the plan").

Plaintiffs' reliance on *England v. Marriott Int'l Inc.*,[12] *Guardian Life Ins. Co. of Am. v. Reinaman*,[13] and *Sloan v. Life Ins. Co. of N. Am.*[14] is misplaced. In those cases, the plaintiffs proceeded under two separate theories: under one theory, they were entitled to plan benefits; under the other theory, they were not covered by the plan, so their injuries were not redressable by § 502(a)(1)(B). *See Guardian Life Ins. Co. of Am. v. Reinaman*, No. CIV. WDQ-10-1374, 2011 WL 2133703, at *9 (D. Md. May 26, 2011) (denying motion to dismiss the plaintiff's § 502(a)(3) claim because if the plaintiff could prove "that [a representative of defendant] misinformed [plaintiff] of the process for obtaining coverage, and as a result [plaintiff] was never covered by [defendant]" then "[the plaintiff] could not proceed under § 502(a)(1)(B) but could sue under § 502(a)(3)"); *Sloan v. Life Ins. Co. of N. Am.*, No. CV BPG-18-3055, 2019 WL 6173410, at *4 (D. Md. Nov. 20, 2019) (allowing simultaneous § 502(a)(1)(B) and § 502(a)(3) claims where the § 502(a)(3) claim was based on allegations that a fiduciary "breached its fiduciary duty as the Plan administrator to provide [the plaintiff] with required information regarding her life insurance coverage"); *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779-80 (D. Md. 2011) (allowing simultaneous § 502(a)(1)(B) and § 502(a)(3) claims where plaintiffs § 502(a)(3) was "based on [the defendants] failure to bring the Retirement Awards into compliance with ERISA's vesting requirements" and therefore, allowing the plaintiffs to "first pursue a claim under Section 502(a)(3) for reformation of the terms of the Retirement Awards, and then to pursue a claim under Section 502(a)(1)(B) for recalculation and distribution of benefits due under the ERISA-complaint terms of the revised awards"); *see also Varity*, 516 U.S. at 515 (allowing § 502(a)(3) claim to proceed because "[t]he plaintiffs . . . could not proceed under [§ 1132(a)(1)(B)] because they were no

---

[12] 764 F. Supp. 2d 761 (D. Md. 2011).
[13] No. CIV. WDQ-10-1374, 2011 WL 2133703 (D. Md. May 26, 2011).
[14] No. CV BPG-18-3055, 2019 WL 6173410 (D. Md. Nov. 20, 2019).

longer members of the . . . plan and, therefore, had no 'benefits due [to them] under the terms of [the] plan.'") (quoting § 1132(a)(1)(B)); *Batten v. Aetna Life Ins. Co.*, No. 3:15CV513, 2016 WL 4435681, at *3 (E.D. Va. Aug. 17, 2016) (identifying allegations that justify proceeding under § 1132(a)(3) such as "alleg[ations] [of] fiduciary misconduct affecting or modifying [a] disability plan or [a plaintiff's] status as a plan participant").

Here, Plaintiffs' claims plainly rely on their Player status as Plan participants; they do not proceed on alleged facts that they are ineligible for benefits or not covered by the Plan such that § 502(a)(1)(B) relief would be unavailable. *Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.*, No. 1:22CV595, 2022 WL 17607056, at *4 (M.D.N.C. Dec. 13, 2022) (declining to allow simultaneous pleading because the plaintiff "has not alleged facts that show a possibility that she is not a participant or beneficiary who can recover benefits under [§ 502(a)(1)(B)]" and "[i]nstead [] has only one injury and only one theory of recovery"). Plaintiffs do not allege that Defendants misrepresented the process for obtaining coverage, or that Defendants' alleged misconduct modified their status as Plan participants. Rather, the relief Plaintiffs seek, including revising the claims procedures, "is pursued with the ultimate aim of securing the remedies afforded by [§ 502(a)(1)(B)]." *Korotynska*, 474 F.3d at 107-108. Finally, and importantly, resolution of Count IV "rests upon interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999) (noting "that a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA").

The Motion as to Count IV will be granted on this basis. The court declines to address Defendants' alternative arguments as to Count IV.

### C.    Breach of Fiduciary Duties, ERISA § 502(a)(2) (Count V)

In Count V, Plaintiffs bring a claim on behalf of the Plan pursuant to § 502(a)(2) for alleged breaches of the fiduciary duties of loyalty and care by: (1) failing to pay contractually authorized benefits; (2) failing to "ensure that its hired physicians' compensation is not based upon their reputation and likelihood that they will support the denial of benefits;" (3) failing to act prudently through its "bizarre interpretations, continuous disregard for legal precedent, and multiple erroneous interpretations of the same or similar provisions;" (4) failing to review the entire administrative record; and (5) ignoring the advice of their own advisors.  (ECF No. 56 ¶¶ 333, 342, 346, 347.)

As an initial matter, the only proper defendant for a section 502(a)(2) claim "is a fiduciary."[15]  *Hall v. Tyco Intern. Ltd.*, 223 F.R.D. 219, 235 (M.D.N.C. 2004).  "To state a claim for breach of fiduciary duty under ERISA, the plaintiff must allege: (1) that the defendant was a fiduciary, (2) who was acting within his fiduciary capacity, and (3) breached his duty." *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 494 (D. Md. 2010).  "If an ERISA fiduciary breaches their fiduciary duty, § 409 makes them liable to the plan."  *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023).  "And § 502(a)(2) allows plan participants to bring a derivative action to enforce § 409 and 'to obtain recovery for losses sustained by the plan because of breaches of fiduciary duties.'"  *Id.* (quoting *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008).  In contrast to § 502(a)(3), "recovery under § 502(a)(2) goes to the plan, not to the beneficiary bringing the action."  *Id.* (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)).

---

[15] The Amended Complaint fails to state which counts are asserted against which Defendants.

Defendants argue that Plaintiffs' claim fails because they fail to plead facts establishing a fiduciary duty breach by any Trustee.[16] (ECF No. 69-1 at 45.) Defendants additionally argue that Plaintiffs lack standing to bring their claim because they have not alleged any concrete injury to the Plan. (ECF No. 69-1 at 46.)

"ERISA fiduciaries are required to discharge their duties 'solely in the interest of the participants and beneficiaries,' and 'for the exclusive purposes of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan,' 29 U.S.C. § 1104(a)." *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 494 (D. Md. 2010). Section 1104(a) provides:

> . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>> **(A)** for the exclusive purpose of:
>>> **(i)** providing benefits to participants and their beneficiaries; and
>>> **(ii)** defraying reasonable expenses of administering the plan;
>>
>> **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>>
>> **(C)** by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>>
>> **(D)** in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

---

[16] It is not entirely clear whether Defendants contend that Plaintiffs fail to state a claim in Count V because the Trustees are not fiduciaries or because no facts suggest that the Trustees, as opposed to the Board, breached a fiduciary duty. To the extent Defendants maintain that the Trustees should be dismissed because they are not fiduciaries, the court addresses this argument below. *See* Section IV.E, *infra*.

29 U.S.C. § 1104(a).

The court finds *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan* instructive. No. CV ELH-17-2729, 2018 WL 4052182 (D. Md. Aug. 23, 2018). There, the plaintiffs alleged, in part, that the defendants breached their fiduciary duties by failing to administer the plan in accordance with the terms, misrepresenting the terms of the plan, failing to administer the plan solely in the interests of the plan participants, and providing misinformation. *Id.* at *7. In seeking to dismiss the plaintiff's claims under ERISA § 502(a)(2), the defendants argued that relief may only be granted to the plan as a whole and the plaintiffs could not show the plan suffered a loss. *Id.* at *11. The court declined to dismiss the plaintiffs' claims under § 502(a)(2):

> As stated, ERISA § 502(a)(2) provides a cause of action for breach of fiduciary duty. Although an individual may bring a claim under § 502(a)(2), only the plan as a whole, and not an individual beneficiary, is entitled to relief under this provision. *Russell*, 473 U.S. at 140, 105 S.Ct. 3085; *LaRue*, 552 U.S. at 250, 128 S.Ct. 1020; *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013). A claim for individual relief under § 502(a)(2) is impermissible because "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256, 128 S.Ct. 1020; *see Russell*, 473 U.S. at 140, 105 S.Ct. 3085.
>
> However, it appears that plaintiffs seek relief on behalf of the Plan. Indeed, they explicitly ask this Court to grant relief to Chavis and Taylorson, "on behalf of the Plan." *See, e.g.*, ECF 1 at 37 (emphasis added). Additionally, the remedy sought by plaintiffs is not only for plaintiffs. They seek to bar each defendant from "ever acting as a fiduciary of any ERISA-covered plan." *Id.* at 36.
>
> In *Russell*, 473 U.S. at 142, 105 S.Ct. 3085, the Supreme Court stated: "Congress specified that this remedial phrase includes 'removal of such fiduciary'—an example of the kind of 'plan-related' relief . . . ." If the fiduciaries are found to have breached their duties, removal would likely serve to "'protect the entire plan, rather than [only] the rights of an individual beneficiary.'" *LaRue*, 552 U.S. at 252, 128 S.Ct. 1020 (quoting *Russell*, 473 U.S. at 142, 105 S.Ct. 3085) (alteration added).

Moreover, plaintiffs have not merely requested damages under § 502(a)(2). *See LaRue*, 552 U.S. at 254, 256, 128 S.Ct. 1020 (concluding that a plaintiff cannot merely seek consequential damages under § 502(a)(2), but can seek relief for a breach that impairs the value of their individual account, and thus the value of total plan assets); *Varity*, 516 U.S. at 509, 116 S.Ct. 1065 (stating that in *Russell*, the Court prohibited plaintiffs from recovering compensatory and punitive damages under § 502(a)(2)); *Russell*, 473 U.S. 148, 105 S.Ct. 3085 (concluding that an individual was not permitted to seek extra-contractual damages under § 502(a)(2), because damages paid to one person is an individual recovery). In viewing plaintiffs' Complaint, there is nothing to suggest that plaintiffs seek only individual relief, instead of relief on behalf of the Plan as a whole.

In their Reply, defendants introduce a new argument: Plaintiffs cannot show that the Plan as a whole suffered harm, so their claims under § 502(a)(2) should be dismissed. *See* ECF 27 at 9. Although claims under § 502(a)(2) allow recovery for breaches that harm a plan as a whole, defendants cite no authority requiring plaintiffs to show harm or loss or providing a standard of "harm" that plaintiffs are required to meet. At this stage, plaintiffs have adequately alleged a breach of fiduciary duty. *See, e.g., Reinaman*, 2011 WL 2133703, at *7; *Cuthie*, 743 F. Supp. 2d at 494.

*Id.* at *11.

Defendants do not appear to dispute that the Board is a proper defendant under § 502(a)(2).

The Plan documents provide that the Board is the "named fiduciary." (ECF No. 69-7 at 48.) Like

*Chavis*, Plaintiffs here seek relief on behalf of the Plan and the remedy sought includes removing

Board members as fiduciaries. (ECF No. 56 ¶¶ 331, 348.) Specifically, Plaintiffs allege:

First, the Board's repeated refusal to pay contractually authorized benefits has been willful and part of a larger systematic breach of its fiduciary obligations on a plan-wide basis. The Board created and promoted systematic perverse incentives regarding compensation, promotion, and retention of significantly biased physicians on a plan-wide basis, and fraudulently misrepresent those same biased physicians as "absolutely neutral in this process" to actively conceal their substantial misconduct. The magnitude of these plan-wide perverse incentives, particularly when correlated with their irreconcilable conclusions; solicitation of and reliance upon flawed reports; and retention and lavish renumeration of physicians having

a track record of minimizing genuine medical conditions shows that there is a plan-wide conflict that does, in fact, repeatedly and on an ongoing basis, significantly harm and negatively influence the plan-wide implementation and integrity of the claims administration process, in violation of ERISA.

…

The Board's systematic policies and practices of hiring, generously compensating, retaining, promoting, and training these physicians have caused plan-wide injury to the Plan itself through its blatant failure to ensure that its hired physicians' compensation is not based upon their reputation for and likelihood that they will support the denial of benefits.

The Board has deliberately perpetuated and designed a sham claims process through plan-wide methodical implementation and plan-wide misinformation that has injured the integrity of the process. For example, the Board touts to Players through repeated misrepresentations that these biased physicians are "*absolutely neutral* in the process." (Emphasis added.) Also, the Board has actively concealed its ERISA violations through repeated false reassurances such as "that the Plan's Neutral Physicians have *no* incentive to hurt or help Players." (Emphasis added.)

…

This plan-wide harm to the implementation and integrity of the claim process is glaringly a larger systematic harm, when comparing the 100% T & P denial rate of the seven highest-paid physicians with average annual compensation of $200,000 or more, and comparing that rate of denial to the 25.93% overall findings of T & P disability by Plan physicians with an average annual Board compensation of $50,000 or less. This disparity is not coincidental but, rather, willful, systematic, and methodical.

Such methodical and fixed patterns are willful and egregious breaches of the fiduciary duties of loyalty and care. As a result, the Plan has wasted at least $29,659,657 since April 1, 2009 on this sham process, through payments to physicians with high T & P disability denial rates.

Second, the Board's bizarre interpretations, continuous disregard for legal precedent, and multiple erroneous interpretations of the same or similar provisions, evinces violations of both the Plan and ERISA that support the overall conclusion that the Board has not acted

prudently, *see* ERISA § 404(a)(1)(b), 29 U.S.C. § 1104(a)(1)(B), and that it has failed to act solely in the interest of Plan participants. For example, although federal courts have repeatedly held that the Board acts unreasonably when failing to consider the collective impact of all elements and impairments asserted by Players, the Board continues, on a plan-wide basis, to blatantly disregard those holdings.

Third, Board members are, by their own admission, unqualified to perform their statutory responsibilities themselves to review the entire record as required by ERISA and have, instead, implemented surreptitious practice to delegate their own responsibilities to others without directions to review the entire administrative record. As a result, Board members themselves do not review the entire administrative record as required by statute and in stark contrast to what Players are lulled into believing from information about the Plan in SPDs and decision letters.

…

Board members' misconduct cannot be justified, and the only adequate remedy for these plan-wide harms to the integrity of the claims process is to remove them as fiduciaries pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

(ECF No. 56 ¶¶ 333, 335-36, 339, 341-42, 344, 348.)

Plaintiffs adequately allege breaches of fiduciary duties by (and against) the Board: failure to act in accordance with the Plan and failure to act in sole/best interest of the Plan participants. Further, many of Defendants' arguments go to the merits of Plaintiffs' claim, not appropriate for resolution on a 12(b)(6) motion; these arguments may be raised at the Rule 56 stage. The court is also satisfied that Plaintiffs' allegations are sufficient to meet the pleading requirement of Rule 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1297, at 590 (2d ed. 1990)). Plaintiffs' allegations include are more

than ample to satisfy this standard, including dates that the Board issued its denial letters to Plaintiffs, the contents of alleged false representations, and the like. (ECF No. 56 ¶¶ 160, 170, 173, 184, 186, 189, 201, 214, 222, 237, 252, 263, 266.) The Motion as to Count V will be denied.

### D. Failure to Provide Adequate Notice and Denial of Full and Fair Review – Counts II and III

In Count II, Plaintiffs allege that Defendants violated § 503(1) of ERISA, 29 U.S.C. § 1133(1), by providing "inadequate notice, which failed to list the specific reasons for adverse determinations." (*Id.* ¶ 293.) In Count III, Plaintiffs allege that Defendants violated § 503(2) of ERISA, 29 U.S.C. § 1133(2), by denying Plaintiffs a full and fair review of claim denials. (*Id.* ¶ 297.) Defendants argue that Counts II and III should be dismissed because they repackage the same factual allegations contained in Count I as support for equitable relief under § 502(a)(3). (ECF No. 69-1 at 25.) In addition, Defendants contend recovery is unavailable under § 503(1): the "alleged procedural violations [] are not independently actionable under § 503." (ECF No. 69-1 at 30.) Plaintiffs counter that Counts II and III are asserted in conjunction with § 502(a)(3), for which they seek equitable relief, and thus, are not invoked as an independent jurisdictional basis. (ECF No. 70 at 55.) Plaintiffs further argue that "[t]he individual recovery of benefits would not provide a complete adequate remedy for these systemic, plan-wide improper practices." (ECF 70 at 52.)

Section 1133(1) requires that every plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Section 1133(2) provides that every plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and

fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §

1133(2).

"These procedural guidelines are at the foundation of ERISA." *Weaver v. Phoenix Home*

*Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993). "Congress intended that ERISA provide

plan administrators and participants the opportunity and freedom to resolve internal disputes

without necessarily having to resort to the expense and delay of the courts." *Id.* "Given this goal,

Congress assured plan participants of procedural fairness, by mandating that plan administrators

provide a 'full and fair review' of claims and the specific reasons for claim denials." *Id.*

ERISA regulations elaborate what a denial notice must contain:

> (1) The specific reason or reasons for the denial;
> (2) Specific reference to pertinent plan provisions on which the
> denial is based;
> (3) A description of any additional material or information
> necessary for the claimant to perfect the claim and an explanation of
> why such material or information is necessary; and
> (4) Appropriate information as to the steps to be taken if the
> participant or beneficiary wishes to submit his or her claim for
> review.

*Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 234 (4th Cir. 1997) (quoting 29 C.F.R. § 2560.503–

1(f)). Further, the claims procedures necessary to meet the ERISA requirements for a full and fair

review include:

> [T]he claims procedures of a plan will not be deemed to provide a
> claimant with a reasonable opportunity for a full and fair review of
> a claim and adverse benefit determination unless the claims
> procedures . . . (ii) Provide claimants the opportunity to submit
> written comments, documents, records, and other information
> relating to the claim for benefits; (iii) Provide that a claimant shall
> be provided, upon request and free of charge, reasonable access to,
> and copies of, all documents, records, and other information relevant
> to the claimant's claim for benefits; (iv) Provide for a review that
> takes into account all comments, documents, records, and other
> information submitted by the claimant relating to the claim, without

> regard to whether such information was submitted or considered in
> the initial benefit determination.

29 C.F.R. § 2560.503–1(h)(2)(ii)–(iv) (2008).

*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 237 (4th Cir. 2008).

To the extent Plaintiffs maintain that these claims arise under § 502(a)(3), the claims are improper as duplicative. *See* Section IV.B, *supra*, and *Koman*, 2022 WL 17607056, at \*5 (analyzing the plaintiff's claim of denial of full and fair review under § 502(a)(3) and concluding that it contains the same allegations the plaintiff made in the previous breach of fiduciary duty claim § 502(a)(3) and wrongful denial of benefits claim under § 502(a)(1)(B)). While some courts in this circuit have concluded there is no private right of action under § 1133(1) – *see, e.g., Koman v. Reliance Standard Life Ins. Co. & Unifi Inc.*, 1:22CV595, 2022 WL 17607056, at \* 5 (M.D.N.C. Dec. 13, 2022), some have allowed procedural violation claims to proceed under § 1133. *See, e.g., Exact Scis. Corp. v. Blue Cross & Blue Shield of N. Carolina*, No. 1:16CV125, 2017 WL 1155807, at \*9 (M.D.N.C. Mar. 27, 2017).

The court finds instruction from *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230 (4th Cir. 2008). There, the Fourth Circuit analyzed a procedural ERISA violation involving a defective notice:

> Our decision in *Sedlack v. Braswell Services. Group, Inc.*, 134 F.3d
> 219 (4th Cir. 1998), guides the result in this case. We determined in
> *Sedlack* that, as in the case at bar, a defective notice to a plan
> participant could not create a substantive remedy for a claim that
> was otherwise not cognizable under the terms of the ERISA plan.
>
>> Section 1133 requires that every plan "provide
>> adequate notice in writing to any participant or
>> beneficiary whose claim for benefits under the plan
>> has been denied, setting forth the specific reasons for
>> such denial, written in a manner calculated to be
>> understood by the participant." 29 U.S.C. § 1133(1).
>> Although the district court found that Braswell's

notices were defective, it held that Sedlack could not recover for unreasonable claims practices because a breach of section 1133 does not provide a claimant with any new substantive rights. "Where, as here," the district court concluded, "Sedlack's claim is not covered, Braswell's breach of section 1133 would not entitle him to benefits or to an award of damages." This reasoning is sound and supported by persuasive judicial authority. *See Ashenbaugh v. Crucible Inc.*, 1975 Salaried Retirement Plan, 854 F.2d 1516, 1532 (3d Cir.1988) (noting "general principle" that "an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy"), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019; *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985) ("A substantive remedy would be appropriate only if the procedural defects caused a substantive violation or themselves worked a substantive harm.").

*Sedlack*, 134 F.3d at 225.

Even though Reliance failed to provide Gagliano with the proper appeals notice required by ERISA in the Second Termination Letter, that procedural violation cannot afford Gagliano a substantive remedy if she has no entitlement to benefits under the terms of the Plan. In cases where there is a procedural ERISA violation, we have recognized the appropriate remedy is to remand the matter to the plan administrator so that a "full and fair review" can be accomplished. "Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'" *Weaver*, 990 F.2d at 159. *See also Caldwell v. Life Ins. Co. of N. America*, 287 F.3d 1276, 1288–89 (10th Cir.2002).

The only exception to that rule would be where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law.

547 F.3d at 239-40.

The court agrees with Defendants that were Plaintiffs to prevail on Counts II and III, they would not be entitled to any additional or different remedy not otherwise available through Count I. That said, in consideration of the weight of persuasive precedent permitting such claims to go forward at the motion to dismiss stage, the court declines to dismiss Counts II and III as duplicative. *See Exact Scis. Corp.*, 2017 WL 1155807, at *9 (allowing claim under § 503 to go forward and noting that "[i]f th[e] claim progresses further, though, appropriate relief appears to be remand, unless the evidence establishes that [the defendant's] denial of the claims was an abuse of discretion as a matter of law") (citing *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240-41 (4th Cir. 2008) (noting that in cases of a procedural ERISA violation, the "proper remedy [is] to remand to the plan administrator for the 'full and fair review' to which [the claimant] is entitled regarding the denial of benefits")).

To the extent Defendants argue that Plaintiffs fail to state a claim for relief in Counts II and III, the court disagrees. Plaintiffs allege:

> Defendants violated Section 503(1) of ERISA by providing inadequate notice, which failed to list the specific reasons for adverse determinations. For example, the Board issued a final decision on Plaintiff Sims' claim in which it contended that Mr. Sims' "file contain[ed] no evidence that [his] disability arose while an Active Player." Moreover, the Special Rules of Section 3.5 of the Plan were not cited or referenced in the Board's decision letter.

> What was omitted from the decision letter issued to Plaintiff Sims is that, contrary to the Plan's terms, the Board has adopted an unreasonable, clandestine interpretation of the Plan that Active Football T & P benefits are intended only for situations where a Player suffers a catastrophic injury, such as a paralyzing collision, during a game. Board members acknowledged this crabbed interpretation in the Cloud action.

> Moreover, Defendants have violated Section 503(1) by failing to discuss the specific reasons for disagreeing with medical views that favor an award of benefits. For example, for Plaintiff McKenzie, Defendants' own physician, Dr. Clark, expressed his view that if he

were permitted to consider neurological impairments and psychiatric impairments together, Mr. McKenzie's psychiatric status appeared to be "totally" disabling. The decision letter issued to Plaintiff McKenzie, however, did not even acknowledge this medical opinion favorable to Mr. McKenzie, let alone explain the Board's disagreement with it.

…

Defendants failed to take affirmative steps to limit the likelihood of bias and to promote accurate claims determinations. For example, Defendants fail to conduct independent substantive audits to ensure that decisions are not based upon the likelihood that a physician who is asked to evaluate an applicant will issue a result-driven report to support the denial of benefits.

As recounted above, Defendants deprived Plaintiffs and absent Class members of a full and fair review because Plaintiffs have been examined by conflicted physicians. For example, Dr. McCasland, who has received over $1.8 million in compensation from Defendants, conducted examinations of Plaintiffs McKenzie, McGahee, Alford, and many absent Class members. In a sample of 37 examinations that he conducted for T & P disability and LOD disability benefits purposes, Dr. McCasland found no Player to be entitled to either benefit . . . .

Also, Defendants failed to comply with 29 C.F.R. § 2560.503-1(h)(3)(ii)'s mandate to "not afford deference to the initial adverse benefit determination" and to have review conducted by an individual who did not "ma[k]e the adverse benefit determination that is the subject of the appeal" or who was not that individual's subordinate. In deciding appeals, the Board has relied on advisors who heavily influence and are involved in the Committee's initial benefits determinations . . . .

(ECF No. 56 ¶¶ 293-95, 300-302.)  Plaintiffs further seek "[e]quitable relief requiring the reopening of all claims that resulted in an adverse determination by Defendants and mandating that Defendants conduct a full and fair review of those claims in accordance with the requirements of ERISA." *Id.* ¶ 377.  If Counts II and III progress further, however, the "appropriate relief appears to be remand, unless the evidence establishes that [the Board's] denial of the claims was an abuse of discretion as a matter of law." *See Exact Scis. Corp. and Gagliano, supra.*

E. **Claims against Trustees and the Commissioner**

Relying on *Jenkins v. Int'l Ass'n of Bridge*, Defendants argue that Plaintiffs' claims against the Individual Defendants, the Trustees and the Commissioner, fail because "Plaintiffs have not pleaded any allegations that the six current and former Board members who are named as individual defendants—Larry Ferazani, Jacob Frank, and Belinda Lerner (the Management Council Trustees) and Sam McCullum, Robert Smith, and Hoby Brenner (the Players Association Trustees)—or the Commissioner took any individual action that could give rise to a claim against them as individuals under these Counts." (ECF No. 69-1 at 43-44, citing, *inter alia, Jenkins v. Int'l Ass'n of Bridge*, Civ. Action No. 2:14-cv-526, 2015 WL 1291883 (E.D. Va. Mar. 20, 2015).) In response, Plaintiffs maintain that they plead "both (1) Board members' individual misconduct, and (2) sufficient facts to establish their status as functional fiduciaries in breach of their duties." (ECF No. 70 at 57.)

As an initial matter, for claims brought pursuant to § 502(a)(1)(B), the proper defendant is the plan, the plan administrator, or a fiduciary. *Hall v. Tyco Intern. Ltd.*, 223 F.R.D. 219, 234-35 (M.D.N.C. 2004). For claims brought pursuant to § 502(a)(2), the proper defendant is a fiduciary. *Id.* at 235. Accordingly, Plaintiffs must plausibly allege that the Trustees and the Commissioner are fiduciaries.

In *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, the Fourth Circuit explained:

> ERISA contemplates two general types of fiduciaries. *See, e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996). The first type is a "named fiduciary," which — as the term suggests — is "a fiduciary who is named" in the plan documents. *See* 29 U.S.C. § 1102(a)(2). The Act requires every covered employee benefit plan to "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Id.* § 1102(a)(1). That obligation "ensures that responsibility for

managing and operating the plan — and liability for mismanagement — are focused with a degree of certainty." *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 371 (4th Cir. 2014) (alterations and internal quotation marks omitted).

The second type of fiduciary contemplated by ERISA has been called a "functional fiduciary." *See Tatum*, 761 F.3d at 357 n.6. Section 1002(21)(A) of Title 29 defines such a fiduciary and provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*See* 29 U.S.C. § 1002(21)(A). In summarizing the two general types of ERISA fiduciaries, we have explained that "the concept of a fiduciary under ERISA . . . includes not only those named as fiduciaries in the plan instrument, . . . but [also] any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan." *See Custer*, 89 F.3d at 1161 (alterations and internal quotation marks omitted).

F.3d 269, 275-76 (4th Cir. 2019).

In *Jenkins*, the plaintiff brought claims for benefits wrongfully denied pursuant to § 502(a)(1)(B) and for equitable remedies pursuant to § 502(a)(3). 2015 WL 1291883, at *2. The defendant sought to dismiss the claims brought against trustees in their individual capacities. *Id.* at *4. The *Jenkins* court (Eastern District of Virginia) explained:

> To begin, Section 1102 of ERISA states that every benefits plan "shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Furthermore, 29 U.S.C. § 1132(d)(2) ("Section 1132(d)(2)") states, "[a]ny money judgment under this subchapter against an employee

benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." Accordingly, "[u]nder ERISA the defendants cannot be held personally liable for money damages absent a showing of individual misconduct. *See* 29 U.S.C. § 1132(d)(2) (2000). This, however, does not preclude a court from providing plaintiff's with declaratory and injunctive relief if the defendants breached their fiduciary duties." *Keegan v. Steamfitters Local Union No. 420 Pension Fund*, 174 F. Supp. 2d 332, 340 (E.D. Pa.2001).

*Id.* at *4.

The *Jenkins* court emphasized that the plaintiff was "not claiming breach of fiduciary duty by any individual Defendant, nor has Plaintiff alleged facts to support the notion that such a breach occurred" *Id.* The court also relied upon *Clark v. Nationwide Mutual Ins. Co.*, where the Southern District for West Virginia "held that Nationwide, even though not the named plan administrator, was a proper defendant in a Section 1132(a)(1)(B) action because Nationwide appeared 'to have had adequate control over Clark's claim to justify being named as the defendant.'" *Id.* (quoting *Clark v. Nationwide Mutual Ins. Co.*, 933 F. Supp. 2d 862 (S.D. W.Va. 2013)). In concluding that the plaintiff's failed to allege sufficient facts regarding "adequate control," the *Jenkins* court explained:

> Firstly, Plaintiff has sued the Trustees in their individual capacity and not as administrators or fiduciaries under the Pension Plan. This tends to neutralize Plaintiff's argument that the individual Trustees arc proper defendants because they are acting as fiduciaries when he is not claiming they breached any specific fiduciary duty. Based on a reading of Section 1132(d)(2), as well as case law from other circuits, this is not proper absent a showing of individual misconduct, i.e., breach of a fiduciary duty. Plaintiff has not claimed breach of fiduciary duty here. Secondly, Plaintiff has not made a showing that any of the individual Trustees, as opposed to the collective "Board of Trustees," had adequate control over the Pension Plan such that this matter would fall under the principles of Nationwide. The Pension Plan clearly states it is to be administered by the Trustees in their collective capacity. It does not provide for individual administration. Defendants' admitted that both the Board

> of Trustees and the Pension Plan are proper Defendants to this action, but challenge the sufficiency of the complaint as to the individual Trustees.
>
> As a matter of law, Section 1132(d)(2) prohibits holding an individual defendant personally liable for money damages absent a showing of individual misconduct.

*Jenkins v. Int'l Ass'n of Bridge*, Civ. Action No. 2:14-cv-526, 2015 WL 1291883, *5 (E.D. Va. Mar. 20, 2015).

As with the plaintiff in *Jenkins*, Plaintiffs here do not set forth allegations to support a conclusion that the Trustees or the Commissioner, as opposed to the Board, had adequate control over the Board.  Moreover, the Plan documents provide that the Board is the "named fiduciary." (ECF No. 69-7 at 48.)  Further, Plaintiffs do not allege that the Trustees or the Commissioner breached a fiduciary duty.  Indeed, it is not entirely clear whether Plaintiffs seek to bring this action, or any count of it, against the Trustees or the Commissioner in their individual capacities. (*See n.15, supra.*)  The court notes that Plaintiffs amended their original complaint to substitute the new Board members, suggesting that their allegations target the Board, not individual Trustees. Plaintiffs' allegation that the Board's conduct should be "considered in the aggregate" further suggests Plaintiffs do not seek to recover from the Trustees and or Commissioner individually. (ECF No. 70 at 59; citing *Chao v. Malkani*, 452 F.3d 290, 294 (4th Cir. 2006)).  In sum, Plaintiffs fail to allege that the Trustees or the Commissioner participated in any of the alleged misconduct in their individual capacities.  Accordingly, the Motion will be granted as to all counts against the Trustees and the Commissioner in their individual capacities.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motion to Dismiss (ECF No. 69) is GRANTED IN PART and DENIED IN PART: granted as to Counts I through V against the Trustees and the Commissioner; granted as to Count IV against all Defendants; and denied in all other respects.

A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

March 20, 2024