# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, | No. 1:23-cv-00358-JRR |
| Plaintiffs, | |
| vs. | |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .............................................................................................. 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT … ................................................................................................. 4

I.   GENERAL STANDARDS FOR CERTIFYING CLASSES ........................................ 4

II.  THE CLASS AND SUBCLASSES EASILY SATISFY THE RULE 23(a) ELEMENTS ....... 6

    A.   Class Membership Is Readily Ascertainable ............................................... 6

    B.   The Class and Subclasses Satisfy the Rule 23(a)(1) Numerosity Test ...................... 8

    C.   The Rule 23(a)(2) Commonality Requirement Is Also Met ............................... 9

    D.   Plaintiffs' Claims Are Typical of Those of Absent Class and Subclass Members .... 16

    E.   Plaintiffs Will Adequately Represent the Class and Their Respective Subclasses.... 20

        1.   Plaintiffs Are Adequate Class and Subclass Representatives .............................. 21

        2.   The Class and Subclasses Will Be Adequately Represented by Counsel ........... 21

            a.   Seeger Weiss ............................................................................... 22

            b.   Athlaw ......................................................................................... 26

            c.   Aylstock Witkin ........................................................................... 29

            d.   The Work Done Thus Far by Plaintiffs' Counsel and Resources That They Will Bring to Bear in This Litigation ......................... 31

III. PLAINTIFFS' CLAIMS ARE EMINENTLY SUITABLE FOR CERTIFICATION UNDER RULE 23(b)(1)(A) ................................................................................ 33

IV.  PLAINTIFFS' CLAIMS ARE ALSO WELL SUITED FOR CERTIFICATION UNDER RULE 23(b)(2) ........................................................................................ 37

CONCLUSION .................................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Adams v. Henderson*,
    197 F.R.D. 162 (D. Md. 2000) ................................................................................ 33

*Ademiluyi v. PennyMac Mortgage Investment Trust Holdings I, LLC*,
    No. ELH-12-0752, 2015 WL 575362 (D. Md. Feb. 10, 2015) ................................ 20

*Aguilar v. Melkonian Enterprises, Inc.*,
    No. 05-0032, 2007 WL 201180 (E.D. Cal. Jan. 24, 2007).................................... 38

*American Pipe and Construction, Co. v. Utah,*
    414 U.S. 538 (1974).................................................................................................. 6

*Amara v. CIGNA Corporation*,
    775 F.3d 510 (2d Cir. 2014) .................................................................................. 39

*Amara v. CIGNA Corporation*,
    925 F. Supp. 2d 242 (2d Cir. 2012)....................................................................... 39

*Amaya v. DGS Construction, LLC*,
    326 F.R.D. 439 (D. Md. 2018) ................................................................................ 4

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................... 5, 20, 33

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    568 U.S. 455 (2013).................................................................................................. 6

*Baehr v. Creig Northrop Team, P.C.*,
    No. WDQ-13-0933, 2014 WL 346635 (D. Md. Jan. 29, 2014) ............................. 10

*Becher v. Long Island Lighting Company*,
    164 F.R.D. 144 (E.D.N.Y. 1996)........................................................................... 15

*Benway v. Resource Real Estate Services, LLC*,
    239 F.R.D. 419 (D. Md. 2006)............................................................................... 32

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015)...................................................................... 4, 36, 39

*Berry v. Wells Fargo & Company*,
    No. 3:17-00304-JFA, 2018 WL 9989754 (D.S.C. Oct. 9, 2018) ............................ 34

*Bond v. Marriott International, Inc.*,
    296 F.R.D. 403 (D. Md. 2014) ........................................................................ 33, 38

*Booth v. Wal-Mart Stores, Inc. Associates. Health & Welfare Plan*,
    201 F.3d 335 (4th Cir. 2000) ................................................................. 35

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ............................................................... 34

*Brieger v. Tellabs, Inc.*,
    245 F.R.D. 345 (N.D. Ill. 2007) ............................................................ 19

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................ 4, 9, 16

*Brown v. Nucor Corporation*,
    785 F.3d 895 (4th Cir. 2015) ................................................................... 6

*Bullock v. Board of Education of Montgomery County*,
    210 F.R.D. 556 (D. Md. 2002) ................................................... 16, 17, 33

*Bunnion v. Consolidated Rail Corporation*,
    No. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998) ....................... 38

*Caufield v. Colgate-Palmolive Co.*,
    No. 16 Civ. 4170 (LGS) (KNF), 2017 WL 3206339 (S.D.N.Y. July 27, 2017) ...................... 36

*Chado v. National Auto Inspections, LLC*,
    No. JKB-17-2945, 2019 WL 1981042 (D. Md. May 3, 2019) .................. 6

*Cheng v. Liu*,
    No. 23-1806, 2024 WL 3579606 (4th Cir. July 29, 2024) ...................... 36

*CIGNA Corporation v. Amara*,
    563 U.S. 421 (2011) ............................................................................... 39

*City of Cape Coral Municipal Firefighters' Retirement Plan v.
    Emergent Biosolutions, Inc., HQ*,
    322 F. Supp. 3d 676 (D. Md. 2018) ......................................................... 5

*Cockerill v. Corteva, Inc.*,
    345 F.R.D. 81 (E.D. Pa. 2023) .............................................................. 15

*Coreas v. Bounds*,
    No. TDC-20-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020) ............ 22

*Cottillion v. United Refining Company*,
    No. 09-140E, 2013 WL 5936368 (W.D. Pa. Nov. 5, 2013) ..................... 38

*Curtis v. Genesis Engineering Solutions, Inc.*,
    No. GJH-21-722, 2022 WL 1062024 (D. Md. Apr. 8, 2022) .................... 9

*Cuthie v. Fleet Reservation Association*,
   743 F. Supp. 2d 486 (D. Md. 2010) ........................................................ 8, 9, 10

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................... 21

*Dameron v. Sinai Hospital of Baltimore, Inc.*,
   595 F. Supp. 1404 (D. Md. 1984) ................................................................. 22

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Insurance Co.*,
   28 F.4th 513 (4th Cir. 2022) .......................................................................... 4

*Deiter v. Microsoft Corporation*,
   436 F.3d 461 (4th Cir. 2006) ......................................................... 16, 17, 33

*Doe v. Blue Cross Blue Shield, of Maryland, Inc.*,
   173 F. Supp. 2d 398 (D. Md. 2001) ............................................................ 26

*Douglin v. GreatBanc Trust Company, Inc.*,
   115 F. Supp. 3d 404 (S.D.N.Y. 2015) .................................................... 37, 38

*Ealy v. Pinkerton Government Services, Inc.*,
   514 F. App'x 299 (4th Cir. 2013) ............................................................. 9, 16

*Edmondson v. Eagle National Bank*,
   344 F.R.D. 72 (D. Md. 2023) ........................................................................ 6

*EQT Production Company v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ..................................................................... 5, 6

*Escalante v. Caifornia Physicians' Service*,
   309 F.R.D. 612 (C.D. Cal. 2015) ................................................................ 21

*Falberg v. Goldman Sachs Group, Inc.*,
   No. 19 Civ. 9910 (ER), 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ...................................... 34

*Fernandez v. RentGrow, Inc.*,
   341 F.R.D. 174 (D. Md. 2022) ..................................................................... 21

*Fuller v. Fruehauf Trailer Corporation*,
   168 F.R.D. 588 (E.D. Mich. 1996) ............................................................... 15

*Gariety v. Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) ............................................................... 4, 5, 33

*General Telephone Company of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ..................................................................................... 4, 5

*General Telephone Company of the Northwest, Inc. v.*
*Equal Emloyment Opportunity Commission*,
446 U.S. 318 (1980).......................................................................................... 8

*Gruber v. Grifols Shared Services North America, Inc.*,
No. 2:22-cv-02621-SPG-AS, 2023 WL 8610504 (C.D. Cal. Nov. 2, 2023)............................ 15

*Gunnells v. Healthplan Services, Inc.*,
348 F.3d 417 (4th Cir. 2003) ............................................................................ 5, 33

*Hewlett v. Premier Salons International, Inc.*,
185 F.R.D. 211 (D. Md. 1997) ...................................................................... 9, 10, 22

*Hoffman v. First Student, Inc.*,
No. AMD 06-1882, 2008 WL 11349801 (D. Md. Dec. 9, 2008) ............................................ 9

*Howard v. Aetna Life Insurance Company*,
No. 22-01505-CJC (MRWx), 2024 WL 1098789 (C.D. Cal. Feb. 27, 2024)........................... 36

*Huang v. TriNet HR III, Inc.*,
No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836 (M.D. Fla. Oct. 21, 2022)...................... 8

*Hunt v. Hawthorne Associates, Inc.*,
119 F.3d 888 (11th Cir. 1997) ............................................................................ 39

*In re Bakery & Confectionery Union and Industry International*
*Pension Fund Pension Plan*,
865 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd*, 751 F.3d 71 (2d Cir. 2014) ............................... 25

*In re BellSouth Corp. ERISA Litigation*,
No. 1:02-CV-2440-JOF (N.D. Ga. Dec. 5, 2006) ....................................................... 26

*In re Broadwing, Inc. ERISA Litigation*,
252 F.R.D. 369 (S.D. Ohio 2006) ........................................................................ 34

*In re Citigroup Pension Plan ERISA Litigation*,
241 F.R.D. 172 (S.D.N.Y. 2006) ..................................................................... 33, 39

*In re Delphi Corporation Securities, Derivative & "ERISA" Litigation*,
248 F.R.D. 483 (E.D. Mich. 2008)........................................................................ 39

*In re Delta Air Lines, Inc.*,
No. 1:02-md-01424-JEC (N.D. Ga. May 20 and Sept. 6, 2005) ........................................ 26

*In re Enron Corporation Securities, Derivative & "ERISA" Litigation*
No. H-01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006) ............................................ 19

*In re Independent Gasoline Antitrust Litigation*,
    79 F.R.D. 552 (D. Md. 1978) ........................................................... 20

*In re Kirschner Medical Corporation Securities Litigation,*
    139 F.R.D. 74 (D. Md. 1991) ........................................................... 15

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
    341 F.R.D. 128 (D. Md. 2022) ..................................................... 20, 21

*In re Marsh ERISA Litigation*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................... 15

*In re National Football League Players Concussion Injury Litigation*,
    821 F.3d 410 (3d Cir. 2016) ............................................................ 23

*In re National Football League Players' Concussion Injury Litigation*,
    307 F.R.D. 351 (E.D. Pa. 2015) ....................................................... 23

*In re Polaroid ERISA Litigation*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................ 34

*In re Schering Plough Corporation ERISA Litigation*,
    589 F.3d 585 (3d Cir. 2009) ............................................................ 34

*In re Titanium Dioxide Antitrust Litigation*,
    284 F.R.D. 328 (D. Md. 2012) .................................................. 8, 17, 21

*In re Under Armour Securities Litigation*,
    631 F. Supp. 3d 285 (D. Md. 2022) ........................................... *passim*

*In re Williams Companies ERISA Litigation*,
    231 F.R.D. 416 (N.D. Okla. 2005) .................................................... 33

*J.O.P. v. U.S. Department of Homeland Security*,
    338 F.R.D. 33 (D. Md. 2020), *appeal pending*, No. 21-1187 (4th Cir. filed Feb. 18, 2021).....7

*Jackson v. American Electric Warfare Associates, Inc.*,
    No. TDC-22-1456, 2024 WL 556230 (D. Md. Feb. 12, 2024) ...................................... 8, 20, 21

*Jacobs v. Verizon Communications, Inc.*,
    No. 16 Civ. 01082 (PGG) (RWL), 2020 WL 4601243 (S.D.N.Y. June 1, 2020)...................... 15

*Jansen v. Greyhound Corporation*,
    692 F. Supp. 1022 (N.D. Iowa 1986) ................................................. 39

*Jenkins v. Massinga*,
    592 F. Supp. 480 (D. Md. 1984) ....................................................... 21

*Joncek v. Local 714 International of Teamsters Health and Welfare Fund*,
    No. 98 C 4302, 1999 WL 755051 (N.D. Ill. Sept. 3, 1999) ..................................................... 16

*Jones v. Murphy*,
    256 F.R.D. 519 (D. Md. 2009) ................................................................................................ 33

*Kadel v. Folwell*,
    100 F.4th 122 (4th Cir. 2024) .................................................................................................... 6

*Kernan v. Holiday Universal, Incorporated*,
    No. JH90-971, 1990 WL 289505 (D. Md. Aug. 14, 1990) ..................................................... 32

*Klugmann v. American Capital Ltd.*,
    No. PJM 09-5, 2009 WL 2499521 (D. Md. Aug. 13, 2009) .................................................... 21

*Knight v. Lavine*,
    No. 1:12-CV-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013)................................................. 19

*Kohl v. Association of Trial Lawyers of America*,
    183 F.R.D. 475 (D. Md. 1998) .................................................................................................. 9

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ..................................................................................................... 5

*Lienhart v. Dryvit Systems, Inc.*,
    255 F.3d 138 (4th Cir. 2001) ..................................................................................................... 5

*Linder v. Litton Systems, Inc., Amecom Division*,
    81 F.R.D. 14 (D. Md. 1978) .................................................................................................... 20

*Lloyd v. General Motors Corporation*,
    266 F.R.D. 98 (D. Md. 2010) .................................................................................................. 22

*McFadden v. Sprint Communications, LLC*,
    No. 22-2464-DDC-GEB, 2024 WL 1533897 (D. Kan. Apr. 9, 2024) ..................................... 33

*Medical Society of the State of New York v. UnitedHealth Group, Inc.*,
    332 F.R.D. 138 (S.D.N.Y. 2019) ....................................................................................... 38, 39

*Mehling v. New York Life Insurance Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007) ............................................................................................. 39

*Meidl v. Aetna, Inc.*,
    No. 15-cv-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017)...................................... 39

*Minter v. Wells Fargo Bank, N.A.*,
    274 F.R.D. 525 (D. Md. 2011) ...................................................................................... 8, 17, 19

*Mitchell-Tracey v. United General Title Insurance Co.*,
    237 F.R.D. 551 (D. Md. 2006) ............................................................................. 9, 20

*Moreno v. Deutsche Bank Americas Holding Corporation*,
    No. 15 Civ. 9936 (LGS), 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ................... 16

*Moyer v. Home Point Financial Corporation*,
    No. RDB-20-3449, 2023 WL 6642663 (D. Md. Oct. 11, 2023) ................................ 6

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011) ............................................................................. 34

*O'Bannon v. Friedman's, Inc.*,
    No. AW-03-623, 2008 WL 11509653 (D. Md. Oct. 29, 2008) ................................ 32

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................................. 38

*Pennington v. Fluor Corporation*,
    327 F.R.D. 89 (D.S.C. 2018) .................................................................................... 7

*Peoples v. Wendover Funding, Inc.*,
    179 F.R.D. 492 (D. Md. 1998) ................................................................. 8, 16, 33

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) .................................................................................. 4, 5

*Pfeifer v. Wawa, Inc.*,
    No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ..................................... 15

*Piotrowski v. Wells Fargo Bank, NA*,
    No. DKC 11-3758, 2015 WL 4602591 (D. Md. July 29, 2015) ......................... 7, 33

*Pizarro v. Home Depot, Inc.*,
    No. 1:18-cv-01566-WMR, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) ............... 8

*Potter v. Blue Cross Blue Shield of Michigan*,
    No. 10-CV-14981, 2011 WL 9378789 (E.D. Mich. July 14, 2011) ........................ 16

*Premier Health Center, P.C. v. UnitedHealth Group*,
    292 F.R.D. 204 (D.N.J. 2013) ............................................................................... 34

*Premier Health Center, P.C. v. UnitedHealth Group*,
    No. 11-425 ES, 2014 WL 4271970 (D.N.J. Aug. 28, 2014) .................................. 35

*Ramos v. Banner Health*,
    325 F.R.D. 382 (D. Colo. 2018) ............................................................................ 15

*Remsnyder v. MBA Mortgage Services, Inc.*,
   No. CCB-19-492, 2023 WL 5750412 (D. Md. Sept. 6, 2023)..................................................33

*Robinson v. Nationstar Mortgage, LLC*,
   No. TDC-14-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019)..............................................22

*Ross-Randolph v. Allstate Insurance Co.*,
   No. DKC 99-3344, 2001 WL 36042162 (D. Md. May 11, 2001)............................................36

*Sanchez v. McAleenan*,
   No. GJH-19-1728, 2020 WL 5849491 (D. Md. Sept. 30, 2020) .............................................10

*Serio v. Wachovia Securities, LLC*,
   No. 06-4681 (MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ................................................39

*Shadrin v. Student Loan Solutions*,
   No. 1:20-cv-03641-RDB, 2023 WL 6390218 (D. Md. Jan. 23, 2023)....................................32

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010)................................................................................................................4

*Sharp Farms v. Speaks*,
   917 F.3d 276 (4th Cir. 2019).................................................................................................21

*Sims v. BB & T Corporation*,
   No. 1:15-CV-732, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ..........................................8

*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013) ........................................................................................9

*Sloan v. BorgWarner, Inc.*,
   263 F.R.D. 470 (E.D. Mich. 2009)....................................................................................36, 39

*Small v. Sullivan*,
   820 F. Supp. 1098 (S.D. Ill. 1992) .......................................................................................16

*Smith v. B & O Railroad Company*,
   473 F. Supp. 572 (D. Md. 1979) .......................................................................................17, 32

*Smith v. Montgomery County, Maryland*,
   573 F. Supp. 604 (D. Md. 1983) .......................................................................................21, 32

*Stanford v. Foamex L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) ...........................................................................................15

*Stegemann v. Gannett Co., Inc.*,
   No. 1:18-cv-325 (AJT/JFA), 2022 WL 17067496 (E.D. Va. Nov. 17, 2022) .........................35

*Stewart v. Cheek & Zeehandelar, LLP*,
    252 F.R.D. 387 (S.D. Ohio 2008) ............................................................... 36

*Sweet v. Advance Auto Stores Company, Inc.*,
    No. 7:21-cv-549, 2023 WL 3959779 (W.D. Va. June 12, 2023)............................... 15

*Thomas v. SmithKline Beecham Corporation*,
    201 F.R.D. 386 (E.D. Pa. 2001) ...................................................................... 15, 38

*Thompson v. Linvatec Corporation*,
    No. 6:06-CV-0404 (NPM/GJD), 2007 WL 1526418 (N.D.N.Y. May 22, 2007)..................... 33

*Thorn v. Jefferson-Pilot Life Insurance Company*,
    445 F.3d 311 (4th Cir. 2006) ......................................................................... 6

*Todd v. XOOM Energy Maryland, LLC*,
    No. GJH-15-154, 2020 WL 4784767 (D. Md. Aug. 18, 2020)................................... 32

*Tracey v. MIT*,
    No. 16-11620-NMG, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) .......................... 15

*Tussey v. ABB, Inc.*,
    No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ...................... 19

*Varity Corporation v. Howe*,
    516 U.S. 489 (1996)................................................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................... 10

*Wilson v. Eagle National Bank*,
    No. 8:20-cv-01344-JRR, 2023 WL 2478933 (D. Md. Mar. 13, 2023) ...................... 10

*Woodward v. GEICO Advantage Insurance Company*,
    No. GLR-21-952, 2022 WL 2953053 (D. Md. July 25, 2022) ................................ 8

*Yates v. NewRez LLC*,
    686 F. Supp. 3d 397 (D. Md. 2023) .................................................................. 8, 17

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986)....................................................................... 34, 38

## Statutes

Pub. L. No. 109-2, 119 Stat. 4 (2005) ............................................................... 6

29 U.S.C. § 1132(a)(1)(B) ............................................................................. 35

29 U.S.C. § 1132(a)(2) ................................................................................... *passim*

29 U.S.C. § 1132(c)(1) ............................................................................................ 36

29 U.S.C. § 1133(1) ........................................................................................... 11, 13

29 U.S.C. § 1133(2) ........................................................................................... 10, 13

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................ 2, 4, 5, 6, 9

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 8

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 9

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ................................................................................ 20, 21, 32

Fed. R. Civ. P. 23(b) ............................................................................................... 33

Fed. R. Civ. P. 23(b)(1) ................................................................................ 3, 5, 6, 34

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................. *passim*

Fed. R. Civ. P. 23(b)(2) .................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 16

Fed. R. Civ. P. 23(g) ......................................................................................... 20, 21

Fed. R. Civ. P. 23(g)(1) ................................................................................ 21, 32, 40

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................... 21

**Regulations**

29 C.F.R. § 2560.503-1(h)(2)(iv) ........................................................................... 10

## INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiffs move

the Court to certify the following class ("Class"), defined as:

> All participants in the Plan who filed one or more applications for one or
> more categories of disability benefits under the Plan between August 1,
> 1970 and [the date of class certification] and are members of at least one of
> the five Subclasses, defined as the T & P SUBCLASS, the ACTIVE
> SUBCLASS, the LOD SUBCLASS, the NC SUBCLASS, and the
> FIDUCIARY SUBCLASS.

> "The Plan" includes the NFL Player Disability & Survivor Benefit Plan
> (formerly the NFL Player Disability, Neurocognitive & Death Benefit Plan,
> the NFL Player Disability & Neurocognitive Benefit Plan, the NFL Player
> Supplemental Disability & Neurocognitive Benefit Plan, and the NFL
> Player Supplemental Disability Plan); the Bert Bell/Pete Rozelle NFL
> Player Retirement Plan; the Bert Bell NFL Player Retirement Plan; and the
> Pete Rozelle NFL Player Retirement Plan.[1]

Relatedly, Plaintiffs move to have the Court certify five Subclasses, defined as:

> (a) The T & P SUBCLASS:  All members of the Class who filed one or
> more applications for Total & Permanent Disability benefits under the
> Plan; received an adverse determination as part of at least one such
> application(s) between August 9, 2019 and [the date of class
> certification]; and are not members of the ACTIVE SUBCLASS.

> (b) The ACTIVE SUBCLASS:  All members of the Class who filed one
> or more applications for Total & Permanent Disability benefits under
> the Plan; received an adverse determination as part of at least one such
> application between August 9, 2019 and [the date of class
> certification]; and were within the timeframe to qualify for Active
> Football or Active Nonfootball Total & Permanent Disability benefits
> at the time that they applied.

> (c) The LOD SUBCLASS: All members of the Class who filed one or
> more applications for Line-of-Duty Disability Benefits under the Plan
> and received an adverse determination as part of at least one such

---

[1] Save the definition of the Plan, Plaintiffs adopt the definitions and shorthand terms in
Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Rule 12(b)(6) Motion to
Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 70) ("Plaintiffs' MTD Opposition
Memorandum").  "¶"and "¶¶" refer to paragraphs of the Amended Class Action Complaint (ECF
No. 56) ("Amended Complaint").  Except where otherwise indicated, internal citations, internal
quotation marks, and footnotes are omitted from all quotations and emphasis is added.

application between August 9, 2019 and [the date of class certification].

(d) The NC SUBCLASS: All members of the Class who filed an application for Neurocognitive Disability benefits under the Plan and received an adverse determination as part of at least one such application between August 9, 2019 and [the date of class certification].

(e) The FIDUCIARY SUBCLASS: All members of the Class who filed an application for one or more categories of disability benefits under the Plan between August 1, 1970 and [the date of class certification].[2]

As discussed below, the composition of the Class and Subclasses can readily be ascertained because they are defined using purely objective criteria and members can be identified from Plan records. Moreover, the Class and Subclasses easily satisfy the Rule 23(a) elements in that their members are too numerous to make their joinder practicable; common questions abound that will drive this litigation's resolution; Plaintiffs' claims are representative of those of absent members, giving them every incentive to vigorously pursue them on behalf of absent members; and Plaintiffs, represented by skilled and seasoned counsel, have no conflicts with absent Class members.

What is more, the claims asserted on behalf of the Class and Subclasses are eminently suitable for certification pursuant to Rules 23(b)(1)(A) and 23(b)(2). Plaintiffs seek to vindicate group rather than individual rights because the questions presented by their claims center on whether Defendants have erected a sham claims process, most notably by creating perverse financial incentives (fueled by the expenditure of tens of millions of dollars of Plan assets over the last fifteen years alone) for their hired physicians to render opinions unfavorable to benefits applicants, while deceiving applicants in decisions, SPDs, and other written communications that their hired physicians are unbiased. Myriad other questions similarly center on whether

---

[2] These definitions are based on the information available to Plaintiffs as of the date of this filing. Plaintiffs reserve the right to refine these definitions as further information becomes available over the course of discovery.

Defendants have rigged the claims process against those in whose best interests they are supposed to be administering the Plan.  These include Defendants' practices of failing to consider all evidence in applicants' files; misinforming applicants that they have reviewed the entirety of their claim file when they have not; emphasizing evidence unfavorable to applicants; inconsistently treating similarly situated applicants; maintaining and compensating a network of physicians who evaluate Players in a manner that fails to ensure the physicians' independence and impartiality; employing financially conflicted physicians; wasting Plan assets on conflicted physicians who demonstrate inadequate work performance; failing to consider the combined effect of applicants' impairments; considering factors (education and training) explicitly prohibited by the Plan's terms for T&P benefits eligibility; resorting to clandestine Plan interpretations; and abdicating decision-making to advisors, compounded by the same advisors' involvement at both the Committee and Board levels, thereby turning the independent administrative appellate review that both ERISA and the Plan require into a charade.

Rule 23(b)(1)(A) certification is thus appropriate because of the need to establish compatible standards of conduct for Defendants vis-à-vis absent members, and Rule 23(b)(2) certification is warranted because the allegations respecting the claims process add up to conduct with respect to the Class and Subclasses as a whole.  Finally, the predominantly declaratory, injunctive, and other equitable relief that Plaintiffs seek, on behalf of absent members or the Plan itself, underscores the suitability of their claims for 23(b)(1) and 23(b)(2) certification.

## STATEMENT OF FACTS

The facts relevant to this motion are already set forth at length on pages 1-19 of Plaintiffs' MTD Opposition Memorandum (ECF No. 70 at 14-32) and need not be repeated here.  Plaintiffs assume the Court's familiarity with those facts and respectfully adopt and incorporate by reference the Statement of Facts from that memorandum.

3

**ARGUMENT**

**PLAINTIFFS' CLAIMS UNDER COUNTS I, II, III, AND V OF THE AMENDED COMPLAINT ARE EMINENTLY SUITABLE FOR CLASSWIDE ADJUDICATION**

**I.    GENERAL STANDARDS FOR CERTIFYING CLASSES**

An action may be maintained as a class action if:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *see Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (quoting Rule).  These four requirements are commonly referred to as, respectively, the elements of "numerosity," "commonality," "typicality," and "adequacy" (or "adequacy of representation").  *E.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022); *Peters v. Aetna Inc.*, 2 F.4th 199, 241 (4th Cir. 2021).

A movant must satisfy all four of these threshold elements.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 446 (D. Md. 2018).  The latter three "tend to merge, with commonality and typicality serv[ing] as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon*, 457 U.S. at 157 n.13).

"Apart from [its] enumerated requirements, Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable."  *Peters*, 2 F.4th at 241-

42. This test—referred to as ascertainability or administrative feasibility—mandates that "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* at 242; *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019).[3]

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *accord EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, as discussed in Sections III and IV below, the Class and Subclasses are well suited for certification under Rules 23(b)(1) and 23(b)(2).

Although the movant bears the burden of demonstrating that Rule 23's requirements are satisfied, *Gariety*, 368 F.3d at 362; *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022), "federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and … promote judicial efficiency." *Gunnells*, 348 F.3d at 424; *accord City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 682 (D. Md. 2018) (district courts "should liberally construe Rule 23").[4]

---

[3] The movant, though, "need not be able to identify every class member at the time of certification." *Peters*, 2 F.4th at 242; *accord Krakauer*, 925 F.3d at 658 ("The goal is not to identify every class member at the time of certification, but to define a class in such a way as to ensure that there will be some administratively feasible [way] for the court to determine whether a particular individual is a member at some point.").

[4] This is because, as the Fourth Circuit has recognized, class certification "serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual … actions." *Gunnells*, 348 F.3d at 424; *accord Falcon*, 457 U.S. at 155 (class actions conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical

Finally, although a court may consider the merits of the movant's claims on a Rule 23 motion, it may do so only to the limited extent of examining the nature of the claims and whether they are amenable to class-wide adjudication.[5]

## II.  THE CLASS AND SUBCLASSES EASILY SATISFY THE RULE 23(a) ELEMENTS

### A.  Class Membership Is Readily Ascertainable

As noted in Section I above, the judicially defined ascertainability requirement is a threshold test.[6]  At least one court in this Circuit, however, has called this element's applicability to proposed Rule 23(b)(1) and 23(b)(2) classes into question, noting that other circuit courts have held it inapplicable to such classes and, more recently, the Fourth Circuit held it inapplicable where a proposed 23(b)(2) class seeks declaratory and injunctive relief against discriminatory policies.[7]

---

fashion under Rule 23"); *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) ("efficiency and economy of litigation" is "a principal purpose of the [class action] procedure"); *Brown v. Nucor Corp.*, 785 F.3d 895, 921-22 (4th Cir. 2015) (Rule 23 promotes "the systemic class action virtues of efficiency and flexibility"); *see also* Pub. L. No. 109-2, § 2(a)(1), 119 Stat. 4, 4 (2005) ("Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.").

[5] *E.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) ("The likelihood of the plaintiffs' success on the merits … is not relevant to the issue of whether certification is proper."); *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 75 (D. Md. 2023) ("The merits may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Moyer v. Home Point Fin. Corp.*, No. RDB-20-3449, 2023 WL 6642663, at *4 (D. Md. Oct. 11, 2023) ("[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.").

[6] *E.g.*, *EQT Prod. Co.*, 764 F.3d at 358 (ascertainability a "threshold requirement"); *Chado v. Nat'l Auto Inspections, LLC*, No. JKB-17-2945, 2019 WL 1981042, at *4 (D. Md. May 3, 2019) ("Because ascertainability is considered a threshold issue, the Court will address it first.").

[7] *See Kadel v. Folwell*, 100 F.4th 122, 161 (4th Cir. 2024) ("There is no threshold ascertainability requirement in this Rule 23(b)(2) case, which seeks only declaratory and injunctive

Assuming, though, that the ascertainability requirement applies here, it is easily met. *First*, the Class and Subclasses are defined using purely objective and straightforward criteria—namely, all Plan participants who filed an application for one or more of the Plan's disability benefits between August 1, 1970 and the date of class certification; received an adverse or partially determination; and belong to at least one of the Subclasses—four of which, in turn, are defined as those who filed an application for the specified type of benefit and received an adverse or partially adverse determination (or, in the case of the Active Subclass, received an adverse determination as to the Active Football or Active Nonfootball categories of T&P disability) between August 9, 2019 and the date of class certification.[8] *Second*, the identity of all members can undoubtedly be

---

relief from a discriminatory policy."); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 51 (D. Md. 2020) ("it appears that the Fourth Circuit's administrative feasibility interpretation of ascertainability applies equally to all classes regardless of the section of Rule 23(b) under which certification is pursued," but "the Fourth Circuit may eventually decide to align with the reasoning of the First, Third, and Sixth Circuits and hold that the administrative feasibility requirement is inappropriate in the context of Rule 23(b)(2) because the purposes for which the requirement was created are absent"), *appeal pending*, No. 21-1187 (4th Cir. filed Feb. 18, 2021).

[8] The temporal parameters of the T&P, Active, LOD, and NC Subclasses—limited to those who received at least a partially adverse benefits claim determination on or after August 9, 2019— reflect the Court's statute of limitations ruling. *See* ECF No. 78 at 11-14, *as amended by* ECF No. 85 at 3. In contrast, the scope of the Fiduciary Subclass is not so temporally constricted because its members assert claims regarding breaches of fiduciary duties, which are brought derivatively on behalf of the Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ("502(a)(2)") rather on their own behalf (¶¶ 330-49). Also, consistent with the Court declining to dismiss claims for failure to exhaust administrative remedies, class and subclass membership extends to those who did not appeal the initial decision on their claims. *See* ECF No. 78 at 10-11. That these definitions vary from those pleaded in the Amended Complaint (¶¶ 268-69) is, of course, of no moment. Neither Plaintiffs nor the Court are bound by those earlier definitions. *See, e.g.*, *Pennington v. Fluor Corp.*, 327 F.R.D. 89, 95 (D.S.C. 2018) ("The court is not bound by the class definition proposed in the Amended Complaint and can modify its language as the case progresses."); *Piotrowski v. Wells Fargo Bank, NA*, No. DKC 11-3758, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) ("[T]he proper inquiry is whether Plaintiffs' proposed class definition results in an ascertainable and administratively feasible class and meets Rule 23 requirements, not whether it precisely tracks the allegations and class definition in the amended complaint.") (citing cases).

established from the Plan's records.[9]

### B.    The Class and Subclasses Satisfy the Rule 23(a)(1) Numerosity Test

The numerosity requirement "imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980).  In this District, "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical," *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010), and courts generally find classes of at least forty members sufficiently large to satisfy the numerosity element.[10]

Here, in their Answer to the Amended Complaint, Defendants aver that, on average, 700 Plan participants applied for benefits each year between 2014-16.  ECF No. 86 at 8 (¶ 33).  Given that acknowledgment, as well as the many thousands of Plan participants overall that Defendants have disclosed in government filings,[11] the Court can safely assume that there are thousands of

---

[9] *See Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 407 (D. Md. 2023) (ascertainability satisfied where class members could be identified from review of defendant's records) (citing cases); *Jackson v. Am. Elec. Warfare Assocs., Inc.*, No. TDC-22-1456, 2024 WL 556230, at *3 (D. Md. Feb. 12, 2024) (same); *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836, at *5 (M.D. Fla. Oct. 21, 2022) (class ascertainable where membership could be determined from plan's records); *Pizarro v. Home Depot, Inc.*, No. 1:18-cv-01566-WMR, 2020 WL 6939810, at *4 (N.D. Ga. Sept. 21, 2020) (same); *Sims v. BB & T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *2 (M.D.N.C. Aug. 28, 2017) (same); *see also Woodward v. GEICO Advantage Ins. Co.*, No. GLR-21-952, 2022 WL 2953053, at *11 (D. Md. July 25, 2022) (test met even if membership determinations would entail some effort to evaluate company records).

[10] *E.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 300; *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended on other grounds*, 962 F. Supp. 2d 840 (2013); *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998).

[11] Evidence that Defendants proffered in support of their joint motion to dismiss the Amended Complaint—namely, IRS Form 5500s for the Plan years 2017-21—shows that there were 12,642 Plan participants at the end of the 2021 Plan year (*i.e.*, March 31, 2022); 20,997 at the end of the 2020 Plan year (*i.e.*, March 31, 2021); 11,399 at the end of the 2019 Plan year (*i.e.*, March 31, 2020); 10,687 at the end of the of the 2018 Plan year (*i.e.*, March 31, 2019); 10,525 at the end of the of the 2017 Plan year (*i.e.*, March 31, 2018); and 10,745 at the end of the of the 2016 Plan year (*i.e.*, March 31, 2017).  ECF No. 69-6 (Defs.' Ex. A) at 3, 77, 146, 220, 292, 360.

members in the Class and at least hundreds in each Subclass.[12]  Numbers aside, because the Class and Subclasses are nationwide in scope, it stands to reason that the geographic dispersion of their members renders their joinder impracticable.[13]  Hence the numerosity test is also satisfied.

### C.   The Rule 23(a)(2) Commonality Requirement Is Also Met

The Rule 23(a) commonality factor asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  It "requires the plaintiff to demonstrate that the class members have suffered the same injury—a shared injury that also springs forth from the same common contention[.]  That common contention, moreover, must be of such a nature that it is capable of classwide resolution[.]" *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013).

At the same time, though, the commonality test does not require that class members have identical factual and legal claims in all respects. *Broussard*, 155 F.3d at 344.  Rather, it mandates that "class members share the same central facts and applicable law." *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, at *4 (D. Md. Apr. 8, 2022); *accord Cuthie*, 743 F. Supp. 2d at 498-99.  Thus, "[m]inor differences in the underlying facts of individual class

---

[12] *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006) ("[W]here general knowledge and common sense would indicate that [the class] is large, the numerosity requirement is satisfied.  To require such accuracy in determining the class size would foreclose most class litigation."); *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997) (in making numerosity determination, "the court is entitled to make common sense assumptions") (citing cases); *Hoffman v. First Student, Inc.*, No. AMD 06-1882, 2008 WL 11349801, at *3 (D. Md. Dec. 9, 2008) ("The numerosity requirement is satisfied where general knowledge and common sense would indicate that the class is large.").

[13] *See, e.g.*, *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (that class members were "dispersed throughout the country . . . militate[d] against joinder"); *Hewlett*, 185 F.R.D. at 216 ("likely geographic dispersion" of class members indicates that joinder would be impracticable); *Kohl v. Ass'n of Trial Laws. of Am.*, 183 F.R.D. 475, 484 (D. Md. 1998) (courts look to "the geographic dispersion of the class members" as numerosity analysis factor).

members' cases do not defeat a showing of commonality where there are common questions of law." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 301 (citing cases); *Hewlett*, 185 F.R.D. at 216 (citing cases).[14] "Where the injuries complained of by [the] named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 301; *Wilson v. Eagle Nat'l Bank*, No. 8:20-cv-01344-JRR, 2023 WL 2478933, at *11 (D. Md. Mar. 13, 2023). A single common question may satisfy the commonality element, so long as the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Overall, "the commonality requirement is not a high bar[.]" *Sanchez*, 2020 WL 5849491, at *4; *accord Baehr v. Creig Northrop Team, P.C.*, No. WDQ-13-0933, 2014 WL 346635, at *8 (D. Md. Jan. 29, 2014) (commonality test "is not onerous").

Here, there are numerous questions of law and fact common to the members of the Class and Subclasses that will drive the resolution of this litigation. Among them are:

(a) Whether Defendants have a history of biased claims administration, and the extent of its impact on their decision-making process;

(b) Whether Defendants have routinely failed to review "all comments, documents, records, and other information submitted by the claimant," as required under ERISA § 503(2), 29 U.S.C. § 1133(2), and its implementing regulation at 29 C.F.R. § 2560.503-1(h)(2)(iv);

(c) Whether Defendants' pattern and practice of compensating, selecting, maintaining, retaining, demoting, and promoting "Neutral Physicians"[15] has

---

[14] *Accord Cuthie*, 743 F. Supp. 2d at 499 (commonality test "is not defeated by minor differences in the underlying facts of an individual case"); *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 5849491, at *4 (D. Md. Sept. 30, 2020) ("factual differences among members' cases will not preclude certification if the class members share the same legal theory").

[15] References to "physicians" encompass neuropsychologists, even though the latter are not, strictly speaking, physicians. *See* ¶ 45 n.5. The Plan itself uses the term "Neutral Physician" to cover physicians and other healthcare professionals. ECF No. 69-7 at 10, 63 (Plan §§ 1.25, 12.3).

given rise to many, if not most, of those physicians having financial conflicts of interest, or the appearance of financial conflicts of interest, that influence their opinions and, ultimately, Defendants' benefits decisions;

(d) Whether Defendants' practice and process of selecting and lavishly compensating "Neutral Physicians" with reputations for minimizing genuine impairments and bias against disabled Players, to evaluate applicants has infected the Board's decision-making, which routinely accepts and defaults to their reports;

(e) Whether Defendants' repeated refusal to pay contractually authorized benefits has been willful and part of a larger systematic breach of their fiduciary obligations on a Plan-wide basis (Fiduciary Subclass only);

(f) Whether Defendants' long history of diminishing and concealing the impact of neurocognitive impairments from football activities affected their benefits decisions;

(g) Whether Defendants violated Section 503(1) of ERISA, 29 U.S.C. § 1133(1), by routinely failing to cite or reference relevant Plan provisions;

(h) Whether Defendants' unreasonable Plan interpretations, continual disregard for legal precedent, and multiple erroneous interpretations of the same or similar Plan provisions evince violations of both the Plan and ERISA that support the overall conclusion that Defendants have not acted prudently (Fiduciary Subclass only);

(i) Whether Defendants' misrepresentations and overall fraudulent scheme have caused, and continue to cause, harm to the integrity of the Plan itself, and have breached the fiduciary duty of loyalty (Fiduciary Subclass only);

(j) Whether Defendants' pattern and practice of ERISA § 503 violations mandates only de novo review of Defendants' benefits decisions (LOD, T & P, Active, and NC Subclasses only);

(k) Whether Defendants routinely rely on flawed physician reports insufficient for the Committee or Board "to make an adequate determination" on the basis thereof, as required by the Plan's terms (LOD, T & P, Active, and NC Subclasses only);

(l) Whether Defendants' pattern and practice of ERISA § 503 violations results in administrative remedies being deemed exhausted (LOD, T & P, Active, and NC Subclasses only);

(m) Whether Defendants have failed to ensure impartiality and independence of those involved in the benefits claims process;

11

(n) Whether Defendants have failed to adopt procedures or measures to ensure accurate claims processing and to limit the likelihood of bias;

(o) Whether Defendants have violated ERISA by advising applicants in SPDs and decision letters that "Neutral Physicians" are "absolutely neutral" or genuinely neutral (*i.e.*, impartial) in the benefits claims process when, in fact, they are not;

(p) Whether Defendants' fraudulent misrepresentations and false reassurances have actively concealed their substantial misconduct (Fiduciary Subclass only);

(q) Whether the magnitude of Plan-wide perverse incentives to biased physicians, particularly, when correlated with those physicians' irreconcilable conclusions, flawed reports, retention, promotions, and reputation for fabrication and diminishment of legitimate conditions, shows that there is a Plan-wide conflict that does, in fact, repeatedly and on an ongoing basis, significantly harm and negatively influence the Plan-wide implementation and integrity of the claims administration process, in violation of ERISA;

(r) Whether Defendants have interpreted LOD Points in the Plan inconsistently with earlier interpretations (LOD Subclass only);

(s) Whether Defendants have had a willful and systematic pattern or practice of selecting, maintaining, compensating, and retaining physicians that has harmed the integrity of the claims process;

(t) Whether Defendants have abandoned their discretion by routinely defaulting to the opinions of their hired physicians;

(u) Whether Defendants have routinely failed to explain in decision letters why they disagree with medical findings and reports that support an applicant's entitlement to benefits;

(v) Whether Defendants have routinely relied on inadequate materials to support their benefits decisions, including biased physicians' flawed reports that violate the Plan's plain terms;

(w) Whether the Plan requires consideration of the cumulative effect of impairments, and whether Defendants have acted inconsistently with the Plan's terms and goals by systematically failing to give such consideration (common only to the T & P, Active, and Fiduciary Subclasses);

(x) Whether the Board has improperly afforded deference, whether de facto or otherwise, to the Committee's decisions instead of conducting a genuinely de novo review of the Committee's decisions;

(y) Whether Defendants have unreasonably interpreted the Plan's explicit

requirements for Active Football T & P disability eligibility (common only to the Active Subclass);

(z)  Whether the Plan permits consideration of educational level and prior training and whether Defendants have a practice of considering such factors (common only to the T & P and Active Subclasses);

(aa)  Whether Defendants act inconsistently with external standards relevant to the exercise of discretion, such as by rendering decisions irreconcilable with findings made by impartial physicians under the *NFL Players' Concussion* settlement program;

(bb)  Whether Defendants have treated similarly situated applicants differently;

(cc)  Whether Defendants systematically failed to provide Class and Subclass members adequate notice in writing of the specific reasons for benefits denial, in violation of Section 503(1) of ERISA, 29 U.S.C. § 1133(1);

(dd)  Whether Defendants have systematically denied Class and Subclass members full and fair review, in violation of Section 503(2) of ERISA, 29 U.S.C. § 1133(2);

(ee)  Whether Defendants' repeated and substantial misconduct in violation of ERISA demonstrates that they have systematically failed, and prospectively cannot be trusted, to exercise their discretion honestly and fairly;

(ff) Whether the Board has breached its fiduciary duties of loyalty and care to the Plan, the Plan suffered resulting injury, and the Board's members should be replaced (common only to the Fiduciary Subclass);

(gg)  Whether Defendants' practice of misusing Plan assets through compensation to physicians that routinely render flawed, biased, or otherwise inadequate reports entitles the Plan to restitution or other appropriate relief (common only to the Fiduciary Subclass);

(hh)  Whether circumstances suggest a higher likelihood that Defendants' bad faith, motives, bias, and conflicts impacted benefits decisions (common only to the LOD, T & P, Active, and NC Subclasses);

(ii) Whether applicants with similar neuropsychological scores are treated inconsistently, in violation of ERISA (common only to the LOD, T & P, Active, and NC Subclasses);

(jj) Whether Defendants routinely treated similarly situated applicants differently based on applicants' demographics, including ethnicity and race;

(kk)  Whether Defendants routinely fail to award LOD points in accordance with the Plan's terms when the Plan's terms state that an applicant will be awarded the indicated number of points for each occurrence of each listed orthopedic impairment (common only to the LOD Subclass);

(ll)  Whether Defendants have acted inconsistently with Plan terms and earlier interpretations of Plan terms;

(mm) Whether Defendants' systematic policies and practices of hiring, retaining, promoting, and training physicians have caused injury to the Plan itself through their failure to ensure that their hired physicians' compensation is not based upon physicians' reputation for and likelihood that they will support the denial of benefits;

(nn)  Whether Defendants actively concealed its ERISA violations through repeated false reassurances, such as that "[w]e wish to reassure you that the Plan's Neutral Physicians have no incentive to hurt or help Players." (common only to the Fiduciary Subclass);

(oo)  Whether Defendants' willful inattention to and ignorance of matters of administration, including by repeatedly and knowingly ignoring the advice of their own advisors to read the entire administrative record before making a decision, demonstrates transgressions of ERISA's central purposes of promoting the interests of participants and their beneficiaries in employee benefit plans, and of protecting contractually defined benefits (common only to the Fiduciary Subclass);

(pp)  Whether Committee and Board members are, by their own admission, unqualified to perform their statutory responsibilities themselves to review the entire record as required by ERISA and have, instead, implemented a surreptitious practice to delegate their own responsibilities to others without directions to those delegates to review the entire administrative record (common only to the Fiduciary Subclass);

(qq)  Whether Defendants routinely acted inconsistently with Plan terms by unreasonably dismissing reliable evidence of undisputed self-reported symptoms for lack of objective medical evidence, even though the Plan does not limit proof to objective evidence.

(rr)  Whether Defendants routinely failed to demonstrate a reasoned decision-making process by failing to read the entire administrative record and defaulting to conflicted physicians' opinions; and

(ss)  Whether Defendants' pattern of objectively unreasonable conduct considered in the aggregate, including their Plan-wide biased physician compensation scheme and misrepresentations thereof to conceal misconduct, their practice of

14

failing to review the entirety of administrative records, their practice of ignoring advice to review all records and misinforming applicants about this practice, and their untenable Plan interpretations, is inconsistent with Defendants' ERISA-mandated fiduciary duties of loyalty and care to the Plan itself, warranting removal of Board members and other appropriate relief pursuant to 502(a)(2) (common only to the Fiduciary Subclass).

These sundry questions and the focus they place—on Defendants' conduct of rather than that of individual Class and Subclass members—are of the kind that this Court and many others have found to satisfy the commonality test.[16]

---

[16] *See*, *e.g.*, *Cockerill v. Corteva, Inc.*, 345 F.R.D. 81, 108 (E.D. Pa. 2023) (commonality met where ERISA claim alleging misrepresentations and omissions rested on mass emails, FAQs, SPDs, plan document, and PowerPoint presentations, not individualized representations to class members); *Ramos v. Banner Health*, 325 F.R.D. 382, 389 (D. Colo. 2018) (questions of whether defendants breached their fiduciary duty and plan suffered losses from the breaches, how to calculate plan's losses, and what equitable relief should be imposed satisfied commonality test); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010) (whether defendants breached their fiduciary duties and plan was injured by their breach held common questions); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 166 (E.D. Pa. 2009) (because focus was "squarely on the behavior of the fiduciary defendants, common questions of law and fact exist[ed] … regarding whether, and to what extent, defendants breached any fiduciary duty or duties"); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) ("[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."); *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 596 (E.D. Mich. 1996) (rejecting contention that commonality was lacking because different retirement programs and SPDs applied to various plaintiffs; common questions were present across varying materials so long as information that was supplied to "was consistent on key points"); *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150-51 (E.D.N.Y. 1996) (commonality met in ERISA action based on misrepresentations; although "many different" employees of defendants "may have made various representations," representations all concealed same material information); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) ("[A] course of repeated misrepresentations will satisfy the commonality requirement."); *Gruber v. Grifols Shared Servs. N. Am., Inc.*, No. 2:22-cv-02621-SPG-AS, 2023 WL 8610504, at *4 (C.D. Cal. Nov. 2, 2023) (breach of fiduciary duty questions in ERISA cases repeatedly found common) (citing cases); *Sweet v. Advance Auto Stores Co.*, No. 7:21-cv-549, 2023 WL 3959779, at *3 (W.D. Va. June 12, 2023) (common questions as to plan management and oversight met commonality test); *Jacobs v. Verizon Commc'ns Inc.*, No. 16 Civ. 01082 (PGG) (RWL), 2020 WL 4601243, at *8 (S.D.N.Y. June 1, 2020) ("To a large extent, commonality is inherent in an action claiming breach of fiduciary duty under ERISA:  Because the fiduciary duties are owed to the Plans, and not to individual accounts, common questions of law and fact are central to the case.") (citing cases); *R. & R. adopted*, 2020 WL 5796165 (Sept. 29, 2020); *Tracey v. MIT*, No. 16-11620-NMG, 2018 WL 5114167, at *4 (D. Mass. Oct. 19, 2018) (commonality met where plaintiffs showed that their claims related to defendants' conduct of plan); *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 4203880, at *4 (E.D. Pa. Aug. 31, 2018) (whether SPDs were materially misleading

**D.   Plaintiffs' Claims Are Typical of Those of Absent Class and Subclass Members**

"The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Peoples*, 179 F.R.D. at 498.  It looks to "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Bullock v. Bd. of Educ. of Montgomery Cnty.*, 210 F.R.D. 556, 560 (D. Md. 2002).

To satisfy the typicality test, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 302 (citing cases).  The representative's "interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *accord Ealy*, 514 F. App'x at 305 ("[T]he representative's pursuit of his own interests must simultaneously tend to advance the interests of the absent class members.").  Put simply, "[t]he premise of the typicality requirement is … as goes the claim of the named plaintiff, so go the claims of the class." *Broussard*, 155 F.3d at 340.

At the same time, though, the typicality test does not require that the plaintiff's claims and

---

held common question); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936 (LGS), 2017 WL 3868803, at *4 (S.D.N.Y. Sept. 5, 2017) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *see also Potter v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14981, 2011 WL 9378789, at *9 (E.D. Mich. July 14, 2011) (whether class members were afforded full and fair review held predominant common question for Rule 23(b)(3) certification purposes), *amended on recons. in part on other grounds*, 2011 WL 13161198 (Oct. 19, 2011), *modified on other grounds*, 2013 WL 12182603 (Mar. 4, 2013); *Joncek v. Loc. 714 Int'l of Teamsters Health & Welfare Fund*, No. 98 C 4302, 1999 WL 755051, at *7 (N.D. Ill. Sept. 3, 1999) (whether defendants "engaged in a policy of omission" held predominant common question for 23(b)(3) certification purposes); *cf. Small v. Sullivan*, 820 F. Supp. 1098, 1110 (S.D. Ill. 1992) (questions concerning fairness of disability benefits hearings and ALJ's impartiality satisfied commonality test).

those of absent class members "be perfectly identical or perfectly aligned." *Deiter*, 436 F.3d at 467; *accord Yates*, 686 F. Supp. 3d at 404-05 (plaintiff's and absent members' claims "do not have to be factually or legally identical"; rather, "the class claims should be fairly encompassed by those of the named plaintiffs"). Thus, factual differences do not render a claim atypical, provided that the proposed representative's claim "is predicated on the same course of conduct and legal theory as the claims of the class." *Minter*, 274 F.R.D. at 533.[17] In all, the typicality test "has been liberally construed by courts[.]" *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 338.

Here, Plaintiffs have claims typical of those of absent members in that they applied for one form or another of disability benefit and were subjected to one or more of the systemic practices and policies recounted in the Amended Complaint. These practices and policies include:

(a) Evaluation of applicants by "Neutral Physicians" who have been financially incentivized to render opinions adverse to them and whom Defendants have, in many cases, selected, compensated, promoted, and maintained despite their demonstrable biases (such as a manifested predisposition towards rejecting or defending against traumatic brain injury-based claims); and who have rendered inadequate or flawed, result-driven reports (such as, for example, by rendering opinions inconsistent with their own findings or the findings of other examining physicians, in the case of T&P benefits claims improperly considering applicants' education and training, and in the case of LOD benefits claims, arbitrarily failing to award points despite undeniable objective medical evidence showing the existence of qualifying impairments under the Plan), all the while being falsely touted by Defendants as "absolutely neutral in this process," independent, fair, unbiased, or impartial;

(b) Defendants' hired physicians' failure to address the findings and opinions of other physicians (be it applicants' treating physicians or other Defendant-hired physicians) that are favorable to applicants, inconsistent interpretation of Plan terms and of test findings amongst similarly situated applicants, and application of incorrect eligibility standards;

---

[17] *Accord Smith v. B & O R.R. Co.*, 473 F. Supp. 572, 581 (D. Md. 1979) ("[T]he typicality requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members[.]"); *Bullock*, 210 F.R.D. at 560 ("[A] plaintiff's claim may differ factually and still be typical of the claims of class members if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.").

17

    (c) Review of benefits claims by Medical Advisory Physicians who are similarly compromised by reason of bias and perverse financial incentives and who have rendered opinions at odds with plan terms, earlier interpretations of Plan terms, the goals of the Plan, and medical evidence of record;

    (d) Defendants' disregard of their own physicians' findings, cherry-picking of evidence to support the denial of benefits, and failure to reconcile their denials of benefits with evidence favorable to applicants;

    (e) The failure of Defendant-hired physicians, the Committee, and the Board to consider all of the evidence of record, the cumulative effect of applicants' impairments, or claimants' self-reported symptoms;

    (f) Defendants' and their hired physicians' failure to abide by Plan terms or, conversely, their interpolation of criteria not required by Plan terms (*e.g.*, the insistence on contemporaneous documentation), and clandestine adoption of unreasonable Plan interpretations (as with the Active Football category); and

    (g) Defendants' abdication of decision-making to advisors and use of the same advisors at both the Committee and the Board level, their failure to instruct those advisors to review the entire claims record, and their pattern or practice of imprudently ignoring the advice of their own advisors to review the entire record before rendering a decision.

*Compare*, *e.g.*, ¶¶ 5-7, 48-53, 55, 65, 81, 92-99, 101-46, 283-89, 293-95, 297-304, 333-47 (allegations concerning how Defendants, in violation of ERISA, its implementing regulations, and the Plan itself, have engineered a sham system, wrongfully denying applicants the benefits to which they are entitled by reason of their ailments, denying them full and fair review of their claims, and communicating material misinformation to them) *with*, *e.g.*, ¶¶ 149-60, 168-73, 176-89, 191-93, 195-201, 219-26, 251-55, 258-66 (allegations concerning Plaintiffs' individual benefits claims, reflecting the conduct detailed above).

    Furthermore, as concerns the Subclasses, Plaintiffs McGahee, McKenzie, Olawale, and Smith have claims typical of those of the absent members of the T&P Subclass in that they applied for T&P disability benefits and their applications were prejudiced by and ultimately failed on account of the misconduct detailed above. ¶¶ 163-73, 176-89, 195-201, 219-26. Plaintiff Sims has a claim typical of the absent members of the Active Subclass in that he was denied the Active

Football and Active Nonfootball benefit categories of T&P disability benefits on account of the misconduct detailed above—namely, Defendants' clandestine, parsimonious interpretation of the Active Football T&P Disability benefits category as intended only for those applicants who have suffered a catastrophic injury during a game.  ¶¶ 191-93.  Similarly, Plaintiff Olawale has a claim typical of those of the absent members of the LOD Subclass in that he applied for LOD disability benefits and his application was prejudiced by and ultimately failed on account of the above-described misconduct.  ¶¶ 195-201.  Likewise, Plaintiffs Alford, Smith, Thomas, and Zeno have claims typical of those of the absent members of the NC Subclass in that they applied for NC disability benefits and their applications were prejudiced by and ultimately failed on account of the aforementioned misconduct.   ¶¶ 149-60, 219-26, 251-55, 258-66.

Having been affected by the sundry misconduct laid out in the Amended Complaint and asserting the same causes of action in Counts I, II, and III thereof as would absent members, Plaintiffs' claims are "predicated on the same course of conduct and legal theor[ies] as the claims of the class."  *Minter*, 274 F.R.D. at 533.  As to their Count V 502(a)(2) breach of fiduciary duty claim—which they assert on behalf of the Plan (¶¶ 330-49)—Plaintiffs' claim is by its very nature typical.[18]

---

[18] *See Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. 2007) (plaintiffs' claims typical because they sought relief on plan's behalf for fiduciary violations); *Knight v. Lavine*, No. 1:12-CV-611, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) ("The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class."); *Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694, at *7 (W.D. Mo. Dec. 3, 2007) (given representative nature of 502(a)(2) claim, it "is sufficiently typical of those of other class members"; any divergence of interests "is greatly outweighed by shared interests" in establishing defendant's liability to the plan); *In re Enron Corp.*, No. H-01-3913, 2006 WL 1662596, at *11 (S.D. Tex. June 7, 2006) (502(a)(2) claim is necessary typical "because each class member is bring[ing] suit on the Plan's behalf, not as an individual.  In effect, class members, as the Plan's advocates, are each bringing the exact same suit.").

### E.    Plaintiffs Will Adequately Represent the Class and Their Respective Subclasses

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.   [A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc.*, 521 U.S. at 625-26.  "[T]he adequacy of a class representative is chiefly determined by whether [his] interests are opposed to those of other class members."  *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308.

In this respect, "[t]he typicality and adequacy requirements of Rules 23(a)(3) and 23(a)(4) are closely related.  The interests of the class representative should be roughly coextensive with those of the class members he seeks to represent." *In re Indep. Gasoline Antitrust Litig.*, 79 F.R.D. 552, 557 (D. Md. 1978) (citing cases).  The adequacy test boils down to a court being satisfied that the proposed representatives will vigorously prosecute the claims and thereby protect absent members' interests.  As one judge in this District explained, "At the very heart of [the adequacy] inquiry is whether the absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone [who] shares their interests." *Mitchell-Tracey*, 237 F.R.D. at 558.[19]  Adequacy also requires consideration of counsel's competence.[20]

---

[19] *Accord Linder v. Litton Sys., Inc., Amecom Div.*, 81 F.R.D. 14, 19 (D. Md. 1978) ("Adequacy of representation embodies due process considerations and is consequently the most important of all the prerequisites to a Rule 23 class action.  Since the class members are conclusively bound by the outcome of the action, basic principles of fairness and justice demand that the representation they receive be adequate.  Accordingly, it is the court's duty to be reasonably certain before certifying a class that the representative will vigorously prosecute the action.").

[20] *E.g.*, *Amchem Prods., Inc.*, 521 U.S. at 626 n.20 (adequacy "also factors in competency and conflicts of class counsel."); *Jackson*, 2024 WL 556230, at *5 ("The adequacy requirement also requires a finding of class counsel's competency[.]"); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, No. ELH-12-0752, 2015 WL 575362, at *7 (D. Md. Feb. 10, 2015) (counsel's adequacy "an inextricable requirement") (citing cases).  Some cases have stated that counsel's adequacy is more properly examined under Rule 23(g), added in 2003, which governs appointment of class counsel.  *E.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D.

### 1.  Plaintiffs Are Adequate Class and Subclass Representatives

Here, it cannot genuinely be disputed that Plaintiffs are adequate representatives.  As to the adequacy test's first component—their own fitness—Plaintiffs are adequate because, as discussed in Section II.D above, their claims are typical, giving them every incentive to vigorously pursue the claims on behalf of absent Class and Subclass members.[21]  In addition, Plaintiffs satisfy the adequacy element because they and absent members have no conflicting interests.[22]

### 2.  The Class and Subclasses Will Be Adequately Represented by Counsel

As to the second prong of the adequacy test—the competence of counsel—"[i]n the

---

128, 150-51 n.28 (D. Md. 2022).  Rule 23(g) requires consideration of "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  "[M]ost courts continue to employ the substantive standards generated under Rule 23(a)(4) prior to Rule 23(g)'s adoption in their analysis of counsel's adequacy," *Sharp Farms v. Speaks*, 917 F.3d 276, 290 n.7 (4th Cir. 2019), but others have, like *In re Marriott International*, weighed the 23(g)(1) factors.  *E.g.*, *Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 205 n.25 (D. Md. 2022); *see also infra* at 32 n.42 (citing additional examples).

[21] *E.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308 ("[F]or the same reasons the typicality requirement is met … the representatives' interests are in alignment with the proposed class."); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015) (adequacy satisfied where claims were typical); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 339 (because plaintiffs' claims were typical, they would "advance the interests of the absent class members"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (typicality of plaintiffs' claims was "strong evidence that their interests [were] not antagonistic to those of the class"; "same strategies" that would vindicate their claims would "vindicate those of the class").

[22] *E.g.*, *Jenkins v. Massinga*, 592 F. Supp. 480, 487 (D. Md. 1984) (adequacy test met where there was "no antagonism or conflict between the class representatives' position … and the position of the class members"; "[t]he plaintiff representatives share[d] the same interest as the class"); *Smith v. Montgomery Cnty., Md.*, 573 F. Supp. 604, 613 (D. Md. 1983) (adequacy met where plaintiff's interests were "coextensive with, not antagonistic to, those of the class"); *Jackson v. Am. Elec. Warfare Assocs., Inc.*, No. TDC-22-1456, 2024 WL 556230, at *5 (D. Md. Feb. 12, 2024) (no conflict where class members shared "common objectives and the same factual and legal positions and ha[d] the same interest in establishing the liability of the defendants"); *Klugmann v. Am. Cap. Ltd.*, No. PJM 09-5, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009) (test met where "no evidence of any antagonism or conflict between [plaintiff] and other class members").

absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett*, 185 F.R.D. at 218. The Court, though, need not rest on that presumption alone. As discussed below—and shown by their firm biographies (Exs. A-C)—Seeger Weiss LLP ("Seeger Weiss"); Athlaw LLP ("Athlaw"); and Aylstock, Witkin, Kreis, & Overholtz, PLLC ("Aylstock Witkin" or "AWKO")—collectively possess expertise in complex, class action, and ERISA litigation and knowledge of the Plan and applicable law, rendering them eminently fit to serve as Class and Subclass Counsel.[23]

### a. Seeger Weiss

Seeger Weiss is one of the nation's preeminent plaintiffs' law firms, with an established track record of helping lead some of the most complex and important cases on behalf of injured parties. Since cofounding the firm in 1999, partner Christopher A. Seeger—the lead Seeger Weiss attorney in this action—has earned leadership appointments from courts throughout the U.S. in many of the most complex and prominent multidistrict ("MDL") and other litigations, securing key jury verdicts and negotiating often innovative settlements valued at tens of billions of dollars.

Appointed as Co-Lead (and later Class) Counsel, Mr. Seeger served as chief negotiator on behalf of some 20,000 Players in ground-breaking litigation against the NFL, *In re National Football League Players' Concussion Injury Litigation*, MDL No. 2323 (E.D. Pa.) ("*NFL Players'*

---

[23] *E.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308-09 (noting counsel's "history of diligent advocacy in class action litigation"); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1409 n.5 (D. Md. 1984) (plaintiff's counsel would adequately represent interests of class based on their "experience in class litigation"); *Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 104 (D. Md. 2010) ("[c]lass counsel [we]re highly experienced and ha[d] the intellectual and financial resources necessary to prosecute a sophisticated class action"); *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 5593338, at *14 (D. Md. Sept. 18, 2020) (adequacy met where plaintiffs' counsel "introduced evidence of their expertise and experience"); *Robinson v. Nationstar Mortg. LLC*, No. TDC-14-3667, 2019 WL 4261696, at *18 (D. Md. Sept. 9, 2019) (counsel "experienced in complex civil litigation and class action litigation").

*Concussion*").    The Players sought damages for neurocognitive and neuromuscular ailments stemming from concussive and sub-concussive injuries from NFL football play—many of the same ailments as underlie the benefits claims here.[24]    Mr. Seeger and his team surmounted formidable legal hurdles (including federal preemption, lack of causation, and assumption of risk) to achieve results that the settlement class overwhelmingly supported—most notably an uncapped Monetary Award fund for members afflicted with one of the specified neuromuscular or neurocognitive impairments.    *See In re Nat'l Football Lague Players Concussion Inj. Litig.*, 821 F.3d 410, 421-25, 436-48 (3d Cir. 2016), *aff'g*, 307 F.R.D. 351, 361-70 (E.D. Pa. 2015).[25]

More recently, Mr. Seeger served as Co-Lead Counsel in *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL No. 2885 (N.D. Fla.), the largest MDL in history.    Following several favorable bellwether trial verdicts in that product liability litigation, including verdicts secured by his firm, Mr. Seeger played a central role in negotiating an over $6 billion nationwide settlement.[26]

Mr. Seeger's success at the negotiating table is built on his success in the courtroom.

---

[24] Ironically, notwithstanding the overlap of neurocognitive and neuromuscular impairments suffered by Class members here with those compensated under the *NFL Players' Concussion* settlement program, Defendants and their hired physicians have issued opinions and decisions irreconcilable with diagnoses of impartial physicians in that program. *See* ¶¶ 155, 157 n.14, 288. Such irreconcilability with relevant external standards is one of the facets of Defendants' systemic failure to reasonably exercise their discretion. *See* Plaintiffs' MTD Opposition Memorandum at 28 (ECF No. 70 at 41); *see also supra* at 13 (common question (aa)) and *infra* at 35.

[25] To date, some 1,799 award notices, totaling nearly $1.36 billion, have been issued under that settlement, with over $1.27 billion already paid, well exceeding its projected $1 billion value at the time of its approval. *See* https://www.nflconcussionsettlement.com/Docs/8_26_24_report.pdf, at 2 (last accessed Sept. 3, 2024).

[26] Also, he has been a member of the Plaintiffs' Executive Committee ("PEC") and Settlement Committee in *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio), prosecuting negligence, public nuisance, and other claims in that landmark MDL. Following bellwether trial victories, a $26 billion settlement was achieved with opioid manufacturers and distributors, followed by a $10 billion settlement with CVS and Walgreens that he helped negotiate.

Counsel know that he is fully willing and capable of taking large and complex cases to trial. The firm's successes in trying bellwether cases have served as a catalyst to global settlements. For example, in *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047 (E.D. La.), Mr. Seeger was appointed Chair of the Plaintiffs' Trial Committee and was lead trial counsel in a series of successful bellwether trials. The plaintiffs' verdicts from those trials laid the groundwork for a national settlement valued at approximately $1 billion. Similarly, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La.), where Mr. Seeger was appointed Co-Lead Counsel, settled for $4.85 billion after five years of intense litigation, but mere months after Mr. Seeger led a team that obtained a $47.5 million jury verdict for one of the firm's clients.[27]

Alongside Mr. Seeger in this action are his partners, Diogenes P. Kekatos and Benjamin R. Barnett. Mr. Kekatos was extensively involved in *NFL Players' Concussion* and *In re Syngenta AG MIR 162 Corn Litig.*, had the principal day-to-day responsibility for the firm's earlier ERISA cases discussed below, and has been involved in numerous other class action cases.[28] Mr. Barnett

---

[27] Mr. Seeger's other notable additional leadership roles have included *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545 (N.D. Ill.) (Co-Lead Counsel appointed by Judge Matthew Kennelly, representing individuals injured by testosterone medications. Mr. Seeger was lead trial counsel. Following bellwether trials, he led efforts that secured settlements of over $200 million with several manufacturers); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. and Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (Member of the Plaintiffs' Steering Committee ("PSC") appointed by Judge Charles R. Breyer. Mr. Seeger served on the settlement subcommittee, was liaison with the state court plaintiffs, and was an integral part of the negotiating team, achieving settlements valued at over $15 billion); *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591 (D. Kan.) (Appointed to a specially convened Plaintiffs' Settlement Negotiating Committee by Judge John W. Lungstrum. In sprawling litigation involving claims by U.S. corn farmers arising from genetically modified corn seed that infiltrated the U.S. corn supply, resulting in embargos of U.S. corn by its principal importers, triggering a fall in corn prices, Mr. Seeger was a principal negotiator of a $1.51 billion nationwide settlement. The negotiations were particularly complex and multidimensional given the pendency of four parallel litigations, including the MDL).

[28] Before joining Seeger Weiss in December 2000, Mr. Kekatos was for fourteen years as an Assistant U.S. Attorney in the Southern District of New York, receiving received numerous awards and award nominations for outstanding service, and argued some 120-30 appeals and motions in the Second Circuit, including a rare en banc rehearing. He has an extensive background in

joined Seeger Weiss as a partner on January 1, 2024, after more than twenty-two years at Dechert LLP, where he was a partner, chair of the Mass Tort and Product Liability Group, and co-chair of the Complex Commercial Litigation Group. He is widely recognized as a leading expert in the field of eDiscovery.[29] Since joining Seeger Weiss, Mr. Barnett has been involved in numerous MDL cases.[30]

As specifically relates to ERISA matters, Seeger Weiss has achieved significant results. For example, in 2012, it spearheaded a successful challenge to an amendment to the Bakery and Confectionery Workers pension plan—which had abruptly divested most former workers of eligibility for subsidized early retirement benefits under plan provisions that had been in effect during their employment—as violative of ERISA's prohibition of cutbacks of accrued benefits, resulting in restoration of benefits eligibility to hundreds of former workers.[31]

---

complex, class action, and federal appellate litigation, and has been selected numerous times to New York and New Jersey Super Lawyers.

[29] He was the lead discovery counsel in the Airbus global criminal investigation, which resulted in an unprecedented same-day resolution in three jurisdictions—France, the UK, and the U.S. Also, he was lead defense discovery counsel and strategist in *In re Takata Airbags Prods. Liab. Litig.*, MDL No. 2599 (S.D. Fla.); *In re Seroquel Prods. Liab. Litig.*, MDL No. 1769 (M.D. Fla.); *In re Vytorin/Zetia Mktg., Sales Pracs. and Prods. Liab. Litig.*, MDL No. 1938 (D.N.J.); and *In re Vioxx*. Before joining Dechert LLP, he was an Assistant U.S. Attorney in the District of Columbia and Eastern District of Pennsylvania, arguing multiple appeals in the D.C. and Third Circuits.

[30] These include *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, MDL No. 3047 (N.D. Cal.); *In re Philips Recalled CPAP, Bi-Level PAP, and Mech. Ventilator Prods. Liab. Litig.*, MDL No. 3014 (W.D. Pa.); *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, MDL No. 2921 (D. N.J.); and *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, MDL No. 3102 (D. Utah).

[31] *See In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 865 F. Supp. 2d 469, 472-76 (S.D.N.Y. 2012), *aff'd*, 751 F.3d 71, 76-78 (2d Cir. 2014). In 2005, following dispositive and class certification motion practice and mediation, Seeger Weiss secured a $16 million settlement in an MDL involving retired Delta Air Lines pilots hired before 1972, who challenged a pension plan amendment that froze the value of the benefit units for calculating the alternative benefits available to them as violative of ERISA's anti-cutback provision. Final settlement approval came just days before Delta filed Chapter 11 bankruptcy. *See* Stipulation and

Here, Seeger Weiss had a central role in crafting both complaints, co-authored Plaintiffs'

MTD Opposition Memorandum, is lead author of this motion, and co-leads discovery-related

matters and the vetting of potential experts.

### b. Athlaw

Athlaw is the gold standard for representation of disabled Players in matters involving the

ERISA-regulated Plan.[32]  For nearly a decade, Athlaw attorneys and paraprofessionals have

directed their focus and extensive expertise towards vigorously representing hundreds of disabled

Players related to Plan disability benefits claims, as well as in claims under the *NFL Players'*

*Concussion* settlement.  Athlaw's practice focuses exclusively on the representation of Players.  In

the face of a daunting system skewed against disabled Players—as chronicled by courts across the

country—Athlaw's extensive legal research, high-quality briefing, and familiarity with the

complexities of ERISA and the Plan have resulted in it securing benefits for Players where other

firms have failed.  Attorneys at Athlaw have applied their extensive and unique ERISA knowledge

in drafting and submitting over 1,000 briefs in support of Players' disability benefits applications.

They are known as the leaders in the NFL-related benefits field due to their extensive wealth of

knowledge of ERISA caselaw.  As courts have continued to review and interpret the Plan, Athlaw

---

Agreement of Settlement; Order and Final J., *In re Delta Air Lines, Inc.*, No. 1:02-md-01424-JEC (N.D. Ga. May 20 and Sept. 6, 2005) (ECF Nos. 107-1, 119).  Also, Seeger Weiss was co-counsel on behalf of a tens of thousands of BellSouth management employees alleging breaches of fiduciary duty relating to their 401(k) plan.  After considerable motion practice and discovery, the court gave final approval to a class action settlement providing for, among other things, BellSouth to make matching plan contributions for a three-year period in cash rather than company stock. *See* Findings of Fact and Conclusions of Law Regarding Settlement, Order and Final J., *In re BellSouth Corp. ERISA Litig.*, No. 1:02-CV-2440-JOF (N.D. Ga. Dec. 5, 2006) (ECF No. 255).

[32] As courts have recognized, ERISA is "an enormously complex and detailed statute." *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996); *Doe v. Blue Cross Blue Shield of Md., Inc.*, 173 F. Supp. 2d 398, 405 (D. Md. 2001) (same; also noting that "ERISA is a "comprehensive and reticulated statute, enforced by a series of interlocking and interdependent remedies").

has evolved into the preeminent leader in legal research regarding the decisions in this arcane field. It stands out for its strong advocacy by employing this knowledge to support applications, appeals of adverse benefits decisions, and opportunities to respond before the Board.  Clients repeatedly praise Athlaw for its commitment to excellence and diligence when fighting for them in a process that is chronically lopsided against Players.

Samuel Katz founded Athlaw.  He is recognized in the field of sports law as an exceptional lawyer for helping Players with ERISA-related NFL disability benefits matters due to his extensive depth of knowledge, and frequently mentioned as peerless in his knowledge of the Plan and relevant caselaw regarding ERISA-regulated NFL benefits and rights.   Mr. Katz founded Athlaw with one goal in mind:  protecting disabled Players' rights.  He has spent almost ten years working around the clock with a passion and dedication to achieving that goal.  Mr. Katz has personally trained every attorney at Athlaw in this complicated area of ERISA-regulated NFL disability benefits as well as in the intricacies of the Plan's benefits process.  As a result of the preeminent quality of his Player representation, he has earned a nationally recognized reputation in the field and Athlaw's clients have collected over $110 million in entitled benefits and compensation.[33]

---

[33] Mr. Katz has also prosecuted other matters against the NFL.  In the *NFL Players' Concussion* settlement, he successfully opposed an NFL objection to the district court, resulting in it upholding a nearly $3.2 million NFL Monetary Award in the face of the NFL's challenge to the Special Master's determination.  *In re NFL Players' Concussion Inj. Litig,* Settlement Implementation Determination (E.D. Pa. Sept. 3, 2020) (SPID No. 100015138) (unpublished and not publicly docketed) (Ex. D).  Mr. Katz's defeat of the NFL's appeals of Monetary Awards under that settlement has also resulted in various published precedential Special Master decisions.  *E.g.*, *Alzheimer's Disease Diagnosis and Biomarker Testing* (Spec. Master Ruling, Sept. 18, 2023), https://www.nflconcussionsettlement.com/Docs/alz_biomarkertesting_sm.pdf (upholding nearly $4 million Monetary Award against NFL's spirited appeal).   The Special Master has commended Mr. Katz multiple times in precedential rulings for having "ably prosecuted th[e] Appeal." *Functional Impairment* at 3 n.5 (Spec. Master Ruling May 28, 2021), www.nflconcussionsettlement.com/Docs/functional_impairment_sm_4.pdf; *see also Validity and Functional Impairment* (Spec. Master Ruling July 15, 2024), https://www.nflconcussionsettlement.com/Docs/validity_functional_impairment_sm.pdf (noting

Athlaw managing partner Julia Damron has worked alongside Mr. Katz, assisting him with overseeing Athlaw's lawyers and paraprofessionals work in this action.  In her five years with Athlaw, Ms. Damron has worked on matters for nearly 350 Players, second only to Mr. Katz.  She is a tireless advocate for clients who have a combination of significant cognitive, psychological, neurological, and physical impairments and may require assistance in their daily lives.  Her attention to detail and strong litigation background have resulted in numerous awards of disability benefits and *NFL Players' Concussion* settlement monetary awards, and Ms. Damron regularly advances innovative arguments and theories based on developments in caselaw and Athlaw's extensive research on NFL benefits-related matters for the betterment of the Class.[34]

Here, Athlaw has been one of this litigation's architects, contributing not only innumerable hours researching and preparing filings thus far in the action, but also its unique institutional knowledge of the Plan and its operations, ERISA expertise, and familiarity with and direct representation of every plaintiff.  It expended countless hours on complaint preparation and opposition to Defendants' dismissal motion—identifying, investigating, working up, and now

Athlaw's "point-by-point rebuttals" and "good lawyer's briefing" and how it is "deeply engaged with the Settlement Program's guidance documents").  (All rulings last accessed Sept. 3, 2024.)

[34] Before joining Athlaw, Ms. Damron advocated for plaintiffs in federal and state courts, including the Ninth Circuit and the California Supreme Court.  She has extensive experience handling class actions and complex matters.  Ms. Damron has prepared law and motion documents for class action and individual cases at every litigation stage, and she has undertaken significant pre-litigation case development.  She has been the primary preparer of successful motions for preliminary approval of class action settlements, motions for summary judgment and oppositions thereto; and class action settlement agreements and class notices, and she has participated in class action and individual mediations, arbitrations, various court appearances, and a robust discovery practice, including expert witness preparation, taking and defending depositions, pursuing subpoenas, and working with a discovery referee.  In her prior practice, Ms. Damron represented plaintiffs in litigation against large corporations such as Costco (*Costco Wage and Hour Cases*, No. JCCP 4871 (Cal. Super. Ct.)) and Coca-Cola.  She also represented a large group of plaintiffs in complex California state court litigation regarding trusts and estates.

litigating the claims based on their unique knowledge, particular experience, and familiarity with

the relevant caselaw and the Plan.  Athlaw's weighty contributions have included marshaling the

factual and legal research concerning the statistical evidence demonstrating disturbing patterns of

bias; the vetting of the proposed Class and Subclass representatives after much investigation, based

on their issues of law and fact that are representative of those of absent members; the drafting of

the bulk of both complaints; and the co-authoring of Plaintiffs' MTD Opposition Memorandum.

In addition, Athlaw has the day-to-day responsibility for communicating with Plaintiffs.

### c.    Aylstock Witkin

AWKO is a national law firm that has been involved in complex litigation for over 20 years.

Bryan F. Aylstock, Justin G. Witkin, Douglass A. Kreis co-founded AWKO in 2001.  As set forth

in its firm biography (Ex. C), AWKO has extensive experience leading complex MDLs, and its

attorneys have been appointed by numerous courts as lead or class counsel[35] and to MDL

leadership roles.[36]  With over twenty attorneys, 300 staff members, multiple on-site IT specialists,

database administrators, and software developers, AWKO has successfully represented hundreds

of thousands of clients since the firm's inception.  It has worked to secure some of the largest

verdicts and settlements ever, with settlements totaling over $10 billion and verdicts of $110

---

[35] *E.g.*, *In re Procter & Gamble Aerosol Prods. Mktg. and Sales Pracs. Litig.*, MDL No. 3025, (S.D. Ohio); *Evans v. Church & Dwight Co.*, No. 1:22-cv-06301 (N.D. Ill.); *In re MCI Non-Subscriber Tel. Rates Litig.*, MDL No. 1275 (S.D. Ill.); *In re America Online, Inc. Version 5.0 Software Litig.*, MDL No. 1341 (S.D. Fla.); *Begley v Ocwen Loan Servicing, LLC*, No. 3:16-cv-00149-MCR-CJK (N.D. Fla.).

[36] *E.g.*, *In re 3M Combat Arms Earplug* (Co-Lead Counsel; Exec. Comm.; Discovery & ESI Comm.; Experts & Science Comm.); *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327 (S.D. W. Va.) (Coordinating Co-Lead Counsel, overseeing MDL Nos. 2187, 2325, 2326, 2327, 2387, 2440, 2511); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, MDL No. 2004 (M.D. Ga.) (Co-Lead); *McLaughlin v. Bayer Essure, Inc.*, No. 14-7315 (E.D. Pa.) (Co-Lead Counsel and PSC); *In re Avandia Mktg., Sales Pracs. and Prods. Liab. Litig.*, MDL No. 1871 (E.D. Pa.) (Co-Lead; Advisory and Common Benefit Fee Comms.).

million, $72 million, and $50 million in the last three years.

Bryan Aylstock has focused most of his career on the representation of individuals injured by defective products, including drugs and medical devices, specializing in MDL and class action litigation for more than twenty-five years and has developed substantial experience in handling complex class and mass tort litigation. Mr. Aylstock has served with distinction as lead or co-lead counsel in multiple high-profile MDLs,[37] bringing each to a successful conclusion. Recently, he served as Co-Lead Counsel alongside Mr. Seeger in *In re 3M Combat Arms Earplug*, before Judge M. Casey Rodgers of the Northern District of Florida, the largest MDL in history, which resulted in a historic $6 billion settlement. In that capacity, Mr. Aylstock was recognized for receiving one of the Top 50 verdicts in the United States in 2021 and 2022.[38]

Mr. Witkin is AWKO's Managing Partner. Under his guidance, AWKO has grown from two attorneys and two staff members when it started in 2001, to over twenty attorneys and 300 staff members today. After decades of litigation experience, Mr. Witkin currently serves as AWKO's settlement counsel. He has negotiated settlements for hundreds of thousands of AWKO clients, securing billions of dollars in settlement funds, and is responsible for implementing these settlements, including designing methodologies and protocols to allocate settlement funds in a just and efficient manner. Mr. Witkin has had the honor of being appointed by federal courts

---

[37] He was appointed as Co-Lead Counsel in *In re Avandia*; Liaison Counsel in *In re Abilify Prods. Liab. Litig.*, MDL 2734 (N.D. Fla.); and Co-Lead Class Counsel in *In re Johnson & Johnson Sunscreen Mktg., Sales Pracs., and Prods. Liab. Litig.*, MDL No. 3015 (S.D. Fla.), and *In re Proctor & Gamble*.

[38] Before that, Mr. Aylstock served as Coordinating Co-Lead Counsel, helping to oversee and bringing to resolution the five separate MDLs (Nos. 2187, 2325, 2326, 2327, and 2387) involving pelvic repair system products, which were all consolidated in the Southern District of West Virginia before Judge Joseph R. Goodwin. Combined, those MDLs represented approximately one-third of the federal court system's civil docket at the time.

nationwide as settlement or litigation counsel in a number of MDLs.[39]

Over the past twenty years, Mr. Kreis has focused his practice on MDL and class action litigation, primarily representing clients injured by defective drugs and medical devices, and earning appointments to leadership and committee positions, including as Lead Counsel in *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, MDL No. 2004 (M.D. Ga.).[40]  He has become one of the country's most knowledgeable attorneys concerning the interplay between law and science, including in identifying, vetting, and working with expert witnesses,[41] gaining colleagues' respect and being asked to speak at mass tort seminars and symposiums nationwide, at which he addresses science and law in the context of epidemiology; potential modes of failure (general and specific causation); and pathology, histology, and presentation of related injuries.

Here, AWKO has taken the lead in crafting proposed discovery-related orders, and it has co-led Rule 26(f) meetings with Defendants, discovery matters, and vetting of potential experts.

### d. The Work Done Thus Far by Plaintiffs' Counsel and Resources That They Will Bring to Bear in This Litigation

The work that they have already performed in this case further attests to Plaintiffs' counsel's fitness.  Counsel conducted extensive investigation and research in preparing both complaints.  The Amended Complaint contains 387 paragraphs of extensive allegations concerning

---

[39] *E.g.*, *In re 3M Combat Arms Earplug*; *In re Ethicon*; *McLaughlin*; *In re Abilify*; *In re Avandia*; *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, MDL No. 1632 (E.D. La.); *In re Vioxx*; *In re MCI*; and *In re Am. Online, Inc.*

[40] Mr. Kreis was also appointed to the PEC in *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 2441 (D. Minn.), the PSC in *In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, MDL No. 2391 (N.D. Ind.), and the Expert Committee in *In re 3M Combat Arms Earplug.*

[41] Mr. Kreis took the lead role in identifying and retaining preeminent experts in acoustics, audiology, military hearing conservation, and military safety to support U.S. service members and veterans in *In re 3M Combat Arms Earplug*, where he served on the Expert Committee.

the Plan's structure and types of disability benefits available under it; the claims and appeals process; facts concerning Plaintiffs' individual benefits claims; the misconduct complained of; Plan provisions, ERISA statutes, and implementing regulations implicated; and relief sought. *See* ECF No. 56 *passim*. In addition, Plaintiffs' counsel researched and prepared a thorough sixty-page memorandum in opposition to Defendants' motion to dismiss. *See* ECF No. 70 *passim*. Following the Court's ruling on that motion, sustaining most of Plaintiffs' claims, Plaintiffs' counsel have been negotiating scheduling and discovery-related orders with Defendants' counsel, have conducted informal discovery, and have now commenced formal discovery.[42]

Besides those efforts to date, counsel have the resources to commit to the prosecution of this case. Seeger Weiss counts some forty attorneys and dozens of paraprofessionals in its ranks, Athlaw seven attorneys and over twenty legal staff and paraprofessionals, and AWKO the attorneys and other personnel described above.[43]

---

[42] *See, e.g.*, *Smith*, 573 F. Supp. at 613 (adequacy test met where plaintiff's counsel "ha[d] vigorously and diligently pursued her claim"); *Smith*, 473 F. Supp. at 582 ("the attorneys for the plaintiffs have shown that they can ably handle the case"); *Benway v. Res. Real Est. Servs., LLC*, 239 F.R.D. 419, 426 (D. Md. 2006) (counsel "experienced and capable of handling class action litigation"); *Shadrin v. Student Loan Sols.*, No. 1:20-cv-03641-RDB, 2023 WL 6390218, at *1 (D. Md. Jan. 23, 2023) (applying Rule 23(g)(1) factors in context of Rule 23(a)(4) analysis and concluding that "[c]ounsel's knowledge of the applicable law, and the resources Counsel will commit to representing the class" favored their appointment as class counsel); *Todd v. XOOM Energy Md., LLC*, No. GJH-15-154, 2020 WL 4784767, at *12 (D. Md. Aug. 18, 2020) (adequacy shown where counsel had "ably engaged in motion practice and discovery disputes over the course of th[e] litigation" and had successfully litigated similar class actions); *O'Bannon v. Friedman's, Inc.*, No. AW-03-623, 2008 WL 11509653, at *4 (D. Md. Oct. 29, 2008) (applying 23(g)(1) factors in context of 23(a)(4) analysis and appointing class counsel after finding that they had "thoroughly investigated potential class claims, ha[d] extensive experience in handling class actions and … claims of the type asserted in the action, and ha[d] committed substantial resources to representing the class, and therefore ha[d] more than adequately represented the class"); *Kernan v. Holiday Universal, Inc.*, No. JH90-971, 1990 WL 289505, at *4 (D. Md. Aug. 14, 1990) (counsel's adequacy was "supported by the court's own observation of the quality of representation provided to plaintiffs[] over the past several months").

[43] *See, e.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308 (adequacy test met where

## III. PLAINTIFFS' CLAIMS ARE EMINENTLY SUITABLE FOR CERTIFICATION UNDER RULE 23(b)(1)(A)

As noted in Section I above, in addition to satisfying the threshold Rule 23(a) criteria, "a proposed class must also satisfy the requirements of one of the three Rule 23(b) categories."[44] Here, Plaintiffs seek certification under Rule 23(b)(1)(A), which permits certification if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]

Fed. R. Civ. P. 23(b)(1)(A); *see Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 409 (D. Md. 2014) (quoting Rule); *Piotrowski*, 2015 WL 4602591, at *19 (same).

The Supreme Court has explained that "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike … or where the party must treat all alike as a matter of practical necessity[.]" *Amchem Prods., Inc.*, 521 U.S. at 614. Nowhere is this truer than in ERISA cases such as this. "The language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike."[45]

---

counsel attested to resources already committed and to be brought to bear in prosecuting case); *Remsnyder v. MBA Mortg. Servs., Inc.*, No. CCB-19-492, 2023 WL 5750412, at *5 (D. Md. Sept. 6, 2023) (counsel declared they had "sufficient resources available to represent the class").

[44] *Gariety*, 368 F.3d at 362; *accord Deiter*, 436 F.3d at 466; *Gunnells*, 348 F.3d at 423; *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 296; *Jones v. Murphy*, 256 F.R.D. 519, 522 (D. Md. 2009); *Bullock*, 210 F.R.D. at 558; *Adams v. Henderson*, 197 F.R.D. 162, 170 (D. Md. 2000); *Peoples*, 179 F.R.D. at 496.

[45] *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179-80 & n.54 (S.D.N.Y. 2006) (citing cases); *Thompson v. Linvatec Corp.*, No. 6:06-CV-0404 (NPM/GJD), 2007 WL 1526418, at *5 (N.D.N.Y. May 22, 2007); *accord In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005) (23(b)(1)(A) certification appropriate where inconsistent relief "could make compliance impossible for defendants"); *McFadden v. Sprint Commc'ns, LLC*, No. 22-2464-DDC-GEB, 2024 WL 1533897, at *4 (D. Kan. Apr. 9, 2024) (noting plan administrators' statutory

Thus, this Court and a plethora of others have recognized that ERISA claims seeking plan-wide relief—as is the case here with, for example, Plaintiffs' claim in Count II of the Amended Complaint that Defendants have furnished inadequate notice of the specific reasons for adverse determinations and have failed to give specific reasons for disagreeing with medical views favoring the award of benefits (¶¶ 290-95); their claim in Count III that Defendants have routinely failed to provide full and fair review of adverse benefits determinations (¶¶ 296-304); and their 502(a)(2) breach of fiduciary duty claim under Count V, brought on behalf of the Plan (¶¶ 330-49)—are quintessentially suitable for 23(b)(1) certification.[46]

---

obligation and fiduciary responsibility to treat plan participants alike and thus risk they face from having to comply with inconsistent adjudications); *Berry v. Wells Fargo & Co.*, No. 3:17-00304-JFA, 2018 WL 9989754, at *12 (D.S.C. Oct. 9, 2018) (because ERISA plan administrators are "obliged by law" to "treat all similarly situated participants in a consistent manner ... courts inside and outside the Fourth Circuit have certified classes under Rule 23(b)(1)(A) in cases involving ERISA violations") (citing cases); *see also Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986); (23(b)(1)(A) certification appropriate if "individual adjudication of the controversy would prejudice ... the party opposing the class").

[46] *E.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of 502(a)(2) claims, such breach of fiduciary duty claims are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing cases); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204, 227-28 (D.N.J. 2013) (certifying 23(b)(1)(A) class alleging that defendant's procedures did not comply with ERISA's notice and appeal requirements); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014) (where allegations "implicate misconduct in the management in the Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications") (citing cases); *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (given their derivative nature, 502(a)(2) breach of fiduciary duty claims "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class" because recovery "will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan" and "a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs") (citing cases); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[P]lan-wide claims against ERISA fiduciaries are textbook examples of proper class certification."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (allegations implicating misconduct in plan's management that undergirded 502(a)(2) claim presented "a paradigmatic example" of a 23(b)(1) class); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19 Civ. 9910 (ER), 2022 WL 538146, at *11 (S.D.N.Y. Feb. 14, 2022) (23(b)(1) certification appropriate given derivative nature of suit brought on behalf of the plan "and the fact that Plaintiff challenge[d] procedures and practices common to the entire Plan"), *pet. for permission to appeal denied*, No.

Even as to Count I of the Amended Complaint—Plaintiffs' 502(a)(1)(B) claim that benefits were wrongfully denied (¶¶ 280-89)—23(b)(1)(A) certification is appropriate.  Among the eight "*Booth* factors" that the Fourth Circuit has articulated for determining if discretion is exercised reasonably are a plan's language, whether interpretations of a plan are consistent with earlier interpretations, the adequacy of materials considered in making a decision and the degree to which they support it, whether the decision-making process is reasoned and principled, any external standard relevant to the exercise of discretion, whether decisions comport with ERISA requirements, and the fiduciary's motives and any conflict of interest it may have.  *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).

The common questions identified in Section II.C above—including those concerning the history of biased claims administration; financial incentivization of physicians to render opinions unfavorable to applicants; inconsistent treatment of similarly situated applicants; failure to consider all evidence or the cumulative effect of impairments and to address evidence favoring the award of benefits; decisions irreconcilable with pertinent external standards; abdication of decision-making to advisors, and use of the same advisors at the Committee and Board levels on the same claim; and consideration of education and training, contrary to Plan terms governing T&P disability claims—implicate those *Booth* factors on a Plan-wide scale.  Inconsistent adjudications as to those questions would create incompatible standards of conduct for Defendants.

Importantly, Plaintiffs principally seek declaratory and extensive injunctive and other

---

22-404, 2022 WL 4126112 (2d Cir. June 29, 2022); *Stegemann v. Gannett Co.*, No. 1:18-cv-325 (AJT/JFA), 2022 WL 17067496, at *11-13 (E.D. Va. Nov. 17, 2022) (certifying 502(a)(2) breach of fiduciary duty claim under 23(b)(1)(A)); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11-425 ES, 2014 WL 4271970, at *29 (D.N.J. Aug. 28, 2014) (certifying 23(b)(1)(A) class challenging overpayment recoupment procedures, including adequacy of notice).

equitable relief.[47]   The prospective payment of benefits upon the reprocessing of claims is

incidental to this extensive non-monetary relief, thereby permitting 23(b)(1)(A) certification.[48]

Put simply, this case is not about damages.[49]

---

[47] Plaintiffs seek a declaratory judgment that Defendants did not afford Plaintiffs and absent Class members full and fair review and that the Board's acts and omissions in the aggregate, including the squandering of some $30 million in Plan assets over the last fifteen years in furtherance of the sham claims process, evince the willful abdication of fiduciary duties.  *See* ¶¶ 341, 364, 387.  They seek extensive injunctive relief to, among other things, halt Defendants' misinformation and other practices that violate ERISA; bring claims procedures into compliance with ERISA, including by mandating review of the entire administrative record; prohibit Defendants from reducing or terminating any Plaintiff's or Class member's benefits on account of participation in this action; reinstate previously awarded benefits that were terminated, where the decision was based on the opinion of a physician averaging more than $125,000 in annual compensation from Defendants and who had an 85% or higher rate of finding applicants not T&P disabled; require the hiring of an independent auditor with respect to the selection, training, compensation, retention, and promotion of "Neutral Physicians"; enjoin the retention of thirty-two named "Neutral Physicians"; prohibit any "Neutral Physician" from being compensated more than $86,000 annually for a five-year period; mandate full and fair review; require the reopening of adverse decisions; require issuance of accurate SPDs; and reform Plan terms.  *E.g.*, ¶¶ 359-65, 368-69, 371, 374, 376-77, 379, 381.  As to their breach of fiduciary duty claim, Plaintiffs seek replacement of the Board's members and prospective stripping of its discretion.  ¶¶ 370, 387.

[48] *See Sloan v. BorgWarner, Inc.*, 263 F.R.D. 470, 477 (E.D. Mich. 2009) (23(b)(1) certification appropriate where injunctive or declaratory relief claims predominated over back benefits request); *Howard v. Aetna Life Ins. Co.*, No. 22-01505-CJC (MRWx), 2024 WL 1098789, at *11 (C.D. Cal. Feb. 27, 2024) (23(b)(1) certification appropriate because reprocessing of claims did not guarantee payment of benefits); *Caufield v. Colgate-Palmolive Co.*, No. 16 Civ. 4170 (LGS) (KNF), 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017) (23(b)(1) certification appropriate because benefits sought were those due under plan's terms in accordance with ERISA requirements and thus "merely incidental to the adjudication of the alleged errors").

[49] *See Ross-Randolph v. Allstate Ins. Co.*, No. DKC 99-3344, 2001 WL 36042162, at *8 (D. Md. May 11, 2001) (23(b)(1)(A) not a proper basis for certification where Plaintiffs "*exclusively* request[ed] money damages in their prayer for relief"); *cf. Cheng v. Liu*, No. 23-1806, 2024 WL 3579606, at *3-4 (4th Cir. July 29, 2024) (23(b)(2) certification inappropriate where seven of ten claims sought money damages as relief).  Although Plaintiffs also seek payment, pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), of $100 per day for each failure of the Board to provide any Plaintiff or Class member requested information that it had an obligation to provide (¶ 383), such statutory penalties are not individualized damages claims and thus do not tower over the declaratory, injunctive, and other equitable relief sought here.  *See Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 394 (S.D. Ohio 2008) (unlike actual damages, "[a]llocating statutory damages is a matter of performing a mechanical calculation"); *cf. Berry*, 807 F.3d at 609 (FCRA statutory damages claims did not preclude 23(b)(2) certification).

## IV.  PLAINTIFFS' CLAIMS ARE ALSO WELL SUITED FOR CERTIFICATION UNDER RULE 23(b)(2)

Plaintiffs' claims are also appropriate for certification under Rule 23(b)(2).  Rule 23(b)(2) allows certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

Here, Defendants "have acted or refused to act on grounds that apply generally to the class" by, for example, rubber-stamping the reports of conflicted physicians whom they have financially incentivized to disfavor applicants; failing to consider all of the evidence of record and to take measures to ensure impartiality of those involved in decision-making and to limit the likelihood of physician bias; failing to provide specific reasons for an adverse benefits determination and to explain why they disagree with medical views favoring the award of benefits and thus not providing adequate notice of the basis of benefits denials; failing to consider the combined effect of applicants' impairments; improperly abdicating their decision-making to advisors and then using the same advisors at both administrative levels, thereby depriving applicants of de novo review, in violation of both ERISA regulations and Plan terms; improperly considering education and training in violation of Plan terms for T&P disability; and employing a clandestine interpretation that impermissibly crosses the line between interpretation and unlawful amendment of the Plan and limits the Active Football T&P disability benefits category to applicants who suffered a catastrophic injury on the playing field.  *E.g.*, ¶¶ 283-84, 286-87, 289, 292-95, 298-302.

To remedy such actions and failures to act, Plaintiffs seek the panoply of declaratory, injunctive, and other equitable relief discussed in Section III above.  In particular, Plaintiffs' request to have Defendants permanently enjoined from maintaining the challenged practices and policies is sufficient on its face to warrant Rule 23(b)(2) certification.  *E.g.*, *Douglin v. GreatBanc*

*Tr. Co.*, 115 F. Supp. 3d 404, 414 (S.D.N.Y. 2015).  Courts have regularly certified classes under Rule 23(b)(2) where ERISA claims involve challenges to plan-wide policies or practices.[50]

Although 23(b)(2) certification is limited to claims where the relief sought is primarily injunctive or declaratory, *Zimmerman*, 800 F.2d at 389-90; *Bond*, 296 F.R.D. at 410, that requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole," even if not every member was affected in exactly the same way, *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).  Such is the case here.

That Plaintiffs ultimately seek to recover benefits that were wrongly denied on account of Defendants' challenged policies and practices does not preclude 23(b)(2) certification.   A multitude of courts have held that 23(b)(2) certification of ERISA claims is appropriate even where the recovery of benefits is sought—either because payment of benefits is considered equitable relief, benefits payments merely flow from mandated redeterminations made in the wake of the enjoined violation or the reformation of the plan, or the payment of  benefits is only incidental to

---

[50] *E.g.*, *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 154-55 (S.D.N.Y. 2019) ("In numerous ERISA cases, courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought declaratory and injunctive relief requiring reprocessing of the claims."; noting that 23(b)(2) certification appropriate because reprocessing of claims would not necessarily result in payment of benefits) (citing cases); *Thomas*, 201 F.R.D. at 397 (where plaintiffs alleged that defendants had uniformly interpreted plan documents, defendants' conduct "constitute[d] a pattern of activity" supporting 23(b)(2) certification); *Cottillion v. United Refin. Co.*, No. 09-140E, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013) ("Courts routinely have certified classes pursuant to [Rule 23(b)(2)] where … an ERISA plan administrator makes a uniform decision about administering the Plan."), *aff'd*, 781 F.3d 47 (3d Cir. 2015); *Aguilar v. Melkonian Enters., Inc.*, No. 05-0032, 2007 WL 201180, at *5 (E.D. Cal. Jan. 24, 2007) ("Rule 23(b)(2) is properly used as a vehicle" in actions seeking a declaration that the defendants violated ERISA and an injunction enjoining acts or practices that violate the statute) (citing cases); *Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 WL 372644, at *15 (E.D. Pa. May 14, 1998) (23(b)(2) certification appropriate where plaintiffs alleged uniform incorrect plan interpretation and violation of plan terms).

38

the declaratory and injunctive relief sought.[51]    As the Supreme Court has explained, that the recovery flowing from equitable relief "takes the form of a money payment does not remove it from the category of traditional equitable relief."  *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011).

---

[51] *E.g.*, *Berry*, 807 F.3d at 612 (reaffirming continued validity of 23(b)(2) certification so long as monetary relief is incidental to injunctive or declaratory remedies); *Hunt v. Hawthorne Assocs.*, 119 F.3d 888, 907 (11th Cir. 1997) ("[T]he relief provided in an action to recover benefits under ERISA is equitable, not legal[.]"); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1022, 1028 (N.D. Iowa 1986) (23(b)(2) certification appropriate because monetary relief sought, including retroactive payment of benefits, was secondary to requested declaratory and injunctive relief); *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 264 (D. Conn. 2012) ("The Court can reform the CIGNA Plan consistent with Rule 23(b)(2), because the relief applies to the class as a whole, and any monetary damages that will result flow directly and automatically from the reformation."), *aff'd*, 775 F.3d 510, 523 (2d Cir. 2014) ("[R]eformation can be properly understood as a declaration of the plaintiffs' rights under the plan and an injunction ordering the plan to be reformed to reflect that declaration.  When the plan is reformed according to the district court's order, monetary benefits flow as a necessary consequence of that injunction.  Accordingly, monetary relief is incidental[.]"); *Med. Soc'y of the State of N.Y.*, 332 F.R.D. at 154 ("In numerous ERISA cases, courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought declaratory and injunctive relief requiring reprocessing of the claims.") (citing cases); *Sloan*, 263 F.R.D. at 476 (ERISA back benefits claim "qualitatively different" from compensatory damages claim and suitable for 23(b)(2) certification); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 495 (E.D. Mich. 2008) (23(b)(2) certification appropriate because "[o]nce the Plans recover through the relief available under ERISA, any consequential financial benefit to individual participants and beneficiaries would flow directly and incidentally from the Plans' recovery"); *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 476 (E.D. Pa. 2007) (where plaintiffs sought declaration that defendants had breached their fiduciary duty to plans, injunction preventing Defendants from violating ERISA or plans' terms, appointment of independent fiduciary to administer plans, order prohibiting defendants from serving as trustees or fiduciaries for other plans, and disgorgement of profits, "any monetary relief was incidental to the primary relief sought and accordingly [did] not preclude certification pursuant to Rule 23(b)(2)"); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. at 181-82 n.69 ("[I]t is not uncommon … for courts to treat injunctions requiring the payment of monies unlawfully withheld as *injunctive—rather than monetary—relief.*") (citing cases; emphasis in original); *Meidl v. Aetna, Inc.*, No. 15-cv-1319 (JCH), 2017 WL 1831916, at *20-22 (D. Conn. May 4, 2017) (reprocessing of claims is not monetary relief precluding 23(b)(2) certification); *Serio v. Wachovia Sec., LLC*, No. 06-4681 (MF), 2009 WL 900167, at *5 (D.N.J. Mar. 31, 2009) ("[F]or purposes of Rule 23(b)(2) certification, courts routinely characterize injunctions requiring the payment of monies unlawfully withheld as injunctive, rather than monetary, relief—particularly in ERISA cases[.]").

## CONCLUSION

For the foregoing reasons, the Court should (i) certify the Class and Subclasses pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2); (ii) appoint Plaintiffs Jason Alford, Willis McGahee, Michael McKenzie, Jamize Olawale, Alex Parsons, Charles Sims, Eric Smith, Joey Thomas, and Lance Zeno as Class Representatives and as Subclass Representatives of the Fiduciary Subclass; (iii) appoint Plaintiffs McGahee, McKenzie, Olawale, and Smith as Subclass Representatives of the T&P Subclass; (iv) appoint Plaintiff Sims as Subclass Representative of the Active Subclass; (v) appoint Plaintiff Olawale as Subclass Representative of the LOD Subclass; (vi) appoint Plaintiffs Alford, Smith, Thomas, and Zeno as Subclass Representatives of the NC Subclass; and (vii) appoint, pursuant to Federal Rule of Civil Procedure 23(g)(1), Seeger Weiss, Athlaw, and Aylstock Witkin as Class and Subclass Counsel, and Migliaccio & Rathod LLP as Liaison Counsel for the Class and Subclasses.

Dated:  September 3, 2024

Respectfully submitted,

**MIGLIACCIO & RATHOD LLP**

By:    */s/ Jason S. Rathod*
Jason S. Rathod
Nicholas A. Migliaccio
412 H Street, N.E.
Washington, DC 20002
Telephone:  (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel
for the Proposed Class and Subclasses***

40

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegereiss.com
hfidler@seegerweiss.com

Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut St, Suite 917
Philadelphia, PA 19106
Telephone:  (215) 553-7990
bbarnett@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone:  (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
D. Nicole Guntner *(admitted pro hac vice)*
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone:  (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
NGuntner@awkolaw.com

***Counsel for Plaintiffs and for the
Proposed Class and Subclasses***

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone:  (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***