# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

JASON ALFORD *et al.*,

        Plaintiffs,

   v.

THE NFL PLAYER DISABILITY &
SURVIVOR BENEFIT PLAN *et al.*,

        Defendants.

Case No. 1:23-cv-00358-JRR

## DECLARATION OF DAVID B. LASATER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I.      BACKGROUND .................................................................................................... 3

II.     MY ASSIGNMENT .............................................................................................. 4

III.    SUMMARY OF OPINIONS ................................................................................. 5

IV.     MY ANALYSIS OF PLAN APPLICATIONS REVEALS THAT THE DATA ARE
INCONSISTENT WITH PLAINTIFFS' THEORY OF THE AMENDED COMPLAINT. .. 6

    A.    Defendants' Source Data ................................................................................ 6

    B.    The Relationship between Physician Encounters and their Association with Application
    Historical Denials or Approvals by the Disability Initial Claims Committee ........................... 9

        1.    Categorical Median Split ....................................................................... 10

        2.    Categorical Quartile Split ...................................................................... 12

V.      MY ANALYSIS OF PLAN APPEALS REVEALS THAT THE DATA ARE
INCONSISTENT WITH PLAINTIFFS' THEORY OF THE AMENDED COMPLAINT . 15

    A.    Defendants' Appeals Source Data ................................................................ 15

    B.    The Relationship between Physician Appeal Encounters and their Association with
    Appeal Historical Denials or Approvals by the Board ............................................... 18

        1.    Categorical Median Split ....................................................................... 18

        2.    Categorical Quartile Split ...................................................................... 19

VI.     PLAINTIFFS' "STATISTICAL" ALLEGATIONS ARE NOT CONSISTENT WITH
STATISTICALLY ACCEPTED PRACTICE AND METHODS ........................................... 21

    A.    Definition and Application of "Statistical" ................................................. 21

    B.    Insufficient Specification of "Sample" ....................................................... 23

    C.    Underlying "Raw Data" Is Insufficient to Support Plaintiffs' Assertions ..................... 25

VII.    CONCLUSION ................................................................................................... 25

VIII.   APPENDIX 1 – CURRICULUM VITAE AND RULE 26 DISCLOSURE ................. 27

IX.     APPENDIX 2 – DOCUMENTS CONSIDERED ................................................ 33

X.      APPENDIX 3 – DATA DEVELOPMENT ......................................................... 49

XI.     APPENDIX 4 – SUPPORTING TABLES FOR CHI-SQUARED CALCULATIONS,
MEDIAN-SPLIT ................................................................................................................ 64

XII.    APPENDIX 5 – SUPPORTING TABLES FOR CHI-SQUARED CALCULATIONS,
QUARTILE-SPLIT ............................................................................................................ 69

XIII.   APPENDIX 6 – R SCRIPTS ............................................................................... 75

    A.    R Script for Applications Database .............................................................. 75

    B.    R Script for Appeals Database ...................................................................... 75

    C.    R Script for Overall Approval Rates ............................................................ 75

I, David B. Lasater, hereby declare pursuant to 28 U.S.C. § 1746, under the penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief; that I have personal knowledge of the matters set forth herein, or knowledge based on my review of business records; and that, if called to testify as a witness in this action, I could and would testify competently thereto.

## I.    BACKGROUND

1.    I am a Senior Managing Director at FTI, a publicly-held, global consulting firm.  I have been providing statistical and econometrics consulting to clients since 1979.  During that time, I have provided deposition, trial, and administrative hearings testimony using large volumes of accounting and other operational data and applying statistical and econometric analyses to those data in a wide variety of forums, including U.S. District Courts, state courts, international arbitrations, and U.S. administrative tribunals.

2.    I hold a Ph.D. in Accounting Research Methodologies, Capital Markets, and Quantitative Methods from The University of Texas at Austin (1982), a Masters degree in Professional Accounting from The University of Texas at Austin (1979), and a Bachelors in Business Administration degree from the University of Houston (1973).  I am a licensed Certified Public Accountant in New York (since 1990) and Texas (since 1982).  My curriculum vitae is attached as Appendix 1 hereto.

3.    This Declaration is based on my analysis of data received from counsel in this matter, which is listed as Appendix 2, and my review of the Amended Complaint.[1]  This declaration is also based on my training, knowledge, and experience, as described more fully herein.

---

[1] *See* Amended Class Action Complaint, May 12, 2023.

4.      My employer, FTI Consulting, charges $695 per hour for my time in this matter. FTI charges between $300 and $695 per hour for members of my team, who performed work at my direction in connection with my preparation of this declaration.  I am independent of the parties in this matter, and my compensation is not dependent on the outcome of this matter.

II.    MY ASSIGNMENT

5.      Counsel for Defendants have asked me to address whether application and appeal outcome data support the overarching theory in the Amended Complaint that:

(a) the Disability Board (the "Board") assigns Neutral Physicians to evaluate applicants for disability benefits based on their propensity to render medical opinions that result in application denials (*See, e.g.*, Am. Compl. ¶¶ 107, 111-12, 115, 151, 157, 165, 224, 229, 249, 262, 334-40), and

(b) there consequently is a particular correlative relationship between the rate at which the applications that a Neutral Physician is assigned to evaluate are denied and the frequency with which that Neutral Physician is assigned to evaluate applications, with more frequent assignments (and thus more compensation) provided to Neutral Physicians who are associated with higher application denial rates (*See, e.g.*, Am. Compl. ¶¶ 109, 111-12, 115, 117-19, 121-35, 137, 139-46, 151, 158, 165, 224, 229, 249, 262, 334-40).

6.      Counsel for the Defendants have also asked me to evaluate the purported "statistical" allegations made by Plaintiffs.  As further described herein, the Amended Complaint lacks sufficient definition, sources, or calculations to allow replication of its purported "statistical" analyses and conclusions.

### III.     SUMMARY OF OPINIONS

7.     I have performed (or directed my team to perform) statistical analyses using applications and appeals data provided to me by Defendants in connection with this litigation[2] to test whether the data support these hypotheses.  I find that the data do not support Plaintiffs' allegation that there is any particular positive relationship between the frequency with which Neutral Physicians are assigned to evaluate applications and the rate at which those applications are denied.

8.     It is generally accepted that purported statistical conclusions cannot be relied on without providing the reader with a basis to verify and validate the data collection and analytic methods.  The Amended Complaint fails to clearly identify the methods of data collection and methods of analysis that supposedly support its statistical assertions, so that independent verification, validation, and replication can be accomplished.  It is my understanding that Plaintiffs, instead, produced documents that they purport are the "raw data" that they analyzed in order to make their statistical allegations in the Amended Complaint.  It is also my understanding that Plaintiffs have not produced documents reflecting the methods of data collection or the methods of analysis Plaintiffs used to create the purported samples or to generate the asserted statistics.

9.     It is my expert opinion that the broader statistical assertions that Plaintiffs draw from the limited data sets that they identify in the Amended Complaint are not statistically valid and do not substantiate Plaintiffs' claims regarding the Neutral Physicians.

---

[2] *See* Appendix 3 for a description of the data provided.

10.     Based on the above, my review of the Amended Complaint, data and documents filed and/or produced in this Lawsuit, and my general background and expertise, my opinions regarding Plaintiffs' claims in the Amended Complaint are as follows:

(a) My analysis of Plan applications reveals that the data are inconsistent with Plaintiffs' theory of the Amended Complaint (see Section IV).

(b) My analysis of Plan appeals reveals that the data are inconsistent with Plaintiffs' theory of the Amended Complaint (see Section V).

(c) Plaintiffs' "Statistical" allegations are not consistent with generally accepted statistical practice and methods (see Section VI).

## IV.    MY ANALYSIS OF PLAN APPLICATIONS REVEALS THAT THE DATA ARE INCONSISTENT WITH PLAINTIFFS' THEORY OF THE AMENDED COMPLAINT.

### A.    Defendants' Source Data

11.     Counsel for Defendants provided me with data from their system of record, V3, reflecting Plan applications for disability benefits[3] during the period from January 1, 2018 through July 31, 2024 ("Plan Data").[4]

12.     The Plan Data provided to me include anonymized physician data, in which physicians are identified only by numerical labels and medical specialty as compared to identification by their names.[5]

13.     A description of the data that I analyze throughout the remainder of this Declaration appears in Appendix 3.

---

[3] *See* Decl. of H. Vincent in Support of Defs.' Joint MSJ of Pl. D. Loper's Claims ("Vincent Decl.") ¶ 42.
[4] *See* Alford et al. v. NFL Player Disability & Survivor Benefit Plan et al., No. 1:23-cv-00358-JRR- Data Production Letter 11-18-14 ("Production Letter"), p. 1.
[5] *Ibid.*

14.    I understand from my review of the November 18 Declaration from Hessam ("Sam") Vincent of the NFL Plan Benefits Office ("NFLPBO" or the "Plan") that the Plan maintains data reflecting which physicians[6] were assigned to conduct examinations for each application and appeal and whether each application or appeal resulted in an approval or denial of benefits.  However, I understand that the NFLPBO does not maintain an electronic summary reflecting the specific medical opinion that each physician rendered on each application or appeal, and that the only way to determine the specific medical opinion of each physician would be via a manual review process.[7]

15.    However, the Plan Data provided to me reflect (on a de-identified basis) which physicians were assigned to conduct the examinations for each application and appeal, and whether the application or appeal ultimately resulted in an approval or denial of benefits.  That data can reliably be used to test whether Plaintiffs' theories have a valid statistical basis.

16.    First, the animating theory of the Amended Complaint is that the Board[8] skews Neutral Physician assignments toward Neutral Physicians with higher historical rates of finding that players are not disabled in order to save money through denied benefit applications.[9]  But if the data reflects that Neutral Physicians who receive more frequent examination assignments are not associated with more frequent denials of benefits, then there is no evidence that the Plan or the Board are achieving this purported goal.  Such a result would be inconsistent with the Amended Complaint's core allegation.

---

[6] Physicians is inclusive of Neutral Physicians and Medical Advisory Physicians.
[7] *See* Vincent Decl. ¶ 43.
[8] Per Mr. Vincent, the Disability Benefits Coordinator assigned to the player's application, not the Board, "assigns at least one Neutral Physician from the Plan's Neutral Physician panel in the appropriate specialty or specialties corresponding to the stated injuries or impairments in the player's application, and then schedules the player for evaluations with each selected Neutral Physician." *Ibid.*, ¶ 19.
[9] *See, e.g.*, Am. Compl. ¶ 112.

17.    Second, and relatedly, from a purely economic standpoint, the approval or denial outcome is ultimately the key result of the disability application process for both the Plan and former players who are applying for benefits.  Accordingly, it is appropriate to rely on data that permits a statistical assessment of whether there is a particular relationship between the frequency of Neutral Physician assignments (and implied monetary compensation),[10] on the one hand, and the rate at which benefit applications to which those Neutral Physicians are assigned are denied.

18.    Therefore, I have tested the Amended Complaint's allegations by analyzing the outcomes of the applications to which individual Neutral Physicians were assigned.  I have assessed whether the data supports Plaintiffs' theory that more frequently assigned Neutral Physicians were associated with higher rates of denied benefit applications.  I accomplished this by assigning the outcome of each medical-basis benefit application[11] to all of the Neutral Physicians who conducted a medical evaluation of the applying or appealing player.  If an application was denied, I attributed a denial to each of the Neutral Physicians who examined that player for that application.  If an application was approved, I attributed an approval to each of the Neutral Physicians who examined that player for that application.[12]  While this approach does not precisely identify the decisions made by each individual physician, it does allow for a robust assessment of whether there is a particular correlative relationship between Neutral Physician

---

[10] Per Mr. Vincent, "[e]xamination [f]ees are generally a set rate of $3000 or $5000 **per visit**." *Ibid*., ¶ 24, emphasis mine. Frequency of Neutral Physician assignments is an appropriate metric for assessing Neutral Physician compensation.  Because Neutrals are paid a flat rate for examinations (all physicians within the same specialty receive the same fee) and only a small handful serve in additionally-compensated consulting roles, the amount of compensation most Neutrals receive is a direct result of how many players they evaluate.

[11] *See* Appendix 3 for a description of what records are considered Medical applications.

[12] Of the 1,936 Line of Duty applications considered in my analysis, 1,866 of these were seen by one physician. Of the 1,324 Total & Permanent applications in my analysis, 897 of these were seen by one physician.  For those applications involving only a single examining physician, it is my understanding that pursuant to the Neutral Rule, if the application was approved it necessarily means that the examining Neutral Physician found that the applicant was disabled. *See* Vincent Decl. ¶¶ 13, 14, and 43.

assignments and application and appeal denial rates within the context of the NFLPBO's binary (approve or deny) system of outcomes.

19.    For purposes of this analysis, I have excluded applications that involve multiple benefit requests as part of the same application (for example, an application for both Line of Duty and Total and Permanent benefits).  I have done so because the available data does not allow me to assess which Neutral Physician evaluated which component of the multi-component application or appeal.  I note that this category of requests affected a comparatively small number of applications.[13]

**B.    The Relationship between Physician Encounters and their Association with Application Historical Denials or Approvals by the Disability Initial Claims Committee**

20.    The Amended Complaint makes abstract assertions that, for example, "the higher a physician's compensation from Defendants, the higher their tendency to render flawed or spurious medical justifications to support the denial of benefits to deserving claimants."  (*See, e.g.*, Am. Compl. ¶¶ 112, 126).  If these abstract assertions were true, we would expect to see those physicians with more encounters[14] accounting for a disproportionate number of denials.  It is reasonable then to test these abstract assertions by using a straightforward categorical median split of the entire list of Neutral Physicians into those that had a *higher* and *lower* frequency of application encounters and assess whether the group of Neutral Physicians that had the *higher* frequency of application encounters were in fact associated with *higher* rates of denied benefit applications.

---

[13] *See* Appendix 3 for a summary of the application data by application type.

[14] An encounter is defined as a physician and application (or, appeal) grouping.

### 1.    Categorical Median Split

21.    For each of the three main types of disability benefits, I have arrayed the list of physicians according to total application encounters across the Plan operation from 2018-2024.  I have bifurcated the list of physicians who reported the results of their clinical encounters with Applicants to the Plan into two halves:

(a) One-half of the bifurcated list comprises the *greater* number of encounters with Plan applicants by Neutral Physician, and

(b) One-half of the bifurcated list comprises the *lesser* number of encounters with Plan applicants by Neutral Physician.

22.    I then test, using chi-squared methodology, the Plaintiffs' assertion that the Neutral Physicians with the greater number of application encounters would be associated with a greater rate of denials, and by contrast, the physicians with the lesser number of application encounters would be associated with a lesser rate of denials.[15]

23.    The statistics in Table 1 below reveal that the Plaintiffs' assertion is not supported.

---

[15] "When the data of research consists of frequencies in discrete categories, the $X^2$ [chi-squared] test may be used to determine the significance of differences between two independent groups." Siegel, S., *Nonparametric Statistics for the Behavioral Sciences*, McGraw-Hill (1956), p. 104. *See also* Appendix 4 for a further discussion of the chi-squared methodology.

**Table 1**
**Percentage of Denials Associated With Physicians**
**With Fewer or More Application Encounters**
**2018-2024**

| Disability Type | Physicians With Fewer Encounters | Physicians with More Encounters | *p*-value[16] |
|---|---|---|---|
| Line of Duty | 88.3% | 57.8% | .000 |
| Neurocognitive | 80.0% | 77.1% | .156 |
| Total & Permanent | 53.0% | 56.4% | .382 |

24.     As detailed in Appendix 3, I only consider disability applications with exactly one disability type: Line of Duty ("LOD"), Neurocognitive ("NCD"), and Total & Permanent ("T&P").  For two of the three disability types (LOD and NCD), the rate of denials is *higher* for the half of Neutral Physicians with *fewer* encounters.

25.     For the LOD disability type, the Neutral Physicians with fewer encounters were associated with an 88.3% denial rate, while the Neutral Physicians with more encounters were associated with a 57.8% denial rate.  The difference in the rates for LOD benefits in particular is statistically significant using the generally accepted chi-squared test of the data, but in a direction that is contrary to the Plaintiffs' assertion.[17]  In other words, I find that Neutral Physicians with greater frequencies of encounters have *lower* denial rates.

26.     For the NCD disability type, the Neutral Physicians with fewer encounters were associated with an 80.0% denial rate, while the Neutral Physicians with more encounters were

---

[16] The p-value from a chi-squared test indicates the "probability of getting data as extreme as, or more extreme than, the actual data—given that the null hypothesis is true. … Large p-values indicate that a disparity can easily be explained by the play of chance." *See, e.g.,* National Research Council. 2011. _Reference Manual on Scientific Evidence_, Third Edition, Washington, DC, The National Academies Press, p. 250.  For this test, the threshold *p* < .05 indicates statistical significance, or sufficient evidence to reject the hypothesis of independence.

The resulting p-values are calculated using Yates' continuity correction. I note that the significance of my results does not change *without* Yates' continuity correction.

[17] The threshold of statistical significance is *p* = .05, which is generally understood to mean that one would be wrong is ascribing a difference only 5% of the time when, in fact, there is not a difference. Said differently, at $p \leq .05$, one can be at least 95% confident in the numerical difference observed.

associated with a 77.1% denial rate.  The difference in the rates is not statistically significant ($p$ = .156) using the generally accepted chi-squared test of the data.  The result is contrary to the Plaintiffs' assertion that there is a relationship between number of encounters and rates of denial.

27.     For the T&P disability type, the Neutral Physicians with fewer encounters were associated with a 53.0% denial rate, while the Neutral Physicians with more encounters were associated with a 56.4% denial rate.  While the modest difference in the denial rates between the groups is in the direction that the Amended Complaint suggests, the difference in the rates is *not* statistically significant ($p$ = .382).  In this context, that means the difference in the rates is not sufficiently large to refute the hypothesis that frequency of encounters and denial rate are not associated.  The p-value of 0.382 indicates that the observed data is 38% likely to occur by chance; hence, we do not have sufficiently strong evidence to conclude that frequency of encounters and denial rates are associated.  The lack of statistical significance in the denial rates is thus contrary to the assertions in the Amended Complaint that the number of encounters (and therefore the amount of physician compensation) is associated with application outcomes.

28.     The detailed chi-squared tables reflecting a bifurcation of the array of highest to lowest  Neutral Physician encounters for each of the disability types appear in Appendix 4 to this Declaration.

### 2.     Categorical Quartile Split

29.     To address any concern that the median split of the Neutral Physician list might represent an artificial bifurcation into "more" encounters and "fewer" encounters, I have also performed the chi-squared tests by dividing the array of physicians and their encounters into four groups (quartiles).  This slightly more granular grouping allows an even closer look at the denial rates associated with the physicians with the highest number of encounters (and thus the highest

compensation). I note that, in the Amended Complaint's scatterplots entitled "Powerful

Evidence of Statistics Showing a Parsimonious Pattern of Assessments Unfavorable to

Claimants," Plaintiffs limit their analyses to physicians with four or more encounters. (*See, e.g.*,

Am. Compl. ¶¶ 138, 139, 140, 141, 142, 143). I adopt their limitation in my quartile analysis

reflected in Table 2 below.

**Table 2**
**Percentage of Denials Associated with Neutral Physicians**
**With at Least Four (4) Application Encounters,**
**Divided into Quartiles of Encounters**
**2018-2024**

| | Rate of Denials | | | | |
|---|---|---|---|---|---|
| **Disability Type** | **Lowest Quartile Encounters** | **Quartile 2** | **Quartile 3** | **Highest Quartile Encounters** | **p-value [18]** |
| Line of Duty | 93.2% | 69.3% | 57.8% | 54.4% | .000 |
| Neurocognitive | 80.2% | 79.2% | 79.3% | 76.0% | .177 |
| Total & Permanent | 61.7% | 60.8% | 56.5% | 55.7% | .321 |

30. Again, as detailed in Appendix 3, I only consider disability applications with

exactly one disability type: LOD, NCD, and T&P. Table 2 reveals that in the physician

encounters for the LOD disability type, there is a statistically significant (*i.e.*, $p \leq .05$)

relationship between encounters and rates of denial, but the relationship is in the ***opposite***

direction from the Amended Complaint's allegation (in other words, the rate of denials is higher

for physicians with fewer encounters). The details for the summary results reported in Table 2,

above, are presented in Appendix 5. If the Amended Complaint's assertions were true, we would

expect to see a statistically significant result with consistently increasing denial rates across the

---

[18] *See* Appendix 5 reflecting the detailed tables and the chi-squared analysis for each of the disability types.

quartiles.  As discussed below, this result does not occur in the data for any of the three disability types.

31.    For the LOD disability type, the Neutral Physicians with the fewest encounters are associated with a 93.2% denial rate, while the Neutral Physicians with the highest number of encounters are associated with a dramatically lower 54.4% denial rate.  This result contradicts the Amended Complaint's allegation.

32.    Similarly, for the NCD disability type, the Neutral Physicians with the fewest encounters are associated with an 80.2% denial rate, while the Neutral Physicians with the highest number of encounters are associated with a 76.0% denial rate.  The Amended Complaint's allegation that higher rates of denial are associated with higher frequencies of encounters and, therefore, higher compensation is not consistent with the data.

33.    Finally, for the T&P disability type, the Neutral Physicians with the fewest encounters are associated with a 61.7% denial rate, while the Neutral Physicians with the highest number of encounters are associated with a 55.7% denial rate.  Again, this result is opposite the Amended Complaint's allegations.

34.    In each of the analyses above, I have treated the Neutral Physicians and their encounters categorically and used the generally accepted chi-squared test to evaluate the frequencies in the categories.  None of the six test results support the Plaintiffs' allegations.

## V.    MY ANALYSIS OF PLAN APPEALS REVEALS THAT THE DATA ARE INCONSISTENT WITH PLAINTIFFS' THEORY OF THE AMENDED COMPLAINT

### A.    Defendants' Appeals Source Data

35.    Counsel for Defendants provided me with data from their system of record, V3, reflecting Plan appeals for disability benefits during the period from January 1, 2018 through July 31, 2024.[19]

36.    The data provided to me include anonymized physician data in which, physicians were identified only by numerical labels and medical specialty as compared to identification by their names.[20]

37.    This source data includes records for each type of benefit, reflecting which Neutral Physicians and Medical Advisory Physicians ("MAPs")[21] performed examinations for each appeal, and whether the appeal was approved or denied.

38.    From this data, as with the applications data in Section IV, above, I performed or directed various statistical analyses to be performed, and I report those in the subsections below.

39.    As an introduction to this additional data, Table 3 below reflects an overview of the frequencies and rates in each of the two applications and appeals datasets.  That there are more applications than appeals is not surprising because the appeals population presented for evaluation was *already reduced* from the applicant pool by all of the application approvals.  It seems also to have been reduced by decisions of some denied applicants not to appeal their adverse rulings by the Disability Initial Claims Committee ("Committee").[22]

---

[19] *See* Production Letter, p. 2.
[20] *Ibid.,* p. 1.
[21] *See* Vincent Decl. ¶ 16, "…as set forth in § 12.2 of the Plan, Medical Advisory Physicians ("MAPs") decide specific medical issues that the Board refers to them under § 9.3 of the Plan.  This may occur if two Neutral Physicians disagree about a discrete medical question."
[22] *Ibid.,* ¶ 29.

**Table 3**
**Frequencies of Approvals, Denials and Denial Rates**
**of Applications and Appeals**
**2018 – 2024**

| Disability Type | Applications | | | Appeals | | |
|---|---|---|---|---|---|---|
| | Approvals | Denials | Denial Rate | Approvals | Denials | Denial Rate |
| Line of Duty | 832 | 1,104 | 57.0% | 197 | 465 | 70.2% |
| Neurocognitive | 337 | 1,172 | 77.7% | 30 | 310 | 91.2% |
| Total & Permanent | 641 | 683 | 51.6% | 63 | 312 | 83.2% |
| | **1,810** | **2,959** | **62.0%** | **290** | **1,087** | **78.9%** |

40.     Again, as detailed in Appendix 3, I only consider disability applications and appeals with exactly one disability type: LOD, NCD, and T&P.  Table 3 reflects that the 78.9% denial rate for the 1,377 appeals (290 + 1,087) was greater than the 62% denial rate for the 4,769 applications (1,810 + 2,959) for each of the disability types between 2018-2024.  For the LOD type, the application denial rate was 57.0%, while the appeal denial rate was 70.2%.  Similarly, for the NCD type, the application denial rate was 77.7%, while the appeal denial rate was 91.2%.  And, for the T&P type, the application denial rate was 51.6%, while the appeal denial rate was 83.2%.

41.     Because many physicians perform evaluations in both the application process and the appeals process it is reasonable to assume that the evaluation protocols and judgments were uniform across both phases of the whole process.[23]  By logical extension, it is reasonable to conclude that the greater rate of denials observed in the appeals phase compared to the applications phase merely reflects the fact that the population mix of potential approvals and

---

[23] Neutral Physicians may be asked to examine a player in connection with an initial application before the Committee or an appeal before the Board; there are not distinct pools of physicians for initial applications versus appeals. However, the same Neutral Physician may not evaluate player at both the initial application and appeal level. *Ibid*., ¶ 19.

denials, *ex ante*, was different as the straightforward result of the operation of a uniform evaluation process applied in successive steps.

42.     Lastly, Counsel asked me to calculate the approximate overall approval rate. In order to do so, I determined the number of claims submitted for each benefit type, by considering only disability applications and appeals with exactly one disability type: LOD, NCD, and T&P.[24] The appeals were programmatically linked to their associated denial applications by using Player, claim type, and ensuring that the appeal date was within the 180-day appeal window.[25] Based on my analysis, I calculated the overall approval rate to be approximately 42.4% (2,023 approvals out of 4,769 claims). I performed the same analysis by benefit type (subject to the same qualifications). Table 4 below summarizes these calculations. I note that there may be applications denied whose appeals are either in process or forthcoming. I expect that some of those incomplete or forthcoming appeals will result in approvals, increasing the number of revised decisions. Holding the denominator of Total Claims constant, the approximate overall benefit approval rate may increase, causing the overall benefit approval rate as reported below in Table 4 to be a conservative understatement.

---

[24] I did not include applications involving multiple benefits types. *See* Appendix 3 for the relevant population of applications and appeals.
[25] I linked 1,073 denied applications to its associated appeal where the Person_IDs match, the Application Type and Appeal Type match, and the appeal's Date Appeal Received is within 180 days of the application's Letter Decision Date. There are two applications without a Letter Decision Date that I manually verified had no associated appeals. *See* Vincent Decl. ¶ 8.

**Table 4**
**Approximate Overall Rates of Approval and Denial**
**2018-2024**

| Disability Type | Pre-appeal Denials | Revised Decision on Appeal | "Final" Denials | "Final" Approvals | Total Claims | Maximum Approximate Overall Denial Rate | Minimum Approximate Overall Approval Rate |
|---|---|---|---|---|---|---|---|
| LOD | 1,104 | (152) | 952 | 984 | 1,936 | 49.2% | 50.8% |
| NCD | 1,172 | (24) | 1,148 | 361 | 1,509 | 76.1% | 23.9% |
| T&P | 683 | (37) | 646 | 678 | 1,324 | 48.8% | 51.2% |
| **Total** | **2,959** | **213** | **2,746** | **2,023** | **4,769** | **57.6%** | **42.4%** |

### B.    The Relationship between Physician Appeal Encounters and their Association with Appeal Historical Denials or Approvals by the Board

#### 1.    Categorical Median Split

43.    As above, I test, using chi-squared methodology, the Plaintiffs' assertion that the physicians with the greater number of appeal encounters would be associated with a greater rate of denials, and by contrast, the physicians with the fewer number of appeal encounters would be associated with a lesser rate of denials.

44.    As detailed in Appendix 3, I only consider disability appeals with exactly one disability type: LOD, NCD, and T&P. The statistics in Table 5 below reveal that the Plaintiffs' assertion is not supported.

**Table 5**
**Percentage of Denials Associated with Physicians**
**With Fewer or More Appeal Encounters**
**2018-2024**

| Disability Type | Physicians With Fewer Encounters | Physicians with More Encounters | p-value[26] |
|---|---|---|---|
| Line of Duty | 65.1% | 58.2% | .463 |
| Neurocognitive | 97.2% | 85.5% | .010 |
| Total & Permanent | 79.3% | 75.4% | .432 |

---

[26] The resulting p-values are calculated using Yates' continuity correction. I note that the significance of my results does not change *without* Yates' continuity correction.

45.    For all three disability types (LOD, NCD, and T&P), the rate of denials is *higher*
from the half of physicians with *fewer* encounters.  For the LOD disability type, the physicians
with fewer encounters were associated with a 65.1% denial rate, while the physicians with more
encounters were associated with a 58.2% denial rate.  The difference in the rates is not
statistically significant ($p = .463$) using the generally accepted chi-squared test of the data.

46.    For the NCD disability type, the physicians with fewer encounters were
associated with an 97.2% denial rate, while the physicians with more encounters were associated
with an 85.5% denial rate.  The difference in the rates is statistically significant ($p = .010$) using
the generally accepted chi-squared test of the data, but contrary to Plaintiffs' assertions.

47.    For the T&P disability type, the physicians with fewer encounters were associated
with an 79.3% denial rate, while the physicians with more encounters were associated with a
75.4% denial rate.  The difference in the rates is not statistically significant ($p = .432$) using the
generally accepted chi-squared test of the data.  The result is contrary to the Plaintiffs' assertion.

48.    The detailed chi-squared tables reflecting a bifurcation of the array of highest to
lowest physician encounters for each of the disability types appear in Appendix 4 to this
Declaration.

### 2.    Categorical Quartile Split

49.    As before, to avoid a criticism that the median split is an artificial bifurcation of
the physician list into "more" encounters and "fewer" encounters, I have also performed the chi-
squared tests by dividing the array of physicians and their encounters into four groups (quartiles).
This slightly more granular grouping allows an even closer look at the denial rates associated
with the physicians with highest number of encounters (and thus the highest compensation).

**Table 6**
**Percentage of Denials Associated With Physicians**
**With at Least Four (4) Appeal Encounters,**
**Divided into Quartiles of Encounters**
**2018-2024**

| Disability Type | Rate of Denials | | | | |
|---|---|---|---|---|---|
| | Lowest Quartile Encounters | Quartile 2 | Quartile 3 | Highest Quartile Encounters | p-value |
| Line of Duty | 52.7% | 69.1% | 65.5% | 52.5% | .001 |
| Neurocognitive | 93.4% | 88.2% | 87.8% | 83.7% | .138 |
| Total & Permanent | 80.0% | 80.9% | 74.4% | 74.1% | .327 |

50.     Again, as detailed in Appendix 3, I only consider disability appeals with exactly one disability type: LOD, NCD, and T&P.  Table 6 reveals that in the physician encounters for the LOD disability type, there is a statistically significant (*i.e.*, p $\leq$ .05) relationship between appeal encounters and rates of denial but the relationship is in the ***opposite*** direction from the Amended Complaint's allegation (in other words, the rate of denials is higher for physicians with fewer encounters).  The details for the summary results reported in Table 6, above, are presented in Appendix 5.

51.     For the LOD disability type, the physicians with fewer encounters are associated with a 52.7% (1st quartile) and a 69.1% (2nd quartile) denial rate, while the physicians with higher numbers of encounters are associated with a lesser 52.5% (4th quartile) and a 65.5% (3rd quartile) denial rate.  If the Amended Complaint's assertions were true, we would expect to see a statistically significant result with consistently increasing denial rates across the quartiles.  But the data does not follow this pattern.  Instead, the middle two quartiles have a higher denial rate than the extremes, and the fourth quartile (which represents the highest frequency of encounters) actually has a lower denial rate than the first three quartiles.  When the chi-squared test is applied to all four (4) quartiles, the results are inconsistent with the Amended Complaint's allegations.

20

52.     Similarly, for the NCD disability type, the physicians with the fewest encounters are associated with a 93.4% denial rate, while the physicians with the most encounters are associated with an 83.7% denial rate.  The Amended Complaint's allegation that higher rates of denial are associated with higher frequencies of encounters is not consistent with the data.

53.     Finally, for the T&P disability type, the physicians with the fewest encounters are associated with an 80.0% denial rate, while the physicians with the most encounters are associated with a 74.1% denial rate.  Again, this result is opposite the Amended Complaint's allegations.

54.     In each of the analyses above, I have treated the physicians and their appeal encounters categorically and used the generally accepted chi-squared test to evaluate the frequencies in the categories.  None of the six test results support the Plaintiffs' allegations.

## VI.    PLAINTIFFS' "STATISTICAL" ALLEGATIONS ARE NOT CONSISTENT WITH STATISTICALLY ACCEPTED PRACTICE AND METHODS.

### A.    Definition and Application of "Statistical"

55.     In its plural form, the term statistics has at least three different meanings.

…[T]he term may refer to the *methods* used to collect or process or interpret quantitative data. …[T]he term may be applied to *collections of data* gathered by those methods. And, … it may refer to certain *specially calculated figures* (*e.g.*, an average) that somehow characterize such a collection of data.[27]

Plaintiffs' Amended Complaint makes numerous allegations which purport to be statistical or interpreted from statistics.[28]  The use of the word "statistics" or "statistical" represents to the reader that the particular numbers that are presented are specially calculated figures, or

---

[27] Rowntree, D., *Statistics Without Tears: A Primer for Non-Mathematicians*, McMillan, 1981, p. 17 (emphasis in original).
[28] The word "statistical" appears nine times, inclusive of section headings, in the Amended Complaint. *See* Am. Compl. ¶¶ 107, 110, 111, 116, 138, 144, 146, 287, 337 and 359.

conclusions based on specially calculated figures, that are derived from reliable collections of data that were gathered by methods that are generally accepted.

56.     The Amended Complaint's allegations fail to provide any of the particularities about data collection methods or specially calculated figures that would be necessary to assess the validity or reliability of any of the purported statistical assertions in it.  As exemplars, I recite some of the Amended Complaint's general, abstract allegations below:

> The *statistics* in paragraphs 116-146 below show that highly compensated board retained physicians have rendered opinions in the great majority of cases adverse to players…[29]
>
> …[T]here is a larger systematic practice of providing more compensation to and more frequently retaining physicians with extremely high benefits denial rates, whom the board knew or should have known stood to benefit financially from the repeat business that might come from providing result oriented reports that were to the board's liking yet inadequate to base a determination on[30]….
>
> …[T]he higher a physician's compensation from Defendants, the higher their tendency to render flawed or spurious medical justifications to support the denial of benefits to deserving claimants, …[31]

57.     The Amended Complaint concludes that there is an alleged systemic pattern of behavior by the Plan of financially incentivizing Neutral Physicians to conduct biased and inaccurate examinations of players for the purpose of securing benefit denials.

58.     The Amended Complaint does not articulate what sources of information Plaintiffs relied on or what methods they used to collect or process their information in order to prepare these "statistical allegations."  Without such a disclosure, the statistical allegations in the Amended Complaint cannot be verified or validated.  It is generally accepted statistical practice to clearly identify the methods of data collection and methods of analysis so that independent verification, validation, and replication can be accomplished.  Said differently, it is also generally

---

[29] *See* Am. Compl. ¶ 111 (emphasis mine).
[30] *See* Am. Compl. ¶ 112.
[31] *See* Am. Compl. ¶ 112 (emphasis mine).

accepted that purported statistical conclusions cannot be relied on without verification and validation of the data collection and analytic methods. Plaintiffs do not identify either the methods of data collection or the methods of analysis that they utilized.

**B.    Insufficient Specification of "Sample"**

59.    In addition to the lack of disclosure cited above, there are obvious specific flaws and omissions in the statistical allegations in the Amended Complaint that render them unreliable. For example, the Amended Complaint uses the word "sample" 71 times without identifying any of the following elements:

- The population (*i.e.*, the collection of data) from which a "sample" was taken,

- The objective of the "sample,"

- The intended or final parameters of inference – confidence and precision – about the "sample" results, or

- The method by which the sample was obtained (*e.g.*, simple random, stratified random, every *n*th item systematic)

60.    For example, Paragraph 116 of the Amended Complaint uses the word "sample" without any definition of any of the points above:

> The statistical sample consists of 784 total Defendant-commissioned T&P disability evaluations conducted by purportedly "Neutral Physicians."

There is nothing in the Amended Complaint or attached to it that provides insight to the mathematics relied on for the sample design, or the method by which "[t]he statistical sample" was taken. My team and I have reviewed a selection of the documents that Plaintiffs have produced that I understand purport to be the underlying "data" for these allegations. These Plaintiffs documents do not resolve these issues.

61.     The references to "samples" in the detailed allegations for the named plaintiffs are meaningless without advising the reader on each of the points above.  Moreover, the described sample sizes ($n$) vary widely from $n = 3$ to $n = 74$, which suggests that the samples are either unreliable "convenience samples" that were not assembled through scientifically accepted methodologies, or they are instead strata taken from a larger, stratified sample, the objectives and sampling method of which are unspecified in the Amended Complaint.[32]  Convenience samples:

> "[are] often biased, since the units that are easiest to select or that are most likely to respond are usually not representative of the harder-to-select or non-responding units."[33]

> Further,

> "Convenience sampling involves using respondents who are "convenient" to the researcher. There is no pattern whatsoever in acquiring these respondents—they may be recruited merely asking people who are present in the street, in a public building, or in a workplace, for example. The concept is often confused with "random sampling" because of the notion that people are being stopped "at random" (in other words, haphazardly). However, whereas the correct definition of random sampling (using random numbers to pick potential respondents or participants from a sampling frame) generally results in a statistically balanced selection of the population, a convenience sample has an extremely high degree of bias."[34]

62.     Nothing in the Amended Complaint provides any basis to conclude that the purported samples were derived, obtained, or constructed with any effort or even intention to ensure their validity in the sense of generally accepted statistical practice.

63.     For example, the Amended Complaint contains multiple scatter plots titled "Powerful Evidence of Statistics Showing a Parsimonious Pattern of Assessments Unfavorable to

---

[32] It is also possible that the data in the Amended Complaint is merely a conveniently assembled set of data, without expert assistance to discipline its definitions or analysis, with accompanying misuse through convenience sampling. In that case, there is great potential that the misuse will mislead the reader.

[33] Lohr, S.L., *Sampling: Design and Analysis*, 2019, p. 5.

[34] Galloway, A., "Non-Probability Sampling," *Encyclopedia of Social Measurement*, 2005, pp. 859-864. *See also,* National Research Council. 2011. *Reference Manual on Scientific Evidence*, Third Edition, Washington, DC. The National Academies Press, p. 285.

Claimants." (*See, e.g.*, Am. Compl. ¶¶ 138, 139, 140, 141). The scatterplots purport to indicate "denial percentages" of individual Neutral Physicians measured against the physicians' asserted compensation. But the Amended Complaint does not provide any information as to whether the scatterplots are intended to represent the total number of evaluations conducted by these physicians, or merely a subset of the data that was purportedly used to create the scatter plots was collected.

### C.    Underlying "Raw Data" Is Insufficient to Support Plaintiffs' Assertions

64.    My concerns about the significant gaps in Plaintiffs' statistical claims are not resolved by Plaintiffs' production of several thousand pages of information they claim support their supposed statistical allegations. There is no information about how the underlying Physician Report Forms were selected and how they purport to be representative of the broader population of applications and Neutral Physician evaluations. For example, there are statistical principles that determine what constitutes a "statistically valid" sample that can be appropriately relied upon as indicative of a statistical trend. A number of the "samples" that Plaintiffs describe in their Amended Complaint are by definition too small to be statistically valid, and without any information about how these documents were chosen, what criteria they do or do not incorporate, and how they purport to adequately and accurately represent the full body of applications, they cannot be relied upon for anything, let alone serve as the basis of so many allegations in the Amended Complaint.

## VII.    CONCLUSION

65.    When generally accepted statistical methods are applied to the Defendants' data, the Amended Complaint's overarching allegations that the Board assigns Neutral Physicians to

25

evaluate applicants for disability benefits based on their propensity to render medical opinions that result in application denials is not supported by the data.

66.    Plaintiffs' Amended Complaint is devoid of generally accepted statistical practice in its omissions of data source definition.  As a result, its allegations are without a verifiable base, and are therefore unreliable.

***

The analyses reflected in this Declaration and its Appendices are based on data I have received to date.  Should additional facts or data be produced in this matter, I respectfully reserve the right to evaluate whether such facts or data would change in any material way my analyses, interpretations or opinions expressed herein, and also to discuss with counsel for the Defendants whether I would need to supplement this Declaration.

Executed this 18th day of November, 2024 at New York, NY.

David B. Lasater, Ph.D., CPA

**VIII.  Appendix 1 – Curriculum Vitae and Rule 26 Disclosure**



# David B. Lasater, Ph.D., CPA

Senior Managing Director
Forensic & Litigation Consulting

1301 McKinney Street, Suite 3500 - Houston, TX 77010
+1 713 353 5434 | David.Lasater@fticonsulting.com

**Education**

Ph.D. and M.P.A., The University of Texas at Austin
B.B.A., Accounting, University of Houston

**Licenses**

Certified Public Accountant, New York and Texas

David B. Lasater has 43 years of experience providing financial economics and accounting advisory services. He has provided expert testimony in federal and state matters, and in both domestic and international arbitrations. Mr. Lasater's expertise includes the application of statistical, econometric, finance/valuation and accounting/auditing analyses in litigation and non-litigation assignments.

He has advised, reported and testified in litigation assignments ranging from class certification to liability and damages determinations. He has also provided strategic and valuation consulting in domestic and international M&A transactions. His international work includes litigation and arbitration matters in Brazil, Colombia, and Venezuela involving oil & gas, construction, airlines, and governmental agency operations.

His litigation case experience includes securities class actions, employment class actions, product liability class actions, breach of contract, disputes arising from investment and operating risk changes including material adverse change, business interruption, post-acquisition disputes, accountants' malpractice, intellectual property, breach of trust, lender liability, predatory pricing, transaction fraud investigations including FCA, FCPA and AML, and franchise termination.

Mr. Lasater's industry experience includes financial services, manufacturing, assembly, distribution, telecom and cable TV services, internet publishing, energy, aerospace, engineering R&D, hospitality, pharmaceutical and chemical, environmental, software development, healthcare, and higher education.

He has provided both affirmative and rebuttal econometric and statistical analysis and testimony in a wide variety of matters, including, but not limited to healthcare billing & operations management, drug prescription and dispensing, employment compensation, promotion and training, Accelerated Failure Time modeling, Choice Based Conjoint surveys, and in causation and damages in RMBS litigation.

Prior to joining FTI Consulting in 2003 following Sarbanes-Oxley, Mr. Lasater was a partner in KPMG's Forensic Dispute Advisory Services practice, New York office.

From 1991 – 2002, he was an international partner in Arthur Andersen's Claims & Disputes practice, based in its New York office. During 1991-1996, he was quality control partner for business valuations produced from the Corporate Finance practice, New York office. Before joining Arthur Andersen in 1988, he was a member of the Graduate School of Business faculty, accounting, at Michigan State University from 1980 to 1988.

**Rule 26 Disclosure**

**Annotated Trial and Deposition Testimony**

**Boldface "S" in front of the case caption denotes an instance in which statistical results were either the object or a foundation of the testimony**

**Boldface "R" in front of the case caption denotes an instance in which regression was used as a statistical tool in developing the proof for the testimony**

**Boldface "V" in front of the case caption denotes an instance in which valuation methods were used in the developing the proof of the testimony**

**Trial Testimony:**

**SRV**  *Honeywell, Inc. v. American Flywheel Systems, Inc.* (1996) (Arizona State Court)

**SR**  *Johnny Reynolds v. Alabama Department of Transportation* (1996, 1997) (Federal District Court – Middle District Alabama)

**V**  *Cynthia Stix-Bennett v. James D. Bennett.* (1998) (Connecticut State Court)
   *FDIC v. Arthur Andersen* (1998) (AAA - Arbitration)

**SR**  *Taylor Publishing Co., Inc. v. Jostens* (1998) (Federal District Court - Eastern District of Texas)

**SR**  *Elouise Pepion Cobell, et al., v. Bruce Babbitt* (1998) (Federal District Court – District of Columbia)

**SR**  *Elouise Pepion Cobell, et al., v. Gale Norton* (2003) (Federal District Court – District of Columbia)

**SR**  *Elouise Pepion Cobell, et al., v. Dirk Kempthorne* (2007) (Federal District Court – District of Columbia)

**S**  *Martin v. Wilks* (2001) (Federal District Court – Northern District of Alabama)

**V**  *Syndicated Communication Venture Partners IV, LP v. Baystar Capital, LP, et al.*, (2006) (Supreme Court, New York, New York County)

**SR**  *Harco National Insurance Co. v. Grant Thornton, LLP (*2012) (Superior Court, Wake County, North Carolina)

**SRV**  *FDIC v. Pinchus D. Raice, and as an affiliated party of the Park Avenue Bank* (2016) (FDIC – Eastern District of New York)

**S**  *Irving Shipbuilding, Inc. v. Odense Maritime Technology A/S,* (2021) (International Arbitration)

**S**  *Advantage Sales & Marketing, LLC v. Petrus Media Group LLC* (2022) (American Arbitration Association)

**Deposition Testimony:**

**SR**    *Johnny Reynolds v. Alabama Department of Transportation* (1996, 2002) (Federal District Court – Middle District Alabama)

**SRV**    *Honeywell, Inc. v. American Flywheel Systems, Inc.* (1996) (Arizona State Court)

**SRV**    In *re: JWP, Inc.* (1996) (Federal District Court – Southern District of New York)

**SRV**    *Frontline Systems, Inc. v. Fasfax, Inc.* (1996) (Federal District Court – Arizona)

**SR**    *Eloise Pepion Cobell, et al., v. Bruce Babbitt* (1998) (Federal District Court – District of Columbia)

**SR**    *Eloise Pepion Cobell, et al., v. Gale A. Norton* (2003) (Federal District Court – District of Columbia)

**SR**    *Shaun Neal, et al., v. City of Detroit Law Department* (1999) (Michigan State Court)

*V*    *Couldock & Bohan, Inc. v. Societe Generale Corp.* (1999) (Federal District Court – Connecticut)

**V**    *Senior Industries, Inc. v. Thomas & Betts, Inc.* (2000) (Federal District Court – Northern Illinois)

**S**    *Bridenstine, et al. v. Kaiser-Francis Oil Co.* (2000) (Oklahoma State Court – Beaver County)

        *Johnston Industries, Inc., et al. v. Milliken & Co., Inc., et al.* (2000) (Alabama State Circuit Court)

**SRV**    *Rowland W. Day, II v. Meyer, Duffy & Assoc., Inc.* (2001) (Federal District Court – Southern District of New York)

        *Air & Gas Technologies, Inc. v. Atlas Copco Compressors, Inc.* (2001) (Federal District Court – New Jersey)

*V*    *Ohaus Management Group, Inc. d/b/a Chester Precision v. Worthington Precision Metals, Inc.* (2002) (Federal District Court – Connecticut)

        *Paradigm Packaging, Inc. v. Communisis, PLC, et. al.* (2003) (Federal District Court – Southern District of New York)

**RV**    *Securities and Exchange Commission v. Martin E, Kenney, Jr.* (2006) (Federal District Court – Southern District of New York)

**SRV**    *Syndicated Communication Venture Partners IV, LP v. Baystar Capital, LP, et al.*, (2006) (Supreme Court, New York, New York County)

**SRV**    *Celebrity Cruises, Inc., et al. v. Essef Corporation, et al.* (2006) (Federal District Court – Southern District of New York)

**SRV**    *Avondale Mills, Inc. v. Norfolk Southern Corp., et al.* (2007, 2008) (Federal District Court – South Carolina, Aiken Division)

**S**    *Phoenix Diagnostic Imaging v. Analytic Medical Imaging* (2008) (American Arbitration Association, Phoenix)

**SR**    *Harco National Insurance Co. v. Grant Thornton, LLP* (2009) (Superior Court, Wake County, North Carolina)

**S**    *William D. Hoffman, et al., v. American Express Travel Related Services, Inc.* (2009) (Superior Court, State of California, Alameda County)

**V**    *Metso Minerals Industries, Inc. v. FLSmidth-Excel, LLC* (2010) (Federal District Court – Eastern District of Wisconsin)

        *Keith Segler and Keith Segler Irrevocable Trust v. Protective Life Insurance Co.,* (2012) (District Court, Brazoria County, Texas)

**SRV**   *Tap Holdings, LLC, et al. v. Orix Finance Corp, et al.,* (2013) (Supreme Court, New York, New York County)

**SR**   *United States of America (Lisitza, rel.) v. PAR Pharmaceutical Companies, Inc.* (2014) (Federal District Court – Northern District of Illinois)

**SRV**   *FDIC v. Pinchus D. Raise, and as an affiliated party of the Park Avenue Bank* (2016) (FDIC – Eastern District of New York)

**S**   *Balfour Beatty/DPR/BIG-D, A Joint Venture v. Truland Systems, et al.* (2017) (American Arbitration Association)

*V*   *Individual Brazilian Executive Claimant v. Brazilian International Corporation Respondent* (2020) (ICDR Arbitration)

**SRV**   *IDC Financial Publishing, Inc. v. BondDesk Group, et al.* (2020) (Federal District Court – Eastern District Wisconsin)

**SRV**   *Ambac Assurance v. First Franklin, Bank of America, Merrill Lynch* (2021) (Supreme Court, New York, New York County)

**S**   *Advantage Sales & Marketing, LLC v Petrus Media Group LLC* (2022) (American Arbitration Association)

**SR**   *Norman v. TransUnion, LLC* (2022) (Federal District Court – Eastern District of Pennsylvania)

**S**   *State of New York, et al., v. Covanta Hempstead Company, et al.* (2023) (Supreme Court, New York, Nassau County)

**SR**   *Crider, Inc. v. Silgan Containers LLC, et al.,* (2023) (Federal District Court - Northern District of Texas)

**V**   *PointEast Pharma Consulting, Inc. v. Lenzing Aktiengesesselschaft, et al.* (2023) (Southern District of Texas)

**S**   *The State of California, ex rel., Gregory Duncan and Gary Hulbert v. Sutter Health, et al.* (2023) (Superior Court of the State of California (County of Alameda))

**SR**   *Zubeen Vakilzadeh v. The Trustees of the California State University* (2024) (Superior Court of the State of California (County of Los Angeles))

**SR**   *Dean Beaver and Laurie Beaver v. Omni Hotels Management Corp., et al.* (2024) (Federal District Court – Southern District California)

**Publications and Presentations:**

"Causation and Damages in Federal Securities Cases," published in the proceedings of
*Shareholder Litigation Against Directors & Officers*, ALI-ABA (Washington, D.C., May 1992).

"Option Pricing and Business Valuation," published in the proceedings of *Business Litigation*,
Defense Research Institute, (New York, May 1999).

"Sampling to Improve e-discovery Quality Management," presentation to the Capital One e-
Discovery Search Seminar, (Vienna Virginia, November 10, 2009).

"Staying Smart with CFPB Compliance and the Labyrinth of Fair Lending Laws," *The RMA
Journal Newsletter,* Risk Management Association (Fall, 2015).

"Cautionary Lessons in Analyzing Foreign Misconduct: How to Navigate Claims Involving
Potential Extraterritorial White Collar Crime," co-authored with Christopher DeSa and Gavin
Parrish (March 21, 2019).
https://web.archive.org/web/20210513195420/https://www.americanbar.org/groups/litigation/co
mmittees/commercial-business/articles/2019/winter2019-lessons-analyzing-foreign-misconduct/

## IX.    Appendix 2 – Documents Considered

Amended Complaint

Alford et al. v. NFL Player Disability & Survivor Benefit Plan et al., No. 1:23-cv-00358-JRR–
Data Production Letter 11-18-14

Declaration of Hassam Vincent, dated November 18, 2024

**Plan Data**

Disability Applications.txt

Disability Appeals.txt

**Academic References**

Siegel, S., *Nonparametric Statistics for the Behavioral Sciences*, McGraw-Hill (1956)

National Research Council. 2011. *Reference Manual on Scientific Evidence*, Third Edition,
Washington, DC, The National Academies Press

Rowntree, D., *Statistics Without Tears: A Primer for Non-Mathematicians*, McMillan, 1981

Lohr, S.L., *Sampling: Design and Analysis*, 2019

Galloway, A., "Non-Probability Sampling," *Encyclopedia of Social Measurement*, 2005, pp. 859-
864.

**Plaintiffs' Production**

| | | |
|---|---|---|
| NFLPLTFS-0000001 | NFLPLTFS-0000831 | NFLPLTFS-0001513 |
| NFLPLTFS-0000002 | NFLPLTFS-0000832 | NFLPLTFS-0001514 |
| NFLPLTFS-0000003 | NFLPLTFS-0000833 | NFLPLTFS-0001515 |
| NFLPLTFS-0000004 | NFLPLTFS-0000834 | NFLPLTFS-0001516 |
| NFLPLTFS-0000005 | NFLPLTFS-0000835 | NFLPLTFS-0001517 |
| NFLPLTFS-0000006 | NFLPLTFS-0000836 | NFLPLTFS-0001518 |
| NFLPLTFS-0000007 | NFLPLTFS-0000837 | NFLPLTFS-0001519 |
| NFLPLTFS-0000008 | NFLPLTFS-0000838 | NFLPLTFS-0001520 |
| NFLPLTFS-0000009 | NFLPLTFS-0000839 | NFLPLTFS-0001521 |
| NFLPLTFS-0000010 | NFLPLTFS-0000840 | NFLPLTFS-0001522 |
| NFLPLTFS-0000011 | NFLPLTFS-0000841 | NFLPLTFS-0001523 |
| NFLPLTFS-0000012 | NFLPLTFS-0000842 | NFLPLTFS-0001524 |
| NFLPLTFS-0000013 | NFLPLTFS-0000843 | NFLPLTFS-0001525 |
| NFLPLTFS-0000014 | NFLPLTFS-0000844 | NFLPLTFS-0001526 |
| NFLPLTFS-0000015 | NFLPLTFS-0000845 | NFLPLTFS-0001527 |
| NFLPLTFS-0000016 | NFLPLTFS-0000846 | NFLPLTFS-0001528 |

| | | |
|---|---|---|
| NFLPLTFS-0000017 | NFLPLTFS-0000847 | NFLPLTFS-0001529 |
| NFLPLTFS-0000018 | NFLPLTFS-0000848 | NFLPLTFS-0001530 |
| NFLPLTFS-0000019 | NFLPLTFS-0000849 | NFLPLTFS-0001531 |
| NFLPLTFS-0000020 | NFLPLTFS-0000850 | NFLPLTFS-0001532 |
| NFLPLTFS-0000021 | NFLPLTFS-0000851 | NFLPLTFS-0001533 |
| NFLPLTFS-0000022 | NFLPLTFS-0000852 | NFLPLTFS-0001534 |
| NFLPLTFS-0000023 | NFLPLTFS-0000853 | NFLPLTFS-0001535 |
| NFLPLTFS-0000172 | NFLPLTFS-0000854 | NFLPLTFS-0001536 |
| NFLPLTFS-0000173 | NFLPLTFS-0000855 | NFLPLTFS-0001537 |
| NFLPLTFS-0000174 | NFLPLTFS-0000856 | NFLPLTFS-0001538 |
| NFLPLTFS-0000175 | NFLPLTFS-0000857 | NFLPLTFS-0001539 |
| NFLPLTFS-0000176 | NFLPLTFS-0000858 | NFLPLTFS-0001540 |
| NFLPLTFS-0000177 | NFLPLTFS-0000859 | NFLPLTFS-0001541 |
| NFLPLTFS-0000178 | NFLPLTFS-0000860 | NFLPLTFS-0001542 |
| NFLPLTFS-0000179 | NFLPLTFS-0000861 | NFLPLTFS-0001543 |
| NFLPLTFS-0000180 | NFLPLTFS-0000862 | NFLPLTFS-0001544 |
| NFLPLTFS-0000181 | NFLPLTFS-0000863 | NFLPLTFS-0001545 |
| NFLPLTFS-0000182 | NFLPLTFS-0000864 | NFLPLTFS-0001546 |
| NFLPLTFS-0000183 | NFLPLTFS-0000865 | NFLPLTFS-0001547 |
| NFLPLTFS-0000184 | NFLPLTFS-0000866 | NFLPLTFS-0001548 |
| NFLPLTFS-0000185 | NFLPLTFS-0000867 | NFLPLTFS-0001549 |
| NFLPLTFS-0000186 | NFLPLTFS-0000868 | NFLPLTFS-0001550 |
| NFLPLTFS-0000187 | NFLPLTFS-0000869 | NFLPLTFS-0001551 |
| NFLPLTFS-0000188 | NFLPLTFS-0000870 | NFLPLTFS-0001552 |
| NFLPLTFS-0000189 | NFLPLTFS-0000871 | NFLPLTFS-0001553 |
| NFLPLTFS-0000190 | NFLPLTFS-0000872 | NFLPLTFS-0001554 |
| NFLPLTFS-0000191 | NFLPLTFS-0000873 | NFLPLTFS-0001555 |
| NFLPLTFS-0000192 | NFLPLTFS-0000874 | NFLPLTFS-0001556 |
| NFLPLTFS-0000193 | NFLPLTFS-0000875 | NFLPLTFS-0001557 |
| NFLPLTFS-0000194 | NFLPLTFS-0000876 | NFLPLTFS-0001558 |
| NFLPLTFS-0000195 | NFLPLTFS-0000877 | NFLPLTFS-0001559 |
| NFLPLTFS-0000196 | NFLPLTFS-0000878 | NFLPLTFS-0001560 |
| NFLPLTFS-0000197 | NFLPLTFS-0000879 | NFLPLTFS-0001561 |
| NFLPLTFS-0000198 | NFLPLTFS-0000880 | NFLPLTFS-0001562 |
| NFLPLTFS-0000199 | NFLPLTFS-0000881 | NFLPLTFS-0001563 |
| NFLPLTFS-0000200 | NFLPLTFS-0000882 | NFLPLTFS-0001564 |
| NFLPLTFS-0000201 | NFLPLTFS-0000883 | NFLPLTFS-0001565 |
| NFLPLTFS-0000202 | NFLPLTFS-0000884 | NFLPLTFS-0001566 |
| NFLPLTFS-0000203 | NFLPLTFS-0000885 | NFLPLTFS-0001567 |
| NFLPLTFS-0000204 | NFLPLTFS-0000886 | NFLPLTFS-0001568 |
| NFLPLTFS-0000205 | NFLPLTFS-0000887 | NFLPLTFS-0001569 |
| NFLPLTFS-0000206 | NFLPLTFS-0000888 | NFLPLTFS-0001570 |
| NFLPLTFS-0000207 | NFLPLTFS-0000889 | NFLPLTFS-0001571 |
| NFLPLTFS-0000208 | NFLPLTFS-0000890 | NFLPLTFS-0001572 |
| NFLPLTFS-0000209 | NFLPLTFS-0000891 | NFLPLTFS-0001573 |
| NFLPLTFS-0000210 | NFLPLTFS-0000892 | NFLPLTFS-0001574 |

| | | |
|---|---|---|
| NFLPLTFS-0000211 | NFLPLTFS-0000893 | NFLPLTFS-0001575 |
| NFLPLTFS-0000212 | NFLPLTFS-0000894 | NFLPLTFS-0001576 |
| NFLPLTFS-0000213 | NFLPLTFS-0000895 | NFLPLTFS-0001577 |
| NFLPLTFS-0000214 | NFLPLTFS-0000896 | NFLPLTFS-0001578 |
| NFLPLTFS-0000215 | NFLPLTFS-0000897 | NFLPLTFS-0001579 |
| NFLPLTFS-0000216 | NFLPLTFS-0000898 | NFLPLTFS-0001580 |
| NFLPLTFS-0000217 | NFLPLTFS-0000899 | NFLPLTFS-0001581 |
| NFLPLTFS-0000218 | NFLPLTFS-0000900 | NFLPLTFS-0001582 |
| NFLPLTFS-0000219 | NFLPLTFS-0000901 | NFLPLTFS-0001583 |
| NFLPLTFS-0000220 | NFLPLTFS-0000902 | NFLPLTFS-0001584 |
| NFLPLTFS-0000221 | NFLPLTFS-0000903 | NFLPLTFS-0001585 |
| NFLPLTFS-0000222 | NFLPLTFS-0000904 | NFLPLTFS-0001586 |
| NFLPLTFS-0000223 | NFLPLTFS-0000905 | NFLPLTFS-0001587 |
| NFLPLTFS-0000224 | NFLPLTFS-0000906 | NFLPLTFS-0001588 |
| NFLPLTFS-0000225 | NFLPLTFS-0000907 | NFLPLTFS-0001589 |
| NFLPLTFS-0000226 | NFLPLTFS-0000908 | NFLPLTFS-0001590 |
| NFLPLTFS-0000227 | NFLPLTFS-0000909 | NFLPLTFS-0001591 |
| NFLPLTFS-0000228 | NFLPLTFS-0000910 | NFLPLTFS-0001592 |
| NFLPLTFS-0000229 | NFLPLTFS-0000911 | NFLPLTFS-0001593 |
| NFLPLTFS-0000230 | NFLPLTFS-0000912 | NFLPLTFS-0001594 |
| NFLPLTFS-0000231 | NFLPLTFS-0000913 | NFLPLTFS-0001595 |
| NFLPLTFS-0000232 | NFLPLTFS-0000914 | NFLPLTFS-0001596 |
| NFLPLTFS-0000233 | NFLPLTFS-0000915 | NFLPLTFS-0001597 |
| NFLPLTFS-0000234 | NFLPLTFS-0000916 | NFLPLTFS-0001598 |
| NFLPLTFS-0000235 | NFLPLTFS-0000917 | NFLPLTFS-0001599 |
| NFLPLTFS-0000236 | NFLPLTFS-0000918 | NFLPLTFS-0001600 |
| NFLPLTFS-0000237 | NFLPLTFS-0000919 | NFLPLTFS-0001601 |
| NFLPLTFS-0000238 | NFLPLTFS-0000920 | NFLPLTFS-0001602 |
| NFLPLTFS-0000239 | NFLPLTFS-0000921 | NFLPLTFS-0001603 |
| NFLPLTFS-0000240 | NFLPLTFS-0000922 | NFLPLTFS-0001604 |
| NFLPLTFS-0000241 | NFLPLTFS-0000923 | NFLPLTFS-0001605 |
| NFLPLTFS-0000242 | NFLPLTFS-0000924 | NFLPLTFS-0001606 |
| NFLPLTFS-0000243 | NFLPLTFS-0000925 | NFLPLTFS-0001607 |
| NFLPLTFS-0000244 | NFLPLTFS-0000926 | NFLPLTFS-0001608 |
| NFLPLTFS-0000245 | NFLPLTFS-0000927 | NFLPLTFS-0001609 |
| NFLPLTFS-0000246 | NFLPLTFS-0000928 | NFLPLTFS-0001610 |
| NFLPLTFS-0000247 | NFLPLTFS-0000929 | NFLPLTFS-0001611 |
| NFLPLTFS-0000248 | NFLPLTFS-0000930 | NFLPLTFS-0001612 |
| NFLPLTFS-0000249 | NFLPLTFS-0000931 | NFLPLTFS-0001613 |
| NFLPLTFS-0000250 | NFLPLTFS-0000932 | NFLPLTFS-0001614 |
| NFLPLTFS-0000251 | NFLPLTFS-0000933 | NFLPLTFS-0001615 |
| NFLPLTFS-0000252 | NFLPLTFS-0000934 | NFLPLTFS-0001616 |
| NFLPLTFS-0000253 | NFLPLTFS-0000935 | NFLPLTFS-0001617 |
| NFLPLTFS-0000254 | NFLPLTFS-0000936 | NFLPLTFS-0001618 |
| NFLPLTFS-0000255 | NFLPLTFS-0000937 | NFLPLTFS-0001619 |
| NFLPLTFS-0000256 | NFLPLTFS-0000938 | NFLPLTFS-0001620 |

| | | |
|---|---|---|
| NFLPLTFS-0000257 | NFLPLTFS-0000939 | NFLPLTFS-0001621 |
| NFLPLTFS-0000258 | NFLPLTFS-0000940 | NFLPLTFS-0001622 |
| NFLPLTFS-0000259 | NFLPLTFS-0000941 | NFLPLTFS-0001623 |
| NFLPLTFS-0000260 | NFLPLTFS-0000942 | NFLPLTFS-0001624 |
| NFLPLTFS-0000261 | NFLPLTFS-0000943 | NFLPLTFS-0001625 |
| NFLPLTFS-0000262 | NFLPLTFS-0000944 | NFLPLTFS-0001626 |
| NFLPLTFS-0000263 | NFLPLTFS-0000945 | NFLPLTFS-0001627 |
| NFLPLTFS-0000264 | NFLPLTFS-0000946 | NFLPLTFS-0001628 |
| NFLPLTFS-0000265 | NFLPLTFS-0000947 | NFLPLTFS-0001629 |
| NFLPLTFS-0000266 | NFLPLTFS-0000948 | NFLPLTFS-0001630 |
| NFLPLTFS-0000267 | NFLPLTFS-0000949 | NFLPLTFS-0001631 |
| NFLPLTFS-0000268 | NFLPLTFS-0000950 | NFLPLTFS-0001632 |
| NFLPLTFS-0000269 | NFLPLTFS-0000951 | NFLPLTFS-0001633 |
| NFLPLTFS-0000270 | NFLPLTFS-0000952 | NFLPLTFS-0001634 |
| NFLPLTFS-0000271 | NFLPLTFS-0000953 | NFLPLTFS-0001635 |
| NFLPLTFS-0000272 | NFLPLTFS-0000954 | NFLPLTFS-0001636 |
| NFLPLTFS-0000273 | NFLPLTFS-0000955 | NFLPLTFS-0001637 |
| NFLPLTFS-0000274 | NFLPLTFS-0000956 | NFLPLTFS-0001638 |
| NFLPLTFS-0000275 | NFLPLTFS-0000957 | NFLPLTFS-0001639 |
| NFLPLTFS-0000276 | NFLPLTFS-0000958 | NFLPLTFS-0001640 |
| NFLPLTFS-0000277 | NFLPLTFS-0000959 | NFLPLTFS-0001641 |
| NFLPLTFS-0000278 | NFLPLTFS-0000960 | NFLPLTFS-0001642 |
| NFLPLTFS-0000279 | NFLPLTFS-0000961 | NFLPLTFS-0001643 |
| NFLPLTFS-0000280 | NFLPLTFS-0000962 | NFLPLTFS-0001644 |
| NFLPLTFS-0000281 | NFLPLTFS-0000963 | NFLPLTFS-0001645 |
| NFLPLTFS-0000282 | NFLPLTFS-0000964 | NFLPLTFS-0001646 |
| NFLPLTFS-0000283 | NFLPLTFS-0000965 | NFLPLTFS-0001647 |
| NFLPLTFS-0000284 | NFLPLTFS-0000966 | NFLPLTFS-0001648 |
| NFLPLTFS-0000285 | NFLPLTFS-0000967 | NFLPLTFS-0001649 |
| NFLPLTFS-0000286 | NFLPLTFS-0000968 | NFLPLTFS-0001650 |
| NFLPLTFS-0000287 | NFLPLTFS-0000969 | NFLPLTFS-0001651 |
| NFLPLTFS-0000288 | NFLPLTFS-0000970 | NFLPLTFS-0001652 |
| NFLPLTFS-0000289 | NFLPLTFS-0000971 | NFLPLTFS-0001653 |
| NFLPLTFS-0000290 | NFLPLTFS-0000972 | NFLPLTFS-0001654 |
| NFLPLTFS-0000291 | NFLPLTFS-0000973 | NFLPLTFS-0001655 |
| NFLPLTFS-0000292 | NFLPLTFS-0000974 | NFLPLTFS-0001656 |
| NFLPLTFS-0000293 | NFLPLTFS-0000975 | NFLPLTFS-0001657 |
| NFLPLTFS-0000294 | NFLPLTFS-0000976 | NFLPLTFS-0001658 |
| NFLPLTFS-0000295 | NFLPLTFS-0000977 | NFLPLTFS-0001659 |
| NFLPLTFS-0000296 | NFLPLTFS-0000978 | NFLPLTFS-0001660 |
| NFLPLTFS-0000297 | NFLPLTFS-0000979 | NFLPLTFS-0001661 |
| NFLPLTFS-0000298 | NFLPLTFS-0000980 | NFLPLTFS-0001662 |
| NFLPLTFS-0000299 | NFLPLTFS-0000981 | NFLPLTFS-0001663 |
| NFLPLTFS-0000300 | NFLPLTFS-0000982 | NFLPLTFS-0001664 |
| NFLPLTFS-0000301 | NFLPLTFS-0000983 | NFLPLTFS-0001665 |
| NFLPLTFS-0000302 | NFLPLTFS-0000984 | NFLPLTFS-0001666 |

| | | |
|---|---|---|
| NFLPLTFS-0000303 | NFLPLTFS-0000985 | NFLPLTFS-0001667 |
| NFLPLTFS-0000304 | NFLPLTFS-0000986 | NFLPLTFS-0001668 |
| NFLPLTFS-0000305 | NFLPLTFS-0000987 | NFLPLTFS-0001669 |
| NFLPLTFS-0000306 | NFLPLTFS-0000988 | NFLPLTFS-0001670 |
| NFLPLTFS-0000307 | NFLPLTFS-0000989 | NFLPLTFS-0001671 |
| NFLPLTFS-0000308 | NFLPLTFS-0000990 | NFLPLTFS-0001672 |
| NFLPLTFS-0000309 | NFLPLTFS-0000991 | NFLPLTFS-0001673 |
| NFLPLTFS-0000310 | NFLPLTFS-0000992 | NFLPLTFS-0001674 |
| NFLPLTFS-0000311 | NFLPLTFS-0000993 | NFLPLTFS-0001675 |
| NFLPLTFS-0000312 | NFLPLTFS-0000994 | NFLPLTFS-0001676 |
| NFLPLTFS-0000313 | NFLPLTFS-0000995 | NFLPLTFS-0001677 |
| NFLPLTFS-0000314 | NFLPLTFS-0000996 | NFLPLTFS-0001678 |
| NFLPLTFS-0000315 | NFLPLTFS-0000997 | NFLPLTFS-0001679 |
| NFLPLTFS-0000316 | NFLPLTFS-0000998 | NFLPLTFS-0001680 |
| NFLPLTFS-0000317 | NFLPLTFS-0000999 | NFLPLTFS-0001681 |
| NFLPLTFS-0000318 | NFLPLTFS-0001000 | NFLPLTFS-0001682 |
| NFLPLTFS-0000319 | NFLPLTFS-0001001 | NFLPLTFS-0001683 |
| NFLPLTFS-0000320 | NFLPLTFS-0001002 | NFLPLTFS-0001684 |
| NFLPLTFS-0000321 | NFLPLTFS-0001003 | NFLPLTFS-0001685 |
| NFLPLTFS-0000322 | NFLPLTFS-0001004 | NFLPLTFS-0001686 |
| NFLPLTFS-0000323 | NFLPLTFS-0001005 | NFLPLTFS-0001687 |
| NFLPLTFS-0000324 | NFLPLTFS-0001006 | NFLPLTFS-0001688 |
| NFLPLTFS-0000325 | NFLPLTFS-0001007 | NFLPLTFS-0001689 |
| NFLPLTFS-0000326 | NFLPLTFS-0001008 | NFLPLTFS-0001690 |
| NFLPLTFS-0000327 | NFLPLTFS-0001009 | NFLPLTFS-0001691 |
| NFLPLTFS-0000328 | NFLPLTFS-0001010 | NFLPLTFS-0001692 |
| NFLPLTFS-0000329 | NFLPLTFS-0001011 | NFLPLTFS-0001693 |
| NFLPLTFS-0000330 | NFLPLTFS-0001012 | NFLPLTFS-0001694 |
| NFLPLTFS-0000331 | NFLPLTFS-0001013 | NFLPLTFS-0001695 |
| NFLPLTFS-0000332 | NFLPLTFS-0001014 | NFLPLTFS-0001696 |
| NFLPLTFS-0000333 | NFLPLTFS-0001015 | NFLPLTFS-0001697 |
| NFLPLTFS-0000334 | NFLPLTFS-0001016 | NFLPLTFS-0001698 |
| NFLPLTFS-0000335 | NFLPLTFS-0001017 | NFLPLTFS-0001699 |
| NFLPLTFS-0000336 | NFLPLTFS-0001018 | NFLPLTFS-0001700 |
| NFLPLTFS-0000337 | NFLPLTFS-0001019 | NFLPLTFS-0001701 |
| NFLPLTFS-0000338 | NFLPLTFS-0001020 | NFLPLTFS-0001702 |
| NFLPLTFS-0000339 | NFLPLTFS-0001021 | NFLPLTFS-0001703 |
| NFLPLTFS-0000340 | NFLPLTFS-0001022 | NFLPLTFS-0001704 |
| NFLPLTFS-0000341 | NFLPLTFS-0001023 | NFLPLTFS-0001705 |
| NFLPLTFS-0000342 | NFLPLTFS-0001024 | NFLPLTFS-0001706 |
| NFLPLTFS-0000343 | NFLPLTFS-0001025 | NFLPLTFS-0001707 |
| NFLPLTFS-0000344 | NFLPLTFS-0001026 | NFLPLTFS-0001708 |
| NFLPLTFS-0000345 | NFLPLTFS-0001027 | NFLPLTFS-0001709 |
| NFLPLTFS-0000346 | NFLPLTFS-0001028 | NFLPLTFS-0001710 |
| NFLPLTFS-0000347 | NFLPLTFS-0001029 | NFLPLTFS-0001711 |
| NFLPLTFS-0000348 | NFLPLTFS-0001030 | NFLPLTFS-0001712 |

| | | |
|---|---|---|
| NFLPLTFS-0000349 | NFLPLTFS-0001031 | NFLPLTFS-0001713 |
| NFLPLTFS-0000350 | NFLPLTFS-0001032 | NFLPLTFS-0001714 |
| NFLPLTFS-0000351 | NFLPLTFS-0001033 | NFLPLTFS-0001715 |
| NFLPLTFS-0000352 | NFLPLTFS-0001034 | NFLPLTFS-0001716 |
| NFLPLTFS-0000353 | NFLPLTFS-0001035 | NFLPLTFS-0001717 |
| NFLPLTFS-0000354 | NFLPLTFS-0001036 | NFLPLTFS-0001718 |
| NFLPLTFS-0000355 | NFLPLTFS-0001037 | NFLPLTFS-0001719 |
| NFLPLTFS-0000356 | NFLPLTFS-0001038 | NFLPLTFS-0001720 |
| NFLPLTFS-0000357 | NFLPLTFS-0001039 | NFLPLTFS-0001721 |
| NFLPLTFS-0000358 | NFLPLTFS-0001040 | NFLPLTFS-0001722 |
| NFLPLTFS-0000359 | NFLPLTFS-0001041 | NFLPLTFS-0001723 |
| NFLPLTFS-0000360 | NFLPLTFS-0001042 | NFLPLTFS-0001724 |
| NFLPLTFS-0000361 | NFLPLTFS-0001043 | NFLPLTFS-0001725 |
| NFLPLTFS-0000362 | NFLPLTFS-0001044 | NFLPLTFS-0001726 |
| NFLPLTFS-0000363 | NFLPLTFS-0001045 | NFLPLTFS-0001727 |
| NFLPLTFS-0000364 | NFLPLTFS-0001046 | NFLPLTFS-0001728 |
| NFLPLTFS-0000365 | NFLPLTFS-0001047 | NFLPLTFS-0001729 |
| NFLPLTFS-0000366 | NFLPLTFS-0001048 | NFLPLTFS-0001730 |
| NFLPLTFS-0000367 | NFLPLTFS-0001049 | NFLPLTFS-0001731 |
| NFLPLTFS-0000368 | NFLPLTFS-0001050 | NFLPLTFS-0001732 |
| NFLPLTFS-0000369 | NFLPLTFS-0001051 | NFLPLTFS-0001733 |
| NFLPLTFS-0000370 | NFLPLTFS-0001052 | NFLPLTFS-0001734 |
| NFLPLTFS-0000371 | NFLPLTFS-0001053 | NFLPLTFS-0001735 |
| NFLPLTFS-0000372 | NFLPLTFS-0001054 | NFLPLTFS-0001736 |
| NFLPLTFS-0000373 | NFLPLTFS-0001055 | NFLPLTFS-0001737 |
| NFLPLTFS-0000374 | NFLPLTFS-0001056 | NFLPLTFS-0001738 |
| NFLPLTFS-0000375 | NFLPLTFS-0001057 | NFLPLTFS-0001739 |
| NFLPLTFS-0000376 | NFLPLTFS-0001058 | NFLPLTFS-0001740 |
| NFLPLTFS-0000377 | NFLPLTFS-0001059 | NFLPLTFS-0001741 |
| NFLPLTFS-0000378 | NFLPLTFS-0001060 | NFLPLTFS-0001742 |
| NFLPLTFS-0000379 | NFLPLTFS-0001061 | NFLPLTFS-0001743 |
| NFLPLTFS-0000380 | NFLPLTFS-0001062 | NFLPLTFS-0001744 |
| NFLPLTFS-0000381 | NFLPLTFS-0001063 | NFLPLTFS-0001745 |
| NFLPLTFS-0000382 | NFLPLTFS-0001064 | NFLPLTFS-0001746 |
| NFLPLTFS-0000383 | NFLPLTFS-0001065 | NFLPLTFS-0001747 |
| NFLPLTFS-0000384 | NFLPLTFS-0001066 | NFLPLTFS-0001748 |
| NFLPLTFS-0000385 | NFLPLTFS-0001067 | NFLPLTFS-0001749 |
| NFLPLTFS-0000386 | NFLPLTFS-0001068 | NFLPLTFS-0001750 |
| NFLPLTFS-0000387 | NFLPLTFS-0001069 | NFLPLTFS-0001751 |
| NFLPLTFS-0000388 | NFLPLTFS-0001070 | NFLPLTFS-0001752 |
| NFLPLTFS-0000389 | NFLPLTFS-0001071 | NFLPLTFS-0001753 |
| NFLPLTFS-0000390 | NFLPLTFS-0001072 | NFLPLTFS-0001754 |
| NFLPLTFS-0000391 | NFLPLTFS-0001073 | NFLPLTFS-0001755 |
| NFLPLTFS-0000392 | NFLPLTFS-0001074 | NFLPLTFS-0001756 |
| NFLPLTFS-0000393 | NFLPLTFS-0001075 | NFLPLTFS-0001757 |
| NFLPLTFS-0000394 | NFLPLTFS-0001076 | NFLPLTFS-0001758 |

| | | |
|---|---|---|
| NFLPLTFS-0000395 | NFLPLTFS-0001077 | NFLPLTFS-0001759 |
| NFLPLTFS-0000396 | NFLPLTFS-0001078 | NFLPLTFS-0001760 |
| NFLPLTFS-0000397 | NFLPLTFS-0001079 | NFLPLTFS-0001761 |
| NFLPLTFS-0000398 | NFLPLTFS-0001080 | NFLPLTFS-0001762 |
| NFLPLTFS-0000399 | NFLPLTFS-0001081 | NFLPLTFS-0001763 |
| NFLPLTFS-0000400 | NFLPLTFS-0001082 | NFLPLTFS-0001764 |
| NFLPLTFS-0000401 | NFLPLTFS-0001083 | NFLPLTFS-0001765 |
| NFLPLTFS-0000402 | NFLPLTFS-0001084 | NFLPLTFS-0001766 |
| NFLPLTFS-0000403 | NFLPLTFS-0001085 | NFLPLTFS-0001767 |
| NFLPLTFS-0000404 | NFLPLTFS-0001086 | NFLPLTFS-0001768 |
| NFLPLTFS-0000405 | NFLPLTFS-0001087 | NFLPLTFS-0001769 |
| NFLPLTFS-0000406 | NFLPLTFS-0001088 | NFLPLTFS-0001770 |
| NFLPLTFS-0000407 | NFLPLTFS-0001089 | NFLPLTFS-0001771 |
| NFLPLTFS-0000408 | NFLPLTFS-0001090 | NFLPLTFS-0001772 |
| NFLPLTFS-0000409 | NFLPLTFS-0001091 | NFLPLTFS-0001773 |
| NFLPLTFS-0000410 | NFLPLTFS-0001092 | NFLPLTFS-0001774 |
| NFLPLTFS-0000411 | NFLPLTFS-0001093 | NFLPLTFS-0001775 |
| NFLPLTFS-0000412 | NFLPLTFS-0001094 | NFLPLTFS-0001776 |
| NFLPLTFS-0000413 | NFLPLTFS-0001095 | NFLPLTFS-0001777 |
| NFLPLTFS-0000414 | NFLPLTFS-0001096 | NFLPLTFS-0001778 |
| NFLPLTFS-0000415 | NFLPLTFS-0001097 | NFLPLTFS-0001779 |
| NFLPLTFS-0000416 | NFLPLTFS-0001098 | NFLPLTFS-0001780 |
| NFLPLTFS-0000417 | NFLPLTFS-0001099 | NFLPLTFS-0001781 |
| NFLPLTFS-0000418 | NFLPLTFS-0001100 | NFLPLTFS-0001782 |
| NFLPLTFS-0000419 | NFLPLTFS-0001101 | NFLPLTFS-0001783 |
| NFLPLTFS-0000420 | NFLPLTFS-0001102 | NFLPLTFS-0001784 |
| NFLPLTFS-0000421 | NFLPLTFS-0001103 | NFLPLTFS-0001785 |
| NFLPLTFS-0000422 | NFLPLTFS-0001104 | NFLPLTFS-0001786 |
| NFLPLTFS-0000423 | NFLPLTFS-0001105 | NFLPLTFS-0001787 |
| NFLPLTFS-0000424 | NFLPLTFS-0001106 | NFLPLTFS-0001788 |
| NFLPLTFS-0000425 | NFLPLTFS-0001107 | NFLPLTFS-0001789 |
| NFLPLTFS-0000426 | NFLPLTFS-0001108 | NFLPLTFS-0001790 |
| NFLPLTFS-0000427 | NFLPLTFS-0001109 | NFLPLTFS-0001791 |
| NFLPLTFS-0000428 | NFLPLTFS-0001110 | NFLPLTFS-0001792 |
| NFLPLTFS-0000429 | NFLPLTFS-0001111 | NFLPLTFS-0001793 |
| NFLPLTFS-0000430 | NFLPLTFS-0001112 | NFLPLTFS-0001794 |
| NFLPLTFS-0000431 | NFLPLTFS-0001113 | NFLPLTFS-0001795 |
| NFLPLTFS-0000432 | NFLPLTFS-0001114 | NFLPLTFS-0001796 |
| NFLPLTFS-0000433 | NFLPLTFS-0001115 | NFLPLTFS-0001797 |
| NFLPLTFS-0000434 | NFLPLTFS-0001116 | NFLPLTFS-0001798 |
| NFLPLTFS-0000435 | NFLPLTFS-0001117 | NFLPLTFS-0001799 |
| NFLPLTFS-0000436 | NFLPLTFS-0001118 | NFLPLTFS-0001800 |
| NFLPLTFS-0000437 | NFLPLTFS-0001119 | NFLPLTFS-0001801 |
| NFLPLTFS-0000438 | NFLPLTFS-0001120 | NFLPLTFS-0001802 |
| NFLPLTFS-0000439 | NFLPLTFS-0001121 | NFLPLTFS-0001803 |
| NFLPLTFS-0000440 | NFLPLTFS-0001122 | NFLPLTFS-0001804 |

| | | |
|---|---|---|
| NFLPLTFS-0000441 | NFLPLTFS-0001123 | NFLPLTFS-0001805 |
| NFLPLTFS-0000442 | NFLPLTFS-0001124 | NFLPLTFS-0001806 |
| NFLPLTFS-0000443 | NFLPLTFS-0001125 | NFLPLTFS-0001807 |
| NFLPLTFS-0000444 | NFLPLTFS-0001126 | NFLPLTFS-0001808 |
| NFLPLTFS-0000445 | NFLPLTFS-0001127 | NFLPLTFS-0001809 |
| NFLPLTFS-0000446 | NFLPLTFS-0001128 | NFLPLTFS-0001810 |
| NFLPLTFS-0000447 | NFLPLTFS-0001129 | NFLPLTFS-0001811 |
| NFLPLTFS-0000448 | NFLPLTFS-0001130 | NFLPLTFS-0001812 |
| NFLPLTFS-0000449 | NFLPLTFS-0001131 | NFLPLTFS-0001813 |
| NFLPLTFS-0000450 | NFLPLTFS-0001132 | NFLPLTFS-0001814 |
| NFLPLTFS-0000451 | NFLPLTFS-0001133 | NFLPLTFS-0001815 |
| NFLPLTFS-0000452 | NFLPLTFS-0001134 | NFLPLTFS-0001816 |
| NFLPLTFS-0000453 | NFLPLTFS-0001135 | NFLPLTFS-0001817 |
| NFLPLTFS-0000454 | NFLPLTFS-0001136 | NFLPLTFS-0001818 |
| NFLPLTFS-0000455 | NFLPLTFS-0001137 | NFLPLTFS-0001819 |
| NFLPLTFS-0000456 | NFLPLTFS-0001138 | NFLPLTFS-0001820 |
| NFLPLTFS-0000457 | NFLPLTFS-0001139 | NFLPLTFS-0001821 |
| NFLPLTFS-0000458 | NFLPLTFS-0001140 | NFLPLTFS-0001822 |
| NFLPLTFS-0000459 | NFLPLTFS-0001141 | NFLPLTFS-0001823 |
| NFLPLTFS-0000460 | NFLPLTFS-0001142 | NFLPLTFS-0001824 |
| NFLPLTFS-0000461 | NFLPLTFS-0001143 | NFLPLTFS-0001825 |
| NFLPLTFS-0000462 | NFLPLTFS-0001144 | NFLPLTFS-0001826 |
| NFLPLTFS-0000463 | NFLPLTFS-0001145 | NFLPLTFS-0001827 |
| NFLPLTFS-0000464 | NFLPLTFS-0001146 | NFLPLTFS-0001828 |
| NFLPLTFS-0000465 | NFLPLTFS-0001147 | NFLPLTFS-0001829 |
| NFLPLTFS-0000466 | NFLPLTFS-0001148 | NFLPLTFS-0001830 |
| NFLPLTFS-0000467 | NFLPLTFS-0001149 | NFLPLTFS-0001831 |
| NFLPLTFS-0000468 | NFLPLTFS-0001150 | NFLPLTFS-0001832 |
| NFLPLTFS-0000469 | NFLPLTFS-0001151 | NFLPLTFS-0001833 |
| NFLPLTFS-0000470 | NFLPLTFS-0001152 | NFLPLTFS-0001834 |
| NFLPLTFS-0000471 | NFLPLTFS-0001153 | NFLPLTFS-0001835 |
| NFLPLTFS-0000472 | NFLPLTFS-0001154 | NFLPLTFS-0001836 |
| NFLPLTFS-0000473 | NFLPLTFS-0001155 | NFLPLTFS-0001837 |
| NFLPLTFS-0000474 | NFLPLTFS-0001156 | NFLPLTFS-0001838 |
| NFLPLTFS-0000475 | NFLPLTFS-0001157 | NFLPLTFS-0001839 |
| NFLPLTFS-0000476 | NFLPLTFS-0001158 | NFLPLTFS-0001840 |
| NFLPLTFS-0000477 | NFLPLTFS-0001159 | NFLPLTFS-0001841 |
| NFLPLTFS-0000478 | NFLPLTFS-0001160 | NFLPLTFS-0001842 |
| NFLPLTFS-0000479 | NFLPLTFS-0001161 | NFLPLTFS-0001843 |
| NFLPLTFS-0000480 | NFLPLTFS-0001162 | NFLPLTFS-0001844 |
| NFLPLTFS-0000481 | NFLPLTFS-0001163 | NFLPLTFS-0001845 |
| NFLPLTFS-0000482 | NFLPLTFS-0001164 | NFLPLTFS-0001846 |
| NFLPLTFS-0000483 | NFLPLTFS-0001165 | NFLPLTFS-0001847 |
| NFLPLTFS-0000484 | NFLPLTFS-0001166 | NFLPLTFS-0001848 |
| NFLPLTFS-0000485 | NFLPLTFS-0001167 | NFLPLTFS-0001849 |
| NFLPLTFS-0000486 | NFLPLTFS-0001168 | NFLPLTFS-0001850 |

| | | |
|---|---|---|
| NFLPLTFS-0000487 | NFLPLTFS-0001169 | NFLPLTFS-0001851 |
| NFLPLTFS-0000488 | NFLPLTFS-0001170 | NFLPLTFS-0001852 |
| NFLPLTFS-0000489 | NFLPLTFS-0001171 | NFLPLTFS-0001853 |
| NFLPLTFS-0000490 | NFLPLTFS-0001172 | NFLPLTFS-0001854 |
| NFLPLTFS-0000491 | NFLPLTFS-0001173 | NFLPLTFS-0001855 |
| NFLPLTFS-0000492 | NFLPLTFS-0001174 | NFLPLTFS-0001856 |
| NFLPLTFS-0000493 | NFLPLTFS-0001175 | NFLPLTFS-0001857 |
| NFLPLTFS-0000494 | NFLPLTFS-0001176 | NFLPLTFS-0001858 |
| NFLPLTFS-0000495 | NFLPLTFS-0001177 | NFLPLTFS-0001859 |
| NFLPLTFS-0000496 | NFLPLTFS-0001178 | NFLPLTFS-0001860 |
| NFLPLTFS-0000497 | NFLPLTFS-0001179 | NFLPLTFS-0001861 |
| NFLPLTFS-0000498 | NFLPLTFS-0001180 | NFLPLTFS-0001862 |
| NFLPLTFS-0000499 | NFLPLTFS-0001181 | NFLPLTFS-0001863 |
| NFLPLTFS-0000500 | NFLPLTFS-0001182 | NFLPLTFS-0001864 |
| NFLPLTFS-0000501 | NFLPLTFS-0001183 | NFLPLTFS-0001865 |
| NFLPLTFS-0000502 | NFLPLTFS-0001184 | NFLPLTFS-0001866 |
| NFLPLTFS-0000503 | NFLPLTFS-0001185 | NFLPLTFS-0001867 |
| NFLPLTFS-0000504 | NFLPLTFS-0001186 | NFLPLTFS-0001868 |
| NFLPLTFS-0000505 | NFLPLTFS-0001187 | NFLPLTFS-0001869 |
| NFLPLTFS-0000506 | NFLPLTFS-0001188 | NFLPLTFS-0001870 |
| NFLPLTFS-0000507 | NFLPLTFS-0001189 | NFLPLTFS-0001871 |
| NFLPLTFS-0000508 | NFLPLTFS-0001190 | NFLPLTFS-0001872 |
| NFLPLTFS-0000509 | NFLPLTFS-0001191 | NFLPLTFS-0001873 |
| NFLPLTFS-0000510 | NFLPLTFS-0001192 | NFLPLTFS-0001874 |
| NFLPLTFS-0000511 | NFLPLTFS-0001193 | NFLPLTFS-0001875 |
| NFLPLTFS-0000512 | NFLPLTFS-0001194 | NFLPLTFS-0001876 |
| NFLPLTFS-0000513 | NFLPLTFS-0001195 | NFLPLTFS-0001877 |
| NFLPLTFS-0000514 | NFLPLTFS-0001196 | NFLPLTFS-0001878 |
| NFLPLTFS-0000515 | NFLPLTFS-0001197 | NFLPLTFS-0001879 |
| NFLPLTFS-0000516 | NFLPLTFS-0001198 | NFLPLTFS-0001880 |
| NFLPLTFS-0000517 | NFLPLTFS-0001199 | NFLPLTFS-0001881 |
| NFLPLTFS-0000518 | NFLPLTFS-0001200 | NFLPLTFS-0001882 |
| NFLPLTFS-0000519 | NFLPLTFS-0001201 | NFLPLTFS-0001883 |
| NFLPLTFS-0000520 | NFLPLTFS-0001202 | NFLPLTFS-0001884 |
| NFLPLTFS-0000521 | NFLPLTFS-0001203 | NFLPLTFS-0001885 |
| NFLPLTFS-0000522 | NFLPLTFS-0001204 | NFLPLTFS-0001886 |
| NFLPLTFS-0000523 | NFLPLTFS-0001205 | NFLPLTFS-0001887 |
| NFLPLTFS-0000524 | NFLPLTFS-0001206 | NFLPLTFS-0001888 |
| NFLPLTFS-0000525 | NFLPLTFS-0001207 | NFLPLTFS-0001889 |
| NFLPLTFS-0000526 | NFLPLTFS-0001208 | NFLPLTFS-0001890 |
| NFLPLTFS-0000527 | NFLPLTFS-0001209 | NFLPLTFS-0001891 |
| NFLPLTFS-0000528 | NFLPLTFS-0001210 | NFLPLTFS-0001892 |
| NFLPLTFS-0000529 | NFLPLTFS-0001211 | NFLPLTFS-0001893 |
| NFLPLTFS-0000530 | NFLPLTFS-0001212 | NFLPLTFS-0001894 |
| NFLPLTFS-0000531 | NFLPLTFS-0001213 | NFLPLTFS-0001895 |
| NFLPLTFS-0000532 | NFLPLTFS-0001214 | NFLPLTFS-0001896 |

| | | |
|---|---|---|
| NFLPLTFS-0000533 | NFLPLTFS-0001215 | NFLPLTFS-0001897 |
| NFLPLTFS-0000534 | NFLPLTFS-0001216 | NFLPLTFS-0001898 |
| NFLPLTFS-0000535 | NFLPLTFS-0001217 | NFLPLTFS-0001899 |
| NFLPLTFS-0000536 | NFLPLTFS-0001218 | NFLPLTFS-0001900 |
| NFLPLTFS-0000537 | NFLPLTFS-0001219 | NFLPLTFS-0001901 |
| NFLPLTFS-0000538 | NFLPLTFS-0001220 | NFLPLTFS-0001902 |
| NFLPLTFS-0000539 | NFLPLTFS-0001221 | NFLPLTFS-0001903 |
| NFLPLTFS-0000540 | NFLPLTFS-0001222 | NFLPLTFS-0001904 |
| NFLPLTFS-0000541 | NFLPLTFS-0001223 | NFLPLTFS-0001905 |
| NFLPLTFS-0000542 | NFLPLTFS-0001224 | NFLPLTFS-0001906 |
| NFLPLTFS-0000543 | NFLPLTFS-0001225 | NFLPLTFS-0001907 |
| NFLPLTFS-0000544 | NFLPLTFS-0001226 | NFLPLTFS-0001908 |
| NFLPLTFS-0000545 | NFLPLTFS-0001227 | NFLPLTFS-0001909 |
| NFLPLTFS-0000546 | NFLPLTFS-0001228 | NFLPLTFS-0001910 |
| NFLPLTFS-0000547 | NFLPLTFS-0001229 | NFLPLTFS-0001911 |
| NFLPLTFS-0000548 | NFLPLTFS-0001230 | NFLPLTFS-0001912 |
| NFLPLTFS-0000549 | NFLPLTFS-0001231 | NFLPLTFS-0001913 |
| NFLPLTFS-0000550 | NFLPLTFS-0001232 | NFLPLTFS-0001914 |
| NFLPLTFS-0000551 | NFLPLTFS-0001233 | NFLPLTFS-0001915 |
| NFLPLTFS-0000552 | NFLPLTFS-0001234 | NFLPLTFS-0001916 |
| NFLPLTFS-0000553 | NFLPLTFS-0001235 | NFLPLTFS-0001917 |
| NFLPLTFS-0000554 | NFLPLTFS-0001236 | NFLPLTFS-0001918 |
| NFLPLTFS-0000555 | NFLPLTFS-0001237 | NFLPLTFS-0001919 |
| NFLPLTFS-0000556 | NFLPLTFS-0001238 | NFLPLTFS-0001920 |
| NFLPLTFS-0000557 | NFLPLTFS-0001239 | NFLPLTFS-0001921 |
| NFLPLTFS-0000558 | NFLPLTFS-0001240 | NFLPLTFS-0001922 |
| NFLPLTFS-0000559 | NFLPLTFS-0001241 | NFLPLTFS-0001923 |
| NFLPLTFS-0000560 | NFLPLTFS-0001242 | NFLPLTFS-0001924 |
| NFLPLTFS-0000561 | NFLPLTFS-0001243 | NFLPLTFS-0001925 |
| NFLPLTFS-0000562 | NFLPLTFS-0001244 | NFLPLTFS-0001926 |
| NFLPLTFS-0000563 | NFLPLTFS-0001245 | NFLPLTFS-0001927 |
| NFLPLTFS-0000564 | NFLPLTFS-0001246 | NFLPLTFS-0001928 |
| NFLPLTFS-0000565 | NFLPLTFS-0001247 | NFLPLTFS-0001929 |
| NFLPLTFS-0000566 | NFLPLTFS-0001248 | NFLPLTFS-0001930 |
| NFLPLTFS-0000567 | NFLPLTFS-0001249 | NFLPLTFS-0001931 |
| NFLPLTFS-0000568 | NFLPLTFS-0001250 | NFLPLTFS-0001932 |
| NFLPLTFS-0000569 | NFLPLTFS-0001251 | NFLPLTFS-0001933 |
| NFLPLTFS-0000570 | NFLPLTFS-0001252 | NFLPLTFS-0001934 |
| NFLPLTFS-0000571 | NFLPLTFS-0001253 | NFLPLTFS-0001935 |
| NFLPLTFS-0000572 | NFLPLTFS-0001254 | NFLPLTFS-0001936 |
| NFLPLTFS-0000573 | NFLPLTFS-0001255 | NFLPLTFS-0001937 |
| NFLPLTFS-0000574 | NFLPLTFS-0001256 | NFLPLTFS-0001938 |
| NFLPLTFS-0000575 | NFLPLTFS-0001257 | NFLPLTFS-0001939 |
| NFLPLTFS-0000576 | NFLPLTFS-0001258 | NFLPLTFS-0001940 |
| NFLPLTFS-0000577 | NFLPLTFS-0001259 | NFLPLTFS-0001941 |
| NFLPLTFS-0000578 | NFLPLTFS-0001260 | NFLPLTFS-0001942 |

| | | |
|---|---|---|
| NFLPLTFS-0000579 | NFLPLTFS-0001261 | NFLPLTFS-0001943 |
| NFLPLTFS-0000580 | NFLPLTFS-0001262 | NFLPLTFS-0001944 |
| NFLPLTFS-0000581 | NFLPLTFS-0001263 | NFLPLTFS-0001945 |
| NFLPLTFS-0000582 | NFLPLTFS-0001264 | NFLPLTFS-0001946 |
| NFLPLTFS-0000583 | NFLPLTFS-0001265 | NFLPLTFS-0001947 |
| NFLPLTFS-0000584 | NFLPLTFS-0001266 | NFLPLTFS-0001948 |
| NFLPLTFS-0000585 | NFLPLTFS-0001267 | NFLPLTFS-0001949 |
| NFLPLTFS-0000586 | NFLPLTFS-0001268 | NFLPLTFS-0001950 |
| NFLPLTFS-0000587 | NFLPLTFS-0001269 | NFLPLTFS-0001951 |
| NFLPLTFS-0000588 | NFLPLTFS-0001270 | NFLPLTFS-0001952 |
| NFLPLTFS-0000589 | NFLPLTFS-0001271 | NFLPLTFS-0001953 |
| NFLPLTFS-0000590 | NFLPLTFS-0001272 | NFLPLTFS-0001954 |
| NFLPLTFS-0000591 | NFLPLTFS-0001273 | NFLPLTFS-0001955 |
| NFLPLTFS-0000592 | NFLPLTFS-0001274 | NFLPLTFS-0001956 |
| NFLPLTFS-0000593 | NFLPLTFS-0001275 | NFLPLTFS-0001957 |
| NFLPLTFS-0000594 | NFLPLTFS-0001276 | NFLPLTFS-0001958 |
| NFLPLTFS-0000595 | NFLPLTFS-0001277 | NFLPLTFS-0001959 |
| NFLPLTFS-0000596 | NFLPLTFS-0001278 | NFLPLTFS-0001960 |
| NFLPLTFS-0000597 | NFLPLTFS-0001279 | NFLPLTFS-0001961 |
| NFLPLTFS-0000598 | NFLPLTFS-0001280 | NFLPLTFS-0001962 |
| NFLPLTFS-0000599 | NFLPLTFS-0001281 | NFLPLTFS-0001963 |
| NFLPLTFS-0000600 | NFLPLTFS-0001282 | NFLPLTFS-0001964 |
| NFLPLTFS-0000601 | NFLPLTFS-0001283 | NFLPLTFS-0001965 |
| NFLPLTFS-0000602 | NFLPLTFS-0001284 | NFLPLTFS-0001966 |
| NFLPLTFS-0000603 | NFLPLTFS-0001285 | NFLPLTFS-0001967 |
| NFLPLTFS-0000604 | NFLPLTFS-0001286 | NFLPLTFS-0001968 |
| NFLPLTFS-0000605 | NFLPLTFS-0001287 | NFLPLTFS-0001969 |
| NFLPLTFS-0000606 | NFLPLTFS-0001288 | NFLPLTFS-0001970 |
| NFLPLTFS-0000607 | NFLPLTFS-0001289 | NFLPLTFS-0001971 |
| NFLPLTFS-0000608 | NFLPLTFS-0001290 | NFLPLTFS-0001972 |
| NFLPLTFS-0000609 | NFLPLTFS-0001291 | NFLPLTFS-0001973 |
| NFLPLTFS-0000610 | NFLPLTFS-0001292 | NFLPLTFS-0001974 |
| NFLPLTFS-0000611 | NFLPLTFS-0001293 | NFLPLTFS-0001975 |
| NFLPLTFS-0000612 | NFLPLTFS-0001294 | NFLPLTFS-0001976 |
| NFLPLTFS-0000613 | NFLPLTFS-0001295 | NFLPLTFS-0001977 |
| NFLPLTFS-0000614 | NFLPLTFS-0001296 | NFLPLTFS-0001978 |
| NFLPLTFS-0000615 | NFLPLTFS-0001297 | NFLPLTFS-0001979 |
| NFLPLTFS-0000616 | NFLPLTFS-0001298 | NFLPLTFS-0001980 |
| NFLPLTFS-0000617 | NFLPLTFS-0001299 | NFLPLTFS-0001981 |
| NFLPLTFS-0000618 | NFLPLTFS-0001300 | NFLPLTFS-0001982 |
| NFLPLTFS-0000619 | NFLPLTFS-0001301 | NFLPLTFS-0001983 |
| NFLPLTFS-0000620 | NFLPLTFS-0001302 | NFLPLTFS-0001984 |
| NFLPLTFS-0000621 | NFLPLTFS-0001303 | NFLPLTFS-0001985 |
| NFLPLTFS-0000622 | NFLPLTFS-0001304 | NFLPLTFS-0001986 |
| NFLPLTFS-0000623 | NFLPLTFS-0001305 | NFLPLTFS-0001987 |
| NFLPLTFS-0000624 | NFLPLTFS-0001306 | NFLPLTFS-0001988 |

| | | |
|---|---|---|
| NFLPLTFS-0000625 | NFLPLTFS-0001307 | NFLPLTFS-0001989 |
| NFLPLTFS-0000626 | NFLPLTFS-0001308 | NFLPLTFS-0001990 |
| NFLPLTFS-0000627 | NFLPLTFS-0001309 | NFLPLTFS-0001991 |
| NFLPLTFS-0000628 | NFLPLTFS-0001310 | NFLPLTFS-0001992 |
| NFLPLTFS-0000629 | NFLPLTFS-0001311 | NFLPLTFS-0001993 |
| NFLPLTFS-0000630 | NFLPLTFS-0001312 | NFLPLTFS-0001994 |
| NFLPLTFS-0000631 | NFLPLTFS-0001313 | NFLPLTFS-0001995 |
| NFLPLTFS-0000632 | NFLPLTFS-0001314 | NFLPLTFS-0001996 |
| NFLPLTFS-0000633 | NFLPLTFS-0001315 | NFLPLTFS-0001997 |
| NFLPLTFS-0000634 | NFLPLTFS-0001316 | NFLPLTFS-0001998 |
| NFLPLTFS-0000635 | NFLPLTFS-0001317 | NFLPLTFS-0001999 |
| NFLPLTFS-0000636 | NFLPLTFS-0001318 | NFLPLTFS-0002000 |
| NFLPLTFS-0000637 | NFLPLTFS-0001319 | NFLPLTFS-0002001 |
| NFLPLTFS-0000638 | NFLPLTFS-0001320 | NFLPLTFS-0002002 |
| NFLPLTFS-0000639 | NFLPLTFS-0001321 | NFLPLTFS-0002003 |
| NFLPLTFS-0000640 | NFLPLTFS-0001322 | NFLPLTFS-0002004 |
| NFLPLTFS-0000641 | NFLPLTFS-0001323 | NFLPLTFS-0002005 |
| NFLPLTFS-0000642 | NFLPLTFS-0001324 | NFLPLTFS-0002006 |
| NFLPLTFS-0000643 | NFLPLTFS-0001325 | NFLPLTFS-0002007 |
| NFLPLTFS-0000644 | NFLPLTFS-0001326 | NFLPLTFS-0002008 |
| NFLPLTFS-0000645 | NFLPLTFS-0001327 | NFLPLTFS-0002009 |
| NFLPLTFS-0000646 | NFLPLTFS-0001328 | NFLPLTFS-0002010 |
| NFLPLTFS-0000647 | NFLPLTFS-0001329 | NFLPLTFS-0002011 |
| NFLPLTFS-0000648 | NFLPLTFS-0001330 | NFLPLTFS-0002012 |
| NFLPLTFS-0000649 | NFLPLTFS-0001331 | NFLPLTFS-0002013 |
| NFLPLTFS-0000650 | NFLPLTFS-0001332 | NFLPLTFS-0002014 |
| NFLPLTFS-0000651 | NFLPLTFS-0001333 | NFLPLTFS-0002015 |
| NFLPLTFS-0000652 | NFLPLTFS-0001334 | NFLPLTFS-0002016 |
| NFLPLTFS-0000653 | NFLPLTFS-0001335 | NFLPLTFS-0002017 |
| NFLPLTFS-0000654 | NFLPLTFS-0001336 | NFLPLTFS-0002018 |
| NFLPLTFS-0000655 | NFLPLTFS-0001337 | NFLPLTFS-0002019 |
| NFLPLTFS-0000656 | NFLPLTFS-0001338 | NFLPLTFS-0002020 |
| NFLPLTFS-0000657 | NFLPLTFS-0001339 | NFLPLTFS-0002021 |
| NFLPLTFS-0000658 | NFLPLTFS-0001340 | NFLPLTFS-0002022 |
| NFLPLTFS-0000659 | NFLPLTFS-0001341 | NFLPLTFS-0002023 |
| NFLPLTFS-0000660 | NFLPLTFS-0001342 | NFLPLTFS-0002024 |
| NFLPLTFS-0000661 | NFLPLTFS-0001343 | NFLPLTFS-0002025 |
| NFLPLTFS-0000662 | NFLPLTFS-0001344 | NFLPLTFS-0002026 |
| NFLPLTFS-0000663 | NFLPLTFS-0001345 | NFLPLTFS-0002027 |
| NFLPLTFS-0000664 | NFLPLTFS-0001346 | NFLPLTFS-0002028 |
| NFLPLTFS-0000665 | NFLPLTFS-0001347 | NFLPLTFS-0002029 |
| NFLPLTFS-0000666 | NFLPLTFS-0001348 | NFLPLTFS-0002030 |
| NFLPLTFS-0000667 | NFLPLTFS-0001349 | NFLPLTFS-0002031 |
| NFLPLTFS-0000668 | NFLPLTFS-0001350 | NFLPLTFS-0002032 |
| NFLPLTFS-0000669 | NFLPLTFS-0001351 | NFLPLTFS-0002033 |
| NFLPLTFS-0000670 | NFLPLTFS-0001352 | NFLPLTFS-0002034 |

| | | |
|---|---|---|
| NFLPLTFS-0000671 | NFLPLTFS-0001353 | NFLPLTFS-0002035 |
| NFLPLTFS-0000672 | NFLPLTFS-0001354 | NFLPLTFS-0002036 |
| NFLPLTFS-0000673 | NFLPLTFS-0001355 | NFLPLTFS-0002037 |
| NFLPLTFS-0000674 | NFLPLTFS-0001356 | NFLPLTFS-0002038 |
| NFLPLTFS-0000675 | NFLPLTFS-0001357 | NFLPLTFS-0002039 |
| NFLPLTFS-0000676 | NFLPLTFS-0001358 | NFLPLTFS-0002040 |
| NFLPLTFS-0000677 | NFLPLTFS-0001359 | NFLPLTFS-0002041 |
| NFLPLTFS-0000678 | NFLPLTFS-0001360 | NFLPLTFS-0002042 |
| NFLPLTFS-0000679 | NFLPLTFS-0001361 | NFLPLTFS-0002043 |
| NFLPLTFS-0000680 | NFLPLTFS-0001362 | NFLPLTFS-0002044 |
| NFLPLTFS-0000681 | NFLPLTFS-0001363 | NFLPLTFS-0002045 |
| NFLPLTFS-0000682 | NFLPLTFS-0001364 | NFLPLTFS-0002046 |
| NFLPLTFS-0000683 | NFLPLTFS-0001365 | NFLPLTFS-0002047 |
| NFLPLTFS-0000684 | NFLPLTFS-0001366 | NFLPLTFS-0002048 |
| NFLPLTFS-0000685 | NFLPLTFS-0001367 | NFLPLTFS-0002049 |
| NFLPLTFS-0000686 | NFLPLTFS-0001368 | NFLPLTFS-0002050 |
| NFLPLTFS-0000687 | NFLPLTFS-0001369 | NFLPLTFS-0002051 |
| NFLPLTFS-0000688 | NFLPLTFS-0001370 | NFLPLTFS-0002052 |
| NFLPLTFS-0000689 | NFLPLTFS-0001371 | NFLPLTFS-0002053 |
| NFLPLTFS-0000690 | NFLPLTFS-0001372 | NFLPLTFS-0002054 |
| NFLPLTFS-0000691 | NFLPLTFS-0001373 | NFLPLTFS-0002055 |
| NFLPLTFS-0000692 | NFLPLTFS-0001374 | NFLPLTFS-0002056 |
| NFLPLTFS-0000693 | NFLPLTFS-0001375 | NFLPLTFS-0002057 |
| NFLPLTFS-0000694 | NFLPLTFS-0001376 | NFLPLTFS-0002058 |
| NFLPLTFS-0000695 | NFLPLTFS-0001377 | NFLPLTFS-0002059 |
| NFLPLTFS-0000696 | NFLPLTFS-0001378 | NFLPLTFS-0002060 |
| NFLPLTFS-0000697 | NFLPLTFS-0001379 | NFLPLTFS-0002061 |
| NFLPLTFS-0000698 | NFLPLTFS-0001380 | NFLPLTFS-0002062 |
| NFLPLTFS-0000699 | NFLPLTFS-0001381 | NFLPLTFS-0002063 |
| NFLPLTFS-0000700 | NFLPLTFS-0001382 | NFLPLTFS-0002064 |
| NFLPLTFS-0000701 | NFLPLTFS-0001383 | NFLPLTFS-0002065 |
| NFLPLTFS-0000702 | NFLPLTFS-0001384 | NFLPLTFS-0002066 |
| NFLPLTFS-0000703 | NFLPLTFS-0001385 | NFLPLTFS-0002067 |
| NFLPLTFS-0000704 | NFLPLTFS-0001386 | NFLPLTFS-0002068 |
| NFLPLTFS-0000705 | NFLPLTFS-0001387 | NFLPLTFS-0002069 |
| NFLPLTFS-0000706 | NFLPLTFS-0001388 | NFLPLTFS-0002070 |
| NFLPLTFS-0000707 | NFLPLTFS-0001389 | NFLPLTFS-0002071 |
| NFLPLTFS-0000708 | NFLPLTFS-0001390 | NFLPLTFS-0002072 |
| NFLPLTFS-0000709 | NFLPLTFS-0001391 | NFLPLTFS-0002073 |
| NFLPLTFS-0000710 | NFLPLTFS-0001392 | NFLPLTFS-0002074 |
| NFLPLTFS-0000711 | NFLPLTFS-0001393 | NFLPLTFS-0002075 |
| NFLPLTFS-0000712 | NFLPLTFS-0001394 | NFLPLTFS-0002076 |
| NFLPLTFS-0000713 | NFLPLTFS-0001395 | NFLPLTFS-0002077 |
| NFLPLTFS-0000714 | NFLPLTFS-0001396 | NFLPLTFS-0002078 |
| NFLPLTFS-0000715 | NFLPLTFS-0001397 | NFLPLTFS-0002079 |
| NFLPLTFS-0000716 | NFLPLTFS-0001398 | NFLPLTFS-0002080 |

| | | |
|---|---|---|
| NFLPLTFS-0000717 | NFLPLTFS-0001399 | NFLPLTFS-0002081 |
| NFLPLTFS-0000718 | NFLPLTFS-0001400 | NFLPLTFS-0002082 |
| NFLPLTFS-0000719 | NFLPLTFS-0001401 | NFLPLTFS-0002083 |
| NFLPLTFS-0000720 | NFLPLTFS-0001402 | NFLPLTFS-0002084 |
| NFLPLTFS-0000721 | NFLPLTFS-0001403 | NFLPLTFS-0002085 |
| NFLPLTFS-0000722 | NFLPLTFS-0001404 | NFLPLTFS-0002086 |
| NFLPLTFS-0000723 | NFLPLTFS-0001405 | NFLPLTFS-0002087 |
| NFLPLTFS-0000724 | NFLPLTFS-0001406 | NFLPLTFS-0002088 |
| NFLPLTFS-0000725 | NFLPLTFS-0001407 | NFLPLTFS-0002089 |
| NFLPLTFS-0000726 | NFLPLTFS-0001408 | NFLPLTFS-0002090 |
| NFLPLTFS-0000727 | NFLPLTFS-0001409 | NFLPLTFS-0002091 |
| NFLPLTFS-0000728 | NFLPLTFS-0001410 | NFLPLTFS-0002092 |
| NFLPLTFS-0000729 | NFLPLTFS-0001411 | NFLPLTFS-0002093 |
| NFLPLTFS-0000730 | NFLPLTFS-0001412 | NFLPLTFS-0002094 |
| NFLPLTFS-0000731 | NFLPLTFS-0001413 | NFLPLTFS-0002095 |
| NFLPLTFS-0000732 | NFLPLTFS-0001414 | NFLPLTFS-0002096 |
| NFLPLTFS-0000733 | NFLPLTFS-0001415 | NFLPLTFS-0002097 |
| NFLPLTFS-0000734 | NFLPLTFS-0001416 | NFLPLTFS-0002098 |
| NFLPLTFS-0000735 | NFLPLTFS-0001417 | NFLPLTFS-0002099 |
| NFLPLTFS-0000736 | NFLPLTFS-0001418 | NFLPLTFS-0002100 |
| NFLPLTFS-0000737 | NFLPLTFS-0001419 | NFLPLTFS-0002101 |
| NFLPLTFS-0000738 | NFLPLTFS-0001420 | NFLPLTFS-0002102 |
| NFLPLTFS-0000739 | NFLPLTFS-0001421 | NFLPLTFS-0002103 |
| NFLPLTFS-0000740 | NFLPLTFS-0001422 | NFLPLTFS-0002104 |
| NFLPLTFS-0000741 | NFLPLTFS-0001423 | NFLPLTFS-0002105 |
| NFLPLTFS-0000742 | NFLPLTFS-0001424 | NFLPLTFS-0002106 |
| NFLPLTFS-0000743 | NFLPLTFS-0001425 | NFLPLTFS-0002107 |
| NFLPLTFS-0000744 | NFLPLTFS-0001426 | NFLPLTFS-0002108 |
| NFLPLTFS-0000745 | NFLPLTFS-0001427 | NFLPLTFS-0002109 |
| NFLPLTFS-0000746 | NFLPLTFS-0001428 | NFLPLTFS-0002110 |
| NFLPLTFS-0000747 | NFLPLTFS-0001429 | NFLPLTFS-0002111 |
| NFLPLTFS-0000748 | NFLPLTFS-0001430 | NFLPLTFS-0002112 |
| NFLPLTFS-0000749 | NFLPLTFS-0001431 | NFLPLTFS-0002113 |
| NFLPLTFS-0000750 | NFLPLTFS-0001432 | NFLPLTFS-0002114 |
| NFLPLTFS-0000751 | NFLPLTFS-0001433 | NFLPLTFS-0002115 |
| NFLPLTFS-0000752 | NFLPLTFS-0001434 | NFLPLTFS-0002116 |
| NFLPLTFS-0000753 | NFLPLTFS-0001435 | NFLPLTFS-0002117 |
| NFLPLTFS-0000754 | NFLPLTFS-0001436 | NFLPLTFS-0002118 |
| NFLPLTFS-0000755 | NFLPLTFS-0001437 | NFLPLTFS-0002119 |
| NFLPLTFS-0000756 | NFLPLTFS-0001438 | NFLPLTFS-0002120 |
| NFLPLTFS-0000757 | NFLPLTFS-0001439 | NFLPLTFS-0002121 |
| NFLPLTFS-0000758 | NFLPLTFS-0001440 | NFLPLTFS-0002122 |
| NFLPLTFS-0000759 | NFLPLTFS-0001441 | NFLPLTFS-0002123 |
| NFLPLTFS-0000760 | NFLPLTFS-0001442 | NFLPLTFS-0002124 |
| NFLPLTFS-0000761 | NFLPLTFS-0001443 | NFLPLTFS-0002125 |
| NFLPLTFS-0000762 | NFLPLTFS-0001444 | NFLPLTFS-0002126 |

| | | |
|---|---|---|
| NFLPLTFS-0000763 | NFLPLTFS-0001445 | NFLPLTFS-0002127 |
| NFLPLTFS-0000764 | NFLPLTFS-0001446 | NFLPLTFS-0002128 |
| NFLPLTFS-0000765 | NFLPLTFS-0001447 | NFLPLTFS-0002129 |
| NFLPLTFS-0000766 | NFLPLTFS-0001448 | NFLPLTFS-0002130 |
| NFLPLTFS-0000767 | NFLPLTFS-0001449 | NFLPLTFS-0002131 |
| NFLPLTFS-0000768 | NFLPLTFS-0001450 | NFLPLTFS-0002132 |
| NFLPLTFS-0000769 | NFLPLTFS-0001451 | NFLPLTFS-0002133 |
| NFLPLTFS-0000770 | NFLPLTFS-0001452 | NFLPLTFS-0002134 |
| NFLPLTFS-0000771 | NFLPLTFS-0001453 | NFLPLTFS-0002135 |
| NFLPLTFS-0000772 | NFLPLTFS-0001454 | NFLPLTFS-0002136 |
| NFLPLTFS-0000773 | NFLPLTFS-0001455 | NFLPLTFS-0002137 |
| NFLPLTFS-0000774 | NFLPLTFS-0001456 | NFLPLTFS-0002138 |
| NFLPLTFS-0000775 | NFLPLTFS-0001457 | NFLPLTFS-0002139 |
| NFLPLTFS-0000776 | NFLPLTFS-0001458 | NFLPLTFS-0002140 |
| NFLPLTFS-0000777 | NFLPLTFS-0001459 | NFLPLTFS-0002141 |
| NFLPLTFS-0000778 | NFLPLTFS-0001460 | NFLPLTFS-0002142 |
| NFLPLTFS-0000779 | NFLPLTFS-0001461 | NFLPLTFS-0002143 |
| NFLPLTFS-0000780 | NFLPLTFS-0001462 | NFLPLTFS-0002144 |
| NFLPLTFS-0000781 | NFLPLTFS-0001463 | NFLPLTFS-0002145 |
| NFLPLTFS-0000782 | NFLPLTFS-0001464 | NFLPLTFS-0002146 |
| NFLPLTFS-0000783 | NFLPLTFS-0001465 | NFLPLTFS-0002147 |
| NFLPLTFS-0000784 | NFLPLTFS-0001466 | NFLPLTFS-0002148 |
| NFLPLTFS-0000785 | NFLPLTFS-0001467 | NFLPLTFS-0002149 |
| NFLPLTFS-0000786 | NFLPLTFS-0001468 | NFLPLTFS-0002150 |
| NFLPLTFS-0000787 | NFLPLTFS-0001469 | NFLPLTFS-0002151 |
| NFLPLTFS-0000788 | NFLPLTFS-0001470 | NFLPLTFS-0002152 |
| NFLPLTFS-0000789 | NFLPLTFS-0001471 | NFLPLTFS-0002153 |
| NFLPLTFS-0000790 | NFLPLTFS-0001472 | NFLPLTFS-0002154 |
| NFLPLTFS-0000791 | NFLPLTFS-0001473 | NFLPLTFS-0002155 |
| NFLPLTFS-0000792 | NFLPLTFS-0001474 | NFLPLTFS-0002156 |
| NFLPLTFS-0000793 | NFLPLTFS-0001475 | NFLPLTFS-0002157 |
| NFLPLTFS-0000794 | NFLPLTFS-0001476 | NFLPLTFS-0002158 |
| NFLPLTFS-0000795 | NFLPLTFS-0001477 | NFLPLTFS-0002159 |
| NFLPLTFS-0000796 | NFLPLTFS-0001478 | NFLPLTFS-0002160 |
| NFLPLTFS-0000797 | NFLPLTFS-0001479 | NFLPLTFS-0002161 |
| NFLPLTFS-0000798 | NFLPLTFS-0001480 | NFLPLTFS-0002162 |
| NFLPLTFS-0000799 | NFLPLTFS-0001481 | NFLPLTFS-0002163 |
| NFLPLTFS-0000800 | NFLPLTFS-0001482 | NFLPLTFS-0002164 |
| NFLPLTFS-0000801 | NFLPLTFS-0001483 | NFLPLTFS-0002165 |
| NFLPLTFS-0000802 | NFLPLTFS-0001484 | NFLPLTFS-0002166 |
| NFLPLTFS-0000803 | NFLPLTFS-0001485 | NFLPLTFS-0002167 |
| NFLPLTFS-0000804 | NFLPLTFS-0001486 | NFLPLTFS-0002168 |
| NFLPLTFS-0000805 | NFLPLTFS-0001487 | NFLPLTFS-0002169 |
| NFLPLTFS-0000806 | NFLPLTFS-0001488 | NFLPLTFS-0002170 |
| NFLPLTFS-0000807 | NFLPLTFS-0001489 | NFLPLTFS-0002171 |
| NFLPLTFS-0000808 | NFLPLTFS-0001490 | NFLPLTFS-0002172 |

| | | |
|---|---|---|
| NFLPLTFS-0000809 | NFLPLTFS-0001491 | NFLPLTFS-0002173 |
| NFLPLTFS-0000810 | NFLPLTFS-0001492 | NFLPLTFS-0002174 |
| NFLPLTFS-0000811 | NFLPLTFS-0001493 | NFLPLTFS-0002175 |
| NFLPLTFS-0000812 | NFLPLTFS-0001494 | NFLPLTFS-0002176 |
| NFLPLTFS-0000813 | NFLPLTFS-0001495 | NFLPLTFS-0002177 |
| NFLPLTFS-0000814 | NFLPLTFS-0001496 | NFLPLTFS-0002178 |
| NFLPLTFS-0000815 | NFLPLTFS-0001497 | NFLPLTFS-0002179 |
| NFLPLTFS-0000816 | NFLPLTFS-0001498 | NFLPLTFS-0002180 |
| NFLPLTFS-0000817 | NFLPLTFS-0001499 | NFLPLTFS-0002181 |
| NFLPLTFS-0000818 | NFLPLTFS-0001500 | NFLPLTFS-0002182 |
| NFLPLTFS-0000819 | NFLPLTFS-0001501 | NFLPLTFS-0002183 |
| NFLPLTFS-0000820 | NFLPLTFS-0001502 | NFLPLTFS-0002184 |
| NFLPLTFS-0000821 | NFLPLTFS-0001503 | NFLPLTFS-0002185 |
| NFLPLTFS-0000822 | NFLPLTFS-0001504 | NFLPLTFS-0002186 |
| NFLPLTFS-0000823 | NFLPLTFS-0001505 | NFLPLTFS-0002187 |
| NFLPLTFS-0000824 | NFLPLTFS-0001506 | NFLPLTFS-0002188 |
| NFLPLTFS-0000825 | NFLPLTFS-0001507 | NFLPLTFS-0002189 |
| NFLPLTFS-0000826 | NFLPLTFS-0001508 | NFLPLTFS-0002190 |
| NFLPLTFS-0000827 | NFLPLTFS-0001509 | NFLPLTFS-0002191 |
| NFLPLTFS-0000828 | NFLPLTFS-0001510 | NFLPLTFS-0002192 |
| NFLPLTFS-0000829 | NFLPLTFS-0001511 | NFLPLTFS-0002193 |
| NFLPLTFS-0000830 | NFLPLTFS-0001512 | NFLPLTFS-0002194 |

X.    **Appendix 3 – Data Development**

Counsel for Defendants provided two data files reflecting Plan applications and appeals

from January 1, 2018 through July 31, 2024, respectively, for disability benefits.[35]

**Appendix Table 3.1**
**Description of Data Received**

| Data | Description[36] | # of Records |
|---|---|---|
| Disability Applications | Application information exported from the NFL's V3 system, such that each record reflects a single application record. | 6,315 |
| Disability Appeals | Appeal information exported from the NFL's V3 system, such that each record reflects a single appeal record. | 1,733 |

The Applications data file contains applications described by the following fields:

**Appendix Table 3.2**
**Application Data**

| Field | Description[37] |
|---|---|
| Instance_ID | Unique record identifier |
| Person_ID | Unique player identifier |
| Date Application Received | Date the NFL received the application |
| Application Type | Application benefit type (*e.g.,* LOD, T&P) |
| Anon [1st-8th] Neutral Physician | Anonymized neutral physician associated with the application |
| Date [1st-8th] Neutral Appointment Scheduled | Date the NFL scheduled an appointment for the Player to meet with the neutral physician |
| [1st-8th] Scheduled Neutral Appointment Date | Date the appointment was scheduled for the neutral physician |
| [1st-8th] Actual Neutral Appointment Date | Date the Player saw the neutral physician |
| [1st-8th] Neutral Physician Report Received | Date the NFL received the neutral physician report |

---

[35] *See* Production Letter, p. 1.
[36] *Ibid.*
[37] *Ibid.,* pp. 1-2.

| Field | Description[37] |
|---|---|
| Joint Form Received Date | Date the NFL received joint form for NCD applications |
| Process Completed | Date Player Benefits Office received all documents from physicians and players |
| Presentation Date | Date the application is presented to the Committee |
| DICC Decision Date | Date the final decision is determined by the Committee |
| Letter Decision Date | Date the decision letter is sent to the Player, considered to be date that the case is closed |
| Application Status | Status of application (*e.g.,* Completed) |
| LOD Point Total | Number of points awarded for a LOD case |
| LOD Decision | Final decision for an LOD application (*e.g.,* Approve) |
| LOD Decision Type | Type of decision for an LOD application (*e.g.,* Medical) |
| T&P Decision | Final decision for a T&P application (*e.g.,* Approve) |
| T&P Decision Type | Type of decision for a T&P application (*e.g.,* Medical) |
| T&P Category | Category of T&P awarded (*e.g.,* Inactive A) |
| NCD Decision | Final decision for an NCD application (*e.g.,* Approve) |
| NCD Decision Type | Type of decision for an NCD application (*e.g.,* Medical) |
| NCD Category | Category of NCD awarded (*e.g.,* Mild) |

The Applications data file contains 6,315 applications in one of 11 Application Types. My analysis is limited to applications with a single benefit type (*i.e.,* LOD, NCD, T&P), which represented 89% (= 5,617 / 6,315) of all applications. Single benefit type applications are ones in which the applicant is seeking only a single type of benefit under the Plan, and the Neutral Physician is accordingly known to be conducting an evaluation for that specific type of benefit. Where an applicant applies for multiple types of benefits, Plan Data alone cannot be used to discern which benefit type or types a Neutral Physician was evaluating.[38] The applications related to Continuation, Reclass, or Earlier Effective Date (*e.g.,* T&P Reclass) were not considered as they relate to previous applications that had already been approved by a Neutral Physician and, therefore, are of a different nature.[39]

---

[38] *See* Vincent Decl. ¶ 41.
[39] *See* Production Letter, p. 4.

**Appendix Table 3.3**
**Summary of Application Types**

| Application Type | Description[40] | # of Applications | % of Total | Excluded from Review |
|---|---|---|---|---|
| LOD | Line of Duty | 2,161 | 34% | |
| T&P | Total & Permanent | 1,760 | 28% | |
| NCD | Neurocognitive | 1,696 | 27% | |
| LOD/NCD | Line of Duty and Neurocognitive | 200 | 3% | ✓ |
| NCD/T&P | Neurocognitive and Total & Permanent | 192 | 3% | ✓ |
| LOD/T&P | Line of Duty and Total & Permanent | 160 | 3% | ✓ |
| T&P Continuation | Player has already been approved for T&P but has to see Neutral Physicians periodically to confirm that the player still qualifies for T&P benefits. | 54 | 1% | ✓ |
| LOD/T&P/NCD | Line of Duty, Total & Permanent, and Neurocognitive | 52 | 1% | ✓ |
| T&P Reclass | T&P benefits can be granted for (in descending order of severity/payout): (1) Active Football, (2) Active Non-football, (3) Inactive A, and (4) Inactive B. A Player may appeal the granted category in order to request a higher-paying category (*e.g.*, granted for Inactive B, but requesting for Inactive A). | 26 | <1% | ✓ |
| NCD Reclass | NCD benefits can be granted for: 1) Mild impairment or 2) Moderate impairment (in increasing order of severity/payout). A Player may appeal the granted level in order to request a higher-paying category (*e.g.*, granted for Mild, but requesting for Moderate). | 12 | <1% | ✓ |
| Earlier Effective Date | Player has been approved but wants benefit payments to be effective on an earlier date than was granted. | 2 | <1% | ✓ |
| **Total:** | | **6,315** | **100%** | |

---

[40] *See* Production Letter, p. 4

Of the 5,617 applications with a single benefit type, I further limited my analysis to those that have a "Medical" decision type, which represented 85% of single benefit applications (= 4,788 / 5,617). The data was limited in this way as Neutral Physician reports play a role in the final decision making by the Committee for Medical decisions (vs. other Decision Types where a decision is due to non-medical issues).[41]

**Appendix Table 3.4**
**Summary of Application Decision Types**

| Decision Type | Description[42] | LOD | | NCD | | T&P | | Exclude |
|---|---|---|---|---|---|---|---|---|
| | | # of Apps. | % of Total | # of Apps. | % of Total | # of Apps. | % of Total | |
| Medical | Medical Decision | 1,946 | 90% | 1,512 | 89% | 1,330 | 76% | |
| Administrative | Administrative Decision | 186 | 9% | 157 | 9% | 166 | 9% | ✓ |
| FTC | Failure to Comply (Administrative Decision) | 23 | 1% | 17 | 1% | 11 | 1% | ✓ |
| MDTB | Medical Director Tie Break (Medical Decision)[43] | 5 | <1% | 5 | <1% | 33 | 2% | ✓ |
| Deemed or Deeemeed | Administrative Denial | 1 | <1% | 5 | <1% | 5 | <1% | ✓ |
| SSA | Social Security Administration (Administrative Decision) | 0 | <1% | 0 | <1% | 215 | 12% | ✓ |
| **Total:** | | **2,161** | **100%** | **1,696** | **100%** | **1,760** | **100%** | |

---

[41] *Ibid.,* pp. 4-5.
[42] *Ibid.*
[43] The decision is made by the NFLBPO's Medical Director who may be brought in as a "tie breaker" if one Neutral Physician finds a player meets the medical criteria to qualify for a benefit, and another finds the player does not meet the criteria, or if the Neutral Physician reports are unclear. As such, these decisions have been excluded from the analysis. *See* Vincent Decl. ¶ 17.

Of the 4,788 Medical single benefit applications, the 19 applications that do not have any anonymized physicians listed are excluded.[44]  The final number of applications whose encounters are considered are 4,769 (1,936 LOD; 1,324 NCD; 1,409 T&P).

**Appendix Table 3.5**
**Summary of Included Applications by Application and Decision Type**

| Application & Decision Type | # of Applications | No Physician Listed | Applications Considered |
|---|---|---|---|
| LOD Medical | 1,946 | 10 | 1,936 |
| NCD Medical | 1,512 | 3 | 1,509 |
| T&P Medical | 1,330 | 6 | 1,324 |
| Total: | **4,788** | **19** | **4,769** |

To determine the encounters for each application, I then pivoted the 4,769 relevant applications, converting the columns into rows, such that there would be as many records as there are anonymized physicians listed.[45]  For example, an application record with three listed anonymized physicians, would now have three encounter records.  The 4,769 applications are pivoted to a total of 7,382 encounters.

**Appendix Table 3.6**
**Summary of Included Applications and Encounters by Application and Decision Type**

| Application & Decision Type | # of Applications | # of Encounters |
|---|---|---|
| LOD Medical | 1,936 | 2,051 |
| NCD Medical | 1,509 | 3,031 |
| T&P Medical | 1,324 | 2,300 |
| Total: | **4,769** | **7,382** |

---

[44] There are four applications that do not have any anonymized physician listed in the Neutral Physician fields (*e.g.*, Anon 1st Neutral Physician), but do have subsequent dates.  These records have been excluded as I am unable to attribute these records to specific physicians for statistical testing.

[45] I pivoted each application by the number of physician columns (8), such that each application turns into 8 records.  Then, I removed records where there was no anonymized physician listed in the Anon Neutral Physician field.  Only records with at least an anonymized physician listed were considered encounters.

The table above includes two types of encounters that I detail in Appendix Table 3.7, below.  First, there are 37 application encounters in which the date fields Actual Appointment Date and Report Received are missing.  As indicated in the Vincent Declaration, the Plan Data contains records of physician encounters, and so I include these 37 encounters (out of a total of 7,382, or 0.5%) as a conservative inclusion of all encounter data available to me.  Removing these encounters has no impact on the conclusions of my chi-squared tests.  Second, there are 12 application encounters which appear to be duplicate encounters, in the sense that one physician is listed twice on an application.  Even if only one encounter by a physician took place for the application, physicians are still compensated through no-show fees, so including it addresses the Amended Complaint's allegations of a positive relationship between compensation and denial rates.

Nevertheless, in the LOD Application Type, the pair of potential duplicate encounters (one approval and one denial) are associated with a physician in the Above Median and 2nd and 4th quartiles, respectively, offering effectively no change in the distribution of denials. Removing these potential duplicates has no impact on the conclusions of my chi-squared tests.

In the NCD Application Type, all 8 potential duplicates are denials and 7 of them are associated with Above Median physicians.  With respect to quartiles, 1 is in the 2nd Quartile, 2 are in the 3rd Quartile, and 5 are in the 4th Quartile. Hence, including these encounters is a conservative decision.  Removing these potential duplicates has no impact on the conclusions of my chi-squared tests.

Finally, in the T&P Application Type, all 2 potential duplicates are denials, and both are associated with physicians in the Above Median and 4th Quartile groups.  Hence, including these encounters is a conservative decision. Removing these potential duplicates has no impact on the

54

conclusions of my chi-squared tests.

**Appendix Table 3.7**
**Summary of Included Application Encounters without an Actual Appointment Date or**
**Neutral Physician Report Date**

| Application Encounters | # of Approvals | # of Denials | Total |
|---|---|---|---|
| Encounters without both an indicated Actual Neutral Appointment Date and Neutral Physician Report Received date | | | |
| LOD Medical | 17 | 3 | 20 |
| NCD Medical | 3 | 2 | 5 |
| T&P Medical | 3 | 9 | 12 |
| **Subtotal:** | **23** | **14** | **37** |
| | | | |
| Duplicate Encounter: An encounter is a duplicate if a physician is listed more than once on a single application | | | |
| LOD Medical | 1 | 1 | 2 |
| NCD Medical | 0 | 8 | 8 |
| T&P Medical | 0 | 2 | 2 |
| **Subtotal:** | **1** | **11** | **12** |
| | | | |
| Note: Encounters that are both duplicated and without an Actual Neutral Appointment Date and Neutral Physician Report Received Date | | | **(2)** |
| **Total:** | | | **47** |
| 47 encounters represent 0.6% of 7,382 total encounters | | | |

The steps described below were performed in the R programming language to build a database of encounters for each Application Type. The code to generate the three application databases is included in this Declaration as Appendix 6.

**Appendix Table 3.8**
**Summary of Applications Review**

| Step | Explanation | # of Applications | # of Encounters |
|---|---|---|---|
| | Initial Application Data | 6,315 | |
| 1 | Exclude application types that are not single benefit types (*i.e.,* LOD, NCD, T&P) | 5,617 | |
| 2 | Exclude non-medical decisions | 4,788 | |
| 3 | Exclude applications without any anonymized physician names listed | 4,769 | |
| 4 | Pivot the application records to create, for each application, as many records as there are anonymized physician names listed. | 4,769 | 7,382 |
| 5 | Create three separate databases of encounters, one for each Application Type. | | |
| 5a | LOD Database: Filter encounters by Application Type = LOD | 1,936 | 2,051 |
| 5b | NCD Database: Filter encounters by Application Type = NCD | 1,509 | 3,031 |
| 5c | T&P Database: Filter encounters by Application Type = T&P | 1,324 | 2,300 |

The Appeals data file contains appeals described by the following fields:

**Appendix Table 3.9**
**Summary of Appeals Data**

| Field | Description[46] |
|---|---|
| Instance_ID | Unique record identifier |
| Person_ID | Unique Player identifier |
| Date Appeal Received | Date the NFL received the appeal |
| Appeal Type | Appeal benefit type (*e.g.,* LOD, T&P) |
| Anon [1st-8th] Neutral Physician | Anonymized neutral physician associated with the appeal |
| Date [1st-8th] Neutral Appointment Scheduled | Date the NFL scheduled an appointment for the Player to meet with the neutral physician |
| [1st-8th] Scheduled Neutral Appointment Date | Date the appointment was scheduled for the neutral physician |
| [1st-8th] Actual Neutral Appointment Date | Date the Player saw the neutral physician |

---

[46] *See* Production Letter pp. 2-3.

| Field | Description[46] |
|---|---|
| [1st-8th] Neutral Physician Report Received | Date the NFL received the neutral physician report |
| Joint Form Received Date | Date the NFL received joint form for NCD applications |
| Anon [1st-4th] MAP Physician | Anonymized MAP physician associated with the appeal |
| Date [1st-4th] MAP Appointment Scheduled | Date the NFL scheduled an appointment for the Player to meet with the MAP physician |
| [1st-4th] Scheduled MAP Appointment Date | Date the appointment was scheduled for the MAP physician |
| [1st-4th] Actual MAP Appointment Date | Date the Player saw the MAP physician |
| [1st-4th] MAP Physician Report Received | Date the NFL received the MAP physician report |
| Process Completed | Date Player Benefits Office received all documents from physicians and players |
| Presentation Date | Date the application is presented to the Board |
| Board Decision Date | Date the final decision is determined by the Board |
| Letter Decision Date | Date the decision letter is sent to the Player, considered to be date that the case is closed |
| Appeal Status | Status of appeal (*e.g.,* Completed) |
| LOD Point Total | Number of points awarded for a LOD case |
| LOD Decision | Final decision for an LOD appeal (*e.g.,* Approve) |
| LOD Decision Type | Type of decision for an LOD appeal (*e.g.,* Medical) |
| T&P Decision | Final decision for a T&P appeal (*e.g.,* Approve) |
| T&P Decision Type | Type of decision for a T&P appeal (*e.g.,* Medical) |
| T&P Category | Category of T&P awarded (*e.g.,* Inactive A) |
| NCD Decision | Final decision for an NCD appeal (*e.g.,* Approve) |
| NCD Decision Type | Type of decision for an NCD appeal (*e.g.,* Medical) |
| NCD Category | Category of NCD awarded (*e.g.,* Mild) |

The Appeals data file contains 1,733 appeals in one of 13 Appeal Types. My analysis is limited to appeals with a single benefit type (*i.e.,* LOD, NCD, T&P), which represented 90% (= 1,560 / 1,733) of all appeals.  Single benefit type applications are ones in which the applicant is seeking only a single type of benefit under the Plan, and the physician is accordingly known to be conducting an evaluation for that specific type of benefit.  Where an applicant applies for multiple types of benefits, Plan Data alone cannot be used to discern which benefit type or types

a physician was evaluating.[47]  The appeals related to Continuation, Reclass, or Earlier Effective Date (*e.g.,* T&P Reclass) were not considered as they relate to previous applications that had already been approved by a neutral physician and, therefore, are of a different nature.

---

[47] *See* Vincent Decl. ¶ 41.

**Appendix Table 3.10**
**Summary of Appeal Types**

| Appeal Type | Description[48] | # of Appeals | % of Total | Excluded from Review |
|---|---|---|---|---|
| LOD | Line of Duty | 725 | 42% | |
| T&P | Total & Permanent | 436 | 25% | |
| NCD | Neurocognitive | 399 | 23% | |
| LOD/NCD | Line of Duty and Neurocognitive | 39 | 2% | ✓ |
| T&P Reclass | T&P benefits can be granted for (in descending order of severity/payout): (1) Active Football, (2) Active Non-football, (3) Inactive A, and (4) Inactive B. A Player may appeal the granted category in order to request a higher-paying category (*e.g.*, granted for Inactive B, but requesting for Inactive A). | 37 | 2% | ✓ |
| NCD/T&P | Neurocognitive and Total & Permanent | 30 | 2% | ✓ |
| LOD/T&P | Line of Duty and Total & Permanent | 22 | 1% | ✓ |
| NCD Reclass | NCD benefits can be granted for: 1) Mild impairment or 2) Moderate impairment (in increasing order of severity/payout). A Player may appeal the granted level in order to request a higher-paying category (*e.g.*, granted for Mild, but requesting for Moderate). | 15 | 1% | ✓ |
| T&P Continuation | Player has already been approved for T&P but has to see Neutral Physicians periodically to confirm that they still qualify for T&P benefits. | 12 | 1% | ✓ |
| LOD/T&P/NCD | Line of Duty, Total & Permanent, and Neurocognitive | 6 | <1% | ✓ |
| T&P Reclass & Earlier Effective Date | A Player may appeal the granted category in order to request a higher-paying category (*e.g.*, granted for Inactive B, but requesting for Inactive A), and an earlier effective date. | 5 | <1% | ✓ |
| Earlier Effective Date | Player has been approved but wants benefit payments to be effective on an earlier date than was granted. | 5 | <1% | ✓ |
| Point System Reconsideration | LOD point system threshold was updated from 10 to 9 points. Players at 9 points were re-evaluated. | 2 | <1% | ✓ |
| **Total:** | | **1,733** | **100%** | |

---

[48] *See* Production Letter pp. 3-4.

Of the 1,733 appeals with a single benefit type, I further limit to those that have a "Medical" decision type, which represented 88% of single benefit appeals (= 1,380 / 1,560). Physician reports play a role in the final decision making by the Board for Medical decisions (vs. other Decision Types where a decision is due to non-medical issues).[49]

**Appendix Table 3.11**
**Summary of Appeal Decision Types**

| Decision Type | Description[50] | LOD | | NCD | | T&P | | Exclude |
|---|---|---|---|---|---|---|---|---|
| | | # of Apps. | % of Total | # of Apps. | % of Total | # of Apps. | % of Total | |
| Medical | Medical Decision | 664 | 92% | 340 | 85% | 376 | 86% | |
| Administrative | Administrative Decision | 52 | 7% | 47 | 12% | 45 | 10% | ✓ |
| FTC | Failure to Comply (Administrative Decision) | 8 | 1% | 12 | 3% | 5 | 1% | ✓ |
| SSA | Social Security Administration (Administrative Decision) | 0 | 0% | 0 | 0% | 9 | 2% | ✓ |
| MDTB | Medical Director Tie Break (Medical Decision)[51] | 0 | 0% | 0 | 0% | 1 | <1% | ✓ |
| [Blank] | | 1 | <1% | 0 | 0% | 0 | 0% | ✓ |
| **Total:** | | **725** | **100%** | **399** | **100%** | **436** | **100%** | |

Of the 1,380 Medical single benefit appeals, the 3 appeals that do not have any anonymized physicians listed are excluded. The final number of appeals whose encounters are considered are 1,377 (662 LOD; 340 NCD; 375 T&P).

---

[49] *Ibid.,* p. 4.
[50] *Ibid.*
[51] The decision is made by the NFLBPO's Medical Director who may be brought in as a "tie breaker" if one Neutral Physician finds a player meets the medical criteria to qualify for a benefit, and another finds the player does not meet the criteria, or if the Neutral Physician reports are unclear. As such, these decisions have been excluded from the analysis. (*See* Vincent Decl. ¶ 17.)

**Appendix Table 3.12**
**Summary of Included Appeals by Appeal and Decision Type**

| Appeal & Decision Type | # of Appeals | No Physician Listed | Appeals Considered |
|---|---|---|---|
| LOD Medical | 664 | 2 | 662 |
| NCD Medical | 340 | 0 | 340 |
| T&P Medical | 376 | 1 | 375 |
| **Total:** | **1,380** | **3** | **1,377** |

To determine the encounters for each appeal, I then pivoted the 1,377 relevant appeals, such that there would be as many records as there are physicians listed.[52]  For example, an appeal record with three listed physicians, would now have three encounter records. The 1,377 appeals are pivoted to a total of 3,213 encounters.

**Appendix Table 3.13**
**Summary of Included Appeals and Encounters by Appeal and Decision Type**

| Appeal & Decision Type | # of Appeals | # of Encounters |
|---|---|---|
| LOD Medical | 662 | 910 |
| NCD Medical | 340 | 819 |
| T&P Medical | 375 | 935 |
| **Total:** | **1,377** | **3,213** |

The table above includes two types of encounters that I detail in Appendix Table 3.14, below.

First, there are 13 appeal encounters in which the date fields Actual Appointment Date and Report Received are missing.  As indicated in the Vincent Declaration, the Plan Data contains records of physician encounters, and so I include these 13 encounters (out of a total of

---

[52] I pivoted each appeal by the number of physician columns (12), such that each appeal turns into 12 records. Then, I removed records where there was no anonymized physician listed in the Anon Neutral Physician or Anon MAP Physician field. Only records with at least an anonymized physician listed were considered encounters.

3,213, or 0.4%) as a conservative inclusion of all encounter data available to me.  Removing these encounters has no impact on the conclusions of my chi-squared tests.

Second, there is 1 appeal encounter which appears to be a duplicate encounter, in the sense that one physician is listed twice on an appeal.  Even if only one encounter by this physician took place on this appeal, physicians are still compensated through no-show fees, so including it addresses the Amended Complaint's allegations of a positive relationship between compensation and denial rates.  Nevertheless, this single potentially duplicate encounter is associated with a denial of T&P benefits attributed to a physician in the Above Median and 4th Quartile groups.  Hence, including this encounter conservatively increases the denial rate in those two physician groups.  Removing this potential duplicate has no impact on the conclusions of my chi-squared tests.

**Appendix Table 3.14**
**Summary of Included Appeal Encounters without an Actual Appointment Date or Physician Report Date**

| Appeal Encounters | # of Approvals | # of Denials | Total |
|---|---|---|---|
| Encounters without both an indicated Actual Appointment Date and Physician Report Received date | | | |
| LOD Medical | 0 | 4 | 4 |
| NCD Medical | 0 | 3 | 3 |
| T&P Medical | 1 | 5 | 6 |
| **Subtotal:** | **1** | **12** | **13** |
| | | | |
| Duplicate Encounter: An encounter is a duplicate if a physician is listed more than once on a single appeal | | | |
| LOD Medical | 0 | 0 | 0 |
| NCD Medical | 0 | 0 | 0 |
| T&P Medical | 0 | 1 | 1 |
| **Subtotal:** | **0** | **1** | **1** |
| | | | |
| **Total:** | | | **14** |
| 14 encounters represent 0.4% of 3,213 total encounters | | | |

The steps below were performed in the R programming language to build a database of encounters for each Appeal Type. The code to generate the three appeal databases is included in this Declaration as Appendix 6.

**Appendix Table 3.15**
**Summary of Appeal Analysis**

| Step | Explanation | # of Appeals | # of Encounters |
|------|-------------|-------------|-----------------|
|  | Initial Appeal Data | 1,733 |  |
| 1 | Exclude appeal types that are not single benefit types (*i.e.,* LOD, NCD, T&P) | 1,560 |  |
| 2 | Exclude non-medical decisions | 1,380 |  |
| 3 | Exclude appeals without any anonymized physician names listed | 1,377 |  |
| 4 | Pivot the appeal records to create, for each appeal, as many records as there are anonymized physician names listed. | 1,377 | 3,213 |
| 5 | Create three separate databases of encounters, one for each Appeal Type. |  |  |
| 5a | LOD Database: Filter encounters by Appeal Type = LOD | 662 | 910 |
| 5b | NCD Database: Filter encounters by Appeal Type = NCD | 340 | 819 |
| 5c | T&P Database: Filter encounters by Appeal Type = T&P | 375 | 935 |

XI.    **Appendix 4 – Supporting Tables for Chi-squared Calculations, Median-split**

**Appendix Table 4.1**
**Chi-squared Test of Independence: LOD Disability**
**Approvals and Denials against the Median of <u>Application</u> Encounters,**
**2018-2024**

|  |  | Approve | Deny | Total | Denial Rate |
|---|---|---|---|---|---|
| **Below Median** | Observed | 9 | 68 | 77 | |
|  | Expected | 32 | 45 | 77 | 88.3% |
|  | *χ2 term* | *15.5001* | *10.8167* | | |
|  |  |  |  |  |  |
| **Above Median** | Observed | 834 | 1,140 | 1,974 | |
|  | Expected | 811 | 1,163 | 1,974 | 57.8% |
|  | *χ2 term* | *0.6046* | *0.4219* | | |
|  | **Total** | 843 | 1,208 | 2,051 | |

| χ2 Test of Independence | |
|---|---|
| $H_0$ | Independence |
| χ2 Statistic | 27.3434 |
| d.f. | 1 |
| *p*-value | 0.0000 |

1.    The chi-squared test of independence is based on a "contingency table," as presented in Appendix Table 4.1, above.  I construct the contingency table from the data: scattering the total 2,051 encounters into the four cells of the two-dimensional contingency table. There are 77 encounters in the Below Median group, 9 of which are Approval encounters and 68 are Denial encounters.  Similarly, there are 1,974 encounters in the Above Median group, 834 of which are Approval encounters and 1,140 are Denial encounters.  If the Below and Above Median groups were independent of (*i.e.*, not related to) approvals and denials, we would expect to see the encounters scattered proportionally across both groups.

2.    For example, the overall approval rate is (9 + 834)/2,051 = 41.1%, and so we would expect to see 41.1% * 77 = 32 approval encounters in the Below median group, not 9.

64

Similarly, we would expect to see 41.1% * 1,974 = 811 approval encounters in the Above Median group, not 834 as observed.  These differences between observed and expected frequencies are assessed via the chi-squared statistic term of each cell in the contingency table.  I calculate a chi-squared term of 15.5001, which is equal to the absolute difference between observed less expected, then applying the -0.5 Yates' continuity correction, squared, then divided by expected.  To calculate the chi-squared statistic, I sum the chi-squared terms.  At a desired significance level of 0.05, the critical value of the chi-squared statistic with one degree of freedom is 3.841.  Since the chi-squared statistic of 27.3434 is greater than 3.841, I reject the hypothesis of independence, and conclude that there is an association between high-encounter and low-encounter physicians with respect to denials, but in the direction opposite to Plaintiff's assertion.  The same steps are performed with the chi-squared tests throughout Appendices 4 and 5.

**Appendix Table 4.2**
**Chi-squared Test of Independence: LOD Disability**
**Approvals and Denials against Median of <u>Appeal</u> Encounters,**
**2018-2024**

|  |  | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **Below Median** | Observed | 15 | 28 | 65% |
|  | Expected | 18 | 25 |  |
|  | *χ2 term* | *0.3007* | *0.2127* |  |
|  |  |  |  |  |
| **Above Median** | Observed | 362 | 505 | 58% |
|  | Expected | 359 | 508 |  |
|  | *χ2 term* | *0.0149* | *0.0105* |  |

| χ2 Test of Independence | |
|---|---|
| $H_0$ | Independence |
| χ2 Statistic | 0.5388 |
| d.f. | 1 |
| *p*-value | 0.4629 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 4.3**
**Chi-squared Test of Independence: NCD Disability**
**Approvals and Denials against Median of <u>Application</u> Encounters,**
**2018-2024**

|  |  | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **Below Median** | Observed | 113 | 451 | 80.0% |
|  | Expected | 126 | 438 |  |
|  | *χ2 term* | *1.2705* | *0.3661* |  |
|  |  |  |  |  |
| **Above Median** | Observed | 565 | 1,902 | 77.1% |
|  | Expected | 552 | 1,915 |  |
|  | *χ2 term* | *0.2905* | *0.0837* |  |

| χ2 Test of Independence | |
|---|---|
| $H_0$ | Independence |
| χ2 Statistic | 2.0107 |
| d.f. | 1 |
| *p*-value | 0.1562 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 4.4**
**Chi-squared Test of Independence: NCD Disability**
**Approvals and Denials against Median of <u>Appeal</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **Below Median** | Observed | 2 | 70 | |
| | Expected | 10 | 62 | 97% |
| | *χ2 term* | *5.3166* | *0.8249* | |
| | | | | |
| **Above Median** | Observed | 108 | 639 | |
| | Expected | 100 | 647 | 86% |
| | *χ2 term* | *0.5124* | *0.0795* | |

| χ2 Test of Independence | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 6.7335 |
| d.f. | 1 |
| *p*-value | 0.0095 |

The chi-squared test of independence shows an association between physicians' frequency of encounters and denial rate, but in the direction opposite to Plaintiffs' assertions.

**Appendix Table 4.5**
**Chi-squared Test of Independence: T&P Disability**
**Approvals and Denials against Median of <u>Application</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **Below Median** | Observed | 95 | 107 | |
| | Expected | 89 | 113 | 53.0% |
| | *χ2 term* | *0.3906* | *0.3053* | |
| | | | | |
| **Above Median** | Observed | 914 | 1,184 | |
| | Expected | 920 | 1,178 | 56.4% |
| | *χ2 term* | *0.0376* | *0.0294* | |

| χ2 Test of Independence | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 0.7629 |
| d.f. | 1 |
| *p*-value | 0.3824 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 4.6**
**Chi-squared Test of Independence: T&P Disability**
**Approvals and Denials against Median of <u>Appeal</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **Below Median** | Observed | 23 | 88 | |
| | Expected | 27 | 84 | 79% |
| | χ2 term | *0.4133* | *0.1317* | |
| | | | | |
| **Above Median** | Observed | 203 | 621 | |
| | Expected | 199 | 625 | 75% |
| | χ2 term | *0.0557* | *0.0177* | |

| χ2 Test of Independence | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 0.6184 |
| d.f. | 1 |
| *p*-value | 0.4316 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

XII.    **Appendix 5 – Supporting Tables for Chi-squared Calculations, Quartile-split**

**Appendix Table 5.1**
**Chi-squared Test of Independence: LOD Disability**
**Approvals and Denials against Quartiles of <u>Application</u> Encounters**
**For Physicians with at Least Four (4) <u>Application</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 4 | 55 | |
| | Expected | 25 | 34 | 93% |
| | *χ2 term* | *17.3228* | *12.4521* | |
| | | | | |
| **2nd Quartile** | Observed | 70 | 158 | |
| | Expected | 95 | 133 | 69% |
| | *χ2 term* | *6.7404* | *4.8452* | |
| | | | | |
| **3rd Quartile** | Observed | 234 | 321 | |
| | Expected | 232 | 323 | 58% |
| | *χ2 term* | *0.0155* | *0.0111* | |
| | | | | |
| **4th Quartile** | Observed | 528 | 629 | |
| | Expected | 484 | 673 | 54% |
| | *χ2 term* | *4.0251* | *2.8934* | |

| **χ2 Test of Independence** | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 48.3056 |
| d.f. | 3 |
| *p*-value | 0.0000 |

The chi-squared test of independence shows an association between physicians' frequency of encounters and denial rate, but in the direction opposite to Plaintiffs' assertions.

**Appendix Table 5.2**
**Chi-squared Test of Independence: LOD Disability**
**Approvals and Denials against Quartiles of <u>Appeal</u> Encounters**
**For Physicians with at Least Four (4) <u>Appeal</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 26 | 29 | |
| | Expected | 23 | 32 | 52.7% |
| | χ2 term | *0.3323* | *0.2428* | |
| | | | | |
| **2nd Quartile** | Observed | 29 | 65 | |
| | Expected | 40 | 54 | 69.1% |
| | χ2 term | *2.8787* | *2.1037* | |
| | | | | |
| **3rd Quartile** | Observed | 78 | 148 | |
| | Expected | 95 | 131 | 65.5% |
| | χ2 term | *3.1810* | *2.3245* | |
| | | | | |
| **4th Quartile** | Observed | 228 | 252 | |
| | Expected | 203 | 277 | 52.5% |
| | χ2 term | *3.1667* | *2.3141* | |

| χ2 Test of Independence | |
|---|---|
| H0 | Independence |
| χ2 Statistic | 16.5437 |
| d.f. | 3 |
| *p*-value | 0.0009 |

The chi-squared test of independence shows an association between physicians' frequency of encounters and denial rate, but in the direction opposite to Plaintiffs' assertions.

**Appendix Table 5.3**
**Chi-squared Test of Independence: NCD Disability**
**Approvals and Denials against Quartiles of <u>Application</u> Encounters**
**For Physicians with at Least Four (4) <u>Application</u> Encounters,**
**2018-2024**

|  |  | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 34 | 138 | |
| | Expected | 39 | 133 | 80% |
| | *χ2 term* | *0.5444* | *0.1574* | |
| | | | | |
| **2nd Quartile** | Observed | 103 | 392 | |
| | Expected | 111 | 384 | 79% |
| | *χ2 term* | *0.5820* | *0.1683* | |
| | | | | |
| **3rd Quartile** | Observed | 151 | 578 | |
| | Expected | 164 | 565 | 79% |
| | *χ2 term* | *0.9600* | *0.2776* | |
| | | | | |
| **4th Quartile** | Observed | 389 | 1233 | |
| | Expected | 364 | 1258 | 76% |
| | *χ2 term* | *1.7387* | *0.5028* | |

| χ2 Test of Independence | |
|---|---|
| $H_0$ | Independence |
| χ2 Statistic | 4.9313 |
| d.f. | 3 |
| *p*-value | 0.1769 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 5.4**
**Chi-squared Test of Independence: NCD Disability**
**Approvals and Denials against Quartiles of <u>Appeal</u> Encounters**
**For Physicians with at Least Four (4) <u>Appeal</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 4 | 57 | 93.4% |
| | Expected | 9 | 52 | |
| | *χ2 term* | *2.4443* | *0.4000* | |
| | | | | |
| **2nd Quartile** | Observed | 11 | 82 | 88.2% |
| | Expected | 13 | 80 | |
| | *χ2 term* | *0.3308* | *0.0541* | |
| | | | | |
| **3rd Quartile** | Observed | 21 | 151 | 87.8% |
| | Expected | 24 | 148 | |
| | *χ2 term* | *0.4209* | *0.0689* | |
| | | | | |
| **4th Quartile** | Observed | 73 | 376 | 83.7% |
| | Expected | 63 | 386 | |
| | *χ2 term* | *1.5365* | *0.2515* | |

| χ2 Test of Independence | |
|---|---|
| $H_0$ | Independence |
| χ2 Statistic | 5.5070 |
| d.f. | 3 |
| *p*-value | 0.1382 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 5.5**
**Chi-squared Test of Independence: T&P Disability**
**Approvals and Denials against Quartiles of <u>Application</u> Encounters**
**For Physicians with at Least Four (4) <u>Application</u> Encounters,**
**2018-2024**

| | | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 49 | 79 | 62% |
| | Expected | 55 | 73 | |
| | *χ2 term* | *0.7338* | *0.5595* | |
| | | | | |
| **2nd Quartile** | Observed | 93 | 144 | 61% |
| | Expected | 103 | 134 | |
| | *χ2 term* | *0.8857* | *0.6753* | |
| | | | | |
| **3rd Quartile** | Observed | 183 | 238 | 57% |
| | Expected | 182 | 239 | |
| | *χ2 term* | *0.0041* | *0.0032* | |
| | | | | |
| **4th Quartile** | Observed | 638 | 802 | 56% |
| | Expected | 623 | 817 | |
| | *χ2 term* | *0.3629* | *0.2767* | |

| χ2 Test of Independence | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 3.5013 |
| d.f. | 3 |
| *p*-value | 0.3206 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

**Appendix Table 5.6**
**Chi-squared Test of Independence: T&P Disability**
**Approvals and Denials against Quartiles of <u>Appeal</u> Encounters**
**For Physicians with at Least Four (4) <u>Appeal</u> Encounters,**
**2018-2024**

|  |  | Approve | Deny | Denial Rate |
|---|---|---|---|---|
| **1st Quartile** | Observed | 13 | 52 | 80.0% |
| | Expected | 16 | 49 | |
| | *χ2 term* | *0.4923* | *0.1579* | |
| | | | | |
| **2nd Quartile** | Observed | 26 | 110 | 80.9% |
| | Expected | 33 | 103 | |
| | *χ2 term* | *1.4975* | *0.4804* | |
| | | | | |
| **3rd Quartile** | Observed | 42 | 122 | 74.4% |
| | Expected | 40 | 124 | |
| | *χ2 term* | *0.1178* | *0.0378* | |
| | | | | |
| **4th Quartile** | Observed | 124 | 355 | 74.1% |
| | Expected | 116 | 363 | |
| | *χ2 term* | *0.5037* | *0.1616* | |

| χ2 Test of Independence | |
|---|---|
| H$_0$ | Independence |
| χ2 Statistic | 3.4489 |
| d.f. | 3 |
| *p*-value | 0.3274 |

The chi-squared test of independence shows no association between physicians' frequency of encounters and denial rate.

74

**XIII.   Appendix 6 – R Scripts**

      **A.**     **R Script for Applications Database**

PRODUCED IN NATIVE FORM

      **B.**     **R Script for Appeals Database**

PRODUCED IN NATIVE FORM

      **C.**     **R Script for Overall Approval Rates**

PRODUCED IN NATIVE FORM