# EXHIBIT B



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email

January 22, 2021

Mr. Daniel Loper

Re:   **NFL Player Disability & Neurocognitive Benefit Plan**
      **Initial Decision by the Disability Initial Claims Committee**

Dear Mr. Loper:

On January 22, 2021, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your application for line-of-duty disability ("LOD") benefits. The Committee denied your application. This letter explains the Committee's decision and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

### Discussion

Your application was received on March 3, 2020 and was based solely on orthopedic impairments. You submitted medical records with your application, including operative reports, diagnostic imaging studies, Club records, and neutral physicians' reports pertaining to your prior LOD application. You then attended an examination with Plan neutral orthopedist Dr. David Apple.

On January 22, 2021, the Committee considered your LOD application, the other materials in your file, and the report from Dr. Apple.

Plan Section 5.1(b) states, in part, that to qualify for LOD benefits, at least one Plan neutral physician must find that you have a "substantial disablement" "arising out of League football activities." For orthopedic impairments, you have a substantial disablement if your impairments rate ten or more points using the Point System for Orthopedic Impairments (Plan Section 5.5(a)(4)(B); Appendix A). Dr. Apple rated your impairments at three points under the Point System for Orthopedic Impairments. Because no Plan physician reported that you have a substantial disablement, you do not meet the threshold eligibility requirement of Plan Section 5.1(b). In addition, the medical records you submitted with your application do not support a finding of substantial disablement within the meaning of the Plan, and those records were taken into consideration by Dr. Apple when he calculated your points under the Point System. The Committee thus denied your application for LOD benefits.

### Appeal Rights

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decision. You may appeal the Committee's decision to the Plan's Disability Board by filing a

Mr. Daniel Loper
January 22, 2021
Page 2

written request for review with the Disability Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents, and any other information that you believe supports your appeal. The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the Plan's terms. The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document, which can also be found at www.nflplayerbenefits.com. Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

*Emily Parks*

Emily Parks
Benefits Coordinator
On behalf of the Disability Initial Claims Committee

Enclosure

cc: Sam Katz, Esquire

---

To receive assistance in these languages, please call:

SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

# Relevant Plan Provisions

**5.1** **Eligibility**. Effective January 1, 2015, a Player will receive monthly line-of-duty disability benefits from this Plan in the amount described in Section 5.2 if and only if all of the conditions in (a), (b), (c), (d), and (e) below are met:

(a) The Player is not an Active Player.

(b) At least one Plan neutral physician selected pursuant to Section 5.4(b) below must find that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)). If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive line-of-duty disability benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(c) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 5.4(b) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).

(d) The Player satisfies the other requirements of this Article 5 or Article 6 of the Bert Bell/Pete Rozelle Plan, as appropriate.

(e) The Player is not receiving line-of-duty disability benefits from the Bert Bell/Pete Rozelle Plan pursuant to Article 6 of that plan.

**5.4** **Procedures**.

(b) <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for line-of-duty benefits, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination required by the Plan will not be entitled to any line-of-duty disability benefits under this Article. If a Player fails to attend an examination scheduled by the Plan, his application for line-of-duty disability benefits will be denied, unless the Player provided at least two business days advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's

exam if two business days' advance notice is provided. The Player's application for line-of-duty disability benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the Plan medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**5.5  Definitions**.

(a) A "substantial disablement" is a "permanent" disability that:

(1) Results in a 50% or greater loss of speech or sight; or

(2) Results in a 55% or greater loss of hearing; or

(3) Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system; or

(4) For orthopedic impairments,

(A) With respect to applications received prior to January 1, 2015, using the American Medical Association *Guides to the Evaluation of Permanent Impairment* (Fifth Edition, Chicago, IL) ("AMA Guides"), is (a) a 38% or greater loss of use of the entire lower extremity; (b) a 23% or greater loss of use of the entire upper extremity; (c) an impairment to the cervical or thoracic spine that results in a 25% or greater whole body impairment; (d) an impairment to the lumbar spine that results in a 20% or greater whole body impairment; or (e) any combination of lower extremity, upper extremity, and spine impairments that results in a 25% or greater whole body impairment. In accordance with the AMA Guides, up to three percentage points may be added for excess pain in each category above ((a) through (e)). The range of motion test will not be used to evaluate spine impairments.

(B) With respect to applications received on and after January 1, 2015, is rated at least 10 points, using the Point System set forth in Appendix A, Version 2 to this Plan. Surgeries, injuries, treatments, and medical procedures that occur after a Player's application deadline in Section 5.4(a) will not receive points and will be disregarded by the Committee and Board.

(C) For each application denied because of insufficient points by the Disability Initial Claims Committee or Disability Board on or before April

Confidential Information                                                                                         NFL_ALFORD-0001236

> 1, 2016 under the original version of Appendix A, the Disability Initial Claims Committee or the Disability Board, as the case may be, will reconsider whether the Player qualifies for the benefit under Appendix A, Version 2 using the same administrative record as in existence when the benefit was originally denied.

(b) A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(c) "Arising out of League football activities" means a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities. "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities.

The introduction to **Appendix A, Version 2** provides this overview of the **Point System** referenced in Section 5.5(a)(4)(B):

> This Point System for Orthopedic Impairments ("Point System") is used to determine whether a Player has a "substantial disablement" within the meaning of Plan Section 5.5(a)(4)(B). The Point System assigns points to each orthopedic impairment recognized under the Plan. A Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment, but only where the Player's orthopedic impairment arose out of League football activities, and the impairment has persisted or is expected to persist for at least 12 months from the date of its occurrence, excluding any reasonably possible recovery period.
>
> A Player is awarded points only if his orthopedic impairment is documented according to the following rules:
>
> 1. A Player is awarded points for documented surgeries, injuries, and degenerative joint disease only if they are related to League football activities.
>
> 2. A Player is awarded points for a surgical procedure if the record includes an operative report for the qualifying procedure or if NFL Club records document the procedure. Surgical procedures reported through third party evaluations, such as independent medical examinations for workers' compensation, should not be used unless corroborating evidence is available to confirm the procedure and its relationship to League football activities.
>
> 3. Points are awarded for symptomatic soft tissue injuries where the injury is documented and there are appropriate, consistent clinical findings that are symptomatic on the day of exam. For example, AC joint injuries must be

documented in medical records and be symptomatic on examination, with appropriate physical findings, to award points.

4. If an injury or surgery is not listed in the Point System, no points should be awarded.

5. Medical records, medical history, and the physical examination must correlate before points can be awarded.

6. If a lateral clavicle resection is given points, additional points cannot be awarded if the AC joint is still symptomatic, such as with AC joint inflammation or shoulder instability.

7. Moderate or greater degenerative changes must be seen on x-ray to award points (i.e., MRI findings do not count).

8. Players must have moderate or greater loss of function that significantly impacts activities of daily living, or ADLs, to get points.

9. Cervical and lumbosacral spine injuries must have a documented relationship to League football activities, with appropriate x-ray findings, MRI findings, and/or EMG findings to be rated.

10. In cases where an injury is treated surgically, points are awarded for the surgical treatment/repair only, and not the injury preceding the surgical treatment/repair. For example, a Player may receive points for "S/P Pectoralis Major Tendon Repair," and if so he will not receive additional points for the "Pectoralis Major Tendon Tear" that led to the surgery.

11. As indicated in the Point System Impairment Tables, some injuries must be symptomatic on examination to merit an award of points under the Point System.

12. To award points for a subsequent procedure on the same joint/body part, the Player must recover from the first procedure and a new injury must occur to warrant the subsequent procedure. Otherwise, a revise/redo of a failed procedure would be the appropriate impairment rating.

13. Hardware removal is not considered a revise/redo of a failed surgery, and points are not awarded for hardware removal.

14. Multiple impairment ratings may be given related to a procedure on the same date, i.e., partial lateral meniscectomy and microfracture or chondral resurfacing.

15. When an ankle ORIF with soft tissue occurs, there should be no additional points for syndesmosis repair or deltoid ligament repair.

Confidential Information

NFL_ALFORD-0001238

Appendix A, Version 2 then includes comprehensive "Point System Impairment Tables," which assign Point System values to each orthopedic impairment recognized under the Plan. Your total "points" are the sum of those assigned for your recognized orthopedic impairments.

The Point System for Orthopedic Impairments is online at nflplayerbenefits.com. The NFL Player Benefits Office will furnish a full copy of it upon your request.

### 13.14 Claims Procedure.

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. Section 2560.503-1.

(a) **Claims Received After April 1, 2018.** Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1) the specific reason(s) for the adverse determination;

(2) reference to the specific Plan provisions on which the adverse determination is based;

(3) a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4) a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review;

(5) any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7) a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the

Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant,

will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1) state the specific reason(s) for the adverse determination;

(2) reference the specific Plan provision(s) on which the adverse determination is based;

(3) state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4) state that the claimant has the right to bring an action under ERISA Section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5) disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7) discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures. Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable. The Plan will provide an explanation within 10 days of the request.

Confidential Information



**NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

November 15, 2021

Mr. Daniel Loper
███████████████

Re:     NFL Player Disability & Neurocognitive Benefit Plan—Final Decision on Review

Dear Mr. Loper:

On November 10, 2021, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for line-of-duty disability ("LOD") benefits. We regret to inform you that the Disability Board denied your appeal. This letter describes the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

The Plan provides LOD benefits to Players who, in addition to other requirements, have incurred a "substantial disablement" "arising out of League football activities." The Plan defines these terms and requires that at least one Plan neutral physician must find that the Player meets this standard in order to be eligible for LOD benefits (see enclosed Plan Section 5.1(b)).

On March 3, 2020, the Plan received your completed application for LOD benefits, which was based on orthopedic impairments and was accompanied by a summary of impairments and 187 pages of medical records.

As you know, on January 22, 2021, the Disability Initial Claims Committee ("Committee") denied your application after reviewing your file and concluding that you are ineligible for LOD benefits. In making its determination, the Committee relied on the findings of Plan neutral orthopedist Dr. David Apple, who is a specialist in the medical field of your claimed impairments. After reviewing your records and evaluating you, Dr. Apple assigned you 3 points under the Plan's Point System for Orthopedic Impairments (less than the 10 points required for a "substantial disablement" within the meaning of Section 5.5(a)(4)(B) of the Plan) in the case of applications received before April 1, 2020. Based on this conclusion, the Committee denied your application under Plan Section 5.1(b) because no Plan neutral physician had found that you have a "substantial disablement" arising out of League football activities.

By letter received May 24, 2021, your representative, Sam Katz, appealed the Committee's initial decision to the Disability Board and submitted additional medical records.

Mr. Daniel Loper
November 15, 2021
Page 2

On appeal, you were examined by another Plan neutral orthopedist, Dr. Marcus Cook, pursuant to Plan Section 5.4(b) and the Plan's claims procedures. Like Dr. Apple, who examined you at the initial level, Dr. Cook is an orthopedic specialist who has experience evaluating impairments under the Plan's Point System. After examining you and reviewing your medical records, Dr. Cook rated your orthopedic impairments at 9 points (again below the 10 points required for LOD benefits under the terms of the Plan).

By letter dated July 30, 2021, the NFL Player Benefits Office provided you and Mr. Katz with a copy of Dr. Cook's report and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received October 25, 2021, Mr. Katz criticized the reports of Drs. Apple and Cook, requested an evaluation by a Medical Advisory Physician ("MAP") or an award of additional points for your left wrist impairments, and submitted a video of game footage in support of your appeal.

The Disability Board reviewed the current record and unanimously determined that you are ineligible for LOD benefits under the 10-point standard. Plan Section 5.1(b) states that, for a Player to be eligible for LOD benefits, at least one Plan neutral physician must conclude that the Player incurred a "substantial disablement" arising out of League football activities (the Plan's standard for LOD benefits). If no Plan neutral physician renders this conclusion, then "the Player will not be eligible for and will not receive [LOD] benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because, based on your Point System ratings, neither one of the Plan neutral orthopedists reported that you have a "substantial disablement" arising out of League football activities. The Disability Board did not find a basis for a MAP evaluation and, therefore, did not refer you for such an evaluation.

The Disability Board took into account the following factors. First, the neutral physicians who examined you are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's neutral physicians reviewed all of the records you provided, conducted thorough physical examinations of you, and provided complete and detailed reports of your condition. Even though the records you provided did not indicate that you meet the Plan's standard for a substantial disablement, they helped the Plan's neutral physicians award the points you received. Finally, the Disability Board found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you do not have a "substantial disablement" despite your impairments. The Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

Confidential Information

Mr. Daniel Loper
November 15, 2021
Page 3

For these reasons, the Disability Board denied your appeal.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 10, 2025.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

You may call the NFL Player Benefits Office if you have any questions.

Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc: Sam Katz, Esquire

> To receive assistance in these languages, please call:
> SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
> CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
> TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
> NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

Confidential Information
NFL_ALFORD-0001477

## Relevant Plan Provisions

**5.1    Eligibility.** Effective January 1, 2015, a Player will receive monthly line-of-duty disability benefits from this Plan in the amount described in Section 5.2 if and only if all of the conditions in (a), (b), (c), (d), and (e) below are met:

(a)    The Player is not an Active Player.

(b)    At least one Plan neutral physician selected pursuant to Section 5.4(b) below must find that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)). If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive line-of-duty disability benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(c)    After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 5.4(b) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player incurred a "substantial disablement" (as defined in Section 5.5(a) and (b)) "arising out of League football activities" (as defined in Section 5.5(c)).

(d)    The Player satisfies the other requirements of this Article 5 or Article 6 of the Bert Bell/Pete Rozelle Plan, as appropriate.

(e)    The Player is not receiving line-of-duty disability benefits from the Bert Bell/Pete Rozelle Plan pursuant to Article 6 of that plan.

**Section 5.5(a)(4)(B)** defines "substantial disablement" with respect to orthopedic impairments as follows:

> With respect to applications received on or after January 1, 2015, [a "substantial disablement" is one that] is rated at least 10 points, using the Point System set forth in Appendix A, Version 2 to this Plan. Surgeries, injuries, treatments, and medical procedures that occur after a Player's application deadline in Section 5.4(a) will not receive points and will be disregarded by the Committee and Board.

The introduction to **Appendix A, Version 2** provides this overview of the **Point System** referenced in Section 5.5(a)(4)(B):

> This Point System for Orthopedic Impairments ("Point System") is used to determine whether a Player has a "substantial disablement" within the meaning of Plan Section 5.5(a)(4)(B). The Point System assigns points to each orthopedic impairment recognized under the Plan. A Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment, but only where the Player's orthopedic impairment arose out of

League football activities, and the impairment has persisted or is expected to persist for at least 12 months from the date of its occurrence, excluding any reasonably possible recovery period.

A Player is awarded points only if his orthopedic impairment is documented according to the following rules:

1. A Player is awarded points for documented surgeries, injuries, and degenerative joint disease only if they are related to League football activities.

2. A Player is awarded points for a surgical procedure if the record includes an operative report for the qualifying procedure or if NFL Club records document the procedure. Surgical procedures reported through third party evaluations, such as independent medical examinations for workers' compensation, should not be used unless corroborating evidence is available to confirm the procedure and its relationship to League football activities.

3. Points are awarded for symptomatic soft tissue injuries where the injury is documented and there are appropriate, consistent clinical findings that are symptomatic on the day of exam. For example, AC joint injuries must be documented in medical records and be symptomatic on examination, with appropriate physical findings, to award points.

4. If an injury or surgery is not listed in the Point System, no points should be awarded.

5. Medical records, medical history, and the physical examination must correlate before points can be awarded.

6. If a lateral clavicle resection is given points, additional points cannot be awarded if the AC joint is still symptomatic, such as with AC joint inflammation or shoulder instability.

7. Moderate or greater degenerative changes must be seen on x-ray to award points (i.e., MRI findings do not count).

8. Players must have moderate or greater loss of function that significantly impacts activities of daily living, or ADLs, to get points.

9. Cervical and lumbosacral spine injuries must have a documented relationship to League football activities, with appropriate x-ray findings, MRI findings, and/or EMG findings to be rated.

10. In cases where an injury is treated surgically, points are awarded for the surgical treatment/repair only, and not the injury preceding the surgical treatment/repair. For example, a Player may receive points for "S/P Pectoralis Major

Tendon Repair," and if so he will not receive additional points for the "Pectoralis Major Tendon Tear" that led to the surgery.

11. As indicated in the Point System Impairment Tables, some injuries must be symptomatic on examination to merit an award of points under the Point System.

12. To award points for a subsequent procedure on the same joint/body part, the Player must recover from the first procedure and a new injury must occur to warrant the subsequent procedure. Otherwise, a revise/redo of a failed procedure would be the appropriate impairment rating.

13. Hardware removal is not considered a revise/redo of a failed surgery, and points are not awarded for hardware removal.

14. Multiple impairment ratings may be given related to a procedure on the same date, i.e., partial lateral meniscectomy and microfracture or chondral resurfacing.

15. When an ankle ORIF with soft tissue occurs, there should be no additional points for syndesmosis repair or deltoid ligament repair.

**Appendix A, Version 2** then includes comprehensive "Point System Impairment Tables," which assign Point System values to each orthopedic impairment recognized under the Plan. Your total "points" are the sum of those assigned for your recognized orthopedic impairments.

**The Point System for Orthopedic Impairments is online at nflplayerbenefits.com. The NFL Player Benefits Office will furnish a full copy of it upon your request.**

**Plan Section 5.5(c)** states:

"Arising out of League football activities" means a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities. "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities.

**Plan Section 13.4** is entitled "Limitation on Actions." It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."

Confidential Information
NFL_ALFORD-0001480