# EXHIBIT C



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email Only

March 3, 2021

Mr. Willis McGahee

Re: **NFL Player Disability & Neurocognitive Benefit Plan**
     **Initial Decision by the Disability Initial Claims Committee**

Dear Mr. McGahee:

On February 17, 2021, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your application for total and permanent disability ("T&P") benefits. The Committee denied your application. This letter explains the Committee's decision and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

### Discussion

Your application was received on February 26, 2020 and was based on orthopedic, neurological, neurocognitive, and psychiatric impairments. You submitted documents pertaining to your previous line-of-duty and T&P applications, orthopedic records, operative reports, diagnostic imaging studies, and Club records. You then attended examinations with four Plan neutral physicians: Dr. Tom Crum (neuropsychologist), Dr. Kevin Kessler (orthopedist), Dr. Martin Strassnig (psychiatrist), and Dr. George Diaz (neurologist). By report dated January 12, 2021, Dr. Crum opined that you are not totally and permanently disabled due to your neurocognitive impairments, and that you "demonstrated generally intact cognitive functioning." By report dated January 19, 2021, Dr. Kessler determined that you are not totally and permanently disabled due to your orthopedic impairments and that you can engage in light duty or moderate duty work with some restrictions. By report dated January 21, 2021, Dr. Strassnig determined that you are not totally and permanently disabled, and that you have "no restrictions" regarding employment from a psychiatric perspective. By report dated February 1, 2021, Dr. Diaz concluded that your neurologic impairments do not render you totally and permanently disabled and that you can engage in "any employment [you are] trained to do [with] no neurological limitations."

On February 17, 2021, the Committee reviewed your application and the other materials in your file, including the reports of these neutral physicians.

Mr. Willis McGahee
March 3, 2021
Page 2

Plan Section 3.1(c) states that to qualify for T&P benefits at least one Plan neutral physician must find that you are totally and permanently disabled within the meaning of the Plan. Because no Plan neutral physician reported that you are totally and permanently disabled, you do not meet the threshold eligibility requirement of Plan Section 3.1(c). The Committee thus denied your application for T&P benefits.

In making its decision, the Committee did not disagree with the statements in the medical records you submitted in support of your application. The Committee, however, did not find that these records support a finding of total and permanent disability at this time. Furthermore, these medical records were taken into consideration by Drs. Crum, Kessler, Strassnig, and Diaz when they independently determined that you are not totally and permanently disabled and are capable of employment. Dr. Strassnig, for instance, commented that your "reported mood and anxiety symptoms appear to be still very much tied to adjusting to life after football ... facing different lifestyle and career choices requires different skills and coping skills, both of which [you are] still in the process of acquiring."

Plan Section 3.2(a) states that you may be eligible for T&P benefits if you have been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and if you are still receiving such benefits when you apply for T&P. The Committee found that you do not meet this standard because you did not present evidence of a Social Security disability benefits award.

For these reasons, the Committee denied your application.

**Appeal Rights**

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decision. You may appeal the Committee's decision to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents, and any other information that you believe supports your appeal. The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

Mr. Willis McGahee
March 3, 2021
Page 3

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document, which can also be found at www.nflplayerbenefits.com. Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

*Stephanie J. Torlina*

Stephanie J. Torlina
Benefits Coordinator
On behalf of the Disability Initial Claims Committee

Enclosure

cc: Samuel Katz, Esquire

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

# Relevant Plan Provisions

**3.1     General Standard for Eligibility.** An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a), (b), (c), (d), and (e) below are met:

(a) The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

(b) The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

(c) At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(d) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

   i. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

   ii. A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

      iii. A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(e) The Player satisfies all other applicable requirements of this Article 3.

## 3.2  Social Security Standard for Eligibility.

(a) An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**3.3  Application Rules and Procedures.** In addition to the requirements of Article 7 and Section 13.14 (claims procedures), Players must comply with the rules and procedures of this Section 3.3 in connection with an application for Plan T&P benefits.

(a) <u>Medical Evaluations.</u> Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the Plan medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**13.14  Claims Procedure.**

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. Section 2560.503-1.

(a) **Claims Received After April 1, 2018.**  Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional

information needed to resolve those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1) the specific reason(s) for the adverse determination;

(2) reference to the specific Plan provisions on which the adverse determination is based;

(3) a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4) a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review;

(5) any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7) a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and

the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1) state the specific reason(s) for the adverse determination;

(2) reference the specific Plan provision(s) on which the adverse determination is based;

(3) state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4) state that the claimant has the right to bring an action under ERISA Section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5) disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7) discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures. Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable. The Plan will provide an explanation within 10 days of the request.



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email and Federal Express

November 22, 2022

Mr. Willis McGahee

Re: **NFL Player Disability & Neurocognitive Benefit Plan – Final Decision on Review**

Dear Mr. McGahee:

On November 22, 2022, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for total and permanent disability benefits under the Plan ("Plan T&P benefits"). We regret to inform you that the Disability Board denied your appeal. This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

On February 26, 2020, the Plan received your completed application for Plan T&P benefits, which raised orthopedic, neurologic, cognitive, and psychiatric impairments as the basis for your disability.

As you know, on February 17, 2021, the Disability Initial Claims Committee ("Committee") reviewed your application along with the reports of four Plan Neutral Physicians: orthopedist, Dr. Kevin Kessler; neurologist, Dr. George Diaz; neuropsychologist, Dr. Tom Crum; and psychiatrist, Dr. Martin Strassnig. These Neutral Physicians are specialists in the medical fields encompassing your claimed impairments. After reviewing your records and evaluating you, none reported that you are totally and permanently disabled. Based on those findings, the Committee denied your application under Plan Section 3.1(c) because no Plan Neutral Physician had found that you are unable to engage in any occupation for remuneration or profit.

On August 26, 2021, your representative, Sam Katz, appealed the Committee's initial decision to the Disability Board and argued that the Neutral Physicians failed to identify specific jobs you can perform and the Committee failed to consider the cumulative effect of your impairments.

At its May 18, 2022 meeting, the Disability Board tabled your appeal for neutral evaluations due to circumstances beyond your control.

On appeal you were referred for additional evaluations with four new Plan Neutral Physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures. You were evaluated by orthopedist, Dr. Herndon Murray; neurologist, Dr. Matthews Gwynn; neuropsychologist, Dr. Jason

Mr. Willis McGahee
November 22, 2022
Page 2

King; and psychiatrist, Dr. Matthew Norman. Like the Plan Neutral Physicians who evaluated you at the initial level, these Plan Neutral Physicians are specialists in the medical fields encompassing your claimed impairments. By report dated August 2, 2022, Dr. Murray opined that you are not totally and permanently disabled by your orthopedic impairments and can engage in light level work. By report dated July 18, 2022, Dr. Gwynn determined that you are not totally and permanently disabled and have no neurological impairments. By report dated July 28, 2022, Dr. King found that he was unable to determine whether you are totally and permanently disabled due to unreliable and invalid cognitive test results. By report dated July 20, 2022, Dr. Norman concluded that you are not totally and permanently disabled and can engage in any occupation without psychiatric restrictions.

By letter dated August 2, 2022, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the Neutral Physicians' reports and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received August 15, 2022, Mr. Katz argued that the Neutral Physicians failed to cite a particular job you could perform and failed to consider the cumulative effects of your impairments.

At its November 9, 2022 meeting, the Disability Board reviewed the record and tentatively found that you are ineligible for Plan T&P benefits. On November 22, 2022, the Disability Board unanimously decided that you are ineligible for Plan T&P benefits and authorized transmission of this letter explaining its decision. Section 3.1(c) of the Plan states that, for a Player to be eligible for Plan T&P benefits, at least one Plan Neutral Physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for Plan T&P benefits). If no Plan Neutral Physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because you have been evaluated by eight Neutral Physicians and none found that you are totally and permanently disabled.

The Disability Board noted that Mr. Katz's comments concerning the cumulative effect of your impairments cannot override the express requirements of Plan Section 3.1(d). Further, the Disability Board noted that Mr. Katz was critical of the Plan Neutral Physicians for failing to identify a specific job that you could perform. The Board rejected this argument because the Plan utilizes an "any occupation" standard, and Plan Neutral Physicians opine, specifically, on whether a Player satisfies this standard. Overall, the Disability Board found no deficiencies or inaccuracies in the Neutral Physicians' reports. For this reason, the Disability Board rejected Mr. Katz's arguments on appeal and credited the Plan Neutral Physicians for the following reasons. First, Neutral Physicians are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's Neutral Physicians reviewed all of the records you submitted, performed thorough evaluations of you, and provided complete and detailed reports of your condition. Third, the Disability Board found that the conclusions of the Plan's Neutral Physicians were consistent, in that none of them concluded that you are total and permanently

Mr. Willis McGahee
November 22, 2022
Page 3

disabled and incapable of employment. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

Plan Section 3.2(a) allows a Player to qualify for Plan T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(c). You have not presented evidence that you currently receive Social Security disability benefits.

For these reasons, the Disability Board denied your appeal.

Please understand the Disability Board is required by federal law to follow the terms of the Plan. Where, as here, you do not satisfy the terms of the Plan, federal law requires the Disability Board to deny your appeal, regardless of how sympathetic individual members of the Disability Board may be to your circumstances.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 22, 2026.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

Mr. Willis McGahee
November 22, 2022
Page 4


You may call the NFL Player Benefits Office if you have any questions.


Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc: Samuel Katz, Esquire

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

## Relevant Plan Provisions

**Plan Section 3.1** sets forth the standards for determining whether a Player is totally and permanently disabled. It states, in relevant part:

(c)     At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(d)     After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

    i.     The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

    ii.    A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

    iii.   A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

**Plan Section 3.2** sets forth the "Social Security Standard for Eligibility." It states, in relevant part:

(a)     An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months

described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**Plan Section 3.3** discusses the Plan's "Application Rules and Procedures." It provides, in relevant part:

(a)   Medical Evaluations.   Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**Plan Section 13.4** is entitled "Limitation on Actions." It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."