# EXHIBIT D



**NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

February 8, 2019

Mr. Michael McKenzie

████████████████

**Re:    NFL Player Disability & Neurocognitive Benefit Plan**
       **Initial Decision by Disability Initial Claims Committee**

Dear Mr. McKenzie:

On January 29, 2019, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your application for total and permanent disability ("T&P") benefits. The Committee denied your application. This letter explains the Committee's decision and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

**Discussion**

Your application was received on December 26, 2018 and was based on orthopedic, neurologic, cognitive, and psychiatric impairments. You submitted operative reports, diagnostic imaging studies, line of duty decision letters and neutral evaluations, workers compensation medical records, a spousal declaration of health, and various team medical records with your application. You then attended examinations with four Plan neutral physicians: Dr. Paul Saenz (orthopedist), Dr. Eric Brahin (neurologist), Dr. Janyna Mercado (neuropsychologist), and Dr. Raymond Faber (psychiatrist). By report dated January 9, 2019, Dr. Saenz determined that you are not totally and permanently disabled and can engage in sedentary to light level work with certain restrictions. By report dated January 10, 2019, Dr. Brahin found that he was unable to determine whether you are totally and permanently disabled because your evaluation had to be terminated early. By report dated January 8, 2019, Dr. Mercado checked that she was unable to determine whether you are totally and permanently disabled due to invalid test results. By report dated January 13, 2018, Dr. Faber reported that he was unable to determine whether you are totally and permanently disabled due to concerns about the validity of your responses.

On January 29, 2019, the Committee reviewed your application and the other materials in your file, including the reports of these neutral physicians.

MYGOALLINE.COM

Mr. Michael McKenzie
February 8, 2019
Page 2

Plan Section 3.1(c) states that to qualify for T&P benefits at least one Plan neutral physician must find that you are totally and permanently disabled within the meaning of the Plan. Because no Plan neutral physician reported that you are totally and permanently disabled, you do not meet the threshold eligibility requirement of Plan Section 3.1(c). The Committee thus denied your application for T&P benefits. In making its decision, the Committee did not disagree with the statements in the medical records you submitted in support of your application. The Committee, however, did not find that these records support a finding of total and permanent disability at this time. Furthermore, these medical records were taken into consideration by the neutral physicians when they independently concluded that you are not totally and permanently disabled and are capable of employment.

The Committee credited the conclusions of Plan physicians for several reasons. First, they are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's physicians reviewed all of the records you provided, they conducted thorough physical examinations of you, and they provided complete and detailed reports of your condition. Third, the Committee found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you are capable of employment despite your impairments. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players.

Plan Section 3.2(a) states that you may be eligible for T&P benefits if you have been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and if you are still receiving such benefits when you apply for T&P. The Committee found that you do not meet this standard because you did not present evidence of a Social Security disability benefits award.

For these reasons, the Committee denied your application.

**Appeal Rights**

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decision. You may appeal the Committee's decision to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents, and any other information that you believe supports your appeal. The Disability Board will take into account all

Confidential Information

Mr. Michael McKenzie
February 8, 2019
Page 3

available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document which can also be found at www.nflplayerbenefits.com. Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

*Meghan Pi*

Meghan Pieklo
Benefits Coordinator
On behalf of the Disability Initial Claims Committee

cc: Samuel Katz, Esquire

Enclosures

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

---

NFL_ALFORD-0004419

## Relevant Plan Provisions

**3.1**    **General Standard for Eligibility.**  An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a), (b), (c), (d), and (e) below are met:

    (a) The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

    (b) The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

    (c) At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent.  If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

    (d) After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent.  The following rules will apply:

        i. The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

        ii. A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

NFL_ALFORD-0004420

iii. A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(e) The Player satisfies all other applicable requirements of this Article 3.

**3.2    Social Security Standard for Eligibility.**

(a) An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**3.3    Application Rules and Procedures.**  In addition to the requirements of Article 7 and Section 13.14 (claims procedures), Players must comply with the rules and procedures of this Section 3.3 in connection with an application for Plan T&P benefits.

(a) <u>Medical Evaluations.</u>  Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or

the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the Plan that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the Plan medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

## 13.14  Claims Procedure.

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. Section 2560.503-1.

(a) **Claims Received After April 1, 2018.** Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension

NFL_ALFORD-0004422

is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1) the specific reason(s) for the adverse determination;

(2) reference to the specific Plan provisions on which the adverse determination is based;

(3) a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4) a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review;

(5) any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7) a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon

NFL_ALFORD-0004423

in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second

NFL_ALFORD-0004424

meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response.  If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1) state the specific reason(s) for the adverse determination;

(2) reference the specific Plan provision(s) on which the adverse determination is based;

(3) state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4) state that the claimant has the right to bring an action under ERISA Section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5) disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6) if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7) discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant

NFL_ALFORD-0004425

and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures. Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable. The Plan will provide an explanation within 10 days of the request.

NFL_ALFORD-0004426

**NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

November 22, 2019

Mr. Michael McKenzie

**Re:  NFL Player Disability & Neurocognitive Benefit Plan - Final Decision on Review**

Dear Mr. McKenzie:

At its November 20, 2019 meeting, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for total and permanent disability ("T&P") benefits.  We regret to inform you that the Disability Board denied your appeal.  This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

On December 26, 2018, the Plan received your completed application for T&P benefits, which raised orthopedic, neurologic, neurocognitive, and psychiatric impairments as the basis for your disability.

As you know, on January 29, 2019, the Disability Initial Claims Committee ("Committee") reviewed your application along with the reports of four Plan neutral physicians: orthopedist, Dr. Paul Saenz; neurologist, Dr. Eric Brahin; neuropsychologist, Dr. Janyna Mercado; and psychiatrist, Dr. Raymond Faber.  These neutral physicians are specialists in the medical fields encompassing your claimed impairments.  After reviewing your records and evaluating you, each of them reported that you are not totally and permanently disabled.  Based on those findings, the Committee denied your application under Plan Section 3.1(c) because no Plan neutral physician had found that you are unable to engage in any occupation for remuneration or profit.

On August 8, 2019, your attorney, Sam Katz, appealed the Committee's initial decision to the Disability Board and argued that the Committee failed to consider the cumulative effect of your impairments.

On appeal you were referred for additional evaluations with four new Plan neutral physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures.  You were evaluated by: orthopedist, Dr. Virgil Medlock; neurologist, Dr. Barry McCasland; neuropsychologist, Dr. Stephen Macciocchi; and psychiatrist, Dr. Matthew Norman.  Like the Plan neutral physicians who evaluated you at the initial level, these Plan neutral physicians are specialists in the medical fields encompassing your claimed impairments.  By report dated September 14, 2019, Dr. Medlock concluded that your

NFL_ALFORD-0004684

Mr. Michael McKenzie
November 22, 2019
Page 2

orthopedic impairments are not totally and permanently disabling and that you can engage in sedentary occupation with certain restrictions. By report dated September 4, 2019, Dr. McCasland reported that he is unable to determine whether you are totally and permanently disabled due to variable effort and inability to reconcile a number of your complaints. By report dated September 3, 2019, Dr. Macciocchi concluded that your cognitive impairments do not render you totally and permanently disabled and that you can work in any occupation consistent with your education, experiential background, and interest. By report dated September 4, 2019, Dr. Norman opined that you are not totally and permanently disabled and can engage in any occupation without psychiatric restrictions or limitations.

By letter dated September 17, 2019, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the doctors' reports, and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received October 16, 2019, Mr. Katz argued that the Committee failed to consider the cumulative effect of your impairments and that you were not given a full and fair review because physicians hired by the Disability Board are paid and therefore not impartial.

At its November 20, 2019 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for T&P benefits. Section 3.1(c) of the Plan states that, for a Player to be eligible for T&P benefits, at least one Plan neutral physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for T&P benefits). If no Plan neutral physician renders this conclusion, then "the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because eight Plan neutral physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. The Disability Board rejected Mr. Katz's arguments on appeal in so far as they do not address or override the requirements of Plan Section 3.1(c).

The Disability Board disagreed with Mr. Katz's allegation that the Plan's neutral physicians are conflicted or biased against Players, for the following reasons. First, the neutral physicians are specialists in the medical field encompassing your claimed impairments, and have experience evaluating Players and other professional athletes. Second, the Plan's neutral physicians are instructed to (and do) evaluate Players fully, fairly, and without bias for or against the Player. For these reasons neutral evaluations are typically accepted and relied upon by the members of the Disability Board appointed by the NFL and those appointed by the NFL Players Association. Third, the Disability Board found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you are capable of employment despite your impairments. Furthermore, the neutral physicians reviewed all of the records you provided; they conducted thorough examinations of you; and they provided complete and detailed reports of your condition. Finally, they are jointly selected by the NFL Players Association and the NFL Management Council;

Confidential Information

Mr. Michael McKenzie
November 22, 2019
Page 3

they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and have done so in your case.

How often the Plan utilizes a neutral physician, how much a physician may be compensated, and "statistics" on the outcome of a particular physician's evaluations, are not relevant to your claim. The Disability Board is aware that a judge in a recent court case stated that a Plan physician was conflicted by virtue of receiving compensation from the Plan for his service. The Disability Board, however, does not agree with that conclusion for several reasons. First, the Board is comprised of an equal number of Player and NFL employer representatives, as required by the Taft Hartley Act (*i.e.*, the Labor Management relations Act of 1947), ensuring fairness in governance. Second, the Disability Board does not fund the Plan, and its members have no personal stake in the outcome of any application for benefits. Third, the Disability Board is obligated by federal law to operate the Plan in the sole interest of its participants and beneficiaries, and in accord with the written terms of the Plan, with the result that Players who qualify under the terms of the Plan routinely are awarded disability benefits. In sum, a Plan neutral physician could not curry favor with the Board by shading his reports and conclusions against Players, as Mr. Katz seems to suggest. Just the opposite: If a neutral physician did so, that physician would be removed from the panel.

We wish to reassure you that the Plan's neutral physicians have no incentive to hurt or help Players, and the Board has no inherent bias for or against Players. Please keep in mind that Plan neutral physicians receive a flat fee for each examination, regardless of their findings. The Plan's neutrals include preeminent practicing physicians in their fields of specialty. The Plan compensates them for their time and expertise and for their willingness to evaluate Players on short notice and provide detailed reports in accordance with Plan standards.

The Disability Board hopes that the foregoing explanation addresses your concerns and the concerns of Mr. Katz about the fairness of the disability review process. Substantial effort and resources have been committed to ensure that every Player is fully and fairly evaluated, and that benefits are paid to all Players who satisfy the terms of the Plan.

Plan Section 3.2(a) allows a Player to qualify for T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(c). However, you have not presented evidence that you currently receive Social Security disability benefits, and therefore the Disability Board found you do not qualify for T&P benefits under Plan Section 3.2(a).

For these reasons, the Disability Board denied your appeal.

Mr. Michael McKenzie
November 22, 2019
Page 4

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is May 20, 2023.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan document.

You may call the NFL Player Benefits Office if you have any questions.

Sincerely,

Michael B. Miller

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure

cc: Sam Katz, Esquire

---

To receive assistance in these languages, please call:

SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)

CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)

TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)

NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

---

NFL_ALFORD-0004687

## Relevant Plan Provisions

**Plan Section 3.1** sets forth the standards for determining whether a Player is totally and permanently disabled. It states, in relevant part:

    (c)    At least one Plan neutral physician selected pursuant to Section 3.3(a) below must find, under the standard of Section 3.1(d) below, that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

    (d)    After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 3.3(a) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

        i.    The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

        ii.    A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

        iii.    A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

**Plan Section 3.2** sets forth the "Social Security Standard for Eligibility." It states, in relevant part:

NFL_ALFORD-0004688

(a)    An Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled. If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

**Plan Section 3.3** discusses the Plan's "Application Rules and Procedures." It provides, in relevant part:

(a)    <u>Medical Evaluations.</u>  Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 above, such Player may first be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.2 above, such Player may be required to submit to an examination scheduled by the Plan with a neutral physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to Plan T&P benefits. If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office

that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

**Plan Section 13.4** is entitled "Limitation on Actions." It states, in relevant part:

(a)     <u>Adverse Determinations</u>.  No suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review).

NFL_ALFORD-0004690



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email

July 23, 2021

Mr. Michael McKenzie

███████████████████

**Re:    NFL Player Disability, Neurocognitive & Death Benefit Plan**
          **Initial Decision by the Disability Initial Claims Committee**

Dear Mr. McKenzie:

On July 15, 2021, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability, Neurocognitive & Death Benefit Plan ("Plan") considered and denied your application for total and permanent disability ("T&P") benefits. This letter explains the Committee's decision and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

**Discussion**

Your application was received on April 5, 2021 and was based on orthopedic, psychiatric, neurologic, and cognitive impairments. With your application, Sam Katz submitted a disability summary letter; 129 pages of medical records, including a 2011 Workers' Compensation Report from Dr. Stephen Weiss; and records pertaining to your previous line-of-duty and T&P applications. You then attended examinations with four Plan Neutral Physicians: neurologist Dr. David Clark, orthopedist Dr. Prem Parmar, neuropsychologist Dr. Neal Deutch, and psychiatrist Dr. John Rabun. By report dated June 5, 2021, Dr. Clark was unable to determine whether you are totally and permanently disabled based on your neurological problems alone, and noted that, while your migraines appear to be partially disabling, they are difficult to quantify. By report dated June 6, 2021, Dr. Parmar determined that you are not totally and permanently disabled by your orthopedic impairments and that you can work with certain restrictions. By report dated June 8, 2021, Dr. Deutch reported that your neuropsychological test results were invalid and uninterpretable due to failed measures of effort on performance validity testing, making him unable to draw a conclusion. By report dated June 28, 2021, Dr. Rabun determined that your psychiatric impairments do not render you totally and permanently disabled and that you can engage in any employment meeting your abilities.

On July 15, 2021, the Committee reviewed your application and the other materials in your file, including the reports of Dr. Clark, Dr. Parmar, Dr. Deutch, and Dr. Rabun.

Mr. Michael McKenzie
July 23, 2021
Page 2

Plan Section 3.1(d) states that to qualify for T&P benefits at least one Plan Neutral Physician must find that you are totally and permanently disabled within the meaning of the Plan.  The Committee reviewed and accepted the conclusions from the reports of Dr. Clark, Dr. Parmar, Dr. Deutch, and Dr. Rabun, all of whom reported that you are not totally and permanently disabled by your impairments.  The Committee noted that while Dr. Clark stated that your migraines are partially disabling, such finding does not meet the standard of total and permanent disability as defined by the Plan.  As no Plan Neutral Physician found you totally and permanently disabled, the Committee determined that you do not meet this threshold eligibility requirement of the Plan, and therefore denied your application for T&P benefits.

Plan Section 3.2(a) states that you may be eligible for T&P benefits if you have been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and if you are still receiving such benefits when you apply for T&P.  The Committee found that you do not meet this standard because you did not present evidence of a Social Security disability benefit award.

In making its decision, the Committee considered all of the medical records you submitted and referenced in support of your application, but determined that under Plan Section 3.1(d) the records alone do not support a finding of total and permanent disability.  Furthermore, these medical records were taken into consideration by Dr. Clark, Dr. Parmar, Dr. Deutch, and Dr. Rabun when they independently made their determinations.

For these reasons, the Committee denied your application for T&P benefits.

**Appeal Rights**

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decision.  You may appeal the Committee's decision to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter.  You should also submit written comments, documents, and any other information that you believe supports your appeal.  The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determination.  Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however.  You should consult the Plan Document for a full recitation of the relevant Plan terms.

                                      NFL_ALFORD-0008984

Mr. Michael McKenzie
July 23, 2021
Page 3

The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document, which can also be found at www.nflplayerbenefits.com. Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

*Kristine Wille*

Kristine Wille
Benefits Coordinator
On behalf of the Committee

Enclosure

cc: Samuel Katz, Esq.

---

To receive assistance in these languages, please call:
SPANISH (Español):  Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog):  Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine):  Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

---

NFL_ALFORD-0008985

### Relevant Plan Provisions

**3.1     General Standard for Eligibility.**  An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a) through (f) below are met:

(a)     The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

(b)     The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

(c)     The Player submits Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 3.3.

(d)     At least one Plan Neutral Physician must find, under the standard of Section 3.1(e), that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(e)     After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent. The following rules will apply:

   i.     The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

   ii.     A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

                                      NFL_ALFORD-0008986

iii.    A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(f)    The Player satisfies all other applicable requirements of this Article 3.

*    *    *    *

**3.2    Social Security Standard for Eligibility.**

(a)    For applications received prior to April 1, 2024, an Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits.

If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

*    *    *    *

**13.14    Claims Procedure.**    It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. § 2560.503-1.

(a)    **Disability Claims.** Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant

NFL_ALFORD-0008987

submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. § 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1)     the specific reason(s) for the adverse determination;

(2)     reference to the specific Plan provisions on which the adverse determination is based;

(3)     a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4)     a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA section 502(a) following an adverse determination on review;

(5)     any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)     if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7)     a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8)     a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits.  Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable.  Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

Confidential Information

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. § 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1)    state the specific reason(s) for the adverse determination;

(2)    reference the specific Plan provision(s) on which the adverse determination is based;

(3)    state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4)    state that the claimant has the right to bring an action under ERISA section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5)    disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)    if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

NFL_ALFORD-0008990

(7)    discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures. Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable. The Plan will provide an explanation within 10 days of the request.



**NFL PLAYER BENEFITS**
DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express and Email

June 6, 2022

Mr. Michael McKenzie

██████████████

Re:  **NFL Player Disability & Survivor Benefit Plan – Final Decision on Review**

Dear Mr. McKenzie:

On June 1, 2022, the Disability Board of the NFL Player Disability & Survivor Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for total and permanent disability benefits under the Plan ("Plan T&P benefits").  We regret to inform you that the Disability Board denied your appeal.  This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

On April 5, 2021, the Plan received your completed application for Plan T&P benefits, which raised orthopedic, neurocognitive, and psychiatric impairments as the basis for your disability.

As you know, on July 15, 2021, the Disability Initial Claims Committee ("Committee") reviewed your application along with the reports of four Plan Neutral Physicians: orthopedist, Dr. Prem Parmar; neurologist, Dr. David Clark; neuropsychologist, Dr. Neal Deutch; and psychiatrist, Dr. John Rabun. These neutral physicians are specialists in the medical fields encompassing your claimed impairments.  After reviewing your records and evaluating you, each of them reported that you are not totally and permanently disabled.  Based on those findings, the Committee denied your application under Plan Section 3.1(d) because no Plan Neutral Physician had found that you are unable to engage in any occupation for remuneration or profit.

On December 28, 2021, your attorney, Mr. Sam Katz, appealed the Committee's initial decision to the Disability Board.  Mr. Katz argued that you are totally and permanently disabled due to the combination of severe impairments and that the Neutral Physicians failed to specify a job you could perform.

On appeal you were referred for additional evaluations with four new Plan Neutral Physicians in accordance with Plan Section 3.3(a) and the Plan's claims procedures.  You were evaluated by: orthopedist, Dr. Hussein Elkousy; neurologist, Dr. Annettee Okai; neuropsychologist, Dr. Laura Lacritz; and psychiatrist, Dr. Martin Strassnig.  Like the Plan Neutral Physicians who evaluated you at the initial level, these Plan Neutral Physicians are specialists in the medical fields encompassing your

NFL_ALFORD-0009156

Mr. Michael McKenzie
June 6, 2022
Page 2

claimed impairments. By report dated January 31, 2022, Dr. Strassnig determined that your psychiatric impairments do not render you totally and permanently disabled and that you have "no psychiatric restrictions or limitations to gainful employment." By report dated February 16, 2022, Dr. Elkousy determined that your orthopedic impairments do not render you totally and permanently disabled and that you can engage in light duty work with some restrictions. By report dated March 17, 2022, Dr. Lacritz concluded that, despite your cognitive impairments, you are not totally and permanently disabled and that any limitations in daily functioning "appear related to factors other than impaired cognition." By report dated March 18, 2022, Dr. Okai was unable to determine whether you are totally and permanently disabled due to discrepancies on test scores and overlapping psychiatric conditions.

By letter dated March 22, 2022, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the Neutral Physicians' reports and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. As you know, you did not respond.

At its May 18, 2022 meeting, the Disability Board reviewed the record and unanimously concluded that you are ineligible for Plan T&P benefits. On June 1, 2022, the Disability Board unanimously decided that you are ineligible for NC benefits and authorized transmission of this letter explaining its decision. Section 3.1(d) of the Plan states that, for a Player to be eligible for Plan T&P benefits, at least one Plan Neutral Physician must conclude that the Player is substantially unable to engage in any occupation for remuneration or profit (the Plan's standard for Plan T&P benefits). If no Plan Neutral Physician renders this conclusion, then "the Player will be ineligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because eight Plan Neutral Physicians have examined you, and none found that you are substantially unable to engage in any occupation or employment. The Disability Board noted that Mr. Katz's comments concerning the cumulative effect of your impairments cannot override the express requirements of Plan Section 3.1(d). The Disability Board, moreover, did consider all of the impairments described by the Plan Neutral Physicians and review the medical records you submitted. The Disability Board further noted that Mr. Katz was critical of the Plan Neutral Physicians for failing to identify a specific job that you could perform. The Board rejected this argument because the Plan utilizes an "any occupation" standard, and Plan Neutral Physicians opine, specifically, on whether a Player satisfies this standard. A conclusion that a Player is capable of light or sedentary employment or capable of employment with no limitations inherently covers a wide range of occupations and shows that a Player does not meet the Plan's "any occupation" standard.

The Disability Board took into account the following factors. First, Neutral Physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's Neutral Physicians reviewed all of the records you provided with your application and appeal, performed an evaluation, and unanimously concluded that you are not totally and permanently disabled despite your impairments. Third, the

Mr. Michael McKenzie
June 6, 2022
Page 3

Disability Board found that the conclusions of the Plan's Neutral Physicians were consistent, in that they independently concluded that you are capable of employment despite your impairments. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's Neutral Physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

Plan Section 3.2(a) allows a Player to qualify for Plan T&P benefits if he is receiving Social Security disability benefits, notwithstanding the eligibility requirement otherwise imposed by Section 3.1(d). You have not presented evidence that you currently receive Social Security disability benefits. For these reasons, the Disability Board denied your appeal.

Please understand the Disability Board is required by federal law to follow the terms of the Plan. Where, as here, you do not satisfy the terms of the Plan, federal law requires the Disability Board to deny your appeal, regardless of how sympathetic individual members of the Disability Board may be to your circumstances.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is December 1, 2025.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document.

Mr. Michael McKenzie
June 6, 2022
Page 4


You may call the NFL Player Benefits Office if you have any questions.


Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure
cc: Samuel Katz, Esquire


To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

NFL_ALFORD-0009159

## Relevant Plan Provisions

**3.1    General Standard for Eligibility.**  An Article 3 Eligible Player will receive monthly Plan total and permanent disability benefits ("Plan T&P benefits") in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, if and only if all of the conditions in (a) through (f) below are met:

(a)    The Player's application is received by the Plan on or after January 1, 2015 and results in an award of Plan T&P benefits.

(b)    The Player is not receiving monthly retirement benefits under Article 4 or Article 4A of the Bert Bell/Pete Rozelle Plan.

(c)    The Player submits Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 3.3.

(d)    At least one Plan Neutral Physician must find, under the standard of Section 3.1(e), that (1) the Player has become totally disabled to the extent that he is substantially unable to engage in any occupation or employment for remuneration or profit, excluding any disability suffered while in the military service of any country, and (2) such condition is permanent.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(e)    After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that (1) the Player has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit, but expressly excluding any disability suffered while in the military service of any country, and (2) that such condition is permanent.  The following rules will apply:

(1)    The educational level and prior training of a Player will not be considered in determining whether such Player is "unable to engage in any occupation or employment for remuneration or profit."

(2)    A Player will not be considered to be able to engage in any occupation or employment for remuneration or profit within the meaning of this Section 3.1 merely because such person is employed by the League or an Employer, manages personal or family investments, is employed by or associated with a charitable organization, is employed out of benevolence, or receives up to $30,000 per year in earned income.

NFL_ALFORD-0009160

(3)    A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period.

(f)    The Player satisfies all other applicable requirements of this Article 3.

**3.2    Social Security Standard for Eligibility.**

(a)    For applications received prior to April 1, 2024, an Article 3 Eligible Player who is not receiving monthly pension benefits under Article 4 or 4A of the Bert Bell/Pete Rozelle Plan, who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits.

If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(a), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

(b)    For applications received prior to April 1, 2024, an Article 3 Eligible Player who elects to begin receiving pension benefits under the Bert Bell/Pete Rozelle Plan prior to his Normal Retirement Date, who is subsequently determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, who satisfies the other conditions of this paragraph, and who is still receiving such benefits at the time he applies, will receive Plan T&P benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits.  To be eligible for benefits under this paragraph, the Player must apply for such Social Security disability benefits prior to his Normal Retirement Date, and the award of disability benefits by the Social Security Administration must occur prior to the Player's Normal Retirement Date.    An award of disability benefits by the Social Security Administration after a Player's Normal Retirement Date that such Player was disabled as of a date prior to his Normal Retirement Date does not qualify such Player for Plan T&P benefits under this paragraph.

If his Social Security disability benefits are revoked, a Player will no longer be entitled to receive Plan T&P benefits by reason of this Section 3.2(b), effective as of the date of such revocation. However, if such Player establishes that the sole reason for the loss of his Social Security disability or Supplemental Security Income benefits was his receipt of benefits under this Plan, Plan T&P benefits will continue provided the Player satisfies the rules for continuation of benefits in Section 3.8(a).

Confidential Information

   **3.3**    **Application Rules and Procedures.**  In addition to the requirements of Article 7 and Section 13.14 (claims procedures), Players must comply with the rules and procedures of this Section 3.3 in connection with an application for Plan T&P benefits.

   (a)    <u>Medical Records and Evaluations</u>.  A Player applying for Plan T&P benefits under the General Standard of Section 3.1 on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to Plan T&P benefits, and his appeal will be denied.  This paragraph does not apply to applications received prior to October 1, 2020.

   Whenever the Disability Initial Claims Committee or the Disability Board reviews the application or appeal of any Player for Plan T&P benefits under Section 3.1 or Section 3.2, such Player may first be required to submit to an examination scheduled by the Plan with a Neutral Physician or physicians, or institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

   Any Player refusing to submit to any examination required by the Plan will not be entitled to Plan T&P benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for Plan T&P benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for Plan T&P benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

   A Player or his representative may submit to the Plan additional Medical Records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

   **Plan Section 13.4** is entitled "Limitation on Actions."  It states, "[n]o suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review)."

NFL_ALFORD-0009162