# EXHIBIT H



200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

April 23, 2019

Mr. Joey Thomas

███████████████

Re:   **NFL Player Disability & Neurocognitive Benefit Plan**
      **Initial Decision by Disability Initial Claims Committee**

Dear Mr. Thomas:

On April 4, 2019, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your application for neurocognitive disability ("NC") benefits. The Committee denied your application. This letter explains the Committee's decision and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

**Discussion**

Your application was received on March 11, 2019. You submitted various neurological and neuropsychological records with your application. You then attended examinations with two Plan neutral physicians, Dr. Lawrence Murphy (neurologist) and Dr. Alan Breen (neuropsychologist). By report dated March 25, 2019, Dr. Murphy found no evidence of acquired neurocognitive impairment. By report dated March 25, 2019, Dr. Breen concluded that you do not demonstrate acquired neurocognitive deficits and noted that your current employment that your cognitive abilities are currently intact. By joint physician report dated March 24 – 25, 2019, Drs. Murphy and Breen confirmed that you do not show evidence of acquired neurocognitive impairment.

On April 4, 2019, the Committee considered your application and the other materials in your file, including the reports of these neutral physicians.

Plan Section 6.1(e) states that to qualify for NC disability benefits at least one Plan neutral physician must find that you have a mild or moderate acquired neurocognitive impairment within the meaning of the Plan. Because neither Plan neutral physician reported that you have such an impairment, you do not meet the threshold eligibility requirement of Plan Section 6.1(e). The Committee thus denied your application for NC benefits.

Confidential Information

Mr. Joey Thomas
April 23, 2019
Page 2

In making its decision, the Committee took into consideration the statements in the medical records submitted with your application, but reached its decision despite potentially conflicting medical evidence in those records. In fact, Plan neutral physicians Drs. Murphy and Breen reviewed your records and considered them in assessing your condition. The Committee noted in particular that while the records you submitted reflect diagnoses of mild to moderate cognitive disorder and traumatic brain injury, neither neutral physician agreed with these determinations.

The Committee credited the conclusions of Plan physicians for several reasons. First, they are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's physicians reviewed all of the records you provided, they conducted thorough physical examinations of you, and they provided complete and detailed reports of your condition. Third, the Committee found that the conclusions of the Plan's neutral physicians were consistent, in that they independently concluded that you do not have an acquired neurocognitive impairment. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players.

**Appeal Rights**

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's decision. You may appeal the Committee's decision to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents and any other information that you believe supports your appeal. The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the Plan's terms. The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan Document which can also be found at www.nflplayerbenefits.com. Please note

Mr. Joey Thomas
April 23, 2019
Page 2

that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

Emily Parks
Benefits Coordinator
On behalf of the Disability Initial Claims Committee

cc: Sam Katz, Esquire

Enclosure

---

To receive assistance in these languages, please call:

SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)

CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)

TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)

NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

---

## Relevant Plan Provisions

**6.1    Eligibility.**  A Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i)  below are met:

(a)    The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)    The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)    The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan.

(d)    The Player must not receive T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)    At least one Plan neutral physician selected pursuant to Section 6.2(d) below must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)    After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 6.2(d) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)    The Player must execute the release described in Section 6.3.

(h)    The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)    The Player must satisfy the other requirements of this Article 6.

NFL_ALFORD-0011423

**6.2    Determination of Neurocognitive Impairment.**

(a)    Mild Impairment. Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit. Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction but are not severe enough to cause marked interference in day-to-day activities.

(b)    Moderate Impairment. Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit. Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction resulting in marked interference with everyday life activities, but not severe enough to prevent the Player from working.

(d)    Medical Evaluations. Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits under this Section 6.2, such Player will first be required to submit to an examination scheduled by the Plan with a neutral physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any person refusing to submit to any examination will not be entitled to any NC Benefits under this Article. If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days advance notice to the NFL Player Benefits Office that he was unable to attend. The Plan will reschedule the Player's exam if two business days' advance notice is provided. The Player's application for NC Benefits

NFL_ALFORD-0011424

will be denied if he fails to attend the rescheduled exam, even if advance notice is provided. The Disability Initial Claims Committee or the Disability Board, as applicable, may waive the rule in the prior sentence if circumstances beyond the Player's control preclude the Player's attendance at the examination. A Player or his representative may submit to the NFL Player Benefits Office medical records or other materials for consideration by a neutral physician, institution, or medical professional, except that any such materials received by the NFL Player Benefits Office less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a neutral physician, institution, or medical professional.

### 13.14 Claims Procedure.

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. Section 2560.503-1.

(a)    **Claims Received After April 1, 2018.** Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require. The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required. The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name. The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim. This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision. If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve

those issues. The claimant will be afforded at least 45 days within which to provide the specified information. If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1)     the specific reason(s) for the adverse determination;

(2)     reference to the specific Plan provisions on which the adverse determination is based;

(3)     a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4)     a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review;

(5)     any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)     if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7)     a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

NFL_ALFORD-0011426

(8)    a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied

upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1)    state the specific reason(s) for the adverse determination;

(2)    reference the specific Plan provision(s) on which the adverse determination is based;

(3)    state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4)    state that the claimant has the right to bring an action under ERISA Section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5)    disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)    if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7)    discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant

NFL_ALFORD-0011428

presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures. Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable. The Plan will provide an explanation within 10 days of the request.

Confidential Information

**NFL PLAYER BENEFITS**

DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Federal Express

February 13, 2020

Mr. Joey Thomas

**Re: NFL Player Disability & Neurocognitive Benefit Plan—Final Decision on Review**

Dear Mr. Thomas:

On February 13, 2020, the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan ("Plan") considered your appeal from the earlier denial of your application for neurocognitive disability ("NC") benefits. We regret to inform you that the Disability Board denied your appeal. This letter explains the Disability Board's decision; it identifies the Plan provisions on which the decision was based; and it explains your legal rights.

**Discussion**

The Plan provides NC benefits to eligible Players who have "mild" or "moderate" neurocognitive impairment, as defined by the terms of the Plan.

The Plan received your completed application for NC benefits on March 11, 2019. You were then evaluated by two Plan neutral physicians, neurologist Dr. Lawrence Murphy and neuropsychologist Dr. Alan Breen pursuant to Plan Section 6.2(d). By report dated March 25, 2019, Dr. Murphy indicated that despite a number of cognitive complaints, your condition does not rise to the level of a diagnosable neurocognitive disorder. By report dated March 25, 2019, Dr. Breen concluded that your current assessment presented no evidence of acquired neurocognitive impairment. By joint report dated March 24 – 25, 2019, Drs. Murphy and Breen indicated that you do not show evidence of acquired neurocognitive impairment. The Committee denied your application because no Plan neutral physician determined that you have a mild or moderate acquired neurocognitive impairment (Plan Section 6.1(e)).

By letter received October 7, 2019, your attorney, Sam Katz, appealed the Committee's initial decision to the Disability Board.

On appeal you were examined by two additional Plan neutral physicians, neurologist Dr. Eric Brahin and neuropsychologist Dr. Francisco Perez, pursuant to Plan Section 6.2(d) and the Plan's claims procedures. By report dated October 23, 2019, Dr. Brahin indicated that he was unable to determine whether you have any acquired neurocognitive impairment due to inconsistencies among your previous and current evaluations. By report dated October 26, 2019, Dr. Perez concluded that while

NFL_ALFORD-0011412

Mr. Joey Thomas
February 13, 2020
Page 2

some data may suggest a mild cognitive impairment, it is not related to an acquired disorder. Dr. Perez reported that you are experiencing a "nocebo effect" and explained that you have developed a fixed belief system that you have cognitive problems that impact your performance. By joint report dated October 23 – 24, 2019, Drs. Brahin and Perez confirmed that you do not show evidence of acquired neurocognitive impairment.

By letter dated November 1, 2019, the NFL Player Benefits Office provided you and Mr. Katz with a copy of the neutral physicians' reports, and advised that you had the right to respond before the Disability Board issued a final decision on your appeal. By letter received January 14, 2020, Mr. Katz argued that the neutral physicians' findings support a finding of acquired neurocognitive impairment.

On February 13, 2020, the Disability Board reviewed all of the evidence in your Plan file and unanimously concluded that you are ineligible for NC benefits. Section 6.1(e) of the Plan states that, for a Player to be eligible for NC benefits, "at least one Plan neutral physician must conclude that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2. If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record." In your case, the Disability Board found that you did not meet this threshold requirement because you have been examined by four Plan neutral physicians, and none found that you have an acquired neurocognitive impairment. This Plan rule precludes an award of NC benefits, regardless of any records or opinions provided in support of your application and appeal (including but not limited to the records you submitted with your application).

The Disability Board considered Mr. Katz's arguments and the medical records that you submitted with your application, but found that it could not credit the prior conclusion(s) that you suffer from neurocognitive impairment in any event. The Disability Board noted that the conclusions were not supported by the more recent and, in the Disability Board's view, more reliable test results provide by the Plan's neutral physicians. The Disability Board therefore determined that the evidence in the record did not support the conclusion that you have either a mild or moderate acquired neurocognitive impairment, as defined by the Plan.

The Disability Board took into account the following factors. First, neutral physicians are specialists in the medical field encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, the Plan's neutral physicians reviewed all of the records you provided, performed an evaluation, and unanimously concluded that you do not have an acquired neurocognitive impairment despite your impairments. Finally, the Plan's physicians are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players. The Disability Board has no doubt that the Plan's

Mr. Joey Thomas
February 13, 2020
Page 3

neutral physicians fully understand the obligation to conduct fair and impartial Player evaluations, and that they have done so in your case.

For these reasons, the Disability Board denied your appeal.

**Legal Rights**

You should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the regulations issued thereunder by the Department of Labor. To obtain further review of this decision, you have the right to bring an action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended. Under Plan Section 13.4(a) you must file such an action within 42 months from the date of the Board's decision. Your deadline for bringing such an action therefore is August 13, 2023.

This letter identifies the Plan provisions that the Disability Board relied upon in making its determination. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan document for a full recitation of the relevant Plan terms. The Disability Board did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits, including the governing Plan document.

You may call the NFL Player Benefits Office if you have any questions.


Sincerely,

*Michael B. Miller*

Michael B. Miller
Plan Director
On behalf of the Disability Board

Enclosure

cc: Sam Katz, Esquire

To receive assistance in these languages, please call:

SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)

CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)

TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)

NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

NFL_ALFORD-0011415

## Relevant Plan Provisions

**Plan Section 6.1** states:

> Eligibility.  A Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met:

(a)     The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)     The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)     The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan.

(d)     The Player must not receive T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)     At least one Plan neutral physician selected pursuant to Section 6.2(d) below must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan neutral physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)     After reviewing the report(s) of the Plan neutral physician(s) selected pursuant to Section 6.2(d) below, along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)     The Player must execute the release described in Section 6.3.

(h)     The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)     The Player must satisfy the other requirements of this Article 6.

                                                                        NFL_ALFORD-0011416

Under **Plan Section 6.2**, a Player's neurocognitive impairment is determined as follows:

(a)  Mild Impairment.  Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.  Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction but are not severe enough to cause marked interference in day-to-day activities.

(b)  Moderate Impairment.  Effective for applications received on and after March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.  Effective for applications received before March 1, 2017, a Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has problems with one or more domains of cognitive functioning which reflect acquired brain dysfunction resulting in marked interference with everyday life activities, but not severe enough to prevent the Player from working.

....

(d)  Medical Evaluations.  Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits under this Section 6.2, such Player will first be required to submit to an examination scheduled by the Plan with a neutral physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

**Plan Section 13.4** is entitled "Limitation on Actions."  It states, in pertinent part:

(a)  Adverse Determinations.  No suit or legal action with respect to an adverse determination may be commenced more than 42 months from the date of the final decision on the claim for benefits (including the decision on review).

NFL_ALFORD-0011417