**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

|  |  |
|---|---|
| JASON ALFORD *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-00358-JRR |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF DANIEL LOPER'S CLAIMS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................. 3

LEGAL STANDARD............................................................................................. 11

ARGUMENT ......................................................................................................... 12

    I.     THE BOARD DID NOT ABUSE ITS DISCRETION IN DETERMINING
          THAT MR. LOPER WAS NOT ENTITLED TO BENEFITS UNDER
          THE PLAN'S TERMS ..................................................................... 12

          A.    The Board's Decision Was Consistent With the Plan's Terms,
               Which Are Plain and Unambiguous. ......................................... 14

          B.    The Board's Decision Was Consistent with the Plan's Purposes
               and Goals. ................................................................................ 16

          C.    The Materials the Board Considered Were Adequate to Support Its
               Decision. ................................................................................. 16

          D.    The Remaining *Booth* Factors All Support Finding that the Board's
               Decision Was Reasonable. ......................................................... 19

    II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
          COUNT II BECAUSE THE DENIAL LETTERS SENT TO MR. LOPER
          COMPLY WITH ERISA'S CLAIMS PROCEDURES. ..................................... 24

    III.    THE BOARD CONDUCTED A FULL AND FAIR REVIEW OF MR.
          LOPER'S BENEFITS CLAIM................................................................ 26

    IV.    MR. LOPER'S ALLEGATIONS OF BREACH OF FIDUCIARY DUTY
          FALL FAR SHORT OF CREATING A TRIABLE ISSUE OF FACT. .............. 27

          A.    The Board Did Not Breach Its Fiduciary Duty by Denying Mr.
               Loper's Benefits Claims. ............................................................ 28

          B.    Nothing About the Hiring or Compensation of Neutral Physicians
               Supports a Finding That Defendants Breached Any Fiduciary
               Duty........................................................................................ 29

          C.    The Board Did Not Breach Any Fiduciary Duty in its
               Interpretation of the Plan. ......................................................... 30

          D.    The Board Did Not Breach Any Duty in its Review of Records............. 30

CONCLUSION........................................................................................................ 30

CERTIFICATE OF SERVICE ................................................................................ 32

# TABLE OF AUTHORITIES

**Page**

**<u>Cases</u>**

*Blackshear v. Reliance Standard Life Ins. Co.*,
    509 F.3d 634 (4th Cir. 2007) ................................................ 15

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
    201 F.3d 335 (4th Cir. 2000) ......................................... passim

*Boyce v. Eaton Corp. Long Disability Plan*,
    2017 WL 3037392 (W.D.N.C. July 18, 2017) ......................... 23

*Boyd v. Bell*,
    796 F. Supp. 2d 682 (D. Md. 2011) ........................... 12, 23, 30

*Brown v. Covestro LLC Welfare Benefits Plan*,
    2023 WL 8481914 (W.D. Pa. Nov. 15, 2023) ......................... 25

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
    919 F.3d 763 (4th Cir. 2019) ................................................ 21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................. 12

*Chao v. Malkani*,
    452 F.3d 290 (4th Cir. 2006) ......................................... 28, 29

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*,
    612 F. Supp. 3d 516 (D. Md. 2020) ...................................... 29

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) .............................................................. 16

*Colucci v. Agfa Corp. Severance Pay Plan*,
    431 F.3d 170 (4th Cir. 2005), *abrogated on other grounds by Champion v.*
    *Black & Decker (U.S.) Inc.*, 550 F.3d 353 (4th Cir. 2008) ................... 15, 16, 24, 31

*Compare Bidwell v. Garvey*,
    743 F. Supp. 393 (D. Md. 1990) .......................................... 28

*Conkright v. Frommert*,
    559 U.S. 506 (2010) .............................................................. 28

*Cosey v. Prudential Ins. Co. of Am.*,
    735 F.3d 161 (4th Cir. 2013) ................................................ 13

*Courson v. Bert Bell NFL Player Ret. Plan*,
    75 F. Supp. 2d 424 (W.D. Pa. 1999), *aff'd*, 214 F.3d 136 (3d Cir. 2000) ............... 23

*Dawson-Murdock v. Nat'l Counseling Grp., Inc.*,
    931 F.3d 269 (4th Cir. 2019) ................................................ 30

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    487 F. Supp. 3d 807 (N.D. Cal. 2020), *aff'd and remanded on other grounds*,
    855 F. App'x 332 (9th Cir. 2021) ...................................................................................... 23, 24

*Donnell v. Metro. Life Ins. Co.*,
    165 F. App'x 288 (4th Cir. 2006)), *aff'd*, 584 F. App'x 109 (4th Cir. 2014) ........................ 18

*Evans v. Eaton Corp. Long Term Disability Plan*,
    514 F.3d 315 (4th Cir. 2008) ...................................................................................... 14, 16

*Everette v. Liberty Life Assurance Co. of Bos.*,
    2017 WL 2829673 (D. Md. June 29, 2017) ................................................................ 24

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989) ...................................................................................... 12, 14, 31

*Fortier v. Principal Life Ins. Co.*,
    666 F.3d 231 (4th Cir. 2012) ...................................................................................... 22

*Friz v. J & H Marsh & McLennan, Inc.*,
    2 F. App'x 277 (4th Cir. 2001) ................................................................................ 17, 21

*Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*,
    31 F.4th 854 (4th Cir. 2022) ...................................................................................... 21

*Geddes v. United Staffing All. Emp. Med. Plan*,
    469 F.3d 919 (10th Cir. 2006) .................................................................................. 21

*Geiger v. Zurich Am. Ins. Co.*,
    72 F.4th 32 (4th Cir. 2023) .............................................................................. 12, 13, 14

*Gelumbauskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*,
    2010 WL 2025128 (D. Md. May 17, 2010) .................................................................. 25

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    925 F. Supp. 2d 700 (D. Md. 2012) .................................................................. 14, 15, 23, 30

*Hall v. Standard Ins. Co.*,
    2005 WL 348266 (W.D. Va. Feb. 10, 2005) ................................................................ 23

*Harrison v. Wells Fargo Bank, N.A.*,
    773 F.3d 15 (4th Cir. 2014) ...................................................................................... 13

*Hayes v. Prudential Ins. Co. of Am.*,
    60 F.4th 848 (4th Cir. 2023) ...................................................................................... 12

*Hein v. FDIC*,
    88 F.3d 210 (3d Cir. 1996) ...................................................................................... 29

*Hilton v. Unum Life Ins. Co. of Am.*,
    967 F. Supp. 2d 1114 (E.D. Va. 2013) ......................................................................... 21

*Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    468 F.3d 1082 (8th Cir. 2006) .................................................................................. 23

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Juric v. USALCO, LLC*,
  659 F. Supp. 3d 619 (D. Md. 2023) ....................................... 29

*Kane v. UPS Pension Plan Bd. of Trustees*,
  2013 WL 6502874 (D. Md. Dec. 11, 2013).............................. 18

*Kress v. Food Emps. Lab. Rels. Ass'n*,
  391 F.3d 563 (4th Cir. 2004) ....................................... 16, 31

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 108 (2008)......................................................... 22

*Mid Atl. Med. Servs., LLC v. Sereboff*,
  407 F.3d 212 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006) ................... 15

*Morris v. Nat'l Football League Ret. Bd.*,
  833 F. Supp. 2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir.
  2012) ....................................................................... 23

*Mullins v. AT&T Corp.*,
  424 F. App'x 217 (4th Cir. 2011) ...................................... 20

*Pegram v. Herdrich*,
  530 U.S. 211 (2000).......................................................... 29

*Pender v. Bank of Am. Corp.*,
  788 F.3d 354 (4th Cir. 2015) ....................................... 16, 31

*R&R adopted*,
  2024 WL 1123588 (W.D. Tex. Mar. 13, 2024) ............................ 13, 25

*Rhodes, Inc. v. Morrow*,
  937 F. Supp. 1202 (M.D.N.C. 1996) ...................................... 30

*Ricci v. DeStefano*,
  557 U.S. 557 (2009)............................................................ 12

*Schkloven v. Hartford Life & Accident Ins. Co.*,
  2022 WL 2869266 (D. Md. July 21, 2022)................................. 14, 17

*Smith v. Cont'l Cas. Co.*,
  369 F.3d 412 (4th Cir. 2004) ............................................... 22

*Smith v. NFL Player Disability & Neurocognitive Benefit Plan*,
  2024 WL 722594 (W.D. Tex. Jan. 9, 2024) ........................... 13, 16, 20

*Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2012 WL 2374661 (D. Md. June 19, 2012)................................. 21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)......................................................... 15

*Switzer v. Benefits Admin. Comm.*,
  2014 WL 4052855 (D. Md. Aug. 13, 2014) ............................... 25

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Tatum v. RJR Pension Inv. Comm.,*
  761 F.3d 346 (4th Cir. 2014) ................................................................... 21

*United States v. 8.929 Acres of Land in Arlington Cnty., Va.,*
  36 F.4th 24 (4th Cir. 2022) ..................................................................... 12

*US Airways, Inc. v. McCutchen,*
  569 U.S. 88 (2013)................................................................................... 14

*Varity Corp. v. Howe,*
  516 U.S. 489 (1996)................................................................................. 27

*Vaughan v. Celanese Americas Corp.,*
  339 F. App'x 320 (4th Cir. 2009) ............................................. 13, 20, 22

*Waldoch v. Medtronic,*
  757 F.3d 822 (8th Cir. 2014) ................................................................... 21

*Walker v. AT&T Benefit Plan No. 3,*
  2022 WL 1434668 (C.D. Cal. Apr. 6, 2022), *aff'd,* 2023 WL 3451684 (9th
  Cir. May 15, 2023)................................................................................... 27

*Williams v. Metro. Life Ins. Co.,*
  609 F.3d 622 (4th Cir. 2010) ................................................................... 12

*Wilson v. UnitedHealthcare Ins. Co.,*
  27 F.4th 228 (4th Cir. 2022) ............................................. 18, 19, 20, 21

*Youboty v. NFL Player Disability & Neurocognitive Benefit Plan,*
  2020 WL 5628020 (S.D. Tex. Aug. 17, 2020) ....................................... 23

*Youboty v. NFL Player Disability,*
  856 F. App'x 497 (5th Cir. 2021) .............................................. 13, 15, 20

**<u>Statutes</u>**

29 U.S.C. § 1002(16)(A)................................................................................. 3

29 U.S.C. § 1002(16)(B)................................................................................. 3

29 U.S.C. § 1002(21)(A)................................................................................. 3

29 U.S.C. § 1132(a)(1)(B) ........................................................................... 14

ERISA § 502(a)(1)(B)................................................................................... 12

ERISA § 502(a)(2)........................................................................................ 28

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) .................................................................................... 12

**<u>Regulations</u>**

29 C.F.R. § 2560.503-1(b)(7) ...................................................................... 27

29 C.F.R. § 2560.503-1(h)(2)(iv)................................................................. 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

29 C.F.R. § 2560.503-1(j)(6) ........................................................................................... 25

## INTRODUCTION

Plaintiff Daniel Loper is one of nine plaintiffs bringing disparate Employee Retirement Income Security Act ("ERISA") claims within this single lawsuit to contest the decision on his application for disability benefits.  Mr. Loper alleges that his 2020 application for line-of-duty ("LOD") benefits under the NFL Player Disability & Survivor Benefit Plan (the "Plan") was improperly denied.  He alleges the Plan's Board of Trustees (the "Board") charged with administering the Plan failed to provide adequate notice or a full and fair review of that claim and that the Board should be removed for breaching its fiduciary duties, both by failing to properly review his claim and by failing to ensure that the Neutral Physicians who evaluated him were unbiased.  He makes these arguments even though he subsequently applied for and was granted total-and-permanent ("T&P") benefits, a *higher* level of benefits, by the same Board.

Defendants are entitled to summary judgment as to each of Mr. Loper's claims.  Mr. Loper's claim for benefits (Count I) is foreclosed by the plain text of the Plan—negotiated by the NFL teams and Mr. Loper's union—which expressly provides that an NFL player is not entitled to LOD benefits unless at least one Neutral Physician finds that the player meets the Plan's standard for LOD disability.  Neither of the two Neutral Physicians who evaluated Mr. Loper for his LOD application found that he met the Plan's eligibility requirements, and the Board did not abuse its discretion in relying on the Neutral Physicians' well-reasoned reports.  Accordingly, Defendants are entitled to summary judgment regarding his benefits claim.

Mr. Loper likewise cannot prevail on his claim that his denial notices were defective (Count II) because an examination of the relevant notices makes plain that they provided the required information.  His attacks on the Board's processes fare no better (Count III).  Although the Court was required at the motion to dismiss stage to credit Plaintiffs' unsupported allegations that the

Board "designed a sham claims process" that uses "financial incentives" to induce Neutral Physicians to find that players are not disabled, ECF No. 56, Pls.' Am. Class Action Compl. ("AC" or the "Complaint") ¶¶ 334-37, the undisputed facts demonstrate the contrary.  Both Neutral Physicians who evaluated Mr. Loper were assigned based solely on neutral criteria, were directed to provide their best professional judgment, and were not offered any financial incentive to reach a particular determination.  Decl. of H. Vincent in Support of Defs.' Joint MSJ of Pl. D. Loper's Claims ("Vincent Decl.") ¶ 27; Ex. E, Orientation Manual, at DL-639.  And expert analysis of six years of Neutral Physician assignments and compensation disproves Plaintiffs' theories about *any* supposed financial incentive to deny claims.  *See* Decl. of D. Lasater in Support of Defs.' Opp. to Pl. Mot. for Class Cert. ("Lasater Decl.") ¶¶ 7-10.  Mr. Loper's allegations of a "sham claims process," AC ¶ 336, are particularly baseless given that the Plan has paid nearly $1.2 billion in disability benefits[1] from the beginning of the 2017 plan year through the 2022 plan year to thousands of players, and has awarded benefits in approximately 51.2% of T&P applications, 50.8% of LOD applications, and 23.9% of NC applications between January 1, 2018 and July 31, 2024.  *See* Lasater Decl. ¶ 42 & Table 4; Miller Decl. ¶¶ 5-6.

Mr. Loper cannot maintain his claims for fiduciary breach in Count V, because these allegations are derivative of the same alleged failures underlying Counts I, II, and III.  Moreover, even if the Court were to find that the Board committed an error in denying Mr. Loper's claim (which finds no support in the record) or that Mr. Loper's notices were deficient (they were not), these kinds of alleged errors do not even come close to meeting the standard to demonstrate a

---

[1] This figure does not include disability benefits paid out of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Plan").  *See* Ex. A, Apr. 1, 2021 Disability Plan Doc. ("DPD" or "2021 DPD"), at DL-6 (explaining that a portion of disability benefits are still paid out of the Retirement Plan); Ex. B, Apr. 1, 2017 Disability Plan Doc. ("2017 DPD"), at DL-113 (Retirement Plan will continue to pay certain T&P and LOD benefits); Decl. of M. Miller in Support of Defs.' Joint MSJs ("Miller Decl.") ¶ 4.  "Ex." refers to the exhibits attached to Mr. Vincent's declaration. Exhibits are sequentially paginated, beginning with "DL-1," and omitting leading zeroes.

fiduciary breach.  For these reasons, as set forth more fully below, the Court should enter summary judgment for Defendants on all of Mr. Loper's claims.

## STATEMENT OF UNDISPUTED FACTS

***The Disability Plan & The Board***

The Plan is a Taft-Hartley, multi-employer benefit plan established, negotiated, and maintained through collective bargaining between the NFL Players Association ("Players Association"), which represents NFL players; and the NFL Management Council ("Management Council"), which represents the NFL teams.  *See* DPD DL-6; 29 U.S.C. §§ 1002(16)(A)-(B) , 1002(37)(A).[2]  It is governed by ERISA.  *See* DPD DL-6.

For the 2017 plan year through the 2022 plan year, the NFL teams, who fund the Plan, contributed $1.33 billion to the Plan; in the 2022 plan year alone, the teams contributed $298,400,000.  Miller Decl. ¶ 3.  During that time, the Plan paid nearly $1.2 billion in benefits to former NFL players and their beneficiaries, including, in 2022, $257,463,357 to roughly 23% of Plan participants, for an average annual benefit of $86,455.  *Id.* ¶¶ 5-6.

The Board is the administrator and named fiduciary of the Plan.  DPD §§ 1.2, 9.2; *see* 29 U.S.C. §§ 1002(16)(A)-(B).  The Board has six voting members, three appointed by the Players Association and three appointed by the Management Council, DPD § 9.1; all Players Association members are former NFL players, Vincent Decl. ¶ 1.  The Board is "responsible for implementing and administering the Plan, subject to the terms of the Plan," and it has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan."  DPD §§ 9.2, 9.9; *see* 29 U.S.C. § 1002(21)(A); *see also* AC ¶ 43.  The Board's discretion extends to "decid[ing] claims for benefits"; adopting procedures for the Plan's administration; and delegating

---

[2] The Plan document effective when Mr. Loper's 2020 claim was decided—the only claim not barred by the limitations period—was amended and restated as of April 1, 2021, and executed on August 17, 2021.  DPD DL-6, 85.

certain tasks to other persons—including advisors, counsel, consultants, and physicians.  DPD §§ 9.2(c), (e), (f).  The Plan specifies that the Board is entitled to rely conclusively upon the advice or opinion of such persons.  *Id.* § 9.2(f).  Neither Committee nor Board members are paid for their services to the Plan, and no Committee or Board member receives any remuneration or pecuniary gain if there is any residual or remainder in Plan assets after benefits are paid.  Miller Decl. ¶ 7.

### Neutral Physicians and LOD Benefits Eligibility

Since 2017, the Plan has included a collectively bargained "Neutral Rule," which requires that no player can be eligible for benefits unless at least one Neutral Physician finds that the player satisfies the relevant Plan disability standard.  Vincent Decl. ¶ 14; 2017 DPD § 5.1(b) (LOD standard).  "Neutral Physicians" is defined by the Plan to mean physicians or other health care professionals who "examine each Player referred by the Plan and … provide such report or reports on the Player's condition as necessary for the Disability Board or Disability Initial Claims Committee to make an adequate determination as to that Player's physical or mental condition." DPD §§ 1.25, 12.3(b).  Neutral Physicians are "jointly designate[d]" by the Players Association and Management Council to a panel available to conduct medical examinations; the Board plays no role in the designation process.  *Id.* § 12.3(a); Vincent Decl. ¶ 15.

When a former player submits an application or appeal, the NFL Player Benefits Office ("NFLPBO") assigns one or more Neutral Physicians from the panel to evaluate the applicant. DPD § 5.4(b); Vincent Decl. ¶¶ 18-19.  Assignments are made solely using neutral criteria such as area of specialty, proximity, and availability to conduct a timely evaluation.  Vincent Decl. ¶ 19. Neither the NFLPBO nor the Board maintains statistics concerning individual Neutral Physicians' past disability determinations.  *Id.*; Miller Decl. ¶ 8.  Neutral Physicians "must (1) certify that any opinions offered … will be provided without bias for or against any Player, and (2) accept and

provide services pursuant to a 'flat-fee' agreement, such that the amount of compensation provided by the Plan will not depend on whether his or her opinions tend to support or refute any given Player's application for benefits."  DPD § 12.3(a).[3]

Neutral Physicians complete standard Physician Report Forms and write narrative reports for each examination they conduct ("PRF").  *Id.* § 12.3(b); Vincent Decl. ¶ 25.  When Mr. Loper applied, players were permitted to submit records for the Neutral Physician's consideration (since October 1, 2020, players are required to submit medical records with their applications).  DPD § 5.4(b); *see* Ex. D, Admin. Record ("AR"), at DL-221.

To receive LOD benefits, a player must have incurred a "substantial disablement" "arising out of League football activities."  DPD § 5.1(c); AC ¶ 76.  A "substantial disablement," for applications based on orthopedic impairments received before April 1, 2020, are those impairments caused by League football-related injuries that are, in the aggregate, "rated at least 10 points" on the Plan's Point System for Orthopedic Impairments (the "Point System"), which "assigns points to each orthopedic impairment recognized under the Plan."  DPD §§ 5.1(c), 5.5(a)(4)(A), DL-71-84; AC ¶ 73.  A player is awarded a specified number of points agreed to by the Players Association and Management Council for each orthopedic impairment, but only where that impairment both arose out of League football activities and "has persisted or is expected to persist for at least 12 months from the date of its occurrence." DPD DL-74.  If no Neutral Physician awards the player the required 10 points, the "threshold requirement" is not met, and the player will not be eligible for LOD benefits "regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record."  *Id.*

---

[3] Neutral Physicians' contracts similarly require them to "personally conduct each test and examination, and prepare each report, according to the highest applicable professional standards, without any bias or favoritism for or against any Player."  *See, e.g.*, Ex. C, Dr. David Apple Contract, at DL-00218.

§ 5.1(c); *see* Vincent Decl. ¶ 27.

The NFLPBO holds orientation sessions for newly appointed Neutral Physicians, where it provides and explains the relevant Orientation Manual for the physician's specialty, the Disability Plan Summary Plan Description ("SPD"), and other information, including, for Neutral Physician orthopedists, an explanation of the Point System. *Id.*; DPD DL-71-84. The Manuals direct the physicians to personally evaluate players, review and evaluate all submitted records, conduct examinations and prepare reports to the "highest professional standards without any bias or favoritism for or against any Player," complete reports within 10 days after an examination, verify that test results and other data are accurate and thorough, and have no conflict of interest. *See, e.g.*, Ex. E, Ortho. Manual, at DL-629. Orthopedists are directed to perform a "comprehensive, full-body, orthopedic examination." *Id.* at DL-632.

***Claims Process***

Players may apply for benefits online or by mail and are directed to include information about any and all impairments they believe support their application. Ex. F, Oct. 2022 SPD, at DL-692. Upon receipt of an application, the NFLPBO assigns one or more Neutral Physicians to examine the player, and the Neutral Physicians send PRFs back to the NFLPBO after completing their examinations. DPD § 5.4(b); *see* Vincent Decl. ¶¶ 19, 25. The Plan provides that a Committee of three members—one appointed by the Players Association, one appointed by the Management Council, and the Medical Director, DPD § 9.4(a)—makes the initial benefits determination, based on the Neutral Physicians' reports and the information the player submits. *Id.* §§ 5.1(d), 9.4-9.6. The Committee members have access to all application records through an online portal. Vincent Decl. ¶ 30. If the Committee finds the player eligible, benefits are awarded. *See* DPD § 13.14(a). If the Committee finds the player ineligible, including because no Neutral

Physician has awarded the player the requisite 10 points, the Committee advises the player of the "specific reason(s)," the relevant Plan provisions, that he is entitled to free copies of all "relevant" records, and that he may appeal to the Board. *Id.*; *see* 29 C.F.R. § 2560.503-1(g)(1).

Players must appeal to the Board within 180 days of the player's receipt of the Committee's determination. DPD §§ 9.6, 13.14(a). On appeal, the NFLPBO assigns one or more new Neutral Physicians who did not examine the player at the Committee level to examine the player, and the player may submit additional information not presented to the Committee. *Id.* §§ 5.1(d), 13.14(a). The Board has "full and absolute discretion" to "[d]ecide claims for benefits," and "to determine the relative weight to give" supplemental information. *Id.* §§ 9.2, 9.9. The Board reviews the Committee's determination but determines *de novo* whether a player is entitled to benefits. *Id.* §§ 5.1(d), 13.14(a).

Board members have access to all information in the record through an online portal. Vincent Decl. ¶ 30; Decl. of R. Smith in Support of Defs.' Joint MSJ of Pl. D. Loper's Claims ("Smith Decl.") ¶ 9. The Management Council and the Players Association separately employ advisors ("Party Advisors") to assist with review of appeals. Smith Decl. ¶¶ 5-6. Prior to the quarterly Board meetings, the Party Advisors review each individual case file associated with each appeal that will be presented to the Board. Decl. of P. Reynolds in Support of Defs.' Joint MSJs ("Reynolds Decl.") ¶¶ 7-8; Decl. of A. Williams in Support of Defs.' Joint MSJs ("Williams Decl.") ¶¶ 6-7. The Party Advisors independently prepare recommendations for their respective Board members, and also meet with their counterparts to discuss cases. Reynolds Decl. ¶ 9; Williams Decl. ¶ 8. The Board members from the Management Council and Players Association each separately convene before the full Board meeting to review appeal presentations from their respective Party Advisors. Reynolds Decl. ¶ 11; Williams Decl. ¶ 10. Representatives of the

NFLPBO and Plan counsel attend these meetings; their role is to observe discussions and provide guidance on questions from the Party Advisors. Reynolds Decl. ¶ 10; Williams Decl. ¶ 9.

The full Board convenes for the joint formal Board meeting, where Board members vote on each case and memorialize their decisions. Smith Decl. ¶ 15. If the Board finds a player eligible, benefits are awarded. *See* DPD § 5.1. If the Board denies the claim, it provides a written explanation of the denial, citing the specific Plan provisions that are the basis for the denial and informing the player of his right to sue under the Plan and ERISA.[4] *Id.* § 13.14(a); *see also* 29 C.F.R. § 2560.503-1(o). The Plan requires all players to exhaust their administrative remedies prior to filing suit, including appealing any Committee decision to the Board within 180 days. DPD §§ 9.6, 13.14(a). Any lawsuit challenging a Board determination must be filed within 42 months of the challenged decision. *Id.* § 13.4; ECF No. 85.

### *Mr. Loper's 2020 Application for LOD Benefits*

Mr. Loper applied for LOD benefits on two occasions: once on March 16, 2018 and again on March 3, 2020. Ex. G, 2018 Application, at DL-752; AR DL-221.[5] Mr. Loper's claims in this lawsuit concern only his 2020 application for LOD benefits. AC ¶ 208.[6] He submitted 187 pages

---

[4] If three or more Board members conclude a "medical issue" must be resolved to determine whether benefits should be approved or denied, the Board may submit that specific issue—such as a disagreement between two Neutral Physicians about a discrete medical question—for a final, binding decision by a Medical Advisory Physician ("MAP"), typically a senior Neutral Physician entrusted with resolving medical questions. *Id.* §§ 9.3(a), 12.2. No MAP submission was made with respect to Mr. Loper's claim.

[5] When the Board decided Mr. Loper's 2018 application, the Plan was known as the "NFL Player Disability & Neurocognitive Benefit Plan." *See* 2017 DPD at DL-109. When the Board decided his 2020 application, the Plan was known as the "NFL Player Disability & Survivor Benefit Plan." DPD at DL-6; *see* AR DL-620. Mr. Loper submitted 32 pages of medical records—largely MRIs—with his 2018 application. Ex. H, 2018 Medical Records, at DL-758-89. Both Neutral Physicians who evaluated him for his 2018 LOD claim awarded him six points: three for "Symptomatic Shoulder Instability" in each of his shoulders. Ex. I, Dr. Herndon Murray PRF, at DL-790-92; Ex. J, Dr. Glenn Perry PRF, at DL-798-800. The Board denied Mr. Loper's 2018 application because he did not have the requisite points for LOD benefits. Ex. K, Feb. 19, 2019 Board Decision Letter, at DL-803-06. On March 3, 2020, Mr. Loper again applied for LOD benefits, listing several alleged orthopedic impairments as the basis for his claim and including additional medical records. AR DL-221, 225; AC ¶ 208.

[6] The Court has already ruled that Mr. Loper did not timely appeal the denial of his 2018 benefit application. ECF No. 78 at 13; ECF No. 85 at 3.

of medical records with his 2020 application, including physician and operative reports, diagnostic imaging studies, and NFL team records. AR DL-241-427, 435; AC ¶ 208. The Committee directed the NFLPBO to refer Mr. Loper for examination, and the NFLPBO selected Dr. David Apple, a Neutral Physician orthopedist, who was appointed to the panel pursuant to the NFLPBO's standard procedures and assigned to Mr. Loper pursuant to the NFLPBO's previously described neutral assignment criteria. AR DL-435; Vincent Decl. ¶ 21; DPD §§ 5.4(b), 12.3. Dr. Apple personally examined Mr. Loper and reviewed all of his records. AR DL-430 (Apple PRF); *see* AC ¶ 209. Based on his examination and review of records, Dr. Apple rated Mr. Loper's impairments arising out of League football activities at three points, for "Symptomatic Shoulder Instability" in his left shoulder. AR DL-428-30. Dr. Apple assigned no points for Mr. Loper's right shoulder, concluding "[r]ight shoulder no diagnosis." AR DL-428-30, 433. Dr. Apple's report notes "S/P Carpal Tunnel Release" in Mr. Loper's left wrist, stating the "[s]urgery occurred after NFL career." AR DL-429. Dr. Apple personally evaluated the wrist. AR DL-432. The report notes that X-rays and other tests showed results "within normal limits," that Mr. Loper's "[r]ange of motion was functional," and that Mr. Loper reported a number of activities demonstrating mobility and functionality, including doing scheduling for his company, taking his children to activities, and "tr[ying] [to] play[] NFL celebrity golf." *Id.* Dr. Apple awarded Mr. Loper no points for the left wrist after concluding the cause of the impairment was "unknown." AR DL-429, 433.

Because no Neutral Physician awarded Mr. Loper 10 points or more on the Point System, the Committee determined that Mr. Loper had not met the Neutral Rule threshold requirement for LOD benefits and denied Mr. Loper's claim. AR DL-435-36. The Committee informed Mr. Loper of his appeal rights and deadlines and provided him with a copy of the relevant Plan provisions.

AR DL-435-44; DPD § 13.14(a).  Mr. Loper timely appealed to the Board.  AR DL-445; AC ¶ 213.

On appeal, Mr. Loper supplemented the record with approximately 150 additional pages of medical records, including an operative report of a left shoulder arthroscopy, which was not included in his original application.  AR DL-495-96, 618.  Applying the Plan's standard, neutral criteria, the NFLPBO assigned an additional Neutral Physician orthopedist, Dr. Marcus Cook, to evaluate Mr. Loper.  DL-621; Vincent Decl. ¶ 21; *see* AC ¶ 213.  Dr. Cook was appointed to the panel pursuant to the NFLPBO's standard procedures.  Vincent Decl. ¶ 21.  Based on his personal examination of Mr. Loper and his review of the full supplemented record, Dr. Cook rated Mr. Loper's impairments at nine points: six for Mr. Loper's left shoulder, including three extra points for the "S/P Arthroscopic Stabilization Procedure with or without SLAP Repair," and three points for Mr. Loper's right shoulder.  AR DL-584-856 (Cook PRF).  Dr. Cook's report notes that "[s]ince his NFL career [Mr. Loper] had both carpal tunnels released due to carpal tunnel syndrome," but states Dr. Cook could "find no documentation of carpal tunnel symptoms or EMG of the hands during his NFL career in the plan records."  AR DL-589.

The NFLPBO sent Mr. Loper and his attorney, Sam Katz, copies of Dr. Cook's report and advised him of his right to respond before the Board issued a final decision.  AR DL-595-96, 621.  Mr. Katz responded with a letter criticizing the report, requesting a MAP review or an award of additional points for Mr. Loper's wrist impairment, and submitting video footage of an NFL game in support.  AR DL-608-17, 621.

The Board unanimously denied Mr. Loper's appeal because no Neutral Physician found that his orthopedic impairments met the Plan's 10-point requirement.  AR DL-621; AC ¶ 214.  The Board did not find a basis for a MAP evaluation because there was no disagreement between the Neutral Physicians, who both found Mr. Loper did not meet the Plan standard for LOD benefits.

AR DL-621 . The Board's denial letter explains it considered that Dr. Apple and Dr. Cook—both orthopedic specialists experienced in evaluating NFL players—conducted thorough physical examinations, reviewed all submitted records, provided complete reports of Mr. Loper's condition, and agreed Mr. Loper was not qualified for benefits. AR DL-621-22. The letter stated the reasons for denial, cited the relevant Plan provisions, acknowledged Mr. Katz's supplemental submission, and informed Mr. Loper of his right to challenge the decision in court. AR DL-620-22.

Mr. Loper filed this lawsuit on February 9, 2023. ECF No. 1.

***Mr. Loper's Post-Complaint Approval for T&P Benefits***

On February 26, 2024, Mr. Loper applied for T&P benefits based on claimed psychiatric and orthopedic impairments. Ex. L, Apr. 11, 2024 Comm. Decision Letter ("2024 Comm. Decision"), at DL-810. The Committee directed the NFLPBO to refer Mr. Loper for evaluations, and the NFLPBO selected two Neutral Physicians: psychiatrist Dr. Matthew Norman and orthopedist Dr. Michael Bernot. *Id.* Dr. Norman concluded Mr. Loper's psychiatric impairments render him T&P disabled, while Dr. Bernot found that his orthopedic impairments did not.[7] *Id.* at DL-811. The Neutral Rule having been satisfied, the Committee determined that Mr. Loper was T&P disabled. *Id.* at DL-810-11. Mr. Loper currently receives $11,250.00 each month. *Id.* at DL-810; Vincent Decl. ¶ 39.

## LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court construes "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *United States v. 8.929*

---

[7] Because Dr. Bernot conducted an orthopedic T&P assessment, the LOD Point System did not apply, *see* DPD DL-71, and he did not assess or award specific points as part of his evaluation, *see* 2024 Comm. Decision DL-810-12.

*Acres of Land in Arlington Cnty., Va.*, 36 F.4th 240, 252 (4th Cir. 2022) (quotation omitted). However, it is not Defendants' burden to disprove Plaintiffs' allegations. Rather, Mr. Loper "bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## ARGUMENT

**I.    THE BOARD DID NOT ABUSE ITS DISCRETION IN DETERMINING THAT MR. LOPER WAS NOT ENTITLED TO BENEFITS UNDER THE PLAN'S TERMS**

In Count I, Mr. Loper claims that his Plan benefits were wrongly denied under ERISA § 502(a)(1)(B).  AC ¶¶ 280-89.  Because the Plan gives the Board full and absolute discretion in "construing its terms and determining eligibility for benefits," the Court reviews the Board's denial of benefits for abuse of discretion.  *See Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 851 (4th Cir. 2023) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).  Under that standard, a court "will not disturb a plan administrator's decision if the decision is reasonable, even if [it] would have come to a contrary conclusion independently."  *Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 37 (4th Cir. 2023) (quoting *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010)).  Applying this standard, courts have regularly granted summary judgment to the Plan in cases in which the Board exercised its discretion in applying Plan terms.  *See, e.g.*, *Boyd v. Bell*, 796 F. Supp. 2d 682, 692 (D. Md. 2011) (granting summary judgment for the Board and finding no abuse of discretion); *Youboty v. NFL Player Disability*, 856 F. App'x 497, 500 (5th Cir. 2021) (affirming district court's use of abuse-of-discretion standard and grant of summary judgment for the Board); *Smith v. NFL Player Disability & Neurocognitive Benefit Plan*, 2024 WL 722594, at *6 (W.D. Tex. Jan. 9, 2024) (granting summary judgment for the Plan), *R. & R. adopted*, 2024 WL 1123588 (W.D. Tex. Mar. 13, 2024).

12

The Fourth Circuit applies an eight-factor test when reviewing the reasonableness of a denial of a benefit claim by an ERISA-governed plan's administrator. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000). The factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43; *see Vaughan v. Celanese Americas Corp.*, 339 F. App'x 320, 329 (4th Cir. 2009) (affirming grant of summary judgment for administrator under *Booth* factors); *Geiger*, 72 F.4th at 40 (affirming grant of judgment on the record for administrator under *Booth* factors).

The Court must consider the *Booth* factors "in the context of a 'highly deferential' standard of review." *Geiger*, 72 F.4th at 38 (citing *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 168 (4th Cir. 2013)). The Court should not evaluate whether it would have reached the same conclusion about Plan benefits, but rather whether the Board's decision was a part of a "deliberate, principled reasoning process," and "supported by substantial evidence." *See id.* (citation omitted).[8] "Substantial evidence" is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Id.* (citation omitted). It "does not mean a large or considerable amount of evidence," *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 715 (D. Md. 2012) (alteration omitted)—rather, substantial evidence is even "less than a preponderance,"

---

[8] This highly deferential standard of review recognizes that in deciding benefit claims, plan fiduciaries must strike "a balance between the obligation to guard the assets of the trust from improper claims" and "the obligation to pay legitimate claims." *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 20-21 (4th Cir. 2014) (citation omitted). This balance "ensure[s] that individual claimants get the benefits to which they are entitled" while "protect[ing] employees … from a contraction in the total pool of benefits available." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 326 (4th Cir. 2008).

*Schkloven v. Hartford Life & Accident Ins. Co.*, 2022 WL 2869266, at *23 (D. Md. July 21, 2022).

As discussed below, each of the *Booth* factors weighs in favor of a determination that the Board's decision was reasonable and that it did not abuse its discretion in denying Mr. Loper's application. The Board reasonably relied on two Neutral Physicians' reports that provided substantial evidence supporting the Board's decision, and the denial of the claim was the product of reasoned decision making in accordance with the Plan's procedures. Accordingly, Defendants are entitled to summary judgment in their favor as to Mr. Loper's denial of benefits claim because there is no triable issue of fact regarding the reasonableness of the Board's decision.

### A.    The Board's Decision Was Consistent With the Plan's Terms, Which Are Plain and Unambiguous.

The first *Booth* factor weighs in favor of finding that the Board did not abuse its discretion because its determination was consistent with the plain "language of the [P]lan." *Booth*, 210 F.3d at 342. ERISA's central tenet is that plan participants may only recover benefits owed to them "under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B); *see US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013). Indeed, ERISA's entire "statutory scheme … is built around reliance on … written plan documents." *McCutchen*, 569 U.S. at 100-01 (citation omitted). In deciding an ERISA claim, a court's "principal function" is thus to "protect contractually defined benefits" according to the "terms of the plan." *Id.* at 100; *see Firestone*, 489 U.S. at 115 (ERISA analysis "turn[s] on the interpretation of terms in the plan").

ERISA requires the Court to enforce the plain language of the Plan. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("[A]s with any other contract, the parties' intentions control."); *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006). The Board, as administrator, must also enforce the Plan terms as written. *See Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005),

14

*abrogated on other grounds by Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th Cir. 2008). Although the Board has absolute discretion to interpret the Plan, DPD § 9.2, "the administrator is not free to alter the terms of the [P]lan or to construe unambiguous terms other than as written." *Colucci*, 341 F.3d at 176; *see also Giles*, 925 F. Supp. 2d at 716. Disregarding or altering the Plan's terms "constitutes an abuse of discretion." *Giles*, 925 F. Supp. at 716 (quoting *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007)).

Here, Mr. Loper concedes he cannot qualify for LOD benefits under Plan terms unless at least one Neutral Physician finds that he "incurred a 'substantial disablement' 'arising out of League football activities,'" AC ¶¶ 73, 76; and that he did not satisfy that condition because neither of the Neutral Physicians who evaluated him found he met those requirements, *id.* ¶¶ 210, 213; DPD §§ 5.1(c), 5.5(a); AR DL-435-36, 620-22. Specifically, after evaluating Mr. Loper and reviewing his medical records, neither Dr. Apple nor Dr. Cook awarded him the requisite 10 points, and therefore did not find he had a "substantial disablement" "arising out of League football activities." AR DL-428-30, 584-86; DPD § 5.1(c); AC ¶¶ 210, 213.

Proper application of the Plan terms thus not only permitted denial of Mr. Loper's claim, it required it. *See Youboty*, 856 F. App'x at 499 (affirming summary judgment for Plan defendants where no Neutral Physician awarded the requisite points). As another district court recently held, summary judgment for the Plan is warranted where, as here, there is "no question that the Disability Board's denial of [the player's] appeal based on his failure to meet the Neutral Rule is consistent with the terms of the Disability Plan." *Smith*, 2024 WL 722594, at *6.

Although the Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan," DPD § 9.2, it has no discretion to deviate from the collectively bargained Plan terms. *See Colucci*, 431 F.3d at 176; *Smith*, 2024 WL 722594, at *6;

15

DPD § 9.2 (the Board is responsible for "implementing and administering the Plan, *subject to the terms of the Plan*" (emphasis added)).  Awarding Mr. Loper benefits without a Neutral Physician's finding of entitlement would have constituted a breach of the Board's discretion, regardless of Mr. Loper's arguments that the Plan should operate differently.  *See Kress v. Food Emps. Lab. Rels. Ass'n*, 391 F.3d 563, 569 (4th Cir. 2004); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 362 (4th Cir. 2015); *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that § 502(a)(1)(B) does not allow a court to change or alter the terms of a plan).

### B.    The Board's Decision Was Consistent with the Plan's Purposes and Goals.

The second *Booth* factor weighs in favor of finding that the Board did not abuse its discretion because its decision to apply the Neutral Rule to deny Mr. Loper's claim is consistent with the goal the Players Association and Management Council sought to achieve when they collectively bargained to add the Neutral Rule to the Plan.  *See Booth*, 201 F.3d at 343 ("Plan does not authorize its administrators to make determinations … that frustrate the purposes and goals of the Plan").  The Neutral Rule balances "the need to ensure that individual claimants get the benefits to which they are entitled with the need to protect employees and their beneficiaries as a group from a contraction in the total pool of benefits available."  *See Evans*, 514 F.3d at 326.  Two Neutral Physicians evaluated Mr. Loper and neither found that he satisfied the Plan's standard for LOD benefits.  *See supra* at 9-10.  Applying the Neutral Rule to deny Mr. Loper's claim is accordingly consistent with the Plan's goal to ensure its limited benefit resources are preserved for participants who are entitled to them.  *Cf. Friz v. J & H Marsh & McLennan, Inc.*, 2 F. App'x 277, 281 (4th Cir. 2001) (paying only those benefits that are authorized by plan terms is consistent with the purposes and goals of the plan).

### C.    The Materials the Board Considered Were Adequate to Support Its Decision.

The third *Booth* factor weighs in favor of finding the Board did not abuse its discretion

16

because the materials it considered were adequate to support its decision.[9]  *Booth*, 201 F.3d at 342 (factor 3).  The Board's decision was supported by substantial evidence, including the Neutral Physicians' reports, the information Mr. Loper submitted, and the Neutral Physicians' expert analysis and clinical assessments of those records.  AR DL-620-22.  Both Neutral Physicians certified that they personally examined Mr. Loper, and that as part of their evaluations they reviewed all of the medical records he submitted.  AR DL-428, 586.  Both Neutral Physicians accurately stated the Plan's LOD disability standard and provided a reasoned explanation based on objective evidence, including examinations and testing results, that supported their conclusion that Mr. Loper had not incurred a "substantial disablement" "arising out of League football activities" as defined by the Plan.  AR DL-428-34, 584-94; DPD §§ 5.1(c), 5.5(a)(4)(A), 12.3(b); *supra* at 9-10.  Cumulatively, these materials provide more than adequate support for the Board's denial of Mr. Loper's benefit application.  *See Booth*, 201 F.3d at 342; *Schkloven*, 2022 WL 2869266, at *25-26 (granting summary judgment for administrator where administrator relied on the opinions of physicians retained to review the plaintiff's medical records).

Although Mr. Loper disagrees with some of the Neutral Physicians' observations or conclusions, none of his allegations create a genuine dispute of material fact about the adequacy of the materials the Board considered.  *See Booth*, 201 F.3d at 342; *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 238 (4th Cir. 2022); *see also Kane v. UPS Pension Plan Bd. of Trustees*, 2013 WL 6502874, at *10 (D. Md. Dec. 11, 2013) (explaining in considering the third *Booth* factor, "the Board needed only 'the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion'" (quoting *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 295

---

[9] The Plan permits the Board to review materials in part through appointed advisors.  *See, e.g.*, DPD §§ 9.2(f), 9.9.

(4th Cir. 2006)), *aff'd*, 584 F. App'x 109 (4th Cir. 2014).  The Board was presented with two consistent Neutral Physician reports, neither of which found Mr. Loper met the Plan's LOD standard after thorough examinations, testing, and fulsome review of Mr. Loper's records.  AR DL-428-34, 584-94.  The Board lacked authority to award LOD benefits—notwithstanding Mr. Loper's points of disagreement—because no Neutral Physician found that he was LOD disabled.  DPD § 5.1(c).  Under the Plan's express terms, he was ineligible for benefits "regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record."  *Id.*

Nonetheless, Mr. Loper alleges the Board should not have relied on the reports because they failed to allocate points for certain alleged orthopedic impairments.  AC ¶¶ 210, 213.  But his arguments are insufficient to create a triable issue of fact.

***First,*** Mr. Loper alleges that Dr. Apple should have awarded him additional points: two for a left wrist carpal tunnel surgery after he ceased being an active player, and another two for a symptomatic rotator cuff tendon tear.  *Id.* ¶ 210.  Even assuming *arguendo* that Dr. Apple could or should have awarded Mr. Loper these four additional points, however, it would have resulted in at most a total award of just seven points—still short of the 10 points needed for a finding of "substantial disablement" under the Plan.  DPD § 5.5(a)(4)(A); AR DL-429.  Mr. Loper's allegations with respect to Dr. Apple therefore do not raise a triable issue of fact.[10]

---

[10] Moreover, Dr. Apple did not err in declining to allocate these points.  He concluded, based on his examination and review of Mr. Loper's records, that the cause of Mr. Loper's left wrist impairment was "unknown."  AR DL-429.  Because the cause of the impairment was not established, the Plan prohibited allocating points for the carpal tunnel surgery (and, *see infra*, Dr. Cook also did not award points for the carpal tunnel surgery for the same reason).  *See* DPD § 5.1(c), DL-71.  And nothing in Dr. Apple's report supports Mr. Loper's allegation that Dr. Apple did not award points because of when the surgery occurred, AC ¶¶ 210-11—the report merely factually notes the timing of the surgery relative to Mr. Loper's NFL career.  AR DL-429, 432-33.  Dr. Apple's examination of Mr. Loper's shoulders was likewise consistent with the terms of the Plan.  That exam "revealed no external abnormalities," "slight posterior subluxation" and "slight reduction of abduction" on the left shoulder, and "slight reduction in forward flexion" on both shoulders, but functional range of motion, and X-rays "showed a normal exam with no change in either the

**Second**, Mr. Loper alleges that although Dr. Cook noted in his narrative report that Mr. Loper had received carpal tunnel release surgery, he failed to award Mr. Loper two points for an "S/P Carpal Tunnel Release" condition as he asserts the Plan required. AC ¶ 213. But the Plan permits points for injuries "only if they are related to League football activities." DPD § 5.1(c), DL-71. Dr. Cook's report notes that Mr. Loper had "[b]ilateral carpal tunnel release post [his] NFL career," but that Mr. Loper's medical records contained "no documentation of carpal tunnel symptoms or EMG of the hands during his NFL career." AR DL-589, 594. And based on his examination of Mr. Loper and review of his medical records, Dr. Cook found "no evidence [Mr. Loper's] NFL career significant[ly] contributed to his carpal tunnel syndrome." AR DL-594.

The record is thus clear that the materials supporting the Board's decision meet *Booth*'s standard for adequacy. *See Booth*, 201 F.3d at 342; *Wilson*, 27 F.4th at 238.

### D. The Remaining *Booth* Factors All Support Finding that the Board's Decision Was Reasonable.

**Factor 4.** The Board's decision was consistent with other provisions and earlier interpretations of the Plan. *See Booth*, 201 F.3d at 342. The Neutral Rule governing LOD benefits applies to every type of benefit in the Plan. DPD §§ 3.1(c), 5.1(c), 6.1(e). And, since it went into effect, the Neutral Rule has been applied consistently to deny benefits to players who failed to satisfy it. Vincent Decl. ¶¶ 13-14; *see also Youboty*, 856 F. App'x at 500; *Smith*, 2024 WL 722594, at *5-6. It has remained unchanged since the Management Council and Players Association collectively bargained for it in 2017—well before the limitations period here. *See* Vincent Decl. ¶ 14.

**Factor 5.** The Board's decision-making process was also "reasoned and principled." *See*

---

acromioclavicular joint or the glenohumeral joint with the addition of weight." AR DL-432. Accordingly, under the Plan, Mr. Loper was not entitled to additional points for his left shoulder. *See* DPD DL-71-84.

*Booth*, 201 F.3d at 342.  The Board "followed Plan procedures and policies throughout" its review of Mr. Loper's application, *see Wilson*, 27 F.4th at 238-39 (affirming claim denial), including evaluation by two different Neutral Physicians at the Committee and Board levels who were both experts in orthopedics, *see* AR DL-428-30, 584-86; and it provided a reasoned explanation for its denial of Mr. Loper's claim that was correctly grounded in application of the Plan's Neutral Rule. AR DL-621.  No more was required.  *See Mullins v. AT&T Corp.*, 424 F. App'x 217, 223-25 (4th Cir. 2011) (administrator's review was reasoned and principled because it substantially complied with plan's procedures); *Vaughan*, 339 F. App'x at 327 (same; administrator acknowledged receipt, allowed submission of additional information, stated why it denied the claims, quoted the plan, and attached a plan summary).

Mr. Loper alleges that the Board's consideration of analyses or summaries created by the Party Advisors or Plan counsel as part of its review is somehow improper.  *See, e.g.*, AC ¶¶ 41, 214, 284, 286, 302.  This is incorrect.  The Plan expressly permits the Board to rely on consultants, professional plan administrators, counsel, and physicians when satisfying its duty to "consider all information in the Player's administrative record" when deciding claims.  DPD §§ 9.2(f), 9.9. ERISA also permits such reliance.  *See Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019) (seeking expert advice can show prudence); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) (same); *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006) (administrator may delegate discretionary authority to non-fiduciaries without compromising fiduciary duties); *Hilton v. Unum Life Ins. Co. of Am.*, 967 F. Supp. 2d 1114, 1116-17, 1124-25 (E.D. Va. 2013) (administrator's benefits decision was not unreasonable where it assigned an "[a]ppeals [s]pecialist" to review the contents of the plaintiff's appeal and consulted two physicians); *cf.*

*Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active Plan*, 31 F.4th 854, 858 (4th Cir. 2022) ("encourag[ing]" plan trustees to "rely on the independence and expertise of unaffiliated doctors in making benefits determinations"). Because Mr. Loper's records were fully reviewed by the Board's advisors and the Neutral Physicians, Reynolds Decl. ¶¶ 7-8; Williams Decl. ¶¶ 6-7, the Plan is entitled to summary judgment without being required to show that each individual Board member personally reviewed each page of voluminous underlying materials. *See, e.g.*, *Waldoch v. Medtronic*, 757 F.3d 822, 832 (8th Cir. 2014) (permitting fiduciary to "delegate claims processing functions to [a non-fiduciary third party] and rely on [the third party's] reasoning without compromising its obligation to provide a 'full and fair review'"); AC ¶ 41.

**Factor 6.** The Board complied with ERISA's procedural and substantive requirements because its process and decision were "consistent with the language of the Plan," and Mr. Loper "was fully aware of his rights and obligations under the Plan." *See Friz*, 2 F. App'x at 282; *Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2012 WL 2374661, at *14 n.35 (D. Md. June 19, 2012) (same). Mr. Loper does not dispute that the Board "complied with ERISA's time frames for making each step of the determination," or that Mr. Loper "was timely notified of [the Board's] findings and next-step rights to appeal the decision." *See Wilson*, 27 F.4th at 239.

**Factor 7.** This factor is not relevant to Mr. Loper's application, to which no external standard applies. *See Booth*, 201 F.3d at 342-43. The Complaint suggests the NFL Concussion Settlement should be considered for certain applications, *see* AC ¶ 288, but it in fact has no bearing on the Plan's disability eligibility standards,[11] and in any event Mr. Loper's LOD application does not even involve any alleged head injuries.

---

[11] Legal standards for other types of benefits outside the Plan are not relevant. *See, e.g.*, *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 420 (4th Cir. 2004) ("[W]hat qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan.").

*Factor 8.* Finally, the Board had no conflict of interest. *See Booth*, 201 F.3d at 343.

Structural conflicts of interest occur where the same entity that administers the ERISA plan

determines eligibility and pays benefits out of its own pocket. *Metro. Life Ins. Co. v. Glenn*, 554

U.S. 108, 108 (2008); *Fortier v. Principal Life Ins. Co.*, 666 F.3d 231, 236 & n.1 (4th Cir. 2012)

(affirming grant of summary judgment to administrator despite conflict of interest under *Glenn*);

*Vaughan*, 339 F. App'x at 328 (same). That is not how this Plan is structured. The Board is

composed equally of Management Council and Players Association Trustees. DPD § 9.1; *supra*

at 3. The Plan is funded by a revenue-sharing agreement between the NFL (including the

Management Council) and the Players Association. Smith Decl. ¶ 3. No funds left over after

benefits are paid or denied go to the Board, the Management Council, or the Players Association.

*Id.* For these reasons, courts hearing challenges to the Plan's benefits denials have consistently

found that it does not operate under a conflict of interest. *Dimry v. Bert Bell/Pete Rozelle NFL

Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020) ("[T]he Plan does not have a

structural conflict that needed to be mitigated as the Board consists equally of player

representatives and NFL representatives."), *aff'd and remanded on other grounds*, 855 F. App'x

332 (9th Cir. 2021); *Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*, 2020 WL

5628020, at *6 (S.D. Tex. Aug. 17, 2020) (first citing *Johnson v. Bert Bell/Pete Rozelle NFL

Player Ret. Plan*, 468 F.3d 1082, 1086 (8th Cir. 2006); then citing *Courson v. Bert Bell NFL

Player Ret. Plan*, 75 F. Supp. 2d 424, 431 (W.D. Pa. 1999), *aff'd*, 214 F.3d 136 (3d Cir. 2000);

and then citing *Morris v. Nat'l Football League Ret. Bd.*, 833 F. Supp. 2d 1374, 1386 (S.D. Fla.

2011), *aff'd*, 482 F. App'x 440 (11th Cir. 2012)), *aff'd*, 856 F. App'x 497 (5th Cir. 2021). This

is particularly true since the Plan provides "structural protections" that substantially guard

against conflicts, including that "the Board's reliance on independent physicians in making

benefit determinations would drastically diminish the significance of [the conflict of interest] factor in [the] analysis." *Giles*, 925 F. Supp. 2d at 717 (citing *Boyd*, 796 F. Supp. 2d at 691 n.2)); *see also Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2011 WL 10005532, at *2 (D. Md. Jan. 13, 2011). Moreover, Mr. Loper was subsequently approved for a ***higher*** level of T&P benefits, *see* 2024 Comm. Decision at 1, undercutting his argument that the Board must have denied his previous LOD application for financial reasons.

Mr. Loper alleges some Neutral Physicians are biased against finding disability based on their higher income. These allegations are misdirected and incorrect. First, the proper focus of the *Booth* conflict inquiry is on the Board. *See, e.g.*, *Hall v. Standard Ins. Co.*, 2005 WL 348266 at *4 (W.D. Va. Feb. 10, 2005) (plaintiff was not entitled to discovery with regard to independent physician consultant because "the relevant conflict of interest is that of the fiduciary"); *Boyce v. Eaton Corp. Long Disability Plan*, 2017 WL 3037392, at *5 (W.D.N.C. July 18, 2017) ("The Fourth Circuit [has] made clear that the pertinent inquiry is not the conflicts of the administrator's attorney but the conflicts of the administrator." (citing *Colucci*, 431 F.3d at 176)); *see also Everette v. Liberty Life Assurance Co. of Bos.*, 2017 WL 2829673, at *11 (D. Md. June 29, 2017) (evidence that doctors are "regularly retained and paid by plan administrators" is insufficient if a plaintiff does "not provide any evidence that [the doctors] w[ere] biased in [his] case"); *Dimry*, 487 F. Supp. 3d at 813 ("[A]lthough given the frequency and amount of compensation the Plan-retained physicians had a financial interest in continuing to be retained by the Plan, it is difficult to discern why the physicians might infer that an opinion in favor of no disability would be more likely to lead to future retention.").

Second, the data disprove Plaintiffs' statistics. The Complaint alleges a practice of retaining and paying more to Neutral Physicians with "extremely high benefits denial rates," who

"stood to benefit financially from the repeat business" as a result of issuing reports that would support a benefits denial "to the Board's liking" thereby creating a "[P]lan-wide conflict."  AC ¶¶ 112, 115.  This is incorrect.  There are not, in fact, higher denial rates of LOD applications associated with those Neutral Physicians with higher compensation; rather, the opposite is true.  *See* Lasater Decl. ¶¶ 20-54 & Table 1 (on a median split, the Neutral Physicians who saw *fewer* players for LOD examinations were associated with an 88.3% denial rate, while the Neutral Physicians who saw *more* players were associated with a 57.8% denial rate, meaning that Neutral Physicians with greater frequencies of encounters have *lower* denial rates, contrary to Plaintiffs' allegations).   In fact, when Neutral Physicians are grouped into quartiles by number of examinations, the Neutral Physicians with the *fewest* encounters are associated with a 93.2% denial rate, while those with the *highest* number of encounters are associated with a dramatically lesser 54.4% denial rate, which contradicts Plaintiffs' allegations.  *Id.* ¶¶ 29-31 & Table 2.  The record thus makes clear there was no relevant conflict of any kind under this *Booth* factor.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE THE DENIAL LETTERS SENT TO MR. LOPER COMPLY WITH ERISA'S CLAIMS PROCEDURES.

Mr. Loper alleges in Count II that Defendants violated ERISA Section 503(1)'s requirement to "provide adequate notice in writing to any participant … whose claim … has been denied, setting forth the specific reasons for such denial."  AC ¶¶ 290-95.  The letters to Mr. Loper show this claim is meritless.  ERISA does not require that decision letters recite every aspect of an applicant's record.  *See generally* 29 C.F.R. § 2560.503-1(j)(6).  Rather, a letter complies with ERISA if, read in its entirety, it provides the claimant "with all the information necessary to perfect" the claim.  *Switzer v. Benefits Admin. Comm.*, 2014 WL 4052855, at *12 (D. Md. Aug. 13, 2014) (denial letters were sufficient because they "stated that they were based upon findings that [applicant] was capable of returning to work without restriction and/or was capable of

engaging in substantial gainful employment") (citing *Gelumbauskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*, 2010 WL 2025128, at \*5 (D. Md. May 17, 2010)); *Brown v. Covestro LLC Welfare Benefits Plan*, 2023 WL 8481914, at \*11 (W.D. Pa. Nov. 15, 2023) (letter "substantially complied with the regulations by specifying the medical basis for denying benefits and provided a sufficiently clear understanding of the administrator's position to permit effective review" (citation omitted)), *R&R adopted*, 2023 WL 8481352 (W.D. Pa. Dec. 7, 2023).

Both the Committee and Board decision letters satisfy this standard. The letters cite the correct Plan standard, DPD § 5.1(c), and explain "the specific reasons" for denying Mr. Loper's application: that no Neutral Physician concluded that he is substantially disabled. AR DL-435-36, 620-22. The letters supply additional information about the basis for the denial, including reliance on "[t]he views of medical or vocational experts whose advice was obtained on behalf of the plan." 29 C.F.R. § 2560.503-1(j)(6); AR DL-435-36, 620-22. The Board letter states that it considered that Dr. Apple and Dr. Cook are specialists in orthopedics, have experience evaluating retired players and other athletes, reviewed all of Mr. Loper's records, conducted physical examinations of him, and provided detailed reports concluding that he did not meet the Plan's standard for LOD disability. AR DL-620-21. As the instant lawsuit demonstrates, that was all of the information necessary to perfect Mr. Loper's claim. The Committee letter is similar. *See* AR DL-435-36.

Mr. Loper's only criticism of either letter is his allegation that the Committee's letter "did not delve into the administrative record or attempt to reconcile Dr. Apple's inconsistencies with the Plan's terms." AC ¶ 212. These two arguments are insufficient to create a triable issue of fact. First, the letters provided Mr. Loper the information he needed to perfect his claim and were not required to "delve into" the entire administrative record. *See Switzer*, 2014 WL 4052855 at \*12. Second, as previously explained, Dr. Apple's decision not to award points to Mr. Loper for his

carpal tunnel surgery was entirely consistent with the Plan's terms (because regardless of the timing of the surgery, Dr. Apple found no evidence linking the condition to Mr. Loper's NFL career). More importantly, his decision not to award those particular points was immaterial to the outcome of the application. *See supra* at 9; AR DL-428-29 (rating Mr. Loper's injuries at three points). Because the Board provided the adequate notice in its claim determinations that ERISA requires, it is entitled to judgment on this claim.

## III. THE BOARD CONDUCTED A FULL AND FAIR REVIEW OF MR. LOPER'S BENEFITS CLAIM.

Count III alleges that Defendants did not conduct a "full and fair review" of certain applications, failed to produce "requested information," and failed to ensure that Plan provisions are applied consistently, but Mr. Loper makes no allegations specific to the Board's treatment of *his* claim, *see* AC ¶¶ 296-304, and there is no record of any information request from Mr. Loper to which Defendants failed to reply, Vincent Decl. ¶ 40. The undisputed record further establishes the Plan's thorough process for reviewing benefit applications and appeals, as well as the thorough review of Mr. Loper's own claim, *see supra* at 4-11, and Mr. Loper does not identify any failure to follow the Plan's prescribed process, much less an omission that could have altered the determination of his claim, *see supra* at 8-11. Even if Mr. Loper had made allegations about the review of his claim, the Court previously recognized that if he were to prevail on Count III, he "would not be entitled to any additional or different remedy not otherwise available through Count I." ECF No. 78 at 41; *see Varity Corp. v. Howe*, 516 U.S. 489, 513-15 (1996) (a plaintiff may not simply "repackage" his denial of benefits claim as one for breach of fiduciary duty).

Plaintiffs' allegations that Defendants did not review all records in deciding claims, AC ¶ 298 (citing 29 C.F.R. § 2560.503-1(h)(2)(iv)), and failed to ensure the independence and impartiality of decision-makers, *id.* ¶¶ 299-301 (citing 29 C.F.R. § 2560.503-1(b)(7)),

misunderstand the law and the Plan.  First, the Board may rely on the Party Advisors and Neutral Physicians to review each player's administrative records.  *See supra* at 7-8; Reynolds Decl. ¶ 7; Williams Decl. ¶ 6; *see* AR DL-430, 586.  Second, Defendants safeguard against possible bias by using neutral criteria to assign Neutral Physicians,[12] instructing Neutral Physicians to use their best professional judgment, requiring Neutral Physicians to certify they are free from bias, and paying them flat fees that do not vary based on outcome.  *See supra* at 4-5; *Walker v. AT&T Benefit Plan No. 3*, 2022 WL 1434668, at *4 (C.D. Cal. Apr. 6, 2022) (no violation of (b)(7) where plan delegated decision-making authority to administrator, which selected the physicians retained), *aff'd*, 2023 WL 3451684 (9th Cir. May 15, 2023).  Third, no Committee-level decision-maker is involved in any Board decision, and the Board, its Party Advisors, and Dr. Cook did not play any role in the Committee's decision.  *See* Smith Decl. ¶ 7; Reynolds Decl. ¶ 3; Williams Decl. ¶ 3.

ERISA does not require audits of Neutral Physician opinions, *cf.* AC ¶ 300, which would add significant expense to Plan administration.  *Cf. Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (in ERISA, Congress sought to create a system that is not so complex that "administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place").  Defendants are entitled to summary judgment on Count III as to Mr. Loper.

## IV.    MR. LOPER'S ALLEGATIONS OF BREACH OF FIDUCIARY DUTY FALL FAR SHORT OF CREATING A TRIABLE ISSUE OF FACT.

In Count V, Mr. Loper brings a claim on behalf of the Plan pursuant to ERISA § 502(a)(2) alleging that the Board breached its fiduciary duties of loyalty and care by: (1) failing to pay contractually authorized benefits; (2) failing to "ensure that [the Plan's] hired physicians' compensation is not based upon their reputation and likelihood that they will support the denial of

---

[12] Defendants play no role in designating Neutral Physicians to serve on the panel from which the NFLPBO makes assignments.  DPD §§ 1.25, 12.3(a); *see supra* at 4.

benefits"; (3) failing to act prudently through "bizarre interpretations, continuous disregard for legal precedent, and multiple erroneous interpretations of the same or similar provisions" of the Plan; and (4) failing to review the entire administrative record.  AC ¶¶ 330-47.  Based on these alleged breaches, Mr. Loper seeks removal of the Board members.  *Id.* ¶¶ 348-49, 387.

The substantive allegations in Count V are derivative of Counts I, II, and III, and judgment should be entered for Defendants for the same reasons as detailed above.  Moreover, there is no evidence of the kind of egregious misconduct that could warrant removal, which is an "extraordinary remedy" that should only be employed for "very egregious breaches" involving "repeated and substantial violations of [the trustees'] responsibilities."  *Compare Bidwell v. Garvey*, 743 F. Supp. 393, 399 (D. Md. 1990) (refusing to remove trustees despite imprudence finding) (citation omitted), *with Chao v. Malkani*, 452 F.3d 290, 291 (4th Cir. 2006) (affirming removal of fiduciaries after they repeatedly "attempt[ed] to raid the plan's assets"); Restatement (Second) of Trusts § 107 cmt. b (identifying "serious breach of trust" as a basis for removal).  The Fourth Circuit has cautioned that "removal can be detrimental for plan participants and employers alike" because "[i]t imposes significant costs on plans," and can "disrupt plan administration" and "cause delay in participants receiving vital benefits."  *Chao*, 452 F.3d at 294.

### A.    The Board Did Not Breach Its Fiduciary Duty by Denying Mr. Loper's Benefits Claims.

Mr. Loper's claim that the Board breached its fiduciary duties by failing to pay him benefits fails because, as previously explained, his LOD benefits were properly denied under the terms of the Plan.  *See Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 612 F. Supp. 3d 516, 561 (D. Md. 2020) (dismissing breach of fiduciary duty claim based on failure to pay benefits after the court found that benefit denial was proper); *Hein v. FDIC*, 88 F.3d 210, 225 (3d Cir. 1996) (dismissing breach claim predicated on denial of benefits where the fiduciary "was merely

adhering to the express terms of the Plan document" in denying the benefits).  The Plan did not

authorize benefits, so the Board did not fail to pay contractually authorized benefits.

**B.      Nothing About the Hiring or Compensation of Neutral Physicians Supports a Finding That Defendants Breached Any Fiduciary Duty.**

Defendants did not add Dr. Apple or Dr. Cook to the Neutral Physician panel, and also had

no power to remove them.  DPD § 12.3(a); AC ¶ 47; Vincent Decl. ¶¶ 15, 19-21.  As explained,

only the Management Council and the Players Association (neither of which is a defendant) have

the authority to retain or remove Neutral Physicians, and may only do so jointly.  DPD § 12.3(a);

AC ¶ 47; Vincent Decl. ¶¶ 15, 19-20.  Non-fiduciary decisions made by others cannot form the

basis of a breach claim against Defendants.  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Juric*

*v. USALCO, LLC*, 659 F. Supp. 3d 619, 630 (D. Md. 2023) ("[T]here can be 'no liability for breach

of fiduciary duty if the challenged conduct ... is not fiduciary in nature.'" (quoting *Dawson-*

*Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 n.13 (4th Cir. 2019)).   And as

explained, Dr. Apple and Dr. Cook were paid a flat fee that did not vary based on outcome, as the

Plan required.  DPD § 12.3(a); Vincent Decl. ¶ 22.  Defendants safeguarded against the possibility

of Neutral Physician bias by using neutral assignment criteria, instructing them to follow their best

professional judgment, requiring them to certify they are free from bias, and paying flat fees that

do not vary based on outcome.  This Court has found retention of independent physicians

"reduce[s] potential bias" and "promote[s] accuracy."  *Boyd*, 796 F. Supp. 2d at 691 n.2; *Giles*,

925 F. Supp. 2d at 717.

Mr. Loper's claim that the Board breached its fiduciary duties by "fraudulently

misrepresent[ing]" that Neutral Physicians are "absolutely neutral" is meritless.  AC ¶ 333.  The

DPD and SPD define "Neutral Physician" as a physician jointly designated by the Management

Council and Players Association and assigned by the Plan to examine players and report on their

condition.  *See* DPD §§ 1.25, 12.3; SPD DL-665, 679, 724.  There is no evidence that any Board letter or the SPD told Mr. Loper that "Neutral Physicians" were anything other than as defined, or that a "neutral exam" meant something other than an exam by a Neutral Physician.  Indeed, "Neutral Physician" cannot be a misrepresentation because it is a defined term, only susceptible of one interpretation—the same definition appears in both the Plan (DPD § 12.3) and SPD (SPD DL-665, 679, 724).  *See, e.g.*, *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1210 (M.D.N.C. 1996).

### C. The Board Did Not Breach Any Fiduciary Duty in its Interpretation of the Plan.

Mr. Loper concedes that he cannot qualify for LOD benefits absent a Neutral Physician's finding that he incurred a substantial disablement arising out of League activities, and that he did not meet that condition.  AC ¶¶ 73, 76, 210, 213; DPD §§ 5.1(c), 5.5(a)(4)(A).  The Plan thus required the Board's denial of Mr. Loper's claim.  *See Colucci*, 431 F.3d at 176; *Pender*, 788 F.3d at 362.  The Court must also enforce the Plan's plain meaning.  *See Firestone*, 489 U.S. at 112; *Kress*, 391 F.3d at 567-68.

### D. The Board Did Not Breach Any Duty in its Review of Records.

As explained, the Plan authorizes the Board to rely on others to assist it in fulfilling its responsibilities under the Plan, including review of records, so Mr. Loper's claim that the Board breached its fiduciary duties by delegating review of the administrative record to advisors fails to create a triable issue of fact.  *See* AC ¶ 344; *supra*, Part I.D (*Booth* factor 5).

The Court should therefore enter summary judgment for Defendants on Count V.

### CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in Defendants' favor as to all of Mr. Loper's claims.

30

Date: November 18, 2024

Respectfully submitted,

*Gregory F. Jacob*
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player
Disability & Survivor Benefit Plan, The NFL
Player Disability & Neurocognitive Benefit
Plan, The Bert Bell/Pete Rozelle NFL Player
Retirement Plan, and The Disability Board of
the NFL Player Disability & Neurocognitive
Benefit Plan*

## CERTIFICATE OF SERVICE

I, Gregory F. Jacob, hereby certify that on November 18, 2024, I caused a copy of the foregoing document to be served upon all counsel of record via the CM/ECF system for the United States District Court for the District of Maryland.

*Gregory F. Jacob*
Gregory F. Jacob