**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, <br><br> Defendants. | Case No. 1:23-cv-00358-JRR |

**DECLARATION OF HESSAM ("SAM") VINCENT IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF JAMIZE OLAWALE'S CLAIMS**

I, Hessam ("Sam") Vincent, hereby declare pursuant to 28 U.S.C. § 1746, under the penalty of perjury, that the following is true and correct; that I have personal knowledge of the matters set forth herein, or knowledge based on my review of business records; and that, if called to testify as a witness in this action, I could and would testify competently thereto:

**I.     BACKGROUND**

1. I am employed at the NFL Player Benefits Office ("NFLPBO") in Baltimore, Maryland. The NFLPBO is the administrative office for the NFL Player Disability & Survivor Benefit Plan (the "Plan," formerly known as the NFL Player Disability & Neurocognitive Benefit Plan and the NFL Player Disability, Neurocognitive & Death Benefit Plan)[1] and other Taft-Hartley Act pension- and/or welfare-benefit plans maintained pursuant to collective-bargaining agreements between the NFL Players Association and the NFL Management Council.

2. I have been employed by the NFLPBO since 2008, first as a Benefits Coordinator, working primarily with the group responsible for handling court orders that direct a participant's benefits to an alternate payee, such as a player's former spouse or child.

3. In approximately 2009, I became a Disability Benefits Coordinator in the disability group. As a Disability Benefits Coordinator, I helped process disability applications, including by: (i) helping players apply for benefits, (ii) receiving and maintaining records related to applications, and (iii) preparing application-related materials for presentation to the Plan's fiduciaries, i.e., Disability Initial Claims Committee (the "Committee") and the Disability Board (the "Board").

4. I was promoted in 2016 and became the Disability Manager, managing the day-to-day activities of the other Disability Benefits Coordinators and overseeing the disability

---

[1] Attached hereto as **Exhibit A** and **Exhibit B** are the April 1, 2021 and April 1, 2017 Disability Plan Documents ("DPD") and amendments, respectively.

program in general. I worked in that role for approximately five years.

5. In 2021, I became the Disability Relations Manager, which is my current position. My primary responsibility is to manage the Plan's relationship with the physicians appointed to the Plan's Neutral Physician panel. When the Players Association and Management Council appoint new physicians to the Neutral Physician panel, I am the primary point of contact for those physicians if they have any questions about their retention, their responsibilities, or the Plan's procedures. I also oversee the process of coordinating medical examinations of players with the Plan's Neutral Physicians, maintaining files and records relating to players' applications; and supervising the preparation and presentation of all application-related materials to the Committee and Board.

6. When I became Disability Relations Manager, my work with the Neutral Physician panel expanded and became my main focus. Although I no longer have day-to-day supervisory responsibility over the Disability Benefits Coordinators, I continue to work closely with the disability group and have first-hand knowledge of their practices.

7. Based on my experience at the NFLPBO, including in my roles as Disability Manager and Disability Relations Manager, I have access to information regarding the qualifications of all of the physicians serving on the Disability Plan's Neutral Physician panel..

II. **ADMINISTRATIVE RECORD**

8. **Exhibit I**, attached hereto, contains excerpts from the true and correct copy of the Administrative Record (Bates numbered NFL_ALFORD-0009163 to NFL_ALFORD-0011221) previously filed under seal. **Exhibit I** includes copies of the documentary evidence presented to the Committee and Board in connection with Plaintiff Jamize Olawale's at-issue application and

appeal[2] that is cited or referenced in Defendants' motion for summary judgment.

9.  The Plan maintains player files that generally contain copies of all of the documents in the Administrative Record as well as any other application- or benefits-related communications with the player, including scheduling correspondence between the NFLPBO, players, and Neutral Physicians, and other miscellaneous documents that were not provided to the Committee and Board ("Player Files"). The Plan only has access to documentation that the player submits with his application; the Plan does not have independent access to a player's medical records, such as those that may be separately maintained by (i) the NFL and its member Club(s), (ii) the Social Security Administration, (iii) a worker's compensation panel or proceeding, or (iv) a player's attorneys or representatives.

10. When considering Mr. Olawale's application and appeal, the medical records available to the Committee and Board were (i) those records that Mr. Olawale submitted himself and (ii) reports authored by the Plan's Neutral Physicians who examined him. As discussed below, Neutral Physicians report on players referred by the Plan so that the Committee or Board can make an adequate determination on the players' disability applications.

11. The Plan's counsel provides case summaries highlighting key facts based on the relevant terms of the Plan and their review of the administrative record. Plan counsel then provide those summaries to the NFLPBO for posting to the Meetings Website described below.

12. Plan counsel does not provide recommendations on claim dispositions.

### III. NEUTRAL RULE

13. In order for a player to be entitled to any of the classes of benefits available under

---

[2] The Plan requires that a player file an appeal within 180 days of receipt of the Committee's final decision. DPD §§ 9.6, 13.14(a) ("The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board."). Mr. Olawale satisfied this requirement.

the Plan, a Neutral Physician must find the player meets the disability standard set forth in the Plan. We refer to this requirement as the "Neutral Rule."

14. The Players Association and Management Council collectively bargained for the Neutral Rule in 2017, and the Neutral Rule has not substantively changed since it was first adopted. Since it went into effect, the Neutral Rule has been applied consistently. If a player does not satisfy the Neutral Rule, his application is denied.[3]

## IV. PHYSICIANS INVOLVED IN THE PLAN BENEFIT PROCESS

15. There are three types of physicians involved in the Plan benefit process. First, as set forth in § 12.3 of the Plan, Neutral Physicians report on players referred by the Plan so that the Committee or Board can make a determination on the players' disability applications. Neutral Physicians are jointly designated and removable by the Players Association and Management Council—they are not designated or removable by the Board, the Committee, or any Board or Committee members. Neither the Board nor any other Defendant in this matter designates or removes Neutral Physicians.

16. Second, as set forth in § 12.2 of the Plan, Medical Advisory Physicians ("MAPs") decide specific medical issues that the Board refers to them under § 9.3 of the Plan. This may occur if two Neutral Physicians disagree about a discrete medical question. In deciding these specific issues, a MAP will review all material submitted to the Plan and, like a Neutral Physician, will issue a written determination on a Board-provided form. They are jointly designated and removable in the same way as Neutral Physicians. The MAP decision is final

---

[3] There is one exception to the Neutral Rule. Pursuant to Plan § 3.2, for applications received before April 1, 2025, a player "who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program or Supplemental Security Income program, and who is still receiving such benefits at the time he applies, will receive Plan [total-and-permanent ("T&P")] benefits in the amount described in Section 3.6, for the months described in Sections 3.10 and 3.11, unless four or more voting members of the Disability Board determine that such Player is not totally and permanently disabled, despite receiving Social Security disability benefits."

and binding. DPD § 9.3(a).

17. Third, as set forth in § 12.1 of the Plan, the Medical Director—who is a board-certified physician designated by at least four members of the Board to provide medical advice with respect to medical examination procedures and medical issues relating to particular disability benefit claims—"will provide advice on medical issues relating to the disability benefit claims as requested by a member of the Disability Board or a member of the Disability Initial Claims Committee. The Medical Director may examine Players as a Medical Advisory Physician or a Neutral Physician in any case where the Medical Director has not voted as a member of the Disability Initial Claims Committee pursuant to Section 9.6."[4]

## V.  THE PLAN'S NEUTRAL PHYSICIAN PANEL

18. The Players Association and Management Council select physicians for the Plan's Neutral Physician Panel based on need, taking into account the physician's (1) specialty, (2) geographic location, (3) qualifications, and (4) ability to evaluate players in the timeframes required. The NFLPBO contacts the prospective physician to explain the Plan, the role, the requirements, and the appointment process. If the physician is interested and available to serve, we collect the physician's qualifications, CV, summary of experience, and references for the Players Association and Management Council to review for potential designation under the procedures specified in § 12.3 of the Plan.

19. In accordance with standard practices, when a player applies for benefits, the Disability Benefits Coordinator assigned to the player's application assigns at least one Neutral Physician from the Plan's Neutral Physician panel in the appropriate specialty or specialties

---

[4] The Plan retains six senior physicians to serve as consultants in the medical specialties most relevant to the Plan. Along with occasionally examining players, like Neutral Physicians, the consulting physicians also help to update the Orientation Manuals discussed below.

6

corresponding to the stated injuries or impairments in the player's application, and then schedules the player for evaluations with each selected Neutral Physician.[5] When a player applies for T&P benefits, it is standard practice to refer the player for evaluations by a Neutral Physician orthopedist, neurologist, neuropsychologist, and psychiatrist. When a player applies for line-of-duty ("LOD") benefits, it is standard practice to refer the player for an evaluation by a Neutral Physician orthopedist. When a player applies for neurocognitive ("NC") benefits, it is standard practice to refer the player for evaluations by a Neutral Physician neurologist and a Neutral Physician neuropsychologist. When a player applies for multiple benefits in the same application, it is standard practice for the same Neutral Physician(s) to evaluate the player for both benefits. For instance, when a player applies for T&P benefits as well as LOD benefits, it is standard practice for the Neutral Physician orthopedist who conducts the orthopedic portion of the T&P evaluation to also examine the player for LOD benefits. Similarly, when a player applies for T&P benefits as well as NC benefits, it is standard practice for the Neutral Physician neurologist and neuropsychologist who conducts the neurocognitive portion of the T&P evaluation to also examine the player for NC benefits. And a player who, like Mr. Olawale, applied for T&P, LOD, and NC benefits at the same time would be evaluated by a Neutral Physician orthopedist, neurologist, neuropsychologist, and psychiatrist, as Mr. Olawale was.

20.     The assignment of a Neutral Physician is based on (1) the Neutral Physician's proximity to the player, (2) the Neutral Physician's proximity to other anticipated Neutral Physicians who will be evaluating the player, (3) the Neutral Physician's availability to conduct an evaluation and submit a report within the timeframe required, and (4) whether the Neutral

---

[5] Sometimes Neutral Physicians may also be asked to evaluate players who have been awarded benefits but need to be reevaluated to determine if they continue to qualify for the benefit. For example, a player might be awarded T&P benefits by the Board but expressly be told at the time his benefits are awarded that he will need to be evaluated again in 12 months to asses if he is still totally and permanently disabled.

Physician previously treated or evaluated the same player for Plan benefits.[6]  These are the only criteria ever considered in assigning a Neutral Physician to examine a player.  Neither the NFLPBO nor the Board maintains statistics on Neutral Physicians' findings, determinations, or compensation.  Neither the NFLPBO nor the Board give any consideration to the Neutral Physician's compensation, past findings or determinations, or perceived propensity to favor or disfavor a player in making assignments.

21.   Assuming two Neutral Physicians are assigned to a NC application or appeal—a Neutral Physician neuropsychologist and a Neutral Physician neurologist—the physicians will file a joint report, meaning that they will collectively reach their decision as to whether the player satisfies the medical criteria necessary under the Plan to qualify for the requested benefit.

22.   The Neutral Physicians who evaluated Mr. Olawale—Dr. Matthew Norman (psychiatrist); Dr. Paul Saenz (orthopedist); Dr. Eric Brahin (neurologist); Dr. Justin O'Rourke (neuropsychologist); Dr. Hussein Elkousy (orthopedist); Dr. Annette Okai (neurologist); Dr. John Rabun (psychiatrist); Dr. David Salisbury (neuropsychologist)—were appointed to the Panel and assigned to evaluate Mr. Olawale following these standard practices.  Each of these Neutral Physicians was able to examine Mr. Olawale in the timeframe required and had neither evaluated nor treated Mr. Olawale previously.

23.   Neutral Physicians have always been paid a flat fee for each examination they conduct.  This longstanding practice was codified in the Plan amended and restated as of April 1, 2020.  All Neutral Physicians within the same specialty receive the same fee for each examination.  Some Neutral Physicians belong to medical practices, hospitals, or universities that are required to receive a portion of the examination fee, but the total amount that the Plan pays

---

[6] There are not distinct pools of physicians for initial applications versus appeals.  However, the same Neutral Physician may not evaluate player at both the initial application and appeal level.  DPD § 13.14(a).

for an examination—whether paid entirely to the Neutral Physician or split in some way between the Neutral Physician and an affiliate—is always the same as the other Neutral Physicians in that specialty. The Neutral Physicians who examined Mr. Olawale received a flat fee that did not vary based on outcome.

24. Neutral Physician compensation may include examination fees (which are compensation to the Neutral Physician) and any expense reimbursements (which are not compensation for services, but reimbursement for documented costs incurred). If a Neutral Physician is one of the six consultants described in footnote four, compensation may also include consulting fees.

25. Examination Fees are generally a set rate of $3,000 or $5,000 per visit. Neutral Physician neuropsychologists are generally paid at the $5,000 per visit rate, while all other Neutral Physicians are generally paid at the $3,000 per visit rate. This is because Neutral Physician neuropsychologists spend more time with the player and conduct more tests. Neutral Physician compensation is not based on location or benefit type. No-show fees are included in the definition of Examination Fees. Those fees are generally $500 or $1,000.

26. For each player examination they conduct, Neutral Physicians complete a standard Physician Report Form and write a narrative report ("PRF"), which they send back to the NFLPBO. Neutral Physicians certify on each PRF that: (i) they have reviewed all records of the player provided to them; (ii) they personally examined the player; (iii) the PRF and any attached narrative report accurately document their findings; (iv) the findings reflect their best professional judgment; and (v) they are not biased for or against the player. The Neutral Physicians who examined Mr. Olawale certified each of these on the PRFs that they completed after examining Mr. Olawale.

27. Attached hereto as **Exhibits D**, **E**, **F**, and **G** are true and correct copies of the Plan's Orthopedic Surgeon Neutral Physician Panel Orientation Manual ("Orthopedic Manual") from June 2019, the Psychiatry Neutral Physician Panel Orientation Manual ("Psychiatry Manual") from August 2019 and April 2023, the Neurology/Neuropsychology Neutral Physician Panel Orientation Manual ("Neurology/Neuropsychology Manual") from August 2018 and August 2024, and the General Neutral Physician Panel Orientation Manual ("General Manual") from August 2024, respectively.

28. When new physicians are appointed to the panel, the NFLPBO provides them the orientation manual in their respective specialty, the Summary Plan Description ("SPD"), and any other key information. At an orientation before a physician's first player examination, we explain the manual's requirements, including, for orthopedists, the Plan's Point System for Orthopedic Impairments, which "assigns points to each orthopedic impairment recognized under the Plan" such that a "Player is awarded the indicated number of points for each occurrence of each listed orthopedic impairment, but only where the Player's orthopedic impairment arose out of League football activities, and the impairment has persisted or is expected to persist for at least 12 months from the date of its occurrence, excluding any reasonably possible recovery period." DPD App'x A. Attached hereto as **Exhibit C** is a true and correct copy of Dr. Saenz's contract with the NFLPBO. Attached hereto as **Exhibit H** is a true and correct copy of the October 2022 SPD.

29. On occasion, the NFLPBO, the party advisors, the Committee, or the Board ask a Neutral Physician to clarify the physician's report if it is unclear or ambiguous.

## VI.   COMMITTEE AND BOARD REVIEW

30. A Committee application and a subsequent Board appeal of an adverse Committee decision may relate to one or more benefit types—LOD, NC, or T&P—or it may

relate to multiple benefit types if the player applied for a more than one class of benefits.

31. Committee and Board members have access to a secure online file-share portal that contains the complete administrative record for each player's application or appeal that the Committee or Board member will decide at each meeting. We refer to this portal as the "Meetings Website." All Players Association members of the Board are former NFL players.

32. In advance of each Committee meeting, I (or a colleague of mine) will typically advise the Committee members via email ("e-ballot") when an initial claim is presented on the Meetings Website. The date the claim is presented is reflected in the header of the administrative record documents before the Committee. For instance, Mr. Olawale's records were made available to Committee members on July 1, 2021. Board members and party advisors, however, know to continue to periodically check the Meetings Website as cases get uploaded from daily to weekly. We aim to have the first batch of cases uploaded to the Meetings Website for the Board members and party advisors to review beginning a month before the Board meeting.

33. The Meetings Website for Mr. Olawale's application contained the following documents: a summary of Mr. Olawale's application and records prepared by Plan counsel; Mr. Olawale's application; PRFs from Dr. Saenz, Dr. Brahin, Dr. O'Rourke, and Dr. Norman, and a joint report from Dr. Brahin and Dr. O'Rourke; medical records submitted by Mr. Olawale; and his NFL transaction history (sometimes referred to as "NFL records").

34. The image below is a true and correct screenshot of the Meetings Website for Mr. Olawale's applications, which reflects the documents that were available to Committee members before the August 4, 2021 Committee meeting, where his application was considered. I took this screenshot on October 29, 2024.



35. The Meetings Website for Mr. Olawale's appeal of the Committee's denial of his application contained the following documents: Mr. Olawale's application and appeal; Plan counsel's summary of his application, appeal, and records; the Committee's August 13, 2021 decision letter denying his application; PRFs from the Neutral Physicians who examined him at the Committee level as well as from Dr. Elkousy, Dr. Okai, Dr. Rabun, and Dr. Salisbury, and a joint report by Dr. Okai and Dr. Salisbury; correspondence with Mr. Olawale and his counsel; the Board's March 31, 2022 letter informing Mr. Olawale of his opportunity to respond to the Board-level PRFs; Mr. Olawale's response to that letter; his NFL transaction history; and a list of the actions taken by the Committee.

36. The image below is a true and correct screenshot of the Meetings Website for Mr. Olawale's appeal of the Committee's determination regarding his application, which reflects the documents available to Board members before the June 1, 2022 meeting where his appeal was considered. I took this screenshot on October 29, 2024.

```
May 18, 2022 BOARD
Disability & Survivor Benefit Plan
Disability
  ☐ 079-Jamize Olawale (APPEAL)
    → Case Summary
    → Decision Letter
    → PRF - Neutral Physicians
    → Neutral Physician's Report - Orthopaedist
    → Neutral Physician's Report - Neurologist
    → Neutral Physician's Report - Psychiatrist
    → Neutral Physician's Report - Neuro-Psychologist
    → PRF - Neutral Physicians
    → Neutral Physician's Report - Orthopaedist
    → Neutral Physician's Report - Neurologist
    → Neutral Physician's Report - Neuro-Psychologist
    → Neutral Physician's Report - Psychiatrist
    → Appeal Letter
    → Legal Correspondence Received
    → Review and Response Letter
    → Application - Disability
    → NFL Records
    → Board Actions List
```

37. Mr. Olawale applied for LOD and NC benefits on November 14, 2023 based on claimed orthopedic and neurocognitive impairments.

38. Dr. Prem Parmar, a Neutral Physician orthopedist; Dr. David Clark, a Neutral Physician neurologist; and Dr. Neal Deutch, a Neutral Physician neuropsychologist, were chosen to evaluate Mr. Olawale following the standard practice described above.

39. By report dated December 11, 2023, Dr. Parmar concluded that Mr. Olawale's orthopedic impairments render him LOD disabled. By reports dated December 9, 2023 and December 11, 2023, respectively, Dr. Clark and Dr. Deutch determined that Mr. Olawale does not have an acquired cognitive impairment or an acquired neurocognitive impairment.

40. The Committee considered Mr. Olawale's LOD and NC application at its

13

December 14, 2023 meeting and awarded him LOD benefits with an effective date of September 1, 2023 and a monthly benefit amount of $5,180.00, which Mr. Olawale currently receives. Mr. Olawale did not appeal the Committee's decision as to his LOD application. A true and correct copy of the Committee's December 27, 2023 decision letter is attached hereto as **Exhibit J**.

41. There is no record of any information request from Mr. Olawale to which the NFLPBO or the Board failed to reply.

42. Generally if a player applies for multiple types of benefits in one application, you would need to look at the individual player claim file and/or decision letters to determine for certain which Neutral Physician evaluated the player for which benefit.

## VII. NFLPBO RECORDKEEPING

43. The system of record for processing and tracking applications and appeals, including Neutral Physicians assigned and visited and payments associated with these visits—e.g., physician or player travel, examination fees, diagnostic fees—is known as "V3."

44. The V3 data will only show the final decision made by the Committee or Board for a given application; a Neutral Physician's individual conclusion is not listed in the data. As a general rule, if the Committee's and/or Board's final decision is "Approve," at least one Neutral Physician found the player satisfied the medical criteria necessary to qualify for benefits. If the final decision is "Deny," generally none of the Neutral Physicians found the player satisfied the medical criteria for benefits, and, pursuant to the Neutral Rule, the Board or Committee is unable to approve the application or appeal and award benefits.

Executed this 18th day of November, 2024 at Baltimore, Maryland.

*Hessam Vincent*
Hessam ("Sam") Vincent