# EXHIBIT J

 **NFL PLAYER BENEFITS**
DISABILITY PLAN

200 St. Paul Street, Suite 2420
Baltimore, Maryland 21202
Phone 800.638.3186
Fax 410.783.0041

Via Email/FedEx

December 27, 2023

Mr. Jamize R. Olawale



**Re:    NFL Player Disability & Survivor Benefit Plan**
**Initial Decisions by the Disability Initial Claims Committee**

Dear Mr. Olawale:

On December 14, 2023, the Disability Initial Claims Committee ("Committee") of the NFL Player Disability & Survivor Benefit Plan ("Plan") considered your applications for line-of-duty disability ("LOD") benefits and neurocognitive disability ("NC") benefits. The Committee approved your application for LOD benefits, effective September 1, 2023. By virtue of this award, you are entitled to receive a monthly benefit of $5,180 from the Plan. Qualified Domestic Relations Orders and/or Early Payment Benefit payouts may impact the amount, if applicable in your case. The Committee denied your NC application. This letter explains the Committee's decisions and your appeal rights. Enclosed with this letter are the relevant Plan provisions cited below.

Pursuant to Plan Section 5.2(a), LOD benefits are payable for no longer than 90 months. In no case will LOD benefits continue after 1) the cessation of your disablement or 2) the date you die.

**LOD Benefits**

Your LOD application was received on November 14, 2023. On December 14, 2023, the Committee reviewed your application and the other materials in your file, including the findings of Plan neutral orthopedist Dr. Prem Parmar. The Committee concluded that you are eligible for LOD benefits based on Dr. Parmar's findings, which reflect that your impairments rate ten points under the Plan's Point System for Orthopedic Impairments. The Committee set the effective date as September 1, 2023 because that is the first day of the month that is two months before the receipt of your application, as described in Plan Section 5.2.

**JO-01066**

**Tax Notice and Direct Deposit**

Disability payments are taxable income. Please complete the enclosed federal tax withholding form. If we do not receive your completed form within 6 months from the date of this letter, we will commence distribution of your benefits as soon as administratively applicable using the IRS default tax withholding rules. You may change your withholding election at any time by submitting a tax withholding form. If you would like your payments to be deposited directly into your bank account, please also complete the enclosed Direct Deposit Request form and return it to this office along with your Form W-4.

Upon receipt of your completed tax form, you will receive a lump sum payment that reflects your start date (mentioned above) through and including the month in which your tax form was received (less taxes). Your periodic payment will start the following month.

**NC Benefits**

Your NC application was also received on November 14, 2023. With your application, your representative submitted a legal brief and 216 pages of medical records, including reports from Kane Hall Barry Neurology and Dr. Claude Munday, diagnostic imaging studies, Club records, and Neutral Physician reports from your prior Plan disability application. You then attended examinations with two Plan Neutral Physicians, neurologist Dr. David Clark and neuropsychologist Dr. Neal Deutch. Dr. Clark and Dr. Deutch were provided the medical records you submitted in support of your claim and the reports of the Neutral Physicians who evaluated you in connection with your earlier applications for disability benefits under this Plan. The prior Neutral Physician reports are listed in the attachment.

By report dated December 9, 2023, Dr. Clark stated that your exam findings do not sufficiently demonstrate acquired cognitive impairment. By report dated December 11, 2023, Dr. Deutch found that you do not present with an acquired neurocognitive disorder. By joint report dated December 9, 2023, Dr. Clark and Dr. Deutch indicated that you do not show evidence of acquired neurocognitive impairment.

On December 14, 2023, the Committee considered your NC application and the other materials in your file, including the reports of these Plan Neutral Physicians.

Plan Section 6.1(e) states that to qualify for NC benefits at least one Plan Neutral Physician must find that you have a mild or moderate acquired neurocognitive impairment within the meaning of the Plan. Because neither Plan Neutral Physician concluded that you have such an impairment, you do not meet the threshold eligibility requirement of Plan Section 6.1(e).

The Committee thus denied your application for NC benefits.

**JO-01067**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

Mr. Lance Alworth
December 27, 2023
Page 3

In making its decision, the Committee considered the medical records you submitted in support of your application, but reached its decision despite the conflicting evidence in these records. The Committee noted that under Plan Section 6.1(e), the records, standing alone, are inadequate to support an award of NC benefits. While the neuropsychological evaluation report you submitted from Dr. Munday reflects a diagnosis of Mild Neurocognitive Disorder due to Traumatic Brain Injury, Drs. Clark and Deutch disagreed with this finding and concluded that you do not have an acquired neurocognitive impairment after thoroughly examining you, performing complex neuropsychological and neurological testing, and reviewing this report, among other records. Furthermore, Plan neuropsychologist Dr. Deutch stated that your "neurocognitive functioning is entirely within normal limits." The Committee thus fully credited the conclusions of the Plan's Neutral Physicians, who evaluated you more recently and explained to the Committee's satisfaction why their test findings did not reveal evidence of acquired neurocognitive impairment.

The Committee credited the conclusions of the Neutral Physicians for several reasons. First, they are specialists in the medical fields encompassing your claimed impairments, and they have experience evaluating Players and other professional athletes. Second, they reviewed all of the records you provided, conducted thorough examinations of you, and provided complete and detailed reports of your condition. Finally, the Plan physicians, like Dr. Clark and Dr. Deutch, are absolutely neutral in this process because they are jointly selected by the NFL Players Association and the NFL Management Council; they are compensated in flat-fee arrangements, irrespective of the outcome of any particular evaluation; and they are contractually obligated to conduct thorough examinations, free of bias for or against Players.

## Appeal Rights

Enclosed with this letter is a copy of Plan Section 13.14, which governs your right to appeal the Committee's NC decision. If you disagree with the Committee's NC decision and you want further review, you must appeal the decision to the Plan's Disability Board by filing a written request for review with the Disability Board at this office within 180 days of your receipt of this letter. You should also submit written comments, documents and any other information that you believe supports your appeal. The Disability Board will take into account all available information, regardless of whether that information was available or presented to the Committee.

This letter identifies the Plan provisions that the Committee relied upon in making its determinations. Please note that the Plan provisions discussed in this letter are set forth in the "Relevant Plan Provisions" attachment. These are excerpts, however. You should consult the Plan Document for a full recitation of the Plan's terms. The Committee did not rely on any other internal rules, guidelines, protocols, standards, or other similar criteria beyond the Plan provisions discussed herein.

**JO-01068**

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claims for benefits, including the governing Plan Document, which can also be found at www.nflplayerbenefits.com.  Please note that if the Disability Board reaches an adverse decision on review, you may then bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a).

If you have any questions, please contact the NFL Player Benefits Office.

Sincerely,

**Michael B. Miller**
Plan Director
On behalf of the Committee

Enclosure
cc: Samuel Katz

---

To receive assistance in these languages, please call:
SPANISH (Español): Para obtener asistencia en Español, llame al 855-938-0527 (ext. 1)
CHINESE (中文): 如果需要中文的帮助，请拨打这个号码 855-938-0527 (ext. 2)
TAGALOG (Tagalog): Kung kailangan ninyo ang tulong sa Tagalog tumawag sa 855-938-0527 (ext. 3)
NAVAJO (Dine): Dinek'ehgo shika at'ohwol ninisingo, kwiijigo holne' 800-638-3186 (ext. 416)

---

**JO-01069**

**Relevant Plan Provisions**

**6.1    Eligibility**.  For applications received before April 1, 2020, a Player will receive a monthly neurocognitive disability benefit ("NC Benefit") in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (a), (b), (c), (d), (e), (f), (g), (h), and (i) below are met.

Effective for applications received on and after April 1, 2020 and through March 31, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), and (m) below are met.

Effective for applications received on and after April 1, 2021, the requirements of (a) and (b) will not apply, and a Player will receive an NC Benefit in the amount described in Section 6.4 for the months described in Section 6.6 if and only if all of the conditions in (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m) below are met.

(a)    The Player must be a Vested Inactive Player based on his Credited Seasons only, and must be under age 55.

(b)    The Player must have at least one Credited Season under the Bert Bell/Pete Rozelle Plan after 1994.

(c)    The Player must not receive monthly retirement benefits under Articles 4 or 4A of the Bert Bell/Pete Rozelle Plan or be a Pension Expansion Player within the meaning of the Bert Bell/Pete Rozelle Plan.

(d)    The Player must not be receiving T&P benefits under this Plan or the Bert Bell/Pete Rozelle Plan.

(e)    At least one Plan Neutral Physician must find that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.  If no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not satisfied, and the Player will not be eligible for and will not receive NC Benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record.

(f)    After reviewing the report(s) of the Plan Neutral Physician(s), along with all other facts and circumstances in the administrative record, the Disability Initial Claims Committee or the Disability Board, as the case may be, must conclude, in its absolute discretion, that the Player has a mild or moderate neurocognitive impairment in accordance with Section 6.2.

(g)    The Player must execute the release described in Section 6.3.

**JO-01070**

(h)    The Player must not have a pending application for T&P benefits or for line-of-duty disability benefits under this Plan or the Bert Bell/Pete Rozelle Plan, except that a Player can file a claim for the NC Benefit simultaneously with either or both of those benefits.

(i)    The Player must satisfy the other requirements of this Article 6.

(j)    The Player must not have previously received the NC Benefit and had those benefits terminate at age 55 before April 1, 2020 by virtue of earlier versions of this Plan.

(k)    If the Player is not a Vested Inactive Player, his application for the NC benefit must be received by the Plan within eighty-four (84) months after he ceases to be an Active Player.

(l)    The Player must be under age 65.

(m)    For applications received on and after October 1, 2020, the Player must submit Medical Records with his initial application or appeal, as the case may be, subject to the rules of Section 6.2(d).  This paragraph (m) does not apply to applications received prior to October 1, 2020.

**6.2    Determination of Neurocognitive Impairment.**

(a)    <u>Mild Impairment</u>.  A Player eligible for benefits under this Article 6 will be deemed to have a mild neurocognitive impairment if he has a mild objective impairment in one or more domains of neurocognitive functioning which reflect acquired brain dysfunction, but not severe enough to interfere with his ability to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(b)    <u>Moderate Impairment</u>.  A Player eligible for benefits under this Article 6 will be deemed to have a moderate neurocognitive impairment if he has a mild-moderate objective impairment in two or more domains of neurocognitive functioning which reflect acquired brain dysfunction and which may require use of compensatory strategies and/or accommodations in order to independently perform complex activities of daily living or to engage in any occupation for remuneration or profit.

(c)    <u>Substance Abuse and Psychiatric Exclusion</u>.  A Player who otherwise satisfies the requirements for mild or moderate neurocognitive impairment will not be eligible for NC benefits if his neurocognitive impairment is caused by substance abuse or a psychiatric condition.  The prior sentence does not apply to a Player eligible for benefits under this Article 6 whose neurocognitive impairment is not caused by substance abuse or a psychiatric condition, but who abuses substances or has a psychiatric condition.  Substance abuse means the use of, addiction to, or dependence upon any controlled substance (as defined in 21 U.S.C. § 802(d)), alcohol, or illegal drugs (including all drugs and substances, other than controlled substances or alcohol, used or taken in violation of law or League policy).

**JO-01071**

(d)     <u>Medical Records and Evaluations.</u>

A Player applying for NC Benefits on and after October 1, 2020 must submit Medical Records with his application.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his application.  The Player's application will not be complete, and will not be processed, until the Plan receives Medical Records.  The Player's application will be denied if he does not submit any Medical Records within the 45 day period.  If such a Player's application is denied by the Disability Initial Claims Committee because the Player failed or refused to submit Medical Records, and the Player appeals that determination, he must submit Medical Record with his appeal.  A Player who does not do so will be given 45 days to submit Medical Records and thereby complete his appeal.  The Player's appeal will not be complete, and will not be processed, until the Plan receives Medical Records.  Any such Player in this situation who does not submit any Medical Records within the 45 day period will not be entitled to NC Benefits, and his appeal will be denied.

Whenever the Disability Initial Claims Committee or Disability Board reviews the application or appeal of any Player for NC Benefits, such Player will first be required to submit to an examination scheduled by the Plan with a Neutral Physician, or any other physician or physicians, institution or institutions, or other medical professional or professionals, selected by the Disability Initial Claims Committee or the Disability Board, and may be required to submit to such further examinations scheduled by the Plan as, in the opinion of the Disability Initial Claims Committee or the Disability Board, are necessary to make an adequate determination respecting his physical or mental condition.

Any Player refusing to submit to any examination required by the Plan will not be entitled to NC Benefits.  If a Player fails to attend an examination scheduled by the Plan, his application for NC Benefits will be denied, unless the Player provided at least two business days' advance notice to the Plan that he was unable to attend.  The Plan will reschedule the Player's exam if two business days' advance notice is provided.  The Player's application for NC Benefits will be denied if he fails to attend the rescheduled exam, even if advance notice is provided.  The Disability Initial Claims Committee or the Disability Board, as applicable, may waive a failure to attend if they find that circumstances beyond the Player's control precluded the Player's attendance at the examination.

A Player or his representative may submit to the Plan additional medical records or other materials for consideration by a Neutral Physician, institution, or medical professional, except that any such materials received by the Plan less than 10 days prior to the date of the examination, other than radiographic tests, will not be considered by a Neutral Physician, institution, or medical professional.

(e)     <u>Validity Testing.</u>  A Player who is otherwise eligible for benefits under this Article 6 and who is referred for neuropsychological testing will undergo, among other testing, two validity tests.  A Player who fails both validity tests will not be eligible for the NC Benefit.  A Player who fails one validity test may be eligible for the NC Benefit, but only if the neuropsychologist

**JO-01072**

NFL_ALFORD-0023389

provides an explanation satisfactory to the Disability Board or the Disability Initial Claims Committee (as applicable) for why the Player should receive the NC Benefit despite the failed validity test.

**13.14  Claims Procedure.**  It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the U.S. Department of Labor, 29 C.F.R. § 2560.503-1.

(a)    <u>Disability Claims.</u>  Except for Article 4 T&P benefits, each person must claim any disability benefits to which he believes he is entitled under this Plan by filing a written application with the Disability Board in accordance with the claims filing procedures established by the Disability Board, and such claimant must take such actions as the Disability Board or the Disability Initial Claims Committee may require.  The Disability Board or the Disability Initial Claims Committee will notify such claimants when additional information is required.  The time periods for decisions of the Disability Initial Claims Committee and the Disability Board in making an initial determination may be extended with the consent of the claimant.

A claimant's representative may act on behalf of a claimant in pursuing a claim for disability benefits or appeal of an adverse disability benefit determination only after the claimant submits to the Plan a signed written authorization identifying the representative by name.  The Disability Board will not recognize a claimant's representative who has been convicted of, or pled guilty or no contest to, a felony.

If a claim for disability benefits is wholly or partially denied, the Disability Initial Claims Committee will give the claimant notice of its adverse determination within a reasonable time, but not later than 45 days after receipt of the claim.  This determination period may be extended twice by 30 days if, prior to the expiration of the period, the Disability Initial Claims Committee determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the claimant of the circumstances requiring the extension of time and the date by which the Disability Initial Claims Committee expects to render a decision.  If any extension is necessary, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues.  The claimant will be afforded at least 45 days within which to provide the specified information.  If the Disability Initial Claims Committee fails to notify the claimant of its decision to grant or deny such claim within the time specified by this paragraph, the claimant may deem such claim to have been denied by the Disability Initial Claims Committee and the review procedures described below will become available to the claimant.

The notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. § 2560.503-1(o) for culturally and linguistically appropriate notices, and will set forth the following:

(1)    the specific reason(s) for the adverse determination;

**JO-01073**

(2)    reference to the specific Plan provisions on which the adverse determination is based;

(3)    a description of additional material or information, if any, needed to perfect the claim and the reasons such material or information is necessary;

(4)    a description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA section 502(a) following an adverse determination on review;

(5)    any internal rule, guideline, protocol, or other similar criterion relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)    if the determination was based on a scientific or clinical exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request);

(7)    a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan; and

(8)    a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.

The claimant will have 180 days from the receipt of an adverse determination to file a written request for review of the initial decision to the Disability Board. A claimant must exhaust this appeal procedure before he is eligible to challenge an adverse determination in a lawsuit.

The claimant will have the opportunity to submit written comments, documents, and other information in support of the request for review and will have access to relevant documents, records, and other information in his administrative record. The Disability Board's review of the adverse determination will take into account all available information, regardless of whether that information was presented or available to the Disability Initial Claims Committee. The Disability Board will accord no deference to the determination of the Disability Initial Claims Committee. The Disability Board will not terminate or reduce a Player's benefit in cases where the Player was awarded the benefit by the Disability Initial Claims Committee and on appeal from that decision, he asks the Disability Board to review his benefit category under Section 3.4(a)-(d)

**JO-01074**

or Section 6.2(a)-(b), including any such appeal that requires review by a Medical Advisory Physician under section 9.3(a). Nothing in the prior sentence shall limit the Disability Board's authority to terminate or reduce a Player's benefits in any situation other than the specific appeal described in the prior sentence, in accordance with Section 3.8 or as otherwise provided under the terms of the Plan.

On review, the claimant must present all issues, arguments, or evidence supporting the claim for benefits. Failure to do so will preclude the claimant from raising those issues, arguments, or evidence in any subsequent administrative or judicial proceedings.

If a claim involves a medical judgment question, the health care professional who is consulted on review will not be the individual who was consulted during the initial determination or his subordinate, if applicable. Upon request, the Disability Board will provide for the identification of the medical experts whose advice was obtained on behalf of the Plan in connection with the adverse determination, without regard to whether the advice was relied upon in making the benefit determination.

The claimant will receive, free of charge, any new or additional evidence considered, relied upon, or generated by or on behalf of the Plan on review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date. The claimant also will receive, free of charge, any new or additional rationale for the denial of the claim that arises during the review, as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided, so that the claimant can have a reasonable opportunity to respond prior to that date.

The Disability Board meets quarterly. Decisions by the Disability Board on review will be made no later than the date of the Disability Board meeting that immediately follows the Plan's receipt of the claimant's request for review, unless the request for review is received by the Plan within 30 days preceding the date of such meeting. In such case, the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the request for review. If a claimant submits a response to new or additional evidence considered, relied upon, or generated by the Plan on review, or to any new or additional rationale for denial that arises during review, and that response is received by the Plan within 30 days preceding the meeting at which the Disability Board will consider the claimant's request for review, then the Disability Board's decision may be made by no later than the second meeting of the Disability Board following the Plan's receipt of the claimant's response. If special circumstances require an extension of time for processing, the Disability Board will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the determination will be made, prior to the commencement of the extension.

The claimant will be notified of the results of the review not later than five days after the determination.

**JO-01075**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0023392

If the claim is denied in whole or in part on review, the notice of an adverse determination will be written in a manner calculated to be understood by the claimant, will follow the rules of 29 C.F.R. § 2560.503-1(o) for culturally and linguistically appropriate notices, and will:

(1)     state the specific reason(s) for the adverse determination;

(2)     reference the specific Plan provision(s) on which the adverse determination is based;

(3)     state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits;

(4)     state that the claimant has the right to bring an action under ERISA section 502(a) and identify the statute of limitations applicable to such action, including the calendar date on which the limitations period expires;

(5)     disclose any internal rule, guidelines, or protocol relied on in making the determination (or state that such rules, guidelines, protocols, standards, or other similar criteria do not exist);

(6)     if the determination was based on a scientific or clinical exclusion or limit, contain an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's circumstances (or state that such explanation is available free of charge upon request); and

(7)     discuss the decision, including an explanation of the basis for disagreeing with or not following the views of (a) medical professionals treating the claimant and vocational professionals who evaluated the claimant presented by the claimant, (b) medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination, or (c) Social Security Administration disability determinations presented by the claimant to the Plan.

A claimant may request a written explanation of any alleged violation of these claims procedures.  Any such request should be submitted to the plan in writing; it must state with specificity the alleged procedural violations at issue; and it must be received by the Plan no more than 45 days following the claimant's receipt of a decision on the pending application or appeal, as applicable.  The Plan will provide an explanation within 10 days of the request.

**JO-01076**

**Prior Neutral Physician Reports**

| Neutral Physician | Specialty | Report Year |
|---|---|---|
| Dr. Annette Okai & Dr. David Salisbury | Neurologist & Neuropsychologist | 2022 |
| Dr. Annette Okai | Neurologist | 2022 |
| Dr. David Salisbury | Neuropsychologist | 2022 |
| Dr. John Rabun | Psychiatrist | 2022 |
| Dr. Hussein Elkousy | Orthopedist | 2022 |
| Dr. Eric Brahin & Dr. Justin O'Rourke | Neurologist & Neuropsychologist | 2021 |
| Dr. Eric Brahin | Neurologist | 2021 |
| Dr. Justin O'Rourke | Neuropsychologist | 2021 |
| Dr. Matthew Norman | Psychiatrist | 2021 |
| Dr. Paul Saenz | Orthopedist | 2021 |

**JO-01077**