**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-00358-JRR |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT OF
PLAINTIFF CHARLES SIMS'S CLAIMS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ....................................................................... 2

LEGAL STANDARD ........................................................................................................ 12

ARGUMENT ..................................................................................................................... 13

    I.      THE BOARD DID NOT ABUSE ITS DISCRETION IN DETERMINING
           THAT MR. SIMS IS NOT ENTITLED TO ACTIVE T&P BENEFITS
           UNDER THE PLAN'S TERMS ........................................................................... 13

           A.      The Board's Decision Was Consistent with the Plan's Terms,
                  Which Are Plain and Unambiguous. ........................................................ 15

           B.      The Board's Decision Was Consistent with the Plan's Purposes
                  and Goals. .................................................................................................. 17

           C.      The Materials the Board Considered Were Adequate to Support Its
                  Decision. .................................................................................................... 17

           D.      The Remaining *Booth* Factors All Support Finding that the Board's
                  Decision Was Reasonable. ......................................................................... 20

    II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
           COUNT II BECAUSE THE DENIAL LETTERS COMPLY WITH
           ERISA'S CLAIMS PROCEDURES ................................................................... 24

    III.    THE BOARD CONDUCTED A FULL AND FAIR REVIEW OF MR.
           SIMS'S BENEFITS CLAIM ............................................................................... 26

    IV.    MR. SIMS'S ALLEGATIONS OF BREACH OF FIDUCIARY DUTY
           FALL FAR SHORT OF CREATING A TRIABLE ISSUE OF FACT ............... 28

CONCLUSION ................................................................................................................. 29

CERTIFICATE OF SERVICE ......................................................................................... 30

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Balkin v. Unum Life Ins. Co.*,
2024 WL 1346789 (D. Md. Mar. 29, 2024)........................................................ 20

*Bidwell v. Garvey*,
743 F. Supp. 393 (D. Md. 1990) ....................................................................... 28

*Blackshear v. Reliance Standard Life Ins. Co.*,
509 F.3d 634 (4th Cir. 2007) ............................................................................ 16

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
201 F.3d 335 (4th Cir. 2000) ..................................................................... passim

*Boyd v. Bell*,
796 F. Supp. 2d 682 (D. Md. 2011) ................................................................. 13

*Brown v. Covestro LLC Welfare Benefits Plan*,
2023 WL 8481914 (W.D. Pa. Nov. 15, 2023), *R&R adopted*, 2023 WL
8481352 (W.D. Pa. Dec. 7, 2023) .................................................................... 25

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019) ............................................................................ 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................... 13

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) ...................................................................... 28, 29

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)..................................................................................... 17, 25

*Colucci v. Agfa Corp. Severance Pay Plan*,
431 F.3d 170 (4th Cir. 2005), *abrogated on other grounds by Champion v.
Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th Cir. 2008) ................. 15, 16

*Conkright v. Frommert*,
559 U.S. 506 (2010)........................................................................................... 28

*Cosey v. Prudential Ins. Co. of Am.*,
735 F.3d 161 (4th Cir. 2013) ............................................................................ 14

*Courson v. Bert Bell NFL Player Ret. Plan*,
75 F. Supp. 2d 424 (W.D. Pa. 1999), *aff'd*, 214 F.3d 136 (3d Cir. 2000) ............ 24

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
487 F. Supp. 3d 807 (N.D. Cal. 2020) *aff'd and remanded on other grounds*,
855 F. App'x 332 (9th Cir. 2021) ..................................................................... 23

*Donnell v. Metro. Life Ins. Co.*,
165 F. App'x 288 (4th Cir. 2006)), *aff'd*, 584 F. App'x 109 (4th Cir. 2014) ......... 19

# TABLE OF AUTHORITIES
## (Continued)

*Elliott v. Sara Lee Corp.*,
190 F.3d 601 (4th Cir. 1999) ............................................................. 20

*Evans v. Eaton Corp. Long Term Disability Plan*,
514 F.3d 315 (4th Cir. 2008) ........................................................ 14, 17

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ...................................................................... 13, 15

*Fortier v. Principal Life Ins. Co.*,
666 F.3d 231 (4th Cir. 2012) ............................................................. 23

*Friz v. J&H Marsh & McLennan, Inc.*,
2 F. App'x 277 (4th Cir. 2001) ..................................................... 17, 22

*Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active* Plan,
31 F.4th 854 (4th Cir. 2022) .............................................................. 22

*Geddes v. United Staffing All. Emp. Med. Plan*,
469 F.3d 919 (10th Cir. 2006) ........................................................... 22

*Geiger v. Zurich Am. Ins. Co.*,
72 F.4th 32 (4th Cir. 2023) ........................................................... 13, 14

*Gelumbauskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*,
2010 WL 2025128 (D. Md. May 17, 2010) ........................................ 25

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
925 F. Supp. 2d 700 (D. Md. 2012) ............................................. 14, 16

*Gregg v. Transp. Workers of Am. Int'l*,
343 F.3d 833 (6th Cir. 2003) ............................................................. 22

*Harrison v. Wells Fargo Bank, N.A.*,
773 F.3d 15 (4th Cir. 2014) ............................................................... 14

*Hayes v. Prudential Ins. Co. of Am.*,
60 F.4th 848 (4th Cir. 2023) .............................................................. 13

*Hilton v. Unum Life Ins. Co. of Am.*,
967 F. Supp. 2d 1114 (E.D. Va. 2013) ............................................... 22

*Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
468 F.3d 1082 (8th Cir. 2006) ........................................................... 24

*Kane v. UPS Pension Plan Bd. of Trustees*,
2013 WL 6502874 (D. Md. Dec. 11, 2013) ....................................... 19

*Kress v. Food Emps. Lab. Rels. Ass'n*,
391 F.3d 563 (4th Cir. 2004) ....................................................... 17, 25

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Metro. Life Ins. Co. v. Glenn*,
    554 U.S. 108 (2008) ................................................................................................. 23

*Mid Atl. Med. Servs., LLC v. Sereboff*,
    407 F.3d 212 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006) ..................................... 15

*Morris v. Nat'l Football League Ret. Bd.*,
    833 F. Supp. 2d 1374 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir.
    2012)) ........................................................................................................................ 24

*Mullins v. AT&T Corp.*,
    424 F. App'x 217 (4th Cir. 2011) ............................................................................ 21

*Pender v. Bank of Am. Corp.*,
    788 F.3d 354 (4th Cir. 2015) ................................................................................... 17

*Pettaway v. Tchrs. Ins. & Annuity Ass'n of Am.*,
    699 F. Supp. 2d 185 (D.D.C. 2010), *aff'd*, 644 F.3d 427 (D.C. Cir. 2011) ............ 20

*Ricci v. DeStefano*,
    557 U.S. 557 (2009) ................................................................................................. 12

*Schkloven v. Hartford Life & Accident Ins. Co.*,
    2022 WL 2869266 (D. Md. July 21, 2022) ....................................................... 14, 18

*Smith v. Cont'l Cas. Co.*,
    369 F.3d 412 (4th Cir. 2004) ................................................................................... 23

*Smith v. NFL Player Disability & Neurocognitive Benefit Plan*,
    2024 WL 722594 (W.D. Tex. Jan. 9, 2024) *R&R adopted*, 2024 WL 1123588
    (W.D. Tex. Mar. 13, 2024) .................................................................................. 13, 16

*Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
    2012 WL 2374661 (D. Md. June 19, 2012) .............................................................. 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................................. 15

*Switzer v. Benefits Admin. Comm.*,
    2014 WL 4052855 (D. Md. Aug. 13, 2014) ............................................................. 24

*Tatum v. RJR Pension Inv. Comm.*,
    761 F.3d 346, 358 (4th Cir. 2014) ........................................................................... 22

*Thole v. U. S. Bank N.A.*,
    590 U.S. 538 (2020) ................................................................................................. 29

*United States v. 8.929 Acres of Land in Arlington Cnty., Va.*,
    36 F.4th 240 (4th Cir. 2022) .................................................................................... 12

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) ................................................................................................... 15

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .................................................................... 27

*Vaughan v. Celanese Americas Corp.*,
   339 F. App'x 320 (4th Cir. 2009) ....................................... 14, 21, 23

*Waldoch v. Medtronic*,
   757 F.3d 822 (8th Cir. 2014) ..................................................... 22

*Walker v. AT&T Benefit Plan No. 3*,
   2022 WL 1434668 (C.D. Cal. Apr. 6, 2022), *aff'd*, 2023 WL 3451684 (9th
   Cir. May 15, 2023) ................................................................. 28

*Williams v. Metro. Life Ins. Co.*,
   609 F.3d 622 (4th Cir. 2010) ..................................................... 13

*Wilson v. UnitedHealthcare Ins. Co.*,
   27 F.4th 228 (4th Cir. 2022) ............................................. 19, 21, 23

*Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*,
   2020 WL 5628020 (S.D. Tex. Aug. 17, 2020) ................................... 23

*Youboty v. NFL Player Disability*,
   856 F. App'x 497 (5th Cir. 2021) ........................................... 13, 16

**Statutes**

29 U.S.C. § 1002(16)(A) ................................................................. 3

29 U.S.C. § 1002(16)(B) ................................................................. 3

29 U.S.C. § 1002(21)(A) ................................................................. 3

29 U.S.C. § 1002(37)(A) ................................................................. 3

29 U.S.C. § 1132(a)(1)(B) ............................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) .................................................................... 12

**Regulations**

29 C.F.R. § 2560.503-1(b)(7) ............................................................ 27

29 C.F.R. § 2560.503-1(g)(1) ............................................................. 7

29 C.F.R. § 2560.503-1(h)(2)(iv) ........................................................ 27

29 C.F.R. § 2560.503-1(j)(6) ............................................................ 24

29 C.F.R. § 2560.503-1(o) ................................................................ 8

## INTRODUCTION

Plaintiff Charles Sims is one of nine plaintiffs bringing disparate Employee Retirement Income Security Act ("ERISA") claims within this single lawsuit to contest the decision on his application for disability benefits.  Mr. Sims filed an application for total-and-permanent ("T&P") disability benefits under the NFL Player Disability & Survivor Benefit Plan (the "Plan") in 2020, and was awarded T&P benefits in 2021 following his examination by four Neutral Physicians.  He appealed that decision, arguing that he was eligible for a higher tier of T&P benefits ("Active Football") than the tier he was awarded ("Inactive A"), a distinction based on whether his qualifying disability arose while he was an active player.  On appeal, the Plan's Board of Trustees (the "Board") referred the question of when Mr. Sims's disability arose to a Medical Advisory Physician ("MAP"), pursuant to a Plan rule permitting the Board to submit medical issues to a MAP for a final and binding determination.  The MAP concluded that Mr. Sims did not have a T&P disabling psychiatric impairment that arose when he was an active player, and the Board accordingly denied his appeal for Active Football benefits.  Mr. Sims continues to receive Inactive A benefits pursuant to a Plan rule that benefits will not cease because a player unsuccessfully appeals for a higher level.  Through this lawsuit, Mr. Sims challenges the denial of his appeal and seeks an award of Active Football benefits.  He also challenges the adequacy of the notices that he received, and alleges that the Board breached its fiduciary duties.

Defendants are entitled to summary judgment as to each of Mr. Sims's claims.  Mr. Sims's claim for benefits (Count I) must be denied because the Plan's terms—negotiated by the NFL teams and Mr. Sims's union—expressly permitted the Board to refer the question whether Mr. Sims had a qualifying disability that arose while he was an active player to a MAP for a final and binding determination, and the Board did not abuse its discretion in relying on the MAP's well-reasoned report concluding that he did not have a T&P disability that arose while he was a player.

1

Mr. Sims likewise cannot prevail on his claim that his denial notices were defective (Count II) because the relevant notices provided the information required by ERISA. His attacks on the Board's processes fare no better (Count III). Mr. Sims does not make any specific factual allegations regarding the Board's review or denial of his claims, or contend that any of the physicians who examined him or reviewed his claim were biased. In fact, Mr. Sims offers *no* criticism of the four Neutral Physicians who examined him (following which he was awarded T&P benefits), and his *only* criticism of the reviewing MAP is that she described self-reports of impairment that were made by him and his wife as "important" but "lack[ing] objective data to sustain the claim." Pls.' Am. Class Action Compl. ("AC" or the "Complaint") ¶ 193, ECF No. 56. Although Mr. Sims disagrees with the MAP's conclusion, he does not allege that she failed to evaluate him or review his medical records. Nor does he allege that she was biased. *See id.*

Mr. Sims cannot maintain his claims for fiduciary breach in Count V. He does not make a single allegation that would support a finding that the Board breached its fiduciary duty in reviewing and denying his claim. He does not allege that the Board relied upon a biased Neutral Physician or MAP, and the general allegations in Count V are derivative of the same alleged failures underlying Counts I, II, and III. Moreover, even if the Court were to find that the Board committed an error in relying on the MAP in denying Mr. Sims's claim for greater benefits or that Mr. Sims's notices were deficient, these kinds of alleged errors do not come close to meeting the standard to demonstrate a fiduciary breach. For these reasons, as set forth more fully below, the Court should enter summary judgment for Defendants on all of Mr. Sims's claims.

## STATEMENT OF UNDISPUTED FACTS

### The Disability Plan & The Board

The Plan is a Taft-Hartley, multi-employer benefit plan established, negotiated, and maintained through collective bargaining between the NFL Players Association ("Players

Association"), which represents NFL players; and the NFL Management Council ("Management Council"), which represents the NFL teams. *See* Ex. A, Apr. 1, 2021 Disability Plan Doc. ("DPD" or "2021 DPD"), CS-6;[1] 29 U.S.C. §§ 1002(16)(A)-(B), 1002(37)(A). It is governed by ERISA. *See* DPD CS-6.

For the 2017 plan year through the 2022 plan year, the NFL teams, who fund the Plan, contributed $1.33 billion to the Plan; in the 2022 plan year alone, the teams contributed $298,400,000. Decl. of M. Miller in Support of Defs.' Joint MSJs ("Miller Decl.") ¶ 3. During that time, the Plan paid nearly $1.2 billion in benefits[2] to former NFL players and their beneficiaries, including, in 2022, $257,463,357 to roughly 23% of Plan participants for an average annual benefit of $86,455. *Id.* ¶¶ 5-6.

The Board is the administrator and named fiduciary of the Plan. DPD §§ 1.2, 9.2; *see* 29 U.S.C. §§ 1002(16)(A)-(B). The Board has six voting members, three appointed by the Players Association and three appointed by the Management Council, DPD § 9.1; all Players Association members of the Board are former NFL players, Vincent Decl. ¶ 32. The Board is "responsible for implementing and administering the Plan, subject to the terms of the Plan," and it has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan." DPD §§ 9.2, 9.9; *see* 29 U.S.C. § 1002(21)(A); *see also* AC ¶ 43. The Board's discretion extends to "decid[ing] claims for benefits"; adopting procedures for the Plan's administration; and delegating certain tasks to other persons—including advisors, counsel, consultants, and physicians.

---

[1] The Plan document effective when Mr. Sims's 2020 claim was decided—the only claim not barred by the limitations period—was amended and restated as of April 1, 2021, and executed on August 17, 2021. DPD CS-6, CS-85. "Ex." refers to the exhibits attached to the Declaration of Hessam ("Sam") Vincent in Support of Defendants' Motion for Summary Judgment of Plaintiff Charles Sims's Claims ("Vincent Decl."). Exhibits are sequentially paginated beginning with "CS-1"; leading zeroes are omitted.

[2] This figure does not include disability benefits paid out of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Retirement Plan"). *See* DPD at CS-6 (explaining that a portion of disability benefits are still paid out of the Retirement Plan); Ex. B, Apr. 1, 2017 Disability Plan Doc. ("2017 DPD"), at CS-113 (Retirement Plan will continue to pay certain T&P and line-of-duty ("LOD") benefits); Miller Decl. ¶ 4.

DPD §§ 9.2(c), (e), (f).  The Plan specifies that the Board is entitled to rely conclusively upon the advice or opinion of such persons.  *Id.* § 9.2(f).  Neither Committee nor Board members are paid for their service to the Plan, and no Committee member receives any remuneration or pecuniary gain if there is any residual or remainder in Plan assets after benefits are paid.  Miller Decl. ¶ 7.

***Neutral Physicians and T&P Benefits Eligibility***

Since 2017, the Plan has included a collectively bargained "Neutral Rule," which requires that no player can be eligible for T&P disability benefits unless at least one Neutral Physician finds that the player satisfies the relevant Plan disability standard.  Vincent Decl. ¶ 14; 2017 DPD § 3.1(c) (T&P standard).  "Neutral Physicians" is defined by the Plan to mean physicians or other health care professionals who "examine each Player referred by the Plan and … provide such report or reports on the Player's condition as necessary for the Disability Board or Disability Initial Claims Committee to make an adequate determination as to that Player's physical or mental condition."  DPD §§ 1.25, 12.3(b).  Neutral Physicians are "jointly designate[d]" by the Players Association and Management Council to a panel available to conduct medical examinations; the Board plays no role in the designation process.  *Id.* § 12.3(a); Vincent Decl. ¶ 15.

When a former player submits an application or appeal, the NFL Player Benefits Office ("NFLPBO") assigns one or more Neutral Physicians to evaluate the applicant, DPD § 3.3(a), using neutral criteria such as area of specialty, proximity, and availability to conduct a timely evaluation, Vincent Decl. ¶ 20.  Neither the NFLPBO nor the Board maintains statistics concerning individual Neutral Physicians' past disability determinations.  *Id.*; Miller Decl. ¶ 8.  Neutral Physicians must (1) certify that their opinions  are not biased for or against any player, and (2) provide services for a "flat-fee" that does not depend on whether their opinions tend to support or

refute an application or appeal.  DPD § 12.3(a).[3]

Neutral Physicians complete standard Physician Report Forms and write narrative reports for each examination they conduct ("PRF").[4]  Vincent Decl. ¶ 27; DPD § 12.3(b).  A player may submit medical records or other materials for the Neutral Physician's consideration.  DPD § 3.3(a); Ex. H, Admin. Record ("AR"), at 3.

Mr. Sims was awarded T&P benefits, but is challenging the level of benefits he received. AC ¶¶ 191-93.  For a player to be awarded T&P benefits, a Neutral Physician must find that the player "is substantially unable to engage in any occupation or employment for remuneration or profit" and that "such condition is permanent."  DPD § 3.1(d); AC ¶ 60.  If no Neutral Physician finds the player T&P disabled, the player is not eligible for T&P benefits.  DPD § 3.1(d); *see* Vincent Decl. ¶ 14.

A T&P disabled player will be awarded benefits in one of four categories: Active Football, Active Nonfootball, Inactive A, or Inactive B.  *Id.* §§ 3.4(a)-(d).  A player qualifies for Active Football benefits if his disability "arises out of League football activities while he is an Active Player."  *Id.* § 3.4(a).  A player qualifies for Active Nonfootball benefits if his disability "does not arise out of League football activities but does arise while he is an Active Player."  *Id.* § 3.4(b). "Arising out of League football activities" means "arising out of any League pre-season, regular-season, or post-season game, or any combination thereof," but not from "other employment" or

---

[3] Neutral Physicians' contracts similarly require them to "personally conduct each test and examination, and prepare each report, according to the highest applicable professional standards, without any bias or favoritism for or against any Player."  *See, e.g.*, Ex. C, Dr. John Rabun Contract, at CS-218.

[4] The NFLPBO holds orientation sessions for its newly appointed physicians, where it provides and explains the relevant Orientation Manual for the physician's specialty, the Summary Plan Description ("SPD"), and other relevant information.  Vincent Decl. ¶ 28; DPD CS-71-84.  The Manuals direct the physicians to personally evaluate players, review and evaluate all submitted records, conduct examinations and prepare reports to the "highest professional standards without any bias or favoritism for or against any Player," complete reports within 10 days after an examination, verify that test results and other data are accurate and thorough, and have no conflict of interest.  Ex. D, Ortho. Manual, at CS-; Ex. E Psych. Manuals, at CS-254 (2019), CS-283 (2023); Ex. F, Neuro. Manuals, at CS-312 (2018), CS-374 (2024); Ex. G, General Manual, at CS-440.

"athletic activity for recreational purposes." *Id.* § 3.4(e). An "Active Player" is a player who is "obligated to perform football playing services under a contract" with an NFL team or, for T&P benefits, is "no longer obligated … up until the July 31 next following or coincident with the expiration or termination of his last contract." *Id.* § 1.1. Applications for Active Football and Active Nonfootball benefits (collectively, "Active T&P benefits") must be received within 18 months after the player ceases to be an Active Player. *Id.* §§ 3.4(a)-(b). If a player is T&P disabled but does not meet the qualifications for Active T&P benefits, he is awarded Inactive A benefits if his application is received within 15 years of his last credited season, or Inactive B benefits if his application is received thereafter. *Id.* §§ 3.4(c)-(d).

The Plan's "Special Rules" govern the award of Active Football benefits based on psychological or psychiatric impairments: a player can only be awarded Active Football benefits based on such impairments if his impairment: (1) is caused by or related to a head injury arising out of League football activities; (2) is caused by or related to the use of a substance prescribed for an injury arising out of League football activities; or (3) is caused by an injury that qualified the player for Active Football benefits. *Id.* § 3.5(b).

***Claims Process***

Players may apply for benefits online or by mail and are directed to include information about any and all impairments they believe support their application. Ex. I, Oct. 2022 SPD, at CS-802. When a player submits an application, the NFLPBO assigns one or more Neutral Physicians to examine the player, and the Neutral Physicians send PRFs back to the NFLPBO after completing their examinations. DPD § 3.3(a); Vincent Decl. ¶¶ 19-20. A Committee of three members—one appointed by the Players Association, one appointed by the Management Council, and the Medical Director, DPD § 9.4(a)—makes the initial determination, based on the PRFs and the information

6

the player submits. *Id.* §§ 3.1(e), 9.4-9.6.  If the Committee finds the player eligible, benefits are

awarded. *See id.* § 13.14(a).  If the Committee finds the player ineligible, the Committee advises

the player of the "specific reason(s)," the relevant Plan provisions, that he is entitled to free copies

of all "relevant" records, and that he may appeal to the Board.  *Id.* § 13.14(a); *see* 29 C.F.R.

§ 2560.503-1(g)(1).

If a player appeals, the NFLPBO assigns one or more new Neutral Physicians to examine

the player, and the player may submit additional information.  *Id.* §§ 3.1(e), 13.14(a).  The Board

has "full and absolute discretion" to "[d]ecide claims for benefits," and "to determine the relative

weight to give" supplemental information.  *Id.* §§ 9.2, 9.9.  The Board reviews the Committee's

determination but decides *de novo* whether a player is entitled to benefits.  *Id.* §§ 3.1(e), 13.14(a).

Board members have access to all information in the record through an online portal.

Vincent Decl. ¶ 32; Decl. of R. Smith in Support of Defs.' Joint MSJ of Pl. C. Sims's Claims

("Smith Decl.") ¶ 9.  The Management Council and the Players Association separately employ

advisors ("Party Advisors") to assist with review of appeals.  Smith Decl. ¶ 6.  The Board members

from the Management Council and Players Association each separately convene before the full

Board meeting to review appeal presentations from their respective Party Advisors.  Decl. of P.

Reynolds in Support of Defs.' Joint MSJs ("Reynolds Decl.") ¶ 11; Decl. of A. Williams in

Support of Defs.' Joint MSJs ("Williams Decl.") ¶ 10.

The full Board then convenes for the joint formal Board meeting, where Board members

vote on each case and memorialize their decisions.  Smith Decl. ¶ 15.  If the Board finds a player

eligible, benefits are awarded.  DPD § 3.1(e).  If the Board denies the claim, it provides a written

explanation of the denial, citing the specific Plan provisions that are the basis for the denial,

informing the player of his right to sue under the Plan and ERISA.  *Id.* § 13.14(a); *see also* 29

C.F.R. § 2560.503-1(o).

If three or more Board members conclude a "medical issue" must be resolved to determine whether benefits should be approved or denied, the Board may submit that specific issue—such as a disagreement between two Neutral Physicians about a discrete medical question—for a final, binding decision by a MAP, typically a senior Neutral Physician entrusted with resolving medical questions. DPD § 9.3(a) (the "MAP Rule"). MAPs have "full and absolute discretion, authority, and power to decide" these specific medical issues, and are to "review all material submitted to the Plan." *Id.* §§ 9.3(a), 12.2(b). MAPs may arrange for any additional consultation, referral, or physical examination as the MAP deems necessary. *Id.* § 12.2(b). Like Neutral Physicians, MAPs are jointly designated by the Players Association and Management Counsel, must certify that their opinions are provided without bias for or against any player, and are paid a flat fee regardless of outcome. *Id.* § 12.2(a).

### *Mr. Sims's Application for T&P Benefits*

Mr. Sims's T&P application, which included 104 pages of supporting records, was received on May 5, 2020. AR CS-457, 529-632; AC ¶ 191.[5] The Committee directed the NFLPBO to refer him for evaluations by four Neutral Physicians, and the NFLPBO selected: Dr. Hussein Elkousy, an orthopedist; Dr. Eric Brahin, a neurologist; Dr. Douglas Cooper, a neuropsychologist; and Dr. John Rabun, a psychiatrist. AR CD-699.

Each Neutral Physician was appointed to the panel pursuant to the NFLPBO's standard procedures. Vincent Decl. ¶¶ 19-23; DPD §§ 3.3(a), 12.3(a). Each was paid a flat fee, and each was assigned to examine Mr. Sims based on the NFLPBO's previously described Neutral Physician

---

[5] Mr. Sims applied for LOD and neurocognitive benefits at the same time. *See* AR CS-464, 699. He did not appeal the Committee's denial of those applications, *see* AR CS-728-43, and does not mention them in the Complaint, AC ¶¶ 190-93.

selection procedures.  Vincent Decl. ¶ 24; DPD § 12.3.  Each personally examined Mr. Sims for a disability within the physician's specialty.  AR CS-636-37 (Elkousy PRF), 650-51 (Rabun PRF), 670-71 (Brahin PRF), 687-88 (Cooper PRF) ; *cf.* AC ¶ 191.  Each of their reports states that the physician reviewed all of Mr. Sims's medical records; that the report accurately documents the physician's findings, which reflect the physician's best professional judgment; and that the physician is not biased for or against Mr. Sims.  AR CS-637, 651, 671, 688.  Mr. Sims does not criticize any of these Neutral Physicians or their reports.  AC ¶¶ 190-93.  Dr. Elkousy, Dr. Brahin, and Dr. Cooper did not find Mr. Sims T&P disabled with respect to alleged conditions or impairments falling within their areas of specialty.  AR CS-636-37, 670-71, 687-88.  Mr. Sims did not appeal those determinations.

Dr. Rabun found that Mr. Sims's claimed psychiatric impairments—panic attacks, agoraphobia, depression, and irritability—are T&P disabling.  AR CS-650-51, 668-69.  Crediting the self-reports of Mr. Sims and his wife, Dr. Rabun opined that "Mr. Sims' panic attacks and resulting Agoraphobia presently interfere substantially with his capacity to interact in public settings" and that "Mr. Sims' depression also impairs his capacity to be employed."  AR CS-668.  Mr. Sims reported to Dr. Rabun that he "started experiencing panic attacks" in 2016 because of the stress attributable to "[t]he everyday life of a player" and that "his panic attacks have led to depression," but that no professional had ever recommended inpatient psychiatric treatment.  AR CS-666.  Dr. Rabun did not identify any injury that had caused or was associated with Mr. Sims's psychiatric conditions.  Mr. Sims reported "he did not suffer any documented concussions in the NFL," but claimed without supporting documentation that he suffered "undocumented concussions" in "every game" due to head collisions.  AR CS-665.

The Committee determined that Mr. Sims met the requirements for T&P benefits based on

his psychiatric impairment. AR CS-699-700. The Committee disagreed, however, on the level of T&P benefits that should be awarded. AR CS-700  One Committee member voted to award Active Football benefits, while another member voted to award Inactive A benefits. *Id.*; AC ¶ 191. The latter Committee member found that Mr. Sims did not meet any of the Plan requirements in the Special Rules for Active Football benefits based on claimed psychiatric impairments because the member found no evidence that Mr. Sims suffered from a disabling psychiatric condition that arose during his NFL career, thus precluding an award of Active Football as well as Active Nonfootball benefits. AR CS-700; DPD §§ 3.4(a)-b, 3.5(b). Because the Committee members agreed that Mr. Sims was entitled to T&P benefits at the Inactive A level, but only one member of the Committee believed he was entitled to Active Football benefits, the Committee awarded him the highest level of benefits to which the Committee members agreed, Inactive A benefits, and made the award retroactive to March 1, 2020. AR CS-700; Vincent Decl. ¶ 40; DPD §§ 3.4(a)-(d), 3.10, 9.6.

Mr. Sims timely appealed to the Board. AR CS-728; AC ¶ 192. The Plan provides that, whenever the Board reviews an appeal, it may at its option submit a particular medical issue to a MAP for a final and binding determination, DPD § 9.3(a). Because he had already been found by the Committee to be T&P disabled, the Board did not require Mr. Sims to undergo an additional Neutral Physician examination, but rather unanimously referred Mr. Sims to a MAP psychiatrist to review his records and render a final and binding determination on the specific question whether Mr. Sims qualified for Active T&P benefits—i.e., whether his psychiatric impairment(s) arose while he was an Active Player. AR CS-744. The Board referred Mr. Sims to Dr. Christine Chang to "determine whether [Mr. Sims's] psychiatric impairments arose while he was an Active Player." AR CS-749, 760; *cf.* AC ¶ 193.[6]

---

[6] Mr. Sims incorrectly alleges that the MAP who conducted this review was "Dr. Riggio." AC ¶ 193.

Dr. Chang was appointed to the panel and assigned to evaluate Mr. Sims pursuant to the Plan's standard procedures, Vincent Decl. ¶ 23, and was paid a flat fee, *id.*; DPD § 12.2(a). Dr. Chang's report states that she reviewed all of Mr. Sims's medical records, including all of the Physician Report Forms; that her report accurately documents her findings, which reflect her best professional judgment; and that she is not biased for or against Mr. Sims.  AR CS-751 (Chang PRF).

Dr. Chang's report states that after conducting a complete review of Mr. Sims's records, including the Committee-level Neutral Physician psychiatrist's report, she found a "paucity" of records of psychiatric symptoms "significantly impacting [Mr. Sims's] daily life or work ability," as the Plan's definition of T&P disability requires.  AR CS-755.  Dr. Chang noted that while Mr. Sims received diagnoses of "psychological/anxiety reaction" in 2015 and 2016, which was during Mr. Sims's NFL career, she found no record of "disability or sustained impairment due to these disorders" arising during his career, as "psychiatric diagnosis itself does not equate [to] disability or impairment."  *Id*.  Dr. Chang recounted Mr. Sims's medical records; self-reports to other physicians; the declaration that he submitted with his T&P application, which describes his symptoms; and his appeal reclassification letter and other correspondence.  AR CS-753-55.  She noted that Mr. Sims reported in 2017 that he "is doing extremely well with all activity," and "[h]e stated everything felt great."  AR CS-755.  Dr. Chang concluded that Mr. Sims's anxiety during his NFL career was related to "performance pressure," and was managed effectively with medication.  *Id.*  Moreover, while Mr. Sims cited depression as his "main psychiatric impairment" in his disability application, Dr. Chang found no record of depression as a diagnosis while he was an Active Player.  *Id.*  Dr. Chang concluded that "it does not appear from his records that Mr. Sims' had significant psychiatric impairments or any psychiatric cause for disability that arose while an

Active Player."  AR CS-756.

The NFLPBO sent Mr. Sims and his attorney, Sam Katz, a copy of Dr. Chang's report and advised him of his right to respond before the Board issued a final decision.  AR CS-757-58.  Mr. Sims did not respond.  AR CS-761.

Based on Dr. Chang's final and binding conclusion and the reasoning in her report, DPD § 9.3(a), the Board unanimously determined that Mr. Sims is not eligible for Active T&P benefits, AR CS-760-61; AC ¶ 193.  Because the Board does not terminate or reduce benefits on appeal that were awarded by the Committee, the Board determined that although Dr. Chang found that Mr. Sims did not have "any psychiatric cause for disability that arose while an Active Player," AR CS-756, he was nonetheless eligible to continue receiving Inactive A benefits, AR CS-761; DPD CS-87.  The Board's letter stated the reasons for the denial of his claim, cited the relevant Plan provisions, and informed him of his right to challenge the decision in court.  AR CS-760-65.

This lawsuit followed on February 9, 2023.  ECF No. 1.

## LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court construes "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party."  *United States v. 8.929 Acres of Land in Arlington Cnty., Va.*, 36 F.4th 240, 252 (4th Cir. 2022) (quotation omitted).  However, it is not Defendants' burden to disprove Plaintiffs' allegations.  Rather, Mr. Sims "bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'"  *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## ARGUMENT

### I.    THE BOARD DID NOT ABUSE ITS DISCRETION IN DETERMINING THAT MR. SIMS IS NOT ENTITLED TO ACTIVE T&P BENEFITS UNDER THE PLAN'S TERMS

In Count I, Mr. Sims asserts that his claim for a higher level of Plan benefits was wrongly denied under ERISA § 502(a)(1)(B).  AC ¶¶ 280-89.  Because the Plan gives the Board full and absolute discretion in "construing its terms and determining eligibility for benefits," the Court reviews the Board's denial of benefits for abuse of discretion.  *See Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 851 (4th Cir. 2023) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).  Under that standard, a court "will not disturb a plan administrator's decision if the decision is reasonable, even if [it] would have come to a contrary conclusion independently." *Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 37 (4th Cir. 2023) (quoting *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010)).  Applying this standard, courts have regularly granted summary judgment to the Plan in cases in which the Board exercised its discretion in applying Plan terms.  *See, e.g.*, *Boyd v. Bell*, 796 F. Supp. 2d 682, 692 (D. Md. 2011) (granting summary judgment for the Board and finding no abuse of discretion); *Youboty v. NFL Player Disability*, 856 F. App'x 497, 500-01 (5th Cir. 2021) (affirming district court's use of abuse-of-discretion standard and grant of summary judgment for the Board); *Smith v. NFL Player Disability & Neurocognitive Benefit Plan*, 2024 WL 722594, at *6 (W.D. Tex. Jan. 9, 2024) (granting summary judgment for the Plan), *R&R adopted*, 2024 WL 1123588 (W.D. Tex. Mar. 13, 2024).

The Fourth Circuit applies an eight-factor test when reviewing the reasonableness of a denial of a benefit claim by an ERISA-governed plan's administrator.  *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000).  The factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other

provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives     and     any     conflict     of     interest     it     may     have.

*Id.* at 342-43; *see Vaughan v. Celanese Ams. Corp.*, 339 F. App'x 320, 329-30 (4th Cir. 2009) (affirming grant of summary judgment for administrator under *Booth* factors); *Geiger*, 72 F.4th at 40 (affirming grant of judgment on the record for administrator under *Booth* factors).

The Court must consider the *Booth* factors "in the context of a 'highly deferential' standard of review." *Geiger*, 72 F.4th at 38 (citing *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 168 (4th Cir. 2013)). The Court should not evaluate whether it would have reached the same conclusion about plan benefits, but rather whether the Board's decision was a part of a "deliberate, principled reasoning process," and "supported by substantial evidence." *See id.* (citation omitted).[7] "Substantial evidence" is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Id.* (citation omitted). It "does not mean a large or considerable amount of evidence," *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 715 (D. Md. 2012) (alteration omitted)—rather, substantial evidence is even "less than a preponderance," *Schkloven v. Hartford Life & Accident Ins. Co.*, 2022 WL 2869266, at *23 (D. Md. July 21, 2022).

As discussed below, each of the *Booth* factors weighs in favor of a determination that the Board's decision was reasonable and that it did not abuse its discretion in denying Mr. Sims's appeal for a higher level of benefits. The Neutral Physician and MAP reports provided substantial evidence supporting the Board's decision, and the denial of his claim was the product of reasoned

---

[7] This highly deferential standard of review recognizes that in deciding benefit claims, plan fiduciaries must strike "a balance between the obligation to guard the assets of the trust from improper claims" and "the obligation to pay legitimate claims." *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 20-21 (4th Cir. 2014) (citation omitted). This balance "ensure[s] that individual claimants get the benefits to which they are entitled" while "protect[ing] employees … from a contraction in the total pool of benefits available." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 326 (4th Cir. 2008).

decision-making in accordance with the Plan's procedures. Accordingly, Defendants are entitled

to summary judgment in their favor as to Mr. Sims's denial of benefits claim because there is no

triable issue of fact regarding the reasonableness of the Board's decision.

### A. The Board's Decision Was Consistent with the Plan's Terms, Which Are Plain and Unambiguous.

The first *Booth* factor weighs in favor of finding that the Board did not abuse its discretion

because its determination was consistent with the plain "language of the [P]lan." *Booth*, 210 F.3d

at 342. ERISA's central tenet is that plan participants may only recover benefits owed to them

"under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see US Airways, Inc. v. McCutchen*, 569

U.S. 88, 102 (2013). Indeed, ERISA's entire "statutory scheme … is built around reliance on …

written plan documents." *McCutchen*, 569 U.S. at 100-01 (citation omitted). In deciding an

ERISA claim, a court's "principal function" is thus to "protect contractually defined benefits"

according to the "terms of the plan." *Id.* at 100; *see Firestone*, 489 U.S. at 115 (ERISA analysis

"turn[s] on the interpretation of the terms in the plan").

ERISA requires the Court to enforce the plain language of the Plan. *See Stolt-Nielsen S.A.

v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("[A]s with any other contract, the parties'

intentions control."); *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005),

*aff'd*, 547 U.S. 356 (2006). The Board, as administrator, must also enforce the Plan terms as

written. *See Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005),

*abrogated on other grounds by Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th

Cir. 2008). Although the Board has absolute discretion to interpret the Plan, DPD § 9.2, "the

administrator is not free to alter the terms of the [P]lan or to construe unambiguous terms other

than as written." *Colucci*, 341 F.3d at 176; *see also Giles*, 925 F. Supp. 2d at 716. Disregarding

or altering the Plan's terms "constitutes an abuse of discretion." *Giles*, 925 F. Supp. at 716

(quoting *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007)).

Here, Mr. Sims concedes that under the Plan's terms, he cannot qualify for Active T&P benefits unless his disability arose while he was an Active Player, AC ¶¶ 64, 191; DPD §§ 3.4(a)-(b), and that MAP decisions are final and binding on the Board, AC ¶ 58; DPD § 9.3(a).  It is undisputed that the MAP who evaluated Mr. Sims did not find that he had any T&P disabling psychiatric conditions that first arose while he was an Active Player.  AC ¶ 193.  Because Mr. Sims does not dispute that the MAP's final, binding decision was that he had no "psychiatric cause for disability that arose while an Active Player," AR CS-756; AC ¶ 193, it is undisputed that he did not qualify for Active T&P benefits under the Plan terms, DPD §§ 3.4(a)-(b); AR CS-760-61.

Proper application of the Plan terms thus not only permitted denial of Mr. Sims's claim, it required it.  *See Youboty*, 856 F. App'x at 499 (affirming summary judgment for Plan defendants where player did not qualify for benefits under Plan terms); *see also Smith*, 2024 WL 722594, at *6 (concluding that there "no question that the Disability Board's denial of [the player's] appeal based on his failure to meet the Neutral Rule is consistent with the terms of the Disability Plan").

Although the Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan," DPD § 9.2, it has no discretion to deviate from the collectively bargained Plan terms.  *See Colucci*, 431 F.3d at 176; *Smith*, 2024 WL 722594, at *6; DPD § 9.2 (the Board is responsible for "implementing and administering the Plan, *subject to the terms of the Plan*" (emphasis added)).  This same principle prohibited the Board from terminating Mr. Sims's Inactive A benefits that the Committee awarded even after the MAP concluded Mr. Sims was not T&P disabled.  DPD CS-87.  Awarding Mr. Sims Active T&P benefits after the MAP determined that no psychiatric impairment arose while Mr. Sims was an active player would have constituted a breach of the Board's discretion, regardless of Mr. Sims's arguments that the

Plan should operate differently.  *See Kress v. Food Emps. Lab. Rels. Ass'n*, 391 F.3d 563, 569 (4th Cir. 2004); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 362 (4th Cir. 2015); *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that § 502(a)(1)(B) does not allow a court to change or alter the terms of a plan).

### B.    The Board's Decision Was Consistent with the Plan's Purposes and Goals.

The second *Booth* factor weighs in favor of finding that the Board did not abuse its discretion because its decision to apply the MAP Rule to deny Mr. Sims's claim is consistent with the goal the Players Association and Management Council sought to achieve when they collectively bargained to add the MAP Rule to the Plan.  *See Booth*, 201 F.3d at 343 ("Plan does not authorize its administrators to make determinations … that frustrate the purposes and goals of the Plan").  The MAP Rule balances "the need to ensure that individual claimants get the benefits to which they are entitled with the need to protect employees and their beneficiaries as a group from a contraction in the total pool of benefits available."  *See Evans*, 514 F.3d at 326.  Here, the MAP determined that Mr. Sims does not have "any psychiatric cause for disability that arose while an Active Player."  AR CS-756; *supra* at 11-12.  Applying the MAP Rule to deny Mr. Sims Active benefits, but allowing him to continue receiving Inactive A benefits, is consistent with the Plan's goal to ensure its limited benefit resources are preserved for participants who are entitled to them, while also not disincentivizing players from appealing the Committee's determinations.  *Cf. Friz v. J&H Marsh & McLennan, Inc.*, 2 F. App'x 277, 281 (4th Cir. 2001) (paying only those benefits that are authorized by plan terms is consistent with the purposes and goals of the plan).

### C.    The Materials the Board Considered Were Adequate to Support Its Decision.

The third *Booth* factor weighs in favor of finding the Board did not abuse its discretion

because the materials it considered were adequate to supported its decision.[8]  *Booth*, 201 F.3d at

342 (factor 3).  The Board's decision was supported by substantial evidence, including the Neutral

Physician reports, information Mr. Sims submitted, and the MAP's expert analysis and clinical

assessments of those records.  AR CS-760-62.  Cumulatively, these materials provide more than

adequate support for the Board's denial of Mr. Sims's appeal.  *See Booth*, 201 F.3d at 342;

*Schkloven*, 2022 WL 2869266, at *25-26 (granting summary judgment for administrator where

administrator relied on the opinions of physicians retained to review the plaintiff's medical

records).  And the Board lacked authority to award Active T&P benefits—notwithstanding Mr.

Sims's points of disagreement—because the MAP's determination that Mr. Sims did not suffer

from disabling psychological impairments that arose when he was an active player was final and

binding on the Board under the express terms of the Plan.  DPD § 9.3(a).

Mr. Sims does not allege that any of the Neutral Physicians were biased or take issue with

any of their reports; he alleges only that the MAP's determination was "flawed" in finding that his

history of claimed psychiatric impairments during his NFL career was "primarily via self-report"

and "lack[ed] objective data to sustain [his benefits] claim," and therefore that his impairments did

not arise during his NFL career.  AC ¶ 193; *see* AR CS-756.[9]  Mr. Sims's allegation does not create

a genuine dispute of material fact about the adequacy of the materials the Board considered.  *See*

*Booth*, 201 F.3d at 342; *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 238 (4th Cir. 2022); *see*

*also Kane v. UPS Pension Plan Bd. of Trustees*, 2013 WL 6502874, at *10 (D. Md. Dec. 11, 2013)

---

[8] The Plan permits the Board to review materials in part through appointed advisors.  *See, e.g.*, DPD §§ 9.2(f), 9.9.
[9] Mr. Sims contends that "the physician who deemed him T&P disabled reported that his conditions had started while he was an Active Player," AC ¶ 192, but Dr. Rabun's report did not find that Mr. Sims's claimed psychiatric impairments arose from any of the criteria listed in the Special Rules necessary for Mr. Sims to qualify for Active T&P benefits, *see* CS-650-69.  Moreover, as discussed *infra* Section II, the MAP's determination that Mr. Sims did not suffer from disabling psychological impairments that arose when he was an active player was final and binding on the Board, AC ¶ 58; DPD § 9.3(a), meaning that the Board could not reconsider the issue, and the Special Rules were not relevant, *see* DPD §§ 3.5(b), 9.3(a).

(explaining in considering the third *Booth* factor, "the Board needed only 'the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion'" (quoting *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 295 (4th Cir. 2006)), *aff'd*, 584 F. App'x 109 (4th Cir. 2014). The MAP certified that she reviewed all the records that Mr. Sims submitted—self-reported and objective—and listed and summarized each of those records in her report, including Mr. Sims's self-reports to other physicians, the declaration that he submitted with his T&P application describing his symptoms, and his appeal reclassification letter and other correspondence. AR CS-751-55. Based on that review, she concluded that "[i]n comparison to the extensive orthopedic records in Mr. Sims's file, there is a paucity of medical records documenting psychiatric symptoms significantly impacting his daily life or work ability." AR CS-755. The MAP specifically addressed the few documented records of psychiatric impairment during Mr. Sims's time as an active player—she noted, for example, that in "office visits on 11/8/16 and 11/15/16," before Mr. Sims retired in 2018,[10] the physician diagnosed Mr. Sims with severe panic disorder and generalized anxiety disorder, but that there was "no record of grave impairment or disability" arising from those diagnoses, and that "Xanax appeared to be effectively providing Mr. Sims 'peace of mind' enough to continue playing." AR CS-755. The MAP explained that "psychiatric diagnosis itself does not equate [to] disability or impairment." *Id*. Indeed, the MAP observed that physicians' notes from 2017, again while Mr. Sims was still playing, indicated that he was "doing extremely well with all activity," and he "stated everything felt great." *Id*.

Neither the Board, nor Dr. Chang as its advisor, was required to credit Mr. Sims's subjective reports that his psychiatric impairments arose during his career. *See Balkin v. Unum*

---

[10] *See* AR CS-699 (listing Mr. Sims's last credited season as 2018).

*Life Ins. Co.*, 2024 WL 1346789, at *22 (D. Md. Mar. 29, 2024). "[I]f objective medical evidence was not required, reviewing the validity of [] disability claims would be meaningless because plan administrators would be forced to accept as adequate all subjective claims of participants." *Id.* (quoting *Pettaway v. Tchrs. Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 202 (D.D.C. 2010), *aff'd*, 644 F.3d 427 (D.C. Cir. 2011)). The materials the Board relied on therefore were not "flawed," AC ¶ 193, but rather provided more than adequate support for the Board's denial of Mr. Sims's application for Active T&P benefits. *See, e.g., Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999) ("it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented").

### D.    The Remaining *Booth* Factors All Support Finding that the Board's Decision Was Reasonable.

*Factor 4.*   The Board's decision not to award Mr. Sims Active Football benefits due to the MAP's finding was consistent with other provisions and earlier interpretations of the Plan. *See Booth*, 201 F.3d at 342. The decision was based on the MAP Rule, which binds the Board on any medical issue the Board refers to a MAP, DPD §§ 9.3(a), 12.2, and has remained materially unchanged since the Management Council and Players Association collectively bargained for it in 1993.[11]   Vincent Decl. ¶ 16; *compare* Ex. J, Sept. 30, 1993 Retirement Plan Doc., § 8.3(a), *with* 2017 DPD § 9.3(a), *and* 2021 DPD § 9.3(a).[12]

---

[11] In 1993, the Management Council and Players Association merged the Bert Bell Plan NFL Player Retirement Plan—established to provide retirement, disability, and related benefits—with the Pete Rozelle NFL Player Retirement Plan—established to provide benefit accruals and ancillary benefits—to form the Retirement Plan. *See* Retirement Plan Doc. CS-866. In 2011, the Management Council and Players Association decided that all T&P benefits relating to claims filed on or after January 1, 2015 would be paid out of the Disability Plan, while claims filed before that date would be paid out of the Retirement Plan. 2017 DPD CS-113.

[12] The specific decision challenged by Mr. Sims's appeal, which was the Committee's decision not to award him the Active Football level of T&P benefits, was resolved based on the MAP Rule. At the Committee level, the Neutral Rule was satisfied for purpose of awarding T&P benefits to Mr. Sims by the Neutral Physician opinion of Dr. Rabun, and the Committee-level award was protected on appeal by the Plan's rule prohibiting lowering or taking away a player's benefits based on an appeal.

***Factor 5.*** The Board's decision-making process was also "reasoned and principled." *Booth*, 201 F.3d at 342. The Board "followed Plan procedures and policies throughout" its review of Mr. Sims's application, *see Wilson*, 27 F.4th at 238-39 (affirming claim denial), including evaluation by four different Neutral Physicians and a MAP who were experts in the fields of Mr. Sims's claimed impairments. The Board provided a reasoned explanation for its denial of Mr. Sims's claim that was grounded in application of the MAP Rule; gave Mr. Sims the opportunity to respond to the Board's tentative decision, which he did not do; and following the unanimous denial considered and unanimously approved the decision letter to Mr. Sims that accurately identified the basis for denial of the claim. AR CS-744, 757-58, 760-62. No more was required. *See Mullins v. AT&T Corp.*, 424 F. App'x 217, 224 (4th Cir. 2011) (administrator's review was reasoned and principled because it substantially complied with plan's procedures); *Vaughan*, 339 F. App'x at 327 (same; administrator acknowledged receipt, allowed submission of additional information, stated why it denied the claims, quoted the plan, and attached a plan summary).

Mr. Sims alleges that the Board's consideration of analyses or summaries created by the Party Advisors or Plan counsel as part of its review is somehow improper. *See generally* AC ¶¶ 41, 284, 286, 302. This is incorrect. The Plan expressly permits the Board to rely on consultants, professional plan administrators, counsel, and physicians when satisfying its duty to "consider all information in the Player's administrative record" when deciding claims, DPD §§ 9.2(f), 9.9, and ERISA also permits such reliance. *See Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 773 (4th Cir. 2019) (seeking expert advice can show prudence); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) (same); *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003) ("A fiduciary's effort to obtain an independent assessment serves as evidence that the fiduciary undertook a thorough

investigation."); *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006) (administrator may delegate discretionary authority to non-fiduciaries without compromising fiduciary duties); *Hilton v. Unum Life Ins. Co. of Am.*, 967 F. Supp. 2d 1114, 1116-17, 1124-25 (E.D. Va. 2013) (administrator's benefits decision was not unreasonable where it assigned an "[a]ppeals [s]pecialist" to review the contents of the plaintiff's appeal and consulted two physicians); *cf. Garner v. Cent. States, Se. & Sw. Areas Health & Welfare Fund Active* Plan, 31 F.4th 854, 858 (4th Cir. 2022) ("encourag[ing]" plan trustees to "rely on the independence and expertise of unaffiliated doctors in making benefits determinations").  Because Mr. Sims's records were fully reviewed by the Board's advisors, the Neutral Physicians, and the MAP, Reynolds Decl. ¶ 7; Williams Decl. ¶ 6; AR CS-635, 651, 671, 688, 751, the Plan is entitled to summary judgment without being required to show that each individual Board member personally reviewed each page of voluminous materials.  *See, e.g.*, *Waldoch v. Medtronic*, 757 F.3d 822, 832 (8th Cir. 2014) (permitting fiduciary to "delegate claims processing functions to [a non-fiduciary third party] and rely on [the third party's] reasoning without compromising its obligation to provide a 'full and fair review'"); AC ¶ 41.

**Factor 6.**  The Board complied with ERISA's procedural and substantive requirements because its processes and decision were "consistent with the language of the Plan," and Mr. Sims "was fully aware of his rights and obligations under the Plan."  *See Friz*, 2 F. App'x at 282; *Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2012 WL 2374661, at *14 n.35 (D. Md. June 19, 2012) (same).  Mr. Sims does not dispute that the Board "complied with ERISA's time frames for making each step of the determination," *see id.*, or that he "was timely notified of [the Board's] findings and next-step rights to appeal the decision," *see Wilson*, 27 F.4th at 239.

*Factor 7.*  There is no external standard relevant to the Board's decisions.  *See Booth*, 201 F.3d at 342-43.  The only external standard mentioned in the Complaint is the NFL Concussion Settlement, *see* AC ¶ 288, but Mr. Sims does not allege that he received a qualifying diagnosis under the NFL Concussion Settlement, *id.* ¶¶ 190-93.  And legal standards for other types of benefits outside the Plan are not relevant.  *See, e.g.*, *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 420 (4th Cir. 2004).

*Factor 8.*  Finally, the Board has no conflict of interest.  *See Booth*, 201 F.3d at 343.  Structural conflicts of interest occur where the same entity that administers the ERISA plan determines eligibility and pays benefits out of its own pocket.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 108, 108 (2008); *Fortier v. Principal Life Ins. Co.*, 666 F.3d 231, 236 n.1 (4th Cir. 2012) (affirming grant of summary judgment to administrator despite conflict of interest under *Glenn*); *Vaughan*, 339 F. App'x at 328 (same).  That is not how this Plan is structured.  The Board is composed equally of Management Council and Players Association Trustees.  DPD § 9.1; *supra* at 3.  The Plan is funded by a revenue-sharing agreement between the NFL (including the Management Council) and the Players Association.  Smith Decl. ¶ 3.  No funds left over after benefits are paid or denied go to the Board, the Management Council, or the Players Association. *Id.* For these reasons, courts hearing challenges to the Plan's benefits denials have consistently found that it does not operate under a conflict of interest.  *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020) ("[T]he Plan does not have a structural conflict that needed to be mitigated as the Board consists equally of player representatives and NFL representatives."), *aff'd and remanded on other grounds*, 855 F. App'x 332 (9th Cir. 2021); *Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*, 2020 WL 5628020, at *6 (S.D. Tex. Aug. 17, 2020) (citing *Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082,

1086 (8th Cir. 2006); *Courson v. Bert Bell NFL Player Ret. Plan*, 75 F. Supp. 2d 424, 431 (W.D. Pa. 1999), *aff'd*, 214 F.3d 136 (3d Cir. 2000); *Morris v. Nat'l Football League Ret. Bd.*, 833 F. Supp. 2d 1374, 1386 (S.D. Fla. 2011), *aff'd*, 482 F. App'x 440 (11th Cir. 2012)), *aff'd*, 856 F. App'x 497 (5th Cir. 2021).  While Plaintiffs allege that some Neutral Physicians are biased against findings of disability based on their income, Mr. Sims pleads no compensation allegations about the physicians who examined him.  AC ¶¶ 190-93 (failing to even identify the Neutral Physicians and not alleging Dr. Chang's compensation influenced her conclusion).  The record thus makes clear there was no relevant conflict of any kind under this *Booth* factor.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE THE DENIAL LETTERS COMPLY WITH ERISA'S CLAIMS PROCEDURES

Mr. Sims alleges that Defendants violated ERISA Section 503(1)'s requirement to "provide adequate notice in writing to any participant … whose claim … has been denied, setting forth the specific reasons for such denial," AC ¶¶ 290-95, by failing to address the cumulative impact of his impairments, *id.* ¶ 191, by falsely representing that the Committee and Board reviewed all of the information presented, and by omitting the Special Rules from the Board's letter, *id.* ¶¶ 193, 293. The letters to Mr. Sims show this claim is meritless.  ERISA does not require that decision letters recite every aspect of an applicant's record.  *See generally* 29 C.F.R. § 2560.503-1(j)(6).  Rather, a letter complies with ERISA's requirements if, read in its entirety, it provides the claimant "with all the information necessary to perfect" the claim.  *Switzer v. Benefits Admin. Comm.*, 2014 WL 4052855, at *12 (D. Md. Aug. 13, 2014) (denial letters were sufficient because they "stated that they were based upon findings that [applicant] was capable of returning to work without restriction and/or was capable of engaging in substantial gainful employment" (citing *Gelumbauskas v. USG Corp. Ret. Plan Pension & Inv. Comm.*, 2010 WL 2025128, at *5 (D. Md. May 17, 2010)); *Brown v. Covestro LLC Welfare Benefits Plan*, 2023 WL 8481914, at *11 (W.D. Pa. Nov. 15, 2023) (denial

letter "substantially complied with the regulations by specifying the medical basis for denying benefits and provided a sufficiently clear understanding of the administrator's position to permit effective review" (quotation omitted)), *R&R adopted*, 2023 WL 8481352 (W.D. Pa. Dec. 7, 2023).

Both the Committee and Board decision letters satisfy this standard. They cite the relevant Plan standards, *see* AR CS-700, 702 (citing DPD §§ 3.4(a)-(b), 3.5(b), 3.10, 13.14), 761 (citing DPD §§ 9.3(a), 13.4(a), 13.14), and explain "the specific reasons" for the decisions, *see* AR CS-699-700, 760-61. The Committee letter explains its decision: Dr. Rabun found Mr. Sims T&P disabled, and the highest level of T&P benefits the Committee agreed on was Inactive A. AR CS-699-700. The Board's letter explains its decision: the MAP's final and binding conclusion that Mr. Sims did not suffer from disabling psychiatric impairments that arose while he was an Active Player. AR CS-760-61. As the instant lawsuit demonstrates, that was all of the information necessary to perfect Mr. Sims's claim. Mr. Sims did not respond to the invitation to respond to Dr. Chang's report before the Board issued a final decision. AR CS-761.

Mr. Sims's additional points are frivolous. He does not point to any substantial evidence of a cumulative impairment that was identified in his application or appeal but that the Neutral Physicians, MAP, or Board failed to consider. *Supra* at 8-12; DPD §§ 3.3(d), 12.2(b), 12.3(b); *see also Kress*, 391 F.3d at 569; *CIGNA Corp.*, 563 U.S. at 436. Although Mr. Sims baldly asserts that the Committee failed to note that he applied for T&P benefits based on the combined impact of his impairments, AC ¶ 191, he does not identify what those claimed impairments were. The *impact* of his claimed impairments is also not at issue, as he was already found T&P disabled, and regardless, he has waived any such argument, as his appeal concerned only the *timing* of his claimed psychiatric impairments. AR CS-728-39; DPD § 13.14(a) (waiver provision).

Finally, Mr. Sims's assertion that the Board letter did not cite or reference the Special Rules,

AC ¶¶ 193, 293, is immaterial because the operative Plan provision before the Board was the MAP Rule, DPD § 9.3(a), which was the entire basis of the Board's letter, *see* AR CS-760-62.  The Board tasked the MAP with determining whether Mr. Sims's claimed psychiatric impairments arose when he was an Active Player.  AR CS-749.  The MAP determined Mr. Sims did not have "any psychiatric cause for disability that arose while an Active Player."  AR CS-756.  As Mr. Sims concedes, that determination was final and binding on the Board.  AC ¶ 58; DPD § 9.3(a).  At that point, the Board could not reconsider the issue, and the Special Rules were not relevant because the MAP determined that he did not suffer from qualifying disabilities that arose during his NFL career, and therefore he would not be eligible for Active T&P benefits.  *See* DPD §§ 3.5(b), 9.3(a) ("The [MAP] will have full and absolute discretion, authority, and power to decide such medical issues.  In all other respects, including the interpretation of this Plan and whether the claimant is entitled to benefits, the Disability Board will retain its full and absolute discretion, authority, and power.").  There were no remaining questions of Plan interpretation or entitlement to benefits, and therefore nothing further the Board could have permissibly done under the Plan rules.  *Id.* § 13.14.  Because the Board provided the adequate notice in its claim determinations that ERISA requires, it is entitled to judgment on this claim.

## III.    THE BOARD CONDUCTED A FULL AND FAIR REVIEW OF MR. SIMS'S BENEFITS CLAIM

Count III generally alleges that Defendants did not conduct a "full and fair review" of Mr. Sims's application, failed to produce "requested information," and failed to ensure that Plan provisions are applied consistently, but Mr. Sims makes no allegations specific to Board's treatment of *his* claim, *see* AC ¶¶ 296-304, and there is no record of any information request from Mr. Sims to which Defendants failed to reply.  *See* Vincent Decl. ¶ 41.  The undisputed record further establishes the Plan's thorough process for reviewing benefit applications and appeals, as

well as the thorough review of Mr. Sims's own claim, *see supra* at 4-12, and Mr. Sims does not identify any failure to follow the Plan's prescribed process, much less an omission that could have altered the determination of his claim, *see supra* at 8-12.  Even if Mr. Sims had made allegations about the review of his claim, the Court previously recognized that if he were to prevail on Count III, he "would not be entitled to any additional or different remedy not otherwise available through Count I."  ECF No. 78 at 41; *see Varity Corp. v. Howe*, 516 U.S. 489, 513-15 (1996) (a plaintiff may not simply "repackage" his denial of benefits claim as one for breach of fiduciary duty).  And any claim that Defendants improperly deferred to the initial benefit determination is particularly nonsensical here because the thrust of Mr. Sims's claim is that the Board *should have deferred* to Dr. Rabun's finding that he was T&P disabled.  AC ¶ 192.

Plaintiffs' allegations that Defendants did not review all records in deciding claims, AC ¶ 298 (citing 29 C.F.R. § 2560.503-1(h)(2)(iv)), and failed to ensure the independence and impartiality of decision-makers, *id.* ¶¶ 299-301 (citing 29 C.F.R. § 2560.503-1(b)(7)), misunderstand the law and the Plan.  First, the Board may rely on the Party Advisors, Neutral Physicians, and MAPs to review each player's records.  *See supra* at 3-4, 7, 21-22; Reynolds Decl. ¶ 7; Williams Decl. ¶ 6; *see* AR CS-637, 651, 671, 688, 751.  Second, Defendants safeguard against possible bias by using neutral criteria to assign Neutral Physicians,[13] instructing Neutral Physicians and MAPs to use their best professional judgment, requiring Neutral Physicians and MAPs to certify they are free from bias, and paying them flat fees that do not vary based on outcome.  *See supra* at 4-5; *Walker v. AT&T Benefit Plan No. 3*, 2022 WL 1434668, at *4 (C.D. Cal. Apr. 6, 2022) (no violation of (b)(7) where plan delegated decision-making authority to administrator, which selected the physicians retained), *aff'd*, 2023 WL 3451684 (9th Cir. May 15, 2023).  Third,

---

[13] Defendants play no role in designating Neutral Physicians to serve on the panel from which the NFLPBO makes assignments.  DPD §§ 1.25, 12.3(a); *see supra* at 4-5.

no Committee-level decision-maker is involved in any Board decision, and the Board, its Party Advisors, and Dr. Chang did not play any role in the Committee's decision. *See* Smith Decl. ¶ 8; Reynolds Decl. ¶ 12; Williams Decl. ¶ 11.

ERISA does not require audits of Neutral Physician opinions, *cf.* AC ¶ 300, which would add significant expense to Plan administration. *Cf. Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (in ERISA, Congress sought to create a system that is not so complex that "administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place"). The Court should enter summary judgment for Defendants on Count III as to Mr. Sims.

## IV.    MR. SIMS'S ALLEGATIONS OF BREACH OF FIDUCIARY DUTY FALL FAR SHORT OF CREATING A TRIABLE ISSUE OF FACT

Finally, Mr. Sims claims on behalf of the Plan that the Board Trustees should be removed for alleged breaches of their fiduciary duties of loyalty and care. AC ¶¶ 330-49, 387. The substantive allegations in Count V are derivative of Counts I, II, and III, and entry of judgment for Defendants on those counts is dispositive of Count V as well. Indeed, there is no evidence of the kind of egregious misconduct that could warrant removal, which is an "extraordinary remedy" that should only be employed for "very egregious breaches" involving "repeated and substantial violations of [the trustees'] responsibilities." *Compare Bidwell v. Garvey*, 743 F. Supp. 393, 399 (D. Md. 1990) (refusing to remove trustees despite imprudence finding) (citation omitted), *with Chao v. Malkani*, 452 F.3d 290, 291 (4th Cir. 2006) (affirming removal of fiduciaries after they repeatedly "attempt[ed] to raid the plan's assets"); Restatement (Second) of Trusts § 107 cmt. b (identifying "serious breach of trust" as a basis for removal). The Fourth Circuit has cautioned that "removal can be detrimental for plan participants and employers alike" because "[i]t imposes

significant costs on plans," and can "disrupt plan administration" and "cause delay in participants receiving vital benefits." *Chao*, 452 F.3d at 294.[14]

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment for Defendants on all of Mr. Sims's claims.


Date: November 18, 2024                    Respectfully submitted,

                                           */s/ Gregory F. Jacob*
                                           Gregory F. Jacob (D. Md. Bar No. 06769)
                                           Meredith N. Garagiola (*pro hac vice*)
                                           O'MELVENY & MYERS LLP
                                           1625 Eye Street, N.W., 10th Floor
                                           Washington, DC 20006
                                           Telephone: (202) 383-5300
                                           Facsimile: (202) 383-5414
                                           Email: gjacob@omm.com
                                           Email: mgaragiola@omm.com

                                           Elizabeth L. McKeen (*pro hac vice*)
                                           O'MELVENY & MYERS LLP
                                           610 Newport Center Drive, 17th Floor
                                           Newport Beach, CA 92660
                                           Telephone: (949) 823-6900
                                           Facsimile: (949) 823-6994
                                           Email: emckeen@omm.com

                                           *Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*

---

[14] To the extent this claim is based on allegations that the Board failed to ensure the Neutral Physicians and MAPs were not biased, Mr. Sims lacks standing because he does not allege that the MAP or any of the Neutral Physicians who evaluated his application were biased. *See* AC ¶¶ 190-93. He has no live claim that his benefits application was improperly administered because of bias, and therefore has no alleged injury or available remedy under that theory. *See Thole v. U. S. Bank N.A.*, 590 U.S. 538, 541-44 (2020).

**<u>CERTIFICATE OF SERVICE</u>**

I, Gregory F. Jacob, hereby certify that on November 18, 2024, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*/s/ Gregory F. Jacob*
Gregory F. Jacob
