IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, <br><br> Defendants. | Case No. 1:23-cv-00358-JRR |

**DECLARATION OF ADORA WILLIAMS IN SUPPORT OF
DEFENDANTS' JOINT MOTIONS FOR SUMMARY JUDGMENT**

I, Adora Williams, hereby declare pursuant to 28 U.S.C. § 1746, under the penalty of perjury, that the following is true and correct; that I have personal knowledge of the matters set forth herein, or knowledge based on my review of business records; and that, if called to testify as a witness in this action, I could and would testify competently thereto:

1. I have been employed as Senior Manager in the Benefits Department of the National Football League Players Association ("NFLPA") in Washington, D.C. since 2012. I have been employed in the Benefits department of the NFLPA since 1998. I also previously served as an alternate member of the Disability Initial Claims Committee, where I stepped in and served on the Committee when an active member was unable to do so.

2. The Players Association represents the NFL players in collectively bargaining for the terms of the NFL Player Disability & Survivor Benefit Plan (the "Plan," formerly known as the NFL Player Disability & Neurocognitive Benefit Plan and the NFL Player Disability, Neurocognitive & Death Benefit Plan).

3. The Players Association and Management Council each provide an advisor (commonly referred to as a "Party Advisor") to assist their respective Trustees with the review and determination of disability appeals. This has been the practice of the Board and its Trustees for more than two decades. The Party Advisors have no involvement in any Committee-level decision.

4. I am the current Party Advisor for the Players Association Trustees. My current counterpart is Patrick Reynolds, who is the Party Advisor for the Management Council.

5. I receive a fixed, annual salary from the Players Association for all of my responsibilities, but none of my compensation is specifically provided for serving as a Party Advisor. My compensation does not depend on whether I recommend players' appeals be denied

or approved. My compensation also does not depend on whether the Board ultimately agrees with my recommendations. I receive no other compensation, incentives, or promotions based on either my recommendations or on the Board's ultimate decisions. My retention as a Party Advisor is not dependent on the nature of my recommendations to the Board or its decisions. The Players Association does not charge the Plan for my Board work.

6. I have access to an online portal called the "Meetings Website" that contains players' applications, medical records the players provide, Neutral Physicians' reports, NFL transaction histories, correspondence with the players, Committee decisions, appeals, and any other documents players submit in connection with their applications and appeals, and a case summary from Plan counsel. Beginning about a month before each quarterly Board meeting and continuing up until the Board meeting itself, I review each individual case file associated with each appeal that will be presented to the Board. I also consult the applicable Plan documents when needed as I perform my review to assess whether a player's application satisfies the Plan criteria for approval. I also regularly check the Meetings Website as additional cases and administrative records are uploaded for me to review and analyze.

7. On average there are approximately 100 cases for me to review in advance of a quarterly Board meeting, though that number can vary depending on the number of applications under consideration. Depending on the complexity of the case and the volume of materials submitted as part of the application, it may take me up to or over an hour to go through an individual application. I review the case summaries provided by Plan counsel, but I do not rely on them for my determinations, which are based on my own review of the full applications in conjunction with the applicable Plan provisions.

8. Based on my review, I prepare recommendations for the Players Association

3

Trustees regarding the appeals they will decide. I also meet and discuss my recommendations with Mr. Reynolds before the quarterly Board meetings in order to identify and attempt to resolve any potential issues or areas of disagreement.

9. Plan counsel and representatives of the NFL Player Benefits Office, who are primarily responsible for disseminating and implementing Board decisions, typically attend some or all of these meetings between Mr. Reynolds and me. Their role is to observe our discussions, learn about potential case outcomes, provide legal advice, and answer any questions Mr. Reynolds or I may have about Plan terms, Plan procedures, or the status of any particular appeal.

10. During what we call a final "pre-meeting" that typically takes place the morning before the formal Board meeting is called to order, I meet separately with the Players Association Trustees to discuss each disability appeal and my recommendations for its disposition. I lead these discussions for the Players Association and answer any questions posed by my Trustees. We typically discuss the relevant Plan provisions, the Neutral Physicians' findings, and any other issues associated with the appeal, including what I understand at the time to be Mr. Reynolds's separate recommendations to the other three Trustees. Some cases are more complex than others.

11. I do not make the ultimate decision on whether an application or appeal is approved or denied. That is the Board's role. The NFLPA Trustees use my work, but they are not afraid to check or challenge my recommendations. It is not uncommon for them to ask questions at the meetings pertaining to aspects of the applications on which they want clarification, including questions about specific documents that they have reviewed.

12. No Board member has ever pressured me to make a recommendation on an application one way or the other.

4

13. I have recommended awarding benefits to hundreds of players whose applications met the applicable requirements of the Plan, and I am not biased for or against any player in carrying out my responsibilities.

Executed this 18th day of November, 2024 at Washington, DC.

Adora Williams