# EXHIBIT J

# BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN

Amended, Restated, and Merged

Adopted as of September 30, 1993

Effective as Provided Within

**CS-00862**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011880

# BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN

## Table of Contents

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARTICLE 1. | DEFINITIONS | 3 |
| ARTICLE 2. | ELIGIBILITY | 11 |
| ARTICLE 3. | CONTRIBUTIONS | 12 |
| Section 3.1 | Contributions | 12 |
| Section 3.2 | Employer Obligations | 12 |
| Section 3.3 | Exclusive Benefit; Mistake of Fact | 13 |
| ARTICLE 4. | RETIREMENT BENEFITS | 14 |
| Section 4.1 | Benefit Credits | 14 |
| Section 4.2 | Monthly Pension | 14 |
| Section 4.3 | Normal, Deferred and Early Retirement | 15 |
| Section 4.4 | Normal and Optional Forms of Payment; Qualified Joint and Survivor Annuity Requirements | 15 |
| Section 4.5 | Early Payment Benefit | 18 |
| Section 4.6 | Cashouts and Repayments | 20 |
| Section 4.7 | Required Distribution | 20 |
| Section 4.8 | Rollovers Out of the Plan | 22 |
| Section 4.9 | Special Rules | 24 |
| ARTICLE 5. | TOTAL AND PERMANENT DISABILITY | 26 |
| Section 5.1 | Total and Permanent Disability Benefits | 26 |
| Section 5.2 | Determination of Disability | 28 |
| Section 5.3 | Re-Evaluation | 29 |
| Section 5.4 | Retirement on Disability | 30 |
| Section 5.5 | Special Rules | 30 |
| ARTICLE 6. | LINE-OF-DUTY DISABILITY | 33 |
| Section 6.1 | Line-of-Duty Benefits | 33 |
| Section 6.2 | Relationship to Other Benefits | 33 |
| Section 6.3 | Procedures | 33 |
| Section 6.4 | Definitions | 34 |
| Section 6.5 | Applicability and Special Rules | 35 |

**CS-00863**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011881

BERT BELL/PETE ROZELLE NFL PLAYER
RETIREMENT PLAN


Table of Contents (Cont'd)

| | | Page |
|---|---|---|
| ARTICLE 7. | DEATH BENEFITS. . . . . . . . . . . . . . . . . | 37 |
| Section 7.1 | After Retirement . . . . . . . . . . | 37 |
| Section 7.2 | Widow's and Surviving Children's Benefit. | 37 |
| Section 7.3 | Spouse's Pre-Retirement Death Benefit. . | 38 |
| Section 7.4 | Elections. . . . . . . . . . . . . . . | 39 |
| ARTICLE 8. | THE RETIREMENT BOARD. . . . . . . . . . . | 40 |
| Section 8.1 | Selection. . . . . . . . . . . . . . . | 40 |
| Section 8.2 | Authority. . . . . . . . . . . . . . . | 41 |
| Section 8.3 | Disputes . . . . . . . . . . . . . . . | 43 |
| Section 8.4 | Meetings . . . . . . . . . . . . . . . | 44 |
| Section 8.5 | Duty of Care . . . . . . . . . . . . . | 44 |
| Section 8.6 | Discretionary Acts . . . . . . . . . . | 45 |
| Section 8.7 | Indemnification. . . . . . . . . . . . | 45 |
| ARTICLE 9. | RECORDS AND REPORTS . . . . . . . . . . . | 47 |
| Section 9.1 | Records. . . . . . . . . . . . . . . . | 47 |
| Section 9.2 | Statement of Benefit Credits . . . . . | 47 |
| ARTICLE 10. | AMENDMENT OR TERMINATION OF THE PLAN. . . . | 48 |
| Section 10.1 | Retirement Board . . . . . . . . . . . | 48 |
| Section 10.2 | Bargaining Parties . . . . . . . . . . | 48 |
| Section 10.3 | General Limitations. . . . . . . . . . | 48 |
| Section 10.4 | Mergers. . . . . . . . . . . . . . . . | 49 |
| ARTICLE 11. | MISCELLANEOUS . . . . . . . . . . . . . . | 50 |
| Section 11.1 | Use of Assets. . . . . . . . . . . . . | 50 |
| Section 11.2 | "Spendthrift" Provision. . . . . . . . | 50 |
| Section 11.3 | Payment in Event of Incapacity . . . . | 50 |
| Section 11.4 | Medical Advisory Physician . . . . . . | 51 |
| Section 11.5 | Maximum Limitation on Benefits . . . . | 52 |
| Section 11.6 | Claims Procedure . . . . . . . . . . . | 53 |
| Section 11.7 | No Employment Contract . . . . . . . . | 54 |
| Section 11.8 | Choice of Law. . . . . . . . . . . . . | 54 |
| Section 11.9 | Severability . . . . . . . . . . . . . | 54 |

- ii -

CS-00864

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

BERT BELL/PETE ROZELLE NFL PLAYER
RETIREMENT PLAN

Table of Contents (Cont'd)

                                                              Page

APPENDIX A . . . . . . . . . . . . . . . . . . . . . .   A-1

APPENDIX B . . . . . . . . . . . . . . . . . . . . . .   A-3

- iii -

**CS-00865**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011883

## INTRODUCTION

Since 1962, the Bert Bell NFL Player Retirement Plan ("Bert Bell Plan") has provided retirement, disability, and related benefits to eligible professional football players. Benefits were continued and increased under collective bargaining agreements entered into in 1970, 1977, and 1982. When the 1982 agreement expired in 1987, the National Football League Players Association ("NFLPA") and the National Football League Management Council ("Management Council") could not reach a comprehensive new agreement. In 1989, a new plan, known as the Pete Rozelle NFL Player Retirement Plan ("Pete Rozelle Plan"), was established to provide benefit accruals and ancillary benefits from that point forward in a manner similar to the Bert Bell Plan.

In 1993, the NFLPA and the Management Council entered into a new collective bargaining agreement ("1993 CBA") that made a number of important changes to the Bert Bell Plan and the Pete Rozelle Plan. It was agreed that, subject to government approval, these two pension plans would be merged to form the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan"). It was also agreed that, subject to government approval, this merged Plan would be expanded to provide certain benefits for certain persons who played professional football in the National Football League prior to 1959.

This merged and restated Plan document is intended only to implement certain provisions of the 1993 CBA and related agreements of the parties, to incorporate relevant changes in the

**CS-00866**

law, and to conform and make more readable certain provisions of the Bert Bell Plan and the Pete Rozelle Plan.

This Plan is adopted as of September 30, 1993, and will take effect upon the latest of:  (a) the date the Pension Benefit Guaranty Corporation determines that the merger complies with section 4231 of the Employee Retirement Income Security Act of 1974, as amended; (b) the date the Internal Revenue Service determines that the Plan is qualified under section 401(a) of the Internal Revenue Code; or (c) the date the Internal Revenue Service determines that the Bert Bell Plan, as amended in accordance with the 1993 CBA, is qualified under section 401(a) of the Internal Revenue Code (the "Effective Date").  The Plan will govern all administrative matters on and after the Effective Date and all benefit payments that become due for periods on and after (but not before) that date.

- 2 -

**CS-00867**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011885

## ARTICLE 1

### DEFINITIONS

The terms below have the following meaning unless the context clearly indicates otherwise.

1.1 "Active Player" means a Player who is obligated to perform football playing services under a contract with an Employer; provided, however, that for purposes of Section 5.1 only, Active Player will also include a Player who is no longer obligated to perform football playing services under a contract with an Employer, but is between the period beginning when his last such contract expired or was terminated for any reason, and ending on the later of (a) the July 15 following the beginning of the period, or (b) the first day of preseason training camp.

1.2 "Actuarial Equivalent" means a benefit of equal value when computed in accordance with the interest rate and mortality assumptions defined in Appendix B. For this purpose, a benefit determinable from the assumptions defined in Appendix B will always be deemed to be of equal value.

1.3 "Administrator" means such person or persons as the Retirement Board may designate to administer the Plan.

1.4 "Affiliate" means, with respect to a particular Employer, (a) any corporation, other than the Employer, which is a member of a controlled group of corporations (within the meaning of Code section 414(b)) of which such Employer is a member, (b) any trade or business, other than the Employer, which together with such Employer are under common control (within the meaning of Code section 414(c)), (c) any employer, other than the

- 3 -

**CS-00868**

NFL_ALFORD-0011886

Employer, which is a member of an affiliated service group (within the meaning of Code section 414(m)) of which such Employer is a member, and (d) any other entity required to be aggregated with the Employer under section 414(o) of the Code.

1.5  "Annuity Starting Date" means the first day of the first period for which an amount is received as an annuity under Article 4, including any amount received under Article 4 by reason of Section 5.4, or any amount received as an early payment benefit under Section 4.5.

1.6  "Benefit Arbitrator" means the arbitrator described in Article LII of the 1993 CBA to resolve certain disputes specifically described therein relating to employee benefits.

1.7  "Benefit Credit" means the credit in Section 4.1 for the corresponding Credited Season.

1.8  "Code" means the Internal Revenue Code of 1986, as amended.

1.9  "Collective Bargaining Agreement" means a negotiated agreement relating to compensation, benefits, and other terms and conditions of employment between the NFLPA and the Management Council, including the 1993 Collective Bargaining Agreement ("1993 CBA") and any such future negotiated agreement.

1.10  "Credited Season" means a Plan Year in which a Player: (a) is an Active Player on the date of three or more Games, not including Game dates when he was on the former Future List; (b) after April 1, 1970, is injured in the course and scope of his employment for an Employer and by reason of such injury receives payment equivalent to his salary for three or more Games or for a number of Games which, when added to the number of Games in such

- 4 -

**CS-00869**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011887

Plan Year for which he otherwise has credit, totals three or more; (c) after reporting to at least one official pre-season training camp or official practice session during such Plan Year, (1) dies, (2) becomes totally and permanently disabled under Section 5.1(a) or Section 5.1(b), or (3) incurs a disability that subsequently qualifies for a benefit under Section 6.1; or (d) is absent from employment by an Employer while serving in the Armed Forces of the United States, provided such Player (1) returns as an Active Player, after first being eligible for discharge from military service, by the later of (i) 90 days or any longer period prescribed by applicable law, or (ii) the opening of the official pre-season training camp, and (2) satisfies all other conditions for mandatory crediting of service prescribed by applicable law. A Player may earn no more than one Credited Season during a Plan Year. A Credited Season is identified by the calendar year in which it begins.

1.11 "Dependent" means a person for whom a personal exemption deduction is allowable under Code section 151, without regard to (a) the income of the Player, (b) whether the personal exemption deduction is allowable to or used by another person, or (c) whether the Player is divorced and/or has entered into a multiple support agreement with respect to such person.

1.12 "Employee" means an individual who (a) is employed by an Employer as an Active Player, or (b) is employed by an Employer or an Affiliate in a capacity other than as an Active Player (provided that such employment immediately precedes or immediately follows, without interruption, employment as an Active Player).

- 5 -

**CS-00870**

1.13 "Employer" means a member club of the League.

1.14 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.15 "Game" means any regular-season League game and any post-season League game except the Pro Bowl.

1.16 "Hour of Service" means:

(a) An hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employer or Affiliate during a Plan Year, with such an Hour of Service being credited for the Plan Year in which the duties were performed;

(b) An hour for which an Employee is paid, or entitled to payment, by an Employer or Affiliate on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, with such an Hour of Service being credited for the Plan Year or, on a ratable basis, for the Plan Years with respect to which the payments are made; provided, however, that (1) no more than 501 Hours of Service will be credited under this paragraph to an Employee on account of any single continuous period during which the Employee performs no services (whether or not such period occurs in a single Plan Year), (2) Hours of Service will not be credited for any payment made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation or disability insurance laws or for any payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee,

- 6 -

**CS-00871**

    NFL_ALFORD-0011889

and (3) a payment will be deemed to be made by or due from an Employer or Affiliate regardless of whether such payment is made by or due from the Employer directly, or indirectly through, among others, a trust fund or insurance company to which the Employer or Affiliate contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurance company or other entity are for the benefit of particular Employees or on behalf of a group of Employees in the aggregate; and

(c)  An hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employer, with such Hours of Service being credited for the Plan Year or Plan Years to which the award or agreement pertains (rather than the Plan Year or Plan Years in which the award, agreement or payment is made).  An Hour of Service credited under parts (a) or (b) above will not also be credited under this part (c).  Crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in part (b) will be subject to the limitations set forth therein.  The determination of Hours of Service for reasons other than the performance of services and the crediting of Hours of Service to the appropriate Plan Year will be made on a basis consistent with 29 C.F.R. § 2530.200b-2(b) and (c), which is incorporated herein by reference.

An Employee's total Hours of Service in a Plan Year are determined as follows, without regard to whether the Employee actually completes more or less than the applicable number of Hours of Service indicated:  (a) from July 1 through the following January 31, the Employee will be credited with 10 Hours

- 7 -

**CS-00872**

of Service for each day on which he completes at least one Hour of Service; and (b) from February 1 through the following June 30, the Employee will be credited with 190 Hours of Service for each calendar month in which he completes at least one Hour of Service.

1.17 "League" means the National Football League and also, prior to February 1, 1970, the American Football League.

1.18 "Management Council" means the National Football League Management Council, which is the collective bargaining representative of the Employers.

1.19 "Medical Advisory Physician" or "MAP" means a board-certified orthopedic physician designated under Section 11.4.

1.20 "NFLPA" means the National Football League Players Association, which is the sole and exclusive bargaining representative of League professional football players.

1.21 "Normal Retirement Date" means the first day of the calendar month coincident with or next following a Player's 55th birthday.

1.22 "Plan" means this Bert Bell/Pete Rozelle NFL Player Retirement Plan.

1.23 "Plan Year" means a 12-month period from April 1 to March 31. A Plan Year is identified by the calendar year in which it begins.

1.24 "Player" means any person who is or was employed under a contract by an Employer to play football in the League and who is or was: (a) on the Active List or the Inactive List (as such lists are or have been defined in the Constitution and By-Laws of the League) of an Employer; (b) on an Employer's roster without

- 8 -

**CS-00873**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011891

being on the Active List by reason of injuries sustained in the Chicago Tribune All-Star Game; (c) injured in the course and scope of his employment for an Employer and by reason of such injury paid under such contract for all or part of the Plan Year in which the injury occurs or occurred; or (d) on the Move List, or, for the purposes of the benefits provided by Articles 5, 6 and 7, on the Future List of an Employer after April 1, 1970 (as such lists have been defined in the Constitution and By-Laws of the League).

1.25  "Retirement Board" means the board described in Article 8 of this Plan.

1.26  "Spouse" means a Player's lawful spouse, as recognized under applicable state law, or a former spouse to the extent provided under a qualified domestic relations order as described in section 414(p) of the Code.

1.27  "Trust" means the Bert Bell NFL Player Retirement Trust, as amended or restated from time to time.

1.28  "Trustee" means the trustee of the Trust and any successor trustee(s) of such Trust.

1.29  "Vested Inactive Player" means a Vested Player who is not an Active Player.

1.30  "Vested Player" means a Player who: (a) earns five Credited Seasons; (b) earns four Credited Seasons, including a Credited Season after the 1973 Plan Year; (c) earns three Credited Seasons, including a Credited Season after the 1992 Plan Year; (d) after the 1975 Plan Year, is an Employee on his Normal Retirement Date; (e) after receiving total and permanent disability benefits under Article 5, is found to no longer

- 9 -

**CS-00874**

NFL_ALFORD-0011892

qualify for total and permanent disability; (f) is an Employee after the 1975 Plan Year and has at least 10 Years of Service (only for the purpose of applying Article 4 or Section 7.3 and not for any other purpose); or (g) is an Employee after the 1988 Plan Year and has at least three Years of Service, at least one of which occurred after the 1988 Plan Year (only for the purpose of applying Article 4 or Section 7.3 and not for any other purpose). The Benefit Credits of a Vested Player are nonforfeitable, and the Benefit Credits of a non-vested Player are forfeitable.

1.31 "Year of Service" means a Plan Year in which an Employee completes at least 1,000 Hours of Service or earns a Credited Season.

- 10 -

**CS-00875**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011893

## ARTICLE 2

## ELIGIBILITY

All Players participate in the Plan.

- 11 -

CS-00876

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011894

## ARTICLE 3

### CONTRIBUTIONS

3.1  <u>Contributions</u>.  A contribution to the Trust as specified in the 1993 CBA will be made by the Employers for each of the seven Plan Years beginning April 1, 1993 and ending March 31, 2000, as actuarially determined to be necessary to fund the benefits provided in this Plan, based on the actuarial assumptions and methods contained in Appendix A.  Contributions, if any, for Plan Years beginning on and after April 1, 2000 will be determined pursuant to future Collective Bargaining Agreements, if any.  Contributions will be used exclusively to provide benefits and to pay expenses.  Contributions for a Plan Year will be made on or before the last day of the Plan Year. Any contribution not received by the Trustee on or before the date it is due will bear interest from the due date to the date of receipt by the Trustee at an annual rate of 6% interest.  It will be the duty of the Retirement Board to pursue all available legal remedies in an effort to ensure payment of all contributions due under any Collective Bargaining Agreement.

3.2  <u>Employer Obligations</u>.  The Employers do not guarantee any benefits under the Plan, except as provided under applicable law.  The Employers will have no obligation to make contributions to the Trust, except as provided under Section 3.1 above, a Collective Bargaining Agreement, or ERISA.  The sources of revenue to be used to satisfy any contribution obligation of the Employers will be exclusively within the control of the Employers.

- 12 -

**CS-00877**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                     NFL_ALFORD-0011895

3.3  **Exclusive Benefit; Mistake of Fact**.  All contributions under this Plan will be held by the Trust for the exclusive benefit of Players and their beneficiaries.  Notwithstanding the above, any contribution made by or on behalf of an Employer to the Plan due to a mistake of fact will be returned to such Employer within six months of the contribution.  The return of contributions will be limited to that portion of the contribution as to which there was a mistake of fact.  A returned contribution will not include the earnings attributable to the contribution, but will be reduced by any losses attributable to the contribution.

**CS-00878**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011896

## ARTICLE 4

## RETIREMENT BENEFITS

4.1  **Benefit Credits.**  A Player will earn a Benefit Credit for each of his Credited Seasons according to the following table:

| Credited Season | Benefit Credit |
|---|---|
| Before 1959 | $ 80 |
| 1959 through 1965 | 84 |
| 1966 and 1967 | 91 |
| 1968 and 1969 | 119 |
| 1970 | 154 |
| 1971 | 161 |
| 1972 through 1976 | 168 |
| 1977 through 1981 | 182 |
| 1982 through 1992 | 210 |
| 1993 and 1994 | 220 |
| 1995 and 1996 | 260 |
| 1997 through 1999 | 300 |

In addition, if a Player has at least one Credited Season within the period 1959 through 1963, but has fewer than five Credited Seasons after 1958, then for each Credited Season prior to 1959 needed to reach five Credited Seasons (when added to the Player's Credited Seasons after 1958), the Player will earn a Benefit Credit of $84 rather than $80.  Benefits credited at $80 will be "$80-Benefit Credits."

4.2  **Monthly Pension.**  A Vested Player's monthly pension at any time is the sum of his Benefit Credits for each of his Credited Seasons.  A Vested Player's monthly pension may be adjusted according to the date he begins to receive benefits (see Section 4.3 below), and the form or manner in which benefits are paid (see Sections 4.4 and 4.5 below).

- 14 -

**CS-00879**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011897

4.3  <u>**Normal, Deferred and Early Retirement**</u>.  A Vested Player may elect to begin to receive benefits as of his Normal Retirement Date or, subject to Section 4.7 below, as of the first day of any month following his Normal Retirement Date.  A Vested Inactive Player with at least one Credited Season prior to the 1993 Plan Year may also elect to begin to receive benefits as of the first day of any month coincident with or next following such Vested Inactive Player's 45th birthday and before his Normal Retirement Date.  All such elections must be filed in writing with the Administrator.  The monthly pension of a Vested Inactive Player who begins to receive benefits after his Normal Retirement Date will be increased so as to be the Actuarial Equivalent of the monthly pension he could have elected to receive at his Normal Retirement Date.  The monthly pension of a Vested Player who begins to receive benefits before his Normal Retirement Date will be decreased so as to be the Actuarial Equivalent of the monthly pension he could have elected to receive at his Normal Retirement Date.  Further adjustments to a Vested Player's monthly pension may also be made as described in Sections 4.4 and 4.5 below depending on the form or manner in which benefits are paid.

4.4  <u>**Normal and Optional Forms of Payment; Qualified Joint and Survivor Annuity Requirements**</u>.

(a)  Unless an optional form of benefit is selected pursuant to a "qualified election" within the 90-day period ending on a Vested Player's Annuity Starting Date, a married Vested Player's monthly pension will be paid in the form of a "qualified joint

- 15 -

**CS-00880**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011898

and survivor annuity," and an unmarried Vested Player's monthly pension will be paid in the form of a "life only pension."

(b)    The following definitions will apply for purposes of this Section 4.4:

(1)    "Qualified election" means a waiver of a qualified joint and survivor annuity.  The waiver must be in writing and must be consented to by the Player's Spouse.  The Spouse's consent to a waiver must be witnessed by a notary public and, if benefits are to be paid to an alternate beneficiary, must be limited to a benefit for a specific alternate beneficiary or beneficiaries.  Notwithstanding this consent requirement, if the Player establishes to the satisfaction of the Administrator that such written consent cannot be obtained because there is no Spouse, because the Spouse cannot be located, or because of such other circumstances as may be provided in Treasury regulations, a Player's waiver will be deemed a qualified election without a Spouse's consent.  Any consent (or establishment that consent is not required) necessary under this provision will be valid only with respect to such consenting Spouse, who may not revoke such consent.  A revocation of a prior waiver may be made by a Player without the consent of the Spouse at any time before the commencement of benefits.  The number of revocations by a Player is not limited.  Any new waiver or change of beneficiary will require a new spousal consent.

The Administrator will give each Player, between 30 and 90 days before his Annuity Starting Date, a written explanation of (i) the terms and conditions of the qualified joint and survivor annuity, (ii) the Player's right to make (and the effect of) an

- 16 -

**CS-00881**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011899

election to waive the qualified joint and survivor annuity, (iii) the rights of the Player's Spouse, (iv) the Player's right to make (and the effect of) a revocation of a previous election to waive the qualified joint and survivor annuity, and (v) the amounts of the various optional forms of benefit.

(2) "Qualified joint and survivor annuity" means a monthly annuity for the life of the Player with a monthly survivor annuity for the life of the Spouse equal to 50% of the amount of the monthly annuity payable during the life of the Player, which benefit will be the Actuarial Equivalent of the life only pension form of benefit described in Section 4.4(c)(1).

(c) Subject to Section 4.4(a) above, a Vested Player may elect to receive benefits in any one of the following forms:

(1) "Life only pension" - equal monthly pension payments payable during the Player's lifetime only.

(2) "Qualified joint and survivor annuity" - the benefit described in Section 4.4(b)(2) above.

(3) "Life only pension with social security adjustment" - monthly pension payments payable during the Player's lifetime only but with payments adjusted taking into account the benefits the Player is expected to receive under the Social Security Act so as to provide the Player with an approximately level retirement income composed of his pension benefit under this Plan and his Social Security benefits. However, if a Player's projected monthly pension from this Plan after he becomes entitled to benefits under the Social Security Act would otherwise be less than $50 under this option, payments from this Plan prior to such entitlement will be appropriately

- 17 -

**CS-00882**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER          NFL_ALFORD-0011900

adjusted so as to provide a projected monthly pension after such entitlement of no less than $50. This option may only be elected by a Player who has at least one Credited Season prior to the 1993 Plan Year, and is not available with respect to $80-Benefit Credits (as defined in Section 4.1).

(4) "Life and contingent annuitant pension" - equal monthly pension payments payable to the Player during his lifetime, and if the Player predeceases the person designated by him as his contingent annuitant, all or a fraction of his monthly pension, as designated in writing by the Player, will continue for the life of the contingent annuitant. The contingent annuitant must be the Player's Spouse, parent, child, brother, sister, or Dependent.

(5) "Life and 10-year certain pension" - equal monthly pension payments payable for the greater of 120 months or the Player's lifetime, with any remaining guaranteed payments being continued after the Player's death to his designated beneficiary or, if none, the Player's estate.

Benefits payable for the life of a Player, Spouse, or contingent annuitant will continue through the month in which such person's death occurs. Where a Player receives his monthly pension under form (2), (3), (4), or (5) above (with spousal consent if required), his monthly pension will be reduced to be the Actuarial Equivalent of his monthly pension under form (1) above.

4.5 <u>Early Payment Benefit</u>. A Vested Player who leaves League football on or after March 1, 1977, who has at least one Credited Season prior to the 1993 Plan Year, and who is no longer

- 18 -

**CS-00883**

an Employee may elect to receive an "early payment benefit" in the form of a lump sum, a life only pension (as defined in Section 4.4(c)(1)), or a qualified joint and survivor annuity (as defined in Section 4.4(b)(2)). This election must be filed in writing with the Administrator, and must be consented to by the Player's Spouse under the qualified election rules in Section 4.4(b)(1). The amount of an early payment benefit will be the Actuarial Equivalent of 25% of the sum of a Player's Benefit Credits. The early payment benefit is payable in a lump sum (a) in the case of a Player who leaves football between March 1 and June 30, no earlier than March 31 of the following calendar year, or (b) in the case of a Player who leaves football between July 1 and the last day of February, no earlier than the third Game of the next Plan Year. Payment of an early payment benefit in the form of an annuity will commence according to the same schedule. If a Player receives an early payment benefit, his remaining 75% monthly pension will be based upon only 75% of the sum of his Benefit Credits under Section 4.1 (but 100% of any Benefit Credit increases negotiated under a future Collective Bargaining Agreement), with such remaining monthly pension being payable under Sections 4.3 and 4.4. If a Player elects an early payment benefit, any subsequent total and permanent disability benefits under Article 5, line-of-duty disability benefits under Article 6, widow's and surviving children's death benefits under Section 7.2, or spouse's pre-retirement death benefit under Section 7.3 that ever may be payable to him, his surviving Spouse, his children, or other beneficiaries, will be reduced by 25%.

- 19 -

**CS-00884**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011902

4.6 <u>Cashouts and Repayments</u>.  If a Player terminates employment as an Employee, and the present value of his vested monthly pension does not exceed $3,500, the Player will receive a distribution of the present value of his vested monthly pension and any nonvested monthly pension will be treated as a forfeiture.  If the present value of a Player's vested monthly pension is zero at the time he terminates employment as an Employee, the Player will be deemed to have received a distribution of all of his vested monthly pension.  The present value of any monthly pension will be the Actuarial Equivalent of the normal form of benefit.  A Player cashed out under this Section will no longer be a Vested Player.

If a Player receives a distribution pursuant to this Section and then resumes employment as an Active Player prior to the termination of the Plan, his Benefit Credits will be restored to the extent he repays his distribution with 5% interest per year, compounded annually.  If a Player receives a deemed distribution pursuant to this Section and then resumes employment as an Active Player prior to the termination of the Plan, he will be deemed to have repaid his deemed distribution, and any forfeited monthly pension will be restored.  The re-employed Player's Years of Service and Credited Seasons before the distribution or deemed distribution will be counted for vesting purposes, regardless of whether any repayment is made.

4.7 <u>Required Distributions</u>.

(a)  Payment of benefits to a Player, other than a Player who earns a Credited Season during the 1989, 1990, 1991, or 1992 Plan Years, will begin no later than the first day of the month

- 20 -

**CS-00885**

after the Player's 65th birthday, without regard to whether the
Player remains employed by an Employer and without regard to any
election to defer benefits under Section 4.3.  Payment of
benefits to any other Player will begin no later than the April 1
of the calendar year following the calendar year in which such
Player attains age 70-1/2.

    (b)  Notwithstanding any other Plan provision:

    (1)  Benefits will be distributed to a Player over a
period not extending beyond the life expectancy of the Player or
the joint and last survivor life expectancies of the Player and
his Spouse.  For purposes of this Section, life expectancy will
be determined on the basis of Tables V and VI of Treasury
regulation section 1.72-9, which is incorporated herein by
reference, and will not be recalculated following the first year
for which the first distribution is made under this Section;

    (2)  Any annuity payments made under this Section will
be made on a monthly basis and may not increase (except as a
result of any additional accruals or benefit increases under this
Plan).  Further, any distributions under this Plan must satisfy
the minimum distribution incidental benefit requirement of
Treasury regulation section 1.401(a)(9)-2, which is incorporated
herein by reference;

    (3)  If a Player dies after distribution of his monthly
pension has commenced, any remaining portion of such Player's
monthly pension will continue to be distributed at least as
rapidly as under the method of distribution being used prior to
the Player's death; and

- 21 -

**CS-00886**

(4)   If a Player dies before distribution of his monthly pension commences, any remaining portion of such Player's monthly pension will be distributed no later than five years after the date of the Player's death, except that:

(i)   If the beneficiary is the Player's surviving Spouse, distributions will begin by the later of (A) December 31 of the calendar year immediately following the calendar year in which the Player died, or (B) December 31 of the calendar year in which the Player would have attained age 70-1/2, and will be made over a period not exceeding the life expectancy of such Spouse; or

(ii)   If any portion of the benefit is payable to a designated beneficiary, distributions will begin on or before the December 31 of the calendar year immediately following the calendar year in which the Player died, and will be made over a period not exceeding the life expectancy of such designated beneficiary.

(c)   Unless otherwise elected in writing by a Player, distribution of benefits will begin not later than 60 days after the close of the Plan Year in which the latest of the following occurs:

(1)   The Player's Normal Retirement Date;

(2)   The 10th anniversary of the date the Player commenced participation in the Plan; or

(3)   The date the Player ceases to be an Employee.

4.8   <u>Rollovers Out of the Plan</u>.  Notwithstanding any provision in the Plan to the contrary, a "distributee" may elect, at the time and in the manner prescribed by the Administrator, to

- 22 -

**CS-00887**

have any portion of an "eligible rollover distribution" paid directly to an "eligible retirement plan" specified by the distributee in a "direct rollover." For purposes of this Section, the following terms will be defined as follows:

(a) "Distributee" means a person who is entitled to a distribution under the Plan and who is a Player, a Player's surviving Spouse, or a Player's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code;

(b) "Eligible rollover distribution" means any distribution of all or any portion of a distributee's benefit under the Plan, except that an eligible rollover distribution does not include: (1) any distribution that is one of a series of substantially equal periodic payments (payable not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of 10 years or more; (2) any distribution to the extent such distribution is required under section 401(a)(9) of the Code; and (3) the portion of any distribution that is not includible in gross income;

(c) "Eligible retirement plan" means an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the

- 23 -

**CS-00888**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER          NFL_ALFORD-0011906

surviving Spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity; and

(d) "Direct rollover" means a payment by the Plan to the eligible retirement plan specified by the distributee.

4.9 <u>Special Rules</u>. Notwithstanding any other Plan provisions:

(a) $80-Benefit Credits will not be paid with respect to any period prior to the "beginning date," and will not be actuarially adjusted to reflect an Annuity Starting Date after the Vested Player's Normal Retirement Date. The "beginning date," for purposes of this Section, is the Effective Date defined in the Introduction to this Plan. $80-Benefit Credits will begin to be paid as of the first day of the month after the beginning date;

(b) If a Vested Player who earns $80-Benefit Credits dies on or after July 1, 1987 and before the beginning date, and such Player was married on the date of his death, the Player's surviving Spouse will begin to receive, as of the first day of the month following the beginning date, a benefit equal to the amount she would have received had the Player been eligible to receive a monthly pension attributable to such $80-Benefit Credits (not actuarially adjusted to reflect an Annuity Starting Date after the Player's Normal Retirement Date) on the date of his death as if the Player had elected a qualified joint and survivor annuity with respect to such $80-Benefit Credits on the day prior to his death; and

(c) A Vested Player or surviving Spouse who receives $80-Benefit Credits under subsections (a) or (b) above will also

- 24 -

**CS-00889**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

receive, as soon as administratively practicable after the beginning date, a lump sum payment equal to one-quarter of the amount such Player or Spouse would have received under subsections (a) or (b) had the beginning date been June 18, 1993.

**CS-00890**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011908

## ARTICLE 5

## TOTAL AND PERMANENT DISABILITY

5.1  **Total and Permanent Disability Benefits**.  Any Active Player or Vested Inactive Player, other than a Player who has reached his Normal Retirement Date or begun receiving his monthly pension under Article 4, who is determined by the Retirement Board upon written application to be totally and permanently disabled, will receive a monthly total and permanent disability benefit commencing after the expiration of a six-month waiting period measured from the date of such total and permanent disability in an amount equal to the sum of the Benefit Credits of the Player at the date such total and permanent disability occurs, including, if applicable, the scheduled Benefit Credit, as provided in Section 1.10(c)(2), for the Plan Year in which such total and permanent disability occurs.  This benefit may be increased as provided below.  Notwithstanding the above, all benefits provided by this Article will be retroactive to the later of (a) the first of the month following the date of the total and permanent disability, or (b) July 1, 1993, and will be payable for life or until cessation of such total and permanent disability.

(a)  (Active Football).  The monthly total and permanent disability benefit will be no less than $4,000 if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

- 26 -

**CS-00891**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011909

(b)    (Active Nonfootball).  The monthly total and permanent disability benefit will be no less than $4,000 if the disability(ies) does not result from League football activities, but does arise while the Player is an Active Player and does cause the Player to be totally and permanently disabled "shortly after" the disability(ies) first arises.

(c)    (Football Degenerative).  The monthly total and permanent disability benefit will be no less than $4,000 if the disability(ies) arises out of League football activities, and results in total and permanent disability before the later of (1) age 45, or (2) 12 years after the end of the Player's last Credited Season.

(d)    (Inactive Nonfootball).  The monthly total and permanent disability benefit will be no less than $1,500 if (1) the total and permanent disability arises from other than League football activities while the Player is a Vested Inactive Player, or (2) the disability(ies) arises out of League football activities, and results in total and permanent disability after the later of (i) age 45, or (ii) 12 years after the end of the Player's last Credited Season.  The minimum benefits provided under this Section 5.1(d) will be offset by any disability benefits provided by an employer other than the League or an Employer, but will not be offset by worker's compensation.

(e)    (Dependent Child).  An additional benefit of $100 per month for each child who is a Dependent will be payable during the period of total and permanent disability; provided, however, that notwithstanding anything in this Article 5 to the contrary, the additional benefit of $100 per month will terminate as soon

- 27 -

**CS-00892**

as such Dependent (in respect of whom it is paid) ceases to be
the Player's Dependent.

A Player who becomes totally and permanently disabled no
later than six months after a disability(ies) first arises will
be conclusively deemed to have become totally and permanently
disabled "shortly after" the disability(ies) first arises, as
that phrase is used in subsections (a) and (b) above, and a
Player who becomes totally and permanently disabled more than
12 months after a disability(ies) first arises will be
conclusively deemed not to have become totally and permanently
disabled "shortly after" the disability(ies) first arises, as
that phrase is used in subsections (a) and (b) above.  In cases
falling within this six- to twelve-month period, the Retirement
Board will have the right and duty to determine whether the
"shortly after" standard is satisfied.

5.2  <u>Determination of Disability</u>.  An Active Player or a
Vested Inactive Player, other than a Player who has reached his
Normal Retirement Date or begun receiving his monthly pension
under Article 4, will be deemed to be totally and permanently
disabled if the Retirement Board finds that he has become totally
disabled to the extent that he is substantially prevented from or
substantially unable to engage in any occupation or employment
for remuneration or profit, but expressly excluding any
disability suffered while in the military service of any country.
A Player will not be considered to be able to engage in any
occupation or employment for remuneration or profit within the
meaning of this Section 5.2 merely because such person is
employed by the League or an Employer, manages personal or family

- 28 -

**CS-00893**

investments, is employed by or associated with a charitable organization, or is employed out of benevolence.

Whenever the Retirement Board undertakes to make a determination with respect to the total and permanent disability of any person applying for total and permanent disability benefits under this Article 5, such person may first be required to submit to an examination by a competent physician or physicians selected by the Retirement Board and may be required to submit to such further examinations as, in the opinion of the Retirement Board, are necessary to make an adequate determination respecting his physical or mental condition. Any person refusing to submit to any physical examination will not be entitled to any total and permanent disability benefits under this Article.

5.3 Re-Evaluation. Any person receiving total and permanent disability benefits under this Article 5 may be required to submit to periodic physical examinations, as requested by the Retirement Board from time to time prior to his Normal Retirement Date, for the purpose of re-examining his condition, but such examinations will not occur more than once every six months. After his Normal Retirement Date, any person receiving a monthly pension pursuant to Section 5.4 may be required to submit to physical examinations as requested by the Retirement Board for the purpose of re-examining his condition only if (a) he has not yet attained age 70, (b) three voting representatives reasonably believe that he may no longer be totally and permanently disabled, (c) he has not been re-examined during the preceding 36 months, (d) such re-examination does not require the person to travel to an extent deemed medically

- 29 -

**CS-00894**

inadvisable, and (e) his Normal Retirement Date is after September 30, 1993. If the Retirement Board determines that such person is no longer totally and permanently disabled, the total and permanent disability benefits will terminate and, in the case of a Player who is receiving a monthly pension under Section 5.4, the sum of his Benefit Credits will be substituted for his total and permanent disability benefit, and Section 4.4 will thereafter govern the form in which benefits are paid.

5.4 <u>Retirement on Disability</u>. If, as a result of the last physical examination prior to a Player's Normal Retirement Date, the Retirement Board determines that the Player continues to be totally and permanently disabled, he will be entitled to a monthly pension under Article 4, with his total and permanent disability benefit under Section 5.1(a), 5.1(b), 5.1(c), or 5.1(d), whichever previously applied, substituted for the sum of his Benefit Credits for life or until cessation of such total and permanent disability, subject, however, to Section 5.3. Section 4.4 will govern the form in which benefits are paid, and may provide for an actuarial reduction in benefits in accordance with the rules of that Section. Dependent child benefits under Section 5.1(e) will continue to be paid only during the Player's lifetime and only as long as the child continues to be the Player's Dependent.

5.5 <u>Special Rules</u>. Notwithstanding the above provisions of this Article 5, if a previous application for a total and permanent disability benefit by a Player was denied prior to May 6, 1993 under either the Bert Bell Plan or the Pete Rozelle Plan, such Player will be subject to the following special rules:

- 30 -

**CS-00895**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011913

(a)   The following is substituted for Section 5.1:

Any Active Player or Vested Inactive Player, other than a Player who has reached his Normal Retirement Date or begun receiving his monthly pension under Article 4, who is determined by the Retirement Board upon written application to be totally and permanently disabled, as hereinafter provided for, will be entitled to receive a monthly pension commencing after the expiration of a six month waiting period measured from the date of such disability in an amount equal to the sum of the Benefit Credits of the Player at the date such disability occurs, including, if applicable, the scheduled Benefit Credit as provided in Section 4.1 for the Plan Year in which the disability occurs.  Such benefits will be retroactive to the date of disability and will be payable for life or until cessation of the total and permanent disability.

The monthly pension will be no less than $4,000 if the disability results from a football injury incurred while an Active Player.

The monthly pension will be no less than $1,500 if the total and permanent disability results from other than a football injury; provided, however, that the monthly pension will be no less than $4,000 if (a) such disability results from a nonfootball injury occurring within twenty-four hours from the time the Player has been placed on waivers by an Employer, (b) the Player's contract is terminated by such Employer following conclusion of the waiver period, and (c) such injury results in paralysis of two or more limbs.

- 31 -

**CS-00896**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011914

In addition, $100 per month for each dependent child will be payable during the period of total and permanent disability; provided, however, that notwithstanding anything in this Article 5 to the contrary, the additional benefit of $100 per month will terminate as soon as the dependent child (in respect of whom it is paid) ceases to be the Player's dependent child.

(b)  The phrase "prevented from or unable to engage in" is substituted for the phrase "substantially prevented from or substantially unable to engage in" in the first paragraph of Plan Section 5.2, and the final sentence of the first paragraph of Plan Section 5.2 is of no effect.

**CS-00897**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011915

## ARTICLE 6

### LINE-OF-DUTY DISABILITY

6.1  <u>Line-of-Duty Disability Benefits</u>.  Any Player who incurs a "substantial disablement" (as defined in Section 6.4(a) and (b)) "arising out of League football activities" (as defined in Section 6.4(c)) will receive a monthly line-of-duty disability benefit equal to the greater of (a) the sum of the Player's Benefit Credits at the date the Player's disability qualifies as a substantial disablement, including, if applicable, the scheduled Benefit Credit, as provided in Section 1.10(c)(3), for the Plan Year in which the disability that subsequently qualifies as a substantial disablement, is incurred, and (b) $1,000.  The benefit will be payable monthly, beginning as of the first day of the month following the date the disability qualifies as a substantial disablement, and continuing for the duration of such substantial disablement but not for longer than 90 months.

6.2  <u>Relationship to Other Benefits</u>.  If both a line-of-duty disability benefit and a total and permanent disability benefit are otherwise payable during a month, only the larger of the two benefits will be paid.  After line-of-duty disability benefit payments end, a Player may continue to receive total and permanent disability benefits if he is eligible for such benefits under Article 5.

6.3  <u>Procedures</u>.  Any claim for line-of-duty disability benefits must be submitted in writing to the Administrator within 48 months after a Player ceases to be an Active Player, but this period will be tolled for any period of time during which such

- 33 -

**CS-00898**

Player is found by the Retirement Board to be physically or mentally incapacitated in a manner that substantially interferes with the filing of such claim.

The Retirement Board will determine a Player's substantial disablement, and may, but need not, rely on reports from a physician or physicians approved by the Retirement Board. The examined Player will pay the expense of the first examination, but the Plan will reimburse the Player if the Player qualifies for line-of-duty disability benefits. The Retirement Board may require a Player receiving line-of-duty disability benefits to submit to further examinations at the expense of the Plan, but not more frequently than once every six months. If the Retirement Board determines that the substantial disablement of the Player has terminated, the line-of-duty disability benefit payments will cease.

    6.4  <u>Definitions</u>.

    (a)  A "substantial disablement" is a "permanent" disability that:

        (1)  Results in a partial bodily disability of 50% or more; or the loss of 50% or more of speech or sight; or 50% or more loss of the use of the neck or back; or

        (2)  Results in 55% or more loss of use of the hearing or an arm, shoulder, leg or hip; or

        (3)  Results in 70% or more loss of use of a hand, wrist, elbow, foot, ankle or knee; or

        (4)  Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system.

- 34 -

**CS-00899**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011917

(b)  A disability will be deemed to be "permanent" if it has persisted or is expected to persist for at least 12 months from the date of its occurrence and was the most significant factor in the Player's retirement from League football.

(c)  "Arising out of League football activities" means a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities.  "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes.

6.5  <u>Applicability and Special Rules</u>.  The above provisions of this Article 6 will apply to Players who first make application for line-of-duty disability benefits in the 1993 Plan Year or later and who earn a Credited Season in 1993 or later. Players not described in the preceding sentence are subject to the following special rules:

(a)  60 months is substituted for 90 months in Section 6.1.

(b)  36 months is substituted for 48 months in Section 6.3.

(c)  The following sentence is added to the end of Section 6.1:  "A Player's monthly line-of-duty disability benefit will be reduced by the payment for that month or the monthly equivalent of any lump sum payment for the same disablement which the Player receives as worker's compensation."

(d)  60% is substituted for 55% in Section 6.4(a)(2).

(e)  80% is substituted for 70% in Section 6.4(a)(3).

- 35 -

**CS-00900**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011918

(f)  The phrase "and has resulted in" is substituted for the phrase "and was the most significant factor in" in Section 6.4(b).

(g)  The following sentence is substituted for the final sentence in Section 6.4(c):  "'Arising out of League football activities' will not include any disablement resulting from other employment or activity initiated by the Player outside of official pre-season training, including athletic activity for recreation or for the general purpose of maintaining or achieving playing condition."

- 36 -

**CS-00901**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011919

## ARTICLE 7

## DEATH BENEFITS

**7.1  After Retirement**.  In the event of the death of a
Vested Inactive Player who dies on or after his retirement
benefits begin, benefits will continue to be paid only if (a) the
form of benefits is a qualified joint and survivor annuity and
the Player is survived by his Spouse, (b) the form of benefits is
a life and contingent annuitant pension and the Player is
survived by his contingent annuitant, or (c) the form of benefits
is a life and 10-year certain pension and the 10-year guaranteed
period has not yet expired, and in these cases the benefits to be
paid following such Player's death will be limited to those
payable under the applicable form of benefits.

**7.2  Widow's and Surviving Children's Benefit**.  If a Player
dies before his retirement benefits begin, and he was, at the
time of his death, (a) an Active Player, (b) a Vested Inactive
Player who is vested solely because of Credited Seasons, and not
by reason of Years of Service after ceasing to be an Active
Player, or (c) entitled to disability benefits under Articles 5
or 6 (regardless of when such entitlement is determined), his
surviving Spouse, or if there is no surviving Spouse, his
surviving minor children, if any, will, subject to Section 7.4
below, receive a monthly widow's and surviving children's benefit
equal to the greater of (a) 50% of the Player's Benefit Credits,
or (b) $1,200.  Further, for the first 48 months following such
Player's death, the amount of this benefit will be (a) for a
Player who is an Active Player after the 1976 Plan Year, no less

- 37 -

**CS-00902**

than $2,000 per month, and (b) for a Player who is an Active
Player after the 1981 Plan Year, no less than $3,000 per month.

A surviving Spouse will receive the first payment of this
benefit beginning as of the first of the month following the
Player's death, and the last payment as of the first of the month
in which she dies or remarries, whichever occurs sooner.
Following the death or remarriage of the surviving Spouse, this
benefit will be divided equally among the surviving minor
children, if any.  For purposes of this Section, a child will be
considered to be a minor child until he or she reaches age 19
(or, age 23 if in college), or continuously if mentally or
physically incapacitated.

For purposes of Article 5, Article 6, and Section 7.2 only,
$80-Benefit Credits will not be included to determine the
benefit, if any, paid under those provisions.

7.3  Spouse's Pre-Retirement Death Benefit.  If a married
Vested Player dies before his retirement benefits begin, his
surviving Spouse will, subject to Section 7.4 below, receive
payments as described below:

(a)  If the Player dies after his "earliest retirement age,"
the Player's surviving Spouse will receive the same benefit that
would be payable if the Player had begun to receive benefits in
the form of an immediate qualified joint and survivor annuity
with 50% continuation (as described in Section 4.4(c)(2)) on the
day before the Player's death; or

(b)  If the Player dies on or before his "earliest
retirement age," the Player's surviving Spouse will receive the
same benefit that would be payable if the Player had:

- 38 -

**CS-00903**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011921

     (1)  Survived to his earliest retirement age;

     (2)  Begun to receive benefits in the form of an immediate qualified joint and survivor annuity with 50% continuation described in Section 4.4(c)(2) at his earliest retirement age; and

     (3)  Died on the day after his earliest retirement age.

For purposes of this Section, "earliest retirement age" means, for a Player who has a Credited Season prior to the 1993 Plan Year, the first day of the calendar month in which he would have attained age 45, and, for any other Player, the first day of the calendar month in which he would have attained age 55.

    7.4  **Elections**.  If both a widow's and surviving children's death benefit and a Spouse's pre-retirement death benefit might be payable, the surviving Spouse may elect to receive one or the other, but not both, of these death benefits.  Prior to her election, the surviving Spouse will be provided with an explanation of the terms and conditions of the two death benefits and the financial effect of the election of one such benefit over the other.

- 39 -

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
NFL_ALFORD-0011922

## ARTICLE 8

### THE RETIREMENT BOARD

**8.1  Selection.**  The Retirement Board will consist of six representatives and the Commissioner of the League.  The representatives on the Retirement Board and the Commissioner will be selected and will serve as follows:

(a)  The NFLPA will have the exclusive right to appoint three representatives.

(b)  The Management Council will have the exclusive right to appoint three representatives.

(c)  The Commissioner will be an honorary, non-voting member.

(d)  The NFLPA and the Management Council will have the authority to remove and appoint a replacement for any representative on the Retirement Board either has respectively appointed.  Any representative on the Retirement Board may resign by written notice addressed to the Vice-Chairmen and delivered personally, or mailed to the Vice-Chairmen by Certified Mail, Return Receipt Requested.  If there is a vacancy on the Retirement Board, the appointing party will designate his successor.  Until a successor is appointed, the remaining representatives on the Retirement Board may act on behalf of the Retirement Board; provided, however, that, in order to act, the Retirement Board always must have at least four voting representatives.

(e)  The NFLPA and the Management Council will each be entitled to name a proxy for each representative on the

- 40 -

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER            NFL_ALFORD-0011923

Retirement Board which it has appointed.  Such proxy may be designated anytime prior to or during any Retirement Board meeting.  Such proxy will be entitled to act as a representative only in the absence of the regular representative.

(f)  The Commissioner will be honorary Chairman of the Retirement Board and either the Commissioner or, in his absence, his designee will preside at all meetings of the Retirement Board.  The Commissioner's duties and responsibilities under and with respect to the Plan and Trust are limited to those that are specifically described in the Plan and Trust.

(g)  Two Vice-Chairmen will be selected.  One will be designated from among their number by the representatives on the Retirement Board appointed by the NFLPA and the other designated from among their number by the representatives on the Retirement Board appointed by the Management Council.  The duties of the Vice-Chairmen will be established by the Retirement Board.

8.2  **Authority**.  The Retirement Board will be the "named fiduciary" of the Plan within the meaning of section 402(a)(2) of ERISA, and will be responsible for implementing and administering the Plan, subject to the terms of the Plan and Trust.  The Retirement Board will have full and absolute discretion, authority and power to interpret, control, implement, and manage the Plan and the Trust.  Such authority includes, but is not limited to, the power to:

(a)  Define the terms of the Plan and Trust, construe the Plan and Trust, and reconcile any inconsistencies therein;

(b)  Decide claims for benefits (except that the Retirement Board will follow decisions submitted to, and decided by, the

- 41 -

**CS-00906**

                    NFL_ALFORD-0011924

Medical Advisory Physician or an arbitrator pursuant to Section 8.3);

    (c)  Pay all reasonable and necessary expenses of the Plan;

    (d)  Adopt procedures, rules, and forms for the administration of the Plan;

    (e)  Delegate its power and duties to other persons and appoint and assign authority to other persons (including, but not limited to accountants, investment managers, counsel, actuaries, appraisers, consultants, professional plan administrators, and other specialists), or otherwise act to secure specialized advice or assistance, as it deems necessary or desirable in connection with the administration of the Plan (with the Retirement Board, to the extent not prohibited by applicable law, being entitled to rely conclusively upon and being fully protected in acting or in declining to act in good faith reliance upon, the advice or opinion of such persons, provided that such persons are prudently chosen and retained by the Retirement Board);

    (f)  Establish an investment policy for the Plan;

    (g)  Select the Trustee(s) and enter into an agreement(s) with the Trustee(s) setting forth the terms of the Trust;

    (h)  Select an investment manager(s), within the meaning of section 3(38) of ERISA, to assume investment responsibility with respect to some or all of the assets of the Trust;

    (i)  Commence or defend suits or legal proceedings involving the Plan or Trust;

    (j)  Settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the Plan or Trust;

- 42 -

**CS-00907**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

(k)  Inspect the records of any Employer as reasonably necessary for the Retirement Board to perform its obligations under the Plan and Trust; and

(l)  Obtain fidelity bonds and fiduciary insurance coverage.

8.3  _Disputes_.

(a)  _Medical Disputes_.  If the Retirement Board is deadlocked with respect to a decision as to (1) whether a claimant medically is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit within the meaning of Section 5.2, or (2) whether an applicant meets the requisite percentage disability requirements to be eligible for line-of-duty disability benefits, the Retirement Board may by an affirmative vote of three voting representatives submit such disputes to the Medical Advisory Physician for a final and binding determination regarding such medical issues.

(b)  _Benefits Disputes_.  If the Retirement Board is deadlocked with respect to a decision as to whether or to what extent any person is eligible for or entitled to benefits under this Plan, the Retirement Board may by an affirmative vote of three voting representatives submit such dispute for final and binding arbitration in accordance with the procedures and practices in use prior to the 1993 CBA.

(c)  _Other Disputes_.  If the Retirement Board is deadlocked for any other reason, the Retirement Board may by an affirmative vote of three voting representatives submit such disputes to the Benefit Arbitrator for a final and binding determination in accordance with the procedures of the 1993 CBA.

- 43 -

**CS-00908**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER    NFL_ALFORD-0011926

8.4  <u>Meetings</u>.  The Retirement Board will meet quarterly, and, unless otherwise restricted by applicable law, a representative on the Retirement Board may participate in a meeting by means of conference telephone or similar communications equipment.  Except as otherwise provided in Section 8.3, any action by the Retirement Board will require four affirmative votes.  The Retirement Board may make decisions to take any action without calling a meeting, but any decisions so made, or action so taken, will be evidenced by a written instrument signed by at least four voting representatives on the Retirement Board.  A majority of voting representatives on the Retirement Board may delegate to any one of their number authority to sign documents on behalf of the Retirement Board and to perform other ministerial acts.

8.5  <u>Duty of Care</u>.  The Retirement Board will discharge its duties with respect to the Plan and Trust solely and exclusively in the interest of the Players and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.  The duties of the Retirement Board will only be those specifically undertaken pursuant to the Plan and Trust.  No member of the Retirement Board will be liable for the act of any other member, to the extent permitted by law.  In the event that any dispute arises as to any act to be performed by the Retirement Board, the members may, to the extent permitted by ERISA, postpone the performance of such act until actual adjudication of such dispute has been

- 44 -

**CS-00909**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

made in a court of competent jurisdiction or until they are indemnified against any liability.

8.6 <u>Discretionary Acts</u>. In exercising its discretionary powers under the Plan and Trust, the Retirement Board will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will be binding upon all persons affected thereby.

8.7 <u>Indemnification</u>.

(a) To the extent permitted by applicable law, each member of the Retirement Board will be indemnified and saved harmless by the Plan and Trust from and against any and all claims of liability arising in connection with the exercise of the member's duties and responsibilities with respect to the Plan and Trust by reason of any act or omission, including all expenses reasonably incurred in the defense of such act or omission, unless (1) it will be established by final judgment of a court of competent jurisdiction that such act or omission involved a violation of the duties imposed by Part 4 of Subtitle B of Title I of ERISA on the part of such member, or (2) in the event of settlement or other disposition of such claim involving the Plan or Trust, it is determined by written opinion of independent counsel that such act or omission involved a violation of the duties imposed by Part 4 of Subtitle B of Title I of ERISA on the part of such member. The independent counsel referred to in subparagraph (2) will be selected by mutual agreement of the NFLPA and the Management Council. If those parties cannot agree, an independent counsel will be selected by the Benefit Arbitrator.

- 45 -

**CS-00910**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011928

(b)  To the extent permitted by applicable law, the Trust will pay expenses (including reasonable attorneys' fees and disbursements), judgments, fines and amounts paid in settlement incurred by the member of the Retirement Board in connection with any of the proceedings described above, provided that (1) the member will repay such advanced expenses to the Trust, plus reasonable interest, if it is established by a final judgment of a court of competent jurisdiction, or by written opinion of independent counsel under the circumstances described in Section 8.7(a)(2) above, that the member violated duties under Part 4 of Subtitle B of Title I of ERISA, and (2) the member will make appropriate arrangements for repayment of advanced expenses. Notwithstanding the foregoing, no such advanced expenses will be made in connection with any claim against a member of the Retirement Board that is made by the Trust, provided that upon final disposition of such claim, the expenses (including reasonable attorneys' fees and disbursements), judgments, fines and amounts paid in settlement incurred by the member will be reimbursed by the Trust to the extent provided above.

- 46 -

**CS-00911**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011929

## ARTICLE 9

## RECORDS AND REPORTS

9.1  <u>Records</u>.  The Retirement Board will keep records of the operation of the Plan, including records that show each Player's Credited Seasons under the Plan as of each Plan Year.  Upon reasonable demand, a Player may receive a copy of the Retirement Board's records with respect to his status under the Plan but will have no right to information concerning any other person. Any qualified representative of the Employers or of the NFLPA may, at any time, inspect the records of the Retirement Board.

9.2  <u>Statement of Benefit Credits</u>.  As soon as practicable after each Plan Year, the Administrator will furnish to each Player who received a Credited Season for that Plan Year and to each Vested Inactive Player a written statement of his Benefit Credits.

- 47 -

**CS-00912**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011930

## ARTICLE 10

## AMENDMENT OR TERMINATION OF THE PLAN

10.1  **Retirement Board**.  The Retirement Board may generally amend or terminate this Plan, but may not:

(a)  Alter the amount of contributions payable to the Plan;

(b)  Cause the Plan and Trust to fail to qualify under sections 401(a) and 501(a) of the Code, or cause any portion of contributions to the Plan to fail to be currently deductible to the Employers when paid under section 404(a) of the Code;

(c)  Reduce, as a direct result of an amendment, the value of any benefit already earned and otherwise payable under the Plan;

(d)  Amend the Plan in a manner which will render the Plan actuarially unsound; or

(e)  Increase benefits during the term of the 1993 CBA.

10.2  **Bargaining Parties**.  The NFLPA and the Management Council, when acting jointly, may directly amend the Plan to (a) change the vesting schedule, (b) increase and revise benefits, (c) impose and remove limits on maximum benefits, and (d) expand coverage (including but not limited to merger with other qualified plans).

10.3  **General Limitations**.  No amendment of the Plan may operate to deprive a Player or beneficiary of any rights or benefits irrevocably vested in him under the Plan.  In the event of the termination or partial termination of the Plan, the right of affected Players to benefits accrued to the date of such termination or partial termination (to the extent funded as of

- 48 -

**CS-00913**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER           NFL_ALFORD-0011931

such date and unless previously forfeited) will be nonforfeitable. No amendment or termination of the Plan may permit Trust assets to revert to, or be used or enjoyed by, any Employer or the League.

10.4 <u>Mergers</u>. In the case of any merger or consolidation of this Plan with, or transfer of Plan assets or liabilities to, any other plan, the benefit to which each Player is entitled will not be reduced.

CS-00914

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                    NFL_ALFORD-0011932

## ARTICLE 11

## MISCELLANEOUS

**11.1   Use of Assets.** All amounts contributed to the Trust will be irrevocable contributions, and under no circumstances will any amounts contributed to the Trust, or any assets of the Trust, ever revert to (except as provided by Section 3.3), or be used or enjoyed by, an Employer or the League, nor will any assets ever be used other than for the benefit of the Players and their beneficiaries and the payment of reasonable Plan expenses. This Plan will be and continue to be operated in a manner so that it will be qualified under section 401(a) of the Code, or any successor to such section 401(a).

**11.2   "Spendthrift" Provision.** No benefit under the Plan will be subject in any manner to anticipation, pledge, encumbrance, alienation, levy or assignment, nor to seizure, attachment or other legal process for the debts of any Player or beneficiary, except pursuant to a qualified domestic relations order under section 414(p) of the Code or a domestic relations order entered before January 1, 1985 that the Retirement Board treats as a qualified domestic relations order.

**11.3   Payment in Event of Incapacity.** If the Retirement Board determines that a person entitled to receive any benefit payment is under a legal disability or is incapacitated in any way so as to be unable to manage his financial affairs, the Retirement Board may direct that payments be made to such person's legal representative, or to a relative or other individual for such person's benefit, or to otherwise apply the

- 50 -

**CS-00915**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011933

payment for the benefit of such person, subject to such
conditions as the Retirement Board deems appropriate.  Any
payment of a benefit in accordance with the provisions of this
Section will be a complete discharge of any liability by the Plan
to make such payment.

11.4  <u>Medical Advisory Physician</u>.

(a) <u>Selection</u>.  The NFLPA and Management Council will
jointly designate a board-certified orthopedic physician as the
Medical Advisory Physician (MAP).  The MAP will serve until (1)
the NFLPA and Management Council jointly remove and replace the
MAP, or (2) 30 days after either the NFLPA or Management Council
gives written notice of the MAP's removal to the other party, the
MAP and the Retirement Board.  The NFLPA and Management Council,
jointly, will promptly designate a replacement MAP.  A MAP who is
removed or who has received a notice of removal will decide any
dispute already referred by the Retirement Board within 30 days
after the removal or notice of removal.  The Retirement Board may
not refer further disputes to the removed MAP.

(b) <u>Duties</u>.  The MAP has authority to decide only those
medical issues submitted by the Retirement Board under Section
8.3(a).  In making a determination, the MAP will review all
material submitted to the Plan and may arrange for any additional
consultation, referral or other specialized medical services as
the MAP deems necessary.  In addition, the MAP may require an
applicant to submit to such physical examinations as the MAP
deems reasonable and necessary in making a determination.  The
MAP will submit a written determination to the Retirement Board
on a form provided by the Retirement Board.

- 51 -

**CS-00916**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011934

**11.5  <u>Maximum Limitation on Benefits</u>.**

(a)  The annual benefit (as defined in section 415(b)(2) of the Code) to which any Player may become entitled under this Plan, when added to any retirement benefits payable in respect of such Player under any other retirement plan qualified under section 401(a) of the Code to which such Player's Employer or an Affiliate (as modified by section 415(h) of the Code) has contributed for his benefit, will not exceed the lesser of (1) or (2) below, which will be deemed to commence on such Employee's "social security retirement age" (as defined in section 415(b)(8) of the Code):

(1)  $90,000 per year (as adjusted annually under section 415 of the Code and applicable Treasury regulations); or

(2)  100% of the Player's "compensation" (as such term is defined in Treasury regulations section 1.415-2(d)(11)(i)) for his highest three consecutive calendar years of compensation.

(b)  If a Player is a participant at any time in both a defined benefit plan or plans and a defined contribution plan or plans maintained by an Employer or Affiliate, the sum of the defined benefit plan fraction and the defined contribution plan fraction, as such terms are defined in section 415(e) of the Code and applicable Treasury regulations, for any Plan Year may not exceed 1.0.  If, in any Plan Year, the sum of the defined benefit plan fraction and the defined contribution plan fraction will exceed 1.0, the rate of benefit accruals under this Plan will be reduced so that the sum of the fractions equals 1.0.

(c)  Notwithstanding the foregoing, the otherwise permissible annual benefits for any individual participating

- 52 -

**CS-00917**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011935

under this Plan may be further reduced to the extent necessary to effectuate the limitations under section 415 of the Code. The provisions of section 415 of the Code and related Treasury regulations, including without limitation the terms and definitions set forth therein, are incorporated by reference.

(d)  To the extent that any accrual is reduced because of this Section, such accrual will be immediately reinstated as soon as permitted under this Section, regardless of whether the Player is active, inactive, or retired.

11.6  <u>Claims Procedure</u>.  Each Player or his beneficiary must claim any benefit to which he believes he is entitled under this Plan by a written notification to the Administrator.

The Retirement Board will decide a claim within 90 days of the date on which the claim is filed, unless special circumstances require a longer period for adjudication and the claimant is notified in writing, prior to the expiration of the 90-day period, of the reasons for an extension of time; provided, however, that no extensions will be permitted beyond 90 days after the expiration of the initial 90-day period. If the Retirement Board fails to notify the claimant of his decision to grant or deny such claim within the time specified by this paragraph, such claim will be deemed to have been denied by the Retirement Board and the review procedure described below will become available to the claimant.

If a claim is denied, the claimant must receive a written notice stating:

(a)  The specific reason for the denial;

- 53 -

**CS-00918**

(b)  A specific reference to the Plan provision on which the denial is based;

(c)  A description of additional information necessary for the claimant to perfect his claim, and an explanation of why such material is necessary; and

(d)  An explanation of the Plan's claim review procedure.

The claimant will have 60 days to request in writing a review of the denial of his claim by the Retirement Board which will provide a full and fair review.  The claimant may review pertinent documents, and he may submit issues and comments in writing.  The decision by the Retirement Board with respect to the review will be given within 60 days after receipt of the request, unless special circumstances require an extension (such as for a hearing).  In no event will the decision be delayed beyond 120 days after receipt of the request for review.  The decision will be written in a manner calculated to be understood by the claimant, and it will include specific reasons on which the decision is based and refer to specific Plan provisions.

11.7  No Employment Contract.  This Plan creates no contract of employment between the Employer or the League and any Player.

11.8  Choice of Law.  This Plan will be construed in accordance with ERISA and, to the extent not preempted, in accordance with the laws of the State of New York.

11.9  Severability.  If any provision of this Plan is held illegal or void, such illegality or invalidity will not affect the remaining provisions of this Plan, but any such provision will be fully severable and the Plan will be construed and

- 54 -

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011937

enforced as if the illegal or invalid provision had never been included.

- 55 -

**CS-00920**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011938

## APPENDIX A

### ACTUARIAL ASSUMPTIONS AND ACTUARIAL COST METHOD

| | |
|---|---|
| **Mortality rates:** | Group Annuity Mortality Table for 1983 without margins. |
| **Disability mortality before age 65:** | 1965 Railroad Retirement Board select and ultimate table. |

**Non-football related disability rates before retirement:**

| Age | Rate |
|-----|------|
| 22 | .04 |
| 27 | .04 |
| 32 | .04 |
| 37 | .05 |
| 42 | .09 |
| 47 | .18 |
| 52 | .41 |

| | |
|---|---|
| **Football related disability rates:** | .08% per year for active players and .06% per year for inactive players until age 45, after which it becomes zero. Active players are assumed to become inactive after one year or age 30, whichever comes later. |

**Withdrawal rates:**

| For Players With Service of | Rate |
|-----------------------------|------|
| 1 year | 29.1% |
| 2 years | 19.7% |
| 3 years | 17.0% |

| | |
|---|---|
| **Election of early payment benefit:** | 35% of all players out of football less than two years will elect the benefit two years after leaving football. Active players are assumed to leave football after one season or age 30, whichever is later.  No assumption for players with no credited seasons before 1993. |
| **Retirement age:** | 47, except 55 for players with no credited seasons before 1993. |
| **Percent married:** | Social Security awards in 1972. |
| **Age of Player's wife:** | Three years younger than player. |
| **Remarriage rates:** | 1971 Railroad Retirement Board rates. |

A-1

**CS-00921**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011939

| | |
|---|---|
| Net investment return: | 7.25%. |
| Administration expenses: | Actual for prior year. |
| Valuation date: | First day of plan year. |
| Actuarial value of assets: | One-time write-up to market value as of March 31, 1993 followed by restart of the present procedure thereafter. |
| Funding method: | Unit credit cost method, except retrospective term cost based on actual experience during the prior year for Line-of-Duty disability benefits. |
| Amortization period: | 20 years beginning April 1, 1993; 19 years as of April 1, 1994, etc.  In years when there is a zero or negative unfunded actuarial accrued liability, the amount which is expected to produce a zero unfunded actuarial accrued liability at the end of the plan year. |

A-2

**CS-00922**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

**The following conversion factors will be used in determining actuarial equivalencies of the benefits under the Bert Bell/Pete Rozelle NFL Player Retirement Plan:**

1.  Life and Ten-Year Certain Pension Option (Section 4.4(c)(5)) -- 99% minus 0.4% for each complete year of age greater than age 45 on the effective date.

2.  Life Only Pension with Social Security Adjustment Option (Section 4.4(c)(3) -- see Tables I and II attached.

3.  Early Retirement Reduction and Deferred Retirement Increases (Section 4.3) -- see Table III attached.

4.  Qualified Joint and Survivor Annuity Option (Section 4.4(c)(2) and Life and Contingent Annuitant Pension Option (Section 4.4(c)(4) -- see Table IV attached.  Where the age of the beneficiary does not appear in the table, the following assumptions are used:

    > 1951 Group Annuity Table with ages set back one year for males and five years for females with a 6% per annum interest rate.  All Players are assumed to be males and all beneficiaries are assumed to be females.

5.  Early Payment Benefit (Section 4.5) -- mortality assumption used is 1951 Group Annuity Mortality Table for males with ages set back one year.

6.  Early Payment Benefit (Section 4.5) and Cashouts (Section 4.6) -- interest rate assumption used is whichever of the following rates produces the greatest benefit:

    (a)  6%;

    (b)  The "applicable interest rate" (as defined below), if the present value of the benefit (using such rate or rates) is not in excess of $25,000; or

    (c)  120% of the "applicable interest rate" (as defined below), if the present value of the benefit

A-3

**CS-00923**

           NFL_ALFORD-0011941

exceeds $25,000 (as determined
under paragraph (b) above) and if
the present value determined under
this paragraph (c) is at least
$25,000.

As used herein, "applicable interest rate" will be
the interest rate or rates which would be used (as
of the first day of the Plan Year in which the
distribution is made) by the Pension Benefit
Guaranty Corporation for a trusteed single-
employer plan to value a benefit upon termination
of an insufficient trusteed single-employer plan.

A-4

**CS-00924**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011942

**CS-00925**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011943

# Table I

**Social Security Adjustment**

Increase in pension until age 62 for each $100 by which the increased pension is reduced thereafter.

| Player's Age on Effective Date | Increase |
|:---:|:---:|
| 45 | $21.04 |
| 46 | 22.83 |
| 47 | 24.79 |
| 48 | 26.94 |
| 49 | 29.32 |
| 50 | 31.93 |
| 51 | 34.82 |
| 52 | 38.02 |
| 53 | 41.57 |
| 54 | 45.50 |
| 55 | 49.89 |
| 56 | 54.78 |
| 57 | 60.26 |
| 58 | 66.40 |
| 59 | 73.32 |
| 60 | 81.12 |
| 61 | 89.96 |

For example, assume a player is entitled to an Early Retirement Pension of $900 per month at age 49 and that his estimated Social Security benefit at age 62 is $617.00. His benefit would be computed as follows:

Before age 62  = 900 + (617/100) x 29.32
               = 900.00 + 180.90
               = $1,080.90

After age 62   = 1,080.90 – 617.00
               = $463.90

A-5

CS-00926

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                NFL_ALFORD-0011944

## Table II

If a monthly benefit at age 62, from Table I is less than $50, increase in benefit until age 62 is the product of the Early Retirement Pension minus $50 and the appropriate factor from the table below.

| Player's Age on Effective Date | Factor |
|:---:|:---:|
| 45 | 30.94% |
| 46 | 34.14 |
| 47 | 37.81 |
| 48 | 42.07 |
| 49 | 47.05 |
| 50 | 52.92 |
| 51 | 59.95 |
| 52 | 68.47 |
| 53 | 78.99 |
| 54 | 92.27 |
| 55 | 109.48 |
| 56 | 132.61 |
| 57 | 165.21 |
| 58 | 214.39 |
| 59 | 296.74 |
| 60 | 462.05 |
| 61 | 959.22 |

For example, assume a player is entitled to an Early Retirement Pension of $300 per month at age 50 and that his estimated Social Security benefit is $675 per month. His benefit, as computed using the first table produces a benefit at age 62 of less than $50 (actually negative $159.47). His benefit would therefore be calculated as follows:

Increase to age 62 = (300 – 50) x .5292
= 250 x .5292
= $132.30

Therefore, the benefit payable to age 62 is $432.30 (300.00 + 132.30), and the benefit payable at and after age 62 is $50.00.

**CS-00927**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NFL_ALFORD-0011945

# Table III

## Early Retirement Reduction Factors

**Percentage of Normal Retirement Pension payable at specified age.**

| Age | Percentage |
|-----|-----------|
| 45  | 45.2%     |
| 46  | 48.7      |
| 47  | 52.5      |
| 48  | 56.7      |
| 49  | 61.2      |
|     |           |
| 50  | 66.2      |
| 51  | 71.7      |
| 52  | 77.8      |
| 53  | 84.4      |
| 54  | 91.8      |

## Deferred Retirement Increase Factors

**Percentage of Normal Retirement Pension payable at specified age.**

| Age | Percentage |
|-----|-----------|
| 56  | 109.1%    |
| 57  | 119.2     |
| 58  | 130.5     |
| 59  | 143.1     |
| 60  | 157.3     |
|     |           |
| 61  | 173.3     |
| 62  | 191.3     |
| 63  | 211.8     |
| 64  | 235.2     |
| 65  | 261.9     |

A-7

**CS-00928**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                  NFL_ALFORD-0011946

# TABLE IV

## TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS

Use this table to convert plan benefits to a Form 2 or Form 4 benefit.

If 100% of the benefit payable during the joint lifetime of the player and his beneficiary is paid to the beneficiary if the player dies first, then the applicable factor from this chart is applied to the benefit.

If the beneficiary receives less than 100% of the benefit, the appropriate factor is obtained from line 5 of the following worksheet:

(1)  Enter the percent (in decimal form) of the player's benefit to go to the beneficiary on his death:                    _____

(2)  Enter the factor from the chart if 100% of the benefit was to go to the beneficiary:                    _____

(3)  Multiply the entries on lines (1) and (2) and enter here:                    _____

(4)  Add the entries on lines (1) and (2) and subtract the entry on line (3):                    _____

(5)  Divide the entry on line (2) by the entry on line (4). (The answer should be carried to three decimal places):                    _____

A-8

**CS-00929**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER          NFL_ALFORD-0011947

## Table IV

### TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS
(Continued — Page 2)

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 |
| 45 | 0.834 | 0.836 | 0.838 | 0.841 | 0.843 | 0.845 | 0.848 | 0.851 |
| 46 | 0.824 | 0.826 | 0.828 | 0.831 | 0.833 | 0.835 | 0.838 | 0.841 |
| 47 | 0.813 | 0.816 | 0.818 | 0.820 | 0.823 | 0.825 | 0.828 | 0.830 |
| 48 | 0.803 | 0.805 | 0.807 | 0.809 | 0.812 | 0.814 | 0.817 | 0.820 |
| 49 | 0.791 | 0.794 | 0.796 | 0.798 | 0.801 | 0.803 | 0.806 | 0.809 |
| 50 | 0.780 | 0.782 | 0.784 | 0.787 | 0.789 | 0.792 | 0.795 | 0.798 |
| 51 | 0.768 | 0.770 | 0.773 | 0.775 | 0.778 | 0.780 | 0.783 | 0.786 |
| 52 | 0.756 | 0.758 | 0.761 | 0.763 | 0.766 | 0.768 | 0.771 | 0.774 |
| 53 | 0.744 | 0.746 | 0.748 | 0.751 | 0.753 | 0.756 | 0.759 | 0.762 |
| 54 | 0.731 | 0.733 | 0.736 | 0.738 | 0.741 | 0.743 | 0.746 | 0.749 |
| 55 | 0.718 | 0.721 | 0.723 | 0.725 | 0.728 | 0.730 | 0.733 | 0.736 |
| 56 | 0.705 | 0.707 | 0.709 | 0.712 | 0.714 | 0.717 | 0.720 | 0.723 |
| 57 | 0.691 | 0.694 | 0.696 | 0.698 | 0.701 | 0.703 | 0.706 | 0.709 |
| 58 | 0.677 | 0.680 | 0.682 | 0.684 | 0.687 | 0.689 | 0.692 | 0.695 |
| 59 | 0.663 | 0.665 | 0.667 | 0.670 | 0.672 | 0.675 | 0.677 | 0.680 |
| 60 | 0.648 | 0.650 | 0.653 | 0.655 | 0.657 | 0.660 | 0.662 | 0.665 |
| 61 | 0.633 | 0.635 | 0.637 | 0.640 | 0.642 | 0.644 | 0.647 | 0.650 |
| 62 | 0.618 | 0.620 | 0.622 | 0.624 | 0.626 | 0.629 | 0.631 | 0.634 |
| 63 | 0.602 | 0.604 | 0.606 | 0.608 | 0.610 | 0.612 | 0.615 | 0.618 |
| 64 | 0.585 | 0.587 | 0.589 | 0.591 | 0.594 | 0.596 | 0.598 | 0.601 |
| 65 | 0.569 | 0.571 | 0.573 | 0.575 | 0.577 | 0.579 | 0.582 | 0.584 |

**CS-00930**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                                   NFL_ALFORD-0011948

# Table IV

## TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS

### (Continued — Page 3)

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| 45 | 0.853 | 0.856 | 0.859 | 0.862 | 0.865 | 0.868 | 0.872 | 0.875 |
| 46 | 0.844 | 0.846 | 0.849 | 0.853 | 0.856 | 0.859 | 0.862 | 0.865 |
| 47 | 0.833 | 0.836 | 0.839 | 0.842 | 0.846 | 0.849 | 0.852 | 0.856 |
| 48 | 0.823 | 0.826 | 0.829 | 0.832 | 0.835 | 0.839 | 0.842 | 0.846 |
| 49 | 0.812 | 0.815 | 0.818 | 0.821 | 0.825 | 0.828 | 0.832 | 0.835 |
| 50 | 0.800 | 0.804 | 0.807 | 0.810 | 0.813 | 0.817 | 0.821 | 0.824 |
| 51 | 0.789 | 0.792 | 0.795 | 0.799 | 0.802 | 0.806 | 0.809 | 0.813 |
| 52 | 0.777 | 0.780 | 0.783 | 0.787 | 0.790 | 0.794 | 0.798 | 0.801 |
| 53 | 0.765 | 0.768 | 0.771 | 0.774 | 0.778 | 0.782 | 0.785 | 0.789 |
| 54 | 0.752 | 0.755 | 0.758 | 0.762 | 0.765 | 0.769 | 0.773 | 0.777 |
| 55 | 0.739 | 0.742 | 0.745 | 0.749 | 0.752 | 0.756 | 0.760 | 0.764 |
| 56 | 0.726 | 0.729 | 0.732 | 0.735 | 0.739 | 0.743 | 0.747 | 0.751 |
| 57 | 0.712 | 0.715 | 0.718 | 0.722 | 0.725 | 0.729 | 0.733 | 0.737 |
| 58 | 0.698 | 0.701 | 0.704 | 0.708 | 0.711 | 0.715 | 0.719 | 0.723 |
| 59 | 0.683 | 0.686 | 0.690 | 0.693 | 0.697 | 0.700 | 0.704 | 0.709 |
| 60 | 0.668 | 0.671 | 0.675 | 0.678 | 0.681 | 0.685 | 0.689 | 0.693 |
| 61 | 0.653 | 0.656 | 0.659 | 0.662 | 0.666 | 0.670 | 0.674 | 0.678 |
| 62 | 0.637 | 0.640 | 0.643 | 0.646 | 0.650 | 0.654 | 0.657 | 0.662 |
| 63 | 0.621 | 0.624 | 0.627 | 0.630 | 0.633 | 0.637 | 0.641 | 0.645 |
| 64 | 0.604 | 0.607 | 0.610 | 0.613 | 0.617 | 0.620 | 0.624 | 0.629 |
| 65 | 0.587 | 0.590 | 0.593 | 0.596 | 0.599 | 0.603 | 0.607 | 0.611 |

CS-00931

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER          NFL_ALFORD-0011949

## Table IV

### TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS

**(Continued — Page 4)**

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| 45 | 0.878 | 0.882 | 0.886 | 0.889 | 0.893 | 0.897 | 0.901 | 0.905 |
| 46 | 0.869 | 0.873 | 0.877 | 0.881 | 0.884 | 0.888 | 0.893 | 0.897 |
| 47 | 0.859 | 0.863 | 0.867 | 0.871 | 0.875 | 0.879 | 0.884 | 0.888 |
| 48 | 0.849 | 0.853 | 0.857 | 0.861 | 0.866 | 0.870 | 0.874 | 0.879 |
| 49 | 0.839 | 0.843 | 0.847 | 0.851 | 0.856 | 0.860 | 0.865 | 0.869 |
| 50 | 0.828 | 0.832 | 0.836 | 0.841 | 0.845 | 0.850 | 0.855 | 0.859 |
| 51 | 0.817 | 0.821 | 0.825 | 0.830 | 0.834 | 0.839 | 0.844 | 0.849 |
| 52 | 0.805 | 0.809 | 0.814 | 0.818 | 0.823 | 0.828 | 0.833 | 0.838 |
| 53 | 0.793 | 0.797 | 0.802 | 0.807 | 0.811 | 0.816 | 0.821 | 0.827 |
| 54 | 0.781 | 0.785 | 0.790 | 0.794 | 0.799 | 0.804 | 0.809 | 0.815 |
| 55 | 0.768 | 0.772 | 0.777 | 0.782 | 0.787 | 0.792 | 0.797 | 0.802 |
| 56 | 0.755 | 0.759 | 0.764 | 0.769 | 0.774 | 0.779 | 0.784 | 0.790 |
| 57 | 0.741 | 0.746 | 0.750 | 0.755 | 0.760 | 0.765 | 0.771 | 0.776 |
| 58 | 0.727 | 0.732 | 0.736 | 0.741 | 0.746 | 0.751 | 0.757 | 0.762 |
| 59 | 0.713 | 0.717 | 0.722 | 0.727 | 0.732 | 0.737 | 0.742 | 0.748 |
| 60 | 0.698 | 0.702 | 0.707 | 0.711 | 0.716 | 0.722 | 0.727 | 0.733 |
| 61 | 0.682 | 0.686 | 0.691 | 0.696 | 0.701 | 0.706 | 0.712 | 0.718 |
| 62 | 0.666 | 0.670 | 0.675 | 0.680 | 0.685 | 0.690 | 0.696 | 0.701 |
| 63 | 0.650 | 0.654 | 0.658 | 0.663 | 0.668 | 0.673 | 0.679 | 0.685 |
| 64 | 0.633 | 0.637 | 0.641 | 0.646 | 0.651 | 0.656 | 0.662 | 0.667 |
| 65 | 0.615 | 0.620 | 0.624 | 0.629 | 0.633 | 0.639 | 0.644 | 0.650 |

A-11

CS-00932

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011950

## Table IV

### TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS
(Continued — Page 5)

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| 45 | 0.909 | 0.913 | 0.917 | 0.921 | 0.925 | 0.929 | 0.933 | 0.937 |
| 46 | 0.901 | 0.905 | 0.909 | 0.914 | 0.918 | 0.922 | 0.927 | 0.931 |
| 47 | 0.892 | 0.897 | 0.901 | 0.906 | 0.910 | 0.915 | 0.919 | 0.924 |
| 48 | 0.883 | 0.888 | 0.893 | 0.897 | 0.902 | 0.907 | 0.912 | 0.917 |
| 49 | 0.874 | 0.879 | 0.884 | 0.889 | 0.894 | 0.899 | 0.904 | 0.909 |
| 50 | 0.864 | 0.869 | 0.874 | 0.879 | 0.885 | 0.890 | 0.895 | 0.901 |
| 51 | 0.854 | 0.859 | 0.864 | 0.870 | 0.875 | 0.881 | 0.886 | 0.892 |
| 52 | 0.843 | 0.849 | 0.854 | 0.859 | 0.865 | 0.871 | 0.877 | 0.883 |
| 53 | 0.832 | 0.837 | 0.843 | 0.849 | 0.855 | 0.861 | 0.867 | 0.873 |
| 54 | 0.820 | 0.826 | 0.832 | 0.838 | 0.844 | 0.850 | 0.856 | 0.862 |
| 55 | 0.808 | 0.814 | 0.820 | 0.826 | 0.832 | 0.839 | 0.845 | 0.852 |
| 56 | 0.795 | 0.801 | 0.807 | 0.814 | 0.820 | 0.827 | 0.833 | 0.840 |
| 57 | 0.782 | 0.788 | 0.794 | 0.801 | 0.807 | 0.814 | 0.821 | 0.828 |
| 58 | 0.768 | 0.774 | 0.781 | 0.787 | 0.794 | 0.801 | 0.808 | 0.815 |
| 59 | 0.754 | 0.760 | 0.767 | 0.773 | 0.780 | 0.787 | 0.795 | 0.802 |
| 60 | 0.739 | 0.745 | 0.752 | 0.759 | 0.766 | 0.773 | 0.780 | 0.788 |
| 61 | 0.724 | 0.730 | 0.736 | 0.743 | 0.750 | 0.758 | 0.765 | 0.773 |
| 62 | 0.707 | 0.714 | 0.720 | 0.727 | 0.734 | 0.742 | 0.749 | 0.757 |
| 63 | 0.691 | 0.697 | 0.704 | 0.710 | 0.718 | 0.725 | 0.733 | 0.741 |
| 64 | 0.673 | 0.680 | 0.686 | 0.693 | 0.700 | 0.708 | 0.715 | 0.724 |
| 65 | 0.656 | 0.662 | 0.669 | 0.675 | 0.683 | 0.690 | 0.698 | 0.706 |

A-12

**CS-00933**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011951

# Table IV

## TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS
### (Continued — Page 6)

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| 45 | 0.941 | 0.945 | 0.949 | 0.953 | 0.957 | 0.961 | 0.964 | 0.968 |
| 46 | 0.935 | 0.939 | 0.944 | 0.948 | 0.952 | 0.956 | 0.960 | 0.963 |
| 47 | 0.928 | 0.933 | 0.937 | 0.942 | 0.946 | 0.950 | 0.955 | 0.959 |
| 48 | 0.921 | 0.926 | 0.931 | 0.936 | 0.940 | 0.945 | 0.949 | 0.954 |
| 49 | 0.914 | 0.919 | 0.924 | 0.929 | 0.934 | 0.939 | 0.944 | 0.948 |
| 50 | 0.906 | 0.911 | 0.916 | 0.922 | 0.927 | 0.932 | 0.937 | 0.942 |
| 51 | 0.897 | 0.903 | 0.909 | 0.914 | 0.920 | 0.925 | 0.931 | 0.936 |
| 52 | 0.888 | 0.894 | 0.900 | 0.906 | 0.912 | 0.918 | 0.924 | 0.929 |
| 53 | 0.879 | 0.885 | 0.891 | 0.898 | 0.904 | 0.910 | 0.916 | 0.922 |
| 54 | 0.869 | 0.875 | 0.882 | 0.889 | 0.895 | 0.902 | 0.908 | 0.915 |
| 55 | 0.858 | 0.865 | 0.872 | 0.879 | 0.886 | 0.893 | 0.900 | 0.906 |
| 56 | 0.847 | 0.854 | 0.861 | 0.869 | 0.876 | 0.883 | 0.890 | 0.898 |
| 57 | 0.835 | 0.843 | 0.850 | 0.858 | 0.865 | 0.873 | 0.881 | 0.888 |
| 58 | 0.823 | 0.831 | 0.838 | 0.846 | 0.854 | 0.862 | 0.870 | 0.878 |
| 59 | 0.810 | 0.818 | 0.826 | 0.834 | 0.842 | 0.850 | 0.859 | 0.867 |
| 60 | 0.796 | 0.804 | 0.812 | 0.821 | 0.829 | 0.838 | 0.847 | 0.855 |
| 61 | 0.781 | 0.789 | 0.798 | 0.807 | 0.816 | 0.825 | 0.834 | 0.843 |
| 62 | 0.766 | 0.774 | 0.783 | 0.792 | 0.801 | 0.810 | 0.820 | 0.829 |
| 63 | 0.750 | 0.758 | 0.767 | 0.776 | 0.786 | 0.795 | 0.805 | 0.815 |
| 64 | 0.733 | 0.741 | 0.750 | 0.760 | 0.769 | 0.779 | 0.789 | 0.800 |
| 65 | 0.715 | 0.724 | 0.733 | 0.743 | 0.752 | 0.763 | 0.773 | 0.783 |

**CS-00934**

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER    NFL_ALFORD-0011952

## Table IV

### TABLE TO CONVERT BENEFIT CREDITS TO JOINT AND SURVIVOR OPTIONS
(Continued — Page 7)

| Age of Player When Benefits Begin To Be Paid | Age of Beneficiary When Benefits Begin To Be Paid To Player | | | | | |
|---|---|---|---|---|---|---|
| | 65 | 66 | 67 | 68 | 69 | 70 |
| 45 | 0.971 | 0.975 | 0.978 | 0.981 | 0.984 | 0.987 |
| 46 | 0.967 | 0.971 | 0.974 | 0.978 | 0.981 | 0.984 |
| 47 | 0.963 | 0.967 | 0.970 | 0.974 | 0.978 | 0.981 |
| 48 | 0.958 | 0.962 | 0.966 | 0.970 | 0.974 | 0.978 |
| 49 | 0.953 | 0.957 | 0.962 | 0.966 | 0.970 | 0.974 |
| 50 | 0.947 | 0.952 | 0.957 | 0.961 | 0.966 | 0.970 |
| 51 | 0.941 | 0.946 | 0.951 | 0.956 | 0.961 | 0.966 |
| 52 | 0.935 | 0.940 | 0.946 | 0.951 | 0.956 | 0.961 |
| 53 | 0.928 | 0.934 | 0.940 | 0.945 | 0.951 | 0.956 |
| 54 | 0.921 | 0.927 | 0.933 | 0.939 | 0.945 | 0.951 |
| 55 | 0.913 | 0.920 | 0.926 | 0.933 | 0.939 | 0.945 |
| 56 | 0.905 | 0.912 | 0.919 | 0.925 | 0.932 | 0.939 |
| 57 | 0.896 | 0.903 | 0.910 | 0.918 | 0.925 | 0.932 |
| 58 | 0.886 | 0.894 | 0.902 | 0.909 | 0.917 | 0.925 |
| 59 | 0.875 | 0.884 | 0.892 | 0.900 | 0.908 | 0.916 |
| 60 | 0.864 | 0.873 | 0.882 | 0.890 | 0.899 | 0.907 |
| 61 | 0.852 | 0.861 | 0.870 | 0.880 | 0.889 | 0.898 |
| 62 | 0.839 | 0.848 | 0.858 | 0.868 | 0.877 | 0.887 |
| 63 | 0.825 | 0.835 | 0.845 | 0.855 | 0.865 | 0.875 |
| 64 | 0.810 | 0.820 | 0.831 | 0.842 | 0.852 | 0.863 |
| 65 | 0.794 | 0.805 | 0.816 | 0.827 | 0.838 | 0.849 |

A-14

CS-00935

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

NFL_ALFORD-0011953