## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

## BALTIMORE DIVISION

|  |  |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | No. 1:23-cv-00358-JRR |
| vs. | |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE DEADLINES FOR THEIR SUMMARY JUDGMENT OPPOSITION AND CLASS CERTIFICATION REPLY PAPERS AND FOR THEIR RULE 26(a)(2) EXPERT DISCLOSURES, APPOINTMENT OR DESIGNATION OF A MAGISTRATE JUDGE OR SPECIAL MASTER TO OVERSEE DISCOVERY, AND CONVENING OF AN IN-PERSON STATUS CONFERENCE

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND AND ARGUMENT ............................................................... 2

    A.   Defendants' Multiple Filings and Evidence Offered in Support
        Thereof..............................................................................................................2

    B.   There Is No Genuine Reason for Defendants' Summary Judgment
        Motions to Move Forward Now ......................................................................4

    C.   Plaintiffs Require Discovery Before They Can File Their Class
        Certification Reply Papers and Their Responses to Defendants'
        Summary Judgment Motions ...........................................................................9

    D.   The Need to Depose Defendants' Expert and Take Further
        Discovery Also Precludes Plaintiffs' Ability to Make Rule 26(a)(2)
        Expert Disclosures by the Current Deadline..................................................12

    E.   Suggested Appointment or Designation of a Magistrate Judge or a
        Special Master to Oversee Discovery .............................................................12

    F.   Requested Convening of In-Person Status Conference .........................................14

III.  CONCLUSION................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balkin v. Unum Life Insurance Co.*,
  No. GLS 21-1623, 2022 WL 1136887 (D. Md. Apr. 18, 2022) ................................. 5

*Chughtai v. Metropolitan Life Insurance Co*,
  No. PWG-19-CV-848, 2019 WL 4199036 (D. Md. Sept. 5, 2019) ........................... 5

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
  No. 3:20-CV-1277-S, 2021 WL 4477720 (N.D. Tex. Sept. 30, 2021) ...................... 5

*Dewberry Engineers, Inc. v. Dewberry Group, Inc.*,
  No. 1:20-cv-00610, 2021 WL 11959057 (E.D. Va. Mar. 19, 2021) ........................... 7

*Faust v. Comcast Cable Communications Management, LLC*,
  No. WMN-10-2336, 2014 WL 3534008 (D. Md. July 15, 2014) ........................... 10

*Goodman v. Diggs*,
  986 F.3d 493 (4th Cir. 2021) .................................................................................. 7

*In re Marriott International Inc., Customer Data Security Breach Litigation*,
  No. 19-md-2879, 2023 WL 4351333 (D. Md. July 5, 2023) ..................................... 7

*In re Polyester Staple Antitrust Litigation*,
  MDL No. 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2007) ................... 10

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Products
  Liability Litigation*,
  No. 1:17-md-2775, 2023 WL 4564628 (D. Md. July 13, 2023) ............................... 7

*Kane v. UPS Pension Plan Board of Trustees*,
  No. RDB-11-03719, 2012 WL 5869307 (D. Md. Nov. 19, 2012) ............................. 5

*Osprey Consulting I, Inc. v. Westport Insuraance Corp.*,
  No. SAG-19-03092, 2020 WL 5106715 (D. Md. Aug. 31, 2020) ........................... 11

*Shaw v. Foreman*,
  59 F.4th 121 (4th Cir. 2023) .................................................................................... 7

*U.S. EEOC v. Worthington, More & Jacobs, Inc.*,
  No. L-04-3127, 2005 WL 1200533 (D. Md. May 18, 2005) ..................................... 9

*Zahariev v. B&C Savannah Wildlife Enterprises, Inc.*,
  No. 23-1927, 2024 WL 3372909 (4th Cir. July 11, 2024) ....................................... 7

**Statutes**

29 U.S.C. § 1109(a) ................................................................................................................. 8

29 U.S.C. § 1132(a)(2) ............................................................................................................. 8

**Rules**

Fed. R. Civ. P. 16(b)(4) ........................................................................................................... 1

Fed. R. Civ. P. 26(f) ............................................................................................................... 13

Fed. R. Civ. P. 37(a) ................................................................................................................ 8

Fed. R. Civ. P. 56(d) ........................................................................................................... 7, 9

Fed. R. Evid. 702 ..................................................................................................................... 9

D. Md. Civ. R. 104.7 ............................................................................................................... 6

D. Md. Civ. R. 104.8 ........................................................................................................... 1, 6

D. Md. Civ. R. 105.9 ............................................................................................................... 1

## I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure ("Rule") 16(b)(4) and Local Rule ("LR") 105.9 of this Court, for an extension *sine die* of the deadlines for their class certification reply papers, their oppositions to Defendants' three separate summary judgment motions, and their Rule 26(a)(2) expert disclosures; appointment or designation of a Magistrate Judge or a Special Master to oversee completion of discovery in the time set by the Court; and the convening of an in-person status conference to address all of these matters, which are interrelated.[1]

Good cause exists for modifying existing deadlines.  As discussed below, there is no legitimate reason for Defendants' three summary judgment motions to proceed now, months before the close of discovery and the deadline for dispositive pretrial motions, where Plaintiffs need to take discovery, including depositions of the individuals who submitted declarations in support of Defendants' motions.  Similarly, Plaintiffs need to conduct discovery—including a deposition of the putative expert statistician whose declaration Defendants largely rely upon in both opposing class certification and affirmatively seeking summary judgment against two plaintiffs—before they can file their reply in support of their class certification motion. The deferral of further briefing on the summary judgment and class certification motions is further warranted due to the pending resolution of Plaintiffs' putative motion to compel core discovery, the briefing of which is concluding as of the date of this motion's filing, and absent resolution (which seems very unlikely) the motion to compel soon thereafter will be ripe under LR 104.8 for adjudication.

---

[1] Plaintiffs adopt the definitions and shorthand terms in the Amended Class Action Complaint (ECF No. 56) ("Amended Complaint").  Except where otherwise indicated, internal citations, internal quotation marks, and footnotes are omitted from all quotations and emphasis is added.

## II.    BACKGROUND AND ARGUMENT

### A.    Defendants' Multiple Filings and Evidence Offered in Support Thereof

Defendants filed their opposition papers to Plaintiffs' motion for class certification shortly before midnight on November 18, 2024.  ECF No. 111.  Pursuant to the Court's Order entered on October 22, 2024 (ECF No. 108), Plaintiffs must file their reply papers in support of their class certification motion no later than January 16, 2025.

Central to Defendants' opposition to Plaintiffs' class certification is an attack on the detailed allegations in paragraphs 117-46 of the Amended Complaint concerning the correlation between income earned by Plan-hired physicians from the Plan and the percentage of opinions that they have rendered adverse to benefits applicants.  *E.g.*, ECF No. 111 at 14-15, 27.  Defendants have proffered the opinion of a putative expert, David B. Lasater, Ph.D. (ECF No. 111-2)—to whom Defendants supplied data covering the period January 1, 2018 to July 31, 2024[2]— in support of their argument that Plaintiffs' statistics are unsound.[3]

Relying on that declaration, Defendants maintain in their class certification opposition memorandum that Plan data "is inconsistent with—and in most instances directly contrary to—

---

[2]  That Defendants chose to put forward statistics covering a 78-month period from January 1, 2018 to July 31, 2024 is ironic given that, in responding to Plaintiffs' discovery requests, Defendants declared that, based on the Court's statute of limitations ruling, they "[we]re limiting their responses to … to the reasonable time-frame of August 9, 2019, to February 9, 2023[.]"  Decl. of Benjamin R. Barnett, dated Dec. 20, 2024, ¶ 3.  Thus, when it suited their purposes, Defendants introduced statistics covering a period some two and one-half years broader in scope than their unilaterally imposed "reasonable time-frame."

[3]  *See*, *e.g.*, ECF No. 111-2 at 5 (Lasater Decl. ¶ 9) ("It is my expert opinion that the broader statistical assertions that Plaintiffs draw from the limited data sets that they identify in the Amended Complaint are not statistically valid and do not substantiate Plaintiffs' claims regarding the Neutral Physicians."); *see generally id.* at 6-25 (Lasater Decl. ¶¶ 10-64).  In rendering his opinions, Defendants' putative expert relied on Defendants' so-called V3 database (*see infra* at 4), which does not contain the benefits decisions of individual named plaintiffs.

what Plaintiffs allege." ECF No. 111 at 27.[4] Defendants further argue that Plaintiffs lack "common proof" necessary for class-wide adjudication, a point addressed below in Section C.

Meanwhile, in the early morning hours of November 19, 2024, Defendants also moved for summary judgment as to Plaintiff Daniel Loper's claims. ECF No. 115. Concurrently, they filed a motion for leave to file additional summary judgment motions as to the claims of Plaintiffs Jamize Olawale and Charles Sims (ECF No. 116) ("Motion for Leave" or "Mot. for Leave").

Although Defendants acknowledged that Plaintiffs had not consented to the filing of additional summary judgment motions (ECF No. 116 at 4 (Mot. for Leave ¶ 8)), two days later, on November 21, 2024, the Court entered an Order granting Defendants' Motion for Leave without awaiting a response from Plaintiffs. ECF No. 121.[5] That same day, the Court issued a separate Order, setting January 16, 2025 as the due date for Plaintiffs' opposition to the three summary judgment motions (ECF No. 122), which is the same date on which Plaintiffs' class certification reply papers are currently due.

Besides the declaration of their putative expert statistician, Defendants oppose class certification by relying on several declarations, including from Board member Robert Smith, that were filed in support of their summary judgment motions. Defendants cite those declarations to argue what "the record" establishes concerning the integrity of their benefits claims and appeals process. *E.g.*, ECF No. 111 at 29 (citing Declarations of Plan's Disability Relations Manager

---

[4] *Accord id.* ("The record evidence and *actual* statistical analysis that Defendants have supplied in conjunction with their opposition to the motion demonstrate that Plaintiffs could not possibly demonstrate a 'systemic pattern' of Neutral Physician bias that has pervasively slanted the Plan's entire claim adjudication system against awarding disability benefits.") (emphasis in original).

[5] Defendants' motions for summary judgment as to Plaintiffs Olawale and Sims were subsequently docketed on November 21, 2024. ECF Nos. 123, 125.

Hessam ("Sam") Vincent, Board member Smith, NFL Management Council-appointed advisor Patrick Reynolds, and NFL Players Association-appointed advisor Adora Williams).

Conversely, Defendants rely on the declaration of their putative expert statistician not only to oppose class certification but also to support two of their three affirmative bids for summary judgment.[6] Defendants rely on that declaration and that of the Plan's Director, Michael B. Miller, to paint a rosy picture of how generous the Plan has been, asserting that it "has awarded benefits in approximately 51.2% of T&P applications, 50.8% of LOD applications, and 23.9% of NC applications between January 1, 2018 and July 31, 2024," and they cite statistics concerning how much the Plan paid out in benefits from 2017 to 2022, as well as the average annual benefit payment during that time. ECF Nos. 115-2 at 9 (citing Lasater Decl. ¶ 42 & Table 4; Miller Decl. ¶¶ 5-6) & 123-1 at 8 (same). They also cite those statistics in opposing Plaintiffs' class certification motion. ECF No. 111 at 10.

In turn, Defendants' putative class certification expert relies on Mr. Vincent's declaration —which Defendants submitted in support of two of their summary judgment motions—to explain what data is maintained by the NFL Player Benefits Office and what data files he was furnished. ECF No. 111-2 at 6-7, 49-63 (Lassater Decl. ¶¶ 11-15 & App. 3); *see also* ECF Nos. 115-4 at 13 (Vincent Decl. ¶ 42, describing V3 database as Defendants' "system of record for processing and tracking applications and appeals"), 123-3 at 14 (Vincent Decl. ¶ 43) (same).

**B.    There Is No Genuine Reason for Defendants' Summary Judgment Motions to Move Forward Now**

In their Motion for Leave, Defendants maintained that consideration of the additional

---

[6] *See* ECF Nos. 115-2 at 9 (mem. in supp. of Loper summ. j. mot., citing Lasater Decl. ¶¶ 7-10) ("[E]xpert analysis of six years of Neutral Physician assignments and compensation disproves Plaintiffs' theories about any supposed financial incentive to deny claims.") (emphasis in original), 123-1 at 8 (mem. in supp. of Olawale summ. j. mot) (same).

summary judgment motions would give the Court "the clearest possible basis to assess whether any *additional discovery* is necessary to resolve any of Plaintiffs' claims in light *of the discovery already produced*[.]"  ECF No. 116 at 3 (Mot. for Leave ¶ 6).  That assertion was misleading, suggesting that Defendants have provided robust discovery when, in fact, what they have been willing to produce has been minimal at best.

In reality, Defendants have objected to most of Plaintiffs' discovery requests, contending that Plaintiffs are entitled to little beyond what is in Plaintiffs' administrative records—and absolutely nothing concerning other benefits applicants' claims—on the ground that no class has been certified.  They have stuck to this position, despite the fact that courts, including in this District, have permitted discovery outside the administrative record in ERISA breach of fiduciary duty and wrongful denial of benefits cases, even where no class has been certified.[7]  Perhaps more notably, they have continued to refuse to produce a subset of Plan-physician decision letters for other claimants during a limited period of time, while simultaneously injecting into the record a purported expert's interpretation of application outcomes for thousands of absent members of the proposed class over a much broader period of time.

After multiple unsuccessful meet-and-confer discussions with Defendants, Plaintiffs were left with no recourse but to serve Defendants with a motion to compel discovery, which they did

---

[7]  *E.g.*, *Balkin v. Unum Life Ins. Co.*, No. GLS 21-1623, 2022 WL 1136887, at *1 (D. Md. Apr. 18, 2022) (granting discovery outside administrative record, including on plan physician denial rates involving other claimants, compensation, and expertise); *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 3:20-CV-1277-S, 2021 WL 4477720, at *6 (N.D. Tex. Sept. 30, 2021) (mandating, in individual action, that Plan provide decision letters relating to other claimants); *Chughtai v. Metro. Life Ins. Co.*, No. PWG-19-CV-848, 2019 WL 4199036, at *3 (D. Md. Sept. 5, 2019) ("approv[ing] Plaintiff's request for extra-record discovery" as to physicians' recommendations for other claimants); *Kane v. UPS Pension Plan Bd. of Trs.*, No. RDB-11-03719, 2012 WL 5869307, at *5 (D. Md. Nov. 19, 2012) (granting extra-record discovery requests relevant to defendants' history of biased claims administration, including evidence relevant to claim process, referral process, and prior dealings).

on November 26, 2024.  Barnett Decl. ¶ 5.  Specifically, Plaintiffs moved to compel Defendants

to produce decision letters and physician report forms relating to all disability benefits claimants

for a modest period spanning from April 1, 2018 (the beginning of the Plan Year in which Plaintiff

Michael McKenzie filed the earlier of his two applications that are timely before the Court in

accordance with its statute of limitations ruling, *see* Amended Complaint ¶ 176) and February 9,

2023 (the date on which Plaintiffs commenced this action (ECF No. 1)).[8]

Defendants served their papers in opposition to the motion to compel at 11:59 p.m. on

December 10, 2024.  Barnett Decl.  ¶ 6.  Their opposition papers make it clear that Defendants

steadfastly refuse to provide the discovery that Plaintiffs seek.  Defendants' refusal rests in large

part on their cart-before-the horse contention that Plaintiffs assert no meritorious claims, an

argument that Defendants base on their putative expert's declaration and on the untested, self-

serving declarations of Board member Smith; their employees, Messrs. Vincent and Miller; and

their advisors as to the relevant facts concerning the Plan's claims and appeals process.  *Id.*

Pursuant to LR 104.8, Plaintiffs had to serve their reply in support of their motion to compel

by December 24, 2024.  They, in fact, served their reply papers shortly before the filing of tis

motion.  *Id.* ¶ 6 n.2.  Plaintiffs' reply having been served, the parties must again meet and confer

before Plaintiffs can file the required certificate of conference under LR 104.7 to formally present

their fully briefed motion to compel for the Court's resolution of the parties' discovery dispute.

In their Motion for Leave, Defendants also contended—rather remarkably—that allowing

them to file additional summary judgment motions "will strongly promote judicial economy and

efficiency."  ECF No. 116 at 3 (Mot. for Leave ¶ 6).  To the contrary, serial, piecemeal summary

---

[8] *Id.* ¶¶ 4-5 & n.1; *see also* ECF No. 78 at 13-14, *as modified b*y ECF No. 85 at 3-4 (Court's
statute of limitations ruling with respect to Plaintiffs' wrongful denial benefits claims under ERISA
§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)).

judgment motions with respect to the Amended Complaint will only frustrate principles of judicial efficiency and economy.[9]  At this juncture—months before the May 8, 2025 close of discovery and the June 5, 2025 dispositive pretrial motions deadline (ECF No. 120)—and amid ongoing fact discovery disputes, Defendants' motions are, at best, premature and, at worst, designed to further their resist-all-discovery strategy.

Both the Fourth Circuit and this District have specifically cautioned that "premature summary judgment is particularly disfavored" when evidence necessary to combat a summary judgment motion is within the defendant's subjective knowledge or exclusive control.  *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023).[10]  That is the case here, where Plaintiffs have sought necessary and appropriate discovery to no avail and shortly will almost certainly need to present a fully briefed motion to compel discovery for the Court's resolution.

Simply put, there is no persuasive, let alone compelling, reason for Defendants' summary judgment motions to proceed at this time, when the Court needs to first resolve a crucial dispute as to the scope of the discovery to which Plaintiffs are entitled.  The animating purpose behind

---

[9]  *See In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2023 WL 4351333, at *4 (D. Md. July 5, 2023) ("While one of the purposes of summary judgment is to promote efficiency and judicial economy, piecemeal motions practice … has the opposite effect."); *see also  Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc.*, No. 1:20-cv-00610, 2021 WL 11959057, at *1 (E.D. Va. Mar. 19, 2021) ("[T]he streamlining effect of an additional, early motion for summary judgment is a minimal benefit.").

[10]  *Accord In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2023 WL 4564628, at *6 (D. Md. July 13, 2023) (citing *Shaw*); *see also Shaw*, 59 F.4th at 128 (even in the absence of a Rule 56(d) affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has fair notice of ... potential dispute[s] as to the sufficiency of the summary judgment record") (alterations in original); *Zahariev v. B&C Savannah Wildlife Enters., Inc.*, No. 23-1927, 2024 WL 3372909, at *1 (4th Cir. July 11, 2024) (unpublished) (same; quoting *Shaw*).  As the Fourth Circuit has explained, "summary judgment should only be granted after adequate time for discovery, and [it] should be denied when outstanding discovery requests on material issues exist.  This is because [s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."  *Goodman v. Diggs*, 986 F.3d 493, 500 (4th Cir. 2021) (alteration in original).

these summary judgment motions is Defendants' evident desire to short-circuit discovery and resolve Plaintiffs' claims based on Defendants' unilateral rendition of the facts relating to, among other things, the integrity of Defendants' claims and appeals process and whether Plaintiffs received full and fair review of their benefits claims. Defendants' papers in opposition to Plaintiffs' Rule 37(a) motion to compel—in which they maintain, in essence, that Plaintiffs are not entitled to the discovery they seek because, in Defendants' view, Plaintiffs assert no meritorious claim—make this abundantly clear. *See* Barnett Decl. ¶ 6. Defendants are acting as if they had largely prevailed on the motion to dismiss the Amended Complaint when the indisputable fact is that the Court sustained most of Plaintiffs' claims.

In their Motion for Leave, Defendants further asserted that permitting multiple summary judgment motions to proceed now "will not prejudice any party or cause undue waste or delay." ECF No. 116 at 4 (Mot. for Leave ¶ 9). It could not be further from the truth that there would be no prejudice, waste, or delay at this relatively early stage of the case, where (i) discovery is not scheduled to conclude until May 8, 2025 (ECF No. 120); (ii) Plaintiffs have obtained minimal discovery beyond their administrative records to date; and (iii) there is a need to resolve class certification. Far from causing Plaintiffs no prejudice, allowing three summary judgment motions to be briefed at this time will cause Plaintiffs incalculable prejudice.

What is more, even were the Court to grant all three of Defendants' summary judgment motions, at least six other plaintiffs' individual claims would remain, as would all seven remaining plaintiffs' breach of fiduciary duties claim, which is asserted on behalf of the Plan itself pursuant to ERISA §§ 409(a) and 502(a)(2), 8 U.S.C. §§ 1109(a) and 1132(a)(2). Because resolution of Defendants' three summary judgment motions "would not end the case[,] [t]here is no reason to

decide this case in a piecemeal fashion." *U.S. EEOC v. Worthington, More & Jacobs, Inc.*, No. L-04-3127, 2005 WL 1200533, at *1 (D. Md. May 18, 2005).

## C.      Plaintiffs Require Discovery Before They Can File Their Class Certification Reply Papers and Their Responses to Defendants' Summary Judgment Motions

Irrespective, however, of whether the Court permits briefing on Defendants' three summary judgment motions to proceed at this juncture, Plaintiffs must conduct discovery before they can prepare their class certification reply papers and their summary judgment opposition papers. *First*, Plaintiffs need to depose all of Defendants' declarants—in particular Defendants' putative expert, but also their employee declarants, Messrs. Vincent and Miller; Board member Smith; and the two non-employee "party advisors" (*see*, *e.g.*, ECF Nos. 115-20, 115-21)[11]—and will need to obtain a rebuttal declaration from their own statistics expert. To prepare his rebuttal, Plaintiffs' expert will need to review the deposition transcript of Defendants' expert.[12] Moreover, based on the outcome of that deposition and further consultations with their own expert, Plaintiffs may need to seek exclusion of Defendants' expert's opinion under Federal Rule of Evidence 702.

*Second*, Plaintiffs will need broader discovery concerning the Plan's claims and appeals process—well beyond the extremely limited discovery that Defendants have been willing to provide to date. Besides the declaration of their putative expert statistician, Defendants oppose class certification by relying on several declarations, including from Board member Smith, that were filed in support of their summary judgment motions. *See* Section A, *supra*. Defendants cite those declarations to argue that Plaintiffs cannot adduce class-wide proof respecting their

---

[11] Plaintiffs served notices to depose Defendants' putative expert Dr. Lasater, Board member Smith, and Plan Disability Relations Manager Vincent on December 12, 2024. Barnett Decl. ¶ 11.

[12] If the Court declines to defer consideration of Defendants' summary judgment motions, Plaintiffs will, by the current January 16, 2025 deadline, file formal declarations pursuant to Rule 56(d) concerning the discovery that they require in order to properly respond to the motions.

challenge to the integrity of their benefits claims and appeals process, including the Board's consideration of appeals. *Id.*; *see* ECF No. 111 at 29 (citing Vincent, Smith, Reynolds, and Williams declarations).

Indeed, throughout their class certification opposition memorandum, Defendants fault Plaintiffs for failing to adduce "common proof" of their claims.[13] As a threshold matter, Plaintiffs have not moved for certification pursuant to Rule 23(b)(3), which requires a showing that questions be capable of common or generalized proof.[14] At any rate, putting aside Defendants' flawed assumption that Plaintiffs have to muster proof (let alone "common proof") of their claims at the Rule 23 stage—which they do not, *see* ECF No. 102-1 at 18 & n.5 (class certification proceedings are not to be turned into a dress rehearsal for trial on the merits) (citing cases)—the barricade

---

[13] *E.g.*, ECF No. 111 at 27 ("Plaintiffs do not point to any common proof that could be used to demonstrate a pervasive pattern of Neutral Physician bias[.]"), 29 ("Plaintiffs do not point to any common proof that would allow the Court to determine that all putative class members' benefit claims were impacted—and impacted in the same way—by a failure to review records or submitted information."), 30 ("Plaintiffs do not identify any common proof demonstrating that improper deference occurred in adjudicating the claims of all class members."), 33 ("[T]here is no common proof indicating that the Neutral Physicians' evaluations were not, in fact, 'neutral' across all (or even any) of the thousands of adjudicated benefit claims at issue, let alone that class members relied on Defendants' representations that they were."), 35 ("[T]here is no common proof that could be used to demonstrate a class-wide, Plan-wide fiduciary breach."), 37 ("There is no common proof of any 'systemic pattern' of pervasive Neutral Physician bias, nor common proof that the Board relied on those biased decisions when making their benefits determinations.").

[14] *E.g.*, *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2014 WL 3534008, at *11 (D. Md. July 15, 2014) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."); *In re Polyester Staple Antitrust Litig.*, No. MDL 3:03CV1516, 2007 WL 2111380, at *12 (W.D.N.C. July 19, 2007) ("Under Rule 23(b)(3), the Court contemplates whether a class action trial will present common proof that predominates over any individualized proof[.]").

behind which Defendants hide is a "record"[15] that they have constructed unilaterally in that they have proffered a slew of declarations while having produced virtually nothing to Plaintiffs beyond the administrative records relating to Plaintiffs' individual benefits applications.  Defendants' contentions about an alleged failure of common proof are thus astonishing—indeed, brazen—given Defendants' resistance to *any* Plan-wide discovery sought by Plaintiffs.  Defendants cannot have it both ways—touting a self-created "record" and faulting Plaintiffs for failing to adduce common proof (*supra* at 10-11 & nn.13, 15) while, at the same time, stubbornly refusing to provide relevant discovery.[16]

In short, Plaintiffs require critical discovery to respond to Defendants' arguments in opposition to class certification and to their arguments in support of their bids for summary judgment.  As such, good cause exists for extending current briefing deadlines *sine die*.  *See, e.g.*, *Osprey Consulting I, Inc. v. Westport Ins. Corp.*, No. SAG-19-03092, 2020 WL 5106715, at *2 (D. Md. Aug. 31, 2020) (to establish good cause, party seeking to amend scheduling order must show that deadlines cannot reasonably be met despite its diligence) (citing authorities).

---

[15] *E.g.*, ECF No 111 at 10 ("The record refutes any notion that Plaintiffs could present common proof of a 'sham claim process' that resulted in the improper adjudication of the putative class members' benefit claims."), 11 ("[T]he record shows that the Plan's official policies in fact require Neutral Physicians to offer their best professional judgment, prohibit bias, and pay flat fees that do not vary based on examination outcomes."), 24 ("The record shows the Plan's processes are ERISA-compliant and designed to promote neutrality."), 27 ("the record evidence makes it clear" that no pattern of physician bias "can be shown"), 29 ("[T]he record shows that working in tandem, the Board and its advisors comprehensively review case files before the Board decides appeals, with the specific records that Board members personally review varying from claim to claim.").

[16] Indeed, Defendants have gone to disingenuous lengths to resist discovery.  They refuse to produce decision letters and physician reports relating to other claimants' applications for the January 1, 2018-February 9, 2023 period on the grounds that Plaintiffs' request is disproportionate to the needs of the case given that Plaintiffs argue that their claims are typical of the claims of the class.  In their class certification opposition memorandum, however, Defendants contend that Plaintiffs' claims are *not* typical of those of absent class members.  Barnett Decl. ¶ 6; ECF No. 111 at 36-38.

**D.    The Need to Depose Defendants' Expert and Take Further Discovery Also Precludes Plaintiffs' Ability to Make Rule 26(a)(2) Expert Disclosures by the Current Deadline**

In order to allow sufficient time for the motion to compel discovery process to resolve; depending on the Court's ruling on Plaintiffs' motion to compel, the taking of further discovery; the deposition of Defendants' putative statistical expert; and following all of that, sufficient time for the preparation of expert disclosures, Plaintiffs also relatedly request that the Court postpone *sine die* the current January 20, 2025 deadline (ECF No. 120) for their Rule 26(a)(2) expert disclosures.

**E.    Suggested Appointment or Designation of Magistrate Judge or a Special Master to Oversee Discovery**

Within the numeric limits set by this Court's Local Rules, Plaintiffs served targeted Requests for Production and Interrogatories aimed at obtaining evidence for its claims which survived Defendants' motion to dismiss and on which Plaintiffs bear the burden of proof.  As discussed in Section A above, Defendants' attitude and approach towards discovery has been to refuse to produce documents or interrogatory responses beyond those implicated by Plaintiffs' individual benefit claims decisions (*see* Barnett Decl. ¶¶ 3-4), despite such discovery having been authorized by courts, including in this District, in non-class action ERISA cases.  What is more, Defendants' papers in opposition to Plaintiffs' motion to compel demonstrate that their steadfast refusal also rests in large part on their contention that Plaintiffs assert no meritorious claims, an argument that Defendants base on their putative expert's declaration and on the untested, self-serving declarations of their employees, Board member Smith, and their advisors as to the relevant facts concerning the Plan's claims and appeals process.   Barnett Decl. ¶ 6.

Although Plaintiffs' initial motion to compel is not currently ripe for adjudication, Plaintiffs anticipate that they may be required to file multiple motions to compel Defendants to

provide relevant information. More troubling, Defendants have failed to forthrightly disclose sources of potentially relevant ESI consistent with Rule 26(f). In July and August of this year, pursuant to Rule 26(f), counsel for Plaintiffs sought to engage with defense counsel on potential sources of relevant ESI in order to draft and serve targeted discovery. Barnett Decl. ¶ 8. Counsel for Defendants did not fully engage in this process.

Although there was a passing reference to the V3 system in one Rule 26(f) discussion, Defendants did not identify it as their "system of record for processing and tracking applications and appeals," as they now do in their class certification and summary judgment papers. *Id.* ¶ 8; ECF Nos. 111-2 at 6 (Lasater Decl. ¶ 11), 115-4 at 13 (Vincent Decl. ¶ 42), 123-3 at 14 (Vincent Decl. ¶ 43). Information concerning the centrality of the V3 database was provided only when Defendants opposed class certification and affirmatively moved for summary judgment against Plaintiffs Loper and Olawale. Barnett Decl. ¶¶ 8-9. Nor did counsel for Defendants at any time reveal that Defendants had contracted in 2013 with Dr. William Garmoe—the Plan's MAP, whom the Amended Complaint identifies as one of the highest-paid Plan-hired physicians, and one predisposed to rejecting disability benefits claims and improperly downplaying conditions stemming from traumatic brain injuries (¶¶ 122, 125-26, 130-31, 133, 135, 157-59)—to create a database derived from neuropsychological and neurological test data for claimants examined by Plan-hired physicians. Barnett Decl. ¶ 10 & n.3.[17]

---

[17] On December 12, 2024, Plaintiffs served a Second Set of Requests to Defendants for Production of Documents ("Second Set of Requests"), targeting any "database containing data related to Claimants' LOD, NC, and T & P benefit applications, evaluations, decisions, appeals, and/or data related to, Neutral Physicians, including but not limited to the V3 database and the database established under the Plan's contract with Dr. Garmoe. Barnett Decl. ¶ 10. Defendants responded to the Second Set of Requests on December 18, 2024, asserting a slew of objections. *Id.* Given Defendants' response (over which the parties will need to meet and confer), it is distinctly possible, if not probable, that Plaintiffs will need to bring another motion to compel discovery.

When the parties jointly moved (three times) to revise the deadlines for expert disclosures (ECF Nos. 98, 105, 119) the Court graciously extended the period for fact discovery (ECF Nos. 99, 106, 120).  Plaintiffs want to fully use that expanded time to conduct and complete fact discovery to prepare dispositive motions or for a bench trial.  Based on their experience to date, however, Plaintiffs have no confidence that those objectives will be achieved absent a different approach towards fact discovery in this case.  Therefore, Plaintiffs request that the Court appoint or designate a Magistrate Judge or a Special Master to assist the parties with efficiently resolving discovery disputes in the time set for discovery by the Court.

**F.    Requested Convening of In-Person Status Conference**

Given the current January 16, 2025 deadline for Plaintiffs' filing of papers relating to four separate motions, the discovery Plaintiffs must obtain before filing those responses, their current inability to date to obtain necessary discovery, and the consequent need to facilitate the earliest possible resolution of these matters, Plaintiffs respectfully request that the Court convene an in-person conference as soon as possible, and sufficiently before January 16, 2025, to address these sundry interrelated matters and expedite their resolution.

### III.    CONCLUSION

For the foregoing reasons, the Court should suspend *sine die* the due dates for Plaintiffs' papers in opposition to Defendants' three summary judgment motions (ECF Nos. 115, 123, 125), Plaintiffs' reply papers in support of their class certification motion (ECF No. 102), and Plaintiffs' Rule 26(a)(2) expert disclosures (ECF No. 120); and appoint or designate a Magistrate Judge or a Special Master to oversee discovery.  In connection with the foregoing requested relief, the Court should convene an in-person status conference sufficiently in advance of the current January 16, 2025 briefing and January 20, 2025 Rule 26(a)(2) expert disclosure deadlines.

Dated:  December 20, 2024

Respectfully submitted,

**SEEGER WEISS LLP**

By:    */s/ Benjamin R. Barnett*
    Benjamin R. Barnett
    **SEEGER WEISS LLP**
    325 Chestnut Street, Suite 917
    Philadelphia, PA 19106
    Telephone: (215) 553-7980
    bbarnett@seegerweiss.com

    ***Counsel for Plaintiffs and for the***
    ***Proposed Class and Subclasses***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel***
***for the Proposed Class and Subclasses***

15

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone:  (215) 553-7980
bbarnett@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone:  (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
D. Nicole Guntner *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone:  (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
NGuntner@awkolaw.com
BBradford@awkolaw.com

***Counsel for Plaintiffs and for the***
***Proposed Class and Subclasses***

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone:  (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***