**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-00358-JRR |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, | |
| Defendants. | |

**DEFENDANTS' JOINT OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ......................................................................................... I

**TABLE OF AUTHORITIES** ............................................................................... I

**INTRODUCTION** ................................................................................................. 1

**BACKGROUND** .................................................................................................... 4

**LEGAL STANDARD** ........................................................................................... 7

**ARGUMENT** ........................................................................................................ 10

    I.      THE ADDITIONAL DISCOVERY DEMANDED IS NEITHER NECESSARY NOR PROPORTIONATE. .......................................... 11

        A.     The Administrative Records, Plan-Wide Claims Data, and Documents Showing the Plan's Neutrality Safeguards That Defendants Have Already Produced Are More Than Sufficient to Decide Plaintiffs' Claims. ....................................................... 11

        B.     Plaintiffs Cannot Rely on Unsupported and Refuted Allegations in the Complaint as Justification for Their Extra-Record Discovery Requests. .............................................................................................. 14

        C.     Plaintiffs' Requests Are Particularly Unnecessary and Disproportionate Because Their Lawsuit Is Based on the Premise That Their Own Claim Experience Is "Typical" of All Other Claimants. ........................................................................................ 16

        D.     The Motion Must Be Denied Because Plaintiffs Fail to Show the Requested Discovery Is Essential to Oppose the Pending Summary Judgment Motions. ............................................................................. 18

        E.     The Cases Plaintiffs Cite in Their Motion Support Denying Their Discovery Request for Other Claimants' Records. ................................ 18

**CONCLUSION** .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abromitis v. Cont'l Cas. Co./CNA Ins. Cos.*, 114 F. App'x 57 (4th Cir. 2004) .............................. 12

*Agelli v. Sebelius*, 2014 WL 347630 (D. Md. Jan. 30, 2014) .................................................... 13, 18

*Balkin v. Unum Life Ins. Co.*, 2022 WL 4316270 (D. Md. Sept. 19, 2022) ............................. 13, 19

*Betof v. Suburban Hosp., Inc.*, 2012 WL 2564781 (D. Md. June 29, 2012) ............................ 10, 18

*Blanch v. Chubb & Son, Inc.*, 2014 WL 6473741 (D. Md. Nov. 18, 2014) .................................. 8

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000) ...... 9

*Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 796 F. Supp. 2d 682 (D. Md. 2011) ......... 20

*Boyd v. Sysco Corp.*, 2014 WL 12814548 (D.S.C. July 3, 2014) ............................................. 9, 12

*Campbell v. Perkins*, 2023 WL 6161086 (D. Md. Sept. 21, 2023) ......................................... 10, 18

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 2019 WL 4879015 (D. Md. Oct. 3, 2019) ................................................................................................... 13, 19

*Chughtai v. Metro. Life Ins. Co.*, 2019 WL 4199036 (D. Md. Sept. 5, 2019) .............................. 13

*Clark v. Unum Life Ins. Co.*, 799 F. Supp. 2d 527 (D. Md. 2011) .............................................. 19

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 95 F.4th 964 (5th Cir. 2024) ................. 17

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 2021 WL 4477720 (N.D. Tex. Sept. 30, 2021) ........................................................................................... 17, 18

*Colvin v. 88 Bd., Joint Bd. of Trustees for 88 Plan*, 2018 WL 1756738 (W.D. Tex. Apr. 11, 2018) .................................................................................................................. 16

*Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ............................................................... 3, 8, 12

*Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 903 (9th Cir. 2016) ........................................... 20

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807 (N.D. Cal. 2020) ... 19

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968) .............................................. 10

*Gardner v. United States*, 184 F. Supp. 3d 175 (D. Md. 2016) .................................................... 13

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700 (D. Md. 2012) ........ 19

*Griffin v. Hartford Life & Accident Ins. Co.*, 2016 WL 8794470 (W.D. Va. Sept. 27, 2016) ... 9, 15

*Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013) ........................................................ passim

*Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384 (D. Conn. 2020) ................. 12

*Hulst v. Aetna Life Ins. Co.*, 2013 WL 5675513 (E.D. Ky. Oct. 17, 2013) .................................. 12

*Jani v. Bell*, 209 F. App'x 305 (4th Cir. 2006) ............................................................................ 20

*Kane v. UPS Pension Plan Bd. of Trs.*, 2012 WL 5869307 (D. Md. Nov. 19, 2012) ................... 19

*Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782 (E.D. Ky. 2014) ............................................. 13

*Mickell v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586 (11th Cir. 2020) ..... 16

*Mickell v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 2019 WL 656328 (S.D. Fla. Jan. 15, 2019) ............................................................................................................................... 16

*Miles v. Colvin*, 2015 WL 12867003 (N.D. Ga. Aug. 12, 2015) .................................................. 16

*Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111 (3d Cir. 2020) ......................... 9, 12

*United States v. Rudisill*, 43 F. Supp. 2d 1 (D.D.C. 1999) ......................................................... 16

*Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1 (D.D.C. 2022) ..................................... 9, 12

*Walsh v. Peters*, 2021 WL 8316262 (D. Md. Nov. 10, 2021) ...................................................... 8

*Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294 (4th Cir. 2017) ............................. 3, 8

*Williams v. Md. Dep't of Health*, 2024 WL 2746979, at *5 (4th Cir. May 29, 2024) ........ 3, 10, 18

*Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*, 2020 WL 5628020, at *6 (S.D. Tex. Aug. 17, 2020) .............................................................................................................. 19

*Zahariev v. Hartford Life & Accident Ins. Co.*, 2020 WL 12783951 (D.S.C. Aug. 11, 2020) .. 9, 12

*Zogenix, Inc. v. Fed. Ins. Co.*, 2021 WL 4026911 (N.D. Cal. Sept. 3, 2021) ............................. 12

**Other Authorities**

Local Rules, United States District Court for the District of Maryland, Appendix A, Guideline 1 (2023) ....................................................................................................................................... 8

**Rules**

Fed R. Civ. P. 26(b) ................................................................................................................ 10

Fed R. Civ. P. 56(d) ................................................................................................................ 11

## INTRODUCTION

Plaintiffs seek to compel Defendants the NFL Player Disability & Survivor Benefit Plan, the NFL Player Disability & Neurocognitive Benefit Plan (collectively, the "Disability Plan" or "Plan"), the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan," and with the Disability Plan, the "Plans"), and the Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan (the "Board") to produce every "benefit determination decision letter," every Physician Report Form ("PRF"), and every physician narrative for every claim that any claimant has filed with the Plan since April 1, 2018—more than six years' worth of claims. Memo. in Supp. of Pls.' Mot. to Compel Disc. ("Mot.") at 1, 3. No court has ever ordered such expansive discovery regarding a plan's Employee Retirement Income Security Act ("ERISA") claim determinations, and the request is wildly disproportionate to Plaintiffs' legitimate discovery needs in this case. For multiple reasons, the request should be denied.

*First*, Plaintiffs fail to inform the Court that Defendants have already produced *all* of the requested documents for the nine named Plaintiffs, totaling 68 decision letters, 101 PRFs, and 108 physician narratives.[1] Plaintiffs further bury at page 19 of their brief the fact that Defendants have already produced the Plan's data showing *all* claim determinations for *every* completed claim since the beginning of 2018, including the mix of Neutral Physicians who conducted the medical examinations for each claim. The data shows that the Plan has robust approval rates for all types of disability claims, and that the central premise of Plaintiffs' Amended Class Action Complaint ("AC" or "Complaint"), ECF No. 56, that the Plan skews medical examination assignments to Neutral Physicians who are associated with high rates of

---

[1] The Court dismissed Plaintiff Alex Parsons's denial of benefits claims as barred by the statute of limitations. *See* ECF No. 78 at 13-14. He is therefore no longer a party to this lawsuit. Defendants nevertheless furnished a copy of Mr. Parsons's administrative record to Plaintiffs as a courtesy upon their request.

claim denials, is false.  Defs.' Opp'n to Pls.' Mot. for Class Cert. ("Class Cert. Opp'n") at 2, 7, 19 & n.10, ECF No. 111.  There is no justification for Plaintiffs' burdensome demand that Defendants produce the individual records for the thousands of claims and appeals that underlie the claims data, and Plaintiffs do not cite any authority countenancing their sweeping Plan-wide request.

**Second**, the burden associated with Plaintiffs' demand for additional productions would be enormous.  The produced administrative records for the named Plaintiffs and Mr. Parsons total 11,694 pages, and their produced player files total 55,217 pages.  The additional requested documents pertaining to the thousands of applications and appeals filed by other claimants would all need to be individually collected, and collecting the decision letters alone would require the Plan's limited staff to review and cull them from millions of pages of administrative records.  No case supports imposing on the Plan that overwhelming burden.

**Third**, the premise of Plaintiffs' putative class action is that the claims records of the named Plaintiffs are typical of those of **all other claimants** encompassed by the claims data.  If that were true, the named Plaintiffs should be able to show typicality among the 68 decision letters, 101 PRFs, and 108 physician narratives Defendants have already produced—a showing that does not require the records of any other claimant.  But Plaintiffs did not even attempt to make that minimal showing when they filed their class certification motion, and Defendants' opposition papers demonstrate it is a burden they cannot meet.  Class Cert. Opp'n at 28-30. Plaintiffs' new contention that they should be permitted to go fishing among Plan-wide records to find examples of **inconsistent** treatment of other claimants, Mot. at 13-14, 20-22, is utterly irreconcilable with Plaintiffs' bid for class certification, and offers no justification for expansive discovery into the records underlying the claims data that Defendants have already produced.

**Fourth**, in addition to Plaintiffs' inability to show that their exorbitant discovery demand satisfies the relevance and proportionality requirements of Rule 26(b)(1), Plaintiffs' request for additional discovery is further constrained by the principle that court review of benefit claim denials under ERISA is presumptively limited to the administrative record, a limitation that avoids undue costs of plan administration. *See Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294, 300 (4th Cir. 2017); *see also Conkright v. Frommert*, 559 U.S. 506, 517 (2010). As explained further below, the cases that Plaintiffs cite in their Motion in fact show that the Motion should be denied, emphasizing that a plaintiff must make a "particularized" and "sufficient" showing to support even "limited" discovery outside the administrative record—which Plaintiffs have not made—and denying expansive requests like Plaintiffs' for Plan-wide discovery. Defendants' extra-record production of Plan-wide claims data, together with documentation showing the extensive measures the Plan has instituted to direct Neutral Physicians to exercise their best professional judgment when conducting medical examinations, more than satisfies any entitlement Plaintiffs might have to discovery outside their administrative records.

**Fifth**, on November 21, 2024, the Court granted Defendants permission to file multiple Rule 56 motions that between them cover **all** of the claims raised by each of Plaintiffs' proposed classes and subclasses. ECF Nos. 121, 122. Under Rule 56(d), where such motions are pending, "a court need not allow discovery when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Williams v. Md. Dep't of Health*, 2024 WL 2746979, at *5 (4th Cir. May 29, 2024) (quotations omitted). Plaintiffs have made no such showing, instead relying exclusively on unsupported speculation about the Plan's claim denial rates that is flatly contradicted by the claims data that Defendants have already produced.

For these reasons and those explained below, Plaintiffs' Motion should be denied.

<u>**BACKGROUND**</u>

The discovery already produced by Defendants demonstrates that additional discovery is unnecessary and inappropriate.  To date, Defendants have produced the following responsive documents and data:

- The complete administrative records for the disability claims filed by the named Plaintiffs, and the named Plaintiffs' complete player files.  The administrative records for the named Plaintiffs and Mr. Parsons total approximately 11,694 pages.  The player files for the named Plaintiffs and Mr. Parsons total approximately 55,217 pages.  These records include approximately 68 decision letters, 101 PRFs, and 108 physician narratives, which are the specific documents that are requested by Plaintiffs' Requests for Production ("RFPs") 2 and 3.  *See* Decl. of Meredith Garagiola in Supp. of Defs.' Joint Opp'n to Pls.' Mot. to Compel Disc. ("Garagiola Decl.")  ¶¶ 2, 4.

- Data files showing, *inter alia*, (1) the outcomes of all disability benefit applications and appeals filed by all claimants beginning January 1, 2018, with an application status of "Completed" or blank; (2) whether the applications were decided based on medical criteria or on administrative criteria (such as failure to show up for a required medical examination); and (3) the mix of Neutral Physicians who conducted the medical examinations for each application.  *Id.* ¶ 5.[2]  These files contain the file names "Disability

---

[2] On November 18, 2024, Defendants produced R code scripts in support of the Declaration of David B. Lasater in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Lasater Decl. ISO Class Cert. Opp'n"), ECF No. 111-2.  Plaintiffs inaccurately assert that Defendants did not "produce the data in a reasonably usable format."  Mot. at 19-20 n.21.  In fact, Plaintiffs' counsel acknowledged to Defendants on November 25, 2024 that they "are familiar with R file," which is the standard data format used by most statisticians.  Garagiola Decl. ¶ 6, Exhibit A.  On November 26, 2024, at Plaintiffs' request, Defendants re-produced the "Disability Appeals" and

Appeals" and "Disability Applications."

- Documents showing the extensive safeguards implemented by the Plan to direct and instruct Neutral Physicians to exercise their best professional judgment when conducting medical examinations, including:

  - All relevant Plan documents and amendments for the relevant time period. Garagiola Decl. ¶ 2. The Plan requires that for every examination, the Neutral Physician must "(1) certify that any opinions offered as a Neutral Physician will be provided without bias for or against any Player, and (2) accept and provide services pursuant to a 'flat-fee' agreement, such that the amount of compensation provided by the Plan will not depend on whether his or her opinions tend to support or refute any given Player's application for benefits." Apr. 1, 2021

---

"Disability Applications" data text files in Excel format,and produced data extracted from the R files that were previously produced in a format that could be opened in Excel—as the R files themselves cannot be directly converted into Excel and must be opened using the R program, which is a free, open-source software program. Garagiola Decl. ¶ 7. Specifically, Defendants produced the following .CSV files generated as output from the R script that are relied upon by Dr. Lasater and the following Excel spreadsheets that prepare the .CSV files for presentation in Dr. Lasater's declaration:

- FN Application Encounters.csv
- FN Appeal Encounters.csv
- LOD Chi Square Table - Median.csv
- LOD Chi Square Table - Quartile.csv
- LOD Chi Square Table - Appeals -Quartile.csv
- LOD Chi Square Table - Median - Appeals.csv
- NCD Chi Square Table - Median.csv
- NCD Chi Square Table - Quartile.csv
- NCD Chi Square Table - Appeals - Quartile.csv
- NCD Chi Square Table - Median - Appeals.csv
- Summary Table for Report Appendix - Application Median.xlsx
- Summary Table for Report Appendix - Application Quartile.xlsx
- Summary Table for Report Appendix - Appeal Median.xlsx
- Summary Table for Report Appendix - Appeal Quartile.xlsx
- T&P Chi Square Table - Median.csv
- T&P Chi Square Table - Quartile.csv
- T&P Chi Square Table - Appeals - Quartile.csv
- T&P Chi Square Table - Median - Appeals.csv
- Duplicates.csv

*Id.*

Disability Plan Doc. § 12.3(a); Decl. of H. Vincent in Supp. of Defs.' Joint MSJ of Pl. D. Loper's Claims ("Vincent Decl. ISO Loper MSJ") ¶ 25, ECF No. 115-4.

o   Neutral Physician contracts covering the relevant period for the 48 different Neutral Physicians who examined the named Plaintiffs.  Garagiola Decl. ¶ 3.  The contracts confirm that Neutral Physicians are paid a flat fee for each examination that does not vary based on the examination's outcome.  Vincent Decl. ISO Loper MSJ ¶ 22; Ex. C to Vincent Decl. ISO Loper MSJ, Contract of Dr. David Apple at 3 ("Apple Contract"), DL-219, ECF No. 115-8 at 4.  The contracts also require Neutral Physicians, among other things, "[t]o personally review and evaluate any and all medical records and materials provided to you by the Plan, and "[t]o personally conduct each test and examination, and prepare each report, according to the highest applicable professional standards, without any bias or favoritism for or against any Player."  Vincent Decl. ISO Loper MSJ ¶ 25; Apple Contract ¶¶ 3-5, 11.

o   Neutral Physician orientation manuals for the following areas: General, Neurology and Neuropsychology, Orthopedics, and Psychiatry.  Garagiola Decl. ¶ 3.  The manuals instruct Neutral Physicians that they cannot be biased against former players who are applying for disability benefits, and that they must render their best professional judgment when deciding claims. Vincent Decl. ISO Loper MSJ ¶ 27; Ex. E to Vincent Decl. ISO Loper MSJ, Orientation Manual, DL-629.

o   A declaration from the Disability Relations Manager of the NFL Player Benefit Office ("NFLPBO") affirming that (1) Neutral Physicians are "jointly designate[d]" by the NFL Players Association (which represents NFL players) and

6

the NFL Management Council (which represents NFL teams) to serve on the
panel of physicians who are available to conduct Plan and medical evaluations,
and the Board plays no role in that designation process, Vincent Decl. ISO Loper
MSJ ¶ 15; and (2) the NFLPBO assigns Neutral Physicians to conduct
examinations using neutral criteria, such as area of specialty, proximity to the
applicant, and availability to conduct a timely evaluation, and never considers a
Neutral Physician's propensity to find that former players are or are not disabled
when making examination assignments. *Id.* ¶ 19.

In support of this Opposition to the Motion, Defendants have submitted a declaration
from the NFLPBO's Disability Relations Manager describing the extreme burden that would be
imposed on the Plan if it was required to produce all of the decision letters, PRFs, and physician
narratives for all of the disability benefit claims that are encompassed by the produced claims
data, beginning on April 1, 2018. The declaration explains that collecting all of the decision
letters, PRFs, and physician narratives underlying the more than 4,500 benefit applications and
1,200 appeals at issue "would require significant and very burdensome manual review" that
"would take thousands of hours to complete" and "would be logistically crippling" for the
NFLPBO's limited staff. *See* Decl. of H. Vincent in Supp. of Defs.' Joint Opp'n to Pls' Mot. to
Compel Disc. ("Vincent Decl.") ¶¶ 10-12.

## LEGAL STANDARD

To demonstrate entitlement to an order compelling additional discovery, Plaintiffs must
show that their requests satisfy the proportionality standard of Rule 26(b), ERISA's stringent
standard for extra-record discovery, and Rule 56(d)'s requirement that the discovery requested is
"essential to justify" Plaintiffs' opposition to the pending summary judgment motions.

"Fed R. Civ. P. 26 requires that discovery be relevant to any party's claim or defense;

proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." Local Rules, United States District Court for the District of Maryland, Appendix A, Guideline 1 (2023). Rule 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Walsh v. Peters*, 2021 WL 8316262, at *2 (D. Md. Nov. 10, 2021) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010)). "[T]he court … 'must limit the frequency or extent of discovery' if: (i) 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive'; (ii) 'the party seeking discovery has had ample opportunity to obtain the information by discovery in the action'; or (iii) 'the proposed discovery is outside the scope permitted by Rule 26(b)(1),' considering 'the importance of the issues at stake in the action, the amount in controversy, ... the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Walsh*, 2021 WL 8316262, at *2 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii); 26(b)(1)).

This Court has already determined that the abuse of discretion standard of review applies to the benefit claims at issue in this case. ECF No. 78 at 15. Under ERISA, "[w]hen a court reviews a coverage determination under the abuse of discretion standard, generally, consideration of evidence outside of the administrative record is inappropriate." *Wilkinson*, 674 F. App'x at 300 (citing *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013)); *Blanch v. Chubb & Son, Inc.*, 2014 WL 6473741, at *2 (D. Md. Nov. 18, 2014) (denying request for discovery outside administrative record). This rule "furthers ERISA's goals of expeditiously, efficiently, and inexpensively resolving coverage disputes." *Helton*, 709 F.3d at 352; *see also*

*Conkright*, 559 U.S. at 517 ("Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" (quoting *Varity Corp. v. Howe*, 497 U.S. 489, 497 (1996)).

A narrow exception to this general rule allows courts to consider "evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary for the court to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton*, 709 F.3d at 356 (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000)). But this exception does not provide "*carte blanche* authority to seek discovery outside of the administrative record." *Griffin v. Hartford Life & Accident Ins. Co.*, 2016 WL 8794470, at *2 (W.D. Va. Sept. 27, 2016). In particular, absent a "sufficient showing," such discovery does not extend to "the facts behind other health claims" determined by the same defendant. *Boyd v. Sysco Corp.*, 2014 WL 12814548, at *4 (D.S.C. July 3, 2014) (denying request for discovery into other health claims processed by the same company); *Zahariev v. Hartford Life & Accident Ins. Co.*, 2020 WL 12783951, at *4-5 (D.S.C. Aug. 11, 2020) (denying request for discovery into denials and acceptances of other claimants' disability claims); *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5, 8-9 (D.D.C. 2022) (explaining Rule 26 was amended in 2015 to emphasize proportionality and to "encourage judges to be more aggressive in identifying and discouraging discovery overuse," and denying motion to compel 10 years' of disability claim reviews as irrelevant and not proportional); *Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 117 (3d Cir. 2020) (affirming denial of request for discovery into medical reviewer's claims denial rate because of the "high cost of producing the evidence and its minimal probative value").

Under Rule 56, the discovery obtainable "to oppose a summary judgment motion would normally be less extensive in scope than the general discovery obtainable under Rule 26." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 298 (1968).  When a summary judgment motion is pending, "[t]o raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery." *Campbell v. Perkins*, 2023 WL 6161086, at *5 (D. Md. Sept. 21, 2023) (quoting Fed. R. Civ. P. 56(d)).  When discovery requests are subject to the strictures of Rule 56(d), "a court need not allow discovery when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Williams*, 2024 WL 2746979 at *5 (quotations omitted).  The nonmovant "must clearly demonstrate the need for discovery pursuant to Rule 56(d)," which cannot "be based on speculation as to what potentially could be discovered." *Betof v. Suburban Hosp., Inc.*, 2012 WL 2564781, at *8-9 (D. Md. June 29, 2012) (quotations and citations omitted).  "Rule 56(d) does not authorize 'fishing expedition[s].'" *Id.* at *9 (quoting *Morrow v. Farrell*, 187 F. Supp. 2d 548, 551 (D. Md. 2002), *aff'd*, 50 F. App'x 179 (4th Cir. 2002)).

## ARGUMENT

Because Plaintiffs' additional discovery demands flunk every applicable discovery standard, the Motion to Compel must be denied.  Plaintiffs completely ignore the productions that Defendants have already made, and offer no explanation why the extensive claims data that Defendants have already produced, together with the 68 decision letters, 101 PRFs, and 108 physician narratives pertaining to the named Plaintiffs' claims, are insufficient to meet Plaintiffs' discovery needs.  Producing the records underlying the Plan-wide claims data would be enormously burdensome, and Plaintiffs fail to make any demonstration that their request is

proportionate to the needs of the case, Fed R. Civ. P. 26(b), necessary for the court to adequately

assess the *Booth* factors, *Helton*, 709 F.3d at 356, or essential to justify their opposition to

Defendants' pending Rule 56 motions, Fed R. Civ. P. 56(d).  Notably, Plaintiffs do not cite a

single case that has required an ERISA plan to produce the individual claim records underlying

produced plan-wide claims data.

I.      **THE ADDITIONAL DISCOVERY DEMANDED IS NEITHER NECESSARY NOR PROPORTIONATE.**

        A.      **The Administrative Records, Plan-Wide Claims Data, and Documents Showing the Plan's Neutrality Safeguards That Defendants Have Already Produced Are More Than Sufficient to Decide Plaintiffs' Claims.**

        Each of the nine named Plaintiffs contends that his claim for disability benefits was

improperly denied (Count I), that the letters he received denying his claims were deficient under

ERISA (Count II), and that Defendants failed to provide a "full and fair" review of his claims

(Count III).  Courts routinely decide such claims based on ERISA claimants' administrative

records, and Plaintiffs do not contest that the complete administrative records and player files

that Defendants have already produced for each of the named Plaintiffs are sufficient to decide

those claims.  The administrative records and player files that have been produced contain all of

the denial notices, PRFs, and physician narratives for the named Plaintiffs' at-issue disability

claims, and more than adequately respond to Plaintiffs' RFP 2 (requesting denial notices) and

RFP 3 (requesting PRFs and physician narratives).

        The Complaint further contends in Count V that Defendants breached their fiduciary

duties by administering a "sham" claims approval process, that Defendants have implemented a

"fraudulent scheme" to skew medical examination assignments toward Neutral Physicians who

are associated with high rates of benefit claim denial, and that Defendants misrepresent to Plan

participants that Neutral Physicians are neutral when they are in fact biased against them.  Mot. 6

& n.4.  It is not uncommon for ERISA plaintiffs to contend that the administrator responsible for adjudicating their benefit claims has a history of biased claims administration, and to demand discovery pertaining to the administrator's determinations of other claimants' claims.  Courts routinely deny such discovery requests—including requests for claims data showing claims denial rates—absent a "sufficient showing" that such extra-record discovery is warranted.  *See, e.g.*, *Boyd*, 2014 WL 12814548, at *4 (denying request for discovery for "the facts behind other health claims"); *Zahariev*, 2020 WL 12783951, at *5 ("the Court denies [plaintiff's] request to propound discovery into statistical data concerning third-party medical review"); *Wall*, 341 F.R.D. at 8-9 (denying motion to compel 10 years of disability claim reviews); *Reichard*, 805 F. App'x at 117 (affirming denial of request for discovery into medical reviewer's claims denial rate).[3]  If courts did not deny such requests for extra-record discovery into the records of other claimants, ERISA plans would fast be overwhelmed with extensive discovery burdens that would undermine "ERISA's goals of expeditiously, efficiently, and inexpensively resolving coverage disputes."  *Helton*, 709 F.3d at 352; *Conkright*, 559 U.S. at 517.  And while a handful of cases that Plaintiffs cite in their Motion have permitted targeted extra-record discovery based on a sufficient and particularized showing of need, none of the cases that Plaintiffs cite have required

---

[3] *See also Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 399 (D. Conn. 2020) (denying request for discovery into "the numbers or percentages of administrative appeals approved or rejected by individual appeals specialists" and explaining that "courts have refrained from ordering compliance with similar requests because bare numbers or percentages of claim denials are meaningless without additional context—and that context cannot be provided without holding mini-trials on the other claims" (collecting cases); *Abromitis v. Cont'l Cas. Co./CNA Ins. Cos.*, 114 F. App'x 57, 61 (4th Cir. 2004) (in appeal of ERISA disability claim denial, affirming denial of plaintiff's motion to compel production of "number of contracts between [an administrator] and [a physician] over the previous three years and the total amount of money that [the administrator] paid [the physician] under those contracts," despite allegations that the physician was biased and consistently tailored her reports "to support claim denials," because it is "irrelevant how much business [the administrator] provided to [the physician]."); *Hulst v. Aetna Life Ins. Co.*, 2013 WL 5675513, at *3 (E.D. Ky. Oct. 17, 2013) (denying discovery into the number of times each reviewing doctor was previously retained because "whether a reviewing doctor has previously reviewed 10 or 100 claims is not relevant to the issue of whether there is support in the administrative record for the determination made regarding [plaintiff's] claim"); *Zogenix, Inc. v. Fed. Ins. Co.*, 2021 WL 4026911, at *4 (N.D. Cal. Sept. 3, 2021) (in a non-ERISA case, denying a motion to compel "information regarding [the defendant's] handling of other insureds' requests").

an ERISA plan to produce on a plan-wide basis other claimants' individual claim records.[4]

Defendants thus would have been justified in refusing to produce to Plaintiffs any extra-record information about the determination of other claimants' disability claims. But Defendants instead went beyond their discovery obligations and produced Plan-wide claims data from the beginning of 2018 so that Plaintiffs' baseless allegations that the Plan has low claim approval rates, and that it skews medical examination assignments toward Neutral Physicians who are associated with high rates of benefit claim denials, could be conclusively refuted. Defendants also produced substantial extra-record documentation showing the extensive safeguards the Plan has instituted to ensure that Neutral Physicians conduct medical examinations exercising their best professional judgment and without bias. Plaintiffs ignore these productions in their Motion, which dispositively undermine any basis for Plaintiffs' demands for additional extra-record discovery. *See, e.g.*, *Agelli v. Sebelius*, 2014 WL 347630, at *10 (D. Md. Jan. 30, 2014) (denying request for additional discovery where the defendants' completed productions undermined asserted basis for further discovery); *Gardner v. United States*, 184 F. Supp. 3d 175, 184 (D. Md. 2016) (denying additional discovery where "the Individual Defendants have adduced evidence that seems flatly at odds" with the plaintiff's unsupported allegations).

---

[4] *See Balkin v. Unum Life Ins. Co.*, 2022 WL 4316270, at *4-6, 6 n.4 (D. Md. Sept. 19, 2022) (holding that to support extra-record discovery a plaintiff cannot use "bare assertion[s]" but must assert "particularized facts," and granting an interrogatory for "the number of claims" that were referred to three specific doctors and "the number of cases in which each doctor found claimants to be disabled"); *Chughtai v. Metro. Life Ins. Co.*, 2019 WL 4199036, at *1-2 (D. Md. Sept. 5, 2019) (based on specific allegations pertaining to two doctors, granting interrogatories for a "breakdown of each of the two doctors' recommendations during that period"); *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 786-89 (E.D. Ky. 2014); Mem. Supp. Pl.'s Rule 37 Mot. Compel Disc. Resps. at 5, *Kasko v. Aetna Life Ins. Co.*, No. 5:13-cv-00243 (D. Md. Mar. 14, 2014), ECF No. 15 (requiring ERISA plaintiff to make a "factual showing" to garner "strictly confined" and "tailored" extra-record discovery, and granting an interrogatory for "the number of files" in which four reviewing doctors recommended disability findings over a three-year period); *Helton*, 709 F.3d at 356-57 (affirming district court's consideration of limited extra-record evidence showing the date on which the participant received an update from the plan); *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 2019 WL 4879015, *9-10 (D. Md. Oct. 3, 2019) (granting "limited discovery" regarding the contact information of "similarly-situated plan participants" who were also granted retirement benefits that were later suspended due to "unauthorized employment," but denying broader discovery requests seeking the contact information for other benefit claimants).

B.     **Plaintiffs Cannot Rely on Unsupported and Refuted Allegations in the Complaint as Justification for Their Extra-Record Discovery Requests.**

Throughout their Motion, Plaintiffs repeatedly rely on the Complaint's unsupported allegations of systemic bias and low claim approval rates to support their demands for extra-record discovery. But if Plaintiffs' claims were valid, the produced claims data would show it.[5] Instead, statistical analysis of the Plan's claims data demonstrates that the Complaint's allegations are false. Of the applications for disability benefits that Defendants determined on the basis of Neutral Physician medical examinations since 2018, benefits were awarded to approximately 50.8% of applicants for line of duty benefits, 51.2% of applicants for total-and-permanent benefits, and 23.9% of applicants for neurocognitive benefits. Lasater Decl. ISO Class Cert. Opp'n ¶ 42 & Table 4. Moreover, the data shows that for all three types of disability benefits, the quartile of Neutral Physicians who received the ***greatest*** number of medical examination assignments were associated with the ***lowest*** rates of denials for both applications

---

[5] Defendants produced the claims data on a de-identified basis. Dr. Lasater explains in his expert opinion that because Neutral Physicians are paid a flat fee for each examination, examination frequency is a good proxy for aggregate Neutral Physician compensation, and can reliably be used to test whether the NFLPBO skews Neutral Physician medical examination assignments toward Neutral Physicians who are associated with high application denial rates. Lasater Decl. ISO Class Cert. Opp'n ¶ 17 n.10. The de-identified data that Defendants already produced is thus all that Plaintiffs require to run the statistical analyses for which they say they are seeking the underlying individual claims records. *See* Mot. 10. The Plan has a material interest in de-identifying the names of individual Neutral Physicians because it does not maintain statistics concerning individual Neutral Physicians' rates of finding that claimants are or are not disabled, Vincent Decl. ISO Loper MSJ ¶ 19, a prophylactic safeguard that renders it impossible for the NFLPBO to make Neutral Physician assignments on that basis. But if such statistics were generated for the first time as part of this litigation, it would be impossible to thereafter put the toothpaste back in the tube, and repeat players like Plaintiffs' counsel would thereafter recurrently allege that the NFLPBO is relying on the newly generated statistics to make Neutral Physician assignments. De-identification of the data thus protects an important Plan interest, while giving Plaintiffs everything they need to run statistical analyses. Furthermore, Plaintiffs specifically seek through their lawsuit to compel Defendants to create a similar statistical database and to use it to audit the performance of Neutral Physicians, AC ¶ 373, a remedy that no case identified by Plaintiffs has ever awarded or suggested is required by ERISA. Plaintiffs should not be permitted to use a discovery motion to force the creation of the very statistical database the Complaint demands, particularly where its creation would generate irremediable problems for the Plan. Plaintiffs inaccurately claim that the Plan has already created such a database, Mot. 27-28, but Dr. William Garmoe has supplied a declaration averring that the database that he maintains outside the NFLPBO to track trends in neuropsychological and neurological test data has ***never*** been used to generate aggregate or summary statistics about decisions made or trends in decision-making by individual Neutral Physicians. Decl. of Dr. William Garmoe in Supp. of Defs.' Joint Opp'n to Pls.' Mot. to Compel ¶¶ 6-12.

and appeals—the exact **opposite** of the Complaint's core allegation. *Id.* ¶ 29 & Table 2; ¶ 49 & Table 6. There is no indication in the claims data of **any** statistically significant skew against claimants of the kind the Complaint alleges. *Id.* ¶ 7.

Plaintiffs nonetheless repeatedly rely on the Complaint's refuted allegations as purported support for their expansive extra-record discovery requests. *See, e.g.*, Mot. 6 n.4, 8, 10-11, 16-17 & n.18, 26 n.26. But none of the cases that Plaintiffs cite hold that a plaintiff can rely on unsupported pleadings to justify extra-record discovery into the individual records of other claimants, particularly where Defendants have already produced claims data covering all of the claims that are encompassed by Plaintiffs' requests. *See supra* at 13 n.4. And although Plaintiffs aver in the Complaint that their allegations of systematic bias against claimants are based on analysis of various "statistical samples" they purportedly possess, *see, e.g.*, AC ¶¶ 116-46, Plaintiffs have not produced any such statistical analysis in discovery, did not furnish **any** statistical analysis in support of their Motion for Class Certification, and offer no statistical analysis as part of the "sufficient showing" that they are required to make to establish their entitlement to additional discovery. Plaintiffs absurdly contend in the Motion that they "**allege** overwhelming evidence of extensive bias," Mot. 25 (emphasis added), but Plaintiffs must use **actual** evidence to justify their specific demands for extra-record discovery.[6] *See Griffin*, 2016 WL 8794470, at *2 (a "bare assertion, without any factual support" of potential bias among third-party claim reviewers is not sufficient to justify extra-record discovery in an ERISA case). Plaintiffs already have in hand through Defendants' substantial discovery productions all of the

---

[6] Dr. Lasater's expert opinion explains that the Complaint's various purported "statistical" allegations, even if taken at face value, are completely meaningless absent substantial additional contextual information that Plaintiffs have failed to supply. Lasater Decl. ISO Class Cert. Opp'n ¶¶ 55-63. Dr. Lasater has also provided a supplemental opinion demonstrating that the specific purported "statistics" from the Complaint that Plaintiffs rely on in support of their Motion, *see* Mot. at 17 n.18, 26 n.26, are false. Decl. of Dr. David Lasater in Supp. of Defs.' Joint Opp'n to Pls.' Mot. to Compel Disc. at ¶¶ 6-10.

evidence they would need to show systemic bias in the claims adjudication process if those allegations were true, and Plaintiffs cannot in the face of those productions revert to their refuted pleadings as the required "sufficient showing" to justify additional discovery.[7]

C.    **Plaintiffs' Requests Are Particularly Unnecessary and Disproportionate Because Their Lawsuit Is Based on the Premise That Their Own Claim Experience Is "Typical" of All Other Claimants.**

Both in their Complaint and in their Motion for Class Certification, Plaintiffs allege that their own claim determinations are "typical" of those of all other claimants. ECF No. 102-1 at 29-31; AC ¶¶ 276-77. This claim of typicality (which Defendants' class certification opposition refutes, *see* Class Cert. Opp'n at 28-30) renders particularly inexplicable Plaintiffs' demand for the individual claim records of all other claimants since April 1, 2018. If the named Plaintiffs' claims are typical, then Plaintiffs should at minimum be able to demonstrate that typicality among the 68 decision letters, 101 PRFs, and 108 physician narratives that Defendants have already produced. Moreover, Plaintiffs aver in their Complaint that they had in hand at the time they filed their Complaint an additional set of 784 "Defendant-commissioned T&P disability evaluations," *see, e.g.*, AC ¶ 116, which could also be used to demonstrate typicality. Yet Plaintiffs have made no effort to do so: their Motion for Class Certification does not attach or use

---

[7] Plaintiffs also rely as support for their discovery requests on misleading representations concerning other court's treatment of four specific Neutral Physicians: Dr. Eric Brahin, Dr. Barry McCasland, Dr. Stephen Macciocchi, and Dr. Garmoe. Mot. at 18 n.19, 26 n.26. First, Plaintiffs imply in a parenthetical that a district court held that "Dr. Brahin 'conducted only a short meeting' with the plaintiff and his report contained 'many factual errors,'" *id.* at 18 n.19, when in fact the court did not criticize Dr. Brahin at all, and the quoted language is actually attributable to the plaintiff's counsel in that case and another physician, not the court. *See Colvin v. 88 Bd., Joint Bd. of Trustees for 88 Plan*, 2018 WL 1756738, at *2 (W.D. Tex. Apr. 11, 2018). Courts have relied on or cited the opinions of both Dr. Garmoe and Dr. McCasland without criticism. *United States v. Rudisill*, 43 F. Supp. 2d 1, 3-4 (D.D.C. 1999) (noting the court was "inclined to concur" with Dr. Garmoe's conclusions); *Miles v. Colvin*, 2015 WL 12867003, at *10 (N.D. Ga. Aug. 12, 2015) (citing opinion of Dr. McCasland), *aff'd sub nom. Miles v. Comm'r of Soc. Sec.*, 652 F. App'x 923 (11th Cir. 2016). And although Plaintiffs criticize Dr. McCasland's and Dr. Macciocchi's examinations of the plaintiff in *Mickell v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 2019 WL 656328, (S.D. Fla. Jan. 15, 2019), the district court entered summary judgment for the defendant consistent with both doctors' findings that the plaintiff was not disabled, and the Eleventh Circuit's subsequent opinion reversing the district court did not criticize the findings of Dr. McCasland or Dr. Macciocchi. *Mickell v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586 (11th Cir. 2020).

a single one of the hundreds of records that Plaintiffs already possess to support their request for class certification.

If Plaintiffs could demonstrate typicality among the large set of records in their possession—which they cannot—then they would have no need for the additional extra-record discovery they are requesting. A central purpose of class certification under Rule 23 is to avoid the need to engage in individual discovery as to each similarly situated class member. Conversely, if the thousands of claimants at issue are not similarly situated—and they are not—then the Plaintiffs have no justifiable basis for intrusive and burdensome discovery into the individual claims records of other claimants. The Motion should be denied on this basis alone.

Nor are Plaintiffs entitled to go combing through the records of other claimants in a search for *inconsistent* adjudications or *inconsistent* application of Plan terms. Plaintiffs offer nothing but vague, non-specific, and unsupported ipse dixit allegations that such inconsistencies exist, and Defendants have supplied an RFP response to Plaintiffs declaring that they are not aware of any. *See* Defendants' Responses and Objections to Plaintiffs' RFP No. 13. Plaintiffs cite *Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 2021 WL 4477720 (N.D. Tex. Sept. 30, 2021), as support for extra-record discovery into inconsistent application of Plan terms, but the *Cloud* court actually denied the plaintiff's generalized request for "each disability claim" and "all Article 65 Neuro-Cognitive Disability Benefit Awards," while permitting only targeted discovery into the Plan's specific application of the particular Plan terms "changed circumstance" and "clear and convincing." *Id.* at *5 n.9, 7 (denying discovery pursuant to RFPs 37 and 58). Moreover, on appeal the Fifth Circuit determined that the "variations identified by the district court" were "not significant," and affirmed the Plan's denial of the benefit claim. *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 95 F.4th 964, 973 (5th Cir. 2024). Rule

17

26(b), Rule 56(d), and ERISA do not countenance Plaintiffs' unsupported request to engage in a generalized and burdensome fishing expedition looking for unidentified "inconsistencies," and neither *Cloud* nor any of the other cases that Plaintiffs cite suggest that they do.

### D. The Motion Must Be Denied Because Plaintiffs Fail to Show the Requested Discovery Is Essential to Oppose the Pending Summary Judgment Motions.

The Motion fails even to acknowledge that Defendants have, with the Court's permission, filed three pending summary judgment motions, each supported by full evidentiary records, that between them cover all of the claims raised by Plaintiffs' proposed classes and subclasses. When such Rule 56 motions are pending, plaintiffs are required to show that the additional discovery they seek is "essential to justify [their] opposition" to the motions, *Campbell*, 2023 WL. 6161086, at *5, and would by itself "create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment,: *Williams*, 2024 WL 2746979 at *5. *See Agelli*, 2014 WL 347630, at *10. Moreover, the required showing cannot "be based on speculation as to what potentially could be discovered." *Betof*, 2012 WL 2564781, at *8-9. Plaintiffs make no attempt to show that they have met the Rule 56(d) standard for additional discovery, and Rule 56(d) requires that the Motion be denied.

### E. The Cases Plaintiffs Cite in Their Motion Support Denying Their Discovery Request for Other Claimants' Records.

None of the cases that Plaintiffs cite in their Motion grant plan-wide discovery into the claims records of other claimants, *see supra* 13 n.4, but several of the cited cases expressly ***deny*** such requests. In *Cloud*, the court denied the plaintiff's request for information on "each disability claim" and "Article 65 Neuro-Cognitive Disability Benefit Awards," finding that "these requests are overly broad and not reasonably calculated to lead to the discovery of information relevant to Plaintiff's claim." *Cloud*, 2021 WL 4477720 at *7. In *Chavis*, the court denied the plaintiff's broad request for discovery into other plan participants whose benefits had

not been suspended specifically because of "unauthorized employment." *Chavis*, 2019 WL 4879015 at *10. And in *Clark v. Unum Life Insurance Company of America*, following a further round of briefing, the district court denied all of the plaintiff's requested extra-record discovery, including for "statistical data regarding findings of disability" pertaining to other claimants, 799 F. Supp. 2d 527, 531 (D. Md. 2011), because the plaintiff "has offered the Court no appraisal whatever of the information in the record and has instead simply repeated her generalized allegations that Defendant's claims handling procedures are biased." Mem. & Order at 3-4, *Clark v. Unum Life Ins. Co. of Am.*, No. 1:10-cv-03107-JKB (D. Md. Sep. 28, 2011), ECF No. 48. The same is true here—Plaintiffs entirely ignore Defendants' substantial productions, and instead rely entirely on the baseless allegations in the Complaint to support their request—and the Motion should similarly be denied.

In addition, the cases Plaintiffs cite make clear that extra-record discovery that is unrelated to a "structural conflict of interest issue" should be denied. *Kane v. UPS Pension Plan Bd. of Trs.*, 2012 WL 5869307, *1, *4 (D. Md. Nov. 19, 2012); *see also Balkin*, 2022 WL 1136887, at *4 (extra-record discovery is permissible "[i]f a structural conflict of interest exists"). But courts have uniformly found that the Plan does not have a structural conflict of interest, because as a Taft-Hartley plan "the Board is staffed equally by three individuals appointed by the NFL and by three former players" and "[a]ction by the Board requires four votes." *Youboty v. NFL Player Disability & Neurocognitive Benefit Plan*, 2020 WL 5628020, at *6 (S.D. Tex. Aug. 17, 2020), *aff'd*, 856 F. App'x 497 (5th Cir. 2021); *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 487 F. Supp. 3d 807, 813 (N.D. Cal. 2020), *aff'd and remanded on other grounds*, 855 F. App'x 332 (9th Cir. 2021); *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 716 (D. Md. 2012); *Boyd v. Bert Bell/Pete Rozelle NFL Player*

*Ret. Plan*, 796 F. Supp. 2d 682, 690-91 (D. Md. 2011).  In the face of this overwhelming authority Plaintiffs make no argument that the Plan operates under a structural conflict of interest, yet the absence of any structural conflict alone distinguishes virtually every case Plaintiffs cite granting even limited extra-record discovery.[8]  The Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Compel.


Date: December 10, 2024                   Respectfully submitted,

                                          */s/ Gregory F. Jacob*
                                          Gregory F. Jacob (D. Md. Bar No. 06769)
                                          Meredith N. Garagiola (*pro hac vice*)
                                          O'MELVENY & MYERS LLP
                                          1625 Eye Street, N.W., 10th Floor
                                          Washington, DC 20006
                                          Telephone: (202) 383-5300
                                          Facsimile: (202) 383-5414
                                          Email: gjacob@omm.com
                                          Email: mgaragiola@omm.com

                                          Elizabeth L. McKeen (*pro hac vice*)
                                          O'MELVENY & MYERS LLP
                                          610 Newport Center Drive, 17th Floor
                                          Newport Beach, CA 92660
                                          Telephone: (949) 823-6900
                                          Facsimile: (949) 823-6994

---

[8] Two of the cases that Plaintiffs cite do not relate to discovery issues.  Plaintiffs rely on *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 903 (9th Cir. 2016), as support for the proposition that "'statistics showing a parsimonious pattern of assessments disfavorable to claimants' would be 'more powerful evidence' of a fiduciary's motives, conflict, or bias."  Mot. at 15.  But Plaintiffs provide no evidence of such a "parsimonious pattern," which the Plan-side claims data that Defendants have already produced conclusively refutes.  Indeed, the *Demer* court made clear that if a defendant proffers evidence that there is *not* a "parsimonious pattern" of assessments—as Defendants have in this case through Dr. Lasater's analysis of the Plan-wide claims data—that evidence is sufficient to refute a claim of bias.  *Demer*, 835 F.3d at 903 n.8.  *Jani v. Bell*, 209 F. App'x 305 (4th Cir. 2006), similarly did not involve a discovery issue.  That case, which was decided more than a decade before the Neutral Rule was adopted, criticized the Board for failing to credit a Neutral Physician's finding that a player was disabled, while noting the existence of eight other benefit claims in which the Board "chose to follow" a Neutral Physician's recommendation that a player was disabled.  *Id.* at 317 n.8.  Plaintiffs' complaint in this case is the exact opposite: they want the Board to award them disability benefits (in contravention of the Neutral Rule) even though none of the Neutral Physicians who examined them determined that they are disabled.  *Jani* provides no support for Plaintiffs' discovery request.

Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*