**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | **Case No. 1:23-cv-00358-JRR** |
| vs. | |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; et al, | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**THEIR MOTION TO COMPEL DISCOVERY**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    A.   The Gaps in Defendants' Limited and Selective Productions to Date Demonstrate the Relevance and Importance of the Discovery Plaintiffs Seek ............................................2

    B.   Discovery Beyond the Plaintiffs' Administrative Records Is Warranted ......................4

    C.   Any Limited Burden from the Production of Responsive Documents Is Proportional to the Needs of the Case .........................................................................................11

    D.   The Putative Class Action Posture of the Litigation Is Irrelevant. ..............................12

    E.   Defendants' Meritless Summary Judgment Motions Do Not Excuse Their Refusal to Participate in Discovery. .............................................................................................13

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Bert Bell NFL Player Retirement. Plan & Trust Agreement*,
    646 F. Supp. 1094 (D. Colo. 1986) ............................................. 6

*Ashmore v. NFL Player Disability & Neurocognitive Benefit Plan*,
    2018 WL 3424453 (S.D. Fla. June 15, 2018) ........................... 6

*Balkin v. Unum Life Insurance Co.*,
    2022 WL 1136887 (D. Md. Apr. 18, 2022) ......................... 4, 11

*Brumm v. Bert Bell NFL Retirement Plan*,
    995 F.2d 1433 (8th Cir. 1993) ................................................. 5

*Campbell v. Perkins*,
    2023 WL 6161086 (D. Md. Sept. 21, 2023) ........................... 13

*Carter v. Bert Bell/ Pete Rozelle NFL Retirement Plan*,
    2012 WL 6043050 (N.D. Ala. Dec. 3, 2012) ........................... 6

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*,
    2019 WL 4879015 (D. Md. Oct. 3, 2019) ......................... 1, 4, 11

*Chughtai v. Metropolitan. Life Insurance Co.*,
    2019 WL 4199036 (D. Md. Sept. 5, 2019) ................................. 4

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2022 WL 2805527 (N.D. Tex. July 18, 2022) ......................... 2, 9

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    95 F.4th 964 (5th Cir. 2024) ................................................... 5

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2021 WL 4477720 (N.D. Tex. Sep. 30, 2021) ....................... 9, 12

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2022 WL 1203099 (N.D. Tex. Apr. 21, 2022) ....................... 5, 6

*Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2022 WL 2237451 (N.D. Tex. June. 21, 2022) ..................... 6, 8

*Demer v. IBM Corporation LTD Plan*,
    835 F.3d 893 (9th Cir. 2016) ................................................. 5

*Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2018 WL 1258147 (N.D. Cal. Mar. 12, 2018) ........................................................... 7

*Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    487 F. Supp. 3d 807 (N.D. Cal. 2020) ..................................................................... 5

*Dimry v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2022 WL 1786576 (N.D. Cal. June 1, 2022) ............................................................ 5

*Durakovic v. Building Service 32 BJ Pension Fund*,
    609 F.3d 133 (2d Cir. 2010) .................................................................................. 11

*Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    2013 WL 6909200 (D. Md. Dec. 31, 2013) ............................................................. 6

*Helton v. AT & T Inc.*,
    709 F.3d 343 (4th Cir. 2013) ........................................................................ *passim*

*Howley v. Mellon Financial Corp.*,
    625 F.3d 788 (3d Cir. 2010) ................................................................................. 10

*In re Marshall*,
    261 F. App'x 522 (4th Cir. Jan. 2008) ................................................................... 6

*Jani v. Bell*,
    209 F. App'x 305 (4th Cir. 2006) .......................................................................... 5

*Jefferson v. Sellers*,
    250 F. Supp. 3d 1340 (N.D. Ga. 2017) ................................................................. 8

*Kane v. UPS Pension Plan Board of Trustees*,
    2012 WL 5869307 (D. Md. Nov. 19, 2012) ............................................................ 4

*Metropolitan Life Insurance Co. v. Glenn*,
    554 U.S. 105 (2008) ................................................................................ 4, 5, 11

*Mickell v. Bell/Pete Rozelle NFL Players Retirement Plan*,
    832 F. App'x 586 (11th Cir. 2020) ....................................................................... 6

*Moore v. Bert Bell/Pete Rozelle NFL Retirement Plan*,
    282 F. App'x 599 (9th Cir. 2008) .......................................................................... 5

*Putney v. Likin*,
    656 F. App'x 632 (4th Cir. 2016) ......................................................................... 14

*Solomon v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
    860 F.3d 259 (4th Cir. 2017) ................................................................................ 5

*Stewart v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*,
   2012 WL 2374661 (D. Md. June 19, 2012) ...................................................... 6, 7, 9

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................... 1, 11

Fed. R. Civ. P. 34(b)(E)(i) .......................................................................................... 10

**Regulations**

29 C.F.R. § 2560.503-1(b)(7) ..................................................................................... 9

29 C.F.R. § 560.503–1(l)(2)(ii) ................................................................................... 9

## INTRODUCTION

Defendants concede that key relevant information responsive to Plaintiffs' Request for Productions 2 and 3—other claimants decision letters and physician reports—are the only existing record of the individual medical conclusions of any physician in Defendants' fraudulent scheme, including the 118 Plan physicians at issue in the Amended Complaint (ECF No. 56) (¶¶ 146, 287). They do not dispute that parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and otherwise proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), including, in an ERISA case, discovery beyond the administrative record—particularly when the claims include alleged breaches of fiduciary duties. *See Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, 2019 WL 4879015, at *6, *8 (D. Md. Oct. 3, 2019) (ERISA claims alleging fiduciaries breached their fiduciary duties concern materials and events beyond the administrative record and should not be subject to the same discovery constraints as a typical denial of benefits claim).

Plaintiffs' Requests 2 & 3 go to the core of the claims and defenses in this litigation, including directly bearing on the alleged breaches of fiduciary duties, improper motives, conflicts of interest, inconsistent interpretations of Plan terms, inadequate materials considered, and a pattern and practice of inconsistent treatment of claimants, inadequate notices, and failure to ensure impartiality and independence in all claims and appeals.  Nevertheless, Defendants take the position that the decision letters and physician reports can be withheld from discovery because Defendants have produced the administrative records for the named plaintiffs, along with a self-selected and self-serving, partial production of a limited number of other documents that are wholly unresponsive to Requests 2 & 3.  This brazen refusal to produce relevant documents not only ignores the Federal Rules and well-settled law in this Circuit but also attempts to turn the

discovery process on its head by allowing a party to selectively disclose relevant information and try to create a misleading factual record regarding class certification and Defendants' three motions for summary judgment. *See Helton v. AT & T Inc.*, 709 F.3d 343, 353-54 (4th Cir. 2013). This deny and delay strategy is central to Defendants' defensive discovery playbook. In fact, Defendants have previously been compelled to produce these documents in an individual ERISA case. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2022 WL 2805527, at *5 (N.D. Tex. July 18, 2022) ("Defendant was also compelled to produce certain relevant documents, including its prior decision letters"). At bottom, Plaintiffs have more than met the standards in this Circuit for discovery beyond the administrative record in an ERISA case, and none of the arguments advanced in Defendants' Opposition have merit. Accordingly, the Court should grant Plaintiffs' motion to compel and order Defendants to immediately produce the files responsive to Plaintiffs' Requests 2 & 3.

## ARGUMENT

### A.    The Gaps in Defendants' Limited and Selective Productions to Date Demonstrate the Relevance and Importance of the Discovery Plaintiffs Seek

Defendants argue that the production of (1) the administrative records for the named plaintiffs; (2) Plan documents; (3) physician contracts and manuals; and (4) data files containing limited, cherry-picked fields from a Plan database obviate the need to produce the decision letters and physician reports responsive to Requests 2 & 3. Not so. Far from satisfying Plaintiffs' requests for information directly probative of the Plan physicians' specific biased conclusions and compensation, Defendants' inadequate productions to date lay bare the need for the targeted discovery Plaintiffs requested.

Here, Plaintiffs allege, among more, that as part of their fraudulent scheme, Defendants knowingly train, maintain, use, and reward a stable of biased physicians encumbered by significant

conflicts of interest, improper motives, and histories of inadequate work performance, that systematically infects the claims process and integrity of the Plan (all while misrepresenting to Players that the physicians are "absolutely neutral"). *See, e.g.*, Am. Compl. ¶¶ 107-12, 283-89. To that end, Requests 2 & 3 seek the actual decision letters and physician report forms that would reveal the *individual* conclusions from each *individual* Plan physician. Nothing could be more relevant and probative of Plaintiffs' claims.

Defendants deflect by pointing to the production of unilaterally hand-picked fields of "Plan-wide claims data from the beginning of 2018" from the V3 system,[1] as discharging them of any further discovery obligations regarding individual physician outcomes. They admit, however, that the produced V3 data and the administrative records are entirely silent on the two most important issues: (1) each physician's conclusions (and rationale) from their evaluations, and (2) each physician's annual compensation from Defendants. Defendants submitted multiple declarations that concede the V3 data produced to date contains significant gaps and is a wholly inadequate substitute for the decision letters and physician report forms. *See* ECF No. 115-4 at 13 (decl. of Plan's Disability Relations Manager, Hessam Vincent) ("The V3 data will only show the final decision made by the Committee or Board for a given application; *a Neutral Physician's individual conclusion is not listed in the data*.") (emphasis added); ECF No. 111-2 at 7-8 (Def's putative expert conceding that his analysis is based on assumptions that fail to "precisely identify the decisions made by each individual physician"; that V3 data omits "specific medical opinion that each physician rendered"; and that determination of specific medical opinion would require "manual review process [of decision letters and physician reports]"). Defendants' circumscribed

---

[1] Defendants produced the V3 data only after putting plan-wide decisions at issue by proffering a purported statistical expert's declaration about the data in support of motions for summary judgment and in opposition to class certification.

production of claim data therefore fails to satisfy in any fashion Requests 2 & 3 and cannot justify Defendants' refusal to produce responsive documents. Nor can Defendants legitimately object to producing reports from physicians other than those involved in Plaintiffs' claims, when they themselves have now put at issue all Plan-compensated physicians' opinions since January 1, 2018.

### B.    Discovery Beyond the Plaintiffs' Administrative Records Is Warranted

Next, Defendants repackage their first argument regarding the V3 data, claiming that the limited production establishes the insufficiency of Plaintiffs' allegations to justify Requests 2 & 3. Opp. at 14-15. The V3 data, however, fails to rebut or even contradict Plaintiffs' allegations and proffered evidence. Nor could it. As Dr. Lasater concedes, none of the data he analyzed included the individual conclusion made by any individual physician or the amount any individual physician has been paid. *See* ECF No. 111-2 at 8.

Plaintiffs have alleged essential, particularized facts demonstrating Defendants' history of biased claims administration that warrants discovery beyond the administrative record to evaluate the degree of its common impact on Plaintiffs' decisions. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008); *Helton*, 709 F.3d at 355 ("important for courts to have access to adequate evidence to assess … how [a] conflict of interest may have impacted a contested benefits determination")[2] Here, other claimants decision letters and physician reports are in Defendants' possession and are necessary to assist the Court in adequately assessing the degree of *impact* of Defendants' history of bad faith claims administration, knowing use and reliance on biased physician reports, and failure to take active steps to reduce potential bias and promote accuracy on Plaintiffs claims, as required by *Booth* factor eight. The decision letters and Plan physician reports

---

[2] Contrary to Defendants' assertions, extra-record ERISA discovery is now common. *See, e.g.*, *Chavis*, 2019 WL 4879015, at *6, *8; *Balkin v. Unum Life Ins. Co.*, 2022 WL 1136887, at *3 (D. Md. Apr. 18, 2022); *Chughtai v. Metro. Life Ins. Co.*, 2019 WL 4199036, at *3 (D. Md. Sept. 5, 2019); *Kane v. UPS Pension Plan Bd. of Trs.*, 2012 WL 5869307, at *5 (D. Md. Nov. 19, 2012).

for other claimants contain critical information and interpretations missing from the Plaintiffs'

own administrative records, including on Defendants' "pattern or practice of unreasonably denying

meritorious claims," *see Glenn*, 554 U.S. at 123 (Roberts, C.J., concurring), and the underlying

information (i.e., decision letters and physician reports) could reasonably lead to "more powerful

evidence" of the fiduciary's motives, conflict, or bias such as "statistics showing a parsimonious

pattern of assessments disfavorable to claimants," *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893,

902-03 (9th Cir. 2016).  For example, decision letters and physician reports for other claimants

who similarly applied for the same benefits during the same period, contain information necessary

to fill large gaps in Plaintiffs' administrative records relevant to whether past Plan physicians

demonstrate a pattern or practice of unreasonably denying meritorious claims or overwhelmingly

concluding that claimants were not disabled.

Plaintiffs are also entitled to discovery outside the administrative records, including the

requested decision letters because of the detailed factual allegations in the Amended Complaint

that spell out Defendants' history of biased claims administration reflected in multiple published

opinions from other federal courts.[3]  Am. Compl. ¶¶ 4, 21, 340 (collecting cases).  As explained

---

[3] *E.g.*, *Jani v. Bell*, 209 F. App'x 305, 317-20 (4th Cir. 2006) ("culpable conduct, if not bad faith"); *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan* , 95 F.4th 964, 969-975 (5th Cir. 2024) ("lopsided system aggressively stacked against disabled players."; "Plan's disregard of players' rights under ERISA and the Plan are disturbing"); *Cloud*, 2022 WL 1203099, at *1-2 (N.D. Tex. Apr. 21, 2022) (Plan acted for "self-serving reasons"…to "bolster [its] image in the eyes of the public … at the expense of individuals"); *Dimry*, 487 F. Supp. 3d 807, 818 (N.D. Cal. 2020) ("Board "acted as an adversary, not a fiduciary"), *aff'd and remanded*, 855 F. App'x 332 (9th Cir. 2021); *Dimry*, 2022 WL 1786576, at *3 (N.D. Cal. June 1, 2022) (Defendants' Medical Advisory Physician's "opinion [wa]s not persuasive and [wa]s instead 'illogical' and 'implausible'", "course of dealing suggests an intent to deny… regardless of the evidence. … Board 'simply adopted the opinions of its retained physicians by default.'"); *Moore v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 282 F. App'x 599, 601 (9th Cir. 2008) (Board abused its discretion); *Brumm v. Bert Bell NFL Ret. Plan*, 995 F.2d 1433, 1434-39 (8th Cir. 1993) (same, unreasonably interpreting Plan to exclude cumulative injuries, and inadequate notices violated ERISA); *Solomon v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 860 F.3d 259, 266 (4th Cir. 2017) (same, stripping Board of arbitrary

in *Cloud*, after permitting discovery outside the administrative record including into other players'

decision letters,

> Over the course of trial, Defendant's counsel commented to the Court that several facets of this case, including taking depositions of Committee and Board members and conducting a bench trial, have been "unprecedented." But despite counsel's intimation, the Court's conclusion that the Board abused its discretion and did not provide a full and fair review on numerous bases—indeed, at nearly each step of the review process—is hardly unprecedented, and Plaintiff's allegations against Defendant and the Board are hardly unique. Dozens of former NFL players have lodged similar challenges, and the Court's findings echo the concerns already expressed by courts across the country.

*Cloud*, 2022 WL 2237451, at *44 (collecting cases; internal citations omitted).

Additionally, Defendants claim that Plaintiffs offer nothing more than *ipse dixit* to support

inconsistent interpretations of Plan terms.  This is false.  *See* Mot. to Compel at 13 n.14.  Plaintiffs

identify specific examples of inconsistent interpretations of Plan terms and inconsistent treatment

of similarly situated Players in violation of ERISA that justify Requests 2 & 3, including:

---

restrictions on evidence it would consider after Defendant disregarded Fourth Circuit's prior holding in *Jani*); *Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2012 WL 2374661, at *14-15 (D. Md. June 19, 2012) (same, "A 'reasoning mind' would not accept the undetailed reports" of the Board's "Neutral Physicians" "as 'sufficient'"); *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2013 WL 6909200, at *16-17, *26 (D. Md. Dec. 31, 2013) (same; "rationale for denying… amount[ed] to a 'Hail Mary' pass"); *In re Marshall*, 261 F. App'x 522, 526 (4th Cir. Jan. 2008) (same, ignored evidence favorable to Player); *Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 593-595 (11th Cir. 2020) (same, "failed to consider the combined effect of… impairments", "wholly failed to consider record evidence that contradicted… Neutral Physicians. The Board said it 'reviewed [the] entire file,' but that statement is belied by the record."); *Carter v. Bert Bell/ Pete Rozelle NFL Ret. Plan*, 2012 WL 6043050, at *3-4 (N.D. Ala. Dec. 3, 2012) (same, "determination incomplete and unjust"); *Ashmore v. NFL Player Disability & Neurocognitive Benefit Plan,* 2018 WL 3424453, at *9 (S.D. Fla. June 15, 2018) (same, "defie[d] all reason and common sense"); *Armstrong v. Bert Bell NFL Player Ret. Plan & Tr. Agreement*, 646 F. Supp. 1094, 1095 (D. Colo. 1986) (Board a player's "most implacable foe").

- Plan terms within the definition of "Neutral Physician" including "adequate determination" and "maintain a network." *See, e.g.* Am. Compl. ¶¶ 45-53, 71, 113, 154, 168;[4]

- Plan's T & P General Standard, including Plan terms "substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit" and "educational level and prior training of a Player will not be considered in determining whether such Player is" T & P disabled. *See, e.g.*, Am. Compl. ¶¶ 60, 61, 71, 168, 179-82, 225, 283;

- Plan terms for LOD points. *See, e.g.*, Am. Compl. ¶¶ 73-74, 196, 210, 235, 285;[5]

- Plan terms prescribing NC benefits standard for mild and moderate impairments, including that impairments "reflect acquired brain dysfunction." *See, e.g.*, Am. Compl. ¶¶ 77-79, 153, 155-56, 159, 160, 197, 251-55, 258, 261, 264-65;

- Plan terms for the Active and Inactive categories of T & P disability, as well as Special Rules in Plan § 3.5. *See, e.g.*, Am. Compl. ¶¶ 63-69, 191-93, 284, 293-94;

---

[4] *See, e.g.*, Ex. E at NFL_ALFORD-0004685 (interpreting adequate determination as permitting reliance on flawed Neutral Physician report that violated plain terms of Plan); (*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2018 WL 1258147, at *4 (N.D. Cal. Mar. 12, 2018) (Plan "not entitled to decide a benefits claim by mere default to a Plan-selected physician. That is the abandonment of discretion, not the exercise of it.); *Stewart*, 2012 WL 2374661, at *14-15 (Defendants unreasonably "accept[ed] the flawed, inconsistent, [and] undetailed reports of… Neutral Physicians as adequate");

[5] *See, e.g.*, Ex. H at NFL_ALFORD-0001243 (failing to award two points for right shoulder "Symptomatic Acromioclavicular Joint Inflammation" despite Dr. Cook's own physician report stating "He also had AC joint inflammation"); *compare* Ex. I at NFL_ALFORD-0026412 (failing to award LOD points for MCL tear with instability because of a standard not contained within Plan's terms- "He was able to play after the injury while in the NFL. This does not constitute instability") *with* Ex. J at NFLPLTFS-0001949 (awarding another player two Points for occurrence of MCL tear with instability for Player that was able to play after the injury while in the NFL).

- Plan terms "Arising out of League football activities" including Plan terms "combination" and "disability(ies)." *See, e.g.*, Am. Compl. ¶¶ 64-69, 72-73;

- Plan terms concerning what documents and information Defendants must review. *See, e.g.*, Am. Compl. ¶¶ 37, 40-42, 99, 214, 226, 238, 284, 298, 312-15; and

- Inconsistent and discriminatory treatment of similarly situated players based on race. *See* Ex. C at NFL ALFORD-0011462 (requiring Plan physicians to apply Heaton norms[6]);

The limited information produced by Defendants to date fully support plaintiffs' allegations of inconsistency. *Compare* Ex. A at NFL_ALFORD-0000918, Ex. D at NFL_ALFORD-0009846, *and* Ex. D at NFL_ALFORD-0008983 (decision letters asserting Board reviewed all the evidence in the "Plan file") *with Cloud*, 2022 WL 2237451, at *12 ("Board members do not review all the documents in the administrative record"); *compare* Ex. C at NFL_ALFORD-0011462, Ex. D at NFL_ALFORD-0004685, *and* Ex. B at NFL_ALFORD-0009965 (physician reports discussing use of education and training) *with* ECF No. 115-6 at 6 (2021 Plan §3.1(e) (providing that "educational level and prior training of a Player will not be considered in determining whether a Player" is T&P); *compare* Ex. K at NFL_ALFORD-0000828 (score on "Symbol Search" neuropsychological test interpreted as "Below Average") *with* Ex. L at NFL_ALFORD-0009019 (inconsistently, same score interpreted as "Mild Impairment"); *compare* Ex. M NFL_ALFORD-0002515 (Board noting "cumulative effect of your impairments"

---

[6] "Heaton Norms are demographically corrected or adjusted and take into account such factors as race, age, gender, and educational level." *Jefferson v. Sellers*, 250 F. Supp. 3d 1340, 1365-1366 (N.D. Ga. 2017); *see also* Ex. B at NFL_ALFORD-0009965 (Plaintiff Sims' "age, gender, ethnicity, and education" explicitly considered).

was not considered) *with Stewart*, 2012 WL 2374661, at *7 (inconsistently, Board asking Plan physician to consider "cumulative effect" of injuries).

Plaintiffs' administrative records, though, contain gaps as to prior interpretations of relevant Plan terms in other claimants' decision letters and physician reports. Documents responsive to Requests 2 & 3 will lay bare specific inconsistent interpretations of at-issue Plan terms and inconsistent treatment of similarly situated claimants contained within other Players' determination letters and Plan-commissioned physician reports and would fill the gaps in Plaintiffs' administrative records and permit the Court to adequately assess the fourth and sixth *Booth* factors. *See Helton*, 709 F.3d at 353; *Cloud*, 2021 WL 4477720, at *6 (compelling production of prior decision letters to evaluate Board interpretation of Plan terms); *Cloud*, 2022 WL 2805527, at *5 (noting compelled discovery of prior decision letters "was key to showing that Defendant's interpretation of certain Plan provisions was… abuse of discretion").

Critically, Defendants fail to even acknowledge, let alone address, Plaintiffs' argument that the requested discovery is necessary for the Court to adequately assess the alleged "pattern or practice" of ERISA violations, as required by *Booth* factor six. For example, Defendants have no response to Plaintiffs' arguments that discovery is necessary for the Court to assess whether Defendants have a pattern or practice of failing to "ensure that *all* claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision." *See* Mem. in supp. of Mot. to Compel at 24-25 (citing 29 C.F.R. § 2560.503-1(b)(7); 2560.503–1(l)(2)(ii)). Defendants, in fact, effectively admit to such gaps because neither Plaintiffs' own administrative records nor the limited information produced by Defendants contain the necessary information on the patterns of any *specific* conclusions made

- 9 -

by Plan compensated physicians on "all claims and appeals." *See* ECF No. 115-4 at 13 ("a Neutral Physician's individual conclusion is not listed in the data.").

Moreover, the Federal Rules do not permit Defendants to engage in selective disclosure of responsive information that defines the scope of information available to Plaintiffs' expert. *See* Opp. at 14 n.5. Defendants are attempting to mount a defense based on partial data of their own design.[7] Rather than producing documents "as they are kept in the usual course of business," Fed. R. Civ. P. 34(b)(E)(i), Defendants have cherry-picked select fields from a database that does not capture or contain key information from the decision letters or physician reports. For example, Defendants submitted a declaration from Mr. Vincent that states the V3 system tracks payments associated with physician visits, ECF No. 115-4 at 13 (listing "physician or player travel, examination fees, diagnostic fees"), but the V3 data produced to Plaintiffs omits this information and includes none of these fields. *See Helton*, 709 F.3d at 353 (regarding third *Booth* factor, defendant "withheld from the administrative record highly relevant pieces of information").

Finally, the fact that Defendants have proffered an irrelevant expert opinion wholly reliant on incomplete data in opposing Plaintiffs' class certification motion and to support two of their summary judgment motions is also inapposite. Dr. Lasater's decision to opine on physician bias without reference to the actual decisions rendered by any physician individually, or all relevant information about compensation, is one that Plaintiffs are fully prepared to challenge at the appropriate time, can neither condemn Plaintiffs' expert(s) to duplicate the same methodological failings nor justify a refusal to produce the physician reports which contain the information

---

[7] See *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 794 (3d Cir. 2010) ("To allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden… would be absurd" because "especially one whose decision-making has been affected by that conflict, is not at all likely to volunteer that information.").

necessary to fill the gaps in the administrative records for the Court to assess the *Booth* factors, as well as Defendants' breaches of fiduciary duties. To the contrary, Defendants' decision to support dispositive motions with a declaration from an expert purporting to analyze physician bias without reference to particular physician conclusions makes it clear that the information sought by Requests 2 & 3 is directly relevant to the claims and defenses at issue in this litigation, and that this extra-record discovery "would fill gaps in the record" and is necessary to assess the *Booth* factors. *Helton*, 709 F.3d at 356.[8] Accordingly, the production of documents responsive to Request 2 & 3 should be compelled.

### C. Any Limited Burden from the Production of Responsive Documents Is Proportional to the Needs of the Case.

Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here,

---

[8] Defendants' argument that extra-record discovery that is unrelated to a structural conflict of interest issue is misguided. Opp. at 19. The Supreme Court has expressly rejected a one-size-fits-all approach because "[b]enefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts—which themselves vary in kind and in degree of seriousness." *Glenn*, 554 U.S. at 116. Although evidence of a structural conflict is one accepted rationale for such discovery, as well as one type of improper motive or conflict for the Court to evaluate under *Booth* factor eight, *see, e.g.*, *Balkin*, 2022 WL 1136887, at *3, it is certainly not the only one. *See, e.g.*, *Chavis*, 2019 WL 4879015, at *8-9 (compelling discovery outside the administrative record relevant to breach of fiduciary duty, and relevant because bridges gaps to multiple *Booth* factors including inconsistent interpretations under *Booth* factor four and inconsistent treatment in violation of ERISA under *Booth* factor six); *Helton*, 709 F.3d at 356 (describing "facially apparent" evidence outside the administrative record may be relevant to earlier interpretations of the Plan as is required by *Booth* factor four, and "similarly, one can envision many circumstances in which a court would need to look to extrinsic evidence to evaluate the adequacy of the administrative record, as is required by the third factor, *or* the impact of a plan fiduciary's conflict of interest, as is required by the eighth factor."); *see also Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 139 (2d Cir. 2010). ("That the board is (by requirement of statute) evenly balanced between union and employer does not negate the conflict.")

Defendants' claimed burden merits no weight because Defendants have produced such documents in prior ERISA cases—when ordered to do so. *See Cloud*, 2021 WL 4477720, at *6; *Cloud*, (N.D. Tex. July 18, 2022) (Defendant "compelled to produce certain relevant documents, including its prior decision letters" for other claimants). Moreover, the needs of physician reports and decision letters in this case outweighs the limited and manageable burden.[9] Requests 2 & 3 seek information critical to the issue at stake in the action—the actual decisions and reports from the Plan's physicians are necessary to understand the scope and impact of the Board's biased claims process. This necessary information lies exclusively in the control of the Board, the fiduciary of the Plan—which has more than $9 billion in assets. Am. Compl. ¶ 17.

### D. The Putative Class Action Posture of the Litigation Is Irrelevant.

Defendants' next claim that Requests 2 & 3 are disproportionate to the needs of the case because Plaintiffs have alleged that their claims are typical of the claims of the class. Opp. at 16-17. That contention is disingenuous because, in their class certification opposition memorandum, Defendants argue that Plaintiffs' claims are *not* typical of those of absent members. *See* ECF No. 111 at 36-38. Irrespective of whether they satisfy the Rule 23(a)(3) typicality element, Plaintiffs are entitled to the requested discovery because it relates directly to the *merits* of their claims.

Contrary to Defendants' argument that Plaintiffs seek to engage in a generalized expedition for inconsistencies in benefit determinations, Plaintiffs have requested the specific documents— benefit decision letters and Plan-commissioned physician reports—necessary to fill in the gaps in the administrative records to adequately assess the impact of Defendants' motives and various

---

[9] Federal Regulations state that "a plan cannot contract with a medical expert based on the expert's reputation for outcomes in contested cases," and the Department of Labor rejected concerns that this requirement may cause plans to incur costs responding to claimants' requests for statistics and other information in cases where a medical expert expressed opinions in support of denying versus granting a disability benefit claim. *See* 81 Fed. Reg. 92316, 92319, 92338 (Dec. 19, 2016).

conflicts of interest, including a history of biased claims administration, and failures to take active steps to reduce bias and promote accuracy on both an individual and class-wide basis. Therefore, the putative class action posture of this action has no bearing on the requested discovery.

### E. Defendants' Meritless Summary Judgment Motions Do Not Excuse Their Refusal to Participate in Discovery.

Finally, Defendants maintain that they can short-circuit discovery because they have filed—months before the deadline for completion of discovery—individual motions for summary judgment as to three of the ten named plaintiffs. Opp. at 18. At bottom, Defendants' argument advances an unprecedented, and quite brazen, standard: Plaintiffs are not entitled to the discovery sought in Requests 2 & 3 because, in Defendants' view, Plaintiffs do not have a case. Defendants' motions are meritless, and Plaintiffs will respond to their substance at the appropriate time. Regardless, this argument provides no basis to deny Plaintiffs discovery of critical documents.

First, Defendants baselessly claim that the three motions "cover all of the claims" at issue. Opp. at 18. This is flatly wrong. Defendants' motions address just three of the named plaintiffs and justify dismissal of none.[10]

Second, as the case cited by Defendants, *Campbell*, explains, "ordinarily, summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable discovery.'" *Campbell v. Perkins*, 2023 WL 6161086, at *5 (D. Md. Sept. 21, 2023) (quoting *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011)). While Defendants aptly repeat the standard for Rule 56(d), the Rule does not apply here, where this motion to compel arises outside the context of future oppositions to Defendants' motions.

---

[10] Defendants repeatedly make the false assertion that Plaintiff Parsons lacks standing despite the Court denying Defendants' motion to dismiss his breach of fiduciary duty claims pursuant to ERISA § 502(a)(2) on behalf of the Plan itself. *See* ECF No. 78 at 36-37.

Third, if the Rule 56(d) standard applied, which it patently does not, the discovery sought by Requests 2 & 3 would add to the genuine issue of material fact that already exists regarding the bias of Plan-compensated physicians. *See e.g.*, ECF No. 115-2 at 12-24 (justifying claim denial based on evaluation of physician alone); 23-24 (identifying conflict between statistics in Plaintiffs' Amended Complaint and conclusions reached by Dr. Lasater without reference to *individual* physician determinations). The Rule 56 "requires that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," especially where, as here, "most of the key evidence lies in the control of the moving party." *Putney v. Likin*, 656 F. App'x 632, 639-40 (4th Cir. 2016). This Court has already determined that "Plaintiffs plausibly allege that the Board acted inconsistently with the Plan's purpose and goal, did not consider the entire record, inappropriately relied on Neutral Physicians' conclusions, provided interpretations inconsistent with Plan provisions and ERISA requirements, failed to provide reasoned decisions, and that bad faith motives and bias influenced their decisions." ECF No. 78 at 18. Additionally, this Court was "also satisfied that Plaintiffs' allegations are sufficient to meet the [heightened] pleading requirement of Rule 9(b)" because the fraudulent scheme and fraudulent misrepresentations allegations in the amended complaint were "*more than ample* to satisfy this standard." *Id.* at 36-37. Defendants cannot now refuse to provide the very discovery necessary to pursue and prove those claims.

## CONCLUSION

For the aforementioned reasons, the Court should overrule Defendants' objections and compel Defendants to immediately produce documents responsive to Plaintiffs' Requests #2 and #3.

Dated:  December 20, 2024.

Respectfully submitted,

**SEEGER WEISS LLP**

By:  _/s/ Benjamin R. Barnett_
Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut St, Ste 917
Philadelphia, PA 19106
Telephone: (215) 553-7980
bbarnett@seegerweiss.com

_**Counsel for Plaintiffs and for the
Proposed Class and Subclasses**_

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
Facsimile:  (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

_**Counsel for Plaintiffs and Liaison Counsel
for the Proposed Class and Subclasses**_

Christopher A. Seeger _(admitted pro hac vice)_
Diogenes P. Kekatos _(admitted pro hac vice)_
Caleb A. Seeley _(admitted pro hac vice)_
Hillary R. Fidler _(admitted pro hac vice)_
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660

Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegereiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
D. Nicole Guntner *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
NGuntner@awkolaw.com
BBradford@awkolaw.com

***Counsel for Plaintiffs and for the
Proposed Class and Subclasses***

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***