## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

## BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | **No. 1:23-cv-00358-JRR** |
| vs. | |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE DEADLINES FOR THEIR SUMMARY JUDGMENT OPPOSITION AND CLASS CERTIFICATION REPLY PAPERS AND FOR THEIR RULE 26(a)(2) EXPERT DISCLOSURES, APPOINTMENT OR DESIGNATION OF A MAGISTRATE JUDGE OR SPECIAL MASTER TO OVERSEE DISCOVERY, AND CONVENING OF AN IN-PERSON STATUS CONFERENCE**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................... 2

    A.   Defendants' Opposition Is Based on An Entirely False Premise That
        Plaintiffs Failed to Produce Discovery .................................................................. 2

    B.   Plaintiffs Have Diligently Pursued Discovery, and Their Motion to
        Compel Is Neither Untimely Nor Meritless ........................................................... 4

    C.   Defendants' Half-Truths Concerning Discovery to Date and the
        Depositions That Plaintiffs Have Noticed ............................................................. 6

III.  CONCLUSION ............................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balkin v. Unum Life Ins. Co.*,
  No. GLS 21-1623, 2022 WL 1136887 (D. Md. Apr. 18, 2022)................................................. 9

*Chughtai v. Metro. Life Ins. Co.*,
  No. PWG-19-CV-848, 2019 WL 4199036 (D. Md. Sept. 5, 2019) ........................................... 9

*Helton v. AT & T Inc.*,
  709 F.3d 343 (4th Cir. 2013)..................................................................................................... 9

*Howley v. Mellon Financial Corp.*,
  625 F.3d 788 (3d Cir. 2010) ..................................................................................................... 9

*Kane v. UPS Pension Plan Bd. of Trs.*,
  No. RDB-11-03719, 2012 WL 5869307 (D. Md. Nov. 19, 2012)............................................. 9

*Metropolitan Life Insurance Co. v. Glenn*,
  554 U.S. 105 (2008) ................................................................................................................. 9

*Patel v. United of Omaha Life Ins. Co.*,
  No. DKC-12-0880, 2012 WL 2370129, at *2 (D. Md. June 21, 2012) …...…………………4

**Rules**

D. Md. Civ. R. 105.9................................................................................................................... 3

D. Md. Civ. R.  104.7.................................................................................................................. 1

D. Md. Civ. R. 104.8(a) .............................................................................................................. 6

Fed. R. Civ. P 26(a)(1)................................................................................................................ 7

Fed. R. Civ. P 26(a)(2)............................................................................................................. 1, 9

Fed. R. Civ. P 26(f).................................................................................................................. 5, 6

Fed. R. Civ. P 34(b)(2)(C) .......................................................................................................... 6

Fed. R. Civ. P 56(d) .................................................................................................................... 8

**Other Authorities**

Gregory F. Jacob and Alireza Gharagozlou, "*Troiano v. Aetna*, *Geiger v. Aetna*, and the
  Permissible Scope of Discovery Regarding an Administrator's Conflict of Interest,"
  25 No. 1 ERISA Litig. Rep. NL 4 (Feb. 2017) .......................................................................... 9

## I.    INTRODUCTION

Defendants' strident opposition (ECF No. 133) ("Response") to Plaintiffs' motion to extend the summary judgment, class certification, and Rule 26(a)(2) expert disclosure deadlines is an unfortunate and unfounded blend of outright misstatements, half-truths, and red herring arguments, all designed to distract the Court and disguise Defendants' deny and delay discovery strategy.[1] Defendants falsely accuse Plaintiffs' counsel of failing to diligently pursue discovery in the case when the record amply demonstrates the opposite. Moreover, the relief that Plaintiffs seek is fully justified and necessary given Defendants' refusal to timely produce relevant files consistent with the Federal Rules of Civil of Procedure and Fourth Circuit and District of Maryland decisional law.[2] Defendants' global strategy could not be more plain—manufacture a distorted, one-sided factual record by refusing to produce reams of plainly relevant information to Plaintiffs in discovery, while seeking to bar Plaintiffs from examining some of Defendants' declarants, and opposing any significant adjustment of the current compound deadlines that would allow Plaintiffs time to obtain and assess the relevant documents and properly prepare to examine their witnesses.

Defendants' deny-and-delay discovery strategy—evident from prior ERISA litigation involving these same Defendants-is what forced Plaintiffs to previously seek three extensions (by agreement) for their expert disclosures, and their continued stonewalling necessitates removing

---

[1] This reply memorandum adopts the definitions and shorthand terms employed in Plaintiffs' opening memorandum in support of this motion (ECF No. 132-1) and in the Amended Complaint (ECF No. 56). Except where otherwise indicated, internal citations, internal quotation marks, and footnotes are omitted from all quotations and emphasis is added.

[2] The most recent example of Defendants' "the discovery rules don't apply to us" attitude was the attachment and filing of Defendants' entire Opposition to Plaintiffs' Motion to Compel at 12:14 a.m. on December 23, 2024, more than twelve hours before the parties conducted the final meet-and-confer discussion required by Local Rule 104.7 prior to filing the motion to compel which by agreement was scheduled for 5:00 p.m. on December 23rd. Defendants offer no explanation why they considered themselves exempt from the LR 104.7 certification requirement imposed on Plaintiffs as the party moving to compel.

deadlines for future filings until these fundamental discovery issues are addressed and resolved. Absent a fundamental change, Plaintiffs anticipate having to file a series of motions to compel. Maintaining the current schedule would force Plaintiffs to respond to Defendants' dispositive motions before discovery is anywhere close to completion requiring Plaintiffs to depose Defendants' key fact and expert witnesses multiple times, first now, without access to relevant evidence and ESI, and again after such documents are produced. Such a process is unnecessary and inefficient and would result in manifest injustice to Plaintiffs. To avoid that outcome, Plaintiffs respectfully request that the Court suspend all current deadlines in the scheduling order, convene an in-person conference in January 2025 to address these issues, and consider the appointment of a U.S. Magistrate Judge or Special Master to oversee and assist with discovery in this case. These actions are the only way to ensure that fact discovery will be conducted and completed consistent with the Court's current May 2025 deadline.

## II.    ARGUMENT

### A.    Defendants' Opposition Is Based on An Entirely False Premise That Plaintiffs Failed to Produce Discovery[3]

Astoundingly, counsel for Defendants represent in a signed court filing that Plaintiffs has not "produce[] a single shred of supporting statistical analysis or calculations" in response to Defendants' discovery requests, and that this demonstrates that "the emperor has no clothes."

---

[3] Defendants begin their Response by castigating Plaintiffs for not setting forth their position in full after Plaintiffs sought their consent to the relief sought in this Motion. Response at 1-5; *see also* ECF No. 133-1 at 3-4 (Garagiola Decl. ¶¶ 6-7). There is no real substance to Defendants' complaint. Local Rule ("LR") 105.9 requires only that "[c]ounsel shall state in the motion whether the consent of other counsel has been obtained." It does not obligate a moving party to include a summary or preview of the opposing party's opposition memorandum, and counsel for Plaintiffs immediately and forthrightly so advised Defendants' counsel when the latter sent their lengthy multi-paragraph refusal to consent and insisted that Plaintiffs include it in their then-forthcoming motion. ECF No. 133-4 at 2 (Garagiola Decl., Ex. C).

Response at 1-2. These statements are categorically false. In early October 2024, Plaintiffs produced to Defendants *every* decision letter and Physician Report Form ("PRF") that formed the basis of the Amended Complaint's statistical allegations. Reply Decl. of Benjamin R. Barnett, dated Dec. 26, 2024 ("Barnett Reply Decl.") ¶ 18.  Counsel for Plaintiffs also produced twenty-three IRS Form 5500s, from both the Player Disability and Neurocognitive Benefit and Bert Bell/Pete Rozelle NFL Player Retirement Plans, which reflect the compensation paid Neutral Physicians by Defendants alleged in the Amended Complaint.  *Id.* The fact that the Decision Letters are already in Defendants' possession, custody, and control and that the Form 5500s produced are public records is of no consequence.  In sum, Plaintiffs' document productions dwarf the anemic non-administrative records ("AR") productions made by Defendants to date, and Defendants and their putative expert, Dr. Lasater, have had *all* of the underlying factual information to test and validate the allegations in the Amended Complaint since October 9, 2024.

Defendants have now conceded through discovery that they do not maintain a comprehensive database that records the individual decisions made by physicians for each applicant. *See* ECF Nos. 115-4 at 13 (Vincent Decl. ¶ 42). The sole sources of this critical information—the Decision Letters and Physician Report Forms ("PRFs")—are precisely what Plaintiffs seek in discovery. Tellingly, Defendants chose not to provide these Decision Letters or PRFs to their own putative expert, Dr. Lasater. Instead, Defendants chose to rely on data from their V3 system—a system that to date they refuse to produce in discovery and one that contains only aggregated data not the individualized physician decisions at issue in this case.[4]

---

[4] Defendants' focus on Plaintiffs' "statistical sample" is a transparent attempt to deflect from their own discovery failures.  The reality is simple:  Defendants admit they have no database that captures or tracks individual physician recommendations, a fundamental ERISA fiduciary obligation.  Given this failure, Defendants attempt to take advantage of Plaintiffs' labor in having compiled information from Defendants' decision letters by requesting that Plaintiffs produce the

**B.    Plaintiffs Have Diligently Pursued Discovery, and Their Motion to Compel Is Neither Untimely Nor Meritless**

Next, Defendants maintain that Plaintiffs have dragged their feet throughout the discovery process and that Plaintiffs' motion to compel discovery is both untimely and meritless.  Response at 7-8.  It is the height of irony for Defendants to make this accusation given their stonewalling over discovery outside the Administrative Records ("ARs") relating to Plaintiffs' benefits applications.

The actual record tells a very different story: Plaintiffs have pursued discovery diligently and in good faith and timely brought their motion to compel, despite Defendants' consistent pattern of delay, obfuscation, and incomplete disclosures. Plaintiffs requested the ARs for the Named Plaintiffs on July 3, 2024, anticipating a complete production by August 7, 2024, as promised by Defendants. Instead, the initial production was incomplete, with significant omissions. Barnett Reply Decl. ¶¶ 2-4. Defendants finally completed this production on November 18, 2024—nearly two months after Plaintiffs raised the issue of omissions on September 24, 2024—and confirmed its completeness only on December 18, 2024. *Id*. ¶¶ 5-6. These delays forced Plaintiffs to wait before serving targeted discovery requests, as is prudent in ERISA cases where the completeness of the ARs informs the scope of additional discovery.  *See Patel v. United of Omaha Life Ins. Co*., No. DKC-12-0880, 2012 WL 2370129, at *2 (D. Md. June 21, 2012) (denying request for extra-

---

data in discovery.

    This tactic does not warrant any consideration by the Court in addressing the instant motion. Plaintiffs have produced all underlying data supporting the statistical allegations in the Amended Complaint and have consistently asserted attorney work product protection over the creation of the statistical sample. Defendants failed to timely challenge this position or respond to Plaintiffs' detailed legal explanation for nearly two months.  *See* Barnett Reply Decl. ¶ 24.  Given the passage of time and Defendants' inaction, any motion to compel regarding Plaintiffs' statistical sample would, at this point, be untimely as well as irrelevant to the issues pending before the Court.

4

record discovery as premature where administrative record had not yet been produced).   In addition, Plaintiffs sought to complete the Rule 26(f) discussion and disclosure process in order to serve targeted discovery—but their efforts were largely thwarted by Defendants' refusal to fully or fairly engage in the process.  *Id.* ¶¶ 8-9.  Defendants' refusal to fully engage in the Rule 26(f) process and their delayed disclosure of key databases—V3, the Meetings Website, and the statistical database maintained by Dr. Garmoe—makes their opposition to Plaintiffs' extension request untenable. *Id* ¶ 9. Had Defendants been forthcoming during the Rule 26(f) conferences in July and August 2024, Plaintiffs would be in a far better position to proceed without the need for extensions. Instead, Defendants failed to fully or fairly identify any of the three systems during the Rule 26(f) process,  hindering Plaintiffs' ability to draft and serve targeted discovery, and they are now attempt to penalize Plaintiffs for seeking the information that they withheld.

For instance, Defendants failed to disclose that the V3 database is their "system of record" for tracking benefit applications and appeals, as described in declarations submitted months later in support of their motions for summary judgment. *Id.* ¶ 10. Similarly, Defendants resisted providing information about the Meetings Website, which contains records necessary to understanding how benefit claims are processed and reviewed, only revealing its third-party hosting after repeated requests and incomplete responses.  *Id.* ¶ 11.  What is more, the statistical database—contracted by Defendants in 2013 to aggregate data for reporting and physician training—was never mentioned in the Rule 26(f) conferences or initial disclosures. Plaintiffs discovered its existence only through Defendants' limited document productions and received substantive details through a declaration filed just weeks ago.  *Id.* ¶ 12.  Defendants cannot withhold critical information during discovery and then criticize Plaintiffs for seeking the time necessary to uncover it.

Despite not receiving confirmation that Defendants' production of the ARs was complete until last week, on December 18, and being unable to meaningfully engage in Rule 26(f) conferences due to Defendants' lack of cooperation, Plaintiffs diligently and promptly propounded their First Set of Requests to Defendants for Production of Documents and their First Set of Interrogatories to Defendants on August 28, 2024 ("Discovery Requests"). *Id.* ¶ 13. Defendants served their responses to those discovery requests on September 27, 2024. *Id.* ¶ 14. Their responses, however, failed to comply with Rule 34(b)(2)(C) because Defendants did not specify whether any responsive documents were withheld and instead offered vague objections. Despite Plaintiffs' follow-up correspondences on November 15 and December 11, 2024, Defendants did not provide amended responses until December 18, 2024. *Id.* ¶ 15. While waiting for Defendants' amended responses, the parties met and conferred on several occasions concerning their respective discovery responses, and Plaintiffs agreed to Defendants' proposal for the Local Rule 104.8(a) deadline for the service of motion compel papers. *Id.* ¶20.- That extension required Plaintiffs to serve their motion to compel by November 26, 2024, which they did. *Id.* ¶ 20.[5]

## C. Defendants' Half-Truths Concerning Discovery to Date and the Depositions That Plaintiffs Have Noticed

Asserting that they "have already made robust discovery productions over the course of

---

[5] The other so-called "delays" cited by Defendants are so inconsequential that do not deserve comment other than for the sake of completeness. Defendants complain about the amount of time required to negotiate the Stipulated Protective Order and the ESI protocol (ECF Nos. 104, 110). The time spent in negotiations was legitimate and necessary and had no bearing on the core issues here: namely, Defendants' resistance to discovery, the premature timing of their summary judgment motions, the right to depose Defendants' putative expert with individualized rather than aggregated data, and the opportunity to offer rebuttal evidence. Likewise, Defendants' complaints about the timing of Plaintiffs' Rule 26(a)(1) Initial Disclosures had no actual impact of discovery in this case. There was an agreement among counsel to tie service of the Initial Disclosures to completion of the Rule 26(f) process. Because Defendants never fully engaged in that process no Rule 26(f) report was ever filed with the Court. *All* of the information that Plaintiffs supplied in their Initial Disclosures was already known to Defendants. *Id.* ¶¶ 14-15.

several months," Defendants proclaim that Plaintiffs have "all the discovery they need" to oppose Defendants' summary judgment motions. Response at 8-9. That sweeping conclusion can only be reached by ignoring the facts that Defendants have produced little beyond the ARs of the ten individual Plaintiffs—and absolutely none of the discovery that is the subject of Plaintiffs' forthcoming motion to compel. Indeed, Defendants agreed to produce documents responsive to only six of Plaintiffs' thirty-one combined requests, severely narrowing the scope of discovery. To date, Defendants have produced only 121 documents outside the ARs, consisting mainly of expert reliance materials, plan documents, and contracts and many of which were provided only after prompting by Plaintiffs. Barnett Reply Decl. ¶ 17. Simply put, Plaintiffs have not received anything resembling "robust" discovery. In stark contrast, by October 9, 2024 Plaintiffs have produced over 2,100 documents, including every document that formed the basis of the statistical allegations in the Amended Complaint. *Id.* ¶ 19.

Relatedly, Defendants' discourse that Plaintiffs must satisfy the requirements of Rule 56(d) as a prerequisite to obtaining an extension (Response at 9) misses the point. Through the instant motion, Plaintiffs ask the Court to take Defendants' motions off the calendar indefinitely given that (a) multiple summary judgment motions disserve the interests of judicial efficiency and economy and (b) there are broad, and likely outcome-determinative issues concerning the scope of permissible discovery in this litigation that the Court first needs to resolve. Plaintiffs are not arguing that there are discrete pieces of evidence that Plaintiffs require in order to fashion a response to Defendants' motions. Put another way, Plaintiffs' argument is that there is no sound reason for three summary judgment motions—which will not streamline, let alone resolve, this litigation—to go forward at this point in the case, long before the close of discovery.

No more availing is Defendants' contention that they agreed to make Dr. Lasater and Messrs. Smith and Vicent available for deposition on the dates in early January for which Plaintiffs noticed them, and that, therefore, they "agreed to produce all three witnesses that Plaintiffs noticed for deposition in the exact date range that Plaintiffs requested them[.]". Response at 1-2, 6. Defendants' contention that they have put no roadblock in Plaintiffs' path to obtaining the discovery they need and their insinuation of a lack of candor on Plaintiffs' part concerning the noticed depositions are simply another smokescreen—one based on a quintessential half-truth.

Plaintiffs' motion to compel is all about Defendants' refusal to provide Plan-wide *written* discovery, not about their resistance to depositions. At any rate, although the need for those three depositions is, to be sure, *some* of the discovery that Plaintiffs need before filing their class certification reply and summary judgment opposition papers, Plaintiffs never suggested, either in their communications to Defendants or in their opening memorandum, that those are the *only* depositions that they require.

In this respect, Defendants conspicuously *fail* to mention that, in agreeing to make the three aforementioned witnesses available for deposition on the requested dates in early January, they stridently informed Plaintiffs that they would resist *any* further depositions—even though there are three *additional* witnesses from whom Defendants have proffered declarations in support of their summary judgment motions (namely, from Mr. Miller and Board advisors Reynolds and Williams, *see, e.g.*, ECF Nos. 115-18, 115-20, 115-21 (decls. in supp. of mot. for summ. j. as to Pl. Daniel Loper's claims))—on the grounds that "such depositions are not normally permitted in ERISA benefits and claims processing cases absent specific justification." ECF No. 133-4 at 4 (Garagiola Decl., Ex. C).   Moreover, just two days ago, Defendants informed Plaintiffs that, should Plaintiffs notice *any* further depositions, Defendants intend to move for a protective order

and seek associated fees.  Barnett Reply Decl. ¶ 25.

Putting aside that Plaintiffs' motion to compel explains the many reasons why discovery beyond the ARs is warranted in this case, Defendants cannot have it both ways. They are not entitled to submit untested, self-serving declarations as undisputed material facts concerning the operation and integrity of the Plan's claims and appeals process for purposes of opposing class certification and affirmatively seeking summary judgment, and then to turn around and argue that those same declarants (and other potential witnesses) are off limits to examination by deposition. Such a position is contrary to post-*Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), precedents in the Fourth Circuit and this District concerning discovery in ERISA cases,[6] the Federal Rules of Civil Procedure, and due process. Defendants have no authority to declare and define the relevant facts in this case and then insulate them from any challenge or review by Plaintiffs.

## III.    CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court suspend *sine die* the current due dates for Plaintiffs' papers in opposition to Defendants' three summary judgment motions (ECF Nos. 115, 123, 125), Plaintiffs' reply papers in support of their class certification motion (ECF No. 102), and Plaintiffs' Rule

---

[6] *E.g.*, *Helton v. AT & T Inc.*, 709 F.3d 343, 354 (4th Cir. 2013); *Balkin v. Unum Life Ins. Co.*, No. GLS 21-1623, 2022 WL 1136887, at *1, 3 (D. Md. Apr. 18, 2022); *Chughtai v. Metro. Life Ins. Co.*, No. PWG-19-CV-848, 2019 WL 4199036, at *3 (D. Md. Sept. 5, 2019); *Kane v. UPS Pension Plan Bd. of Trs.*, No. RDB-11-03719, 2012 WL 5869307, at *5 (D. Md. Nov. 19, 2012). Indeed, Defendants' own counsel has acknowledged the sea-change in the legal landscape concerning discovery in ERISA cases post-*Glenn*. *See* Gregory F. Jacob and Alireza Gharagozlou, "*Troiano v. Aetna*, *Geiger v. Aetna*, and the Permissible Scope of Discovery Regarding an Administrator's Conflict of Interest," 25 No. 1 ERISA Litig. Rep. NL 4 (Feb. 2017) (recognizing that district courts in the Fourth Circuit have ordered conflict discovery; also noting the Third Circuit's observation in *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 794 (3d Cir. 2010), that "[t]o allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden during the administrative process would be absurd").

26(a)(2) expert disclosures (ECF No. 120); and consider appointment or designation of a Magistrate Judge or a Special Master to oversee discovery. In connection with the requested relief, Plaintiffs further respectfully request that the Court schedule an in-person status conference sufficiently in advance of the current January 16, 2025 briefing and January 20, 2025 Rule 26(a)(2) expert disclosure deadlines to address these issues so that fact discovery in this matter can be completed on the current May 2025 schedule.

Dated:  December 27, 2024

Respectfully submitted,

**SEEGER WEISS LLP**

By:    */s/ Benjamin R. Barnett*
Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 553-7980
bbarnett@seegerweiss.com

***Counsel for Plaintiffs and for the
Proposed Class and Subclasses***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel
for the Proposed Class and Subclasses***

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*

**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 553-7980
bbarnett@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
D. Nicole Guntner *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
NGuntner@awkolaw.com
BBradford@awkolaw.com

***Counsel for Plaintiffs and for the***
***Proposed Class and Subclasses***

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***