UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>    vs.<br><br>THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL,<br><br>      Defendants. | Case No. 1:23-cv-00358-JRR |

### REPLY DECLARATION OF BENJAMIN R. BARNETT

BENJAMIN R. BARNETT declares the following pursuant to 28 U.S.C. § 1746:

1. I am a partner in the law firm of Seeger Weiss LLP and am admitted to practice in the State of Maryland, the Commonwealth of Pennsylvania, and the District of Columbia. I am also admitted to this Court. I make this Reply Declaration in further support of Plaintiffs' motion, pursuant to Rule16(b)(4) and LR 105.9 of this Court, for an extension *sine die* of the deadlines for their oppositions to Defendants' three separate summary judgment motions, their class certification reply papers, and their Rule 26(a)(2) expert disclosures; for appointment of a

Magistrate Judge or a Special Master to oversee completion of discovery in the time set by the Court; and for the convening of an in-person status conference to address all of these interrelated matters. I have personal knowledge of the matters set forth herein based on my role as counsel of record and on my review of the case file of my firm and other files.[1]

2. Plaintiffs informally requested production of the administrative records ("ARs") of the Named Plaintiffs' disability benefits claims on July 3, 2024. A true copy of that email is annexed hereto as Exhibit A.

3. Defendants represented that they would use their best efforts to complete such production by August 7, 2024. As detailed below, Defendants made an initial production of ARs on August 7, 2024, but they did not complete the production of ARs or "player files" until November 18, 2024, and confirmed that the productions were complete only on December 18, 2024.

4. Despite Defendants' representation that they would complete the AR production by August 7, and the initial production of AR files on that date, counsel for Plaintiffs were able to discern that relevant materials had been omitted from Defendants' informal productions and that the ARs produced on August 7 were thus incomplete.

5. On September 24, 2024, Plaintiffs sent Defendants a letter that listed the files that were missing from the ARs for four Named Plaintiffs. (A true copy of that email is annexed hereto as Exhibit B.) Counsel for Defendants initially balked at producing the missing materials but ultimately agreed to produce the files under the guise that the missing files were not part of the AR

---

[1] This Reply Declaration adopts the definitions and shorthand terms employed in Plaintiffs' opening memorandum in support of this motion (ECF No. 132-1) and in the Amended Complaint (ECF No. 56).

2

but rather part of a "Player File," a term which historically had been used by NFL Player Benefits Office ("NFLPBO") personnel interchangeably with the term ARs.

6. Counsel for Defendants produced the Player Files for all Named Plaintiffs on a rolling basis. Thereafter, counsel for Plaintiffs attempted twice in writing, on first November 15, 2024 and then on December 11, 2024, to confirm that these productions were complete. Defendants did not provide that confirmation (even as a courtesy) until December 18, 2024.

7. Counsel for Plaintiffs were well aware of decisional law in ERISA litigation that imposes initial limits on discovery to information relevant to their claims missing from the AR or gaps in the record required to fully and properly evaluate the claimed wrongful denial of benefits, breach of fiduciary duty, or other misconduct. *E.g.*, *Patel v. United of Omaha Life Ins. Co.*, No. DKC 12-0880, 2012 WL 2370129, at *3 (D. Md. June 21, 2012) ("Plaintiff has provided no basis for the court to determine whether any 'gaps in the administrative record' warrant outside discovery regarding the nature and effect of the conflict of interest."). Accordingly, counsel for Plaintiffs refrained from serving discovery requests until the ARs had been produced and potential gaps could be identified and evaluated.

8. Simultaneously with requesting and obtaining the ARs, counsel for Plaintiffs also sought to complete Rule 26(f) discussions and disclosure process with Defendants as required by the Federal Rules of Civil Procedure and to maximize the efficiency of future discovery. The Rule 26(f) process is of particular significance because of the numeric limits on document requests and interrogatories under LR 104.1. On July 3, 2024, counsel for Plaintiffs sent Defendants a list of fourteen proposed topics for the Rule 26(f) conference, including the identification and prioritization of key custodians and sources of potentially responsive Electronically Stored

Information ("ESI") and the details of Defendants' IT infrastructure, including the location of potentially discoverable material). A true copy of that email is annexed hereto as Exhibit C.

9. The parties thereafter had two Rule 26(f) conferences via videoconference, on July 22, 2024 and August 2, 2024. Although Defendants' counsel provided some limited information regarding their IT systems and ESI, they largely declined to meaningfully engage in the Rule 26(f) process, arguing that Plaintiffs' inquiries were premature or meta-discovery, declining to respond to specific questions, or saying that they needed to consult with their clients and never providing any further or follow-up response. The limited utility of the Rule 26(f) process attributable to Defendants' tactics is demonstrated by Defendants' failure to fully or fairly disclose the existence of three of Defendants systems—V3, a Meetings website, and a statistical database that Defendants contracted with Dr. Garmoe in June 2013 to construct and maintain – all of which contain ESI now being sought by Plaintiffs in discovery.

10. V3 Database: As noted in my opening declaration, the so-called V3 database—which Hessam ("Sam") Vincent, the Plan's Disability Relations Manager, responsible for managing the Plan's relationship with its hired physicians, characterizes in his declarations as Defendants' "system of record" for tracking claims and appeals, including the physicians assigned to evaluate benefits claimants (ECF Nos. 115-4 at 3, 13 (¶¶ 5-7, 42), 123-3 at 3, 14 (¶¶ 5-7, 43)—was neither fully nor fairly disclosed to Plaintiffs during the parties' Rule 26(f) and meet-and-confer discussions. During the July 22nd Rule 26(f) conference, Defendants' counsel made only a brief mention of the database, stating that they believed, but could not confirm, it was called "V3" and was used for handling benefit applications and appeals. At the second Rule 26(f) conference on August 2, 2024, Plaintiffs specifically sought further information about this database, but counsel for Defendants maintained that the details were largely irrelevant. At no

4

time did Defendants identify V3 as Defendants "system of record for processing and tracking applications and appeals." ECF Nos. 115-4 at 13 (Vincent Decl. ¶ 42), 123-1 at 14 (Vincent Decl. ¶ 43). The information concerning the centrality of the V3 database was provided only when Defendants filed their class certification opposition papers and affirmatively moved for summary judgment against Plaintiffs Daniel Loper and Jamize Olawale.

11. Meetings Website: ERISA requires and Plan documents declare that [i]n making its decision on review, the … Board will take into account all available information" (Amended Complaint ¶¶ 40, 41 88, 93, 98). In light of this, counsel for Plaintiffs sought the production of ESI or system data from the Meetings Website that would reveal when benefit files were uploaded, who accessed the files during the review process, the dates and times of such access, and the duration of each access. Defendants objected to any production of the Meetings Website data and admitted in response to a separate Interrogatory that "[r]eview of specific records by Neutral Physicians, Board members, and Board advisors is not tracked at a document-by-document level." *See* Defendants' Responses and Objections to Interrogatory No. 14.[2] Nevertheless, Mr. Vincent

---

[2] The Interrogatory and Defendants' response thereto are set forth here in full:

**INTERROGATORY NO. 14:**
Identify all facts, Documents, and ESI that You contend would prove that, contrary to the allegations in the Amended Complaint ¶¶ 40, 41, 88, 97, 98, 101, 284, 298, 344–47, during the Relevant Time Period, all documents, information, and other materials in the administrative record were reviewed in all Benefit Claims by the Board or Committee submitted by Claimants as required by the Plan and ERISA.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14:**
Defendants incorporate by reference each of the above-stated General Objections and Specific Objections to the Definitions and Instructions as if fully set forth herein.

Defendants object that this Interrogatory, as written, suggests that Defendants are required to disprove Plaintiffs' case, or at least, the allegations in Amended

avers in his declaration—submitted in support of Defendants' Motion for Summary Judgment (ECF No. 125-3 at 11–13)—that the Meetings Website contains "all prior records and presentations" that were made available for "review by Board and Committee members." What Defendants failed to disclose during the Rule 26(f) process, however, is that the Meetings Website is actually hosted by a third party (whose identity Defendants still have not provided). *See* Defendants' December 18, 2024 letter to Plaintiffs at 6-7 (copy annexed hereto as Exhibit D). Defendants' revised responses to Plaintiffs' first set of requests for production of documents

---

Complaint ¶¶ 40, 41, 88, 97, 98, 101, 284, 298, and 344–47, which is not the appropriate standard of proof in civil litigation. Defendants therefore object on the ground that it imposes obligations beyond those required by the Federal Rules of Civil Procedure.

Defendants further object to this Interrogatory as seeking attorney work product, attorney-client communications, and other privileged information, as it requests internal information pertaining to work that may have been conducted at the direction of counsel as part of internal investigations or in anticipation of or connected with litigation in this Action or other legal matters.
Defendants further object that this Interrogatory is also overbroad, unduly burdensome, and not proportional to the needs of the case to the extent the period identified is not limited to the period between August 9, 2019, and February 9, 2023, which is the period consistent with the Plan's 42-month limitations period preceding the filing of Plaintiffs' complaint. Plaintiffs' claims relying on applications with final decision letters dated prior to August 9, 2019, were dismissed by the Court's Order Granting Reconsideration.
Subject to and without waiving the foregoing objections, Defendants respond as follows:

Plaintiffs' Interrogatory No. 14 is premature as fact discovery is ongoing and this Interrogatory seeks to require Defendants to marshal all evidence regarding Plaintiffs' claims and Defendants' defenses. The administrative records and other documents Defendants have produced in response to Plaintiffs' Requests for Production contain numerous examples of both review and discussion of medical and other records submitted by Plaintiffs, as well as certifications by Neutral Physicians that they personally reviewed all submitted records. Review of specific records by Neutral Physicians, Board members, and Board advisors is not tracked at a document-by-document level. Defendants may supplement this Response as discovery proceeds.

further indicate that any data showing when documents were "uploaded, accessed, or reviewed" is not tracked in the systems they maintain but that "it is possible that such information could be recorded on third party systems." Despite these admissions, Defendants disclaim any obligation to produce such data. *See* Defendants' Revised Responses and Objections to Request for Production No. 15.[3] In any event, the evidence about what does and does not exist on the Meetings

---

[3] The Request for Production and Defendants' response thereto are set forth here in full:

> **REQUEST NO. 15:**
> For the Relevant Time Period, ESI (including but not limited to metadata, operating system files, access, activity, application, or audit logs or reports) sufficient to demonstrate, establish, or prove when Documents relating to, referring to, or Concerning Claimants'
>
> applications for LOD, NC, or T&P benefits under the Plan were uploaded, accessed, or reviewed by Defendants' employees, Board members, Committee members, Medical Advisory Physicians, Named Doctors, or Neutral Physicians on any in-house or third-party IT system or platform, document or content management system, or collaboration software, including but not limited to email, SharePoint, Laserfiche, Landry, and the "meetings" platform referenced in *Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan,* No. 3:20-CV-1277, 2022 WL 2237451 (N. D. Tex. June 21, 2022).
>
> **OBJECTIONS AND RESPONSE TO REQUEST NO. 15:**
> Defendants incorporate by reference each of the above-stated General Objections and Specific Objections to the Definitions and Instructions as if fully set forth herein. Defendants further object that this Request is vague and ambiguous as to what system(s) Plaintiffs are referring with their phrase "any in-house or third-party IT system or platform, document or content management system, or collaboration software, including but not limited to email, SharePoint, Laserfiche, Landry, and the 'meetings' platform referenced in *Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 3:20-CV-1277, 2022 WL 2237451 (N. D. Tex. June 21, 2022)." This Request is also vague and ambiguous as to specifically what type of activity Plaintiffs' seek with this Request, as "ESI (including but not limited to metadata, operating system files, access, activity, application, or audit logs or reports) sufficient to demonstrate, establish, or prove when Documents relating to, referring to, or Concerning Claimants' applications for LOD, NC, or T&P benefits under the Plan were uploaded, accessed, or reviewed by Defendants' employees, Board members, Committee members, Medical Advisory Physicians, Named Doctors, or Neutral Physicians" is all-encompassing. Defendants object to this Request as overbroad and unduly

burdensome for the same reason. Furthermore, discussions of submitted materials by the Committee or Board within an administrative record proves that the materials were accessed; the precise date or time at which specific individuals accessed specific documents prior to any given claim determination is completely irrelevant and therefore overbroad and unduly burdensome for this reason as well.

Defendants further object that this Request is overly broad and unduly burdensome at this stage in the litigation, where the Court has not certified a class and motions for summary judgment are pending, yet the Request calls for the production of "ESI (including but not limited to metadata, operating system files, access, activity, application, or audit logs or reports) sufficient to demonstrate, establish, or prove when Documents relating to, referring to, or Concerning Claimants' applications for LOD, NC, or T&P benefits under the Plan were uploaded, accessed, or reviewed by Defendants' employees, Board members, Committee members, Medical Advisory Physicians, Named Doctors, or Neutral Physicians on any in-house or third-party IT system or platform, document or content management system, or collaboration software, including but not limited to email, SharePoint, Laserfiche, Landry, and the 'meetings' platform referenced in *Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 3:20-CV-1277, 2022 WL 2237451 (N. D. Tex. June 21, 2022)" during the stated period, and are not limited to the Plaintiffs' remaining claims, which are the exclusive claims at issue in this Action.

While "Rule 56(d) mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition[,]. . . . a court need not allow discovery 'when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.'" *Williams v. Maryland Dep't of Health*, No. 22-1074, 2024 WL 2746979, at *5 (4th Cir. May 29, 2024) (internal citations omitted). Here, Defendants have produced all of the information Plaintiffs reasonably need for their oppositions to Defendants' Motions for Summary Judgment and Plaintiffs have not shown how the additional documents requested could create a genuine issue of material fact sufficient for Plaintiffs to survive summary judgment. Moreover, to the extent Plaintiffs are seeking certification of one or more classes that would consist of a broader number of Claimants, Plaintiffs have brought their class allegations asserting that Plaintiffs' claims are representative and typical of the claims of other putative class members, rendering a demand for records pertaining to "all Claimants" overbroad, unduly burdensome, and grossly disproportionate to the needs of the case. This Request is also overbroad, unduly burdensome, and not proportional to the needs of the case to the extent the period identified is not limited to the period between August 9, 2019, and February 9, 2023, which is the period consistent with the Plan's 42-month limitations period preceding the filing of Plaintiffs' complaint. Plaintiffs' claims relying on applications with final decision

letters dated prior to August 9, 2019, were dismissed by the Court's Order Granting Reconsideration.

Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants have already produced the administrative record for each of Plaintiffs' at-issue claims and each Plaintiffs' and Mr. Parsons's player files. Defendants have determined that the requested information concerning precise dates and times "when" the Documents within the administrative records "were uploaded, accessed, or reviewed" is not recorded or tracked within the systems maintained by the NFLPBO. While it is possible that such information could be recorded on third party systems, Defendants do not themselves maintain or use such information, and disclaim any obligation to attempt to seek such extra-record information from third parties for the following reasons. Plaintiffs' Request for "ESI (including but not limited to metadata, operating system files, access, activity, application, or audit logs or reports) sufficient to demonstrate, establish, or prove when Documents relating to, referring to, or Concerning Claimants' applications for LOD, NC, or T&P benefits under the Plan were uploaded, accessed, or reviewed by Defendants' employees, Board members, Committee members, Medical Advisory Physicians, Named Doctors, or Neutral Physicians on any in-house or third-party IT system or platform, document or content management system, or collaboration software, including but not limited to email, SharePoint, Laserfiche, Landry, and the 'meetings' platform referenced in *Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. 3:20-CV-1277, 2022 WL 2237451 (N. D. Tex. June 21, 2022)" during the stated period seeks discovery relating to thousands of Claimants other than Plaintiffs that is outside Plaintiffs' administrative records and not necessary to assess Plaintiffs' claims. *See Wilkinson v. Sun Life & Health Ins. Co.*, 674 F. App'x 294, 352, 356 (4th Cir. 2017) ("[w]hen a court reviews a coverage determination … consideration of evidence outside of the administrative record is inappropriate") (quoting *Helton v. AT & T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013)); *Briggs v. Marriott Intern., Inc.*, 368 F. Supp. 2d 461, 467 n. 4 (D. Md. 2005) ("due to the deferential standard of review in ERISA cases… this Court's review of the administrator's decision should be based on the record before the administrator"). Defendants have already produced the administrative records for each of Plaintiffs' at issue claims, and Plaintiffs have not made any showing that could justify discovery outside the administrative records of the named Plaintiffs' claims. *See Griffin v. Hartford Life & Accident Ins. Co.*, 2016 WL 8794470, at *2 (W.D. Va. Sept. 27, 2016) (holding that where a plaintiff makes a "bare assertion" that "discovery may reveal internal incentives ... to deny claims," without any facts to support bias or gaps in the record, that request should be denied). The requested discovery therefore exceeds the scope of permissible discovery and Defendants will not search for or produce any "ESI (including but not limited to metadata, operating system files, access, activity, application, or audit logs or reports) sufficient to demonstrate, establish, or prove when Documents relating to, referring to, or Concerning Claimants' applications for

Website is directly relevant to multiple claims, including whether Defendants are in compliance with Plan documents and their representations, whether they have breached their fiduciary duties, and whether their systems and procedures are adequately designed and administered.

12. Statistical Database: During the parties' two Rule 26(f) conferences, Defendants never disclosed the existence of a "statistical database" maintained by their Medical Advisory Physician, Dr. William Garmoe—despite its obvious relevance to the evaluation of benefits claims. Plaintiffs learned of this database solely through Defendants' very limited document productions, which show that Defendants contracted with Dr. Garmoe to "establish and maintain" a repository of neuropsychological and neurological exam data for *all* Players' benefit applications, that the Plan (not Dr. Garmoe) owns the database, and that it is used both for statistical reporting and for training other Plan physicians. Plaintiffs promptly sought more information regarding this database's contents, structure, and operation, yet Defendants provided no substantive response in their November 15, 2024 email. It was not until December 10, 2024—when Defendants filed a declaration from Dr. Garmoe as part of their opposition papers to Plaintiffs' Motion to Compel — that Plaintiffs received any details about this relevant database. Following this, Plaintiffs served their Second Request for Production on December 11, 2024, seeking documents related to the

---

LOD, NC, or T&P benefits under the Plan were uploaded, accessed, or reviewed by Defendants' employees, Board members, Committee members, Medical Advisory Physicians, Named Doctors, or Neutral Physicians on any in-house or third-party IT system or platform, document or content management system, or collaboration software, including but not limited to email, SharePoint, Laserfiche, Landry, and the 'meetings' platform referenced in *Cloud v. The Bert Bell/Pete Rozelle NFL Player Retirement Plan,* No. 3:20-CV-1277, 2022 WL 2237451 (N. D. Tex. June 21, 2022)" on the basis described in this paragraph and on the basis of the disproportional burdens described in the foregoing paragraphs. Defendants have reasonably construed this Request in light of Defendants' objection that this Request is vague and ambiguous, and Defendants are not invoking that objection to withhold Documents within the stated construction.

establishment, use, maintenance, and reporting functions of the database. On December 18, 2024, Defendants objected and refused to produce the requested documents, again contending that the request exceeded the scope of permissible discovery.

13. Plaintiffs propounded their First Set of Requests for Production of Documents and their First Set of Interrogatories to Defendants on August 28, 2024.

14. Defendants served their Responses and Objections to Plaintiffs' First Set of Requests for Production and their Responses and Objections to Plaintiffs' First Set of Interrogatories (collectively, "Defendants' Discovery Responses") on September 27, 2024.

15. Defendants' Discovery Responses failed to comply with Rule 34(b)(2)(C). Rather than stating whether any responsive documents were being withheld, Defendants merely asserted that "the requested discovery therefore exceeds the scope of permissible discovery" and that they were "willing to meet and confer in good faith to understand Plaintiffs' position as to why this discovery is appropriate." Despite two written correspondences from Plaintiffs, dated November 15, 2024 and December 11, 2024, Defendants did not serve amended responses that comported with Rule 34(b)(2)(C) until nearly three months later, on December 18, 2024. True and correct copies of these correspondences are annexed hereto as Exhibits E and F, respectively.

16. In their Responses and Objections to Plaintiffs' discovery requests, Defendants agreed to produce documents responsive to only three of Plaintiffs' seventeen Requests for Production and three of Plaintiffs' fourteen Interrogatories, thereby substantially limiting the scope of discovery. Among the few categories of documents that Defendants did agree to produce are three orientation manuals; records sufficient to show all T&P, LOD, and NC benefits awarded or denied since August 9, 2019; information reflecting the total and annual compensation paid to each Neutral Physician or MAP who performed file reviews or evaluations on a de-identified basis

(including the total number of Benefit Claims they evaluated or reviewed); and documents sufficient to reflect contracts and agreements between Defendants and the thirty physicians and neuropsychologists identified in the amended Complaint.

17. Beyond the production of ARs and player files (which are required to be produced to Named Plaintiffs under ERISA), to date, Defendants have produced a total of 121 documents. This total, however, includes nineteen R script outputs, nineteen physician contracts, and one data dictionary— all of which, although responsive to Plaintiffs' discovery request or required by the rules governing expert disclosures, were not produced by Defendants in the first instance. Excluding these specifically requested documents, Defendants have produced only eighty-one documents without additional demands from Plaintiffs . These include six IRS Form 5500s (which are public records), four plan documents, three orientation manuals reflecting different version histories, five documents relied on by Defendants' experts, and fifty-eight physician contracts.

18. On September 30, 2024, Plaintiffs timely served their responses and objections to Defendants' First Set of Requests for Production to Plaintiffs and to Defendants' First Set of Interrogatories to Plaintiffs.

19. On October 7, 2024, Plaintiffs made their initial production of documents in response to Defendants' discovery requests. That production included 171 documents—consisting of more than 7,800 pages—including Form 5500s from 2010 to 2021 and over 140 additional documents that Plaintiffs relied on when drafting and filing the Amended Complaint.  Plaintiffs made a second production two days later, on October 9, 2024, which contained 2,023 files.  This production included *every* decision letter and PRF that formed the underlying factual basis for the statistical allegations in paragraphs 117–46 of the Amended Complaint.

20.     Thereafter, the parties met and conferred concerning their respective discovery responses on October 10, 2024 and October 17, 2024. During those meet-and-confer discussions, Defendants' counsel proposed, and Plaintiffs agreed, to a mutual thirty-day extension of the deadline in LR 104.8(a) for the service of any motion to compel discovery papers. With respect to Defendants' objections and responses to Plaintiffs' First Set of Request for Production, the negotiated thirty-day extension meant that Plaintiffs had to serve their opening motion to compel papers by no later than November 26, 2024, which they did.

21.     As noted in my opening Declaration, Defendants served their papers in opposition to Plaintiffs' motion to compel at 11:59 p.m. on December 10, 2024. Plaintiffs served their reply papers in further support of their motion to compel on December 20, 2024, four days ahead of the fourteen-day deadline under LR 104.8(a). The parties held a required follow-up meet-and-confer discussion on December 23, 2024, pursuant to LR 104.8(b).

22.     With respect to the service of Rule 26(a)(1) Initial Disclosures, the parties had agreed to tie the date of serving Initial Disclosures to completion of the Rule 26(f) process. Because Defendants largely refused to engage in a meaningful discussion of potential sources of relevant files or ESI, the Rule 26(f) process was never completed and no report has been submitted to the Court. Therefore, under the parties' agreement, there was no actual deadline for service of Rule 26(a)(1) Initial Disclosures.

23.     Counsel for Defendants elected to serve their Initial Disclosures on October 9, 2024 and thereafter insisted that Plaintiffs needed to do the same. On December 2, 2024, counsel for Plaintiffs served their Initial Disclosures, which identified the named Plaintiffs (already known to Defendants), the relevant name of NFLPBO personnel (also already known to Defendants), and all the relevant physicians (already known to and compensated by Defendants).

24. Defendants now argue in their opposition to Plaintiffs' motion for an extension that no additional time is necessary because Plaintiffs have allegedly delayed discovery and failed to produce relevant information. This assertion is both factually incorrect and procedurally improper. Plaintiffs have produced in discovery *every* decision letter and Physician Report Form ("PRF") that formed the basis for the statistical allegations in paragraphs 117-46 of the Amended Complaint. Those productions were completed on October 9, 2024. Despite their legally mandated fiduciary obligations, based on Mr. Vincent's Declaration, it appears that Defendants have no database or systems in place that contain all of the information from the decision letters or PRFs on an individual basis. *See*, *e.g.*, ECF No. 115-4 at 13 (¶ 43). That being the case, Defendants' putative statistics expert had to rely on data in the V3 system (*see* ECF No. 111-2 at 6, 49-63 (Lasater Decl. ¶¶ 11-13 & App. 3) (noting that he was furnished "anonymized physician data" from the V3 system), even though the V3 data does not contain the individual recommendations made by individual Neutral Physicians.

25. Although Plaintiffs produced *all* of the data underlying the detailed statistical allegations in the Amended Complaint—a salient fact that Defendants failed to disclose in their papers in opposition to this motion—Plaintiffs have consistently maintained attorney work product protection over the creation of their statistical sample, declining to produce materials directly related to its preparation. During the parties' October 17, 2024 meet-and-confer on their respective Discovery Requests, Defendants contended that Plaintiffs were obligated to produce all documents concerning the "figures, data, statistics, totals, averages," as well as a detailed description of the methodology used to create the sample referenced in the Amended Complaint. At Defendants' request, Plaintiffs provided a written summary regarding the legal opinions supporting Plaintiffs' position asserting work product protection over the statistical sample on October 21, 2024 under

14

Fourth Circuit and District of Maryland case law. Defendants sent no response to this summary until December 18, 2024, and they have not served any motion to compel the statistical sample. Such a motion would now be untimely under the prior agreement of counsel referenced in paragraph 19 above.

26. On December 12, 2024, Plaintiffs' counsel set depositions for three declarants of Defendants—Dr. Lasater and Messrs. Smith and Vicent—whose declarations Defendants filed in opposition to Plaintiffs' class certification motion and in support of their summary judgment motions. Defendants agreed to these depositions, but forcefully informed Plaintiffs that they would oppose any further depositions, despite having three more witnesses who provided declarations for their summary judgment motions. On December 24, 2024, counsel for Plaintiffs notified Defendants that they intended to depose four more of Defendants' declarants: Dr. Garmoe, Mr. Miller, and Plan advisors Adora Williams and Patrick Reynolds, who had submitted declarations in opposition to Plaintiffs' motion to compel, in connection with Defendants' summary judgment and class certification filings, or both. On December 25, 2024, counsel for Defendants informed Plaintiffs that if Plaintiffs serve depositions notices, Defendants will move for a protective order and seek associated fees. A true copy of that email is annexed hereto as Exhibit G.

27. Under penalty of perjury, I declare the foregoing to be true and correct.

Executed this 27th day of December, 2024

*s/ Benjamin R. Barnett*
BENJAMIN R. BARNETT
