# EXHIBIT F

**SEEGERWEISS** LLP

NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

December 11, 2024

**VIA EMAIL**

Meredith N. Garagiola, Esq.
O'Melveny & Myers LLP
1625 Eye Street, N.W., 10th Floor
Washington, D.C. 20006

Re:     ***Alford v. The NFL Player Disability & Survivor Benefit Plan*,**
         No. 1:23-cv-00358-JRR (D. Md.)

Dear Meredith:

Despite Plaintiffs' repeated efforts to get Defendants to meaningfully engage in discovery in the above-captioned matter there remain multiple outstanding discovery deficiencies that Defendants must immediately address. Most recently, Plaintiffs sent Defendants a November 15, 2024 email cataloging multiple discovery issues and deficiencies. Defendants have not responded to that email in any fashion even as a courtesy. Some of those issues stem from Defendants' failure to honor agreements reached during the parties' meet-and-confer sessions during the October 10th-17th time period —now two months ago. Defendants deny-and-delay discovery playbook, evident from other prior ERISA litigation, cannot and will not prevent Plaintiffs from investigating and pursuing their claims in this matter.

We (again) summarize all the outstanding discovery issues in this matter below.

**A.   Revised Responses to Plaintiffs' Requests for Production That Comply with Rule 34**

Despite agreeing to do so nearly two months ago, Defendants have failed to serve us with amended responses to Plaintiffs' First Set of Requests for Production and Interrogatories that comply with the requirements of Rule 34.

On August 28, 2024, Plaintiffs served their First Set of Requests for Production and Interrogatories. Defendants' responses failed to comply with Fed. R. Civ. P. 34(b)(2)(C) in that they did not indicate whether documents were being withheld based on Defendants' stated objections. Several responses also included vague offers to meet and confer rather than directly addressing whether Defendants would produce responsive documents contrary to Rule 34. *See Handloser v. HCL Am., Inc*., 2020 WL 4923971, at *6 (N.D. Cal. Aug. 21, 2020) ("It's not reasonable to simply object to a request in its entirety and invite a conference of counsel. That's just not the way Rule 26 works, [or] Rule 34 works specifically.").

Following two separate meet-and-confer sessions, Defendants agreed, on October 17, 2024, to provide amended objections and responses that comply with Rule 34(b)(2)(C). Despite

that agreement, Defendants have yet to serve us with those revised responses. We raised this issue in our November 15th email but received no response. Please immediately confirm that Defendants still intend to provide amended responses and provide the date they will be served on counsel for Plaintiffs.

### B. Verification That Defendants Have Completed Informal Production of Administrative Files

To date, Defendants have failed to confirm whether they have completed their productions of Administrative Records or Player Files for the Named Plaintiffs.

In August 2024, Defendants agreed to informally produce the Named Plaintiffs' complete Administrative Records as required by ERISA. Despite that agreement, Defendants' informal production proved incomplete because it omitted numerous relevant documents previously provided to Plaintiffs' counsel during the benefits application and appeals processes. On September 24, 2024, we provided you a detailed list of the files missing from Defendants' informal production.

Defendants then argued that the omitted files were part of the Named Plaintiffs' "Player Files," not the "Administrative Records", a distinction not previously raised in this litigation and one without a difference in that it is at odds with historic correspondence from NFL Benefits Office personnel, who have used the terms interchangeably.[1] Despite providing supplemental productions, Defendants have yet to confirm whether the Administrative Record productions are now complete. Plaintiffs' November 15th email, which explicitly requested confirmation that these productions are complete has gone unanswered. Therefore, we reiterate our request that you confirm in writing whether Defendants' productions of the Administrative Records for all named Plaintiffs are now complete.

### C. Clarification Regarding the Limited Documents Produced to Date by Defendants

As set forth in Plaintiffs' November 15th email, Defendants' limited document productions to date raises several questions which require your prompt clarification:

1. Whether Defendants' production of documents responsive to Request for Production No. 8 is complete, and if not, when Defendants will complete that production.

2. Whether Defendants intend to produce documents responsive to Request for Production No. 8 for Neutral Physicians who did not evaluate Plaintiffs, and if not, what their basis is for refusing to produce these relevant documents.

---

[1] *See, e.g.,* NFL_ALFORD-0009846 ("Disability Board reviewed all of the evidence in your Plan file"); NFL_ALFORD-0008983 (Defendants' "reviewed your application and the other materials in your file" and "considered all of the medical records you submitted and referenced in support of your application"); NFL_ALFORD-0004684 ("Disability Board reviewed the record"); NFL_ALFORD-0010258 ("After reviewing the medical evidence in your file"); NFL_ALFORD-0010283 ("Disability Board carefully reviewed the medical evidence"); and NFL_ALFORD-001076)).

3. Whether Defendants stand by their objection to producing documents reflecting reimbursements paid to Named Doctors who evaluated Named Plaintiffs.

4. Whether Defendants continue to refuse to produce data in response to Request for Production No. 10 and Interrogatory No. 3 other than on a "de-identified" basis despite the entry of the Protective Order in this matter.

As you are no doubt aware, on October 2, 2024, Defendants produced some documents responsive to the Plaintiffs' Request for Production of Documents—namely, certain physician contracts (apparently) in response to Request for Production No. 8. Defendants' production, however, failed to include all contracts or agreements between Defendants and the Named Doctors or hospitals with which those physicians were affiliated who evaluated Plaintiffs. For example, no contract for Dr. McNasby-Ford was included in the production and the only contract for Dr. Macciocchi is from 2017, despite the undisputed fact that Dr. Macciocchi performed numerous examinations prior to 2017. Our November 15th email specifically sought confirmation whether Defendants intended to produce additional documents in response to Request for Production No. 8. Again, to date you have failed to provide the requested clarification.

To date, Defendants production of documents relevant to Plaintiffs' discovery requests have been proceeding at a glacial pace and are wholly inadequate. We detail three examples of these deficient productions below.

- **Request for Production No. 10** seeks documents, including spreadsheets and data summaries, listing (1) all T&P, LOD, and NC benefits awarded and denied since August 9, 2019, and (2) claims for disability benefits granted and denied, including the basis for the decision. Defendants have failed to provide critical information regarding the *specific* bases for the benefit decisions during this time period and have produced only a limited subset of de-identified data relied on by Defendants' expert despite the entry of a negotiated Protective Order.

- **Interrogatory No. 3** seeks the total number of benefit claims reviewed or evaluated by Neutral Physicians or MAPs. Defendants have failed to properly respond to this Interrogatory and to date produced only a limited subset of de-identified data relied on by Defendants' statistical expert. As stated during multiple meet-and-confer discussions and set forth in Plaintiffs' November 15th email, given the safeguards of the Protective Order, Defendants have no basis to produce this data in a de-identified format.

- **Request for Production No. 8**. Notwithstanding, Defendants' agreement to produce documents sufficient to show contracts and agreements between Defendants and Named Doctors who evaluated Plaintiffs, including contracts with affiliated hospitals and records of payments to these doctors, to date Defendants have produced only a handful of contracts and Form 5500s that plainly fail to satisfy the Request. At best, Form 5500s provide information regarding plan expenses and do not constitute contracts or provide proof whether payments to an entity reflect indirect compensation to relevant physicians.

3

**Discovery – Not Disclosure -- of Multiple Databases That Contain Relevant Documents and ESI**

Although Plaintiffs attempted to convince Defendants to meaningfully engage in and comply with the disclosure obligations of Rule 26(f), it is now abundantly clear that Defendants have and continue to withhold critical information about at least three of Defendants' databases that contain documents and ESI directly relevant to our claims in this matter.

### D. Statistical Database

On July 3, 2024, Plaintiffs provided Defendants with a proposed list of Rule 26(f) topics, including the locations and sources of potentially responsive ESI. During the subsequent Rule 26(f) conferences on July 22 and August 2, 2024, Defendants provided limited information regarding Defendants' IT systems and largely declined to engage in substantive discussions regarding sources of relevant ESI. At no time during our multiple Rule 26(f) discussions did Defendants disclose the existence of a statistical database containing neuropsychological or neurological examination data for *all* benefit applicants.

Plaintiffs learned this information only later through review of Defendants' limited document productions, which reflect that Defendants contracted with Dr. William Garmoe to create and maintain a "statistical database." *See* NFL_ALFORD-0012311-0012321 (requiring Dr. Garmoe "[e]stablish and maintain a statistical database derived from data collected during Players applications for Plan neurocognitive benefits, such as data collected during Players neuropsychological and neurological examinations."). This database, described as "derived from data collected during the Players' applications for Plan neurocognitive benefits," includes critical "neuropsychological and neurological examination" data. According to the agreement, "***all*** forms from Plan neuropsychologists and neurologists will be forwarded to Dr. Garmoe," a Named Doctor in this litigation. (Emphasis added.)

Dr. Garmoe's responsibilities include "reporting summary statistics" to the Plan and Board, recommending "modifications where needed," verifying "that experts are following decision rules," and "identifying common areas of impairment among retired players being examined for purposes of identifying future resources and intervention programs." Furthermore, the contracts explicitly state that the Plan, not Dr. Garmoe, owns "all rights in and to the database, and the underlying data comprising the database."

There can be no question that this statistical database is directly relevant to Plaintiffs' claims. Plaintiffs allege fundamental failings in the processes, criteria, and decisions surrounding Players' applications for Plan benefits. This database apparently contains aggregated and structured data that reflects the examinations, assessments, and evaluations conducted of applicants including Plaintiffs. For example, the database's neuropsychological and neurological examination data likely offers insight into how applicants' cognitive and neurological conditions were assessed, the potential inconsistent treatment of applicants' test results, and whether Defendants uniformly applied standardized criteria. Additionally, the aggregate data may reveal significant patterns or discrepancies in benefit determinations and inconsistencies in treatment amongst similarly situated Applicants, such as whether similar neuropsychological and neurological conditions were uniformly evaluated, whether disparities exist in how benefits were

4

granted or denied based on specific conditions, demographic factors, or other relevant criteria, and how decision-making rules were implemented or ignored during the evaluation process.

At bottom, a statistical database created, managed, and maintained by a Named Doctor for Defendants is a repository of essential information directly relevant to Plaintiffs' claims regarding Defendants' administration of Plan benefits and the integrity of the Plan—its existence and substance go to the gravamen of this litigation. The declaration from Dr. Garmoe that Defendants served as part of their motion to compel opposition papers late last night does nothing to dispel this.

On November 15th, Plaintiffs requested that Defendants immediately disclose information about the statistical database, including its structure, contents, and intended use. To date, Defendants have failed to respond to this request in any fashion. Given the database's clear relevance, Plaintiffs reiterate their demand for immediate disclosure of this information regarding the statistical database.

### E.   V3 or V3locity Database

Although you contend that Defendants disclosed the V3 database during our prior Rule 26(f) discussions, it is now clear that your fleeting references to the database were essentially (and effectively) meaningless.  Our ongoing review of Defendants' document productions to date reveal the following information and statements regarding the V3 database in messages authored by Defendants' employees:

- **NFL_ALFORD-0059898 --** Physician Report Forms are stored in V3;

- **NFL_ALFORD-0060757 – Neutral** Physicians appear to have access to V3 to complete Physician Report Forms;

- **NFL_ALFORD-0017622 (pg. 27) --** Indicates that V3 may function as a document tracking system;

- **NFL_ALFORD-0022869 – Applicant** phone numbers are stored in V3;

- **NFL_ALFORD-0023142 – Statement indicating that** benefits application for Plaintiff Jamize Olawale was approved in V3; and

- **NFL_ALFORD-0026141 – Employees of** Groom Law have access to V3 which have benefit applications and denials ***dating back to 1991***.

Given the information regarding the data in V3 and the centrality of the database to the benefits applications process at the heart of this matter, it is inconceivable that Defendants failed to clearly identify it as source of relevant documents and ESI. In any event, while we requested a data dictionary for V3, we are well past that point, particularly given that the V3 or V3locity system allows clients to develop custom fields for their administrative databases. Accordingly, consistent with our prior requests, please immediately produce a list of all the current fields in Defendants' V3 or V3loicty system akin to what you provide in your November 18th production cover letter.

5

### F.  Meetings Website

Request for Production No. 15 seeks ESI sufficient to demonstrate when documents related to benefit claims were uploaded, accessed, or reviewed on platforms such as the Meetings website. During prior discussions, Defendants referred Plaintiffs to a one-page declaration from the *Cloud* case, which they claimed addressed Plaintiffs' request.  That declaration, however, speaks only to auditing and wholly fails to substantively address access or review of materials on the Meetings website.

Since the parties' July 22, 2024 Rule 26(f) conference, Plaintiffs have repeatedly requested additional information regarding Defendants' Meetings website referenced in the *Cloud* decision, as well as in Defendants' recently filed summary judgment motions.  According to the *Cloud* decision and Hessam Vincent's declarations in support of the summary judgment motions, the Meetings website includes not only a player's application for benefits but also all records and supporting documents submitted by the player, summaries prepared by the Benefits Office, and historical information regarding prior Committee or Board decisions relating to that player. Additionally, it functions as the key platform supporting deliberations by key decision-makers, including the Benefits Office, Board advisors, and Groom lawyers, who purportedly rely on the materials housed on the Meetings website to review, consider, and vote on claims. It is through this platform that decisions regarding eligibility and benefits classifications are effectively determined. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2022 WL 2237451, at *9-21 (N.D. Tex. June 21, 2022); *see, e.g.*, ECF No. 115-4 (Vincent decl. In support of Defs.' mot. for summ. j. as to Pl. Daniel Loper).

Plaintiffs still require confirmation of whether Defendants will produce ESI responsive to RFP No. 15.  Such ESI should include, at a minimum, metadata or reports showing when and by whom documents related to benefit claims were uploaded, accessed, reviewed, or modified.

### Impact of Defendants' Discovery Conduct on Current Schedule

As noted in our November 15th email, Plaintiffs continue to assess whether additional deficiencies exist in Defendants' discovery responses that were not addressed in our prioritized meet-and-confer discussions.  Defendants' failure to provide timely amended responses has already hindered Plaintiffs' ability to determine whether Defendants intend to produce any additional information responsive to Plaintiffs' pending discovery requests.  If Defendants do not intend to produce additional materials in response to any of Plaintiffs' First Set of Request for Production and First Set of Interrogatories—which appears to be the case, based on Defendants' opposition to Plaintiffs' Rule 37(a) motion to compel that was served one minute before midnight last night—we request that you state this clearly and unequivocally.  This clarification is necessary for Plaintiffs to evaluate which discovery requests warrant further discussion or motions practice.

Finally, Defendants are undoubtedly aware that briefing deadlines related to class certification and Defendants' three separate motions for summary judgment are rapidly approaching.  Plaintiffs require the outstanding discovery to adequately prepare substantive responses to these motions.  The deficiencies in Defendants' discovery responses and their failure

to timely produce relevant documents or to even clarify their positions are prejudicial and directly impede Plaintiffs' ability to draft and file responses to these substantive motions.

Plaintiffs request a prompt written response to all the issues raised in this letter no later than December 18, 2024. Absent receipt of a full response that meets the letter and spirit of the Federal Rules of Civil Procedure, Plaintiffs reserve all rights to seek appropriate relief from the Court.

Very truly yours,

*Benjamin R. Barnett*
Benjamin R. Barnett

*CC: All Counsel of Record*

7