```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                          NORTHERN DIVISION

 3   JASON ALFORD, et al.,      )
               Plaintiffs,      )
 4                              )
               vs.              )   CIVIL CASE NO. 1:23-CV-00358
 5                              )
     THE NFL PLAYER DISABILITY)
 6   & SURVIVOR BENEFIT PLAN, )
     et al.,                    )
 7             Defendants.      )
     _____)

 8
                          THURSDAY, JANUARY 16, 2025
 9                            Courtroom 3A
                            Baltimore, Maryland
10
                            MOTIONS HEARING
11
              BEFORE:  THE HONORABLE JULIE R. RUBIN, Judge
12
     On Behalf of the Plaintiffs:
13
          BENJAMIN R. BARNETT, ESQUIRE
14        325 Chestnut Street, Suite 917
          Philadelphia, PA 19106
15
          SAMUEL L. KATZ, ESQUIRE
16        JULIA M. DAMRON, ESQUIRE
          ATH Law LLP
17        8383 Wilshire Boulevard, Suite 800
          Beverly Hills, CA 90211
18
     On Behalf of the Defendants:
19
          GREGORY F. JACOB, ESQUIRE
20        MEREDITH N. GARAGIOLA, ESQUIRE
          O'MELVENY & MYERS, LLP
21        1625 Eye Street NW
          Washington, D.C.  20006
22
               (Computer-aided transcription of stenotype notes.)
23             Reported by:  Kassandra L. McPherson, RPR
                        Federal Official Court Reporter
24                       101 W. Lombard Street, 4th Floor
                            Baltimore, MD 21201
25                            (410) 962-4544
```

```
 1                    P R O C E E D I N G
                        2:03 p.m.
 2

 3          THE CLERK:  The matter now pending before this Court

 4  is civil docket number 23-cv-0358-JRR, Alford et al., versus the

 5  NFL Player Disability and Survivor Benefit Plan, et, al.  The

 6  matter now comes before the Court for the purpose of a motions

 7  hearing.

 8      Counsel for Plaintiff, please introduce yourself for the

 9  record.

10          MR. BARNETT:  Good afternoon, Your Honor.  Ben Barnett

11  from Seeger Weiss.

12          THE COURT:  Good afternoon.

13          MR. KATZ:  Good afternoon, Your Honor.  Sam Katz from

14  ATHLaw, LLP

15          THE COURT:  Good afternoon.

16          MS. DAMRON:  Good afternoon, Your Honor.  Julia Damron

17  from ATHLaw, LLP.

18          THE COURT:  Good afternoon.

19          THE CLERK:  And counsel for defense, please introduce

20  yourself for the record.

21          MR. JACOB:  Your Honor, Gregory Jacob from O'Melveny &

22  Myers for the Defendants.

23          MS. GARAGIOLA:  Good afternoon, Your Honor.  Meredith

24  Garagioula also from O'Melveny & Myers.

25          THE COURT:  Good afternoon.  Everyone can be seated
```

```
 1   and make yourselves at home.

 2        In preparation for today, given all of the details and

 3   moving parts involved in this case, just so that you're aware in

 4   terms of my degree of preparation so you don't have to concern

 5   yourself with getting too lost in the weeds, although I

 6   certainly don't want to restrict you from making whatever record

 7   you feel is appropriate.  I have re-read the Amended Complaint

 8   as well as all of the motions to compel papers that are pending.

 9        I've also read what is thus far filed in terms of class

10   certification as well as, obviously, the motions papers and all

11   of the exhibits that bring us here today.

12        I have some sort of advanced thoughts about the direction

13   of what are pending now, but I want to hear first from counsel

14   and then we can talk more only openly about it in sort of a

15   casual way.

16        But Mr. Barnett, I'm happy to hear from you.

17           MR. BARNETT:  Thank you, Your Honor.  And we'd like to

18   thank you, the Court, for the time that was spent during the

19   holidays with multiple filings and also for scheduling the

20   conference today.

21           THE COURT:  It's part of the gig.

22           MR. BARNETT:  And also for appointing Magistrate Judge

23   Aslan.  We look forward to working with her to try resolve what

24   we fear may be a whole series of discovery issues.

25           THE COURT:  And I'm loathe to interrupt you, but I do
```

```
1   want to say that I appointed Magistrate Aslan, who is excellent,
2   for the purposes that you've identified.  But I also -- I don't
3   want to give the misimpression that I have dispensed with the
4   potential of appointing a special master.  And I have given
5   that, not deep thought, but some preliminary thought.  And
6   depending on, you know, where this case is going this might be a
7   very appropriate candidate for that.  And so I do want to hear
8   counsels', you know, unvarnished thoughts about that now, not
9   right this second but today.
10            MR. BARNETT:  Right.  Right.  Okay.  Very good.
11       In terms of the motion, so there are two motions, one
12   related to the motion to compel, the other related to the
13   extension of the deadlines.
14       You know, the motion to compel is obviously fully briefed,
15   it sounds like the Court has read it.  I mean, we're happy to do
16   full-blown argument on that today.  Our general view is these
17   decision letters and the physician forms are clearly relevant
18   under Rule 26 in terms of our claims.  We actually think it's
19   evidence that the Defendants need as well.  The B3 data that
20   they're relying on, in terms of class certification, doesn't
21   contain the individual recommendations of the physicians.  The
22   only source of that, according to their own declarants, are
23   these same decision letters.  So in a strange sense we think
24   this evidence is both relevant to our claims as well as their
25   defenses.
```

1    And ultimately, under the Held decision, the Fourth

2  Circuit's Held decision, the Court is obliged to look at this

3  evidence to see whether, in fact, it's relevant under the Booth

4  factors set out in that decision.

5    So again, we're happy to do full-blown argument, but I

6  think the briefing was very clear, and we're happy, if it would

7  be more useful for the Court, to respond to specific questions

8  that you might have in regard to that motion.

9    THE COURT:  Uh-huh.  So, I mean, well, I'm going to

10  hear --

11    Mr. Jacob, I'm happy to hear from you sort of preliminarily

12  about all your thoughts on this.

13    MR. JACOB:  So, Your Honor, I guess I sort of put

14  things in two buckets.  One, on the motion to compel, as we laid

15  out in the papers there, what we have already produced in this

16  case goes beyond what any of the courts that have been cited in

17  the papers have ordered produced.

18    So we cited case after case after case.  The Abromaitis

19  case from the Fourth Circuit, the Rickert case from the Third

20  Circuit.  Those are two circuit decisions saying that all of

21  these batting averages for doctors are irrelevant; don't need to

22  know it.

23    Judge Bredar, in the Clark case, which I think is probably

24  the Seminole case in the District of Maryland, ordered

25  post-trial briefing.  Allegations of bias there, they wanted all

1   this extra record discovery.  After he looked at the briefing he

2   said, you've given me allegations but you haven't given me any

3   -- what you haven't done is analyze the information already

4   produced to identify what it is that additional information --

5          THE COURT:  So do you take the position that the

6   information that's already produced is competent to allow

7   Plaintiffs to make an argument about pattern and practice?

8          MR. JACOB:  I do, yes.  We produced system-wide data

9   for all of the claims from 2018 until today.  So we went --

10  April of 2019 is -- in fact, April or August of 2019 is when the

11  earliest claim could have been filed.  But because some claims

12  work their way through the appeal process, we went with what we

13  felt was over and beyond by going a year before to make sure

14  that we didn't lose any claims that were moving into the appeal

15  process in 2019.

16      And that data shows the disposition of every one of those

17  claims, whether the claim was approved or denied, if it was

18  approved or denied on a medical basis or on an administrative

19  basis.  In other words, if somebody failed to show up for a

20  scheduled appointment or if their application was untimely that

21  would be an administrative denial and we don't take their

22  complaint, and they never suggested otherwise, in our meet and

23  confers, to target administrative denials.  It's about the

24  medical denials.  And so for every one of those applications we

25  identified the mix of neutral physicians that was involved with

1    that claim.

2         Now, we didn't, for the reasons that we outlined in the

3    papers, give the specific names in the neutral physicians.  What

4    we did was we gave each of them an identifying number and then

5    you can track them across all of the claims across that entire

6    period.  So that you know the frequency for every neutral

7    physician by identifying number, as well as whether the

8    applications that they were involved with were approved or were

9    denied.

10        And so from that -- and we've -- if you've read the class

11   certification papers you've seen Dr. Lasater's declaration

12   analyzing that data, which both shows approval rates for those

13   claims that are completely inconsistent with anything that is

14   alleged in the complaint.  The approval rates are up in the high

15   40 percents, and then after you add appeals in tick up to above

16   the 50 percent mark.  And you can discern, is the allegation in

17   the complaint that we are steering applications to neutral

18   physicians that have high denial rates for claims and they can

19   assess that.  They don't like that data because what it shows

20   is --

21             THE COURT:  Well, they don't like the data that your

22   expert relied on but they don't have the full panoply of data

23   that they would like to use to counter Dr. Lasater's opinion,

24   right?

25             MR. JACOB:  The one thing that is at issue in the

1    motion to compel that they don't have, and they do have this to
2    some extent, and I'll get to that in a moment.  What they don't
3    have is what did each individual neutral physician who was
4    involved with that claim, what opinion did they actually give.

5        And the reason that we didn't give that data is it doesn't
6    exist.  We don't have that in our systems.  What we track in the
7    systems is was the application approved or denied and who were
8    the neutral physicians that were involved with it.

9        Now, if you look at footnote 12 of Dr. Lasater's
10   declaration, what you'll see is that for line of disability
11   benefits -- let me give you the exact number here.  Out of 1,936
12   line of disability claims, 1,866 of those only had one neutral
13   physician.  And so for those 1,866, which is the overwhelming
14   majority of them, you do know what finding they had because the
15   claim can't have been approved if the neutral physician didn't
16   find that they were disabled.

17       Similarly, even among the total and permanent disability,
18   which is what the complaint targets a lot, 897 out of 1,324 had
19   only one physician.  And so again, you do know what that neutral
20   physician found because if the application was approved, they
21   must have found the person disabled.  So there is a substantial
22   amount of information about individual findings.

23       Even for the applications where you had multiple neutral
24   physicians involved, the theory of the complaint is we're
25   assigning those to neutral physicians in order to get the

1  complaints denied because we somehow know who the people are who

2  deny a lot of claims.  And in order to get the claim denied the

3  plan office sends the neutral physician to them.

4      Now, the declarations say that's not true, we use neutral

5  criteria.  We've produced copious information about all the

6  safeguards that we put into place to train and tell the neutral

7  physicians we want your best professional judgment on the claim.

8  They're told that in the contracts, they're told it on the

9  forms, they're required to certify every time they don't have

10  bias against players.  So all of those safeguards are in place.

11  And then when you look at the data what you see is the neutral

12  physicians who are most frequently assigned claims have the

13  lowest denial rates.  Again, completely inconsistent with the

14  complaint.

15      THE COURT:  Okay.  But you're talking about merits,

16  but I'm talking about the data that Plaintiffs want that they

17  contend you've refused to give.  So I understand you're making a

18  merits argument to sort of explain the degree of data that

19  you've produced, but that's not really addressing the complaint

20  that Plaintiffs' have.

21      MR. JACOB:  Sure, Your Honor.  So the one thing that

22  we haven't produced that could be added to this mix is all of

23  the underlying files.  That's not data.  Those are all the

24  administrative records for the thousands --

25      THE COURT:  Well, I guess I'm talking about requests

1  two and three.  You can call it data requests or document

2  requests, but for documents and things I guess is what I'm

3  getting at.

4          MR. JACOB:  Yes.  So they're document requests.  What

5  they want is all the underlying individual neutral physician

6  opinions.

7      Now, they admit -- well, let me start with this.  So what

8  you do know is that among the neutral physicians who are

9  assigned to these claims, you know whether the application was

10  approved or denied.  The question is could there be any possible

11  relevance, since we know that neutral physicians -- from the

12  data already produced we know that higher approval rates come

13  out of neutral physicians who are more frequently assigned

14  claims.

15      Is it possible that hidden away in the underlying findings

16  of the neutral physicians is that those neutral physicians are

17  actually finding disability more often?  No.  Or less often?

18  No, that's not possible.  If that was true then those claims

19  would be denied at a higher rate.

20      And so we have produced and provided in conjunction with

21  our opposition, a declaration about the burdens that would be

22  associated with producing all of those underlying documents.

23  And again, not one single case that they cite ordered this kind

24  of production.  No court in all of ERISA's history has ordered a

25  plan to produce all of their underlying documents.  Some of the

1  claim, in fact a majority of the cases cited in the briefing,

2  just say this kind of statistical information, the batting

3  average.  The Fourth Circuit said it in Abromaitis, the Third

4  Circuit said it in Rickert.  Four cases in this district have

5  denied any extra record discovery, including into these batting

6  average type claims.  We say, you know what, we're going to give

7  you the batting averages.  You get the batting averages of the

8  application approval and denial.

9      The only additional information you would get was -- would

10 be for those claims that are multiple neutral physicians, what

11 were their individual findings.  But that little sliver of

12 additional information cannot possibly overcome the burden that

13 would be associated with producing it.

14     Plaintiffs admit, and again, this is at both page 4 of

15 their reply to the motion to extend, and paragraph 7 of

16 Mr. Barnett's declaration in support of it.  They're well aware

17 on the decision of the law that says the administrative record

18 is all that you get and you have to show exactly what additional

19 information -- what would be the additional benefit that you

20 would get.  You really have to make a showing, a particularized

21 showing in order to get beyond the administrative record.  They

22 acknowledge that that's the standard.  And that is why all of

23 these cases that we've cited in our briefs, again, a majority of

24 them just deny the relevance of this information outright.

25         THE COURT:  Obviously, that's relative to the claims

1    that are pending, but here the Plaintiffs have briefed chapter

2    and verse about why the Booth factors really can't be animated

3    here unless they get what they're asking for.

4            MR. JACOB:  So if we went through the Booth factors, I

5    think that's just not true.

6            THE COURT:  Okay.

7            MR. JACOB:  Their burden is to show why the data that

8    we have produced is insufficient for them to evaluate that.

9            THE COURT:  I understand.

10           MR. JACOB:  Their only answer to that is, we want to

11   go hunting for inconsistent application of plan terms.

12           THE COURT:  So I guess I want to put a pin in this now

13   because, in fairness, I want to do more work on the motion to

14   compel.  And I have met with Judge Aslan and she and I are of

15   the same mind that I'm going to take the motion to compel myself

16   because it's too entwined with -- to some extent -- the class

17   certification issues, things that are really tied up into the

18   capacity of Plaintiffs to prove the merits of their claims, or

19   whether it's relevant to the merits of the claims, and

20   reasonable to require defense to produce and all that like.

21       So where I sit today is essentially this, and I'm not one

22   to hide the ball.  In reading the papers and Mr. Barnett's

23   declarations, I think there was at least two of them, I'm

24   satisfied to hold the deadline set forth in the papers at 132,

25   this is the response to the various and sundry summary judgment

1    or 56 motions that are pending, the expert disclosure as well as

2    the certification reply papers in abeyance until the motion to

3    compel is resolved.

4        I'm satisfied one is sort of the other side of the coin to

5    the other.  So I didn't say that very well but you understand my

6    meaning; they're very entwined with one another and I don't

7    think I can separate them out or tease them out without doing

8    damage to the trajectory of the case.

9        I do not want there to be an unnecessary delay, but I think

10   that that makes the most sense.  So what I would like to do is

11   to schedule a date for more fulsome argument on the motion to

12   compel.  Yes, I would like there to be oral argument in person

13   on it.  And I think between then and now, I realize the parties

14   are at loggerheads over this issue, but I would just suggest

15   that you, again, seek to resolve it in view of the fact that,

16   you know, from where I sit, you know, I think that the

17   Plaintiffs' position has legs.  I've not made a decision, but I

18   certainly understand their position, particularly after having

19   read what are now the sort of half-baked or half-finished class

20   certification papers in terms of what is necessary to establish

21   the subclasses and the classes.

22       So today I'm gonna hold in abeyance the deadlines

23   identified in 132, to some extent the ruling on the motion to

24   compel, and that's at 134, is going to kind of eat the merits of

25   132.  So I don't mean to be unclear about that, but I would like

 1    to schedule a more fulsome hearing on the motion to compel, and

 2    use the balance of our time today to figure out what that

 3    schedule is going to look like, how I can be of any other use to

 4    the parties, and to discuss whether there is a good need for a

 5    special master, whether the parties have discussed it.  If you

 6    haven't, I want you to so that I don't have to resort to Rule 53

 7    if I find that it's necessary.  And when you come back for oral

 8    argument on that motion to compel, to be prepared for me to rule

 9    from the bench.

10        Mr. Barnett.

11            MR. BARNETT:  Your Honor, thank you.  That's very

12    clear.  And not to add to your pile of work, which is already

13    substantial, but we wanted to commend to the Court a memorandum

14    opinion that was issued on Monday in the Cloud case.  It's --

15    the case number is 320-cv-1277, the ECF filing number is 289.

16        And in that decision, which actually relates to the award

17    of attorney's fees, it doesn't directly relate to the issues

18    that we're addressing, other than it does go into detail about

19    the discovery that was pursued in that case.  That is a case --

20    it was an individual case, in which the court ordered a broader

21    production of decision letters and physician reports for

22    precisely the reasons that we're seeking them in this case.

23    Because we want to pull back the curtain on what the actual

24    process is that the defendants used.  And also, there's a

25    lengthy description about the safeguards, the alleged safeguards

 1   that exist within the process that actually aren't followed by

 2   the benefits office.

 3       So not that you lack for things to read -- and the other

 4   reason, this case is actually cited specifically in that matter

 5   because part of Judge Shuler's analysis was whether the

 6   discovery taken in Cloud was beneficial to other ERISA

 7   litigants.  And the fact that we, in our amended complaint,

 8   cited some of the evidence that was developed in Cloud, she saw

 9   that as a benefit in awarding Mr. Cloud's counsel attorney's

10   fees.

11       THE COURT:  Okay.  I appreciate that.

12       Yes, everyone can be seated.  I know we're going to do some

13   conversing.

14       So Mr. Jacob, so again, I don't -- I am not -- I am not

15   telegraphing anything.  Many times, you know, my law clerks hear

16   me say I'm really glad I held that hearing because it wasn't

17   what I thought.  But I really do find oral argument to be

18   extraordinarily helpful on complex matters.  And I do want to be

19   perfectly clear about the fact that I'm not telegraphing but I

20   also don't find it helpful to any party to hide where my head is

21   at the moment.  So I think that's important.

22       I also do, along those lines, want to be perfectly clear

23   that -- and maybe this isn't so common a thing for a judge to

24   do, but, frankly, I regret the order that I issued regarding the

25   preliminary filing, or I should say -- I don't want to say

1    early, but early filing of motions to compel in the case.

2        There's a couple of things going on at that moment.  And to

3    begin, I wasn't quite convinced, and I'm still not necessarily,

4    that permission was needed to file summary judgment motions,

5    whether they be in sort of seriatim or all together or before

6    the deadline or not.  And so to some extent that was the

7    reasoning for my not waiting to hear from Plaintiffs.

8        But I will be very clear, and I'm not asking for apologies

9    or position taking, but I did review again the defense motion

10   asking me to -- for leave to file multiple summary judgment

11   motions.  And at the same time as I say that it wasn't

12   necessary, you know, I appreciate the care taken in doing so.

13   But in re-reading it again this morning, you know, my memory of

14   it was -- and I'll be very candid, was the representation that

15   plaintiffs don't consent was sort of in the tone of plaintiffs

16   don't consent because they're protecting their record.  It's not

17   the hill they're going to die on.  The defense has produced, you

18   know, this robust production.

19       I had no sense that on November 19th when that was filed

20   that this very hotly contested discovery dispute was more than

21   just simmering under the surface.  And had I understood that, I

22   would have waited for Plaintiffs to file a response to it.  And

23   so I'm not -- I'm not casting any aspersions or holding anybody

24   in my crosshairs, but I do want to express that that is also

25   part of the reason why I wanted to talk to counsel today.  That

1    I do think it was an error for me to do that and I won't make

2    that mistake again.

3         So let us schedule the hearing, the oral argument, more

4    fulsome, on the motion to compel.

5         And I will make clear that the reference to Judge Aslan for

6    the balance of discovery remains in full force and effect.  And,

7    you know, to the extent that the Court views the pending motion

8    to compel favorably, if production is required and there are

9    disputes about whether or not the defense production has been

10   fulsome enough, you know, those sorts of disputes, of course,

11   will go to Judge Aslan.  If there are other discovery issues

12   that need resolution, those too would go to Judge Aslan.  But I

13   do want to schedule the motion to compel oral argument now.

14        And I also would like to hear from you about whether you

15   have any preliminary thoughts about a special master.  And if

16   you don't, we can talk about it at the hearing so that you all

17   can have maybe a -- more of a better chance to talk about it

18   among yourselves.

19        I neglected to bring out my calendar.

20        But Mr. Barnett, I know you're the one who sort of threw

21   into the mix the possibility of a special master, so maybe you

22   can sort of start me off on sort of where plaintiffs are on

23   that, or whether it was just sort of an idea thrown out there.

24             MR. BARNETT:  Well, hopefully it was more than an

25   idea, Your Honor.

```
1              THE COURT:  Yeah.

2              MR. BARNETT:  No.  I think our experience in discovery

3    to date -- and, again, without casting any aspersions on current

4    counsel --

5              THE COURT:  Of course.

6              MR. BARNETT:  -- you know, looking at the history of

7    ERISA litigation with these defendants, our view was that there

8    are going to be, potentially, a series of discovery disputes.

9         And so what we suggested, either a magistrate judge or a

10   special master, because I'm not certain at this point that we

11   need somebody with like hardcore technical ESI experience as

12   opposed to somebody who can try to work with the parties to

13   methodically work through these issues and try to get them

14   resolved in a timely fashion.

15        There may be -- there may come a time where we actually do

16   need somebody with real technical capabilities who can take a

17   look at a system and say, you know, what are the capabilities?

18   What data is in the system?  You know, if it's --

19             THE COURT:  What's the burden of extracting what you

20   want.

21             MR. BARNETT:  Exactly.

22        Or is there a way to generate a report of this data and

23   have it produced in Excel format such that, you know, we don't

24   need to deal with native productions.  We may get to that point.

25   I don't think that's where we are now.  And that's why -- and
```

1   also, frankly, to pay due deference to the Court, I know,

2   because I've been in front of some of your magistrate judges on

3   discovery issues, including Magistrate Judge Coulson, you have

4   some excellent magistrate judges here.

5           THE COURT:  The best.

6           MR. BARNETT:  And there's no reason to look over them

7   and bring in a special master.

8           THE COURT:  No.  From my perspective, it wasn't so

9   much about substantive competence for the issues, but simply the

10  volume of the work, if there is to be a greater volume of

11  discovery disputes.  And again, I think it's just the nature of

12  this beast.  I understand the parties' positions as best I can

13  at this moment, and so I just -- what I'm thinking about more so

14  is not so much an ESI issue as it is an efficiency of moving the

15  case along for the parties, and just in recognizing that one can

16  only drink so much from a firehose, to be candid.

17          MR. BARNETT:  Right.  Right.  And so no.  I think your

18  appointment of Magistrate Judge Aslan, again we appreciate that.

19  I think for now -- I mean, my hope, particularly given her

20  experience, is that she will have, perhaps, more time than the

21  Court does to address these issues.

22          THE COURT:  If she's listening to this hearing, I

23  think I just heard her throw her head back and cackle.

24      (Laughter.)

25          MR. BARNETT:  And I would -- I would feel a little bit

1  presumptuous suggesting a process.  My guess is that she has a

2  very clear idea of what will work in terms of these sort of

3  issues.  But it's really sort of time and attention and

4  regularity.  And my hope is, you know, if we're able to start a

5  process that we can actually systematically work through these

6  issues in two or three months and get them behind us, we think

7  that has the greatest possibility of keeping the case on

8  schedule.

9          THE COURT:  Okay.  I hear you saying it may be

10  necessary but let's hope not.

11          MR. BARNETT:  That would be our preference.

12          THE COURT:  Mr. Jacob, have you given any thought to

13  this?  And I'm not trying to put you on the spot.

14          MR. JACOB:  So, Your Honor, our instinct is the same

15  as you probably saw from the papers.

16          THE COURT:  Yeah.

17          MR. JACOB:  We immediately, when they suggested

18  appointing a magistrate, we suggest, well, it might -- Judge

19  Rubin might want to take this first one, but either way we think

20  a magistrate is appropriate.

21      And one thing I'll say in that regard.  One, to briefly

22  respond to the Court's earlier remarks, we have not yet been

23  served with a motion to compel, and they haven't said it's

24  coming or anything like that.

25          THE COURT:  I understand.

1          MR. JACOB:  So that's one reason there was no mention

2    of that.

3          But another reason I say that is, you know, I hear what the

4    Court says about where the Court's head currently is on the

5    motion to compel.  I'm hoping that I'll be able to convince the

6    Court that -- of exactly what I'm saying now, which is that what

7    we did, we looked at all the case law and said we're not going

8    to stand on the majority of cases that say we don't even have to

9    produce this stuff.

10          THE COURT:  I get it.

11          MR. JACOB:  Instead what we're going to do is we're

12    going to go to the furthest limit that any of these cases have

13    gone and that's what we're going to produce.

14          And so, you know, if the court -- and the reason that I

15    think that's important here is, I think that if the Court lays

16    down new guidance that sort of -- you know, they mentioned the

17    Cloud case.  And the Cloud case, the Cloud court, if you look at

18    the discovery order, denied discovery on all claims.  Denied

19    discovery on all neurocognitive claims.  Ordered data, only the

20    existing data produced on T & P claims, and that's what we've

21    produced, and then said, with respect to underlying records,

22    only those ones that involve the terms changed circumstances.

23    And I kind of forget --

24          THE COURT:  Whatever the relevant search terms were.

25          MR. BARNETT:  Clear and convincing.

```
 1         MR. JACOB:  Two terms; clear and convincing.  Because
 2   that was the specific allegation that the plaintiff misapplied.
 3   And the Fifth Circuit by the way, when they reviewed that, said,
 4   I actually didn't inconsistently apply those terms, we don't see
 5   any significant variation.
 6        All of that is to say, if the Court lays down new guidance,
 7   we have been, I think, more than reasonable within the case law.
 8   And if the court gives us new guidance, I think that we'll be
 9   able to work with plaintiffs so that we don't have a constant
10   stream of disputes coming to Judge Aslan.  And there is a lot of
11   law out there, this isn't -- I represent a lot of health plans
12   and things like that.
13         THE COURT:  I'm aware.
14         MR. JACOB:  So these kinds of discovery requests
15   happen a lot.  There will be a lot of things for the magistrate
16   judge to draw upon that might be a little bit harder for a
17   special master to get into.  I think for all those reasons --
18         THE COURT:  Maybe but not yet.
19         MR. JACOB:  -- we're willing to start with the
20   magistrate judge and see how that works.
21         THE COURT:  Okay.  So let us calendar things.  And
22   you'll tell me if there's anything else I can do for you here
23   today.  And I do not mean to -- two things.  I'm sort of, you
24   know, I realize everybody traveled to get here so I don't want
25   to make light of the time and expense of being here; I do want
```

1  to make it useful.  But I really do find in-person status

2  conferences and hearings to be a terrific use, particularly in

3  complex cases.  So I don't mean to suggest that I don't

4  understand what Zoom is but I do think in-person court is

5  helpful for everyone.

6         So let's do calendar.  I also just -- I don't want to

7  forget to mention, you know, when we do this argument I may, may

8  not, but I may correspond with counsel to just identify one or

9  two or more areas in particular that I would like you to focus

10  in oral argument.  And again, I don't mean that for you to, you

11  know, turn a blind eye to other things that are important to

12  you, but if I'm sort of stuck on a particular issue or I want to

13  hear more about a particular issue.

14         And so to that end, Mr. Barnett, Mr. Jacob's is basically

15  saying -- and I'm not asking you to respond now -- that

16  effectively what you are asking of me is to go beyond the bounds

17  of any ERISA case ever in the history.  And so without

18  addressing that at all now, just -- if that isn't the case to

19  explain that it isn't, and if it is the case to explain why this

20  case warrants it is what I would just ask of you when we

21  ultimately have oral argument on the motion.

22         MR. BARNETT:  We're happy to do that, Your Honor.

23  Because there's -- there hasn't been a case like this in the

24  sense that this entire fraudulent scheme to rely on what are

25  presented as neutral physicians that are not neutral physicians.

1  And it absolutely goes to a breach of fiduciary duty in multiple

2  fashions.  So we are more than happy to address it.

3          THE COURT:  I guess what I'm saying is, I don't

4  hesitate to put my helmet on and step out beyond the praecipe, I

5  just need to be given a darn good reason why.

6          MR. BARNETT:  We're happy to give you several.

7          THE COURT:  Okay.  Let us get our calendars out.  And

8  again, I realize we've got more than just a little beltway

9  travel, not that 495 is ever to be scoffed at because that could

10 take a lot longer than coming by train from Philly.  But we can

11 do this now, you guys can meet offline and suggest some dates to

12 me, but I'd like to have, you know, a couple of hours so that we

13 can block out enough time.  And if I need to take a recess and

14 gather what jumbles in my head, I can do that.  So I'd like to

15 peg a date where we can really spend more than just an hour on

16 the record.  And I don't want to go too far out because I don't

17 want the case to sort of suffer on the vine, if you will.

18    Do you have any particular days that you've got to black it

19 out because you're -- that aren't good for you?  I'm looking in

20 February.

21          MR. BARNETT:  I don't have -- Your Honor, I don't have

22 anything until March that is like -- I'm out of the country for

23 a chunk of March.  But if we're looking at February I don't

24 think there's anything.  Apparently February 13th and 14th,

25 Valentine's Day, are unavailable for us.

```
 1              THE COURT:  Unavailable.  Well, let me ask everybody.
 2    And Mr. Jacob, I'll ask you the same question.  But how is
 3    everybody for 10 a.m. on Friday, February 21st?  Does that work?
 4              MR. JACOB:  That works for me, Your Honor.
 5              MR. BARNETT:  That works for me, Your Honor.
 6              THE COURT:  Okay.  So let's do that.
 7         So to be clear for our courtroom deputy and our court
 8    reporter, this is an oral argument scheduled on the papers at
 9    ECF 134.  That's Plaintiff's motion to compel and all of the
10    responsive papers as well.
11         And so for the time being, I would say that the motion at
12    132 is just held sub curia.  And likely, depending on whatever
13    happens with the February date, it'll be resolved in one fashion
14    or another.  So I'm not going to extend those deadlines, you
15    know, until the ends of the earth, but I certainly will continue
16    to extend those deadlines until the Court rules on the motion to
17    compel, which you should expect to be on the 21st.  If I need
18    additional time, obviously it'll be as minor as possible, but my
19    goal is to not let this just sit around.
20         Any questions for me?
21              MR. JACOB:  No questions on that, Your Honor.
22              THE COURT:  Okay.
23              MR. JACOB:  I would like to just address one thing.
24              THE COURT:  Of course.
25              MR. JACOB:  And this came up somewhat in our
```

```
 1  opposition briefing with respect to movement of their expert

 2  disclosure deadline.

 3          THE COURT:  Yes.

 4          MR. JACOB:  Things have sort of gotten backwards in

 5  this case.  Typically, the Plaintiff would file their expert

 6  report backing up their statistics from the -- that they allege

 7  in the complaint with their class certification motion.  And

 8  that's what we were thinking was going to happen here and then

 9  we would have a reply to that.

10          That didn't happen.  And instead, that put us in a position

11  of sort of needing to lead first.  But we're still here blind as

12  to, you know, they're using these allegations in the complaint,

13  they use them again and again and again in their motion to

14  compel as well.  We know -- you know, we have some examples that

15  we brought to the court today and gave to the clerk ahead of

16  time.

17          There are examples of approvals by neutral physicians in

18  the plan that we know they have; we know that Mr. Katz had but

19  they're not part of the production, and they contradict

20  allegations that they have in the complaint that certain doctors

21  never found something.  So we know that this is a jerry-rigged

22  sample because they have things that they chose not to include

23  in it to make it look better for themselves.

24          THE COURT:  In the complaint you mean.

25          MR. JACOB:  Yes, allegations in the complaint.  For
```

1    example they said Dr. Detterline has never found somebody to be

2    totally and permanently disabled.

3             THE COURT:  And now they know that to be untrue

4    because you produced documents to the contrary.

5             MR. JACOB:  No.  Mr. Katz had that.  Mr. Katz

6    represented the person who was involved that that.  Their sample

7    of 784 claims largely comes from Mr. Katz's representations of a

8    large number of people.

9        And then there's a bunch of other assorted.  I mean, we're

10   trying to figure it out.  We've got a bunch of gobbledygook

11   basically.  A bunch of underlying documents that we can't

12   actually match up.  There's things that are missing; we can't

13   get to the right numbers, et cetera.

14       And they've said, well, if we did have any calculations

15   they'd be attorney work product privilege.  But they haven't

16   produced a privilege log.  We told them back in December, look,

17   if you're saying that you have calculations or analysis that we

18   can show -- it's important to us where they, you know, talk

19   about fraudulent schemes here.  It's not proper for them to have

20   counter examples in their possession that they know of from

21   their clients that they just chose to not include in these

22   mystery samples that they used in the complaint to try to

23   leverage into this giant discovery.

24       So that's what we're dealing with.  That we -- until we get

25   that expert disclosure we're not going to know how they tried to

 1    connect those dots.  We don't -- what we can tell the Court is,

 2    here's all these reasons we know that those things aren't true.

 3    We know it from the things that we've produced, we know it from

 4    their own representations, things that they chose not to

 5    include, and they're trying to leverage these things into the

 6    most expansive discovery.  Again, as Mr. Barnett says, it's a

 7    case that justifies it, but the most expansive discovery for an

 8    ERISA plan ever based on all of these statistics that just

 9    aren't true.

10        So we're left in a somewhat difficult position until we get

11    some kind of expert disclosure from them, or the underlying work

12    product, or at last the privilege log so that we can then attack

13    that and say hey, we've got to have your connect the dots.

14    You've used this and alleged it in the complaint as the basis.

15    That's the glue that holds these alleged -- you know, these ten

16    very different ones, benefit claims.  And again, that's one of

17    the things that we hope the Court will see when it does get to

18    reviewing those summary judgment motions.  They're totally

19    different; their complaints are different, everything you need

20    to resolve them is different.  These alleged statistics, the

21    made up samples that we can't put together based on what they

22    put out there, and that are completely inconsistent with the

23    actual plan live data.  So I would hope that we could get that

24    deadline resolved perhaps in a different way.

25            THE COURT:  When you say that deadline, you mean

```
 1   Plaintiff's expert disclosure?
 2         MR. JACOB:  Their expert disclosure deadline.  It's
 3   been put off three times at this point, now it's in abeyance.
 4   And it's our only lifeline at this point to be able to -- I
 5   mean, I can't make a coherent case to the Court out of the sort
 6   of gobbledygook stuff that got produced to us.  I need to know
 7   how did you come up with all of these subsamples when you're
 8   telling the Court that the top 14 T & P neutral physicians never
 9   found anybody T & P.  I know that's not true but how did you
10   come to conclude that that's true?
11         Until I have that, even with respect to the motion to
12   compel, it's very much part of that argument because they're
13   saying that our statistics aren't -- that all the data that
14   we've provided that allows the calculation of those statistics,
15   that somehow that's not good enough.  And it's because of what
16   they purport to say, well, these are the things we know but
17   we're just not showing our hand 19 months into all of those
18   allegations having been made.
19         So I would ask the Court to consider putting that expert
20   disclosure deadline -- and again, if they need a follow-up
21   report they have Dr. Lasater's analysis of the statistical data.
22   Our stuff is out there, but what we don't have is anything from
23   them.  And for that to be the case this far into the case, and
24   when they're using those allegations to try to leverage the
25   motion --
```

```
 1              THE COURT:  And I'm not asking what -- I don't know
 2   what the answer to that question is, and I certainly am not
 3   encouraging more discovery disputes.  But, you know, I don't
 4   know if you have got a motion to compel, you know, being
 5   drafted, I don't know whether plaintiff used a litigation
 6   consultant expert, I have no earthly idea.  But if you're just
 7   throwing it out to me that I need to compel them to disclose an
 8   expert because you can't mount a defense, that's news to me.
 9              MR. JACOB:  No, Your Honor.  It's that we have --
10   again, the reason -- we have agreed to re-putting off the expert
11   disclosure.
12              THE COURT:  Yes, I understand.
13              MR. JACOB:  But we assumed we were going to get it
14   with the class cert papers.
15              THE COURT:  I get that.  I understand.
16              MR. JACOB:  And then when they came to us again,
17   that's when we said, no, we actually need this.  And that was
18   part of our opposition.  So that's what I'm saying.  We need an
19   expert disclosure at this point.  Before they start to get to
20   leverage these unfounded allegations into broad discovery we
21   need to see what the underlying stuff is.  Not the gobbledygook
22   but what is it that you're saying are the actual samples within
23   that, that we can then disprove to the court using what's
24   already been produced.  Because if we can do that, that means
25   you don't need more stuff.  All of the things that they're
```

```
 1  putting forward just aren't accurate.  Those aren't the basis to
 2  go further.  And you'll be able to see that, just based on the
 3  statistics we have, if we can see how it is that they tried to
 4  connect these dots.
 5            THE COURT:  Uh-huh.
 6            MR. JACOB:  So again, we don't have -- we asked them
 7  for a privilege log listing, whatever the connect the dot stuff
 8  was.  If there was none, which is what I sometimes suspect, that
 9  they never did that, then they can just say that.  But if there
10  is one, we need that log so that we can begin a motion to compel
11  process disputing the privilege allegation.  Until I've got a
12  log I don't really have a place to do it.  I wouldn't have to go
13  through that process if we had an expert disclosure deadline
14  that allowed me to get that ahead of this motion to compel
15  argument, for example.  That has been the difficult position.
16            THE COURT:  Except now it's been fully briefed.
17            MR. JACOB:  I agree.  I agree, Your Honor.
18            THE COURT:  Yeah.  Yeah.  It's a pickle.
19            MR. BARNETT:  Your Honor, just very briefly.  So it's
20  a little unclear to me what Mr. Jacob's is talking about because
21  he's attacking our statistics and information.  The statistics
22  that we based in the complaint come from their records.  They
23  come from the decision letters.  They come from the physician
24  reports.  They come from the form 5500s which are --
25            THE COURT:  You mean that were provided to your
```

 1    clients.

 2            MR. BARNETT:  Pardon me?

 3            THE COURT:  That were provided to your clients.

 4            MR. BARNETT:  They're publicly available.

 5        And so they already have all of the documents.  And despite

 6    that fact, we reproduced all of the documents to them again.  So

 7    to the extent that it's gobbledygook, it's because of the

 8    underlying records which are their own records.

 9        We have done more than a privilege log.  In our discovery

10    responses we cited case law under the Fourth Circuit that

11    protects the opinion work product that formed that sample.  And

12    not only that, at their request they said, well give us -- we

13    disagree, give us a list of case law.  We gave them a list of

14    case law; we heard nothing from them for two months.  When we

15    finally did hear back from them they cited, I think it was three

16    or four District of South Carolina opinions that aren't the

17    authority in the Fourth Circuit.  And so there is no live issue

18    as to this issue despite Mr. Jacob's efforts to create one.

19        And we would be fine doing an expert report but that expert

20    report would go to the statistical sample that was in our

21    amended complaint.

22        We should be moving this case forward, because chances are

23    that Dr. Lasater, if, in fact, you grant the motion to compel

24    and require the production of the decision letters, which will

25    actually contain the recommendations of the individual

1  physicians, my guess is they're going to withdraw his report and

2  he's going to need to redo it because the V3 data on which he

3  relies his report doesn't contain that information.

4          THE COURT:  Doesn't contain the underlying --

5          MR. BARNETT:  It does not contain the recommendation

6  of the individual physician as to that benefits application.

7      We have from multiple declarations, including from

8  Mr. Vincent, that says the Defendants don't have a system that

9  contains that information.

10     And ultimately, from our perspective, that's going to go to

11 the question of the adequacy of the systems that they have in

12 place under the ERISA plan.  But in the meantime, the fact that

13 they don't have this information, that's not our fault, that's

14 their fault because they don't have a system that contains it,

15 which is, again, why we need the decision letters.

16         THE COURT:  Okay.  And so as far as Mr. Jacob's

17 complaint about keeping the Rule 26 disclosure deadline in

18 abeyance, same issue.

19         MR. BARNETT:  Yeah.  It seems to me there's no reason

20 to force us to do an expert disclosure until we resolve the

21 motion to compel.  And once the Court resolves that issue we're

22 prepared to move forward.

23         THE COURT:  Okay.  All right.  I appreciate the

24 constraints that both parties feel they're operating under.

25     Mr. Jacob, was there anything else that you wanted to say

```
1    on that?  I'm not going to get ahead of myself before the oral
2    argument, but I understand -- I think I understand well what you
3    tried to explain to me.
4            MR. JACOB:  No.  And I think Mr. Barnett said, unless
5    I misunderstood him, that they are willing to do an expert
6    report based on the amended complaint stuff.  That's what we're
7    missing.  I don't need all the attorney work product stuff.
8            MR. BARNETT:  That's not at all what I was saying,
9    Mr. Jacobs.
10           MR. JACOB:  Then I misheard you.  But that's what we
11   need, we need their connect the dots because they're trying to
12   use that to leverage.
13           THE COURT:  We're going to take a look at that on the
14   21st.  But I understand what you're saying, and we'll get there.
15   I will do my best to dig into it.
16       I appreciate everyone's time in getting here today.  So I
17   will see you all on the 21st for full oral argument.  And if I
18   need anything in particular, as far as focus, I will ask for it
19   in advance.  And I appreciate your time here today.
20           MR. BARNETT:  Thank you, Your Honor.
21           MR. JACOB:  Thank you, Your Honor.
22           (The proceedings concluded at 2:51 p.m.)
23
24
25
```

1                  CERTIFICATE OF OFFICIAL REPORTER.

2          I, Kassandra L. McPherson, Registered Professional
Reporter, in and for the United States District Court for the

3 District of Maryland, do hereby certify, pursuant to 28 U.S.C. §
753, that the foregoing is a true and correct transcript of the

4 stenographically-reported proceedings held in the above-entitled
matter and that the transcript page format is in conformance

5 with the regulations of the Judicial Conference of the United
States.

6

7                         Dated this <u>20th</u> day of <u>January 2025</u>.

                              -S-

8                     _____

                     KASSANDRA L. MCPHERSON, RPR

9                     FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**1,324** [1] - 8:18
**1,866** [2] - 8:12, 8:13
**1,936** [1] - 8:11
**10** [1] - 25:3
**101** [1] - 1:24
**12** [1] - 8:9
**132** [4] - 12:24, 13:23, 13:25, 25:12
**134** [2] - 13:24, 25:9
**13th** [1] - 24:24
**14** [1] - 29:8
**14th** [1] - 24:24
**16** [1] - 1:8
**1625** [1] - 1:21
**19** [1] - 29:17
**19106** [1] - 1:14
**19th** [1] - 16:19
**1:23-CV-00358** [1] - 1:4

**2**

**20006** [1] - 1:21
**2018** [1] - 6:9
**2019** [3] - 6:10, 6:15
**2025** [2] - 1:8, 35:6
**20th** [1] - 35:6
**21201** [1] - 1:24
**21st** [4] - 25:3, 25:17, 34:14, 34:17
**23-cv-0358-JRR** [1] - 2:4
**26** [2] - 4:18, 33:17
**28** [1] - 35:3
**289** [1] - 14:15
**2:03** [1] - 2:1
**2:51** [1] - 34:22

**3**

**320-cv-1277** [1] - 14:15
**325** [1] - 1:14
**3A** [1] - 1:9

**4**

**4** [1] - 11:14
**40** [1] - 7:15
**410** [1] - 1:25
**495** [1] - 24:9

**4th** [1] - 1:24

**5**

**50** [1] - 7:16
**53** [1] - 14:6
**5500s** [1] - 31:24
**56** [1] - 13:1

**7**

**7** [1] - 11:15
**753** [1] - 35:3
**784** [1] - 27:7

**8**

**800** [1] - 1:17
**8383** [1] - 1:17
**897** [1] - 8:18

**9**

**90211** [1] - 1:17
**917** [1] - 1:14
**962-4544** [1] - 1:25

**A**

**a.m** [1] - 25:3
**abeyance** [4] - 13:2, 13:22, 29:3, 33:18
**able** [5] - 20:4, 21:5, 22:9, 29:4, 31:2
**above-entitled** [1] - 35:4
**Abromaitis** [2] - 5:18, 11:3
**absolutely** [1] - 24:1
**according** [1] - 4:22
**accurate** [1] - 31:1
**acknowledge** [1] - 11:22
**actual** [3] - 14:23, 28:23, 30:22
**add** [2] - 7:15, 14:12
**added** [1] - 9:22
**additional** [6] - 6:4, 11:9, 11:12, 11:18, 11:19, 25:18
**address** [3] - 19:21, 24:2,

25:23
**addressing** [3] - 9:19, 14:18, 23:18
**adequacy** [1] - 33:11
**administrative** [6] - 6:18, 6:21, 6:23, 9:24, 11:17, 11:21
**admit** [2] - 10:7, 11:14
**advance** [1] - 34:19
**advanced** [1] - 3:12
**afternoon** [8] - 2:10, 2:12, 2:13, 2:15, 2:16, 2:18, 2:23, 2:25
**agree** [1] - 31:17
**agreed** [1] - 30:10
**ahead** [3] - 26:15, 31:14, 34:1
**aided** [1] - 1:22
**al** [4] - 1:3, 1:6, 2:4, 2:5
**Alford** [1] - 2:4
**ALFORD** [1] - 1:3
**allegation** [3] - 7:16, 22:2, 31:11
**allegations** [8] - 5:25, 6:2, 26:12, 26:20, 26:25, 29:18, 29:24, 30:20
**allege** [1] - 6:6
**alleged** [5] - 7:14, 14:25, 28:14, 28:15, 28:20
**allow** [1] - 6:6
**allowed** [1] - 31:14
**allows** [1] - 29:14
**amended** [3] - 15:7, 32:21, 34:6
**Amended** [1] - 3:7
**amount** [1] - 8:22
**analysis** [3] - 15:5, 27:17, 29:21
**analyze** [1] - 6:3
**analyzing** [1] - 7:12
**animated** [1] - 12:2
**answer** [2] - 12:10, 30:2

**apologies** [1] - 16:8
**appeal** [2] - 6:12, 6:14
**appeals** [1] - 7:15
**application** [7] - 6:20, 8:7, 8:20, 10:9, 11:8, 12:11, 33:6
**applications** [4] - 6:24, 7:8, 7:17, 8:23
**apply** [1] - 22:4
**appointed** [1] - 4:1
**appointing** [3] - 3:22, 4:4, 20:18
**appointment** [2] - 6:20, 19:18
**appreciate** [6] - 15:11, 16:12, 19:18, 33:23, 34:16, 34:19
**appropriate** [3] - 3:7, 4:7, 20:20
**approval** [4] - 7:12, 7:14, 10:12, 11:8
**approvals** [1] - 26:17
**approved** [7] - 6:17, 6:18, 7:8, 8:7, 8:15, 8:20, 10:10
**April** [2] - 6:10
**areas** [1] - 23:9
**argument** [18] - 4:16, 5:5, 6:7, 9:18, 13:11, 13:12, 14:8, 15:17, 17:3, 17:13, 23:7, 23:10, 23:21, 25:8, 29:12, 31:15, 34:2, 34:17
**Aslan** [8] - 3:23, 4:1, 12:14, 17:5, 17:11, 17:12, 19:18, 22:10
**aspersions** [2] - 16:23, 18:3
**assess** [1] - 7:19
**assigned** [3] - 9:12, 10:9, 10:13
**assigning** [1] - 8:25
**associated** [2] - 10:22, 11:13

**assorted** [1] - 27:9
**assumed** [1] - 30:13
**ATH** [1] - 1:16
**ATHLaw** [2] - 2:14, 2:17
**attack** [1] - 28:12
**attacking** [1] - 31:21
**attention** [1] - 20:3
**attorney** [2] - 27:15, 34:7
**attorney's** [2] - 14:17, 15:9
**August** [1] - 6:10
**authority** [1] - 32:17
**available** [1] - 32:4
**average** [2] - 11:3, 11:6
**averages** [1] - 5:21, 11:7
**award** [1] - 14:16
**awarding** [1] - 15:9
**aware** [3] - 3:3, 11:16, 22:13

**B**

**B3** [1] - 4:19
**backing** [1] - 26:6
**backwards** [1] - 26:4
**baked** [1] - 13:19
**balance** [2] - 14:2, 17:6
**ball** [1] - 12:22
**Baltimore** [2] - 1:9, 1:24
**Barnett** [7] - 2:10, 3:16, 14:10, 17:20, 23:14, 28:6, 34:4
**BARNETT** [26] - 1:13, 2:10, 3:17, 3:22, 4:10, 14:11, 17:24, 18:2, 18:6, 18:21, 19:6, 19:17, 19:25, 20:11, 21:25, 23:22, 24:6, 24:21, 25:5, 31:19, 32:2, 32:4, 33:5, 33:19, 34:8,

34:20
**Barnett's** [2] - 11:16, 12:22
**based** [5] - 28:8, 28:21, 31:2, 31:22, 34:6
**basis** [4] - 6:18, 6:19, 28:14, 31:1
**batting** [5] - 5:21, 11:2, 11:5, 11:7
**beast** [1] - 19:12
**BEFORE** [1] - 1:11
**begin** [2] - 16:3, 31:10
**Behalf** [2] - 1:12, 1:18
**behind** [1] - 20:6
**beltway** [1] - 24:8
**Ben** [1] - 2:10
**bench** [1] - 14:9
**beneficial** [1] - 15:6
**Benefit** [1] - 2:5
**benefit** [3] - 11:19, 15:9, 28:16
**BENEFIT** [1] - 1:6
**benefits** [3] - 8:11, 15:2, 33:6
**BENJAMIN** [1] - 1:13
**best** [4] - 9:7, 19:5, 19:12, 34:15
**better** [2] - 17:17, 26:23
**between** [1] - 13:13
**Beverly** [1] - 1:17
**beyond** [5] - 5:16, 6:13, 11:21, 23:16, 24:4
**bias** [2] - 5:25, 9:10
**bit** [2] - 19:25, 22:16
**black** [1] - 24:18
**blind** [2] - 23:11, 26:11
**block** [1] - 24:13
**blown** [2] - 4:16, 5:5
**Booth** [3] - 5:3, 12:2, 12:4
**Boulevard** [1] - 1:17
**bounds** [1] - 23:16

**breach** [1] - 24:1
**Bredar** [1] - 5:23
**briefed** [3] - 4:14, 12:1, 31:16
**briefing** [5] - 5:6, 5:25, 6:1, 11:1, 26:1
**briefly** [2] - 20:21, 31:19
**briefs** [1] - 11:23
**bring** [3] - 3:11, 17:19, 19:7
**broad** [1] - 30:20
**broader** [1] - 14:20
**brought** [1] - 26:15
**buckets** [1] - 5:14
**bunch** [3] - 27:9, 27:10, 27:11
**burden** [3] - 11:12, 12:7, 18:19
**burdens** [1] - 10:21

**C**

**CA** [1] - 1:17
**cackle** [1] - 19:23
**calculation** [1] - 29:14
**calculations** [2] - 27:14, 27:17
**calendar** [3] - 17:19, 22:21, 23:6
**calendars** [1] - 24:7
**candid** [2] - 16:14, 19:16
**candidate** [1] - 4:7
**cannot** [1] - 11:12
**capabilities** [2] - 18:16, 18:17
**capacity** [1] - 12:18
**care** [1] - 16:12
**Carolina** [1] - 32:16
**CASE** [1] - 1:4
**case** [41] - 3:3, 4:6, 5:16, 5:18, 5:19, 5:23, 5:24, 10:23, 13:8, 14:14, 14:15, 14:19, 14:20, 14:22, 15:4, 16:1, 19:15,

20:7, 21:7, 21:17, 22:7, 23:17, 23:18, 23:19, 23:20, 23:23, 24:17, 26:5, 28:7, 29:5, 29:23, 32:10, 32:13, 32:14, 32:22
**cases** [6] - 11:1, 11:4, 11:23, 21:8, 21:12, 23:3
**casting** [2] - 16:23, 18:3
**casual** [1] - 3:15
**cert** [1] - 30:14
**certain** [2] - 18:10, 26:20
**certainly** [4] - 3:6, 13:18, 25:15, 30:2
**CERTIFICATE** [1] - 35:1
**certification** [7] - 3:10, 4:20, 7:11, 12:17, 13:2, 13:20, 26:7
**certify** [2] - 9:9, 35:3
**cetera** [1] - 27:13
**chance** [1] - 17:17
**chances** [1] - 32:22
**changed** [1] - 21:22
**chapter** [1] - 12:1
**Chestnut** [1] - 1:14
**chose** [3] - 26:22, 27:21, 28:4
**chunk** [1] - 24:23
**Circuit** [7] - 5:19, 5:20, 11:3, 11:4, 22:3, 32:10, 32:17
**circuit** [1] - 5:20
**Circuit's** [1] - 5:2
**circumstances** [1] - 21:22
**cite** [1] - 10:23
**cited** [8] - 5:16, 5:18, 11:1, 11:23, 15:4, 15:8, 32:10, 32:15
**civil** [1] - 2:4
**CIVIL** [1] - 1:4
**claim** [8] - 6:11, 6:17, 7:1, 8:4,

8:15, 9:2, 9:7, 11:1
**claims** [25] - 4:18, 4:24, 6:9, 6:11, 6:14, 6:17, 7:5, 7:13, 7:18, 8:12, 9:2, 9:12, 10:9, 10:14, 10:18, 11:6, 11:10, 11:25, 12:18, 12:19, 21:18, 21:19, 21:20, 27:7, 28:16
**Clark** [1] - 5:23
**class** [7] - 3:9, 4:20, 7:10, 12:16, 13:19, 26:7, 30:14
**classes** [1] - 13:21
**clear** [10] - 5:6, 14:12, 15:19, 15:22, 16:8, 17:5, 20:2, 21:25, 22:1, 25:7
**clearly** [1] - 4:17
**clerk** [1] - 26:15
**CLERK** [2] - 2:3, 2:19
**clerks** [1] - 15:15
**clients** [3] - 27:21, 32:1, 32:3
**Cloud** [6] - 14:14, 15:6, 15:8, 21:17
**Cloud's** [1] - 15:9
**coherent** [1] - 29:5
**coin** [1] - 13:4
**coming** [3] - 20:24, 22:10, 24:10
**commend** [1] - 14:13
**common** [1] - 15:23
**compel** [28] - 3:8, 4:12, 4:14, 5:14, 8:1, 12:14, 12:15, 13:3, 13:12, 13:24, 14:1, 14:8, 16:1, 17:4, 17:8, 17:13, 20:23, 21:5, 25:9, 25:17, 26:14, 29:12, 30:4, 30:7, 31:10, 31:14, 32:23,

33:21
**competence** [1] - 19:9
**competent** [1] - 6:6
**Complaint** [1] - 3:7
**complaint** [19] - 6:22, 7:14, 7:17, 8:18, 8:24, 9:14, 9:19, 15:7, 26:7, 26:12, 26:20, 26:24, 26:25, 27:22, 28:14, 31:22, 32:21, 33:17, 34:6
**complaints** [2] - 9:1, 28:19
**completely** [3] - 7:13, 9:13, 28:22
**complex** [2] - 15:18, 23:3
**Computer** [1] - 1:22
**Computer-aided** [1] - 1:22
**concern** [1] - 3:4
**conclude** [1] - 29:10
**concluded** [1] - 34:22
**conference** [1] - 3:20
**Conference** [1] - 35:5
**conferences** [1] - 23:2
**confers** [1] - 6:23
**conformance** [1] - 35:4
**conjunction** [1] - 10:20
**connect** [5] - 28:1, 28:13, 31:4, 31:7, 34:11
**consent** [2] - 16:15, 16:16
**consider** [1] - 29:19
**constant** [1] - 22:9
**constraints** [1] - 33:24
**consultant** [1] - 30:6
**contain** [5] - 4:21, 32:25, 33:3, 33:4, 33:5

**contains** [2] - 33:9, 33:14
**contend** [1] - 9:17
**contested** [1] - 16:20
**continue** [1] - 25:15
**contracts** [1] - 9:8
**contradict** [1] - 26:19
**contrary** [1] - 27:4
**conversing** [1] - 15:13
**convince** [1] - 21:5
**convinced** [1] - 16:3
**convincing** [2] - 21:25, 22:1
**copious** [1] - 9:5
**correct** [1] - 35:3
**correspond** [1] - 23:8
**Coulson** [1] - 19:3
**counsel** [7] - 2:8, 2:19, 3:13, 15:9, 16:25, 18:4, 23:8
**counsels'** [1] - 4:8
**counter** [2] - 7:23, 27:20
**country** [1] - 24:22
**couple** [2] - 16:2, 24:12
**course** [3] - 17:10, 18:5, 25:24
**court** [9] - 10:24, 14:20, 21:14, 21:17, 22:8, 23:4, 25:7, 26:15, 30:23
**COURT** [55] - 1:1, 2:12, 2:15, 2:18, 2:25, 3:21, 3:25, 5:9, 6:5, 7:21, 9:15, 9:25, 11:25, 12:6, 12:9, 12:12, 15:11, 18:1, 18:5, 18:19, 19:5, 19:8, 19:22, 20:9, 20:12, 20:16, 20:25, 21:10, 21:24, 22:13, 22:18, 22:21, 24:3, 24:7, 25:1, 25:6, 25:22,

25:24, 26:3, 26:24, 27:3, 28:25, 30:1, 30:12, 30:15, 31:5, 31:16, 31:18, 31:25, 32:3, 33:4, 33:16, 33:23, 34:13, 35:9
**Court** [23] - 1:23, 2:3, 2:6, 3:18, 4:15, 5:2, 5:7, 14:13, 17:7, 19:1, 19:21, 21:4, 21:6, 21:15, 22:6, 25:16, 28:1, 28:17, 29:5, 29:8, 29:19, 33:21, 35:2
**Court's** [2] - 20:22, 21:4
**courtroom** [1] - 25:7
**Courtroom** [1] - 1:9
**courts** [1] - 5:16
**create** [1] - 32:18
**criteria** [1] - 9:5
**crosshairs** [1] - 16:24
**curia** [1] - 25:12
**current** [1] - 18:3
**curtain** [1] - 14:23

**D**

**D.C** [1] - 1:21
**damage** [1] - 13:8
**Damron** [1] - 2:16
**DAMRON** [2] - 1:16, 2:16
**darn** [1] - 24:5
**data** [23] - 4:19, 6:8, 6:16, 7:12, 7:19, 7:21, 7:22, 8:5, 9:11, 9:16, 9:18, 9:23, 10:1, 10:12, 12:7, 18:18, 18:22, 21:19, 21:20, 28:23, 29:13, 29:21, 33:2
**date** [4] - 13:11, 18:3, 24:15, 25:13
**Dated** [1] - 35:6
**dates** [1] - 24:11
**days** [1] - 24:18
**deadline** [9] -

12:24, 16:6, 26:2, 28:24, 28:25, 29:2, 29:20, 31:13, 33:17
**deadlines** [4] - 4:13, 13:22, 25:14, 25:16
**deal** [1] - 18:24
**dealing** [1] - 27:24
**December** [1] - 27:16
**decision** [12] - 4:17, 4:23, 5:1, 5:2, 5:4, 11:17, 13:17, 14:16, 14:21, 31:23, 32:24, 33:15
**decisions** [1] - 5:20
**declarants** [1] - 4:22
**declaration** [4] - 7:11, 8:10, 10:21, 11:16
**declarations** [3] - 9:4, 12:23, 33:7
**deep** [1] - 4:5
**defendants** [2] - 14:24, 18:7
**Defendants** [5] - 1:7, 1:18, 2:22, 4:19, 33:8
**defense** [6] - 2:19, 12:20, 16:9, 16:17, 17:9, 30:8
**defenses** [1] - 4:25
**deference** [1] - 19:1
**degree** [2] - 3:4, 9:18
**delay** [1] - 13:9
**denial** [4] - 6:21, 7:18, 9:13, 11:8
**denials** [2] - 6:23, 6:24
**denied** [11] - 6:17, 6:18, 7:9, 8:7, 9:1, 9:2, 10:10, 10:19, 11:5, 21:18
**deny** [2] - 9:2, 11:24
**deputy** [1] - 25:7
**description** [1] - 14:25
**despite** [2] - 32:5,

32:18
**detail** [1] - 14:18
**details** [1] - 3:2
**Detterline** [1] - 27:1
**developed** [1] - 15:8
**die** [1] - 16:17
**different** [5] - 28:16, 28:19, 28:20, 28:24
**difficult** [2] - 28:10, 31:15
**dig** [1] - 34:15
**direction** [1] - 3:12
**directly** [1] - 14:17
**DISABILITY** [1] - 1:5
**disability** [4] - 8:10, 8:12, 8:17, 10:17
**Disability** [1] - 2:5
**disabled** [3] - 8:16, 8:21, 27:2
**disagree** [1] - 32:13
**discern** [1] - 7:16
**disclose** [1] - 30:7
**disclosure** [12] - 13:1, 26:2, 27:25, 28:11, 29:1, 29:2, 29:20, 30:11, 30:19, 31:13, 33:17, 33:20
**discovery** [22] - 3:24, 6:1, 11:5, 14:19, 15:6, 16:20, 17:6, 17:11, 18:2, 18:8, 19:3, 19:11, 21:18, 21:19, 22:14, 27:23, 28:6, 28:7, 30:3, 30:20, 32:9
**discuss** [1] - 14:4
**discussed** [1] - 14:5
**dispensed** [1] - 4:3
**disposition** [1] - 6:16
**disprove** [1] - 30:23
**dispute** [1] - 16:20
**disputes** [6] -

17:9, 17:10, 18:8, 19:11, 22:10, 30:3
**disputing** [1] - 31:11
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 11:4
**District** [4] - 5:24, 32:16, 35:2, 35:3
**DIVISION** [1] - 1:2
**docket** [1] - 2:4
**doctors** [2] - 5:21, 26:20
**document** [2] - 10:1, 10:4
**documents** [7] - 10:2, 10:22, 10:25, 27:4, 27:11, 32:5, 32:6
**done** [2] - 6:3, 32:9
**dot** [1] - 31:7
**dots** [4] - 28:1, 28:13, 31:4, 34:11
**down** [2] - 21:16, 22:6
**Dr** [6] - 7:11, 7:23, 8:9, 27:1, 29:21, 32:23
**drafted** [1] - 30:5
**draw** [1] - 22:16
**drink** [1] - 19:16
**due** [1] - 19:1
**during** [1] - 30:3
**duty** [1] - 24:1

## E

**earliest** [1] - 6:11
**early** [1] - 16:1
**earth** [1] - 25:15
**earthly** [1] - 30:6
**eat** [1] - 13:24
**ECF** [2] - 14:15, 25:9
**effect** [1] - 17:6
**effectively** [1] - 23:16
**efficiency** [1] - 19:14
**efforts** [1] - 32:18
**either** [2] - 18:9, 20:19
**encouraging** [1] - 30:3
**end** [1] - 23:14

**ends** [1] - 25:15
**entire** [2] - 7:5, 23:24
**entitled** [1] - 35:4
**entwined** [2] - 12:16, 13:6
**ERISA** [5] - 15:6, 18:7, 23:17, 28:8, 33:12
**ERISA's** [1] - 10:24
**error** [1] - 17:1
**ESI** [2] - 18:11, 19:14
**ESQUIRE** [5] - 1:13, 1:15, 1:16, 1:19, 1:20
**essentially** [1] - 12:21
**establish** [1] - 13:20
**et** [5] - 1:3, 1:6, 2:4, 2:5, 27:13
**evaluate** [1] - 12:8
**evidence** [4] - 4:19, 4:24, 5:3, 15:8
**exact** [1] - 8:11
**exactly** [3] - 11:18, 18:21, 21:6
**example** [2] - 27:1, 31:15
**examples** [3] - 26:14, 26:17, 27:20
**Excel** [1] - 18:23
**excellent** [2] - 4:1, 19:4
**except** [1] - 31:16
**exhibits** [1] - 3:11
**exist** [2] - 8:6, 15:1
**existing** [1] - 21:20
**expansive** [2] - 28:6, 28:7
**expect** [1] - 25:17
**expense** [1] - 22:25
**experience** [3] - 18:2, 18:11, 19:20
**expert** [18] - 7:22, 13:1, 26:1, 26:5, 27:25, 28:11, 29:1, 29:2, 29:19, 30:6, 30:8, 30:10, 30:19, 31:13,

32:19, 33:20, 34:5
**explain** [4] - 9:18, 23:19, 34:3
**express** [1] - 16:24
**extend** [3] - 11:15, 25:14, 25:16
**extension** [1] - 4:13
**extent** [6] - 8:2, 12:16, 13:23, 16:6, 17:7, 32:7
**extra** [2] - 6:1, 11:5
**extracting** [1] - 18:19
**extraordinarily** [1] - 15:18
**eye** [1] - 23:11
**Eye** [1] - 1:21

## F

**fact** [9] - 5:3, 6:10, 11:1, 13:15, 15:7, 15:19, 32:6, 32:23, 33:12
**factors** [3] - 5:4, 12:2, 12:4
**failed** [1] - 6:19
**fairness** [1] - 12:13
**far** [5] - 3:9, 24:16, 29:23, 33:16, 34:18
**fashion** [2] - 18:14, 25:13
**fashions** [1] - 24:2
**fault** [2] - 33:13, 33:14
**favorably** [1] - 17:8
**fear** [1] - 3:24
**February** [5] - 24:20, 24:23, 24:24, 25:3, 25:13
**FEDERAL** [1] - 35:9
**Federal** [1] - 1:23
**fees** [2] - 14:17, 15:10
**felt** [1] - 6:13
**fiduciary** [1] - 24:1
**Fifth** [1] - 22:3

**figure** [2] - 14:2, 27:10
**file** [4] - 16:4, 16:10, 16:22, 26:5
**filed** [3] - 3:9, 6:11, 16:19
**files** [1] - 9:23
**filing** [3] - 14:15, 15:25, 16:1
**filings** [1] - 3:19
**finally** [1] - 32:15
**findings** [3] - 8:22, 10:15, 11:11
**fine** [1] - 32:19
**finished** [1] - 13:19
**firehose** [1] - 19:16
**first** [3] - 3:13, 20:19, 26:11
**Floor** [1] - 1:24
**focus** [2] - 23:9, 34:18
**follow** [1] - 29:20
**follow-up** [1] - 29:20
**followed** [1] - 15:1
**footnote** [1] - 8:9
**FOR** [1] - 1:1
**force** [2] - 17:6, 33:20
**foregoing** [1] - 35:3
**forget** [2] - 21:23, 23:7
**form** [1] - 31:24
**format** [2] - 18:23, 35:4
**formed** [1] - 32:11
**forms** [2] - 4:17, 9:9
**forth** [1] - 12:24
**forward** [4] - 3:23, 31:1, 32:22, 33:22
**four** [2] - 11:4, 32:16
**Fourth** [5] - 5:1, 5:19, 11:3, 32:10, 32:17
**frankly** [2] - 15:24, 19:1
**fraudulent** [2] - 23:24, 27:19
**frequency** [1] - 7:6
**frequently** [2] -

9:12, 10:13
**Friday** [1] - 25:3
**front** [1] - 19:2
**full** [5] - 4:16, 5:5,
7:22, 17:6,
34:17
**full-blown** [2] -
4:16, 5:5
**fully** [2] - 4:14,
31:16
**fulsome** [4] -
13:11, 14:1,
17:4, 17:10
**furthest** [1] -
21:12

### G

**GARAGIOLA** [2] -
1:20, 2:23
**Garagioula** [1] -
2:24
**gather** [1] - 24:14
**general** [1] - 4:16
**generate** [1] -
18:22
**giant** [1] - 27:23
**gig** [1] - 3:21
**given** [7] - 3:2,
4:4, 6:2, 19:19,
20:12, 24:5
**glad** [1] - 15:16
**glue** [1] - 28:15
**goal** [1] - 25:19
**gobbledygook** [4]
- 27:10, 29:6,
30:21, 32:7
**gonna** [1] - 13:22
**grant** [1] - 32:23
**greater** [1] - 19:10
**greatest** [1] - 20:7
**Gregory** [1] - 2:21
**GREGORY** [1] -
1:19
**guess** [7] - 5:13,
9:25, 10:2,
12:12, 20:1,
24:3, 33:1
**guidance** [3] -
21:16, 22:6,
22:8
**guys** [1] - 24:11

### H

**half** [2] - 13:19
**half-baked** [1] -
13:19
**half-finished** [1] -
13:19

**hand** [1] - 29:17
**happy** [8] - 3:16,
4:15, 5:5, 5:6,
5:11, 23:22,
24:2, 24:6
**hardcore** [1] -
18:11
**harder** [1] - 22:16
**head** [4] - 15:20,
19:23, 21:4,
24:14
**health** [1] - 22:11
**hear** [12] - 3:13,
3:16, 4:7, 5:10,
5:11, 15:15,
16:7, 17:14,
20:9, 21:3,
23:13, 32:15
**heard** [2] - 19:23,
32:14
**HEARING** [1] -
1:10
**hearing** [6] - 2:7,
14:1, 15:16,
17:3, 17:16,
19:22
**hearings** [1] -
23:2
**Held** [2] - 5:1, 5:2
**held** [3] - 15:16,
25:12, 35:4
**helmet** [1] - 24:4
**helpful** [5] -
15:18, 15:20,
23:5
**hereby** [1] - 35:3
**hesitate** [1] - 24:4
**hidden** [1] - 10:15
**hide** [2] - 12:22,
15:20
**high** [2] - 7:14,
7:18
**higher** [2] - 10:12,
10:19
**hill** [1] - 16:17
**Hills** [1] - 1:17
**history** [3] -
10:24, 18:6,
23:17
**hold** [2] - 12:24,
13:22
**holding** [1] -
16:23
**holds** [1] - 28:15
**holidays** [1] -
3:19
**home** [1] - 3:1
**Honor** [21] - 2:10,
2:13, 2:16, 2:21,
2:23, 3:17, 5:13,

9:21, 14:11,
17:25, 20:14,
23:22, 24:21,
25:4, 25:5,
25:21, 30:9,
31:17, 31:19,
34:20, 34:21
**HONORABLE** [1]
- 1:11
**hope** [5] - 19:19,
20:4, 20:10,
28:17, 28:23
**hopefully** [1] -
17:24
**hoping** [1] - 21:5
**hotly** [1] - 16:20
**hour** [1] - 24:15
**hours** [1] - 24:12
**hunting** [1] -
12:11

### I

**idea** [4] - 17:23,
17:25, 20:2,
30:6
**identified** [3] -
4:2, 6:25, 13:23
**identify** [2] - 6:4,
23:8
**identifying** [2] -
7:4, 7:7
**immediately** [1] -
20:17
**important** [4] -
15:21, 21:15,
23:11, 27:18
**IN** [1] - 1:1
**in-person** [2] -
23:1, 23:4
**include** [3] -
26:22, 27:21,
28:5
**including** [3] -
11:5, 19:3, 33:7
**inconsistent** [4] -
7:13, 9:13,
12:11, 28:22
**inconsistently** [1]
- 22:4
**individual** [8] -
4:21, 8:3, 8:22,
10:5, 11:11,
14:20, 32:25,
33:6
**information** [14] -
6:3, 6:4, 6:6,
8:22, 9:5, 11:2,
11:9, 11:12,
11:19, 11:24,

31:21, 33:3,
33:9, 33:13
**instead** [2] -
21:11, 26:10
**instinct** [1] -
20:14
**insufficient** [1] -
12:8
**interrupt** [1] -
3:25
**introduce** [2] -
2:8, 2:19
**involve** [1] - 21:22
**involved** [7] - 3:3,
6:25, 7:8, 8:4,
8:8, 8:24, 27:6
**irrelevant** [1] -
5:21
**issue** [9] - 7:25,
13:14, 19:14,
23:12, 23:13,
32:17, 32:18,
33:18, 33:21
**issued** [2] - 14:14,
15:24
**issues** [10] - 3:24,
12:17, 14:17,
17:11, 18:13,
19:3, 19:9,
19:21, 20:3,
20:6
**it'll** [2] - 25:13,
25:18

### J

**JACOB** [33] -
1:19, 2:21, 5:13,
6:8, 7:25, 9:21,
10:4, 12:4, 12:7,
12:10, 20:14,
20:17, 21:1,
21:11, 22:1,
22:14, 22:19,
25:4, 25:21,
25:23, 25:25,
26:4, 26:25,
27:5, 29:2, 30:9,
30:13, 30:16,
31:6, 31:17,
34:4, 34:10,
34:21
**Jacob** [6] - 2:21,
5:11, 15:14,
20:12, 25:2,
33:25
**Jacob's** [4] -
23:14, 31:20,
32:18, 33:16
**Jacobs** [1] - 34:9

**JANUARY** [1] -
1:8
**January** [1] - 35:6
**JASON** [1] - 1:3
**jerry** [1] - 26:21
**jerry-rigged** [1] -
26:21
**judge** [4] - 15:23,
18:9, 22:16,
22:20
**Judge** [12] - 1:11,
3:22, 5:23,
12:14, 15:5,
17:5, 17:11,
17:12, 19:3,
19:18, 20:18,
22:10
**judges** [2] - 19:2,
19:4
**judgment** [5] -
9:7, 12:25, 16:4,
16:10, 28:18
**Judicial** [1] - 35:5
**JULIA** [1] - 1:16
**Julia** [1] - 2:16
**JULIE** [1] - 1:11
**jumbles** [1] -
24:14
**justifies** [1] - 28:7

### K

**KASSANDRA** [1]
- 35:8
**Kassandra** [2] -
1:23, 35:2
**Katz** [4] - 2:13,
26:18, 27:5
**KATZ** [2] - 1:15,
2:13
**Katz's** [1] - 27:7
**keeping** [2] -
20:7, 33:17
**kind** [5] - 10:23,
11:2, 13:24,
21:23, 28:11
**kinds** [1] - 22:14

### L

**lack** [1] - 15:3
**laid** [1] - 5:14
**large** [1] - 27:8
**largely** [1] - 27:7
**Lasater** [1] -
32:23
**Lasater's** [4] -
7:11, 7:23, 8:9,
29:21
**last** [1] - 28:12

**laughter** [1] -
19:24
**Law** [1] - 1:16
**law** [8] - 11:17,
15:15, 21:7,
22:7, 22:11,
32:10, 32:13,
32:14
**lays** [2] - 21:15,
22:6
**lead** [1] - 26:11
**least** [1] - 12:23
**leave** [1] - 16:10
**left** [1] - 28:10
**legs** [1] - 13:17
**lengthy** [1] -
14:25
**less** [1] - 10:17
**letters** [6] - 4:17,
4:23, 14:21,
31:23, 32:24,
33:15
**leverage** [5] -
27:23, 28:5,
29:24, 30:20,
34:12
**lifeline** [1] - 29:4
**light** [1] - 22:25
**likely** [1] - 25:12
**limit** [1] - 21:12
**line** [2] - 8:10,
8:12
**lines** [1] - 15:22
**list** [2] - 32:13
**listening** [1] -
19:22
**listing** [1] - 31:7
**litigants** [1] - 15:7
**litigation** [2] -
18:7, 30:5
**live** [2] - 28:23,
32:17
**LLP** [4] - 1:16,
1:20, 2:14, 2:17
**loathe** [1] - 3:25
**log** [6] - 27:16,
28:12, 31:7,
31:10, 31:12,
32:9
**loggerheads** [1] -
13:14
**Lombard** [1] -
1:24
**look** [11] - 3:23,
5:2, 8:9, 9:11,
14:3, 18:17,
19:6, 21:17,
26:23, 27:16,
34:13
**looked** [2] - 6:1,

21:7
**looking** [3] - 18:6, 24:19, 24:23
**lose** [1] - 6:14
**lost** [1] - 3:5
**lowest** [1] - 9:13

## M

**magistrate** [7] - 18:9, 19:2, 19:4, 20:18, 20:20, 22:15, 22:20
**Magistrate** [4] - 3:22, 4:1, 19:3, 19:18
**majority** [4] - 8:14, 11:1, 11:23, 21:8
**March** [2] - 24:22, 24:23
**mark** [1] - 7:16
**MARYLAND** [1] - 1:1
**Maryland** [3] - 1:9, 5:24, 35:3
**master** [7] - 4:4, 14:5, 17:15, 17:21, 18:10, 19:7, 22:17
**match** [1] - 27:12
**matter** [4] - 2:3, 2:6, 15:4, 35:4
**matters** [1] - 15:18
**MCPHERSON** [1] - 35:8
**McPherson** [2] - 1:23, 35:2
**MD** [1] - 1:24
**mean** [12] - 4:15, 5:9, 13:25, 19:19, 22:23, 23:3, 23:10, 26:24, 27:9, 28:25, 29:5, 31:25
**meaning** [1] - 13:6
**means** [1] - 30:24
**meantime** [1] - 33:12
**medical** [2] - 6:18, 6:24
**meet** [2] - 6:22, 24:11
**memorandum** [1] - 14:13
**memory** [1] - 16:13

**mention** [2] - 21:1, 23:7
**mentioned** [1] - 21:16
**Meredith** [1] - 2:23
**MEREDITH** [1] - 1:20
**merits** [5] - 9:15, 9:18, 12:18, 12:19, 13:24
**met** [1] - 12:14
**methodically** [1] - 18:13
**might** [5] - 4:6, 5:8, 20:18, 20:19, 22:16
**mind** [1] - 12:15
**minor** [1] - 25:18
**misapplied** [1] - 22:2
**misheard** [1] - 34:10
**misimpression** [1] - 4:3
**missing** [2] - 27:12, 34:7
**mistake** [1] - 17:2
**misunderstood** [1] - 34:5
**mix** [3] - 6:25, 9:22, 17:21
**moment** [4] - 8:2, 15:21, 16:2, 19:13
**Monday** [1] - 14:14
**months** [3] - 20:6, 29:17, 32:14
**morning** [1] - 16:13
**most** [4] - 9:12, 13:10, 28:6, 28:7
**motion** [33] - 4:11, 4:12, 4:14, 5:8, 5:14, 8:1, 11:15, 12:13, 12:15, 13:2, 13:11, 13:23, 14:1, 14:8, 16:9, 17:4, 17:7, 17:13, 20:23, 21:5, 23:21, 25:9, 25:11, 25:16, 26:7, 26:13, 29:11, 29:25, 30:4, 31:10, 31:14, 32:23, 33:21

**MOTIONS** [1] - 1:10
**motions** [9] - 2:6, 3:8, 3:10, 4:11, 13:1, 16:1, 16:4, 16:11, 28:18
**mount** [1] - 30:8
**move** [1] - 33:22
**movement** [1] - 26:1
**moving** [4] - 3:3, 6:14, 19:14, 32:22
**multiple** [6] - 3:19, 8:23, 11:10, 16:10, 24:1, 33:7
**must** [1] - 8:21
**Myers** [2] - 2:22, 2:24
**MYERS** [1] - 1:20
**mystery** [1] - 27:22

## N

**names** [1] - 7:3
**native** [1] - 18:24
**nature** [1] - 19:11
**necessarily** [1] - 16:3
**necessary** [4] - 13:20, 14:7, 16:12, 20:10
**need** [25] - 4:19, 5:21, 14:4, 17:12, 18:11, 18:16, 18:24, 24:5, 24:13, 25:17, 28:19, 29:6, 29:20, 30:7, 30:17, 30:18, 30:21, 30:25, 31:10, 33:2, 33:15, 34:7, 34:11, 34:18
**needed** [1] - 16:4
**needing** [1] - 26:11
**neglected** [1] - 17:19
**neurocognitive** [1] - 21:19
**neutral** [26] - 6:25, 7:3, 7:6, 7:17, 8:3, 8:8, 8:12, 8:15, 8:19, 8:23, 8:25, 9:3, 9:4, 9:6, 9:11, 10:5,

10:8, 10:11, 10:13, 10:16, 11:10, 23:25, 26:17, 29:8
**never** [5] - 6:22, 26:21, 27:1, 29:8, 31:9
**new** [3] - 21:16, 22:6, 22:8
**news** [1] - 30:8
**NFL** [2] - 1:5, 2:5
**NO** [1] - 1:4
**none** [1] - 31:8
**NORTHERN** [1] - 1:2
**notes** [1] - 1:22
**nothing** [1] - 32:14
**November** [1] - 16:19
**number** [7] - 2:4, 7:4, 7:7, 8:11, 14:15, 27:8
**numbers** [1] - 27:13
**NW** [1] - 1:21

## O

**O'Melveny** [2] - 2:21, 2:24
**O'MELVENY** [1] - 1:20
**obliged** [1] - 5:2
**obviously** [4] - 3:10, 4:14, 11:25, 25:18
**OF** [2] - 1:1, 35:1
**office** [2] - 9:3, 15:2
**OFFICIAL** [2] - 35:1, 35:9
**Official** [1] - 1:23
**offline** [1] - 24:11
**often** [2] - 10:17
**once** [1] - 33:21
**one** [24] - 4:11, 5:14, 6:16, 6:24, 7:25, 8:12, 8:19, 9:21, 10:23, 12:21, 13:4, 13:6, 17:20, 19:15, 20:19, 20:21, 21:1, 23:8, 25:13, 25:23, 28:16, 31:10, 32:18
**ones** [2] - 21:22, 28:16
**openly** [1] - 3:14

**operating** [1] - 33:24
**opinion** [4] - 7:23, 8:4, 14:14, 32:11
**opinions** [2] - 10:6, 32:16
**opposed** [1] - 18:12
**opposition** [3] - 10:21, 26:1, 30:18
**oral** [10] - 13:12, 14:7, 15:17, 17:3, 17:13, 23:10, 23:21, 25:8, 34:1, 34:17
**order** [5] - 8:25, 9:2, 11:21, 15:24, 21:18
**ordered** [6] - 5:17, 5:24, 10:23, 10:24, 14:20, 21:19
**otherwise** [1] - 6:22
**outlined** [1] - 7:2
**outright** [1] - 11:24
**overcome** [1] - 11:12
**overwhelming** [1] - 8:13
**own** [3] - 4:22, 28:4, 32:8

## P

**p.m** [2] - 2:1, 34:22
**PA** [1] - 1:14
**page** [2] - 11:14, 35:4
**panoply** [1] - 7:22
**papers** [14] - 3:8, 3:10, 5:15, 5:17, 7:3, 7:11, 12:22, 12:24, 13:2, 13:20, 20:15, 25:8, 25:10, 30:14
**paragraph** [1] - 11:15
**pardon** [1] - 32:2
**part** [6] - 3:21, 15:5, 16:25, 26:19, 29:12, 30:18
**particular** [5] -

23:9, 23:12, 23:13, 24:18, 34:18
**particularized** [1] - 11:20
**particularly** [3] - 13:18, 19:19, 23:2
**parties** [6] - 13:13, 14:4, 14:5, 18:12, 19:15, 33:24
**parties'** [1] - 19:12
**parts** [1] - 3:3
**party** [1] - 15:20
**pattern** [1] - 6:7
**pay** [1] - 19:1
**peg** [1] - 24:15
**pending** [6] - 2:3, 3:8, 3:13, 12:1, 13:1, 17:7
**people** [2] - 9:1, 27:8
**percent** [1] - 7:16
**percents** [1] - 7:15
**perfectly** [2] - 15:19, 15:22
**perhaps** [2] - 19:20, 28:24
**period** [1] - 7:6
**permanent** [1] - 8:17
**permanently** [1] - 27:2
**permission** [1] - 16:4
**person** [5] - 8:21, 13:12, 23:1, 23:4, 27:6
**perspective** [2] - 19:8, 33:10
**Philadelphia** [1] - 1:14
**Philly** [1] - 24:10
**physician** [12] - 4:17, 7:7, 8:3, 8:13, 8:15, 8:19, 8:20, 9:3, 10:5, 14:21, 31:23, 33:6
**physicians** [20] - 4:21, 6:25, 7:3, 7:18, 8:8, 8:24, 8:25, 9:7, 9:12, 10:8, 10:11, 10:13, 10:16, 11:10, 23:25, 26:17, 29:8,

33:1
**pickle** [1] - 31:18
**pile** [1] - 14:12
**pin** [1] - 12:12
**place** [4] - 9:6, 9:10, 31:12, 33:12
**Plaintiff** [2] - 2:8, 26:5
**plaintiff** [2] - 22:2, 30:5
**Plaintiff's** [2] - 25:9, 29:1
**Plaintiffs** [8] - 1:3, 1:12, 6:7, 9:16, 12:1, 12:18, 16:7, 16:22
**plaintiffs** [5] - 11:14, 16:15, 17:22, 22:9
**Plaintiffs'** [2] - 9:20, 13:17
**plan** [7] - 9:3, 10:25, 12:11, 26:18, 28:8, 28:23, 33:12
**Plan** [1] - 2:5
**PLAN** [1] - 1:6
**plans** [1] - 22:11
**PLAYER** [1] - 1:5
**Player** [1] - 2:5
**players** [1] - 9:10
**point** [5] - 18:10, 18:24, 29:3, 29:4, 30:19
**position** [7] - 6:5, 13:17, 13:18, 16:9, 26:10, 28:10, 31:15
**positions** [1] - 19:12
**possession** [1] - 27:20
**possibility** [2] - 17:21, 20:7
**possible** [4] - 10:10, 10:15, 10:18, 25:18
**possibly** [1] - 11:12
**post** [1] - 5:25
**post-trial** [1] - 5:25
**potential** [1] - 4:4
**potentially** [1] - 18:8
**practice** [1] - 6:7
**praecipe** [1] - 24:4
**precisely** [1] -

14:22
**preference** [1] - 20:11
**preliminarily** [1] - 5:11
**preliminary** [3] - 4:5, 15:25, 17:15
**preparation** [2] - 3:2, 3:4
**prepared** [2] - 14:8, 33:22
**presented** [1] - 23:25
**presumptuous** [1] - 20:1
**privilege** [6] - 27:15, 27:16, 28:12, 31:7, 31:11, 32:9
**proceedings** [2] - 34:22, 35:4
**process** [8] - 6:12, 6:15, 14:24, 15:1, 20:1, 20:5, 31:11, 31:13
**produce** [4] - 10:25, 12:20, 21:9, 21:13
**produced** [20] - 5:15, 5:17, 6:4, 6:6, 6:8, 9:5, 9:19, 9:22, 10:12, 10:20, 12:8, 16:17, 18:23, 21:20, 21:21, 27:4, 27:16, 28:3, 29:6, 30:24
**producing** [2] - 10:22, 11:13
**product** [4] - 27:15, 28:12, 32:11, 34:7
**production** [7] - 10:24, 14:21, 16:18, 17:8, 17:9, 26:19, 32:24
**productions** [1] - 18:24
**Professional** [1] - 35:2
**professional** [1] - 9:7
**proper** [1] - 27:19
**protecting** [1] - 16:16
**protects** [1] -

32:11
**prove** [1] - 12:18
**provided** [4] - 10:20, 29:14, 31:25, 32:3
**publicly** [1] - 32:4
**pull** [1] - 14:23
**purport** [1] - 29:16
**purpose** [1] - 2:6
**purposes** [1] - 4:2
**pursuant** [1] - 35:3
**pursued** [1] - 14:19
**put** [9] - 5:13, 9:6, 12:12, 20:13, 24:4, 26:10, 28:21, 28:22, 29:3
**putting** [1] - 29:19, 30:10, 31:1

## Q

**questions** [3] - 5:7, 25:20, 25:21
**quite** [1] - 16:3

## R

**rate** [1] - 10:19
**rates** [5] - 7:12, 7:14, 7:18, 9:13, 10:12
**re** [3] - 3:7, 16:13, 30:10
**re-putting** [1] - 30:10
**re-read** [1] - 3:7
**re-reading** [1] - 16:13
**read** [6] - 3:7, 3:9, 4:15, 7:10, 13:19, 15:3
**reading** [2] - 12:22, 16:13
**real** [1] - 18:16
**realize** [3] - 13:13, 22:24, 24:8
**really** [10] - 9:19, 11:20, 12:2, 12:17, 15:16, 15:17, 20:3, 23:1, 24:15, 31:12
**reason** [10] - 8:5, 15:4, 16:25,

19:6, 21:1, 21:3, 21:14, 24:5, 30:10, 33:19
**reasonable** [2] - 12:20, 22:7
**reasoning** [1] - 16:7
**reasons** [4] - 7:2, 14:22, 22:17, 28:2
**recess** [1] - 24:13
**recognizing** [1] - 19:15
**recommendation** [1] - 33:5
**recommendations** [2] - 4:21, 32:25
**record** [9] - 2:9, 2:20, 3:6, 6:1, 11:5, 11:17, 11:21, 16:16, 24:16
**records** [5] - 9:24, 21:21, 31:22, 32:8
**redo** [1] - 33:2
**reference** [1] - 17:5
**refused** [1] - 9:17
**regard** [2] - 5:8, 20:21
**regarding** [1] - 15:24
**Registered** [1] - 35:2
**regret** [1] - 15:24
**regularity** [1] - 20:4
**regulations** [1] - 35:5
**relate** [1] - 14:17
**related** [2] - 4:12
**relates** [1] - 14:16
**relative** [1] - 11:25
**relevance** [2] - 10:11, 11:24
**relevant** [5] - 4:17, 4:24, 5:3, 12:19, 21:24
**relied** [1] - 7:22
**relies** [1] - 33:3
**rely** [1] - 23:24
**relying** [1] - 4:20
**remains** [1] - 17:6
**remarks** [1] - 20:22
**reply** [3] - 11:15, 13:2, 26:9
**report** [8] - 18:22,

26:6, 29:21, 32:19, 32:20, 33:1, 33:3, 34:6
**Reported** [1] - 1:23
**reported** [1] - 35:4
**Reporter** [2] - 1:23, 35:2
**REPORTER** [2] - 35:1, 35:9
**reporter** [1] - 25:8
**reports** [2] - 14:21, 31:24
**represent** [1] - 22:11
**representation** [1] - 16:14
**representations** [2] - 27:7, 28:4
**represented** [1] - 27:6
**reproduced** [1] - 32:6
**request** [1] - 32:12
**requests** [5] - 9:25, 10:1, 10:2, 10:4, 22:14
**require** [2] - 12:20, 32:24
**required** [2] - 9:9, 17:8
**resolution** [1] - 17:12
**resolve** [4] - 3:23, 13:15, 28:20, 33:20
**resolved** [4] - 13:3, 18:14, 25:13, 28:24
**resolves** [1] - 33:21
**resort** [1] - 14:6
**respect** [3] - 21:21, 26:1, 29:11
**respond** [3] - 5:7, 20:22, 23:15
**response** [2] - 12:25, 16:22
**responses** [1] - 32:10
**responsive** [1] - 25:10
**restrict** [1] - 3:6
**review** [1] - 16:9
**reviewed** [1] - 22:3
**reviewing** [1] -

28:18
**Rickert** [2] - 5:19, 11:4
**rigged** [1] - 26:21
**robust** [1] - 16:18
**RPR** [2] - 1:23, 35:8
**Rubin** [1] - 20:19
**RUBIN** [1] - 1:11
**rule** [1] - 14:8
**Rule** [4] - 4:18, 14:6, 33:17
**rules** [1] - 25:16
**ruling** [1] - 13:23

## S

**safeguards** [4] - 9:6, 9:10, 14:25
**Sam** [1] - 2:13
**sample** [4] - 26:22, 27:6, 32:11, 32:20
**samples** [3] - 27:22, 28:21, 30:22
**SAMUEL** [1] - 1:15
**satisfied** [2] - 12:24, 13:4
**saw** [2] - 15:8, 20:15
**schedule** [6] - 13:11, 14:1, 14:3, 17:3, 17:13, 20:8
**scheduled** [2] - 6:20, 25:8
**scheduling** [1] - 3:19
**scheme** [1] - 23:24
**schemes** [1] - 27:19
**scoffed** [1] - 24:9
**search** [1] - 21:24
**seated** [2] - 2:25, 15:12
**second** [1] - 4:9
**see** [10] - 5:3, 8:10, 9:11, 22:4, 22:20, 28:17, 30:21, 31:2, 31:3, 34:17
**Seeger** [1] - 2:11
**seek** [1] - 13:15
**seeking** [1] - 14:22
**Seminole** [1] - 5:24

**sends** [1] - 9:3
**sense** [4] - 4:23, 13:10, 16:19, 23:24
**separate** [1] - 13:7
**seriatim** [1] - 16:5
**series** [2] - 3:24, 18:8
**served** [1] - 20:23
**set** [2] - 5:4, 12:24
**several** [1] - 24:6
**show** [4] - 6:19, 11:18, 12:7, 27:18
**showing** [3] - 11:20, 11:21, 29:17
**shows** [3] - 6:16, 7:12, 7:19
**Shuler's** [1] - 15:5
**side** [1] - 13:4
**significant** [1] - 22:5
**similarly** [1] - 8:17
**simmering** [1] - 16:21
**simply** [1] - 19:9
**single** [1] - 10:23
**sit** [3] - 12:21, 13:16, 25:19
**sliver** [1] - 11:11
**sometimes** [1] - 31:8
**somewhat** [2] - 25:25, 28:10
**sort** [22] - 3:12, 3:14, 5:11, 5:13, 9:18, 13:4, 13:19, 16:5, 16:15, 17:20, 17:22, 17:23, 20:2, 20:3, 21:16, 22:23, 23:12, 24:17, 26:4, 26:11, 29:5
**sorts** [1] - 17:10
**sounds** [1] - 4:15
**source** [1] - 4:22
**South** [1] - 32:16
**special** [7] - 4:4, 14:5, 17:15, 17:21, 18:10, 19:7, 22:17
**specific** [3] - 5:7, 7:3, 22:2
**specifically** [1] - 15:4

**spend** [1] - 24:15
**spent** [1] - 3:18
**spot** [1] - 20:13
**stand** [1] - 21:8
**standard** [1] - 11:22
**start** [5] - 10:7, 17:22, 20:4, 22:19, 30:19
**States** [2] - 35:2, 35:5
**STATES** [1] - 1:1
**statistical** [3] - 11:2, 29:21, 32:20
**statistics** [8] - 26:6, 28:8, 28:20, 29:13, 29:14, 31:3, 31:21
**status** [1] - 23:1
**steering** [1] - 7:17
**stenographicall y** [1] - 35:4
**stenographicall y-reported** [1] - 35:4
**stenotype** [1] - 1:22
**step** [1] - 24:4
**still** [2] - 16:3, 26:11
**strange** [1] - 4:23
**stream** [1] - 22:10
**Street** [3] - 1:14, 1:21, 1:24
**stuck** [1] - 23:12
**stuff** [8] - 21:9, 29:6, 29:22, 30:21, 30:25, 31:7, 34:6, 34:7
**sub** [1] - 25:12
**subclasses** [1] - 13:21
**subsamples** [1] - 29:7
**substantial** [2] - 8:21, 14:13
**substantive** [1] - 19:9
**suffer** [1] - 24:17
**suggest** [4] - 13:14, 20:18, 23:3, 24:11
**suggested** [3] - 6:22, 18:9, 20:17
**suggesting** [1] - 20:1
**Suite** [2] - 1:14,

1:17
**summary** [4] - 12:25, 16:4, 16:10, 28:18
**sundry** [1] - 12:25
**support** [1] - 11:16
**surface** [1] - 16:21
**Survivor** [1] - 2:5
**SURVIVOR** [1] - 1:6
**suspect** [1] - 31:8
**system** [5] - 6:8, 18:17, 18:18, 33:8, 33:14
**system-wide** [1] - 6:8
**systematically** [1] - 20:5
**systems** [3] - 8:6, 8:7, 33:11

**T**

**target** [1] - 6:23
**targets** [1] - 8:18
**tease** [1] - 13:7
**technical** [2] - 18:11, 18:16
**telegraphing** [2] - 15:15, 15:19
**ten** [1] - 28:15
**terms** [12] - 3:4, 3:9, 4:11, 4:18, 4:20, 12:11, 13:20, 20:2, 21:22, 21:24, 22:1, 22:4
**terrific** [1] - 23:2
**THE** [59] - 1:1, 1:1, 1:5, 1:11, 2:3, 2:12, 2:15, 2:18, 2:19, 2:25, 3:21, 3:25, 5:9, 6:5, 7:21, 9:15, 9:25, 11:25, 12:6, 12:9, 12:12, 15:11, 18:1, 18:5, 18:19, 19:5, 19:8, 19:22, 20:9, 20:12, 20:16, 20:25, 21:10, 21:24, 22:13, 22:18, 22:21, 24:3, 24:7, 25:1, 25:6, 25:22, 25:24, 26:3, 26:24,

27:3, 28:25, 30:1, 30:12, 30:15, 31:5, 31:16, 31:18, 31:25, 32:3, 33:4, 33:16, 33:23, 34:13
**themselves** [1] - 26:23
**theory** [1] - 8:24
**they've** [1] - 27:14
**thinking** [2] - 19:13, 26:8
**Third** [2] - 5:19, 11:3
**thoughts** [4] - 3:12, 4:8, 5:12, 17:15
**thousands** [1] - 9:24
**three** [4] - 10:1, 20:6, 29:3, 32:15
**threw** [1] - 17:20
**throw** [1] - 19:23
**throwing** [1] - 30:7
**thrown** [1] - 17:23
**THURSDAY** [1] - 1:8
**tick** [1] - 7:15
**tied** [1] - 12:17
**timely** [1] - 18:14
**today** [14] - 3:2, 3:11, 3:20, 4:9, 4:16, 6:9, 12:21, 13:22, 14:2, 16:25, 22:23, 26:15, 34:16, 34:19
**together** [2] - 16:5, 28:21
**tone** [1] - 16:15
**top** [1] - 29:8
**total** [1] - 8:17
**totally** [2] - 27:2, 28:18
**track** [2] - 7:5, 8:6
**train** [2] - 9:6, 24:10
**trajectory** [1] - 13:8
**transcript** [2] - 35:3, 35:4
**transcription** [1] - 1:22
**travel** [1] - 24:9
**traveled** [1] - 22:24
**trial** [1] - 5:25

**tried** [3] - 27:25, 31:3, 34:3
**true** [8] - 9:4, 10:18, 12:5, 28:2, 28:9, 29:9, 29:10, 35:3
**try** [5] - 3:23, 18:12, 18:13, 27:22, 29:24
**trying** [4] - 20:13, 27:10, 28:5, 34:11
**turn** [1] - 23:11
**two** [10] - 4:11, 5:14, 5:20, 10:1, 12:23, 20:6, 22:1, 22:23, 23:9, 32:14
**type** [1] - 11:6
**typically** [1] - 26:5

**U**

**U.S.C** [1] - 35:3
**ultimately** [3] - 5:1, 23:21, 33:10
**unavailable** [2] - 24:25, 25:1
**unclear** [2] - 13:25, 31:20
**under** [7] - 4:18, 5:1, 5:3, 16:21, 32:10, 33:12, 33:24
**underlying** [11] - 9:23, 10:5, 10:15, 10:22, 10:25, 21:21, 27:11, 28:11, 30:21, 32:8, 33:4
**understood** [1] - 16:21
**unfounded** [1] - 30:20
**UNITED** [1] - 1:1
**United** [2] - 35:2, 35:5
**unless** [2] - 12:3, 34:4
**unnecessary** [1] - 13:9
**untimely** [1] - 6:20
**untrue** [1] - 27:3
**unvarnished** [1] - 4:8
**up** [10] - 6:19, 7:14, 7:15,

12:17, 25:25, 26:6, 27:12, 28:21, 29:7, 29:20
**useful** [2] - 5:7, 23:1

**V**

**V3** [1] - 33:2
**Valentine's** [1] - 24:25
**variation** [1] - 22:5
**various** [1] - 12:25
**verse** [1] - 12:2
**versus** [1] - 2:4
**view** [3] - 4:16, 13:15, 18:7
**views** [1] - 17:7
**Vincent** [1] - 33:8
**vine** [1] - 24:17
**volume** [1] - 19:10
**vs** [1] - 1:4

**W**

**waited** [1] - 16:22
**waiting** [1] - 16:7
**warrants** [1] - 23:20
**Washington** [1] - 1:21
**weeds** [1] - 3:5
**Weiss** [1] - 2:11
**whole** [1] - 3:24
**wide** [1] - 6:8
**willing** [2] - 22:19, 34:5
**Wilshire** [1] - 1:17
**withdraw** [1] - 33:1
**words** [1] - 6:19
**works** [3] - 22:20, 25:4, 25:5

**Y**

**year** [1] - 6:13
**yourself** [3] - 2:8, 2:20, 3:5
**yourselves** [2] - 3:1, 17:18

**Z**

**Zoom** [1] - 23:4

| § |
| :---: |
| § [1] - 35:3 |