# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS McGAHEE, MICHAEL McKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM McCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL, <br><br> Defendants. | No. 1:23-cv-00358-JRR |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE AND REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT:  PLAINTIFFS' CLAIMS ARE WELL SUITED FOR CLASSWIDE
    ADJUDICATION ........................................................................................................ 2

I.  THE CLASSES ARE PROPERLY DEFINED......................................................... 2

II.  THE RULE 23(a) COMMONALITY AND TYPICALITY ELEMENTS ARE MET............ 4

III. ANY ISSUE OF RULE 23(b)(3) CERTIFICATION IS IRRELEVANT ................................. 8

IV. PLAINTIFFS' CLAIMS ARE WELL SUITED FOR 23(b)(1)(A) CERTIFICATION .......... 10

V.  PLAINTIFFS' CLAIMS ARE WELL SUITED FOR 23(b)(2) CERTIFICATION............... 12

VI. PLAINTIFFS' CLAIMS CAN BE RESOLVED USING GENERALIZED PROOF ........... 15

VII.  THE COURT SHOULD EXCLUDE THE OPINIONS OF DEFENDANTS'
    PUTATIVE EXPERT BECAUSE THEY ARE MANIFESTLY UNRELIABLE................ 24

CONCLUSION.................................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Adams v. Henderson,*
   197 F.R.D. 162 (D. Md. 2000) ................................................................................ 9

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) ............................................................................ 3

*Amara v. CIGNA Corp.*,
   925 F. Supp. 2d 242 (D. Conn. 2012), *aff'd*,
   775 F.3d 510 (2d Cir. 2014)……………………………………… ............................... 9

*American Strategic Ins. Corp. v. Scope Servs.*,
   2017 WL 4098722 (D. Md. Sept. 15, 2017) ........................................................ 28

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ............................................................................................ 15

*Baleja v. Northrop Grumman Space & Missions Sys. Corp.*,
   2020 WL 3213708 (C.D. Cal. Mar. 26, 2020) .................................................... 9

*Bell v. PNC Bank, Nat. Ass'n,*
   800 F.3d 360 (7th Cir. 2015) ............................................................................... 8

*Bellon v. PPG Emp. Life & other Benefits Plan*,
   2023 WL 4155362 (N.D. W. Va. May 23, 2023) ............................................... 9

*Berry v. Schulman,*
   807 F.3d 600 (4th Cir. 2015) ............................................................................... 9

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) ........................................................................ 3

*Bittinger v. Tecumseh Prods. Co.*,
   123 F.3d 877 (6th Cir. 1997) ............................................................................... 3

*Bond v. Fleet Bank (RI), N.A.*,
   2002 WL 31500393 (D.R.I. Oct. 10, 2002) .................................................... 3, 4

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
   201 F.3d 335 (4th Cir. 2000) ........................................................................ 21, 23

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014) ........................................................................... 10

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ........................................................................... 4

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
  212 F.R.D. 602 (S.D. Fla. 2003) ..................................................................... 7

*Brumm v. Bert Bell NFL Ret. Plan*,
  995 F.2d 1433 (8th Cir. 1993) ....................................................................... 17

*Bullock v. Bd. of Educ. of Montgomery Cnty.*,
  210 F.R.D. 556 (D. Md. 2002) ....................................................................... 7

*C.T. v. California Dep't of Soc. Servs.*,
  2020 WL 10506496 (C.D. Cal. Oct. 29, 2020) ........................................... 14

*Cal. State Employees' Ass'n v. State of Cal.*,
  1985 WL 397 (N.D. Cal. Sept. 13, 1985) ..................................................... 7

*Carr v. Becerra*,
  2023 WL 1280172 (D. Conn. Jan. 31, 2023) ............................................... 4

*Caufield v. Colgate-Palmolive Co.*,
  2017 WL 3206339 (S.D.N.Y. July 27, 2017) ............................................... 9

*Chao v. Malkani*,
  452 F.3d 290 (4th Cir. 2006) ........................................................................ 12

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) .......................................................... 13

*CIGNA Corp. v. Amara*,
  563 U.S. 521  (2011) ...................................................................................... 6

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2022 WL 2237451 (N.D. Tex. June 21, 2022),
  *rev'd*, 95 F.4 964 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 271 (2024) ....... 18

*Coreas v. Bounds*,
  2020 WL 5593338 (D. Md. Sept. 18, 2020) ............................................... 7

*Cunningham v. Cornell Univ.*,
  2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ............................................... 10

*Curtis v. Genesis Eng'g Sols., Inc.*,
  2022 WL 1062024 (D. Md. Apr. 8, 2022) ................................................... 4

*Deiter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ........................................................................ 6

*Doran v. Missouri Dep't of Soc. Servs.*,
  251 F.R.D. 401 (W.D. Mo. 2008)......................................................................... 4

*EEOC v. Freeman*,
  961 F. Supp. 2d 783 (D. Md. 2013) ...................................................................... 26

*Ewing v. GEICO Indem. Co.*,
  2022 WL 1597824 (M.D. Ga. May 19, 2022) ........................................................ 3

*Frankenstein v. Host Int'l, Inc.*,
  2021 WL 826378 (D. Md. Mar. 4, 2021) .............................................................. 12

*G.T. v. Bd. of Educ. of Cnty. of Kanawha*,
  117 F.4th 193 (4th Cir. 2024) ............................................................................... 5

*Gaston v. LexisNexis Risk Sols., Inc.*,
  483 F. Supp. 3d 318 (W.D.N.C. 2020) ................................................................. 14

*Gaynor v. Miller*,
  2018 WL 3751606 (E.D. Tenn. Aug. 6, 2018) ....................................................... 3

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  925 F. Supp. 2d 700 (D. Md. 2012) ..................................................................... 19

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  2013 WL 6909200 (D. Md. 2013) ........................................................................ 23

*Haddock v. Nationwide Fin. Servs., Inc.*,
  293 F.R.D. 272 (D. Conn. 2013) .......................................................................... 14

*Hartman v. Duffy*,
  158 F.R.D. 525 (D.D.C. 1994), *aff'd in part & remanded in part*,
  88 F.3d 1232 (D.C. Cir. 1996)............................................................................... 7

*Hoffman v. First Student, Inc.*,
  2008 WL 11349801 (D. Md. Dec. 9, 2008) ........................................................... 3

*Howard v. Aetna Life Ins. Co.*,
  2024 WL 1098789 (C.D. Cal. Feb. 27, 2024)......................................................... 8

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  2024 WL 4866717 (D.S.C. Nov. 22, 2024) ........................................................... 6

*In re Facebook, Inc., PPC Advert. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*,
  588 F. App'x 733 (9th Cir. 2014) .......................................................................... 7

*In re Kirschner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991) ................................................................. 7

*In re Managed Care Litig.*,
    2004 WL 7334071 (S.D. Fla. Mar. 3, 2004) .......................................... 7

*In re Monumental Life Ins. Co.*,
    365 F.3d 408 (5th Cir. 2004) .................................................................. 4

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    338 F.R.D. 527 (S.D.N.Y. 2021) ............................................................ 3

*In re Nortel Networks Corp. ERISA Litig.*,
    2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ...................................... 3

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................ 10

*In re Polyester Staple Antitrust Litig.*,
    2007 WL 2111380 (W.D.N.C. July 19, 2007) ...................................... 15

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ............................................................ 3

*Jefferson v. Sellers*,
    250 F. Supp. 3d 1340 (N.D. Ga. 2017), *aff'd*, 941 F.3d 452(11th Cir. 2019) ......................... 17

*Johnson v. Hartford Life & Accident Ins. Co.*,
    2009 WL 540959 (S.D. Tex. Mar. 4, 2009) ............................................ 9

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................ 6

*Knight v. Lavine*,
    2013 WL 427880 (E.D. Va. Feb. 4, 2013) ............................................ 14

*Lessard v. Metro. Life Ins. Co.*,
    103 F.R.D. 608 (D. Me. 1984) ................................................................ 3

*Lutz Surgical Partners PLLC v. Aetna, Inc.*,
    2023 WL 2153806 (D.N.J. Feb. 21, 2023).............................................11

*Martinez v. Amazon.com Servs. LLC*,
    2024 WL 4817214 (D. Md. Nov. 18, 2024)............................................ 6

*Meidl v. Aetna, Inc.*,
    2017 WL 1831916 (D. Conn. May 4, 2017) ............................................ 8

*Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*,
 832 F. App'x 586 (11th Cir. 2020) ........................................................................ 16

*Minter v. Wells Fargo Bank, N.A.*,
 274 F.R.D. 525 (D. Md. 2011) .................................................................................. 7

*Nat'l ATM Council, Inc. v. Visa Inc.*,
 2021 WL 4099451 (D.D.C. Aug. 4, 2021), *amended*, 2021 WL 4712058 (Sept. 7, 2021),
 *aff'd*, 2023 WL 4743013 (D.C. Cir. July 25, 2023)………………………………….…..... 14

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*,
 2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012) ............................................................ 3

*Ouadani v. Dynamex Operations E., LLC*,
 405 F. Supp. 3d 149 (D. Mass. 2019) ................................................................... 6, 7

*Parkinson v. Hyundai Motor Am.*,
 258 F.R.D. 580 (C.D. Cal. 2008) .......................................................................... 3, 4

*Peoples v. Wendover Funding, Inc.*,
 179 F.R.D. 492 (D. Md. 1998) .............................................................................4, 11

*Peters v. Aetna Inc.*,
 2 F.4th 199 (4th Cir. 2021) .................................................................................. 6, 7

*Peters v. Aetna, Inc.*,
 2023 WL 3829407 (W.D.N.C. June 5, 2023) ...................................................... 6, 7, 10

*Petersen v. Costco Wholesale Co.*,
 2016 WL 6768911 (C.D. Cal. Nov. 15, 2016) ......................................................... 7

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Rev. of State of Miss.*,
 637 F.2d 1014 (5th Cir. 1981) ................................................................................. 7

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
 654 F.3d 618 (6th Cir. 2011) ..................................................................................11

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
 501 F.3d 592 (6th Cir. 2007) ................................................................................... 4

*Robinson v. Nationstar Mortg. LLC*,
 2019 WL 4261696 (D. Md. Sept. 9, 2019) .............................................................. 3

*Rodriguez v. ACL Farms, Inc.*,
 2010 WL 4683771 (E.D. Wash. Nov. 12, 2010) ...................................................... 3

*Roldan v. Bland Landscaping Co.*,
 341 F.R.D. 23 (W.D.N.C. 2022).............................................................................. 7

*Scott v. Clarke*,
  61 F. Supp. 3d 569 (W.D. Va. 2014) ......................................................................... 4

*Shenk v. Mallinckrodt PLC*,
  300 F. Supp. 3d 279 (D.D.C. 2018) ......................................................................... 6

*Skelton v. Radisson Hotel Bloomington*,
  33 F.4th 968 (8th Cir. 2022) ................................................................................... 19

*Smith v. B & O R.R. Co.*,
  473 F. Supp. 572 (D. Md. 1979) ............................................................................... 7

*Smith v. Nike Retail Servs., Inc.*,
  234 F.R.D. 648 (N.D. Ill. 2006) ................................................................................ 7

*Smith v. Sydnor*,
  184 F.3d 356 (4th Cir. 1999) .................................................................................... 3

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009) ............................................................................... 7

*Sullivan v. LTV Aerospace & Def. Co.*,
  82 F.3d 1251 (2d Cir. 1996) ..................................................................................... 9

*Tucker v. Ford Motor Co.*,
  2023 WL 2662887 (E.D. Mo. Mar. 28, 2023) .......................................................... 8

*Turner v. CF & I Steel Corp.*,
  770 F.2d 43 (3d Cir. 1985) ....................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................... 6, 13, 14

*Wise v. Verizon Commc'ns, Inc.*,
  600 F.3d 1180 (9th Cir. 2010) ................................................................................ 16

*Wit v. United Behavioral Health*,
  79 F.4th 1068 (9th Cir. 2023) ................................................................................. 15

*Yates v. NewRez LLC*,
  686 F. Supp. 3d 397 (D. Md. 2023) .......................................................................... 6

**Statutes**

29 U.S.C. § 1113 ................................................................................................. 28

29 U.S.C. § 1132(a)(1)(B) ............................................................... 9, 21, 23, 28

29 U.S.C. § 1132(a)(2) ............................................................................. passim

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................ 1, 4, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................ 4, 6, 12

Fed. R. Civ. P. 23(a)(3) ............................................................................. 4, 6

Fed. R. Civ. P. 23(b) ..................................................................................... 8

Fed. R. Civ. P. 23(b)(1)(A) ............................................... 1, 2, 9, 10, 11, 15, 28

Fed. R. Civ. P. 23(b)(2) ..................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ................................................................. 8, 9, 15, 16

Fed. R. Evid. 702 ..................................................................................... 2, 24

## INTRODUCTION

In opposing certification of the Classes,[1] Defendants raise a slew of meritless arguments. First, they contend that the class definitions are overbroad, but to the extent they encompass class members subject to affirmative defenses or whose applications failed for reasons other than the conduct at issue here, that can be handled in sundry ways and is not a basis to deny certification.

Defendants also argue that Plaintiffs do not satisfy the Rule 23(a) commonality and typicality elements because not every policy, practice, or Plan interpretation at issue was implicated in each Plaintiff's benefits claim. Neither element, however, requires that all class representatives and absent members have been affected by every facet of a defendant's conduct.

Other contentions similarly fail. Defendants assert that 23(b)(1)(A) and 23(b)(2) certification are inappropriate by recycling their ill-grounded arguments against commonality and typicality and by mischaracterizing this case as being chiefly about monetary relief. The principal remedies that Plaintiffs seek, however, are declaratory, injunctive, and other equitable relief (such as reformation and removal). That relief would rectify Defendants' objectively unreasonable Plan-wide conduct that, in the aggregate, is inconsistent with their fiduciary duties of loyalty and care and has harmed the Plan through, among other things, a fraudulent scheme and written discriminatory policies, wasting Plan assets, so as to bring the Plan into compliance with ERISA.

---

[1] "The Classes" collectively refer to the proposed Class and Subclasses defined in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF No. 102-1) ("OM" or "Opening Memorandum"), and the "Plan" is as defined therein (*see* OM1-2). Plaintiffs otherwise adopt the definitions and shorthand terms in Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 70). "DM" refers to Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 111) ("Opposition"); "¶"and "¶¶" to the Amended Class Action Complaint (ECF No. 56) ("Amended Complaint"); and "Ex." to the exhibits to the Reply Declaration of Benjamin R. Barnett, dated Apr. 11, 2025 ("Barnett Reply Declaration"). References to ERISA include its implementing regulations. Except where noted, internal citations, quotation marks, and footnotes are omitted from all quotations and emphasis is added.

Defendants repeatedly complain of a lack of "common proof" for Plaintiffs' claims, which is a red herring because the question is whether Plaintiffs' claims satisfy the 23(b)(1)(A) and 23(b)(2) requirements, not whether Plaintiffs have proven them on a classwide level. At any rate, contrary to Defendants' assertion, Plaintiffs' claims can be resolved without having to comb through class members' individual administrative records.

Indeed, common proof can readily resolve the core question of whether Defendants have engaged in a fraudulent scheme that wastes the Plan's assets through systematic perverse incentives concerning compensation, retention, and promotion of allegedly "absolutely neutral" physicians with provable histories of inadequate work performance and bias. In response, Defendants rely on their putative expert's opinions to attack Plaintiffs' statistical allegations. Those opinions, however, are riddled with flaws—including his categorical imputation of favorable recommendations to Plan physicians that he did not cross-check against decisions and physician reports available to him and which belie his assumptions. As such, his opinions are not the product of principles and methods that were reliably applied to the facts of this case, warranting their exclusion under Federal Rule of Evidence ("FRE") 702.

## ARGUMENT

## PLAINTIFFS' CLAIMS ARE WELL SUITED FOR CLASSWIDE ADJUDICATION

## I.    THE CLASSES ARE PROPERLY DEFINED

A threshold issue is Defendants' contention that Plaintiffs have defined overbroad classes. DM31-33. Specifically, they assert that the Classes encompass individuals whose claims were denied as untimely, for failure to exhaust administrative remedies, or for such non-merits related reasons as failure to appear for examinations. DM32.

As a general matter, courts are reluctant to deny certification merely because affirmative

defenses may be available against individual members.[2]  Even if Defendants have defenses to some members' claims, that does not warrant denial of certification.[3]

Assuming they are not dubious,[4] Defendants' purported defenses can be resolved through generalized proof, given that Defendants allege they affect entire segments of the Classes,[5] or can be addressed through subclassing[6] or at the remedies phase.[7]  Even were it to conclude that the definitions are overly broad, the Court has the power to modify them, and could exclude specified

---

[2] *E.g.*, *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 591 (C.D. Cal. 2008); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 394 (D. Mass. 2007); *Lessard v. Metro. Life Ins. Co.*, 103 F.R.D. 608, 612 (D. Me. 1984); *Ewing v. GEICO Indem. Co.*, 2022 WL 1597824, at *4 (M.D. Ga. May 19, 2022).

[3] *E.g.*, *Gaynor v. Miller*, 2018 WL 3751606, at *6 (E.D. Tenn. Aug. 6, 2018) (affirmative defense arguments inappropriate at certification stage); *Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683771, at *2 (E.D. Wash. Nov. 12, 2010) (certification not defeated by affirmative defenses against class members).

[4] The Court rejected Defendants' failure to exhaust defense, although it did not foreclose its renewal at the summary judgment stage.  ECF No. 78 at 10-11.  At any rate, exhaustion of administrative remedies is not required for breach of fiduciary duty claims.  *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999).

[5] *See N.J. Carpenters Health Fund v. Residential Cap., LLC*, 2012 WL 4865174, at *5 (S.D.N.Y. Oct. 15, 2012) (class manageable where affirmative defenses subject to generalized proof); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *10 (M.D. Tenn. Sept. 2, 2009) (affirmative defense did not defeat certification where applicable to many class members); *Hoffman v. First Student, Inc.*, 2008 WL 11349801, at *4 (D. Md. Dec. 9, 2008) (affirmative defenses did not defeat certification where asserted "against all or a group of class members").

[6] *E.g.*, *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015); *Bond v. Fleet Bank (RI), N.A.*, 2002 WL 31500393, at *7 (D.R.I. Oct. 10, 2002) (class members who executed valid arbitration agreements could be placed in subclass).

[7] *E.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259 (11th Cir. 2003) (appropriate time for class action defendant to raise affirmative defenses and set-off claims is at damages phase) *aff'd*, 545 U.S. 546 (2005); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 573 (S.D.N.Y. 2021) (statute of limitations issues can be dealt with at damages stage); *Robinson v. Nationstar Mortg. LLC*, 2019 WL 4261696, at *17 (D. Md. Sept. 9, 2019) (non-injured parties "can just be sorted out at the remedies phase").

categories of members.[8]   In sum, the purely objective class definitions do not preclude certification.

## II.    THE RULE 23(a) COMMONALITY AND TYPICALITY ELEMENTS ARE MET

Defendants devote 23 pages, replete with charts, to arguing that the 23(a)(2) commonality and 23(a)(3) typicality elements are not satisfied, reciting particulars of Plaintiffs' individual benefits claims that supposedly render their claims unrepresentative.   Treating the Amended Complaint's allegations as if they constitute a compulsory checklist of conduct that must impact every Plaintiff and class member, Defendants contend that each Plaintiff's application implicates a different combination of the policies, practices, and Plan interpretations at issue.   DM8-30.

Such parsing of the particular facts relating to each Plaintiff's application misses the point. That a Plaintiff may have been unaffected by one or more of the policies and practices at issue does not mean that commonality is lacking or that claims are singular or unrepresentative.   The commonality test does not require that class members share identical factual and legal claims.[9]

Here, a common question that will drive this litigation's resolution is Defendants' skewing of the claims process through their network of physicians who have been financially incentivized

---

[8] *E.g.*, *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 & n.7 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision."); *Parkinson*, 258 F.R.D. at 591 (court can exclude members with claims barred by individual defenses); *Doran v. Missouri Dep't of Soc. Servs.*, 251 F.R.D. 401, 407 (W.D. Mo. 2008) (court can narrow class if statute of limitations applies); *Carr v. Becerra*, 2023 WL 1280172, at *9-10 (D. Conn. Jan. 31, 2023) (modifying definition to exclude members lacking standing); *Bond*, 2002 WL 31500393, at *7 (court can exclude members who signed arbitration agreements).

[9] *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998); *accord Scott v. Clarke*, 61 F. Supp. 3d 569, 586 (W.D. Va. 2014) (commonality "does not require that all class members share identical factual histories"); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998) (factual differences among class members do not defeat commonality if they share same legal theory); *Curtis v. Genesis Eng'g Sols., Inc.*, 2022 WL 1062024, at *4 (D. Md. Apr. 8, 2022) (commonality merely mandates that "class members share the same central facts and applicable law").

to render opinions unfavorable to applicants, several of whom Defendants selected, retained, and promoted despite known biases for diminishing ailments arising from common NFL-related injuries or in favor of applying discriminatory norms to test results (¶¶ 117-46, 166; *see* Ex. F (Feb. 21, 2025 Hr'g Tr. 87:8-9) (conceding that racial norms "practice existed")).[10]  Defendants cannot deny that *every* Plaintiff was evaluated by at least one of the identified highly paid physicians who have a history of bias or inadequate work performance.[11]

Moreover, *all* Plaintiffs and class members share a common legal theory that Defendants' conduct, considered in the aggregate—including a Plan-wide fraudulent scheme that wastes Plan assets on lavishly compensated physicians with a known history of inadequate work performance and bias whom Defendants misrepresent as "absolutely neutral," other Plan-wide misrepresentations in ERISA notices, a written policy of discriminatory treatment in Plan physician orientation manuals, disregard of legal precedent, and multiple erroneous interpretations of the same Plan provisions—"breached [Defendants'] duties to [the] [P]lan[]," and "whether [their] breach amounted to a harm as to the … [P]lan," warranting appropriate equitable relief

---

[10] Subsidiary common questions include the failure to adopt procedures to (1) ensure an accurate claims process free of bias; (2) prevent application of discriminatory racial norms; (3) prevent consideration of education level and prior training, in violation of Plan terms; (4) prevent disparate treatment of similarly situated applicants; (5) ensure consideration of the cumulative effect of impairments; and (6) prevent giving undue deference to non-fiduciaries.

[11] Defendants cite *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193 (4th Cir. 2024) (DM8-9), but there the Fourth Circuit addressed, as a matter of first impression, commonality in the unique context of Individuals with Disabilities Education Act ("IDEA") claims.  *Id.* at 203.  It noted that because "[t]he typical IDEA lawsuit involves a highly individualized assessment" of whether a child has special needs and "was denied a [free and appropriate public education]," an action "challenging hundreds of individualized special education decisions … requires proof of some common driver … that suggests they can productively be litigated all at once."  *Id.* at 205.  It thus joined three other circuits that had addressed the question and held that, to show commonality in an IDEA case, a plaintiff must identify a uniformly applied, official school district policy or an unofficial yet well-defined practice that drives the alleged violation.  *Id.*

under 502(a)(2), including removal, restitution, and Plan-wide injunctions, to bring the Plan into compliance with ERISA. *Peters v. Aetna, Inc.*, 2023 WL 3829407, at *10 (W.D.N.C. June 5, 2023). Even *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)—upon which Defendants place overriding reliance in disputing both 23(a)(2) commonality (DM8-10) and 23(b)(2) certification, *see* Section V *infra*—recognized that a single common question, the answers to which will drive the resolution of the case, may satisfy commonality. *Id.* at 359; *accord Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 408 (D. Md. 2023) ("[T]he commonality requirement can be met when there is even a single common question of law or fact shared by the named plaintiff and the putative class.").

In arguing that commonality is lacking, Defendants go so far as to impose a non-existent classwide burden on Plaintiffs. They maintain that Plaintiffs' allegations of a fraudulent scheme would turn on questions of individual class members' reliance on misrepresentations. DM25. Defendants, however, rely on caselaw predating *Peters v. Aetna Inc.*, 2 F.4th 199, 236-38 (4th Cir. 2021), where the Fourth Circuit, relying on *CIGNA Corp. v. Amara*, 563 U.S. 521, 443-44 (2011), held that proof of reliance is not required where a fiduciary duty breach is alleged.

Likewise, Defendants' litany of immaterial distinctions does not defeat the 23(a)(3) typicality test, which does not require that proposed representatives' claims and those of absent class members "be perfectly identical or perfectly aligned."[12] Class representatives' claims need

---

[12] *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006); *Martinez v. Amazon.com Servs. LLC*, 2024 WL 4817214, at *7 (D. Md. Nov. 18, 2024) (same); *accord Yates*, 686 F. Supp. 3d at 404-05 (claims "do not have to be factually or legally identical"; rather, "class claims should *be fairly encompassed* by those of the named plaintiffs"); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2024 WL 4866717, at *5 (D.S.C. Nov. 22, 2024) ("The key inquiry is whether the class representatives assert claims that *fairly encompass* those of the entire class, even if not identical.").

be only "*reasonably* coextensive" with those of absent members,[13] and factual differences do not render a claim atypical, so long as the proposed representative's claim "is predicated on the same course of conduct and legal theory as the claims of the class."[14]  What is more, to satisfy typicality a class representative need not have been exposed to each facet of a defendant's conduct or have experienced every harm suffered by absent class members.[15]  Notably, in *Peters*, the district court found typicality satisfied based on the plaintiffs' and absent members' right to bring a 502(a)(2)

---

[13] *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017); *Shenk v. Mallinckrodt PLC*, 300 F. Supp. 3d 279, 282 (D.D.C. 2018); *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009); *Coreas v. Bounds*, 2020 WL 5593338, at *13 (D. Md. Sept. 18, 2020).

[14] *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011); *accord  Ouadani*, 405 F. Supp. 3d at 162 (typicality "tolerates even significant differences between the named plaintiff and the proposed class members"); *Smith v. B & O R.R. Co.*, 473 F. Supp. 572, 581 (D. Md. 1979) (typicality "may be satisfied even though varying fact patterns support the claims or defenses of individual class members"); *Roldan v. Bland Landscaping Co.*, 341 F.R.D. 23, 33 (W.D.N.C. 2022) (representative's claims "must only have the same essential characteristics as the claims of the class at large"); *Bullock v. Bd. of Educ. of Montgomery Cnty.*, 210 F.R.D. 556, 560 (D. Md. 2002) ("plaintiff's claim may differ factually and still be typical … if it arises from the same … practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory"); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 79 (D. Md. 1991) (typicality does not require that representatives' claims "be co-extensive with … those of the other class members").

[15] *E.g.*, *Phillips v. Joint Legislative Comm. on Performance & Expenditure Rev. of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir. 1981) (class representative and absent members need not have experienced discrimination in the same way); *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 453 (N.D. Cal. 2012) ("[T]he named plaintiff need not have suffered an identical wrong.",) *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 664 (N.D. Ill. 2006) (typicality does not require that "each named plaintiff must have experienced each form of discipline complained of"); *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003) (typicality not defeated even if representative and class members have not "been affected in exactly the same way by defendant's conduct"); *Hartman v. Duffy*, 158 F.R.D. 525, 546 (D.D.C. 1994) ("[J]ust because Ms. Hartman did not experience each and every manifestation of the alleged policy of discrimination does not mean she lacks standing to represent class members[.]"), *aff'd in relevant part*, 88 F.3d 1232, 1237-38 (D.C. Cir. 1996); *Petersen v. Costco Wholesale Co.*, 2016 WL 6768911, at *3 (C.D. Cal. Nov. 15, 2016) (typicality satisfied even though no class representative experienced all three alleged injuries); *In re Managed Care Litig.*, 2004 WL 7334071, at *6 (S.D. Fla. Mar. 3, 2004) ("Although the named Plaintiffs did not suffer all the injuries suffered by the entire class, they each suffered some[.]"); *Cal. State Employees' Ass'n v. State of Cal.*, 1985 WL 397, at *4 (N.D. Cal. Sept. 13, 1985) ("named plaintiffs need not have suffered from every … practice challenged and can raise class claims which have not affected them individually").

claim to prevent the defendants' misconduct.  2023 WL 3829407, at *11.

Under Defendants' myopic view, typicality could be satisfied only by creating a distinct class or subclass for each form of misconduct complained of—*e.g.*, the Plan's clandestine manuals, directing physicians to apply discriminatory racial norms to claimants' neuropsychological test scores; similarly, the Plan's clandestine manuals, directing physicians to improperly consider claimants' educational level and training; the pattern and practice of failing to ensure that physicians' compensation is not based upon the likelihood that they will support the denial of benefits; the failure to award LOD points despite objective medical evidence of impairments; fraudulent representations in ERISA-mandated notices; and so on.  Such a plethora of conduct-specific classes or subclasses would be unworkable as a matter of sound case administration.

## III.    ANY ISSUE OF RULE 23(b)(3) CERTIFICATION IS IRRELEVANT

In addressing the Rule 23(b) prongs, Defendants lead off with a strawman argument, asserting that Plaintiffs "cannot satisfy" Rule 23(b)(3).  DM33-36.  Plaintiffs, however, have not moved for (b)(3) certification, which applies to classes seeking damages, *e.g.*, *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015); *Tucker v. Ford Motor Co.*, 2023 WL 2662887, at *5 (E.D. Mo. Mar. 28, 2023), or for so-called hybrid certification (DM35).  Nevertheless, Defendants insist that Plaintiffs' motion must be analyzed under 23(b)(3) because "individual monetary relief predominates their claims."  DM33.  It does not.

*First*, Plaintiffs do not seek damages.  They principally seek declaratory, injunctive, and other equitable and remedial relief to rectify ERISA violations.  *See* OM35-38; *see also* ¶¶ 360-79, 381-82, 387.  Critically, that far-reaching relief would bring the Plan into compliance with ERISA and would *not* guarantee payment of benefits once applications are redetermined free of

Defendants' result-oriented policies and practices.[16]    Should class members ultimately obtain

benefits that would be only incidental.[17]

Second, Defendants' assumption that Plaintiffs' 502(a)(1)(B) wrongful benefits denial

claim perforce transforms this case into one predominantly for monetary relief is faulty.  An ERISA

claim for wrongly denied benefits seeks *equitable* relief.[18]  Defendants' cited cases (DM34-36) are

either inapposite or *actually support* 23(b)(1)(A) and 23(b)(2) certification here.[19]

---

[16] *See Howard v. Aetna Life Ins. Co.*, 2024 WL 1098789, at *11 (C.D. Cal. Feb. 27, 2024) (monetary relief incidental where reprocessing of claims did not guarantee payment of benefits); *Meidl v. Aetna, Inc.*, 2017 WL 1831916, at *20 (D. Conn. May 4, 2017) (relief injunctive where reprocessing of claims might result in payment for certain members but not others).

[17] *See Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 263-64 (D. Conn. 2012) (where relief included declaration that plan provisions violated ERISA, injunction against their implementation, plan reformation, and injunction requiring recalculation and payment of benefits, any monetary relief that might flow was incidental), *aff'd*, 775 F.3d 510 (2d Cir. 2014); *Baleja v. Northrop Grumman Space & Missions Sys. Corp.*, 2020 WL 3213708, at *6 (C.D. Cal. Mar. 26, 2020) (where plaintiff sought injunction against nonexistent, unlawful, or unexplained plan terms, monetary benefits were incidental); *Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017) (rejecting argument that class could be certified only under 23(b)(3) where "the monetary benefits to the proposed class [we]re merely incidental to the adjudication of the alleged errors").

[18] *E.g.*, *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996) (relief sought in ERISA action to recover benefits is equitable); *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 47 (3d Cir. 1985) (502(a)(1)(B) relief is equitable); *Johnson v. Hartford Life & Accident Ins. Co.*, 2009 WL 540959, at *3 (S.D. Tex. Mar. 4, 2009) (502(a)(1)(B) claim to recover benefits "is one for equitable relief").

[19] *Adams v. Henderson*, 197 F.R.D. 162 (D. Md. 2000), was explicitly about monetary relief because the plaintiffs there sought compensatory and punitive damages. *Id.* at 164, 170-71.  The plaintiffs in *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015), sought actual and statutory damages but ultimately settled for injunctive relief and released statutory and punitive damages claims while preserving class members' right to pursue actual damages individually. *Id.* at 604, 606-07, 609-10. Putting aside that the Fourth Circuit *upheld* 23(b)(2) certification in *Berry,* it did not call into question the longstanding treatment of benefits awards in ERISA cases as equitable relief.  In *Bellon v. PPG Emp. Life & other Benefits Plan*, 2023 WL 4155362, at *1-2 (N.D. W. Va. May 23, 2023), the plaintiffs sued over the elimination of retiree life insurance coverage and survivor benefits.  The court held that 23(b)(1)(A) and 23(b)(2) certification was appropriate.  As to the former, it concluded that competing actions presented a risk of inconsistent adjudications imposing incompatible standards of conduct on the defendants given the need to interpret plan terms and amendments, and as to the latter it concluded that the injunctive relief would restore coverage and the restoration of benefits was incidental. *Id*. at *17-19.

Even assuming, for the sake of argument, that Plaintiffs' motion must be evaluated under 23(b)(3), certification is appropriate.  Two common questions predominate here:  (1) whether Defendants' conduct, considered in the aggregate, showed that they acted in an objectively unreasonable manner that breached fiduciary duties; and (2) whether the Plan was harmed, warranting appropriate equitable relief under 502(a)(2), including removal, restitution, stripping of discretion prospectively, and injunctions to bring the Plan into compliance with ERISA (*e.g.*, ¶¶ 368-69, 372, 376, 379).  *See Peters*, 2023 WL 3829407, at *10.

## IV.  PLAINTIFFS' CLAIMS ARE WELL SUITED FOR 23(b)(1)(A) CERTIFICATION

Next, notwithstanding the eminent suitability of ERISA claims such as Plaintiffs' challenges to systematic violations of Plan terms, and ERISA breach of fiduciary duty claims on behalf of the Plan to 23(b)(1)(A) certification (OM33-34), Defendants maintain that (b)(1)(A) certification is inappropriate because, in Defendants' view, a ruling on one plaintiff's claim "will not necessarily apply to any other claims."  DM37.  That argument also fails.

Where, as here, a plaintiff's allegations "implicate misconduct in the management in [a] Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications" for 23(b)(1)(A) purposes.  *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014).[20]  Absent certification, there is a risk of inconsistent adjudications concerning

---

[20] *Accord In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (because allegations "implicate[d] misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications"; "allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create incompatible standards of conduct for the Defendants"); *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *8 (S.D.N.Y. Jan. 22, 2019) (because claims were "brought with respect to breaches of fiduciary duties to the Plans as a whole," any ruling with respect to one class member's claims "would not only impact other Plan participants but would risk incompatible judgments if separate actions required different remedial or equitable actions").

whether Defendants injured the Plan through their objectively unreasonable conduct considered in the aggregate that breached the fiduciary duties of loyalty and care under ERISA, sufficient to warrant appropriate relief under 502(a)(2), including but not limited to removal of Board members, restitution, and injunctions to bring the Plan into compliance with ERISA.

Defendants rely on inapposite cases (DM36-37)[21] and recycle their litany of factual differences relating to Plaintiffs' individual applications (DM37; *see* DM8-30)—an argument grounded in their distorted take on the commonality and typicality elements. *See* Section II, *supra*. Factual differences among Plaintiffs, though, are not what matter. Rather, it is whether there are variations *in Defendants' policies and practice*s. There is no evidence or suggestion that the challenged policies, practices, and Plan interpretations at issue are one-offs or outliers.

Defendants distinguish the many cases recognizing that ERISA claims are quintessentially suitable for 23(b)(1)(A) certification (OM34-35 n.46) by miscasting Plaintiffs' claims as requiring that class members have been impacted by each of Defendants' policies and practices (DM38). Plaintiffs' theory of injury, however, is that Defendants' panoply of practices and policies steeply tilted the playing field against benefits applicants and amounted, in their totality, to objectively unreasonable conduct—to the point where Defendants injured the Plan itself, including by expending tens of millions of dollars on biased physicians and harming the Plan's integrity, and that such conduct warrants removal of these fiduciaries. ¶¶ 283-89, 291-95, 297-304, 332-47.

To get around this, Defendants give short shrift to Plaintiffs' 502(a)(2) claim, dismissing

---

[21] *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 495, 500 (D. Md. 1998), was a Fair Debt Collection Practices Act damages action. In *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011), there was no risk of inconsistent adjudications imposing incompatible standards of conduct on the defendants because the question of whether they even owed a fiduciary duty to class members turned on particular contract and funding arrangements with each member. Similarly, there was no risk of inconsistent adjudications in *Lutz Surgical Partners PLLC v. Aetna, Inc.*, 2023 WL 2153806, at *11-12 (D.N.J. Feb. 21, 2023), where the insurer's duties differed from plan to plan.

it as merely derivative of their individual claims (DM40).  Not so.  The 502(a)(2) claim seeks redress for the distinct injury that Defendants' cumulative misconduct has caused the Plan itself, including through the squandering of at least $30 million in Plan assets (between 2009 and 2023 alone) as part of Defendants' fraudulent scheme—while falsely assuring applicants that they will receive "neutral exams" and that the Plan's physicians are "absolutely neutral" in the claims process.  ¶¶ 53, 92, 333-41.  Also, Defendants' written policy requiring racially discriminatory treatment is a breach of fiduciary duty in violation of ERISA and a distinct injury to the Plan itself from wrongful benefits denials.[22]  The other injuries to the Plan itself are Defendants' failure to act solely in the interest of Plan participants; failure to exercise skill, prudence, and care; and failure to act with loyalty and care through the sundry misconduct detailed in the Amended Complaint.  These include the failure to adhere to ERISA requirements, the disregard of legal precedent, improper abdication of decision-making to advisors and disregard of advisors' advice to review the entire record (while making material misrepresentations to Plan participants that all information is considered).  ¶¶ 342-47.  Even if "several dubious actions standing alone" may not establish a breach of fiduciary duty warranting removal, they can when "considered in the aggregate."  *Chao v. Malkani*, 452 F.3d 290, 294 (4th Cir. 2006).

## V.    PLAINTIFFS' CLAIMS ARE WELL SUITED FOR 23(b)(2) CERTIFICATION

In contesting both 23(a)(2) commonality and 23(b)(2) certification, Defendants heavily rely on *Dukes* (*e.g.*, DM8-10, 15, 18-19, 21, 29, 33-34, 39-40), even declaring this case to be "the ERISA version of *Dukes*."  DM9.  Defendants' hyperbole notwithstanding, it is anything but that.

*Duke*s is wide of the mark in two ways.  *First*, the nature of the suit there necessitated a

---

[22] *See Frankenstein v. Host Int'l, Inc*., 2021 WL 826378, at *3 (D. Md. Mar. 4, 2021) (recovery of benefits claim centered on reasonableness of defendants' interpretation of plan's language, whereas plaintiff's breach claim centered on discriminatory treatment; although there was some overlap, two claims appeared to be based, at least in part, on different facts and both could proceed).

fundamentally different Rule 23 analysis.  Title VII employment discrimination cases and ERISA

actions are inherently poles apart because, "in resolving an individual's Title VII claim, the crux

of the inquiry is the reason for a particular employment decision." *Dukes*, 564 U.S. at 352.  *Second*,

the class certified by the district court in *Dukes* was, unlike here, a gargantuan mishmash.[23]

Unlike *Dukes*, the Classes here are not a mammoth hodgepodge of individuals challenging

millions of myriad decisions subjectively made by a multitude of decentralized decision-makers

and untethered to any common practice or policy.  Rather, the policies and practices of a single

Plan fiduciary—the Board—are at issue.  The Classes present the requisite cohesion for 23(b)(2)

purposes because, contrary to Defendants' assertions (DM3, 10), there are common questions

capable of supplying answers that would drive resolution of Plaintiffs' claims in one stroke.  Two

overarching questions are whether Defendants' conduct, considered in the aggregate, breached

their duties to the Plan, and (2) whether their breach harmed the Plan, warranting appropriate

---

[23] *Dukes* involved a nationwide class of 1.5 *million* female Wal-Mart employees—"one of the most expansive class actions ever"—against whom Wal-Mart had allegedly discriminated on the basis of sex by denying equal pay or promotions.  *Id.* at 342-43.  The class lacked any cohesion because "[p]ay and promotion decisions at Wal-Mart [we]re generally committed to local managers' broad discretion, which [was] exercised in a largely subjective manner."  *Id.* at 343; *see id.* at 359-60 (class members "held a multitude of jobs, at different levels of Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed. … Some thrived while others did poorly.  They ha[d] little in common but their sex and th[e] lawsuit.").  Given such a sprawling class and the highly disjointed and subjective nature of pay and promotion decisions at Wal-Mart, the *Dukes* plaintiffs had nothing to go by in pursuing a sex discrimination claim on a classwide scope, save an amorphous theory "that a strong and uniform corporate culture permit[ted] bias against women to infect, perhaps subconsciously, the discretionary decision[-]making of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice."  *Id.* at 345.  The Supreme Court rejected that nebulous theory because the plaintiffs, who were suing "about literally millions of employment decisions at once," could point to no discriminatory policy or "common mode of exercising discretion that pervade[d] the entire company," and their expert could not even quantify what percentage of employment decisions had possibly been infected by alleged "stereotypical thinking."  *Id.* at 352-56; *see Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 119 (S.D.N.Y. 2012) (Wal-Mart's employment procedures were characterized by "fragmented discretion untethered to any companywide policy and procedure").

equitable relief under 502(a)(2).  *See* Sections II-III, *supra*.  Moreover, questions concerning Defendants' skewing of the claims and appeals process (*see* Section II, *supra*) are the "glue holding the alleged reasons for all [of the benefits] decisions [adverse to class members] together."  *Dukes*, 564 U.S. at 352.  In sum, this ERISA case is nothing like *Dukes*.[24]

No more availing is Defendants' contention that 23(b)(2) certification is precluded because *Dukes* mandates that declaratory and injunctive relief be "indivisible" and relief sought here cannot conceivably extend to every class member.  DM39.  Aside from being a rehash of their meritless argument against 23(a) commonality and typicality on the basis that not every Plaintiff and absent class member is affected by each policy and practice, Defendants' contention rests on a crabbed reading of Rule 23(b)(2).  They construe it as requiring that every single class member must have been affected by each aspect of a defendant's conduct, such that declaratory and injunctive relief will necessarily extend to all members in every minute respect.  That, however, is at odds with how courts, including post-*Dukes*, have long interpreted 23(b)(2), holding that it does not require that every class member have been injured by the challenged practice or conduct, let alone by every facet of it.[25]  Critically, as noted in Section IV above, there is no evidence or suggestion that

---

[24] *Cf. Haddock v. Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 285 (D. Conn. 2013) (distinguishing *Dukes* because employment discrimination theory there bore "little resemblance" to general practice theories in ERISA breach of fiduciary duty action); *Knight v. Lavine*, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) (distinguishing *Dukes* in ERISA breach of fiduciary duty action where "each Plaintiff allege[d] the same conduct constituted the same breach of fiduciary duty by the same individuals").

[25] *E.g., Nat'l ATM Council, Inc. v. Visa Inc.*, 2021 WL 4099451, at *4 (D.D.C. Aug. 4, 2021) (sufficient for 23(b)(2) purposes if claims involve "a pattern or practice that is generally applicable to the class as a whole, even if some class members have not been injured by the challenged practice") *amended*, 2021 WL 4712058 (Sept. 7, 2021), *aff'd*, 2023 WL 4743013 (D.C. Cir. July 25, 2023); *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 341 n.16 (W.D.N.C. 2020) (23(b)(2) certification proper "even if not all class members may have suffered the injury posed by the class representatives so long as the challenged policy or practice was generally applicable to the class as a whole"); *C.T. v. California Dep't of Soc. Servs.*, 2020 WL 10506496, at *4 (C.D. Cal. Oct. 29, 2020)

the policies and practices at issue are sporadic, isolated, ephemeral, or haphazard.

Equally meritless is Defendants' contention that (b)(2) certification is foreclosed because class members' entitlement to relief will depend on their individual circumstances (DM39). Class members' *ultimate entitlement to benefits* may turn on individualized facts, but their entitlement to declaratory and equitable relief on behalf of the Plan to rectify Defendants' misconduct will not.

Lastly, Defendants' assertion that injunctive relief could not extend classwide because some members were denied benefits for such reasons as failure to appear for Plan physician appointments (DM40) is derivative of their argument that the class definitions are overbroad. The inclusion of such claimants in the Classes does not obviate the need for relief to the Plan to rectify Defendants' conduct that has harmed it. Nor does it render relief ineffective as to the Classes as a whole because such claimants can be excluded from the Classes or identified at the remedies phase as ineligible for any Court-ordered redetermination of their applications. *See* Section I, *supra*.[26]

## VI. PLAINTIFFS' CLAIMS CAN BE RESOLVED USING GENERALIZED PROOF

Faring no better is Defendants' repeated assertion that Plaintiffs failed to adduce "common proof" or to present evidence in support their claims (DM19, 21-22, 25-27, 29). *First*, class certification movants are not required to muster evidence in support of their claims at the Rule 23 stage because certification proceedings are not a dress rehearsal for trial on the merits. OM6 & n.5 (citing cases). *Second*, the issue of "common proof" is relevant to motions for (b)(3), not

---

(sufficient if class members complain of pattern or practice generally applicable to class, "even if not all class members have been injured by the challenged practice").

[26] Defendants cite *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) (DM39), but that case involved an appeal from final judgment. The Ninth Circuit held that the district court's injunction mandating *en mass*e remand and reprocessing of class members' claims was inappropriate because many members could not have been prejudiced where many of the defendant's coverage guidelines had been found not unduly restrictive *on the merits* and the plaintiffs had not even challenged others. *Id.* at 1078, 1084-86.

(b)(1)(A) or (b)(2), certification.[27]  At any rate, Plaintiffs' claims can be resolved through common or generalized proof and will not, contrary to Defendants' assertion (DM13-24), require examination of each class member's administrative record.

For instance, common forms of proof exist that "the fiduciary injured the benefit plan or otherwise jeopardize[d] the entire plan or put at risk plan assets."  *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010).  As a part of their willful and larger systematic breaches of fiduciary obligations, Defendants promoted ███████████████████████████████

█████████████████████████████████████████████████████████

█████████████  █████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ Ex. N (

█████████████████████████████████████████████

██████████████████████████, Hessam ("Sam") Vincent, who manages the Plan's relations with the Neutral Physicians, ███████████████████████

███████████████████████████████████ Relatedly, the 2018 neuropsychology orientation manual that Dr. Macciocchi authored for Defendants at the Plan's expense mandated that any and all T-scores entered were "only for demographically-adjusted scores." ECF No. 125-10 at 40.[28]  Given the Plan-wide responsibilities that he was tasked with—

---

[27] *E.g.*, *In re Polyester Staple Antitrust Litig.*, 2007 WL 2111380, at *12 (W.D.N.C. July 19, 2007). Even under (b)(3), however, the test is *not* whether the movant *has adduced* common proof of its claims but, rather, whether its claims are *amenable* to it.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions *will* be answered, on the merits, in favor of the class.") (emphasis in original and added).

[28] Moreover, the manual instructed that, for NC benefits, Plan physicians "should not address" in reports "whether a Player's neurocognitive impairment … [is] related to NFL participation" and for T&P benefits purposes, "[i]n cases where the Player is examined by multiple Plan neutral physicians

after ███████████████████████████████████████████████████████████,

Ex. M ███████████████████ and just two months after a court shredded his result-driven

testimony[29]—Dr. Macciocchi was the font of much of the misconduct here.  ███████████ is

common proof of Defendants' waste of Plan assets, and evidence of his role in providing

instruction and guidance to other Plan physicians is necessarily common.

Common forms of proof demonstrating Defendants' fraudulent scheme also include the

connection between the Board's imprudent delegation to ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. I ████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████

As concerns the failure to consider the cumulative effect of applicants' impairments—in

derogation of legal precedent (*see supra* at 16-17 n.28)—generalized proof will include the Plan

---

in different medical specialties for the benefit, it is not expected that the Plan neutral physicians will confer with each other" (ECF No. 125-10 at 7)—which disregarded legal precedent requiring consideration of the "cumulative effect" of "all" of a claimant's conditions "together."  *Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 594 (11th Cir. 2020) (rejecting Plan's argument that Plan physicians properly limited their conclusions to areas within their expertise; Board "could have easily required Mr. Mickell to submit to an examination by a vocational expert, who could have provided an opinion about whether Mickell's specific impairments—*when considered together*—prevented his gainful employment"); *see also Brumm v. Bert Bell NFL Ret. Plan*, 995 F.2d 1433, 1435-40 (8th Cir. 1993) (Board improperly amended Plan language concerning T&P benefits by reading it to exclude claimants with multiple injuries or impairments).

[29] Namely, for rendering flawed opinions reflecting improper use of racially discriminatory Heaton norms despite a history of brain injury; a bias against finding that a brain injury was suffered; an intrusion into matters of neurology despite his not being a physician, let alone a neurologist; a dismissal of other experts' reasoned views; and sundry other untenable reasoning.  *See Jefferson v. Sellers*, 250 F. Supp. 3d 1340, 1364-69 (N.D. Ga. 2017), *aff'd*, 941 F.3d 452 (11th Cir. 2019).

manuals that govern physician evaluations and testimony from Defendants' own witnesses, which shows that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. I ████████████████████

████████████████████████

Plaintiffs' allegations concerning the fraudulent nature of Defendants' scheme to rig the claims and appeals process includes misrepresentations made in SPDs and boilerplate language in decision letters that claimants will receive "neutral exams," that Defendants' selected physicians are "absolutely neutral," that the Board will give no deference to the Committee's determinations, and that all evidence will be considered (*e.g.*, ¶¶ 53, 93, 95, 98-99). Those allegations will entail examination of the Plan's SPDs, which are by their very nature *common* documents about the Plan.

Other allegations can similarly be addressed through generalized proof. Plaintiffs allege that Defendants breached their fiduciary duty to act in the best interests of Plan participants by falsely assuring them that all of their evidence will be reviewed when, in fact, it is not. ¶ 312. In Count II, Plaintiffs allege that Defendants violated ERISA § 503(1) by failing to acknowledge and address medical views favoring an award of benefits. ¶ 295. The Court can look to sworn testimony from Board members, such as ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████. (Ex. K ████████████████████████

████.[30] Moreover, Defendants *admit* that they have no system in place to track the Board's and

---

[30] Similarly, the Court can look to Board members' testimony in *Cloud* (which Plaintiffs will adduce at trial here) that their "practice" is to not review the entire record. *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2022 WL 2237451, at *12 (N.D. Tex. June 21, 2022) (quoting trial transcripts), *rev'd*, 95 F.4 964 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 271 (2024).

Party Advisors' review of specific records.  Ex. G (Defs.' Resp. to Interrog. 14), Ex. M ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[31]  Overall, ERISA, the Plan, and the Board's

fiduciary obligations govern how all participants should be treated.  Evidence as to the policies

and practices that reflect Defendants' failure to act as reasonable fiduciaries is common to all

putative class members.  *See* Ex. Q (Expert Report of Joseph A. Garofolo).

　　Similarly, Plaintiffs' denial of full and fair review claim (Count III) can be addressed

through common proof.  As noted above, Board members ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮  The Party Advisors, though, evidently lack any training that qualifies them

to review voluminous medical reports and records.[32] ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. K ▮▮▮

---

[31] Previously, however, they told a judge of this Court that date stamps on documents in the administrative record indicated the date that the Board reviewed a document.  *See Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 925 F. Supp. 2d 700, 723 (D. Md. 2012).  If Defendants made a conscious, imprudent decision to downgrade the Plan's systems and now have no system in place to track review of each document, as fiduciaries they cannot avoid liability.  *See Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968, 978 (8th Cir. 2022) (fiduciary cannot escape liability by designing system that amounts to "willful blindness").



[32] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. L
▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮
▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Given that Ms.
Williams reviews about 100 cases before every Board meeting and dedicates about an hour to each case (ECF No. 115-21 at 3 (¶ 7)), she would have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. L
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████. Despite all of this, the Board rubber-stamps the Party Advisors' recommendations.

Ex. L ████████████████████████████████████████████████████████

████████████████████████

Additionally, common proof can address the issue of Defendants' failure to ensure that all claims and appeals are adjudicated in a manner designed to ensure the independence and impartiality of the Neutral Physicians. ████████████████████████████████████

████████████████████████████ Ex. M ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ Ex. I ████████████████████████████████████████████

████████████████████████████████████████████ Ex. M ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

Common proof can also address Defendants' use of racially discriminatory adjustments to applicants' neuropsychological test results. In fact, the 2018 manual for Plan neuropsychologists (authored by Dr. Macciocchi) *mandated* that they apply the Heaton norms to T-scores. ECF No.

---

[33] Ex. I ████████████████████████████

████████████████████████████ The consultants include Drs. Garmoe and Macciocchi, both of whom have a predisposition against individuals with mild TBI from football play, and the latter who also favors the use of racially discriminatory adjustments of neuropsychological test results (¶¶ 124-26, 127-28).

125-10 at 40.  Despite Defendants' representation that such a practice ended in mid-2021 (Ex. F (Hr'g Tr. 14-16)), ██████████████████████████████████████████.  Ex. O ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. K ██████████████████  ██████████

██████████████████████████████████████████████ Ex. P

██████████████████████████████  It was not until August 2024—well after this Court's ruling on Defendants' motion to dismiss—that the Plan adopted a revised manual, instructing neuropsychologists to "not report a demographically-derived estimate for premorbid I.Q., *as these incorporate race as a variable*."  ECF No. 125-10 at 100.

With respect to not only Plaintiffs' 502(a)(2) claim for injury to the Plan but also their 502(a)(1)(B) claim for wrongful denial of benefits, generalized proof can bear on the *Booth* factors for assessing reasonableness of benefits denials classwide—namely factor 8, the fiduciary's motives in rendering the decisions.  *See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 343 (4th Cir. 2000).  Plaintiffs' allegations of a correlation between compensation paid to Plan-hired physicians and the degree to which physicians render recommendations adverse to benefits applicant (¶¶ 115-46) are supported by expert proof that the correlation is statistically sound, and at trial will show that denials of benefits to class members are hopelessly tainted by bad faith motives and bias.

Defendants contend that Plaintiffs cannot establish any correlation between the income that Neutral Physicians earn from the Plan and the degree to which they render opinions favoring or disfavoring benefits applicants, asserting that Plaintiffs' statistical allegations are "meaningless without knowing the total number of evaluations conducted" by physicians whose opinions

underlie Plaintiffs' allegations (*see* ¶¶ 116-46) (DM7).  That information, however, *was not available to Plaintiffs* before Defendants filed their Opposition and disclosed the so-called V3 data for the 78-month period spanning January 1, 2018-July 31, 2024.[34]

Dr. Anthony Hayter, a professor at the University of Denver and expert in statistics (Ex. H at 11-13, 200-235), analyzed that data and—importantly—the decision letters and physician reports underlying Plaintiffs' statistical allegations—which Defendants' putative expert failed to do (*see* Section VII, i*nfra*).  He concludes that both the V3 data and the available data regarding individual physician conclusions *support* Plaintiffs' statistical allegations, which are statistically sound—demonstrating that the amount of evaluations sent to an individual physician is directly related to that physician's tendency to conclude an applicant does not qualify for benefits.  The data in particular show that Plan-hired physicians with higher percentages of rendering recommendations adverse to benefit applicants receive more assignments to evaluate applicants.  In fact, Dr. Hayter found that no physician having a low rate of rendering unfavorable opinions had a high assignment workload.  Ex. H (Report at 14-15, 149-60, 171-89).[35]

---

[34] *See* Declaration of David B. Lasater in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Lasater Declaration" or "Lasater Decl.") at. ¶¶ 11-13 & App. 3 (ECF No. 111-2 at 6, 49-63); *see also* ECF No. 134-1 at 26 n.21.

[35] Dr. Hayter's analysis of Defendants' V3 data revealed that, among the neuropsychologists within the timeframe since Dr. Macciocchi's promotion, "[t]he 31 neuro-psychologists whose individual recorded denial rates were greater than 40% had an average of 8.8 evaluations each" while "[t]he 6 neuro-psychologists whose individual recorded denial rates were 40% or less had an average of 4.0 evaluations each."  Ex. H (Hayter Report at 152).  Similarly, "[t]he 19 neurologists whose individual recorded denial rates were greater than 40% had an average of 15.4 evaluations each" compared to "[t]he 9 neurologists whose individual recorded denial rates were 40% or less had an average of 5.0 evaluations each."  *Id.* at 151.  The statistical Plan-wide correlations between Plan physicians' higher frequency of referrals and higher denial rates as well as lower frequency for those with lower denial rates, are also similar for orthopedists and psychiatrists.  *Id.* at 153-54.  Moreover, based on the available data, all 14 of the Plan's "Neutral Physicians" with the highest average annual compensation from the Plan since 2009, have never made an individual finding that any Player meets the T&P standard in an identified sample of those 14 Plan physicians' 101 T&P evaluations from the V3 data.  *See id.* at 180-89.  For example, based on the available data, Plan neuropsychologists with average

In connection with Plaintiffs' 502(a)(1)(B) claim, generalized proof can also address whether other *Booth* factors—namely, factors 1 (the language of the Plan) and 4 (consistency with earlier Plan interpretations), *Booth*, 201 F.3d at 342—demonstrate that the Board's denials of class members' applications were unreasonable.    The Plan unambiguously stipulates that "[t]he educational level and prior training of a Player will *not* be considered" in determining whether an applicant is T&P disabled.    ECF No. 69-7 (Plan § 3.1(e)(1)).    ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████. Ex.

K ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████    *Id.*    ████████████████████████    exception,

however, is to be found anywhere in the Plan's terms.    Thus, *any* consideration of education and training as a factor is per se an abuse of discretion.    *See Giles*, 2013 WL 6909200, at *26 ("adding a requirement" that "is contrary to the Plan's terms" is an abuse of discretion).    As to consistency of decisions with earlier Plan interpretations, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████    Ex. L ████████████████████

████████████████████████

Lastly, common proof can also address Defendants' failures to (i) act consistently with the Plan's goal of compensating retired NFL Players for having invested themselves in the sport (factor

---

annual compensation of $45,000 or less individually concluded 33.33% of applicants met the T&P disability standard, while none of the 18 neuropsychologists with average compensation exceeding $88,000 have an individual conclusion that an applicant met the T&P disability standard.    *See id.* Telling is that Dr. Alan Breen, the only neuropsychologist in the available data who found more than one applicant T&P disabled, had average annual compensation of just $39,786 before he was removed from the Plan's physician network. *See id.*; Ex. I ████████████████████

2), rely on adequate materials (factor 3), (ii) apply a reasoned and principled decision-making process (factor 5), and (iii) comply with ERISA (factor 6). *See Booth*, 201 F.3d at 342. As noted above, testimony confirms that Defendants do not assess the cumulative effect of applicants' impairments and that Board members do not review the entire record, instead abdicating that responsibility to Party Advisors—who lack adequate training and who, in turn, abdicate much of their own responsibility to Plan counsel, but whose recommendations the Board nevertheless rubber-stamps. *See supra* at 17-19.

## VII.  THE COURT SHOULD EXCLUDE THE OPINIONS OF DEFENDANTS' PUTATIVE EXPERT BECAUSE THEY ARE MANIFESTLY UNRELIABLE

Based on the declaration of their putative expert, Dr. David B. Lasater, Defendants attack Plaintiffs' statistical allegations, contending that Plaintiffs cannot plausibly show systematic bias on the part of Plan-hired physicians because Dr. Lasater's analysis of Plan data shows the absence of a correlation between higher physician compensation and higher application denial rates (DM6-7, 19). Dr. Lasater's opinions, however, are marked by serious flaws, rendering them unreliable and warranting their exclusion under FRE 702, which requires that the opinions of expert witnesses be "based on sufficient facts or data" and be "the product of reliable principles and methods" which have been reliably applied "to the facts of the case." Fed. R. Evid. 702.

A central allegation in this case is that Defendants have financially incentivized physicians whom they represent as "absolutely neutral" to render opinions adverse to applicants, negatively influencing the integrity of the claims and appeals process. This practice ultimately harms the Plan itself through the failure to ensure that Defendants' hired physicians' compensation is not based upon a reputation for and the likelihood that they will support the denial of benefits. *E.g.*, ¶¶ 115, 335. Dr. Lasater purported to opine on the relationship between "Neutral Physician" compensation and individual medical conclusions but he considered neither the actual compensation of any Plan

24

physician nor the actual individual medical conclusion rendered.  Therefore, Dr. Lasater's opinions

are unreliable and unhelpful, and they do not fit this case.  Accordingly, they should be excluded.[36]

        To begin with, Dr. Lasater ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████[37] ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

        ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[36] As a threshold matter, whereas Plaintiffs' allegations concerning the financial incentivization of physicians begin with the 2015 Plan Year (¶¶ 120, 133-35), Dr. Lasater's analysis did not address any ████████████████████████████████████████████████████████████████

[37] All references to "Tr." in Section VII are to the transcript of Dr. Lasater's deposition, which is annexed as Ex. J to the Barnett Reply Declaration.

████████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████.[38] ██████

████████████████████████████████████████████████████████████

██████████ inherently unreliable. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 793-96 (D. Md. 2013).   At bottom, as to physician bias, Dr. Lasater ████████████████████████████

---

[38] Aside from the inaccurate results from ████████████████████████████████████████
██████████████████████████ (Lasater Decl. ¶ 42 & Table 4)
████████████████████████████████████████████████████████████
██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

Similarly, with respect to physician compensation, Dr. Lasater ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████

Instead, because the V3 data provided by Defendants is ████████████████

███████████████████████████████████████████████████

██████████████████████████ (Lasater Decl. ¶¶ 17-18), ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████    ████████████████

27

███████████████████████████████████████

███████████████████████████████████████

████████████████

These many limitations and erroneous assumptions were self-imposed by Dr. Lasater's unreliable methodology. Given his complete failure to consider any individual physician's true conclusions or compensation, Dr. Lasater's opinions do not fit the needs of this case and are altogether unhelpful.[39] As such, the Court should exclude his declaration.

**CONCLUSION**

For the foregoing reasons and those set forth in the Opening Memorandum, the Court should (i) exclude the Lasater Declaration; (ii) certify the Classes pursuant to Rules 23(b)(1)(A) and 23(b)(2); (iii) appoint Plaintiffs Alford, McGahee, McKenzie, Olawale, Parsons,[40] Sims, Smith, Thomas, and Zeno as Representatives of the Class and Fiduciary Subclass; (iv) appoint Plaintiffs McGahee, McKenzie, Olawale, and Smith as Representatives of the T&P Subclass; (v) appoint Plaintiff Sims as Representative of the Active Subclass; (vi) appoint Plaintiff Olawale as Representative of the LOD Subclass; (vi) appoint Plaintiffs Alford, Smith, Thomas, and Zeno as Representatives of the NC Subclass; and (vii) appoint Seeger Weiss, Athlaw, and Aylstock Witkin as Class and Subclass Counsel, and Migliaccio & Rathod LLP as Liaison Counsel for the Classes.

---

[39] *See Am. Strategic Ins. Corp. v. Scope Servs.*, 2017 WL 4098722, at *4 (D. Md. Sept. 15, 2017) ("A court need not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert [where there is] simply too great an analytical gap between the data and the opinion proffered.") (alteration added by court).

[40] Defendants incorrectly assert that Plaintiff Parsons is no longer a party to this action because the Court dismissed his 502(a)(1)(B) claim as time barred. DM1 n.2. The Court's statute of limitations analysis did not affect Mr. Parsons' 502(a)(2) breach of fiduciary duty claim on behalf of the Plan itself, which is governed by a different limitations period, *see* 29 U.S.C. § 1113, and the Court denied Defendants' motion to dismiss that claim. ECF No. 78 at 36-37.

Dated:  April 11, 2025

Respectfully submitted,

**SEEGER WEISS LLP**

By: _s/ Benjamin R. Barnett_
   Benjamin R. Barnett
   **SEEGER WEISS LLP**
   325 Chestnut Street, Suite 917
   Philadelphia, PA 19106
   Telephone: (215) 553-7980
   bbarnett@seegerweiss.com

   *Counsel for Plaintiffs and for the*
   *Proposed Class and Subclasses*

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone:  (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
D. Nicole Guntner *(admitted pro hac vice)*
Bobby J. Bradford *(admitted pro hac vice)*
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502

29

Telephone:  (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
NGuntner@awkolaw.com
BBradford@awkolaw.com

**Counsel for Plaintiffs and for the**
**Proposed Class and Subclasses**

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

**Counsel for Plaintiffs and Liaison Counsel**
**for the Proposed Class and Subclasses**

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone:  (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

**Additional Counsel for Plaintiffs**