# EXHIBIT F

1  ever took as to whether you should apply Heaton norms or not.
2  The individual neutral physicians were exercising their own
3  professional judgment as to how to do the test scoring.
4       **THE COURT:** Is it accurate though that the Heaton
5  norms also include factors that are, on their own, disallowed
6  by DOL, that has been interpreted to be disallowed?
7       **MR. JACOB:** So I was the solicitor in the Labor
8  Department, and I am not aware of any instance in which the
9  Labor Department has said that you're not allowed to make
10 standardized adjustments based on --
11      **THE COURT:** I guess what I'm asking is, like, is it
12 correct that it has been incorporated into the statute that
13 issues or factors such as race should not be considered?
14      **MR. JACOB:** So it's a more complex answer than that.
15      **THE COURT:** I'm sure.
16      **MR. JACOB:** So you should obviously not consider race
17 in determining whether a human being is disabled --
18      **THE COURT:** Right.
19      **MR. JACOB:** -- well, I would have determined that you
20 were disabled but because you are Caucasian I'm going to say
21 you are not.  That would obviously be improper and prohibited
22 by the rules.  I don't think that there's anything in the rules
23 that say that demographic adjustments are not permitted.  But
24 one of the key --
25      **THE COURT:** Because they're considered predictive in

1  determining whether somebody has a T&P?
2  **MR. JACOB:** And often -- yes, Your Honor.  And often
3  in a way that's designed to just bring things down as much as
4  possible to the level of the individual in front of you and to
5  take into account factors that they had standardized
6  information they could take into place.
7  But I think the key point here is, the plan did, in the
8  middle of 2021, when they became aware that this practice
9  existed, issue a directive that hence forward, without regard
10 to whether Heaton norms have merit or not, we just don't want
11 to deal with this issue being raised by people and anybody
12 thinking that we're doing anything --
13 **THE COURT:** Yeah, it's not a good look.
14 **MR. JACOB:** Yeah, so they stopped it at that point.
15 And they issued a directive.  And they don't present a single
16 instance of a neutral physician who after the middle of 2021,
17 when that directive was answered, acting inconsistent with the
18 plan.
19 **THE COURT:** Okay.
20 **MR. JACOB:** Nor do they point to any plan term that
21 would have been inconsistent for a neutral physician to
22 exercise their best professional judgment prior to that point
23 in time in deciding whether to use --
24 **THE COURT:** Okay, got it.
25 **MR. JACOB:** So, again, it is not an example of an

```
 1  inconsistency of application.  And those are all eight of their
 2  examples.
 3       So when the court asked me, you know, isn't this -- you
 4  know, shouldn't narrow tailoring apply in a case like this --
 5          THE COURT:  Well, what I was asking you is how would
 6  that occur in a case like this.  And I understand your
 7  explanation for why you really couldn't answer that question
 8  directly.
 9          MR. JACOB:  Yes, Your Honor.  And I do think any one
10  of these individual plaintiffs -- what they've tried to do here
11  is, this is a sweeping motion that asks for all 20,000 records,
12  everything from middle of 2018 to -- give us all 20,000 of
13  those, which of course is going to necessitate then the court
14  evaluating, every claim that they make based on this set of
15  20,000 records is going to be something that is a contested
16  issue before the court.  And we will be here for 20 years going
17  through 20,000 documents to figure out, is this one actually
18  inconsistent with this one, et cetera, because none of this is
19  targeted.  If they have specific targeted complaints -- and,
20  again, I wanted to walk the court through the ones that they
21  purport to present as targeted claims --
22          THE COURT:  I'm here.
23          MR. JACOB:  -- none of which I think would warrant
24  doing any kind of targeted discovery because they don't point
25  to an alleged inconsistent application of a plan term that has
```

1   any basis, particularly where they've got 1,500 records to draw
2   that from.
3        So let me walk through the rest of their *Booth* factor
4   allegations.  Actually, I pointed the court to page 16 where
5   they say:  Here are the things that we need in order to assess
6   bias.  I've covered the third one there, which is the alleged
7   pattern or practice in decision letters and how that's not
8   going to be held.
9        The next one they say:  We need the dates of other
10  claimants' physician evaluations.  That's all in the claims
11  data.
12       The next one, number five, they say:  We need the plan
13  physicians' alleged relevant specialties and expertise.  All in
14  the claims data.
15       The next one, number six, they say:  Whether defendants
16  disregarded evidence in favor of plan-selected physicians'
17  opinions.  That, again, they've got 1,500 examples out there,
18  if they want to come to the court -- in fact, in every single
19  one of these -- and the court can see this in the three MSJs
20  that have been filed -- every single time the allegation is
21  going to be, hey, I had other evidence here that you
22  disregarded.  And the court is going to have to make a
23  determination on every one of those under an abuse of
24  discretion standard, did the board make, you know, abuse its
25  discretion in accepting these neutral physician reports as