# EXHIBIT 2

File Provided Natively

NFLPLTFS-0000118



24/7 FREE CONSULTATION | NO FEE UNLESS WE WIN **678-673-3285**

About Us   Testimonials   Cases We Handle   Resources   Contact Us

# Deposition of Dr. Barry McCasland regarding IME

Home // Deposition of Dr. Barry McCasland regarding IME

## Deposition of Dr. Barry McCasland regarding IME [Client Name Redacted]

McCasland, M.D., Barry, (Pages 1:1 to 90:24)

1. IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA
[REDACTED],

Plaintiff,

1   CIVIL ACTION FILE



2   11-A-4554-2

HOME DEPOT U.S.A., INC.,

Defendant.

DEPOSITION OF BARRY J. MCCASLAND, MD

May 24, 2013

2:06 p.m.

Center for Specialty Medicine at Saint Joseph's Hospital
Suite 515
5671 Peachtree Dunwoody Road, NE
Atlanta, Georgia
Genevie Morell, RPR, CCR-2760

2. INDEX OF EXHIBITS

EXHIBIT DESCRIPTION PAGE

For the Plaintiff:

#1 Amended Notice of Deposition of Barry McCasland, MD...............5
#2 Curriculum vitae...................6
#3 Correspondence between Dr. McCasland and Hawkins Parnell...............11
#4 Chart 1 of 2.......................12



Message or Comment*

☐ By providing your phone number, you agree to receive text messages from Butler Kahn Law Firm. Message and data rates may apply. Message frequency varies.

SEND TO OUR ATTORNEYS

Privacy Policy

Contact Us Now For Legal Help
678-673-3285

GET A FREE CONSULTATION

11 the medical records or evaluated the patient, is that
12 fair?
13 A. Additionally, you have to have some clear
14 idea that there was a motor vehicle accident.
15 Q. So in order to know whether a given symptom
16 or diagnosis was caused by a motor vehicle accident,
17 you have to either examine the patient or review the
18 medical records and you must know whether there was a
19 motor vehicle accident, is that true?
20 A. Correct.
21 Q. In this case, I take it that your position
22 is that your background as a medical doctor is
23 sufficient when combined with your review of the
24 record and examination of the patient to allow you to
25 determine whether Ms. [REDACTED] sustained a concussion

29

1 in the wreck that we're here about, is that true?
2 A. Yes, sir.
3 Q. In order to determine whether Ms. [REDACTED] 4 suffered a concussion in this wreck you would need to
5 either review the records or evaluate Ms. [REDACTED], is
6 that true?
7 A. Yes, sir. Ideally both.
8 Q. And you did it both here?
9 A. Correct.

10 Q. What do you rely on in reaching your
11 conclusion that Ms. [REDACTED] did not suffer a
12 concussion in this wreck?
13 A. Concussion, sir, is a diagnosis made by
14 pattern recognition. If you've seen it a number of
15 times in all of its variations, you quickly get a
16 feel for it. As you pointed out, MRI doesn't help
17 you. There are a lot of other tests that don't help
18 you either. Not only the symptoms, which is the
19 history, and the lack of findings like, for instance,
20 the normal MRI, but also the course that it takes.
21 For instance, if somebody has progressively
22 worsening and worsening and worsening symptoms, it
23 just can't be due to a concussion. That isn't what
24 concussions do. So by pattern recognition, training
25 and experience in other words, is how you make those

30

1 determinations.
2 MR. BUTLER: Let's take a quick break.
3 (Recess 2:37 to 2:38.)
4 BY MR. BUTLER:
5 Q. We're back on the record. During our water
6 break we received your billing records in the case,
7 is that right?

24 Q. In other words, you're just not sure one
25 way or the other?

75

1 A. Correct.
2 Q. In terms of the breakdown in your work
3 between representing plaintiffs and defendants, is it
4 about the same now as it has been for the last two to
5 three years?
6 A. I would say.
7 Q. You would say yes?
8 A. I would say yes, I'm sorry.
9 Q. As of January of last year, a hundred
10 percent of your witness work was for defendants,
11 insurance companies or defense lawyers, is that true?
12 A. As of January of last year?
13 Q. January of 2012, yes.
14 A. Do you mean from January 2012 to the
15 present? I'm sorry, I'm not understanding.
16 Q. What I'm referring to is an occasion last
17 year where you were asked a similar question in
18 January of 2012, and at that point you said in the
19 last two to three years a hundred percent of your
20 witness work had been for defendants, insurance
21 companies or defense lawyers. Does that sound
22 accurate?

22 accurate?

23 A. It very well could be. There may have been

24 one or two cases that weren't. Was that question

25 asked of IMEs or of all work?



76

1 Q. I believe it was limited to testimony.

2 A. Okay. Then may very well be accurate.

3 Q. Since that time have you ever testified

4 when you were not testifying on behalf of a

5 defendant, insurance company or defense lawyer?

6 A. May I look?

7 Q. Sure.

8 A. Number one is a treating physician. May

9 2nd, 2013, personal injury case, I testified for the

10 plaintiff. June 27, 2012, personal injury suit, I

11 testified for the plaintiff. January 19, 2012 was —

12 I'm not sure exactly what that was. Somebody was

13 trying to override a last will and testament of one

14 of my patients by saying he was demented and I had to

15 give an opinion on that. I don't know how you'd

16 count that.

17 Q. Sounds like what we call an undue influence

18 case. Does that term sound familiar?

19 A. Kind of does. That's since January of

20 2012