# EXHIBIT 28

```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                           NORTHERN DIVISION

 3

 4   JASON ALFORD, ET AL.,           )
                                     )
 5        Plaintiff,                 )
                                     )Civil No.
 6        vs.                        )1:23-cv-0358-JRR
                                     )
 7   THE NFL PLAYER DISABILITY &     )Baltimore, Maryland
     SURVIVOR BENEFIT PLAN, ET AL.   )
 8                                   )February 21, 2025
          Defendants.                )10:02 a.m.
 9   _____)

10
                         TRANSCRIPT OF PROCEEDINGS
11                            MOTIONS HEARING
                     BEFORE THE HONORABLE JULIE R. RUBIN
12

13

14                       A P P E A R A N C E S

15   On Behalf of the Plaintiff:
          Benjamin R. Barnett, Esquire
16        Julie M. Damron, Esquire
          Samuel L. Katz, Esquire
17
     On Behalf of the Defendant:
18        Gregory F. Jacob, Esquire
          Meredith N. Garagiola, Esquire
19        John J. Lapin, Esquire

20

21

22        (Computer-aided transcription of stenotype notes)

23                          Reported by:
                         Ronda J. Thomas, RMR, CRR
24                       Federal Official Reporter
                     101 W. Lombard Street, 4th Floor
25                      Baltimore, Maryland 21201
```

1  her report, that, quote, "It is not likely that Mr. McKenzie
2  would be able to maintain employment" and yet ultimately found
3  that he was not disabled.  They're essentially alleging that
4  that neutral physician was acting inconsistent with their own
5  conclusion.
6      But if you actually take a look at Dr. Mercado's report
7  that they point to, there's not even an internal inconsistency.
8      Dr. Mercado found, quote, "At this time, based on his
9  fragile psychological state, it is not likely that he would be
10 able to maintain employment."  That phrase, "at this time," is
11 not a finding that this person is totally and permanently
12 unable to find employment over a prolonged period of time.
13     So goes on to say that, quote, "Due to low scores on all
14 performance validity measures, it is not possible to make a
15 determination at this time.  However, there are psychiatric
16 concerns that require Mr. McKenzie get psychiatric treatment
17 and care," and recommends further evaluation.
18     So there isn't even an internal inconsistency with respect
19 to this neutral physician.  All of this would be reviewed by
20 the court in a summary judgment context.  But certainly this is
21 not an example of an inconsistent application of a plan term.
22 The plan term isn't even quoted in the neutral physician report
23 with respect to this particular point that they point to.
24     And the second one, and they made much of this in their
25 presentation to the court, is about education level.  There,

1  they point to paragraphs 168, paragraph 188, and paragraph 225
2  of the complaint.  And in each instance, all they point to is a
3  neutral physician who states at the end of the report that this
4  person could perform -- because there's a place on the form,
5  they're supposed to fill out what work could they perform.  And
6  the neutral physician says, "They could perform work consistent
7  with their education and training."  That is not the use of
8  education to determine whether the person is disabled or not.
9  And they, glaringly, don't point to anything in the internals
10 of those evaluations, all of which they had before they filed a
11 complaint, that is a use of the education of a person to find
12 that the person is not disabled.
13      So that's the second one.  No demonstration of any
14 inconsistent application.
15      Purported inconsistency number three.  They say, "plan
16 terms for line-of-duty points."  When you look, here they point
17 to paragraphs of the complaint, but ultimately they attach
18 Exhibits H, I, and J.  And they say that these neutral
19 physician evaluations demonstrate inconsistent determinations
20 of whether a particular injury is worthy of points or not.
21      If the court takes a look at H, I, and J, the court will
22 find that that's not the case.
23      So with respect to Dr. Cook, his evaluation of Loper in
24 Exhibit J.  Dr. Cook says, you know, their allegation of
25 inconsistency is that he found joint inflammation but failed to

1  award points for it.  Well, if you take a look at the PRF,
2  which again is attached to Exhibit H, Dr. Cook says he, quote,
3  "had joint inflammation which resolved four days later."
4        So that would, again, not be an indication of long-term
5  disability which is what he would have had to find.  There's no
6  internal inconsistency with him not awarding points in that
7  instance.
8        With respect to Exhibit I.  This is Dr. Elkousy's
9  examination of Mr. Sims.  Here, they say there was a failure to
10 award points because he was able to play after the injury while
11 he was in the NFL while another doctor did award points in
12 Exhibit J, Dr. Selesnick did award points even though the
13 person was able to later play in the NFL.
14       If the court looks at Exhibit I, what the court will find
15 is that what Dr. Elkousy said is, quote, "He does have a right
16 knee MCL injury sustained while playing football in the NFL.
17 However, on examination, the most-recent MRI in 2020 did not
18 mention any MCL pathology and Mr. Sims was able to play after
19 the injury while in the NFL.  This does not constitute systemic
20 instability."
21       So three reasons are cited.  It's not just that he was
22 able to play after the fact.  He's got minimal laxity and
23 nothing is showing up on the MCL report today.  That is not any
24 kind of inconsistency with Dr. Selesnick's report.  They're
25 just discreet medical judgments based on medical evidence.

1   determining whether somebody has a T&P?
2        **MR. JACOB:**  And often -- yes, Your Honor.  And often
3   in a way that's designed to just bring things down as much as
4   possible to the level of the individual in front of you and to
5   take into account factors that they had standardized
6   information they could take into place.
7        But I think the key point here is, the plan did, in the
8   middle of 2021, when they became aware that this practice
9   existed, issue a directive that hence forward, without regard
10  to whether Heaton norms have merit or not, we just don't want
11  to deal with this issue being raised by people and anybody
12  thinking that we're doing anything --
13       **THE COURT:**  Yeah, it's not a good look.
14       **MR. JACOB:**  Yeah, so they stopped it at that point.
15  And they issued a directive.  And they don't present a single
16  instance of a neutral physician who after the middle of 2021,
17  when that directive was answered, acting inconsistent with the
18  plan.
19       **THE COURT:**  Okay.
20       **MR. JACOB:**  Nor do they point to any plan term that
21  would have been inconsistent for a neutral physician to
22  exercise their best professional judgment prior to that point
23  in time in deciding whether to use --
24       **THE COURT:**  Okay, got it.
25       **MR. JACOB:**  So, again, it is not an example of an