## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:23-cv-00358-JRR |
| THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. ANTHONY HAYTER

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

    I.     DR. HAYTER'S AFFIRMATIVE ANALYSES SHOULD BE
           EXCLUDED UNDER RULE 702 BECAUSE THEY ARE ENTIRELY
           UNRELIABLE ........................................................................................... 5

         A.    The Data Underlying Dr. Hayter's Analyses (Exhibits A and B)
              Are Biased And Flawed Datasets Prepared By Counsel Using A
              Methodology Unknown To Dr. Hayter .................................................... 5

              1.    *Exhibit A* ................................................................. 7

              2.    *Exhibit B* ............................................................... 11

         B.    The Analysis Dr. Hayter Performed Purporting To Analyze These
              Mismatched, Counsel-Prepared Data Sets Is Not Based On Any
              Valid Or Accepted Statistical Methodology ........................................... 15

    II.    THE COURT SHOULD PRECLUDE DR. HAYTER FROM OFFERING
           OPINIONS ABOUT DR. LASATER'S ANALYSIS ......................................... 19

    III.   DR. HAYTER'S OPINIONS ABOUT THE VALIDITY OF THE
           INFORMATION IN PLAINTIFFS' AMENDED COMPLAINT ARE
           UNRELIABLE ......................................................................................... 24

    IV.   DR. HAYTER'S OPINIONS SHOULD INDEPENDENTLY BE
           EXCLUDED UNDER RULE 37(c) BECAUSE HE DID NOT
           DISCLOSE THE FACTS OR DATA HE CONSIDERED IN
           PREPARING HIS REPORT ....................................................................... 26

CONCLUSION ................................................................................................................. 28

CERTIFICATE OF SERVICE .......................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Balbed v. Eden Park Guest House, LLC*,
  2019 WL 3717582 (D. Md. Aug. 7, 2019) ............................................................... 21

*Bishop v. Triumph Motorcycles (Am.) Ltd.*,
  2021 WL 4316810 (N.D. W. Va. Sept. 22, 2021) ..................................................... 25

*Bresler v. Wilmington Tr. Co.*,
  855 F.3d 178 (4th Cir. 2017) ............................................................................. 26, 27

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ........................................................................................... 3, 13

*EEOC v. Freeman*,
  961 F. Supp. 2d 783 (D. Md. 2013) ....................................................... 4, 10, 11, 15

*Elm Grove Coal Co. v. Director, O.W.C.P.*,
  480 F.3d 278 (4th Cir. 2007) ..................................................................................... 28

*Eshelman v. Puma Biotechnology, Inc.*,
  2019 WL 1092572 (E.D.N.C. Mar. 8, 2019) ............................................................. 14

*Fernaays v. Isle of Wight Cnty.*,
  2022 WL 866416 (E.D. Va. Mar. 23, 2022) ............................................................... 27

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ..................................................................................................... 4

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  2024 WL 2155221 (D.S.C. May 14, 2024) ................................................................ 13

*In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
  2018 WL 514798 (S.D.W. Va. Jan. 23, 2018) ..................................................... 22, 24

*In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
  948 F. Supp. 2d 589 (S.D.W. Va. 2013) ......................................................... 22, 23, 24

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  145 F. Supp. 3d 573 (D.S.C. 2015) ........................................................................... 21

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  892 F.3d 624 (4th Cir. 2018) ......................................................................... 5, 10, 15

*Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*,
  2021 WL 12255004 (E.D. Mich. Sept. 29, 2021) ..................................................... 17

*Jowite Ltd. P'ship v. Fed. Ins. Co.*,
  2019 WL 1513457 (D. Md. Apr. 8, 2019) ................................................................. 28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Klaczak v. Consol. Med. Transp.*,
    458 F. Supp. 2d 622 (N.D. Ill. 2006) ........................................................ 25

*Lightfoot v. Ga.-Pac. Wood Prods. LLC*,
    2018 WL 4517616 (E.D.N.C. Sept. 20, 2018) .................................... 16, 19

*Martin v. Bimbo Foods Bakeries Distrib., Inc.*,
    2016 WL 4621075 (E.D.N.C. Sept. 6, 2016) ..................................... 7, 11

*NuVasive, Inc. v. Kormanis*,
    2019 WL 9633645 (M.D.N.C. Mar. 18, 2019) ................................... 7, 11

*Nease v. Ford Motor Co.*,
    848 F.3d 219 (4th Cir. 2017) ....................................................................... 3

*Océ N. Am., Inc. v. MCS Servs.*,
    2011 WL 13217472 (D. Md. Sept. 9, 2011) ........................................... 28

*Oglesby v. Gen. Motors Corp.*,
    190 F.3d 244 (4th Cir. 1999) ................................................................ 3, 20

*Rice v. SalonCentric Inc.*,
    2020 WL 42760 (D. Md. Jan. 3, 2020) ..................................................... 3

*United States v. 0.012 Acres, More or Less, Situated in Lexington Cnty., S.C.*,
    2025 WL 869681 (D.S.C. Jan. 8, 2025) .................................................... 3

*United States v. Ancient Coin Collectors Guild*,
    899 F.3d 295 (4th Cir. 2018) ...................................................................... 3

*United States v. Crisp*,
    324 F.3d 261 (4th Cir. 2003) ...................................................................... 4

*United States v. Mosby*,
    626 F. Supp. 3d 847 (D. Md. 2022) ........................................................... 4

*United States v. Wood*,
    741 F.3d 417 (4th Cir. 2013) ...................................................................... 3

*Wilkins v. Montgomery*,
    751 F.3d 214 (4th Cir. 2014) .................................................................... 27

*Ziegler v. Polaris Indus., Inc.*,
    2024 WL 482212 (W.D.N.C. Feb. 7, 2024) .......................................... 27

*Zuckerman v. Wal-Mart Stores E., L.P.*,
    611 F. App'x 138 (4th Cir. 2015) .............................................................. 4

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**OTHER AUTHORITIES**

Anthony Hayter, *Probability and Statistics for Engineers and Scientists* (4th ed. 2013) ......................................................................................................... 6, 8, 24

J.T. McClave, et al., *Statistics for Business and Economics* (13th ed. 2016) .............................. 21

Mark Rubin, *When Does HARKing Hurt? Identifying When Different Types of Undisclosed Post Hoc Hypothesizing Harm Scientific Progress*, 21 Rev. Gen. Psych. 308 (2017) ................................................................................................... 21

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................... 3, 26

Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment .............................. 26

Fed. R. Civ. P. 37(c) .................................................................................................... 27

Fed. R. Evid. 702 ............................................................................................... 1, 3, 27

Fed. R. Evid. 702 advisory committee's note to 2023 amendments............................................... 4

## **<u>INTRODUCTION</u>**

Plaintiffs understand that, without some kind of statistical showing, they could never offer classwide proof of the systemic, Plan-wide bias that their Amended Complaint theorizes. After having staunchly resisted providing the methodological underpinnings of the supposed statistics in their pleading itself, Plaintiffs now depend on their proffered expert, Dr. Anthony Hayter, to establish the supposedly improper relationship between physician compensation and decision-making upon which their entire case hinges.  But Dr. Hayter's testimony does not pass muster under the relevance and reliability requirements of Federal Rule of Evidence 702.

Dr. Hayter bases his opinions in large part on Exhibits A and B to his report, an incomplete and biased subset of materials counsel prepared using a methodology that he does not know and cannot describe.  Despite extensively relying on Exhibit A, Dr. Hayter never actually checked whether it was accurate.  Decl. of M. Garagiola in Supp. of Defs.' Combined Surreply in Opp. to Pls.' Mot. for Class Cert. & Opp. to Pls.' Mot. to Exclude the Test. of D. Lasater ("Garagiola Decl."), Ex. B, A. Hayter May 13, 2025 Dep. Tr. ("Tr.") 173:16-25 ███████████ ██████████████████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████████████).  Nor did he check the accuracy of Exhibit B.  *See id.* at 203:13-204:3 ███████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████).  And his lack of diligence shows: Exhibits A and B ignore basic statistical principles and are replete with errors that render any analysis based on them unreliable.

On top of that shaky foundation of skewed, inaccurate, and cherry-picked datasets, Dr. Hayter offers testimony that is utterly unfounded in accepted statistical practice. ██████

████████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* at 224:20-225:3. ███████████████████████

███████████████████████████████████████ rather than any accepted statistical methodology. *Id.* at 147:14-19 ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████ ).  And he diverges from standard statistical practice without offering any support for the reliability of his methods beyond his own say so.  *See, e.g.*, *id.* at 241:19-23 ██████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ ), 242:5-9 ████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ ).

Beyond the deficiencies in his own analysis, Dr. Hayter's attempted rebuttal of the testimony of defense expert Dr. David Lasater has no basis in statistics and is not the proper subject of expert testimony.  ███████████████████████████████████████████

███████████████████████████ *id.* at 229:1-15, is not scientific or based on any reasoned methodology.  And Dr. Hayter's attempt to rebut Dr. Lasater's criticisms of the Amended Complaint is nothing more than speculation.

Finally, Dr. Hayter's opinions should be excluded for the independent reason that they fail to comply with the Federal Rules.  ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████ in plain violation of Rule 26(a)(2)(B)(ii).  That not only renders his opinions generally unreliable, but also triggers an automatic sanction requiring the Court to exclude his opinions under Rule 37(c).

Accordingly, Defendants ask the Court to preclude Dr. Hayter from testifying in this case because his opinions are so unreliable and untrustworthy that they will not aid the Court in resolving any of the issues before it.

## LEGAL STANDARD

Trial courts act as gatekeepers of expert testimony, determining its admissibility based on Federal Rule of Evidence 702 as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.  *See Nease v. Ford Motor Co.*, 848 F.3d 219, 228-29 (4th Cir. 2017).  In its gatekeeping role, the Court must ensure "that the expert opinions rest on a reliable foundation and are relevant to the task at hand."  *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 318 (4th Cir. 2018) (alterations and quotations omitted).  "[T]he Court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance" to the finder of fact.  *Rice v. SalonCentric Inc.*, 2020 WL 42760, at *3 (D. Md. Jan. 3, 2020) (quotations omitted).[1]  For expert testimony to be reliable, an expert's opinion "must be derived using scientific or other valid methods."  *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999); *see* Fed. R. Evid. 702(c).  "Expert testimony rooted in subjective belief or unsupported speculation does not suffice."  *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F.

---

[1] While the Fourth Circuit has acknowledged that *Daubert*'s safeguards are "relaxed" when a case will be tried to a judge, *see United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013), courts still exclude expert testimony in bench trials when the reliability and relevance requirements are not met.  *See, e.g.*, *United States v. 0.012 Acres, More or Less, Situated in Lexington Cnty., S.C.*, 2025 WL 869681, at *5-7 (D.S.C. Jan. 8, 2025) (excluding testimony in a case set for bench trial where expert "did not apply a proper ... methodology" and his opinions "lack[ed] adequate factual support for his conclusion").

App'x 138, 138 (4th Cir. 2015) (per curiam). Where "opinion evidence ... is connected to existing data only by the *ipse dixit* of the expert," a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Courts consider five non-exhaustive factors when assessing the reliability of an expert's opinions and methodology: "(1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003) (quotations omitted). The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *United States v. Mosby*, 626 F. Supp. 3d 847, 856 (D. Md. 2022); *see also* Fed. R. Evid. 702 advisory committee's note to 2023 amendments (emphasizing that "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule").

For a statistical expert's testimony to satisfy *Daubert*'s requirements, both his data and his methodology must be reliable. "Expert statistics are unreliable if they are based on incomplete data sets and inadequate statistical techniques." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 792 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015). "[C]ourts have consistently excluded expert testimony that cherry-picks relevant data because such an approach does not reflect scientific knowledge, is not derived by the scientific method, and is not good science." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 634

(4th Cir. 2018) (quotations and citations omitted).

## ARGUMENT

**I.    DR. HAYTER'S AFFIRMATIVE ANALYSES SHOULD BE EXCLUDED UNDER RULE 702 BECAUSE THEY ARE ENTIRELY UNRELIABLE**

**A.    The Data Underlying Dr. Hayter's Analyses (Exhibits A and B) Are Biased And Flawed Datasets Prepared By Counsel Using A Methodology Unknown To Dr. Hayter**

Dr. Hayter's report presents affirmative analyses of two datasets assembled by Plaintiffs' counsel, reflected in Exhibits A and B to his report.  ECF No. 172-5 at 26-31. ███████████

████████████████████████████████████████████████████████████████████████

*See* Tr. 169:4-11, 169:16-18, 191:7-14.  At his deposition, Dr. Hayter was unable to supply even basic facts about these voluminous data sets, which form the basis of nearly half of the analysis in his report.  *See infra* Section IV. ███████████████████████████

███████████[2] ███████████████[3] ████████████████[4] ████████

---

[2] *See, e.g.*, Tr. 170:15-23 ████████████████████████████████████
██████████████████████████████████████████), 191:10-14
████████████████████████████████████).

[3] *See, e.g.*, Tr. 171:11-14 █████████████████████████████████████
██████████████████████████████████████), 187:20-
188:2 █████
███████████████████████████████████████████████████████
███████████████████████ .

[4] *See, e.g.*, Tr. 205:12-17 ███████████████████████████████████
████████████████████████████████████ .



███████████████████████,[5] ███████████████████████████,[6] or ████████████████

██████████████████████████.[7]

Without any real understanding of his own data, Dr. Hayter should be precluded from

offering any opinions based on Exhibits A and B because his reliance on them contravenes basic

statistical practice.  Dr. Hayter himself has explained that "[a] great deal of care needs to be

taken to ensure that the data set [for a statistical analysis] is obtained in an appropriate manner."

Anthony Hayter, *Probability and Statistics for Engineers and Scientists* 268 (4th ed. 2013).  In

his own words, "any statistical analysis based upon inaccurate or poor quality data is necessarily

misleading."  *Id.*  Dr. Hayter has failed to heed his own advice in this matter, having little-to-no

understanding of how Exhibits A and B were prepared and having done nothing to assess their

validity or accuracy.

Dr. Hayter cannot offer reliable opinions by hiding behind Plaintiffs' counsel's

preparation of the data underlying a majority of his report.  Courts exclude statisticians'

---

[5] *See, e.g.*, Tr. 172:12-17 █████████████████████████████████████████
████████████████████████████████████████████████████

[6] *See, e.g.*, Tr. 168:17-169:1 ███████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████ .

[7] *See, e.g.*, Tr. 173:16-25 █████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████), 203:13-204:11 ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████).

testimony where they fail to verify the accuracy of their data after receiving it from counsel because, "[w]hile there is nothing inherently wrong with using a litigant's lawyer as a conduit for information to an expert, it is not acceptable for an expert to rely on summaries provided by a lawyer or on client data cherry-picked by a lawyer, without independently verifying the information." *NuVasive, Inc. v. Kormanis*, 2019 WL 9633645, at *2 (M.D.N.C. Mar. 18, 2019); *see also Martin v. Bimbo Foods Bakeries Distrib., Inc.*, 2016 WL 4621075, at *2 (E.D.N.C. Sept. 6, 2016) (excluding expert testimony where the expert "should have independently verified the financial data plaintiff's counsel gave to him"). In those circumstances, "the court does not know" whether the underlying data is reliable—"Plaintiff's counsel is not a witness[,]" and "Defense counsel cannot examine him[,]" so "[o]ne is left to speculate about the data underlying the expert's conclusions." *Martin*, 2016 WL 4621075, at *2.

Upon even a cursory examination, it is clear that Exhibits A and B contain data that are unrepresentative, incomplete, irrelevant, and/or inaccurate. Any opinions based on them should be excluded in full.

          1.    *Exhibit A*

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████. ECF No. 172-5 at 27-29 & Ex. A; Tr. 192:19-21.

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

ECF No. 172-5 at 28. ██████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████. Decl. of D. Lasater in Reb. to

the Expert Rpt. of Dr. A. Hayter ("Lasater Reb. Decl.") ¶¶ 81-83. This makes sense: ██

██████████████████████████████████████████████████████████

████████████████████████████████. *See id.* ¶ 82. For that reason, "a good

statistician will investigate … to assess the quality and representativeness of the data set being

dealt with" before conducting his analysis. Hayter, *supra*, at 269.

Here, Dr. Hayter did nothing to ensure the quality and representativeness of the data in

Exhibit A. To begin, ████████████████████████████████████████████

███████████████████████████████████████████████████ ECF

No. 172-5 at 27; Tr. 171:2-172:11. ████████████████████████████████

████████████ Tr. 182:23-183:13, and ██████████████████████████

██████████████████████████████. *Id.* at 181:24-182:21. ████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. Lasater Reb. Decl. ¶ 88.

Even more significantly, the record indicates that the limited subset from Exhibit A is

skewed in a way that could bias any results based on that data. ████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

Tr. 172:18-22. Yet Dr. Hayter did nothing to account for the myriad biases that could result

from an application and appeal dataset that came exclusively from a single law firm that

specializes in representing NFL players in obtaining disability benefits from the Plan.[8]  For

example, Mr. Katz's clients could come from a particular geographic area or seek his

representation for a particular type of disability claim.  Similarly, sourcing applications and

appeals from a single law firm could skew the sample based on outcomes.  For instance, if

Mr. Katz were exceptionally successful in his representations, applications and appeals in his

possession could have a higher approval rate than the broader population.  If he is more

aggressive than others in pursuing appeals on behalf of his clients, his claims sample could also

have higher or lower approval rates than the broader population.  Dr. Hayter has not considered

this skew at all; nor is it clear that, even if he had, anything could be done to the limited subset of

data in Exhibit A to cure these inherent defects of a sample that was, by definition, not randomly

selected.

This would be a big enough problem on its own, but Dr. Hayter's understanding does not

reveal the full picture of how this material was actually assembled.  ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████  ECF No. 172-5 at 27 (emphasis

added), the facts show that this is not true.  Plaintiffs have access to documents that they did not

include in Exhibit A.  ██████████████████████████████████████████████

██████████████████████████████████████████████████████████.  Lasater Reb.

---

[8] *See* Athlaw LLP, *Championing Justice for Disabled NFL Players Nationwide*,
https://www.athlawllp.com/#:~:text=Athlaw%20LLP%20is%20the%20gold,against%20the%20
ERISA%2Dregulated%20Plan ("Athlaw LLP is the gold standard for representing former NFL
players in their battles for benefits. For nearly a decade, we have dedicated our knowledge to
securing justice for players facing an uphill battle against the ERISA-regulated Plan.").  Indeed,
Sam Katz holds himself out as the "premier attorney in this space due to his extensive depth of
knowledge of the NFL's Disability and Survivor Benefit Plan," and describes himself as
"pivotal" in bringing this case.  Athlaw LLP, *Sam Katz*, https://www.athlawllp.com/our-
team/sam-katz/.

Decl. ¶¶ 103-06.  Likewise, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████.  Decl. of H. Vincent in Supp. of Defs.' Surreply in Opp.

to Pls.' Mot. for Class Cert. & Opp. to Pls.' Mot. to Exclude the Test. of Dr. D. Lasater

("Vincent Decl.") ¶¶ 10-13; *see also* Lasater Reb. Decl. ¶¶ 107-08.  Plaintiffs' counsel clearly

had access to these player files because Mr. Katz served as the attorney representative and

received copies of all of the materials, yet these results are absent from Exhibit A.  Dr. Hayter is

unaware that this cherry-picking had even occurred because, of course, he did not create the

document himself.  But his understanding of the sample he analyzed is plainly incorrect.  This

problem only further underscores that Exhibit A is unreliable and that any opinions based on it

should be excluded.  *See In re Lipitor*, 892 F.3d at 633 (affirming exclusion of statistician's

testimony because his sample was "too tainted with potential bias and error to pass *Daubert*

muster"); *see also Freeman*, 961 F. Supp. 2d at 794 (excluding expert's opinions because he

"had access to information on 58,892 [job] applicants" for his statistical analysis, but instead

relied almost entirely on two Excel spreadsheets "with only a few individuals cherry-picked for

inclusion from the discovery materials").



    Lastly, Exhibit A is riddled with errors.  For example, ██████████████████

████████████████████████████████████████████.  *Id.* ¶¶ 90-91.  ███████████████

███████████████████████████████████████████████████████.  *Id.* ¶ 90.  ██

███████████████████████████████████████████████████████████████████████

██████████████████  *Id.* ¶ 91.  Similarly, ████████████████████████████████

████████████████████████████.  *Id.* ¶¶ 96-99.  For instance, ███████████████████

████████████████████████████████████████████████████████████.  *Id.*

¶ 97.  These inaccuracies only magnify the problems with any testimony based on Exhibit A. *See Freeman*, 961 F. Supp. 2d at 793 ("Coding errors should be considered and can warrant the exclusion of expert testimony.").

   2. <u>Exhibit B</u>



. ECF No. 172-5 at 30.

*Id.* at 31.  Critically,

, *see id.* at 30-31, and

, Tr. 205:12-17.

. *Id.* at 203:8-12; *see also id.* at 203:19-204:3

).  That failure alone warrants exclusion of any opinions based on Exhibit B.  *See NuVasive*, 2019 WL 9633645, at *2 ("While an expert need not act as a 'private investigator' to track down the accuracy of each piece of data on which she relies, an expert must have some basis for believing the data on which she relies is what it purports to be." (citations omitted)); *Martin*, 2016 WL 4621075, at *2  (similar).

   Had Dr. Hayter undertaken to understand how Exhibit B was assembled, he might have

uncovered that Plaintiffs' counsel's methodology for assigning physician compensation is both inconsistent and inaccurate.  Most significantly, Exhibit B artificially inflates purported physician compensation ██████████████████████████████████████████ ████████████████████████ . ████████████████████████████████ Tr. 199:10-15. ███████████████████████████████████████

███████████████████████████████████████████████████████

███ .  Vincent Decl. ¶ 7; Lasater Reb. Decl. ¶¶ 112-13; *see also* Tr. 199:25-200:6 ████████ ████████████████████████████████████████████████████████). ████████████████████████████████████████████████

███████████████████████████████████████ Lasater Reb. Decl. ¶ 113 n.55.

These kind of expense reimbursements have nothing to do with the kind of compensation at issue in this case.  Reimbursing physicians for lab tests and the like has nothing to do with physicians "benefit[ting] financially," as Plaintiffs allege.  ECF No. 56 ¶ 112. ████████████ █████████████████████████████████████████████ . Tr. 70:15-25 ███████████████████████████████████████ ████████████████████████████). ██████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████ artificially inflates individual physicians' total compensation, and therefore renders his opinions based on Exhibit B unreliable.

Even assuming that the Form 5500 payment amounts were a reliable proxy for physician compensation in this case (and they are not), Dr. Hayter faces another big problem: he has no explanation for how the payment amounts listed in these documents were allocated to individual

physicians. More specifically, Form 5500s frequently identify payments made to an entity (e.g., "ABC Medical Group of Pleasantville") rather individual physicians associated with that entity ("Dr. Jane Doe"). *Compare, e.g.*, NFLPLTFS-0000016 at 8 ([redacted]), *with id.* at 11 ([redacted]). And the Forms do not specify which physicians, if any, work for an entity that receives payments from the Plan. *See, e.g.*, NFLPLTFS-0000016 at 11. In order to assign compensation data that was paid to corporate entities to individual physicians, some kind of methodology must have been applied. [redacted]. ECF No. 172-5 at 31; *see* Tr. 203:5. [redacted] *See* ECF No. 172-5 at 31; Tr. 202:20-203:7.

This is not surprising, because Form 5500s do not itemize the amounts paid to each of the physicians who worked for a particular entity. *See, e.g.*, NFLPLTFS-0000016 at 11. Therefore, all Plaintiffs' counsel could do when preparing Exhibit B would be to approximate an allocation among physicians. [redacted] Tr. 203:8-12. [redacted] *Id.* at 203:13-18. [redacted]. Lasater Reb. Decl. ¶¶ 118-36. Constructing an analysis designed so the other party cannot reproduce it is antithetical to *Daubert*'s requirement that a scientific theory should be "tested." 509 U.S. at 593; *see also, e.g.*,

*In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221, at *12 (D.S.C. May 14, 2024) ("The Fourth Circuit, along with many other circuits, has acknowledged that … the inability to replicate an expert's methods may indicate that the expert's methods are not reliable."); *Eshelman v. Puma Biotechnology, Inc.*, 2019 WL 1092572, at *5 (E.D.N.C. Mar. 8, 2019) (finding methodology failed to satisfy *Daubert*'s testability requirement because expert "created an analysis that [could not] be reliably reproduced or independently verified").

Even worse, ███████████████████████████████████████

███████████████████████████████████████████. *Id.*

¶¶ 121-24. ██████████████████████████████████████

████████████  ████████████████████████████████████

██████████████████████████. *Id.* ¶ 122. ████████████

██████████████████████████████████████████████

███████████████████████████████████ *Id.* ███████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████. *Id.*

¶ 123.  Even more troubling, ████████████████████████

████████  ████████████████████████████████████

████████████████████████████████████. *Id.* ¶ 124.

The haphazard compensation allocations are plainly unreliable, ████████████████

████████████████████████████████████████████

██████████████

Exhibit B also contains numerous errors.  Among other things, ███████████████



*Id*. ¶¶ 125-27.

. Tr. 206:1-206:13.  In addition,

. Lasater Reb. Decl. ¶¶ 133-34  At times,

*Id*. ¶ 136.  There is simply no reason to think this document, generated by Plaintiffs' counsel, has any indicia of reliability.

 **B.** **The Analysis Dr. Hayter Performed Purporting To Analyze These Mismatched, Counsel-Prepared Data Sets Is Not Based On Any Valid Or Accepted Statistical Methodology**

 The fact Dr. Hayter's analysis was performed on a cherry-picked, unrepresentative, and inaccurate hodgepodge of data alone justifies exclusion of Dr. Hayter's affirmative analysis of Plaintiffs' dataset.  *See Freeman*, 961 F. Supp. 2d at 792; *In re Lipitor*, 892 F.3d at 634.  But independent of the flaws in the underlying datasets upon which they are based, Dr. Hayter's two affirmative analyses should also be excluded under Rule 702 because they are not based on any reliable methodology that would allow Dr. Hayter to reach his supposedly "statistical" conclusions.



. ECF No. 172-5 at 173.

██████████████████████████████████████████████

██████████████████████████████████████████████

███████. *Id.* at 173-74, 176-79. ████████████████████████████████

███████████████████████████████████ *Id.* at 174-75.

But Dr. Hayter's analysis ████████████████████████████ is statistically

meaningless. ████████████████████████████████████████

████████████████████████████████████████

███████████ Lasater Reb. Decl. ¶¶ 51-54.  Plaintiffs' fundamental claim is that "the higher a

physician's compensation," then "the higher their tendency" to find a player does not qualify for

benefits.  ECF No. 56 ¶ 112. ████████████████████████████████

████████████████████████████████████████

███████████████████████████. Lasater Reb. Decl. ¶¶ 53, 154.  In

fact, ██████████████████████████████████████

███████. *See* ECF No. 172-5 at 173-75; Lasater Reb. Decl. ¶¶ 154-55.  Instead, ████████

████████████████████████████████████████

████████. ECF No. 172-5 at 176-79.  Lasater Reb. Decl. ¶ 154.  Counting is not the province of

an expert.  *See Lightfoot v. Ga.-Pac. Wood Prods. LLC*, 2018 WL 4517616, at *16 (E.D.N.C.

Sept. 20, 2018) ("[W]here a person with no special skill or experience can draw the same

conclusion as the proffered expert after only brief exposure to the relevant evidence, the expert's

opinion must be excluded as unhelpful.").

In any event, Dr. Hayter's counting exercise is entirely without probative value because

the underlying data is mismatched: ████████████████████████████████



███████████████████████████████████████████████████████████

████████████████████████████████████████. Lasater Reb. Decl.

¶ 154. For example, ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ ECF No. 172-5 at 182. Plainly, ██████████████

██████████ do not correspond to each other in any meaningful way (███████████████

████████████████████████████████). In short, Dr. Hayter's tables

present an apples-to-oranges comparison that does not reliably demonstrate any kind of statistical

relationship, much less the kind of statistical relationship that would be helpful to a trier of fact.

*See, e.g.*, *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 2021 WL 12255004, at

*17 (E.D. Mich. Sept. 29, 2021) (excluding expert testimony where expert used a "mismatch of

data sets" and provided "no framework from which the Court [could] assess whether the data …

presented [was] significant or not").

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████. ECF No. 172-5 at 180. ███████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████. *Id.* at 180, 182, 184, 186, 188. █████████████

███████████████████████████████████████████████████

*Id.* at 183, 185, 187, 189. ███████████████████████████████████. *Id.*

███████████████████████████████████████████████

██████. Tr. 222:1-9.

These ████████ also depend on the same mismatched data that is inherently flawed.

*Supra* Section I.A.  And ████████████████████████████████

████████████████████ are utterly lacking in probative value. ████████

██████████████████████████████████████████

██████████████████████████████████ Tr.

224:25-225:3, 226:7-14. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ ECF No. 172-5 at 181.

Those conclusions are nonscientific, entirely arbitrary, and wholly unreliable. ████████

████████████████████████████████████████████

████████████████████████████████████████

██████████



█████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████  *See Lightfoot*, 2018

WL 4517616, at *16. ████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ :



*See* Lasater Reb. Decl. ¶ 143; ECF No. 172-5 at 187, Figure 4.2.2.3 (██████████████).

Dr. Hayter's approach to his affirmative analysis is not a recognized statistical methodology at

all, much less a reliable one.

## II.    THE COURT SHOULD PRECLUDE DR. HAYTER FROM OFFERING OPINIONS ABOUT DR. LASATER'S ANALYSIS

In addition to excluding his own affirmative analyses of the data, the Court should

exclude Dr. Hayter's assessment of Dr. Lasater's analysis because his criticisms are unreliable

and consist primarily of observations not based on an expertise or methodology.  Dr. Hayter did

not attempt to analyze the same data set that Dr. Lasater used for his analysis, he did not attempt

to recreate Dr. Lasater's analysis or to utilize his methodology, and he relied on non-statistical

analyses such as scatterplots to prepare drawings that constitute non-scientific observations.

While Dr. Hayter dutifully parrots criticisms that Plaintiffs already made in prior court filings,

and points out limitations of Dr. Lasater's analysis that Dr. Lasater himself expressly acknowledged in his report, Dr. Hayter's opinions do not demonstrate any actual flaws or inaccuracies in Dr. Lasater's analysis and therefore do not add anything of value to assist the trier of fact. Quite the opposite, they create confusion where none should exist.



, ECF No. 111-2,                ECF No. 172-5 at 18-19.                . Tr. 227:11-19, 228:5-9.                . *Id.* at 236:6-9, 238:9-23.

Indeed, Dr. Hayter's general comments about Dr. Lasater's report make clear that he did not attempt to seriously engage with Dr. Lasater's work at all.[9]

Dr. Hayter's primary conclusion about Dr. Lasater's analysis—                —is based on nothing more than Dr. Hayter's personal opinion. This is not an acceptable form of rebuttal analysis, and it fails to grapple with the actual method Dr. Lasater used for answering the specific questions he sought to analyze. *See Oglesby*, 190 F.3d at 250

---

[9] *See* Tr. 231:4-9  , 234:16-22                ).

("A reliable expert opinion must be based on scientific, technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.").  The fact that other methods might also be used and other questions might be asked does not render Dr. Lasater's approach invalid.

The basis for Dr. Lasater's opinions is "transparent and supported by the record."  *Balbed v. Eden Park Guest House, LLC*, 2019 WL 3717582, at *4 (D. Md. Aug. 7, 2019).  The same cannot be said for Dr. Hayter's conclusions in Section 2 of his report, which do not follow statistically accepted methods and are not supported by the full record.  █████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████. ECF No. 172-5 at 149-60. ██

███████████████████████████████████████████████

██████████████████████. ████████████████████████████

████████████████████████████████████████████

████████████ Tr. 241:21-23; *see also id*. at 242:5-9. ████████████████

████████████████████████████ *Id*. at 241:25.

This method—arriving at a conclusion and then working backward to create data analysis that support this predetermined outcome, is not a scientifically valid approach.  *See* Mark Rubin, *When Does HARKing Hurt? Identifying When Different Types of Undisclosed Post Hoc Hypothesizing Harm Scientific Progress*, 21 Rev. Gen. Psych. 308, 308 (2017) (explaining that "using current results to construct post hoc hypotheses that are then reported as if they were a priori hypotheses" is "bad for science"); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 145 F. Supp. 3d 573, 587 (D.S.C. 2015) (excluding expert's

"results driven" opinion where, "rather than conducting statistical analyses of the data and then drawing a conclusion from these various analyses, [he] formed an opinion first"). Dr. Hayter's approach to his rebuttal analysis of Dr. Lasater is not reliable, methodologically sound expert analysis, and should therefore be excluded.

Dr. Hayter's repetitions of arguments that Plaintiffs have themselves made in prior filings and court hearings in which Dr. Hayter was not involved do not make his testimony any more valuable. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████. ECF No. 172-5 at 39-89. These complaints about Dr. Lasater's attribution model were raised by Plaintiffs at length in both their motion to compel and their arguments at the motion to compel hearing. *See* ECF 134-12 at 10-11; ECF 163 at 8:7-15. They are purely legal arguments, not the subject of expert testimony. *See In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 948 F. Supp. 2d 589, 644-45 (S.D.W. Va. 2013) ("To the extent that the Exponent Experts purport to simply make arguments that Bard's lawyers may make, such testimony is not expert opinion and should be excluded."); *see also In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2018 WL 514798, at *2 (S.D.W. Va. Jan. 23, 2018) ("To the extent that the [Dr. Villarraga] purport[s] to simply make arguments that Bard's lawyer's may make, such testimony is not expert opinion and should be excluded.") (alterations in original). And as discussed in both the Opposition to Plaintiffs' Motion to Exclude the Testimony of Dr. Lasater and Dr. Lasater's Supplemental Declaration, these criticisms are invalid; Dr. Lasater explained that his analysis was based on assessing the benefit outcome of the applications and appeals he analyzed, and on the Neutral Rule, ECF No. 111-2 ¶ 18 & n.12, ████████████████████████████████████████████████████, Tr. 259:12-260:3.

Dr. Hayter's other criticisms are effectively just lay opinions that provide no expert value. ███████████████████████████████████████

███████████████████████████████████████████████████

█████ . ███████████████████████████████████████████

████████████████████████████████████████████████ . *Id.* at 262:13-24.  He has not shown that Dr. Lasater's conclusions would have been different had ████ ████████████████████████ been subtracted out.  Such observations are not proper expert testimony.  *See Bard*, 948 F. Supp. 2d at 644-45 ("Simply pointing out inconsistencies does not require any scientific, technical, or other specialized knowledge.") (quotations omitted).

Dr. Hayter also takes additional swipes at Dr. Lasater for failing to do things in his analysis that Dr. Hayter says he believes Dr. Lasater should have done, without ever explaining how these failures render what Dr. Lasater did do invalid. ███████████████████████████

███████████████████████,[10] but these critiques are not coupled with any scientific analysis or expertise regarding why such criticisms should be accepted.  They are simply Dr. Hayter's personal gripes about the approach Dr. Lasater took (and predictably, they are wholly unfounded, *see* Lasater Reb. Rpt. ¶¶ 6-86).  Dr. Hayter's critiques do not rise to the level of acceptable expert testimony, and the Court should therefore exclude

---



[10] For example, ███████ ███████████████████, ECF No. 172-5 at 90-91, ███████████████████, *id.* at 92-96, 105-111, ██████████" *id.* at 97-99, █████████████████████████████████ , *id.* at 100-104, 140-41, ████████████████████, *id.* at 112-118, ██████████████████ *id.* at 119-124, ███████████████████████████ , *id.* at 125-127, ███████████████ , *id.* at 128-138, ██████████████ , *id.* at 142-45, and ████████████ , *id.* at 146-48.

Dr. Hayter's methodologically baseless rebuttal to Dr. Lasater's testimony.  *See Bard*, 948 F.

Supp. 2d at 644-45; *Bard*, 2018 WL 514798, at *2.

## III.    DR. HAYTER'S OPINIONS ABOUT THE VALIDITY OF THE INFORMATION IN PLAINTIFFS' AMENDED COMPLAINT ARE UNRELIABLE

Dr. Hayter's opinions about the validity of the purported statistics in Plaintiffs' Amended

Complaint are pure speculation and therefore unreliable.  Again, Dr. Hayter himself has

recognized that any "good statistician will investigate … to assess the quality and

representativeness of the data being dealt with" in a statistical analysis.  Hayter, *supra*, at 269.

Dr. Hayter did not investigate the underlying data in the Amended Complaint whatsoever. ██

███████████████████████████████████████████████, Tr. 101:20-102:4, ███

█████████████████████████████████████, *id.* at 110:8-14, ███████████

███████████████████████████, *id.* at 114:7-20, and ████████████████████

███████████████████████████████, *id.* at 114:21-115:3. ████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████ ECF No. 172-5 at 164.[11]  But

knowing that a dataset is an amalgamation of what was "available" is not an indicator of

statistical propriety—in fact, the opposite: ████████████████████████████

---

[11] That supposition is incorrect.  Like Exhibit A, the statistics Plaintiffs chose to include in the Amended Complaint are missing documents and information relating to multiple of Sam Katz's clients.  This information was indisputably in Plaintiffs' counsel's possession at the time they drafted the Amended Complaint, yet inexplicably was omitted.  *See* ECF No. 150, January 16, 2025 Mot. to Compel Hr'g Tr. at 26:17-23 ("There are examples of approvals by neutral physicians in the plan that we know they have; we know that Mr. Katz had but they're not part of the production, and they contradict allegations that they have in the complaint that certain doctors never found something.  So we know that this is a jerry-rigged sample because they have things that they chose not to include in [the complaint] to make it look better for themselves.").

███████████████████████████████████████████████████████

████    Lasater Reb. Decl. ¶¶ 81-83.

Dr. Hayter's testimony made clear that his opinions about the Amended Complaint are

not based on any statistical principles.    ████████████████████████████████

███████████████████████████████████████    ECF No. 172-5 at 164,

███████████████████████████████████████████████████████

██████████████████    Tr. 147:2-19.  Dr. Hayter's "feeling" about the numbers is exactly the kind

of testimony *Daubert* requires the Court to exclude.  *See Bishop v. Triumph Motorcycles (Am.)*

*Ltd.*, 2021 WL 4316810, at *8 (N.D. W. Va. Sept. 22, 2021) (concluding expert's opinions based

on "background and intuition" were "not reliable within the *Daubert* framework" because they

could not "be tested, standardized or published") (quotations omitted); *Klaczak v. Consol. Med.*

*Transp.*, 458 F. Supp. 2d 622, 667 (N.D. Ill. 2006) ("[S]upposed 'expert' testimony cannot be a

hunch or a gut feeling.").  Without a reliable understanding of the underlying data, or a

methodology for reaching his conclusions about its utility, Dr. Hayter cannot offer a reliable

opinion about the conclusions based on that data.

Dr. Hayter also had little understanding of the methodology applied in the Amended

Complaint's analysis or about the scatterplots included in the Amended Complaint.    ████████

████████████████████████.  Tr. 34:1-25.  ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████    *Id.* at 138:11-21.  For example,

██████████████████████████████████████████, *id.* at 133:16-

134:2, ████████████████████████████████████████, *id.* at 134:22-

135:7, or ███████████████████████████████████████████, *id.* at

138:22-139:6.  Dr. Hayter has no basis for offering any opinion as to the purported statistical

information contained in the Amended Complaint and should be precluded from testifying

about it.

## IV.    DR. HAYTER'S OPINIONS SHOULD INDEPENDENTLY BE EXCLUDED UNDER RULE 37(c) BECAUSE HE DID NOT DISCLOSE THE FACTS OR DATA HE CONSIDERED IN PREPARING HIS REPORT

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires expert witnesses to disclose "the

facts or data" that they considered in forming their opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii); *see*

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 189 (4th Cir. 2017).  The term "facts or data" is

"interpreted broadly to require disclosure of *any* material considered by the expert, from

whatever source, that contains factual ingredients."  Fed. R. Civ. P. 26(a)(2)(B) advisory

committee's note to 2010 amendment (emphasis added).  Dr. Hayter has not come close to

complying with this requirement. ████████████████████████████████



████████████████████████████████████████████████████████

████████████████████████████████████████████████

          *See* ECF No. 172-5 at 195-99. █████████████████████████████

████████████████████████████████████, Tr. 57:12-22, ██████████████

████████████████████████████████████████████████████████

*id.* at 58:6-12, ████████████████████████████████, *id.* at 89:20-91:2,

and ████████████████████████████████████████, *id.* at 93:6-12. ███

████████████████████████████████████████████████

████████████████████████████████████████. *Id.* at 60:7-13 ███

████████████████████████████████████████████████ *id.* at

93:6-12 ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Dr. Hayter's decision to withhold key information about the facts or data in his report renders his opinions unreliable—and therefore excludable—under Rule 702.  *See, e.g.*, *Fernaays v. Isle of Wight Cnty.*, 2022 WL 866416, at *5 (E.D. Va. Mar. 23, 2022) (excluding expert's opinions because his report required the Court to "speculate" about the work that might have been done to form the basis of his opinions).   And his blatant violation of Rule 26(a)(2)(B)(ii)'s disclosure requirement deprives Defendants of the ability to question Dr. Hayter about particular facts or data he considered in forming his opinions and how those pieces of evidence affected his opinions.

It is because of this very kind of prejudice that violations of Rule 26(a)(2)(B) trigger an automatic sanction that prohibits a party from using the expert's testimony "unless the failure was substantially justified or is harmless," which the party failing to disclose has the burden of showing.  Fed. R. Civ. P. 37(c); *Ziegler v. Polaris Indus., Inc.*, 2024 WL 482212, at *11 (W.D.N.C. Feb. 7, 2024), *Bresler*, 855 F.3d at 190.  In determining whether nondisclosure was "substantially justified or harmless," a court considers five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

Defendants would experience unfair surprise and prejudice if additional information is disclosed later—after briefing on class certification and summary judgment is complete.  Curing that surprise at a later stage would be disruptive to the entire case schedule.  And Plaintiffs have

not offered any sufficient explanation (or any explanation at all) for their failure to disclose.  On June 2, 2025, Defendants sent a letter to Plaintiffs asking them for the information Dr. Hayter was unable to provide, including information provided to him by counsel that he testified formed the basis of his opinions but that he has still never revealed.  Garagiola Decl. Ex. C.  In response, Plaintiffs refused to provide any additional information because "Exhibits A and B were prepared by attorneys," and therefore "Dr. Hayter's opinions were not based on the method by which the data was collected or prepared," since he "was not involved in, and not aware of, the specifics of the creation of the dataset."  Garagiola Decl. Ex. D.  But that is not a sufficient justification for Plaintiffs' failure to disclose evidence.  Fourth Circuit law is clear that the requirements of Rule 26(a)(2)(B)(ii) apply "even when" the facts or data relied on by the expert are "provided by counsel."  *Elm Grove Coal Co. v. Director, O.W.C.P.*, 480 F.3d 278, 300 (4th Cir. 2007).[12]  Accordingly, Rule 37(c) provides an independent basis for excluding Dr. Hayter's testimony given his failure to sufficiently identify the facts and data upon which it is based.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion to Exclude the Testimony of Dr. Anthony Hayter.

Date: July 10, 2025

Respectfully submitted,

*/s/ Gregory F. Jacob*
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)

---

[12] *See also Jowite Ltd. P'ship v. Fed. Ins. Co.*, 2019 WL 1513457, at *4 (D. Md. Apr. 8, 2019) (explaining that "facts, data, or assumptions from the attorney that the expert considered or relied on in forming the expert's opinion" are not protected by the work product doctrine); *Océ N. Am., Inc. v. MCS Servs.*, 2011 WL 13217472, at *4 (D. Md. Sept. 9, 2011) (explaining that parties are entitled to discovery into the "facts or data provided by the lawyer that the expert considered in forming his or her opinions").

O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*

## CERTIFICATE OF SERVICE

I, Gregory F. Jacob, hereby certify that on July 10, 2025, I caused a copy of the foregoing document to be served upon all counsel of record via the CM/ECF system for the United States District Court for the District of Maryland.

<div style="text-align: right">

*/s/ Gregory F. Jacob*
Gregory F. Jacob

</div>