**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| JASON ALFORD *et al.*,<br><br>               Plaintiffs,<br><br>   v.<br><br>THE NFL PLAYER DISABILITY &<br>SURVIVOR BENEFIT PLAN *et al.*,<br><br>               Defendants. | Case No. 1:23-cv-00358-JRR |

**REPLY IN SUPPORT OF
DEFENDANTS' JOINT MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS
DANIEL LOPER'S, CHARLES SIMS'S, AND JAMIZE OLAWALE'S CLAIMS**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

I.    PLAINTIFFS' OPPOSITION IS PREDICATED ON IMPROPER
      SUMMARY JUDGMENT EVIDENCE AND LEGAL STANDARDS. .............. 2

II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF DANIEL LOPER'S CLAIMS. .......................................................... 4

      A.    Mr. Loper's Criticisms of the Neutral Physicians' Reports Do Not
            Create a Genuine Dispute of Material Fact About His Entitlement
            to Benefits. ................................................................................................ 4

      B.    Mr. Loper Points to No Evidence Raising a Material Dispute That
            His Records Were Fully Reviewed. ........................................................... 8

      C.    Mr. Loper's Decision Letters Comply with ERISA and Address
            All Relevant Information. ........................................................................ 10

III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF CHARLES SIMS'S CLAIMS. ....................................................... 12

      A.    Mr. Sims's Criticisms of the Neutral Physicians' Reports Do Not
            Create a Genuine Dispute of Material Fact About His Entitlement
            to Benefits. .............................................................................................. 12

      B.    Mr. Sims Points to No Evidence Raising a Material Dispute That
            His Records Were Fully Reviewed. ......................................................... 16

      C.    Mr. Sims's Decision Letters Comply with ERISA and Address All
            Relevant Information. .............................................................................. 18

IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF JAMIZE OLAWALE'S CLAIMS. .................................................. 20

      A.    Mr. Olawale's Criticisms of the Neutral Physicians' Reports Do
            Not Create a Genuine Dispute of Material Fact About His
            Entitlement to Benefits. ........................................................................... 20

      B.    Mr. Olawale's Allegations That the Neutral Physicians and the
            Board Incorrectly or Inconsistently Applied Plan Terms Do Not
            Create a Genuine Dispute of Material Fact About His Entitlement
            to Benefits. .............................................................................................. 28

      C.    Mr. Olawale Points to No Evidence Raising a Material Dispute
            That His Records Were Fully Reviewed. ................................................. 30

      D.    Mr. Olawale's Decision Letters Comply with ERISA and Address
            All Relevant Information. ........................................................................ 33

**TABLE OF CONTENTS**
**(continued)**

Page

V.      THERE IS NO EVIDENCE THAT THE PLAN IS A FRAUDULENT
        SCHEME OR THAT THE BOARD BREACHED ANY FIDUCIARY
        DUTY. ........................................................................................................... 34

        A.      There Is No Evidence of a Breach of the Duty of Loyalty. ..................... 35

        B.      Plaintiffs Do Not Dispute the Plan's Generous Claim Approval
                Rates........................................................................................................ 35

        C.      Plaintiffs Do Not Dispute the Plan's Neutrality Safeguards.................... 35

        D.      Neutral Physician Examinations Are Assigned Using Neutral
                Criteria. ................................................................................................... 37

        E.      The Board Appropriately Delegates Record Review and Conducts
                Party Advisor Training. ........................................................................... 38

        F.      Defendants Do Not Appoint Neutral Physicians, but the Applicable
                Vetting Process Is Fully ERISA-Complaint. ........................................... 40

        G.      Dr. Hayter's "Statistics" Are Not Evidence of a Fraudulent Scheme
                or Systemic Bias. .................................................................................... 40

        H.      Plaintiffs' Anecdotes About Individual Neutral Physicians Are
                Irrelevant and in Any Event Not Evidence of Bias.................................. 43

CONCLUSION.................................................................................................................. 45

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abromitis v. Cont'l Cas. Co./CNA Ins. Cos.*,
  114 F. App'x 57 (4th Cir. 2004) ........................................... 42

*Arndt v. City of Colo. Springs*,
  263 F. Supp. 3d 1071 (D. Colo. 2017) ................................... 43

*Balkin v. Unum Life Ins. Co.*,
  2024 WL 1346789 (D. Md. Mar. 29, 2024).............................. 14

*Bidwell v. Garvey*,
  743 F. Supp. 393 (D. Md. 1990) ........................................... 35

*Blanch v. Chubb & Sons*,
  124 F. Supp. 3d 622 (D. Md. 2015) ................................. 11, 18

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*,
  201 F.3d 335 (4th Cir. 2000) ................................................. 3

*Boyd v. Bell*,
  796 F. Supp. 2d 682 (D. Md. 2011) ........................................ 4

*Brumm v. Bert Bell NFL Ret. Plan*,
  995 F.2d 1433 (8th Cir. 1993) ............................................. 11

*Caplan v. CNA Fin. Corp.*,
  544 F. Supp. 2d 984 (N.D. Cal. 2008) ................................... 44

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011)..................................................... 20, 32

*Conkright v. Frommert*,
  559 U.S. 506 (2010)........................................................... 39

*Donnell v. Metro. Life Ins. Co.*,
  165 F. App'x 288 (4th Cir. 2006) .......................... 10, 11, 18, 33

*DuPerry v. Life Ins. Co. of N. Am.*,
  632 F.3d 860 (4th Cir. 2011) ................................................ 5

*Elliott v. Sara Lee Corp.*,
  190 F.3d 601 (4th Cir. 1999) ........................................... 7, 29

*Ellis v. Metro. Life Ins. Co.*,
  126 F.3d 228 (4th Cir. 1997), *abrogated on other ground by Thomas v. United
  of Omaha Life Ins. Co.*, 536 F. App'x 347 (4th Cir. 2013)................... 10, 11, 18, 33

## TABLE OF AUTHORITIES
### (continued)

Page

*Geiger v. Zurich Am. Ins. Co.*,
   72 F.4th 32 (4th Cir. 2023) ................................................................ 4, 5, 12, 20

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   2013 WL 6909200 (D. Md. Dec. 31, 2013) ............................................... 23

*Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   925 F. Supp. 2d 700 (D. Md. 2012) ........................................................ 39

*Giles v. Nat'l R.R. Passenger Corp.*,
   59 F.4th 696 (4th Cir. 2023) ......................................................... 3, 5, 21

*Gruber v. Unum Life Ins. Co. of Am.*,
   195 F. Supp. 2d 711 (D. Md. 2002) ..................................................... 11, 18

*Hayes v. Prudential Ins. Co. of Am.*,
   60 F.4th 848 (4th Cir. 2023) ................................................................. 3

*Jefferson v. Sellers*,
   250 F. Supp. 3d 1340 (N.D. Ga. 2017) .................................................... 44

*Krysztofiak v. Bos. Mut. Life Ins. Co.*,
   2021 WL 5304011 (D. Md. Nov. 15, 2021) ............................................... 10

*Larson v. Old Dominion Freight Line, Inc.*,
   481 F. Supp. 2d 451 (M.D.N.C. 2007), *aff'd*, 277 F. App'x 318 (4th Cir.
   2008) ............................................................................................. 14

*Learn v. Lincoln Nat'l Life Ins. Co.*,
   724 F. Supp. 3d 494 (W.D. Va. 2024) ............................................. 10, 18, 33

*Menk v. MITRE Corp.*,
   2024 WL 2257894 (D. Md. May 17, 2024) ................................................. 3

*Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*,
   832 F. App'x 586 (11th Cir. 2020) ....................................................... 32

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) ......................................................... 20, 32

*Reichard v. United of Omaha Life Ins. Co.*,
   805 F. App'x 111 (3d Cir. 2020) .......................................................... 42

*Ricci v. DeStefano*,
   557 U.S. 557 (2009) .......................................................................... 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Savage v. State*,
166 A.3d 183 (Md. 2017) ................................................................ 44

*Smith v. Cox Enters., Inc. Welfare Benefits Plan*,
127 F.4th 541 (4th Cir. 2025) .................................................. 11, 15, 32

*Smith v. NFL Player Disability & Neurocognitive Benefit Plan*,
2024 WL 722594 (W.D. Tex. Jan. 9, 2024) ....................................... 4

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014) ........................................................... 39

*Tekmen v. Reliance Standard Life Ins. Co.*,
55 F.4th 951 (4th Cir. 2022) ............................................................. 3

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) .......................................................... 25, 35, 36

*Walton v. Harker*,
33 F.4th 165 (4th Cir. 2022) ............................................................. 3

*Williams v. City of Charlotte*,
2025 WL 841836 (4th Cir. Mar. 18, 2025) ........................................ 3

*Youboty v. NFL Player Disability Plan*,
856 F. App'x 497 (5th Cir. 2021) ..................................................... 4

*Zahariev v. Hartford Life & Acc. Ins. Co.*,
2020 WL 12783951 (D.S.C. Aug. 11, 2020) ................................... 42

## <u>OTHER AUTHORITIES</u>

Alexandra Lenhard et al., *Continuous norming of psychometric tests: A simulation study of parametric and semiparametric approaches*, PLoS ONE 14(9):e0222279 (2019) ....................................................................... 26

Doug Campbell et al., *Sports-Related Extensor Carpi Ulnaris Pathology: A Review of Functional Anatomy, Sports Injury and Management*," 47 Brit. J. Sports Med. 17 (2013) ................................................................... 7

Kaitlin B. Casaletto et al., *Demographically Corrected Normative Standards for the English Version of the NIH Toolbox Cognition Battery*, 21 J. Int'l Neuropsychological Soc'y 378 (2015) ............................................... 26

**TABLE OF AUTHORITIES**
**(continued)**

Page

N. Islam et al., *Accuracy of the Montreal Cognitive Assessment tool for detecting mild cognitive impairment: A systematic review and meta-analysis*, 19 Alzheimer's & Dementia 3235 (2023) ................................................................ 24

**<u>REGULATIONS</u>**

29 C.F.R. § 2560.503-1 ................................................................................................ 9

29 C.F.R. § 2560.503-1(h)(2)(iv) ............................................................................... 9

29 C.F.R. § 2560.503-1(j)(6) ...................................................................................... 34

29 C.F.R. § 2560.503-1(j)(6)(i) ...................................................................... 12, 18, 19

29 C.F.R. § 2560.503-1(j)(6)(i)(A) ............................................................................ 8

29 C.F.R. § 2560.503-1(j)(6)(i)(C) ............................................................................ 11

## INTRODUCTION

Defendants filed separate summary judgment motions against Plaintiffs Daniel Loper, Charles Sims, and Jamize Olawale, demonstrating that Defendants are entitled to summary judgment on each of their claims.  Rather than respond directly to Defendants' arguments and supporting evidence, Mr. Loper, Mr. Sims, and Mr. Olawale filed a "consolidated" Opposition brief that provides no explanation as to how any of their individual claims is viable.  Instead, they scatter a plethora of disorganized factual allegations across 75 pages—most of them unrelated to their own claims, and almost all of them gross distortions of the record.

This Reply brief collects the dispersed factual allegations of each Plaintiff into discrete sections, both to correct Plaintiffs' misrepresentations and to underscore the absence of any material factual disputes precluding summary judgment.  None of the Plaintiffs has marshalled evidence showing the Board abused its discretion in denying their claim for benefits, failed to provide a full and fair review of their claim or adequate notice of their claim denials, or committed any breach of fiduciary duty, much less that a breach that personally injured them. The Court should enter summary judgment for Defendants as to each Plaintiff's claims.

Plaintiffs' lead argument in their Opposition is that Defendants breached their fiduciary duties because the entire Plan is a "fraudulent scheme" that is "reflected in the fiduciaries' actions regarding compensation, rewards, maintenance, monitoring, retention, and training of Plan physicians."  Pls.' Consol. Mem. L. Opp'n Defs.' Mots. Summ. J. ("Opp'n") at 3-4, ECF No. 197.  But the undisputed record utterly contradicts these claims, and none of the Plaintiffs points to any evidence that his own claims were impacted by such a scheme.

Critically, Plaintiffs do not dispute Defendants' evidence showing that the Plan has generous benefit claim approval rates for each disability type, resulting in hundreds of millions of dollars of benefit payments every year. *See, e.g.*, Mem. Supp. Defs.' Joint Mot. Summ. J. Pl.

D. Loper's Claims ("LM") at 2, ECF No. 115-2.[1]  Nor do they dispute that the Plan is a Taft-

Hartley Act plan, half the Trustees for which are appointed by the NFL Players Association

("NFLPA"), and that it has numerous neutrality safeguards in place to guard against bias.  *See*,

*e.g.*, *id.* at 3-8.  Indeed, ████████████████████████████████████████████████████

████████████████████████████████████████████████ Decl. M. Garagiola

Supp. Defs.' Reply ("Garagiola Decl."), Ex. E, Garofolo Tr. 373:24-374:4, 397:11-17.  These

undisputed facts are irreconcilable with a fraudulent scheme to deny benefits.

      Against this evidence, Plaintiffs offer rhetoric to prop up allegations that are devoid of

supporting substance.  They argue that statements by a handful of Neutral Physicians indicate

those physicians are biased, but most of those physicians did not even examine Mr. Loper, Mr.

Sims, or Mr. Olawale, and Plaintiffs do not offer even a scintilla of evidence that any of the

statements they highlight were incorrect.  Plaintiffs also push purported "statistics" that they

claim demonstrate that certain individual Neutral Physicians are biased, but those "statistics" are

both scientifically unacceptable and completely meaningless.  None of this purported evidence

contradicts Defendants' robust demonstration of the Plan's ERISA-compliant process for

utilizing Neutral Physicians and for safeguarding against bias, and Defendants are therefore

entitled to summary judgment on each individual Plaintiff's claim for fiduciary breach.

# I.    PLAINTIFFS' OPPOSITION IS PREDICATED ON IMPROPER SUMMARY JUDGMENT EVIDENCE AND LEGAL STANDARDS.

      Plaintiffs' Opposition ignores established summary judgment principles.  As the non-

moving party with the ultimate burden of proof, Plaintiffs must "go beyond the pleadings and

affidavits and show that there are specific facts showing that there is a genuine issue for trial."

---

[1] Defendants adopt the abbreviations and defined terms in their opening briefs as to Mr. Loper, ECF No. 115-2 ("LM"); Mr. Olawale, ECF No. 124-1 ("OM"); and Mr. Sims, ECF No. 125-1 ("SM").  Except as indicated, internal citations, quotation marks, and footnotes are omitted, and emphasis is added.

*See Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023). "[A] scintilla of evidence is insufficient to withstand an adequately supported summary judgment motion," as are "conclusory allegations or denials, without more." *Id.* Nevertheless, Plaintiffs improperly incorporate by reference into the Opposition factual *allegations* in their opposition to Defendants' motion to dismiss and eight pages of the Amended Complaint, Opp'n at 2. Such incorporation "inappropriately skirts the page limits imposed by the Local Rules of this court." *See Menk v. MITRE Corp.*, 2024 WL 2257894, at *5 (D. Md. May 17, 2024). It also hinders the Court's ability to determine whether Plaintiffs "designate[d] specific facts showing that there is a genuine issue for trial." *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[2]

As Defendants explained in their motions, under the proper legal standards and upon review of the undisputed factual record, Defendants are entitled to summary judgment as to each of the Plaintiffs' claims. *See* LM at 12-30; SM at 16-28; OM at 13-30. That included a detailed demonstration with supporting evidence that the eight-factor test set forth in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), requires affirmance of the Board's denial of Plaintiffs' benefits claims. LM at 14-24; SM at 13-29; OM at 15-27.

The smattering of allegations in Plaintiffs' 75-page Opposition does not suggest otherwise. Indeed, many of the factual allegations were raised for the first time in Plaintiffs' Opposition and cannot be considered by the Court. *See Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022) (plaintiff "cannot pursue claims that she failed to plead and only raised for the first time in response to a motion for summary judgment"); *Williams v. City of Charlotte*, 2025 WL 841836, at *2 n.3 (4th Cir. Mar. 18, 2025) (argument raised for the first time in response to

---

[2] Plaintiffs also inaccurately contend that *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 961 (4th Cir. 2022), establishes that any factual dispute relating to a benefit claim warrants a bench trial. *See* Opp'n at 2 n.2. In fact, the Fourth Circuit has recognized that *Tekmen* applies only to benefit claims that are reviewed de novo, and has no application to cases like this one, "'in which review in the district court is for abuse of discretion.'" *See Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 851 n.1 (4th Cir. 2023) (quoting *Tekmen*, 55 F.4th at 961 n.5).

motion for summary judgment and not pled in complaint is not properly before the court). These

new factual assertions are not based on any information that Plaintiffs gleaned through

discovery, but are rather based on their applications, medical records, Neutral Physician reports,

and decision letters, all of which Plaintiffs have had in their possession since before they filed

their Amended Complaint; there is no reason Plaintiffs could not have made these "new"

arguments then. Regardless, as explained in further detail below, none raises a genuine dispute

of material fact that the Board's denial of Mr. Loper's, Mr. Sims's, and Mr. Olawale's claims for

benefits must be affirmed under the governing abuse of discretion standard, and that the review

of their claims was adequate. *See Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 37 (4th Cir. 2023)

(a court "will not disturb a plan administrator's decision if the decision is reasonable, even if [it]

would have come to a contrary conclusion independently").[3] And Plaintiffs' conclusory

allegations and meaningless statistics offered to support their breach of fiduciary claims are not

competent summary judgment evidence and do not overcome the undisputed evidence wholly

contradicting any alleged "fraudulent scheme," Opp'n at 3, to deny benefits.

## II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF DANIEL LOPER'S CLAIMS.

### A.     Mr. Loper's Criticisms of the Neutral Physicians' Reports Do Not Create a Genuine Dispute of Material Fact About His Entitlement to Benefits.

Mr. Loper does not dispute that no Neutral Physician found that he met the Plan standard

for LOD disability. LM at 15. He also does not dispute that under the Neutral Rule this meant

that the Board could not award him LOD benefits. *Id.* For this reason alone, the Court should

affirm the Board's denial of benefits to Mr. Loper. ████████████████████

---

[3] Courts regularly grant summary judgment to the Plan in cases in which the Board exercised discretion in applying Plan terms. *See* LM at 12 (citing *Boyd v. Bell*, 796 F. Supp. 2d 682, 692 (D. Md. 2011); *Youboty v. NFL Player Disability Plan*, 856 F. App'x 497, 500-01 (5th Cir. 2021); *Smith v. NFL Player Disability & Neurocognitive Benefit Plan*, 2024 WL 722594, at *6 (W.D. Tex. Jan. 9, 2024)).



██████████████████████████████████

█████████████████████. Opp'n at 41.  This argument is immaterial as to ████████████

████████████████████████████████. ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████. *See* LM at 10-11.  Regardless, none of Mr.

Loper's criticisms of either doctor raises a material factual dispute about the denial of his claim.

*See Giles*, 59 F.4th at 701-02.  Indeed, his criticisms of both doctors' reports as inadequate are

wholly unsupported by the record, and do not undermine the reasonableness of the doctors'

conclusions or the Board's determinations.[4]  *See Geiger*, 72 F.4th at 37.

   Mr. Loper contends that Dr. Apple should have awarded him two additional points for a

left wrist carpal tunnel release surgery that took place eight years after his career ended, but that

argument is irrelevant because those points would not have gotten Mr. Loper to the ten points

that the Plan required for LOD benefits at that time.  LM at 18.[5]  Moreover, the record supports

that ████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████  *Id.* at 18 n.10; Garagiola Decl., Ex. F, 2019 DPD § 5.1(b); *see also* DL-502[6]

(██████████████████████████████████████); DL-619

(██████████████████████████████████).

   Mr. Loper argues that on appeal, Dr. Cook should have awarded him two points for the

---

[4] The Board was required to rely on "substantial evidence," which this Circuit has held means "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011).  The Neutral Physician reports at issue here more than satisfy this standard.
[5] Mr. Loper has abandoned the allegation that ████████████████████████████████████. AC ¶ 210; *see generally* Opp'n.
[6] Citations to DL-217-20 are at ECF No. 115-8; and citations to DL-221-625 are at ECF No. 115-9.

same surgery.  AC ¶ 213. ███████████████████████████████████

███████████████████████████████████████████████████. *See*

DL-587-94. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ DL-587. ███████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████ DL-589. ████████████████████████████████████

█████████████████████████████████████████████████████

████████ DL-594; *see* 2019 DPD at 64-65.[7]

Mr. Loper's newly raised contention that ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████, Opp'n at 17-18, 24, 33-34, 41-

42, is meritless.  First, Mr. Loper's arguments concerning ████████, raised for the first time in

the Opposition, *see* AC ¶¶ 202-14, should not be considered.  *See supra* Section I.  Regardless,

█████████████████████████████████████████████████████

███████████████████████████████████.  *See* DL-298-309. ███████████

████████████████████████████████████.  DL-298 ███████████

████████████████████████).  ██████████████████████████████

█████████████████████████████████████████████████████

---



[7] ████████████████████████████, *see* 2019 DPD, First Amend., but ███████████████

███████████████.  *Contra* Opp'n at 41.



DL-303.

DL-298, , *see* DL-587.

provides no support that this impairment arose out of League activities that ended six years before.[8]

Nor does Mr. Loper identify any historical medical records that "disagreed" with

. *See* Opp'n at 41-42 (citing DL-241, 269, 291, 299-310, 316, 350, 584-94, 428-34, 584-94). Mr. Loper does not identify

and in fact the medical records cited indicate that

. *See* DL-312 (

); DL-270 (

); DL-291 ( ); DL-316 (

); DL-350

(  ).[9] None of the evidence that Mr. Loper cites indicates that

---

[8] Plaintiffs claim for the first time in the Opposition that

DL-298. Not so.

*Id.*

. Moreover,

it would not have been an abuse of discretion for the Board to deny benefits. *See, e.g., Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999) ("[I]t is not an abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting medical reports were presented.").

[9] *See* Doug Campbell et al., *Sports-Related Extensor Carpi Ulnaris Pathology: A Review of Functional Anatomy, Sports Injury and Management*," 47 Brit. J. Sports Med. 17 (2013).

██████████████████████████████████████████. *See, e.g.*, Opp'n Ex. 40 (██████████████

████████████████████████████████████████████████████████████████

████████████████████████████); DL-241 (███████████████); DL-299-310 (██████

██████████████████████████████████████████████████████████

████████████████).

Thus, although Mr. Loper faults ████████████████████████████████████

████████████████████████████████████████████ Opp'n at 41-42,

nothing in the team medical records in fact conflicted or disagreed ████████████████████. *Cf.*

29 C.F.R. § 2560.503-1(j)(6)(i)(A) (requiring an "explanation of the basis for disagreeing with or

not following: . . . [t]he views presented by the claimant to the plan of health care professionals

treating the claimant and vocational professionals who evaluated the claimant").

Finally, Mr. Loper, for the first time in the Opposition, faults ████████████████████

████████████████████████████████████████████████████

████████████████ Opp'n at 41 (citing DL-589). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████ DL-589, 594.

**B.      Mr. Loper Points to No Evidence Raising a Material Dispute That His Records Were Fully Reviewed.**

Mr. Loper does not dispute ██████████████████████████████████████████

████████████████████████████████████████████████ DL-217 (███

███); Garagiola Decl., Ex. H, Contracts at NFL_ALFORD-0012244 (████████), and ████████

██████████████████████████. DL-430, 586.  Nor does he dispute the Board lawfully

delegated its responsibility to review his claim records to the Party Advisors for the NFL

Management Council ("NFLMC") (Patrick Reynolds) and the NFLPA (Adora Williams), and
that the Party Advisors provided sworn declarations and testimony that they review every
document for every appeal that they consider.  LM at 7-8, 20-21, 30.  Nor does he identify any
specific documents that he believes Ms. Williams and Mr. Reynolds failed to review that
somehow prejudiced the determination of his claim.

     Mr. Loper attempts to vaguely cast doubt on the veracity of the Party Advisors'
declarations by asserting that if ████████████████████████████████████████
███████████████████████████████████████████.  Opp'n at 22 n.39 (citing Decl.
A. Williams Supp. Defs.' Mots. Summ. J. ("Williams Decl.") ¶ 7, ECF No. 115-21); *see*
Garagiola Decl., Ex. A, Williams Tr. 89:18-21, 95:2-19.  ERISA, however, does not mandate a
specific time-per-page for record reviews.  *See* 29 C.F.R. § 2560.503-1(h)(2)(iv) (review must
"take[] into account all comments, documents, records, and other information submitted by the
claimant").  Moreover, Ms. Williams's declaration states that ██████████████████████
██████████████████████████████ Williams Decl. ¶ 7, and there is no evidence in the
record that she ██████████████████████████.

     Second, Mr. Loper argues for the first time in the Opposition that Defendants must have
failed to review all of his records because no Plan documentation mentioned ████████████
██████.  Opp'n at 28-29.  But no ERISA provision requires examining physicians or the Board
to comment on or notate every record in a claimant's file, *see generally* 29 C.F.R. § 2560.503-1,
and ███████████████████████████████████████████████████████████.
DL-430, 586. █████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████

Mr. Loper has not identified any genuine dispute of material fact that the Board took into account all of his records, or that based on these records Mr. Loper was not entitled to benefits under the Plan.  Therefore, Defendants are entitled to summary judgment on Mr. Loper's Count I and Count III claims.

### C.    Mr. Loper's Decision Letters Comply with ERISA and Address All Relevant Information.

An ERISA decision letter must "outline the steps that a claimant must take to obtain review" of the benefits denial.  *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 296 (4th Cir. 2006).  An administrator must "substantially compl[y]" with this requirement, and ERISA "direct[s] ERISA plan administrators to provide claimants with a formula for obtaining benefits." *Id.*; *Krysztofiak v. Bos. Mut. Life Ins. Co.*, 2021 WL 5304011, at *3 n.4 (D. Md. Nov. 15, 2021). To show that a letter is deficient, a claimant must identify a "material shortcoming in [the administrator's] compliance with ERISA's procedural or substantive requirements," *Learn v. Lincoln Nat'l Life Ins. Co.*, 724 F. Supp. 3d 494, 529-30 (W.D. Va. 2024), that shows a "causal connection between the [letter's alleged] defects and the final denial of a claim" and how the purported defects "prejudiced" the claimant's ability to obtain review, *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 236-38 (4th Cir. 1997), *abrogated on other ground by Thomas v. United of Omaha Life Ins. Co.*, 536 F. App'x 347, 351 (4th Cir. 2013).  The *Learn* court rejected the plaintiff's contention that the administrator's letter did not "sufficiently explain what information Mr. Learn 'needed to produce to perfect his appeal,'" noting that "Mr. Learn has not identified any material shortcoming in Lincoln's compliance with ERISA's procedural or substantive requirements—especially since Lincoln only was required to have 'substantially complied with Section 2560.503-1's requirement that such letters outline the steps that a claimant must take to obtain review' of the benefits denial." *Learn*, 724 F. Supp. 3d at 529 (quoting *Donnell*, 165 F.

App'x at 296).[10]

Mr. Loper does not identify any material shortcoming in his Board decision letter or any purported prejudice.[11]  He does not dispute that the Board's decision accurately stated the basis for the benefits denial: ██████████████████████████████ ████████ ████████████████████████████████, DL-620-22 (███████████████ ████████████████████████████████████████████████ ███████████████████), and █████████████████████████████ ████████████████, DL-595-607.

████████        Id.  This satisfied ERISA.  See LM at 24-26; Ellis, 126 F.3d at 238 ("the purpose of the specificity requirements in the notice provision is to permit the claimant to adequately prepare an appeal to the federal courts and for those courts to properly review the decision").[12]

---

[10] See also Donnell, 165 F. App'x at 297 (denying claim of deficient letter where plaintiff failed to show a "causal connection between [such procedural defects] and the final denial of her claim" and letter explained how to file an appeal and submit supporting evidence); Gruber v. Unum Life Ins. Co. of Am., 195 F. Supp. 2d 711, 716-17 (D. Md. 2002) (decision letter was sufficient because it stated the reasons the plaintiff's benefits were terminated, the right to review the decision, the time limit and procedures for obtaining review, and the right to request copies of pertinent documents); Blanch v. Chubb & Sons, 124 F. Supp. 3d 622, 639 (D. Md. 2015) ("[T]he Committee initially explained that Blanch had been denied benefits because he had been terminated for cause. . . .  That is explanation enough, notwithstanding the Committee's failure to outline the factual bases for Blanch's for-cause termination.  And the final explanation for his termination—which extensively outlined the facts supporting Blanch's termination—is sufficient to permit further review, as ERISA requires.").

[11] Mr. Loper's arguments about his Committee letter, Opp'n at 24-25, are meaningless because even if that letter were deficient—it was not—the only relief he could possibly receive would be a referral by the Board for review by a new Neutral Physician who did not examine him at the Committee leve█████████████████████████ ████████

[12] Mr. Loper's reliance on Smith v. Cox Enters., Inc. Welfare Benefits Plan, 127 F.4th 541 (4th Cir. 2025), is misplaced.  He claims Smith faulted the administrator because it "'never engage[d] in a meaningful discussion' and the 'appeal denial letter ma[de] no mention of' conflicting evidence."  See Opp'n at 23 n.42 (quoting Smith, 127 F.4th at 546).  But Smith concerned a regulation requiring a decision letter to discuss the basis for disagreeing with a Social Security disability ("SSD") determination.  See Smith, 127 F.4th at 546 (citing 29 C.F.R. § 2560.503-1(j)(6)(i)(C)).  Mr. Loper omits part of the sentence he quotes from Smith.  The court wrote, "The appeal denial letter makes no mention of Dr. Harris [who performed the SSD examination].  Aetna never engages in a meaningful discussion of the [SSD] determination, initially or on recertification."  Id.  Smith does not apply here: There is no SSD, and neither the Neutral Physicians, Committee, nor Board disagreed with any of Mr. Loper's records.  Brumm v. Bert Bell NFL Ret. Plan, 995 F.2d 1433 (8th Cir. 1993), which Mr. Loper also relies on, see Opp'n at 23 n.42, is also not persuasive.  Brumm faulted the Plan for not explaining what "construction the Board was placing on the Plan language and what element required for recovery Brumm failed to prove."  995 F.2d at 1437.

Mr. Loper contends for the first time in the Opposition that ███████████

███████████████████████████████████████████████████

███████.  Opp'n at 25 (citing DL-269, 291, 316, 337, 351).  Letters must include "an

explanation of the basis for disagreeing with" the "views . . . of health care professionals treating

the claimant."  29 C.F.R. § 2560.503-1(j)(6)(i).  But the Board did not disagree with ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████.  DL-270; *see* DL-

269, 291, 316, 337, 351.

The Court should grant summary judgment for Defendants as to Mr. Loper's Count II.

**III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF CHARLES SIMS'S CLAIMS.**

    **A.    Mr. Sims's Criticisms of the Neutral Physicians' Reports Do Not Create a Genuine Dispute of Material Fact About His Entitlement to Benefits.**



███████████████████████████████████████████

███████████████████████.  SM 9-10.  He does not dispute any of the

following essential facts, which together require that the Board's decision be affirmed, *see*

*Geiger*, 72 F.4th at 37:



1.    ███████████████████████████████████.  CS-650-51, 668-69.[13]

2.    ███████████████████████████████████.  CS-699.

███████████████████████████████████████████████

███████████████████████CS-699-700.

3.    ███████████████████████████████.  CS-728-39.

███████████████████████████████████████

---

[13] Citations to CS-217-20 are at ECF No. 125-7; and citations to CS-457-765 are at ECF No. 125-12.



. *Id.*

4. ██████████████████████████████████████████████
CS-749; *see* Garagiola Decl., Ex. G, 2020 DPD § 9.3(a).

5. ██████████████████████████████████████████████
██████████. CS-755-56.

6. ██████████████████████████████████████████████.
CS-761.

In opposition to Defendants' summary judgment motion, Mr. Sims does not identify any material inadequacies in Dr. Chang's report, which was the exclusive basis for his benefits challenge in the Amended Complaint. AC ¶¶ 190-93. Mr. Sims asserts that ██████████



. Opp'n at 34-35 & n.56, 39, 53-54; *see* CS-740-43. ████████████████

CS-755. Put differently, ██████████████

. *See, e.g., id.* (██████████████

). This conclusion is consistent with team records, ██████████████. *See, e.g.*, CS-743 ██████████

).

Mr. Sims also contends that ██████████████

. Opp'n at 49-50. But his only supporting citation is to ██████████, CS-750,

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████. CS-752-56. ████████████████████████████████████████████

████████████████████████████████████████████████.[14] *See, e.g., Balkin v. Unum Life Ins. Co.*, 2024 WL 1346789, at *20 (D. Md. Mar. 29, 2024) (disability plan reasonably gave less weight to plaintiff's subjective reports of pain because she "did not appear in acute distress at her medical appointments"); *Larson v. Old Dominion Freight Line, Inc.*, 481 F. Supp. 2d 451, 459 (M.D.N.C. 2007) ("[T]he administrator and the Court should consider the degree to which subjective complaints are supported by objective evidence of disability and the degree to which other evidence refutes such claims."), *aff'd*, 277 F. App'x 318 (4th Cir. 2008).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████.

All of Mr. Sims's remaining criticisms are not only impermissibly raised for the first time in his Opposition, *see supra* Section I, they also have nothing to do with ██████████████████,

████████████████████████████████████████████. The Court should thus ignore them. But even if the Court does engage with them, none creates a genuine dispute of material fact about whether the Board abused its discretion in denying Mr. Sims's appeal.

Mr. Sims complains for the first time that ████████████████████████████████

████████████████████████████████, Opp'n at 31, but ████████████████████████

████████████████████████████████████████████████████████



---

[14] ████████████████████████████████████████████████████████████
████████████████████████████ CS-462, 488, 511.



██████████████████.[15]

Mr. Sims further faults—for the first time—███████████████████████

████████████████████████████████████

███████████████, Opp'n at 29, 43, but █████████████████████████

████████████████████████. CS-728-43; AC ¶¶ 190-93. ███████

████████████████████████████████

████████████████████ CS-754, and ████████████████████████

█████████████████████████████████████.[16]

Finally, Mr. Sims contends for the first time that █████████████████

█████████████████████████. Opp'n at 19, 30.  But

the record is clear that there was no impact, ██████████████████████

████████████████████████████████████

████████████████████████████████████

██████ His test scores played no role in that analysis.[17]

Mr. Sims relatedly identifies ████████████████████████

---

[15] The sole example Plaintiffs identify of a player who was examined by a vocational expert is Detron Smith, Opp'n Ex. 30, whose very different claims (under a different disability plan and seeking different benefits) are discussed in detail in *Smith*, 2024 WL 722594, at *1-4.  There is no requirement in the Plan that players be examined by a vocational expert; indeed, although Mr. Smith was referred to one in connection with his 2009 *Retirement Plan* application, the court held that he was not entitled to such a referral under the *Disability Plan*.  *See id.* at *8.

[16] Mr. Sims faults ██████████████████████████████████████████

██████████ Opp'n at 39; CS-545, but ████████████████████████████

[17] Mr. Sims does not even argue—much less present *evidence*—that ████████████████████

████████████ *See* Opp'n at 19, 30.  Furthermore, ████████████████████████

████████████████ And contrary to Mr. Sims's suggestion, Opp'n at 19, ████████████, CS-688,

████, Defs.' Mem. Supp. Class Cert. Surreply, Ex. M ("Directive") at NFL_ALFORD-0068321, ECF No. 219-23, and thus did not violate any Plan provision, directive, or rule.  *See* Garofolo Tr. 335:8-17 ██████████████████

██████████████████████████); *see also* Decl. S. Clark Supp. Defs.' Reply Supp. Defs.'
Mots. Summ. J ("Clark Decl.") ¶ 4.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Opp'n at 30 &

n.51.  That misunderstands the Plan, which states that "[t]he educational level and prior training

of a Player will not be considered in determining whether such Player is '*unable to engage in*

*any occupation or employment for remuneration or profit*.'"  2020 DPD § 3.1(e)(1).  This means

that a player's education is not to be considered in determining whether a player is employable;

in other words, a player cannot be deemed unemployable merely because he is poorly educated,

or employable simply because he has a college degree.  Mr. Sims does not identify any way in

which ████████████████████████ impacted any medical determination of

disability.  Opp'n at 31.

     Defendants are accordingly entitled to summary judgment as to Mr. Sims's Count I.

**B.    Mr. Sims Points to No Evidence Raising a Material Dispute That His Records Were Fully Reviewed.**

     Mr. Sims does not dispute ████████████████████████████████

█████████████████████████████████████████████████ CS-217

(█████████); Contracts at NFL_ALFORD-0012226 (█████████), NFL_ALFORD-0012236 (█

██████), NFL_ALFORD-0012251 (█████████), NFL_ALFORD-0012289 (█████████); █

███████████████████████████████████████████████████

████████████████████████████████████████████████████,

CS-635, 651, 671, 688, 751 (██████████████████████).  Nor does he dispute that the

Board lawfully delegated its responsibility to review his claim records to the Party Advisors for

the NFLMC and NFLPA, who provided sworn declarations and testimony that they review every

document for every appeal that they consider.  SM at 7-8, 21-22, 27.

     Instead, Mr. Sims raises entirely new claims that █████████████████████

███████████████████████████████████████, none of which are mentioned in the

Complaint, and none of which (even if true) are material to his appeals.

Mr. Sims claims for the first time that ████████████████████████

████████████████████████████████████████████████████████

████████████████. Opp'n at 29 (citing CS-579, 583); *id.* at 42.  This is immaterial because ██

████████████████████████████████████████████████

████████████████████████, and ██████████████████████, CS-642-43, and

██████████████████████████████, CS-644-45, and thus could not have

awarded any points regardless of any historical injuries.[18]

Mr. Sims raises similar and newly added claims that ██████████████████████

████████████████████████████████. Opp'n at 29 & n.50 (citing CS-545

(████████), 742 (██████████████████████████████)), but these

improper new allegations also have nothing to do with Mr. Sims's appeal ████████████

████████████████████ and do not support any inference of material error or

prejudice.[19]  ERISA does not require that an examining physician affirmatively comment on



[18] The records Mr. Sims cites also do not establish that ████████████████████████████

████   CS-579,

███████████████████████████████████████. CS-560

CS-593 ███████████████████████████); CS-494 (█████ █

███████ █ CS-583.

[19] ██████████████████████████████████

██████████████████████ CS-689.
████████████████████. CS-693.

███████████████CS-688.█████████████████

█████████████████████████████████████████

every medical record in a file. *See* 29 C.F.R. § 2560.503-1(j)(6)(i).

Defendants are accordingly entitled to summary judgment on Mr. Sims's Count III claim.

**C.    Mr. Sims's Decision Letters Comply with ERISA and Address All Relevant Information.**

Mr. Sims does not dispute that his decision letters accurately stated the basis for the

Committee's decision . *See* CS-699-719, 760-65.

Mr. Sims also does not dispute that his decision letters contained "all the information necessary

to perfect" the appeal: His right to appeal and review his records, the relevant Plan provisions,

the deadlines, and the procedures for obtaining copies of pertinent documents. *See* SM at 24-26.

That is all that ERISA requires, *see Donnell*, 165 F. App'x at 296; *Learn*, 724 F. Supp. 3d at

529-30, and Mr. Sims fails to identify any prejudice from any alleged shortcomings. *See Ellis*,

126 F.3d at 238.[20]  The Court should thus enter summary judgment for Defendants on Count II.

Mr. Sims complains for the first time in the Opposition that

, Opp'n at 18 n.29, 24-25 (citing CS-225, 313), but he does not point to any evidence

in his record indicating that , nor does he

explain how his unsupported assertion should have factored into the

---

[20] Mr. Sims does not argue that he would have made different arguments on appeal to the Board or in the Complaint but for the letters he received. *See Blanch*, 124 F. Supp. 3d at 639; *Gruber*, 195 F. Supp. 2d at 716-17.

Board's discussion.  Mr. Sims also newly complains that ███████████████████

██████████████████████████████████████, Opp'n at 24,

34,[21] but ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. *See, e.g.*, CS-743, 753-55; ██████████████ at NFL_ALFORD-0010280

(██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████). ERISA requires

decision letters to state an "explanation of the basis for disagreeing" with a claimant's health care

professionals, 29 C.F.R. § 2560.503-1(j)(6)(i), but ████████████████████████████

██████████████████ CS-565-79, 743, 755.[22]  Finally, Mr. Sims faults the

Board for not mentioning the "Special Rules" that govern when T&P benefits can be awarded for

psychiatric/psychological impairments. *See* 2020 DPD § 3.5(b).  But the Special Rules were not

relevant to the Board's decision ████████████████████████████████████████

██████████████████, *see* CS-760-62; SM at 25-26; the Board

applied the MAP Rule to deny Mr. Sims's claim, 2020 DPD § 9.3(a), not the Special Rules.[23]

---

[21] ████████████████████, *see* CS-457-528 (application); CS-529-632
(medical records); CS-726-43 (appeal), but ████████████████████████. *See* Garagiola
Decl., Ex. I, ████████████ at NFL_ALFORD-0010274.
[22] ██████████████████████████████████████████████
████████████████████. *Contra* Opp'n at 24 n.43.
[23] Mr. Sims makes an entirely new argument in his Opposition that ████████████████████
████████████████████████████████████████████████ *Compare* AC ¶¶ 68, 193, 293,
*with* Opp'n at 35-36.  That misreads the Special Rules, which expressly limit when psychological/psychiatric
disorders can qualify for Active Football T&P benefits, specifying that they do not qualify unless they are caused by
an injury or illness (or a prescription for an injury or illness) that arises out of League football activities, or are
caused by an illness or injury that otherwise independently qualifies the player for Active Football benefits. *See*
2020 DPD §§ 3.4(a) ("Subject to the special rules of Section 3.5 . . . ."), 3.5(b).  Neither the Board nor the Court

Mr. Sims has failed to identify a genuine dispute of material fact as to his decision letter, and Defendants are accordingly entitled to summary judgment on this Count II.

## IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF JAMIZE OLAWALE'S CLAIMS.

### A.    Mr. Olawale's Criticisms of the Neutral Physicians' Reports Do Not Create a Genuine Dispute of Material Fact About His Entitlement to Benefits.



OM at 10.  He does not dispute that ███████████████████████████████████████████████. OM at 16; JO-859-60, 876-80, 889-90, 907-08, 925-26, 978-83, 993-94, 1012-13, 1026-27, 1038-39.[24]  On that record, the Board was compelled by the Neutral Rule to deny his claim for benefits, and his Opposition offers no explanation as to how benefits could have been granted consistent with Plan terms. Defendants are accordingly entitled to summary judgment on Mr. Olawale's Count I claim for benefits.  *See Geiger*, 72 F.4th at 37.

Mr. Olawale suggests that the Board abused its discretion by determining that the Neutral Physicians' reports were "adequate" to decide his claim.  Opp'n at 38-45.  ███████████ ███████████████████████████████████████████████████████ and the Board accordingly reviewed and considered them when deciding his claim, but it had no authority to order new or revised Committee-level reports.  Rather, the Plan's standard appeal process automatically

---

may rewrite the collectively bargained plan terms.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that ERISA § 502(a)(1)(B) does not allow a court to change or alter the terms of a plan); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 362 (4th Cir. 2015).

[24] Citations to JO-217-20 are at ECF No. 124-7; citations to JO-301-70 are at ECF No. 124-10; and citations to JO-553-1065 are at ECF No. 124-13.

supplied Mr. Olawale ███████████████████████████████████

███████████████████████████████████████ OM at 10-11.

     Regardless, none of Mr. Olawale's criticisms of the Committee- or Board-level Neutral Physician reports raises a genuine dispute of material fact about whether the Board abused its discretion in accepting them as adequate to determine his claim. *See Giles*, 59 F.4th at 701-02.

█████████████████████████████████████████████. Opp'n at

39-40. He cites JO-876-78, 768-69, and 774-75, which do not support his claim: ███████

███████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████. █████████████████████████. He further faults

█████████████████████████████████. Opp'n at 52-53. This is

immaterial ██████████████████████████████████████████████

████████████. *Compare* JO-886 (████████████████████████████

███████████████████████████), *with* JO-785 (███████████████████

█████████████████████████).

█████████████████████████████████████████████

███████████████████████████, Opp'n at 44 (citing JO-912-13), but ███████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████. JO-584, 711-14, 736-38. In addition, ████████████████████████

████████████████ *See, e.g.*, JO-912-14 ███████████████████████



█████████████████████████████████████

██████ ), 1009 (████ Mr. Olawale also argues that ████████████

███████████████████████████████████████. Opp'n at

44 & n.67. ████████████████████████████████

█████████████, JO-861, 873; ████████████████, JO-862-63;

█████████████████ JO-864; and ████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████ JO-864-65.[25]

████████████████████████████████████

█████████████████████████████████████

████████████████████ Opp'n at 29-30, 42, 51 & n.74.  This claim

is immaterial ██████████████████████████████

████████████████████████. *See* JO-981-82, 992.  And

Mr. Olawale is also incorrect: ███████████████████████

████████ JO-988, and ████████████████████

████████████████ JO-992, but ████████████

█████████████████████████████████

---

[25] Mr. Olawale argues in a footnote that █████████████
████████████████████████ Opp'n at 44 n.68 (citing JO-872 (
██ ), 894 (████ ), 900 (██ But there is no inconsistency among the Neutral Physicians;
██████████ JO-894, but
████ JO-900. ██████████████████ JO-872-73, 1001-02, 1023.
████████████ *See* JO-1002.



███ *id.*[26] Mr. Olawale newly argues ████████████████████████████

███████████████████████████████████████, Opp'n at 51, 55 (citing

JO-663),[27] but ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. *See* 2020 DPD §§ 5.1(c), 5.5(c); DPD at 68 ("A

Player is awarded points for documented . . . degenerative joint disease only if [it is] related to

League football activities.").

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Opp'n at 42-43, 62 (citing JO-1014, 1025). ████████

████████████████████████████████████████████

████████████████████ JO-1025. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ *Id.*[28] The MoCA is merely one test in a much

larger neuropsychological test battery, and no single test result directly corresponds to

impairment of a domain of neurocognitive functioning.[29] 2020 DPD §§ 6.2(a)-(b); JO-917 (█

---

[26] ████████████████████████████████████████████████████

████████████████████████████ *See* JO-669, 693, 701-02, 742-51, 774-75.

[27] Mr. Olawale asserts that the Plan has previously awarded benefits based on a "worsening or degeneration of the underlying football-caused medical impairments arise[ing] out of League football activities." Opp'n at 55 (quoting *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2013 WL 6909200, at *24-25 (D. Md. Dec. 31, 2013)). But *Giles* concerned the Retirement Plan, which did not contain the Points System ████████████████████████ ████████. *Id.* And in any event, ████████████████████████████████ ████████████████████████

[28] ████████████████████████████████████████████████ ████████████████████████████████ JO-1033. ████████

[29] Mr. Olawale cites to ████████████████████████████████████ ████████████████████████████████████████ *See*

[REDACTED]

[REDACTED] ).[30] [REDACTED]

[REDACTED]

[REDACTED] does not indicate that the Board abused its discretion by accepting her report.[31]

[REDACTED]

[REDACTED]. Opp'n at 20, 46.  Neither claim has merit. [REDACTED]

[REDACTED].  [REDACTED]

[REDACTED] was required by Plan policy, consistent with standard professional practice, and not prohibited by any provision of ERISA or the Plan.  In addition, Mr. Olawale makes no effort to demonstrate that [REDACTED]

[REDACTED], and in the absence of a demonstrated injury to his benefit payment,

---

https://mocacognition.com/faq/; https://mocacognition.com/moca-clinic-data/.  It does not say that any particular test score on the MoCA, which takes only 10-15 minutes to administer, equates to a diagnosis.  Moreover, the stated MoCA ranges are based on 2005 data that was validated only for 55-85 year olds ( [REDACTED] ) while more recent systematic reviews have shown that applying a cutoff score of 26 to represent normal cognitive functioning has "poor specificity" whereas using a cutoff score of 23 maximizes the test's specificity.  Garagiola Decl., Ex. N, N. Islam et al., *Accuracy of the Montreal Cognitive Assessment tool for detecting mild cognitive impairment: A systematic review and meta-analysis*, 19 Alzheimer's & Dementia 3235, 3236 (2023).  In other words, [REDACTED]

[REDACTED] Mr. Olawale's other citations are merely to pages from other Neutral Physicians' reports, and do nothing to bolster his argument.  *See* Opp'n at 43 (citing JO-1014 ( [REDACTED] ); JO-1025 ( [REDACTED] )); *id.* at 62 (citing JO-859-76 ( [REDACTED] ); JO-895-907 ( [REDACTED] ); and JO-1012-25 ( [REDACTED] )).

[30] [REDACTED] JO-918. [REDACTED] JO-919-20.

[31] Mr. Olawale makes the same new argument that [REDACTED]. Opp'n at 42, 63. [REDACTED]

[REDACTED] JO-903-04. [REDACTED]

he lacks standing to argue that ██████████████████████████████████████████

██████████████. *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540-44 (2020) (ERISA plaintiffs

lack Article III standing to bring fiduciary breach claims absent a showing that the alleged

breach impacted their own benefit payment).

   Mr. Olawale presumably makes no attempt to show that ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████    ████████████████████████████████████████

████████████████████████████████    *See, e.g.*, JO-347 (████████████████████

████████████████████████████████████████████; Directive at

NFL_ALFORD-0068321████████████████████████████████████████████

████████████████████████████████████    ████████████████

████████████████████████████████████████████████

████████████████. JO-1036 (████████████████████████████████████

████████████████████████████).    ████████████████████████████████

████████████████████████████████████████████████

██████, Directive at NFL_ALFORD-0068321, but ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████    Decl. R. Garza Supp.

Defs.' Reply Supp. Defs.' Mots. Summ. J. ("Garza Decl.") ¶ 6. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



. *Id.* ¶ 7.[32]  These inadvertent wording errors had no effect on Mr. Olawale or his claim.

Mr. Olawale is correct that ▮▮▮. *See* Opp'n at 20, 46, 48 & n.69; *see also* Directive at NFL_ALFORD-0068321.  But once again, Mr. Olawale offers no evidence that ▮▮▮, JO-1034, ▮▮▮.  The absence of any evidence of harm is fatal to Mr. Olawale's claim.

Mr. Olawale's claim also fails for the more fundamental reason that the Plan does not prohibit norming of neuropsychological test scores for education.  Norming is a standard neuropsychological practice that ensures that tested individuals are assessed by comparison to appropriate peers.  There is a substantial difference in expected performance on most tests between those with five years of education as compared to those with 16.[33]  Mr. Olawale rests his interpretation on a Plan provision that states that, for purposes of determining whether a player is T&P disabled, "[t]he educational level and prior training of a Player will not be considered in determining whether such Player is '*unable to engage in any occupation or*

---

[32] Plaintiffs similarly claim that ▮▮▮ Opp'n at 45 n.68. ▮▮▮ *See* Clark Decl. ¶¶ 4-11.

[33] *See, e.g.*, Garagiola Decl., Ex. M, Kaitlin B. Casaletto et al., *Demographically Corrected Normative Standards for the English Version of the NIH Toolbox Cognition Battery*, 5 J. Int'l Neuropsych. Soc'y 378, 379 (2015) ("Accurate classification of neuropsychological impairment is dependent on the normative comparison applied (i.e., what are expected levels of performance for the individual if s/he has normal brain function)."); Garagiola Decl., Ex. L, Alexandra Lenhard et al., *Continuous Norming of Psychometric Tests: A Simulation Study of Parametric and Semiparametric Approaches*, PLoS ONE, Sept. 17, 2019, at 1 ("Precise and reliable norm scores are an important quality criterion for psychometric tests[.]"); *id.* at 2 (discussing age norming) ("[T]he vast majority of psychometric tests aim to classify a test result in relation to a reference population. Within this scope, raw scores of a certain test can only be interpreted meaningfully, if population-based comparative scores—i.e., norm scores—are available.").

*employment for remuneration or profit.*'"  2020 DPD § 3.1(e)(1).  That provision prohibits a

player from being deemed unemployable (and thus T&P disabled) because he is poorly educated,

or conversely eminently employable (and thus not T&P disabled) because he is well educated.[34]

It has nothing to do with the scoring of neuropsychological tests, as is made obvious by the fact

that there is no parallel limitation stated in Plan Article 6 governing NC benefits, where

neuropsychological testing is routinely applied to assess disability. *See id.* § 6.1.  Indeed, if Mr.

Olawale's interpretation were correct, it would lead to the absurd result that when a player

simultaneously applies for both NC benefits and T&P benefits ▮▮▮▮▮▮▮▮, normed test

scores would be used to assess NC disability while un-normed scores from the same tests would

have to be used to assess T&P disability.[35]  The Court should reject Mr. Olawale's interpretation

as inconsistent with a commonsense reading of the Plan, and with the Plan's unbroken practice

of norming neuropsychological test scores for education since at least 2018.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Opp'n at 44-45. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮ JO-1049.  Mr. Olawale also criticizes ▮▮▮▮▮

▮▮▮, Opp'n at 46, but ▮▮▮▮▮

---

[34] In addition, by its own terms 2020 DPD § 3.1(e) applies to the Disability Board's determination of T&P disability "*[a]fter* reviewing the report(s) of the Plan Neutral Physician(s)."  It does not purport to govern how neuropsychological tests are administered when generating the reports that the Disability Board reviews.
[35] Mr. Olawale similarly and newly complains that ▮▮▮▮▮▮
▮▮ Opp'n at 45 n.68, 46.  That argument fails for the *additional* reason that ▮▮▮▮
▮▮▮▮ JO-917-18.

███████████████████████████, *see* JO-1010.

In sum, none of Mr. Olawale's criticisms of the reports of the Neutral Physicians who examined him create a triable issue of fact whether the Board abused its discretion in accepting them as adequate to determine Mr. Olawale's benefits claim.

**B.     Mr. Olawale's Allegations That the Neutral Physicians and the Board Incorrectly or Inconsistently Applied Plan Terms Do Not Create a Genuine Dispute of Material Fact About His Entitlement to Benefits.**

Defendants' motion showed that the Board's denial of Mr. Olawale's claim was consistent with both the language of the Plan and past interpretations and application of the Plan. OM at 23-25 (discussing *Booth* factors).  In his Opposition, Mr. Olawale alleges various inconsistencies, none of which have any evidentiary foundation in the record.



*First*, Mr. Olawale contends for the first time in the Opposition that ████████████ ███████████████████████████████████████████, Opp'n at 40, but this argument misconstrues Defendants' brief, which merely explained that an injury that was not substantiated to have been "incurred during scope of NFL career" would not meet the standard, OM at 20.

*Second*, Mr. newly Olawale claims that ███████████████████████ ████████████████████████████████████ ███████████████████. Opp'n at 43-44, 44 n.66. ██████████████████████ ███████████████████████ JO-865 (█████████), and t████████████████ ███████████████████████████████████ ███████████ JO-903 (████████), appropriately apply the Plan's "substantially unable" to work standard, and there is no requirement to use specific words.

*Third*, Mr. Olawale incorrectly argues for the first time that ████████████████ ████████████████████████████████████████████

████████. Opp'n at 56 & n.83. ████████████████████████

████████████████████████████████████████

████████████████████. Garagiola Decl., Ex. J, ████████████ at 5. ████████

███████████████████████████████. JO-886 ████████████

████████████████████████████████), 987.  Mr. Olawale is thus wrong

that ████████████████████████████████████. Opp'n at 56 n.83.  But

even if they had, reasonable medical professionals can reach different medical conclusions

without inconsistently applying Plan provisions. *See, e.g.*, *Elliott*, 190 F.3d at 606 ("[I]t is not an

abuse of discretion for a plan fiduciary to deny disability pension benefits where conflicting

medical reports were presented.").[36]

   *Fourth*, Mr. Olawale labels ████████████████████████████

████████████████████████████████████████

████████████████████. Opp'n at 59.  The two simply disagreed,[37] but this

disagreement does not mean that either report was inadequate. *See Elliott*, 190 F.3d at 606.  And

Mr. Olawale faults ████████████████████████████, but he

concedes he did not raise this impairment in his application, as the Plan requires.  Opp'n at 60

n.86; OM at 19; 2020 DPD § 5.4(h).

   *Fifth*, Mr. Olawale newly claims that ████████████████████████

████████████████████████████████████████

---

[36] Even if other players did sometimes receive points for similar impairments, Opp'n at 56 n.83, ████████████████

████████████████████████  Mr. Olawale offers no support that he and the other players had similar medical records.

[37] ████████████████████████████████████████

████████████████████████████

████████████████████████ JO-992. ████████

████████████████████ JO-887.



████████████████████ For support, Mr. Olawale cites portions of testing narratives for four

other players. Opp'n at 32 (citing Opp'n Ex. 37); *id.* at 32 n.53 (citing Opp'n Ex. 38; Opp'n Ex.

39). But a comparison of those records shows that the examining neuropsychologists merely

used different terminology to describe the score: ████████████████████████████

█████████████████████████████████████████████████, JO-

1035, ████████████████████████████████████████████

██████████████████████████████████, Opp'n Ex. 37. The

use of different terminology to describe test scores does not amount to inconsistent treatment of

similarly situated players. Moreover, as already explained, Mr. Olawale's entire premise that

any single test score equates directly to the substantiation of an impairment is flat wrong.[38] *See*

*supra* at 23-24. █████████████████████████████████████

███████████████████████████. *See, e.g.*, JO-1035.

None of Mr. Olawale's alleged inconsistencies raise a triable issue of fact about whether

the Board abused its discretion in denying Mr. Olawale's claim for benefits. It did not, and

Defendants are entitled to summary judgment on Count I.

### C.    Mr. Olawale Points to No Evidence Raising a Material Dispute That His Records Were Fully Reviewed.



Mr. Olawale does not dispute that ██████████████████████████

████████████████████████████████████████████████████

████████ JO-217 (████████); CS-217 (████████); Contracts at NFL_ALFORD-0012226████

████), NFL_ALFORD-0012289 (████████); NFL_ALFORD-0012380 ████████),

NFL_ALFORD-0012386 (████); NFL_ALFORD-0012390 ████████),

---

[38] Mr. Olawale newly argues in a footnote that under the *NFL Concussion Injury* settlement, ██████████
████████████████████████████████████████████████ Opp'n at 62
n.91. ████████████████████████████████████, *see id.*; *id.* at 64 nn.95, 96, and even if they did, the
settlement is irrelevant to determining proper application of the Plan's very different standards, OM at 25 & n.7.

NFL_ALFORD-0012424 (███████████);  █████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████, JO-860, 878, 880, 890, 908, 926, 979, 983, 994, 1013, 1027, 1039.  Nor

does he dispute that the Board lawfully delegated its responsibility to review his claim records to

the Party Advisors, who provided sworn declarations and testimony that they review every

document for every appeal that they consider.  OM at 8-9, 23-24.

 Mr. Olawale contends without support that ████████████████████████

██████████████████, none of which (even if true) would have been material to his appeal to

the Board.  Specifically, Mr. Olawale claims for the first time that ██████████████████

████████████████████████████████████████████████████████████████████

████████.  Opp'n at 17-18, 24, 28.[39]  But Mr. Olawale does not claim that ████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████.  JO-878, 880 (████████); JO-979,

983 (█████████).  Nor is there any reason to infer that they failed to review them.  ███████████

█████████████████████████████████████████████.  JO-782-86.  ██████████████

███████████████████████████████████████JO-989, ██████████████████

████.  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████.  JO-886-87,

987-88.  ████████████████████████████████████████████████████████JO-

886, ████████████████████████████, *see* JO-664-65.  There is no conflict ██████████████

████████, and ERISA did not require them to discuss each of the medical records they reviewed.

---

[39] He also argues that █████████████████████████████████████████████████ ██████████
█████████████████████, *see* Williams Tr. 117:16-118:1, 118:19-22, and ERISA does not require
summary sheets or mandate their contents.

Mr. Olawale further argues for the first time that ███████████████████ ████████████████████, Opp'n at 18 n.29, ███████████████████████ ███████████████████████, *id.* at 49 n.72, 57 n.84. That is not evidence that the Board failed to review and consider any of Mr. Olawale's records.[40] Mr. Olawale ███████ ████████████████████████████████████████████████████, so there is no foundation for his argument that the Board failed to consider such evidence.[41] And his ████████████████████████████████████████████████████ ████████████████████████ Opp'n at 57, fails for the same reason—███████████ ██████.[42] Finally, Mr. Olawale newly criticizes ████████████████████ ██████. Opp'n at 52 n.77 (citing JO-705-08, 1012, 1018).[43] ███████████ ████████████████████████████████████████████████████ JO-1017. Mr. Olawale provides no evidence that ████████████████████████████████ ████████████████████████; to the contrary, ██████████████████████

---

[40] Mr. Olawale cites *Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 586-94 (11th Cir. 2020). But *Mickell* held that the Board "fail[ed] to even consider" specific evidence that Mr. Mickell submitted showing that his treating physician had concluded that his injuries taken together made him "unable to maintain gainful employment." *See id.* at 594. Mr. Olawale made no similar submission. Moreover, the record shows that if Mr. Olawale had submitted actual medical evidence of a cumulative impairment, the Board would have considered it. ███████████████████████████████████ aragiola Decl., Ex. C, Smith Tr. 183:20-185:5, and Plaintiffs admit that there is no categorical rule against considering cumulative impairments. Opp'n 56-57, 57 n.84.
[41] Mr. Olawale suggests ███████████████████ Opp'n at 49 n.72. But no provision of the Plan—which is collectively bargained by the players' union and management—requires such consultation. *See CIGNA*, 563 U.S. at 436; *Pender*, 788 F.3d at 362. Nor does any ERISA statutory or regulatory provision require that. *See, e.g.*, Garofolo Tr. 146:14-150:1.
[42] Mr. Olawale newly claims the Board has previously used vocational experts to evaluate some players with cumulative impairments but failed to do so for him. Opp'n at 31. But the Plan does not require that players be examined by a vocational expert, and he fails to show he was similarly situated to any players who did receive vocational assessments. *See Smith*, 2024 WL 722594 (Detron Smith evaluation under Retirement Plan).
[43] ████████████████████████████████████. JO-703, 708. ███████████████ *Id.*
██████████████████████████████. JO-705.
Opp'n at 52 n.77, ███████████████████████████████. JO-1017.
████████████████. JO-1025.

████████████████████████████████████████████ JO-1025.  Mr. Olawale

points to no evidence that ███████████████████████████████.

Mr. Olawale has not identified any genuine dispute of material fact that the Board took

into account all of his records.  And critically, he has not identified any unreviewed records

within his administrative record that, had they been reviewed and credited, would have entitled

him to benefits.[44]  Defendants therefore are entitled to summary judgment on Count III.

### D.    Mr. Olawale's Decision Letters Comply with ERISA and Address All Relevant Information.

Mr. Olawale does not dispute that his decision letters accurately stated the basis for the

Committee's and Board's determinations: ███████████████████████.  The letters

provided a summary of the key reasons for the Neutral Physicians' findings, and the full reports

were also provided.  JO-927-31, 1048-53.  Mr. Olawale raises no material dispute that his

decision letters contained "all the information necessary to perfect" his appeal: his right to appeal

and review his records, the relevant Plan provisions, the deadlines, and the procedures for

obtaining copies of pertinent documents.[45]  *See generally* Opp'n; JO-927-31, 1048-53.  ERISA

requires no more, *see Donnell*, 165 F. App'x at 296; *Learn*, 724 F. Supp. 3d at 529-30, and Mr.

Olawale identifies no prejudice from any alleged shortcomings.[46]  *See Ellis*, 126 F.3d at 238.

---

[44] Mr. Olawale claims that ████████████████████████████████████████
████████████ Opp'n at 44 n.67.  Not so. ██████████████████████████████
████████████████████████████████████████████ JO-925, so it is not
surprising they used the same language on the individual forms.

[45] Mr. Olawale newly contends the decision letters failed to describe what additional information was "necessary for
[Mr. Olawale] to perfect the claim" ██████████████████████████████.  Opp'n
at 24.  Not so.  The Board letter explained that █████████████████████████████████
████████ provided the relevant Plan provisions, provided ████████████████████████████,
and afforded Mr. Olawale an opportunity to respond before the Board issued its final decision.  JO-1050-51.  Mr.
Olawale responded, but he did not address ███████████████.  JO-1046-47.

[46] Mr. Olawale does not argue, for instance, that he would have made different arguments on appeal to the Board or
in the Complaint but for the letters he received.  His arguments regarding the Committee letter are immaterial
because even if that letter were deficient (it was not), the maximum relief he could receive for that would be referral
by the Board for new evaluations by new Neutral Physicians, which he already received.

Defendants are entitled to summary judgment on Count II.

Mr. Olawale argues for the first time that the Board provided no basis for disagreeing with NFL team doctors' opinions ███████████████████ Opp'n at 24. But no Neutral Physician disagreed with those doctors. *See supra* at 21-23. Mr. Olawale cites JO-553, 768-69, 774-75, but he does not explain how any of those records are inconsistent with the Neutral Physicians' findings, and in fact they are not. ████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████.[47] The Board similarly did not "disagree" with any findings of ██████████████████, Opp'n at 17-18, 24, 28, and thus had no disagreements to explain. *See supra* at 31 (████████████

████████████████████). ERISA does not require decision letters to discuss every single medical record in a claimant's file, *see* 29 C.F.R. § 2560.503-1(j)(6), and the Board is entitled to summary judgment on Count II.

## V. THERE IS NO EVIDENCE THAT THE PLAN IS A FRAUDULENT SCHEME OR THAT THE BOARD BREACHED ANY FIDUCIARY DUTY.

Rather than present any competent evidence specific to their individual claims, Mr. Loper, Mr. Sims, and Mr. Olawale spend much of their brief contending the entire Plan is a "fraudulent scheme" that is "reflected in the fiduciaries' actions regarding compensation, rewards, maintenance, monitoring, retention, and training of Plan physicians with histories of inadequate work performance and significant biases against recognizing NFL play-related impairments." Opp'n at 3-4. The evidence in the record uniformly contradicts this claim.[48]

---

[47] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[48] Mr. Loper, Mr. Sims, and Mr. Olawale alternately phrase their "fraudulent scheme" complaint as an allegation that Defendants breached their duties by "continually act[ing] in an objectively unreasonable manner." Opp'n at 3. But none of the three Plaintiffs has demonstrated any objectively unreasonable conduct as to their own claims, *see*

**A.     There Is No Evidence of a Breach of the Duty of Loyalty.**

Mr. Loper, Mr. Sims, and Mr. Olawale assert with no support that Defendants breached their duty of loyalty.  Opp'n at 5.  They do not dispute Defendants' evidentiary demonstration that (1) the Plan is a Taft-Hartley plan that is composed equally of NFLMC and NFLPA Trustees, three of whom are *former players themselves*, (2) Defendants have no financial interest in the outcome of any disability claims, (3) the Plan is funded by a revenue-sharing agreement between the NFL and the NFLPA, and (4) numerous courts have held the Plan does not have a structural conflict of interest as a matter of law and fact.  *See, e.g.*, LM at 3, 22-23.  Plaintiffs have no good-faith basis even to allege a breach of loyalty—much less evidence of one—and Defendants are entitled to summary judgment as to Plaintiffs' loyalty claims.[49]

**B.     Plaintiffs Do Not Dispute the Plan's Generous Claim Approval Rates.**

Mr. Loper, Mr. Sims, and Mr. Olawale do not dispute Defendants' evidentiary demonstration that (1) the Plan has paid nearly $1.2 billion in disability benefits from the beginning of the 2017 Plan year through the 2022 Plan year to thousands of players, (2) in 2022 alone, the Plan paid $257,463,357 to roughly 23% of Plan participants, for an average annual benefit of $86,455, and (3) the Plan has awarded benefits in approximately 51.2% of T&P applications, 50.8% of LOD applications, and 23.9% of NC applications.  *See, e.g.*, LM at 2-3.  These undisputed facts alone are irreconcilable with a fraudulent scheme to deny benefits.

**C.     Plaintiffs Do Not Dispute the Plan's Neutrality Safeguards.**

Mr. Loper, Mr. Sims, and Mr. Olawale do not dispute Defendants' evidentiary demonstration that Defendants (1) contractually obligate Neutral Physicians to certify that each

---

*supra* Sections II-IV; *Thole*, 590 U.S. at 540-44, nor have they identified any evidence of breaches of fiduciary duty that could be aggregated, *see* Section V, *infra*.
[49] *Bidwell v. Garvey*, 743 F. Supp. 393 (D. Md. 1990), addressed an alleged failure to provide adequate contributions for increased Retirement Plan benefits.  It has nothing to do with this case, and the word "disability" does not even appear in the opinion.  *Contra* Opp'n at 64 n.95.

35

medical opinion that they render is without bias for or against any player, (2) contractually obligate Neutral Physicians to review all submitted records, (3) pay Neutral Physicians a flat fee that does not vary based on the outcome of their medical evaluations,[50] and (4) direct Neutral Physicians during orientation and training to conduct their examinations and to prepare their reports to the "highest professional standards without any bias or favoritism for or against any player." *See, e.g.*, LM at 4-6. Plaintiffs do not identify any instance of these policies not being followed, or any instance of a Neutral Physician being instructed or encouraged during training or at any other time to render anything other than their best professional judgment on each claim.

████████████████████████████████████████████████████████

████████████████████. Garofolo Tr. 373:24-374:4, 397:11-17, 398:16-20, 405:2-8; s*ee also id.* at 360:20-362:6 (████████████████████████████████████

████████████████). [51] There is no evidence that Defendants have encouraged Neutral Physicians to be biased. Nor have Plaintiffs offered any plausible rationale why Defendants would encourage biased examinations, when half of the Plan's Trustees are former players appointed by the NFLPA, and none of the Trustees stand to gain anything from improper denials.

Plaintiffs frivolously claim that the Plan misrepresents that Neutral Physicians are "neutral." Opp'n at 14-15. But the Plan's description of Neutral Physicians as "neutral" is

---

[50] Plaintiffs assert without citing any supporting evidence that Defendants wasted plan assets, *see, e.g.*, Opp'n at 11, but they identify no evidence that Neutral Physicians were compensated at above-market rates. Moreover, under established law, Mr. Loper, Mr. Sims, and Mr. Olawale do not have Article III standing to raise such a claim, because any purported overpayments to Neutral Physicians—there were none—did not affect the Plan's ability to pay approved benefits. *See Thole*, 590 U.S. at 540-44.

[51] ERISA and its regulations do not require disability plans to audit examining physicians, ███████████

████████  Garagiola Decl., Ex. B, Vincent Tr. 60:17-62:12. ████████

████████████████████████████████████████████████████████  Garofolo Tr.

156:7-22, 165:10-17, 166:18-22, 167:8-15. ████████████████████████████████████

████████ Vincent Tr. at 110:9-111:6; *see id.* at 68:18-22. Plaintiffs' argument that there is no ongoing monitoring, Opp'n at 12, is based entirely on deposition snippets taken out of context, and is legally irrelevant.

wholly consistent with its numerous neutrality safeguards, and Plaintiffs do not cite any law

suggesting that it is misleading to use the word "neutral" to describe a  professional who is

subject to such neutrality requirements.  Indeed, ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████.  Garofolo Tr. 189:2-7.  He testified that ██████████████

██████████████████████████, *id.* at 117:12-118:3, 364:20-365:4—a

rationale that applies equally to the Neutral Physicians, whose professional qualifications

Plaintiffs do not dispute, *see, e.g.*, *id.* at 155:10-14.

### D.    Neutral Physician Examinations Are Assigned Using Neutral Criteria.

The record shows that (1) when former players submit applications or appeals for

disability benefits, the NFLPBO assigns one or more Neutral Physicians from the panel to

evaluate the applicant, (2) assignments are made solely using neutral criteria such as area of

specialty, proximity, and availability to conduct a timely evaluation, and (3) neither the NFLPBO

nor the Board maintains statistics concerning individual Neutral Physicians' past disability

determinations that even could be referenced when making assignments.  *See, e.g.*, LM at 4.

████████████████████████████████████████████████████████████

Vincent Tr. 120:15-122:7, 125:14-19.

Plaintiffs have not identified a single instance in which an improper criterion was used to

make a Neutral Physician assignment.  They complain that despite the NFLPBO's efforts to

assign nearby Neutral Physicians, players nevertheless must sometimes travel long distances for

examinations.  Opp'n at 47.  But such travel is a natural consequence of the limited number of

specialists on the Plan's panel in each geographic area, the fact that the most geographically

proximate Panel specialists sometimes are not available, and the Plan's rule prohibiting assigning

the same Neutral Physician to examine the same player twice.  A longer-distance examination

assignment may sometimes be necessary for any of these reasons.

Plaintiffs' only other purported evidence of improper Neutral Physician assignments are the so-called "statistics" generated by Plaintiffs' purported expert Dr. Anthony Hayter, but those are evidence of nothing, for the reasons explained in Section V.G, *infra*.

### E.    The Board Appropriately Delegates Record Review and Conducts Party Advisor Training.

Mr. Loper, Mr. Sims, and Mr. Olawale do not dispute Defendants' evidentiary showing that (1) Board members have access to all information in the record, (2) the Plan expressly permits the Board to delegate record review to consultants and advisors, including the Party Advisors, and (3) Party Advisors review each individual case file and provide recommendations to the Board. *See, e.g.*, LM at 7; OM at 7; SM at 8. ███████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████. Garofolo Tr. 176:9-22. And none of the three plaintiffs demonstrated any failure by the Board, acting through the Party Advisors, fully to review their records, *see supra* at 8-9, 16, 31, so none of them can have a viable claim that Defendants misrepresented that their records were fully reviewed.[52] *Contra* Opp'n at 16-17, 28.

Plaintiffs complain for the first time that the Board has no system to track "review of each document." Opp'n at 18 n.30. But nothing in the Plan or in ERISA requires tracking review of records on a document-by-document basis. *See generally* DPD; *cf. Conkright v.*

---

[52] *See* Garagiola Decl., Ex. K, Policy Regarding the Delegation of Responsibilities at 2 (████████████████████████████████████████████████████████████████████ );
Decl. R. Smith Supp. Defs.' Mot. Summ. J. Pl. D. Loper's Claims ("Smith Decl.") ¶ 11, ECF No. 115-19; Decl. P. Reynolds Supp. Defs.' Mots. Summ. J. ("Reynolds Decl.") ¶ 7, ECF No. 115-20; Williams Decl. ¶ 6; Smith Tr. 27:19-28:6, 54:6-11, 54:18-23, 55:12-23; Williams Tr. 57:19-58:14. There is no evidence that this review is inappropriately cursory. *Contra* Opp'n at 22 n.39. ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████ Williams Tr. 95:9-19.
████████████████████████ Smith Decl. ¶¶ 9-11; Smith Tr. 36:12-37:1, 37:17-21.

*Frommert*, 559 U.S. 506, 517 (2010) ("Congress sought [through ERISA] 'to create a system that is not so complex that administrative costs . . . .'" are "unduly discourag[ing]"); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) ("a prudent fiduciary need not follow a uniform checklist"). ███████████████████████████████████████████████

███████████████████████████████████████████████ [53]  Garofolo Tr. 174:19-25.

The same goes for Plaintiffs' new complaint that the Board does not maintain "repositories of prior interpretations" to ensure that Plan terms are applied consistently.  Opp'n at 31.  As Plaintiffs' purported ERISA expert acknowledged, ██████████████████████

██████████████████████████████████████████████.  Garofolo Tr. 144:8-15, 145:23-146:5. ████████████████████████████████████. *Id.* at 142:13-20.

Finally, Plaintiffs newly claim the Board members and Party Advisors are unqualified to review applicants' medical records.  Opp'n at 22.  But ERISA does not require or even suggest that Plan fiduciaries must be medical experts.  Neutral Physicians are retained specifically to provide highly developed medical expertise in examining former players for disabilities, and ERISA not only permits but encourages plan fiduciaries to rely on experts and consultants.  *See, e.g.*, LM at 20-21 (collecting cases).  Plaintiffs do not cite any case law or regulatory guidance suggesting the Trustees who determine disability claims must be medical experts as well. [54]

---

[53] Plaintiffs contend that language from an opinion in *Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 925 F. Supp. 2d 700, 723 (D. Md. 2012), establishes that the Plan itself used to conduct such tracking.  *See* Opp'n at 18 n.30.  This is false. ████████████████████████████████████████████████████

████████████████████████████████████████████. Decl. H. Vincent Supp. Class Cert. Surreply ¶ 15, ECF No. 219-3.  The Plaintiffs' own claim documents continue to bear those same stamps.  *See, e.g.* DL-584, 618; *see also* Garofolo Tr. 407:1-416:2.

[54] Contrary to Plaintiffs' suggestion and the cherry-picked testimony they cite, Opp'n at 22 & n.39, ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  Williams Tr.

**F.   Defendants Do Not Appoint Neutral Physicians, but the Applicable Vetting Process Is Fully ERISA-Complaint.**

Defendants demonstrated in their opening brief that under the Plan's express terms, it is the NFLPA and the NFLMC that appoint and terminate Neutral Physicians, not the Board. *See, e.g.*, LM at 29 (citing DPD § 12.3(a)). As a matter of law the complaints that Mr. Loper, Mr. Sims, and Mr. Olawale raise about the Neutral Physician hiring process simply have no application to Defendants.[55]  *See id.*  Moreover, ████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████.  Vincent Tr. 58:18-59:5.  That prudent process is fully consistent with ERISA, and Plaintiffs cite no authority suggesting otherwise.  It is also facially implausible that the NFLPA, which represents players, would agree to retain unqualified or biased Neutral Physicians.

**G.   Dr. Hayter's "Statistics" Are Not Evidence of a Fraudulent Scheme or Systemic Bias.**

Mr. Loper, Mr. Sims, and Mr. Olawale ask the Court to ignore the record evidence establishing the Plan has Neutral Physician policies that fully comply with ERISA, and instead to counterfactually *infer* the Plan's process for assigning Neutral Physician examinations is biased based on graphs in their Amended Complaint and based on the expert report of Dr. Hayter. Opp'n at 26-28, 67-73.  But the Amended Complaint is not evidence, and as Defendants

---

23:15-19, 24:9-21, 25:6-10, 28:1-29:8.
  █████  *Id.* at 26:4-11.

████████████████████████████████████████████████████████████  █████

████████████████████████████████████  *Id.* at 30:14-20, 32:11-15; *see id.* at 31:5-13.

[55] The fact that NFLPA Trustee Robert Smith, a former player, ████████████████████████
████████  Opp'n at 26 n.44, is in no way inconsistent; he did not exercise any hiring authority.

explained in their Rule 702 motion, ████████████████████████████████████████

████████████████████████████████████. Mem. Supp. Defs.' Mot. Exclude

Test. A. Hayter ("Hayter Mot.") at 5-19, 24-26, ECF No. 220-1.

      Dr. Hayter ████████████████████████████████████████████

████████████████████████████████████████████████████████.

*Id.*; Garagiola Decl., Ex. D, Hayter Tr. 222:1-9.  Instead, ██████████████████

████████████████████████████████████████████████████.

Hayter Mot. at 15-19.  But even those limited opinions are based entirely on an incomplete and

unreliable data set assembled by Plaintiffs' counsel and curated by counsel through means ███

████████████████████ that counsel have refused to disclose. *Id.*[56] Dr. Hayter's

opinions should be excluded from evidence for these reasons and more, as explained in

Defendants' Rule 702 motion. *Id.* at 1-19.

      Even if the Court accepted Dr. Hayter's opinions at face value, however, the denial rates

of individual Neutral Physicians do not constitute evidence of a "fraudulent scheme" or a

fiduciary breach, and do not create a material factual dispute that Defendants are entitled to

summary judgment.  Dr. Hayter does not purport to identify any practice of the Plan that caused

any kind of skew in Neutral Physician assignments.  Instead, ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████. *See* Hayter Rpt. at 180-89. ██████████████████████, Hayter Mot. at 15-19,

██████████████████████████████████████████████████

─────────────────────
[56] ████████████████████████████████████████████████████████████████████
████████████████████████████████████ Hayter Mot. at 1, 5-15; Expert Report of A. Hayter ("Hayer Rpt.")
at 26-31, ECF No. 172-5; Hayter Tr. 169:4-11, 169:16-18, 191:7-14.
████████████████████████████████████████████████████████ Hayter Mot. at 26-30.

███████████████ *id.* at 5-15, and ████████████████████████

████████████████████████████████████████████████████████

██████████, *id.* at 2, 15-19.  Those opinions are not evidence of a skewed assignment process, much less evidence that Defendants committed a fiduciary breach.

Indeed, Dr. Hayter's purported "statistics" cannot be considered evidence even of *individual* Neutral Physician bias.  Under Fourth Circuit law, there is no "correct[]" denial rate for third-party reviewers.  *Abromitis v. Cont'l Cas. Co./CNA Ins. Cos.*, 114 F. App'x 57, 61 (4th Cir. 2004).  "A low reversal rate," on its own, "would not prove bias."  *Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 116-17 (3d Cir. 2020).  Rather, to demonstrate bias, a plaintiff "would have to show that each of those [review] decisions was unreasonable based on the evidence in each file," which "would require a mini-trial on each of the[] other appeals."  *Id.* at 117; *see also Zahariev v. Hartford Life & Acc. Ins. Co.*, 2020 WL 12783951, at *5 (D.S.C. Aug. 11, 2020) ("statistical data" would not "reveal any information about [defendant's alleged] conflict of interest").  █████████████████████████████████████

███████████████████████████████████████████.  *See* Hayter Tr. 87:10-19.  Indeed, ████████████████████████████████████████

████████████████████████ *Id.* at 267:18-23 (████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████).

Nothing in Dr. Hayter's report contradicts Defendants' robust demonstration of the Plan's ERISA-compliant process for utilizing Neutral Physicians and for safeguarding against bias, and Defendants are entitled to summary judgment on each individual plaintiff's claim for fiduciary breach.  Plaintiffs have not presented even a prima facie case that Neutral Physician assignments

are systemically skewed.  Although the Court need not rely on the expert opinions of statistical expert Dr. David Lasater in the absence of even a prima facie case from Plaintiffs that Neutral Physician assignments are systematically skewed, Dr. Lasater conducted a systemic analysis of the Plan's claims determination data using widely accepted statistical practices, and demonstrated there is no statistical support for Plaintiffs' contention that Neutral Physicians associated with higher rates of claim denials, or with higher individual rates of finding players not disabled, are assigned a greater number of medical examinations (and thus greater compensation).  *See* Decl. D. Lasater Supp. Defs.' Class Cert Opp'n ¶¶ 7-66, ECF No. 111-2; Decl. D. Lasater Rebuttal Report A. Hayter ("Lasater Rebuttal") ¶¶ 6-29, ECF No. 228-1; Hayter Tr. 227:11-19 ("[A] chi-squared test is a standard . . . methodology that can be applied to categorical data."); *Arndt v. City of Colo. Springs*, 263 F. Supp. 3d 1071, 1076 (D. Colo. 2017) ("The chi-square test is an accepted statistical method of assessing the probability that a disparity is due to chance.").

### H.    Plaintiffs' Anecdotes About Individual Neutral Physicians Are Irrelevant and in Any Event Not Evidence of Bias.

Mr. Loper, Mr. Sims, and Mr. Olawale argue that statements by a handful of Neutral Physicians—and particularly by Dr. Stephen Macciocchi and Dr. William Garmoe—indicate those physicians are biased.  *See, e.g.*, Opp'n at 7-9 (regarding Dr. Macciocchi), 9-11 (regarding Dr. Garmoe).  But Dr. Macciocchi and Dr. Garmoe did not examine Mr. Loper, Mr. Sims, or Mr. Olawale, and Plaintiffs point to no evidence indicating that either of them played any role in the determinations of their claims.[57]  They also offer no evidence that any of the Neutral Physician

---

[57] Plaintiffs newly allege that Dr. Macciocchi and Dr. Garmoe trained all Neutral Physician neuropsychologists, but they do not identify any evidence that such training caused their own claims to be incorrectly determined.  *See* Opp'n.  And Mr. Loper's LOD claim could not possibly have been impacted ███████████████.  *See generally* LM.  Moreover, neither of the cases that Plaintiffs highlight relating to Dr. Macciocchi or Dr. Garmoe found that they were unqualified to render their opinions.  *See Savage v. State*, 166 A.3d 183, 203 (Md. 2017).

statements that they highlight as supposed evidence of bias were medically inaccurate, Garofolo

Tr. 391:1-4 ███████████████████████████████████████████████████████████

███████████████████ ), 392:22-393:9 ( ██████████████████████████████ ), or that any of the

Neutral Physicians whom they target incorrectly determined any disability claim or conducted a

biased examination, *see, e.g.*, *id.* at 135:12-19, 136:7-17, 137:1-15 ( ███████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ ).[58]  Plaintiffs' unsupported arguments, most of them relating to Neutral Physicians

who did not even examine them, do not create triable issues of fact or provide any grounds to

deny Defendants' motions for summary judgment as to Mr. Loper, Mr. Sims, or Mr. Olawale.

   Dr. Hayter does present individual "statistics" for a few of the Neutral Physicians who

examined Mr. Loper, Mr. Sims, or Mr. Olawale. ██████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████ .  *See* Hayter Tr. 267:18-23.  Plaintiffs had access to dozens of

---

(offering no criticism of Dr. Garmoe's neuropsychological testing methodologies or qualifications, but limiting his ability to testify to a criminal defendant's expected tendencies in a specific self-defense scenario); *Jefferson v. Sellers*, 250 F. Supp. 3d 1340, 1365-66 (N.D. Ga. 2017) (noting that both parties' experts had applied norms to their neuropsychological testing of a criminal defendant, but criticizing Dr. Macciocchi's application of Heaton Norms because the developers of the Heaton Norms published a 2009 recommendation based on subsequent research that their norms should not be used "where there is a known head injury."). ███████████████████████████████

███████████████████████████████████████████████████████████

████████████ Garofolo Tr. 377:23-378:5.  And neither of the cases that Plaintiffs cites involved claims for

disability benefits.

[58] Plaintiffs absurdly criticize ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ .  Opp'n at 71 & n.110.

Statements about helping players heal do not remotely project a "parsimonious approach to administering claims."

*Cf. id.* (citing *Caplan v. CNA Fin. Corp.*, 544 F. Supp. 2d 984, 990, 992 (N.D. Cal. 2008)).

[59] To provide just one example of the unreliability of Plaintiffs' figures, Plaintiffs assert—based solely on the

sample that their counsel curated—that ████████████████████████████████████████████████████████

████████████████████████████ Opp'n at 73.

████████████████████████████████ , *see* Hayter Rpt. at 182, ████████████████████████

████████████████████████████████ *see* Lasater Decl. at App'x 6; Hayter Rpt. at 67, 196.  *See also* Decl. D. Lasater Supp.

Defs.' Opp'n Mot. Compel. ¶ 10, ECF No. 134-7; Lasater Rebuttal ¶ 27 & Table 3, ¶ 73 & Table 9.

other reports by the physicians who examined Mr. Loper, Mr. Sims, and Mr. Olawale, yet they made no effort to demonstrate that any of them were handled in a biased manner.

Finally, Plaintiffs are simply wrong that compensation alone is an indication of bias. *See* Opp'n at 66-67. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████, Garofolo Tr. 369:17-23, ████████████████████████████████████ ████████████, *id.* at 405:2-6, and ██████████████████████████████████ ████████████████████████████, *id.* at 369:25-370:6.  And as previously explained, there is no evidentiary support for Plaintiffs' contention that disability claim outcomes or Neutral Physician findings of disability are skewed in relation to the number of examination assignments or total compensation amounts. *See supra* Section V.G.

In sum, there is no evidence in the record that supports Plaintiffs' claims that the Plan is a "fraudulent scheme" or that Defendants breached their fiduciary duties.  Defendants are entitled to summary judgment on Count V of Mr. Loper's, Mr. Sims's, and Mr. Olawale's claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motions for summary judgment on Plaintiffs Daniel Loper's, Charles Sims's, and Jamize Olawale's claims.


Date: July 24, 2025

Respectfully submitted,

*/s/ Gregory F. Jacob*
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com

Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player Disability & Survivor Benefit Plan, The NFL Player Disability & Neurocognitive Benefit Plan, The Bert Bell/Pete Rozelle NFL Player Retirement Plan, and The Disability Board of the NFL Player Disability & Neurocognitive Benefit Plan*

46

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory F. Jacob, hereby certify that on July 24, 2025, I caused a copy of the foregoing

document to be served upon all counsel of record via the CM/ECF system for the United States

District Court for the District of Maryland.


<u>*/s/ Gregory F. Jacob*</u>
Gregory F. Jacob