# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS McGAHEE, MICHAEL McKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM McCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL, <br><br> Defendants. | No. 1:23-cv-00358-JRR |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO STRIKE REPLY DECLARATIONS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

LEGAL STANDARD................................................................................................... 11

ARGUMENT .............................................................................................................. 12

   I.   THE COURT SHOULD STRIKE THE GARZA AND CLARK DECLARATIONS
      BECAUSE DEFENDANTS NEVER  DISCLOSED THOSE DECLARANTS AS
      POTENTIAL WITNESSES ...............................................................................12

     A.  Because Defendants' Failure to Identify the ███████████ Witnesses in Their Rule
         26(a)(1)(A) Disclosures Violates Rule 26 and Is Not Substantially Justified or Harmless,
         the Court Should, Pursuant to Rule 37(c)(1), Preclude Defendants from Relying on
         Those Declarants ..........................................................................................12

       1.  The Surprise to Plaintiffs Is Severe Because Defendants Never Mentioned These
          Witnesses in Disclosures, Discovery Responses, or Previous Filings .......................13

       2.  There Is No Adequate Cure for the Surprise Because Defendants Disclosed the
          Declarations Only in Reply Papers ...........................................................................14

       3.  Allowing Use of the Witnesses and Declarations Would Substantially Disrupt the
          Proceedings Because They Were Filed at a Late Juncture in This Case ....................14

       4.  Importance of the Evidence ......................................................................................15

       5.  Defendants Have No Valid Explanation for Their Nondisclosure.............................16

     B.  Alternatively, if the Court Does Not Strike the Declarations, Then It Should Deem the
         Declarants' Statements As Proof That Material Factual Disputes Remain, Which
         Foreclose Summary Judgment in Defendants' Favor ...................................................17

CONCLUSION.............................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Hoyle v. Freightliner, LLC*,
 650 F.3d 321 (4th Cir. 2011) ............................................................................ passim

*Saudi v. N. Grumman Corp.*,
 427 F.3d 271 (4th Cir. 2005) ..................................................................................... 15

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams* Co.,
 318 F.3d 592 (4th Cir. 2003) ................................................................................ passim

*Wilkins v. Montgomery*,
 751 F.3d 214 (4th Cir. 2014) ................................................................................ 1, 12

## <u>Rules</u>

Fed. R. Civ. P. 26(e)(1)(A) ............................................................................................... 13

Fed. R. Civ. P. 37(c)(1) ............................................................................................. 1, 11, 12

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Plaintiffs move to strike the Declaration of Roberto Garza ("Garza Declaration" or "Garza Decl.") and the Declaration of Stephanie M. Clark ("Clark Declaration" or "Clark Decl.") (collectively, "the Declarations") that Defendants filed as part of their reply papers in further support of their motions for summary judgment against Plaintiffs Daniel Loper, Jamize Olawale, and Charles Sims (ECF Nos. 115, 124-25). *See* ECF No. 235, Attachments 17-18 (currently under seal).

By proffering declarations from fact witnesses whom they never identified or disclosed in their Rule 26(a)(1)(A) disclosures, Defendants have caused precisely the "surprise and prejudice" that Rule 37(c)(1) was designed to prevent. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams* Co., 318 F.3d 592, 596 (4th Cir. 2003). Under Fourth Circuit law, a party that fails to timely disclose a witness "is not allowed to use that witness to supply evidence on a motion" for summary judgment unless it proves the failure was substantially justified or harmless. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011). Exclusion of declarations from previously undisclosed witnesses is warranted here because Defendants have not and cannot meet their burden to show that their nondisclosure was either "substantially justified or was harmless." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). Should it ultimately decline to strike the Declarations for violating Rule 37(c)(1), however, the Court should, at a minimum, deem the Declarations to be further evidence that material factual disputes regarding Defendants' application of the so-called Heaton norms remain, thereby foreclosing a grant of summary judgment in Defendants' favor.

## STATEMENT OF FACTS

Defendants served their Rule 26(a)(1)(A) initial disclosures on October 9, 2024. Declaration of Benjamin R. Barnett, dated Aug. 15, 2025 ("Barnett Declaration" or "Barnett Decl."), ¶ 2 & Ex. A. The disclosures cited five potential witnesses[1] and various documents, such as "[t]he 'Administrative Record' relating to Plaintiffs' applications for benefits", that "Defendants may rely on [...] to support their defenses." *Id.*, Ex. A, at 3. Just over a month later—on November 19, 2024 and, with leave granted, on November 21, 2024—Defendants filed three separate motions for summary judgment, against Plaintiffs Olawale, Sims, and Loper. ECF Nos. 115, 124, 125.

More than nine months after making their Rule 26(a)(1)(A) disclosures and more than eight months after filing their summary judgment motions, on July 24, 2025, Defendants filed their reply papers in support of their motions, supported by new Declarations from two previously unidentified witnesses. ECF No. 235, Attachments 17-18 (Declarations of Roberto Garza and Stephanie M. Clark). The declarants are ████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████ Garza Decl. ¶ 2; Clark Decl. ¶ 2. Defendants' Rule 26(a)(1)(A) disclosures neither mentioned by name nor alluded to Defendants' planned use of these witnesses to support their defense. *See* Barnett Decl., Ex. A, *passim*. Defendants did not supplement their Rule 26(a)(1)(A) disclosures or advise Plaintiffs that they intended to do so prior to filing their summary judgment reply papers.

---

[1] Michael Miller, Robert Smith, Hessam Vincent, Adora Williams, and Patrick Reynolds. *Id.*, Ex. A, at 1-2.

The two declarations ████████████████████████████████████

████████████████████████████ For example, Ms. Clark avers in her

declaration:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████ .

Clark Decl. ¶ 4.  Ms. Clark and Mr. Garza's declarations go on to ████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████ . Clark Decl.

¶¶ 5-11; Garza Decl. ¶¶ 5-6.

Contrary to the declarants' averments, however, ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████

| Player Name | "Neutral Physician" Name & Report Signatory | ██████ Name | Quote from "Neutral Physician" Narrative | Bates Number | Date of Testing |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ██████████████████████ | Ex. D[3] (NFLPLTFS -0001920) | 6/1/2022 |
| ██ | ██ | ████ | ██████████████████████ | Ex. E (NFLPLTFS -0001921) | 9/18/2022 |
| ██ | ██ | ████ | ████████ | Ex. F (NFLPLTFS -0000218) | 9/21/21 |

---

[2] This narrative is not cited in ████████████████████████████████

[3]    Lettered exhibit numbers, including in this table, refer to the exhibits to the Barnett Declaration.

| Player Name | "Neutral Physician" Name & Report Signatory | ███ Name | Quote from "Neutral Physician" Narrative | Bates Number | Date of Testing |
|---|---|---|---|---|---|
|  |  |  | ██████ |  |  |
| ███ | ██ | ████ | ██████ | Ex. G (NFL_ALFORD-0009612 to NFL_ALFORD-0009623) | 3/2/22 |
| ██ | ██ | ████ | ██████ ███" | Ex. H (NFLPLTFS-0002259) | 9/15/21 |
| ████ | ██ | ████ | ████ | Ex. I (NFLPLTFS-0000181) | 10/13/21 |

---

[4] Defendants did not proffer a declaration from ████

| Player Name | "Neutral Physician" Name & Report Signatory | Psychometrician Name | Quote from "Neutral Physician" Narrative | Bates Number | Date of Testing |
|---|---|---|---|---|---|
| | | | ██████ ████████ | | |
| ██▄ | ███▄ | ██████ | ████████ ████▄ ██ ████▄ | Ex. J (NFLPLTFS -0001135) | 10/22/21 |
| ██▌ | ███▄ | ██████ | ████████ ████▄ ████ | Ex. K (NFLPLTFS -0003103) | 10/26/21 |
| ███▄ | ███▄ | ██████ | ████████ ████▄ ████▄ | Ex. L (NFLPLTFS -0000178) | 12/14/21 |
| ██▄ | ███▄ | ██████ | ████████ ████▄ ████▄ | Ex. M (NFLPLTFS -0002175) | 1/19/22 |

| Player Name | "Neutral Physician" Name & Report Signatory | Psychometrician Name | Quote from "Neutral Physician" Narrative | Bates Number | Date of Testing |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ | Ex. N NNFLPLTF S-0002655 | 3/23/22 |

Notably, Plaintiffs repeatedly identified and alleged the harms of using demographic adjustments in the Amended Class Action Complaint (ECF No. 56) ("Amended Complaint") early on in the litigation, and certainly well before Plaintiffs filed their summary judgment opposition papers.[5] Thus, Defendants cannot genuinely deny that they were on notice of this issue months before they prepared and filed their summary judgment reply papers.[6]

Moreover, Plaintiffs and Defendants both produced numerous documents during discovery that evidence application of demographic adjustments, including for named Plaintiffs. *E.g.*, JO-

---

[5] Am. Compl. ¶¶ 127-28, 130-35, 167, 169, 182, 327; ECF No. 134-1 (mem. in supp. of Pls.' Nov. 26, 2024 mot. to compel at 18 n.20 & 28 n.23) ("discovery is necessary to determine the degree to which Dr. Macciocchi … has required or sanctioned the inappropriate application of racial norms"); ECF No. 172 (unredacted version sealed at ECF No. 173) (Pls.' Apr. 11, 2025 class certification reply mem. at 16, 20-21, noting continued use of demographic adjustments through 2024).

[6] As Plaintiffs' counsel explained during the February 21, 2025 hearing on Plaintiffs' motion to compel: "Your Honor, you are correct. It is based on inconsistent treatment based on race. Based on the factor of race, which is being considered or being treated differently based on the color of their skin or their ethnicity. And we do have documents that we attached as an exhibit to the motion to compel on Plaintiff Sims, for example, where the doctor explicitly considers his ethnicity when determining whether he has an impairment or not." Ex. B (Hr'g Tr. 17:18-25).



1026, at 1031[7] ██████████████████, Ex. O (NFL_ALFORD-0009957, at NFL_ALFORD-0009965 (████████████ ECF No. 172-13 (sealed at ECF No. 173) (NFLPLTFS-0001920 ████████ and NFLPLTFS-0001921 ████████ ECF No. 186, Ex. 31 (under seal) (NFLPLTFS-0000178 ████████); NFLPLTFS-0000181 ████████ NFLPLTFS-0000182 ████████; NFLPLTFS-0001135 ████████ NFLPLTFS-0002175 ████████ NFLPLTFS-0002259 ████████); NFLPLTFS-0002655 (████████); NFLPLTFS-0003103 ████████)); NFLPLTFS-0001404 at 13 (████████) (report for "████████████████

Since the beginning of this litigation, Defendants have had in their possession, custody, and control Dr. David Salisbury's report for Plaintiff Olawale. When examining him in *March 2022*, Dr. David Salisbury ████████████████," and explicitly stated in his report that ████████████. JO-1026, at 1031. That same Neutral Physician, Dr. Salisbury, also followed the 2018 manual after mid-2021 for other applicants as well. *See* ECF No. 172-13 (NFLPLTFS-0001920 and NFLPLTFS-0001921). At his April 2, 2025 deposition, Board member Robert Smith ████████████████ ████████████████ ████████ Ex. C (Smith Dep. Tr. 190:24-191:6); *see* JO-1026, at 1031.

Similarly, since the beginning of this litigation, Defendants have had in their possession, custody, and control Dr. Douglas Cooper's report for ████████ When examining him in 2021, Dr. Cooper states that the ████████████ Ex. O (NFL_ALFORD-0009957 at NFL_ALFORD-0009965). Moreover, documents as to absent class

---

[7] "JO-" refers to the exhibits in support of Defendants' motion for summary judgment as to Plaintiff Olawale, as paginated according to the key supplied in the Index of Exhibits to that motion. *See* ECF No. 124-4.

members and other Plaintiffs have been available to Defendants since the beginning of this litigation because all "Neutral Physician" reports concerning Plaintiffs and absent class members are in Defendants' possession, custody, or control.

At the February 21, 2025 hearing on Plaintiffs' motion to compel, counsel for Defendants raised for the first time the existence of a 2021 directive regarding application of discriminatory racial norms:

> MR. JACOB: … So, as the court can tell from the fact that these are called the Heaton norms, this is an available body of testing adjustments that many neutral physicians or many just physicians who practice generally may or may not apply depending on what their professional judgment is. And prior to 2021, there was no position that the plan ever took as to whether you should apply Heaton norms or not. The individual neutral physicians were exercising their own professional judgment as to how to do the test scoring. [...] But I think the key point here is, the plan did, in the middle of 2021, when they became aware that this practice existed, issue a directive that hence forward, without regard to whether Heaton norms have merit or not, we just don't want to deal with this issue being raised by people and anybody thinking that we're doing anything --
>
> THE COURT: Yeah, it's not a good look.
>
> MR. JACOB: Yeah, so they stopped it at that point.
>
> And they issued a directive. And they don't present a single instance of a neutral physician who after the middle of 2021, when that directive was answered, acting inconsistent with the plan. [...] So, again, it is not an example of an inconsistency of application.

Ex. B (Hr'g Tr. 85:20-87:18). Although Defendants had previously produced 2018 and 2024 neuropsychologist orientation manuals in response to Plaintiffs' discovery requests, those productions did not include the 2021 manual or the June 2021 "directive" regarding application of discriminatory racial norms. Barnett Decl. ¶ 18. Defendants did not produce a copy of the 2021

directive until May 7, 2025.  *Id.*  Just hours after Board member Smith's April 2, 2025 deposition, Defendants produced a copy of the 2021 neuropsychologist manual.  *Id.*[8]

Notably, the 2021 neuropsychologist manual, issued the same day as the directive, ███████████████████████████████████████████████████. ECF No. 172-12, at Ex.  3 pg. 6 ███████████████████████████████████████████████  Furthermore, "Neutral Physician" reports issued subsequent to the supposed 2021 ███████████████████ ██████████████████████████████████████████.  *E.g.*, JO-1026, at 1031 ███████████ ████████████, ECF No. 172-13 (NFLPLTFS-0001920 and NFLPLTFS-0001921), ECF No. 186, Ex.  31 (NFLPLTFS-0000178; NFLPLTFS-0000181; NFLPLTFS-0001135; NFLPLTFS-0002175; NFLPLTFS-0002259; NFLPLTFS-0002655; NFLPLTFS-0003103).  In fact, it was not until August 2024 that a revised manual was issued, instructing:  "Do not report a demographically-derived estimate for premorbid I.Q., *as these incorporate race as a variable*."  JO-371, at 407 (emphasis added).

In sum, although discriminatory racial adjustments to neuropsychological test scores post-2021 were plainly at issue during the entirety of this litigation, Defendants did not update their Rule 26(a)(1)(A) disclosures to notify Plaintiffs of additional witnesses Garza and Clark, and gave no notice that they were potential witnesses until filing their summary judgment reply papers on July 24, 2025.

---

[8] In response to Plaintiffs' request for any updates to the 2018 manual, Defendants' discovery responses from December 2024 stated: "Here, Defendants have produced *all* of the information Plaintiffs need for their oppositions to Defendants' Motions for Summary Judgment and any additional documents requested but which Defendants have not agreed to produce would not by themselves create a genuine issue of material fact sufficient for Plaintiffs to survive summary judgment; they would therefore be unduly burdensome and disproportional to the needs of the case."  Barnett Decl., Ex. P, at 19 (Defs.' updated response to Pls.' Req. for Produc. No. 6) (emphasis added).

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides a self-executing sanction for failure to comply with Rule 26's disclosure mandates. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that […] witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has emphasized that Rule 37(c)(1) imposes an "'automatic sanction' of exclusion," such that the "general rule" is undisclosed evidence "should be excluded" unless the non-disclosing party proves its burden to show an exception applies. *Southern States*, 318 F.3d at 596–97. This "automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, at a hearing, or on a motion, such as one under Rule 56. Fed. R. Civ. P. 37(c)(1), advisory committee's note to 1993 amendment.

The only exceptions to the exclusion sanction are when the failure to disclose was "substantially justified or harmless." *Southern States*, 318 F.3d at 596. It is the non-disclosing party's burden to establish that one of these narrow exceptions applies: "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Id.* The Fourth Circuit does not require any showing of bad faith or willfulness to impose the Rule 37(c)(1) sanction, "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Id.*

In determining whether a nondisclosure is "substantially justified or harmless," the Court is guided by five factors identified by the Fourth Circuit: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id*. at 597. Unless

11

Defendants demonstrate that its failure was either justified or harmless, "the party will not ordinarily be permitted to use" the undisclosed evidence.  *Id.*

## ARGUMENT

I.  **THE COURT SHOULD STRIKE THE GARZA AND CLARK DECLARATIONS BECAUSE DEFENDANTS NEVER DISCLOSED THOSE DECLARANTS AS POTENTIAL WITNESSES**

    **A. Because Defendants' Failure to Identify the ███████ Witnesses in Their Rule 26(a)(1)(A) Disclosures Violates Rule 26 and Is Not Substantially Justified or Harmless, the Court Should, Pursuant to Rule 37(c)(1), Preclude Defendants from Relying on Those Declarants.**

Defendants' use of new witness declarations on reply, without having ever identified those individuals in initial disclosures or discovery responses, plainly violates Rule 26 and is prejudicial to Plaintiffs.  The Fourth Circuit has made clear that "a party who fails to identify a witness as required by Rule 26(a) or (e) is not allowed to use that witness to supply evidence on a motion" for summary judgment, absent a showing of substantial justification or harmlessness.  *Hoyle*, 650 F.3d at 329.  Rule 37(c)(1) is meant to "provide[] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, at a hearing, or on a motion, such as one under Rule 56."  Fed. R. Civ. P. 37(c)(1), advisory committee's note to 1993 amendment.  Defendants' failure to disclose material that they later used as evidence in reply papers at the summary judgment stage is precisely the type of gamesmanship that Rule 37(c)(1) is designed to deter.  Moreover, courts have "particularly wide latitude" to exclude evidence provided by previously undisclosed witnesses under Rule 37(c)(1).  *Wilkins*, 751 F.3d at 222.  The Court should impose Rule 37(c)(1)'s "automatic sanctions" on Defendants to further the deterrent purpose of Rule 37(c)(1).

1. **The Surprise to Plaintiffs Is Severe Because Defendants Never Mentioned These Witnesses in Disclosures, Discovery Responses, or Previous Filings**

There is no question that Plaintiffs were unfairly surprised by these new declarations.  Only in the attachments to its reply brief did Defendants reveal two witnesses who were never previously disclosed.  As the Fourth Circuit recognizes, "[a] party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare." *Southern States*, 318 F.3d at 597.  In *Hoyle*, the court found the district court acted within its discretion in striking a declaration submitted at summary judgment where the witness had not been disclosed, as "Hoyle failed to timely identify Williams as a potential witness and failed to show that her failure to do so was either substantially justified or harmless." *Hoyle*, 650 F.3d at 330.  Additionally, in *Hoyle* the court found that "references to Williams in Deposition testimony and in Hoyle's discovery responses were 'insufficient to alert Defendant that Williams was a potential witness.'" *Id*.

The surprise in this case is even more stark.  Unlike in *Hoyle*, where there was at least some indirect reference to the witness, Defendants here made no mention of Mr. Garza or Ms. Clark in their initial disclosures or discovery responses.  Despite having knowledge—as conceded by counsel for Defendants on the record in open court—that discriminatory racial adjustments to neuropsychological test scores post-2021 were at issue in the litigation and informing the Court that Defendants planned to use the June 2021 directive to support their defenses, Defendants did not notify Plaintiffs that these ███████████ could be potential witnesses.

Moreover, Defendants made no effort to mitigate the prejudice caused by their failure to disclose Mr. Garza and Ms. Clark because they did not even supplement their disclosures upon learning that these individuals possessed information they intended to use.  *See* Fed. R. Civ. P. 26(e)(1)(A) (requiring supplementation or correction of a disclosure or discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is

13

incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). Plaintiffs were therefore completely blindsided when Defendants attached declarations from surprise witnesses to their reply papers. Furthermore, even if Defendants had made passing *Hoyle*-like references to Mr. Garza or Ms. Clark, unless such references provided Plaintiffs clear notice, Mr. Garza and Ms. Clark should have been added to Defendants' disclosures. *See Hoyle*, 650 F.3d at 330.

### 2. There Is No Adequate Cure for the Surprise Because Defendants Disclosed the Declarations Only in Reply Papers

Plaintiffs have no adequate cure for the prejudice at this stage. Briefing of Defendants' summary judgment motions closed with the filing of their July 24, 2025 reply papers. Putting aside that sur-reply briefs are ordinarily disfavored, sur-reply briefing would accomplish little, if anything, absent depositions of Mr. Garza and Ms. Clark. As a result, Plaintiffs have not had the opportunity to challenge these declarations in the course of the summary judgment briefing. Similarly to *Hoyle*, where counsel "ha[d] been clearly prejudiced in that it has lost its opportunity to depose," Plaintiffs have been clearly and unfairly prejudiced because Defendants' ambush has deprived Plaintiffs of any opportunity to depose, challenge, or cross-examine Mr. Garza and Ms. Clark. *Id*. Striking the Declarations is the only adequate remedy, as the Fourth Circuit has held that the ability to "'cross-examine … concerning a new opinion at trial is not the ability to cure.'" *Southern States*, 318 F.3d at 597-98.

### 3. Allowing Use of the Witnesses and Declarations Would Substantially Disrupt the Proceedings Because They Were Filed at a Late Juncture in This Case

Allowing Defendants to rely on declarations from undisclosed witnesses would disrupt this case given the limited time that remains for fact discovery. The Fourth Circuit has held that a

"party that fails to provide disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the court's management of the case." *Saudi v. N. Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005).

Here, Plaintiffs have had no opportunity to seek discovery regarding these witnesses and have only a limited time left before the scheduled close of discovery on September 5, 2025 (*see* ECF No. 216).  Attempting to cure the unfair surprise and prejudice would at least require additional discovery and permitting Plaintiffs to file a sur-reply, which would delay the Court's resolution of Defendants' summary judgment motions.  Besides, these two witnesses ███████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████████ particularly when Defendants' own documents state that demographic norms were applied.  Given all the evidentiary issues involved in these surprise declarations the most appropriate remedy is to strike them.

### 4.  Importance of the Evidence

The more important the testimony, the more vital it is that the opposing counsel receive timely notice of its existence.  The Fourth Circuit has explained that "this factor must be viewed from the perspective of both parties." *Southern States*, 318 F.3d at 598.  Although the late-arriving declarations might be important to Defendants,  "the importance of the testimony" also "point[s] out why it should have been disclosed in a timely manner." *Id*.  In fact, the greater the significance of the testimony, the more prejudicial it is for Plaintiffs to be deprived of the opportunity to rebut that evidence.  The prejudice is further amplified when testimony is introduced at the eleventh hour, despite Defendants being well aware of Plaintiffs' allegations and the evidence that exists confirming the application of racial norms, because Plaintiffs are left without a meaningful chance to test the reliability of this significant testimony.

Here, Defendants were well aware of Plaintiffs' arguments as to the application of demographic norms from the outset of the case. Moreover, they failed to produce the 2021 directive, the 2021 neuropsychology orientation manual, or information about these late-arriving witnesses in response to Plaintiffs' discovery requests. Given that the Declarations arrived at the figurative stroke of midnight (in that Defendants' reply papers concluded the summary judgment briefing), the Court should weigh the importance of the evidence against the significant prejudice to Plaintiffs, who were provided no notice of additional fact witnesses and have no realistic opportunity to depose these witnesses.

### 5. Defendants Have No Valid Explanation for Their Nondisclosure

Defendants have offered no valid reason for withholding the identity of these witnesses. Where a party is "well aware" of the witness and fails to disclose them, exclusion is proper. *Hoyle*, 650 F.3d at 330. As noted above, throughout this case, Defendants have been fully aware of Plaintiffs' allegations of improper application of demographic norms by Neutral Physicians, because (1) Plaintiffs repeatedly identified and alleged the harms of using racial demographic adjustments in the Amended Complaint and other briefing prior to Defendants filing their motions for summary judgment; (2) documents concerning the ███████████ application of discriminatory racial norms, including as to named Plaintiffs, were produced in this matter as early as August 2024; and (3) Defendants, who paid for examinations completed in part by these declarants, were well aware that these witnesses existed and could have been disclosed long ago. Instead, Defendants chose to unfairly surprise Plaintiffs at a strategic point in the summary judgment briefing, denying Plaintiffs the opportunity to object to the declarations' inclusion and to depose the declarants earlier in the discovery process.

**B. Alternatively, if the Court Does Not Strike the Declarations, Then It Should Deem the Declarants' Statements As Proof That Material Factual Disputes Remain, Which Foreclose Summary Judgment in Defendants' Favor**

Should the Court decide not to strike the Declarations, then it should deem the declarants' statements as proof of material factual disputes as to the Plaintiffs' claims. The Declarations raise factual disputes as to whether ██████████████████████████████████████████ ██████████████ Mr. Garza and Ms. Clark aver that ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. *See* Garza Decl. ¶ 6; Clark Decl. ¶¶ 5-11. As explained above, however, ████████████████████████████████████████ ██████████████████████████████████████████.

Moreover, Mr. Garza and Ms. Clark ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ *See* Clark Decl. ¶¶ 5, 7-10 ██████████ ██████████████████████████████████████ Moreover, Ms. Clark ████ ████████████████████████████████████████████████████████ ████████████████████████████████████ *See id.* ¶¶ 5, 7-10 ████████████████████████████████████. Thus, at the very least, a material factual dispute exists as to whether ████████████████████████████████████████ ██████████████████████████. Accordingly, the Court should deem the declarants' statements proof that there are material factual disputes that preclude granting summary judgment in Defendants' favor.

**CONCLUSION**

For the foregoing reasons, the Court should strike the Declaration of Roberto Garza and the Declaration of Stephanie M. Clark. In the alternative, the Court should find that these declarations only underscore the existence of genuine issues of material fact that foreclose summary judgment against Plaintiffs Daniel Loper, Jamize Olawale, and Charles Sims.

Dated: August 15, 2025

<div style="margin-left:40%">

Respectfully submitted,

**SEEGER WEISS LLP**

By: _s/ Benjamin R. Barnett_
     Benjamin R. Barnett
     325 Chestnut Street, Suite 917
     Philadelphia, PA 19106
     Telephone: (215) 553-7980
     bbarnett@seegerweiss.com

***Counsel for Plaintiffs and for the
Proposed Class and Subclasses***

</div>

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*

18

Noah T. Reid *(admitted pro hac vice)*
Yasha Torabi *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone:  (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com
yasha@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
Bobby J. Bradford *(admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E.  Main Street, Suite 200
Pensacola, FL 32502
Telephone:  (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
BBradford@awkolaw.com

***Counsel for Plaintiffs and for the***
***Proposed Class and Subclasses***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel***
***for the Proposed Class and Subclasses***

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone:  (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

19

*Additional Counsel for Plaintiffs*