# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS McGAHEE, MICHAEL McKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM McCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL,<br><br>  Defendants. | No. 1:23-cv-00358-JRR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO STRIKE REPLY DECLARATIONS**

# TABLE OF CONTENTS

                                                                                                                                         **Page**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.     Ample Evidence Demonstrates Prohibited Surprise as to the Garza and Clark Declarations ............................................................................................ 2

    II.    Plaintiffs' Longstanding Allegations Regarding Application of Race-Based Norms, Including After Issuance of the June 2021 Directive, Provided Ample Notice to Defendants Regarding the Relevance of the Issue. ..................... 6

    III.   Depositions of the Declarants, Who Have No First-Hand Knowledge About the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Would Not Cure the Harms Caused by This Surprise, Particularly Given Defendants' Repeated Efforts to Block Any Discovery Beyond Plaintiffs' Administrative Records ............................................ 8

    IV.   Defendants' Substantive Argument Regarding the Application of Racial Norms Underscores the Importance of the Alternative Relief Requested by Plaintiffs ................................................................................................................ 11

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. McDonald's Corp.*,
  2012 WL 2523883 (D. Md. June 28, 2012) .............................................................................. 10

*Hagans v. Raimondo*,
  2024 WL 2155022 (D. Md. May 13, 2024) .............................................................................. 12

*Hoyle v. Freightliner, LLC*,
  650 F.3d 321 (4th Cir. 2011) ......................................................................................... 6, 10, 12

*Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*,
  698 F. Supp. 3d 814 (M.D.N.C. 2023) ....................................................................................... 2

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
  125 F. Supp. 3d 1155 (D. Colo. 2015) ....................................................................................... 2

*Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*,
  348 F. Supp. 3d 458 (D. Md. 2018) ........................................................................................... 6

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ..................................................................................................... 2

*Salami v. N.C. Agric. & Tech. State Univ.*,
  394 F. Supp. 2d 696 (M.D.N.C. 2005) .................................................................................... 10

*Samsung Elecs. Co. v. Nvidia Corp.*,
  314 F.R.D. 190 (E.D. Va. 2016) ................................................................................................ 8

*SAS Inst. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*,
  2012 WL 12914641 (E.D.N.C. Dec. 11, 2012) ....................................................................... 11

*Shatsky v. Syrian Arab Republic*,
  312 F.R.D. 219 (D.D.C. 2015) ................................................................................................... 3

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
  318 F.3d 592 (4th Cir. 2003) ..................................................................................................... 2

*Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*,
  255 F.R.D. 645 (N.D. Iowa 2009) ............................................................................................. 3

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993) ....................................................................................................... 6

*Wall Recycling, LLC v. 3TEK Glob., LLC*,
   588 F. Supp. 3d 647 (M.D.N.C. 2022) .................................................................................. 12

*Wilkins v. Montgomery*,
   751 F.3d 214 (4th Cir. 2014) ................................................................................................. 10


**Rules**

Fed. R. Civ. P.  26(a)(1)(A)(i) ................................................................................................. 3, 5

Fed. R. Civ. P. 26(e)(1)(A) ......................................................................................................... 5

**INTRODUCTION**

Defendants admit that they failed to disclose witnesses Roberto Garza and Stephanie M. Clark in their Rule 26(a)(1)(A) initial disclosures and admit that they failed to amend or update those disclosures before using their Declarations as evidence in this case. Those admissions alone provide a sufficient factual basis to grant Plaintiffs' Motion to Strike. None of Defendants' post hoc rationales excuse their actions or conduct. The fact that Garza's and Clark's names appear in previously produced documents (which contradict the averments in their Declarations) falls far short of the notice required by federal courts.

Moreover, Defendants' effort to rewrite the history of this litigation—suggesting that they did not learn of Plaintiffs' allegations about the improper application of race-based demographic norms until Plaintiffs opposed Defendants' three motions for summary judgment—fails by simple reference to the extensive allegations in the original and Amended Complaint, Plaintiffs' prior discovery efforts, and prior proceedings in this case. By failing to properly disclose Garza and Clark and attaching their Declarations to their reply papers, Defendants did their best to ensure that Plaintiffs had no meaningful opportunity to challenge the veracity of their written statements. Even worse, Defendants filed the surprise Declarations near the end of fact discovery after having opposed any discovery beyond the Administrative Records (which, of course, do not include these Declarations). Doing so plainly violated the Federal Rules of Civil Procedure, and for that reason the Court should strike the Garza and Clark Declarations. In the alternative, the Court should treat the Declarations as evidence reflecting that genuine disputes of material fact exist as to Defendants' application of racially discriminatory testing norms—in particular, the continued application of such norms after June 2021—and accordingly deny Defendants' summary judgment motions.

## ARGUMENT

**I. Ample Evidence Demonstrates Prohibited Surprise as to the Garza and Clark Declarations**

Defendants argue that Plaintiffs should not have been surprised by the Garza and Clark declarations because their names appeared in documents produced by the parties. Opp. at 9.[1] This mere fact is insufficient to meet Defendants' disclosure obligations. Rather than oblique references in produced documents, informal disclosure under Rule 26(a) requires the "functional equivalent of a supplemental discovery response." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015) ("To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must [be] in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient.").[2] Because Defendants never disclosed Garza and Clark as witnesses before filing their summary judgment reply papers, Plaintiffs were surprised by their Declarations as a factual and procedural matter.

Moreover, Defendants confuse the type of "surprise" that the Court is required to consider under the factors in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003). Rule 26(a) disclosures require the parties to disclose—without the need for a

---

[1] "Opp." refers to pages of Defendants' Opposition to Plaintiffs' Motion to Strike Reply Declarations, filed under seal at ECF No. 264. "Mem." refers to pages of the Memorandum of Law in Support of Plaintiffs' Motion to Strike Reply Declarations, filed under seal at ECF No. 248.

[2] *Accord Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("Having a name and some semblance of the person's relevance is a far cry from having disclosed that individual as a witness."); *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 698 F. Supp. 3d 814, 821-22 (M.D.N.C. 2023) ("For a witness to have 'otherwise been made known' during discovery, a supplemental disclosure must demonstrate that the party intends to present the witness at trial, not merely that the person has knowledge pertinent to the litigation.").

2

specific discovery request—"the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the *subjects of that information*— that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Thus, the actual test for "surprise" focuses on whether Plaintiffs were aware of (1) the name and contact information of someone who might have discoverable information, (2) the subjects of the information that the individual might have, and (3) that the individual had been identified as someone whose testimony Defendants may use to support their claims and defenses.[3] Put more succinctly, "[e]xistential awareness has never been, nor will it ever be, a substitute for production." *Transamerica Life Ins. Co.*, 255 F.R.D at 652 (party was prejudiced by the "belated inclusion of information" because opposing party's untimely disclosures offered "a different picture of the relevant issues"); *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226 (D.D.C. 2015) (citing *Transamerica Life Ins. Co.*, 255 F.R.D. at 652).

Here, the Declarations themselves were the first time that Defendants revealed that Garza and Clark were fact witnesses concerning a core disputed factual issue in this case: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ As noted in Plaintiffs' opening memorandum (Mem. at 7 & n.5, 9-10, 15-16), Defendants knew about Plaintiffs' allegations concerning application of racial demographic norms since the outset of this litigation in 2023, yet they did not produce the 2021 Neuropsychologist Orientation Manual until April 2025 (and, significantly, the 2021 Manual actually instructed

---

[3] *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 255 F.R.D. 645, 656 (N.D. Iowa 2009) ("[R]eferences to a person in various documents produced in discovery, even dozens of such documents, and use of those documents by the opposing party in further depositions or discovery, is not a substantial justification for untimely identification of that person as a witness, nor does it make the failure to timely identify the witness harmless[.] […] [A party's] belated realization of the relevance of [an individual's] testimony is itself an admission that [the opposing party] could not reasonably have been expected to recognize the importance of [the individual] as a potential witness in [the party's] case.").

3

"Neutral Physicians" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[4] and they did not produce the allegedly simultaneously issued directive to stop using Heaton norms until May 7, 2025. Beyond the multiple allegations in both the original and the Amended Complaint (see, e.g., Class Action Compl. (ECF No. 1) ¶¶ 107 & n.6, 112; Am. Class Action Compl. (ECF No. 56) ¶¶ 127, 182 n.16, 327), application of these race-based norms after June 2021 was one of the topics explored in the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. See Decl. of Benjamin R. Barnett, dated Aug. 15, 2025 (ECF No. 247-1) ("Barnett Decl."), Ex. ▇ (sealed at ECF No. 248) ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇. Furthermore, Plaintiffs had explicitly directed discovery requests toward the issue back in August 2024,[5] and Defendants did not produce the 2021 Manual or the June 2021 directive in response thereto, instead proffering myriad objections. See Barnett Decl., Ex. P, at 18-21 (ECF No. 247-5, at 3-6) (Defs.' Revised Resps. & Objs. to Req. for Produc. No. 6). At no time did Defendants inform Plaintiffs that there were ▇▇▇▇▇▇▇▇▇▇▇▇ who would testify (through Declarations) that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

In other words, the surprise here is not, as Defendants assume, the declarants' mere *names*. Indeed, Plaintiffs' opening memorandum acknowledges that *Plaintiffs* produced several of the physicians' reports that listed the declarants' names. See Mem. at 7-10. Rather, the surprise arises from Defendants' very recent reliance on these witnesses' statements about specific facts relating to Defendants' defenses. There was no way for Plaintiffs to know—absent a disclosure mandated

---

[4] Reply Decl. of Benjamin R. Barnett, dated Apr. 11, 2025 (ECF No. 172-1), Ex. O (NFL_ALFORD-0068319) (filed under seal at ECF No. 173; placeholder at ECF No. 172-12) (Neurology/Neuropsychology Neutral Physician Panel Orientation Manual, effective June 8, 2021, Ex. 3 at 6) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").

[5] For example, Plaintiffs' August 28, 2024 Request for Production No. 6 asked for "[a]ll Documents Concerning the procedures and guidelines set forth in the "Neuropsychology Manual" (the Clinician's Interpretation Guide, August 2018) concerning the education or demographically adjusted normative data specified by the NFL protocol, including any updates to the Neuropsychology Manual between the August 2018 version and February 9, 2023." Barnett Decl., Ex. P at 18 (ECF No. 247-5, at 3).

by Rule 26, which Defendants did not provide—that Defendants would suddenly produce witnesses stating, in effect, that the written and signed reports from Defendants' own hired physicians were incorrect.[6]

Moreover, Plaintiffs questioned ███████████████████████████████ ███████████████████████████████ Barnett Decl., Ex. ██ Defendants made no disclosure of the declarants at that time. Several months later, though, Defendants suddenly submitted Declarations from witnesses who maintain ███████████████████ ███████ despite the reports stating so in writing, and conveniently submitted these Declarations in support of a reply brief, to which Plaintiffs did not have the opportunity to respond.

Defendants' strained efforts to distinguish controlling cases (Opp. at 9-11) fall well short. As in many of the cases concerning Rule 37(c)(1), in which parties sought to use previously undisclosed witness testimony in support of their claims (*Hoyle*) or submit previously undisclosed expert opinions (*Southern States*), Defendants' submission of declarations from undesignated witnesses led to the same type of surprise that courts have found to be in violation of Rule 37(c)(1).

Furthermore, Defendants' description of *Hoyle* omits the fact that the opposing party to the motion to strike there had made a stray reference to the witness's name in a discovery response but had not cited the person as a witness in response to interrogatories specifically requesting

---

[6] Defendants assert that the effect of supplementing their Rule 26(a) disclosures would have given Plaintiffs only information they already had—the declarants' names—and that "Rule 26(e)(1) makes clear that such updating was not required." Rule 26(e)(1) states that disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and *if the additional or corrective information has not otherwise been made known to the other parties* during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Here, had Defendants initially identified the declarants in their Rule 26(a) disclosures, they would have had to indicate not only their names, but also the "*subjects of the* [*discoverable*] *information*" "that the disclosing party may use to support its claims or defenses" that they were "likely to have." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). There is no dispute that Defendants failed to include Garza or Clark in their Rule 26(a)(1) disclosures.

5

witness names and the substance of their testimony. Here, the declarants' names are mentioned in documents produced by the parties but were never cited in disclosures, discovery responses, or anything that could be construed as an informal disclosure as witnesses that might be used to support claims or defenses. The Fourth Circuit in *Hoyle* held that the district court acted within its discretion in striking the declaration of the witness due in part to the surprise to the moving party. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011). Likewise, the Court should find here that there was unfair surprise to Plaintiffs.

Defendants cite *Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, 348 F. Supp. 3d 458 (D. Md. 2018) (Opp. at 7), emphasizing the Fourth Circuit's preference for deciding cases on the merits rather than technicalities, especially if a failure to disclose is harmless. *Id.* at 466 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). That maxim, though, does not avail Defendants because enforcing Rule 37's strictures against gamesmanship in witness disclosures *furthers* the goal of deciding cases on their merits. Excluding the Clark and Garza declarations preserves the integrity of the fact-finding process by ensuring that neither side gains an unfair advantage by surprise. Defendants' approach, by contrast, would allow them to inject unchallenged factual assertions into the record, which could improperly impact a merits-based determination. The "merits" are best served when both sides have had a fair and equal chance to present evidence on contested points, which is not the case here.

II. **Plaintiffs' Longstanding Allegations Regarding Application of Race-Based Norms, Including After Issuance of the June 2021 Directive, Provided Ample Notice to Defendants Regarding the Relevance of the Issue.**

Defendants excuse their failure to properly or timely disclose Garza and Clark by suggesting that the Declarations merely respond to arguments "Plaintiffs made for the first time in their summary judgment opposition brief" (Opp. at 13). The record, however, squarely refutes

6

this explanation. There can be genuine dispute that Plaintiffs raised the issue of application of discriminatory racial norms to neuropsychological testing, including testing conducted after June 2021, well before they filed their summary judgment opposition papers.

Notably, aside from the allegations in their pleadings (*see supra* at 4), Plaintiffs directed discovery requests toward the issue (*see supra*, at 4 n.5), and this issue was discussed at length during the February 21, 2025 hearing on Plaintiffs' motion to compel (Barnett Opening Decl., Ex. B (ECF No. 247-4) (Hr'g Tr. 17:18-25, 85:20-87:18)). Furthermore, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ and Plaintiffs' April 11, 2025 class certification reply memorandum noted the continued use of demographic adjustments through 2024. *See* Mem. at 7-8 & nn.5-6, 8 ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. Ex. ▊ (Smith Dep. Tr. 190:24-191:6); *see* JO-1026, at 1031.").[7] Moreover, Defendants produced a copy of the 2021 Neuropsychologist Manual only after Board member Smith's deposition—mere hours after, at that—and they withheld the June 2021 directive until a month later, on May 7, 2025 (Mem. at 9-10). Both relate directly to and discuss application of demographic norms. Defendants produced these documents in response ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Given all of these incontrovertible facts, Defendants' assertion that they first became aware of Plaintiffs' claims about application of racial norms only after Plaintiffs filed their summary judgment opposition papers on April 25, 2025 (Opp. at 1-3, 6, 13-15) is inaccurate and disingenuous.

---

[7] Defendants themselves point to Plaintiffs' class certification reply memorandum in acknowledging that Plaintiffs ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ *See* Opp. at 3 (stating that Plaintiff Olawale ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ (citing Pls.' class certification reply mem. at 21).

7

**III.    Depositions of the Declarants, Who Have No First-Hand Knowledge About ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Would Not Cure the Harms Caused by This Surprise, Particularly Given Defendants' Repeated Efforts to Block Any Discovery Beyond Plaintiffs' Administrative Records**

Defendants contend that Plaintiffs could have cured the surprise by deposing Garza and Clark (Opp. at 12-13), but depositions would not have provided a sufficient curative effect because (i) the witnesses have limited knowledge; and (ii) given the procedural posture of the case, substantial disruption of the proceedings would have resulted. *See Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) ("A failure to disclose in the right form, at the right time, impedes discovery at the time of nondisclosure, such that later putting the opposing party on notice does not render the nondisclosure unsurprising or curable.").

*First*, the declarants ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Indeed, although she discusses in her Declaration ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, Ms. Clark has no personal knowledge ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. The declarants have no first-hand knowledge ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ particularly when Defendants' own documents state that demographic norms were, in fact, applied. Moreover, the "Neutral Physicians" who were supposed to be ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Mem. at 7-10. Irrespective of whether Plaintiffs had deposed the declarants, the question would still remain whether other "Neutral Physicians" ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in other applicants' testing. Consequently, deposing two declarants having very limited knowledge that does not apply

8

to all Plaintiffs (let alone all absent members of the proposed class) would have wasted time and resources because it would not have resolved the factual dispute about whether Defendants did or did not apply the racial norms to Plaintiffs' benefits claims.

*Second*, the procedural posture of the case would have made it inefficient and disruptive to depose the witnesses on the eve of close of discovery.[8]  The Court had already agreed to extend the discovery period at the Parties' request several times, with other deadlines such as those for expert disclosures and motions related to expert witnesses tied to the deadline for completion of discovery.  Requesting a further extension of discovery to depose two non-physician fact witnesses, who admit they have very limited knowledge about application of racial norms to neuropsychological test results, would have disrupted the proceedings. Even if Plaintiffs had rushed to depose Ms. Clark and Mr. Garza, the prejudice would not be cured.  Plaintiffs would still need a mechanism to present information learned during the depositions to the Court before it rules on the pending summary judgment motions.  Defendants had already filed their consolidated summary judgment reply brief, so Plaintiffs would have been put in the position of seeking leave to file a disfavored sur-reply in order to put any additional facts gleaned from post-reply depositions before the Court.  Defendants maintain that taking or foregoing depositions reflects a "strategic" choice (Opp. at 12)—but so does springing surprise Declarations in reply briefing.  If these Declarations are not struck, the Court could decide the summary judgment motions without Plaintiffs having had a meaningful opportunity to respond to Defendants' new evidence.

---

[8] Notably, Defendants have, throughout this case, expended a great deal of time and energy opposing Plaintiffs' efforts to secure discovery outside the Administrative Records, including questioning Plaintiffs' need for depositions, opposing motions to compel, and trickling out their document production over the course of almost a year.  Given this history, Defendants would likely have resisted even short depositions of these witnesses, relying on their repeated arguments that Plaintiffs are not entitled to discovery outside the Administrative Records.

The Fourth Circuit's analysis in *Wilkins v. Montgomery*, 751 F.3d 214 (4th Cir. 2014), is instructive on this point. In *Wilkins*, the Fourth Circuit noted that introducing an undisclosed expert report on the eve of key deadlines was obviously prejudicial: "It is hard to accept that these events would not serve as a surprise to [the opposing party], or that [the opposing party] could easily cure such a surprise." *Id.* at 222-23.[9] Here, Defendants introduced new evidence at a similarly critical juncture, and although discovery had not yet formally closed, the situation is analogous. Plaintiffs are facing a dispositive motion record that they cannot meaningfully supplement. Just as in *Wilkins*, it is hard to accept that Plaintiffs could "easily cure" the surprise in the compressed timeframe and procedural posture created by Defendants' actions. Similarly, in *Hoyle*, the prejudice was clear because the witness was disclosed so late that the defendant "lost its opportunity to depose" him. 650 F.3d at 330. Here, although a sliver of discovery time remained, Plaintiffs were deprived of the opportunity to depose the declarants before summary judgment briefing was completed. Plaintiffs are in a functionally similar position to that of the plaintiff in *Hoyle*. If the Court does not strike these declarations pursuant to Rule 37, Plaintiffs will have no opportunity to respond to the declarations in the context of these dispositive motions.

Defendants' cases on this point are distinguishable. In *Ace Am. Ins. Co. v. McDonald's Corp.*, 2012 WL 2523883, at *3-6 (D. Md. June 28, 2012) (Opp. at 13), the improper disclosure was insufficient because late-arriving Rule 26(a)(2) disclosures included only the witnesses' names and not the relevant subject matter; here, Defendants did not even disclose these declarants' names. In *Salami v. N.C. Agric. & Tech. State Univ.*, 394 F. Supp. 2d 696, 710 (M.D.N.C. 2005)

---

[9] Defendants contend that Plaintiffs' reliance on *Wilkins* is misplaced because discovery there had already closed. Opp. at 11. That argument misses Plaintiffs' larger point. Plaintiffs rely on *Wilkins* to establish that Defendants have the burden of showing that their nondisclosure was either "substantially justified or was harmless" and to highlight that courts have "particularly wide latitude" to exclude evidence provided by previously undisclosed witnesses under Rule 37(c)(1). *See Wilkins*, 751 F.3d at 222.

10

(Opp. at 12-13), and *SAS Inst. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 2012 WL 12914641, at *4 (E.D.N.C. Dec. 11, 2012) (Opp. at 8), Rule 26(a)(1) fact witness disclosures were not at issue. Both cases concerned expert reports or supplements that were disclosed after the witnesses had already been disclosed and *deposed*. Those situations are not analogous to what transpired here: Defendants' injection, at the very close of briefing, of Declarations from undisclosed fact witnesses in support of a reply memorandum on dispositive motions for the purpose of controverting information on the face of Defendants' own documents in the record.

## IV. Defendants' Substantive Argument Regarding the Application of Racial Norms Underscores the Importance of the Alternative Relief Requested by Plaintiffs

Finally, Defendants make substantive arguments concerning the information contained in the Declarations and ▮▮▮▮▮▮▮▮▮▮ neuropsychological testing. *See* Opp. at 15-16. Defendants contend that the witnesses' declarations should be accepted without question, purportedly settling a factual issue as to whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants' own records, however, show that a factual dispute still exists as to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For example, the 2021 Neuropsychologist Manual—issued the same day as the June 2021 directive—states: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Supra* at 4 n.4. Furthermore, as summarized in Plaintiffs' opening memorandum, documents produced by the Parties state on their face that race-based norms were applied. *See* Mem. at 4-7. Lastly, as discussed above, Mr. Garza and Ms. Clark have no knowledge of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* Rather than accept Defendants' representations at



face value, the Court should, if it declines to strike the Declarations,[10] deem the declarants' statements as proof that genuine issues of material fact remain, thereby foreclosing summary judgment in Defendants' favor.

## CONCLUSION

For the foregoing reasons and those set forth in the Opening Memorandum, the Court should strike the Declaration of Roberto Garza and the Declaration of Stephanie M. Clark. In the alternative, the Court should find that these Declarations only underscore the existence of genuine issues of material fact that foreclose summary judgment against Plaintiffs Daniel Loper, Jamize Olawale, and Charles Sims.

Dated: September 12, 2025

                Respectfully submitted,

                **SEEGER WEISS LLP**

By:   *s/ Benjamin R. Barnett*
       Benjamin R. Barnett
       325 Chestnut Street, Suite 917
       Philadelphia, PA 19106
       Telephone: (215) 553-7980
       bbarnett@seegerweiss.com

       ***Counsel for Plaintiffs and for the Proposed Class and Subclasses***

---

[10] Citing *Wall Recycling, LLC v. 3TEK Glob., LLC*, 588 F. Supp. 3d 647, 658 n.10 (M.D.N.C. 2022), Defendants argue in passing (Opp. at 7 n.5) that Plaintiffs' motion is procedurally improper. Putting aside that arguments relegated to footnotes merit little or no consideration as a general matter, *see, e.g.*, *Hagans v. Raimondo*, 2024 WL 2155022, at *3 n.3 (D. Md. May 13, 2024), Defendants' contention is unavailing. In *Wall Recycling*, the court noted that a Rule 12(f) motion to strike typically applies to pleadings, not evidentiary filings. Courts, though, routinely entertain motions to exclude or strike summary judgment affidavits or declarations that violate Rule 26. Indeed, the Fourth Circuit in *Hoyle* affirmed a district court's decision to "strike" a declaration attached to a party's summary judgment opposition due to belated disclosure of the witness. *See Hoyle*, 650 F.3d at 330. At any rate, to the extent that *Wall Recycling* suggests that a court should "disregard" rather than "strike" a declaration submitted in support of a summary judgment motion, that is a distinction without a meaningful difference because disregarding the surprise Declarations here would be functionally the same as striking them and a perfectly suitable remedy. *See Wall Recycling, LLC*, 588 F. Supp. 3d at 658 n.10.

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
Noah T. Reid *(admitted pro hac vice)*
Yasha Torabi *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com
yasha@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
BBradford@awkolaw.com

***Counsel for Plaintiffs and for the
Proposed Class and Subclasses***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.

13

Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Counsel for Plaintiffs and Liaison Counsel*
*for the Proposed Class and Subclasses*

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

*Additional Counsel for Plaintiffs*