## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

JASON ALFORD *et al.*,

       Plaintiffs,

   v.

THE NFL PLAYER DISABILITY &
SURVIVOR BENEFIT PLAN *et al.*,

       Defendants.

Case No. 1:23-cv-00358-JRR

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION TO STRIKE REPLY DECLARATIONS

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY .......................................................................... 1

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ...................................................................................................................... 8

    I.    THE DECLARATIONS CANNOT HAVE "SURPRISED" PLAINTIFFS BECAUSE THEY ARE FROM THE VERY TECHNICIANS WHOM PLAINTIFFS ALLEGE IMPROPERLY NORMED TEST RESULTS. ............... 9

    II.    PLAINTIFFS COULD HAVE ADEQUATELY CURED ANY PURPORTED SURPRISE BY PROMPTLY SEEKING DEPOSITIONS OF THE DECLARANTS, AND THE PROCEEDINGS HAVE NOT BEEN DISRUPTED. .......................................................................... 12

    III.    DEFENDANTS WERE SUBSTANTIALLY JUSTIFIED IN USING THE DECLARATIONS BECAUSE THEY RESPOND ONLY TO ARGUMENTS PLAINTIFFS MADE FOR THE FIRST TIME IN THEIR SUMMARY JUDGMENT OPPOSITION BRIEF .............................................. 13

    IV.    THE NARROW DECLARATIONS REFUTE A COLLATERAL ISSUE UNNECESSARY TO RESOLVING ANY OF THE SUMMARY JUDGMENT MOTIONS, AND THEY DO NOT SHOW ANY GENUINE DISPUTE OF MATERIAL FACT. ................................................... 15

CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

Page

<u>**CASES**</u>

*Ace Am. Ins. Co. v. McDonald's Corp.*,
  2012 WL 2523883 (D. Md. June 28, 2012)................................................................. 13, 15

*Ali v. WorldWide Language Res., LLC*,
  686 F. Supp. 3d 430 (E.D.N.C. 2023)............................................................................ 12

*Allegis Grp., Inc. v. Bero*,
  689 F. Supp. 3d 81 (D. Md. 2023).................................................................................. 12

*Baldassarre v. Norfolk S. Ry. Co.*,
  2020 WL 855964, (E.D. Va. Feb. 19, 2020), *aff'd*, 854 F. App'x 540 (4th Cir.
  2021) ...................................................................................................................... 7, 14, 15

*Bresler v. Wilmington Tr. Co.*,
  855 F.3d 178 (4th Cir. 2017) ........................................................................................... 8

*Hoyle v. Freightliner, LLC*,
  2009 WL 2462098 (W.D.N.C. Aug. 7, 2009), *aff'd in part, vacated in part*,
  650 F.3d 321 (4th Cir. 2011) ........................................................................................ 10

*Hoyle v. Freightliner, LLC*,
  650 F.3d 321 (4th Cir. 2011) ..................................................................................... 9, 11

*In re Blackjewel LLC*,
  2022 WL 4073337 (Bankr. S.D. W. Va. Sept. 2, 2022) .................................................. 8

*Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*,
  698 F. Supp. 3d 814 (M.D.N.C. 2023) .......................................................................... 14

*Khosmukhamedov v. Potomac Elec. Power Co.*,
  2012 WL 1670152 (D. Md. May 11, 2012)..................................................................... 15

*London v. Wash. Metro. Area Transit Auth.*,
  2023 WL 3727058 (D. Md. May 30, 2023)....................................................................... 7

*Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*,
  348 F. Supp. 3d 458 (D. Md. 2018)............................................................................. 7, 15

*Russell v. Absolute Collection Servs., Inc.*,
  763 F.3d 385 (4th Cir. 2014) ........................................................................................... 6

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
  318 F.3d 592 (4th Cir. 2003) ........................................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Salami v. N.C. Agric. & Tech. State Univ.*,
   394 F. Supp. 2d 696 (M.D.N.C. 2005) ...................................................................... 13

*SAS Inst. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*,
   2012 WL 12914641 (E.D.N.C. Dec. 11, 2012) ...................................................... 8, 12, 13

*Wall Recycling, LLC v. 3TEK Glob., LLC*,
   588 F. Supp. 3d 647 (M.D.N.C. 2022) ...................................................................... 7

*Warren v. Tri Tech Labs., Inc.*,
   2013 WL 6147680 (W.D. Va. Nov. 22, 2013) ......................................................... 7

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) ...................................................................................... 7

*Wilkins v. Montgomery*,
   751 F.3d 214 (4th Cir. 2014) ...................................................................................... 11

**RULES**

Fed. R. Civ. P. 26(e)(1)................................................................................................ 6, 14

Fed. R. Civ. P. 37(c)(1) ............................................................................................... 6

**TREATISES**

6 *Moore's Fed. Prac.* § 26.22 (2022) ......................................................................... 14

8B Charles Alan Wright & Arthur R. Miller et al., *Fed. Prac. & Proc.* § 2284 (3d
   ed.) ........................................................................................................................... 8

## INTRODUCTION

Plaintiffs made numerous new arguments and cited thousands of pages of new evidence in their April 2025 class certification reply and summary judgment opposition briefs. Among the new arguments, Plaintiffs asserted *for the first time* that the claim determinations of Plaintiffs Charles Sims and Jamize Olawale had been adversely affected by demographic norming of their neuropsychological test scores, and offered, as the *sole* support for this new argument, citations to boilerplate language in Mr. Sims's and Mr. Olawale's neuropsychological testing report forms that the Amended Complaint did not reference. In response, Defendants offered short and targeted declarations (two to three pages each) by two psychometricians whose names were explicitly listed as the relevant test scorers on the testing report forms on which Plaintiffs newly relied.

Defendants' two short declarations, offered by the very individuals who were identified as the relevant subject matter experts on the testing report forms on which Plaintiffs newly relied, were an appropriate and narrow response to Plaintiffs' new arguments. The identities of the declarants were known to Plaintiffs within the meaning of Federal Rule of Civil Procedure 26(e)(1) in direct connection with the specific subjects to which they declared, so Plaintiffs cannot claim unfair surprise. The declarations were also substantially justified as a targeted response to the new arguments that Plaintiffs raised for the first time in their April 2025 briefing. Plaintiffs' meritless motion to strike the declarations should be denied.

## FACTUAL AND PROCEDURAL HISTORY

The Amended Complaint raises a number of specific complaints about the determination of the benefit claims of Mr. Sims, Mr. Olawale, and Daniel Loper, but it does not allege that any of their claim determinations were adversely affected by demographic norming of neuropsychological test scores. *See* AC ¶¶ 190-93 (Mr. Sims), 194-201 (Mr. Olawale), 202-14

(Mr. Loper).[1]  When Defendants filed three summary judgment motions in November 2024 as to

the claims raised by Mr. Sims, Mr. Olawale, and Mr. Loper, the summary judgment motions did

not address the subject of demographic norming because those three Plaintiffs had raised no such

claims.  *See generally* LM, OM, SM.[2]  In their April 2025 class certification reply and

consolidated summary judgment opposition briefs, however, Plaintiffs advanced new arguments

that ███████████████████████████████████████████████████████

███████  *See, e.g.*, Plaintiffs' Class Certification Reply at 16-17 & n.29, 20-21, ECF No. 172

("Class Cert. Reply"); MSJ Opp'n at 19-20 & n.32, 30, 45-47 & n.69, 63.  Defendants responded

to these new arguments in their consolidated summary judgment reply brief, while noting that

the arguments were new.  *See* MSJ Reply at 15 & n.17, 24-27 & nn.32-33, 35.

     The psychometrician declarations at issue were only part of Defendants' specific

response to ██████████████████████████████████████████.  It is undisputed

that Mr. Loper did not undergo neuropsychological testing as part of his claim.  AC ¶¶ 202-14;

*see generally* LM; MSJ Opp'n.  And Defendants' response to Mr. Sims's new argument

regarding ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████.  MSJ Reply at 15-16 & n.17.

     Mr. Olawale's new arguments in the April 2025 briefing concerning his

---

[1] Defendants adopt the abbreviations and defined terms in their summary judgment briefs as to Mr. Loper, ECF No. 115-2 ("LM"); Mr. Olawale, ECF No. 124-1 ("OM"); and Mr. Sims, ECF No. 125-1 ("SM") and summary judgment reply brief, ECF No. 235 ("MSJ Reply").

[2] By contrast, two of the other Named Plaintiffs did specifically allege that they were adversely affected by demographic norming.  AC ¶¶ 167, 169, 182 (██████████████████████████████).  Neither of those Plaintiffs cited testing report form language to support their claim.  *Id.*  Mr. Loper, Mr. Sims, and Mr. Olawale further were not examined by any of the Neutral Physicians that the Amended Complaint identified as having engaged in the practice.



█████████████████████████████████. First, he alleged that his ███████████

█████████████████████████████████████████████████████. *See*

Class Cert. Reply at 20-21; MSJ Opp'n at 20 & n.32, 45 n.69, 62-63.  Second, he alleged that

███████████████████████████████████████. *See* Class Cert. Reply at

21 ("Despite Defendants' representation that such a practice ended in mid-2021 [with the

issuance of the directive], █████████████████████████████████

████); MSJ Opp'n at 20.  The sole evidence that Mr. Olawale cited as support for his claim

that his █████████████████████████████████████████████████

███████████████████████—a report that Mr. Olawale already had in his

possession at the time the Amended Complaint was filed.  *See* MSJ Opp'n at 20, 45 & n.69; ECF

No. 153 at 3 ("Moreover, Plaintiffs already produced all of the physician reports, decision letters,

and summary sheets they relied on in drafting the Amended Complaint.").

███████████████████████████ JO-1037 (emphasis added).

Although not directly relevant to Mr. Olawale's own claims, he also identified similar

boilerplate language in the neuropsychological testing report forms for several other players as

alleged instances of ethnicity norming.[3]  None of those players are plaintiffs, and none of them

---

[3] *See* MSJ Opp'n at 20 (citing MSJ Opp'n Ex. 31 (Dr. Douglas Cooper PRFs for: ███████, Dec. 14, 2021 (NFLPLTFS-0000178); ███████, Oct. 13, 2021 (NFLPLTFS-0000181); ███████, Jan. 27, 2021 (NFLPLTFS-0000182); ███████, Oct. 22, 2021 (NFLPLTFS-0001135); ███████, Jan. 19, 2022 (NFLPLTFS-0002175); ███████, Sept. 15, 2021 (NFLPLTFS-0002259); ███████, Mar. 23, 2022 (NFLPLTFS-0002655); ███████, Oct. 26, 2021 (NFLPLTFS-0003103))).  Plaintiffs also claim other players' scores were improperly adjusted on account of ethnicity. *See, e.g., id.* at 69 n.104 (citing MSJ Opp'n Ex. 48 (Dr. Cooper PRF for ███████, Dec. 3, 2020 (NFLPLTFS-0001129); Dr. Cooper PRF for ███████ Feb. 21, 2020 (NFLPLTFS-0001130); Dr. Cooper PRF for ███████, Feb. 2, 2021 (NFLPLTFS-0001131);

3

are otherwise mentioned in the Amended Complaint. *See generally* AC. Many of them reflect testing conducted before the June 2021 Directive. *See supra* note 3. The newly cited neuropsychological testing report forms for those players were produced in discovery by Plaintiffs, not Defendants, and those forms were also in Plaintiffs' possession at the time the Amended Complaint was filed. *See* ECF No. 153 at 3. All of these newly cited report forms from after the June 2021 Directive were prepared by one of two Neutral Physicians, Dr. Salisbury or Dr. Cooper. *See supra* note 3.



*See* Mot. at 4-7.

*See id.* at 4-5; Garagiola Decl. Ex. B, Dr. Salisbury PRFs for:
Olawale (NFL_ALFORD0009617-18, NFL_ALFORD0009623), ▮▮▮ (NFLPLTFS-0000218 at 6, 11), ▮▮▮ (NFLPLTFS-0001920 at 7, 13), and ▮▮▮ (NFLPLTFS-0001921 at 7, 12). The seven reports authored by Dr. Cooper also all had identical boilerplate language on norming, and all identified either Stephanie Mappes Clark, MA or Emily Satel as the psychometricians who had scored the testing—

---

Dr. Cooper PRF for ▮▮▮, Apr. 7, 2021 (NFLPLTFS-0001132); Dr. Salisbury PRF for ▮▮▮, Sept. 21, 2021 (NFLPLTFS-0000218)); *see also* Class Cert. Reply at 20-21. Defendants attach full versions of these reports because the excerpts of these reports that Plaintiffs provide omit the language disclosing the psychometricians. *See* Decl. of M. Garagiola in Supp. of Defs.' Opp'n to Pls.' Mot. to Strike Decls. ("Garagiola Decl."), Exs. A (Dr. Cooper PRFs), B (Dr. Salisbury PRFs).

[4] Plaintiffs and Defendants produced numerous documents identifying Ms. Clark and Ms. Satel. *See* Garagiola

*See* Mot. at 5-7; Garagiola Decl. Ex. A, Dr. Cooper PRFs for: ███████ (NFLPLTFS-0000178 at 6-7), ████ (NFLPLTFS-0000181 at 28-29), ████ (NFLPLTFS-0001135 at 9-10), ████ (NFLPLTFS-0002175 at 7-8), ████ (NFLPLTFS-0002259 at 10-11), ████ (NFLPLTFS-0002655 at 8-9), and ████ (NFLPLTFS-0003103 at 10-11).

Defendants replied to Mr. Olawale's new arguments on July 24, 2025. *See* MSJ Reply at 24-27. Defendants attached to their reply brief two short declarations (two to three pages each) by Mr. Garza and Ms. Clark, both of whom were explicitly identified as the scoring psychometricians on the full versions of the report forms cited by Mr. Olawale. *Compare* Mot. at 4-7 (citing Mot. Exs. D-N (excerpts of Dr. Salisbury and Dr. Cooper PRFs, some of which omit the language identifying Mr. Garza, Ms. Clark, and Ms. Satel)), *with* Garagiola Decl. Ex. B (Dr. Salisbury PRFs identifying Mr. Garza), *and* Garagiola Decl. Ex. A (Dr. Cooper PRFs identifying Ms. Clark and Ms. Satel). The report forms that Mr. Olawale had newly relied on also stated that Mr. Garza operated under the supervision of Dr. Salisbury and that Ms. Clark and Ms. Satel operated under the supervision of Dr. Cooper. *See supra* note 3. ███████████



*See* Garagiola Decl. Ex. D, Pls.' Initial Rule 26(a)(1) Initial Disclosures at 7-8, 10 (Dec. 2, 2024)



---

Decl. Ex. A (documents produced by Plaintiffs identifying Ms. Clark: NFLPLTFS-0000181, NFLPLTFS-0000182 , NFLPLTFS-0001128, NFLPLTFS-0002655); *id.* (documents produced by Plaintiffs identifying Ms. Satel: NFLPLTFS-0000178, NFLPLTFS-0001129, NFLPLTFS-0001131, NFLPLTFS-0001132, NFLPLTFS-0001134, NFLPLTFS-0001135, NFLPLTFS-0001136, NFLPLTFS-0001137, NFLPLTFS-0001138, NFLPLTFS-0002175, NFLPLTFS-0002259, NFLPLTFS-0002987, NFLPLTFS-0003103); *see also id.* (document produced by Defendants identifying Ms. Satel: NFL_ALFORD-0009957).

In direct and specific response to Mr. Olawale's new argument in the April 2025 briefing

that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████. Garza Decl. ¶¶ 4, 6, ECF No. 235-19. Ms. Clark

similarly succinctly declared that ████████████████████████████

███████████████████████. *See* Clark Decl. ¶¶ 4-11, ECF No. 235-18.

████████████████████████████. Garagiola Decl. ¶ 6.

Plaintiffs filed this motion to strike on August 15, 2025. ECF No. 248. Discovery ends

on September 5, 2025. ECF No. 216.

## LEGAL STANDARD

The basic purpose of Federal Rule of Civil Procedure 26(a) "is to allow the parties to

adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute*

*Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). "If a party fails to [timely] provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A party must

"supplement" their disclosures "if the party learns that in some material respect the disclosure or

response is incomplete or incorrect, *and* if the additional or corrective information has not

***otherwise been made known*** to the other parties during the discovery process or in writing."

Fed. R. Civ. P. 26(e)(1) (emphasis added).

Courts recognize that excluding a declaration is a "harsh result and look to the

circumstances surrounding the nondisclosure when deciding whether to preclude use of a

declaration under [R]ule 37(c)(1)." *Baldassarre v. Norfolk S. Ry. Co.*, 2020 WL 855964, at *2

(E.D. Va. Feb. 19, 2020), *aff'd*, 854 F. App'x 540 (4th Cir. 2021).  Motions to strike "are

generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and

because it is often sought by the movant simply as a dilatory tactic," *Waste Mgmt. Holdings, Inc.*

*v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted),[5] and the Fourth Circuit has a

"'strong policy that cases be decided on their merits,'" rather than on the "rigid operation of

procedural rules to supplant merits-based dispositions, especially where the failure to disclose

itself appears harmless," *Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, 348 F. Supp. 3d 458, 466

(D. Md. 2018) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

Courts have "broad discretion" to determine whether a disclosure alleged to be untimely

is substantially justified or harmless.  *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,

318 F.3d 592, 596-97 (4th Cir. 2003); *see London v. Wash. Metro. Area Transit Auth.*, 2023 WL

3727058, at *8 (D. Md. May 30, 2023) (collecting cases "where, after balancing the *Southern*

*States* factors, courts have declined to automatically exclude the non-disclosing party's expert

witness pursuant to Rule 37(c)" (citation omitted)).  Courts consider five factors in the exercise

of that discretion: "(1) the surprise to the party against whom the evidence would be offered; (2)

the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would

disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation

for its failure to disclose the evidence." *S. States*, 318 F.3d at 597.  The first four factors "relate

primarily to the harmlessness exception, while the last factor, addressing the party's explanation

---

[5] This motion to strike is also procedurally improper because only "pleadings" may be subject to motions to strike. *See Wall Recycling, LLC v. 3TEK Glob., LLC*, 588 F. Supp. 3d 647, 658 n.10 (M.D.N.C. 2022) ("Technically, the court does not strike declarations, as motions to strike are directed to pleadings." (citing Fed. R. Civ. P. 12(f))); *Warren v. Tri Tech Labs., Inc.*, 2013 WL 6147680, at *3 (W.D. Va. Nov. 22, 2013) ("[T]he motion to strike is procedurally improper, as the affidavit is not a 'pleading' as defined in Rule 7(a) of the Federal Rules of Civil Procedure.  Only material included in a 'pleading' may be subject to a Rule 12(f) motion to strike; thus, a party may not attack motions, briefs, memoranda, objections, and affidavits with this motion.").

for its nondisclosure, relates mainly to the substantial justification exception." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

"[T]he focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure." *In re Blackjewel LLC*, 2022 WL 4073337, at *5 (Bankr. S.D. W. Va. Sept. 2, 2022) (quoting *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992)); 8B Charles Alan Wright & Arthur R. Miller et al., *Fed. Prac. & Proc.* § 2284 (3d ed.) ("[C]ourts should make the punishment fit the crime and should take care not to impose a drastic sanction that will prevent adjudication of a case on its merits except on a clear showing that this course is required."). Because "the central purpose of Rule 37(c)(1) is to prevent last minute surprise to an opposing party," courts in the Fourth Circuit "generally deny motions to strike in cases where the surprise is curable." *See SAS Inst. Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 2012 WL 12914641, at *4 (E.D.N.C. Dec. 11, 2012) (citations omitted).

## ARGUMENT

Defendants' use of the two narrow psychometrician declarations was an appropriate and narrow response to new arguments raised by Mr. Olawale that did not unfairly surprise Plaintiffs and was substantially justified. The declarants cannot have "surprised" Plaintiffs because the very forms on which Mr. Olawale newly relied specifically identified the declarants as the psychometricians who ██████████████████████████████████████

██████. Plaintiffs also had ample opportunity to cure any purported surprise because Defendants filed the declarations well before the end of discovery, and Plaintiffs could have sought to depose the declarants or sought other relief. The exceedingly narrow declarations were further substantially justified because they specifically respond to a new argument, and also are harmless because Mr. Olawale presented no evidence that ████████████████████████

8

████████████████████████████████████ had any effect at all on the determination of his

claim.

I.    **THE DECLARATIONS CANNOT HAVE "SURPRISED" PLAINTIFFS
      BECAUSE THEY ARE FROM THE VERY TECHNICIANS WHOM
      PLAINTIFFS ALLEGE IMPROPERLY NORMED TEST RESULTS.**

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████ . Mot. at 13.  Incorrect.

First, both parties produced documents in discovery specifically identifying Mr. Garza

and Ms. Clark as the psychometricians who ████████████████████████████████

████████████ newly relied in the April 2025 briefing.  Second, █████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See*

Garagiola Decl. Ex. D at 7-8, 10.  Plaintiffs' own disclosure of Dr. Cooper and Dr. Salisbury

implicitly included the staff listed on their testing forms as the scoring psychometricians, to the

extent that ██████████████████████████████████████ Third, █████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████ . *See* Mot. at 4-7.

This history is far more than the single passing reference to the witness in *Hoyle v.*

*Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011), which is the case Plaintiffs rely on.  *See Hoyle*,

650 F.3d at 328 (the extent of Hoyle's disclosure of witness Williams was that "[i]n one of her

answers, Hoyle stated that she did not 'recall the specifics of all persons who had inappropriate

materials in the workplace, but she does recall that an employee named . . . Chris Williams

openly sold pornographic materials to employees in the workplace'"). Moreover, *Hoyle* did not hold that mentioning a witness in deposition testimony or discovery responses is insufficient to satisfy a party's disclosure obligations, and the district court also did not make this holding. Rather, the district court held that merely mentioning a witness in passing in deposition testimony is insufficient when the other party served "discovery requests that expressly sought identification of potential witnesses and persons with relevant knowledge." *Hoyle v. Freightliner, LLC*, 2009 WL 2462098, at \*7 (W.D.N.C. Aug. 7, 2009), *aff'd in part, vacated in part*, 650 F.3d 321 (4th Cir. 2011). Plaintiffs did not serve any such requests.

Defendants had no reason to disclose Mr. Garza or Ms. Clark before knowing that Plaintiffs contended that their test scoring was problematic, and in particular before Mr. Olawale put at issue boilerplate language in his testing form and its compliance with the June 2021 Directive, which took the issue to a level of granularity requiring the technicians' involvement. And the declarations cannot have surprised Plaintiffs because Mr. Garza and Ms. Clark were both specifically identified as the scoring psychometricians on the very forms on which Mr. Olawale newly relied in the April 2025 briefing for his new (and incorrect) argument that ███

███████████████████████████████████████████████

███████████. *See supra* note 3. ████████████████████

██████████████████████████████████. Mot. at 7. That is true but irrelevant, as Defendants have never claimed that demographic adjustments were not sometimes made by some Neutral Physicians prior to June 2021.[6] The Amended Complaint identifies two other Plaintiffs, █████████████████████, as having been impacted by such adjustments.

---

[6] For example, Defendants have not contested that ██████████████████████████ ████████████████████████████████████████, and Defendants showed that ████████████████████████████████████ *See* MSJ Reply at 15 & n.17; AC ¶¶ 190-93.

AC ¶¶ 167, 169, 182.  But the Amended Complaint does not allege that ███████████

████████████████████████████████████████████████████████████

████████████ on which he newly relied in the April 2025 briefing.  *See id.* ¶¶ 194-201;

MSJ Opp'n at 19-20.

Plaintiffs' reliance on *Hoyle* is mistaken here too.  Plaintiffs claim that this case is "even

more stark" than *Hoyle* because in that case "there was at least some indirect reference to the

witness."  Mot. at 13.  That assertion ignores that both parties produced documents identifying

Ms. Clark and Mr. Garza and that Plaintiffs were aware of the declarants' roles in the very

testing they now identify.  *Hoyle* is also inapposite on the issue of surprise because, in that case,

the witness's declaration was provided "nearly two months *after* the close of discovery."  *Hoyle*,

650 F.3d at 329 (emphasis added).  Here, however, Defendants provided Ms. Clark's and Mr.

Garza's declarations 43 days before the end of discovery (on July 24, 2025), and at the first

available opportunity to respond to Plaintiffs' newly raised allegation.

████████████████████████████████████████████████████████████

████████████  *See* Mot. at 12.  *Wilkins* involved a party trying to introduce an undisclosed report of

an expert witness *after* discovery closed, after the other party filed a summary judgement motion,

and on the same day motions to exclude experts were due.  *Wilkins*, 751 F.3d at 222-23 (finding

no abuse of discretion striking report because "[i]t is hard to accept that these events [i.e.,

introducing the report after close of discovery] would not serve as a surprise to Appellee, or that

Appellee could easily cure such a surprise").

Because Plaintiffs were not surprised by Ms. Clark's and Mr. Garza's declarations, the

Court should not exclude the declarations from its consideration of Defendants' summary

judgment motions.

## II.    PLAINTIFFS COULD HAVE ADEQUATELY CURED ANY PURPORTED SURPRISE BY PROMPTLY SEEKING DEPOSITIONS OF THE DECLARANTS, AND THE PROCEEDINGS HAVE NOT BEEN DISRUPTED.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████. Mot. at 14-15.  But Plaintiffs had

ample time between when Defendants filed the declarations on July 24, 2025 and the end of

discovery on September 5, 2025 to probe these issues, including by requesting depositions of the

declaring psychometricians.  They did not—presumably because the declarations are so short,

targeted, and obviously credible on the narrow subjects they address that depositions would be

pointless.  *See SAS Inst.*, 2012 WL 12914641, at *4 ("Defendants' failure to take steps to cure

the alleged surprise undercuts their cries of foul play and prejudice."); *cf. S. States*, 318 F.3d at

598 (defendant was surprised and was unable to cure the surprise); *Ali v. WorldWide Language

Res., LLC*, 686 F. Supp. 3d 430, 445 (E.D.N.C. 2023) (same).  But the failure to seek depositions

certainly was not for lack of time: In August, ***after*** Defendants filed their summary judgment

reply brief and the challenged declarations, Plaintiffs demanded that Defendants produce other

additional discovery, and even filed a motion to compel.  ECF Nos. 250, 252.  But they said

nothing to Defendants about the declarations.  Instead, they waited until just three weeks before

the end of discovery and then moved to strike them.  The declarations certainly did not ███████

███████████  Mot. at 14-15, Plaintiffs simply made a strategic decision not to seek

depositions of the declarants that they knew would be fruitless, and to move to strike the

declarations instead.[7]  *See also Allegis Grp., Inc. v. Bero*, 689 F. Supp. 3d 81, 111 (D. Md. 2023)

---

[7] In *Hoyle*, the plaintiff notified the defendant of the witness's declaration after the close of discovery, so the defendant "ha[d] lost its opportunity to depose" the witness and was prejudiced for that reason, *Hoyle*, 650 F.3d at 330; here, there was ample time for Plaintiffs to depose the declarants before the end of discovery had Plaintiffs acted diligently.  They cannot now claim that it is too late and feign injury.  *See Salami*, 394 F. Supp. 2d at 710

(finding no disruption because "no trial date has been set" (citing *Doe v. AE Outfitters Retail Co.*, 2015 WL 132609, at *4 (D. Md. Jan. 8, 2015)).

Any alleged surprise was curable, and Plaintiffs' tardiness was at their peril. Because "the central purpose of Rule 37(c)(1) is to prevent last-minute surprise to an opposing party," courts in the Fourth Circuit "generally deny motions to strike in cases where the surprise is curable." *See SAS Inst.*, 2012 WL 12914641, at *4; *Ace Am. Ins. Co. v. McDonald's Corp.*, 2012 WL 2523883, at *3-6 (D. Md. June 28, 2012) (denying motion to strike, despite finding the Rule 26 disclosures untimely and incomplete, where litigation was at early stage and thus surprise was easily curable); *Salami v. N.C. Agric. & Tech. State Univ.*, 394 F. Supp. 2d 696, 710 (M.D.N.C. 2005) ("Plaintiff failed to make any effort to cure any surprise that did exist by using the two remaining weeks of discovery or by accepting Defendant's offer to extend discovery or to allow the expert's deposition to be taken outside of the discovery period.").[8]

### III. DEFENDANTS WERE SUBSTANTIALLY JUSTIFIED IN USING THE DECLARATIONS BECAUSE THEY RESPOND ONLY TO ARGUMENTS PLAINTIFFS MADE FOR THE FIRST TIME IN THEIR SUMMARY JUDGMENT OPPOSITION BRIEF.

Defendants were substantially justified in filing these declarations with their summary judgment reply brief because they respond to alleged instances of improper test scoring that Plaintiffs made for the first time in their summary judgment opposition brief. The declarations were appropriately filed in "response to the 'changing trajectory of the case.'" *See Baldassarre*, 2020 WL 855964, at *4 (quoting *Lavigna v. State Farm Mut. Auto. Ins. Co.*, 736 F. Supp. 2d

---

("Plaintiff failed to make any effort to cure any surprise that did exist by using the two remaining weeks of discovery or by accepting Defendant's offer to extend discovery or to allow the expert's deposition to be taken outside of the discovery period").

[8] Had Defendants supplemented their disclosures to include these names, the only effect would have been to give Plaintiffs information they already had: the identification of Mr. Garza and Ms. Clark as the scoring psychometricians. Not doing so was therefore harmless, and Rule 26(e)(1) makes clear that such updating was not required. Defendants are nevertheless perfectly willing to update their disclosures as a formal matter.

504, 511-12 (N.D.N.Y. 2010)).

Moreover, Rule 26(e)(1) says that a party must "supplement" their disclosures only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and* if the additional or corrective information has not ***otherwise been made known*** to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1) (emphasis added). Defendants did not anticipate—and could not have anticipated before Plaintiffs provided specific instances—needing to use Ms. Clark's or Mr. Garza's declarations for their claims or defenses until Plaintiffs filed their summary judgment opposition brief, and Defendants did not "intend[] to present" Ms. Clark and Mr. Garza at trial before then. *Cf. Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 698 F. Supp. 3d 814, 821-22 (M.D.N.C. 2023) (explaining that "[f]or a witness to have 'otherwise been made known' during discovery, a supplemental disclosure must demonstrate that the party intends to present the witness at trial, not merely that the person has knowledge pertinent to the litigation"); *see* 6 *Moore's Fed. Prac.* § 26.22 (2022) ("Rule 26(a)(1)(A) no longer requires parties to provide identifying information for persons whom it does not intend to use during the proceeding, regardless whether they possess information that is favorable or unfavorable to the disclosing party, and no longer requires the disclosing party to provide identifying information for individuals with knowledge 'relevant to facts alleged with particularity in the pleadings.'").

Defendants did not intend to use Ms. Clark or Mr. Garza during the proceeding until responding to Plaintiffs' summary judgment argument about specific tests that those psychometricians conducted while working for Dr. Cooper and Dr. Salisbury. Defendants therefore had no obligation to supplement their disclosures until then, and the declarations themselves were the functional equivalent of Rule 26(e) supplemental disclosures because they

contained the declarants' names, location, and the subject matter they would testify to.

Moreover, the Fourth Circuit has a "'strong policy that cases be decided on their merits,'" rather

than on the "rigid operation of procedural rules to supplant merits-based dispositions, especially

where the failure to disclose itself appears harmless." *Mt. Hawley Ins. Co.*, 348 F. Supp. 3d at

466 (quoting *Shaffer Equip. Co.*, 11 F.3d at 453). The Court should therefore deny Plaintiffs'

motion.

## IV. THE NARROW DECLARATIONS REFUTE A COLLATERAL ISSUE UNNECESSARY TO RESOLVING ANY OF THE SUMMARY JUDGMENT MOTIONS, AND THEY DO NOT SHOW ANY GENUINE DISPUTE OF MATERIAL FACT.



. *See* Mot. at 17.[9]

. *Id.* at 4-7.

. Garza Decl. ¶¶

4, 6. The reporting of Mr. Olawale's

. *See* MSJ Reply at

32; JO-1036 (Dr. Salisbury PRF reporting                    , and further reporting

---

9

                                                                 *See* Mot. at 15. Not all courts view this factor that way. *See,*
*e.g.*, *Baldassarre*, 2020 WL 855964, at *2-4 (permitting declaration into summary judgment record because "the
information is important to the case," which "weigh[s] in favor of allowing the declaration"); *Ace Am. Ins. Co.*, 2012
WL 2523883, at *4-5 (finding party's Rule 26(a)(2) disclosures were untimely and incomplete, but substantially
justified or harmless because the disclosures were essential to the plaintiff's case); *Khosmukhamedov v. Potomac
Elec. Power Co.*, 2012 WL 1670152, at *4 (D. Md. May 11, 2012) (same).

███████████████████████).[10] The evidence is thus uniform that ████████████

██████████████████████████████████████████. There furthermore is no evidence

of any kind in the record that ██████████████████████████████████████████████

██████████████████████.

  Mr. Olawale also relied in his summary judgment opposition on boilerplate language in

other players' test forms, all from Dr. Salisbury or Dr. Cooper, as purported corroboration of his

claim that ███████████████████████████████████████████████████████████████

██████████ But Ms. Clark's and Mr. Garza's declarations show that ███████████████

██████████████████████████████, which merely reflect the same issue of outdated

boilerplate language. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████. *See* Mot. at 3-7, 15-16. There is no material factual dispute

on this point. The report forms relating to other players have no direct bearing on Mr. Olawale's

claim, and as previously explained he has not himself even attempted to make any demonstration

that his own claim determination was ███████████████████████ (because he cannot).[11]

Plaintiffs' smoke-and-mirrors arguments here are therefore flatly contradicted by the record.

  Finally, Plaintiffs argue that Defendants' production of the 2021

---

[10] ████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

Garza Decl. ¶ 6. Mr. Robinson's and Mr. Williams's reports show the same. *See* Garagiola Decl. Ex. B (
(NFLPLTFS-0001920 at 10-12) and ██████ (NFLPLTFS-0001921 at 9-12)).
[11] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████. Mot. at 15. This is irrelevant.
Defendants are not relying on Ms. Clark and Mr. Garza for any other Neutral Physician's practices or testing; their
declarations are limited to Dr. Cooper and Dr. Salisbury, respectively. █████████████████████
████████████████████████████████, *see* Mot. at 17, is also misplaced. ██████████████
██████████████████████████████████████████████████████████████████████

██████. *See* Clark Decl. ¶¶ 5, 7-10; *see also* MSJ Reply at 25.

Neurology/Neuropsychology Orientation Manual was late, but this is incorrect. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████. *See* Mot. at 16.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike Reply

Declarations, and should not find that the declarations preclude summary judgment for

Defendants.

Date: August 29, 2025

Respectfully submitted,

*/s/ Gregory F. Jacob*
Gregory F. Jacob (D. Md. Bar No. 06769)
Meredith N. Garagiola (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W., 10th Floor
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: gjacob@omm.com
Email: mgaragiola@omm.com

Elizabeth L. McKeen (*pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for Defendants The NFL Player
Disability & Survivor Benefit Plan, The NFL
Player Disability & Neurocognitive Benefit
Plan, The Bert Bell/Pete Rozelle NFL
Player Retirement Plan, and The Disability
Board of the NFL Player Disability &
Neurocognitive Benefit Plan*

<u>**CERTIFICATE OF SERVICE**</u>

I, Gregory F. Jacob, hereby certify that on August 29, 2025, I caused a copy of the

foregoing document to be served upon all counsel of record via the CM/ECF system for the

United States District Court for the District of Maryland.


*/s/ Gregory F. Jacob*
Gregory F. Jacob