# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

## BALTIMORE DIVISION

| | |
|---|---|
| JASON ALFORD, DANIEL LOPER, WILLIS McGAHEE, MICHAEL McKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; *et al.*, <br><br> Defendants. | No. 1:23-cv-00358-JRR |

**PLAINTIFFS' OBJECTIONS TO PORTIONS OF THE NOVEMBER 25, 2025 MEMORANDUM OPINION (ECF NO 318) AND ACCOMPANYING ORDER (ECF NO. 319) ON THE PARTIES' RESPECTIVE MOTIONS TO EXCLUDE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

STANDARD OF REVIEW ............................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

    I.    The Exclusion of Section 4.2 of Dr. Hayter's Report Reflects Legal Error Because Dr. Hayter Was Not Required to Validate the Data Underlying His Opinions ................... 3

    II.   The Exclusion of Section 4.2 of Dr. Hayter's Report Is Also Clearly Erroneous as a Factual Matter Given the Limited Body of Data Available to Plaintiffs ..................... 5

    III.  The Exclusion of Section 2 of Dr. Hayter's Report Likewise Rests on Both Legal Error and Clear Factual Error ......................................................................................... 8

    IV.  Alternatively, if the Court Sustains the Exclusion of Sections 2 and 4.2 of Dr. Hayter's Report, Then It Should Exclude Dr. Lasater's Opinions, Whose Analytical Flaws Are Far More Pronounced, in Order to Avoid Inconsistent Treatment and Inequitable Results ...................................................................................... 12

CONCLUSION .............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. S.C. State Conf. of the NAACP*,
   602 U.S. 1 (2024) ............................................................................................................ 2

*Anderson v. City of Bessemer City, N.C.*,
   470 U.S. 564 (1985) ........................................................................................................ 2

*Aqueche v. SVAP Pasadena Crossroads, LLC*,
   2025 WL 870706 (D. Md. Mar. 20, 2025) ...................................................................... 3

*Bresler v. Wilmington Tr. Co.*,
   855 F.3d 178 (4th Cir. 2017) ....................................................................................... 4, 5

*Butts v. United States*,
   930 F.3d 234 (4th Cir. 2019) ........................................................................................... 3

*Hertz v. v. Hartford Life & Acc. Ins. Co.*,
   991 F. Supp. 2d 1121 (D. Nev. 2014) .............................................................................. 6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   892 F.3d 624 (3d Cir. 2018) ............................................................................................ 9

*Inwood Labs., Inc. v. Ives Labs. Inc.*,
   456 U.S. 844 (1982) ..................................................................................................... 3, 4

*Krakauer v. Dish Network, L.L.C.*,
   2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) .................................................................. 5

*Lopez v. State Farm Lloyds*,
   780 F. Supp. 3d 663 (W.D. Tex. 2025) ............................................................................ 3

*PRCM Advisers LLC v. Two Harbors Inv. Corp.*,
   2025 WL 1276513 (S.D.N.Y. May 2, 2025) .................................................................. 14

*Rappuhn v. Primal Vantage Co.*,
   No. 23-10050, 2024 WL 2930448 (11th Cir. June 11, 2024) ........................................ 14

*Robinson v. Nationstar Mortg. LLC*,
   2019 WL 4261696 (D. Md. Sept. 9, 2019) ...................................................................... 7

*Sardis v. Overhead Door Corp.*,
   10 F.4th 268 (4th Cir. 2021) .......................................................................................... 10

*Shackleford v. Vivint Solar Dev. LLC*,
  2020 WL 3488913 (D. Md. June 25, 2020) ................................................................................ 2

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
  28 F. Supp. 3d 465 (D. Md. 2014) ............................................................................................ 2

*Sommerville v. Union Carbide Corp.*,
  149 F.4th 408 (4th Cir. 2025) ........................................................................................ 4, 5, 8, 9

*Stone v. Trump*,
  402 F. Supp. 3d 153 (D. Md. 2019) .......................................................................................... 2

*Students for Fair Admissions v. United States Naval Acad.*,
  2024 WL 4135782 (D. Md. Sept. 10, 2024) ............................................................................. 3

*United States ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way Over 0.98 Acres of Land*,
  2025 WL 2449277 (E.D. Tenn. Aug. 25, 2025) ....................................................................... 3

**Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 72(a) ...................................................................................................................... 2

Fed. R. Evid. 702 ........................................................................................................................... 4

D. Md. Local R. 301.5 ................................................................................................................... 2

**Other Authorities**

Fed. Jud. Ctr., *Reference Manual on Scientific Evidence* (3d ed. 2011) ..................................... 11

Anthony Hayter, *Probability and Statistics for Engineers and Scientists* (4th ed. 2012) ……….11

Eric-Jan Wagenmakers *et al.*, *Seven Steps Toward More Transparency in Statistical
  Practice*, 5 NATURE HUMAN BEHAVIOUR 1473 (2021). ……………...…………………..11

**INTRODUCTION**

Plaintiffs respectfully submit these objections to portions of Magistrate Judge Aslan's November 25, 2025 Memorandum Opinion (ECF No. 318) ("Opinion") and accompanying Order (ECF No. 319) on the parties' respective motions to exclude experts (ECF Nos. 175, 220, 222). The Magistrate Judge denied Plaintiffs' motion to exclude the testimony of Defendants' statistical expert, Dr. David Lasater; granted Defendants' motion to exclude the opinions of Plaintiffs' fiduciary expert, Joseph Garofolo; and granted in part and denied in part Defendants' motion to exclude the opinions of Plaintiffs' statistical expert, Dr. Anthony Hayter.

This Court should reverse the exclusion of Sections 2 and 4.2 of Dr. Hayter's Report (ECF No. 173-1; redacted public version at ECF No. 307). The conclusion that Dr. Hayter was required to vet the data in Exhibits A and B to his Report is directly contrary to Fourth Circuit law, which permits expert opinions on data obtained from other sources, with data validation limited to the weight accorded the expert's conclusions. Moreover, the Magistrate Judge's faulting the size and source of those exhibits rests on a manifest misreading of the record and, just as importantly, ignores Defendants' successful resistance to discovery that Plaintiffs sought beyond the decision letters and Physician Report Forms relating to counsel's own present and former clients. Similarly, the exclusion of Section 2 of Dr. Hayter's Report as improperly result-oriented is contrary to law in light of Dr. Hayter's explanation in his Report and deposition testimony about the work that he performed.

In the alternative, if the Court sustains the Opinion as to Dr. Hayter's Report in full, then it should set aside the denial of Plaintiffs' motion to exclude Dr. Lasater's testimony to avoid an incongruous and inequitable result. The conclusion that Sections 2 and 4.2 of Dr. Hayter's Report are so flawed that they should be excluded from any consideration in this non-jury case cannot be

squared with the excusing of the far more extensive gaps and more significant analytical flaws in Dr. Lasater's report and testimony as matters going only to weight rather than admissibility.

## STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 72(a), a district court must consider timely objections to a [Magistrate Judge's] order on non-dispositive, pretrial matters and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Stone v. Trump*, 402 F. Supp. 3d 153, 158 (D. Md. 2019) (citing Fed. R. Civ. P. 72(a); internal quotation marks omitted).[1] "The clearly erroneous standard applies to factual findings, while legal conclusions will be rejected if they are contrary to law." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014) (internal quotation marks omitted).

"An order is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Shackleford v. Vivint Solar Dev. LLC*, 2020 WL 3488913, at *4 (D. Md. June 25, 2020) (citation and internal quotation marks omitted). "A [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted)). If, however, findings are based "upon a mistaken impression of applicable legal principles, [a] reviewing court is not bound by the clearly erroneous standard." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 18 (2024); *Inwood Labs., Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 855 n.15

---

[1] *Accord* 28 U.S.C. § 636(b)(1)(A) ("A judge of the [district] court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); D. Md. Local R. 301.5 ("A district judge may reconsider, modify, or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.").

(1982). At any rate, although clear error review is deferential, "it is not toothless." *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019).

Finally, because the Opinion here imposes the draconian measure of outright exclusion of multiple opinions from Dr. Hayter—and in a non-jury case at that, *see Students for Fair Admissions v. United States Naval Acad.*, 2024 WL 4135782, at *4 (D. Md. Sept. 10, 2024) (noting that court's gatekeeping function as to expert testimony "is much less critical" in non-jury cases)—the Court's review of the Opinion should be guided by the precept that "exclusion of expert testimony is … the exception rather than the rule." *Aqueche v. SVAP Pasadena Crossroads, LLC*, 2025 WL 870706, at *6 (D. Md. Mar. 20, 2025).[2]

**ARGUMENT**

I.   **The Exclusion of Section 4.2 of Dr. Hayter's Report Reflects Legal Error Because Dr. Hayter Was Not Required to Validate the Data Underlying His Opinions**

Dr. Hayter was provided data for analysis by Plaintiffs' counsel and relied on the integrity of counsel in compiling the material for his review, as he is permitted to do. Asserting that Dr. Hayter showed a "lack of diligence," the Magistrate Judge concluded that his "failure to vet the accuracy of Exhibits A and B" to his Report warrants the exclusion of Section 4.2 of his Report, which addressed Plaintiffs' dataset of Plan physicians' benefits application recommendations and their compensation from the Plan. Opinion at 27-30; *see* Hayter Report at 172-90.

---

[2] *Accord Lopez v. State Farm Lloyds*, 780 F. Supp. 3d 663, 671 (W.D. Tex. 2025) (exclusion of expert testimony "should be reserved for cases in which the testimony is so fundamentally unsupported that it cannot possibly help the factfinder") (citing cases; internal quotation marks omitted); *United States ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way Over 0.98 Acres of Land*, 2025 WL 2449277, at *4 (E.D. Tenn. Aug. 25, 2025) ("exclusion of an expert's opinion is the exception and not the rule") (overruling Magistrate Judge's exclusion of expert's opinion).

3

Plaintiffs fully disclosed the data that underlies Dr. Hayter's analysis to Defendants—and, by extension, to Dr. Lasater. It was no secret that the subset of files that comprised Exhibits A and B were Defendants' own Plan physician reports pertaining to individual applicants, decision letters issued to applicants, and IRS Form 5500s to which counsel for Plaintiffs was privy. Defendants' counsel acknowledged this at the motion to compel hearing.[3] Without relitigating the discovery ruling that denied Plaintiffs access to a broader set of decision letters and Physician Report Forms, it remains the case that a more complete (or, arguably, representative) set was not available because Defendants have steadfastly refused to produce such records in discovery. At the motion to compel hearing, Defendants' counsel insisted that "the record that [Plaintiffs] have is wholly adequate to assess whether there was a pattern or practice." *Id.* at 66:14-16. Consequently, the Magistrate Judge's misgivings about the data relied on by Dr. Hayter should go only to the weight of his opinions. Dr. Hayter acted reasonably in presuming the validity of the data provided to him and evaluating it using statistical methodology typical to his field and the exclusion of Section 4.2 of Dr. Hayter's Report is plain legal error because it contravenes controlling Fourth Circuit law.

In *Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 423 (4th Cir. 2025), the district court excluded an expert's proposed testimony as unreliable by reason of his failure to "validate" data. Emphasizing that "[n]othing in Rule 702 requires an expert witness to 'validate,' data," the Fourth Circuit rejected the district court's interpolation of a validation requirement into its Federal Rule Evidence 702 analysis as "extratextual, an error of law, and thus an abuse of discretion per se." *Id.* at 424 (citing cases). In doing so, the Fourth Circuit restated the rule articulated in *Bresler*

---

[3] *See* Feb. 21, 2025 Hr'g Tr. (ECF No. 163) at 53:2-17 (contending that Plaintiffs had produced 1,361 Plan physician evaluations and that discovery of decision letters and Physician Report Forms pertaining to absent class members was unnecessary because "the sheer number of evaluations that they already ha[d] in their possession" was sufficient to allowed them to argue the existence of a pattern or practice).

*v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017), that "'questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility.'" *Sommerville*, 149 F.4th at 424 (quoting *Bresler*, 855 F.3d at 195; brackets added by *Bresler*); *accord Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693, at *9 (M.D.N.C. Sept. 8, 2015) ("[T]here is no requirement that an expert conduct an independent evaluation of data and results each time she uses them.") (citing authorities). This undeniable legal error alone mandates this Court's reversal of the exclusion of Section 4.2 of Dr. Hayter's Report.

## II. The Exclusion of Section 4.2 of Dr. Hayter's Report Is Also Clearly Erroneous as a Factual Matter Given the Limited Body of Data Available to Plaintiffs

The exclusion of Section 4.2 also fails on account of multiple clear errors in the Opinion's factual findings.[4] The Magistrate Judge stated that she was "left without a clear picture" of what Exhibits A and B contain (Opinion at 25),[5] but Dr. Hayter had made abundantly clear in his Report that Exhibit A was a distilled subset of data from Defendants' own V3 dataset and that it provided

---

[4] This assumes, of course, that clear error review even applies here to begin with, which Plaintiffs respectfully submit that it does not. As noted above, where factual findings are predicated upon a mistaken impression of applicable legal principles, a reviewing court is not bound by clear error review. *See supra* at 2 (citing cases).

[5] Despite the numerous questions and criticisms regarding them in the Opinion, the Magistrate Judge never requested that Plaintiffs produce or provide Exhibits A and B for inspection or review. For this Court's edification, Exhibit A is an Excel spreadsheet of the V3 dataset produced by Defendants, supplemented with individual physician recommendations extracted from all Physician Report Forms and decision letters that Plaintiffs had in their possession at the time of Dr. Hayter's Report. The supplementary columns (shown in color to distinguish from the underlying V3 data) provide the individual physician findings that Defendants' V3 dataset omits. Each entry is supported by Bates-stamped documents produced by Plaintiffs in discovery. Exhibit B contains physician compensation data derived from publicly available IRS Form 5500s filed by the Plan, covering the period from April 2009 through March 2024. Each entry is supported by Bates-stamped documents also produced by Plaintiffs in discovery. It took thousands of hours of labor on Athlaw LLP's part to compile and organize the information that the two exhibits contain. What is more, *all* documents underlying both exhibits have been, and remain, in Defendants' possession, custody, and control. Plaintiffs stand ready to immediately provide the Court with Exhibits A and B if so requested.

5

only supplementary information based on what decision letters and Physician Report Forms were available to Plaintiffs. Hayter Report (ECF No. 173-1, redacted public version at ECF No. 307), at 28. He readily noted that Exhibit A, which was based on 453 applications and 235 appeals from the files of Plaintiffs' counsel, could not completely rectify the inadequacies in Defendants' V3 datasets—which purport to be based on 6,315 applications and 1,733 appeals—for the simple reason that Defendants have refused to produce such information and, despite Plaintiffs' attempt to compel production, the necessary information underlying the V3 datasets *was not made available to Plaintiffs*. *Id.* at 28-29.[6]

Thus, although the Magistrate Judge discounted the sample as representing "only" 7.2 percent of applications and 13.6 percent of appeals (Opinion at 25), her faulting the size of the sample (citing inapposite cases involving examination of surgical mesh explants, *see* Opinion at 25-26)[7] and comments about being unable to determine how representative it is point up the acute

---

[6] For this reason, the Magistrate Judge's insinuation that Plaintiffs have obstructed Defendants' efforts to obtain information concerning the composition of the exhibits, thereby raising fairness concerns (Opinion at 26), is unfortunately inaccurate and unfounded. *All* of the underlying information in Exhibits A and B has been within Defendants' possession, custody, and control, and Defendants could have conducted an analysis of those records at any time but failed to do so. Moreover, Defendants could have provided the underlying decision letters and Physician Report Forms to Dr. Lasater but declined to do so. Nor has there been any impediment to replicability (Opinion at 27). Again, Defendants have *all* of the underlying records. The only thing impeding any analysis or replication has been Defendants' ignorance of their own Plan and their refusal to expend the time and effort to perform an analysis or replication—despite the level of detail provided in Exhibits A and B, including Bates numbers for files produced by Plaintiffs.

[7] Courts have found comparable statistical evidence highly probative of bias affecting the handling of disability claims. In *Hertz v. Hartford Life & Acc. Ins. Co.*, 991 F. Supp. 2d 1121 (D. Nev. 2014), the court looked to a sample of 75 disability evaluations out of 752 performed by a medical review firm for a disability insurer. *Id.* at 1136. Based on all but four of those 75 evaluations having been unfavorable to applicants, with all 14 performed by one physician unfavorable, the court found that the statistics "strongly suggest[ed] that both [the firm and the physician] harbored a significant bias towards finding a claimant capable of performing some type of work," and that the firm had "an incentive … to reach results that [we]re favorable to [the insurer] in order to foster and sustain their business relationship." *Id.*

disadvantage under which Plaintiffs have labored in this case and which the Magistrate Judge overlooked. Any limitations in the data cannot properly be ascribed to Dr. Hayter (or to Plaintiffs, for that matter) where Defendants have steadfastly— and to date successfully—resisted discovery beyond that permitted in denial of benefit claims despite the existence of multiple other ERISA causes of actions for which discovery is not limited to the administrative records. *See Robinson v. Nationstar Mortg. LLC*, 2019 WL 4261696, at *3-4, *14 (D. Md. Sept. 9, 2019) (arguments that expert had relied on inadequate data "r[a]ng hollow" where limitations were necessitated by defendant's "unwillingness or inability to produce the relevant data"). Crucially, there is no disconnect between the limitation of the data and Dr. Hayter's opinion. Dr. Hayter admitted that it is not possible, based on the presently available data, to know whether the available decision letters and Physician Report Forms are a representative sample, and never used them otherwise. Hayter Rebuttal Report (ECF No. 270-3, public version at ECF No. 317) at 97.

As for the integrity of Exhibit B, the Magistrate Judge focused on isolated deposition testimony (highlighted by Defendants), where Dr. Hayter was directed not to answer improper questions seeking Plaintiffs' co-counsel's thought processes or mental impressions in compiling physician compensation data. Opinion at 26. Doing so, however, ignored both Dr. Hayter's testimony demonstrating his awareness that the compensation information was collected from the Plan's IRS Form 5500s (May 13, 2025 Hayter Dep. Tr. (ECF No. 291-12; redacted public version at ECF No. 314) at 195:19-197:1) and Dr. Hayter's description in his Report that Exhibit B represented fifteen years' worth of Plan physician compensation data that Plaintiffs' counsel had compiled and, importantly, that the underlying information in Exhibit B *was at all times in Defendants' possession, custody, and control, and the public records were fully available to Dr. Lasater*. Hayter Report at 27-31.

7

To attribute fairness and reliability concerns to Exhibits A and B where Defendants have successfully resisted, in most respects, any discovery beyond the administrative records of the named Plaintiffs turns matters on their head. Simply put, to penalize Plaintiffs for Defendants' successful discovery strategy by faulting the quantum and sources of data that Dr. Hayter considered works a manifest injustice and separately warrants this Court's setting aside that part of the Opinion.

### III. The Exclusion of Section 2 of Dr. Hayter's Report Likewise Rests on Both Legal Error and Clear Factual Error

The Magistrate Judge's exclusion of Section 2 of Dr. Hayter's Report rests on a fundamental legal error that the Fourth Circuit expressly prohibited just months ago. In *Sommerville,* the Court of Appeals held that a district court commits reversible error when it "wade[s] into credibility determinations" that are "framed as a 'reliability' question," and it "underscore[d] that a district court may not exclude expert testimony based on (1) its mere disagreement with an expert's choice of data or (2) its own assessment of the correctness of an expert's opinions." 149 F.4th 426-27 & n.7. The Fourth Circuit reversed precisely because the district court had "ignored or discounted [the plaintiff's expert's] proffered explanations in favor of those [of] the [opposing] expert." *Id.* at 423. That is exactly what occurred here. The Magistrate Judge rejected Dr. Hayter's detailed explanations for his methodological choices—his use of visual graphical analysis, his selection of threshold percentages, and his decision to highlight empty regions of the scatterplots—because she disagreed with them and accepted Dr. Lasater's methodological choices (Opinion at 16-20). This is an impermissible credibility determination cloaked as a reliability ruling.

Equally infirm is the Magistrate Judge's characterization of Dr. Hayter's Section 2 opinions, wherein he opined that Dr. Lasater's datasets are supportive of Plaintiffs' claims (Hayter

8

Report at 150-61), as a "results-driven approach." Opinion at 17. That conclusion flies in the face of the record and misapplies *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.,* 892 F.3d 624 (3d Cir. 2018), on which the Opinion relies. *In Lipitor*, the court excluded expert testimony where the expert omitted a result from his initial expert report after a statistical test "returned a non-significant result," and "only used [a different] test once the [first] test returned a non-significant result." *Id*. at 634. In other words, he selectively reported favorable results while suppressing unfavorable ones.

Here, Dr. Hayter did nothing of the sort. He used Dr. Lasater's own reduced datasets in their entirety, plotted every physician, and visualized the complete data. *See* Hayter Report at 151-58 ("Each blue dot is [a physician] with the anonymized ID number from the V3 datasets."). Dr. Hayter testified that he prepared his graphs *only* after first performing a statistical analysis of Dr. Lasater's datasets. May 13, 2025 Hayter Dep. Tr. at 240:16-19; *see also id.* at 241:13-14 (explaining that what he did was "analyz[e] Dr. Lasater's reduced datasets"). This is not results-driven analysis——it is how statisticians actually work: examine the data first, then identify and highlight the patterns that emerge. Nor was it "results-driven" for Dr. Hayter to frame his conclusions in terms of whether the data support Plaintiffs' claims. Dr. Lasater expressly concluded that his chi-square analyses of both his reduced dataset of T&P applications and his reduced dataset of T&P appeals do not support Plaintiffs' allegations. ECF No. 111-2 at 14, 21 (¶¶ 34, 54). Dr. Hayter's Section 2 opinion that the same datasets, when analyzed and visualized, are "consistent with and supportive of the Plaintiffs' claims" (Hayter Report at 151) is a direct refutation of Dr. Lasater's conclusion. *See Sommerville* 149 F.4th at 426 (expert did not engage in a "result-driven analysis" by using data "he found more representative of [the plaintiff's] claims").

9

The Opinion criticized Dr. Hayter's selection of a cutoff point as to Plan physicians' recommended denial rates (40% for applications; 50% for appeals) as driven by his desire to support a preordained outcome (Opinion at 17). That reproach, though, overlooked Dr. Hayter's testimony that, *irrespective* of what cutoff point is used, the data show that physicians with higher adverse recommendation rates are referred more applicants for evaluation (and hence earn more income from the Plan). May 13, 2025 Hayter Dep. Tr. at 243:8-11. Relatedly, the suggestion that a different cutoff point would have yielded a contrary conclusion rested on a snippet of out-of-context testimony from Dr. Hayter's August 25, 2025 deposition (Opinion at 17), and ignored other testimony at his August deposition that was fully consistent with his May 13, 2025 testimony. *See* Aug. 25, 2025 Hayter Dep. Tr. (ECF No. 270-4; redacted public version at ECF No. 310) at 83:18-21 ("I could have used 20 percent, 10 percent, 35 percent, 55 percent, probably 60 percent, and it would have made the same point."). The point that Dr. Hayter illustrated—that physicians with higher denial rates have been referred more applicants to evaluate—is "consistent in all of the eight graphs," and the consistently empty lower-right quadrant of each scatterplot does not depend on any particular threshold. May 13, 2025 Hayter Dep. Tr. at 243:8-11.[8]

Similarly, the Opinion's conclusion that Dr. Hayter's use of red shading is grounded solely in his *ipse dixit* (Opinion at 19) fundamentally misapprehends the record. Unlike the expert in *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 295-96 (4th Cir. 2021), who offered "no facts, test data, or peer-reviewed literature for reaching his conclusion," Dr. Hayter grounded his graphical methodology in authoritative, peer-reviewed sources. The *Reference Manual on Scientific*

---

[8] *See also* Aug. 25, 2025 Hayter Dep. Tr. at 85:20-86:1 ("Q. Other than your visual assessment, what accepted statistical principle would provide you with guidance on which percentage to choose here? Did you use anything other than your visual assessment? A.: As I've said, I chose these numbers because I thought they would provide useful summary statistics for the judge, but there were other numbers I could have used which would have made the same point.").

*Evidence,* published by the Federal Judicial Center for use by federal judges in evaluating scientific evidence, expressly recognizes that "[g]raphs are useful for revealing key characteristics of a batch of numbers, trends over time, and the relationships among variables."  Fed. Jud. Ctr., *Reference Manual on Scientific Evidence* 236 (3d ed. 2011).  A 2021 article in the peer-reviewed journal *Nature Human Behaviour* identifies data visualization as the first of seven recommended statistical procedures, explaining that "visualization of data and model fit is arguably the most effective way to communicate the main findings to a scientific audience."  Eric-Jan Wagenmakers *et al*., *Seven Steps Toward More Transparency in Statistical Practice*, 5 NATURE HUMAN BEHAVIOUR 1473 (2021).  Furthermore, Dr. Hayter's own peer-reviewed textbook confirms the same:  "In general, a table of numbers is not very informative, whereas a picture or graphical representation of the data set can be quite informative.  If 'a picture is worth a thousand words,' then it is worth at least a million numbers."  Anthony Hayter, *Probability and Statistics for Engineers and Scientists* 272 (4th ed. 2012).  Far from being somehow improper or inconsistent, the red shading identifies the same phenomenon across all eight graphs:  the empty lower-right quadrant where there appear *no* physicians having both low recommended denial rates and high workloads.[9]

Indeed, if Dr. Hayter were truly wrong, then Defendants' expert could easily have identified Plan physicians who have low recommended denial rates yet high workloads of applicants referred to them for evaluation.  Despite authoring two reports, Dr. Lasater never did so—presumably because Defendants' own (flawed) V3 data does not allow him to do so.  That salient and

---

[9] *See* Aug. 25, 2025 Hayter Dep. Tr.  at 88:6-17 ("Q. The dots themselves already show you where the dots are, right?  Why do you need to shade any area to show where the dots aren't?  Don't the dots themselves kind of already do that work for you?  A: But it's my job to help the judge understand what's important about the placement of these blue dots, so I thought it would be helpful to clarify what is important about the placement of the blue dots by shading the large empty areas red.").

indisputable fact speaks volumes and fatally undermines the decision to exclude Section 2 of Dr. Hayter's Report.

IV. **Alternatively, if the Court Sustains the Exclusion of Sections 2 and 4.2 of Dr. Hayter's Report, Then It Should Exclude Dr. Lasater's Opinions, Whose Analytical Flaws Are Far More Pronounced, in Order to Avoid Inconsistent Treatment and Inequitable Results**

In the alternative, if the Court overrules the foregoing objections concerning the exclusion of Sections 2 and 4.2 of Dr. Hayter's Report, then it should set aside the denial of Plaintiffs' motion to exclude Dr. Lasater's opinions in order to avoid inconsistent treatment and inequitable results.

With virtually no analysis, the Opinion rejected Plaintiffs' arguments concerning the numerous and sundry gaps and erroneous assumptions in Dr. Lasater's analyses,[10] reasoning that none rendered his opinions flawed but, instead, that all went to the weight that his opinions merit.

---

[10] *See* ECF No. 173 (redacted public version at ECF No. 172) at 34-37, and ECF No. 240 (redacted public version at ECF No. 308) at 7-8 (discussing, *inter alia*, how Dr. Lasater analyzed data relating only to applications and appeals for a single form of disability benefit; methodically excluded *all* neuropsychologist T&P recommendations and 99% of neurologist T&P recommendations; categorically imputed to every physician involved in a claimant's application an opinion favorable to the claimant, irrespective of whether an individual physician's recommendation may have been, or was in fact, unfavorable; was aware that this imputation may have no relationship to actual recommendations rendered by individual physicians; made no effort to cross-check his categorical imputations against the decisions underlying Plaintiffs' statistical allegations, despite having been provided them; took no account of the varying benefit levels and whether ostensibly favorable physician recommendations actually supported a less generous benefit than that what a claimant had applied for; chose not to review a single document produced by Defendants, which often showed actual physician recommendations to be the opposite of what he assumed; reviewed no individual Physician Report Form, medical records, or individual disability benefits application; took no steps to acquire information concerning Defendants' payments to Plan physicians, despite his awareness that the V3 system houses such information and, instead, used a Defendant-provided subset of V3 data that omitted it; because Defendants' V3 data is anonymized by physician, contrived a metric he termed "implied monetary compensation," which was based on frequency of physician assignments, but was riddled with errors in that he failed to count all physician encounters, aggregate physician encounters across the three benefit types, or account for higher examination fees paid to neuropsychologists, consulting fees paid to some Plan physicians, or each physician's varying length of service with the Plan (and thus their average compensation); and did not even consider the allegations concerning the compensation paid to the physicians who examined Plaintiffs).

Opinion at 10-11. That outcome stands in stark contrast to the conclusion that shortcomings in Sections 2 and 4.2 of Dr. Hayter's Report rendered *his* opinions unreliable. *Id.* at 16-20, 27-30. The Opinion criticized Plaintiffs' sample of actual data, extracted from Defendants' own records, but did not apply the same rigor to the V3 dataset and its numerous limitations and deficiencies.

If upheld, the critiques of Dr. Hayter inexorably compel the exclusion of Dr. Lasater's reports and testimony. The V3 dataset serves as the ultimate source of data analyzed by *both* Dr. Hayter *and* Dr. Lasater. Defendants' counsel provided to Dr. Lasater the data that they felt was relevant, *see*, *e.g.*, Lasater Dep. Tr. (ECF No. 173-3; redacted public version at ECF No. 307-1) at 187:9-11, without any indication for how that data was collected, maintained, or verified. *Id.* at 44:2-46:11. Dr. Lasater testified that he had no knowledge as to who selected the fields provided to him from the V3 database, and who, if anyone, ensured the accuracy of the V3 dataset. *Id.* He also testified that the V3 dataset that he was provided is a limited, counsel-selected subset of information from the V3 database. *Id.* at 38:10-39:4, 192:7-193:15. Moreover, Dr. Lasater acknowledged that the V3 dataset contained errors. *Id.* at 45:2-7; *see* Decl. of David B. Lasater in Supp. of Defs.' Opp. to Pls.' Mot. for Class Certification (ECF No. 111-2) at 54 (noting duplicate encounters). Nevertheless, Dr. Lasater took no steps to verify that the data was accurate but, instead, "worked on a representation by counsel … that the data in V3 was accurate." Lasater Dep. Tr. at 44:19-46:11 ("Q. Other than the representation of counsel, is there any basis provided to you for how you could verify the manner in which the data was collected? A. Even if I could, it was outside the scope of what was asked of me.").

It is inconsistent and inequitable for one side's expert's opinions to be excluded on the basis of perceived analytical shortcomings while the other side's expert is given a pass, with his multiple—and far more glaring—analytical shortcomings excused in a single page of analysis as

affecting only weight rather than admissibility. *See Rappuhn v. Primal Vantage Co.*, No. 23-10050, 2024 WL 2930448, at *4 (11th Cir. June 11, 2024) (per curiam) (unpublished) ("crediting one expert over another ... misapplies *Daubert* and intrudes on the province of the jury"). If anything, greater latitude should have been afforded to *Dr. Hayter* rather than Dr. Lasater (instead of the other way around) given that Plaintiffs proffered Dr. Hayter's Report in rebuttal to Dr. Lasater's. *See PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2025 WL 1276513, at *22 (S.D.N.Y. May 2, 2025) ("[A] rebuttal expert is permitted some leeway in how he or she explains, counteracts, repels, or disproves the opinion being rebutted.").

Putting that aside, Dr. Hayter's work was *more* accurate than Dr. Lasater's in that Dr. Hayter considered actual decision-based and compensation-based data[11]—in contrast to Dr. Lasater, who made no effort to look behind Defendants' V3 dataset but, instead, categorically imputed opinions to Plan physicians that were in many instances contrary to their actual opinions, and methodically excluded *all* neuropsychologist T&P findings and 99% of neurologist T&P findings, as confirmed by Defendants own records produced by Plaintiffs in discovery. ECF No. 240 at 8; Lasater Dep. Tr. at 50:24-51:2, 51:14-52:12, 52:19-53:21, 87:22-88:23, 94:2-96:2, 103:12-21, 114:20-115:11; *see also id.* at 113:25-114:5. Therefore, if the Court sustains the Magistrate Judge's determination as to Sections 2 and 4.2 of Dr. Hayter's Report then it should correspondingly exclude Dr. Lasater's opinions—which suffer from far more pronounced analytical gaps and flaws than does any aspect of Dr. Hayter's Report—to avoid an incongruous and unjust result.

---

[11] *See* Hayter Report at 27 (noting that Exhibit A was compiled from Defendants' V3 dataset, supplemented by information drawn from actual Physician Report Forms and decisions available to Plaintiffs); *id.* at 30 (noting that Defendants' V3 dataset omitted compensation data and that Exhibit B was compiled from actual physician compensation information available to Plaintiffs).

## CONCLUSION

For the foregoing reasons, the Court should reverse the portions of the Opinion excluding Sections 2 and 4.2 of Dr. Hayter's Report. In the alternative, if the Court overrules Plaintiffs' objections to the exclusion of those sections, then it should reverse the denial of Plaintiffs' motion to exclude Dr. Lasater's opinions and grant that motion.

Dated: December 9, 2025

                                            Respectfully submitted,

                                            **SEEGER WEISS LLP**

By: *s/ Benjamin R. Barnett*
      Benjamin R. Barnett
      **SEEGER WEISS LLP**
      325 Chestnut Street, Suite 917
      Philadelphia, PA 19106
      Telephone: (215) 553-7980
      bbarnett@seegerweiss.com

      ***Counsel for Plaintiffs and for the***
      ***Proposed Class and Subclasses***

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegereiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
Noah T. Reid *(admitted pro hac vice)*
Yasha Torabi *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800

Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com
yasha@athlawllp.com

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
BBradford@awkolaw.com

*Counsel for Plaintiffs and for the Proposed Class and Subclasses*

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Counsel for Plaintiffs and Liaison Counsel for the Proposed Class and Subclasses*

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

*Additional Counsel for Plaintiffs*