IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JASON ALFORD, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NFL PLAYER DISABILITY,<br>& SURVIVOR BENEFIT PLAN, *et al.*,<br><br>*Defendants*. | Case No. 1:23-cv-00358-JRR |

## MEMORANDUM OPINION

Pending before the court is Plaintiffs' Motion for Class Certification (ECF No. 102; the "Class Certification Motion"). The court has reviewed all papers; no hearing is necessary.[1] Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Class Certification Motion will be denied.

I.   **BACKGROUND**

As set forth in the court's memorandum opinion at ECF No. 78, Plaintiffs Jason Alford, Willis McGahee, Daniel Loper, Michael McKenzie, Jamize Olawale, Alex Parsons,[2] Eric Smith, Charles Sims, Joey Thomas, and Lance Zeno bring a class action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). They bring this

---

[1] The papers filed in connection with the instant Motion are as follows:

Plaintiffs' Motion for Class Certification and Memorandum of Law (public: ECF Nos. 102, 102-1); Defendants' Opposition to Plaintiffs' Motion for Class Certification (public: ECF No. 111); Plaintiffs' Reply in Support of Motion for Class Certification (public: ECF No. 127; sealed: ECF No. 173); and Defendants' Surreply in Opposition to Plaintiffs' Motion for Class Certification (public: ECF No. 278; sealed: ECF No. 219).

[2] Pursuant to the court's memorandum opinion and order at ECF Nos. 78 and 79 (as amended by ECF No. 85), Plaintiff Alex Parsons' claim for wrongful denial of benefits is barred by the statute of limitations where the Board's final appeal letter was issued prior to August 9, 2019.

case against Defendants The NFL Player Disability & Survivor Benefit Plan and NFL Player Disability & Neurocognitive Benefit Plan (formerly, the Bert Bell/Pete Rozelle NFL Player Retirement Plan) (the "Plan") and the Disability Board of the Plan (the "Board"). The Plan is an employee welfare benefit plan, as defined by Section 3(1) of ERISA, 29 U.S.C. § 1002(1). (ECF No. 56 ¶ 16.) The Board is the administrator and fiduciary of the Plan, within the meaning of Section 3(16) of ERISA, 29 U.S.C. § 1002(16). *Id.* ¶ 19. Plaintiffs are retired National Football League ("NFL") players who applied for one or more of the disability benefits available under the Plan. (ECF No. 56 ¶¶ 1, 147–266.) They are Plan "participants" as defined by Section 3(7) of ERISA, codified at 29 U.S.C. § 1002(7).

Plaintiffs initiated this action on February 9, 2023. (ECF No. 1.) Following motions practice and pleading amendment, the following claims remain:

> **Count I**: Wrongful Denial of Benefits pursuant to Section 502(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B);
>
> **Count II**: Failure to Provide Adequate Notice in Writing of Specific Reasons for Denial in violation of Section 503(1) of ERISA, 29 U.S.C. § 1133(1);
>
> **Count III**: Denial of Right to Full and Fair Review in violation of Section 503(2) of ERISA, 29 U.S.C. § 1133(2);
>
> **Count V**: Breaches of Fiduciary Duties in violation of Sections 404(a)(1), 404(a)(1)(B), and 405(a) of ERISA, 29 U.S.C. § 1104(a), (a)(1)(B) and 1105(a), on behalf of the Plan Only.

(ECF No. 56 ¶¶ 281–349; ECF Nos. 78, 79.)

On September 3, 2024,[3] Plaintiffs filed their Class Certification Motion to certify the following class (the "Class"):

> All participants in the Plan who filed one or more applications for one or more categories of disability benefits under the Plan between August 1, 1970 and [the date of class certification] and are members

---
[3] For administrative purposes, this motion was administratively re-docketed as of March 4, 2025.

of at least one of the five Subclasses, defined as the T & P SUBCLASS, the ACTIVE SUBCLASS, the LOD SUBCLASS, the NC SUBCLASS, and the FIDUCIARY SUBCLASS.

"The Plan" includes the NFL Player Disability & Survivor Benefit Plan (formerly the NFL Player Disability, Neurocognitive & Death Benefit Plan, the NFL Player Disability & Neurocognitive Benefit Plan, the NFL Player Supplemental Disability & Neurocognitive Benefit Plan, and the NFL Player Supplemental Disability Plan); the Bert Bell/Pete Rozelle NFL Player Retirement Plan; the Bert Bell NFL Player Retirement Plan; and the Pete Rozelle NFL Player Retirement Plan.

(ECF No. 102-1 at p. 1.)

Plaintiffs seek to certify five subclasses:

The T & P SUBCLASS: All members of the Class who filed one or more applications for Total & Permanent Disability benefits under the Plan; received an adverse determination as part of at least one such application(s) between August 9, 2019 and [the date of class certification]; and are not members of the ACTIVE SUBCLASS.

The ACTIVE SUBCLASS: All members of the Class who filed one or more applications for Total & Permanent Disability benefits under the Plan; received an adverse determination as part of at least one such application between August 9, 2019 and [the date of class certification]; and were within the timeframe to qualify for Active Football or Active Nonfootball Total & Permanent Disability benefits at the time that they applied.

The LOD SUBCLASS: All members of the Class who filed one or more applications for Line-of-Duty Disability Benefits under the Plan and received an adverse determination as part of at least one such application between August 9, 2019 and [the date of class certification].

The NC SUBCLASS: All members of the Class who filed an application for Neurocognitive Disability benefits under the Plan and received an adverse determination as part of at least one such application between August 9, 2019 and [the date of class certification].

The FIDUCIARY SUBCLASS: All members of the Class who filed an application for one or more categories of disability benefits under the Plan between August 1, 1970 and [the date of class certification].

3

(ECF No. 102-1 at pp. 1–2.)

Plaintiffs contend that "Defendants have rigged the claims process against those in whose best interests they are supposed to be administering the Plan," as shown by multiple policies or practices, including:

> [F]ailing to consider all evidence in applicants' files; misinforming applicants that they have reviewed the entirety of their claim file when they have not; emphasizing evidence unfavorable to applicants; inconsistently treating similarly situated applicants; maintaining and compensating a network of physicians who evaluate Players in a manner that fails to ensure the physicians' independence and impartiality; employing financially conflicted physicians; wasting Plan assets on conflicted physicians who demonstrate inadequate work performance; failing to consider the combined effect of applicants' impairments; considering factors (education and training) explicitly prohibited by the Plan's terms for T&P benefits eligibility; resorting to clandestine Plan interpretations; and abdicating decisionmaking to advisors, compounded by the same advisors' involvement at both the Committee and Board levels, thereby turning the independent administrative appellate review that both ERISA and the Plan require into a charade.

*Id.* at pp. 2–3.

In reviewing Plaintiffs' Class Certification Motion, the court incorporates herein the relevant background set forth in its memorandum opinion at ECF No. 78 (addressing Plaintiffs' allegations in the Amended Complaint) and its statement of undisputed facts set forth in its contemporaneously issued memorandum opinion denying defense summary judgments as to Plaintiffs Loper, Olawale, and Sims.

## II.   LEGAL STANDARD

"The class-action device, which allows a representative party to prosecute [its] own claims and the claims of those who present similar issues, is an exception to the general rule that a party in federal court may vindicate only [its] own interests." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445

F.3d 311, 318 (4th Cir. 2006). It "is a carefully constructed compromise in our legal system—one which Article III courts play a critical role in maintaining." *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 683 (4th Cir. 2024). It is built upon the premise that "litigation by representative parties adjudicates the rights of all class members." *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998)).

Plaintiffs seeking to certify a class must meet the criteria set forth in Federal Rule of Civil Procedure 23. First, the moving party must comply with the requirements of Rule 23(a). It provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These prerequisites are commonly referred to as "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). "The first two prerequisites (numerosity and commonality) focus on the absent or represented class while the latter two tests (typicality and adequacy) address the desired qualifications of the class representative."[4] 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 1:2 (6th ed. 2025). "The Fourth Circuit also reads into Rule 23 an implied requirement of 'ascertainability,' meaning that the [] court can readily identify the class

---

[4] The latter three categories tend to merge. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.3 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982)); *see Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (same).

members in reference to objective criteria."[5] *McMillan v. Kansas City Life Ins. Co.*, 762 F. Supp. 3d 443, 457 (D. Md. 2025) (citation omitted); *see Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019) (same); *EQT Prod.*, 764 F.3d at 358 (same).

After satisfying these criteria, the moving party must then show that the class action falls into one or more of the categories described in Rule 23(b). Plaintiffs here seek certification under Rule 23(b)(1) and 23(b)(2). Rule 23(b) permits class treatment where:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; [or]
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

FED. R. CIV. P. 23(b)(1), (2).

"As a general matter, the limits of Rule 23 are designed to ensure vigorous adversarial process, efficient adjudication of class-wide questions, and a practical means of identifying and notifying those who may be affected by a judgment." *Krakauer*, 925 F.3d at 655. It is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a plaintiff must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule

---

[5] Recently, the Fourth Circuit recognized that "[t]here is no threshold ascertainability requirement in [a] Rule 23(b)(2) case, which seeks only declaratory and injunctive relief from a discriminatory policy." *Kadel v. Folwell*, 100 F.4th 122, 161 (4th Cir. 2024), *judgment vacated on other grounds*, — U.S. —, 145 S. Ct. 2838 (2025); *see CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 717 n.3 (D. Md. 2025) (discussing same).

23(a)," and "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis in original) (citation omitted).

While "[i]t is the plaintiffs' burden to demonstrate compliance with Rule 23, . . . the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod.*, 764 F.3d at 358 (citing *Wal-Mart*, 564 U.S. at 350–51); *see Krakauer*, 925 F.3d at 654 (explaining that "the district court must rigorously examine the core issues of the case at the certification stage"). This rigorous analysis does not grant the court "license to engage in free-ranging merits inquiries at the certification stage;" rather, the court "consider[s] merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *EQT Prod.*, 764 F.3d at 358 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). Indeed, "in a class certification analysis, the court determines whether the Rule 23 requirements have been satisfied without considering whether the proposed class is likely to prevail on the merits." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024) (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362, 366 (4th Cir. 2004)). At the same time, the party seeking class certification "must present evidence" in support of their purported compliance with Rule 23. *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 2845 (2025).

### III. ANALYSIS

Because the court ultimately concludes the commonality and typicality prerequisites are not met here, it directs its analysis accordingly.

#### 1. *Commonality*

To satisfy the commonality requirement, there must be "questions of law or fact common

to the class." FED. R. CIV. P. 23(a)(2). As the Supreme Court explained in the foundational case of *Wal-Mart Stores, Inc. v. Dukes*, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original) (citation omitted); *see G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024) (discussing same). Common answers may be impeded by "[d]issimilarities within the proposed class." *Id.* While "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350, 359); *see Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (same). "A question is not common . . . if its resolution turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citation omitted); *see Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, No. CV ELH-21-1520, 2023 WL 185178, at *6 (D. Md. Jan. 13, 2023) (same).

While commonality requires that class members "have suffered the same injury," it is insufficient to assert merely that "they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). By way of example, the Supreme Court in *Wal-Mart* pointed to Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII, the Court explained, "can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact . . . ." *Id.* at 350. Thus, "the mere claim by employees of the same company that they have suffered a Title VII injury . . . gives no cause to believe that all their claims can productively be litigated at

8

once." *Id*. Instead, the "claims must depend upon a common contention," one of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 349–50.

On this issue, the Fourth Circuit cautions:

> Allegations of generalized policies are not usually sufficient for the purposes of class certification. Appellate courts are skeptical, for instance, when plaintiffs or district courts rely on nebulous references to "systemic failures" or "systemic deficiencies" to satisfy commonality. *See, e.g., J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842 (5th Cir. 2012). Such vagueness may mask a multitude of disparities. Plaintiffs may invoke overly general policies precisely because "they are at a loss for a more specific thread to tie claims together." *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023). Indeed, it is circular logic for plaintiffs to create a laundry list of factually diverse claims and then assert that these claims, in turn, prove the existence of a uniform company policy. We endeavor to ensure that commonality is not based on such "semantic dexterity." *Brown*, 785 F.3d at 909.
>
> "Rule 23 does not allow for [ ] a 30,000 foot view of commonality," *In re White*, 64 F.4th at 314, and courts have the obligation to "examine whether differences between class members impede the discovery of common answers," *Brown*, 785 F.3d at 909; *see also Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541 ("[P]laintiff[s] [must] demonstrate that the class members 'have suffered the same injury'"). Here it is unclear from the district court's analysis that the many types of claims plaintiffs advance can be united by a common question of liability. The district court pointed to no specific documentation or concrete evidence narrowing the broad theoretical policy by which [the defendant] allegedly mandated all different forms of off-the-clock work and time-shaving.

*Stafford*, 123 F.4th at 680 (citation modified).[6]

Further, in *G.T. v. Board of Education of County of Kanawha*, 117 F.4th 193 (4th Cir.

---

[6] The Fourth Circuit's decision in *Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671 (4th Cir. 2024), concerned a class action brought pursuant to Rule 23(b)(3).

9

2024), the Fourth Circuit opined on the commonality requirement in the context of an Individuals with Disabilities Education Act ("IDEA") class. Its analysis turned in part on the fact that "[t]he typical IDEA lawsuit involves a highly individualized assessment." *Id.* at 205. The Fourth Circuit held:

> We agree with our sister circuits that, to meet the commonality prerequisite for class certification, plaintiffs in an IDEA case like this one must identify a "uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation." *Id.* The typical IDEA lawsuit involves a highly individualized assessment of whether a child was denied a FAPE. In a suit challenging hundreds of individualized special education decisions, satisfying the commonality prerequisite requires proof of some common driver—the "'glue'" holding all those decisions together in a way that suggests they can productively be litigated all at once. *Jamie S.*, 668 F.3d at 498 (quoting *Wal-Mart*, 564 U.S. at 352, 131 S.Ct. 2541); *see also Parent/Pro. Advoc. League*, 934 F.3d at 29. "[A] uniform policy or practice that affects all class members" can supply this connection, *DL*, 713 F.3d at 128, by "anchor[ing] common questions . . . the answers to which could 'resolve an issue that is central to the validity of each one of the claims in one stroke,'" *Parent/Pro. Advoc. League*, 934 F.3d at 29 (quoting *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541).
>
> . . .
>
> We conclude that this class fails to satisfy Rule 23(a)(2)'s commonality requirement because Plaintiffs do not identify a common contention central to the validity of all class members' claims. Plaintiffs assert that all class members are harmed "in the same manner" because the Board deprived them of "the educational services to which they are entitled by federal law" and "subjected them to disability-based discrimination." J.A. 37. But it is not enough that "they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541. As we will explain, the class members' claims are highly diverse and individualized, and Plaintiffs have not identified a "single or uniform policy or practice that bridges all their claims." *DL*, 713 F.3d at 127. The district court acknowledged that "Plaintiffs cannot point to a single policy" that underlies all class members' claims. *G.T.*, 2021 WL 3744607, at *14. Nor do Plaintiffs identify "a well-defined practice (or set of practices) that is consistently and uniformly applied" which drives each class member's claim.

10

> *Parent/Pro. Advoc. League*, 934 F.3d at 29. The absence of a common contention forecloses class treatment.

*Id.*[7]

Turning to the instant action, Plaintiffs seek to certify a class spanning over five decades of NFL players. Plaintiffs raise a litany of asserted common questions that stem from their overarching contention that Defendants have a biased claims administration process.[8] (ECF No. 102-1 at pp. 10–15.) Plaintiffs acknowledge that, as they frame it, an individual Plaintiff "may have been unaffected by one or more of the policies and practices at issue."[9] (ECF No. 172 at p. 5.) But they urge that commonality is met here because their claims rest on a "common legal theory that Defendants' conduct, considered in the aggregate . . . breached Defendants' duties to the Plan." *Id.* (citation modified). Plaintiffs contend:

> Plaintiffs' theory of injury, however, is that Defendants' panoply of practices and policies steeply tilted the playing field against benefits applicants and amounted, in their totality, to objectively unreasonable conduct—to the point where Defendants injured the Plan itself, including by expending tens of millions of dollars on biased physicians and harming the Plan's integrity, and that such conduct warrants removal of these fiduciaries.

(ECF No. 172 at p. 11.) The court disagrees that Plaintiffs' theory is sufficient to satisfy the commonality requirement.[10]

---

[7] Plaintiffs seemingly challenge the applicability or relevance of the Fourth Circuit's reasoning in *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, noting that it addressed "commonality in the unique context of the Individuals with Disabilities Education Act," which, in the normal case, involves a highly individualized assessment.

[8] The court's analysis here turns on the asserted common questions that remain live after the court's contemporaneous ruling on Defendants' motions for summary judgment, which is to say, the court does not consider Plaintiffs' assertion of a fraudulent scheme wherein Defendants induced negative findings by Plan physicians via its compensation, referral, retention, training, and hiring systems.

[9] For example, Plaintiffs identify a common question of "[w]hether Defendants' long history of diminishing and concealing the impact of neurocognitive impairments from football activities affected their benefits decisions." (ECF No. 102 at p. 11.) Whether Defendants in fact have such a history would have no bearing on a player applicant who, for instance, did not assert or present a neurocognitive impairment.

[10] For purposes of this opinion, the court assumes without finding that the proposed class is not overbroad to the extent it does not expressly carve out individuals whose claims were denied due to untimeliness or other non-medical criteria.

As Defendants note, this is not a case where Plaintiffs point to a uniformly-applied or well-defined common practice that affected (or affects) each member of the proposed class; instead, Plaintiffs claims rest on the theory that Defendants employ a "panoply of practices and policies" that arise based on the specific circumstances of a claim applicant presents, *e.g.*, a player's application, the conditions asserted, the medical relevancy of the records provided, the Plan physician's treatment of the records provided, and the Board's treatment of the records provided. The parties' summary judgment papers make that abundantly clear.

The court cannot square Plaintiffs' theory of commonality with the controlling law recited above. The claims at issue "must depend upon a common contention," one for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart*, 564 U.S. at 349–50. That all members may have been affected by the same generalized policy (or "panoply of practices and policies") that resulted in claim denials is insufficient; indeed, as the Fourth Circuit cautions, assertion of "[s]uch vagueness may mask a multitude of disparities." *See Stafford*, 123 F.4th at 680, *supra*. Commonality is not satisfied where "differences between class members impede the discovery of common answers." *Id.* The differences here do, in fact, impede discovery of common answers.

Plaintiffs' overarching practice theory is akin to an allegation of a generalized policy, *see Stafford*, 123 F.4th at 680, that relies upon a series or collection of separate policies and practices that manifest in different ways for different Plaintiffs. This is most apparent with regard to Counts I, II, and III, where the court would ordinarily need to look to the underlying administrative record to determine whether the administrator's decision was supported by substantial evidence (Count I), and to the notices provided to determine whether the requisite procedural requirements were

followed (Counts II and III).[11]  *See, e.g.*, *Smith v. Cox Enters., Inc. Welfare Benefits Plan*, 127 F.4th 541, 545 (4th Cir. 2025); *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014).

The court agrees with Defendants that the Fourth Circuit's decision in *G.T.* further informs the court's analysis here.  While the analysis pertaining to the IDEA is not directly on point, it nonetheless provides guidance (and urges caution) where plaintiffs seek class treatment despite the fact that their underlying claims would ordinarily involve "a highly individualized assessment," which is the case here.[12]  *See G.T.*, 117 F.4th at 205, *supra*.  Where such individualized assessment underlies the individual claims, there must necessarily be some common thread or "glue" (such as a uniform or common application of a policy) to tie "those decisions together in a way that suggests that they can productively be litigated all at once."  *See id*.  Relying on a series of policies applied in different ways to different Plaintiffs (and putative class members) fails to satisfy the commonality prerequisite as discussed in *Wal-Mart* and its progeny.

While Plaintiffs are correct that "'[c]ommonality does not require class members to share *all* issues in the suit, but simply a single common issue,' and '[t]hus, factual differences among members' cases will not preclude certification if the class members share the same legal theory,'" *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 55 (D. Md. 2020) (emphasis in original) (quoting *Bullock v. Bd. of Educ. of Montgomery Cty.*, 210 F.R.D. 556, 560 (D. Md. 2002)), that is not persuasive here where the "common issue" is the alleged broad, over-arching policy that

---

[11] Further, to find abuse of discretion by Defendants in support of Plaintiffs' Counts II and III for procedural violations of ERISA, the factfinder must find "a causal connection between [procedural defects] and the final denial of a claim." *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 297 (4th Cir. 2006); *see Carl A. B. v. Blue Cross Blue Shield of N. Carolina*, No. 1:22CV84, 2024 WL 3860072, at *7 (M.D.N.C. Aug. 19, 2024) (same).  The necessary individualized factfinding would impede the capacity of a question to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

[12] The court makes no commentary as to whether the claims at issue in this action could meet Rule 23 requirements as a general proposition; rather, the court's analysis is cabined to the case before it.

Plaintiffs acknowledge manifests in a "panoply of practices and policies," and where the factual distinctions themselves are determinative, or at least highly probative, of the legal issues presented.[13]

In addition to the issues discussed above, Plaintiffs fail to demonstrate how the questions they raise are common to proposed class members ranging as far back as 1970. For example, while Plaintiffs make frequent reference to application of the Plan's Neutral Rule, that rule has only been in effect since 2017; therefore, application or practice as to the Neutral Rule cannot serve as the requisite "glue."[14] Plaintiffs also point to Defendants' refusal to conform to legal precedent, but do not explain how such a failure affects a putative class member where the relied upon legal precedent was not in effect during the relevant time period. Instead, what these examples illustrate is the inadequacy of the broad scheme or practice upon which Plaintiffs rely (*i.e.*, the "panoply of practices and policies") to meet the commonality requirement.

Plaintiffs have therefore not demonstrated that the commonality requirement under Rule 23(a)(2) is met.

2. ***Typicality***

To satisfy the typicality requirement, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The typicality requirement goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Thus, a named plaintiff's claim "cannot be

---

[13] The court does not foreclose that an assertion that an ERISA administrator has a well-defined policy of utilizing bad faith in reviewing claims is capable of satisfying the commonality requirement, especially as to a breach of fiduciary duty claim. The facts and circumstances simply do not support as such here. Similarly, the court makes no findings as to whether a specific identified policy or practice (*e.g.*, the Board's deference to the Neutral Rule), and a proposed class and claims tailored to same, would satisfy the commonality requirement.

[14] The court discusses the Neutral Rule at length in its contemporaneous memorandum opinion on Defendants' motions for summary judgment.

so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim." *Id.* at 466–67. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation omitted).

"That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). While the claims "do not have to be factually or legal identical, . . . the class claims should be fairly encompassed by those of the named plaintiffs." *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 447 (D. Md. 2018) (citing *Broussard*, 155 F.3d at 344). To that end, the court "compares the class representative's claims and defenses to those of the absent class members, considers the facts needed to prove the class representative's claims, and determines the extent to which those facts would also prove the claims of the absent class members." *Coreas v. Bounds*, No. CV TDC-20-0780, 2020 WL 5593338, at *13 (D. Md. Sept. 18, 2020) (citing *Deiter*, 436 F.3d at 467).

Where Plaintiffs' theory of recovery hinges on application of multiple policies and practices (that apply to some, but not all Plaintiffs and putative class members) as part of some greater scheme favoring denial of benefits, Plaintiffs fail to show that their claims are typical of putative class members' claims. Stated differently, Plaintiffs have not persuaded the court that their claims arising from this overarching policy are typical of the claims of class members from decades ago, asserting their own unique medical conditions and applications, under different Plan terms. Plaintiffs have not shown that their claims "arise from the same factual nexus and are based

15

on the same legal theories as" those of the proposed class members.[15] *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *3 (D. Md. July 15, 2019).

Plaintiffs therefore fail to demonstrate typicality as required by Rule 23(a)(3).

## IV.  CONCLUSION

For the reasons set forth herein, by separate order, the Class Certification Motion will be denied.

January 28, 2026

/s/
Julie R. Rubin
United States District Judge

---

[15] Plaintiffs cite *Peters v. Aetna, Inc.*, No. 1:15-CV-00109-MR, 2023 WL 3829407 (W.D.N.C. June 5, 2023), where the Western District of North Carolina found the typicality requirement satisfied in a Section 502(a)(2) claim to prevent the defendants' misconduct. (ECF No. 172 at pp. 7–8.) Plaintiffs' general reliance on *Peters* absent analysis of the facts underlying the claims at issue there is not compelling. In any event, upon the court's review of *Peters*, it is not persuaded that it saves the day here. Although *Peters* supports the notion that a broad, common question (*e.g.*, "whether Aetna's breach amounted to a harm to the particular plan and plan participants") may satisfy commonality, as far as the court can discern, recovery in that case was not based on a series of policies and practices that affected different class members in different ways, as is the case here. *Id.* at *2–3, *10. As the court noted:

> [T]he dispute is whether Optum is a "provider" of the chiropractic and physical therapy services. If it is a "provider" that simply subcontracts for the services and charges a fee for serving as the "general contractor," then its arrangement is consistent with the Plan. On the other hand, if Aetna has simply contracted with Optum for Optum to provide some administrative services that Aetna had agreed to perform in its contract with the Plan, then the Aetna/Optum arrangement allows for charging a fee greater than allowed by the plan contract, and further serves to hide that excess fee from the Plan and its members by misidentifying it as part of a claim for services.

*Id.* at *3. Unlike what is asserted here, *Peters* dealt with a discrete, identifiable policy. That case does not appear to have involved significant and relevant factual dissimilarities among class members thus impeding typicality (excepting perhaps that class members may have been subject to different plans—an issue for which the plaintiffs advanced argument and evidence to support the various plans did not contain "any meaningful variation in their relevant terms"). *Id.* at *10–11 (citation omitted).