**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**BALTIMORE DIVISION**

JASON ALFORD, DANIEL LOPER, WILLIS MCGAHEE, MICHAEL MCKENZIE, JAMIZE OLAWALE, ALEX PARSONS, ERIC SMITH, CHARLES SIMS, JOEY THOMAS, and LANCE ZENO, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

THE NFL PLAYER DISABILITY & SURVIVOR BENEFIT PLAN; THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; THE BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE DISABILITY BOARD OF THE NFL PLAYER DISABILITY & NEUROCOGNITIVE BENEFIT PLAN; LARRY FERAZANI; JACOB FRANK; BELINDA LERNER; SAM MCCULLUM; ROBERT SMITH; HOBY BRENNER; and ROGER GOODELL,

Defendants.

**No. 1:23-cv-00358-JRR**

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 3

I. The NFL Disability Plan and Its Benefits ..... 3

II. Defendants' Conduct in Administering the Benefits Claims and Appeals Process ..... 4

III. Prior Proceedings ..... 8

ARGUMENT… ..... 10

PLAINTIFFS' CLAIMS UNDER COUNTS II AND III, ASSERTED ON BEHALF OF DISCRETE CLASSES ATTACKING SPECIFIC POLICIES OR PRACTICES DURING THE NARROWED TIME PERIODS OF THEIR EXISTENCE, ARE SUITABLE FOR CLASS-WIDE ADJUDICATION, AS IS THEIR COUNT V CLAIM ON BEHALF OF THE PLAN … ..... 10

I. GENERAL STANDARDS FOR CERTIFYING CLASSES ..... 10

II. CONSISTENT WITH FOURTH CIRCUIT PRECEDENT, THE COMPOSITION OF THE CLASSES IS ASCERTAINABLE ..... 11

III. THE SUBTANTIALLY REVISED PROPOSED CLASSES ALL SATISFY THE RULE 23(a) ELEMENTS ..... 15

A. The Classes Satisfy the Rule 23(a)(1) Numerosity Test ..... 15

B. The Rule 23(a)(2) Commonality Requirement Is Also Met ..... 16

C. Plaintiffs' Claims Are Typical of Those of Absent Class Members ..... 19

D. Plaintiffs Will Adequately Represent Absent Class Members' Interests ..... 21

IV. PLAINTIFFS' UPDATED CLASS CLAIMS ARE WELL SUITED FOR RULE 23(b)(1)(A) CERTIFICATION ..... 22

V. PLAINTIFFS' UPDATED CLASS CLAIMS ARE EQUALLY WELL SUITED FOR RULE 23(b)(2) CERTIFICATION ..... 26

CONCLUSION ..... 28

# TABLE OF AUTHORITIES


Cases Page(s)

*Aguilar v. Melkonian Enters., Inc.*,
2007 WL 201180 (E.D. Cal. Jan. 24, 2007) ........ 28

*Allapattah Servs., Inc. v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003) ........ 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 11, 23

*Avery v. Uniroyal Tech. Corp.*,
2005 WL 1205607 (M.D. Fla. May 20, 2005) ........ 14

*Baehr v. Creig Northrop Team, P.C.*,
2014 WL 346635 (D. Md. Jan. 29, 2014) ........ 17

*Bellon v. PPG Emp. Life & other Benefits Plan*,
2023 WL 4155362 (N.D. W. Va. May 23, 2023) ........ 23

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ........ 11

*Berry v. Wells Fargo & Co.*,
2018 WL 9989754 (D.S.C. Oct. 9, 2018) ........ 23

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015) ........ 14

*Bond v. Marriott Int'l, Inc.*,
296 F.R.D. 403 (D. Md. 2014) ........ 23

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ........ 25

*Brieger v. Tellabs, Inc.*,
245 F.R.D. 345 (N.D. Ill. 2007) ........ 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ........ 16

*Brumm v. Bert Bell NFL Ret. Plan*,
995 F.2d 1433 (8th Cir. 1993) ........ 27

*Bullock v. Bd. of Educ. of Montgomery Cnty.*,
210 F.R.D. 556 (D. Md. 2002) .......... 19, 20

*Bunnion v. Consol. Rail Corp.*,
1998 WL 372644 (E.D. Pa. May 14, 1998) .......... 28

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
91 F.4th 202 (4th Cir. 2024) .......... 12

*Carter v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
2012 WL 6043050 (N.D. Ala. Dec. 3, 2012) .......... 5

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) .......... 26

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) .......... 11

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
2022 WL 2237451 (N.D. Tex. June 21, 2022) .......... 5

*Cogdell v. Reliance Standard Life Ins. Co.*,
2026 WL 588427 (4th Cir. Mar. 3, 2026) .......... 14, 26

*Connor v. Maryland Dep't of Health*,
2025 WL 1167846 (D. Md. Apr. 22, 2025) .......... 17

*Cottillion v. United Refin. Co.*,
2013 WL 5936368 (W.D. Pa. Nov. 5, 2013) .......... 28

*Craighead v. Full Citizenship of Md., Inc.*,
2018 WL 3608743 (D. Md. July 27, 2018) .......... 12

*Curtis v. Genesis Eng'g Sols., Inc.*,
2022 WL 1062024 (D. Md. Apr. 8, 2022) .......... 16

*Cuthie v. Fleet Rsrv. Ass'n*,
743 F. Supp. 2d 486 (D. Md. 2010) .......... 15, 16

*D.N.N. v. Liggins*,
2026 WL 632371 (D. Md. Mar. 6, 2026) .......... 19, 28

*Dated 8/8/88 v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) .......... 11

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) .......... 19, 20

*Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
2018 WL 1258147 (N.D. Cal. Mar. 12, 2018) ........ 6

*Does 4, 7, 22, 27, 28 , & 29 v. Musk*,
350 F.R.D. 246 (D. Md. 2025) ........ 12

*Douglin v. GreatBanc Tr. Co.*,
115 F. Supp. 3d 404 (S.D.N.Y. 2015) ........ 27

*DuPerry v. Life Ins. Co. of N. Am.*,
632 F.3d 860 (4th Cir. 2011) ........ 27

*Ealy v. Pinkerton Gov't Servs., Inc.*,
514 F. App'x 299 (4th Cir. 2013) ........ 16, 19

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ........ 11, 12

*Escalante v. Cal. Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015) ........ 22

*Falberg v. Goldman Sachs Grp., Inc.*,
2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ........ 24

*Gariety v. Grant Thornton, LLP,*
368 F.3d 356 (4th Cir. 2004) ........ 11

*Glover v. EQT Corp.*,
151 F.4th 613 (4th Cir. 2025) ........ 11, 12

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ........ 11

*Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan*,
509 F.3d 644 (4th Cir. 2007) ........ 27

*Goldman Sachs 401(k) Plan Retirement Committee v. Falberg.,*
2022 WL 4126112 (2d Cir. June 29, 2022) ........ 24

*Hewlett v. Premier Salons Intern, Inc.,*
185 F.R.D. 211 (D. Md. May 1, 1997) ........ 15, 16

*Hoffman v. First Student, Inc.*,
2008 WL 11349801 (D. Md. Dec. 9, 2008) ........ 14

*Huang v. TriNet HR III, Inc.*,
2022 WL 13631836 (M.D. Fla. Oct. 21, 2022) ........ 13

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) .......... 24

*In re Citigroup Pension Plan ERISA Litig.*,
241 F.R.D. 172 (S.D.N.Y. 2006) .......... 23

*In re Enron Corp.*,
2006 WL 1662596 (S.D. Tex. June 7, 2006) .......... 21

*In re Marshall*,
261 F. App'x 522 (4th Cir. 2008) .......... 5

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) .......... 14

*In re Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) .......... 13

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......... 24

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......... 23

*In re Titanium Dioxide Antitrust Litig.*,
284 F.R.D. 328 (D. Md. 2012) .......... 15, 20, 22

*In re Under Armour Sec. Litig.*,
631 F. Supp. 3d 285 (D. Md. 2022) .......... passim

*In re Williams Cos. ERISA Litig.*,
231 F.R.D. 416 (N.D. Okla. 2005) .......... 23

*Jackson v. Am. Elec. Warfare Assocs., Inc.*,
2024 WL 556230 (D. Md. Feb. 12, 2024) .......... 12

*Jefferson v. Sellers*,
250 F. Supp. 3d 1340 (N.D. Ga. 2017) .......... 8

*Kadel v. Folwell*,
100 F.4th 122 (4th Cir. 2024) .......... 12

*Knight v. Lavine*,
2013 WL 427880 (E.D. Va. Feb. 4, 2013) .......... 21

*Kohl v. Ass'n of Trial Laws. of Am.*,
183 F.R.D. 475 (D. Md. 1998) .......... 15

*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001) ........ 11

*McFadden v. Sprint Commc'ns, LLC*,
2024 WL 1533897 (D. Kan. Apr. 9, 2024) ........ 23

*Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*,
332 F.R.D. 138 (S.D.N.Y. 2019) ........ 28

*Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*,
832 F. App'x 586 (11th Cir. 2020) ........ 5, 27

*Midland Funding, LLC v. Brent*,
2010 WL 4628593 (N.D. Ohio Nov. 4, 2010) ........ 14

*Minter v. Wells Fargo Bank, N.A.*,
274 F.R.D. 525 (D. Md. 2011) ........ 15, 20, 21

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
2012 WL 4865174 (S.D.N.Y. Oct. 15, 2012) ........ 13

*Neil v. Zell*,
275 F.R.D. 256 (N.D. Ill. 2011) ........ 23

*O'Bannon v. Friedman's, Inc.*,
2008 WL 11509653 (D. Md. Oct. 29, 2008) ........ 22

*Ormond v. Anthem, Inc.*,
2009 WL 3163117 (S.D. Ind. Sept. 29, 2009) ........ 14

*Peoples v. Wendover Funding, Inc.*,
179 F.R.D. 492 (D. Md. 1998) ........ 19

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021) ........ 11, 12

*Peters v. Aetna, Inc.*,
2023 WL 3829407 (W.D.N.C. June 5, 2023) ........ 17, 20

*Piotrowski v. Wells Fargo Bank, NA*,
2015 WL 4602591 (D. Md. July 29, 2015) ........ 23

*Pizarro v. Home Depot, Inc.*,
2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) ........ 13

*Robinson v. Nationstar Mortg. LLC*,
2019 WL 4261696 (D. Md. Sept. 9, 2019) ........ 14

*Sanchez v. McAleenan*,
2020 WL 5849491 (D. Md. Sept. 30, 2020) .......... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 11

*Sims v. BB & T Corp.*,
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) .......... 13

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013) .......... 15

*Smith v. B & O R.R. Co.*,
473 F. Supp. 572 (D. Md. 1979) .......... 20

*Smith v. Montgomery Cnty., Md.*,
573 F. Supp. 604 (D. Md. 1983) .......... 22

*Solomon v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
860 F.3d 259 (4th Cir. 2017) .......... 5

*Stegemann v. Gannett Co.*,
2022 WL 17067496 (E.D. Va. Nov. 17, 2022) .......... 24

*Stuart v. Radioshack Corp.*,
2009 WL 281941 (N.D. Cal. Feb. 5, 2009) .......... 13

*Thompson v. Linvatec Corp.*,
2007 WL 1526418 (N.D.N.Y. May 22, 2007) .......... 23

*Todd v. XOOM Energy Md., LLC*,
2020 WL 4784767 (D. Md. Aug. 18, 2020) .......... 22

*Tussey v. ABB, Inc.*,
2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) .......... 21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 17, 28

*Wilson v. Eagle Nat'l Bank*,
2023 WL 2478933 (D. Md. Mar. 13, 2023) .......... 16

*Woodward v. GEICO Advantage Ins. Co.*,
2022 WL 2953053 (D. Md. July 25, 2022) .......... 13

*Yates v. NewRez LLC*,
686 F. Supp. 3d 397 (D. Md. 2023) .......... 12, 20

**Statutes**

29 U.S.C. § 1002(16)(A) .......... 4

29 U.S.C. § 1002(37) .......... 4

29 U.S.C. § 1102(a)(2) .......... 14

29 U.S.C. § 1104 .......... 24

29 U.S.C. § 1109 .......... 24

29 U.S.C. § 1132 .......... 14

29 U.S.C. § 1132(a)(1)(B) .......... 25, 28

29 U.S.C. § 1132(a)(2) .......... 21

29 U.S.C. § 1133(2) .......... 17, 18

**Rules**

Fed. R. Civ. P. 23(a) .......... 2, 11, 15

Fed. R. Civ. P. 23(a)(1) .......... 15

Fed. R. Civ. P. 23(a)(2) .......... 10, 16

Fed. R. Civ. P. 23(a)(3) .......... 10

Fed. R. Civ. P. 23(a)(4) .......... 21

Fed. R. Civ. P. 23(b) ..........

Fed. R. Civ. P. 23(b)(1) .......... 23

Fed. R. Civ. P. 23(b)(1)(A) .......... *passim*

Fed. R. Civ. P. 23(b)(2) .......... *passim*

Fed. R. Civ. P. 23(g)(1) .......... 29

**Regulations**

29 C.F.R. § 2560.503-1 ..................................................................................................... 17

29 C.F.R. § 2560.503-1(b)(5) ..................................................................................... 8, 18, 25

29 C.F.R. § 2560.503-1(h)(2)(iv) ............................................................................ 17, 18, 24

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule" or "Rules") 23, Plaintiffs respectfully move the Court to certify four substantially revised and narrowed classes (collectively, "the Classes"). Applying the principles set forth in the Court's January 28th Memorandum Opinion (ECF No. 337) and the Fourth Circuit precedent cited therein, the revised proposed Classes—unlike the former proposed composite classes, distinguished by benefit type but otherwise all challenging the same array of policies and practices—focus only on four discrete policies and practices during significantly limited time periods. The revised proposed Classes are defined as:

> **THE NEUTRAL PHYSICIAN CLASS**: All participants in the Plan[1] who (i) filed one or more applications for Total & Permanent Disability, Line-of-Duty Disability, or Neurocognitive Disability benefits under the Plan; (ii) were either (a) examined by a Plan-designated "Neutral Physician" (as the term is defined in the Plan) *or* (b) had their application reviewed by a Plan-designated Medical Advisory Physician ("MAP") (as the term is defined in the Plan); and (iii) received an adverse determination in whole or in part on at least one such application between April 1, 2017 and [the date of class certification].
>
> **THE CUMULATIVE IMPAIRMENTS CLASS**: All participants in the Plan who (i) filed one or more applications for Total & Permanent Disability benefits under the Plan; (ii) were examined by at least two Plan-designated Neutral Physicians (as the term is defined in the Plan) specializing in different areas; and (iii) received an adverse determination, in whole or in part on at least one such application between October 15, 2020 and [the date of class certification].
>
> **THE EDUCATION AND TRAINING CLASS**: All participants in the Plan who (i) filed one or more applications for Total & Permanent Disability benefits under the Plan; (ii) were examined by a Plan-designated Neutral Physician (as the term is defined in the Plan) neuropsychologist, neurologist, or psychiatrist between August 1, 2018; and (iii) received an adverse determination, in whole or in part on at least one such application and [the date of class certification].

[1] "The Plan" includes the NFL Player Disability & Survivor Benefit Plan (formerly the NFL Player Disability, Neurocognitive & Death Benefit Plan, the NFL Player Disability & Neurocognitive Benefit Plan, the NFL Player Supplemental Disability & Neurocognitive Benefit Plan, and the NFL Player Supplemental Disability Plan); the Bert Bell/Pete Rozelle NFL Player Retirement Plan; the Bert Bell NFL Player Retirement Plan; and the Pete Rozelle NFL Player Retirement Plan.

> **THE NEUROPSYCHOLOGICAL TESTING CLASS**: All participants in the Plan who (i) filed one or more applications for Total & Permanent Disability, Line-of-Duty Disability, or Neurocognitive Disability benefits under the Plan; (ii) were examined by a Plan-designated Neutral Physician (as the term is defined in the Plan) neuropsychologist; and (iii) received an adverse determination, in whole or in part on at least one such application; between August 1, 2018 and June 8, 2021.

Excluded from the Classes are:

(a) The Court and its officers, employees, and relatives;

(b) Any officer, director, employee, contractor, or agent of the Plan or of the National Football League Player Benefits Office; and

(c) Any applicant for Total & Permanent Disability, Line-of-Duty Disability, or Neurocognitive Disability benefits whose application would otherwise form the basis of membership in one of the Classes was denied solely on the grounds that it was not timely under the terms of the Plan or on other non-medical grounds.

The composition of the Classes can readily be ascertained because they are defined using purely objective criteria and members can be identified from the Plan's own records. In addition, the Classes satisfy all of the black-letter Rule 23(a) elements because their members are too numerous and geographically dispersed to make their joinder practicable; core questions common to all members of each Class will drive the resolution of their respective claims; Plaintiffs' claims are representative of those of absent members, giving them every incentive to vigorously pursue them on their behalf; and Plaintiffs, represented by counsel who have already vigorously litigated claims from this litigation's start, will continue to diligently advance absent members' interests.

Plaintiffs' substantially revised Classes are well suited for Rule 23(b)(1)(A) and (b)(2) certification. They center on the following discrete and well-defined policies and practices that Defendants employed in contravention of Plan terms, statutory mandates, and legal precedent: (i) Defendants' practice of refusing to conform to legal precedent requiring Defendants to consider the cumulative effect of *all* T&P Disability benefits (defined below) applicants' impairments—and

in the face of their Plan documents instructing Players to identify every impairment forming the basis of their disability; (ii) Defendants' uniform policy and practice of applying the "Neutral Physician Rule" to abdicate decision-making to the Plan-selected physicians; (iii) Defendants' specifically identifiable policy requiring improper consideration of T&P Disability applicants' education level and training; and (iv) Defendants' well-defined written policy mandating race-based adjustments to applicants' neuropsychological test results. These policies and practices, applied in administering the Plan's claims and appeals processes, constitute bad faith and breached Defendants' fiduciary duties under ERISA. At least three (and possibly all) of these policies and practices are ongoing, justifying declaratory and equitable relief.

Rule 23(b)(1)(A) certification is appropriate because of the need to establish compatible standards of conduct for Defendants vis-à-vis absent members of each Class, and Rule 23(b)(2) certification is warranted because Defendants acted or failed to act with respect to each Class as a whole. The purely declaratory and equitable relief that Plaintiffs seek—including injunctive relief against the challenged practices and policies, equitable reopening of claims, Plan reformation, stripping of the Board's discretion, and removal of Board members—underscores the suitability of 23(b)(1)(A) and (b)(2) certification. Notably, Plaintiffs seek certification only of their Count II, III, and V claims and do not seek certification of their Count I ERISA § 502(a)(1)(B) wrongful benefits denial claim. Consequently, monetary relief for the Classes is not at issue.

## STATEMENT OF FACTS

### I. The NFL Disability Plan and Its Benefits

Plaintiffs are retired NFL football players ("Players") who applied for one or more of the Plan's disability benefits types, and all had one or more adverse determinations, with their claims not having received a full or fair claim process on account of one or more of four discrete policies

or practices challenged by the proposed revised Classes. ¶¶ 147-266.[2] The Plan is an ERISA multi-employer plan. *See* 29 U.S.C. § 1002(37); ¶ 31. A seven-member Disability Board ("Board") serves as its ERISA-defined Administrator, *see* 29 U.S.C. § 1002(16)(A), and its ERISA-defined "named fiduciary." *See id.* § 1102(a)(2). ¶¶ 19, 39. The Plan provides for three general categories of disability benefits to eligible Players: Total and Permanent ("T&P") Disability benefits, Line of Duty ("LOD") Disability benefits, and Neurocognitive Disability ("NC") benefits. ¶¶ 32, 59-81.[3] A three-member Disability Initial Claims Committee ("Committee") renders the initial decision on Players' claims. ¶ 35. Players may appeal adverse Committee decisions to the Board, which may not accord any deference to the Committee's decision. ¶ 38; Ex. A at 62 (2021 Plan § 13.14(a)); Ex. C at 57 (2017 Plan § 13.14(a)).

## II. Defendants' Conduct in Administering the Benefits Claims and Appeals Process

As required by both ERISA and the Plan, Defendants' review must take into account *all* available documents, information, evidence, facts, and circumstances. ¶¶ 37, 40-41.[4] Numerous

[2] "¶"and "¶¶" standing alone refer to paragraphs of the Amended Class Action Complaint (ECF No. 56) ("Complaint"). "Ex.__" standing alone refers to exhibits to the Declaration of Benjamin R. Barnett in Support of Plaintiffs' Renewed Motion for Class Certification, dated March 24, 2026 ("Barnett Decl."). Except where otherwise indicated, exhibit page numbers refer to pages of the original document rather than ECF pagination or Bates-numbering. Also, except where otherwise indicated, internal citations, internal quotation marks, and footnotes are omitted from all quotations and emphasis is added.

[3] To be entitled to T&P Disability benefits, a Player must suffer from a permanent condition rendering him substantially unable or substantially prevented from engaging in any occupation or employment for profit. Ex. A at 6 (2021 Plan § 3.1(d)), Ex. C at 6 (2017 Plan § 3.1(d)). The 2017 and 2021 versions of the Plan state that educational level will not be considered in determining whether a Player is T & P disabled. There are four subcategories of T&P Disability benefits, based on when the Player's disability arose and whether it is related to NFL play: Active Football, (ii) Active Nonfootball, (iii) Inactive A, and (iv) Inactive B. ¶¶ 60-71. LOD benefits are available to Players suffering from a "substantial disablement" "arising out of League football activities" (the latter term has the same meaning for T&P benefits purposes). ¶¶ 72-73. NC benefits are available to Players who have a "mild neurocognitive" or "moderate neurocognitive" impairment, which are defined in the Plan. ¶¶ 77-79. The impairment must reflect an acquired brain dysfunction. ¶ 79.

[4] *See* Ex. A (2021 Plan §§ 3.1(e), 3.9(a), 5.1(d), 6.1(f)); Ex. C (2017 Plan §§ 3.1(d), 3.9(a), 5.1(c), 6.1(f)). The Plan's Summary Plan Descriptions ("SPDs") advise participants: "Be sure to include ALL

courts across the country, however, have repeatedly noted the Board's failure to review all facts and circumstances in the record. ¶ 21 (collecting cases).[5]

Putting aside the Board's repeatedly recognized failure to review the entire record and consider all evidence, four discrete policies and practices bias the claims and appeals process against Players, leaving the Plan in a constant state of non-compliance with ERISA. These Plan-wide policies and practices are challenged by one of the respective proposed Classes.

*First*, the Plan requires that its fiduciaries "maintain a network of 'Neutral Physicians' to examine Players who apply for benefits[.]" ¶ 45. Section 12.3 requires that for each benefit, each "Neutral Physician will examine each Player referred by the Plan and will provide such report or reports on the Players conditions as necessary *for the Disability Board or Disability Initial Claims Committee to make an adequate determination* as to that Player's" conditions. Ex. A at 57 (2021 Plan); Ex. C at 52 (2017 Plan; same). For all three benefit types, under the so-called Neutral Physician Rule or Neutral Rule (in effect since 2017), a Neutral Physician must find that a Player meets the Plan's standard; otherwise, the Player's application will be denied.[6] Defendants admit

---

impairments you want considered on your initial application for benefits." Ex. D at 35 (2019 SPD) (capitals in original); Ex. F at 36 (2021 SPD) (same); Ex. G at 36 (2022 SPD) (same).

[5] *E.g.*, *Mickell v. Bell/Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 593 (11th Cir. 2020) (Board said "it 'reviewed [the] *entire* file,' but that statement [was] belied by the record"); *Solomon v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 860 F.3d 259, 265-66 (4th Cir. 2017) ("*erroneously stating*" it had already previously reviewed medical record in 2009 claim and appeal, whereas new evidence did not exist until 2010 and 2011)); *In re Marshall*, 261 F. App'x 522, 523, 526 (4th Cir. 2008) (Board ignored the record, which contained evidence favorable to applicant through improper "exclusive reliance" on Plan physician evaluation); *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2022 WL 2237451, at *12 (N.D. Tex. June 21, 2022) ("Board members do not review *all* of the documents in the administrative record," citing Board member's testimony about practice), *rev'd on other grounds*, 95 F.4th 964 (5th Cir.), *cert. denied*, 145 S. Ct. 271 (2024); *Carter v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2012 WL 6043050, at *3 (N.D. Ala. Dec. 3, 2012) ("Plan conceded … '*misstatement*' that it considered the Report").

[6] Ex. K at 5 (Vincent Decl. ¶¶ 13-14); Ex. A (2021 Plan §§ 3.1(d), 5.1(c), 6.1(e)); Ex. C (2017 Plan §§ 3.1(c), 5.1(c), 6.1(e)); *see also* ¶¶ 46, 71, 76, 80.

that the Neutral Rule "applies to every type of benefit in the Plan … [a]nd, since it went into effect, … has been applied consistently to deny benefits to players who failed to satisfy it." ECF Nos. 115-2 at 26, 124-1 at 29 (Defs.' memoranda in supp. of mots. for summ. j. as to Pls. Loper and Olawale). In practice, Defendants uniformly apply the Neutral Rule policy to abdicate their discretion in favor of the Neutral Physicians' opinions, no matter the quantum and significance of the medical evidence that Players submit in support of their applications.[7] Board member Smith's testimony shows the Board's practice of employing the Neutral Physician Rule policy to abandon its discretion, as he

> believe[s] that this provision, 12.3, as it is related to Neutral Physicians, that it talks about the duties of Neutral Physicians and what their specific duties are. *I don't believe that this mentions what we, as Board members*, are allowed to do or *are required to do* in relation to what the Neutral Physician prepares.

Ex. B (Smith Dep. Tr. 73:1-8).[8]

*Second*, Defendants, in practice, have failed, and continue to fail, to conform to legal precedent that they must consider the effect of *all* of a Player's impairments *together*. *See infra*

[7] *See* Ex. L at ECF pg. 402 (Board's denial of Plaintiff Loper's appeal, failing to address to medical evidence he submitted, save to state that it "helped" the Neutral Physicians); Ex. M at ECF pg. 498 (Board's denial of Plaintiff Olawale's appeal, [redacted] Exs. Q & Z (Board's decision on Plaintiff Sims's appeal, [redacted]); *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2018 WL 1258147, at *4 (N.D. Cal. Mar. 12, 2018) ("problem is that the Board denied benefits based upon an unreasonable bias in favor of Plan-selected physicians. … [I]t did not resolve the conflicts by examining the evidence or delving into the record before it. It simply adopted the opinions of its retained physicians by default. The Board underscored the reflexive and non-discretionary quality of this action by stating that it *uniformly* accepts and relies upon the reports of its retained doctors… [*I*]*t was not entitled to decide a benefits claim by mere default to a Plan-selected physician. That is the abandonment of discretion, not the exercise of it.*").

[8] Ex. E (Williams Dep. Tr. 59:13-60:4, 87:22-88:5) (Board's Party Advisor, tasked with reviewing applicants' files, testifying: "I'm relying on the neutral physician to have everything … in his report."); Ex. B (Smith Dep. Tr. 75:15-23) ("Doctors are hired to make these examinations and are making them"). Also, the Plan confers "final and binding authority" on MAPs concerning medical issues. Ex. A at 50 (2021 Plan § 9.3(a)); Ex. C at 44 (2017 Plan § 9.3(a)).

at 27 n.36 (citing *Mickell*, *Brumm*, and other cases); ¶¶ 86-87. Despite this mandate, Defendants' own witness admitted that "*nobody* would have looked at" a Player's claim "holistically in terms of the cumulative effects."[9] Moreover, although SPDs instruct Players to list "ALL" impairments in their disability application—and thus at the very least imply that the Committee and Board will consider cumulative impact[10]—Defendants' practice is still not to conform to the legal precedent in *Mickell*, *Brumm*, and other cases, even where Players expressly claim the cumulative effect of their impairments as a basis of their disability.[11] Defendants' refusal to evaluate the cumulative effect of impairments identified in applications is also inconsistent with Plan terms.[12]

*Third*, conversely, despite the Plan's express stipulation that "[t]he educational level and prior training of a Player will *not* be considered" in determining whether he is T&P disabled (Ex.

---

[9] Ex. J (Vincent Dep. Tr. 176:12-177:9, 179:14-21) (Q. "[T]he language *in the training manual is 'stick to your lane.'* So they are, by instructions, told to limit their analysis and their opinions to their area of their specialties, correct?... THE WITNESS: That is correct.... Q. … *as a matter of practice*, if a player alleges cumulative injuries in their disability application which may, in fact, cross areas of specialty, *none* of the neutral physicians would do an assessment as to the impact of their alleged cumulative injuries; is that right?... THE WITNESS: Right. The neutrals would be evaluating them for their specialty only."); *id.* (Vincent Dep. Tr. 179:14-179:21) ("And so nobody would have looked… *holistically* in terms of the cumulative effects of his injuries --… Q. -- correct? A. Right, that's not part of the Plan."); *id*. (Vincent Dep. Tr. at 180:2-180:16) ("they would not have considered his cumulative disabilities; is that correct?... THE WITNESS: Right, that sounds like the same question again…. Q. -- I said 'cumulative injuries' before and now I'm changing it to 'cumulative disabilities.' A. It would be the same response.").

[10] Ex. D at 35 (2019 SPD); Ex. F at 36 (2021 SPD) ("include ALL impairments you want considered on your initial application."); Ex. G at 36 (2022 SPD) (same).

[11] Ex. J (Vincent Dep. Tr. 176:22-177:9, 179:14-21) (Plan physicians consider applicants only in their respective area of specialty and no one would have looked at Plaintiff Sims holistically because "that's not part of the Plan"); *see* Ex. H at 4-5; Ex. I at 4-5; Ex. N at 3-4, Ex. P at 3; Ex. T at 3-4; Ex. W at 3-4 ; Ex. Y at 3-4 (manuals instructing that Plan physicians are not expected to confer with each other); *see also* Ex. X (Board's decision letters to four Plaintiffs and five other Players, repeatedly [redacted]).

[12] For example, the Plan recognizes that T&P Disability may arise out of a combination of ailments inasmuch as its unambiguous terms state that "a Player will qualify for Plan T&P benefits … if (i) his *disability(ies)* ... causes him to be totally and permanently disabled." Ex. A at 10 (2021 Plan § 3.4(a)-(b)). The Plan's use of both one disability (singular) and multiple disabilities (plural) as a basis for finding a Player T&P disabled underscores that Plan terms on their face support that a Player may be T&P disabled due to either a singular impairment or a combination of impairments.

A at 6 (2021 Plan § 3.1(e)(1)); Ex. C at 6 (2017 Plan § 3.1(d)(i)) and ERISA's requirement that the Plan must "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents," 29 C.F.R. § 2560.503-1(b)(5), Defendants' written policies improperly mandate the consideration of educational level.[13]

*Fourth and finally*, for several years, Defendants had an undisclosed practice of applying discriminatory demographic norms to neuropsychological test results. The 2018 manual for Plan neuropsychologists instructed them to apply so-called Heaton norms to T-scores. Ex. N at 6[14]; Ex. R (Feb. 21, 2025 Hr'g Tr. 87:8-9) (Defs.' counsel conceding "practice existed"). Defendants maintain that the practice was halted upon the issuance of a directive on June 8, 2021. Ex. U.

## III. Prior Proceedings

Plaintiffs commenced this action on February 9, 2023. ECF No. 1. After Defendants moved to dismiss under Rule 12(b)(6) (ECF No. 53), Plaintiffs filed the operative Complaint on May 12, 2023 (ECF No. 56). Defendants again filed a 12(b)(6) motion. ECF No. 69. Following

[13] *E.g.*, Ex. N at ECF pg. 35 ("Education (years): [...] Demographic Adjusted T score"); 40 ("Enter the raw score scale score and the T-score based on the Heaton norms."); Ex. H at 13 ("examiners must compute and document… education adjusted scores on the examination data sheet, and in their report"), Ex. I at 13 (same); *id.*, Ex. 3 at 1 (Neuropsychology Data Report Form and Narrative Template) ("Education (years): [...] Education Adjusted T score"); *id.* at 6 ("Report the education-adjusted T-Scores"); Ex. Y at ECF pg. 18 (Psychiatry Narrative Report Template) ("SOCIAL HISTORY: [...] Employment, Education, and Hobbies)"); Ex. T at ECF pg. 47 (similar); *see also* Ex. M at ECF pg. 460 (Pla [redacted]. Board member Smith conceded that the 2024 neuropsychologist manual requires Plan neuropsychologists to list applicants' educational level and to provide education-adjusted T-scores in the template form. Ex. B (Smith Dep. Tr. 171:19-172:19).

[14] Heaton Norms "are demographically corrected or adjusted and take into account such factors as race." *Jefferson v. Sellers*, 250 F. Supp. 3d 1340, 1365 (N.D. Ga. 2017), *aff'd*, 941 F.3d 452 (11th Cir. 2019). The neuropsychologist manual's author, Dr. Stephen Macciocchi, stated in published literature that demographic factors "explain more variance in neuropsychological test scores" than mild traumatic brain injury," and that consideration of race is "*essential* in post-MTBI test score interpretation." Ex. S at ECF pg.16.

completion of briefing (*see* ECF Nos. 70, 73), the Court granted that motion in part and denied it in part on March 20, 2024, sustaining most of Plaintiffs' claims. ECF Nos. 78-79.[15]

On September 3, 2024, Plaintiffs moved for class certification. ECF No. 102. Opposition, reply, sur-reply, and sur-surreply briefing ensued. ECF Nos. 111, 173, 219, 240. Interrelated were the parties' respective motions to exclude expert opinions offered in support of or opposition to class certification. ECF Nos. 175, 219-20, 222, 244-45, 256, 270.[16]

Meanwhile, in November 2024, Defendants separately moved for summary judgment against Plaintiffs Daniel Loper, Jamize Olawale, and Charles Sims. ECF Nos. 115, 124-25. Plaintiffs filed their consolidated opposition to those motions on April 25, 2025 (ECF Nos. 184-86), and Defendants filed their combined reply on July 24, 2025 (ECF No. 235). Thereafter, Plaintiffs moved to strike two of Defendants' reply declarations for failure to previously disclose the declarants as witnesses. ECF Nos. 247-48 (motion), 264 (opposition), 270 (reply).

On January 28, 2026, the Court issued Opinions and Orders denying Plaintiffs' motion to strike and Defendants' summary judgment motions (ECF Nos. 334-36, 338). Separately, as is relevant here, the Court denied Plaintiffs' class certification motion without prejudice. ECF Nos. 337-38. The Court held that Plaintiffs' initially proposed classes failed to satisfy the Rule 23(a)(2)

---

[15] The Court denied Defendants' motion as to Plaintiffs' claims for wrongful denial of benefits (Count I), lack of adequate notice (Count II), denial of full and fair review (Count III), and breach of fiduciary duty brought on behalf of the Plan (Count V); dismissed wrongful benefits denial claims that were time-barred; dismissed Plaintiffs' claim for breach of fiduciary duty asserted on behalf of the then-proposed class and subclasses (Count IV); and dismissed all claims against individually named Board members and NFL Commissioner Goodell. On Plaintiffs' unopposed motion for partial reconsideration, the Court modified its ruling by revising the operative statute of limitations bar date for Plaintiffs' wrongful denial of benefits claims from May 12, 2020 to August 9, 2019. ECF Nos. 83-85.

[16] Magistrate Judge Aslan, to whom the Court had referred the parties' motions to exclude for adjudication (ECF No. 226), granted Defendants' motion to exclude the opinions of Plaintiffs' fiduciary expert, Joseph Garofolo; denied Plaintiffs' motion to exclude the opinions of Defendants' statistical expert, Dr. David B. Lasater; and granted in part and denied in part Defendants' motion to exclude the opinions of Plaintiffs' statistical expert, Dr. Anthony Hayter. ECF Nos. 318-19. The Court overruled Plaintiffs' partial objections to that ruling (ECF No. 320) on January 5, 2026. ECF No. 331.

commonality and 23(a)(3) typicality requirements. ECF No. 337 at 7-16.

Noting that the class period reached back to 1970 (well before implementation of the Neutral Rule and before the *Mickell* and other case precedents were "in effect"), the Court concluded that "a series or collection of separate policies and practices that manifest in different ways for different Plaintiffs" could not satisfy the commonality test for classes distinguished only by disability benefit type where factual distinctions among Plaintiffs and absent class members "are determinative, or at least highly probative, of the legal issues presented." *Id.* at 12, 14. The Court noted that its decision "d[id] not foreclose that an assertion that an ERISA administrator has a well-defined policy of utilizing bad faith in reviewing claims is capable of satisfying the commonality requirement, especially as to a breach of fiduciary duty claim." *Id.* at 14 n.13. Also, the Court "ma[de] no findings as to whether a specific identified policy or practice (*e.g.*, the Board's deference to the Neutral Rule), and a proposed class and claims tailored to same, would satisfy the commonality requirement." *Id.* As to the typicality element, the Court was not persuaded that Plaintiffs' claims arising from an overarching scheme favoring denial of benefits were "typical of the claims of class members from decades ago." *Id.* at 15.

## ARGUMENT

## PLAINTIFFS' CLAIMS UNDER COUNTS II AND III, ASSERTED ON BEHALF OF DISCRETE CLASSES ATTACKING SPECIFIC POLICIES OR PRACTICES DURING THE NARROWED TIME PERIODS OF THEIR EXISTENCE, ARE SUITABLE FOR CLASS-WIDE ADJUDICATION, AS IS THEIR COUNT V CLAIM ON BEHALF OF THE PLAN

## I. GENERAL STANDARDS FOR CERTIFYING CLASSES

An action may be maintained as a class action if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a); *see Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (quoting Rule). These four elements are commonly referred to as, respectively, "numerosity," "commonality," "typicality," and "adequacy"). In addition to the Rule 23(a) prerequisites, the movant must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiffs seek certification under Rules 23(b)(1)(A) and (b)(2).

Although a court may consider the merits of the movant's claims on a Rule 23 motion, it may do so only to the limited extent of examining the nature of the claims and whether they are amenable to class-wide adjudication. *E.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022); *Peters v. Aetna Inc.*, 2 F.4th 199, 241 (4th Cir. 2021). Moreover, while the movant bears the burden of demonstrating satisfaction of Rule 23's requirements, *Gariety*, 368 F.3d at 362; *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022), courts are required to liberally construe Rule 23, *Gunnells*, 348 F.3d at 424; *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 682 (D. Md. 2018).

## II. CONSISTENT WITH FOURTH CIRCUIT PRECEDENT, THE COMPOSITION OF THE CLASSES IS ASCERTAINABLE

"Apart from [its] enumerated requirements, Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable." *Peters*, 2 F.4th at 241-42. This test—typically referred to as ascertainability, identifiability, or administrative feasibility—mandates that class members be identified in reference to objective criteria. *Glover*

*v. EQT Corp.*, 151 F.4th 613, 621 (4th Cir. 2025); *Peters*, 2 F.4th at 242.[17] Thus, "if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 2845 (2025). The movant, though, "need not be able to identify every class member at the time of certification." *Glover*, 151 F.4th at 621; *Peters*, 2 F.4th at 242.

The ascertainability test does not apply where, as here, the proposed Rule 23(b)(2) classes seek solely declaratory and injunctive relief, *See Kadel v. Folwell*, 100 F.4th 122, 161 (4th Cir. 2024), *judgment vacated on other grounds*, 145 S. Ct. 2838 (2025); *Does 4, 7, 22, 27, 28 , & 29 v. Musk*, 350 F.R.D. 246, 254 (D. Md. 2025) (citing cases). Even assuming the requirement does apply here because Plaintiffs also seek Rule 23(b)(1)(A) certification, it is easily met. *First*, the Classes are defined using purely objective and straightforward criteria based on specific policies and procedures. *Second*, the identity of all putative members of the proposed Classes can be established from the Plan's own records. *See* Ex. O.[18]

[17] *See also EQT Prod. Co.*, 764 F.3d at 358 (ascertainability a "threshold requirement"); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 296 (ascertainability an "implicit threshold requirement"); *Craighead v. Full Citizenship of Md., Inc.*, 2018 WL 3608743, at *2 (D. Md. July 27, 2018) (ascertainability "a threshold inquiry").

[18] Specifically, absent Class members can be identified using the data produced by Defendants concerning benefits applications and appeals ("V3 Data") in combination with Plan records produced by Defendants and the Amended Complaint. *See* Ex. O *passim*. For example, members of the Education and Training Class can be identified by sorting the V3 Data, using the columns for "Application Type") (column D), "Anon 1st Neutral Physician," etc. (columns E, J, O, T, Y, AD, AI, AN) (which list the type of physician), "1st Actual Neutral Appointment Date," etc. (columns H, M, R, W, AB, AG, AL, AQ) (which list the appointment dates), "T&P Decision" (column BB), and "T&P Decision Type" (column BC) to identify which absent members applied for T&P Disability benefits, received an adverse determination, and were evaluated by a neuropsychologist, psychiatrist, and/or neurologist within the relevant time period (*i.e.*, since the date of the August 1, 2018 Neutral Physician manuals produced by Defendants, which specifically mandate consideration of educational level). Similarly, members of the Education and Training Class for appeals can be identified by sorting the V3 Data. *See Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 407 (D. Md. 2023) (ascertainability satisfied where class members could be identified from review of defendant's records) (citing cases); *Jackson v. Am. Elec. Warfare Assocs., Inc.*, 2024 WL 556230, at *3 (D. Md. Feb.

In opposing Plaintiffs' initial class certification motion, Defendants argued that Plaintiffs' then-proposed class and subclass definitions were overbroad because they encompassed Players whose benefits applications had been denied for reasons unrelated to failure to satisfy Plan medical criteria (such as failure to keep appointments for Neutral Physician examinations) or who failed to exhaust administrative remedies. ECF No. 111 at 39-40. As Plaintiffs noted in their reply, however, Defendants' cavil was unavailing because (i) as a general matter the availability of defenses against individual class members does not defeat class certification; and (ii) there were sundry means of handling such defenses. ECF Nos. 172 at 12-13, 173 at 12-13.

At any rate, that historic objection now fails for a separate reason. The new proposed Class definitions *expressly exclude* Players whose applications were denied solely for non-medical/non-merits reasons, such as the untimely filing of a benefits claim under Plan terms. As for the inclusion of Players who did not appeal a Committee decision to the Board, Defendants' failure-to-exhaust defense is one *common* to many Class members. As such, it actually weighs *in favor of* certification. *See Stuart v. Radioshack Corp.*, 2009 WL 281941, at *7 (N.D. Cal. Feb. 5, 2009). That defense (on which Defendants carry the burden of proof because it is an affirmative defense) has yet to be decided. Moreover, its future resolution will be on an aggregate, not individual, basis given (i) Defendants' assertion that it affects many applicants; and (ii) Plaintiffs' counter-argument that, in accordance with ERISA regulations, administrative remedies are deemed exhausted because of Defendants' pattern and practice of failing to provide full and fair review.[19] *See* ¶ 351;

12, 2024) (same); *Huang v. TriNet HR III, Inc.*, 2022 WL 13631836, at *5 (M.D. Fla. Oct. 21, 2022) (class ascertainable where membership could be determined from plan's records); *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810, at *4 (N.D. Ga. Sept. 21, 2020) (same); *Sims v. BB & T Corp.*, 2017 WL 3730552, at *2 (M.D.N.C. Aug. 28, 2017) (same); *see also Woodward v. GEICO Advantage Ins. Co.*, 2022 WL 2953053, at *11 (D. Md. July 25, 2022) (test met even if membership determinations would entail some effort to evaluate company records).

[19] *See N.J. Carpenters Health Fund v. Residential Cap., LLC*, 2012 WL 4865174, at *5 (S.D.N.Y. Oct. 15, 2012) (class manageable where affirmative defenses subject to generalized proof); *In re Nortel Networks*

ECF No 70 at 40-41 (Pls.' mem. in opp. to Defs.' mot. to dismiss).[20] Indeed, the Court held that the exhaustion issue was inappropriate for resolution at the motion to dismiss stage given Plaintiffs' robust allegations that Defendants denied full and fair review. ECF No 78 at 11.

Alternatively, those Class members who never appealed Committee decisions on their applications can be sorted out at the remedies phase using Plan records, including the V3 Data.[21] A further alternative is that the Court could carve out a subclass within each Class—courts often do with members subject to defenses[22]—composed of those Players who did not file appeals.[23]

---

*Corp. ERISA Litig.*, 2009 WL 3294827, at *10 (M.D. Tenn. Sept. 2, 2009) (affirmative defense did not defeat certification where applicable to many class members); *Hoffman v. First Student, Inc.*, 2008 WL 11349801, at *4 (D. Md. Dec. 9, 2008) (affirmative defenses did not defeat certification where asserted "against all or a group of class members").

[20] *See also Cogdell v. Reliance Standard Life Ins. Co.*, ___ F.4th ___, 2026 WL 588427, at *8 (4th Cir. Mar. 3, 2026) (regulations provide two consequences for failure to strictly adhere to reasonable claims: first, "the claimant is deemed to have exhausted the administrative remedies available under the plan" and "is entitled to pursue any available remedies" under 29 U.S.C. § 1132; second, "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary").

[21] *E.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259 (11th Cir. 2003) (appropriate time for class action defendant to raise affirmative defenses and set-off claims is at damages phase), *aff'd*, 545 U.S. 546 (2005); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 573 (S.D.N.Y. 2021) (statute of limitations issues can be dealt with at damages stage); *Robinson v. Nationstar Mortg. LLC*, 2019 WL 4261696, at *17 (D. Md. Sept. 9, 2019) (non-injured parties can be sorted out at remedies phase).

[22] *See, e.g.*, *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015) ("If it becomes clear that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms, such as placing class members with potentially barred claims in a separate subclass."); *Midland Funding, LLC v. Brent*, 2010 WL 4628593, at *4 (N.D. Ohio Nov. 4, 2010) (arbitration-related defenses could be dealt with through creation of subclasses); *Ormond v. Anthem, Inc.*, 2009 WL 3163117, at *13 (S.D. Ind. Sept. 29, 2009) (ERISA preemption issues called for creation of subclass); *Avery v. Uniroyal Tech. Corp.*, 2005 WL 1205607, at *5 (M.D. Fla. May 20, 2005) ("if Defendants' defenses are later shown to bar the claims of some class members, adequate procedural mechanisms are available to the Court," including creation of subclasses).

[23] Defendants also asserted that class membership would not be ascertainable were Plaintiffs to revise their definitions to limit membership to Players whose "impairments were discredited as a result of Neutral Physician bias" because that would entail individualized fact-finding as which Neutral Physicians evaluated a particular applicant. ECF No. 111 at 40-41. Aside from being a strawman argument—because Plaintiffs' challenges to Defendants' claims and appeals process had to do with more than Neutral Physicians' bias—Defendants' contrived burden is now moot. The current definitions are narrowed to Classes challenging four discrete policies and practices—notably, *none* having to do with Neutral Physician bias.

## III. THE SUBTANTIALLY REVISED PROPOSED CLASSES ALL SATISFY THE RULE 23(a) ELEMENTS

In addition to being narrowed in scope and timeframe to be ascertainable and avoid impermissible overbreadth, the four substantially narrowed Classes fully satisfy all of the threshold black-letter criteria of Rule 23(a).

### A. The Classes Satisfy the Rule 23(a)(1) Numerosity Test

In this District, "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010). Courts generally find classes of at least forty members sufficiently large to satisfy the numerosity element. *E.g.*, *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 300; *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended on other grounds*, 962 F. Supp. 2d 840 (2013); *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011).

Here, given the many thousands of Plan participants that Defendants have disclosed in government filings,[24] as well as the V3 Data that Defendants produced (*see* Ex. O), there can be no genuine dispute that there are, at a minimum, hundreds of members in the newly proposed Classes—even with each consisting of a discrete category of applicants over a markedly reduced period of time. Numbers aside, because the Classes are nationwide in scope (in that Players reside throughout the country), it stands to reason that the geographic dispersion of their members renders their joinder impracticable.[25]

---

[24] Evidence that Defendants proffered in support of their motion to dismiss the Complaint—namely, IRS Form 5500s for the 2016-21 Plan years (which run from April 1 to March 31 of the following year)—shows that the number of Plan participants ranged from 9,416 to 20,997 during that time. Ex. V.

[25] *See*, *e.g.*, *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (that class members were "dispersed throughout the country . . . militate[d] against joinder"); *Hewlett*, 185 F.R.D. at 216 ("likely geographic dispersion" of class members indicates that joinder would be impracticable); *Kohl v. Ass'n of Trial Laws. of Am.*, 183 F.R.D. 475, 484 (D. Md. 1998) (courts look to "the geographic dispersion of the class members" as numerosity analysis factor).

### B. The Rule 23(a)(2) Commonality Requirement Is Also Met

The Rule 23(a)(2) commonality factor asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It "requires the plaintiff to demonstrate that the class members have suffered the same injury—a shared injury that also springs forth from the same common contention[.] That common contention, moreover, must be of such a nature that it is capable of classwide resolution[.]" *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013).

At the same time, though, the commonality test does not require that class members have identical factual and legal claims in all respects. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). Rather, it mandates that "class members share the same central facts and applicable law." *Curtis v. Genesis Eng'g Sols., Inc.*, 2022 WL 1062024, at *4 (D. Md. Apr. 8, 2022); *accord Cuthie*, 743 F. Supp. 2d at 498-99. Thus, "[m]inor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 301 (citing cases); *Hewlett*, 185 F.R.D. at 216 (citing cases).[26] "Where the injuries complained of by [the] named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 301; *Wilson v. Eagle Nat'l Bank*, 2023 WL 2478933, at *11 (D. Md. Mar. 13, 2023). A single common question may satisfy the commonality element, so long as the "determination of its truth or falsity will resolve an issue that is central to the validity of each one

[26] *Accord Cuthie*, 743 F. Supp. 2d at 499 (commonality test "is not defeated by minor differences in the underlying facts of an individual case"); *Sanchez v. McAleenan*, 2020 WL 5849491, at *4 (D. Md. Sept. 30, 2020) ("factual differences among members' cases will not preclude certification if the class members share the same legal theory").

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In sum, "the commonality requirement is not a high bar[.]" *Connor v. Maryland Dep't of Health*, 2025 WL 1167846, at *9 (D. Md. Apr. 22, 2025); *accord Baehr v. Creig Northrop Team, P.C.*, 2014 WL 346635, at *8 (D. Md. Jan. 29, 2014) (commonality test "is not onerous").[27]

Here, there are core questions of law and fact common to the members of the respective revised Classes that will drive the resolution of each Class's claims. Among them are:

(a) Whether Defendants have a policy of automatically deferring to the opinions of their Neutral Physicians and MAPs (Neutral Physician Class);

(b) Whether Defendants' actions taken in administering the Neutral Physician Rule policy by abdicating their discretion to the opinions of their Neutral Physicians and MAPs breached their fiduciary duties (Neutral Physician Class);

(c) Whether Defendants' breach in administering the Neutral Physician Rule policy amounts to a harm to the Plan and participants (Neutral Physician Class);

(d) Whether, by deferring benefit decisions to the opinions of their Neutral Physicians and MAPs, Defendants have a practice of failing to genuinely review "all comments, documents, records, and other information submitted by the claimant," as required under ERISA § 503(2), 29 U.S.C. § 1133(2), and its implementing regulation at 29 C.F.R. § 2560.503-1(h)(2)(iv), and whether by doing so Defendants have abandoned their discretion (Neutral Physician Class);

(e) Whether Defendants' pattern and practice of abandoning their discretion pursuant to the Neutral Physician Rule policy strictly adheres to their statutory obligation to provide a reasonable claims procedure, as required under ERISA § 503(2), 29 U.S.C. § 1133(2), and its implementing regulation at 29 C.F.R. § 2560.503-1 (Neutral Physician Class);

(f) Whether Defendants have a policy or practice of improperly considering T&P Disability benefits applicants' educational level, in violation of Plan terms (Education and Training Class);

(g) Whether Defendants have a policy or practice of improperly considering T&P Disability benefits applicants' educational level, in violation of ERISA's requirement that the Plan must "contain administrative processes and

[27] *See also Peters v. Aetna, Inc.*, 2023 WL 3829407 at *10 (W.D.N.C. June 5, 2023) (noting common questions relating to insurer's conduct, including whether it was a fiduciary, whether it breached its duties to plans and plan participants by directing Optum to bury its administrative fees in the claims process, and whether its breach amounted to a harm to the particular plan and plan participants).

safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents," 29 C.F.R. § 2560.503-1(b)(5) (Education and Training Class);

(h) Whether Defendants' actions taken in administering the policy or practice of improperly considering T&P Disability benefits applicants' educational level breached their fiduciary duties (Education and Training Class);

(i) Whether Defendants' breach in administering the policy or practice of improperly considering T&P Disability benefits applicants' educational level, amounted to a harm to the Plan and participants (Education and Training Class);

(j) Whether Defendants have a policy or practice of failing to consider the cumulative effect of a Player's submitted impairments, as required under ERISA § 503(2), 29 U.S.C. § 1133(2), and its implementing regulation at 29 C.F.R. § 2560.503-1(h)(2)(iv) (Cumulative Impairments Class);

(k) Whether Defendants' refusal to conform to legal precedent requiring Defendants to consider the cumulative effect of all a Player's submitted impairments together, breached their fiduciary duties (Cumulative Impairments Class);

(l) Whether Defendants' breach through their refusal to conform to legal precedent amounts to a harm to the Plan and participants (Cumulative Impairments Class);

(m) Whether Defendants had a written policy improperly applying racially based demographic adjustments to Players' neuropsychological test results and, if so, whether Defendants' policy breached their fiduciary duties (Neuropsychological Testing Class);

(n) Whether Defendants' breach through their policy of applying racially based demographic adjustments to Players' neuropsychological test results amounted to a harm to the Plan and participants (Neuropsychological Testing Class);

(o) Whether, through the aforementioned policies and practices, either individually or cumulatively, Defendants have denied applicants full and fair review, in violation of Section 503(2) of ERISA, 29 U.S.C. § 1133(2), and its implementing regulations (All Classes);

(p) Whether Defendants' pattern and practice of ERISA § 503 violations results in administrative remedies being deemed exhausted (All Classes);

(q) Whether Defendants' pattern and practice of ERISA § 503 violations results in its abandonment of discretion (All Classes); and

(r) Whether a cumulation of improper policies and practices amounts to the Board's breach of its fiduciary duties of loyalty and care to the Plan, and whether that breach warrants various remedies, including declaratory relief, injunctive relief, Plan reformation, and replacement of the Board's members (All Classes).

These questions and the focus they place—on Defendants' conduct, as evidenced in specific, separate policies rather than that of individual Class members—are amenable to common proof, such as Defendants' own V3 Data, Neutral Physician orientation manuals, Plan documents, and testimony from Defendants' own witnesses (both in this case and in the *Cloud* action). *See supra* at 5-8 (citing evidence). As to each Class, Plaintiffs have identified "an overarching practice, manifested in specific, discrete policies, that generates common questions of law about those policies, the resolution of which will generate common *answers* apt to drive the resolution of the litigation." *D.N.N. v. Liggins*, 2026 WL 632371, at *17 (D. Md. Mar. 6, 2026) (emphasis in original; finding commonality test satisfied and granting renewed motion for class certification).

**C. Plaintiffs' Claims Are Typical of Those of Absent Class Members**

"The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998). It looks to "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Bullock v. Bd. of Educ. of Montgomery Cnty.*, 210 F.R.D. 556, 560 (D. Md. 2002). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 302 (citing cases). The representative's "interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *accord Ealy*, 514 F. App'x at 305 ("[T]he representative's pursuit of his own

interests must simultaneously tend to advance the interests of the absent class members.”).

For the typicality test to be met, however, there is no requirement that the plaintiff's claims and those of absent class members “be perfectly identical or perfectly aligned.” *Deiter*, 436 F.3d at 467; *accord Yates*, 686 F. Supp. 3d at 404-05 (plaintiff's and absent members' claims “do not have to be factually or legally identical”; rather, “the class claims should be fairly encompassed by those of the named plaintiffs”). Thus, factual differences do not render a claim atypical, provided that the proposed representative's claim “is predicated on the same course of conduct and legal theory as the claims of the class.” *Minter*, 274 F.R.D. at 533.[28] In all, courts have “liberally construed” the typicality test. *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 338.

Here, the proposed Class Representatives have claims typical of those of absent members of their respective Class:

(a) The proposed Representatives of the Neutral Physician Class—Plaintiffs Alford, Loper, McGahee, McKenzie, Olawale, Parsons, Sims, Smith, Thomas, and Zeno—filed an application for one or more types of disability benefits, received an adverse determination, and had their claims subjected to the Plan's Neutral Physician Rule policy or to a Medical Advisory Physician rendering the deciding opinion on their claim within the relevant time period. ¶¶ 149-60 (Zeno), 164-73 (McGahee), 176-89 (McKenzie), 193 (Sims), 195-98, 200 (Olawale); 203 & 208-10, 212 (Loper), 219-21, 223-25 (Smith). 229-31, 233-38 (Parsons), 241-55 (Thomas), 258-66 (Alford).[29]

(b) The proposed Representatives of the Cumulative Impairments Class—Plaintiffs Loper, McGahee, McKenzie, Olawale, and Smith—filed an application for T&P Disability benefits and received an adverse determination within the relevant time period, without consideration of the combined effect of their

[28] *Accord Smith v. B & O R.R. Co.*, 473 F. Supp. 572, 581 (D. Md. 1979) (“[T]he typicality requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members[.]”); *Bullock*, 210 F.R.D. at 560 (“[A] plaintiff's claim may differ factually and still be typical of the claims of class members if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.”).

[29] Although Plaintiffs and absent Class members may have been subject to different versions of the Plan (the 2017 as opposed to the 2021version), there is no meaningful (much less material) variation in relevant Plan terms. *Cf. Peters v. Aetna, Inc.*, 2023 WL 3829407, at *10 (W.D.N.C. June 5, 2023) (distinctions among plans were minor variations in phrasing of relevant plan language, which were “incidental to the shared legal theory and similar conduct” at issue and did not bar class certification).

impairments. Ex. O (V3 Data); ¶¶ 166-67, 169-73 (McGahee), 179, 181, 184-86, 188 (McKenzie), 198-201 (Olawale); 219, 221-23, 225-26 (Smith).

(c) The proposed Representatives of the Education and Training Class— Plaintiffs Loper, McGahee, McKenzie, Olawale, Sims, and Smith—filed an application for T&P Disability benefits, received an adverse determination, and their educational levels were considered in determining whether they are T&P disabled within the relevant time period. Ex. O (V3 Data); ¶¶ 168 (McGahee); 182 (McKenzie), 225 (Smith).

(d) The proposed Representatives of the Neuropsychological Testing Class—Plaintiffs Alford, McGahee, McKenzie, Olawale, Parsons, Smith, and Thomas—filed an application for disability benefits, received an adverse determination, and demographic adjustments were made to the results of neuropsychological testing that they underwent within the relevant time period. Ex. O (V3 Data); ¶ 167 (McGahee).

Having directly suffered legal injuries from the wrongful policies or practices challenged by their respective Class(es) and asserting the same causes of action in Counts II, III, and V thereof as would absent members, the proposed Representatives' claims are "predicated on the same course of conduct and legal theor[ies] as the claims of the class." *Minter*, 274 F.R.D. at 533.[30]

**D. Plaintiffs Will Adequately Represent Absent Class Members' Interests**

Plaintiffs addressed the Rule 23(a)(4) adequacy of representation element at considerable length in their initial class certification motion. ECF No. 102-1 at 33-44. Because Defendants did not contest this element, rather than engage in another full-blown adequacy discussion, Plaintiffs respectfully adopt that earlier discussion by reference—save to emphasize two points.

[30] In particular, Plaintiffs' ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), breach of fiduciary duty claim—which they assert on behalf of the Plan (¶¶ 330-49)—is by its very nature typical *See Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. 2007) (plaintiffs' claims typical because they sought relief on plan's behalf for fiduciary violations); *Knight v. Lavine*, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) (representative nature of a 502(a)(2) claim "makes it almost tautological that the named plaintiff's claim is typical of the rest of the class"); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *7 (W.D. Mo. Dec. 3, 2007) (given representative nature of 502(a)(2) claim, it "is sufficiently typical of those of other class members"); *In re Enron Corp.*, 2006 WL 1662596, at *11 (S.D. Tex. June 7, 2006) (502(a)(2) claim necessary typical "because each class member is bring[ing] suit on the Plan's behalf, not as an individual. In effect, class members, as the Plan's advocates, are each bringing the exact same suit.").

*First*, because their claims are typical for the reasons discussed in Section III.C above, Plaintiffs will adequately represent their respective Classes in that they have every incentive to vigorously advance absent members' interests.[31]

*Second*, Plaintiffs' efforts on multiple fronts since the filing of their initial certification motion underscore that they will vigorously advance Class members' interests. Plaintiffs sought discovery from Defendants; thoroughly briefed discovery disputes where they could not be resolved through the meet-and-confer process (*see* ECF Nos. 134, 252, 254); comprehensively briefed their initial certification motion (ECF Nos. 102-1, 173, 240); vigorously opposed Defendants' motions to exclude their experts, while pursuing a motion to exclude Defendants' expert, and filed partial objections to the Magistrate Judge's ruling on the motions to exclude (ECF Nos. 175, 240, 242-45, 320); and also vigorously and successfully opposed Defendants' three summary judgment motions through exhaustive briefing and marshaling of evidence, while also pursuing a motion to strike two of Defendants' reply declarations (ECF Nos. 184-86, 247-48).[32]

## IV. PLAINTIFFS' UPDATED CLASS CLAIMS ARE WELL SUITED FOR RULE 23(b)(1)(A) CERTIFICATION

Rule 23(b)(1)(A) permits certification if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

---

[31] *See In re Under Armour Sec. Litig.*, 631 F. Supp. 3d at 308 (for same reasons that typicality requirement was met, representatives' interests "in alignment with the proposed class"); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015) (adequacy satisfied where claims were typical); *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 339 (because plaintiffs' claims were typical, they would "advance the interests of the absent class members").

[32] *See*, *e.g.*, *Smith v. Montgomery Cnty., Md.*, 573 F. Supp. 604, 613 (D. Md. 1983) (adequacy test met where plaintiff's counsel "ha[d] vigorously and diligently pursued her claim"); *Todd v. XOOM Energy Md., LLC*, 2020 WL 4784767, at *12 (D. Md. Aug. 18, 2020) (adequacy shown where counsel had, *inter alia*, "ably engaged in motion practice and discovery disputes over the course of th[e] litigation"); *O'Bannon v. Friedman's, Inc.*, 2008 WL 11509653, at *4 (D. Md. Oct. 29, 2008) (finding adequacy test met where, *inter alia*, counsel had "more than adequately represented the class").

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]

Fed. R. Civ. P. 23(b)(1)(A); *see Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 409 (D. Md. 2014) (quoting Rule); *Piotrowski v. Wells Fargo Bank, NA*, 2015 WL 4602591, at *19 (D. Md. July 29, 2015) (same). "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike … or where the party must treat all alike as a matter of practical necessity[.]" *Amchem Prods., Inc.*, 521 U.S. at 614. Nowhere is this requirement more applicable than in ERISA cases. "The language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike."[33] A plethora of courts have recognized that ERISA claims seeking plan-wide relief, especially ERISA § 502(a)(2) breach of fiduciary duty claims (such as Count V, ¶¶ 330-49) are quintessentially suitable for 23(b)(1) certification.[34]

[33] *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179-80 & n.54 (S.D.N.Y. 2006) (citing cases); *Thompson v. Linvatec Corp.*, 2007 WL 1526418, at *5 (N.D.N.Y. May 22, 2007); *accord In re Williams Cos. ERISA Litig*., 231 F.R.D. 416, 425 (N.D. Okla. 2005) (23(b)(1)(A) certification appropriate where inconsistent relief "could make compliance impossible for defendants"); *Bellon v. PPG Emp. Life & other Benefits Plan*, 2023 WL 4155362, at *19 (N.D. W. Va. May 23, 2023) ("Under ERISA, similarly-situated participants are to be treated consistently. That is why multiple courts have found certification of ERISA claims under Rule 23(b)(1)(A) appropriate, since ERISA administrators may not discriminate between similarly situated beneficiaries.") (citing cases), *R. & R. adopted*, 2024 WL 1303911 (Mar. 27, 2024); *McFadden v. Sprint Commc'ns, LLC*, 2024 WL 1533897, at *4 (D. Kan. Apr. 9, 2024) (noting plan administrators' statutory obligation and fiduciary responsibility to treat plan participants alike and thus risk they face from having to comply with inconsistent adjudications); *Berry v. Wells Fargo & Co.*, 2018 WL 9989754, at *12 (D.S.C. Oct. 9, 2018) (because plan administrators are "obliged by law" to "treat all similarly situated participants in a consistent manner … courts inside and outside the Fourth Circuit have certified classes under Rule 23(b)(1)(A) in cases involving ERISA violations") (citing cases).

[34] *E.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of 502(a)(2) claims, such breach of fiduciary duty claims are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing cases); *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (given their derivative nature, 502(a)(2) fiduciary duty breach claims "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class" because recovery "will inure to the plan as a whole, and because defendant-fiduciaries are entitled to

Here, Plaintiffs seek Plan-wide relief in connection with Defendants' wholesale reliance on the Neutral Rule policy which acts as an insurmountable evidentiary hurdle to receiving benefits under the Plan. The consequence of this Rule is that the Board offloads and abdicates its review of the evidence and its exercise of discretion to the opinions of the Neutral Physicians and MAPs, no matter what proof Players adduce, either quantitatively or qualitatively, in support of their application. Defendants' uniform practice of applying this discrete policy results in breaches of fiduciary duties of loyalty, care, and the exclusive benefit rule under ERISA §§ 404 and 409, 29 U.S.C. §§ 1104 and 1109, and denial of full and fair review because the Board does not "take[] into account all comments, documents, records, and other information submitted by the claimant." 29 C.F.R. § 2560.503-1(h)(2)(iv). *See supra* at 5-6.

Similarly, in the case of the Cumulative Impairments Class, Plaintiffs seek Plan-wide relief in connection with Defendants' categorical refusal to consider the combined effect of T&P Disability benefits applicants' impairments—in breach of the fiduciary duties of care, loyalty, and the exclusive benefit rule, as well as the denial of full and fair review resulting from the practice. *See supra* at 6-7. Likewise, for the Education and Training Class, Plaintiffs seek Plan-wide relief relating to Defendants' conduct in administering a specific policy mandating consideration of T&P Disability benefits applicants' educational level in determining whether they are T&P disabled—

---

consistent rulings regarding operation of the plan"; "a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs") (citing cases); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[P]lan-wide claims against ERISA fiduciaries are textbook examples of proper class certification."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (allegations implicating misconduct in plan's management that undergirded 502(a)(2) claim presented "a paradigmatic example" of a 23(b)(1) class); *Falberg v. Goldman Sachs Grp., Inc.*, 2022 WL 538146, at *11 (S.D.N.Y. Feb. 14, 2022) (23(b)(1) certification appropriate given derivative nature of suit brought on behalf of the plan "and the fact that Plaintiff challenge[d] procedures and practices common to the entire Plan"), *pet. for permission to appeal denied*, 2022 WL 4126112 (2d Cir. June 29, 2022); *Stegemann v. Gannett Co.*, 2022 WL 17067496, at *11-13 (E.D. Va. Nov. 17, 2022) (certifying 502(a)(2) fiduciary duty breach claim under 23(b)(1)(A)); *see also infra* at 25 (citing *Boyd*).

in the face of both clear Plan terms forbidding it, *see* Ex. A at 6 (2021 Plan § 3.1(c)(1)); Ex. C at 6 (2017 Plan § 3.1.(d)(i)), and ERISA's mandate that the Plan "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents," 29 C.F.R. § 2560.503-1(b)(5). *See supra* at 7-8. Finally, Plaintiffs seek Plan-wide relief in connection with Defendants' historic policy of mandating demographic adjustments to Players' neuropsychological test results. *See id*. at 8.

Inconsistent adjudications as to the legality of these policies and practices and in fashioning appropriate relief creates the risk of incompatible standards of conduct for Defendants. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014) (where claims "implicate misconduct in the management in the Plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications") (citing cases).

Importantly, as noted at the outset, as to all four Classes Plaintiffs seek certification only of their claims under Counts II, III, and V of the Complaint. Plaintiffs do not seek certification of their ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), wrongful denial of benefits claim under Count I. Consequently, there is no longer any legal basis to argue that Plaintiffs are pursuing monetary relief on a class-wide basis.

In connection with Counts II, III, and V, Plaintiffs seek Plan-wide declaratory relief; injunctive relief against the policies and practices (a prohibitory injunction against their continued use, in the case of discriminatory demographic adjustments to neuropsychological test results an injunction against their reinstatement, and a mandatory injunction to bring the Plan into compliance with ERISA); and other equitable relief, such as Plan reformation, stripping of the Board's discretion,[35] equitable reopening of claims, and removal of the Board's members (which

[35] Stripping of the Board's discretion is appropriate relief because, in fully and automatically defaulting to the opinions of their Neutral Physicians and MAPs, as well as routinely refusing to even consider the

is appropriate relief in connection with Plaintiffs' breaches of fiduciary duties claim, *see Chao v. Malkani*, 452 F.3d 290, 294 (4th Cir. 2006)). *See* ¶¶ 364, 369-70, 374, 376-77, 381, 387.

## V. PLAINTIFFS' UPDATED CLASS CLAIMS ARE EQUALLY WELL SUITED FOR RULE 23(b)(2) CERTIFICATION

Plaintiffs' updated class claims are also appropriate for certification under Rule 23(b)(2). Rule 23(b)(2) allows certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Here, Defendants "have acted or refused to act on grounds that apply generally to the class[es]." As to the Neutral Physician Class, Defendants rely entirely and conclusively on the opinions of their Neutral Physicians, such that, if no Neutral Physician finds a Plaintiff eligible for benefits under the Plan, their adverse opinions are insurmountable, irrespective of anything else in the record. In creating an absolute and inflexible evidentiary hurdle—in effect, an irrebuttable or conclusive presumption—Defendants further act in derogation of their obligation to consider and actually weigh all facts and circumstances and to make an "adequate determination." *See supra* at 5-6; Ex. A at 6 (2021 Plan § 3.1(e)) (for T&P claims, Committee and Board will review, besides Neutral Physicians' reports, "all other facts and circumstances in the administrative record"); *id.* at 57 (2021 Plan § 12.3(b)) (Neutral Physicians must make "an adequate determination").

As to the Cumulative Impairments Class, Defendants have adopted a policy or practice whereby they do not consider the combined effect of T&P Disability applicants' impairments, going so far as to instruct Neutral Physicians not to confer with one another. *See supra* at 6-7.

---

combined effect of T&P Disability applicants' impairments, the Board has abandoned its discretion. *See Cogdell*, 2026 WL 588427, at *9 (abuse of discretion review "is appropriate only when (1) the plan confers discretionary authority to the administrator to determine eligibility for benefits or to construe the terms of the plan; *and* (2) the administrator *actually exercises* that discretionary authority") (emphasis in original).

Thus, Defendants act with respect to this Class in contravention of Plan documents and longstanding legal precedent relating to the Plan and other disability determinations contexts.[36]

With respect to the Education and Training Class, Defendants have improperly considered education and training in deciding T&P Disability benefits claims, in plain violation of explicit Plan terms and ERISA. *See supra* at 7-8; *see also* ECF No. 342 at 25 (Court's summary judgment opinion, noting dispute of material fact as to whether Defendants comported with Plan terms by considering education and training).

Finally, as to the Neuropsychological Testing Class, Defendants acted with respect to the Class as a whole—at a minimum between August 1, 2018 and June 8, 2021 (when a directive was allegedly issued, purportedly halting the practice, *see* Ex. U)—by applying discriminatory demographic adjustments to benefits applicants' neuropsychological test results. *See supra* at 8.

To remedy such actions and failures to act, Plaintiffs seek the declaratory, injunctive, and other equitable relief discussed in Section IV above. In particular, Plaintiffs' request to have Defendants permanently enjoined from maintaining the challenged practices and policies is sufficient on its face to warrant Rule 23(b)(2) certification. *E.g.*, *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 414 (S.D.N.Y. 2015). Moreover, the relief outlined in Section IV would

[36] *See Mickell*, 832 F. App'x 586, 594-95 ("Because the Board failed to consider the combined effect of… many physical and mental impairments, it ignored an important consideration in the question of whether he was disabled."; remanding to district court with instruction that it "should consider all evidence of … conditions *together*… to determine whether the *combined effects* of his impairments render him disabled"); *see also Brumm v. Bert Bell NFL Ret. Plan*, 995 F.2d 1433, 1439 (8th Cir. 1993) ("If the Plan's goal is to take care of the players as part of their compensation for investing themselves in the sport, players who suffer a series of football injuries resulting in disability are as entitled to consideration as those suffering a single disabling injury."); *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 870-71 (4th Cir. 2011) (although insurer cited evidence showing that "individual diseases and physical problems that afflicted [plaintiff] were not sufficient, in isolation, to render her unable to … work," plaintiff "would have to overcome the combined effect of *all* of the problems caused by her diseases, not just a select few") (emphasis in original); *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan*, 509 F.3d 644, 652 (4th Cir. 2007) ("failure to consider [the] constellation of medical issues denied … a full and fair review").

"perforce affect [each] entire class at once." *Dukes*, 564 U.S. at 361-62; *accord D.N.N.*, 2026 WL 632371, at *21 (granting 23(b)(2) certification where "injunctive and declaratory relief would provide relief to each member of the class"). Courts have regularly certified classes under Rule 23(b)(2) where, as here, ERISA claims involve challenges to plan-wide policies or practices.[37] Finally, as with their request for Rule 23(b)(1)(A) certification, Plaintiffs seek certification only of their Count II, III, and V claims and do not seek certification of their Count I wrongful denial of benefits claim. Thus, there is no basis to argue that the proposed Classes would be pursuing monetary relief, thereby precluding 23(b)(2) certification.

## CONCLUSION

For the foregoing reasons, the Court should (i) certify the substantially revised Classes pursuant to Rules 23(b)(1)(A) and (b)(2); (ii) appoint Plaintiffs Jason Alford, Daniel Loper, Willis McGahee, Michael McKenzie, Jamize Olawale, Alex Parsons, Charles Sims, Eric Smith, Joey Thomas, and Lance Zeno as Representatives of the Neutral Physician Class; (iii) appoint Plaintiffs Loper, McGahee, McKenzie, Olawale, and Smith as Representatives of the Cumulative Impairments Class; (iv) appoint Plaintiffs Loper, McGahee, McKenzie, Olawale, Sims, and Smith as Representatives of the Education and Training Class; (v) appoint Plaintiffs Alford, McGahee,

[37] *E.g.*, *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 154-55 (S.D.N.Y. 2019) ("In numerous ERISA cases, courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought declaratory and injunctive relief requiring reprocessing of the claims."; noting that 23(b)(2) certification appropriate because reprocessing of claims would not necessarily result in payment of benefits) (citing cases); *Cottillion v. United Refin. Co.*, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013) ("Courts routinely have certified classes pursuant to [Rule 23(b)(2)] where … an ERISA plan administrator makes a uniform decision about administering the Plan."), *aff'd*, 781 F.3d 47 (3d Cir. 2015); *Aguilar v. Melkonian Enters., Inc.*, 2007 WL 201180, at *5 (E.D. Cal. Jan. 24, 2007) ("Rule 23(b)(2) is properly used as a vehicle" in actions seeking a declaration that the defendants violated ERISA and an injunction enjoining acts or practices that violate the statute) (citing cases); *Bunnion v. Consol. Rail Corp.*, 1998 WL 372644, at *15 (E.D. Pa. May 14, 1998) (23(b)(2) certification appropriate where plaintiffs alleged uniform incorrect plan interpretation and violation of plan terms).

McKenzie, Olawale, Parsons, Smith, and Thomas as Representatives of the Neuropsychological Testing Class; and (v) pursuant to Rule 23(g)(1), appoint Seeger Weiss LLP and Athlaw LLP as Counsel for the Classes, and Migliaccio & Rathod LLP as Liaison Counsel for the Classes.

Dated: March 24, 2026

Respectfully submitted,

**SEEGER WEISS LLP**

By: s/ Benjamin R. Barnett
Benjamin R. Barnett
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 553-7980
bbarnett@seegerweiss.com

***Counsel for Plaintiffs and for the Proposed Classes***

Christopher A. Seeger *(admitted pro hac vice)*
Diogenes P. Kekatos *(admitted pro hac vice)*
Caleb A. Seeley *(admitted pro hac vice)*
Hillary R. Fidler *(admitted pro hac vice)*
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegereiss.com
cseeley@seegerweiss.com
hfidler@seegerweiss.com

Samuel L. Katz *(admitted pro hac vice)*
Julia M. Damron *(admitted pro hac vice)*
Noah T. Reid *(admitted pro hac vice)*
Yasha Torabi *(admitted pro hac vice)*
**ATHLAW LLP**
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
Telephone: (818) 454-3652
samkatz@athlawllp.com
julia@athlawllp.com
noahreid@athlawllp.com

yasha@athlawllp.com

***Counsel for Plaintiffs and the Proposed Classes***

Jason S. Rathod
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, DC 20002
Telephone: (202) 470-3520
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

***Counsel for Plaintiffs and Liaison Counsel for the Proposed Classes***

Bryan F. Aylstock *(admitted pro hac vice)*
Justin G. Witkin *(admitted pro hac vice)*
Douglass A. Kreis *(admitted pro hac vice)*
Bobby J. Bradford (*admitted pro hac vice*)
**AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ, PLLC**
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
BAylstock@awkolaw.com
JWitkin@awkolaw.com
DKreis@awkolaw.com
BBradford@awkolaw.com

Robert K. Scott *(admitted pro hac vice)*
Gerry H. Goldsholle *(admitted pro hac vice)*
**ADVOCATE LAW GROUP P.C.**
2330 Marinship Way, Suite 260
Sausalito, CA 94965
Telephone: (949) 753-4950
bob@advocatelawgroup.com
gerry@advocatelawgroup.com

***Additional Counsel for Plaintiffs***